# Exhibit A

**FILED**

AUG 08 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

STUART DELERY
Acting Assistant Attorney General, Civil Division

MELINDA HAAG (CABN 132612)
United States Attorney for the Northern District of California

MAAME EWUSI-MENSAH FRIMPONG (CABN 222986)
Deputy Assistant Attorney General, Civil Division

MICHAEL S. BLUME (PA 78525)
Director, Consumer Protection Branch

ADRIENNE E. FOWLER*
Trial Attorney, Consumer Protection Branch, U.S. Department of Justice
450 5th St. NW, Room 6400
Washington, DC 20530
(202) 514-9471
(202) 514-8742 (fax)
Adrienne.E.Fowler@usdoj.gov

Attorneys for the United States

Fee exempt

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV12-04177 HRL |
| Plaintiff, | COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF |
| v. | |
| GOOGLE INC. | |
| Defendant. | |

Plaintiff, the United States of America, acting upon the notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges that:

---

* Member in good standing of the New York Bar, which does not issue bar numbers.

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
1

1. Plaintiff brings this action under Sections 5(*l*) and 16(a) of the Federal Trade Commission Act as amended ("FTC Act"), 15 U.S.C. §§ 45(*l*) and 56(a), to obtain monetary civil penalties and other relief for Defendant's violations of a final Commission order.

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(*l*) and 56(a).

## VENUE

3. Venue in this district is proper under 28 U.S.C. §§ 1391(b)-(c) and 1395(a).

## DEFENDANT

4. Defendant Google Inc. ("Google") is a Delaware corporation with its principal office or place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043. At all times material to this Complaint, Defendant has participated in the acts and practices described in this Complaint. Defendant transacts business in this district.

## COMMERCE

5. At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## PRIOR COMMISSION PROCEEDING

6. In an administrative proceeding bearing Docket No. C-4336, the Commission charged Google with violating the FTC Act in connection with Google's launch of its social networking tool, Google Buzz.

7. The FTC alleged, among other things, that Google misrepresented to users of its Gmail email service that: (1) Google would not use their information for any purpose other than to provide that email service; (2) users would not be automatically enrolled in the Buzz network; and (3) users could control what information would be public on their Buzz profiles.

8. On October 13, 2011, the Commission entered its decision and order ("Google Consent Order") approving a settlement with Google. The Google Consent Order contains the following prohibitions:

I.

IT IS ORDERED that respondent, in or affecting commerce, shall not misrepresent in any manner, expressly or by implication:

A. the extent to which respondent maintains and protects the privacy and confidentiality of any covered information, including, but not limited to, misrepresentations related to: (1) the purposes for which it collects and uses covered information, and (2) the extent to which consumers may exercise control over the collection, use, or disclosure of covered information.

B. the extent to which respondent is a member of, adheres to, complies with, is certified by, is endorsed by, or otherwise participates in any privacy, security, or any other compliance program sponsored by the government or any other entity, including, but not limited to, the U.S.-EU Safe Harbor.

9. The Google Consent Order defines "covered information" as: information Google collects from or about an individual, including, but not limited to, an individual's: (a) first and last name; (b) home or other physical address, including street name and city or town; (c) email address or other online contact information, such as a user identifier or screen name; (d) persistent identifier, such as IP address; (e) telephone number, including home telephone number and mobile telephone number; (f) list of contacts; (g) physical location; or any other information from or about an individual consumer that is combined with (a) through (g) above.

10. Covered information as defined under the Google Consent Order includes a persistent identifier contained in a tracking cookie, a user's IP address, a user's account ID, a user's interests, or a user's web-browsing activity.

11. The FTC served the Google Consent Order on Google on October 28, 2011, and it remains in full force. A copy of the Google Consent Order is attached as Exhibit A.

**DEFENDANT'S BUSINESS PRACTICES**

12. This Complaint alleges (as detailed below) that Google represented to certain users that Google would not place tracking cookies or serve targeted advertisements based on

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
3

those tracking cookies—but those users did in fact receive tracking cookies and targeted advertisements.

