## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION<br><br>This Document Relates To:<br>**All Actions** | C.A. No. 12-MD-02358 (SLR) |
| NOBLES v. GOOGLE INC. and POINTROLL, INC. | C.A. No. 12-CV-01000 (SLR) |
| DOGGA and BERMUDEZ v. GOOGLE INC. | C.A. No. 12-CV-01003 (SLR) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION PURSUANT TO FED. R. CIV. P. 42(a) AND APPOINTMENT OF INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)

**KEEFE BARTELS, LLC**
Stephen G. Grygiel (Del. Bar No. 4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth St.
Red Bank, NJ 07701
732-224-9400
*sgrygiel@keefebartels.com*

*Counsel for Plaintiff Ana Yngelmo, Plaintiff Larry Sossin and Proposed Executive Committee Member*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertson, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
913-266-2300
*jimf@bflawfirm.com*

*Counsel for Plaintiff James Henry Rischar and Proposed Executive Committee Member*

**STRANGE & CARPENTER**
Brian Russell Strange
Keith Butler
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
310-207-5055
*lacounsel@earthlink.net*

*Counsel for Plaintiff Lourdes Villegas and Proposed Executive Committee Member*

**STEWARTS LAW US LLP**
David A. Straite (Del. Bar No. 5428)
Ralph N. Sianni (Del. Bar No. 4151)
Michele S. Carino (Del. Bar No. 5576)
Lydia E. York (Del. Bar No. 5584)
1201 North Orange Street
Wilmington, DE 19801
302-298-1200
*dstraite@stewartslaw.com*

*Counsel for Plaintiffs Matthew Soble and Bert Glaser, Proposed Steering Committee Member and Proposed Liaison Counsel*

DATED: AUGUST 28, 2012

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.    INTRODUCTION ...........................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................2

III.  STATEMENT OF STAGE OF THE PROCEEDINGS, L.R. 7.1.3(c)(1)(C)....................3

IV.   SUMMARY OF ARGUMENT, L.R. 7.1.3(c)(1)(D) ...........................................4

      A.  *Dogga* and *Nobles* Should be Consolidated with the MDL for All Pretrial Purposes
          Pursuant to Rule 42(a). ...........................................................................4

      B.  The Proposed Leadership Structure Is In the Best Interests of the Putative Class........6

      C.  Appointing Interim Lead Class Counsel is Appropriate Under Rule 23(g) and Will
          Protect the Interests of the Putative Plaintiff Class ...........................................9

      D.  Proposed Interim Class Counsel Will Fairly and Adequately Represent the Interests
          of Plaintiffs and the Putative Class..........................................................10

      E.  Brief Introduction to Proposed Leadership Firms ........................................12

      F.  Proposed Leadership Group Fully Satisfies 23(g) Criteria .............................15

          1.  Counsel's Work to Identify or Investigate Potential Claims...............................15

          2.  Counsel's Experience in Handling Class Actions, Other Complex Litigation and
              Claims of the Type Asserted in this Case. ...............................................16

          3.  Counsel's Knowledge of Applicable Law. ...............................................19

          4.  Counsel Pledge Resources Properly to Represent the Class ................................19

V.    CONCLUSION, L.R. 7.1.3(c)(1(G) ...............................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alston v. Countrywide Fin. Corp. v. Countrywide*, 585 F.3d 783 (3d Cir. 2009) ........................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................17

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) ......................................................17

*Behrend v. Comcast Corp.*, 655 F. 3d 182 (3d Cir. 2011)..............................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................17

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................................11

*Blumofe v. Pharmatrak, Inc. (In re Pharmatrak Priv. Litig.)*, 329 F.3d 9 (1st Cir. 2003). ...........16

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011)................................................16

*Dutton v. Harris Stratex Networks, Inc.*, Civ. No. 08-755, 2009 WL 1598408 (D. Del. 2009)......4

*Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010), *cert granted in part*, 131 S. Ct.
   3022 (2011), *cert dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) ......................11

*Gaos v. Google, Inc.*, 2012 WL 1094646 (N.D. Cal. Mar. 29, 2012) ...........................................11

*Golod v. Bank of America*, 2009 WL 1605309 (D. Del. June 4, 2009).........................................17

*Harrington v. City of Albuquerque*, 222 F.R.D. 505 (D.N.M. 2004) ...........................................14

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)................................................................11

*In re Dollar Thrifty Shareholder Litig.*, Case No. 5458-VCS.......................................................12

*In re DRAM Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal., June 5, 2006).................7

*In re Facebook Internet Tracking Litig.*, No. 5:12 md-02314- EJD (N.D. Cal., Davila, J.) .....7, 13

*In re Hulu Privacy Litig.*, No. C11-03764-LB (N.D. Cal., Beeler, Mag. J.) ...........................7, 12

*In Re Hydrogen Peroxide Antitrust Litig.*, 240 F.R.D. 163 (E.D. Pa. 2007) ...................................7

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008).......................................16

*In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717 (D. Del. Apr. 18, 2006) .....7

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11-MD-2262 (NRB), 2011 U.S. Dist. LEXIS 137242 (S.D.N.Y. Nov. 29, 2011) .......................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ...............................7

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) .......................................................4

*In re Schering-Plough Corp. Temodar/Intron Consumer Class Action,* Case Nos. 10-3046 & 10-3047 ..............................................................................................................................................12

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,  MDL No. 2258 ........12

*In Re: Polyurethane Foam Antitrust Litig.*, pending in the United States District Court for the Northern District of Ohio, MDL No. 2196 ...............................................................................12

*Johnson v. Celotex Corp.*, 899 F.2d 1281  (2d Cir. 1990) ..............................................................5

*Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164 (3d Cir. 2001) ...........................11

*King v. VeriFone*, 994 A.2d 354 (Del. Ch. Ct. 2010) ...................................................................10

*Konop v. Hawaiian Airlines, Inc.,* 302 F. 3d 868 (9th Cir. 2002) .................................................8

*Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012) .......................................................................11

*Linda R. S. v. Richard D.,* 410 U.S. 614 n.3 (1973) ....................................................................11

