# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | ) ) ) ) C.A. No. 12-MD-2358 (SLR) |
| _____ | ) ) |
| This Document Relates to: **All Actions** | ) ) ) ) |
| _____ | ) ) |
| NOBLES v. GOOGLE INC. and POINTROLL INC. | ) ) C.A. No. 12-CV-01000 (SLR) ) |
| _____ | ) ) |
| DOGGA and BERMUDEZ v. GOOGLE INC. | ) ) C.A. No. 12-CV-01003 (SLR) ) |

## DEFENDANT POINTROLL, INC'S COMBINED OPPOSITION TO THE CONFLICTING MOTIONS FOR APPOINTMENT OF INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(G) <u>AND CONSOLIDATION PURSUANT TO FED. R. CIV. P. 42(A)</u>

Alan Charles Raul
Edward R. McNicholas
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
araul@sidley.com
emcnicho@sidley.com

*Attorneys for Defendant*
*PointRoll, Inc.*

Susan M. Coletti (#4690)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
coletti@fr.com

*Attorneys for Defendant*
*PointRoll, Inc.*

September 14, 2012

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.     SUMMARY OF THE ARGUMENT ..............................................................................2

III.    STATEMENT OF FACTS ...........................................................................................3

IV.     ARGUMENT ............................................................................................................4

        A.      Separate Consolidated Complaint Should Be Filed Against
                Each Defendant ...........................................................................................4

        B.      Discovery Should Be Deferred Pending Resolution of the Motion(s)
                to Dismiss ....................................................................................................7

V.      CONCLUSION .........................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

*Del Vecchio v. Amazon.com, Inc.*,
No. C11-366-RSL, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ........................................6

*EEOC v. HBE Corp.*,
135 F.3d 543 (8th Cir. 1998) ...........................................................................2

*Federal Trade Commission v. Google Inc.*,
Case No. 5:12-cv-04177-HRL (N.D. Cal.) ...........................................................2

*FTC v. Google Inc.*,
No. 5:12-cv-04177-HRL ...............................................................................4

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973) ...........................................................................2

*In re U.S. Fin. Litig.*,
64 F.R.D. 76 (S.D.Cal. 1974) .........................................................................6

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011) ...........................................................................6

**STATUTES**

28 U.S.C. § 1401 ...........................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P 26(a) ....................................................................................1, 7

Fed. R. Civ. P. 26(b) .......................................................................................7

Fed. R. Civ. P. 42 .........................................................................................7

FTC Docket No. C-4336 ..................................................................................2

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The U.S. Judicial Panel on Multidistrict Litigation established this proceeding to address multiple actions that have been filed containing allegations that Defendant Google Inc. ("Google") acted unlawfully in allegedly placing cookies on certain Safari browsers.  Two of these actions also include Defendant PointRoll, Inc. ("PointRoll") as a co-defendant.

The twenty-two actions pending before this Court were transferred pursuant to the June 12, 2012 order of the United States Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1401, and then consolidated for pretrial purposes pursuant to the July 27, 2012 stipulation among counsel.  MDL D.I. 22.  That stipulated order establishing the basic processes for the MDL contemplated the appointment of interim counsel for the purported class.  *Id.* at ¶ 12.  Two groups of counsel have filed conflicting motions.[1]

On September 6, 2012, Google filed its response, MDL D.I. 29, taking no position with respect to which counsel is appointed Interim Counsel, agreeing to the consolidation of the two above cases, and requesting that the parties meet and confer regarding a briefing schedule for the consolidated complaint and that the early disclosure requirements under Fed. R. Civ. P 26(a) be suspended.  D.I. 29

PointRoll submits this combined partial Opposition to both of Plaintiffs' motions.

---

[1] On August 28, 2012, Plaintiffs in 16 of the pending actions moved for the consolidation of *Nobles* v. *Google, Inc. and PointRoll, Inc.,* C.A. No. 12-cv-03589 (N.D. Cal.) (MDL D.I. 23), and *Dogga and Bermudez* v. *Google, Inc.*, C.A. No. 3:12-cv-010046 (D.Conn.) (MDL D.I. 20) with the MDL for pretrial purposes; the appointment of interim class counsel; and the establishment of an October 22, 2012 consolidated complaint filing deadline. MDL D.I. 27. Remaining plaintiffs filed an opposing Motion for Appointment of Interim Co-Lead Class Counsel on September 7, 2012.  MDL D.I. 30.

