# EXHIBIT A

## GOOGLE THIRD PARTY SERVING COMPATIBILITY PROGRAM AGREEMENT

This Agreement (the "Agreement") relating to the Google Third Party Serving Compatibility Program (the "Program"), by and between the entity identified on the signature page below ("You" or "Your") and Google Inc. ("Google") (You and Google, each individually a "Party" and together the "Parties"), is effective as of the date signed by Google below (the "Effective Date").

In consideration of the mutual covenants set forth herein, You and Google hereby agree to the following terms and conditions:

### AGREEMENT

1. **Program Participation.** Subject to Your compliance with the terms of this Agreement, Google may appoint you as a third party server and/or ad effectiveness vendor compatible with the Program. This Agreement (i) does not authorize You to serve ads or other content onto any content or property upon which Google is authorized to place ads or other content (the "Google Syndicated Network") unless You are appointed as such and (ii) does not authorize You to serve ads or other content onto the Google Syndicated Network outside the United States and Canada. Your participation in the Program is subject to Your continued compliance with (a) the Program Policies ("Program Policies"), as Google makes available from time to time including, without limitation, the Ad Serving Policy available at http://www.google.com/adsense/support/bin/answer.py?answer=76871, Editorial Guidelines (https://adwords.google.com/select/guidelines.html), and Trademark Guidelines (www.google.com/permissions/guidelines.html), (b) any specifications required by Google and any Google partner or such Google partner notifies You in writing, including by e-mail in accordance with Section 17, (c) any service levels or performance standards required by Google that Google may notify You of. In order to foster coordination of advertising campaigns, Google will make a representative knowledgeable in the business models used under the Program (e.g., cpm, cpa, cpc) available to You during regular business hours (PST) to keep You informed in changes and developments relevant to Your use of or participation in the Program. Google will use reasonable efforts to inform You of the addition of new Google pricing models to the Program where such pricing models materially differ from Google's existing pricing models for the Program and such models affect You. You may direct general questions regarding the Program to 3p-partner@google.com. Google reserves the right to refuse participation to You at any time in its sole discretion including if You were previously appointed or approved. By enrolling in the Program, You agree that Google is under no obligation to label You as a third party server compatible with the Program. It is Google's intention to include all certified partners in good standing in any marketing or press release should Google decides to proactively promote the Program in such manner.

2. **Service Levels and Contacts.** Your use of or participation in the Program will require You to meet the service levels set forth in Exhibit A hereto. You agree to make the individuals listed in Exhibit B available during regular business hours (PST) to assist Google in resolving issues related to Your use of or participation in the Program.

3. **Changes to Program.** Google reserves the right, in its sole discretion, to change, suspend or discontinue all or any aspect of the Program at any time and for any reason, without liability. Google reserves the right to change any approval of any updates, releases or different versions of Your technology.

4. **Brand Features and Publicity.** Subject to usage guidelines provided by You to Google from time to time, Google may use Your Brand Features to identify You as a third party server compatible with the Program or as otherwise consented to by You in writing. You may not otherwise indicate that You are a third party server compatible with the Program or disclose any relationship between You and Google hereunder without Google's prior written approval, provided that, after a public announcement of the Program by Google, You may indicate that You are a third party server compatible with the Program for so long as you remain a third party server compatible with the Program. "Brand Features" means the trade names, trademarks, service marks, logos, domain names and other distinctive brand features of a Party.

5. **Termination; Cancellation.** Either Party may terminate this Agreement with or without cause at any time upon written notice of termination to the other party; provided that if this Agreement is terminated, Your obligations and rights with respect to any ad (or other content) campaigns in effect as of the date of such termination shall remain in effect and subject to the terms of this Agreement. Upon termination of this Agreement for any reason, Sections 5, 6, 11, 12, 13, 15, 16 and 17 shall survive termination.

6. **Confidentiality.** Each Party agrees not to disclose the Confidential Information of the other Party without such Party's prior written consent; provided, however, You may disclose Confidential Information to Gannett Co., Inc. (subject to binding terms that are at least as protective of the Confidential Information of Google as the terms of this Agreement) to the extent reasonably necessary to administer this Agreement (e.g., for necessary approvals, and review and advice from the legal department), for so long as You remain a wholly owned subsidiary thereof. "*Confidential Information*" includes without limitation: (a) all software, technology, programming, specifications, materials, guidelines and documentation relating to the Program, including the existence and content of the Agreement and any information provided pursuant to the Agreement; (b) click-through rates or other statistics relating to the Program provided by one Party to the other Party; and (c) any other information designated in writing by a Party as "Confidential" or an equivalent designation; provided, however that each Party hereby consents to disclosure of Confidential Information set forth in subsection (b) of the foregoing sentence, (i) solely to the extent it is being provided by a Party to the advertiser for whose ads or other content such Confidential Information directly relates or (ii) solely to the extent it is being provided by a Party to advertisers in an aggregated manner such that no third party could identify which advertiser's data contributed to the aggregated set. Furthermore, Confidential Information may be disclosed as required to be disclosed by law or by a governmental authority, provided that the disclosing Party provides the other Party with reasonable prior notice of such disclosure, to the extent practicable, and assists the other Party, upon request and at such other Party's cost and expense, in seeking to obtain a protective order or similar limitation from the appropriate court or governmental authority, as the case may be, to limit such disclosure. Confidential Information does not include information that has become publicly known through no breach the disclosing Party, or information that has been (x) independently developed without access to a Party's Confidential Information, as evidenced in writing or (y) rightfully received by a Party from a third party.

