UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: **All Actions** | |

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT VIBRANT MEDIA, INC.'S MOTION TO DISMISS

**KEEFE BARTELS, LLC**
Stephen G. Grygiel (Del Br No. 4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth St.
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefbartels.com*

*Executive Committee Member*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

*Additional Counsel on Signature Page*

Dated:  May 29, 2013

**STRANGE & CARPENTER**
Brian Russell Strange
Keith Butler
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**FINGER & SLANINA,** LLC
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................... 1

II.   SUMMARY OF ARGUMENT ...................................................................... 1

III.  STATEMENT OF FACTS ............................................................................. 2

IV.   LEGAL ARGUMENTS.................................................................................. 4

    A.    COUNT I – THE COMPLAINT STATES A CLAIM UNDER THE WIRETAP ACT.................................................................................................................. 4

    B.    COUNT II – THE COMPLAINT STATES A CLAIM UNDER THE STORED COMMUNICATIONS ACT ("SCA") ........................................................... 4

        1.    Browser-Managed Files on Computers and Mobile Devices are "Facilities" Under the SCA.......................................................... 4

        2.    Vibrant Accessed Information in "Electronic Storage"............................. 6

    C.    COUNT III – PLAINTIFFS HAVE STATED A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT ("CFAA") ........................................ 7

        1.    CFAA's Original Anti-Hacking Purpose Applies to Vibrant's Hack......... 7

        2.    Plaintiffs' CFAA Claims Satisfy All Pleadings Standards ........................ 8

        3.    Plaintiffs Properly Allege CFAA Losses .................................................. 9

        4.    Plaintiffs Properly Allege Minimum $5,000 in Aggregate Damages....... 14

        5.    Plaintiffs are Entitled to Aggregate Damages under CFAA .................... 15

            i.    CFAA's Plain Language Permits Aggregation............................. 15

            ii.   Case Law Supports Private Party Litigant Aggregations ............. 16

            iii.  Vibrant's Cases are Inapposite and Non-Binding......................... 17

            iv.   Vibrant's Unavailing Reliance on Legislative History................. 18

V.    CONCLUSION.............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*In re APA Transport. Corp. Consol. Litig.*,
    541 F.3d 233 (3d Cir. 2008)............................................................................. 10

*In re Apple & AT & TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) ........................................................... 16

*Bell Atlantic Co. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... 2, 8

*Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio*,
    Civil Action No. 09–2751, 2011 WL 6088611 (E.D. Pa. Dec. 7, 2011) .............. 10, 11, 13

*Chance v. Avenue A, Inc.*,
    165 F. Supp. 2d 1153 (W. D. Wash. 2001) ........................................................ 5

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    Civil Action No. 10–3542, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012)........................ 10

*CoStar Realty Inform. Inc. v. Field*,
    612 F. Supp. 2d 660 (D. Md. 2009)................................................................... 9

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
    793 F. Supp. 2d 311 (D.D.C. 2011) ............................................................... 5, 6

*Cousineau v. Microsoft Corp.*,
    slip op., No. C11-1438-JCC (W.D. Wash. June 22, 2012)..................................... 5, 6, 7

*Creative Computing v. Getloaded.com LLC*,
    386 F. 3d 930 (9th Cir. 2004) .................................................................. 5, 6, 9, 14, 16

*Czech v. Wall Street on Demand, Inc.*,
    Civ No. 09–180 (DWF/RLE), 2009 WL 2045308 (D. Minn. July 10, 2009)..15, 16, 17, 19

*Czech v. Wall Street on Demand, Inc.*,
    674 F. Supp. 2d 1102 (D. Minn. 2009)................................................................ 17, 18

*Del Vecchio v. Amazon.com, Inc.*,
    No. C11–366RSL, 2012 WL 1997697 (W.D. Wash. June 1, 2012)........................... 12, 13

*In re Doubleclick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)............................................................. 7, 10, 16, 19

*Eagle v. Morgan*,
    Civil Action No. 11–4303, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011) ...................... 13

*EF Cultural Travel BV v. Explorica, Inc.*,
    274 F.3d 577 (1st Cir. 2001)........................................................................ 9

*Ervin & Smith Adver. and Public Relations, Inc. v. Ervin*,
    No. 8:08CV459, 2009 WL 249998 (D. Neb. Feb. 3, 2009)........................................ 9, 14

*Expert Janitorial, LLC v. WIlliams*,
    No. 3:09–CV–283, 2010 WL 908740 (E.D. Tenn. Mar. 12, 2010)................................. 6

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005)............................................................................... 18, 19

*Four Seasons Hotels. v. Consorcio Barr, S.A.*,
    267 F. Supp. 2d 1268 (S.D. Fla. 2003), *aff'd in part, rev'd in part by* 138 Fed. Appx. 297
    (11th Cir. 2005).................................................................................... 15

*Freedom Banc Mortg. Services, Inc. v. O'Harra*,
    No. 2:11–cv–01073, 2012 WL 3862209 (S.D. Oh. Sept. 5, 2012)................................ 19

*Garcia v. City of Laredo*,
    702 F.3d 788 (5th Cir. 2012) .................................................................... 6

*Golod v. Bank of America Corp.*,
    Civil No. 08–746 (NLH)(AMD), 2009 WL 1605309 (D. Del. June 4, 2009), *aff'd,* 403
    Fed. Appx. 699 (3d Cir. 2010).................................................................... 8

*In re Intuit Privacy Litig.*,
    138 F.Supp.2d 1272 (C.D. Cal. 2001)............................................................ 5, 6, 7

*In re iPhone App. Litig.*,
    No. 11–MD–02250–LHK, 2011 WL 4403963 (N. D. Cal. Sep. 20, 2011)............... 16, 19

*Iqbal v. Ashcroft*,
    556 U.S. 662 ...................................................................................... 13

*Lyons v. Coxcom, Inc.*,
    No. 08–CV–02047–H (CAB), 2009 WL 347285 (S.D. Cal. Feb. 6, 2009), *order vacated*
    *by* 718 F. Supp. 2d 1232 (S. D. Cal. 2009)..................................................... 17

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007) ........................................................................................... 10

*M-I LLC v. Argus Green, LLC*,
    Civil Action No. H–10–cv–03364, 2011 WL 3813286 (S. D. Tex. Aug. 26, 2011) ........ 19

*M-I LLC v. Stelly*,
    733 F. Supp. 2d 759 (S.D. Tex. 2010) .................................................... 11, 13

