# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | C.A. No. 1:12-MD-2358 (SLR) |
| This Document Relates to:<br><br>**All Actions** | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT VIBRANT MEDIA INC.'S MOTION TO DISMISS
## THE CONSOLIDATED CLASS ACTION COMPLAINT

OF COUNSEL

Edward P. Boyle
David N. Cinotti
Joeann E. Walker
Venable LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY 10020
(212) 307-5500
epboyle@venable.com
dncinotti@venable.com
jewalker@venable.com

DATED: June 19, 2013

Kelly E. Farnan (#4395)
Rudolf Koch (#4947)
Travis S. Hunter (#5350)
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7500
farnan@rlf.com
koch@rlf.com
hunter@rlf.com

*Attorneys for Defendant Vibrant Media Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE SCA ............................................................................................................................. 1

        A.    Files on Plaintiffs' Computers Are Not Facilities Through Which an Electronic Communication Service is Provided ....................... 2

        B.    Vibrant Did Not Access Any Communications in Electronic Storage ............................................................................................... 4

    II.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE CFAA .......................................................................................................................... 5

        A.    Purported "Transmission or Collection" of Information is Not a Loss Under the CFAA .................................................................. 6

        B.    Plaintiffs' Cannot Aggregate the Putative Class's Alleged Losses to Reach the $5,000 Loss Threshold ............................................. 8

    CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 1

*CollegeSource, Inc. v. Academy One, Inc.*, No. 10-3542, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012) ............................................................................... 7

*Cousineau v. Microsoft Corp.*, No. C11-1438-JCC (W.D. Wash. June 22, 2012) .................................................................................................................... 4

*Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004) .................... 9

*Czech v. Wall Street on Demand, Inc.*, No. 09-180, 2009 WL 2045308 (D. Minn. July 10, 2009) ............................................................................................ 9, 10

*Del Vecchio v. Amazon.com, Inc.*, No. 11-366, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ............................................................................................... 6

*Ervin & Smith Advertising & Public Relations, Inc. v. Ervin*, No. 8:08CV459, 2009 WL 249998 (D. Neb. Feb. 3, 2009) .................................................. 8

*Freedom Banc Mortgage Services, Inc. v. O'Harra*, No. 2:11-cv-01073, 2012 WL 3862209 (S.D. Ohio Sept. 5, 2012) ........................................................ 9

*Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012) ................................................. 2, 4

*In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................................................................... 4

*In re Toys R Us, Inc. Privacy Litigation*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........................................................................ 8

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ................................................................................................................... 6

*Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500 (3d Cir. 2012) ...................................... 7

*Quon v. Arch Wireless Operating Co.*, 529 F.3d 892 (9th Cir. 2008) ............................. 3

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153 (10th Cir. 2011) ......................... 4

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) .................................................... 5

**STATUTES**

18 U.S.C. § 1030(e)(1) ............................................................................................................ 8

18 U.S.C. § 1030(e)(11) .................................................................................................... 6

18 U.S.C. § 2510(15) ........................................................................................................ 2

18 U.S.C. § 2510(17) ........................................................................................................ 4

18 U.S.C. § 2702(a) .......................................................................................................... 2

**LEGISLATIVE MATERIALS**

S. Rep. No. 99-541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 1986
   WL 31929 ................................................................................................................... 3

**OTHER AUTHORITIES**

Computer Crime & Intellectual Property Section, Criminal Division, U.S.
   DOJ, *Searching and Seizing Computers and Obtaining Electronic
   Evidence in Criminal Investigations* (1999), *available at*
   http://www.justice.gov/criminal/ cybercrime/ docs/ssmanual2009.pdf ...................... 3

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a
   Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208 (2004) .................. 4

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 1, 10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Vibrant[1] respectfully submits this reply brief in support of its motion to dismiss the CAC for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to demonstrate that the CAC states any claims against Vibrant.[2] First, the SCA claim should be dismissed because the CAC does not allege that Vibrant obtained communications in electronic storage by accessing facilities of an electronic communication service, within the well-established meaning of the statute. *See* Vibrant's Op. Br. at 5-10; *infra* at 1-5. Second, the CFAA does not apply because Plaintiffs do not allege facts showing loss in the statutory threshold amount of $5,000. *See* Vibrant's Op. Br. at 10-19; *infra* at 5-10. Finally, for the reasons set forth in the briefs filed by other Defendants, Plaintiffs fail to state a claim under the Wiretap Act.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE SCA.

