# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brenda Czech, individually and on
behalf of a class of similarly situated
individuals,

                            Plaintiff,

v.

Wall Street on Demand, Inc., and John Does,

                            Defendants.

Civil No. 09-cv-180 DWF/RLE

**DEFENDANT'S MOTION
FOR JUDGMENT ON
THE PLEADINGS**

Defendant Wall Street on Demand ("WSOD"), by and through its undersigned

attorneys, presents the following arguments and authority in support of its Motion for

Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Plaintiff

Brenda Czech's First Amended Complaint.

### BACKGROUND

WSOD is in the business of designing, developing, and hosting custom websites,

reports, and tools for the financial services industry.    (WSOD Answer  [Docket No. 11]

¶ 1.)  WSOD offers its financial services industry customers a wide array of options to

provide their clients (the "end-users") with the ability to request and receive financial

information.  (*Id.* at ¶ 2.)  Depending on the customer's requirements and the end-user's

preferences, WSOD may provide financial information to end-users via any number of

technology platforms including, in some cases, updates or "alerts" sent via an electronic

text message to the end-user's wireless device.  (*Id.*)

Case 1:12-md-02358-JDW   Document 102-1   Filed 06/19/13   Page 3 of 21 PageID #:
CASE 0:09-cv-00180-DWF-RLE   Document 14   Filed 04/20/09   Page 2 of 20
1775

Plaintiff Brenda Czech alleges that she received unwanted text messages from WSOD on her cell phone over several weeks in 2006.  (First Amended Compl. [Docket No. 9]. ¶¶ 32-37.)  For the purposes of the present motion only, the Court must accept as true her allegation that she "did not authorize or otherwise consent to receive WSOD's text messages." (*Id.* ¶ 36.)  Ms. Czech then hired a lawyer, who contacted WSOD. (*Id.* ¶ 37.)  According to the First Amended Complaint, when WSOD learned from her lawyer that she did not want to receive WSOD's text messages, WSOD took steps to ensure that she would no longer receive the text messages. (*Id.* ¶ 37.)  In fact, there is no allegation that she has received a single text message from WSOD thereafter.  Nevertheless, nearly three years later she filed the present lawsuit, purporting to represent an unnamed class of people who—allegedly—also have received unwanted text messages from WSOD and "who suffered losses or damages as a result." (*Id.* ¶ 38.)

Ms. Czech's claims are fatally flawed.  These flaws go to the very heart of her claims, and they cannot be ameliorated by further amendment.  Accordingly, WSOD respectfully urges the Court to enter judgment on the pleadings in its favor and dismiss Ms. Czech's lawsuit with prejudice.  *See Texas Comm'n Bank, N.A. v. Mo. Dep't of Soc. Servs., Div. of Med. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000) (reversing the district court's denial of the defendant's motion for judgment on the pleadings and remanding to the district court so that it could grant the defendant's motion and dismiss the lawsuit with prejudice).

Case 1:12-md-02358-JDW   Document 102-1   Filed 06/19/13   Page 4 of 21 PageID #:
1776
CASE 0:09-cv-00180-DWF-RLE   Document 14   Filed 04/20/09   Page 3 of 20

## STANDARD OF REVIEW

A motion for judgment on the pleadings brought pursuant to Rule 12(c) is evaluated by the Court under the same standard used to decide a motion to dismiss under Rule 12(b)(6). *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1991). When deciding a motion to dismiss, the Court takes the facts alleged in the Complaint as true and views all inference in the light most favorable to the nonmoving party. *Morton*, 793 F.2d at 187. "In doing so, however, a court need not accept as true wholly conclusory allegations or legal conclusions drawn by the pleader from the facts alleged." *Hollis v. Northland Group, Inc.*, 2009 WL 250075, No. 08-4985, at *1 (D. Minn. Feb. 2, 2009) (Frank, J.) (citations omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). It is not sufficient to allege a speculative claim to relief, rather, the complaint must allege sufficient facts to state a plausible claim. *Id.* at 1965. The Eighth Circuit has clarified that "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Parnes v. Gateway 2000, Inc.*, 524 F.3d 866, 870 (8th Cir. 2008); *see Hollis*, 2009 WL 250075, at *1 (applying *Twombly* to decide a motion for judgment on the pleadings).

