**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | ) ) ) | **Case No. 12-MD-2358 (SLR)** |
| | ) ) ) | |
| **This Document Relates to:** **ALL ACTIONS** | ) ) ) | |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**BRIEF IN SUPPORT**

**KEEFE BARTELS, LLC**
Stephen G. Grygiel (DE Bar ID #4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth Street
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefebartels.com*
*Executive Committee Member*

**BARTIMUS, FRICKLETON,**
**ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**STRANGE & CARPENTER**
Brian Russell Strange
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**FINGER & SLANINA, LLC**
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Tel: 302-573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

i

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ............................................................2

II.     SUMMARY OF ARGUMENT ....................................................................................3

III.     STATEMENT OF FACTS; TERMS OF THE SETTLEMENT ...........................................4

IV.     ARGUMENT ..........................................................................................................8

        A.      The Settlement Class Should be Certified Under Rule 23(a) and (b)(2) .................8

        B.      The Settlement Should be Preliminarily Approved ................................................13

               1.      The Settlement is Presumed Fair ................................................................13

               2.      Other Factors Also Demonstrate the Fairness of the Settlement ................14

                      a.      The Complexity, Expense and Likely Duration of Litigation.........................................................................................15

                      b.      The Stage of the Proceedings and the Amount of Discovery Completed .......................................................................16

                      c.      The Risks of Establishing Liability and Damages...........................17

                      d.      The Risks of Maintaining Class Status ...........................................17

                      e.      Ability of Defendant to Withstand a Greater Judgment .................18

                      f.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks.........................................................................18

        C.      The Proposed Notice is Appropriate.....................................................................18

V.     CONCLUSION......................................................................................................19

VI.     LOCAL RULE 7.1.1 STATEMENT ........................................................................19

# **TABLE OF AUTHORITIES**

## Cases

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437................................................................ 14

*Baby Neal v. Casey*, 43 F.3d 48, (3d Cir. 1994) ................................................................ 10

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127, (3d Cir. 1998)................................................ 11

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, (3d Cir. 1974)................................... 15

*First Commodity Corp. of Bos. Customer Accounts Litig.*, 119 F.R.D. 301, (D. Mass. 1987) .... 13

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, (E.D. Pa. 2008) ........................................... 4

*Girsh v. Jepson*, 521 F.2d 153, (3d Cir. 1975)................................................................... 4

*In re Cendant Corp. Litig.*, 264 F.3d 201, (3d Cir. 2001)................................... 4, 16, 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,
    (3d Cir. 1995)............................................................................................. 4, 13

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, (E.D. Pa. 2003)................................ 4, 17

*In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, (E.D. Pa. 2012) ...................... 13, 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283,
    (3d Cir. 1998)............................................................................................. 9, 17

*In re Sch. Asbestos Litig.*, 789 F.2d 996, (3d Cir. 1986)................................................ 18

*In re Warfarin Sodium Antitrust Ligig.*, 391 F.3d 516, (3d Cir. 2004)........................... 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, (3d Cir. 2001).............. 11

*Stanford v. Foamex L.P.*, 263 F.R.D. 156, (E.D. Pa. 2009)........................................... 11

*Stewart v. Abraham*, 275 F.3d 220, (3d Cir. 2001)...................................................... 10

## Statutes

18 U.S.C. § 1030............................................................................................. 2

18 U.S.C. § 2510............................................................................................. 2

18 U.S.C. § 2701............................................................................................. 2

28 U.S.C. § 1407............................................................................................. 2

## Other Authorities

*Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999) ............................................ 10

*Newberg on Class Actions* § 3.10 (3d ed. 1992)............................................................. 10, 12, 13

## MOTION

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs hereby move the Court for an order certifying a settlement class and preliminarily approving a settlement with Defendant PointRoll, Inc. ("PointRoll"). Plaintiffs file this motion pursuant to Federal Rule of Civil Procedure 23, on the grounds that the requirements for class certification are met, and the proposed settlement is fair, reasonable, and adequate. This motion is based on this motion; the attached brief; the Declarations of Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton; the other papers on file with the Court in this action; and all other evidence and argument the Court permits counsel to present regarding this matter.

