# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | ) ) ) ) | Case No. 12-MD-2358 (SLR) |
| | ) ) | |
| This Document Relates to: ALL ACTIONS | ) ) ) | |
| | ) | |

## DECLARATION OF BRIAN R. STRANGE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**KEEFE BARTELS, LLC**
Stephen G. Grygiel (DE Bar ID #4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth Street
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefebartels.com*
*Executive Committee Member*

**STRANGE & CARPENTER**
Brian Russell Strange
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**FINGER & SLANINA, LLC**
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Tel: 302-573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

*Additional Counsel on Signature Page*

I, Brian R. Strange, declare:

1.      I am the firm founder of Strange & Carpenter, interim co-class counsel in this case.  I submit this declaration of my own personal knowledge, and if called to testify, I could and would competently testify hereto under oath.

2.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendant Point Roll, Inc. ("PointRoll"), for certification of a class for settlement purposes, for appointment of Plaintiffs William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause as the representatives of the Settlement Class, and for appointment of Interim Class Counsel (consisting of Keefe Bartels, LLC; Bartimus, Frickleton, Robertson & Gorny, P.C.; and Strange & Carpenter) as Settlement Class Counsel.

3.      Attached hereto as Exhibit A is a true and correct copy of the signed Settlement Agreement between Plaintiffs and PointRoll.  Attached hereto as Exhibits B and C, respectively, are a proposed publication notice and a proposed long form notice, as contemplated in the Settlement Agreement.

4.      The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.

5.      Among substantial other relief, PointRoll has agreed to provide Plaintiffs and Class Counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses, and termination of the Safari Cookie Technique (as defined in the Settlement Agreement), including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for

which the Safari Cookie Technique was used. We believe these interviews will be very helpful for continued pursuit of this case against the Non-Settling Defendants.

6.     The settlement was reached following extensive good faith arms'-length negotiations between Stephen G. Grygiel, James P. Frickleton, and I, on the one hand, and PointRoll's counsel, Alan Charles Raul and Edward R. McNicholas, on the other hand. We discussed with PointRoll for several months the possibility of settlement. Following many back and forth negotiations and discussions, the relevant parties agreed upon and executed a formal settlement agreement.

7.     Throughout the course of settlement negotiations, we took into consideration potential liability; class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation. Having fully evaluated the strengths, weaknesses, and equities of the parties' respective positions, in my experienced opinion, I believe the settlement is fair and reasonable and in the best interests of the Settlement Class and should be preliminarily approved by the Court.

8.     While formal discovery has not yet commenced in this case, interim co-class counsel have performed a thorough investigation of the technical and factual issues in the case, including engaging and consulting with experts, analyzing the legal claims and defenses in light of the tricky permutations of cyberspace "transit" and "storage," and learning not just the contours but the substance of the rapidly evolving law of the Wiretap Act and Stored Communications Act.

9.     Moreover, PointRoll's counsel provided settlement communications with additional information to interim co-class counsel that assisted us in making the decision to agree

to the Settlement.  A material provision of the settlement agreement that we required was PointRoll's representation that PointRoll (i) used its cookies for advertising effectiveness purposes that did not include profiling specific users or behavioral advertising; (ii) used the Safari Cookie Technique for only two months; and (iii) received gross revenues not exceeding $25,000 USD from the campaign for which it developed the Safari Cookie Technique.

10.    While we are confident in Plaintiffs' position and believe the claims are strong, we are also experienced and realistic enough to know that the information benefits here, coupled with guaranteed recovery and certainty achieved through early settlement—as opposed to the uncertainty inherent in the trial and appellate process—weigh in favor of settlement.  This uncertainty is highlighted by the fact that PointRoll has maintained throughout the litigation that PointRoll conducted a limited deployment within the Safari browser to determine the effectiveness of mobile ads, which ended on February 15, 2012.  PointRoll has maintained that the deployment did not involve the collection, retention, or resale of any specific personal information.

11.    Although we are prepared to establish that PointRoll's cookie circumvention technique violated federal statutes, and that the Settlement Class was harmed as a result and entitled to damages, PointRoll is also prepared to mount a vigorous defense on numerous important questions, including whether the claims are legally viable; and whether the case is properly subject to class certification for litigation purposes.  Therefore, while we strongly disagree with PointRoll's analysis, and believe that both the law and facts support Plaintiffs' position regarding PointRoll's use of these cookies that violated federal statutes, there is clearly no guarantee that Plaintiffs will prevail.

12.     By Memorandum Order dated November 16, 2012 (Dkt. #44), this Court appointed Keefe Bartels, LLC; Bartimus, Frickleton, Robertson & Gorny, P.C.; and Strange & Carpenter as co-interim class counsel pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure.  In doing so, the Court noted our firms' "experience in large class actions and with substantial privacy rights litigation," our "impressive credentials and the underlying qualifications to serve as lead counsel," our "understanding of the legal issues," our "work to identify or investigate potential claims," and "the resources [we] will bring to bear on behalf of the putative class."  (Order, pages 3-4).

13.     As the Court has recognized, I have substantial experience in complex class actions, including cases similar to this, having served and still serving as class counsel in numerous federal and state court consumer fraud actions which have resulted in tens of millions of dollars being returned to consumers, as well as privacy actions.  I have been appointed to leadership in MDLs across the country.  For example, I was selected as one of the members of plaintiffs' leadership out of 16 applicants appointed to Plaintiffs' Steering Committee in *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, MDL No. 2258, by the Honorable Anthony J. Battaglia in the Southern District of California.  I was also approved by Judge Jack Zouhary to serve on the Plaintiffs' Executive Committee in a consolidated antitrust case, *In Re: Polyurethane Foam Antitrust Litig.*, pending in the United States District Court for the Northern District of Ohio, MDL No. 2196, which is considered one of the largest antitrust cases in the last 10 years.  I am also currently counsel for plaintiffs in *In re Hulu Privacy Litigation*, Northern District of California Case No. 3:11-cv-03764-LB, a case concerning internet "cookies" and privacy issues.  I am intimately familiar with the developing legal doctrines of cyberspace privacy law, and have recently published articles on internet privacy

issues, including my article "Privacy: Is it legal tracking or an illegal Wiretap?" published in the Advocate, July 2012.  Attached hereto as Exhibit D is my firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of September, 2013, at Los Angeles, California.

_____/s/__Brian R. Strange_____
Brian R. Strange
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE GOOGLE INC. COOKIE PLACEMENT
CONSUMER PRIVACY LITIGATION

CIVIL ACTION NO.: 12-MD-2358 (SLR)

## CONFIDENTIAL SETTLEMENT AGREEMENT

The Named Plaintiffs[1] individually and as representatives of the asserted Class (Named Plaintiffs and the asserted Class Members are also referred to collectively as "Plaintiffs"), and the Defendant Point Roll, Inc. ("Defendant" or "PointRoll") (collectively, "the Parties"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, hereby enter into the following Stipulation and Class Settlement Agreement ("Agreement"), dated as of July 19, 2013, and subject to approval of the Court.

## RECITALS

**WHEREAS,** on December 19, 2012, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") against PointRoll and other parties the United States District Court for the District of Delaware, which consolidated and superseded the prior actions against PointRoll, Lourdes Villegas v. Google, Inc., et al., C.A. No. 12-00915 and Nobles v. Google, Inc. et al, C.A. No. 12-03589.

**WHEREAS,** Plaintiffs alleged in the Complaint and continue to believe that Defendant set cookies on Plaintiffs' Safari Browsers in conflict with the default cookie settings of such browsers in violation of law.

**WHEREAS,** Defendant has denied and continues to deny all of the allegations made by Plaintiffs against PointRoll in the Complaint and has denied and continues to deny any and all violations of law, wrongdoing, liability or damages to anyone with respect to the alleged facts, alleged damages or causes of action asserted against PointRoll in the Complaint.

**WHEREAS,** without admitting or conceding any liability or damages whatsoever, PointRoll has agreed to settle the Plaintiffs' claims against PointRoll on the terms and conditions set forth in the Agreement to avoid the burden, expense, and uncertainty of

---

[1] All capitalized terms not otherwise defined shall carry the meaning set forth in Section 1 below.

continuing the litigation of the Complaint (sometimes "the Litigation" as more fully defined in Paragraph 1.2 of the Definitions below).

**WHEREAS**, having analyzed and evaluated the merits of Plaintiffs' claims against Defendant in the Complaint and the impact of the Agreement on Named Plaintiffs and the Class, Class Counsel has determined that the terms and conditions of the Agreement are fair, reasonable, adequate and proper, and that the Agreement is in the best interests of the Class.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in the Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1 DEFINITIONS

1.1    For the purposes of the Agreement, the following words and terms shall be defined to have the meanings set forth below.

1.2    **Action or Litigation** means the case captioned *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, No. 12-MD-2358 (SLR), filed in the United States District Court for the District of Delaware.

1.3    **PointRoll or Defendant** means Point Roll, Inc., a Delaware corporation.

1.4    **AdChoices Icon** means the icon displayed in online advertisements signifying the advertiser's adherence to the Self-Regulatory Program for Online Behavioral Advertising, managed at the time of the Agreement by Evidon, Inc. and the Digital Advertising Alliance ("DAA"). The Self-Regulatory Program for Online Behavioral Advertising currently permits online consumers to (i) opt-out of browser-enabled, interest-based advertising; (ii) ascertain which companies have enabled customized advertisements for the consumer's browser; (iii) determine which opt-out settings the consumer has already created.

1.5    **Class or Class Members** means all persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers, and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, and includes all persons described in Paragraphs 191 and 192 of the Complaint.

1.6    **Class Counsel** means those attorneys duly appointed by the Court as interim class counsel in this Action pursuant to Fed. R. Civ. P. 23(g)(3).

1.7    **Class Settlement Notice or Notice** means the notices concerning this Action and the Agreement to be provided to Class Members and that are described in Section 4 to this Agreement.

1.8    **Court** means the United States District Court for the District of Delaware.

1.9    **Effective Date** means the first business day following the date the Final Approval Order have become final and unappealable, whether by affirmance on or exhaustion of any possible appeal or review, writ of certiorari, lapse of time or otherwise.

1.10    **Fairness Hearing** means any hearing or proceeding during which the Court determines whether this Settlement is reasonable and fair.

1.11    **Final Approval Order or Final Approval or Final Judgment** means the order and final judgment to be entered by the Court approving the Settlement Agreement, including arrangements for Injunctive Relief.

1.12    **Injunctive Relief** means such remedial and future measures to be adopted by the Parties, as listed in Paragraph 3.1 of the Agreement.

1.13    **Named Plaintiffs** means William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause.

1.14    **Parties** refers to the Named Plaintiffs, the Class, and Defendant.

1.15    **Plaintiffs** means Named Plaintiffs and all other Class Members.

