1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4

   IN RE GOOGLE INC. COOKIE      :    CIVIL ACTION
5  PLACEMENT CONSUMER PRIVACY    :
   LITIGATION                    :
6  --------------------------    :    NO. 12-MD-2358 (SLR)

7

8                          - - -

9                            Wilmington, Delaware
                             Wednesday, January 30, 2013
10                           4:32 o'clock, p.m.

11                         - - -

12  BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

13                         - - -

14  APPEARANCES:

15

                KEEFE BARTELS
16              BY:  STEPHEN G. GRYGIEL, ESQ.
                     (Red Bank, New Jersey)

17

18                     -and-

19

20              STRANGE & CARPENTER
                BY:  BRIAN RUSSELL STRANGE, ESQ.
21                   (Los Angeles, California)

22

23                     -and-

24                                  Valerie J. Gunning
                                    Official Court Reporter

25

1     APPEARANCES (Continued):

2

3               STEWARTS LAW US LLP
                BY:  DAVID STRAITE, ESQ.

4

5                       Counsel for Class Plaintiffs

6

7               REESE RICHMAN LLP
                BY:  KIM E. RICHMAN, ESQ. and
                     GEORGE GRANADE, ESQ.

8

9                       -and-

10

11              RIGRODSKY & LONG, P.A.
                BY:  GINA M. SERRA, ESQ.

12

13                      -and-

14              MILBERG, LLP
                BY:  MELISSA RYAN CLARK, ESQ.

15

16                      -and-

17

18                      Counsel for Proposed Intervening
                        Plaintiffs Daniel Mazzone, Michelle
                        Kuswanto, Michael Frohberg, and Andy Wu

19

20

21              WILSON SONSINI GOODRICH & ROSATI
                BY:  MICHAEL H. RUBIN, ESQ. and
22                   ANTHONY J. WEIBELL, ESQ.
                     (Palo Alto, California)

23

24                      Counsel for Defendant
                        Google Inc.

25

```
 1    APPEARANCES (Continued):

 2
              FISH & RICHARDSON, P.C.
 3            BY:  SUSAN MORRISON COLETTI, ESQ.

 4
                      -and-
 5

 6            SIDLEY & AUSTIN LLP
              BY:  ALAN CHARLES RAUL, ESQ. and
 7                 EDWARD R. McNICHOLAS, ESQ.
                   (Washington, D.C.)
 8

 9            Counsel for Defendant
              PointRoll Inc.
10

11
              MORRIS, NICHOLS, ARSHT & TUNNELL
12            BY:  RODGER D. SMITH, II, ESQ.

13
                      -and-
14

15            ROPES & GRAY
              BY:  DOUGLAS MEAL, ESQ.
16

17            Counsel for Defendant
              WPP/Media Innovation Group
18

19
              RICHARDS, LAYTON & FINGER
20            BY:  RUDOLF KOCH, ESQ.

21
                      -and-
22

23

24

25
```

```
 1    APPEARANCES (Continued):

 2

 3              VENABLE LLP
               BY:  EDWARD BOYLE, ESQ.
 4

 5                   Counsel for Defendant
                     Vibrant Media
 6

 7

 8              WILSON SONSINI GOODRICH & ROSATI
               BY:  MICHAEL H. RUBIN, ESQ. and
 9                   ANTHONY J. WEIBELL, ESQ.
                     (Palo Alto, California)
10

11                   Counsel for Defendant
                     Google
12

13                           - - -

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        P R O C E E D I N G S

 2

 3              (Proceedings commenced in the courtroom,

 4    beginning at 4:32 p.m.)

 5

 6              THE COURT:  Please be seated.  All right.  Good

 7    afternoon, everyone.  With the weather coming in, I feel

 8    really guilty about having you all here.

 9              I've reviewed your proposed agenda and I guess I

10    will let plaintiffs' counsel fill me in on at least the

11    first issue and then we'll discuss the last couple of

12    issues.

13              MR. STRANGE:  Thank you, your Honor.  May it

14    please the Court, Brian strange for the plaintiffs.

15              The issue with respect to the status of the JPML

16    transfer order is as follows.  When the two cases with Sony

17    and Frohberg were filed in New York, we, as -- when we filed

18    our Consolidated Amended Complaint, they were added as

19    defendants, which frequently happens in MDLs.  There was

20    then a notice of a tagalong action filed with the JPML.  The

21    JPML issued a conditional transfer order, which is part of

22    the process, ordering that they be transferred to your

23    Honor's Court.

24              That transfer order is conditional, and the

25    plaintiffs in those actions, I understand, intend to or
```

1    have filed an opposition to it.  The JPML will decide

2    whether to transfer those cases to your Honor's Court,

3    likely at the next hearing, which is March 21st, I believe,

4    of this year.

5              So from the plaintiffs' standpoint, leadership

6    believes that your Honor should just put off any decision on

7    the motion to intervene pending a decision by the JPML

8    because if the JPML transfers them here, then they're in

9    front of your Honor, and you can decide what actions to

10   take.

11             I will note that under your Honor's initial

12   order, that any actions transferred by the JPML are deemed

13   consolidated, but when they're consolidated, the parties can

14   oppose that consolidation if they wish.

15             So it seems to me the prudent course would be to

16   wait for the JPML to issue its decision on the transfer

17   order.

18             THE COURT:  All right.  I certainly think that

19   makes sense.  Does anyone think it doesn't make sense?

20             MR. RICHMAN:  Your Honor, if I may -- may I?

21             THE COURT:  Oh, certainly.  Thank you.

22             MR. RICHMAN:  Good afternoon, your Honor.  My

23   name is Kim Richman from Reese Richman LLP.  I, in fact,

24   represent the plaintiffs in both the Vibrant and MIG matters

25   that are pending currently in the Eastern District of New

1    York.

2              I must concur with my colleague here, it does

3    make eternal sense, and likewise, perhaps we should also

4    consider staying the briefing schedule that was stipulated

5    to as to the MIG and Vibrant defendants here today.

6              THE COURT:  The briefing schedule with respect

7    to?

8              MR. RICHMAN:  Responding whether, by way of

9    answer, or motion to dismiss the consolidated Amended

10   Complaint in which the plaintiffs here have filed,

11   naming not only Google and PointRoll, but also MIG and

12   Vibrant.

13             THE COURT:  Well, that would throw a monkey

14   wrench into things.  Well, I mean, if they are not

15   parties, they shouldn't be involved, I guess, in the

16   remainder.

