**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE ) <br> PLACEMENT CONSUMER PRIVACY ) <br> LITIGATION ) <br> ) <br> ────────────────────────────── ) <br> ) <br> **This Document Relates to:** ) <br> **ALL ACTIONS** ) <br> ────────────────────────────── ) | Case No. 12-MD-2358 (SLR) |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND BRIEF IN SUPPORT**
**OF MOTION**

**TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs hereby move the Court for an order granting final approval of the settlement with Defendant PointRoll, Inc. ("PointRoll"). Plaintiffs file this motion pursuant to Federal Rule of Civil Procedure 23, on the grounds that the requirements for final approval are met, and the proposed settlement is fair, reasonable, and adequate. On October 7, 2013, this Court granted preliminary approval of the settlement, certified a Settlement Class, appointed Settlement Class Counsel and directed that notice of the settlement be issued. Plaintiffs now seek the Court's Order finding that the settlement is fair, reasonable and adequate and granting final approval.

**BRIEF IN SUPPORT OF MOTION**

**I.   NATURE AND STAGE OF THE PROCEEDINGS**

The background of this litigation and settlement is as follows: Named Plaintiffs in the Consolidated Amended Complaint and numerous other individuals filed complaints in various federal courts around the country in 2012. These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June

1

12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") against PointRoll and other parties ("Non-Settling Defendants"). Plaintiffs allege in the Complaint, on behalf of a nationwide class of consumers, that Defendant set cookies on Plaintiffs' Safari Browsers in conflict with the default cookie settings of such browsers in violation of the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, *et seq.*; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Plaintiffs allege that PointRoll deployed third-party tracking cookies when Plaintiffs and Class Members visited a website containing an advertisement placed by PointRoll by circumventing Plaintiffs' and Class Members' Safari Browser settings that blocked such cookies. Plaintiffs allege Defendant's secret and unconsented use of those cookies allowed PointRoll to knowingly intercept and gain access to Plaintiffs' and Class Members' Internet communications and activity in violation of federal statutes. PointRoll denies all allegations of wrongdoing; and it has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation relating to what PointRoll believes were permissible activities that were deployed for only a two-month period between December 13, 2011 and February 15, 2012. PointRoll filed a motion to dismiss all the claims against it on January 22, 2013

Plaintiffs and PointRoll agreed to this Settlement, and therefore filed a Joint Request to Stay the Proceedings on July 23, 2013. The parties stipulated, and the Court ordered, that all proceedings against PointRoll unrelated to settlement are stayed pending the Court's consideration of this Settlement. Thereafter, Plaintiffs filed their Motion for Preliminary Approval of the settlement. The Settlement Agreement and Declarations of Class Counsel were attached as exhibits to that motion (Docket 118) and, rather than attach additional copies of those

documents, Plaintiffs incorporate them by reference and in this pleading. Plaintiffs now seek final approval of the settlement.

## II. SUMMARY OF ARGUMENT

1. Having met all of the requirements of class certification, this Court certified the following class under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure (hereinafter, "Rule 23"):

> All persons in the United States of America who used the Safari Browser with the Safari Browser cookie settings set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers", and who visited a website containing an advertisement served by Point Roll and, as a result of which, Point Roll set cookies, and includes all persons described in paragraphs 191 and 192 of the Consolidated Complaint filed December 19, 2012.

(Docket 120, page 3.)

2. In the Court's Order granting preliminary approval of the settlement, the Court appointed Brian R. Strange of Strange & Carpenter, Stephen G. Grygiel and James Frickleton of Bartimus, Frickleton, Robertson &Gorny, P.C., as Settlement Class Counsel.

3. In the Court's Order granting preliminary approval of the settlement, this Court made the required findings that the Settlement met the standard for preliminary approval. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 445 (E.D. Pa. 2008) (standard is whether settlement is "within range of reasonableness"). The preliminary approval determination confirmed the three required factors were met: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785–86 (3d Cir. 1995); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). Because those factors were met, there is "an initial presumption of fairness." *In re*

*Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing *In re Gen. Motors Corp.*, 55 F.3d at 785). Plaintiffs now ask the Court to consider the final approval factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156–57 (3d Cir. 1975), and its progeny, which confirm that the Settlement is fair, reasonable and adequate and should be finally approved.

