## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION** )<br>)<br>)<br>)<br>)<br>)<br>**This Document Relates to:** )<br>**ALL ACTIONS** )<br>) | **Case No. 12-MD-2358 (SLR)** |

## BRIEF IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES AND FOR APPROVAL OF INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

## I.  INTRODUCTION

"A claim for attorney's fees and related nontaxable expenses must be made by motion...."
Fed. R. Civ. P. 54(d)(2)(A).  "In a certified class action, the court may award reasonable
attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."
Fed. R. Civ. P. 23(h).  This Motion is made by Settlement Class Counsel ("Class Counsel" or
"Counsel") on behalf of the attorneys who together represent the Class.  Consistent with the
Settlement agreement previously filed with the court, counsel seek the courts order awarding
combined attorney fees and expenses in the amount of $115,000.00 and awarding class
representative incentive awards to each Plaintiff of $500.00.

## II.  STANDARDS APPLICABLE TO CLASS ACTION FEE AWARDS

Well established precedent sets the standards courts apply in evaluating proposed
attorney fees in class action cases."[A] thorough judicial review of fee applications is required in
all class action settlements."*In re General Motors Corp. Pick–Up Truck Fuel Tank Products
Liability Litigation*, (*G.M. Trucks*) 55 F.3d 768, 819 (3d Cir.1995).  "In awarding attorneys' fees,
the district court has considerable discretion."  *In re Prudential Insurance Company America*

*Sales Practice Litigation Agent Actions*, (*Prudential*)148 F.3d 283, 342 (3d Cir. 1998). "What is important is that the district court evaluate what the class counsel actually did and how it benefitted the class." *Id.* at 342. In evaluating and creating a record on fee award proceedings in class action cases, it is important for the court to be transparent in its process. *In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 538 (3d Cir. 2009). Despite the "deferential standard of review, it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion." *Gunter v. Ridgewood Energy Corporation, et al.*, 223 F3d 190, 196 (3d Cir. 2000).

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." *Prudential* at 333. In circumstances "where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *G.M. Trucks,* 55 F.3d at 820.

It is just these circumstances that apply in this case. The recovery for the class involves both the dismantlement of the acts complained of by the plaintiffs in the Consolidated Complaint but also injunctive relief going forward in the future. Although the class members are not receiving any monetary payment, they are receiving substantial benefits including being put back in the position they were in before Point Roll began the conduct of bypassing the web browsers used by plaintiffs. The settlement also provides that Point Roll refrain from such conduct in the future. And significantly, Point Roll has agreed to allow counsel to interview key employees regarding the web browser bypass project. These important settlement provisions provide for a settlement which does not allow and easy determination of monetary value. Consequently, the lodestar method is the appropriate one to use in this case.

## III.  THE SETTLEMENT AGREEMENT

### A.  BENEFITS TO THE CLASS

Client's counsel has detailed for the Court in both the Motion for Preliminary Approval

and the Motion for Final Approval terms of the settlement.  In addition, the Court can review the

Settlement Agreement itself.  Nevertheless, it is important to review the real and tangible

benefits procured for the class by virtue of this settlement.  Understanding the potential liability

and damages issues; the risks of dismissal, class certification, summary judgment and trial; the

possibility of appeals of any judgment and/or rulings of the trial court; and how these factors

could add to the cost, delay, and uncertainty of litigation, class counsel negotiated this settlement

at arm's length with counsel for PointRoll.  The settlement provides for substantial injunctive

and prospective release for class members:

1. PointRoll will expire or delete all third party PointRoll cookies that exist in the
   Safari Browser files for Safari Browsers (except "opt-out" cookies).  *See*
   Settlement Agreement, ¶ 3.1(a).

2. PointRoll has also agreed to limit the setting of future cookies.  *See* Settlement
   Agreement  ¶ 3.1(b).

3. Any prospective efforts by PointRoll to set new third party cookies on any Safari
   browser must be done in a manner that complies with such browser's cookie
   settings.  For two years following the entry of a Final Approval Order, PointRoll
   will maintain the "Remove All Cookies" feature that PointRoll currently
   maintains and displays on its home page and on its privacy notice.  *See* Settlement
   Agreement, ¶ 3.1(b).

4. PointRoll will make available to its advertiser clients and "AdChoices Icon" or an
   icon of similar nature for two years following entry of the final approval order.
   *See* Settlement Agreement, ¶ 3.1(c).