13. Google is a global technology company best known for its online search engine, which provides free search results to users. Google also provides free web products to consumers, including its widely used web-based email service, Gmail.

14. In exchange for fees, Google provides advertising services to online advertisers and publishers. Through its various advertising networks, Google allows advertisers to deliver targeted advertisements to users. Through Google, advertisers serve *billions* of online advertisements every single day. In 2011, Google received $36.5 billion from advertising fees, of which approximately $1.7 billion came from online display ads. Indeed, in 2011, 96% of Google's revenue came from online advertising, according to Google's filings with the Securities and Exchange Commission.

15. Google is a member of the Network Advertising Initiative ("NAI"), a self-regulatory organization for companies in the online advertising marketplace. As an NAI member, Google must adhere to NAI's Self-Regulatory Code of Conduct ("NAI Code"). Section III(2)(a) of the NAI Code provides:

> Each member directly engaging in online behavioral advertising, multi-site advertising, and/or ad delivery and reporting shall clearly and conspicuously post notice on its website that describes its data collection, transfer, and use practices. Such notice shall include[:]
>
> i. The online behavioral advertising, multi-site advertising, and/or ad delivery and reporting activities undertaken by the member company;
>
> ii. What types of data are collected by the member company; [and]
>
> iii. How such data will be used by the member company, including transfer, if any, of data to a third party[.]

16. Google has stated, including on its Privacy Policy for Ads and Advertising Services webpage, that it is a member of NAI. Google has also authorized other entities,

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
4

including NAI, to represent that it is a participating NAI member that complies with NAI's Code.

### Targeted Advertising

17. Targeted advertising uses information collected from a user's web-browsing activity, such as past or present search queries or websites a user visits or has visited, to serve online advertisements tailored to the individual user.

18. Targeted advertising often utilizes HTTP cookies, which are small text files that can be used to collect and store information about a user's online activities, such as the content and advertisements a user viewed or the webpages he or she visited ("tracking cookies"). These cookies contain a unique persistent identifier that allows an advertising network to recognize the user's computer and correlate the user's web-browsing activity with the computer.

19. Tracking cookies are placed, or "set," by either first parties or third parties. First-party cookies are placed by the website the user is visiting. For example, if a user visits <www.google.com>, any cookie that Google sets from that same domain <google.com> while the user is visiting that website is a first-party cookie. First-party cookies are often used to help websites remember certain information about a user, such as items in a shopping cart, a log-in name, or the user's preferences.

20. Third-party cookies are placed by a domain other than the one the user is visiting. For example, if a user visits <www.google.com>, a cookie placed from any domain other than <google.com> is a third-party cookie. Third-party cookies are usually set by an advertising network or a company that serves content on the website a user is visiting, such as a banner ad.

21. An advertising network may set tracking cookies in either the third-party or first-party context. For instance, if a user clicks on an advertisement, the advertising network may set a first-party tracking cookie on the user's browser. An advertising network can place a third-party tracking cookie when a user merely visits a website where the network displays an ad.

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF

5

22. By placing a tracking cookie on a user's browser, an advertising network may collect information about the user's web-browsing activities and use that information to serve online advertisements that are targeted to the user's predicted interests.

### Defendant's DoubleClick Advertising Cookie

23. Google uses the "DoubleClick Advertising Cookie" to collect information and serve targeted advertisements to users who visit Google websites, Google partner websites, and websites that use Google's advertising services.

24. Notably, Google sets the DoubleClick Advertising Cookie on the user's computer from the <doubleclick.net> domain. Therefore, when a user visits a website on a domain other than <doubleclick.net>, a cookie set from <doubleclick.net> is a third-party cookie. But when a user clicks on a DoubleClick advertisement, a cookie set from <doubleclick.net> is a first-party cookie.

25. Through each DoubleClick Advertising Cookie, Google assigns a unique persistent identifier to a user, which enables Google to collect and use information about that user, including the user's IP address and web-browsing activity. Through each cookie's unique persistent identifier, Google can track that user's activity and Google's advertising network can link the user's web-browsing activity to the computer over time.