*Low v. LinkedIn Corp.*, 2012 WL 2873847 (N.D. Cal. July 12, 2012) .........................................15

*Malasky v. IAC/Interactive Corp.*, 2004 U.S. Dist. Lexis 25832 (S.D.N.Y. Dec. 21, 2004) ..........7

*Mariana v. Fisher*, 338 F.3d 189 (3d Cir. 2003) .........................................................................11

*Outten v. Wilmington Trust Corp.,* 281 F.R.D. 193 (D. Del. 2012) ........................................6, 10

*Phillips v. Cty of Allegheny*, 515 F. 3d 224 (3d Cir. 2008) .........................................................17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004)....................................................................................................................7

*Resnik v. Woertz*, 774 F. Supp. 2d 614 (D. Del. 2011) .................................................................4

*U.S. v. Councilman*, 418 F. 3d 67 (1st Cir. *en banc*, 2005) .........................................................16

*U.S. v. Knauer*, 149 F.2d 519 (7th Cir. 1945), *certiorari granted*, 326 U.S. 714, *aff'd*, 328 U.S. 654, *reh'g denied*, 329 U.S. 818, *petition denied*, 322 U.S. 834 ..................................................4

*U.S. v. Smith*, 155 F.3d 1051 (9th Cir. 1998). ..................................................................8

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 773 (9th Cir. 1977) ..........................4, 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ..............................................................................11

**Statutes**

28 U.S.C. § 1401 ..................................................................................................................3

28 U.S.C. § 1407 ..................................................................................................................3

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.631 (2004) ............................................4, 6, 9

THIRD CIR. TASK FORCE REPORT ON SELECTION OF CLASS COUNSEL, 208 F.R.D. 340 (2002) .......6

**Rules**

Fed. R. Civ. P. 1 ..................................................................................................................2

Fed. R. Civ. P. 23(g)(2) ......................................................................................................1

Fed. R. Civ. P. 23(g)(3) ......................................................................................................9

Fed. R. Civ. P. 23(g)(4) ......................................................................................................9

Fed. R. Civ. P. 42(a) .......................................................................................................1, 5

## I.    INTRODUCTION

Twenty-four similar purported class actions have been related and transferred to this Court by the United States Judicial Panel on Multidistrict Litigation ("JPML") or otherwise accepted as related by order of this Court.[1] All 24 Related Actions are on behalf of similarly situated plaintiffs, seek to represent substantially the same class of people, are based on similar factual allegations, and, with some differences, allege essentially the same legal claims. All of the actions allege claims against Google Inc. ("Google"). Two also allege claims against PointRoll, Inc. ("PointRoll"), which, Plaintiffs allege, provided a "cookie helper script [that] circumvents Safari's cookie blocking."[2] Five assert claims against "Doe" defendants.[3] The Court has already consolidated 22 of the 24 Related Actions. Two additional actions, *Dogga and Bermudez v. Google Inc.*, C.A. No. 3:12-cv-01046 (D. Conn.) (MDL D.I. 20), and *Nobles v. Google, Inc. and PointRoll, Inc.*, C.A. No. 12-cv-03589 (N.D. Cal.) (MDL D.I. 23), were only recently transferred to this Court. The plaintiffs in 16 of these 24 Related Actions (collectively, the "Moving Plaintiffs")[4] move this Court for an order:

(1)    Consolidating *Dogga* and *Nobles* with *In re Google Inc. Cookie Placement Consumer Privacy Litig.* (hereinafter the "MDL") for all pretrial purposes pursuant to Fed. R. Civ. P. 42(a);

---

[1] *See* **Exhibit A**, attached (hereinafter the "Related Actions").

[2] *See Villegas v. Google, Inc. and PointRoll, Inc.* (filed by Strange & Carpenter, one of the prospective Executive Committee members); *Nobles v. Google, Inc. and PointRoll, Inc.*

[3] *See Burdick v. Google, Inc., and Does 1 through 10; Gourley v. Google, Inc. and Does 1 through 10; Martorana v. Google, Inc. and Does 1 through 10; Movitz v. Google, Inc. and John Does 1 through 10; Rischar v. Google, Inc. and Does 1 through 10.*

[4] The Moving Plaintiffs are the plaintiffs in the cases identified in Attachment A to the Motion for Consolidation and Appointment for Interim Class Counsel and in the signature blocks below.

(2)    Appointing Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(2); and

(3)    Setting a deadline of Monday, October 22, 2012 for the filing of a Consolidated

Class Action Complaint.

Moving Plaintiffs bring this motion on the following grounds: (1) the Actions are substantially identical; consolidating them will promote efficiency for the court, litigants and counsel; and (2) Moving Plaintiffs' proposed leadership structure will competently and vigorously represent all plaintiffs and putative class members, promote efficiency, and advance "the just, speedy and inexpensive determination" of the Actions. Fed. R. Civ. P. 1.

## II.    FACTUAL BACKGROUND

Moving Plaintiffs will not burden the Court with a detailed recitation of what appears in the many complaints already on file. Summarizing, Apple's Safari browser acts as a privacy control in its default setting by blocking cookies[5] from sites other than the site being visited. Plaintiffs centrally allege that Google purposefully circumvented Safari's privacy settings by writing code permitting Google to track users' behavior on non-Google sites without the users' consent. This tracking contradicted Google's own statements to users. For example, Google's Terms of Service, as of March 1, 2012, stated: "We believe that you own your own data and preserving your access to such data is important." Precept No. 6 of Google's Ten Commandments ("Ten Things We Know to Be True") says: "You can make money without doing evil."

Google's dismantling of the Safari cookie blocker was, Plaintiffs allege, deliberate, in part resulting from Google's competition with Facebook. Facebook came up with the "Like"

---

[5] Simplifying substantially, cookies store information such as user preferences, and session information, for example whether an internet user on a shopping spree has items in the cyber shopping cart. Another way to think usefully about "cookies" is as small bits of data sent between internet browsers and websites.

2

Button.  Google wanted to compete with that "Like" button.  Google added a "+1" button to select Google ads.  Google+ users could click that button to show they "liked" those ads.  But, Google had a substantial technical problem.  Google+ and Google Ads were on separate "domains."  Interfacing between these two separate domains required use of third party cookies.  But Safari blocks these third party cookies by default.