## II.    SUMMARY OF THE ARGUMENT

1.      Although PointRoll takes no position regarding who is designated as counsel for the purported class, it does request that the Court require a separate counsel and complaint for PointRoll.  A separate, consolidated complaint against PointRoll is appropriate in light of the inefficiency, inconvenience and prejudice to PointRoll that could result from a consolidated complaint that mixes the conduct of the two unrelated defendants.[2]  Disaggregation of claims is particularly appropriate in light of Google's recent settlement of the Federal Trade Commission's ("FTC") complaint involving "Safari cookie" allegations.[3]  The FTC action crystallized that PointRoll is differently situated from Google.  Failing to recognize this now would needlessly increase cost and complexity.

2.      PointRoll stands ready to meet and confer with designated counsel regarding the schedule for a prompt motion to dismiss.

3.      Given the significant standing issues in this matter, and questions about whether any actionable injury can be alleged, PointRoll requests that disclosure and discovery requirements be suspended pending the resolution of its motion to dismiss.[4]

---

[2] *Cf. EEOC v. HBE Corp.,* 135 F.3d 543, 551 (8th Cir. 1998) ("Consolidation is inappropriate…if it leads to inefficiency, inconvenience, or unfair prejudice to a party."); *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973) (reversing consolidation order as it related to a single defendant prejudiced by consolidation where (i) only one of 15 plaintiffs asserted relevant claims against defendant, (ii) those claims were limited in scope as compared to the rest of the class allegations, and (iii) consolidation would result in a prejudicial pretrial discovery burden).

[3] *Federal Trade Commission v. Google Inc*., Case No. 5:12-cv-04177-HRL (N.D. Cal.) (FTC Docket No. C-4336) *available at* http://www.ftc.gov/os/caselist/c4336/index.shtm.

[4] PointRoll agrees that the recently transferred action, *Nobles* v. *Google, Inc. and PointRoll, Inc.,* C.A. No. 12-cv-03589 (N.D. Cal.) (MDL D.I. 23), should be consolidated with the 22 consolidated actions before this Court.  It has no view regarding consolidation of the complaint in *Dogga and Bermudex* v. *Google, Inc.*, C.A. No. 3:12-cv-010046 (D.Conn.) (MDL D.I. 20), to which it is not a party, but it does not oppose such consolidation.

### III.   STATEMENT OF FACTS

These actions arose after a *Wall Street Journal* article[5] and an academic study[6] that discussed particular techniques for placement of cookies on Safari browsers allegedly used by Google as well as PointRoll and other companies.   According to the complaints, the default setting on Safari browsers is set to block all cookies deemed by Apple to be "third party" cookies.  *See, e.g., Villegas v. Google, Inc. and PointRoll Inc.*, Compl. at ¶ 43, No. 5:12-cv-00915-PSG (N.D. Cal., Feb. 23, 2012).  The meaning of "third party" is unclear in the context of a web page displaying content and advertisements from various sources, but the complaints allege that setting cookies placed by advertisements on visited web pages impermissibly circumvented this browser setting.  *See, e.g., Id.* at ¶¶ 26-27.[7]  The complaints do not allege that any use of the cookie data was made or that the plaintiffs suffered any harm other than having an extra cookie on their browser, which they allege would take enormous effort to remove given that they allege that they would be harmed if they click "Clear Cookies and Data" in their Safari browser settings.  *See, e.g., Id.* at ¶ 49.

The facts and circumstances alleged against PointRoll in the complaints before this Court are materially distinct from those applicable to Google.  The two companies are quite different.  Google and its affiliate, "DoubleClick," provide users with a range of interconnected services

---

[5] Jennifer Valentino-DeVries, Wall Street Journal, "How Google Tracked Safari Users" (Feb. 16, 2012).

[6] Jonathan Mayer, "Web Policy – Do Not Track, Measurement, Privacy," (Feb. 17, 2012).

[7] PointRoll does not concede that the Safari default setting relating to cookies consistently used the term "third party."   For example, as of today, under "Settings" for the iPhone and iPad, the "cookie" policy appears to establish the default as "Accept Cookies From visited" – without any reference to "third parties," and without any proximate explanation of what "from visited" is supposed to mean.  Of course, there have been multiple releases of the mobile and computer versions of Safari for many years, and the language, operation and deployment of the different versions vary greatly.

and advertisements subject to a single privacy policy. PointRoll merely designs and serves online advertisements for individual companies or ad agencies.[8] Plaintiffs allege that PointRoll impermissibly placed cookies on their browsers, and that they have suffered compensable harms by the placement of these cookies and their desire to remove them. *See, e.g.,Id*. at ¶¶ 48-49.[9]

PointRoll is a defendant in only two of the 24 actions at issue.