7. **Data.** Each Party may retain and use, subject to the terms of Google's Privacy Policy, information collected from such Party's use of the Program ("Data"), which Data will be considered Confidential Information, but will not be subject to the exception for disclosure to Gannett Co., Inc. set forth in Section 6. Notwithstanding the limitations of Section 6, neither Party will disclose Data, that is directly attributable to the other Party, to any third parties unless the disclosing Party (i) has obtained the other Party's consent; (ii) reasonably concludes that it is required by law or has a good faith belief that access, preservation or disclosure of such information is reasonably necessary to protect the rights, property or safety of the disclosing Party, its users or the public; or (iii) provides such information in certain limited circumstances to third parties to carry out tasks on the disclosing Party's behalf (e.g., billing or data storage) with strict restrictions that prevent the data from being used or shared except as directed by the disclosing Party in accordance with the Agreement. You will treat Program Data that relates to any aspect of the Google Syndicated Network as Confidential Information, but will not be subject to the exception for disclosure to Gannett Co., Inc. set forth in Section 6. You agree that Google may aggregate Data with data collected from other third party server's campaigns, and use such aggregated data to improve the Program, provided that (i) Google will only aggregate data in a manner such that no third party could identify which third party server's data contributed to the aggregated set, and (ii) will not use Your unaggregated Data to enhance any Rich Media offering of Google or any third party.  Except as expressly permitted by Google under a Google program, product or service feature, you shall not use any automated means (for example scraping or robots) to access, query or otherwise collect Google-related information from Google, the Program or any other Google program, product or service, or any website owned or operated by Google or a Partner that displays Google advertising.

8. **Privacy Policies.** You must maintain a privacy policy that provides notice of Your data collection practices, including your use of a cookie, web beacon or other tracking mechanism to collect anonymous traffic data.

04/28/2008  17:17 FAX                                                                    ☑004/010

9. **Experimental Product and Program.** You acknowledge and agree that the availability of the Program, and the terms upon which it is available, are continually under experimentation. You acknowledge and agree that this Agreement does not create any estoppel, or other right to rely upon continued access to the Program or Google product or service made available through the Program, and You hereby waive, and agree not to assert, any such claims against Google under contract law or any other legal theory. Google acknowledges and agrees that this Agreement does not create any estoppel, or other right to rely upon Your continued use of or participation in the Program or any of Your products or services made available through Your use of or participation in the Program, and Google hereby waives, and agrees not to assert, any such claims against You under contract law or any other legal theory.

10. **Inspection for Compliance.** Google reserves the right to investigate any activity in order to ensure Your compliance with the terms of this Agreement. In the event Google reasonably determines that Your technology may be providing inaccurate metrics or Your technology contributes to issues related to serving, delivery and rendering of ads, privacy or security, then upon ten (10) business days advance written notice during the term of this Agreement, Google may engage, and You shall provide reasonable access to, Google's third party auditor who agrees in writing to the security and confidentiality obligations and procedures reasonably required by You to audit copies of Your records and other pertinent Technology to the extent relevant to the Your use or participation in the Program and Your express material obligations under this Agreement, or alternatively You may terminate this Agreement as provided in Section 5. Such audits shall be at Google's expense and shall be conducted no more than once during each twelve (12) month period following the Effective Date (unless such audit reveals a discrepancy of greater than ten percent (10%), in which case such audit shall not be counted toward such limitation). during normal business hours and in such a manner as not to unreasonably interfere with Your normal business operations.

11. **No Endorsement.** You acknowledge and agree that Google does not represent or endorse the quality, accuracy, reliability, integrity or legality of You, whether as a thirty party server compatible with the Program or otherwise, or Your acts or omissions in relation to this Agreement. Google is under no obligation to review the ads or other content distributed, sold or offered by You and specifically disclaims any liability or responsibility for errors or omissions in the serving of any ads or content by You.