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
    559 U.S. 229 (2010) ........................................................................................... 18

*Mohamad v. Palestinian Authority, et al.*,
    132 S. Ct. 1702 (2012) ...................................................................................... 18

*Mortensen v. Bresnan Communication, LLC*,
    No. CV 10–13–BLG–RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ............... 16, 17

*Oracle America, Inc., v. Service Key, LLC*,
    No. C 12–00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 12, 2012) ........................... 14

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*,
    428 F.3d 504 (3d Cir. 2005) ................................................................................. 7

*Pac. Aerospace & Elec., Inc. v. Taylor*,
    295 F. Supp. 2d 1188 (E.D. Wash. 2003) ........................................................ 12

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................ 2, 7, 8, 13, 18

*ReMedPar, Inc. v. AllParts Medical, LLC*,
    683 F. Supp. 2d 605 (M.D. Tenn. 2010) ............................................... 13, 14

*Slim CD, Inc. v. Heartland Payment Systems, Inc.*,
    Civil Action No. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007) .................... 20

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ............................................................................ 4

*Therapeutic Research Faculty v. NBTY, Inc.*,
    488 F. Supp. 2d 991 (E.D. Cal. 2007) .............................................................. 4

*Thurmond v. Compaq Computer Corp.*,
    171 F. Supp. 2d 667 (E.D. Tex. 2001) ........................................................ 17, 18

*In re Toys R Us Privacy Litig.*,
        No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .................... 7, 10, 16, 17

*United Factory Furnishings Corp. v. Alterwitz*,
        No. 2:12-CV-00059, 2012 WL 2138115 (D. Nev. June 13, 2012) ........................... 10, 13

*United States v. Nosal*,
        676 F.3d 854 (9th Cir. 2012) ........................................................................................ 8

*In re: Wilmington Trust Corp. ERISA Litig.*,
        Civ. No. 10-1114-SLR, 2013 WL 1855756 (D. Del. May 3, 2013) ........................... 2, 13

*Yunker v. Pandora Media, Inc.*,
        No. 11–CV–03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013).................. 11, 12

## STATUTES

18 U.S.C. § 1030(a)(5).......................................................................................................... 11, 18

18 U.S. C. § 1030(c)(4)(A)(i)(1)................................................................................. 1, 14, 15, 18

18 U.S.C. § 1030(e)(8) .......................................................................................................... 16, 18

18 U.S.C. § 1030(e)(11).................................................................................................. 1, 9, 11, 14

18 U.S.C. § 1030(g) ............................................................................................................... 15, 18

18 U.S.C. § 2510(15) .................................................................................................................... 5

18 U.S.C. § 2510(17) .................................................................................................................... 6

18 U.S.C. § 2701(a) ............................................................................................................... 1, 4, 6

## OTHER AUTHORITIES

Pub. L. 104-294, § 201(4)(A)(i) (1996)...................................................................................... 12

Pub. L. No. 98-433, Title II, § 2102(a) (1984) .......................................................................... 12

N. Johnson, <u>I Agree to Criminal Liability</u>, 2009 Ill. J.L. Tech. & Pol'y. 561, 567 (Fall 2007).14

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1, 8, 10, 17

Fed. R. Civ. P. 8(a) ................................................................................................ 2, 7, 8, 13

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their first Consolidated Amended Compliant ("CAC") in this MDL on December 19, 2012. Defendant Vibrant Media, Inc. ("Vibrant" or "Defendant") filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) on May 1, 2013.[1] Plaintiffs' opposition is below.

## II.    SUMMARY OF ARGUMENT

1.    Vibrant's Motion relies on facts the CAC and its attendant inferences contradict, requiring denial of that motion. Providing Vibrant with fair notice of Plaintiffs' claims and the grounds upon which they rest, the CAC's facts raise a reasonable expectation that discovery will reveal evidence of the elements of Plaintiffs' claims.

2.    Plaintiffs have adequately pled Vibrant's violation of the Wiretap Act for the same reasons stated in Plaintiffs' oppositions to the dismissal motions of co-defendants Google, Inc. and PointRoll, Inc.

3.    Plaintiffs have sufficiently pled a violation of the Stored Communications Act ("SCA"). Vibrant accessed, without authorization (CAC ¶ 217), Plaintiffs' browser-managed files on their computing devices, which are "a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a).    The browser-managed files storing the cookies are within the SCA's "electronic storage" definition.

4.    Plaintiffs' Computer Fraud and Abuse Act ("CFAA") claim sufficiently pleads a substantive claim and the required "loss" under 18 U.S.C. § 1030(e)(11). Plaintiffs allege losses from Vibrant's unauthorized interference with their computers. *See* CAC ¶¶ 49-51, 56-60, 63-66 (measurable market value of PII); 225, 226 (CFAA losses).    Aggregation is permissible under 18 U.S. C. § 1030(c)(4)(A)(i)(1)).  If a "single act" by Vibrant is required, its hack was one.

---

[1] The other defendants in this MDL, Google, Inc., PointRoll, Inc., Media Innovation Group, LLC and WPP PLC have also filed motions to dismiss.

## III.    <u>STATEMENT OF FACTS</u>

Plaintiffs', not Vibrant's, factual allegations are deemed true on this motion.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Plaintiffs' factual allegations contradict Vibrant's misleading portrayal of its undisclosed code that tricked users' browsers into accepting Vibrant's cookies, including Vibrant's "VM_USR" tracking cookie.  CAC ¶¶ 146-147.

Vibrant sells advertising specifically targeted to potential customers identified by previously compiled data dossiers about those customers – their characteristics, likes and dislikes.  *Id.* ¶ 24.  To gather more information about users, Vibrant secretly disabled their Safari browsers' default "do not track" settings, which block third-party cookies.  *Id.* ¶¶ 70-71.  Vibrant embedded secret computer code in advertisements that Vibrant supplied to third-party websites, tricking a user's browser into sending "an invisible form" back to Vibrant, in turn disabling Safari's no-tracking default setting.  *Id.* ¶ 146.  Next Vibrant "implanted a tracking cookie 'VM_USR' on the unsuspecting user's computing device."  *Id.* ¶ 147.  Its secret tracking cookie in place, Vibrant could monitor the user's internet comings and goings.  *Id.*

These allegations fully provide Vibrant "with fair notice" of Plaintiffs' claims and "the grounds upon which" they rest.  *See In re Wilmington Trust ERISA Litig.*, Civ. No. 10–1114–SLR, 2013 WL 1855756, at *6 (D. Del. May 3, 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("'interpreting Fed. R. Civ. P. 8(a)")).  Going beyond Rule 8(a)(2)'s requirements, Plaintiffs provide even more finely reticulated facts detailing precisely how Vibrant hacked the Safari default setting.  *See* CAC ¶ 150 (describing five separate parts of Vibrant's "'circumvention technology'").  Jonathan Mayer, the technology guru who discovered the hack, "found conclusive evidence that Vibrant deliberately circumvents Safari's third-party cookie blocking feature."  *Id.* ¶ 149.