Plaintiffs argue that the CAC alleges a cause of action under the SCA because: (A) files on Plaintiffs' computers are "facilities" through which an electronic communication service is provided; and (B) communications in those files were in temporary "storage" pending delivery. *See* Opp. at 4-6. These arguments are unavailing.

---

[1] For the Court's ease of reference, this reply employs the defined terms used in Vibrant's opening brief ("Vibrant's Op. Br."). In addition, "Opposition" or "Opp." refers to Plaintiff's answering brief.

[2] Plaintiffs repeatedly maintain they need only provide some "fair notice" of the factual basis of their claims to prevent dismissal. *See, e.g.*, Opp. at 1, 2, 7, 8, 13, 20. As the Supreme Court has clearly held, however, Plaintiffs cannot rely on "naked assertion[s] devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Putting aside Plaintiffs' mere recitation of the elements of the statutes, the facts that Plaintiffs allege do not describe conduct that violates any of the statutes at issue.

### A. Files on Plaintiffs' Computers Are Not Facilities Through Which an Electronic Communication Service is Provided.

Plaintiffs' arguments that files on their computers are facilities through which an "electronic communication service" ("ECS") is provided, and that the relevant ECS is "internet service" provided by the Safari browser, *see* Opp. at 5; CAC ¶¶ 216-17, are inconsistent with the statutory text, the SCA's purpose, and a flood of case law.

First, the SCA prohibits unauthorized access to "facilities" *through which an ECS is provided.* The context makes clear that the meaning of "facilities" is necessarily modified by the defined meaning of an ECS—"a service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Even assuming that Internet service is an ECS, access to the Internet requires a provider, *i.e.*, a third-party service to which an Internet user subscribes.[3] And such a third-party provides Internet access through its servers and other related equipment. These servers and related equipment are the *facilities* through which an ECS is provided. Although the SCA may prohibit unauthorized access to these facilities, it does not address access to files on individual users' computers.

Other language in the SCA confirms this interpretation. For example, the statute prohibits "a person or entity providing" an ECS from knowingly divulging the contents of a communication while in electronic storage by that service. 18 U.S.C. § 2702(a). This and similar provisions reinforce that the statute regulates and protects data in the hands of a person or entity providing an ECS—not on users' own computers. Both the Fifth Circuit and the Computer Crime & Intellectual Property Section of the U.S. Department of Justice agree with this interpretation. *See Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 793 (5th Cir. 2012)

---

[3] For the reasons explained in Vibrant's opening brief, Safari is not a "provider" of an ECS. *See* Vibrant's Op. Br. at 6.

2

(holding that the statute "envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider*" (internal quotation marks omitted)), petition for cert. filed, 81 U.S.L.W. 3623 (U.S. Apr. 16, 2013) (No. 12-1264); Computer Crime & Intellectual Property Section, Criminal Division, U.S. DOJ, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* 126 (1999), *available at* http://www.justice.gov/criminal/cybercrime/docs/ssmanual2009.pdf (stating that the SCA does not apply to data "not stored on the server of a third-party provider of . . . ECS").

Second, Plaintiffs' interpretation of the statute is inconsistent with its purpose. Congress was specifically concerned that the Fourth Amendment may not protect against searches and seizures of copies of electronic communications stored by third parties. *See* S. Rep. No. 99-541 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3557, 1986 WL 31929, at *3 ("[P]roviders of electronic mail create electronic copies of private correspondence for later reference. . . . For the person or business whose records are involved, the privacy or proprietary interest in that information should not change. Nevertheless, *because it is subject to control by a third party computer operator,* the information may be subject to no constitutional privacy protection." (emphasis added)); *see also Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900 (9th Cir. 2008) ("The SCA was enacted because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address."). The SCA fills that constitutional gap by protecting against unauthorized access to electronic communications in third-party hands. Data on home computers, however, is already protected by the Fourth Amendment and therefore outside the scope of the SCA. *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev.