Although Ms. Czech has asserted her claims on behalf of a class, at this stage of the litigation, her claims are treated as individual claims for relief. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996). Accordingly, in analyzing whether Ms. Czech has stated a claim for relief the Court "need only look to whether a valid claim has been made with respect to the named Plaintiff," and not at whether there may be a claim by the unidentified members of the purported class. *Andrews v. Temple Inland Mortgage Corp.*, No. 00-199, 2001 WL 1136160, at *5 (D. Minn. Sept. 24, 2001) (Frank, J.); *see also Lewis*, 518 U.S. at 357.

## ARGUMENT

In her First Amended Complaint, Ms. Czech asserts three claims for relief against WSOD and a group of John Doe Defendants: (1) violations of the Computer Fraud and Abuse Act; (2) trespass to chattels; and (3) unjust enrichment. (*Id.*) Because each of these claims fails to state a plausible claim for relief, the Court should dismiss this matter with prejudice.

### I.    Count I—The Computer Fraud and Abuse Act

In Count I of her First Amended Complaint, Ms. Czech alleges that WSOD, by sending text messages to her cellular telephone, violated the Computer Fraud and Abuse Act (the "CFAA"). (Am. Compl. ¶¶ 47-56.) Count I fails, among other shortcomings,[1]

---

[1] Even if Ms. Czech could establish the requisite loss threshold to support a claim under the CFAA, she has not alleged sufficient facts to support a claim that WSOD violated the CFAA, nor could she. Ms. Czech alleges WSOD violated 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(A), and (a)(5)(C) (2008). To establish a violation of these sections, the sending of text messages to Ms. Czech's cell phone must have either somehow taken information from the phone or caused damage to the phone. Despite

because Ms. Czech does not plead, and it is otherwise wholly implausible to suggest, that unwanted text messages sent to her cell phone caused her to suffer a loss of at least $5,000, as required to maintain a private right of action under the CFAA. 18 U.S.C. § 1030 (c)(4)(A)(i)(I).

Although the CFAA is primarily a criminal statute, section 1030(g) provides a private right of action in certain limited circumstances. Specifically, section 1030(g) provides a private right of action for conduct resulting in the circumstances set forth in subclauses (I)-(V) of subsection (c)(4)(A)(i). Ms. Czech asserts her claim for damages under subclause (I). (Compl. ¶ 56.) Under that subclause, there is a private right of action against one who has caused "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding being brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I) (2008). Section 1030(e)(11) defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage

---

Ms. Czech's conclusory allegation that WSOD obtained information from her cell phone (Am. Compl. ¶ 52), she alleges no facts regarding what information was obtained. No doubt this is because there are no facts to support such a far-fetched claim. Her allegation amounts to nothing more than a "formulaic recitation of the elements" of 18 U.S.C. § 1030(a)(2)(c), which falls far short of what is required to survive a motion for judgment on the pleadings. *Twombly*, 590 U.S. at 545. Similarly, Ms. Czech has alleged no facts to set forth a plausible claim that her phone was damaged by WSOD's text messages. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Although Ms. Czech alleges that an unwanted text message may, in general, affect the operation of wireless devices, she does not allege any impairment to her cell phone.

Case 1:12-md-02358-JDW    Document 102-1    Filed 06/19/13    Page 7 of 21 PageID #:
CASE 0:09-cv-00180-DWF-RLE    Document 14    Filed 04/20/09    Page 6 of 20
1079

assessment, and restoring the data, program, system, or information to its condition prior

to the offense, and any revenue lost, cost incurred, or other consequential damages

incurred because of interruption of service."