Respectfully Submitted,

Dated: September 23, 2013

**STRANGE & CARPENTER**

*/s/ Brian Russell Strange*
Brian R. Strange
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

## BRIEF IN SUPPORT OF MOTION

## I.        NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs"), on behalf of themselves and the class defined herein, and Defendant PointRoll, Inc. ("PointRoll" or "Defendant") have reached a class action settlement ("Settlement") (Exhibit A to the Declaration of Brian R. Strange), of which the parties now seek preliminary approval from the Court.

The background of this litigation is as follows: Named Plaintiffs in the Consolidated Amended Complaint and numerous other individuals filed complaints in various federal courts around the country in 2012.  These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") against PointRoll and other parties ("Non-Settling Defendants").  Plaintiffs allege in the Complaint, on behalf of a nationwide class of consumers, and continue to believe, that Defendant set cookies on Plaintiffs' Safari Browsers in conflict with the default cookie settings of such browsers in violation of the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Plaintiffs allege that PointRoll deployed third-party tracking cookies when Plaintiffs and Class Members visited a website containing an advertisement placed by PointRoll by circumventing Plaintiffs' and Class Members' Safari Browser settings that blocked such cookies.  Plaintiffs allege Defendant's secret and unconsented use of those cookies knowingly intercepted and gained access to Plaintiffs' and Class Members' Internet communications and activity in violation of

2

federal statutes.  PointRoll denies all allegations of wrongdoing; and it has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation relating to what PointRoll believes were permissible activities that were deployed for only a two-month period between December 13, 2011 and February 15, 2012.  PointRoll filed a motion to dismiss all the claims against it on January 22, 2013

Plaintiffs and PointRoll agreed to this Settlement, and therefore filed a Joint Request to Stay the Proceedings on July 23, 2013 (before the July 25, 2013 scheduled argument on the Defendants' motions to dismiss).  The parties stipulated, and the Court has now ordered, that all proceedings against PointRoll unrelated to settlement are stayed pending the Court's consideration of this Settlement.  Plaintiffs now seek preliminary approval of the Settlement.

## II.      SUMMARY OF ARGUMENT

1.   All of the requirements of class certification are met, and the Settlement Class[1] should be certified under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure (hereinafter, "Rule 23").  The Settlement Class is so numerous that joinder of all class members is impracticable; there are questions of fact or law common to the Settlement Class; Plaintiffs' claims are typical of the claims of the Settlement Class; Plaintiffs and their counsel will fairly and adequately represent the interests of the Settlement Class; and Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

2.   Plaintiffs and their counsel, Brian R. Strange of Strange & Carpenter, Stephen G.

---

[1] The Settlement Class consists of all persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, and includes all persons described in the Complaint.

Grygiel of Keefe Bartels, LLC, and James Frickleton of Bartimus, Frickleton, Robertson & Gorny, P.C., should be appointed to represent the interests of the Settlement Class.

3.   The Settlement is fair, reasonable, and adequate, and should be preliminarily approved.   The proposed Settlement easily meets the standard for preliminary approval.   *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 445 (E.D. Pa. 2008) (standard is whether settlement is "within range of reasonableness").   As relevant here, the preliminary approval determination asks whether (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation.   *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785–86 (3d Cir. 1995); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001).   If these factors are met, there is "an initial presumption of fairness."   *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing *In re Gen. Motors Corp.*, 55 F.3d at 785).   Considering these factors, as well as the final approval factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156–57 (3d Cir. 1975), the Settlement is well within the range of reasonableness and should be preliminarily approved.

4.   The Court should order that the proposed notice plan be implemented.   The proposed notice plan is reasonable and appropriate and fully satisfies the requirements of Rule 23 and due process.

### III.   <u>STATEMENT OF FACTS; TERMS OF THE SETTLEMENT</u>

The proposed Settlement with PointRoll was reached following extensive arms-length negotiations between Plaintiffs' counsel, Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton, on the one hand, and PointRoll's counsel, Alan Charles Raul and Edward R. McNicholas, on the other hand.   Plaintiffs and PointRoll discussed for several months the

possibility of settling Plaintiffs' claims against PointRoll.  Following many back and forth negotiations and discussions, the relevant parties agreed upon and executed a formal settlement agreement.  Throughout the course of settlement negotiations, the parties took into consideration potential liability and damage issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation.  Class Counsel believe the proposed Settlement is fair and reasonable and should be approved by this Court. Strange Decl. ¶ 7.