1.16    **Preliminary Approval Order** means the order to be entered by the Court preliminarily approving the Settlement Agreement, including arrangements for Injunctive Relief, substantially in the form attached hereto as Exhibit 2, or as modified by the Court with the consent of the Parties, or as modified by agreement of the Parties.

1.17    **Released Claims** means any and all potential or actual matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, which any Class Member has or might have, known or unknown, including Unknown Claims, defined below, of any kind whatsoever prior to the Effective Date and that Plaintiffs alleged or could have alleged in the Complaint against PointRoll or that otherwise are based on or relate to, wholly or partially, the facts and circumstances Plaintiffs alleged in the Complaint's claims against PointRoll.

Without limiting the generality of the foregoing description of Released Claims, the Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the facts, circumstances and import of Plaintiffs' Complaint's claims against PointRoll. However, the Class Members fully, finally, and forever settle and release any and all claims set forth in this Paragraph, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed upon any theory of law or equity now existing or coming

into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Members acknowledge that the inclusion of such "Unknown Claims" in the Agreement was separately bargained for and was a key element of the Agreement.

By the definition of Released Claims set forth above, the Class Members hereby intend expressly to waive the provisions, rights, and benefits of any state law or rule that seeks to or does preserve known or unknown claims that would otherwise be released by this Settlement Agreement, including California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and Class Members expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or of any other nation that is similar, comparable, or equivalent to California Civil Code § 1542.

1.18    **Released Parties** means PointRoll, and its past, present, and future parents, divisions, subsidiaries, partnerships, affiliates, and other related entities (whether or not they are wholly owned), together with the directors, officers, employees, agents, insurers, reinsurers and attorneys of any of them. Released Parties does not include any of the other Defendants named in the Complaint, or any of their past, present and future parents, divisions, subsidiaries, partnerships, affiliates and other related entities (whether or not wholly owned), together with their directors, officers, employees, agents, insurers, reinsurers and attorneys. The Parties expressly intend all of the Released Parties to be third party beneficiaries of the Agreement.

1.19    **Safari Browser** means the web browser developed and distributed by Apple Inc.

1.20    **Safari Cookie Technique** means the technique PointRoll employed to place cookies on Safari Browsers, regardless of whether a user's particular Safari Browser cookie setting was set either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," as alleged in the Complaint. As used in this Agreement, "cookie setting" shall refer solely to a browser's settings under the user options of "Accept Cookies," "Block cookies" or "Private Browsing," or equivalent cookie options and, for the avoidance of doubt, shall not refer to a browser's settings, if any, with regard to "do not track" signals.

1.21    **Stipulation or Settlement or Agreement** means this Stipulation and Class Settlement Agreement, including all of its Exhibits.

1.22    **Unknown Claims** means any claim for monetary, declaratory, or injunctive relief that a Named Plaintiff or any other Class Member did or does not know or suspect exists in his, her, or its favor at the time of the release of the Released Claims as against any of the Released Parties, including without limitation those that, if known, might have affected a person's decision to participate in this settlement, opt out of the Class, or submit a Claim. With respect to any of the Released Claims, the Parties stipulate and agree that upon entry of the Final Approval Order, Named Plaintiffs and each Class Member shall be deemed to have, and by operation of the Final Approval Order by the Court shall have, waived, relinquished and released any and all provisions, rights and benefits conferred by 18 U.S.C. § 2510, *et seq.*, 18 U.S.C. § 2701, *et seq.*, 18 U.S.C. § 1030, and other laws as set out in the definition of Released Claims. Named Plaintiffs acknowledge, and the Class Members by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Named Plaintiffs, and by operation of law the Class Members, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, and without regard to the subsequent discovery of additional or different facts. Named Plaintiffs acknowledge, and the Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and was a material element of the Agreement and was relied upon by PointRoll in entering into the Agreement.

2    **CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES**

2.1    The Parties agree to the certification of the Class and approval of Named Plaintiffs as Class representatives for purposes of this Settlement only, pursuant to Rules 23(b) (2), (3) of the Federal Rules of Civil Procedure.

2.2    The certification of the Class shall be binding only with respect to the Agreement. If the Agreement is terminated pursuant to its terms, is not approved in all material respects by the Court, or any judgment or order entered pursuant hereto is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Class shall, except as provided in Section 6, be deemed vacated, the Action shall proceed as though the Class had never been certified, and no reference to the Class, or to this Settlement Agreement or any documents related thereto, shall be made by the Parties for any purpose, except as expressly authorized by the terms of the Agreement.

3      **INJUNCTIVE AND OTHER RELIEF**

3.1     **Injunctive and Prospective Relief.** The Parties agree that the following injunctive and prospective actions ("**Injunctive Relief**") shall be instituted as part of this Settlement:

(a)     **Cookie Deletion.** PointRoll agrees to take the steps described here to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers as set forth below. The foregoing will not apply to PointRoll "opt-out" cookies. PointRoll will take the foregoing action by means of an expiration code that will expire the cookies and through ordinary operation of the user's browser will result in the user's browser deleting existing PointRoll cookies when a user directs his or her Safari Browser to a Web page containing a PointRoll advertisement. This expiration code will be operational on PointRoll's servers for a period of twelve (12) weeks following entry of the Final Approval Order. The Parties agree that this action by PointRoll is a practical, reasonable and effective means of removing the cookies from Safari Browsers. The Parties acknowledge and accept the risk that this method of removing cookies might not expire, delete or remove all cookies from Plaintiffs' Safari Browsers. The Parties agree that the efforts set forth herein represent the full extent of the affirmative efforts required by PointRoll to cause the removal of cookies from Plaintiffs' devices, provided that PointRoll will also maintain the "Removal All Cookies" feature as described, and for the period, below.

(b)     **Future Cookie Settings.** Plaintiffs and Class Counsel agree not to object to, and release all future claims predicated upon, any prospective efforts by PointRoll to set new third-party cookies on any Safari Browser to the extent, but only to the extent, PointRoll's setting of any such new cookies is done in a manner that complies with such browser's cookie settings. Defendant agrees to maintain for two (2) years following entry of the Final Approval Order, with substantially similar functionality, the "Remove All Cookies" feature that Defendant currently maintains and displays on its home page, at http://www.pointroll.com, and on its privacy notice, at http://www.pointroll.com/privacy.php. Such feature will operate to provide substantially the following functionality: "By removing all PointRoll cookies you will also be declining the PointRoll Opt Out cookie, in effect removing the ability to block all other cookies. If you would like to Opt Out of receiving cookies the Opt Out cookie must be in place. Choose Opt Out to remove all PointRoll cookies except the Opt Out cookie."

(c) **AdChoices Icon Availability.** PointRoll agrees to make available to its advertiser clients the option to include within their PointRoll advertisements an AdChoices Icon, or an icon of a similar nature and purpose, for a period of two (2) years following entry of the Final Approval Order, provided that AdChoices or any reasonably equivalent or substitute program continues to exist in substantially the same form AdChoices now embodies during such period and that AdChoice's or any equivalent or substitute program's applicable terms and provisions remain substantially the same during that period as they were in AdChoice's program as of the Effective Date.

(d) **Revision to Privacy Statement.** PointRoll agrees to maintain the material privacy protections set out in its current privacy notice (reflecting revisions as of December 2012) substantially in their current form, subject to changes in applicable law. The Parties agree that PointRoll will amend its Website privacy notice to state expressly and conspicuously that: "PointRoll will not set cookies on user devices in contravention of a user's browser's cookie settings." PointRoll agrees to maintain the foregoing amendment to its privacy notice for two (2) years following entry of the Final Approval Order. If applicable law, precedent or regulatory guidance changes within two (2) years of the entry of the Final Approval Order, PointRoll may reasonably modify this amendment and its cookie practices and privacy notice to comply with such changes, subject to providing public notice on the PointRoll Website that PointRoll is modifying its cookie practices.

PointRoll agrees to remain a member of the Network Advertising Initiative ("NAI") or any successor organization to NAI for two (2) years following the entry of the Final Approval Order, provided that NAI or any successor organization continues to exist in substantially the same form during such period as the NAI reflects as of entry of the Final Approval Order and that the NAI's or any successor's membership requirements remain substantially the same during that period as they were as of the Effective Date.

(e) **Disclosure of Cookie Practices.** The Parties agree that PointRoll will take the actions specified in this Paragraph regarding its cookie practices for a period of two (2) years following entry of the Final Approval Order. Subject to the foregoing limitations, PointRoll agrees that it will include within its Website privacy notice language that generally describes the categories of cookies that PointRoll uses, including first-party and third-party cookies, flash cookies and web beacons; cookie durations; and cookie purposes (*e.g.*, frequency capping, sequencing, effectiveness metrics, behavioral advertising). Subject to the foregoing limitations, PointRoll further

agrees that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative by email or other electronic communication, or by including or forwarding a link to PointRoll's online privacy notice in communications with such publishers. Subject to the foregoing limitations, PointRoll further agrees that it will not, through any contract with any advertisement publisher, negligently, knowingly or intentionally violate its online privacy notice or agree to violate such policy.

(f)    **Disclosure Regarding the Safari Cookie Technique.** PointRoll represents that PointRoll (i) used its cookies for advertising effectiveness purposes that did not include profiling specific users or behavioral advertising; (ii) used the Safari Cookie Technique for only two months; and (iii) received gross revenues not exceeding $25,000 USD from the campaign for which it developed the Safari Cookie Technique.

(g)    **Cooperation.** PointRoll agrees to provide Plaintiffs and Class Counsel the opportunity to interview in person PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses and termination of the Safari Cookie Technique, including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for which the Safari Cookie Technique was used. These employees will be identified and mutually agreed upon through discussions between the Parties' counsel. Plaintiffs and Class Counsel will be permitted to interview these PointRoll employees for an aggregate of twenty-five (25) hours, provided that any of PointRoll's proprietary or trade secret information disclosed in such interviews will remain strictly confidential to the Plaintiffs and Class Counsel and will not be used, referenced in, or otherwise relied upon by Plaintiffs and Class Counsel in any claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise against PointRoll or any of the Released Parties. Any and all interviews arising under this Paragraph must be concluded within three (3) months of the Court's approval of this Settlement Agreement. Plaintiffs and Class Counsel further agree that any and all interviews arising under this Paragraph must be arranged through and conducted with the participation of counsel for PointRoll. Nothing in this paragraph is meant to limit any party's right to discovery permissible under the Federal Rules of Civil Procedure.

(h)    **Public Statement.** Upon entry of the Final Approval Order, the Parties agree to publish a brief joint written public statement to be published for three (3) months on PointRoll's website and in the notice described in Section 4.2.1, below, wherein:

  (i)    PointRoll will state that its use of the Safari Cookie Technique for a period of two months was not consistent with best industry practices, and PointRoll is pleased to take a leadership role by deploying new practices and commitments as stated in its revised privacy notice.

  (ii)    Plaintiffs and Class Counsel will state that PointRoll's new privacy practices and commitments demonstrate online responsibility and reflect an important step towards enhanced online privacy practices.