17             MR. RICHMAN:  So, in other words, we will wait,

18   as my colleague suggested, for the JPML to render a decision

19   in March before MIG and Vibrant here have to respond to the

20   Consolidated Amended Complaint that's pending before your

21   Honor.

22             THE COURT:  Okay.  All right.

23             MR. STRANGE:  Your Honor, can I be heard on

24   that?

25             THE COURT:  Yes.

1              MR. STRANGE:  Your Honor, that doesn't make a

2      lot of sense, in all due respect, because those defendants

3      are defendants in this action regardless of what the JPML

4      does.  If the JPML transfers those other actions, it's one

5      thing, but the defendants that are subject to the briefing

6      schedule in this court will be defendants anyway.  So it

7      makes sense to proceed with the briefing so we can get the

8      case at issue here.

9              THE COURT:  So they are named defendants in --

10             MR. STRANGE:  They are named -- both of those

11     defendants, the Vibrant Media and Media Innovation Group and

12     WWPR, are defendants here.  They've been added in the

13     consolidated amended complaints so that they're subject to

14     your Honor's jurisdiction regardless of what happens to the

15     JPMLs.  It does not make sense to put off the briefing

16     because it has to happen anyway.  So it just makes sense to

17     wait on the motion to intervene, but go forward with our

18     briefing.

19             THE COURT:  All right.  I will hear one more

20     time why it makes sense for defendants in this case to not

21     be involved in the important motion practice.

22             MR. RICHMAN:  Your Honor, if I may?

23             THE COURT:  Yes.  And you represent?

24             MR. RICHMAN:  Your Honor, I represent the

25     plaintiffs --

1          THE COURT:  Okay.

2          MR. RICHMAN:  -- in the Eastern District of

3    New York actions with respect to both Vibrant and MIG.  We

4    have been litigating this case for over seven months.  We,

5    in fact, have fully briefed at this point in time the

6    motions to dismiss.  They are now pending decision before

7    two judges in Brooklyn Federal Court.

8              We have filed a motion to intervene --

9          THE COURT:  Different judges have --

10         MR. RICHMAN:  Correct.  They have two separate

11   actions.

12         THE COURT:  I know that.

13         MR. RICHMAN:  MIG and Vibrant.  And Judge

14   Garifus and Judge Kuntz, who are presiding over each of the

15   two actions.

16         THE COURT:  But I don't understand how you, as

17   plaintiffs' counsel, think it makes -- why you're even

18   speaking on behalf of the defendants in the first instance.

19   I mean --

20         MR. RICHMAN:  I'm here protecting my clients'

21   interest in the Eastern District of New York.  I would hate

22   for their interest in any way to be compromised by premature

23   briefing on this issue if, indeed, you were, for instance,

24   to grant, say, a motion to intervene that is now pending

25   before your Honor and allow these matters to be transferred

1    back to their home district in the Eastern District of New

2    York.

3              THE COURT:  Well, first of all -- well, unless

4    these matters get transferred and are within my

5    jurisdiction, nothing that I say or do has any precedential

6    meaning for anyone.  Trust me, I am without power except

7    over you all here and the cases right here.  So I'm

8    certainly not going to hold up my hand in deciding the

9    issues properly before me in order to adjust the timing

10   of what other courts do.  I just don't play games like

11   that.

12             MR. RICHMAN:  No, I understand that.  I'm not

13   looking to play games, your Honor, and so I'm just following

14   the rationale that was executed by my colleague, that if

15   we're going to stay the motion to intervene until we hear

16   from the JPML, does it not make also sense to then stay

17   matter parties pertaining both to MIG and Vibrant, subject

18   of the motion to intervene that is pending before your

19   Honor.

20             THE COURT:  That doesn't make any sense.

21             MR. RICHMAN:  Your Honor, I'm simply arguing,

22   what's good for the goose is good for the gander.  Thank

23   you, your Honor.

24             THE COURT:  Well, certainly, I am not going to

25   be deciding any issues in the two cases now pending before

1    the Eastern District.  But if these defendants are here, I

2    would think they would want to be heard here.

3                    Do you represent those defendants?

4                    MR. MEAL:  I represent one of them, your Honor.

5    Media Innovation Group.  So I can just make one quick

6    comment on this?

7                    THE COURT:  Well, I would be interested in

8    hearing what you have to say.

9                    MR. MEAL:  Douglas Meal, your Honor, on behalf

10   of Media Innovation Group.  It was one of the defendants in

11   the Eastern District case.

12                   THE COURT:  Right.

13                   MR. MEAL:  I think the point is, what

14   Mr. Richman is seeking by means of his motion to intervene

15   is, once he intervenes, he's seeking to have the claims

16   against my client either stayed, dismissed or transferred,

17   in which case, if that were to happen, there would be no

18   reason for us to be briefing to you the motions to dismiss

19   that we're currently scheduled to brief.  If you were to

20   stay the claims against my client or dismiss the claims

21   against my client in favor of the Eastern District cases,

22   the briefing that would be happening wouldn't happen.

23                   So I think what Mr. Richman was saying is, well,

24   it's okay if you are not going to rule on the motion to

25   intervene pending the JPML, but if that happens, I won't be

1    heard on the issue of dismissal or stay of the claims

2    against my client and this briefing will go right on

3    forward.  So I think what Mr. Richman was saying, and I do

4    think it makes some sense, is that if you are not going to

5    go ahead and rule on the intervention motion, which I think

6    everyone is saying should be the case, it does not make

7    sense for us to go ahead and brief the motion to dismiss

8    that we'd be briefing because it may all be for naught if,

9    when you finally get to the intervention issue, you agree

10   with Mr. Richman, that the claims against us should be

11   stayed or dismissed in favor of the Eastern District

12   case.  So I think that was kind of the point that

13   Mr. Richman was trying to make.

14              And I do think there is something to commend

15   that, and if you are going to not go ahead on the

16   intervention motion, it would seem that Mr. Richman won't be

17   heard on the issue of dismissal or stay of the claims

18   against us until we've had to go ahead and do all of that

19   briefing.  And if you were to dismiss or stay, all that

20   briefing would be for naught.

21              THE COURT:  But in the meantime, if we go

22   forward without you all and I come to certain decisions,

23   then that means that I will have to have a re-do if, in

24   fact, your cases end up here.  So, you know --

25              MR. MEAL:  I think that is a potential issue,

1     and I could imagine, I could imagine putting off all the

2     briefing.  I could imagine going ahead and deciding the

3     intervention motion.  But I would say from MIG's point of

4     view, I wouldn't want to be in a situation where we go

5     through all the briefing that's currently scheduled in

6     February and March, you then get to Mr. Richman's motion,

7     you decide that the claims against my client should be

8     dismissed or stayed in favor of the Eastern District cases,

9     and then I tell my client, well, we just did all of that

10    briefing for nothing.