### III.    TERMS OF THE SETTLEMENT

The proposed Settlement with PointRoll was reached following extensive arms-length negotiations between Plaintiffs' counsel, Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton, on the one hand, and PointRoll's counsel, Alan Charles Raul and Edward R. McNicholas, on the other hand.[1] Plaintiffs and PointRoll discussed for several months the possibility of settling Plaintiffs' claims against PointRoll. Following many back and forth negotiations and discussions, the relevant parties agreed upon and executed a formal Settlement Agreement. Throughout the course of settlement negotiations, the parties took into consideration potential liability and damage issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court[2]; and how these factors could add to the cost, delay, and uncertainty of litigation. Class Counsel believe the proposed Settlement is fair, reasonable and adequate and should be approved by this Court.

The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and

---

[1] The entire executed Settlement Agreement has been filed with the Court as Exhibit A to the Declaration of Brian Strange. (See Docket 118)

[2] The Motion for Preliminary Approval of this Settlement was filed on September 23, 2013. Prior to that time, the settling parties had asked for and received a stay regarding the then pending motions to dismiss filed by PointRoll. At the same time, the non-settling Defendants had pending motions to dismiss. The Court granted preliminary approval of the settlement on October 2, 2013 and seven days later on October 9, 2013, granted the motions to dismiss the remaining non-settling Defendants.

other risks associated with continued litigation, trial, and/or appeal. Specifically, the Settlement Agreement, provides for substantial injunctive and prospective relief for Class Members, including PointRoll taking steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers[3] and PointRoll's maintenance in substance of recent changes to its cookie practices and privacy policy.

PointRoll will carry out its steps to expire or delete all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers by means of an expiration code designed to expire the cookies and through ordinary operation of the user's browser will result in the user's browser deleting existing Point Roll cookies when a user directs his or her Safari Browser to a webpage containing a PointRoll advertisement. This expiration code will be operational on PointRoll's servers for a period of twelve (12) weeks following entry of the Final Approval Order by this Court. The parties agree that this action by PointRoll is a practical, reasonable, and effective means of removing the cookies from Safari Browsers. *See* Settlement Agreement ¶ 3.1(a).

In addition, the Settlement Agreement calls for prospective relief limiting PointRoll's future cookie setting. *See* Settlement Agreement ¶ 3.1(b). Plaintiffs and Class Counsel have agreed not to object to, and release all future claims predicated upon, any prospective efforts by PointRoll to set new third-party cookies on any Safari Browser to the extent, but only to the extent, that PointRoll's setting of any such new cookies is done in a manner that complies with such browser's cookie settings. PointRoll agrees to maintain for two (2) years following entry of

---

[3]This will not apply to PointRoll "opt-out" cookies, which are cookies users can choose to accept that allow them to "opt-out" of PointRoll's third-party cookies themselves. Therefore, those users would not want the "opt-out" cookies to be expired or deleted.

5

the Final Approval Order, with substantially similar functionality, the "Remove All Cookies" feature that PointRoll currently maintains and displays on its home page and on its privacy notice.

PointRoll has also agreed to make available to its advertiser clients the option to include within their PointRoll advertisements an "AdChoices Icon,"[4] or an icon of a similar nature and purpose, for two (2) years following entry of the Final Approval Order. *See Id.* ¶ 3.1(c).

PointRoll also agrees to maintain the material privacy protections set out in its current privacy notice (reflecting revisions as of December 2012, after these actions were filed) substantially in their current form. The parties agreed that PointRoll will amend its website privacy notice to state expressly and conspicuously that: "PointRoll will not set cookies on user devices in contravention of a user's browser's cookie settings." PointRoll agrees to maintain this amendment to its privacy notice for two (2) years following entry of the Final Approval Order, subject to exceptions if law, precedent or regulatory guidance changes. *See Id.* ¶ 3.1(d). PointRoll also agrees to remain a member of the Network Advertising Initiative ("NAI") or any successor organization to NAI for two (2) years following the entry of the Final Approval Order. *Id.*