5. PointRoll also agrees to maintain the material privacy protections set out in its
   current privacy notice (reflecting revisions as of December 2012 after these
   actions were filed) substantially in their current form and PointRoll will amend its
   website privacy notice to confirm for all to see that "PointRoll will not set cookies
   on user devices in contravention of users' browsers cookie settings".  PointRoll
   will maintain this amendment to its privacy notice for two years following the

entry of the Final Approval Order, subject to exceptions if law, precedent or regulatory guidance changes. *See* Settlement Agreement, ¶ 3.1(d).

6. PointRoll will also include within its website privacy notice language that generally describes the categories of cookies that PointRoll uses, and PointRoll has agreed that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative and that PointRoll will not negligently, knowingly or intentionally violate its online privacy notice of agree to violate such policy. *See* Settlement Agreement, ¶ 3.1(e).

7. Importantly, PointRoll has also agreed to provide plaintiffs and class counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses and termination of the Safari Code Technique, including the technological methods Safari Code Technique involved in the business purposes for which Safari Code Technique was used. The Settlement Agreement with PointRoll was consummated prior to the Court's ruling dismissing the remaining defendants. Nevertheless, plaintiffs have appealed the Court's ruling in that regard and if that ruling is reversed, these interviews will be critical in pursuing this case against the non-settling defendants. *See* Settlement Agreement, ¶ 3.1(g).

8. The parties also agreed to a joint written public statement to be published for three months on PointRoll's website and which has already been published in the Notice to the Class. *See* Settlement Agreement, ¶ 3.1(h).

## B. ATTORNEY FEE PROVISIONS OF THE SETTLEMENT AGREEMENT

In addition to the benefits to the class described above, Section 3.2 of the Settlement Agreement provides that Point Roll will pay a total of $115,000.00 for attorney fees if approved by the Court:

3.2 Attorneys' Fees and Costs.

(a) The Parties agree that attorney's fees and expenses of $115,000.00 represents a fair and reasonable to compensate Class Counsel for their representation of the Named Plaintiffs and asserted Class Members in preparing, filing and litigating this case against PointRoll, and arriving at this settlement on behalf of Plaintiffs. The Parties further agree to jointly support these fees and costs, and jointly request that the Court approve and award such fees and costs in that amount.

The negotiations which led to the agreement that was reached between the parties regarding the amount that represents reasonable fees and expenses, and that the parties would jointly support a request that the court approve such award, were only begun after the other terms of the settlement were agreed to. Thus, there is no concern like that found in some settlements that the manner in which attorney fees are negotiated might create a conflict of interest on the part of class counsel. *Declaration of Brian Strange*, ¶ 8.

## IV. REQUESTED FEE

The plaintiffs ask the court to approve a total of $115,000 for combined attorney's fees and expenses. The court appointed lead class counsel and a plaintiff's steering committee to pursue the claims on behalf of the class against all defendants. In their consolidated amended complaint Plaintiffs alleged causes of action against Point Roll based on several claims that defendants violated federal statutes. Much of the work performed by plaintiff's counsel was work that applied equally to claims against all defendants, including the non-settling defendants. In other words, had Point Roll been the only defendant, counsel would still have had to do the legal research, draft many of the pleadings, consult the experts, prepare for and attend hearings, as well as all the rest of the work necessary to pursue litigation of this type. Consequently, counsel will present to the court a summary of the complete time records generated to date and will also provide a summary description of that portion of the aggregate work that relates to Point Roll. In addition, after the court has the opportunity to evaluate the summary records, should the court desire more detail, counsel can make available their detailed time records for an in camera review by the court.[1] Finally, counsel will present their incurred expenses to the court.

---

[1] Counsel's detailed time records may contain descriptions of work that are protected from disclosure by the attorney client privilege or the work product immunity.

Under the most conservative evaluation, this evidence will confirm that the requested amount is well within the fair and reasonable range.

A. **SUMMARY OF CASE WORK**

The Court's docket reflects some of the work required in this case. However, as is typically the case, that docket only scratches the surface of the work required. After the initial publicity regarding the Safari Bypass Browser Technique employed by the defendants, a number of proposed class action cases were filed all over the country. Once consolidated in an MDL proceeding, the following occurred:

1.    Class counsel (co-lead counsel and members of the Plaintiffs' Steering Committee) worked at length to form a coalition among the various lawyers involved to present a leadership team to the Court.

2.    When unanimity was impossible, class counsel prepared and presented the Rule 23(g) motion to the court which was ultimately granted.

3.    Thereafter, class counsel began work on the Consolidated Amended Complaint. That work was shared among counsel and involved substantial legal research and consultation with several experts in computer code, internet privacy and other technical specialties.

4.    Even before the anticipated motions to dismiss were filed, counsel began preparing for a response. Again, experts were consulted and legal research was done. All counsel kept close watch on other privacy cases and issues throughout the country.