26. Based on the information Google collects via the DoubleClick Advertising Cookie, Google creates predicted interest categories for a user and considers what advertising is most likely to appeal to that user. Once Google has linked interest categories with a particular user's computer, Google uses the cookie's unique persistent identifier to serve targeted advertisements tailored to the user's predicted interests during his or her online activity.

### Safari Browser Privacy Controls

27. Web browsers provide users with different ways to delete, block, or limit cookies set on their browser.

28. Through a web browser's privacy settings, users can choose to categorically block or accept all cookies, or to block cookies from particular websites or domains. Certain browsers

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF

6

allow users to block all third-party cookies.

29. Apple's Safari browser blocks third-party cookies by default. Apple advertises this default setting as a benefit of choosing Safari. Specifically, Apple states: "Some companies track the cookies generated by the websites you visit, so they can gather and sell information about your web activity. Safari is the first browser that blocks these tracking cookies by default, better protecting your privacy."

30. The Safari browser, however, allows third-party cookies in certain exceptional circumstances. In particular, it permits third-party cookies if a user submits information via a form embedded within the webpage, known as a "form submission." For example, when a user submits information through a website (such as typing a mailing address to make an online purchase or filling out an online customer survey), that website may seek to set third-party cookies on the user's browser. In such cases, the Safari browser accepts third-party cookies.

31. Significantly, the Safari browser's default setting blocks third-party cookies *only* from a *new* domain. Once the Safari browser accepts (and retains) a cookie, Safari will allow *any* additional cookies from that same domain. In other words, once Safari allows a cookie from the <doubleclick.net> domain, it will allow any additional cookies from <doubleclick.net>.

### Defendant's Advertising Privacy Controls

32. Since entering the online advertising market, Google has acknowledged that some users would be wary of targeted advertising. Google therefore permits users who do not want their information collected or used for the delivery of targeted advertising to "opt out."

33. A user may opt out of targeted advertising either by clicking a button on Google's Ads Preferences webpage ("opt-out button") or by downloading Google's "advertising cookie opt-out plugin." Both of these options place an "opt-out cookie" on the user's browser. (Google uses the term "opt-out cookie" interchangeably with the term "the DoubleClick opt-out cookie.")

34. The opt-out button saves the opt-out cookie temporarily on a user's browser until the user clears or deletes the browser's cookies. The plugin saves the opt-out cookie

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF

7

permanently on a user's browser, so that if a user deletes or clears the browser's cookies, the opt-out cookie will remain.

35. Google gives users of three browsers (Internet Explorer, Firefox, and Google Chrome) the ability to download the plugin. For technical reasons, Google does not offer the plugin to users of the Safari browser.

## DEFENDANT'S STATEMENTS

36. However, Google told Safari users that they did not need to take any action to be opted out of DoubleClick targeted advertisements.

37. Google assured Safari users that the Safari default setting "effectively accomplishes the same thing as setting the opt-out cookie," as shown in the highlighted portions of the Google webpage for the Advertising Cookie Opt-out Plugin (highlighting added for emphasis):

**Google Advertising Cookie Opt-out Plugin**

Home
FAQs
Browser instructions

**Opting out permanently: Browser Instructions**

See instructions for: Internet Explorer, Firefox & Google Chrome | Safari | Other browsers

**Internet Explorer, Mozilla Firefox & Google Chrome**

You can download the plugin for Internet Explorer, for Firefox and for Google Chrome from the homepage of the Google advertising opt-out plugin.

**Instructions for Safari**

While we don't yet have a Safari version of the Google advertising cookie opt-out plugin, Safari is set by default to block all third-party cookies. If you have not changed those settings, this option effectively accomplishes the same thing as setting the opt-out cookie. To confirm that Safari is set up to block third-party cookies, do the following:

1. From Safari, select "Safari" in the menu bar, and then select "Preferences"
2. In the Preferences Dialog Box, select the "Security" tab
3. Make sure the "Accept cookies:" setting is set to "Only from sites you navigate to". You can also set this option to "Never", but this will prevent many web sites that rely on cookies from working.