Google's problem was that most Safari users, a big user constituency and large market base, would be unable to use Google's new feature.  Google solved this problem by exploiting a flaw (an exception) in Safari's "no third-party cookie" policy.  Safari *allows* third-party cookies when a user submits an HTML form.  Google surreptitiously and unlawfully created an invisible form, which Google submitted any time a user clicked the "+1."  This triggered the Safari exception, and, accordingly, permitted the creation of third-party cookies by Google Ads.

A Stanford University study exposed how Google used this end-run, backdoor gimmick to create cookies that not only enabled the "+1" functionality but also set up the general Google Ads tracking cookie.  That general Google Ads tracking cookie monitors users' browsing behavior.

Google said they "didn't anticipate that this [setting up the general Google Ads tracking cookie] would happen," and said they "now started removing these advertising cookies from Safari browsers."

## III.    STATEMENT OF STAGE OF THE PROCEEDINGS, L.R. 7.1.3(c)(1)(C)

On June 12, 2012, the JPML issued an order pursuant to 28 U.S.C. § 1401 transferring the MDL and associated actions to this Court.[6]  On July 27, 2012, pursuant to a stipulation

---

[6] While proposed executive committee members Keefe Bartels and Bartimus, Frickleton, Robertson & Gorny moved for transfer to this district, proposed executive member Strange & Carpenter moved the JPML for transfer to the Northern District of California where Google is headquartered.    The Moving Plaintiffs do not have standing alliances with one another, on this

among counsel ("Stipulation"), this Court consolidated 22 of these actions with the MDL for all pretrial purposes.[7] *See* MDL D.I. 22.

Plaintiffs represented in the Stipulation that they anticipated filing a joint proposal for the Court's appointment of Lead Counsel, but, if the Plaintiffs' counsel could not agree on an organizational structure, Plaintiffs would file motions and other papers as appropriate. *See* MDL D.I. 22, ¶ 12.

## IV.    SUMMARY OF ARGUMENT, L.R. 7.1.3(c)(1)(D)

Moving Plaintiffs understand that a "district judge must protect the class's interests by acting as a fiduciary for the class." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d Cir. 2005). We share that fiduciary role and believe this proposed organizational structure and plans for litigating and trying the case, fulfill it.

### A.    *Dogga* and *Nobles* Should be Consolidated with the MDL for All Pretrial Purposes Pursuant to Fed. R. Civ. P. 42(a).

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.631, at 121-22 (2004) ("MCL"); *Dutton v. Harris Stratex Networks, Inc.*, Civ. No. 08-755, 2009 WL 1598408 (D. Del. 2009). Subdivision (a) of this rule was designed to encourage consolidations. *See U.S. v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), *certiorari granted*, 326 U.S. 714, *aff'd*, 328 U.S. 654, *reh'g denied*, 329 U.S. 818, *petition denied*, 322 U.S. 834. This Court has broad discretion under

---

case or otherwise. In fact, these attorneys and firms independently filed their respective cases, advocated divergent MDL transferee venues, and at times, opposed each others' respective positions up to and including at the JPML hearing at which the 28 U.S.C. § 1407 motion was heard and adjudicated. In the ensuing weeks, however, much analysis and discussion occurred among these attorneys. After careful consideration, they decided to collaborate, collectively believing that would produce the best representation of Plaintiffs' and other class members' interests in this litigation.

[7] Proposed lead counsel Strange & Carpenter and Keefe Bartels drafted this Stipulation to help the organization of this MDL.

this rule to consolidate cases within this district, "balance[ing] considerations of efficiency, expense, and fairness." *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624 (D. Del. 2011).

Courts have recognized that putative class actions are particularly well-suited for Rule 42(a) consolidation. Such consolidation expedites pretrial proceedings, reduces duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all involved. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 773 (9th Cir. 1977). Consolidating class action suits simplifies pretrial and discovery motions, class action issues, and clerical and administrative management duties. Consolidation also reduces the confusion and delay that may result from prosecuting related putative class actions separately. *Id.*

The Related Actions all allege identical claims related to Google's alleged illegal circumvention of privacy settings on Apple's Safari browser. The Related Actions all name the same defendant, Google Inc., and involve substantially similar factual and legal issues. Consolidation is appropriate where – as here – there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The substantial overlap of the factual and legal issues in the Related Actions satisfies that "common questions" test. No factual or legal predicate in either *Dogga* or *Nobles* mitigates against consolidation of those cases with the 22 already consolidated. The plaintiffs in both *Dogga* and *Nobles* consent to consolidation and join in this motion.

**B.    The Proposed Leadership Structure Is In the Best Interests of the Putative Class**

The Moving Plaintiffs propose a leadership structure that brings a depth of experience, expertise, and resources to the prosecution of this complex class action while remaining sufficiently nimble to provide the necessary manageability.

1.    *The Proposed Leadership Structure*

(a)    An Executive Committee consisting of:

      (i)    Keefe Bartels, LLC (Red Bank, NJ)

      (ii)    Bartimus, Frickleton, Robertson & Gorny, P.C. (Jefferson City, MO and Leawood, KS)

      (iii)    Strange & Carpenter (Los Angeles, CA)

(b)    A Plaintiffs' Steering Committee consisting of:

      (i)    David Straite, of Stewarts Law (London, UK; Leeds, UK; New York, NY; and Wilmington, DE)

      (ii)    Jonathan Shub, of Seeger Weiss LLP (New York, NY; Philadelphia, PA; Newark, NJ; and Los Angeles, CA)

      (iii)    Barry Eichen, of Eichen, Crutchlow, Zaslow & McElroy, LLP (Edison, NJ and Red Bank, NJ)

      (iv)    William "Billy" Murphy, of Murphy, P.A. (Baltimore, MD)

      (v)    Mark Bryant, of The Bryant Law Center, PSC (Paducah, KY)

      (vi)    Jay Barnes, of Barnes & Associates (Jefferson City, MO)

2.    *Liaison Counsel*

Moving Plaintiffs also respectfully request that Plaintiffs' Steering Committee member Stewarts Law, through its Wilmington, Delaware office, be appointed Interim Liaison Counsel for the Class.