Defendant Google is of course named in all 24 actions before this Court. Google is also differently situated from PointRoll in that it is the subject of a recent FTC action relating to the same cookie practices alleged here by Plaintiffs. Google has denied liability for all of the Commission's allegations regarding its activities, but has agreed to a proposed settlement with the FTC. *FTC v. Google Inc.,* Proposed Stipulated Order, No. 5:12-cv-04177-HRL, FTC Dckt. No. C-4336 (N.D.Cal. Aug. 8, 2012). While the FTC complaint alleged that the cookie practices violated a prior consent decree, it did not allege that those practices were unfair. *FTC v. Google Inc.,* Complaint, No. 5:12-cv-04177-HRL (N.D. Cal. Aug. 8, 2012).

## IV.   ARGUMENT

### A.   Separate Consolidated Complaint Should Be Filed Against Each Defendant

Requiring a separate, consolidated complaint against PointRoll will clarify Plaintiffs' allegations against each entity, clearly identifying and defining the issues to be addressed at the motion to dismiss stage. *See Manual For Complex Litigation (Fourth)* § 11.31 (2012) ("the *sine qua non* of managing complex litigation is defining the issues in the litigation").

No relevant relationship exists between PointRoll and Google. Under no scenario could it be said that Google and PointRoll were acting jointly or in concert regarding the cookies in

---

[8] PointRoll's services are described on the company's website, located at www.pointroll.com.

[9] In this regard, the Court may wish to take notice of the fact that anyone can remove his or her PointRoll cookies either by clearing all cookies or PointRoll cookies in their browser cache, or by clicking "Remove All Cookies" at the PointRoll website: www.PointRoll.com.

question.  Plaintiffs appear to simply assume some sort of relationship between PointRoll and Google that does not exist.  *See, e.g., Villegas*, Compl. ¶¶ 17 ("PointRoll, a rich media advertising company, entered into a contract with Defendant Google, a California Corporation, and the acts made the basis of this action emanated to and from the Defendant Google's servers located in Mountain View, California."); *Nobles v. Google, Inc. and PointRoll, Inc.,* Compl. ¶¶ 17, 21, No. C12-03589 (N.D. Cal., July 10, 2012) (repeating verbatim this paragraph – as well as most of the rest of the complaint).  But Plaintiffs fail to identify or explain any relationship with Google that concerns the cookies in question or that is otherwise relevant to allegations against PointRoll.[10]

Indeed, PointRoll uses its cookies to cap the frequency with which Internet users see the same PointRoll ad, to "sequence" the order in which ads in a particular campaign are seen by the same user, and to measure if the ad "converted" – i.e., when a user saw the PointRoll ad and then visits the advertiser's website.  These are all conventional uses of "advertising metric" cookies that are a routine part of Internet operations.[11]  Moreover, there is no allegation in any complaint – nor could there be – that PointRoll made any specific representations in its privacy policy,

---

[10] Like other ad-serving companies, PointRoll can run its rich media ads on Google's content network, on behalf of PointRoll's clients, just as it can on other advertising networks.  But this does not relate to the allegations at issue in the case.  PointRoll has informed the counsel in *Villegas* of the lack of any relevant relationship with Google.

[11] Federal Trade Commission, "Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers," p. 39 (March 2012) (the FTC "continues to believe that the practices highlighted in the preliminary staff report – fulfillment, fraud prevention, internal operations, legal compliance and public purpose, and most first-party marketing – provide illustrative guidance regarding the types of practices that….would not typically require consumer choice.  Further, drawing upon the recommendations of several commenters, the Commission agrees that…internal operations would encompass frequency capping and similar advertising inventory metrics").

FAQs or other consumer material with regard to setting or not setting cookies on Safari browsers.[12]

A separate consolidated complaint against PointRoll will enable the efficient and fair resolution and management of the only two actions naming PointRoll, and will streamline the proceedings of the remaining 22 actions that do not involve PointRoll.[13]  The Court has sole discretion to coordinate these proceedings "to prevent duplication of discovery and unnecessary inconvenience to the parties and witnesses" while accounting for the nuances of the various actions before it.  *In re U.S. Fin. Litig.*, 64 F.R.D. 76, 78-79 (S.D.Cal. 1974).

While PointRoll does not agree with Plaintiffs' assertion that the case against it involves significant legal complexity (D.I. 28 at 7),[14] disaggregating Plaintiffs' claims against PointRoll and Google will enhance sound case management, judicial economy, and the interests of justice without prejudicing the purported class.  It will also streamline the discovery process, also anticipated by Plaintiffs to be burdensome (D.I. 28 at 13-14), by properly reducing the risk that

---

[12] PointRoll was not at the time a member of the Network Advertising Initiative ("NAI"), nor did it represent that it adhered to the NAI's self-regulatory code of conduct, and was not the subject of a prior privacy-related consent decree.  PointRoll joined NAI in August 2012, and modified its privacy policy effective August 16, 2012 to reflect its new membership.  *See* "Privacy Notice," *available at* http://www.pointroll.com/privacy.php.