12. **No Warranty.**

    a. EXCEPT AS SET FORTH IN THIS AGREEMENT AND THE PROGRAM POLICIES, GOOGLE MAKES NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO THE PROGRAM, ANY OTHER GOOGLE PROGRAM, PRODUCT OR SERVICE (OR ANY THIRD PARTY'S USE OF ANY GOOGLE PROGRAM, PRODUCT OR SERVICE), AND ADVERTISING. GOOGLE EXPRESSLY DISCLAIMS THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR ANY PARTICULAR PURPOSE OR ANY WARRANTY THAT THE PROGRAM OR ANY OTHER GOOGLE PROGRAM, PRODUCT OR SERVICE IS ERROR-FREE OR THE RESULTS TO BE OBTAINED FROM USE OF THE PROGRAM OR ANY OTHER GOOGLE PROGRAM, PRODUCT OR SERVICE. YOU EXPRESSLY AGREE THAT THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM AND THE ACCURACY OR COMPLETENESS OF YOUR CONTENT IS ASSUMED SOLELY BY YOU. NOTHING IN THE PRECEDING SENTENCE IS INTENDED TO IMPOSE ANY LIABILITY OR OBLIGATION ON YOU UNDER THIS AGREEMENT.

    b. You shall not (i) make any representations or guarantees to any Advertiser regarding the level of impressions, clicks or conversions for any ad or content associated specifically with Program or any other Google program, product or service, and (ii) represent or guarantee the timing of delivery of any impressions, clicks or conversions for any ad or other content displayed on any Google Web property (or other Web property on which Google displays ads or other content).

    c. EXCEPT AS SET FORTH IN THIS AGREEMENT YOU MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO YOUR PARTICIPATION IN OR USE OF THE PROGRAM, ANY OTHER GOOGLE PROGRAM, PRODUCT OR SERVICE (OR ANY THIRD PARTY'S USE OF ANY GOOGLE PROGRAM, PRODUCT OR SERVICE), AND ADVERTISING. YOU EXPRESSLY DISCLAIM THE

04/29/2008 17:18 FAX                                                          ☑005/010

WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR ANY PARTICULAR PURPOSE OR ANY WARRANTY THAT YOUR PRODUCTS OR SERVICES ARE ERROR-FREE OR THE RESULTS TO BE OBTAINED FROM USE OF YOUR PRODUCTS OR SERVICES. GOOGLE EXPRESSLY AGREES THAT OTHER THAN WITH RESPECT TO YOUR PERFORMANCE, THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM AND THE ACCURACY OR COMPLETENESS OF GOOGLE'S CONTENT IS ASSUMED SOLELY BY GOOGLE. NOTHING IN THE PRECEDING SENTENCE IS INTENDED TO IMPOSE ANY LIABILITY OR OBLIGATION ON GOOGLE UNDER THIS AGREEMENT.

13. **Limitations of Liability; Force Majeure.**    GOOGLE SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF GOOGLE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. YOU SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF YOU HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, OTHER THAN DAMAGES ARISING FROM (I) FRAUD, INJURY TO THE PERSON OR PROPERTY OF ANOTHER, OR VIOLATION OF LAW, WHETHER WILLFUL OR NEGLIGENT, (II) THE DELIVERY OF MALWARE, SPYWARE OR OTHER CODE ONTO THE GOOGLE SYNDICATED NETWORK WHICH COULD ALTER OR DISRUPT (1) ANY GOOGLE PROGRAM, PRODUCT OR SERVICE OR (2) THE NORMAL FUNCTION OF AN END USER'S COMPUTER OR DEVICE, TO THE EXTENT THAT SUCH DAMAGES ARE CAUSED BY YOUR WILLFUL MISCONDUCT OR NEGLIGENCE (damages under (I) and (II) above being referred to as "Consequential Damages"). Notwithstanding the fact that limitation of liabilities of the parties with respect to consequential, special, indirect, exemplary and punitive damages are not reciprocal in all respects, except to the extent expressly set forth in this Agreement, nothing herein (a) creates any particular or specific duty of care beyond what is available under law, or (b) is intended to imply that any particular or specific indirect damages resulting as a consequence of Your actions or inactions have been contemplated by the parties at the time of this Agreement or that either party has been advised of any such damages. OTHER THAN: (A) ANY PAYMENT TO THIRD PARTIES PURSUANT TO A PARTY'S INDEMNIFICATION OBLIGATIONS IN SECTION 15 BELOW, AND (B) BREACHES OF SECTIONS 6 AND 16, EACH PARTY'S AGGREGATE MONETARY LIABILITY TO THE OTHER PARTY UNDER THIS AGREEMENT FOR ANY CLAIM IS LIMITED TO $2,000,000.00, EXCEPT WITH RESPECT TO CONSEQUENTIAL DAMAGES, WHERE YOUR AGGREGATE MONETARY LIABILITY TO GOOGLE UNDER THIS AGREEMENT FOR ANY CLAIMS IS LIMITED TO $5,000,000. Each Party acknowledges that the other Party has entered into this Agreement relying on the limitations of liability stated herein and that those limitations are an essential basis of the bargain between the Parties. Without limiting the foregoing and except for payment obligations, neither party shall have any liability for any failure or delay resulting from any condition beyond the reasonable control of such party, including but not limited to governmental action or acts of terrorism, earthquake or other acts of God, labor conditions, and power failures.