Vibrant *admitted* the hack, euphemistically calling it a "workaround," "designed to 'make

Safari work like all the other browsers.'" *Id.* ¶ 151 (quoting Vibrant spokesperson). That is, "to make Safari permit implantation of third-party tracking cookies." No other inference is plausible, especially since Vibrant admitted its hack was "'for unique user identification.'" *Id.* Were its hack not purposefully illicit, Vibrant would have contemporaneously disclosed it, creating a consent or authorization defense. Vibrant made no such claim. *Id.* ¶ 152.

Painting its cookies as "benign," "beneficial part[s] of the Internet environment" (D. Br. 2), Vibrant obscures the important distinction between first-party cookies (which have the beneficial uses Vibrant describes, *see also* CAC ¶ 39(b)(i)) and third-party cookies, which are the tracking cookies Plaintiffs were trying to block, that advertising companies, such as Vibrant, use to track user behavior to increase their own revenues by selling more targeted advertising. *See* CAC ¶¶ 39(b)(ii), 40-48. Vibrant's arguments that its activities were "benign" and that only Vibrant obtained information from the cookies misses the point: Plaintiffs didn't want *anyone* to place the cookies Vibrant set in Plaintiffs' browsers to track their activity. In reciting the list of information Plaintiffs allege Vibrant collects (D. Br. 3), Vibrant tellingly omits "a history of all websites visited within the ad network," a key allegation. CAC ¶ 46. Vibrant's reference to its spokesman's quote that Vibrant doesn't collect personally identifiable information such as name or financial-account numbers," (D. Br. 4) ignores the CAC's factual allegations that "there is no such thing as anonymous web tracking." CAC ¶ 124 (citing work of Arvind Narayanan).

## IV.    LEGAL ARGUMENTS

### A.    COUNT I – THE COMPLAINT STATES A CLAIM UNDER THE WIRETAP ACT

Vibrant offers a single paragraph, incorporating the arguments of its co-defendants, Google and Pointroll, in support of its motion to dismiss Plaintiffs' Wiretap Act claim.  For the reasons in Plaintiffs' oppositions to Google's and PointRoll's motions to dismiss, incorporated here, Plaintiffs have also stated valid Wiretap Act claims against Vibrant.  *See* Plaintiffs' Brief in Opposition to defendant Google's Motion to Dismiss, D.I. 81 at 13-18; Plaintiffs' Brief in Opposition to defendant Pointroll's Motion to Dismiss, D.I. 80 at 7-14.

### B.    COUNT II – THE COMPLAINT STATES A CLAIM UNDER THE STORED COMMUNICATIONS ACT ("SCA")

"[T]he [SCA] protects individuals' privacy and proprietary interests."  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004).  It provides a cause of action against "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system. . . ."  18 U.S.C. § 2701(a).  The "sort of trespasses to which the [ECPA] applies are those in which the trespasser gains access to information . . . which he is not entitled to see."  *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 997 (E.D. Cal. 2007).

#### 1.    Browser-Managed Files on Computers and Mobile Devices are "Facilities" Under the SCA

Vibrant argues that the CAC fails to allege that Vibrant accessed a "facility" through which "electronic communication services" are provided.  When Vibrant stores an unauthorized third-party tracking cookie, information about the user's activity is captured by these browser-

4

managed files, ultimately transmitted to Vibrant and associated with information about the user. Therefore, Vibrant accesses, without authorization, "a facility through which an electronic communication service is provided," *i.e.,* Plaintiffs' browser-managed files on their computing devices.  CAC ¶ 217-18.

Moreover, "Congress intended "facility" to include the physical equipment used to facilitate electronic communications." *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011).  Plaintiffs allege a system involving numerous physical means of communication, including the user's hardware and browser-managed files.  Vibrant stores the unauthorized VM-USR cookie, and then obtains information from the user's browser-managed files. *See* CAC ¶¶ 27-48, 68-78, 146-152.

Plaintiffs' browser-managed files are facilities through which an "electronic communication service" ("ECS")[2] is provided, *i.e.*, internet service. The computers and mobile phones, on which the browser-managed files storing Vibrant's unauthorized cookies are stored, are themselves "facilities." Contrary to Vibrant's factual assertion, the browser-managed files themselves must also be SCA "facilities."  *See Cousineau v. Microsoft Corp.*, slip op., No. C11-1438-JCC, at 10-11 (W.D. Wash. June 22, 2012) (*see* Ex. 1 attached) ("Congress chose a broad term—facility—where it intended the statute to cover a particular function, such as internet access, as opposed to a particular piece of equipment providing that access, such as a router, laptop or smart phone.  As technology evolves, identifying a smart phone as a facility through which an ECS is provided is not as 'strained' as it once may have seemed.").[3]  Holding a

---

[2] An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

[3] *See also Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1161 (W.D. Wash. 2001), *abrogated on other grounds by Creative Computing v. Getloaded, LLC,* 386 F. 3d 930, 934-35 (9th Cir. 2004) (SCA's definition of "facilities" includes personal computers); *In re Intuit Privacy Litig.*,

computer is a "facility," the *Cousineau* court noted: "While earlier stages of technological development may have required large facilities for data storage, the draw of mobile devices is that their smaller storage space enables communication and information access regardless of the user's location." *Id.* at 11.[4]  Vibrant's arguments rely on outdated interpretations of communications technologies.

Through discovery on this factual issue Plaintiffs will further demonstrate that these physical means of communication constitute a "facility." *Gaubatz*, 793 F. Supp. 2d at 336 (denying dismissal because argument that plaintiffs' office computers are not a "facility" required "further development of the factual record"); *Cousineau*, NO. C11-1438-JCC, at 12.