3

1208, 1215 (2004) (noting that it "is quite plainly incorrect" that the SCA regulates the placement of cookies on home computers because "home computers are already protected by the Fourth Amendment, so statutory protections are not needed").

Third, Vibrant and the other Defendants have cited numerous cases holding that files on a plaintiff's computer are not facilities of an ECS. Plaintiffs offer only weak arguments in response to these cases. For example, Plaintiffs assert that *Garcia* is distinguishable because that case was decided on summary judgment and involved files stored permanently by owners on their hard drives. *See* Opp. at 6. These irrelevant distinctions miss the point: The Fifth Circuit held that "facilities" under the SCA "are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Garcia*, 702 F.3d at 792. This Court should follow the many decisions like *Garcia* that agree with Vibrant's interpretation of statute, not the outlier *Cousineau v. Microsoft Corp.*, No. C11-1438-JCC, slip. op. (W.D. Wash. June 22, 2012), cited by Plaintiffs. *See* Opp. at 5-6. Supported by little analysis, *Cousineau*'s holding that mobile phones can be facilities under the SCA defies the SCA's plain text, its legislative purpose, and the overwhelming case law to the contrary. *See id.* at 10-11.

### B. Vibrant Did Not Access Any Communications in Electronic Storage.

Plaintiffs offer no convincing argument that Vibrant accessed communications while in electronic storage. Communications are only in electronic storage under the SCA if they are in "temporary, intermediate storage . . . incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17). This definition has three requirements—that the storage is "temporary" (that is, for a limited time), intermediate (that is, in the "middle" of a transmission), and "incidental" to transmission of a communication (that is, a secondary byproduct of the transmission). *See In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001); *see also Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1162 (10th Cir. 2011) (holding that plain meaning

4

of "incidental" is something of lesser importance or size that occurs as a result of a primary action).

Plaintiffs allege that Vibrant placed persistent cookies (i.e., cookies that did not expire after a single browser session) in browser-managed files on their computers, and that these cookies transmitted unique identifiers (an alphanumeric code or cookie value) to Vibrant, which Vibrant allegedly associated with information generated from Plaintiffs' browsers. *See* CAC ¶¶ 39, 45, 46, 217; Opp. at 7. It is a stretch for Plaintiffs to conclude that transmission of alphanumeric codes is a "communication" under the SCA. In any case, the CAC's own allegations confirm that these alphanumeric codes were not stored for a limited time on Plaintiffs' computers: The CAC alleges that the cookies were *permanently* present in their browser-managed files. *See, e.g.*, CAC ¶ 39. Indeed, if the cookies were "temporary," Vibrant could not have used them to track Plaintiffs' browsing, as Plaintiffs claim.[4] Further, unlike an ECS provider storing an email on its servers pending delivery to a recipient, Plaintiffs' browser-managed files did not store the purported communications while they were in the middle of a transmission. Nor were the alleged communications stored as a secondary byproduct of any primary transmission that the CAC identifies.

## II. PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE CFAA.

Plaintiffs maintain that the unauthorized transmission or collection of information allegedly obtained through the use of cookies is itself a loss under the statute and that they are

---

[4] Plaintiffs allege no facts in the CAC demonstrating that any accessed communications were in temporary storage, instead simply asserting that they were without supporting facts. *See* CAC ¶¶ 213-19. In addition, Plaintiffs do not respond to the argument that Vibrant cannot have accessed communications while in electronic storage when the CAC alleges that Vibrant intercepted communications contemporaneous with their transmission. *See* Vibrant's Op. Br. at 10 (citing *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998)).

permitted to add up unspecified losses occurring on unspecified dates across all members of the putative class to reach the $5,000 loss threshold. *See* Opp. at 9-20. They are wrong on both counts.