The CFAA does not allow private plaintiffs like Ms. Czech to reach the $5,000

loss threshold by aggregating losses among multiple computers owned by multiple

individuals as Ms. Czech attempts to do in the Amended Complaint.  (*See* Am. Compl. ¶

56.)  To the extent the question ever was open to debate,[2] Congress's 2001 and 2008

amendments to the CFAA clarified that only the United States government may

aggregate losses across multiple protected computers and multiple victims—and only the

United States government may aggregate losses sustained as a result of a course of

conduct as opposed to a single act.  Private citizens may not.

In 2001, Congress amended the section of the CFAA now codified at 18 U.S.C. §

1030(c)(4)(A)(i)(I) (2008).  The previous version allowed an individual to bring a private

right of action under § 1030(g) for damages as defined in § 1030 (e)(8)(A).  Under §

(e)(8)(A) (2000), "'damage' [meant] any impairment to the integrity or availability of

data, a program, a system, or information, that—(A) causes loss aggregating at least

---

[2]    Before the 2001 amendments to the CFAA, there was some disagreement among
courts regarding whether plaintiffs bringing a private suit under the CFAA could
aggregate damages among multiple computers and multiple victims.  *Compare
Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 679-81 (E.D. Tex. 2001)
(finding that plaintiffs could not aggregate damages among multiple individuals); *with
In re Am. Online, Inc., Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1372-1374
(S.D. Fla. 2001) (finding that plaintiffs could aggregate damages among multiple
computers and thus multiple individuals but that plaintiffs failed to allege sufficient
facts to state a claim for relief).

Case 1:12-md-02358-JDW    Document 102-1    Filed 06/19/13    Page 8 of 21 PageID #:
CASE 0:09-cv-00180-DWF-RLE   Document 14   Filed 04/20/09   Page 7 of 20
1700

$5,000 in value during any 1-year period to one or more individuals." This earlier

version did not include the carve out for proceedings by the United States that was

created by the 2001 amendments:

> (and, for purposes of an investigation, prosecution, or other
> proceeding being **brought by the United States only**, loss
> resulting from a related course of conduct affecting 1 or more
> other protected computers)

18 U.S.C. § 1030(a)(5)(B)(i) (2001) (emphasis added). By including this parenthetical,

Congress expressly permitted the United States to aggregate losses among multiple

computers where there was a related course of conduct. By expressly limiting

aggregation to proceedings brought by the United States, Congress excluded the

possibility of aggregation in actions brought by private citizens. "Where Congress

includes particular language in one section of a statute but omits it in another section of

the same act, it is generally presumed that Congress acts intentionally and purposely in

the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997)

(quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

    That private citizens may not aggregate losses among multiple computers again

was confirmed by the 2008 amendments to the CFAA. In a private civil action under the

CFAA, a plaintiff must show either damage or loss caused by a violation of one of the

provisions set forth in § 1030(a) that results in the consequences set forth in the

subsections of § 1030(c)(4)(A)(i). Before the 2008 amendments, there were only five

subsections. In 2008, Congress added a sixth to make it easier for the United States to

prosecute violators of the CFAA. The new subsection allows the federal government to

Case 1:12-md-02358-JDW     Document 102-1     Filed 06/19/13     Page 9 of 21 PageID #:
CASE 0:09-cv-00180-DWF-RLE   Document 14   Filed 04/20/09   Page 8 of 20
1081

prosecute someone who violates § 1030(a) and causes "damage affecting 10 or more

protected computers during any 1-year period." 18 U.S.C. § 1030(c)(4)(a)(i)(VI) (2008).