The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.  Specifically, the Settlement Agreement, Exhibit A to the Declaration of Brian R. Strange, provides for substantial injunctive and prospective relief for Class Members, including PointRoll taking steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers[2] and PointRoll's maintenance in substance of recent changes to its cookie practices and privacy policy.

PointRoll will carry out its steps to expire or delete of all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers by means of an expiration code designed to expire the cookies and through ordinary operation of the user's browser will result in the user's browser deleting existing PointRoll cookies when a user directs his or her Safari Browser to a webpage containing a PointRoll advertisement.  This expiration code will be

---

[2]  This will not apply to PointRoll "opt-out" cookies, which are cookies users can choose to accept that allow them to "opt-out" of PointRoll's third-party cookies themselves.  Therefore, those users would not want the "opt-out" cookies to be expired or deleted.

operational on PointRoll's servers for a period of twelve (12) weeks following entry of the Final Approval Order by this Court.  The parties agree that this action by PointRoll is a practical, reasonable, and effective means of removing the cookies from Safari Browsers.  *See* Settlement Agreement ¶ 3.1(a).

In addition, the Settlement Agreement calls for prospective relief limiting PointRoll's future cookie setting.  *See* Settlement Agreement ¶ 3.1(b).  Plaintiffs and Class Counsel have agreed not to object to, and release all future claims predicated upon, any prospective efforts by PointRoll to set new third-party cookies on any Safari Browser to the extent, but only to the extent, that PointRoll's setting of any such new cookies is done in a manner that complies with such browser's cookie settings.  PointRoll agrees to maintain for two (2) years following entry of the Final Approval Order, with substantially similar functionality, the "Remove All Cookies" feature that Defendant currently maintains and displays on its home page and on its privacy notice.

PointRoll has also agreed to make available to its advertiser clients the option to include within their PointRoll advertisements an "AdChoices Icon,"[3] or an icon of a similar nature and purpose, for two (2) years following entry of the Final Approval Order.  *See id.* ¶ 3.1(c).

PointRoll also agrees to maintain the material privacy protections set out in its current privacy notice (reflecting revisions as of December 2012, after these actions were filed) substantially in their current form.  The parties agreed that PointRoll will amend its website

---

[3] Defined in the Settlement Agreement at paragraph 1.4 as "the icon displayed in online advertisements signifying the advertiser's adherence to the Self-Regulatory Program for Online Behavioral Advertising, managed at the time of the Agreement by Evidon, Inc. and the Digital Advertising Alliance ('DAA').  The Self-Regulatory Program for Online Behavioral Advertising currently permits online consumers to (i) opt-out of browser-enabled, interest-based advertising; (ii) ascertain which companies have enabled customized advertisements for the consumer's browser; (iii) determine which opt-out settings the consumer has already created."

privacy notice to state expressly and conspicuously that: "PointRoll will not set cookies on user devices in contravention of a user's browser's cookie settings."  PointRoll agrees to maintain this amendment to its privacy notice for two (2) years following entry of the Final Approval Order, subject to exceptions if law, precedent or regulatory guidance changes.  *See id.* ¶ 3.1(d). PointRoll also agrees to remain a member of the Network Advertising Initiative ("NAI") or any successor organization to NAI for two (2) years following the entry of the Final Approval Order. *Id.*

For two (2) years following entry of the Final Approval Order, PointRoll will include within its website privacy notice language that generally describes the categories of cookies that PointRoll uses, including first-party and third-party cookies, flash cookies, and web beacons; cookie durations; and cookie purposes (*e.g.*, frequency capping, sequencing, effectiveness metrics, and behavioral advertising).  For two (2) years following entry of the Final Approval Order, PointRoll further agrees that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative, and PointRoll will not, through any contract with any advertisement publisher, negligently, knowingly, or intentionally violate its online privacy notice or agree to violate such policy. *See id.* ¶ 3.1(e).

Importantly, PointRoll has also agreed to provide Plaintiffs and Class Counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses, and termination of the Safari Cookie Technique (as defined in the Settlement Agreement), including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for which the Safari Cookie Technique was used. *See id.* ¶ 3.1(g).  Plaintiffs believe these

interviews will be very helpful for continued pursuit of this case against the Non-Settling Defendants.