The Parties agree not to make any other public statements regarding the settlement outside of the court proceedings in this case unless specifically and mutually agreed upon by the Parties in writing in advance of any such statement.

3.2    **Attorneys' Fees and Costs.**

(a)    The Parties agree that attorney's fees and expenses of $115,000.00 represents a fair and reasonable to compensate Class Counsel for their representation of the Named Plaintiffs and asserted Class Members in preparing, filing and litigating this case against PointRoll, and arriving at this settlement on behalf of Plaintiffs. The Parties further agree to jointly support these fees and costs, and jointly request that the Court approve and award such fees and costs in that amount.

(b)    Any attorneys' fees, monetary payments to the Named Plaintiffs ("**Incentive Awards**") and costs awarded by the Court shall be paid by PointRoll by electronic transfer in immediately available collected funds in U.S. Dollars to Class Counsel within ten (10) days of the Effective Date; provided however that no such payment shall be due until Class Counsel has provided PointRoll with a validly completed IRS Form W-9. The details of the transfer including account number and routing number shall be provided through separate correspondence to be provided no later than ten (10) days before the Effective Date.

3.3    **No Further Obligation.** The Parties agree and acknowledge that the cost of PointRoll's own attorneys' fees and expenses, of the Injunctive Relief in Section 3.1 of the Agreement, the Attorneys Fees and Costs in Section 3.2 of the Agreement, Named Plaintiff Incentive Awards totaling $2,000,

through payments of $500 to each of the Named Plaintiffs, and the costs of Class Notice set forth in Section 4.2 below collectively represent Defendant's maximum financial obligation under the Agreement. The parties further agree and acknowledge that Defendant shall have no further monetary obligation whatsoever, including, but not limited to, any monetary obligations with respect to the Named Plaintiffs, the Class, Class Counsel, or the claims alleged against PointRoll in the Complaint. PointRoll understands and agrees that neither Named Plaintiffs, the Class, or Class Counsel shall under any circumstances be liable, and expressly disclaim any duty, to indemnify, defend, hold harmless or otherwise compensate PointRoll or its attorneys from or against any claims from any other Defendant or such Defendant's counsel in the Litigation, or from any other persons or entities of any description whatsoever who might allege claims against Defendant and who are not included within the Class described in the Complaint and in this Agreement in Section 1.5, above.

4       **APPROVAL AND CLASS NOTICE**

4.1     **Preliminary Approval by the Court.** Within thirty (30) days of the execution of the Agreement, Named Plaintiffs and Defendant will submit to the Court the Agreement, a Motion for Conditional Certification of the Class, a Motion for Judgment and Approval of the Agreement, a proposed Notice, and a proposed Approval Order. Pursuant to the terms of the Agreement, Named Plaintiffs and Defendant will seek conditional certification of the Class.

4.2     **Class Settlement Notice.** Upon entry of the Approval Order, Defendant shall notify Class Members of the Settlement of this Litigation. Notice will be given by

4.2.1   Publication of a notice for a period of three (3) days consecutive Mondays in the legal notice section of the print and e-Newspaper editions of the USA TODAY newspaper.

4.2.2   Publication by serving Internet advertising of up to 20 million impressions to unique Safari Browsers that visit www.usatoday.com or websites affiliated with USA TODAY. PointRoll will serve such advertising on www.usatoday.com and at least 10 affiliated websites every day during the three-week period contemplated in this section 4.2.2 ("Internet Notice Period") to Safari Browser users who visit such sites at any time of day during the Internet Notice Period. PointRoll will use first-party publisher cookies on www.usatoday.com and the affiliated sites, along with frequency capping, to target unique Safari Browsers. The Internet Notice Period will correspond to the three-week period beginning at 12:01 AM on the first Monday on which notice is published in USA TODAY via print and

e-Newspaper formats as specified in Section 4.2.1, and will terminate at 11:59 PM on the first Sunday following the last Monday on which such notice is published in the print and e-Newspaper editions of USA TODAY pursuant to 4.2.1.

4.2.3    The language displayed by the Internet advertising contemplated in section 4.2.2 will state: "If you used a Safari browser from December 2011 through February 2012, you may be covered by a class action settlement by Point Roll, Inc., one of the defendants in the case *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, No. 12-MD-2358 (SLR) (D. Del). For more information click here." Such link will display the text of the Preliminary Approval Order Settlement Notice, in such form as ultimately approved by the Court.

4.2.4    The parties agree to cooperate in good faith to develop language for the Preliminary Approval Order Settlement Notice.

4.3    **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, issue a Final Approval Order that will (a) certify the Class, (b) enter judgment in accordance with the Agreement, (c) approve the Settlement (including the Release of Claims) as final, fair, reasonable, adequate and binding on all Class Members, (d) approve the payment of $500 Incentive Awards to each of the Named Plaintiffs and (e) approve the payment of reasonable attorneys' fees and costs for Class Counsel pursuant to Section 3.2.

4.4    **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter the Final Approval Order in accordance with the Agreement, the Court is found to lack jurisdiction over this Action, or the Final Approval Order is vacated on appeal, the Parties shall proceed as follows:

(a)    The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Final Approval, vacating the Final Approval Order or finding the Court to lack jurisdiction over this Action, or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated Settlement;

(b)    In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under the Agreement; and

(c)    If the Settlement is not approved, the case will proceed as if no Settlement has been attempted. In that event, the class(es) certified for purposes of Settlement shall be decertified, and Defendant retains the right to contest whether this case should be maintained as

a class action and to contest the merits of the claims being asserted by Plaintiffs in this action.

## 5    CONDITIONS OF SETTLEMENT

5.1    **Conditions of Settlement.** This Settlement Agreement is expressly conditioned on and subject to each of the following conditions and, except as provided in Section 6.2, shall be cancelled and terminated unless:

(a)    the Court enters the Preliminary Approval Order substantially in the form attached hereto as Exhibit 2;

(b)    the Court enters the Final Approval Order and Judgment; and

(c)    the Effective Date shall have occurred.

5.2    **Effect of Disapproval, Cancellation or Termination.** If either (a) the Court does not enter the Final Approval Order, (b) the Court enters the Final Approval Order, but on or following appellate review the Final Approval Order is modified or vacated or reversed in any material respect, or (c) any of the other conditions of Section 5.1 is not satisfied, the Agreement shall be cancelled and terminated unless counsel for the Named Plaintiffs and Defendant, within ten (10) business days from receipt of such ruling or event, agrees to proceed with the Agreement and Settlement, including only with such modifications, if any, as to which all Parties in their sole judgment and discretion may agree, in which case the modified Agreement shall be submitted to the Court for its approval. For purposes of this Section, an intent to proceed shall not be valid unless it is expressed in a signed writing. Neither a modification nor a reversal on appeal of the amount of fees and costs awarded by the Court to Class Counsel shall be deemed a material modification of the Final Approval Order or the Agreement.

## 6    ADMINISTRATION

6.1    **No Tolling of Limitations.** The Parties acknowledge and agree that all applicable statutes of limitation ceased tolling, and recommenced running, as of the Effective Date.

6.2    **Responsibility of Defendant.** Defendant's counsel and Class Counsel will have the authority jointly to make all decisions necessary for the orderly implementation and administration of the Settlement, subject to review by the Court and as allowed by the Agreement.

6.3    **Responsibility for Inquiries of Class Members.** Class Counsel expressly reserves the right to communicate orally and in writing with, and to respond to inquiries from, Class Members concerning the Agreement and the Settlement. Accordingly, among other topics, Class Counsel may respond

to questions from any Class Member concerning that Class Member's Individual Settlement Benefit and Defendant will refer any such questions in the first instance to Class Counsel. Absent express written agreement from Class Counsel, Defendant shall not be entitled to communicate directly with Class Members.

6.4    **Notices.** Copies of any and all notices, documents or filings required under the Agreement shall be served by registered United States mail on the Parties to counsel of record for PointRoll and Class Counsel.

## 7    RELEASE OF CLAIMS.

7.1    As of the Effective Date, the Action shall be dismissed with prejudice, and without costs, except as provided herein.

7.2    As of the Effective Date, Named Plaintiffs and Class Members, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, shall fully, finally and forever release, settle and discharge the Released Parties from and with respect to the Released Claims and will be forever barred and enjoined from commencing, instituting or prosecuting any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties (the "Release of Defendant"); provided, however, that the Release of Defendant shall not include Named Plaintiffs' and Class Counsel's rights to enforce the Settlement as set forth in the Agreement. This release shall become fully operative as of the Effective Date.

7.3    Named Plaintiffs represent that this waiver and release of claims is given knowingly and voluntarily and that they have had an opportunity to consult with legal counsel on their own behalf and on behalf of all Class Members.

## 8    MISCELLANEOUS PROVISIONS

8.1    **Cooperation and Dispute Resolution.** Any dispute between or among the Parties or Class Counsel regarding an alleged breach of the Agreement shall be subject to the following dispute resolution process:

(a)    The party asserting that a breach has occurred shall give prompt written notice to the party allegedly committing the breach at the address(es) set forth in Section 6.4.

(b)    Within ten (10) calendar days of receipt of the notice, Class Counsel and a representative for PointRoll shall confer in person or by telephone and attempt to resolve the dispute.

(c)    If the confer process does not occur or does not resolve the dispute, the matter may be referred by either Class Counsel or PointRoll to

mediation before a neutral third party mutually agreed to by Class Counsel and PointRoll.

(d)    The Parties agree not to file any motion to enforce this Class Settlement Agreement until complying with the requirement to confer and mediate and then only if the allegations of noncompliance have not been corrected.

8.2    **Stay Pending Final Approval Order.** Named Plaintiffs and Class Counsel agree to request from the Court a stay of the proceedings against PointRoll in the Action and to refrain from initiating any and all other proceedings other than those incident to the Settlement itself pending the occurrence of the Effective Date. The Parties agree to not seek the enforcement of any deadlines to respond to any filed or served pleadings or discovery requests. The Parties also agree to cooperate and support efforts to prevent, stay or seek dismissal of or oppose entry of any interim or final relief in favor of any Class Member in any other litigation against any of the Released Parties that challenges the Settlement including any transactions contemplated thereby, or that otherwise involves, directly or indirectly, a Released Claim. Other than as required by law or by this Agreement, and except for any review by a party-retained expert subject to a requirement of keeping both the terms of the Settlement Agreement confidential, Defendant, Defendant's counsel, Named Plaintiffs and Class Counsel shall not disclose the existence of the Agreement until the Court is notified, and not disclose the terms of the Agreement to any other party until after it is presented to the Court for approval.