11              THE COURT:  Well, tell me something.  I mean, it

12    strikes me as odd that I would -- if the motion to transfer

13    these cases here through the MDL is denied, I assume that's

14    because those folks who are wise beyond me as to what cases

15    should be heard together and what cases shouldn't have

16    decided that these cases are distinct.  So I don't know why

17    I would force the issue and have the cases here.  I mean, it

18    does not strike me that I would go against that, in which

19    case, if, in fact, your clients are still clients -- if your

20    clients are still defendants here, I mean, you should be

21    involved in that briefing anyway, and I can't imagine

22    that I would take these cases with the plaintiffs'

23    opposition, and --

24              MR. MEAL:  I think that's exactly what

25    Mr. Richman is envisioning.  He's envisions a possibility

1    where the JPML denies transfer, keeps the cases in the

2    Eastern District, and then he's imagining he's going to have

3    a very powerful argument to you:  Judge, the JPML kept the

4    cases in the Eastern District.  You should now stay the

5    claims that you have against those same defendants here in

6    favor of those Eastern District cases.

7                 THE COURT:  So you are not named with other

8    plaintiffs?

9                 MR. MEAL:  We are named with other plaintiffs

10   here, and --

11                THE COURT:  Right.

12                MR. MEAL:  -- what Mr. Richman is going to say

13   is that you should stay the claims brought by the other

14   plaintiffs here in favor of the Eastern District cases, is

15   what Mr. Richman would argue.  And all I'm saying is, if

16   your Honor were to do that, if your Honor were to do that, I

17   just don't want to be in a position where, in the meantime,

18   I've written a bunch of briefs that wind up never getting

19   read.

20                THE COURT:  Well, this is the point.  This is

21   like a first-filed case, right, in the sense that if these

22   cases aren't sufficiently -- if they don't have common

23   issues sufficient to convince the --

24                MR. MEAL:  JPML.

25                THE COURT:  Yes.  To transfer these cases here,

1    then that means that those Judges should handle those issues

2    and I am going to handle the issues here.  And the fact that

3    we might come out with inconsistent results is why they

4    don't -- I mean, they won't be inconsistent because the JPML

5    doesn't think that they're the same case.

6              So I'm not concerned about it.  They're either

7    in New York or they're here, and I certainly don't envision

8    a scenario, whether I grant -- whether the motions to

9    intervene aren't deemed mooted.  If the cases aren't

10   transferred here, I can't imagine granting the motion to

11   intervene and then denying the Eastern District of New York

12   plaintiffs the opportunity of briefing the issue, which is

13   really the only procedural issue that I see that would be of

14   concern.  Inconsistent results between districts don't

15   bother me.

16             MR. MEAL:  I don't think it's so much

17   inconsistent results between districts as just the

18   possibility that if you were to grant the relief that

19   Mr. Richman is seeking, which is a dismissal or stay here,

20   which is -- his whole reason for intervening is to then

21   bring a motion to dismiss or stay or transfer the claims

22   against my client in this case.  So that is the purpose of

23   his intervention motion.

24             THE COURT:  You want to intervene so you can

25   dismiss the claims against your client in other cases?

1        MR. MEAL:  Yes.  The claims in this case, what

2   he's seeking is to intervene so he can then move to dismiss,

3   stay, or transfer the claims against my client.

4        So it would seem unlikely that you would grant

5   intervention and then not grant the dismissal, stay or

6   transfer, because that's the purpose of the intervention.

7   So all I'm saying is, if that all happened, it would be a

8   shame for us in the meantime to have briefed the claims that

9   you would then have dismissed, stayed or transferred.

10  That's all I'm pointing out, your Honor.

11       MR. RICHMAN:  If I may, your Honor?

12       THE COURT:  Yes.  I'm lost in this --

13       MR. STRANGE:  Your Honor --

14       THE COURT:  -- procedurally.

15       MR. RICHMAN:  Your Honor, if I may, let me just

16  back up for just a moment.

17       THE COURT:  Please do.

18       MR. RICHMAN:  I know it's confusing because I'm

19  plaintiffs' counsel, Mr. Strange is plaintiffs' counsel.

20  Nonetheless, we have conflicting interests here.

21       I actually am wearing two hats.  I know that you

22  are familiar with my name because of the Google/Safari

23  matter.  I represent the clients in the state, California

24  State matter, which is being coordinated with this federal

25  MDL.  I also have been litigating, in addition to Google/

1    Safari, have been litigating two matters against Vibrant and

2    MIG in the Eastern District of New York.

3         Our position is that Google, Vibrant, MIG,

4    PointRoll, are four distinct companies entirely.  There is

5    absolutely no factual connection between these four

6    companies.  Yes, there are similar legal claims against

7    them, but there is absolutely no factual connection.  These

8    are standalone companies that have been pushed together by

9    these plaintiffs' counsel, and that may be the source of a

10   lot of confusion here.

11        While I pride myself on playing well with

12   others, we have been successfully coordinating the Google

13   Safari state and federal case.  However, they have since,

14   with their amended consolidated complaint, named Vibrant and

15   MIG and joined them in this action against Google, Safari

16   and PointRoll.

17        We take the position that our clients and the

18   class that they represent in the action that's pending in

19   the Eastern District of New York is being jeopardized by the

20   mere fact that they have swept these people in, these

21   defendants into this JPML, which was set forth to deal with

22   Google, Safari and PointRoll.  And that is the source and

23   the basis for our motion to intervene.

24        Procedurally, once that is -- if, indeed,

25   granted, we will then either move to stay, dismiss, or

1   transfer back to the Eastern District of New York.  That is

2   what is being contemplated here.

3              Mr. Strange made an argument that perhaps we

4   should stay this motion to intervene until the JPML makes a

5   decision.  If that rationale is, indeed, accepted, fair

6   enough.  Let's extend that rationale to the briefing

7   schedule in which the defendants have stipulated to with

8   regards to Vibrant and MIG.  And that's simply the basis of

9   my argument here.  What's good for the goose is good for the

10  gander.

11             MR. STRANGE:  Your Honor --

12             THE COURT:  Well, I actually understand your

13  argument now.  I don't know that it has anything to do with

14  geese, but I guess this is my concern.  I mean, generally,

15  I'm not one to stay things, so let's assume for a moment

16  that I'm not going to stay briefing on the pending motions

17  to dismiss filed by Google and PointRoll and we go forward

18  and I make decisions based on those motions to dismiss, and

19  in the meantime -- well, let's say I do stay.  I do what you

20  want me to do.  So I make these decisions on, I assume, kind

21  of the same statutory bases.  So you're -- if, for some

22  reason, you end up here, then I have to do it all over

23  again?