For two (2) years following entry of the Final Approval Order, PointRoll will include within its website privacy notice language that generally describes the categories of cookies that PointRoll uses, including first-party and third-party cookies, flash cookies, and web beacons; cookie durations; and cookie purposes (*e.g.*, frequency capping, sequencing, effectiveness

---

[4] Defined in the Settlement Agreement at paragraph 1.4 as "the icon displayed in online advertisements signifying the advertiser's adherence to the Self-Regulatory Program for Online Behavioral Advertising, managed at the time of the Agreement by Evidon, Inc. and the Digital Advertising Alliance ('DAA'). The Self-Regulatory Program for Online Behavioral Advertising currently permits online consumers to (i) opt-out of browser-enabled, interest-based advertising; (ii) ascertain which companies have enabled customized advertisements for the consumer's browser; (iii) determine which opt-out settings the consumer has already created."

metrics, and behavioral advertising). For two (2) years following entry of the Final Approval Order, PointRoll further agrees that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative, and PointRoll will not, through any contract with any advertisement publisher, negligently, knowingly, or intentionally violate its online privacy notice or agree to violate such policy. *See Id.*¶ 3.1(e).

Importantly, PointRoll has also agreed to provide Plaintiffs and Class Counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses, and termination of the Safari Cookie Technique (as defined in the Settlement Agreement), including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for which the Safari Cookie Technique was used. *See Id.*¶ 3.1(g). Plaintiffs believe these interviews will be very helpful for continued pursuit of this case against the Non-Settling Defendants.[5]

Lastly, the parties have agreed to a brief joint written public statement to be published for three (3) months on PointRoll's website and in the notice described below. PointRoll will state that its use of the Safari Cookie Technique for a period of two months was not consistent with best industry practices, and that PointRoll is pleased to take a leadership role by deploying new practices and commitments as stated in its revised privacy notice. Plaintiffs and Class Counsel will state that PointRoll's new privacy practices and commitments demonstrate online responsibility and reflect an important step towards enhanced online privacy practices. *See Id.*¶ 3.1(h).

---

[5] Plaintiffs have filed a Notice of Appeal of the Court's Order dismissing all claims against the non-settling Defendants.

The Settlement also provided for notice to the Settlement Class via ads served by PointRoll, as well as a notice of the Settlement published three consecutive Mondays in the legal notice section of the print and e-Newspaper editions of USA TODAY. Such notice has been completed. In addition, Class Counsel and PointRoll have reached an agreement on attorneys' fees, subject to approval by this Court. The Parties agree, subject to Court approval, that attorneys' fees and expenses of $115,000.00 represents a fair and reasonable amount to compensate Class Counsel for their representation of the Named Plaintiffs and Class Members in preparing, filing, and litigating this case against PointRoll, and arriving at this Settlement on behalf of Plaintiffs. Plaintiffs will also request, subject to approval by the Court, incentive awards for the four Named Plaintiffs not to exceed $500 each, which PointRoll has agreed to pay in the amount awarded by the Court.[6]

## IV. ARGUMENT

### A. The Settlement Class Should be Finally Certified Under Rule 23(a) and (b)(2)

When a class settlement occurs before class certification has taken place, a court may conditionally certify the case for settlement purposes. *In re Prudential Ins. Co. Am. Sales Practice Litig.Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998). The court uses the same Rule 23 requirements whether it certifies the class for trial or for settlement. *Id.* When certification is sought under Rule 23(a) and (b)(2), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the requirement of Rule 23(b)(2) that defendant acted on grounds generally applicable to the class, thereby making final injunctive relief appropriate

---

[6] Plaintiffs' Motion for Approval of Attorneys' Fees and Incentive Awards is filed separately and contemporaneously.

with respect to the class as a whole.