5.    Even while motions to dismiss were pending, Class Counsel began negotiating a possible settlement with PointRoll. That process included even more consultation with experts to confirm the viability of the active and injunctive relief proposed in the negotiations.

Ultimately, class counsel did confirm that PointRoll could, in fact, expire or delete the offending cookies.

6.      Because the Settlement Agreement was not reached until shortly before the motions to dismiss were fully briefed, counsel was preparing the response to PointRoll's motion at the same time negotiations were occurring.  In fact, before requesting that the Court stay any action regarding defendant PointRoll pending an evaluation of the proposed settlement, the briefing on the dismissal motions was fully complete.

7.      After the settlement was reached, counsel began the process of moving the Court for preliminary approval and preparing class notice.

8.      As with any class action settlement, even if the Court enters final approval, there will remain additional work to finalize all aspects of the settlement.

### B.  LODESTAR TIME RECORDS

Attached to this motion are the Declarations of Brian R. Strange, James P. Frickleton and Stephen Grygiel, lead counsel appointed by the court.  Those declarations detail the work done by counsel and the lodestar incurred by counsel representing the class in the case against Point Roll.  *See* Strange Declaration, ¶¶ 11-14; Frickleton Declaration ¶¶ 4-7; Grygiel Declaration ¶¶ 19-24.  The total lodestar incurred by counsel in the case against Point Roll is 918.33 hours and $559,019.20.  In addition, for the case against Point Roll, counsel has incurred litigation expenses and costs totaling $12,920.14.  *See* Strange Declaration, ¶¶ 11-14; Frickleton Declaration ¶¶ 4-7; Grygiel Declaration ¶¶ 19-24.

In their motion and consistent with the Settlement Agreement, counsel seek a total of $115,000 for fees and expenses.  That amount is far less that the lodestar and expenses that was incurred on the Point Roll case.  In addition, counsel will spend additional time and expense

preparing for and travelling to the final fairness hearing as well as addressing any objections that may be made to the settlement.

## V.  INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

On occasion, many individualsare harmed by the same wrongful practice, yet individual actions are impracticablebecause the individual recovery would be insufficient to justify the expense of bringingseparate lawsuits. *Nat'l Ass'n of Consumer Advocates: Standards and Guidelines forLitigating & Settling Consumer Class Actions,* 176 F.R.D. 375 (West 1998). Thus, classactions allow individuals to aggregate their power and enable them to take on powerfuladversaries. *Id.*The Class Representatives in this case therefore made it possible for class members to pursue their claims. See,*In the Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 571 ("without a named plaintiff there can be noclass action").

Incentive awards are "fairly typical" in class actions. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir.2009). *See*, *Spicer v. Chicago Bd. Options Exch., Inc.*,844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993)(collecting cases) and *Varacallo v. Massachusetts Mutual Life Insurance Company*, et al., 226 F.R.D. 207, 257-58 (D. New Jersey 2005)(collecting cases). Such awards arediscretionary and serve to compensate named plaintiffs for work done on behalf of theclass, to make up for financial or reputational risk undertaken in bringing the action, andto recognize a willingness to act as a private attorney general. *Id.*In deciding whether togrant an incentive award to a named plaintiff, a court should consider the actions theplaintiff has taken to protect the class's interests, the degree to which the class hasbenefitted from those actions, and the amount of time and effort the plaintiff expended inpursuing the litigation. *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998).

Here, each Class Representative stood ready and was committed to go throughdiscovery as necessary and to be a part of any trial that would follow.The willingness to serve as representative, not only tocompensate for time actually spent, but for the willingness to come forward on behalf ofothers, is deserving of the modest incentive award of $500.00 requested here.

WHEREFOR, Class Counsel request the Court's order approving a total of $115,000.00 for combined attorney fees and expenses and for class representative incentive awards in the amount of $500 for each of the four class representatives.

Respectfully submitted,

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**

/s/ James P. Frickleton
James P. Frickleton
Edward D. Robertston, Jr.
Mary D. Winter
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
jimf@bflawfirm.com

Executive Committee Member

**STEPHEN G. GRYGIEL**

/s/ Stephen G. Grygiel
Stephen G. Grygiel (DE Bar ID #4944)
88 East Bergen Place
Red Bank, NJ 07701
Tel: 732-539-3836
sgrygiel@yahoo.com

**STRANGE & CARPENTER**

/s/ Brian Russell Strange
Brian Russell Strange
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
lacounsel@earthlink.net

Executive Committee Member

**FINGER & SLANINA**

/s/ David L. Finger
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801

Tel: 302-573-2525
*dfinger@delawgroup.com*

*Executive Committee Member*                    *Liaison Counsel*