**Instructions for other browsers**

Unfortunately, the plugin is not available for other browsers. You can always opt out using the Ads Preferences Manager, but without a special browser plugin, your opt-out setting will go away when you delete your browser's cookies (you would need to set it again manually).

If you're using another browser that's not mentioned above, you can look for a common feature, which accomplishes the same as setting the DoubleClick opt-out cookie: Find a setting in your browser's settings that allows you to only accept cookies from sites you visit, or only "first-party cookies". This option may also be described as "blocking third-party cookies."

©2010 Google - Home - Privacy Policy

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
8

38. Google made further assurances to all users (including Safari users), as follows:

    A. On its Advertising and Privacy page, Google states: "After you opt out, Google will not collect interest category information and you will not receive interest-based ads."

    B. On its Privacy Policy for Google Ads and Advertising Services page, Google stated:

> If you select the DoubleClick opt-out cookie, ads delivered to your browser by our ad-serving technology will not be served based on the DoubleClick cookie. Your DoubleClick opt-out cookie will not be uniquely identified . . . . As long as your browser retains the DoubleClick opt-out cookie, Google won't serve new DoubleClick cookies to your browser.

39. Notably, Google's statements in Paragraph 38 applied with equal force to first-party and third-party cookies.

40. Thus, Google represented to Safari users that, if they did not change the default setting, Google would not place DoubleClick Advertising Cookies on a user's browser, collect interest category information from or about the user, or serve targeted advertisements to the user.

### DEFENDANT'S CONDUCT

41. Despite its representations to Safari users, Google overrode the Safari default browser setting and placed the DoubleClick Advertising Cookie on Safari browsers.

42. Specifically, when a Safari user with the default browser setting visited a Google website, Google partner website, or website that used Google's advertising services, Google used code that was invisible to the user to communicate with that user's Safari browser. That communication stated, unbeknownst to the user, that the user was generating a "form submission." In reality, Google was setting a cookie on the user's browser (the "Initial Cookie").

43. As a direct result of that "form submission," the Safari browser accepted the Initial Cookie.

44. The Initial Cookie enables Google to store, collect, and transmit, in encrypted form, a user's Google Account ID.

45. Google set the Initial Cookie from the <doubleclick.net> domain, the same domain that Google uses to serve the DoubleClick Advertising Cookie.

46. After the Safari browser accepted the Initial Cookie, Google set additional third-party cookies (including but not limited to the DoubleClick Advertising Cookie) onto the user's browser.

47. Alternatively, Google set the DoubleClick Advertising Cookie as a first-party cookie on Safari browsers with the default setting whenever those Safari users clicked on a DoubleClick advertisement. In contrast, for users of other browsers (such as Internet Explorer, Firefox, and Chrome) who had opted out of targeted advertising, Google did not set the DoubleClick Advertising Cookie as a first-party cookie when those users clicked on a DoubleClick advertisement.

48. Setting these cookies onto users' Safari browsers enabled Google to collect information about, and serve targeted advertisements to, these users.

## FIRST CAUSE OF ACTION

### (Collecting Covered Information)

49. Through the statements on its website referred to in Paragraphs 37-40, including but not necessarily limited to those materials attached as Exhibit B, Defendant represented to Safari users, directly or by implication, that it would not place DoubleClick Advertising Cookies on the browsers of Safari users who had not changed the default browser setting, or collect or use information from or about users' web-browsing activity, including interest category information, from Safari users who had not changed the default browser setting.

50. In truth and in fact, Defendant placed DoubleClick Advertising Cookies on the browsers of Safari users with the default setting and to whom Google made the representations referred to in Paragraph 49, and Defendant collected and used information from or about users' web-browsing activity, including interest category information, from Safari users with the default setting and to whom Google made the representations referred to in Paragraph 49.

51. Based on the facts described in Paragraphs 49-50, Defendant misrepresented the extent to which users may exercise control over the collection or use of covered information, thereby violating Part I(A) of the Google Consent Order.

## SECOND CAUSE OF ACTION

### (Serving Targeted Advertisements)

52. Through the statements on its website referred to in Paragraphs 37-40, including but not necessarily limited to those materials attached as Exhibit B, Defendant represented to Safari users, directly or by implication, that it would not serve targeted advertisements based on information collected via the DoubleClick Advertising Cookie to Safari users who had not changed their default browser setting.