### 3.    *The Benefits of the Proposed Structure*

This case's broad scope and inherent legal and factual complexity necessitate even more than usual a sound case management structure and careful choices about the occupants of the leadership spots.  The Proposed Leadership Structure will best serve the interests of Plaintiffs and the proposed plaintiff class.  Leading commentators and the Manual for Complex Litigation advise: "court[s] should be cognizant of the possibility that the class could benefit from the combined resources and expertise of a number of class counsel, especially in a complex case where the defendants are represented by a number of large and highly qualified law firms." Third Circuit Task Force Report on Selection of Class Counsel, 208 F.R.D. 340, 417 (2002) (footnote omitted); *see also* MCL, § 10.221 (noting benefit to having multiple lead counsel in large class action cases).  For these reasons, federal district courts frequently approve multi-firm leadership structures in complex class actions. *See, e.g., Outten v. Wilmington Trust Corp.,* 281 F.R.D. 193, 199 (D. Del. 2012) (Robinson, J.) ("Appointment of co-lead counsel with liaison counsel . . . will not necessarily be "cumbersome" or "inefficient" and appointment of a single firm is not always ideal."); *In Re Hydrogen Peroxide Antitrust Litig.,* 240 F.R.D. 163, 177 (E.D. Pa. 2007) (appointing four-firm structure as co-lead counsel); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 46, 49 (S.D.N.Y. 1998) (approving multiple counsel arrangement, finding pooling of resources and experience was advantageous given "magnitude" of the class action and to "ensure that the litigation will proceed expeditiously against Oxford and the experienced counsel it has retained to represent it"); *In re DRAM Antitrust Litig.,* 2006 U.S. Dist. LEXIS 39841 at *53 (N.D. Cal., June 5, 2006) (appointing three-firm structure as co-lead counsel).[8]

---

[8]    Courts have also noted the "benefits of joint decision-making" afforded by multiple representation in the class action context. *See, e.g., Malasky v. IAC/Interactive Corp.,* 2004 U.S.

Not merely beneficial, the Proposed Leadership Structure here will prosper the informed, aggressive prosecution and efficient management of this class action, which potentially involves 150 million class members.  Believing, based on investigation, consultation with experts, and analysis of the governing law that their claims are strong, the Moving Plaintiffs also know from their other cyberspace privacy rights cases (*e.g. In re Facebook Internet Tracking Litig.*, No. 5:12 md-02314 (N.D. Cal.) (Davila, J.) and *In re Hulu Privacy Litig.*, No. C11-03764-LB (N.D. Cal.) (Beeler, Mag. J.)), that this case will require the often intricate application of established federal privacy rights statutes – the Wiretap Act, the Stored Communications Act and the Computer Fraud and Abuse Act – and possibly state statutory and common law causes of action to evolving cyberspace commercial practices.[9]  Moving Plaintiffs' counsel are fully prepared now to plead those complexities in a manner direct and clear, to obtain discovery demonstrating why Google's, PointRoll's and potentially other defendants' illicit tracking intentionally captured private information in transit, triggering Wiretap Act liability.

Especially in light of the cutting-edge legal issues this case presents, no room for any management inefficiency remains.  Represented by one of the country's largest and most experienced defense firms, Google, flush with cash, is abundantly prepared to defend the case. This will be one of the largest purported class actions in history.  Discovery could involve millions of pages of documents as well as multiple technical depositions, requiring knowledgeable and experienced lawyers, with the help of experts, paralegals and staff, to

---

Dist. Lexis 25832, at *14 (S.D.N.Y. Dec. 21, 2004); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004).

[9] *See, e.g., Konop v. Hawaiian Airlines, Inc.*, 302 F. 3d 868, 874 (9th Cir. 2002) ("the intersection of these two statutes [the Wiretap Act and the Stored Communications Act] 'is a complex, often convoluted, area of the law'" (quoting *U.S. v. Smith*, 155 F. 3d 1051, 1055 (9th Cir. 1998)).  *See also* Orin S. Kerr, *Lifting the "Fog" of Internet Surveillance: How a Suppression Remedy Would Change Computer Crime Law*, 54 Hastings L. J. 805, 820 (2003) ("[t]he law of electronic surveillance is famously complex, if not entirely impenetrable.").

establish review protocols and to ensure proper document analysis in a relatively short time. This case will be expert-intensive. Extensive motion practice is virtually certain, on the pleadings, procedural and merits issues, and discovery. The path to trial or settlement is unlikely to be short or simple. Needless to say, these tasks will entail substantial financial commitments that the proposed co-lead counsel can make and will share.

The Proposed Leadership Structure draws on the experience and expertise of a large number of law firms, yet still provides the Court and Defendants with the convenience of a small Executive Committee. The Moving Plaintiffs also propose to further streamline the case by having a member of the Steering Committee experienced in digital privacy law (and one with an office in Wilmington just a few blocks from the Court) perform the additional role of liaison counsel to assist with filings and court appearances as needed. In this way, the Proposed Leadership Structure combines a large number of attorneys with proven commitment to responsible advocacy, and the convenience of a small Executive Committee and single Liaison Counsel simplifying decision-making and communications with the Court and Defendants.[10]

### C. Appointing Interim Class Counsel is Appropriate Under Rule 23(g) and Will Protect the Interests of the Putative Plaintiff Class

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Interim counsel is charged with conducting pre-certification discovery, motion practice, and any settlement discussions on behalf of the proposed class as well as the named representative. Note of Advisory Comm. on 2003 Amendment to Rule 23. Where, as here, multiple class actions are pending, appointment of

---

[10] In addition to their expertise in this area, counsel for Moving Plaintiffs are a geographically diverse group having firms in Wilmington, Los Angeles, London, Kansas City, Baltimore, New York, Leeds, Philadelphia, Kentucky, Missouri and New Jersey.

interim class counsel is necessary to protect the interests of class members because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MCL, § 21.11.