[13] PointRoll reserves the right to challenge the motions' factual representations, legal conclusions, and characterizations at the appropriate litigation stage – such as in a dispositive motion or in an opposition to class certification.  PointRoll also reserves the right to challenge of any counsel to be appointed to fulfill duties beyond that of Interim Counsel.

[14] Given the absence of any conceivable harm, the absence of any misrepresentation by PointRoll, and the absence of any affirmative obligation on PointRoll with regard to placing cookies with regard to Safari browsers, this is actually an easy case, not a difficult one.  *See also Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) (allegations of "hypothetical, future injury" that is neither "imminent" nor "certainly impending" are insufficient to establish standing); *Del Vecchio v. Amazon.com, Inc.*, No. C11-366-RSL, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)(motion to dismiss granted in light of plaintiffs' naked assertions and failure to plead facts sufficient to establish "any non-speculative cookie-related injury").

PointRoll will be subjected to burdensome discovery arising from the twenty-two actions to which it is not a party, and which involve a much larger and more complex defendant; and focusing and streamlining any discovery on the immediately relevant parties, respective allegations and pertinent facts.

The considerations underlying Fed. R. Civ. P. 42 suggest the Court should consider these issues now so that separate Google and PointRoll counsel, complaints, and, if necessary, discovery tracks are part of the case from the beginning – with the PointRoll schedule being more expedited. As some of the Plaintiffs' counsel concede, standing, lack of injury and related concepts may play a decisive role in this case. D.I. 28 at 16. PointRoll intends to demonstrate in a Motion to Dismiss that the allegations against it regarding the placement of the same conventional cookies on Safari browsers that are routinely set on all other browsers do not come close to establishing actionable harm within the Court's jurisdiction. A separate, consolidated PointRoll complaint would avoid the inefficiency, inconvenience and potential prejudice of aggregating allegations against PointRoll and Google.

**B.      Discovery Should Be Deferred Pending Resolution of the Motion(s) to Dismiss**

PointRoll agrees that early disclosure requirements should be suspended under Fed. R. Civ. P. 26(a) in light of the conflicting pending motions to designate Interim Class Counsel. The nature of the parties' claims and defenses are dependent upon the complaint, which Plaintiffs appear ready to file shortly. Initial disclosures and other discovery should be based upon and "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). This Court's stipulated order of July 27, 2012 expressly contemplates consolidated complaints, and so it was read to render disclosures and other discovery suspended – although there is clearly a disagreement of the import of the order within the various elements of the Plaintiffs' counsel on this point. D.I.

22.  To date, Plaintiffs in the two actions naming PointRoll have not served initial disclosures, which PointRoll views as the most reasonable and appropriate course.

## V.    CONCLUSION

For the reasons set forth above, PointRoll respectfully requests that the Court:

1.    appoint a specific counsel with whom PointRoll can liaise;

2.    if Plaintiffs wish to proceed with their action against PointRoll,  direct that counsel prepare and file a separate consolidated complaint setting forth the allegations specifically against PointRoll

3.    direct the parties to meet and confer regarding a briefing schedule for the motion to dismiss the consolidated PointRoll complaint; and,

4.    suspend early disclosures and other discovery requirements under pending the resolution of any motion to dismiss.

Dated:  September 14, 2012                    By: _/s/ Susan M. Coletti_____

Alan Charles Raul                         Susan M. Coletti (#4690)
Edward R. McNicholas                      FISH & RICHARDSON P.C.
SIDLEY AUSTIN LLP                         222 Delaware Avenue, 17th Floor
1501 K Street, N.W.                       P.O. Box 1114
Washington, D.C.  20005                   Wilmington, DE 19899-1114
Telephone:  (202) 736-8000                Telephone: (302) 652-5070
Facsimile:  (202) 736-8711
araul@sidley.com                          coletti@fr.com
emcnicho@sidley.com

*Attorneys for Defendant*                 *Attorneys for Defendant*
*PointRoll, Inc.*                         *PointRoll, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2012, I electronically filed the foregoing with the

Clerk of Court for the United States District Court for the District of Delaware by using the

CM/ECF system. I certify that for all participants in the case that are registered CM/ECF users,

service will be accomplished via the CM/ECF system, and for non-CM/ECF participants, service

will be accomplished via U.S. Mail as follows:

Larry Sossin
129 Idalroy Trail
Hopatcong, NJ 07843

_____/s/ Susan M. Coletti_____
Susan M. Coletti