14. **Representations and Warranties.** You represent and warrant that (a) You have full power and authority to enter into the Agreement, (b) all of the information provided by You to Google to enroll in the Program is correct and current; (c) You own and control Your Brand Features and otherwise have and shall maintain throughout the term of this Agreement all rights, authorizations and licenses that are required to permit Google to use Your Brand Features pursuant to the Agreement and the Program; (d) You have all necessary right, power, and authority to perform the acts required of You hereunder; (e) You have complied and will continue to comply with all applicable laws, statutes, ordinances, and regulations (including without limitation the CAN-SPAM Act of 2003 and any relevant data protection or privacy laws) in Your performance of any acts hereunder, (f) You will not, as a result of your actions or inactions, deliver malware, spyware or other code onto the Google

syndicated network which could alter or disrupt (1) any Google program, product or service or (2) the normal function of an end user's computer or device, and (g) You will comply with the requirements for third-party ad serving provided by Google (Google will provide a URL where these requirements are stored when the URL becomes publicly available), as may be modified by Google and made available to You from time to time, provided that Google notifies you of the modifications. Google represents and warrants that Google has full power and authority to enter into the Agreement. If You do not agree to a modification to the requirements for third-party ad serving, Your sole remedy will be to terminate this Agreement.

15. **Indemnification.** You agree to indemnify, defend and hold Google, its agents, affiliates, subsidiaries, directors, officers, employees, and applicable third parties (e.g. relevant advertisers, syndication partners, licensors, licensees, consultants and contractors) (collectively "**Indemnified Person(s)**") harmless from and against any and all third party claims, liability, loss, and expense (including damage awards, settlement amounts, and reasonable legal fees), brought against any Indemnified Person(s), arising out of, related to or which may arise from Your Brand Features, Your use of or participation in the Program (excluding any claim to the extent arising out of, related to or which may arise from Google's Program Technology, Google's acts or omissions, or omissions of any Google Partner, including without limitations any specifications or Program rules provided to You), Your acts or omissions related to the Agreement, and/or Your breach of any term of the Agreement.

16. **Intellectual Property.** As between the parties, each Party retains and shall own all right, title and interest in its Technology and Intellectual Property Rights: (i) existing as of the Effective Date; (ii) generated independently by the other Party in connection with the Agreement; or (iii) generated outside the scope of the Agreement. Neither Party shall acquire any right, title or interest in the other party's Technology and Intellectual Property Rights. Neither Party will modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source code from any of the other Party's products, services, programs, software, or documentation, or create or attempt to create a substitute or similar service or product through use of or access to the Program or proprietary information related thereto. Neither Party will remove, obscure, or alter the other Party's copyright notice, Brand Features, or other proprietary rights notices affixed to or contained within any of the other Party's products, services, programs, software, or documentation. "**Intellectual Property Rights**" means any and all rights existing from time to time under patent law, copyright law, semiconductor chip protection law, moral rights law, trade secret law, trademark law, unfair competition law, publicity rights law, privacy rights law, and any and all other proprietary rights, as well as, any and all applications, renewals, extensions, restorations and re-instatements thereof, now or hereafter in force and effect worldwide. "**Technology**" means all technology, including all inventions, know-how, techniques, design rules, algorithms, routings, software, files, databases, works of authorship, processes, devices, prototypes, schematics, test methodologies, any media on which any of the foregoing is recorded, and any other tangible embodiments of any of the foregoing.

17. **Miscellaneous.** This Agreement shall be governed by the laws of California, except for its conflicts of laws principles. Any dispute or claim arising out of or in connection with this Agreement shall be adjudicated in Santa Clara County, California. The parties specifically exclude from application to the Agreement the United Nations Convention on Contracts for the International Sale of Goods and the Uniform Computer Information Transactions Act. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. The relationship between Google and You is not one of a legal partnership relationship, but is one of independent contractors, and the Parties hereto are and shall remain independent contractors and nothing herein shall be deemed to create any agency, partnership, or joint venture relationship between the parties. Neither Party shall be deemed to be an employee or legal representative of the other nor shall either party have any right or authority to create any obligation on behalf of the other Party. Unless otherwise expressly set forth in this Agreement, any notices to Google must be sent to: Google Inc., 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA, with a copy to Legal Department, via first class or air mail or overnight courier, and are deemed given upon receipt. Notice to You may be effected by via first class, air mail, overnight courier to the address specified on the signature page below, or where expressly permitted in this Agreement by e-mail to the e-mail address specified on the signature page below, and is deemed received when received. Any modifications to this Agreement must be made in a writing executed by both Parties. The failure to require performance of any provision shall