### 2.    Vibrant Accessed Information in "Electronic Storage"

Vibrant contends that Plaintiffs' SCA claim fails to show Vibrant accessed any communications in "electronic storage," which includes "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof…." 18 U.S.C. § 2510(17).  The SCA simply requires Plaintiffs to plead facts suggesting that data that Vibrant accessed without authorization was temporarily stored pending delivery to an intended recipient.  Plaintiffs pled precisely that.  *See* CAC ¶ 218.  Plaintiffs allege extensive facts explaining how Vibrant carried this out, *see* CAC ¶¶ 27-48, 68-78, 146-152, and specifically how the information was stored, *see* CAC ¶¶ 45-46, 146-147, 150. Plaintiffs have

---

138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("The court notes, however, that Section 2701 does not require that Plaintiffs' computers be 'communication service providers' only that they be a **facility** through which an electronic communication service is provided.") (emphasis in original); *Expert Janitorial, LLC v. Williams*, No. 3:09–CV–283, 2010 WL 908740, at *5 (E.D. Tenn. Mar. 12, 2010) (citing *In re Intuit* and holding that "plaintiff's computers on which the data was stored may constitute 'facilities' under the SCA").

[4] *Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012), is distinguishable because Plaintiffs' allegations relate to files stored by Vibrant in Plaintiffs' browser-managed files, not from files stored permanently *by owners* on their hard drive.  Moreover, *Garcia* is a summary judgment, not a motion to dismiss, opinion. *Garcia*, 702 F.3d at 790.

met their burden of *pleading* facts that at a minimum "suggest" (*Phillips,* 515 F.3d at 233-35) that Vibrant accessed Plaintiffs' data while it was in "electronic storage."[5]

If the accessed files are stored for future use, as Vibrant stores its VM_USR cookies in users' browser-managed files, they are stored in a "facility through which an electronic communication service is provided." Only Vibrant could store the unauthorized cookies in the browser through which the ECS is provided; Plaintiffs were unaware of their unauthorized placement and storage within their browsers. The browser-managed files storing the cookies, the "facilities" Plaintiffs alleged were accessed without authorization (CAC ¶ 217), are within the SCA's "electronic storage" definition. *See In re Intuit Privacy Litig.*, 138 F.Supp.2d at 1277 ("Plaintiffs have alleged that Defendant accessed data contained in 'cookies' that it placed in Plaintiffs' computers' electronic storage. The court concludes that this allegation satisfies the liberal requirements of Rule 8(a)(2)."); *see also Cousineau*, NO. C11-1438-JCC, at 12 ("The language Congress chose, however, does not require only one point of ECS provision.").

## C.    COUNT III – PLAINTIFFS HAVE STATED A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")

### 1.    CFAA's Original Anti-Hacking Purpose Applies to Vibrant's Hack

Cases discussing the CFAA often emphasize the statute's original anti-hacking focus. *See, e.g., P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 510 (3d Cir. 2005). Vibrant nowhere comes to grips with Plaintiffs' core factual allegations

---

[5] In light of the above, Vibrant's reliance on *In re DoubleClick Inc. Privacy Litig.* 154 F. Supp. 2d 497 (S.D.N.Y. 2001) is misplaced. D. Br. 9.  The plaintiffs in *In re DoubleClick* alleged that the data files (cookies) at issue were *permanently* stored on their hard drives, leading the court to conclude, as a matter of law, that the defendants could not have accessed information in temporary "electronic storage." *In re DoubleClick*, 154 F. Supp. 2d at 512.  The same is true of *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *3-*4 (N.D. Cal. Oct. 9, 2001), which relies heavily on *DoubleClick*. Here, Plaintiffs specifically allege that the cookies were temporarily stored by Vibrant when Vibrant accessed them without permission.

confirming the CFAA's applicability to Vibrant's deliberate hacking around the Safari default settings through a technologically sophisticated series of steps. *See, e.g., United States v. Nosal*, 676 F.3d 854, 864 (9th Cir. 2012) (finding no liability for employee misuse of information, saying CFAA's "general purpose is to punish hacking – the circumvention of technological access barriers").

### 2.    Plaintiffs' CFAA Claims Satisfy All Pleadings Standards

Vibrant argues Plaintiffs' CFAA allegations are "conclusory."  D. Br. 14.  Vibrant relies on a heightened fact pleading test that *Phillips*, 515 F. 3d at 230, correctly found the Supreme Court in *Twombly*, 550 U.S. 544, rejected in confirming that Rule 8(a)(2) notice pleading continues:  "[T]he Supreme Court never said that it intended a drastic change in the law, and indeed strove to convey the opposite impression." *Phillips*, 515 F. 3d at 230.  *Phillips* emphasized *Twombly's* disavowal of "adopting or applying a 'heightened pleading standard.'" *Id.* at 234.  *Phillips* repeated *Twombly's* statement that "'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations….'" *Id.* at 231. Plaintiffs here have, in fact, provided "detailed factual allegations."

*Phillips* reads *Twombly's* plausibility test to say that a complaint survives if it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of "the elements of the claim." *Phillips*, 515 F. 3d at 234 (quoting *Twombly*, 550 U.S. at 556). Plaintiffs' detailed factual claims about Vibrant's secret and *admitted* hack at a minimum raise that expectation.  *See also Golod v. Bank of America Corp.*, Civil No. 08–746 (NLH)(AMD), 2009 WL 1605309, at *1 (D. Del. June 4, 2009), *aff'd,* 403 Fed. Appx. 699 (3d Cir. 2010) ("It is well settled that a pleading is sufficient if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief' Fed. R. Civ. P. 8(a)(2).")

### 3.    Plaintiffs Properly Allege CFAA Losses

Vibrant's general argument that its unauthorized "transmission or collection" of Plaintiffs' PII (D.Br. 12-13), does not constitute CFAA "loss" ignores the CFAA's broad loss language. *See* 18 U.S.C. § 1030(e)(11) ("*any* reasonable cost to *any* victim…" (emphasis added)). That argument also ignores Plaintiffs' actual claims, which properly tether substantive CFAA violations to a claim for CFAA loss. *See* CAC ¶¶ 225 (impermissible transmission of code or command intentionally causing loss), 226 (unauthorized access causing loss).