### A. Purported "Transmission or Collection" of Information is Not a Loss Under the CFAA.

The CFAA defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Plaintiffs rely exclusively on the first clause, which requires a "reasonable cost" to a victim. *See* Opp. at 9. The CAC's generalized assertion that Vibrant obtained some economic benefit does not satisfy this statutory requirement. A purported *benefit* to Vibrant is not the same as a "reasonable *cost*" to Plaintiffs. *See, e.g., Del Vecchio v. Amazon.com, Inc.*, No. 11-366, 2012 WL 1997697, at *4 (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the [plaintiffs'] information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment—a detriment amounting to more than $5,000."). Plaintiffs nowhere allege facts showing that they have been deprived of a purported ability to sell or otherwise economically exploit the information that Vibrant allegedly obtained.

Even if Plaintiffs had alleged such a lost business opportunity, however, that would not be a "reasonable cost" under the statute. The statute distinguishes between "costs" and lost revenue, and demonstrates that lost revenue from business opportunity can only be a "loss" under the CFAA if it was due to interruption in computer service. *See, e.g., Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004) ("[P]ersuasive authority suggests that plaintiffs' lost revenue due to lost business opportunity does not constitute 'loss' under the

6

statute."), *aff'd*, 166 F. App'x 559, 562 (2d Cir. 2006) ("[T]he plain language of the statute treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'").

Plaintiffs argue that the word "including" in the statute means that the list of reasonable costs that follow it are just examples, not the universe of possible losses. *See* Opp. at 10. But terms like "including" that "precede a specific list of included items should not be construed in their widest context, *but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples*." *Post v. St. Paul Travelers Ins., Co.*, 691 F.3d 500, 520 (3d Cir. 2012) (internal quotation marks omitted; emphasis added). The cases cited in Vibrant's opening brief are consistent with this rule: Only "reasonable costs" similar to the costs of responding to an offense, conducting a damage assessment, and restoring data are covered by the CFAA, that is, costs reasonably related to investigating an offense or repairing damage. As explained above, lost revenue is expressly covered in the second clause of the loss definition and is limited to revenue lost due to "interruption of service."

Many courts have rejected Plaintiffs' loss theory based on supposed benefits to a defendant, *see* Vibrant's Op. Br. at 13,[5] and the cases that Plaintiffs cite, *see* Opp. at 9-10, do not hold to the contrary. For example, in *CollegeSource, Inc. v. Academy One, Inc.*, No. 10-3542, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012), the court found that conducting an internal investigation, hiring a computer expert, and taking subsequent security measures following unauthorized access to its computer were losses under the CFAA "because they are reasonable

---

[5] Plaintiffs unconvincingly attempt to distinguish the cases that Vibrant cites. Rather than take on the cases' interpretation of the statutory text, Plaintiffs offer irrelevant factual distinctions that do not affect the application of the cases here. *See* Opp. at 10-14.

7

costs related to a breach of securities." *Id.* at *15. In *Ervin & Smith Advertising & Public Relations, Inc. v. Ervin*, No. 8:08CV459, 2009 WL 249998 (D. Neb. Feb. 3, 2009), the court held that actual, physical damage to a computer system is not necessary to establish loss under the statute. *See id.* at *8-9. Consistent with *Ervin*, Vibrant is not claiming that loss definition only allows for recovery of lost revenue when it is accompanied by physical damage. As discussed above, lost revenue (which Plaintiffs do not allege here, in any event) is a "loss" if it is due to "interruption of service," which can occur without physical damage to a computer.[6]

### B. Plaintiffs' Cannot Aggregate the Putative Class's Alleged Losses to Reach the $5,000 Loss Threshold.

Under the plain language of the CFAA, Plaintiffs cannot aggregate losses to the putative class members' different computers to reach the $5,000 requirement. *See* Vibrant's Op. Br. 15-19. Rather than respond to the argument that Vibrant actually made, Plaintiffs seek to knock down a straw man of their own making. They argue that the word "'aggregating' appears *outside* the government action parenthetical to which Vibrant says that participle is confined." Opp. at 15. Vibrant, however, does not argue that the principle of "aggregation" is limited to government actions. The statute plainly allows losses to one or more persons during any one-year period to be aggregated. But aggregation of losses to multiple *persons* is different from aggregation of losses to multiple *computers* (or computer systems, as the definition of "computer" includes computing devices and the servers or storage devices that operate in connection with them, 18 U.S.C. § 1030(e)(1)). For example, a defendant might illegally access a computer or server containing the social security numbers of hundreds of people, leading all of