Yet Congress did not amend § 1030(g) to make this subsection available to private

citizens. Rather, § 1030(g) still only allows private suits resulting in the consequences set

forth in subsections (I)-(V), excluding (VI). Under the new amendments, the United

States is not required to prove loss where there has been damage affecting ten or more

protected computers. By not extending this exception to private suits, Congress once

again affirmed that private citizens may not aggregate losses sustained by more than one

protected computer. Accordingly, under the plain language of the CFAA, Ms. Czech's

claim fails because she has not alleged that she has sustained a $5,000 loss—nor has she

(nor could she) set forth facts sufficient to support a plausible claim that she has sustained

such a loss. *See Lyons v. Comcox, Inc.*, No. 08-CV-02047-H, 2009 WL 347285, at *8

(S.D. Cal. Feb. 6, 2009).

In the First Amended Complaint, Ms. Czech alleges that "[a]s a result of

Defendants' violation of the CFAA, *Plaintiff **and the other members of the Class have***

***suffered***, and will continue to suffer, among other things, economic damages, ***the***

***aggregate amount of which*** is at least $5,000, as provided for in 18 U.S.C. § 1030

(c)(4)(A)(i)(I)." (First Amended Complaint ¶ 56 (emphasis added).) This is not

sufficient. As shown above, the CFAA does not allow Ms. Czech to reach the $5,000

loss threshold by aggregating damages among multiple computers owned by multiple

class members.

The general requirements for standing in a class action lawsuit, furthermore, do

not permit her to rely on unidentified members of the class in attempting to reach the $5,000 loss threshold. "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis*, 518 U.S. at 357 (evaluating the injury-in-fact requirement for standing in a class action lawsuit) (internal quotation marks omitted). "Consequently, the Court need only look to whether a valid claim has been made with respect to the named Plaintiff." *Andrews*, 2001 WL 1136160, at \*5.

Because Ms. Czech does not plead, and it is otherwise wholly implausible to suggest, that unwanted text messages sent to her cell phone caused her to suffer a loss of at least $5,000, Count I of the First Amended Complaint fails to state a claim for relief that is plausible on its face and the Court should dismiss it with prejudice.

## B.    Count II—Trespass to Chattels

In Count II of her First Amended Complaint, Ms. Czech alleges that Defendants, by sending text messages to her cell phone, committed the tort of "trespass to chattels." (Am. Compl. ¶¶ 57-61.) Even assuming the Minnesota Supreme Court would entertain such a cause of action,[3] Ms. Czech's claim nevertheless fails because she does not allege that Ms. Czech's phone suffered any impairment to its physical condition, quality, or value as a result of the alleged "trespass." In reality, of course, these allegations are not only absent but also implausible, because cell phones are designed to receive, store, and

---

[3]    The Minnesota courts have not recognized such a claim.

easily delete text messages.

As Count II's antiquated title might suggest, this tort is so rarely relied on in Minnesota that we were unable to locate any Minnesota state or federal court setting forth the elements of such a claim under Minnesota law in general, much less addressing a "trespass to chattels" claim based on something as innocuous and ephemeral as an electronic text message sent to a person's cell phone.  Because the Minnesota Supreme Court has not specifically adopted this tort, WSOD looks to the Restatement (Second) of Torts § 218 and to the law of other jurisdictions as instructive in addressing this claim. *See Larson v. Wasemiller*, 738 N.W.2d 300, 306 (Minn. 2007).  Section 218 lists the conditions necessary for liability for trespass to chattels:

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

Restatement (Second) of Torts § 218 (2008).

There is no question that Ms. Czech does not base her claim on clause (d)—she does not allege that any text message caused her bodily harm.  It is not clear under which of the three remaining theories she would have the Court proceed.  The relevant paragraphs of her First Amended Complaint are as follows:

> 59.     Defendants and/or their agents, intentionally and/or negligently, and without authorization or consent, gained access to Plaintiff's cellular telephone and the wireless devices of the other members of the Class, used Plaintiff's

> cellular telephone and the wireless devices of the other
> members of the class, occupied memory of these wireless
> devices, and/or dispossessed Plaintiff and the other members
> of the Class of unencumbered access to their wireless devices.
>
> 60.    In doing so, Defendants intentionally and/or
> negligently intermeddled with, damaged, and/or deprived
> Plaintiff and the other members of the Class of the use of
> their wireless devices, or a part thereof.