Lastly, the parties have agreed to publish a brief joint written public statement to be published for three (3) months on PointRoll's website and in the notice described below. PointRoll will state that its use of the Safari Cookie Technique for a period of two months was not consistent with best industry practices, and that PointRoll is pleased to take a leadership role by deploying new practices and commitments as stated in its revised privacy notice. Plaintiffs and Class Counsel will state that PointRoll's new privacy practices and commitments demonstrate online responsibility and reflect an important step towards enhanced online privacy practices. *See id.* ¶ 3.1(h).

The Settlement also provides for notice to the Settlement Class via ads served by PointRoll, as well as a notice of the Settlement published three consecutive Mondays in the legal notice section of the print and e-Newspaper editions of USA TODAY.  In addition, Class Counsel and PointRoll have reached an agreement on attorneys' fees, subject to approval by this Court.  The Parties agree, subject to Court approval, that attorneys' fees and expenses of $115,000.00 represents a fair and reasonable amount to compensate Class Counsel for their representation of the Named Plaintiffs and Class Members in preparing, filing, and litigating this case against PointRoll, and arriving at this Settlement on behalf of Plaintiffs.  Plaintiffs will also request, subject to approval by the Court, incentive awards for the four Named Plaintiffs not to exceed $500 each, which PointRoll has agreed to pay in the amount awarded by the Court.

## IV.   ARGUMENT

### A.   The Settlement Class Should be Certified Under Rule 23(a) and (b)(2)

When a class settlement occurs before class certification has taken place, a court may

conditionally certify the case for settlement purposes. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998). The court uses the same Rule 23 requirements whether it certifies the class for trial or for settlement. *Id.* When certification is sought under Rule 23(a) and (b)(2), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the requirement of Rule 23(b)(2) that defendant acted on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the class as a whole.

A class certification motion had not yet been filed in this action at the time of settlement. Nevertheless, this case is exactly the type of case that is particularly appropriate for settlement class certification. Significantly, Defendant has agreed not to contest conditional certification of the Settlement Class for settlement purposes.

Plaintiffs seek certification of the following class for settlement purposes only: All persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, and includes all persons described in Paragraphs 191 and 192 of the Complaint.[4]

All of the class certification elements are met here. **Numerosity** under Rule 23(a)(1) is met because PointRoll has served ads to millions of users on Safari Browsers during the relevant

---

[4] Excluded from the Class are Google, PointRoll, Vibrant, Media, WPP, and their officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case and their immediate families.

time.  This is more than sufficient to meet the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)).

**Commonality** under Rule 23(a)(2), which requires that there be common questions of law or fact, is also present here for settlement purposes.  This requirement is construed permissively, and there does not have to be "complete congruence" of common issues; even one common issue is sufficient.  *Stewart*, 275 F.3d at 226–27 ("The commonality requirement will be satisfied if the named plaintiffs share at *least one* question of fact or law with the grievances of the prospective class." (emphasis added) (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994))); 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) [hereinafter *Newberg*] (the commonality standard is "easily met" for most settlement classes).

Here, for settlement purposes, there are many questions of law or fact that are common to the class, as required under Rule 23(a)(2): whether PointRoll's alleged business practice of circumventing Plaintiffs' and Class Members' Safari Browser security settings to transmit, access, collect, monitor, and remotely store users' data violated any of the three federal statutory claims asserted; how PointRoll carried out the Safari Browser circumvention; and whether Plaintiffs are entitled to statutory damages or other relief.  These common questions related to PointRoll's alleged actions that sent the same computer code to many users support settlement certification under Rule 23(a)(2).

**Typicality** under Rule 23(a)(3) "does not demand identical claims, only that they be reasonably coextensive with those of the absent class members."  *Stanford v. Foamex L.P.*, 263

F.R.D. 156, 168 (E.D. Pa. 2009) (citing *Baby Neal*, 43 F.3d at 57–58).   This requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184–85 (3d Cir. 2001) (citations and internal quotation marks omitted).   The Named Plaintiffs have alleged that they visited websites on their Safari Browsers during the relevant time period that were served ads by PointRoll, and therefore were subjected to PointRoll's alleged cookie circumvention technique.   Therefore, the Plaintiffs' experiences were not only typical of the proposed class— they were <u>identical</u> to the claims of the Settlement Class Members, as defined.