8.3    **No Public Comments.** Named Plaintiffs hereby agree not to make any statements to the media or any other third party about the Released Parties, and Named Plaintiffs and Class Counsel agree not to undertake any affirmative efforts to generate media coverage, Internet postings, or other publicity except as expressly permitted by the Agreement. The parties agree that, upon entry of the Final Approval Order, the undersigned Class Counsel may announce the fact of a settlement on their firms' websites including the Public Statement as set forth in this Agreement. Defendant agrees not to make any statements to the media or any other third party about the Named Plaintiffs or Class Members. Other than as required by law and the Agreement, Defendant, Defendant's counsel, Named Plaintiffs, and Class Counsel shall issue no press release or make any other public statement describing the Agreement or its terms. The Parties and the Parties' counsel agree to undertake best efforts to promote the Settlement Agreement and to not take any action that may undermine its approval by the Court. The Parties hereby acknowledge that remedies at law are inadequate to fully remedy the harms anticipated by this section, and thus consent to the entry of equitable relief, including injunctions, to enforce this section.

8.4    **No Third-Party Beneficiaries.** Except as specifically provided herein, the Agreement shall not be construed to create rights in, or to grant remedies to or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of the Agreement.

8.5    **Deadlines.** If any deadline set forth in the Agreement or the Exhibits thereto falls on a Saturday, Sunday or legal holiday, that deadline will be continued to the next day that is not a Saturday, Sunday or legal holiday..

8.6    **Headings.** The headings in the Agreement are solely for the convenience of the attorneys for the Parties and the Court. The headings shall not be deemed to be a part of the Agreement and shall not be considered in construing or interpreting the Agreement.

8.7    **Choice of law and forum selection.** The Agreement shall be construed and interpreted in accordance with the internal laws of the State of Delaware. Any and all disputes arising out of, relating to, or in any way associated with the Agreement shall be adjudicated only in the Court or in a mediation site of the Parties' joint selection.

8.8    **Dismissal with prejudice.** The Parties shall file with the Court a Stipulation of Dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure dismissing with prejudice the entire Action within ten (10) days after the Effective Date. Subsequent to the filing of such stipulation of dismissal, the Court shall retain jurisdiction solely to enforce the terms of the Agreement.

8.9    **Interpretation.** In the event that the Court or any other court is called upon to interpret the Agreement, no one party shall be deemed to have drafted the Agreement.

8.10    **Assignment.** The Agreement shall be binding upon, and inure to the benefit of, the successors, assigns and heirs of the Released Parties, and assigns and heirs of Class Members.

8.11    **Entire Agreement.** The Agreement constitutes the entire agreement and understanding of the Parties hereto with regard to the matters described herein and supersedes any and all prior and/or contemporaneous agreements and understandings, oral or written, between the Parties. The Agreement may be modified only in writing, and any Party's failure to enforce the Agreement in the event of one or more events that violate the Agreement shall not constitute a waiver of any right to enforce the Agreement against subsequent violations.

8.12    **Amendment to Agreement.** Any amendment to the Agreement must be in writing signed by a duly authorized representative of each Party and stating the intentions of the Parties to amend the Agreement.

8.13    **Executed in counterparts.** The Agreement may be executed in counterparts, each of which may be a separate document, and all of which together shall be deemed and considered an original of the Agreement. The Parties hereto agree to accept electronic transmission of copies of signature pages as and in place of originals.

8.14    **No Admission of Liability.** Neither the Agreement nor the terms of the Agreement is evidence, or a presumption, admission or concession by any Party, any signatory hereto, or any of the Released Parties, of any fault, liability, or wrongdoing whatsoever, or lack of any fault, liability, or wrongdoing, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings. Neither the Agreement nor the terms of the Agreement is a finding or evidence of the validity or invalidity of any claims or defenses in the Action or any wrongdoing by any of the Released Parties or any damages or injury to any Class Members. Neither the Agreement nor the terms of the Agreement is, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement proceedings, nor any statements in connection therewith, (a) shall (i) be argued to be, used or construed as, offered, or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of any infirmity of any defense, or of any damage to the Named Plaintiffs or any Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any person or entity, or (b) otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; <u>provided, however</u>, that the Settlement Agreement and/or Final Approval Order and Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to argue that the Agreement and/or the Final Approval Order has *res judicata*, collateral estoppel or other issue or claim preclusion effect or to otherwise consummate or enforce the Agreement and/or the Final Approval Order.

8.15    **No Waiver.** Failure or delay by Named Plaintiffs or Class Counsel to seek enforcement of any provision of this Settlement Agreement including any deadlines will not be deemed a waiver of their right to enforce any other provision.

**[SIGNATURES ON FOLLOWING PAGE]**

THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE BOUND THERETO:

FOR CLASS COUNSEL

Date: 07|23|2013 _____          _S. Grygiel_ by BRS_
                                          STEPHEN G. GRYGIEL

Date: 07|23|2013 _____          _____
                                          BRIAN RUSSELL STRANGE

Date: 07|23|2013 _____          _J. Frickleton By BRS_
                                          JAMES FRICKLETON

NAMED PLAINTIFFS:

Date: _____                     _____
                                          William Gourley

Date: _____                     _____
                                          Jose M. ("Josh") Bermudez

Date: _____                     _____
                                          Nicholas Todd Heinrich

Date: _____                     _____
                                          Lynn Krause

FOR DEFENDANT

Date: _____                     _____
                                          Mario Diez
                                          Chief Executive Officer
                                          On behalf of
                                          POINT ROLL, INC.

FOR SETTLEMENT PURPOSES ONLY
FRE 408

DRAFT 7/18/13

THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE
FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE BOUND
THERETO:

FOR CLASS COUNSEL

Date: _____

STEPHEN G. GRYGIEL

Date: _____

BRIAN RUSSELL STRANGE

Date: _____

JAMES FRICKLETON

NAMED PLAINTIFFS:

Date: 07/19/13

William Gourley

Date: _____

Jose M. ("Josh") Bermudez

Date: _____

Nicholas Todd Heinrich

Date: _____

Lynn Krause

FOR DEFENDANT

Date: _____

Mario Diez
Chief Executive Officer
On behalf of
POINT ROLL, INC.

Deleted: ¶
Date: ¶
        · · · · · Lourdes Villegas¶
Date: ¶
    · · · · · Zetha Nobles¶

17

[SIGNATURES ON FOLLOWING PAGE]

**THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE BOUND THERETO:**

FOR CLASS COUNSEL

Date: _____

_____
STEPHEN G. GRYGIEL

Date: _____

_____
BRIAN RUSSELL STRANGE

Date: _____

_____
JAMES FRICKLETON

NAMED PLAINTIFFS:

Date: _____

_____
William Gourley

Date: 07 / 21 / 2013

_____
Jose M. ("Josh") Bermudez

Date: _____

_____
Nicholas Todd Heinrich

Date: _____

_____
Lynn Krause

FOR DEFENDANT

Date: _____

_____
Mario Diez
Chief Executive Officer
On behalf of
POINT ROLL, INC.

FOR SETTLEMENT PURPOSES ONLY                                    DRAFT
FRE 408

THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND
FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE B(
THERETO:

FOR CLASS COUNSEL

Date: _____

_____
STEPHEN G. GRYGIEL

Date: _____

_____
BRIAN RUSSELL STRANGE

Date: _____

_____
JAMES FRICKLETON

NAMED PLAINTIFFS:

Date: _____

_____
William Gourley

Date: _____

_____
Jose M. ("Josh") Bermudez

Date: 7-22-13

_____
Nicholas Todd Henrich

Date: _____

_____
Lynn Krause

FOR DEFENDANT

Date: _____

_____
Mario Diez
Chief Executive Officer
On behalf of

**THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE BOUND THERETO:**

FOR CLASS COUNSEL

Date: _____          _____
                                 STEPHEN G. GRYGIEL

Date: _____          _____
                                 BRIAN RUSSELL STRANGE

Date: _____          _____
                                 JAMES FRICKLETON

NAMED PLAINTIFFS:

Date: _____          _____
                                 William Gourley

Date: _____          _____
                                 Jose M. ("Josh") Bermudez

Date: _____          _____
                                 Nicholas Todd Heinrich

Date: 07/23/2013 _____        *L. Krause* by BRS with consent
                                 Lynn Krause

FOR DEFENDANT

Date: _____          _____
                                 Mario Diez
                                 Chief Executive Officer
                                 On behalf of
                                 POINT ROLL, INC.

# EXHIBIT B

## IMPORTANT: LEGAL NOTICE

THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT WITH POINT ROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.**
PLEASE READ IT CAREFULLY.

This summary notice informs you about the settlement of *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point Roll, Inc. ("PointRoll") Plaintiffs allege that PointRoll set cookies on Plaintiffs' and Plaintiff Class Members' Safari Browsers in conflict with the default cookie settings of such browsers in violation of federal statutes, namely the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, *et seq.*; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing and has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation. Under the settlement, PointRoll has agreed to take steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers (other than "opt-out" cookies). PointRoll has also agreed to maintain its current "Remove All Cookies" feature for two (2) years and to other injunctive and prospective relief detailed more fully in the Settlement Agreement. If you are a person in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, then you are a Settlement Class Member, and the proposed settlement could affect your legal rights.

PointRoll has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not have the right to exclude yourself from the Settlement. You will be bound by the settlement and will release any and all claims that you may have against PointRoll and related parties about the conduct at issue in this lawsuit. You have the right to object to this settlement and/or Class Counsel's application for $115,000 in attorneys' fees and costs, and $500 incentive awards for each of the four (4) Class Representatives ($2,000 total), or to indicate your intent to appear at the final fairness hearing. To do so, you must follow the instructions in the Notice described below. The deadline to file a notice of appearance and/or any objections is _____.
The Court will hold a final fairness hearing to decide whether to approve the proposed settlement on _____, at _____, at the U.S. District Court located at 844 North King Street, Wilmington, Delaware 19801-3570. This date is subject to continuance by the Court.

This is only a summary notice of the settlement. Additional information regarding the allegations and claims asserted in this case, this settlement, your rights as a class member, and Class Counsel's application for an award of attorneys' fees and costs and incentive awards for each Representative Plaintiff, is available at www._____ or from Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, (310) 207-5055, lacounsel@earthlink.net; Stephen G. Grygiel, Keefe Bartels, LLC, 170 Monmouth St., Red Bank, NJ 07701, (732) 224-9400, sgrygiel@keefebartels.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Rd., Ste. 200, Leawood, KS 66211, (913) 266-2300, jimf@bflawfirm.com.