24             MR. RICHMAN:  Your Honor, you make a persuasive

25  point, indeed, I mean, without having to say that.  But

1    the fact of the matter is, with that rationale, then,

2    perhaps we should not then stay the motion to intervene and

3    allow that to be considered by your Honor and allow us to

4    then enter into this case and make sure that our clients and

5    the classes they represent are fairly represented in this

6    court.

7              MR. STRANGE:  Your Honor --

8              MR. RICHMAN:  Your Honor, if you read carefully

9    the JPML Rule 7 as well as the order which was executed

10   following transfer of all the cases with regards to

11   PointRoll and Google/Safari, you ultimately have the

12   authority to consent to all these matters being joined.  The

13   JPML can make a decision, but it ultimately resides in your

14   hands as to what you want to do with these cases, and,

15   accordingly, I would argue, then, if you do not stay the

16   briefing schedule, then allow us to intervene and proceed

17   accordingly.

18             THE COURT:  So what you said now is regardless

19   of what the JPML does, your clients are going to basically

20   ask me to dismiss, stay, or transfer?

21             MR. RICHMAN:  Correct, your Honor.

22             THE COURT:  All right.  Let me hear from

23   plaintiffs' counsel, and then I would be interested in

24   hearing any other defendants or anyone else who would care

25   to speak.

1              MR. STRANGE:  Thank you, your Honor.

2              This is basically doing an end run around an MDL

3     action, and the reason I say that is that when the JPML

4     transferred all of the class actions against Google and

5     PointRoll to your Honor's Court and your Honor appointed

6     leadership to protect the class and to file an Amended

7     Complaint against those defendants, that the plaintiffs'

8     counsel, leadership, felt were responsible and should be

9     included in the action.  We did that, and in connection with

10    that complaint we added, we have Google, we have PointRoll

11    and we added three new defendants.  Those defendants are now

12    defendants in this, your Honor's courtroom that you have

13    jurisdiction over.

14             With respect to these other cases, the

15    conditional transfer order from the JPML is basically based

16    on the fact that they have related facts and issues that are

17    going to be decided by this Court.

18             So when that -- when the JPML order issues,

19    whether transferring them or not, we still have a situation

20    where we as leadership have named these additional

21    defendants.  And let me throw one other wrinkle in, is that

22    we have different claims.  We have federal claims that we

23    think are very powerful against these defendants before your

24    Court.  Those claims are not even present in the action in

25    New York.

```
 1                    So it seems to me that in a -- in control of

 2       this MDL, we need to proceed forward with the briefing

 3       schedule we've set forth, and if the Court, JPML court

 4       transfers them here, they're part of this action.  If they

 5       don't, your Honor is still going to have to be making

 6       decisions with respect to these defendants on claims that

 7       aren't even present in the other case.

 8                    So I think we're just putting off issues that

 9       need to -- need to be decided on by a motion to dismiss.

10                    THE COURT:  All right.  Do any of the other

11       defendants have any thoughts about how we should proceed?  I

12       mean, I assume the defendants -- well, it rolls into the

13       next issue, which is what we stay and what we go forward

14       with.

15                    I assume the defendants, because that's the

16       message I heard loud and clear at the first conference, want

17       to go forward with the motions to dismiss, because they

18       think they're dispositive and they would like to get out of

19       this.  Is that correct?  Anyone?  Or do you think there's

20       some value in staying this until the JPML makes its decision

21       and we see actually who is in and who is out?

22                    MR. RUBIN:  Good afternoon, your Honor.  Michael

23       Rubin of Wilson Sonsini for Google.

24                    You aptly characterize our view of the motions

25       to dismiss.  We do believe they're dispositive and they
```

```
 1    will ultimately result in us getting out.  And I, frankly,

 2    hadn't considered the idea of staying everything until

 3    there was a resolution of the JPML and the parties, but

 4    that was a bit more complicated than I had anticipated

 5    hearing.

 6                 THE COURT:  It was certainly more complicated

 7    than --

 8                 MR. RUBIN:  I don't doubt it.  There may be some

 9    rationale of staying everything until we know who is here

10    and so there's not a wasted effort.

11                 If I were representing Google in this matter and

12    in matters pending in the Eastern District of New York, I

13    certainly would be arguing not to have to do briefing here

14    and now that might be duplicative, and I can see a lot of

15    force to that rationale.  And I don't think -- I don't think

16    it's a bad idea.

17                 I heard you say moments ago that you're loathe

18    to stay actions and I can understand that, too, but there

19    is a fair amount of uncertainty as to what's going to

20    proceed here.  The JPML is going to issue its decision, or,

21    rather, have a hearing on March 21st.  I suspect this is

22    going to be a disputed transfer order.  Their decision

23    should come a few weeks after that.  These issues arose

24    nearly a year ago.

25                 There's -- I don't think we're under that much
```

1    time pressure.  I don't think it would on -- certainly

2    wouldn't prejudice anyone if there was a minor additional

3    pause in the proceedings.  I don't think that's a terrible

4    idea.

5              That said, if your Honor wants to proceed and

6    consider the motions we've submitted, we're certainly in

7    favor of that as well.  But I do think there's some

8    rationale to letting this arrangement of the parties sort

9    itself out because this is what I understood to be the idea

10   of why we met on October 24th and why we're back here today,

11   to allow there to be a sort of things out to get things

12   sorted.  They're not sorted right now.  The addition of

13   these parties in the complaints, Media Innovation Group and

14   Vibrant, were on the scene long ago.  In fact, if you read

15   the JPML transfer order that transferred these cases here

16   from the summer of last year, they were part of the basis

17   for the JPML transferring it, the possibility of that being

18   added.  They were not added probably until January, which,

19   through all the sequencing, the Court is now having to deal

20   with staggered briefing schedules.  So in no event will your

21   Honor have fully briefed motions to dismiss until I think

22   April 19th.

23             Our briefing, the Google and PointRoll briefs,

24   series of briefing, I think finished a little bit earlier

25   than that, in March, but the briefing -- if there's no stay

1    for MIG and Vibrant, their briefing doesn't end up until

2    April 19th, which probably will coincide with -- we'll

3    probably know where the JPML is at that point.

4              But I suppose to sum up on that point, we're not

5    as settled as certainly I expected we would be, and

6    certainly there's some significant value in reducing overall

7    wasted effort and increasing efficiency both for the Court

8    in making its decision and for the parties, ensuring that

9    they're only targeting one specific set of claims or making

10   sure they're able to target efficiently and effectively so

11   the Court can consider briefing, a stay.