A class certification motion had not yet been filed in this action at the time of settlement. Nevertheless, this case is exactly the type of case that is particularly appropriate for settlement class certification and approval. Though this Court previously ruled preliminarily that class certification for settlement purposes met the requirements of Rule 23, Plaintiffs understand that the Court's final approval may rest on an independent evaluation of Rule 23's requirements. Though the Court's deadline for objections to the settlement has not yet passed, and to date, Plaintiffs' counsel has not received any communications from Class Members that object to the settlement, the Court in its final analysis of whether the settlement is fair, reasonable and adequate should still consider the Rule 23 requirements. This analysis, must balance the economic reality that class actions make remedies for small claims viable by "aggregating the relatively paltry potential recoveries [of putative class members] into something worth someone's …labor," *Amchem Products v. Windsor*, 521 U.S. 591, 617 (1997), citing *Mace v. Van RuCredit Corp.,* 109 F.3d 338, 344 (1997), against the duty to assure itself that there is "actual, not presumed, conformance with Rule 23(a)…." *General Telephone Co. v. Falcon*, 457 U.S. 147, 160-61 (1982).Settlements alter the Court's analysis only slightly. A class action settlement is not subject to a manageability analysis that would be required were the case to be tried. *Amchem*, 521 U.S. at 620. Otherwise, the requirements of Rule 23 may not be sacrificed on the altar of a settlement even if that settlement offers a "good deal." *Uhl v. Thoroughbred Tech. and Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

In this case, it is clear that the Rule 23 requirements are met. The Court certified the settlement class defined above[7] and all Rule 23 elements are satisfied.

---

[7]Excluded from the Class are Google, PointRoll, Vibrant, Media, WPP, and their officers, directors, employees,

1.    **Numerosity** under Rule 23(a)(1) is met because PointRoll has served ads to millions of users on Safari Browsers during the relevant time. This is more than sufficient to meet the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)).

2.    **Commonality** under Rule 23(a)(2), which requires that there be common questions of law or fact, is also present here for settlement purposes. This requirement is construed permissively, and there does not have to be "complete congruence" of common issues; even one common issue is sufficient. *Stewart*, 275 F.3d at 226–27 ("The commonality requirement will be satisfied if the named plaintiffs share at *least one* question of fact or law with the grievances of the prospective class." (emphasis added) (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994))); 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) [hereinafter *Newberg*] (the commonality standard is "easily met" for most settlement classes).

Here, for settlement purposes, there are many questions of law or fact that are common to the class, as required under Rule 23(a)(2): whether PointRoll's alleged business practice of circumventing Plaintiffs' and Class Members' Safari Browser security settings to transmit, access, collect, monitor, and remotely store users' data violated any of the three federal statutory claims asserted; how PointRoll carried out the Safari Browser circumvention; and whether

---

affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case and their immediate families.

Plaintiffs are entitled to statutory damages or other relief. In addition the common questions of fact related to PointRoll's alleged actions that sent the same computer code to many users support settlement certification under Rule 23(a)(2).

    **3.** **Typicality** under Rule 23(a)(3) "does not demand identical claims, only that they be reasonably coextensive with those of the absent class members." *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009) (citing *Baby Neal*, 43 F.3d at 57–58). This requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184–85 (3d Cir. 2001) (citations and internal quotation marks omitted). The Named Plaintiffs have alleged that they visited websites on their Safari Browsers during the relevant time period that were served ads by PointRoll, and therefore were subjected to PointRoll's alleged cookie circumvention technique. Therefore, the Plaintiffs' experiences were not only typical of the proposed Class— they were <u>identical</u> to the claims of the Settlement Class Members, as defined.

    4. **Adequacy** under Rule 23(a)(4) concerns whether the class representatives and their counsel will "fairly and adequately protect the interests of the class." This "requirement encompasses two distinct inquiries designed to protect the interests of absentee class members. First, it tests the qualifications of the counsel to represent the class. Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citations and internal quotation marks omitted). Both requirements are met here. There is no antagonism between Plaintiffs and the Class Members, all of whom assert the same underlying claims based upon the same conduct of

PointRoll. Plaintiffs and the Class Members allege to have visited sites on their Safari Browsers that had PointRoll ads, and the same PointRoll code allegedly caused cookies to be set in the same manner on each Safari Browser. Plaintiffs' adequacy is also shown by their agreement to serve as Representative Plaintiffs and their retention of experienced, competent counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class. (Docket 118, Strange Decl. ¶¶ 12-13; Grygiel Decl. ¶¶ 14-15; Frickleton Decl. ¶¶ 3-4.)

> 5. **Injunctive Relief. Rule 23(b)(2)** requires that Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. This element is easily met, as PointRoll served the same code that circumvented users' Safari Browser cookie settings to all Plaintiffs and Class Members. Therefore, injunctive relief is appropriate for PointRoll to take the actions described above.