53. In truth and in fact, Defendant did serve targeted advertisements based on information collected via the DoubleClick Advertising Cookie to Safari users with the default setting and to whom Google made the representations referred to in Paragraph 52.

54. Based on the facts described in Paragraphs 52-53, Defendant misrepresented the extent to which users may exercise control over the collection or use of covered information, thereby violating Part I(A) of the Google Consent Order.

## THIRD CAUSE OF ACTION

### (Misrepresenting NAI Code Compliance)

55. Through the statements on its website referred to in Paragraph 16, including but not necessarily limited to those materials attached as Exhibit B, Defendant represented, directly or by implication, that it adheres to or complies with the NAI Code, which is a privacy, security, or compliance program that requires Defendant to disclose its data collection and use practices.

56. In truth and in fact, Defendant did not disclose the data collection and use practices described in Paragraphs 41-48, thereby violating Section III(2)(a) of the NAI Code referred to in Paragraph 15.

57. Based on the facts described in Paragraphs 55-56, Defendant misrepresented the

extent to which it adheres to or complies with a privacy, security, or compliance program, thereby violating Part I(B) of the Google Consent Order.

### CIVIL PENALTIES

58. Each misrepresentation to Safari users by Google that it would not place the DoubleClick Advertising Cookie or collect or use interest category information, in violation of the Google Consent Order, as described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

59. Each misrepresentation to Safari users by Google that it would not serve targeted ads based on information collected via the DoubleClick Advertising Cookie, in violation of the Google Consent Order, as described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

60. Each misrepresentation by Google that it adhered to or complied with the NAI Code, in violation of the Google Consent Order, as described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

61. Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*), as modified by Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and Section 1.98(c) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(c), authorizes the Court to award monetary civil penalties of not more than $16,000 for each such violation of the Google Consent Order.

62. Under Sections 5(*l*) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(*l*) and 53(b), this Court is authorized to permanently enjoin Defendant from violating the Google Consent Order as well as to grant ancillary relief.

### PRAYER FOR RELIEF

63. WHEREFORE, Plaintiff requests this Court, pursuant to 15 U.S.C. §§ 45(*l*) and 56(a), and pursuant to the Court's own equitable powers to:

(1) Enter judgment against Defendant and in favor of the Plaintiff for each violation of the Google Consent Order alleged in this Complaint;

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
12

(2) Award Plaintiff monetary civil penalties from Defendant for each violation of the Google Consent Order alleged in this Complaint;

(3) Enjoin Defendant from violating the Google Consent Order issued in Docket No. C-4336;

(4) Award Plaintiff its costs and attorneys' fees incurred in connection with this action; and

(5) Award Plaintiff such additional relief as the Court may deem just and proper.

Date: Aug. 8, 2012

**Of Counsel:**

JAMES A. KOHM
Associate Director for Enforcement

LAURA KIM
Assistant Director for Enforcement

MEGAN E. GRAY
Attorney
MEGAN A. BARTLEY
Attorney
Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
600 Pennsylvania Avenue, N.W.
Mail Drop M-8102B
Washington, DC 20580
(202) 326-3408, mgray@ftc.gov
(202) 326-3424, mbartley@ftc.gov
(202) 326-2558 (fax)

**Respectfully submitted:**

STUART F. DELERY
Acting Assistant Attorney General,
Civil Division

MELINDA HAAG (CABN 132612)
United States Attorney
for the Northern District of California

MAAME EWUSI-MENSAH FRIMPONG
(CABN 222986)
Deputy Assistant Attorney General, Civil
Division

MICHAEL S. BLUME (PA 78525)
Director, Consumer Protection Branch

_/s/_

ADRIENNE E. FOWLER (member in
good standing of the New York bar)
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
450 5th St. NW, Suite 6400
Washington, DC 20530
(202) 514-9471
(202) 514-8742 (fax)
Adrienne.E.Fowler@usdoj.gov

COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF
14