### D. Proposed Interim Class Counsel Will Fairly and Adequately Represent the Interests of Plaintiffs and the Putative Class

Attorneys appointed to serve as interim class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Although Rule 23 does not explicitly state what standards apply when appointing interim class counsel, courts have applied the following factors from Rule 23(g)(1)(A): (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See Outten*, 281 F.R.D. at 197; *In re LIBOR-Based Financial Instruments Antitrust Litig.*, C.A. No. 11-MD-2262 (NRB), 2011 U.S. Dist. LEXIS 137242 (S.D.N.Y. Nov. 29, 2011) (the factors set forth for appointing class counsel should also be considered when appointing interim class counsel). No single factor is determinative; all factors must be considered. Advisory Committee Notes (2003 Amendments). Nonetheless, as this Court has stated, "[e]xperience and knowledge of the law is of the utmost importance when determining lead counsel." *Outten*, 281 F. R. D. at 200.[11]

---

[11] One might argue that this memorandum's legal detail "tips the plaintiffs' hand" to the Defendant, demonstrating Counsel's supposedly insufficient savvy to lead the case. But the Court's primary emphasis on a proposed leadership group's "knowledge of the law," *see Outten*, 281 F.R.D. at 200, requires Counsel to *show* the requisite legal knowledge. Defendants' counsel are top-flight lawyers highly experienced in cyberspace privacy rights cases. Surprising them with case law is unlikely. Finally, the perhaps higher than usual level of legal detail here is

Replete with the requisite "experience" and possessing highly detailed, experientially tested "knowledge of the law," the Moving Plaintiffs' proposed leadership structure fully satisfies each of these criteria. Beyond the usual chest-thumping "look what we have already done" steps that prospective leadership lawyers often tout – button-pushing discovery requests, rote disclosures, uncontested stipulations, and "I sat at the counsel table first"[12] – plaintiffs here have gone beyond such steps. Moving Plaintiffs' counsel have engaged and consulted with experts, analyzed the legal claims and defenses in light of the tricky permutations of cyberspace "transit" and "storage," learned not just the contours but the substance of the rapidly evolving law of the Wiretap Act and Stored Communications Act, and developed arguments to refute Defendants' inevitable arguments.

For example, Defendants are certain to make standing a centerpiece of their defense. Handling this case, then, mandates intimate conversance, which Moving Plaintiffs' counsel have, with the intersecting principles in privacy cases of Art. III standing (*see, e.g., Warth v. Seldin*, 422 U.S. 490, 498-501 (1975)), statutory standing (*see, e.g., Edwards v. First American Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), *cert granted in part*, 131 S. Ct. 3022 (2011), *cert dismissed as improvidently granted*, 132 S. Ct. 2536 (2012), *Alston v. Countrywide Fin. Corp.* 585 F.3d 753 (3d Cir. 2009)), and prudential standing (*see, e.g., Joint Stock Society v. UDV North America, Inc.*, 266 F. 3d 164, 179 (3d Cir. 2001)).[13] Counsel is prepared to handle any defense argument

---

partly necessitated by the declination of one group to accept the proposed leadership structure the large majority supports.

[12] A variant of Chancellor Strine's lament about the "filing Olympics" and "lead counsel Olympics race." *See King v. VeriFone Hldgs., Inc.*, 994 A.2d 354, 355, 357-59 (Del. Ch. 2010).

[13] Prudential standing is much less a concern when statutory standing is present because courts presume that Congress attended to prudential standing principles when creating statutes conferring standing. *See, e.g., Joint Stock Society*, 266 F.3d at 179 (3d Cir. 2001) ("'Where Congress has expressly conferred standing by statute, prudential standing concerns are

that statutory standing mandates a two-fold injury-in-fact requirement: an invasion of the right conferred upon the plaintiff by the statute and some additional, usually monetary, harm. *See, e.g., Gaos v. Google, Inc.*, No. 5:10-CV-4809-EJD, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012) ("Google's argument fails because the SCA provides a right to judicial relief based only on a violation of the statute without additional injury"); *see also Alston,* 585 F.3d at 753 (RESPA case; plaintiff need not demonstrate monetary damages for Art. III standing, because injury-in-fact can result solely from invasion of statutorily-protected right) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) and *Linda R. S. v. Richard D.,* 410 U.S. 614, 617 n.3 (1973)).

### E.  Brief Introduction to Proposed Leadership Firms

Experienced in large class actions and with substantial privacy rights litigation experience, the proposed leadership firms have proven records of preparing and successfully

---

superseded.'") *(quoting Gen. Instrument,* 197 F.3d at 87 (in turn citing *Warth,* 422 U.S. at 501)). However, "Congress is presumed to incorporate background **prudential standing** principles, unless the statute expressly negates them." *Joint Stock Society*, 266 F.3d at 179 (citing *Conte Bros.*, 165 F.3d at 227 (in turn citing *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). In any event, the concerns of prudential standing can seem more theoretical than real. *See Lewis v. Alexander*, 685 F. 3d 325, 340 (3d Cir. 2012) (discussing the three requirements: "Prudential standing requires: (1) that a litigant assert his or her own legal interests rather than those of a third party; (2) that the grievance not be so abstract as to amount to a generalized grievance; (3) and that the Plaintiffs' interests are arguably within the 'zone of interests' protected by the statute, rule or constitutional provision on which the claim is based." (citing *Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003)). Prudential standing includes the limiting principle that the plaintiff assert his own interest not third parties' interest. That principle seems largely encompassed in the normative Art. III "injury in fact" standing requirement that the plaintiff have suffered harm that is actual or imminent, concrete and particularized, not just theoretical or speculative. Prudential standing precludes litigation of "abstract questions" and "generalized grievances." That requirement, too, seems largely subsumed within the "actual injury" prong of Art. III standing as well as the "redressability" prong. Prudential standing also requires demonstrating that the plaintiff is within the zone of interests protected by the constitutional, statutory or other legal provision at issue. Art. III's "traceability" requirement, linking the alleged "injury in fact" to the defendant's conduct, seems well up to the task, in most cases, of demonstrating satisfaction with the prudential "zone of protected interests" prudential test. But those are questions for another day, if at all.

trying cases. These firms together bring strong backgrounds in both large MDL cases and significant individual trial cases. While the attached Exhibits describe in much greater detail each firm's experience and expertise, the following brief summary demonstrates the strong qualifications of the proposed leadership structure to serve the plaintiffs and absent class members.