not affect a Party's right to require performance at any time thereafter, nor shall a waiver of any breach or default of this Agreement constitute a waiver of any subsequent breach or default or a waiver of the provision itself. If any provision herein is held unenforceable, then such provision will be modified to reflect the parties' intention, and the remaining provisions of this Agreement will remain in full force and effect. Neither Party may delegate, resell, assign, or transfer any of their rights hereunder except to an affiliate with the consent of the other Party, not to be unreasonably withheld or delayed; provided, however that a Party shall ensure the performance under and compliance with this Agreement by any of its affiliates to which such rights are delegated, resold, assigned or transferred. Any such attempt may result in termination of this Agreement, without liability to the terminating Party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

YOU: Point Roll, Inc.                                    GOOGLE: GOOGLE INC.

By _____            By _____

JASON TAFLER                                    Megan J Smith
Name                                                Name

CEO                                                 VP New Bus Dev
Title                                               Title

APRIL 29, 2008                                      5/15/08
Date                                                Date

951 E. HECTOR ST.
Street Address

CONSHOHOCKEN, PA 19428 .
City, State Zip

jtafler@pointroll.com
E-mail address

With copy to:

Barbara W. Wall
Vice President/ Associate General Counsel
Gannett Co Inc.
7950 Jones Branch Drive
McLean, VA 22107
bwall@gannett.com

## SERVICE LEVELS REQUIRED FOR PARTICIPATION IN AND USE OF THE PROGRAM

- You will provide a primary and secondary business and technical contact as well as a contact for 24 hour, 7-day a week support as listed in Exhibit B.
- You agree to provide two hour resolution to any support query Google may make. If there is a discrepancy between Google-counted metrics and Your metrics that exceeds 10%, You agree to use commercially reasonable efforts to  (i) work with Google to identify the source of such discrepancy and provide resolution within 48 hours and (ii) to provide Google with access to sufficient data to validate your analysis.
- You agree to assist Google in resolving any disputes with end advertisers relating to a discrepancy between Google-counted metrics and Your metrics.

04/29/2008 17:18 FAX                                                    ☑010/010

**Exhibit B**

## CONTACTS

It is Your obligation to make sure Google has updated contact information:

| Business Contacts | | | Technical Contacts | |
|---|---|---|---|---|
| **Primary** | | | **Primary** | |
| Name | MAX MEAD | | Name | Mike Toszynski |
| Title | VP Business Development | | Title | Manager Ad Platforms |
| Phone | 415-306-0394 | | Phone | 267-558-1300 |
| Email | mmead@pointroll.com | | Email | mtoszynski@pointroll.com |
| **Secondary** | | | **Secondary** | |
| Name | Jason Taplor | | Name | Steve Wilson |
| Title | CEO | | Title | Director of IT |
| Phone | 267-558-1300 x 117 | | Phone | 267-558-1300 x 127 |
| Email | jtaplor@pointroll.com | | Email | swilson@pointroll.com |
| **24x7 Support Contact** | | | | |
| Phone | 267-558-1300 x 150 | | | |
| Email | Altform Support@pointroll.com | | | |

Overnight Support List @ pointroll.com

# EXHIBIT B

## Terms & Conditions:

### I. INVENTORY AVAILABILITY

    a. Acceptance of advertising programs is subject to publisher media availability upon receipt of signed contract or approved insertion order.

### II. AD PLACEMENT & POSITIONING

    a. Positioning of advertisements is dictated by the media buy on different sites. PointRoll does not determine the position or placement of the ad in any case.

    b. In order to fulfill ad placement, PointRoll requires an approved insertion order from the party to be invoiced (advertiser, agency or publisher) before trafficking.

### III. PAYMENT AND PAYMENT LIABILITIES

    a. Invoicing will be remitted electronically by PointRoll to Google no later than the sixth day of every month for impressions served or ordered in the immediately preceding month (the "Invoice Date"). Google will make payment to PointRoll no later than 15 days after Google has cleared payment from Agency with respect to the ads on the insertion order. Subject to the foregoing, overdue amounts are subject to an interest charge of one and one-half percent (1.5%) per month compounded.

    b. PointRoll agrees to hold Google liable for payments solely to the extent proceeds have cleared from Agency to Google for ads placed in accordance with the insertion order. For sums not cleared to Google, PointRoll agrees to hold Agency or Advertiser solely liable. Google agrees to make reasonable effort to collect and clear payment from Agency on a timely basis. PointRoll agrees to waive all claims it has or may have in the future against Google related to the transactions contemplated by these General Terms and Conditions other than for non-payment of fees.