Vibrant similarly ignores case law emphasizing the breadth of the CFAA's loss language. For example, in *Ervin & Smith Adver. and Public Relations, Inc. v. Ervin*, No. 8:08CV459, 2009 WL 249998, at *7-*8 (D. Neb. Feb. 3, 2009), the court rejected the argument Vibrant makes here, that CFAA losses can only be either repair or response costs or result from service interruption. *Ervin* found that "'[loss of business constitutes] economic damages'" (quoting *Creative Computing*, 386 F. 3d at 935 for proposition that impairment of individual's money or property or an individual's loss of money or property are economic losses recoverable under CFAA)). *Ervin* rooted its correctly broad view of CFAA losses in the statute's purpose:

> As we move into an increasingly electronic world, the instances of physical damage will likely be fewer while the value to the victim of what has been stolen and the victim's costs in shoring up its security features undoubtedly will loom ever-larger. If we were to restrict the statute as [Defendants] urge, we would flout Congress's intent by effectively permitting the CFAA to languish in the twentieth century, as violators of the Act move into the twenty-first century and beyond." [quoting *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 585 (1st Cir.2001)]. In a time when most computer crimes result in loss of revenue and little to no physical damage, it is nonsensical to conclude that Congress did not intend to create a remedy for circumstances such as those the Plaintiff has pled in this matter.

*Ervin,* 2009 WL 249998, at *9. *See also CoStar Realty Inform. Inc. v. Field*, 612 F. Supp. 2d 660, 675  (D. Md. 2009) (rejecting narrow reading of CFAA loss, especially on "disfavored"

Rule 12(b)(6) motion, and finding general allegation of loss of revenue from license fees sufficient); *United Factory Furnishings Corp. v. Alterwitz*, No. 2:12-CV-00059, 2012 WL 2138115, at *2  (D. Nev. June 13, 2012) ("In the CFAA, Congress has defined 'loss' broadly to include any reasonable cost, revenue lost, and other consequential damages."); *CollegeSource, Inc. v. AcademyOne, Inc.*, Civil Action No. 10–3542, 2012 WL 5269213, at *15 (E.D. Pa. Oct. 25, 2012) (rejecting argument that CFAA losses are only those "related to damage or interruption of a computer," noting CFAA's "broad language"); *In re Toys R Us*, 2001 WL 34517252, at *10 (rejecting dismissal argument that CFAA "economic loss" cannot include misappropriated PII, citing *In re DoubleClick*, 154 F. Supp. 2d at 525-26).

A basic statutory interpretation rule requires reading the CFAA's definition of "loss" as "mean[ing] any reasonable cost to any victim, including…,'" followed by six enumerated categories, as *not* limited to those six items.  As a Third Circuit panel said in *In re APA Transport. Corp. Consol. Litig.*, 541 F.3d 233, 241-42 (3d Cir. 2008):

> It is a well-established canon of statutory construction that when the word "including" is followed by a list of examples, those examples are generally considered illustrative rather than exhaustive. *See, e.g., Massachusetts v. E.P.A.*, 549 U.S. 497, 127 S.Ct. 1438, 1476, 167 L.Ed.2d 248 (2007) (Scalia, J., dissenting) ("The word 'including' ... indicate[s] that what follows will be an 'illustrative' sampling of the general category that precedes the word.")….

Vibrant's cases purportedly supporting a narrow reading of CFAA losses ignore that statutory construction rule, and are either inapposite or even weigh against dismissal. Nothing like our case, *Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio*, Civil Action No. 09–2751, 2011 WL 6088611 (E.D. Pa. Dec. 7, 2011) (D. Br. 12), involved an employee's computer-based theft of money from his employer.  Decided on summary judgment, *Clinton Plumbing* said CFAA  loss "is a loss which is in some way related to functionality of the protected computer at

issue" ( *id.* at *5) such as the "cost of remedial measures" or "lost revenue" from an inoperable computer. *Id.* Plaintiffs' well-pled and admitted (CAC ¶ 151) allegations of secretly embedded code triggering invisible forms and resulting secret tracking cookies do involve the "functionality of the protected computer[s] at issue." 2011 WL 6088611, at *5. Plaintiffs allege losses from Vibrant's unauthorized interference with their computers. *See* CAC ¶¶ 49-51, 56-60, 63-66 (measurable market value of PII); 225, 226 (CFAA losses).

*M-I LLC v. Stelly*, 733 F. Supp. 2d 759 (S.D. Tex. 2010) (D. Br. 12), an employment-based case involving alleged theft of trade secrets and breaches of non-competition covenants by former employees, had nothing to do with the sort of technological trickery Plaintiffs pled (CAC ¶¶ 146-150), Vibrant admitted (CAC ¶ 151), and never tried to say was authorized. CAC ¶ 152. *Stelly's* plaintiff generally alleged only "damages 'to its business in the form of lost profits, loss of customers and loss of future business opportunities.'" *Stelly*, 733 F. Supp. 2d at 780. Plaintiffs here, in contrast, specifically allege (*see* CAC ¶¶ 225-226) the statutorily required "any reasonable cost" (18 U.S.C. § 1030(e)(11)) that they incurred from Vibrant's violations of substantive prohibitions of the CFAA. *See* CAC ¶¶ 225-226 (citing 18 U.S.C. §1030(a)(5)).

*Yunker v. Pandora Media, Inc.*, No. 11–CV–03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) (D. Br. 13), an unpublished case, involved plaintiffs who, unlike ours, knowingly provided PII. *Id.* at *1. *Yunker* nowhere analyzed the breadth of the CFAA's loss language. *See* 18 U.S.C. § 1030(e)(11). Neither *Yunker* nor any of Vibrant's cases recognizes that the broad adjective *any* in "any reasonable cost" supports reading the examples following "including" as representative, not a strictly confined three-item list. Nor does *Yunker* or any of Vibrant's cases recognize that the use of *or* in the phrase "or other consequential damages incurred because of interruption of service" following the broadly defined "any revenue lost, cost incurred" phrase

11

suggests that "*any* revenue lost" and *any* "cost incurred" are *not* limited to losses and costs stemming from service interruption (emphases added).  Many sorts of computer hacks, such as Vibrant's, will not result in service interruptions. Vibrant's hack worked until Mr. Mayer discovered it because of the *absence* of service interruption.  Neither *Yunker* nor any of Vibrant's cases address the pro-plaintiff implications of the CFAA's continued liability expansion from 1984 to 2008, from criminal application only (1984) to civil cases (1994), from narrow protection for only "federal interest computers" (*see* Pub. L. No. 98-433, Title II, § 2102(a) (1984)), to sweeping safeguarding of "protected computers" used in interstate commerce (*see* Pub. L. 104-294, § 201(4)(A)(i) (1996)), which includes virtually any computer hooked to the Internet.  *See Pac. Aerospace & Elec., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003) ("Congress has… continuously broadened" CFAA's "scope and coverage").  Vibrant and its cited cases similarly ignore the pro-liability implications of the CFAA's application to "information" rather than "commercially marketable, trade secrets or proprietary information."