---

[6] The decision in *In re Toys R Us, Inc. Privacy Litigation*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) (cited in Opp. at 10), does not undermine any of these arguments. The court there merely stated that it was "disinclined to dismiss" a claim for loss based on "misappropriation" of information, but noted its doubt that such allegations were sufficient to allege economic loss. *See id.* at *10.

those victims to incur the costs of credit monitoring. Those costs could be aggregated as long as they were incurred within the same one-year period. In addition, a violation of the statute might require a computer owner to incur the costs of multiple repairs within the same year, which could also be aggregated under the statute.

Plaintiffs adopt the interpretation in *Czech v. Wall Street on Demand, Inc.*, No. 09-180, 2009 WL 2045308 (D. Minn. July 10, 2009). The court there held that "[t]he parenthetical . . . is limited to the United States and should not be read as imposing a limit upon any plaintiff other than the United States." *Id.* at *3. The court therefore read the parenthetical as a sort of restriction on the government that does not apply to private civil actions, oddly suggesting that a criminal statute allows private civil litigants to reach more conduct than U.S. prosecutors. But if, as the *Czech* court suggested, the language outside the parentheses allows aggregation of losses to multiple computers owned by different individuals, no "limit" is imposed on the government by saying that it too can aggregate losses "resulting from a related course of conduct affecting 1 or more other protected computers." In addition, the parenthetical phrase begins with the word "and"—meaning that the phrase grants to the government (and to the government "only") the ability to aggregate conveyed by the language outside the parentheses (i.e., aggregation of loss to multiple persons within a one-year period) *plus* the additional authority granted by the language inside the parentheses.[7]

The *Czech* court also stated that the 2001 amendments to the CFAA have little legislative history. *See* Opp. at 16. But Vibrant laid out that legislative history in its opening brief, which

---

[7] Plaintiffs cite *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004), and *Freedom Banc Mortgage Services, Inc. v. O'Harra*, No. 2:11-cv-01073, 2012 WL 3862209 (S.D. Ohio Sept. 5, 2012), Op. at 16, but those cases did not address whether a plaintiff can aggregate losses to different computers, only whether damage *to the same computer* caused on multiple occasions can be added up to reach $5,000. *See Creative Computing*, 386 F.3d at 934; *Freedom Banc*, 2012 WL 3862209, at *7.

9

Plaintiffs have not even attempted to refute and which was not presented to the court in *Czech*. *See Czech v. Wall St. on Demand, Inc.*, No. 09-cv-180 (D.I.14) (D. Minn. Apr. 20, 2009) (attached hereto as Exhibit A).

In any event, Plaintiffs do not allege any facts in the CAC establishing that their losses—even subject to aggregation—occurred within a one-year period. Plaintiffs do not allege a single date on which any putative class member suffered a loss, much less $5,000 in aggregated losses within the same year. The failure to allege $5,000 in losses within a one-year period alone is a basis to dismiss the CFAA claim.

## CONCLUSION

For the reasons set forth above and in its opening brief, Vibrant respectfully requests that the Court dismiss the CAC with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

|  |  |
|---|---|
| OF COUNSEL:<br>Edward P. Boyle<br>David N. Cinotti<br>Joeann E. Walker<br>Venable LLP<br>Rockefeller Center<br>1270 Avenue of the Americas<br>New York, NY 10020<br>(212) 307-5500<br>epboyle@venable.com<br>dncinotti@venable.com<br>jewalker@venable.com<br><br>Dated: June 19, 2013 | */s/ Rudolf Koch*<br>Kelly E. Farnan (#4395)<br>Rudolf Koch (#4947)<br>Travis S. Hunter (#5350)<br>Richards, Layton & Finger<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7500<br>farnan@rlf.com<br>koch@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Defendant Vibrant Media Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Delaware by using the CM/ECF system. I certify that for all participants in the case that are registered CM/ECF users, service will be accomplished via the CM/ECF system.

/s/ *Rudolf Koch*
Rudolf Koch (#4947)