(Am. Compl. ¶¶ 59-60.)  It would seem, based on Ms. Czech's reference to

"unencumbered access," that she bases her claim on clause (b)—that her cell phone was

impaired as to its condition, quality, or value.  With respect to clause (b) of the

Restatement (Second) of Torts § 218, comment h makes clear that liability arises only

where an "unprivileged use or other intermeddling with a chattel [] results in actual

impairment of its physical condition, quality or value to the possessor."  Restatement

(Second) of Torts § 218, cmt. h (2008).

There are two opinions from jurisdictions other than Minnesota addressing

comparable allegations to those presented by Ms. Czech in her First Amended Complaint.

Although neither is binding on this Court, both are instructive.  Both show that in order

for WSOD to be liable for trespass to chattels, Ms. Czech must allege that WSOD

transmitted such a substantial volume of unsolicited text messages to her that her cellular

phone was impaired because of the volume of these unsolicited messages, and that she

repeatedly told WSOD to stop and thereafter expended considerable time, energy, and

money to prevent further unsolicited contacts.  *Compare Compuserve Inc. v. Cyber*

*Promotions, Inc.*, 962 F. Supp. 1015, 1021-23 (S.D. Ohio 1997) (holding that spam e-

mail company was liable to an online computer services company for trespass to

chattels); *with Intel Corp. v. Hamidid*, 30 Cal. 4th 1342, 1350-53 (Cal. 2003) (holding

that a former employee's occasional e-mails did not impair the quality or value of the

company's computer system and thus he was not liable for trespass to chattels). Here, to

the contrary, Ms. Czech's alleged consternation falls far short of what is necessary to

state a claim.

In *Compuserve*, the United States District Court for the Southern District of Ohio

held that the plaintiff, which provided its subscribers with access to a nationwide

computer network through which its subscribers could send and receive e-mail, had a

viable trespass to chattels claim against the defendant, a spam e-mail company, and thus

was entitled to at least preliminary injunctive relief. 962 F. Supp. at 1017. The court,

citing the Restatement (Second) of Torts §§ 217 and 218, explained that while

dispossession of the chattel would make the actor liable for trespass, so too would

intermeddling with the chattel that resulted in physical impairment or an impairment to

the value of the chattel. *Id.* at 1022.

Once the spam e-mail company began sending e-mails to the online computer

services company's customers, the online computer services company notified the spam

e-mail company that it was prohibited from sending mass e-mails to its subscribers. *Id.* at

1019. The e-mails still continued, which prompted the online computer services

company to implement software programs that would block the spam e-mail company' e-

mails. *Id.* In response, the spam e-mail company modified its equipment and its

messages to circumvent the online computer services company's screening software. *Id.*

As a result of the spam e-mail company's "multitudinous electronic mailings," the online

computer services company experienced demand on its disk space and a drain on the processing power of its computer equipment. *Id.* Accordingly, the court determined that the spam e-mail company's intrusions impaired the value of the online computer services company's services and its good will and business reputation. *Id.* at 1022-23.

In *Hamidi*, the Supreme Court of California addressed a similar legal issue and contrasted the facts in the case before it with those in *Compuserve.* 30 Cal. 4th 1342. There, the plaintiff company maintained an e-mail system for its employees through which its employees could send and receive messages from users within the company and individuals outside the company. *Id.* at 1346. The defendant was a former employee who on six occasions sent e-mails to the company's current employees criticizing the company. *Id.* The former employee did not breach any computer system barriers in order to communicate with the company's employees. He offered to remove anyone from his mailing list who did not wish to receive his messages. And he caused no physical damage or functional disruption to the company's computers. *Id.* Yet on those facts, the company sued its former employee claiming that by sending e-mails to the company's employees over its e-mail system, the former employee was liable for trespass to chattels. *Id.* at 1346-47. The company claimed to have suffered consequential damages arising from loss of productivity caused by employees reading and reacting to the former employee's messages and the company's efforts to block the messages. The Supreme Court of California held that "under California law the tort does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning." *Id.* at 1347.