**Adequacy** under Rule 23(a)(4) concerns whether the class representatives and their counsel will "fairly and adequately protect the interests of the class."   This "requirement encompasses two distinct inquiries designed to protect the interests of absentee class members.   First, it tests the qualifications of the counsel to represent the class.   Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citations and internal quotation marks omitted).   Both requirements are met here.   There is no antagonism between Plaintiffs and the Class Members, all of whom assert the same underlying claims based upon the same conduct of PointRoll.   Plaintiffs and the Class Members allege to have visited sites on their Safari Browsers that had PointRoll ads, and the same PointRoll code allegedly caused cookies to be set in the same manner on each Safari Browser.   Plaintiffs' adequacy is also shown by their agreement to serve as representative plaintiffs and their retention of experienced, competent counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of

the Class.  Strange Decl. ¶¶ 12-13; Grygiel Decl. ¶¶ 14-15; Frickleton Decl. ¶¶ 3-4.

In fact, Plaintiffs' counsel, who have already been appointed as interim class counsel in this matter, have extensive experience with complex class actions, including cases similar to this, having served and still serving as class counsel in numerous federal and state court consumer fraud and privacy actions which have resulted in tens of millions of dollars being returned to consumers.   Class Counsel have also published several articles on Internet privacy issues. Strange Decl. ¶¶ 12-13; Grygiel Decl. ¶¶ 14-15; Frickleton Decl. ¶¶ 3-4.  Additionally, federal and state courts around the country have repeatedly found Class Counsel to be adequate class and MDL counsel.  *Id.*; *see also* 1 *Newberg* § 3.24 (the competence and experience of class counsel should be presumed in the absence of proof to the contrary).  Class counsel therefore respectfully request that, pursuant to Rule 23(g),[5] they be appointed Class Counsel for purposes of this settlement.

**Rule 23(b)(2)** requires that Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  This element is easily met, as PointRoll served the same code that circumvented users' Safari Browser cookie settings to all Plaintiffs and Class Members. Therefore, injunctive relief is appropriate for PointRoll to take the actions described above.

---

[5]  Rule 23(g)(1) provides in relevant part as follows:

> **(1)** ***Appointing Class Counsel.*** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> **(A)** must consider:
> **(i)** the work counsel has done in identifying or investigating potential claims in the action
> **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> **(iii)** counsel's knowledge of the applicable law; and
> **(iv)** the resources that counsel will commit to representing the class;
> **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . .

### B.      The Settlement Should be Preliminarily Approved

Rule 23(e) requires Court approval of a class settlement.  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *See In re Gen. Motors Corp.*, 55 F.3d at 784 (citing 2 *Newberg* § 11.41 (citing cases)).  "The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re General Motors Corp.*, 55 F.3d at 784 (citing *First Commodity Corp. of Bos. Customer Accounts Litig.*, 119 F.R.D. 301, 306–07 (D. Mass. 1987)).  "These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself." *Id.*

At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set.  *Id.* at 785; *see also Gates*, 248 F.R.D. at 444–45.

### 1.  The Settlement is Presumed Fair

Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); 4 Newberg § 11.24.

The parties in this class action negotiated the proposed Settlement in good faith and at arms-length.   The proposed Settlement was reached only after months of back-and-forth negotiations, which further confirms the arms-length nature of the Settlement.  *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 297 (E.D. Pa. 2012) (standard met where the "proposed class settlement was negotiated at arm's length over the course of four months by

the Plaintiffs' Interim Co-Lead Counsel and [settling defendant's] counsel"); *see also* Strange Decl. ¶ 6.  Moreover, while formal discovery has not commenced, Plaintiffs have performed thorough investigation of the technical and factual issues in the case.  *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. at 297 ("[A]lthough no formal discovery was conducted in this case during the time of the [Settlement] negotiations or agreement, Plaintiffs' Interim Co-Lead Counsel conducted informal discovery, including, *inter alia*, independently investigating the merits prior to filing the complaint, which enabled counsel to have sufficient background in the facts of the case, including [defendant's] alleged role in it.").  Moreover, through and by PointRoll's pleadings, motions and settlement communications, PointRoll's counsel made additional information available to Class Counsel that assisted Class Counsel in making the decision to agree to the Settlement.