**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS.**

1

# EXHIBIT C

## NOTICE OF CLASS ACTION SETTLEMENT

*In re Google Inc. Cookie Placement Consumer Privacy Litigation, 12-MD-2358 (SLR)*

*United States District Court, District of Delaware*

IMPORTANT:

**THIS NOTICE IS BEING PROVIDED BY COURT ORDER. PLEASE READ THIS ENTIRE NOTICE CAREFULLY. A SETTLEMENTREACHED WITH DEFENDANT, POINT ROLL, INC., IN PENDING CLASS ACTION LITIGATION MAY AFFECT YOUR RIGHTS.**

This Notice answers the following questions:

1. Why should I read this Notice?

2. What is the lawsuit about?

3. Who are the members of the Settlement Class?

4. What are the terms of the proposed settlement?

5. What are the important dates?

6. Who represents the Settlement Class and what are the associated attorneys' fees and expenses?

7. What are the reasons for the settlement?

8. What claims are being released?

9. Can I exclude myself from the settlement and release?

10. What is the settlement approval procedure and how can I make my views known?

11. Where can I get additional information?


## 1.    WHY SHOULD I READ THIS NOTICE?

Your rights may be affected by a class action lawsuit filed by the plaintiffs in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court for the District of Delaware, Case No. 12-MD-2358 (SLR). The purpose of this Notice is to provide important information to persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by Point Roll, Inc. ("PointRoll" or "Defendant") and, as a result of which, PointRoll set cookies, that: (1) a settlement of the Class Action (the "Settlement") with PointRoll – but no other defendants - has been preliminarily approved by the court in Delaware; and (2) a hearing has been scheduled at _____ on _____ in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware, located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568, to consider the fairness, adequacy, and reasonableness of the Settlement and Class Counsel's request for attorneys' fees and expenses and incentive awards for the Representative Plaintiffs.

This settlement, if finally approved at the fairness hearing, will resolve the litigation with respect to Defendant PointRoll only, subject to any appeals. The litigation will continue with respect to the Non-Settling Defendants.

## 2.    WHAT IS THE LAWSUIT ABOUT?

Named Plaintiffs in the Consolidated Amended Complaint and numerous other individuals filed complaints in various federal courts around the country in 2012. These actions were centralized and transferred to the United States District Court for the District of Delaware for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") against PointRoll and other parties ("Non-Settling Defendants"). Among other allegations, Plaintiffs allege in the Complaint, on behalf of a nationwide class of consumers, and continue to believe, that Defendant set cookies on Plaintiffs' Safari Browsers in conflict with the default cookie settings of such browsers in violation of the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, *et seq.*; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Plaintiffs allege that PointRoll deployed third-party tracking cookies when Plaintiffs and Class Members visited a website containing an advertisement placed by PointRoll by circumventing Plaintiffs' and Class Members' Safari Browser settings that blocked such cookies. Plaintiffs allege Defendants used those cookies to knowingly intercept and gain access to Plaintiffs' and Class Members' Internet communications and activity in violation of federal statutes.

PointRoll denies all allegations of wrongdoing but has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation relating to what PointRoll believes were permissible activities concerning advertising effectiveness and frequency capping cookies, in an advertising campaign that generated little revenue for PointRoll and no profits, and that were deployed for only a two-month period between December 13, 2011 and February 15, 2012. PointRoll filed a motion to dismiss all the claims against it on January 22, 2013.

Counsel for the Plaintiffs believe Plaintiffs have a strong case on the merits and that a class will be certified for litigation purposes. Plaintiffs are prepared to seek class certification and present evidence that PointRoll engaged in improper conduct, and that the Settlement Class was harmed as a result. PointRoll is likewise prepared to mount a vigorous defense on numerous important questions, including whether the claims are legally viable; whether the case is properly subject to class certification for litigation purposes; and whether the Plaintiffs or members of the Settlement Class suffered any harm even assuming the truth of the allegations as pled.

The Settlement was reached only after many detailed arms-length negotiations conducted in good faith. On _____, the Court granted preliminary approval of the settlement, certified the Settlement Class for the purposes of settlement only, appointed Plaintiffs William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs"), as representatives of the Settlement Class and Strange & Carpenter, Keefe Bartels, LLC, and Bartimus, Frickleton, Robertson & Gorny, P.C., as Settlement Class Counsel, and ordered that this Notice be disseminated.

THE COURT HAS NOT RULED ON THE CLAIMS OR DEFENSES OF THE PARTIES, AND THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT REGARDING THE MERITS OR LACK THEREOF OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY PLAINTIFFS OR DEFENDANT.

## 3.    WHO ARE THE MEMBERS OF THE SETTLEMENT CLASS?

The Settlement Class consists of all persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, and includes all persons described in Paragraphs 191 and 192 of the Consolidated Complaint filed December 19, 2012.

Paragraphs 191 and 192 of the Consolidated Complaint read as follows:

      191.    This is a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class of all persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which doubleclick.net (Google's advertising serving service), PointRoll, Vibrant Media, Media Innovation Group, or WPP cookies were deployed as part of a scheme to circumvent the users' browsers' settings to block such cookies and which were thereby used to enable tracking of the class members Internet communications without consent. The Class Period runs from the date Defendants began implementing these circumvention practices until the present (the "Class Period").

      192.    Excluded from the Class are Google, PointRoll, Vibrant, Media, WPP, and their officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case and their immediate families.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOU WILL BE BOUND BY THIS SETTLEMENT.  YOU MAY, BUT ARE NOT REQUIRED TO, APPEAR IN PERSON AT THE SETTLEMENT FAIRNESS HEARING AND/OR SUBMIT COMMENTS REGARDING THE FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT.

IF THE SETTLEMENT IS FINALLY APPROVED BY THE COURT, THE JUDGMENT WILL BIND ALL PERSONS IN THE SETTLEMENT CLASS, AND THEIR CLAIMS AGAINST POINTROLL AND POINTROLL RELATED PARTIES SHALL FOREVER BE RELEASED AND DISMISSED.

## 4.    WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In exchange for the release of claims of the Settlement Class Members, the Settlement Agreement provides for substantial injunctive and prospective relief for Settlement Class Members, including PointRoll taking steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers[1] and PointRoll's maintenance in substance of recent changes to its cookie practices and privacy policy.

PointRoll will carry out its steps to expire or delete of all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers through an expiration code designed to expire the cookies and through ordinary operation of the user's browser will result in the user's browser deleting existing PointRoll cookies

---

[1] This will not apply to PointRoll "opt-out" cookies, which are cookies users can choose to accept that allow them to "opt-out" of PointRoll's third-party cookies themselves.  Therefore, those users would not want the "opt-out" cookies to be expired or deleted.

when a user directs his or her Safari Browser to a webpage containing a PointRoll advertisement. This expiration code will be operational on PointRoll's servers for a period of twelve (12) weeks following entry of the Final Approval Order by this Court. The parties agree that this action by PointRoll is a practical, reasonable, and effective means of removing the cookies from Safari Browsers.

In addition, the Settlement Agreement calls for prospective relief limiting PointRoll's future cookie setting. Plaintiffs and Class Counsel have agreed not to object to, and release all future claims predicated upon, any prospective efforts by PointRoll to set new third-party cookies on any Safari Browser to the extent, but only to the extent, that PointRoll's setting of any such new cookies is done in a manner that complies with such browser's cookie settings. PointRoll agrees to maintain for two (2) years following entry of the Final Approval Order, with substantially similar functionality, the "Remove All Cookies" feature that Defendant currently maintains and displays on its home page and on its privacy notice.

PointRoll has also agreed to make available to its advertiser clients the option to include within their PointRoll advertisements an "AdChoices Icon,"[2] or an icon of a similar nature and purpose, for two (2) years following entry of the Final Approval Order.

PointRoll also agrees to maintain the material privacy protections set out in its current privacy notice (reflecting revisions as of December 2012, after these actions were filed) substantially in their current form. The parties agreed that PointRoll will amend its website privacy notice to state expressly and conspicuously that: "PointRoll will not set cookies on user devices in contravention of a user's browser's cookie settings." PointRoll agrees to maintain this amendment to its privacy notice for two (2) years following entry of the Final Approval Order, subject to exceptions if law, precedent or regulatory guidance changes. PointRoll also agrees to remain a member of the Network Advertising Initiative ("NAI") or any successor organization to NAI for two (2) years following the entry of the Final Approval Order.

For two (2) years following entry of the Final Approval Order, PointRoll will include within its website privacy notice language that generally describes the categories of cookies that PointRoll uses, including first-party and third-party cookies, flash cookies, and web beacons; cookie durations; and cookie purposes (*e.g.*, frequency capping, sequencing, effectiveness metrics, and behavioral advertising). For two (2) years following entry of the Final Approval Order, PointRoll further agrees that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative, and PointRoll will not, through any contract with any advertisement publisher, negligently, knowingly, or intentionally violate its online privacy notice or agree to violate such policy.

Importantly, PointRoll has also agreed to provide Plaintiffs and Class Counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses, and termination of the Safari Cookie Technique, including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for

---

[2] Defined in the Settlement Agreement at paragraph 1.4 as "the icon displayed in online advertisements signifying the advertiser's adherence to the Self-Regulatory Program for Online Behavioral Advertising, managed at the time of the Agreement by Evidon, Inc. and the Digital Advertising Alliance ('DAA'). The Self-Regulatory Program for Online Behavioral Advertising currently permits online consumers to (i) opt-out of browser-enabled, interest-based advertising; (ii) ascertain which companies have enabled customized advertisements for the consumer's browser; (iii) determine which opt-out settings the consumer has already created."

which the Safari Cookie Technique was used. Plaintiffs believe these interviews will be very helpful for continued pursuit of this case against the Non-Settling Defendants.

The above measures will supplement the proactive steps PointRoll has taken since February 2012 to improve its privacy posture. Since the underlying complaints in this consolidated action were filed, PointRoll has taken voluntary compliance steps, explained on its website, to move toward implementing industry best practices. For instance, PointRoll has enhanced its privacy policy and practices. PointRoll has applied for and been accepted into the Network Advertising Initiative ("NAI"). And PointRoll has adopted and implemented not only the NAI cookie opt-out procedures, but has also designed and implemented easy-to-use buttons that allow consumers to delete PointRoll cookies while preserving any other cookies.

The parties have also agreed to publish a brief joint written public statement to be published for three (3) months on PointRoll's website and in the notice described below. PointRoll will state that its use of the Safari Cookie Technique for a period of two months was not consistent with best industry practices, and that PointRoll is pleased to take a leadership role by deploying new practices and commitments as stated in its revised privacy notice. Plaintiffs and Class Counsel will state that PointRoll's new privacy practices and commitments demonstrate online responsibility and reflect an important step towards enhanced online privacy practices.

## 5.    WHAT ARE THE IMPORTANT DATES?
Objection Deadline: _____

Fairness Hearing : _____, at _____

## 6.    WHO REPRESENTS THE SETTLEMENT CLASS AND WHAT ARE THE ASSOCIATED ATTORNEYS' FEES AND EXPENSES?

The Court has appointed William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause as the Settlement Class Representatives and Strange & Carpenter, Keefe Bartels, LLC, and Bartimus, Frickleton, Robertson & Gorny, P.C. as Class Counsel for the Settlement Class. Class Counsel have been prosecuting this litigation on a contingency fee basis (that is, without compensation) while advancing litigation expenses. In advance of the Fairness Hearing, Class Counsel will apply to the Court for attorneys' fees and litigation costs/expenses in the amount of up to $115,000 from PointRoll, which PointRoll has agreed not to oppose. Class Counsel will also apply to the Court for incentive awards for the Plaintiffs in the amount of $500 each, which PointRoll has also agreed not to oppose. All such reimbursements will be subject to approval by the Court, and Settlement Class Members are not personally responsible for any attorneys' fees, expenses, or incentive awards. Class counsel's attorney's fees and expenses are to be paid by PointRoll in an amount authorized by the Court. Settlement Class Members are not personally responsible for payment of any attorney's fees, unless they hire their own attorney to represent them in this case.