12             THE COURT:  Well, I certainly want to make sure

13   that anyone who ultimately will be a party to this

14   litigation has a fair opportunity to have a say on

15   dispositive matters at the same time so that I am making one

16   decision with everyone participating, and I think, if

17   nothing else, that is a primary responsibility that I might

18   have in this.

19             Let me hear from all -- any defendant who wants

20   to talk before I hear back from plaintiff in this regard.  I

21   do think it's really interesting that I have plaintiffs at

22   odds and plaintiffs kind of agreeing with defendants.

23   That's really interesting.  I don't see that every day.

24             Yes, sir?

25             MR. MEAL:  I'm sure you don't, your Honor.  I

1    think you hit on exactly the point in one of your earlier

2    comments, that if this goes forward with no stay, we are

3    definitely going to want to be heard on the motions to

4    dismiss for exactly the reason that you said.  We're not

5    going to want to have you go ahead and rule on the Google

6    and PointRoll motions and we will then go ahead and brief

7    our own motion to dismiss, for all the reasons you said.

8    And so -- and I think that's the point, is, it seems

9    somewhat unfair to put us in that position of doing all of

10   that briefing if it's going to be the case, which could be

11   the case, that the case doesn't going to go forward --

12   forward as to these procedural reasons.

13              And I guess I agree with Mr. Rubin, that when

14   you look at it, the only reason we are having this problem

15   is because we were brought into the case when we were

16   brought into the case, which was at the end of December of

17   last year, and that's what's creating the issue of our

18   procedural circumstances, potentially throwing a monkey

19   wrench into the briefing schedule that exists as to

20   PointRoll and Google.

21              That wasn't our fault, as Mr. Rubin said.  You

22   go back to when the MDL was sought and when the JPML order

23   entered, and it was sought because we were supposedly going

24   to be brought into the case.  Well, month after month after

25   month went by without us being brought in by these counsel

1    and now we are where we are.

2            And I think, when you think about it from an

3    overall perspective, what's the overall harm in setting up a

4    rational briefing schedule where everything gets briefed

5    simultaneously once we know who is here and who is not here

6    and under what circumstances they'll be here.  There's no

7    prejudice to anybody.

8            And --

9            THE COURT:  Except delay, time.

10           MR. MEAL:  As Mr. Rubin pointed out, the JPML

11   will, in all likelihood, issue a ruling on the transfer

12   motion by mid-April.  Currently, the briefing schedule

13   already runs out to mid-April, so that I think, yes, I agree

14   with you.  There would be some loss of time, but on who

15   should that be visited, because I feel like it isn't my

16   client's fault that there would be that loss of time.  The

17   loss of time is really created by the loss of time in

18   bringing us in in the first place.

19           There's no reason why we couldn't have been

20   brought in in October, and if we had been brought in in

21   October, we wouldn't be having this conversation that has

22   taken now a half-hour of the hearing, and that was not our

23   doing.

24           MR. STRANGE:  Your Honor, can I address that?

25           THE COURT:  Yes, but let me just hear from all

1    the defendants first.

2                MR. STRANGE:  Yes.

3                THE COURT:  And, certainly, you will have

4    sufficient time to address it.

5                MR. RAUL:  Good afternoon, your Honor.  Alan

6    Raul on behalf of PointRoll.

7                And there seems to be a bit of a consensus

8    emerging that the stay in play is not as settled as any of

9    us anticipated that it would be.  As Mr. Rubin indicated, we

10   believe that the motion to dismiss that PointRoll has

11   submitted is dispositive and is compelling and ready to go,

12   but by the same token I think that there are efficiency and

13   other rationales to figuring out the dramatis personae here

14   and getting people on the same schedule.  So we would be

15   prepared to do that even though, obviously, it would give

16   plaintiffs additional time to respond.  But we think that it

17   certainly would be reasonable to get a common schedule and

18   stay matters here pending a development from the JPML.

19               THE COURT:  All right.  Thank you.

20               MR. RAUL:  Thank you, your Honor.

21               THE COURT:  I see one more defendants' counsel

22   rising.

23               MR. BOYLE:  Yes.  Your Honor, good afternoon.

24   Edward Boyle for defendant Vibrant Media.

25               I'm last, so I can be quickest.  I agree with

1    the other defendants on balance.  The most important thing

2    here is to make sure we only do everything once, so I'm in

3    favor of staying the briefing schedule until we know what

4    the JPML is going to do.

5                THE COURT:  All right.  Let's hear from

6    plaintiffs' counsel in response.

7                MR. STRANGE:  Thank you, your Honor.

8                The reason that we didn't add the new defendants

9    is because your Honor will recall, the action had to be

10   transferred to your Court.  Then you appointed leadership

11   and you gave us a specific date to file an Amended

12   Complaint.  This happens in every MDL proceeding in the

13   country.

14               So we timely filed our MDL complaint pursuant to

15   your Honor's order where the defendants were added.  It

16   wasn't due in October, it was due when we filed it.  And so

17   we've been proceeding along with your Honor's order.

18               It's very common that tagalong actions appear in

19   MDL cases.  The two defendants -- let's break this down,

20   your Honor.  The two defendants, Google and PointRoll, are

21   not defendants in these tagalong cases, so their presence

22   here is not going to change.  And your Honor's ruling on

23   their motions to dismiss is not going to be put off -- it

24   can be put off, but it's going to have to be made.

25               So there's no reason to really delay that,

1    because the JPML order will have no effect on PointRoll and

2    Google, and so that's matter number one.

3              THE COURT:  Well, I agree that my decision

4    should not at all be based on timing because you followed

5    the Court's order and that's the way it is.

6              I am concerned -- this is like when I have

7    20 cases in a patent litigation, not MDL, just 20 cases,

8    same patent.  Even though everyone has different interests,

9    I still need to make sure that at least a few things are

10   coordinated, like my Markman hearing, so that everyone has a

11   chance to participate in briefing on dispositive issues.

12   And I guess I am concerned about going forward with these

13   newly added defendants in the sense that the plaintiffs in

14   these -- in the Eastern District cases, which may or may not

15   be here, are involved in that briefing, and I'm concerned

16   with staying the briefing as to those defendants because I

17   don't want to be making a decision without hearing from

18   everyone on common legal issues.

19              So that's my concern.  And the question is, how

20   long of a stay makes sense in order to get the parties

21   situated so that we can do this once with everyone who is

22   actually involved in the case.  And I don't know -- I don't

23   know whether you're -- I don't know what your concerns are

24   in terms of plaintiffs' counsel as to delay when, at this

25   point, we're talking perhaps a three-month delay, I guess.