**B.     The Settlement Should Receive Final Approval**

Rule 23(e) requires Court approval of a class settlement. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See In re Gen. Motors Corp.*, 55 F.3d at 784 (citing 2 *Newberg* § 11.41 (citing cases)). "The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *In re General Motors Corp.*, 55 F.3d at 784 (citing *First Commodity Corp. of Bos. Customer Accounts Litig.*, 119 F.R.D. 301, 306–07 (D. Mass. 1987)). "These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself." *Id.*

    **1.     The Settlement is Presumed Fair**

Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); 4 Newberg § 11.24. By preliminarily approving this settlement the Court has already found these factors to be present.

Counsel for each side—who are experienced plaintiffs' class action and defense attorneys—have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions. Their view that the proposed Settlement is a fair resolution of their dispute is entitled to considerable weight. *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 ("great weight" normally given to opinion of counsel regarding class settlement).

### 2. Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria considered by courts in evaluating class action settlements for final approval under Rule 23. The standard factors relevant to a determination of a settlement's fairness in the Third Circuit are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[8] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 156–57. The Third Circuit has

---

[8] Plaintiffs will not discuss the Class Members' reactions to the proposed Settlement, since the deadline to object has not passed. However, as of the date this brief is filed, Plaintiffs' counsel can state that they have not received any objections from Class Members.

stated that:

> In assessing the fairness of a proposed settlement, the Court should be careful not to substitute its image of an ideal settlement for the compromising parties' views: 'The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*In re The Prudential Insurance Company of America Sales Practices Litigation*, 962 F.Supp. 450 at 534 (D.N.J.1997), aff'd, 148 F.3d 283 (3d Cir.1998)(quoting *General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab.Litig.*, 55 F.3d 768 at 806 (3d Cir.), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995)(citations omitted). "Thus, the issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement."*Id.*

### a. The Complexity, Expense and Likely Duration of Litigation

This factor captures "the probable costs, in both time and money, of continued litigation," *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974), weighing the potential risks and rewards of proceeding with litigation in order to weigh the likelihood of success against the benefits of an immediate settlement. At the time the Settlement was reached, PointRoll had filed a motion to dismiss (as had the Non-Settling Defendants), which was pending. Plaintiffs and PointRoll strongly disagreed as to Plaintiffs' ability to maintain the action, obtain litigation class certification, and prove liability and damages at trial. While Plaintiffs are confident in their position and believe their claims are strong, Class Counsel are experienced and realistic and know that the information benefits here, coupled with guaranteed relief and certainty achieved through early settlement—as opposed to the uncertainty inherent in the trial and appellate process—weighs in favor of settlement.[9]

---

[9] Of course, the Court sustained the Non-Settling Defendants' motions to dismiss and likely would have also sustained PointRoll's motion but for this settlement.

14

This uncertainty is highlighted by the fact that PointRoll has maintained throughout the litigation that PointRoll conducted a limited deployment within the Safari browser to determine the effectiveness of mobile ads, which ended on February 15, 2012, approximately two months after beginning on December 13, 2011. PointRoll has maintained that the deployment did not involve the collection, retention, or resale of any specific personal information. PointRoll has also denied that the members of the Settlement Class suffered legally cognizable injuries as a result of the alleged conduct.

PointRoll is also prepared to mount a vigorous defense on numerous important questions, including whether the claims are legally viable; whether the case is properly subject to class certification for litigation purposes; and whether and to what extent Plaintiffs or members of the Class are entitled to damages and the amount of such damages. Therefore, while Class Counsel strongly disagree with PointRoll's analysis, and believe that both the law and facts support Plaintiffs' position regarding PointRoll's use of these cookies that violated federal statutes, there is clearly no guarantee that Plaintiffs will prevail in the district court or on appeal.