      1.    **Keefe Bartels:** Stephen Grygiel, a highly experienced trial and class action lawyer, is currently serving on the Plaintiffs' Steering Committee in the *In re Facebook Internet Tracking Litig.*, Case No. 5:12-md-02314 (EJD). He is centrally involved in briefing the opposition to the Defendant's Motion to Dismiss, preparing for the oral argument on that motion, working with experts, and drafting discovery.[14] The Keefe Bartels firm bio is attached as **Exhibit D**.

      2.    **Strange & Carpenter:** Brian R. Strange, founder of the firm, has been appointed to leadership in MDLs across the country[15] and is one of the pre-eminent lawyers nationally in internet and related privacy rights litigation. Mr. Strange is currently counsel in both the *Kissmetrics* and *Hulu* cases concerning internet "cookies" and privacy issues and is intimately familiar with the developing legal doctrines of cyberspace privacy law, as demonstrated by his

---

[14] *See* **Exhibit B**, Transcript at p. 21, Aug. 25, 2010 Oral Argument in *In re Dollar Thrifty S'holder Litig.,* Consol. C.A. No. 5458-VCS (Hertz Merger) (Vice-Chancellor, now Chancellor Leo V. Strine to Mr. Grygiel: "…look, you're a very, very good lawyer."); *see also* **Exhibit C**, Transcript at 16-17, October 9, 2008 Oral Argument in *In re Schering-Plough Corp. Temodar/Intron Consumer Class Action,* Case Nos. 10-3046 & 10-3047 (D.N.J.) (Hon. Stanley R. Chesler, U.S.D.J. to Mr. Grygiel: "I will tell you, you're very good").

[15]    For example, Mr. Strange was recently selected as one of the members of plaintiffs' leadership out of 16 applicants appointed to Plaintiffs' Steering Committee in *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, MDL No. 2258, by the Honorable Anthony J. Battaglia in the Southern District of California and was approved by Judge Jack Zouhary to serve on the Plaintiffs' Executive Committee in a consolidated antitrust case, *In Re: Polyurethane Foam Antitrust Litig.*, pending in the United States District Court for the Northern District of Ohio, MDL No. 2196, considered one of the largest antitrust cases in the last 10 years.

recent article "Privacy: Is it legal tracking or an illegal Wiretap?" published in the Advocate, July 2012. See **Exhibit E**. Mr. Strange's knowledge of California law may be important in this case against California-based Google to the extent California law applies class-wide. The Strange & Carpenter firm bio is attached as **Exhibit F**.

       3.     **Bartimus, Frickleton, Robertson & Gorny:** Jim Frickleton, a member of the American College of Trial Lawyers, is directly involved in numerous class actions. With his partner, Chip Robertson (former Chief Justice of Missouri), Jim is currently heavily involved in the privacy rights case described above, *In re Facebook Internet Tracking Litig.* The Bartimus, Frickleton firm bio is attached as **Exhibit G**.

       4.     **Stewarts Law:** London-based Stewarts Law, the UK's largest litigation-only firm with more than 100 lawyers across four offices (London, Leeds, New York and Wilmington), was recently appointed co-lead counsel in *In re Facebook Internet Tracking Litigation* in the Northern District of California. Stewarts Law partner David Straite, based in Wilmington and New York, has been active in pursuing digital privacy rights and has spoken frequently on the topic, including interviews with BBC World News (London), Sky News (London) and Channel 10 (Tel Aviv), and a 30-minute podcast on the "Digital Detectives" show on the Legal Talk Network. MIT's "Technology Review" magazine last month called Mr. Straite "somewhat of a pioneer" in digital privacy rights cases. The Stewarts Law firm bio is attached as **Exhibit H**.

       5.     **Seeger Weiss:** Jon Schub brings the enormous legal acumen, courtroom expertise and resources of his top-tier firm to the group. Seeger Weiss has long been in the vanguard of cutting edge legal cases, framing the law favorably for victims then discovering the facts that produce outstanding results. The Seeger Weiss firm bio is attached as **Exhibit I**.

6.      **Eichen, Crutchlow, Zaslow & McElroy:** Barry R. Eichen, one of New Jersey's leading trial lawyers, recently tried and won a number of Average Wholesale Price cases against pharmaceutical companies, obtaining millions of dollars in verdicts. Mr. Eichen is also heavily involved in discovery and strategy issues as a member of the Steering Committee in the *Facebook* tracking litigation. The Eichen, Crutchlow firm bio is attached as **Exhibit J**.

7.      **Murphy, P.A.:** William H. ("Billy") Murphy is one of the country's most widely respected lawyers. With an MIT undergraduate degree, several years on the bench in Maryland state court, through his technical work on the Steering Committee with experts in the *Facebook* tracking case, and his representation of clients such as Microsoft's Bill Gates, Mr. Murphy brings superior technical knowledge, courtroom skills and litigation judgment to the team. The Murphy firm bio is attached as **Exhibit K**.

8.      **Bryant Law Center:** Mark Bryant is one of the Southeast's leading trial lawyers. His ability to discover and organize facts into powerful arguments have produced tremendous results for his clients in many different cases, including large and complex mass torts. The Bryant Law Center's firm bio is attached as **Exhibit L**.

9.      **Barnes & Associates:** In addition to this action, Jay Barnes is heavily involved in the *Facebook* tracking litigation. He also represented the plaintiffs in a successful consumer protection class action against LegalZoom, Inc. The Barnes firm bio is attached as **Exhibit M**.