    c. The impression levels ordered on the insertion order are per individual websites or networks and are estimates as PointRoll does not dictate or control the number of ad requests that are sent to its servers from the websites in which ads appear. Invoices will be created using actual impressions per campaign, per website derived from the Google ad tracking servers.

    d. Campaigns based on a flat fee for a maximum number of impressions will be invoiced monthly unless otherwise outlined in the insertion order. Campaigns that run over the maximum allowed impression rate covered by a flat fee agreement will be invoiced for overage impressions at the CPM rate determined by dividing the flat fee amount by the maximum number of impressions covered by flat fee. Creative, production, and professional services fees outlined in an insertion order will be invoiced upon percentage of completion of ordered services.

## IV. REPORTING & COUNTING

a. Google ad servers will be the official counter for determining the number of ads delivered under an applicable insertion order, unless otherwise agreed upon in writing with Google. If a discrepancy greater than 10% exists between PointRoll and Google's ad count, the parties will attempt to resolve the discrepancy in good faith. Failure to provide reports by the party disadvantaged by the discrepancy will negate any remedy for counting discrepancy.

b. PointRoll will invoice based upon the number of impressions delivered per month unless otherwise agreed to in writing by the parties. Payment will be an amount equal to the number of impressions served multiplied by the agreed-upon CPM rate unless otherwise agreed to in writing by the parties.

## V. INDEMNIFICATION & LIMITATION OF LIABILITY

a. PointRoll acknowledges that Google is not responsible for any services provided by PointRoll to Agency or its advertisers and PointRoll agrees to indemnify and hold Google harmless from any claims by Agency or its advertisers related to the transactions contemplated by these General Terms and Conditions.

Google acknowledges that PointRoll is not responsible for any services provided by Google to Agency or its advertisers and Google agrees to indemnify and hold PointRoll harmless from any claims by Agency or its advertisers related to the transactions contemplated by these General Terms and Conditions.

b. EXCEPT FOR AMOUNTS PAYABLE TO THIRD PARTIES UNDER SECTION VIII.a AND A PARTY'S BREACH OF SECTION IX, TO THE FULLEST EXTENT PERMITTED BY LAW REGARDLESS OF THE THEORY OR TYPE OF CLAIM: (a) NO PARTY MAY BE HELD LIABLE UNDER THESE TERMS OR ARISING OUT OF OR RELATED TO PERFORMANCE OF THESE TERMS FOR ANY DAMAGES OTHER THAN DIRECT DAMAGES, EVEN IF THE PARTY IS AWARE OR SHOULD KNOW THAT SUCH DAMAGES ARE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY; AND (b) OTHER THAN GOOGLE'S PAYMENT OBLIGATIONS UNDER THESE TERMS, NO PARTY MAY BE HELD LIABLE FOR DAMAGES UNDER THESE TERMS ARISING FROM ANY GIVEN EVENT OR SERIES OF CONNECTED EVENTS IN THE AGGREGATE OF MORE THAN THE AMOUNT PAYABLE TO POINTROLL FOR THE ADVERTISEMENT, AS A RESULT OF ANY MISTAKE IN THE ADVERTISEMENT, OMISSION FROM OR ERROR IN ANY INDEX, OR FOR ANY OTHER REASON. PointRoll shall not be liable for any costs or damages if for any reason it fails to electronically publish or display an advertisement. In no event shall PointRoll be liable for any damages, consequential or otherwise, in

excess of the amount paid for the advertisement, as a result of any mistake in the advertisement, omission from or error in any index, or for any other reason.

c. No conditions other than those set forth in the agreed rate shall be binding on PointRoll unless specifically agreed to in writing by PointRoll. PointRoll will not be bound by conditions printed or appearing on order blanks or copy instructions which conflict with the provisions of the agreed rate or agreed specifications.

d. Neither party is liable for delays in delivery and/or non-delivery in the event of an Act-of-God, action by any government or quasi-governmental entity, fire, flood, insurrection, riot, mechanical, electrical, transmission or other failure, explosion, embargo, strikes whether legal or illegal, labor or material shortage, transportation interruption of any kind, work slow-down or any condition beyond the control of such party affecting production or delivery in any manner, including conditions at Google that are out of PointRoll's control.