In *Del Vecchio v. Amazon.com, Inc.*, No. C11–366RSL, 2012 WL 1997697 (W.D. Wash. June 1, 2012) (D. Br. 13), the plaintiffs, unlike ours, "all-but concede that they suffered no actual monetary detriment," acknowledging the PII at issue "was not '*economically exploitable by Plaintiffs and Class Members.*'" *Id.* at *4 (emphasis by *Del Vecchio* court).  *Del Vecchio's* plaintiffs' loss allegations suggested that their "information gains utility – and thus value – only after it is organized and targeted by Defendant…." *Id.*  Plaintiffs here allege that PII has specific value in their own hands.  *See, e.g.,* CAC ¶¶ 57-60, 63-65.  *Del Vecchio* focused on the plaintiffs' failure to allege decline in their computers' performance from supposedly innocuous cookies.  *Del Vecchio*, 2012 WL 1997697, at *5.  Not alleging decreased performance, Plaintiffs here do allege the third-party cookies Vibrant enabled were *not* innocuous because they secretly

fostered associating information with users in defiance of Plaintiffs' expectations in using those browsers. *Del Vecchio* applied an erroneously stringent factual pleadings standard. The court "told Plaintiffs that they needed to allege facts sufficient to demonstrate that a $5,000 loss had actually occurred," citing *Iqbal v. Ashcroft*, 556 U.S. 662, 677-78 (2009). But Plaintiffs in this Court and this Circuit are required *only* to allege facts sufficient to put Defendants on notice of the claim and its grounds (*see Wilmington Trust*, 2013 WL 1855756, at *6), with enough specificity to create the reasonable expectation that discovery will provide evidence of required elements. *Phillips,* 515 F. 3d at 230; *id.* at 233 ("under our reading, the notice pleading standard of Rule 8(a)(2) remains intact…").

*Eagle v. Morgan*, Civil Action No. 11–4303, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011) (D. Br. 13), is yet another case focusing on whether "unauthorized access" turns on "access" or "use" in the employment setting. *Id.* at *6-*7. *Eagle* had nothing to do with an ad-serving company's systematic circumvention of a user's browser default setting. *Eagle* confirms why the CFAA protects Plaintiffs here: "At its core, the Act is intended to protect the 'confidentiality, integrity and security of computer data and networks' by *prohibiting misuse of a computer*…." *Id.* at *6 (quoting N. Johnson, <u>I Agree to Criminal Liability</u>, 2009 ILL. J.L. TECH. & POL'Y. 561, 567 (Fall 2007) (emphasis by *Eagle* court)). *Eagle's* purported restriction of CFAA losses to those of the repair and restore variety (*Eagle,* 2011 WL 6739448, at *8) is based on no analysis of the CFAA's continuous liability expansion or loss language, ignores cases like *Alterwitz*, 2012 WL 2138115, at *2, and contradicts the broad protective purpose *Eagle* says animates the CFAA.

*ReMedPar, Inc. v. AllParts Medical, LLC*, 683 F. Supp. 2d 605 (M.D. Tenn. 2010), like *Clinton Plumbing*, *Stelly*, and *Eagle*, was a business dispute far afield from Vibrant's broad hack.

Also focusing on "unauthorized access" versus "misuse" (*id.* at 614-15), the *ReMedPar* court rejected "the 'broad' view of the terms authorization and 'exceeds authorization.'" *Id.* at 615. *ReMedPar* says nothing about our case. As the *ReMedpar* court said, "courts adopting the broad view of those terms have generally also adopted a broad view of the term 'loss,' which this Court declines to follow." *Id.* Our case does not depend on either the broad (agency law) or narrow (statutory text) views of "authorization" or "access" in an employment setting. "Loss" should follow the broad statutory language that *Ervin* and *Creative Computing* correctly respected: "any reasonable cost." 18 U.S.C. § 1030(e)(11).

*Oracle America, Inc., v. Service Key, LLC*, No. C 12–00790 SBA, 2012 WL 6019580, at*4 (N.D. Cal. Dec. 12, 2012) (D. Br. 14), confirms the fundamental CFAA point Vibrant wants to hide. Vibrant's illicit "computer hacking that [was] intended to procure…information" (CAC ¶¶ 146-152) is squarely within the CFAA's reach. *Id.* at *3.

### 4.    Plaintiffs Properly Allege Minimum $5,000 in Aggregate Damages

Vibrant's specific arguments (D. Br. 13-19) that Plaintiffs inadequately allege the requisite damages of "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value" (18 U.S. C. § 1030(c)(4)(A)(i)(1)) similarly misses the mark. "Loss" is defined monetarily in terms of "costs," "revenue" and "consequential damages." 18 U.S. C. § 1030(e)(11). Plaintiffs allege "millions of Class members" (CAC ¶ 193), whose impermissibly seized PII is both "currency" (CAC ¶ 49) and a marketable "commodity" (CAC ¶ 50), worth from $3.00 for "demographic information" (CAC ¶ 56) to $52 for "web-browsing history." CAC ¶ 56. Plaintiffs allege markets in which dollars are exchanged for PII. *See* CAC ¶¶ 57-66. Plaintiffs have properly alleged at least $5,000 in losses. A business's "customer information…constitute[s] a property interest" satisfying the CFAA's damages requirement.

*See, e.g., Four Seasons Hotels. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1324 (S.D. Fla. 2003), *aff'd in part, rev'd in part by* 138 Fed. Appx. 297 (11th Cir. 2005) (citing cases).  A customer's possession of his own information does, too.

### 5.    Plaintiffs are Entitled to Aggregate Damages under CFAA

Vibrant says the CFAA prohibits aggregating damages to reach the $5,000 minimum, an argument neither Google nor PointRoll even bothered with in their main briefs.