In contrast to *Compuserve*, which involved a situation where the plaintiff experienced an impairment in the functioning of its chattel because of the "extraordinary *quantity*" of messages, the *Hamidid* court reasoned that a complaint based on loss of productivity as a result of distraction and disruption was a complaint centered on the "*contents* of the e-mail messages, an injury entirely separate from, and not directly affecting, the possession or value of personal property." *Id.* at 1348.  The court noted that the plaintiff's alleged injury "is not an injury to [plaintiff's] interest in its computers— which worked as intended and were unharmed by the communications—any more than the personal distress caused by reading an unpleasant letter would be an injury to the recipient's mailbox, or the loss of privacy caused by an intrusive telephone call would be an injury to the recipient's telephone equipment." *Id.* at 1347.

Paragraph 24 of the First Amended Complaint alleges that an unwanted text-message in general "(1) causes wireless devices to slow and/or lag in operation; (2) consumes/takes up wireless bandwith; (3) depletes the memory of consumers' wireless devices; and (4) frustrates cell-phone users." (Am. Compl. ¶ 24).  Further, the First Amended Complaint alleges that "[b]y forcing wireless-device users to expend time and effort attempting to delete or otherwise remove Watch List Alert text messages and to stop future text messaging, Watch List Alert decreases recipients' productivity." (*Id.* ¶ 25).

Critically, Ms. Czech does not allege that ***her cell phone*** actually slowed and/or lagged in operation.  Nor does she allege that the text messages she actually received had any impact on the wireless bandwith of her cell phone.  Nor does she allege that the

memory of her cell phone was "depleted."  Her only claim is that she made repeated
attempts over several weeks and ultimately sought the assistance of counsel to get WSOD
to stop sending text messages to her phone.  (*Id.* ¶ 37).

The First Amended Complaint is completely devoid of any facts—much less
sufficient facts—supporting a claim that Ms. Czech's phone suffered any impairment to
its physical condition, quality, or value.  In addition, as shown above, Ms. Czech cannot
meet the requirements of *Twombly* by asserting a speculative and unsupportive claim on
behalf of unnamed class members.

As was the case in *Hamidid*, Ms. Czech's claim does not amount to an
intermeddling or unprivileged use resulting in a physical impairment or an impairment in
quality or value.  To the contrary, her alleged intrusion is more aptly compared to "the
loss of privacy caused by an intrusive telephone call."  *Hamidid*, 30 Cal. 4th at 1347.  For
these reasons, Ms. Czech has failed to allege sufficient facts to state a claim for relief that
is plausible on its face.  As such, the Court should dismiss Count II with prejudice.

## C.    Count III—Unjust Enrichment

In Count III of her Complaint, Ms. Czech asserts that WSOD was somehow
unjustly enriched at Ms. Czech's expense as a result of the text messages it sent to her
cell phone.  (Am. Compl. ¶¶ 63-67.)   But Ms. Czech's unjust enrichment claim also fails
as a matter of law.  First, Ms. Czech's unjust enrichment claim is regulated by the CFAA,
an existing statutory scheme that sets the standards for recovery.  Minnesota law thus
regards her as having available to her "an adequate remedy at law" and precludes her
from pursuing alternative equitable claims—even if, as here, her claim would fail under

Case 1:12-md-02358-JDW    Document 102-1    Filed 06/19/13    Page 17 of 21 PageID #:
1288
CASE 0:09-cv-00180-DWF-RLE    Document 14    Filed 04/20/09    Page 16 of 20

the CFAA.  Second, Ms. Czech fails to state a claim for unjust enrichment, because she

has not alleged that she personally incurred any expense as a result of WSOD's allegedly

wrongful conduct, or that WSOD has received any benefit at Ms. Czech's expense.