Furthermore, counsel for each side—who are experienced plaintiffs' class action and defense attorneys—have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions.  Their view that the proposed Settlement is a fair resolution of their dispute is entitled to considerable weight.  *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 ("great weight" normally given to opinion of counsel regarding class settlement); *see also* Strange Decl. ¶ 7.[6]

### 2.  Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria considered by courts in evaluating class action settlements under Rule 23(e), even in the context of final approval.  The standard factors relevant to a determination of a settlement's fairness in

---

[6] Plaintiffs do not discuss the fourth factor regarding number of class objections, since Class Members have not yet been given notice of the Settlement, and this factor is therefore inapplicable to this preliminary analysis.

the Third Circuit are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 156–57. Some of these final settlement approval criteria are discussed below.[7]

### a.  The Complexity, Expense and Likely Duration of Litigation

This factor captures "the probable costs, in both time and money, of continued litigation," *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974), weighing the potential risks and rewards of proceeding with litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.  At the time the Settlement was reached, PointRoll had filed a motion to dismiss (as had the Non-Settling Defendants), which was pending.  Plaintiffs and PointRoll strongly disagreed as to Plaintiffs' ability to maintain the action, obtain litigation class certification, and prove liability and damages at trial.  While Plaintiffs are confident in their position and believe their claims are strong, Class Counsel are experienced and realistic and know that the information benefits here, coupled with guaranteed relief and certainty achieved through early settlement—as opposed to the uncertainty inherent in the trial and appellate process—weighs in favor of settlement.

This uncertainty is highlighted by the fact that PointRoll has maintained throughout the

---

[7] Plaintiffs do not discuss the Class Members' reactions to the proposed Settlement, since Class Members have not yet been given notice of the Settlement, and this factor is therefore inapplicable to the preliminary fairness analysis.

litigation that PointRoll conducted a limited deployment within the Safari browser to determine the effectiveness of mobile ads, which ended on February 15, 2012, approximately two months after beginning on December 13, 2011. PointRoll has maintained that the deployment did not involve the collection, retention, or resale of any specific personal information. PointRoll has also denied that the members of the Settlement Class suffered legally cognizable injuries as a result of the alleged conduct.

Although Class Counsel is prepared to establish that PointRoll's cookie circumvention technique violated federal statutes, and that the Settlement Class was harmed as a result and entitled to damages, PointRoll is also prepared to mount a vigorous defense on numerous important questions, including whether the claims are legally viable; whether the case is properly subject to class certification for litigation purposes; and whether and to what extent Plaintiffs or members of the Class are entitled to damages and the amount of such damages. Therefore, while Class Counsel strongly disagree with PointRoll's analysis, and believe that both the law and facts support Plaintiffs' position regarding PointRoll's use of these cookies that violated federal statutes, there is clearly no guarantee that Plaintiffs will prevail.

### b. The Stage of the Proceedings and the Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at 235. While formal discovery has not yet taken place, Class Counsel have made a thorough investigation into the facts and circumstances relevant to the claims at issue in the litigation. *See* Strange Decl. ¶ 8. Moreover, a material provision of the settlement agreement that was required by Plaintiffs' counsel was PointRoll's representation to Plaintiffs that PointRoll

16

(i) used its cookies for advertising effectiveness purposes that did not include profiling specific users or behavioral advertising; (ii) used the Safari Cookie Technique for only two months; and (iii) received gross revenues not exceeding $25,000 USD from the campaign for which it developed the Safari Cookie Technique.  *See* Settlement Agreement ¶ 3.1(f).

### c.  The Risks of Establishing Liability and Damages

The *Girsh* factors concerning the risks of establishing liability and damages require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d at 579 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).  As discussed under element a of the analysis, *supra*, although Class Counsel are prepared to present strong evidence that PointRoll's cookie circumvention technique violated the federal statutes at issue, and that the Settlement Class is entitled to damages under these laws as a result, PointRoll is also prepared to mount a vigorous defense.  Given these risks, Plaintiffs and Class Counsel believe the settlement with PointRoll, which will, in addition to the injunctive relief, provide Class Counsel and Plaintiffs the opportunity to interview cooperating PointRoll employees and uncover extremely valuable evidence in the case against the remaining defendants, outweighs the risks in establishing liability and damages at trial.