## 7.    WHAT ARE THE REASONS FOR THE SETTLEMENT?

Class Counsel have thoroughly investigated the facts and circumstances relevant to the claims at issue in the litigation. Class Counsel have also considered the expense and length of time necessary to prosecute the litigation through trial and any appeals, the uncertainties associated with the outcome of any litigation including this one, and the benefits provided by the proposed Settlement. Based upon their investigation and evaluation of the claims and defenses, Class Counsel have concluded that it is in the best interests of the Settlement Class to resolve the claims against PointRoll on the terms outlined herein, as reached after arms'-length negotiations.

## 8.    WHAT CLAIMS ARE BEING RELEASED?

If the Settlement Agreement is approved by the Court, each Settlement Class Member will release and dismiss PointRoll, and its past, present, and future parents, divisions, subsidiaries, partnerships, affiliates, and other related entities (whether or not they are wholly owned), together with the directors, officers, employees, agents, insurers, reinsurers and attorneys of any of them (but not including any of the other Defendants named in the Consolidated Complaint, or any of their past, present and future parents, divisions, subsidiaries, partnerships, affiliates and other related entities (whether or not wholly owned), together with their directors, officers, employees, agents, insurers, reinsurers and attorneys), from any and all potential or actual matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, which any Class Member has or might have, known or unknown, including Unknown Claims, defined below, of any kind whatsoever prior to the Effective Date and that Plaintiffs alleged or could have alleged in the Complaint against PointRoll or that otherwise are based on or relate to, wholly or partially, the facts and circumstances Plaintiffs alleged in the Complaint's claims against PointRoll.

Without limiting the generality of the foregoing description of Released Claims, the Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the facts, circumstances and import of Plaintiffs' Complaint's claims against PointRoll. However, the Class Members fully, finally, and forever settle and release any and all claims set forth in this Paragraph, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Members acknowledge that the inclusion of such "Unknown Claims" in the Agreement was separately bargained for and was a key element of the Agreement.

By the definition of Released Claims set forth above, the Class Members hereby intend expressly to waive the provisions, rights, and benefits of any state law or rule that seeks to or does preserve known or unknown claims that would otherwise be released by this Settlement Agreement, including California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and Class Members expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or of any other nation that is similar, comparable, or equivalent to California Civil Code § 1542.

## 9.    CAN I EXCLUDE MYSELF FROM THE SETTLEMENT AND RELEASE?

Because PointRoll has acted on grounds that apply generally to the Settlement Class, the Court has determined that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not

have the right to exclude yourself from the settlement. You will be bound by the settlement and will release any and all claims as set forth in Paragraph 8, above.

## 10. WHAT IS THE SETTLEMENT APPROVAL PROCEDURE AND HOW CAN I MAKE MY VIEWS KNOWN?

The Court has scheduled a hearing at _____ on _____ in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware, located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568.

At this hearing, the Court will consider, among other matters, whether the Settlement should be granted final approval as fair, adequate and reasonable, and in the best interests of Settlement Class Members as well as Class Counsel's application for attorneys' fees and expenses and incentive awards for the Representative Plaintiffs. Although you may attend the hearing in person or through your own attorney at your own expense, you are not required to do so. If you wish to comment in writing in support of or in opposition to any aspect of the proposed Settlement or to Class Counsel's request for attorneys' fees and expenses or incentive awards for the Representative Plaintiffs, you may do so by filing your written comments or objections with the Court and sending them by U.S. Mail or email (including ECF service) to (1) Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, lacounsel@earthlink.net; Stephen G. Grygiel, Keefe Bartels, LLC, 170 Monmouth St., Red Bank, NJ 07701, sgrygiel@keefbartels.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211, jimf@bflawfirm.com, and (2) Alan Charles Raul, Sidley Austin LLP, 1501 K Street, NW, Washington, D.C. 20005, Facsimile: (202) 736-8711, araul@sidley.com, postmarked, faxed or emailed (or served by ECF) on or before _____.
The Court, however, will not be able to give much consideration to general comments lacking detail. Thus, for example, a submission simply stating, "I object" or "I support the Settlement" will not be informative to the Court or the Parties. Your submission must also include your name and current address, a statement that you are a Settlement Class Member, and the case caption.

You or your attorney (at your own expense) may appear at the hearing in support of your comments, but you are not required to do so.

## 11. WHERE CAN I GET ADDITIONAL INFORMATION?

This notice only contains a summary of the proposed Settlement. You may appear in person during regular business hours at the Clerk's office of the United States District Court, District of Delaware, located at 844 North King St Unit 18, Wilmington, DE 19801-3570, and review online the entire Settlement Agreement, as well as the pleadings, records and other papers on file with the Court.

If you need further information, please contact Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, lacounsel@earthlink.net; Stephen G. Grygiel, Keefe Bartels, LLC, 170 Monmouth St., Red Bank, NJ 07701, sgrygiel@keefbartels.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211, jimf@bflawfirm.com

## OTHER THAN AS SET FORTH HEREIN, PLEASE DO NOT TELEPHONE OR ADDRESS INQUIRIES TO THE COURT.

# EXHIBIT D

# STRANGE & CARPENTER

12100 Wilshire Blvd., Suite 1900
Los Angeles, CA  90025
Tel: (310) 207-5055
Fax: (310) 826-3210
www.strangeandcarpenter.com

## FIRM RESUME

## FIRM RESUME

Strange & Carpenter has battled at the forefront of class actions and complex business disputes since the firm's establishment 23 years ago. Its members were educated at the nation's leading law schools before joining forces to provide the superior and responsive legal services that Strange & Carpenter is known for today.

The firm has been featured as one of the five most successful California small law firms as far back as 1994 by *California Law Business*. In just the last few years, Strange & Carpenter's settlements for class members in various cases have exceeded $100 million. In 2010, 2011, 2012, 2013, and 2014, partners Brian R. Strange and Gretchen Carpenter were named as Southern California Super Lawyers, an award given to only 5% of practicing lawyers in California. Strange & Carpenter has been appointed lead counsel and held numerous leadership positions in class actions and mass disaster litigations across the country, including noted cases such as the San Juan Dupont Plaza Hotel fire litigation and litigation arising out of the Iran-Contra scandal.

Strange & Carpenter has served at the forefront of several important class actions on internet privacy, including *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL No. 2258. (Mr. Strange was appointed to Plaintiffs' Steering Committee by the Honorable Anthony J. Battaglia. The case is pending in the Southern District of California.). The firm has authored the following recent published articles:

- Privacy: Is it legal "tracking" or an illegal wiretap? (*Advocate*, July 2012)
- Into the Breach - Plaintiffs have been increasingly successful in gaining injunctive relief for online security breaches (*Los Angeles Lawyer*, February 2012)
- Competition Law Damage Recovery Actions: A Status Report on Europe and the United Kingdom (*American Bar Association*, November 2012)

The following is a partial list of the class action settlements in which the firm has served as class counsel over the last several years:

- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline, et al.*, United States District Court for the District of Minnesota Case No. CV 04-3500 MJD/SRN (settled for $40 million);
- *MacGregor v. Schering-Plough Corporation*, Los Angeles Superior Court Case No. BC 24804 (settlement valued at $202.5 million);
- *Schwartz, et al. v. Citibank (South Dakota), N.A., et al.*, United States District Court for the Central District of California Case No. 00-00075 LGB (JWJx) (settled for $36 million);
- *Mayemura, et al. v. Chase Manhattan Bank*, United States District Court for the Central District of California Case No. 00-00753 LGB (JWJx) (settled for $22.5 million);
- *Blake H. Brown v. Fremont Compensation Insurance Company*, Los Angeles Superior Court Case No. BC 180443 (settled for $25 million);

- *Edelist v. First USA, N.A.*, Orange County Superior Court Case No. 02CC00294 (settled for $57 million);
- *Shea v. Household Bank (SB), National Association*, Orange County Superior Court Case No. 00CC12588 (settled for $34.9 million);
- *Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al.*, United States District Court for the District of New Jersey Case No. 07-05325 (JLL) (settled for $18 million);
- *Fiori, et al. v. Dell Inc.*, United States District Court for the Northern District of California Case No. C 09- 01518-JW (settled for $30 million); and
- *Simonet, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline, et al.*, United States District Court for the District of Puerto Rico Case No. 06-1230 (GAG) (settled for $28 million).

Strange & Carpenter is selective in the cases it chooses and monitors them to provide the highest quality work and immediate attention to the needs of clients and class members. The firm utilizes paralegals as well as computerized document control, which enable its lawyers effectively to manage large cases of national scope.

The following is a biographical sketch of the some of the members of Strange & Carpenter.

## Brian R. Strange

Brian R. Strange is one of the most experienced and respected class action, internet privacy, antitrust, and complex business trial lawyers in the country. Mr. Strange has taken a leadership role in numerous large and complex multidistrict litigations and class actions, and has achieved extraordinary results for clients and class members. For example, his trial victories include a $160 million judgment against the principals of an investment scam in a case tried in Los Angeles Superior Court in 1991; a $21 million punitive damage verdict against First State Insurance Company, reportedly one of the largest punitive damage verdicts in California in 1993; and the first punitive damage verdict in 17 years in a courtroom in Santa Barbara on behalf of a homeless family in 1993. Over the past 30 years participating in complex cases, Mr. Strange has been involved in noted mass disaster litigation such as the MGM Grand Hotel fire litigation; the "Crandall" gem case; the San Juan Dupont Plaza Hotel fire litigation in Puerto Rico; litigation arising out of the Iran-Contra scandal; and numerous national class actions. Since 2000, Mr. Strange has acted as lead counsel in several class action cases with settlements obtained in excess of $500 million, including settlements with the nation's largest corporations, and has successfully concluded settlements for class members in excess of $100 million in the last few years. Mr. Strange has been involved in cases at the forefront of Internet law in the last few years and has been lead counsel in numerous class actions related to credit cards and online issues, including against the nation's largest banks, telephone companies and pharmaceutical companies. Mr. Strange was designated as one of Southern California Super Lawyers in 2010, 2011, 2012, 2013, and 2014.

Mr. Strange is frequently called upon to address various legal, business and consumer organizations, and he has published widely on a range of legal issues. Mr. Strange has also been interviewed for stories relating to his cases by *The New York Times*, *The Los Angeles Times*, *The Washington Post*, *The National Law Journal*, *The Daily Journal*, and others.