1    Is that about right?  Three months?

2            MR. STRANGE:  Somewhere around there, your

3    Honor, but I don't -- again, in terms of representing the

4    class, these actions happened a while ago.  It took a while

5    to get the MDL organized.  It took a while to get leadership

6    appointed, and it took a while to set forth the schedule on

7    the complaint and the briefing.  And so my concern is that

8    delay, justice delayed is justice denied.  There are a lot

9    of issues that need to be decided in terms of memories

10   fading, documents out there and issues that we need to

11   pursue.  So I mean, there does not seem to be -- I have not

12   heard articulated any reason why, for example, Google's

13   motion should be put off because, unless Google wants to

14   stipulate it's in the same position as is PointRoll or one

15   of these new defendants, I don't think it's going to.  I

16   don't think Google is the same and Google's brief is

17   certainly different.  Google's brief has already been filed,

18   and the issues in Google's brief may or may not be the same

19   as other defendants, but --

20           THE COURT:  Well, there's a lot of overlap,

21   having read the two opening briefs by the two defendants,

22   and I am not confident, unless all the other defendants say,

23   yes, we'll let Google's brief go first, and then, you

24   know, although the Judge will have considered these issues,

25   we'll -- and even though what I say or do isn't binding on

1      other Judges, it certainly, I try to be consistent.  And so

2      I think, you know, I just --

3                      MR. STRANGE:  Well, let me make a suggestion,

4      your Honor.

5                      THE COURT:  Yes.

6                      MR. STRANGE:  We already have the briefing

7      schedule agreed to, which all of this was already out in the

8      open when it was agreed to.

9                      THE COURT:  Right.

10                     MR. STRANGE:  What we could do is just keep with

11     the briefing schedule.  Your Honor sets a hearing date in --

12     whoever is going to set it in, let's say, in May, the first

13     week in May was suggested to me prior to the hearing, and by

14     then the JPML will have decided, and so everybody will keep

15     their briefs and your Honor can make the decision at that

16     point.

17                     But there's one important issue, your Honor, and

18     I know this is a little bit complicated, but the claims that

19     the leadership pursued, have brought against these new

20     defendants are different than the claims that are in the

21     Eastern District of New York.

22                     So I would find it highly surprising if your

23     Honor did transfer them, but with respect to those claims,

24     those are different claims that should be decided by your

25     Honor that we brought on behalf of the class, and we are

1  charged with representing the class and pursuing all the

2  claims that we think are best against all the defendants

3  we think are best.  So perhaps the solution is to keep with

4  the briefing schedule and then have a hearing after the

5  JPML.

6         THE COURT:  All right.  Well, let me hear from

7  the Eastern District plaintiffs' counsel.  If the claims are

8  different and if your defendants are defendants here, then

9  I'm not sure what the prejudice is to you to have my case

10  decided here regardless of what happens to your case with

11  different claims.

12         MR. RICHMAN:  Your Honor, I will be brief.

13         With regard to this tagalong notice that was

14  filed by the plaintiffs here only recently --

15         MR. STRANGE:  We didn't file it.  The defendants

16  filed the tagalong notice.

17         MR. RICHMAN:  Nonetheless, they could have filed

18  a tagalong action shortly after everything was consolidated

19  here.  They did not have to wait, or they, frankly, never

20  even notified the Court that there may, indeed, be a

21  tagalong action here.  So with regard to justice delayed,

22  justice denied, they could have notified the Court that they

23  foresaw that there would be, indeed, some overlap here.

24  And, your Honor, I know you don't really care for geese,

25  but all I'm simply arguing is, let's get all our ducks in a

1  row.

2          MR. STRANGE:  Your Honor, just as a matter of

3  procedure, we couldn't file the notice, no one could file

4  the notice of tagalong until the Amended Complaint was

5  filed.  That's why it wasn't filed.  And the rule that

6  they cite says it has to be the same parties and the same

7  claims.

8          So in terms of geese, I mean, I don't have much

9  to say about that, but I do have something to say about

10  there being different claims.  I don't think that has been

11  addressed.  Your Honor has different claims before it and

12  they're not the same claims as the one in the Eastern

13  District of New York.

14          THE COURT:  All right.  Let me hear from counsel

15  for the new guys about whether the claims are different or

16  the same.  If they're different, then I'm not exactly sure

17  why we're taking so much time here.

18          MR. MEAL:  So the claims are federal claims here

19  against my client and state claims in the Eastern District

20  against my client.  But in each case, they could have been

21  brought in the other case, so that there is certainly the

22  possibility of claim preclusion notwithstanding the fact

23  that the state claims aren't here or the federal claims

24  aren't there.

25          So I don't think the fact that the claims are

```
 1    different really changes anything.  Particularly the point I
 2    was making earlier is, that under Mr. Stange's approach,
 3    where the briefing goes on, but the hearing on the motion
 4    or the decision on the motions is delayed is, the problem
 5    that creates for my clients is that we're then put in a
 6    position of briefing these federal claims to you.  Our
 7    motion to dismiss, I certainly respect Mr. Rubin, but you're
 8    right, I'm not prepared to put my client's interest in his
 9    hands.
10              THE COURT:  Eggs in a basket, as long as we're
11    keeping --
12              MR. MEAL:  Right.  So that still puts my client
13    in a position where, if this all plays out like Mr. Richman
14    thinks it's going to play out --
15              THE COURT:  Well, he hopes.
16              MR. MEAL:  -- where you come to consider the
17    motion to intervene in May and you agree with him, that
18    intervention should be granted, you agree with him that the
19    claims, the federal claims, the federal claims against my
20    clients should be dismissed, stayed or transferred in favor
21    of the prior case in the Eastern District, if the JPML keeps
22    it there, then I have gone ahead and done all of that
23    briefing on these federal claims for naught.
24              So it just seems like we're not talking about a
25    gigantic delay here.  In terms of the tagalong, I agree the
```

1    tagalong couldn't have been filed earlier, but certainly,

2    certainly, plaintiffs' counsel knew they were bringing my

3    clients in and they knew that before December 21st.  If they

4    had alerted your Honor to that fact that, your Honor, here's

5    what is going to happen.  We're going to be filing a

6    consolidated Amended Complaint that names these new parties,

7    then there's going to be a tagalong filed immediately after

8    that, which is exactly what happened.  Everybody knew that

9    was going to happen.  And then there's going to be an issue

10   before the JPML about whether these tagalong cases get

11   brought before you, and then we're going to be having a

12   whole issue about the briefing schedule, so in light, your

13   Honor, of our intention to bring in these additional

14   defendants, we should not set this briefing schedule.  That

15   could have been said.  That should have been said.  And had

16   that been said, you never would have set the briefing

17   schedule and we wouldn't be having this whole problem.