### b. The Stage of the Proceedings and the Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at 235. While formal discovery has not yet taken place, Class Counsel have made a thorough investigation into the facts and circumstances relevant to the claims at issue in the litigation. *See* Strange Decl. ¶¶ 2-7. Moreover, a material provision of the Settlement Agreement that was required by Plaintiffs' counsel was PointRoll's representation to Plaintiffs that PointRoll: (i) used its cookies for advertising effectiveness purposes that did not include

profiling specific users or behavioral advertising; (ii) used the Safari Cookie Technique for only two months; and (iii) received gross revenues not exceeding $25,000 USD from the campaign for which it developed the Safari Cookie Technique. *See* Settlement Agreement ¶ 3.1(f).

### c. The Risks of Establishing Liability and Damages

The *Girsh* factors concerning the risks of establishing liability and damages require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d at 579 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319). As discussed under element (a) of the analysis, *supra*, although Class Counsel are prepared to present strong evidence that PointRoll's cookie circumvention technique violated the federal statutes at issue, and that the Settlement Class is entitled to damages under these laws as a result, PointRoll is also prepared to mount a vigorous defense. Given these risks, Plaintiffs and Class Counsel believe the settlement with PointRoll, which will, in addition to the injunctive relief, provide Class Counsel and Plaintiffs the opportunity to interview cooperating PointRoll employees and uncover extremely valuable evidence in the case against the remaining defendants, outweighs the risks in establishing liability and damages at trial.

### d. The Risks of Maintaining Class Status

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986). While Plaintiffs strongly believe they

could certify a class for litigation, the risk of maintaining a class through trial is a consideration that Plaintiffs and Class Counsel believe supports this early settlement.

### e. Ability of Defendant to Withstand a Greater Judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240. While Plaintiffs believe PointRoll may have the ability to withstand a greater judgment, based on the other risks, Plaintiffs and Class Counsel believe the substantial injunctive relief and the valuable information that PointRoll will provide for Plaintiffs and Class Counsel in the ongoing litigation, which Plaintiffs believe will lead to much greater recovery against the Non-Settling Defendants, weigh this factor strongly in favor of settlement.

### f. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks

Under the proposed Settlement, PointRoll has agreed to take steps designed to expire or delete all third-party PointRoll cookies that exist in the Safari Browser files for Safari browsers (other than PointRoll "opt-out" cookies), and agrees not to take future actions to circumvent users' browser cookie settings. The proposed Settlement provides substantial injunctive relief that Plaintiffs believe remedies the privacy violations the Complaint describes. Moreover, the proposed Settlement provides Plaintiffs and Class Counsel with important information in their continued litigation against the Non-Settling Defendants.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order lodged concurrently herewith; find that the settlement is fair, reasonable and adequate and grant final approval.

Respectfully submitted,

| | |
|---|---|
| **BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.** | **STRANGE & CARPENTER** |
| */s/ James P. Frickleton* | */s/ Brian Russell Strange* |
| James P. Frickleton | Brian Russell Strange |
| Edward D. Robertston, Jr. | David Holop |
| Mary D. Winter | 12100 Wilshire Boulevard, Suite 1900 |
| 11150 Overbrook Road, Suite 200 | Los Angeles, CA 90025 |
| Leawood, KS 66211 | Tel: 310-207-5055 |
| Tel: 913-266-2300 | *lacounsel@earthlink.net* |
| *jimf@bflawfirm.com* | |
| *Executive Committee Member* | *Executive Committee Member* |
| | |
| **STEPHEN G. GRYGIEL** | **FINGER & SLANINA** |
| */s/ Stephen G. Grygiel* | */s/ David L. Finger* |
| Stephen G. Grygiel (DE Bar ID #4944) | Charles Slanina (DE Bar ID #2011) |
| Red Bank, NJ 07701 | David L. Finger (DE Bar ID #2556) |
| Tel:  732-539-3836 | One Commerce Center |
| sggrygiel@yahoo.com | 1201 N. Orange Street, 7th Floor |
| | Wilmington, DE 19801 |
| | Tel: 302-573-2525 |
| | *dfinger@delawgroup.com* |
| *Executive Committee Member* | *Liaison Counsel* |

## LOCAL RULE 7.1.1 STATEMENT

No party to this proposed settlement opposes the relief sought in this motion.  The non-settling Defendants have not been consulted due to the fact that they have been dismissed by the court.

Dated: December 2, 2013

/s/ *JamesP. Frickleton*
James P. Frickleton