F.      **Proposed Leadership Group Fully Satisfies 23(g) Criteria**

      1.      **Counsel's Work to Identify or Investigate Potential Claims.**

A court considering appointment of lead counsel or interim class counsel should consider the work counsel has done in the case. *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case"). The Proposed Leadership Structure has substantially investigated, prepared and

positioned this case for a rapidly-filed Consolidated Class Action Complaint, initial disclosures, and a proposed Discovery and Case Management Plan.    Among other things the Proposed Leadership Structure has:

- Met with a number of experts regarding the case's facts and legal theories;

- Analyzed federal statutory claims, including the "in-flight" and "in storage" predicates of the Wiretap Act and Stored Communications Act, respectively;

- Analyzed potential state common law claims, including invasion of privacy, invasion upon seclusion, trespass to chattels, as well as misrepresentation claims;

- Analyzed potential state statutory claims, including under unfair business practices and consumer protection statutes;

- Identified the choice of law issues; and

- Already started the process of coordinating discovery with counsel for class plaintiff in the parallel state court action, *Carandang v. Google Inc.*, Case No. CGC-12-518415 (Cal. Super. Ct., County of San Francisco) (Kramer, J.),[16] and have also coordinated with *In Pro Se* Plaintiff Larry Sossin, who supports this motion.

    **2.**    **Counsel's Experience in Handling Class Actions, Other Complex Litigation and Claims of the Type Asserted in this Case.**

Exhibits B through M demonstrate that the proposed leadership group has vast successful class action experience in leading large and complex class actions.  Particularly well informed through their direct and ongoing involvement in the pending internet and privacy cases *Facebook, Kissmetrics* and *Hulu* cases, the Executive Committee is extremely well versed in the

---

[16] Google has moved to stay discovery in the *Carandang* action, and oral argument is scheduled for September 13, 2012.  To the extent discovery is allowed to proceed in the California action, Moving Plaintiffs are prepared to work with California counsel as soon as permitted by this Court.

ins and outs of the Wiretap Act, Stored Communications Act, the Computer Fraud and Abuse Act, and state statutory and common law privacy rights claims. We have learned, working with experts, about "session cookies," "persistent cookies," "flash cookies," "dtr cookies" and "referrer headers." We can articulate the distinctions between Wiretap Act cases before and after Congress deleted "wire communications in storage" from the "wire communications" definition, putting wire communications and electronic communications on equivalent definitional footing. We can identify why Personally Identifiable Information ("PII") is valuable, and why its loss is a compensable injury under many statutes and causes of action. We can distinguish cases saying otherwise. *See, e.g., Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2012 WL 2873847, at \*14 (N.D. Cal. July 12, 2012) (citing other cases). We can demonstrate why contrary case law is better reasoned. *See, e.g., Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011) ("at the present pleading stage, plaintiff has sufficiently alleged a general basis for harm by alleging that the breach of his PII has caused him to lose some ascertainable but unidentified 'value' and/or property right inherent in the PII").

Beyond substantive privacy rights law, class action law is crucial here. The proposed leadership lawyers understand that *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305 (3d Cir. 2008) authorized a more searching merits examination at the class certification stage. We also understand the limits on that inquiry. *See, e.g., Behrend v. Comcast Corp.*, 655 F.3d 182, 190 (3d Cir. 2011) (*Hydrogen Peroxide* did not change rule that at class certification court is "precluded from addressing any merits inquiry unnecessary to making a Rule 23 determination."); *id.* at 199 (heightened *Hydrogen Peroxide* class certification inquiry no mandate for "class certification hearings...to become actual trials" for resolving "factual disputes").

Another substantial requirement of would-be leadership lawyers is a demonstrated willingness and ability to forge consensus and negotiate proper compromises in organizing leadership and allocating work.[17]   Moving Plaintiffs' proposed leadership structure has the support of all but a small group of plaintiffs' attorneys.[18]   Counsel for the Moving Plaintiffs have taken the lead to discuss and attempt a unanimous private ordering of counsel, and kept the discussion fluid to provide all counsel a full and fair opportunity to participate.  Proposed interim class counsel also organized the group Stipulation of Consolidation without prejudice to anyone's position on the leadership issue to ensure that consolidation progressed quickly even while leadership discussions continued.

---

[17]   Moving Plaintiffs have also already begun working with defense counsel, including, as discussed above, drafting the Stipulation of Consolidation.

[18]   These involve Tycko & Zavareei LLP and a group organized by Ben Barnow & Associates. Mr. Barnow declined to accept an offer to participate in the proposed leadership structure as a member of the Steering Committee.  Mr. Barnow argued his data breach cases provide support for a bigger leadership role.  However, data breach cases are largely negligence cases that present quite different standing and damages issues.  Data breach cases do not present the Wiretap Act's conundrum of the "linguistic -- but not a technological paradox" that "[t]raveling the internet, electronic communications are often – perhaps constantly – both 'in transit' and 'in storage' simultaneously."  *Blumofe v. Pharmatrak, Inc. (In re Pharmatrak Privacy Litig.)*, 329 F.3d 9, 21-22 (1st Cir. 2003).  Data breach cases do not generally entail the finely reticulated statutory interpretation analyses, with competing canons of interpretation, the Wiretap Act case law reflects. *See, e.g., U.S. v. Councilman*, 418 F.3d 67, 75 (1st Cir. *en banc*, 2005) ("[A]ny *expressio unius* inference that can be drawn from the presence of the electronic storage clause in one definition and its absence from another is in tension with a much more compelling – and directly contrary – *expressio unius* inference from the same statutory provision...").  The standard "consent" defense usually has no place in data breach cases involving  negligent or reckless handling or release of customers' or clients' private information.

### 3.    Counsel's Knowledge of Applicable Law.

Along with their promised attack on standing, the Defendants will surely seek to make dismissal hay out of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moving Plaintiffs' proposed leadership lawyers are well versed in these central pleading standards cases and prepared to demonstrate the implications of the Third Circuit's and this Court's approaches to *Twombly*. *See, e.g., Phillips v. Cty of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) ("[T]he Supreme Court never said that it intended a drastic change in the law, and indeed strove to convey the opposite impression."); *Golod v. Bank of America Corp.*, C.A. No. 07-cv-746-NLH, 2009 WL 1605309, at *1 (D. Del. June 4, 2009) (discussing "liberal federal pleading rules" and employing traditional test: "'[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984)).