## VI. NON-DISCLOSURE, PUBLICITY

a. Any marked confidential information and proprietary data provided by one party, including the ad description, and the pricing of the ad, set forth in the insertion order, shall be deemed 'Confidential Information' of the disclosing party, and shall not be disclosed without the disclosing party's prior written consent, except that Google and PointRoll may disclose the terms of these General Terms and Conditions, the ad description, the pricing of the ad and any other information set forth in the insertion order to Agency or its advertisers without Google or PointRoll's prior written consent, respectively.

b. All personally identifiable information provided by individual web users who are informed that such information is being gathered solely on behalf of Advertiser pursuant to the Advertiser's posted privacy policy are the property of Advertiser, is subject to the Advertiser's posted privacy policy, and is considered Confidential Information. No party may make any public statement regarding the relationship contemplated by these General Terms and Conditions, except that Google and PointRoll may disclose to Agency and its advertisers, Google's relationship with PointRoll as contemplated by these General Terms and Conditions.

## VII. MISCELLANEOUS

a. Any modification to these "General Terms and Conditions" must be agreed to in writing by both parties.

b. As used in these "General Terms and Conditions" the term PointRoll shall refer to PointRoll, Inc. and its subsidiaries and assigns. The term Google shall refer to Google Inc. and its subsidiaries and assigns. The term Agency shall refer to Team Detroit Inc. and its subsidiaries and assigns.

c. Any action arising out of or relating to this agreement or the parties' relationship shall be commenced and litigated to conclusion only in a state or federal court located in New York, New York. By agreeing to these terms and conditions, you

irrevocably submit to the jurisdiction of these courts and waive any objection you may have to jurisdiction or venue in New York County. If PointRoll retains an attorney to enforce this agreement, you agree to pay the attorney's fees incurred by PointRoll. This agreement and the parties' relationship shall be governed by New York law, excluding New York's choice of law rules.

d. Modifications to an approved insertion order will not be binding unless changes are approved by both PointRoll and Google. Notwithstanding anything to the contrary in any approved insertion order, the Terms of this Agreement shall govern any and all approved insertion order executed between PointRoll and Google hereafter in connection with Agency's campaigns and shall supersede PointRoll's standard Insertion Order Terms and Conditions.

e. These "General Terms and Conditions" expire on the first anniversary of the latest of the signature dates below. Either party may terminate these "General Terms and Conditions" at any time with notice to the other party. If these "General Terms and Conditions" expire or are terminated by either party, any campaigns in effect as of the date of such termination or expiration and not cancelled by Agency will run subject to these "General Terms and Conditions."

GOOGLE INC.

By:

Name: Eileen Naughton

Title: Director Media Platforms

Date: 13 April 2009

POINTROLL, INC.

By:

Name: Paul Grassinger, C.P.A.

Title: V.P. of Finance and Administration

Date: April 9, 2009

©2006 PointRoll, Inc. All Rights Reserved.



# EXHIBIT C

GOOGLE CONFIDENTIAL

AMENDMENT TO TERMS & CONDITIONS

This amendment ("**Amendment**"), effective as of November 25, 2009 (the "**Amendment Effective Date**"), amends the Terms and Conditions effective April 13, 2009 (the "**Agreement**"), between PointRoll, Inc. ("**PointRoll**"), a Delaware corporation, with its principal offices at 951 E. Hector Street, Conshohocken, PA 19428 and Google Inc. ("**Google**"), a Delaware corporation, with its principal offices at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (each a "**Party**" and collectively the "**Parties**").

Except to the extent specifically modified by this Amendment, all other terms and conditions of the Agreement shall remain in full force and effect. For the purpose of this Amendment, the capitalized terms used herein have the same meanings as set forth in the Agreement.

WHEREAS the Parties have mutually determined to extend the terms and conditions of the Agreement to apply to insertion orders submitted for (i) Organic, Inc. for campaigns on behalf of Chrysler and (ii) Starcom Mediavest Group Inc. for campaigns on behalf of General Motors.

WHEREAS the Parties would like to extend the Term of the Agreement.

NOW THEREFORE, the Parties hereby agree to amend the Agreement as follows:

1.    The second sentence of Section III.d is hereby deleted in its entirety.

2.    The second sentence of Section IV.a is hereby deleted and replaced with the following:

   If Google's impression count ("**IC**") is higher than PointRoll's ad server ("**3PAS**") IC by more than 10% over the invoice period, the parties will attempt to resolve the discrepancy in good faith. If the discrepancy is not resolved, PointRoll's sole remedy is to make a claim within 30 days after the end of the invoice period ("**Claim Period**") and Google will issue to PointRoll credits equal to (90% of Google IC – 3PAS IC) * agreed upon PointRoll ad serving CPM for that campaign.,

3.    Section VI.a is hereby amended by adding the following sentence to the end of that section:

   Confidential Information may only be disseminated to employees, directors, agents or third party contractors of Recipient with a need to know or who have first signed an agreement containing confidentiality provisions substantially similar to those set forth herein.

4.    The last sentence of Section VII.b is hereby deleted and replaced with the following:

   The term Agency shall refer to any of (i) Team Detroit Inc. and it subsidiaries and assigns, (ii) Organic, Inc. and its subsidiaries and assigns, or (iii) Starcom Mediavest Group Inc., and its subsidiaries and assigns, as applicable.