### i.    CFAA's Plain Language Permits Aggregation

Vibrant's "no-aggregation" argument tramples the "plain language" approach (D. Br. 17) Vibrant purports to adopt.  18 U.S.C. § 1030(g) authorizes Plaintiffs' civil action under 18 U.S.C. § 1030(c)(4)(A)(i)(I) to recover:

> loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value.

First, "aggregating" appears *outside* the government action parenthetical to which Vibrant says that participle is confined.  That plain language controls.  Non-governmental plaintiffs are entitled to aggregate losses to meet the statutory minimum.  Reaching that very result, the court in *Czech v. Wall Street on Demand, Inc.*, Civil No. 09–180 (DWF/RLE), 2009 WL 2045308, at *3 (D. Minn. July 10, 2009) said: "[t]aking away the parenthetical, what remains is 'loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value.'" Running from this plain language, Vibrant is reduced to saying "[s]ome district courts have overlooked the CFAA's plain language."  D. Br. 17.  That is not argument, but complaint.

Second, aggregation's permissibility for Plaintiffs is inherent in the rest of the provision's plain language.  "[L]oss to 1 or more persons" necessarily entails aggregating the losses of those multiple persons.  "[D]uring any 1-year period" necessarily entails aggregating the losses of

those multiple persons over a one-year period. *See, e.g., Czech*, 2009 WL 2045308, at *3 (finding "plain reading" of CFAA permits private party aggregation of damages; "[t]he parenthetical…is limited to the United States and should not be read as imposing a limit upon any plaintiff other than the United States, especially in light of the definition of 'loss' that includes 'any reasonable cost to any victim.'").

Third, Vibrant's wished-for "one-act-to-one-computer limit" appears nowhere in the statute. *See Creative Computing,* 386 F. 3d at 934 (such an extra-statutory addition would "attribute obvious futility to Congress rather than rationality," because interposing a single act requirement would permit hackers to avoid the CFAA's prohibitions; "The damage floor in the Computer Fraud and Abuse Act contains no 'single act' requirement."); *Freedom Banc Mortgage Servs. v. O'Harra,* No. 2:11-cv-01073, 2012 WL 3862209, at * 7 (S. D. Ohio, Sep. 5, 2012) (same). Limiting recovery for single, one-time only intrusions to a single computer would have been easy. Congress did not do that, despite the CFAA's many amendments. If a "single act" requirement does apply, Vibrant's scheme constitutes such an act. *See Mortensen v. Bresnan Comm. LLC,* No. CV10-13-BFG-RLC, 2010 WL 5140454, at * 7 (D. Mont., Dec. 13, 2010).

ii.        **Case Law Supports Private Party Litigant Aggregations**

Many well-reasoned cases show Plaintiffs can aggregate damages to reach the $5,000 threshold. *In re iPhone App. Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *11 (N. D. Cal. Sep. 20, 2011) and *In re DoubleClick*, 154 F. Supp. 2d at 523, hold that "damages and losses under § 1030(e)(8)(A) may be aggregated across victims and over time for a single act." *See also In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308  (N.D. Cal. 2008) (citing *In re Toys R Us*, 2001 WL 34517252, at *11 for proposition that CFAA permits

aggregation of damages arising from same act by defendant); *Czech v. Wall Street on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106  n.3 (D. Minn. 2009) (referring to *Czech*, 2009 WL 2045308, at *3, as rejecting "statutory interpretation argument" "that the CFAA does not allow private plaintiffs…to reach the $5,000 loss threshold by aggregating losses among multiple computers owned by multiple individuals").   "Liberally constru[ing]" the plaintiffs' allegations, the *In re Toys R Us* court found sufficient CFAA allegations "that defendants caused an identical file to be implanted on each of the plaintiffs' computers, resulting in damages of a uniform nature." *In re Toys R. Us*, 2001 WL 34517252, at *1.   Both that approach, and its result, are correct here, too. *See also Mortensen* 2010 WL 5140454, at *7  (discussing *In re Toys R Us* and finding that because the "NebuAd Appliance" or "cookie" "was distributed to all Plaintiffs, for purposes of a 12(b)(6) motion, Plaintiffs' allegations of …damages, when aggregated across 'one or more individuals' is sufficient to withstand a dismissal motion.")

### iii.        Vibrant's Cases are Inapposite and Non-Binding

Vibrant's "no private litigant aggregation" CFAA argument depends primarily on a single, non-binding and unreported case, *Lyons v. Coxcom, Inc.*, No. 08–CV–02047–H (CAB), 2009 WL 347285, at *8 (S.D. Cal. Feb. 6, 2009), *order vacated by* 718 F. Supp. 2d 1232 (S. D. Cal. 2009).  D. Br. 15.  Accepting the plaintiff's argument "that a plain reading of the statute supports the interpretation that the CFAA allows plaintiffs to aggregate losses among multiple computers owned by multiple individuals in a one year period," the court in *Czech*,  2009 WL 2045308, at *3, refused to follow *Lyons*.  So should this Court.

Vibrant's reliance on *Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667 (E.D. Tex. 2001) (D. Br. 17), also gets Vibrant nowhere.  First, *Thurmond's* plaintiffs failed to prove a substantive CFAA violation that caused their claimed loss.  *Id.* at 678.  Plaintiffs here have pled

substantive violations under 18 U.S.C. § 1030(a)(5)A).  *See* CAC ¶¶ 225-226. Plaintiffs allege

both loss and damage – the damage from impairment to the integrity of their data and

information.[6] 18 U.S.C. 1030(e)(8).  Vibrant took the Plaintiffs' once-private PII and used it

commercially for Vibrant's own gain.  *See* CAC ¶¶ 146-152.  Second, *Thurmond's* plaintiffs,

unlike Plaintiffs here, "had a 'reasonable opportunity' to present summary judgment evidence in

their response to Compaq's Motion for Summary Judgment on Section 1030 damages," had

"actively engaged in discovery" and "concede[d] that a 'great deal of merits discovery took

place.'"  *Thurmond,* 171 F. Supp. 2d at 673-74.  Third, *Thurmond's* refusal to consider the

damages sustained by "unnamed class members" on summary judgment cannot supplant the

*Phillips* notice pleading test that controls at this initial, pre-discovery stage.

        *Thurmond,* decided over twelve years ago did not recognize the error of resorting to

extra-textual sources (*Thurmond*, 171 F. Supp. 2d at 680-81) in the face of the statute's plain

language permitting aggregation.  Nor did *Thurmond* have the benefit of the reasoning of later

cases permitting aggregation. *Thurmond's* reasoning and result are wrong.