Because Ms. Czech's claims are subject to the statutory scheme of the CFAA, her

equitable claim of unjust enrichment is foreclosed.  "It is well settled in Minnesota that

one may not seek a remedy in equity when there is an adequate remedy at law."

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct.

App. 1992).[4]  "[W]hether plaintiffs can *prevail* on their statutory claim is irrelevant."

*Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018, 2007 WL 2780504, *12 (D.

Minn. Sept. 24, 2007).  An "adequate remedy at law" in this context simply means that

there exists a legal cause of action for the alleged injury, for which the remedy sought by

the claimant would be available *if* the claimant were to prevail on his or her legal claims.

*See e.g.*, *Smith v. Sprague*, 143 F.2d 647, 650 (8th Cir. 1944).  Relief under an equitable

theory like unjust enrichment therefore is not available where the available remedies and

the applicable standards for recovery are set by statute.  *U.S. Fire Ins. Co. v. Minn. State

Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (reasoning that if equitable relief

were granted statutory restrictions would be circumvented); *accord Kingery v. Kingery*,

---

[4]     *Accord ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.,* 544 N.W.2d 302, 305
(Minn. 1996); *Stocke v. Berryman*, 632 N.W.2d 242, 245-46 (Minn. Ct. App. 2001);
*Breezy Point Holiday Harbor Lodgebeachside Apartment Owners' Ass'n v. B.P.
P'ship*, CO-96-59, 1996 WL 422562, * 2 (Minn. Ct. App. July 30, 1996); *Airlines
Reporting Corp. v. Norwest Bank*, 529 N.W.2d 449, 452 (Minn. Ct. App. 1995);
*Zimmerman v. Lasky*, 374 N.W.2d 212, 214 (Minn. Ct. App. 1985); *Northwoods
Envtl. Inst. v. Minn. Pollution Control Agency*, 370 N.W.2d 449, 451 (Minn. Ct. App.
1985).

241 N.W. 583, 584 (Minn. 1932) (recognizing that equity follows law and will not

disregard statutory law or grant relief prohibited thereby); *Southtown Plumbing,* 493

N.W.2d at 140 (ruling that the subcontractors' failure to seek a statutory remedy under

the mechanics' lien statute precluded them from recovering under a theory of unjust

enrichment).

      In assessing Ms. Czech's unjust enrichment claim, it does not matter that she

cannot prevail on her statutory claim because, as shown above, her claim does not satisfy

the minimum loss threshold established by Congress in the CFAA.  What matters is that

the CFAA provides a cause of action for the type of conduct alleged in this case.  *See*

*e.g.*, *Arena Dev. Group, LLC v. Naegle Commc'ns, Inc.*, No. 06-2806, 2007 WL

2506431, at *11 (D. Minn. Aug. 30, 2007) (rejecting an unjust enrichment claim because

there was an adequate remedy under the Uniform Fraudulent Transfers Act).  Because

there is a statutory cause of action under the CFAA, Ms. Czech may not bring a claim of

unjust enrichment based on the alleged conduct of WSOD.

      Even if Ms. Czech's unjust enrichment claim were not foreclosed by the legal

remedy available to her under the CFAA, dismissal would still be warranted.  The First

Amended Complaint fails to state a claim for unjust enrichment because Ms. Czech has

not alleged that she personally incurred any expense as a result of WSOD's allegedly

wrongful conduct, or that WSOD has received any benefit at Ms. Czech's expense.

Again, Ms. Czech cannot meet the requirements of *Twombly* by asserting a speculative

and unsupportive claim on behalf of unnamed class members.