### d.  The Risks of Maintaining Class Status

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial."  *In re Warfarin Sodium Antitrust Ligig.*, 391 F.3d 516, 537 (3d Cir. 2004).  Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.  *In*

17

*re Sch. Asbestos Litig.*, 789 F.2d996, 1011 (3d Cir. 1986).  While Plaintiffs strongly believe they could certify a class for litigation, the risk of maintaining a class through trial is a consideration that Plaintiffs and Class Counsel believe supports this early settlement.

### e.  Ability of Defendant to Withstand a Greater Judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240.  While Plaintiffs believe PointRoll may have the ability to withstand a greater judgment, based on the other risks, Plaintiffs and Class Counsel believe the substantial injunctive relief and the valuable information that PointRoll will provide for Plaintiffs and Class Counsel in the ongoing litigation, which Plaintiffs believe will lead to much greater recovery against the Non-Settling Defendants, weigh this factor strongly in favor of settlement.

### f.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks

Under the proposed Settlement, PointRoll has agreed to take steps designed to expire or delete all third-party PointRoll cookies that exist in the Safari Browser files for Safari browsers (other than PointRoll "opt-out" cookies), and agrees not to take future actions to circumvent users' browser cookie settings.  The proposed Settlement provides substantial injunctive relief that Plaintiffs believe remedies the privacy violations the Complaint describes.  Moreover, the proposed Settlement provides Plaintiffs and Class Counsel with important information in their continued litigation against the Non-Settling Defendants in the ongoing litigation.

### C.  The Proposed Notice is Appropriate

The proposed Notice Plan should be approved by the Court.  Rule 23(e)(1) requires notice of a class action settlement to be provided "in a reasonable manner to all class members

who would be bound by the proposal."   The proposed Notice Plan here contemplates disseminating notice to the Settlement Class Members through: (1) published Internet advertising to unique Safari Browsers that visit *USA TODAY*'s website and at least ten (10) affiliated websites, with a link to the text of the Preliminary Approval Order and Settlement Notice; and (2) summary notice by publication three consecutive Mondays in the legal notice section of the print and e-Newspaper editions of USA TODAY.  *See* Settlement Agreement ¶ 4.2.

The proposed publication Notice and long form Notice are attached to the Declaration of Brian R. Strange as Exhibits B and C, respectively.   In understandable language, the proposed Notice describes the purpose of the Notice, a summary of the proceedings, a summary of the proposed Settlement terms and benefits, including identification of the parties bound by the proposed Settlement, issues related to attorneys' fees, costs, and awards, and a discussion of the relevant releases of the parties.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter the proposed Preliminary Approval Order lodged concurrently herewith; certify the Settlement Class; appoint Plaintiffs William Gourley, Josh Bermudez, Nicholas Todd Heinrich, and Lynne Krause as Class Representatives; appoint Strange & Carpenter, Keefe Bartels, LLC, and Bartimus, Frickleton, Robertson & Gorny, P.C. as Class Counsel; order that the proposed Notice be disseminated; and schedule a final fairness hearing.

## VI.   LOCAL RULE 7.1.1 STATEMENT

No party to this proposed settlement opposes the relief sought in this motion.  The non-settling Defendants have not been consulted due to the provision in the Agreement that the terms of the settlement remain confidential until submitted to the Court for its preliminary approval.

Dated: September 23, 2013

Respectfully submitted,

**KEEFE BARTELS, LLC**

**STRANGE & CARPENTER**

*/s/ Stephen G. Grygiel*

Stephen G. Grygiel (DE Bar ID #4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth Street
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefebartels.com*

*Executive Committee Member*

*/s/ Brian Russell Strange*

Brian Russell Strange
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**BARTIMUS, FRICKLETON,
ROBERTSON & GORNY, P.C.**

**FINGER & SLANINA, LLC**

*/s/ James P. Frickleton*

James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

*/s/ David L. Finger*

Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Tel: 302-573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

20