Mr. Strange is an active member of the community, where he sits on the Board of Directors and the Executive Committee of Public Counsel, the nation's largest pro-bono law firm, and is the President of the Boys and Girls Club of Malibu. A noted adventurer, Mr. Strange was awarded an anniversary medal by the King of Nepal for his 2009 summit of Mount Everest. He is one of the select few who has summitted the highest peaks of all seven continents.

Representative Matters

- *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL No. 2258. Mr. Strange was appointed to Plaintiffs' Steering Committee by the Honorable Anthony J. Battaglia. The case is pending in the Southern District of California.
- *In Re Polyurethane Foam Antitrust Litigation*, MDL No. 2196. Mr. Strange was approved by Judge Jack Zouhary to serve on the Plaintiffs' Executive Committee in a multidistrict antitrust litigation involving allegations of price fixing in the sale of polyurethane foam. The case is pending in the Northern District of Ohio, and is considered one of the largest antitrust cases in the last decade.
- *In re Google, Inc. Cookie Placement Consumer Privacy Litigation*, MDL No. 2358. Mr. Strange was appointed as Interim Co-Lead Counsel by the Honorable Sue L. Robinson in a privacy class action on behalf of users of Apple or Microsoft web browsers who visited websites that deployed third-party tracking cookies from Google, Inc. The case is pending in the District of Delaware.
- *In re Automotive Parts Cases Antitrust Litigation*, MDL No. 2311. Mr. Strange has a leadership role in multidistrict antitrust litigation involving allegations of price fixing in the sale of various auto parts over a 10-year period. The case is pending in the Eastern District of Michigan; it follows on the largest antitrust investigation ever conducted by the Antitrust Division of the U.S. Department of Justice, which is working in conjunction with competition authorities around the world to address widespread cartel behavior in the auto industry.
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720. Mr. Strange represents and advises clients seeking non-class recoveries from payment card networks and their member banks based on allegations of anticompetitive conduct in the payment card industry.
- *Kickflip v. Facebook*. Mr. Strange represents a virtual-currency service provider in case involving allegations of monopolization and tying against Facebook.
- *Toyota Motor Cases*, J.C.C.P. 4621. Mr. Strange was appointed Co-Lead Class Counsel by Los Angeles Superior Court Judge Anthony Mohr in this California state coordinated proceeding involving allegations of unintended acceleration in Toyota vehicles.

- *In Re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, MDL No. 1967. Mr. Strange was appointed to the Plaintiffs' Steering Committee by Judge Ortrie D. Smith in this multidistrict litigation involving polycarbonate plastic baby bottles and children's training or spill-resistant cups containing the chemical Bisphenol-A ("BPA"). The case was venued in the Western District of Missouri.
- *In Re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litigation*, MDL No. 2116. Mr. Strange was selected by Judge Carl Barbier as a member of Plaintiffs' Executive Committee in this case involving the operation of the Apple iPhone on AT&T 3G and 3GS networks. The case was venued in the Eastern District of Louisiana.
- *Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al.*, Case No. 07-05325. Mr. Strange served as lead Class Counsel in a nationwide settlement against AT&T Mobility LLC regarding flat-rate early termination fees for mobile phones. The case was venued in the District of New Jersey.
- *Simonet, et al. v. GlaxoSmithKline, et al.*, Case No. 06-1230. Mr. Strange served as lead counsel in this case involving the anti-depressant drug Paxil. The case was venued in the District of Puerto Rico.

Representative Publications

- Privacy: Is it legal "tracking" or an illegal wiretap? (*Advocate,* July 2012).
- Into the Breach - Plaintiffs have been increasingly successful in gaining injunctive relief for online security breaches (*Los Angeles Lawyer,* February 2012).
- Competition Law Damage Recovery Actions: A Status Report on Europe and the United Kingdom (*American Bar Association*, published November 2012).
- Municipalities: Welcome to the Antitrust Restraints of the Free Market (*Century City Bar Journal*, Spring, 1982).

Representative Speaking Engagements

Mr. Strange has lectured on class actions before various organizations, including the California State Bar, the Practicing Law Institute, and various consumer attorneys organizations. In March 2012, Mr. Strange was a speaker at the International Seminar on Consumer Litigation in Japan, the United States and China, in Tokyo. That seminar was held jointly by the Japan Federation of Bar Associations (the JFBA) and the American Bar Association (the ABA) and involved legal experts from these three countries focusing on recent trends and issues in class-action consumer lawsuits and cross-border consumer litigation in their respective countries.

Bar Admissions

Mr. Strange is admitted to practice before all courts in the State of California, the United States Supreme Court, all federal district courts in California, and the United States Courts of Appeals for the First, Third, Fifth, Eighth, Ninth, and Tenth Circuits, as well as the United States Court of Federal Claims.

Education

Mr. Strange received his Bachelor of Arts in Economics from the University of California at Los Angeles and his law degree from the University of California, Hastings College of Law.

## Gretchen Carpenter

Gretchen Carpenter is an experienced class action litigator, having successfully analyzed, drafted and argued numerous class certification motions. Ms. Carpenter has extensive knowledge of Rule 23 and state class action procedures, and her superior drafting and analytical skills have brought her to the forefront in numerous complex class certification issues, including certifying a nationwide class under California law in Talwar, et al. v. Creative Labs, Inc., United States District Court for the Central District of California Case No. CV 05-3375 FMC (AJWx). Ms. Carpenter also has extensive experience with class certification in the context of the firm's many settlements, worth hundreds of millions of dollars.

Ms. Carpenter has been involved in litigating a wide variety of complex class actions, including cases against hospitals relating to their billing practices for uninsured patients, cases against banks relating to credit card and mortgage practices, cases against cellular telephone companies relating to early termination fees, defective product cases for a wide range of products, deceptive advertising cases, class actions relating to pharmaceuticals and other harmful products, and an employment meal break class action. She has successfully analyzed, drafted and argued numerous complex motions and appeals, including recently obtaining a published Ninth Circuit decision in Lucia v. Wells Fargo Bank, N.A., --- F.3d ----, 2013 WL 4017279 (9th Cir. Aug. 8, 2013), upholding claims against a mortgage servicer relating to the Home Affordable Modification Act ("HAMP") and obtaining a published California Court of Appeal decision in Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373 (2010), upholding claims brought under California's consumer protection statutes relating to a hospital's unfair and deceptive billing practices with respect to its uninsured patients.

As a complement to her class action experience, Ms. Carpenter also has extensive knowledge and experience concerning arbitration issues and class action bans, and has litigated numerous arbitration motions, including being part of the team that obtained the seminal California Supreme Court decision in Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005), which held that class action bans in arbitration clauses were unconscionable and unenforceable under California law.

Ms. Carpenter has lectured on both class action and arbitration-related topics before several CLE and other organizations. Ms. Carpenter was chosen as one of Southern California's Super Lawyers in 2010, 2011, 2012, 2013, and 2014.

Representative Matters

- *Lucia v. Wells Fargo Bank, N.A.*, --- F.3d ----, 2013 WL 4017279 (9th Cir. Aug. 8, 2013)
- *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76 (2005) (California Supreme Court)
- *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 108 Cal. Rptr. 3d 669 (2010) (California Court of Appeal)
- *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078 (9th Cir. 2008)

Representative Speaking Engagements

- Arbitration and Class Action Bans, The Straus Inst. For Dispute Resolution.
- Class Action Filings in Federal Court After *Shady Grove*, 2011.
- The Long Shadow of *Shady Grove*, Bridgeport Class Action Conference, 2011.
- Making the Argument for and Against Class Certification, Bridgeport Class Action Conference, 2012

Bar Admissions

- California, 1995
- Central District of California, 1995
- Northern District of California, 1996
- Eastern District of California, 1996
- Western District of Wisconsin, 2007
- U.S. Court of Appeals 3rd Circuit, 2004
- U.S. Court of Appeals 5th Circuit, 2004
- U.S. Court of Appeals 8th Circuit, 2000
- U.S. Court of Appeals 9th Circuit, 1995

Education

- UCLA School of Law, Los Angeles, California
  J.D. - 1995
  Law Journal: Women's Law Journal, Editor, 1993 - 1995

- University of California at San Diego
  Bachelor of Arts (Cum Laude)
  Honors: Phi Beta Kappa
  Major: Political Science
  Major: Theatre

### Keith L. Butler, Ph.D.

Keith L. Butler is the head of the firm's Antitrust Practice. An experienced antitrust lawyer and complex commercial litigator, he has been representing a wide variety of clients, from Fortune 500 companies to small businesses and individuals, for more than a decade.

Mr. Butler has maintained a full service antitrust practice that has included civil and criminal litigation (including extensive experience in cartel matters), merger clearance, government investigations, and counseling. Notably, Mr. Butler played a leading role in obtaining FTC clearance for Grifols' $4 billion acquisition of Talecris, and he was a core member of Oracle's successful antitrust trial team in the government's landmark challenge to Oracle's hostile takeover of PeopleSoft. Mr. Butler also has experience in EU competition law, having handled numerous matters over several years. Mr. Butler is currently involved at leadership levels in several of the largest antitrust cases in the country, and represents and advises corporate clients seeking non-class recoveries in several multidistrict antitrust litigations. Other areas of complex commercial litigation Mr. Butler handles include unfair competition, securities, and common law business disputes; he has had a number of successes in appellate matters.

Mr. Butler's corporate clients span a wide range of industries, including biotechnology and pharmaceuticals, health care, information technology and the Internet, financial services, insurance and reinsurance, entertainment, textiles, lodging and gaming, real estate, utilities, and waste services.

Mr. Butler began his legal career at Latham & Watkins, and, before joining Strange & Carpenter, practiced most recently at Proskauer Rose. Prior to practicing law, Mr. Butler was a professor of philosophy at several colleges and universities, including Western Washington University and the College of William and Mary.

Representative Matters

- *In Re Polyurethane Foam Antitrust Litigation,* MDL No. 2196. Mr. Butler has a leadership role in a multidistrict antitrust litigation involving allegations of price fixing in the sale of polyurethane foam. The case is pending in the Northern District of Ohio, and is considered one of the largest antitrust cases in the last decade.
- *In re Automotive Parts Cases Antitrust Litigation*, MDL No. 2311. Mr. Butler has a leadership role in a multidistrict antitrust litigation involving allegations of price fixing in the sale of various auto parts over a 10-year period. The case is pending in the Eastern District of Michigan; it follows on the largest antitrust investigation ever conducted by the Antitrust Division of the U.S. Department of Justice, which is working in conjunction with competition authorities around the world to address widespread cartel behavior in the auto industry.
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MDL No. 1720. Mr. Butler represents and advises clients seeking non-class recoveries from payment card networks and their member banks based on allegations of anticompetitive conduct in the payment card industry.