18            THE COURT:  I may not have set the briefing

19   schedule, that's true.

20            MR. MEAL:  Thank you, your Honor.

21            THE COURT:  All right.  Final word from

22   plaintiffs' counsel?

23            MR. STRANGE:  Your Honor, again, the claim, the

24   federal claims here are separate and distinct and were not

25   brought by the plaintiffs in the Eastern District of New

1    York.  In fact, they filed, in their motion to intervene,

2    they pooh-poohed those claims and said, we decided we didn't

3    want to bring them, we don't like those claims.

4           So they made a decision seven months ago not to

5    add those claims, and the reason they didn't is they knew

6    they would get dragged into the proceeding, probably.

7    They're trying to do an end run around the MDL, but

8    regardless of why they did or didn't do it, the federal

9    claims here are not present in that case, so that your

10   Honor's decision on those federal claims will have to be

11   made one way or the other.

12          THE COURT:  Well, it seems to me that what we're

13   really talking about, I agree, it does not make sense for me

14   to make any decisions about any of these motions to dismiss

15   until such time as I know who our players are.

16          The question is whether I have briefing proceed

17   and keep at least our feet to the fire of moving the case

18   along.  And then the only issue is whether the two new

19   defendants may be briefing in vein, in which case we're

20   talking about costs.

21          Now, because of your situation, I don't think

22   that I can necessarily hold you -- if you're the ones who

23   are really moving this case along, I don't know, because the

24   wording in other instances, I would say, listen.  You want

25   to move this along, but if it turns out that this briefing

1    is futile and frivolous because I'm not going to decide it

2    anyway, then you're responsible for attorney fees.

3           Now, I don't think I can do that in a class

4    action because you probably aren't making any money until --

5    until such time, if ever, that you collect.  But that's my

6    concern, is that in the interests of moving this case

7    forward instead of staying, you might be costing defendants

8    additional money.  And what's the answer to that?  That,

9    well, that's just the way litigation goes?

10           I mean, I can't tell you the pressure I get at

11    least from the Federal Circuit about reducing costs in

12    litigation to the point where the independence of the

13    judiciary is being threatened, of the District Court

14    judiciary anyway is being threatened.  So I'm very much

15    aware of costs of litigation and of churning wheels just for

16    the sake of churning them.

17           MR. STRANGE:  Your Honor, I'm a contingency

18    lawyer.  The last thing that I want to do is file papers for

19    the sense of filing them.  But we are charged with

20    representing the class when you appointed us as the

21    leadership, and we got together as leadership and decided

22    that these federal claims are the appropriate ones to bring

23    against these defendants.

24           Now, the fact of the matter is, is that the

25    plaintiffs in the State Court, or I mean in the Eastern

1    District of New York decided not to bring those claims.  And

2    so I would be shocked if the MDL doesn't transfer it.  I

3    would be shocked if your Honor decided that you should

4    transfer claims that we brought on a federal basis to

5    another case that's not part of the JPML, but to now

6    speculate that maybe the plaintiffs in the State Court

7    action will bring those federal claims again, or for the

8    first time after their action has been pending for seven

9    months really is getting pretty far afield.

10               THE COURT:  All right.  There's only so much

11   time we can spend on this one last thing.

12               MR. RICHMAN:  If we adopt Mr. Strange's

13   rationale, then why not allow us to then intervene and

14   represent both our clients and the class, which also happen

15   to be the same class that they're representing.  Allow us to

16   participate in the briefing.  I mean, this is how this whole

17   argument today spun out of control, frankly, because they

18   are taking the position that our motion to intervene should

19   be stayed.  Allow due process.  Allow our clients and the

20   classes that they represent to be heard.  That's all I'm

21   arguing here, your Honor.  Thank you.

22               MR. STRANGE:  Your Honor, maybe that is the

23   solution.  I mean, it seemed like a simple solution to me,

24   but if your Honor wants to have briefing on the motion to

25   intervene, we're happy to do that.

1          THE COURT:  Well, I mean, it strikes me that if

2     these plaintiffs are going to go forward with a motion

3     practice regardless of what the JPML -- well, I guess if the

4     JPML agreed -- well, I don't know what, I don't know what.

5     I get the feeling they're going to go forward with a motion

6     practice.  Regardless as long as these defendants, the new

7     guys, are still in this case --

8          MR. STRANGE:  Right.

9          THE COURT:  -- then maybe instead of staying

10    everything, we should just go forward with it.

11         MR. STRANGE:  From the plaintiffs' perspective,

12    we will agree to brief the motion to intervene, if that

13    helps your Honor, and you can decide whether they're here

14    properly or not.

15         THE COURT:  All right.  So having taken on more

16    work instead of less work for the motion to intervene, where

17    does that leave us with the motions to dismiss?  We should

18    just go forward with all of this and I will schedule a

19    hearing on all of these motions whenever you think briefing

20    would be done on all of them and the JPML will have decided

21    its issue in case it has any bearing on what we're doing at

22    all, which I'm not sure it does.

23         MR. RUBIN:  I can merely observe a bit in

24    response to your question.  I'm not sure that that answers

25    the question of the potential wasted cost of briefing by

1    MIG and Vibrant, because if your Honor grants the

2    intervention and then the -- I think I've been following

3    this -- and then those defendants are transferred out, their

4    briefing would be for naught.  So maybe there needs to be

5    some delay built in for that briefing to take place.  I'm

6    trying to follow this.  I should have drawn a diagram.

7                 THE COURT:  Yes.  Every time I think I

8    understand it, it gets more convoluted.  I guess maybe I

9    really don't understand the plaintiffs from the Eastern

10   District.

11                So you want to sweep out these defendants back

12   to the Eastern District and have your own case against these

13   defendants and not have them affected by any decision I

14   make.  And I guess I've never seen plaintiffs who want to

15   come into a class action, and even though they're not class

16   counsel, move to sweep out -- move to dismiss defendants as

17   opposed to causes of action.  I mean, I've never seen that

18   happen before, and I, quite frankly, don't know how that

19   happens.

20                MR. RICHMAN:  Perhaps, your Honor, if I may just

21   clarify.

22                With regard to the Eastern District of New York,

23   one matter has indeed been stayed until the decision from

24   the JPML, and I suspect that the other action will follow

25   suit as well.  And so they at this point are awaiting

1    decision from the JPML in the Eastern District of New York.