### 4.    Counsel Pledge Resources Properly to Represent the Class

The firms representing the Moving Plaintiffs collectively have a large number of talented lawyers and pledge to commit all the lawyers necessary properly to represent the plaintiffs and class. Work will be allocated at the correct levels to be done as competently, quickly and efficiently as possible. All of the proposed leadership firms represented have the personal, financial and technical resources successfully to handle this case.

## V.  CONCLUSION, L.R. 7.1.3(c)(1(G)

For the reasons set forth above, Moving Plaintiffs respectfully request that the Court order consolidation of *Nobles* and *Dogga* with the MDL, appoint interim class counsel, and set a deadline of Monday, October 22, 2012 for the filing of a Consolidated Class Action Complaint.

Dated: August 28, 2012

Respectfully submitted,

**KEEFE BARTELS, LLC**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (Del. Bar. No. 4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth St.
Red Bank, NJ 07701
732-224-9400
*sgrygiel@keefebartels.com*

*Counsel for Plaintiff Ana Yngelmo, Plaintiff Larry Sossin and Proposed Executive Committee Member*

**STRANGE & CARPENTER**

*/s/ Brian Russell Strange*
Brian Russell Strange
Gretchen Carpenter
Keith Butler
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
310-207-5055
*lacounsel@earthlink.net*

*Counsel for Plaintiff Lourdes Villegas and Proposed Executive Committee Member*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertson, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
913-266-2300
*jimf@bflawfirm.com*

*Counsel for Plaintiff James Henry Rischar and Proposed Executive Committee Member*

**STEWARTS LAW US LLP**

*/s/ David A. Straite*
David A. Straite (Del. Bar. No. 5428)
Ralph N. Sianni (Del. Bar. No. 4151)
Michele S. Carino (Del. Bar. No. 5576)
Lydia E. York (Del. Bar No. 5584)
1201 North Orange Street
Wilmington, DE 19801
302-298-1200
*dstraite@stewartslaw.com*

*Counsel for Plaintiffs Matthew Soble and Bert Glaser, Proposed Steering Committee Member and Proposed Interim Liaison Counsel*

**EICHEN, CRUTCHLOW, ZASLOW & MCELROY LLP**

*/s/ Barry Eichen*
Barry R. Eichen
40 Ethel Road
Edison, NJ 08817
732-777-0100
*beichen@njadvocates.com*

*Counsel for Plaintiff Ana Yngelmo, Plaintiff Larry Sossin and Proposed Steering Committee Member*

**MURPHY P.A.**

*/s/ William H. Murphy, Jr.*
William H. Murphy, Jr.
One South Street, Suite 2300
Baltimore, MD 21202
410-539-6500
*billy.murphy@murphypa.com*

*Counsel for Plaintiff Bert Glaser and Proposed Steering Committee Member*

**BRYANT LAW CENTER, PSC**

*/s/ Mark Bryant*
Mark Bryant
601 Washington Street
P.O. Box 1876
Paducah, KY 42002-1876
270-442-1422
*mark.bryant@bryantpsc.com*

*Counsel for Plaintiff William G. Gourley and Proposed Steering Committee Member*

**DAVID SHELTON PLLC**

*/s/ David Shelton*
P.O. Box 2541
Oxford, MS 38655
662-281-1212
*david@davidsheltonpllc.com*

*Counsel for Plaintiff Alex Movitz*

**SEEGER WEISS LLP**

*/s/ Jonathan Shub*
Jonathan Shub
1515 Market Street, Suite 1380
Philadelphia, PA 19102
215-564-2300
*jshub@seegerweiss.com*

*Counsel for Plaintiff Lynne Krause and Proposed Steering Committee Member*

**BARNES & ASSOCIATES**

*/s/ Jay Barnes*
Jay Barnes
219 East Dunklin Street
Jefferson City, MO 65101
573-634-8884
*Jaybarnes5@gmail.com*

*Counsel for Plaintiff Brian Martorana and Proposed Steering Committee Member*

**BERGMANIS LAW FIRM, LLC**

*/s/ Andrew Lyskowski*
Andrew Lyskowski
380 W Hwy 54, Suite 201
P.O. Box 229
Camdenton, MO 65020
573-346-2111
*alyskowski@ozarklawcenter.com*

*Counsel for Plaintiff Brian Martorana*

**MORGAN & MORGAN**

*/s/ John Allen Yanchunis, Sr.*
John Allen Yanchunis, Sr.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
813-223-5505
*jyanchunis@forthepeople.com*

*Counsel for Plaintiff Kenneth W. Heretick*

**KRISLOV & ASSOCIATES, LTD.**

    /s/ Clinton A. Krislov
Clinton A. Krislov
20 North Wacker Dr., Suite 1350
Chicago, IL 60606
312-606-0500
clint@krislovlaw.com

*Counsel for Plaintiff Franchise Dynamics LLC*

**MEYER & LEONARD PLLC**


    /s/ Henry A. Meyer, III
Henry A. Meyer, III
116 E. Sheridan, Suite 207
Oklahoma City, OK 73104
405-702-9900
hameyer@mac.com

*Counsel for Plaintiff Jacqueline Burdick*

**COHEN LAW GROUP, P.C.**

    /s/ Brian Scott Cohen
2 Greenwich Office Park Suite 300
Greenwich, CT 06831
203-485-7525
brian@cohenlg.com

*Counsel for Plaintiffs Robert Dogga
and Jose Bermudez*

**R. CHAMP CROCKER LLC**

    /s/ R. Champ Crocker
R. Champ Crocker
PO Box 2700
Cullman, AL 35056-2130
256-739-5005
champ@champcrocker.com

*Counsel for Plaintiff Stephen D. Landrum*

**THE TERRELL LAW GROUP**

    /s/ Reginald Von Terrell
Reginald Von Terrell
223 25th Street
Richmond, CA 94804
510-237-9700
reggiet2@aol.com

*Counsel for Plaintiff Zetha Nobles*

**LAW OFFICES OF MARK J. BAIOCCHI**

    /s/ Mark J. Baiocchi
1755 S. Naperville Road
Suite 100
Wheaton, IL 60187
630-983-4200
mbaiocchi@baiocounsel.com

*Counsel for Plaintiff Franchise Dynamics
LLC*