5.    Section VII.e is hereby deleted in its entirety and replaced with the following:

These "General Terms and Conditions" expire on December 31, 2010.  Either party may terminate these "General Terms and Conditions" at any time with at least seven (7) calendar days' notice to the other party.  If these "General Terms and Conditions" expire or are terminated by either party, any campaigns in effective as of the date of such termination or expiration and not cancelled by Agency will run subject to these "General Terms and Conditions."

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to enter into this Amendment as of the Amendment Effective Date.

POINTROLL, INC.

By: _____

Print Name: Tonya Jones

Title:  Controller

Date:  November 25, 2009

GOOGLE INC.

By: _____

Print Name:  EILEEN NAUGHTON

Title:  Director, Media Platforms

Date:  11/30/2009



# EXHIBIT D

GOOGLE CONFIDENTIAL

AMENDMENT NO. 2 TO TERMS & CONDITIONS

This amendment ("**Amendment No. 2**"), effective as of March _10_, 2010 (the "**Amendment No. 2 Effective Date**"), amends the Terms and Conditions effective April 13, 2009 (as amended, the "**Agreement**"), between PointRoll, Inc. ("**PointRoll**"), a Delaware corporation, with its principal offices at 951 Hector Street, Conshohocken, PA 19428 and Google Inc. ("**Google**"), a Delaware corporation, with its principal offices at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (each a "**Party**" and collectively the "**Parties**").

Except to the extent specifically modified by this Amendment No. 2, all other terms and conditions of the Agreement shall remain in full force and effect. For the purpose of this Amendment No. 2, the capitalized terms used herein have the same meanings as set forth in the Agreement.

WHEREAS pursuant to an amendment, effective November 25, 2009, to the Agreement between the Parties, the Agreement was amended to extend the terms and conditions of the Agreement to apply to insertion orders submitted for Organic, Inc. for campaigns on behalf of Chrysler.

WHEREAS, Chrysler has since engaged the agency UM Worldwide, LLC d/b/a UM USA to place campaigns on Chrysler's behalf.

NOW THEREFORE, the Parties hereby agree to amend the Agreement as follows:

1.    The last sentence of Section VII.b is hereby deleted and replaced with the following:

The term Agency shall refer to any agency for whom Google submits insertion orders relating to campaigns on behalf of any of General Motors Company, Ford Motor Company or Chrysler Group LLC.

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to enter into this Amendment No. 2 as of the Amendment No. 2 Effective Date.

POINTROLL, INC.

By: _____
Print Name: _Jason Tafler_____
Title: _C.E.O._____
Date: _March 10, 2010_____

GOOGLE INC.

By: _____
Print Name: _Eileen Naughton_____
Title: _Director, Media Sales and Operations_
Date: _3/15/2010_____

# EXHIBIT E

GOOGLE CONFIDENTIAL

AMENDMENT NO. 3 TO TERMS & CONDITIONS

This amendment ("**Amendment No. 3**"), effective as of December _16_ 2010 (the "**Amendment No. 3 Effective Date**"), amends the Terms and Conditions effective April 13, 2009 (as amended, the "**Agreement**"), between PointRoll, Inc. ("**PointRoll**"), a Delaware corporation, with its principal offices at 951 East Hector Street, Conshohocken, PA 19428 and Google Inc. ("**Google**"), a Delaware corporation, with its principal offices at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (each a "**Party**" and collectively the "**Parties**").

Except to the extent specifically modified by this Amendment No. 3, all other terms and conditions of the Agreement shall remain in full force and effect. For the purpose of this Amendment No. 3, the capitalized terms used herein have the same meanings as set forth in the Agreement.

WHEREAS the Parties would like to extend the Term of the Agreement.

NOW THEREFORE, the Parties hereby agree to amend the Agreement as follows:

1.  Section VII.e of the Agreement, as amended by Section 5 of an amendment, effective November 25, 2009, is hereby deleted in its entirety and replaced with the following:

    These "General Terms and Conditions" expire on December 31, 2011. Either party may terminate these "General Terms and Conditions" at any time with at least seven (7) calendar days' notice to the other party. ,If these "General Terms and Conditions" expire or are terminated by either party, any campaigns in effective as of the date of such termination or expiration and not cancelled by Agency will run subject to these "General Terms and Conditions."

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to enter into this Amendment No. 3 as of the Amendment No. 3 Effective Date.

POINTROLL, INC.

By: _____
Print Name: _JASON TAFLER_
Title: _CEO_
Date: _12/16/2010_

GOOGLE INC.

By: _____
Print Name: _Eileen Naughton_
Title: _Director, Google_
Date: _1/5/2011_