### iv.        Vibrant's Unavailing Reliance on Legislative History

        No legitimate basis exists for Vibrant's selective sortie into legislative history.  Resort to

legislative history is unnecessary in light of the statute's plain language.  *See, e.g., Mohamad v.

Palestinian Authority, et al.*, 132 S. Ct. 1702, 1710 (2012) ("'reliance on legislative history is

unnecessary in light of the statute's unambiguous language'" (quoting *Milavetz, Gallop &

Milavetz, P.A. v. United States*, 559 U.S. 229, 2__ n.3 (2010))); s*ee also Exxon Mobil Corp. v.*

---

[6] Not a model of clarity (*Czech*, 674 F. Supp. 2d at 1109), the CFAA requires substantive proof of "loss or damages" under 18 U.S.C. § 1030(g), for example through proof of a violation of 18 U.S.C. § 1030(a)(5)(A) (knowing transmission of a code intentionally and without authorization, causing damage to a protected computer), but then permits, in a civil action such as Plaintiffs allege under 18 U.S.C. § 1030(c)(4)(A)(i)(I), recovery only of "losses" aggregating $5,000.

*Allapattah Services, Inc.*, 545 U.S. 546, 569 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material…," noting that "legislative history in particular is vulnerable to two serious criticisms" of "murky, ambiguous, and contradictory" elements in legislative history and "strategic manipulations of legislative history" by "unrepresentative committee members – or, worse yet, unelected staffers and lobbyists").

Tthe "relevant legislative history on this issue," Vibrant urges, "is that surrounding the 2001 amendment to the CFAA." D. Br. 17. But "there is a noticeable lack of legislative history associated with the 2001 amendments, which is likely explained by the fact that those amendments were enacted shortly after September 11, 2001." *Czech*, 2009 WL 2045308, at *3. Vibrant essentially admits this weakness by resorting to the criminal law rule of lenity. D. Br. 18-19.

Vibrant nowhere explains why its extra-statutory "single act" requirement does not include Vibrant's single scheme circumvention of users' browsers or why that misconduct does not satisfy the open-textured "single act" construct of *In re iPhone*, 2011 WL 4403963, at *11 and *In re Doubleclick*, 154 F. Supp. 2d at 523. *See, e.g., M-I LLC v. Argus Green, LLC*, Civil Action No. H–10–cv–03364, 2011 WL 3813286, at *3 (S. D. Tex. Aug. 26, 2011) ("defendants' combined actions of installing the same 'zero-wiping' software on their computers to achieve the same purpose can be construed as a 'single act' under the CFAA…"). The statute's permission for aggregation over a 1-year period supports that reading. At odds with the express 1-year aggregation period, Vibrant's "single act" reading robs the civil action provision of much of its scope.

Vibrant's use of embedded code leading to secret cookie placement to facilitate user tracking, is a unified and consistent scheme, a single act under any reasonable reading. *See* CAC ¶¶ 146-152.  At this stage, those allegations suffice. *Cf., Slim CD, Inc. v. Heartland Payment Systems, Inc.*, Civil Action No. 06-2256, 2007 WL 2459349, at *13 (D.N.J. Aug. 24, 2007) (noting "early stage in the litigation" in refusing to dismiss CFAA counterclaim).

## V.   **CONCLUSION**

Vibrant's Motion to Dismiss should be denied on all Counts.

Dated: May 29, 2013                                  Respectfully submitted,

**KEEFE BARTELS, LLC**                        **STRANGE & CARPENTER**


*/s/ Stephen G. Grygiel*                             */s/ Brian Russell Strange*
Stephen G. Grygiel (Del Br No. 4944)      Brian Russell Strange
John E. Keefe, Jr.                                   Keith Butler
Jennifer L. Harwood                              David Holop
170 Monmouth St.                                 12100 Wilshire Boulevard, Suite 1900
Red Bank, NJ 07701                              Los Angeles, CA 90025
Tel: 732-224-9400                                 Tel: 310-207-5055
*sgrygiel@keefbartels.com*                   *lacounsel@earthlink.net*

*Executive Committee Member*            *Executive Committee Member*



**BARTIMUS, FRICKLETON,**              **FINGER & SLANINA, LLC**
**ROBERTSON & GORNY, P.C.**


*/s/ James P. Frickleton*                         */s/ David L. Finger*
James P. Frickleton                               Charles Slanina (DE Bar ID #2011)
Mary D. Winter                                     David L. Finger (DE Bar ID #2556)
Stephen M. Gorny                                 One Commerce Center
Edward D. Robertston, Jr.                      1201 N. Orange St., 7th fl.
11150 Overbrook Road, Suite 200          Wilmington, DE 19801
Leawood, KS 66211                              (302) 573-2525
Tel: 913-266-2300                                 *dfinger@delawgroup.com*
*jimf@bflawfirm.com*

*Executive Committee Member*            *Liaison Counsel*

**EICHEN, CRUTCHLOW, ZASLOW & MCELROY LLP**

*/s/ Barry Eichen*
Barry R. Eichen
40 Ethel Road
Edison, NJ 08817
Tel: 732-777-0100
*beichen@njadvocates.com*

*Plaintiffs' Steering Committee Member*

**MURPHY P.A.**

*/s/ William H. Murphy, Jr.*
William H. Murphy, Jr.
One South Street, Suite 2300
Baltimore, MD 21202
Tel: 410-539-6500
*billy.murphy@murphypa.com*

*Plaintiffs' Steering Committee Member*

**BRYANT LAW CENTER, PSC**

*/s/ Mark Bryant*
Mark Bryant
601 Washington Street
P.O. Box 1876
Paducah, KY 42002-1876
Tel: 270-442-1422
*mark.bryant@bryantpsc.com*

*Counsel for Plaintiff William G. Gourley and Plaintiffs' Steering Committee Member*

**SEEGER WEISS LLP**

*/s/ Jonathan Shub*
Jonathan Shub
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Tel: 215-564-2300
*jshub@seegerweiss.com*

*Counsel for Plaintiff Lynne Krause and Plaintiffs' Steering Committee Member*

**BARNES & ASSOCIATES**

*/s/ Jay Barnes*
Jay Barnes
219 East Dunklin Street
Jefferson City, MO 65101
Tel: 573-634-8884
*Jaybarnes5@gmail.com*

*Plaintiffs' Steering Committee Member*