Case 1:12-md-02358-JDW    Document 102-1    Filed 06/19/13    Page 19 of 21 PageID #:
1191
CASE 0:09-cv-00180-DWF-RLE    Document 14    Filed 04/20/09    Page 18 of 20

"To establish a claim for unjust enrichment, the claimant must show that another

party knowingly received something of value to which he was not entitled and that the

circumstances are such that it would be unjust for that person to retain the benefit." *City*

*of Geneseo v. Utilities Plus*, 533 F.3d 608, 617-618 (8th Cir. 2008) (quoting *Mon-Ray,*

*Inc. v. Granite Re., Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004)).  "[U]njust

enrichment claims do not lie simply because one party benefits from the efforts or

obligations of others." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504

(Minn. 1981).  Unjust enrichment occurs in situations where one party enriches himself at

the expense of another.  *See e.g.*, *Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn. Ct.

App. 1984).  Accordingly, it is not enough to allege that WSOD received something of

value to which it was not entitled; Czech must allege that that WSOD retained a benefit,

that doing so is unjust in the sense that unjust could mean illegally or unlawfully, and that

WSOD did so at Czech's expense.  *Id.*

In the First Amended Complaint, Ms. Czech alleges the following:

> 21.    WSOD and/or the wireless carriers profit from Watch
> List Alert's text-messaging feature by charging recipients of
> the text messages a fee to receive the text messages.  Fees
> vary in amount; however, they are typically around $0.15 per
> text message.

> 22.    Under their contract with a wireless carrier, recipients
> of text messages generally must pay either a per message fee
> or a flat rate for the messages.  Recipients of text messages
> are charged text-message fees even if they did not consent to
> receive the Watch List Alert text messages.

> 23.    Defendants and/or the aggregators also levy additional
> fees for text-message content, which appears on consumers'

cellular telephone bills as separate line-item charges.  Many
of these charges are similarly unauthorized.

(First Amended Complaint ¶¶ 21-23).

As shown above, these speculative allegations, which are not specific to WSOD,
regarding purported expenses incurred by unnamed putative class members are not
enough to establish a plausible claim for relief.  Ms. Czech must allege that she
personally incurred some expense, and she must trace this expense to a benefit actually
received by WSOD.  It is not sufficient to allege that this injury has been suffered by
other, unidentified members of the putative class she purports to represent.  *Lewis*, 518
U.S. at 357; *Andrews*, 2001 WL 1136160, at *5.

In stark contrast to her class allegations, Ms. Czech makes no allegation that
WSOD charged Ms. Czech for the text messages she received.  Nor does she allege that
she paid her wireless carrier a flat or monthly fee for the messages (or that she would not
have had to pay this fee had WSOD not sent her the allegedly unwanted text messages).
Nor does she allege that she incurred a charge as a separate line-item charge on her
cellular telephone bill.  Even taking as true Ms. Czech's unsupported claim that WSOD
has some vague sort of "profit-sharing" relationship with an unidentified entity (Am.
Compl. ¶ 63)—which in itself does not survive *Twombly* scrutiny—Ms. Czech has not
alleged that WSOD retained a benefit ***at her expense***.  Accordingly, Ms. Czech has fallen
far short of the pleading requirements set forth in *Twombly*.  The Court should dismiss
Count III with prejudice.

## IV.    Conclusion

The Amended Complaint fails to allege facts sufficient to state a plausible claim for relief.  Accordingly, and for all the reasons stated above, WSOD requests that the First Amended Complaint be dismissed with prejudice.

Dated:  April 20, 2009                    DORSEY & WHITNEY LLP


                                        By  s/Lola Velazquez-Aguilu
                                            J Jackson (#049219)
                                            Glenn Salvo (#0349008)
                                            Lola Velazquez-Aguilu (#0389486)
                                        50 South Sixth Street, Suite 1500
                                        Minneapolis, MN 55402
                                        Telephone:  612-340-2760
                                        Fax:  612-340-2807

                                        *Attorneys for Defendant*
                                        *Wall Street On Demand, Inc.*