- *Kickflip v. Facebook.* Mr. Butler represents a virtual-currency service provider in case involving allegations of monopolization and tying against Facebook.
- *United States v. Oracle.* Mr. Butler was a member of the trial team that represented Oracle in a government antitrust challenge to its hostile take-over of PeopleSoft.
- *FTC v. Grifols.* Mr. Butler represented a bio-pharmaceutical client in a Federal Trade Commission challenge to its acquisition of a competitor.
- *United States v. Ferguson et al.* Mr. Butler was a member of the trial team that represented one of five financial industry executives in a two-month federal jury trial for securities fraud and related offenses.
- *United States v. Goyal.* Mr. Butler represented six third-party trial witnesses in a government prosecution against a software company CFO for securities fraud and related offenses.
- *Ambac Bond Insurance Cases.* Mr. Butler represented a financial industry client (MBIA) in coordinated fraud, contract, and antitrust actions in California state court.
- *In re Municipal Derivatives Litigation.* Mr. Butler represented a financial industry client (MBIA) in federal bid-rigging multi-district litigation.
- Gilead Sciences. Mr. Butler represented a pharmaceutical client in a commercial arbitration over a patent license.
- Sanofi-Pasteur. Mr. Butler represented a pharmaceutical client in a bundled pricing antitrust case brought by direct purchasers.
- Promise Healthcare. Mr. Butler represented a healthcare client in a successful defense against claims for damages under the Medicare Second Payer Statute brought by Erin Brockovich.
- Waste Services, Inc. Mr. Butler was trial counsel to a waste collection client in a federal antitrust action for attempted monopolization.
- Purdue Pharma. Mr. Butler was counsel to a pharmaceutical client in a price-fixing action. (Case against client dismissed on motion.) Responsibilities: Strategy; drafting of successful motion papers.
- CFIT. Mr. Butler represented a domain name vender raising an antitrust challenge to Verisign's.com agreement with ICANN.
- Genentech. Mr. Butler represented a pharmaceutical client in a patent-antitrust dispute.
- *In re Polyester Staple Antitrust Litigation.* Mr. Butler represented polyester staple industry clients in a large number of federal and state price-fixing class actions.

Representative Publications

- American Bar Association, Section of Antitrust Law, Cartel and Criminal Practice Committee Newsletter, Competition Law Damage Recovery Actions: A Status Report on Europe and the United Kingdom, 2012 (with Brian Strange and John Ceglia).
- Competition Policy International, Recovery in the United States for Price-Fixing Abroad: The Future of FTAIA Litigation, 2011.
- Global Competition Review - Antitrust Review of the Americas, Single-Firm Conduct Enforcement in the US - The Year in Review, 2011.
- Law360 - Antitrust and the Digital Economy, 2011.

- American Bar Association, Section of Antitrust Law - Interlocking Directorates: Handbook on Section 8 of the Clayton Act, 2011.
- VC Experts, Antitrust Division and Federal Trade Commission Announce Revised Horizontal Merger Guidelines, 2010.
- Antitrust Law Developments VI, Editor: Relevant Markets Chapter, 2007 (editor)
- Author of numerous Proskauer antitrust client alerts, 2006-2012.
- Chinese Business Law Journal, Conducting an Internal Investigation in China, 2010.
- Chinese Business Law Journal, Managing a Corruption Investigation in China, 2010.
- Washington Law Review, Long Live the Dead Hand, 2001.
- Author of more than 20 journal articles and a book addressing various topics in philosophy, cognitive science, and experimental psychology.

Bar Admissions

- California
- Ninth Circuit Court of Appeals
- Northern District of California
- Eastern District of California
- Central District of California
- Southern District of California

Education

- University of Washington School of Law Seattle, WA
  J.D. with honors May 2001
  Journal: Washington Law Review, Executive Articles Editor
  Externship: Chief Judge John C. Coughenour, United States District Court for the Western District of Washington

- University of Wisconsin Madison, WI
  Ph.D., Philosophy (minor in Cognitive Psychology) May 1991
  M.A., Philosophy May 1987
  B.A., Philosophy May 1984

- University of Warwick Coventry, UK
  Visiting Scholar, Department of Philosophy 1990-1991

**David Holop**

David Holop is an associate of Strange & Carpenter. Mr. Holop is experienced in privacy law, antitrust, unfair competition, and class action claims. He has extensive involvement in several of the largest multidistrict antitrust matters currently pending, as well as several of the largest multidistrict privacy matters. He is well versed in a variety of complex issues at the intersection of privacy and Internet technology.

Representative Matters

- *In Re Polyurethane Foam Antitrust Litigation,* MDL No. 2196.  Mr. Holop is involved in a multidistrict antitrust litigation involving allegations of price fixing in the sale of polyurethane foam.  The case is pending in the Northern District of Ohio, and is considered one of the largest antitrust cases in the last decade.
- *In re Automotive Parts Cases Antitrust Litigation*, MDL No. 2311.  Mr. Holop is involved in a multidistrict antitrust litigation involving allegations of price fixing in the sale of various auto parts over a 10-year period.  The case is pending in the Eastern District of Michigan; it follows on the largest antitrust investigation ever conducted by the Antitrust Division of the U.S. Department of Justice, which is working in conjunction with competition authorities around the world to address widespread cartel behavior in the auto industry.
- *In re Google, Inc. Cookie Placement Consumer Privacy Litigation*, MDL No. 2358. Mr. Holop is involved in a privacy class action on behalf of users of Apple or Microsoft web browsers who visited websites that deployed third-party tracking cookies from Google, Inc.  The case is pending in the District of Delaware.

Representative Publications

- "Privacy: Is it Legal 'Tracking' or An Illegal Wiretap? Sorting Out Whether the Federal Wiretap Act Applies Can be a Highly Technical Endeavor," (*Advocate*, July 2012).
- "Into the Breach: Plaintiffs have been Increasingly Successful in Gaining Injunctive Relief for Online Security Breaches" (*Los Angeles Lawyer*, February 2012).

Bar Admissions

- California
- Ninth Circuit Court of Appeals
- Northern District of California
- Eastern District of California
- Central District of California
- Southern District of California

Education

Mr. Holop received his law degree from UCLA in 2011.  While at UCLA, Mr. Holop was the Managing Editor of the UCLA Law Review, Managing Editor for the UCLA Journal of International Law and Foreign Affairs, a volunteer for the El Centro Legal Mobile Clinic and LAFLA Landlord-Tenant Clinic and a mentor for the Law Fellows Outreach Program. Mr. Holop received his Bachelor of Science in Economics, *cum laude*, from the University of Pennsylvania, Wharton School.

**John T. Ceglia**

John T. Ceglia is an associate of Strange & Carpenter. He is involved in a number of complex internet privacy and antitrust matters.

Representative Matters

- *In Re Polyurethane Foam Antitrust Litigation,* MDL No. 2196. Mr. Ceglia is involved in a multidistrict antitrust litigation involving allegations of price fixing in the sale of polyurethane foam. The case is pending in the Northern District of Ohio, and is considered one of the largest antitrust cases in the last decade.
- *In re Automotive Parts Cases Antitrust Litigation,* MDL No. 2311. Mr. Ceglia is involved in a multidistrict antitrust litigation involving allegations of price fixing in the sale of various auto parts over a 10-year period. The case is pending in the Eastern District of Michigan; it follows on the largest antitrust investigation ever conducted by the Antitrust Division of the U.S. Department of Justice, which is working in conjunction with competition authorities around the world to address widespread cartel behavior in the auto industry.
- *Kickflip v. Facebook.* Mr. Ceglia represents a virtual-currency service provider in a case involving allegations of monopolization and tying against Facebook.

Representative Publications

- American Bar Association, Section of Antitrust Law, Cartel and Criminal Practice Committee Newsletter, Competition Law Damage Recovery Actions: A Status Report on Europe and the United Kingdom, 2012 (with Brian Strange and Keith Butler).
- *The Disappearing Schoolhouse Gate: Applying* Tinker *in the Internet Age*, 39 Pepp. L. Rev. 939 (2012).

Bar Admissions

- California
- Northern District of California

Education

Mr. Ceglia graduated *cum laude* from Pepperdine University School of Law in 2012 and was named to the Order of the Coif. While at Pepperdine, Mr. Ceglia was the Business & Production Editor of the *Pepperdine Law Review*. His honors included: Dean's Scholar (Merit-Based Scholarship), Dean's List, Martha Delman & Milton Arthur Krug Endowed Scholarship, Barbara A. Shacochis Endowed Scholarship, and the Mark & Michelle Hiepler Endowed Scholarship. He also obtained CALI Awards for A+ in Legal Research & Writing, Contracts, Advanced Criminal Procedure, and Remedies. Mr. Ceglia's Moot Court accomplishments included Finalist Team Member, Chicago Bar Association Moot Court Competition, First Place Respondent Brief Award, National Moot Court Regional Competition, Chairperson and Problem Author, National Entertainment Law Moot Court

Competition, Member, Moot Court Board, Member, Inter-School Moot Court Team, Alumni Coach, Pepperdine University, and the Inter-School Moot Court Team.

Mr. Ceglia received his Bachelor of Arts in Political Science & Sociology from Pepperdine University. Mr. Ceglia was on the Dean's List and a member of the Phi Eta Sigma Honors Society. Mr. Ceglia studied abroad in Florence, Italy and in London, United Kingdom.

## Pablo Orozco

Pablo Orozco is an associate of Strange & Carpenter. Mr. Orozco is involved in a number of complex class action cases.

Representative Publications

* *Hope VI Housing Policy & Gang-Related Crime*, 30 Chicano-Latino L. Rev. 217 (2011)

Bar Admissions

* California
* Central District of California
* Eastern District of California
* Northern District of California
* Southern District of California
* Ninth Circuit Court of Appeals

Education

Mr. Orozco graduated from University of California Los Angeles School of Law in 2010. While at UCLA School of Law, Mr. Orozco was the Managing Editor of the Chicano-Latino Law Review and served as Chief Comments Editor for the Journal of International Law and Foreign Affairs.

Mr. Orozco received his Master of Arts in Social Sciences, Political Theory from the University of Chicago, and received his Bachelor of Arts in Political Science from Reed College.

## Jill Hood

Jill Hood is a paralegal of Strange & Carpenter. She received her Associate of Science and Bachelor of Science degrees in Paralegal from the University of La Verne, where she served as Secretary to the Paralegal Association. Ms. Hood has been with Strange & Carpenter since 1997 and has many years of experience in complex litigation matters. Ms. Hood has extensive experience involving preliminary and final approval of class action settlements, including claim administration and distribution processes. Ms. Hood has

extensive experience handling settlement classes consisting of multi-millions of members. Ms. Hood also has extensive experience in investigating claims and corporate wrongdoing.

## Carlo Aguilar

Carlo Aguilar is a paralegal of Strange & Carpenter. He received his Bachelor of Arts degree in Political Science from the University of California, Los Angeles, where Mr. Aguilar was on the Dean's List.

## Greg Tatum

Greg Tatum is a paralegal of Strange & Carpenter. He received his Bachelor of Arts in Political Science from Loyola Marymount University.