2              With regard to the motion to intervene, your

3    Honor, and to address that question, we want to intervene.

4    Whether we decide to move to stay, move to dismiss, move to

5    transfer, we're, frankly, stayed here and perhaps play well

6    with others.  That is something that we, you know, will

7    endeavor.

8              We have tried to work with these plaintiffs'

9    counsel in the past and coordinate.  And, again, we pride

10   ourselves on playing well with others, and I hope that we

11   could, indeed, all get along here.

12             THE COURT:  All right.  Well, every time I think

13   I understand this, it waxes more complicated, so I'm going

14   to stay this.  I'm sorry.  I don't understand all of the

15   implications of deciding all -- of having all the motions go

16   forward and what decisions need to happen in order to get a

17   level playing field with the players known.  You know, I

18   don't even know who the team is at this point yet, or the

19   opposing teams.

20             So what I'm going to do is, I'm going to start

21   my computer, which might take a while, to get a date to have

22   a status conference/hearing.  You know, I guess you'll let

23   me know whether it's a status conference or whether it's a

24   hearing on all of the pending motions.  You have to give me

25   your best guess as to when the JPML will have its decision,

1    and I am going to stay briefing until that.

2              So I guess it would just be a status conference.

3    I'm sorry.  And it could be that unless you think it is

4    helpful that we can have that over the telephone, I don't

5    generally like telephone conferences with many disembodied

6    voices, but I hate to put your clients to additional costs

7    if we're not talking about anything substantive, we're just

8    talking about briefing schedules, which, hopefully, you

9    could agree to, and other hearing dates.

10             MR. STRANGE:  Your Honor --

11             THE COURT:  Yes, sir?

12             MR. STRANGE:  -- can I make a suggestion?

13             THE COURT:  Sure.

14             MR. STRANGE:  And that is that perhaps if we

15   did, like, a five-page brief setting forth these issues for

16   your Honor, you can stay it right now, but I think once you

17   get it on paper, it might be clearer.  And I wondered

18   whether that would be helpful for the Court, for us to have

19   either letter briefing or otherwise on the -- on whether

20   this case should be stayed pending the JPML hearing, because

21   I think, you know, a couple month stay may be warranted, but

22   I think if we have it in writing, it might be helpful to

23   your Honor.  Your Honor can maybe stay the same decision.

24   I'm suggesting perhaps if we had some letter briefing on

25   this issue.

1   THE COURT:  Well, I have to say that having

2   something in writing would probably be helpful to me if it

3   were five pages or less, but I think it needs to be just

4   simultaneous, within a week from today.

5   MR. STRANGE:  Okay.

6   THE COURT:  Everything is stayed until I order

7   anything further.

8   MR. STRANGE:  That makes sense, your Honor.

9   THE COURT:  But let me just see what your

10  availability is, if my computer ever comes on.  I can't even

11  turn it off now.  But I still would like to set a date,

12  potentially a date so you get it on your calendar, I get it

13  on my calendar, in case I do decide to stay pending the JPML

14  decision and when you might think that is.

15  MR. STRANGE:  All right.

16  THE COURT:  So I think that answers question

17  two.  I don't think we're going to have discovery until we

18  get the motion practice, at least with everyone on the same

19  page.

20  Is there anything to be said about coordination

21  of the MDL with any pending State Court actions other than

22  it's happening?

23  MR. RUBIN:  Let me give you a brief update.

24  It's happening so far in that there hasn't been much action

25  in the state action yet either, but it hasn't been

1    formalized.  You may recall that prior to the February 24th

2    hearing, we submitted to you a proposed joint coordination

3    order.

4              THE COURT:  All right.

5              MR. RUBIN:  And you suggested to us that if we

6    wanted to talk that that order, we provide that to you.  We

7    didn't.  It has not been finalized.  We went back to Judge

8    Cramer, who was the judge hearing he case.  He had some

9    suggestions for modifying it to bring it into technical

10   compliance with California law.  We did that.  They were

11   minor.  Kim Richman, who you've been hearing from a lot

12   today, and Google, we agreed to it.

13             The MDL plaintiffs are still reviewing it.  In

14   the interim, in the past ten days, 12 days or so, the Judge

15   assigned to the case has changed.  It's no longer Judge

16   Cramer.  It's now Judge Carnell.  So we're scheduled for a

17   case management conference before Judge Carnell on

18   February 20th.  I will be frank and I will tell you I have

19   no idea what his view is towards that particular order.  So

20   instead of presenting it to you, it's not agreed to, and,

21   second of all, I don't know what the California Court's view

22   is going to be.  We'll look at that, and if it makes sense,

23   we'll submit it to, to your Honor.  If the Court out there

24   agrees to it, the MDL plaintiffs.  Otherwise, we can bring

25   it up at the next conference.  But everyone is on the same

1    page.  There needs to be substantive coordination so as to

2    reduce burden.

3                    THE COURT:  All right.  I have half my calendar

4    up.  All right.

5                    So the hearing isn't until March 21st, and then

6    they generally get decisions out within 30 days?  Is that

7    what I heard?

8                    MR. STRANGE:  Generally, your Honor.

9                    THE COURT:  So we're talking about a hearing in

10   early May?

11                   MR. RUBIN:  I think that's right.

12                   THE COURT:  Or a joint status conference.  I

13   will call it a TC at this point.  I'm in trial, so anything

14   I do would be at, like, 4:30 in the afternoon.  But if it's

15   a telephone conference, I assume that won't be too

16   burdensome.

17                   Would you all be available on -- well, it

18   depends how early.  I have times at 4:30 the week of

19   May 6th.  I may have 4:30 times afterwards.

20                   Do you think early May is going to do it?

21                   MR. STRANGE:  I think that would do it.

22                   THE COURT:  All right.  So Tuesday, May 7th,

23   4:30.  Five-page, basically, letter briefs on this issue of

24   whether everything should be stayed until the JPML makes its

25   decision and we have a better idea of what's going on.

1    Today is the 30th, so a week from today is February 6th.

2    And just simultaneous.

3              All right.  Is there anything else we can or

4    should address?  There are certainly a lot of things we

5    could address, but anything we should address today?

6              I certainly appreciate your patience with me and

7    your time.  And I will certainly try to address the issue of

8    a stay and what makes the most sense to me based on what you

9    submit promptly.  I'm just trying to get out of my computer

10   so I can let you go.  Okay.  I think I'm out.

11             All right.  Thank you, counsel.

12             (Counsel respond, "Thank you, your Honor.")

13             (Hearing concluded at 5:21 p.m.)

14                  -  -  -

15

16

17

18

19

20

21

22

23

24

25