UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION ) ) ) ) ) This Document Relates to: ) ALL ACTIONS ) ) | Case No. 12-MD-2358 (SLR) |

**DECLARATION OF STEPHEN G. GRYGIEL IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND AWARD TO THE CLASS REPRESENTATIVES**

Stephen G. Grygiel (DE Bar ID #4944)
88 East Bergen Place
Red Bank, NJ 07701

Tel: 407-505-9463
*sggrygiel@yahoo.com*
*Executive Committee Member*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**STRANGE & CARPENTER**
Brian Russell Strange
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**FINGER & SLANINA, LLC**
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Tel: 302-573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

*Additional Counsel on Signature Page*

1

I, Stephen G. Grygiel, declare:

1. I am an attorney licensed to practice law in Delaware, New York, Maine and Massachusetts and have practiced law for approximately 27 years. I am one of three court-appointed Executive Committee Members, with Brian R. Strange of Strange & Carpenter and James Frickleton of Bartimus, Frickleton, Robertson & Gorny, P.C. The Court appointed all three of us as Settlement Class Counsel on October 2, 2013. I make this declaration in support of Class Counsel's Application for Attorneys' Fees, Expenses and Award to the Class Representatives ("Fee Petition") and together with the Declarations of Mr. Strange and Mr. Frickleton. I incorporate those declarations by reference in my own declaration here.

2. Throughout the negotiations of the settlement with Defendant PointRoll, Inc. ("PointRoll"), I worked closely with Mr. Strange and Mr. Frickleton, as well as with PointRoll, Inc.'s lawyers, seeking to obtain the best possible settlement outcome for all Class Members.

3. Mr. Strange's and Mr. Frickleton's declarations will more specifically set forth their own and their firms' work, respectively, in negotiating and finalizing the PointRoll settlement.

4. I am personally familiar with the facts I state in this declaration, based on my direct and substantial participation in the settlement discussions, negotiations and drafting of the settlement documents. If called to testify, I could and would testify under oath to the facts in this declaration, all of which are based on my personal knowledge.

**Cohesive Efforts of Counsel**

5. From the outset of this litigation, and having briefed and argued before the Joint Panel on Multidistrict Litigation for the Delaware venue of this MDL case, I sought to develop a privately-ordered, consensually-based leadership structure.

6. Beginning in approximately June 2012, I worked closely with Messrs. Frickleton and Strange to develop an Executive Committee, Plaintiffs' Steering Committee, and to develop a framework for a consolidated amended complaint and for the pleading, discovery and ultimate trial of this case.

7. Beginning in approximately June 2012, I spoke with numerous lawyers for plaintiffs in many of the other transferred and consolidated cases, seeking an agreed-upon leadership structure that would efficiently and effectively prosecute this MDL case to obtain the best possible result for the Plaintiffs and Settlement Class Members. Mr. Strange, Mr. Frickleton and I drafted a proposed application for our appointment as interim lead counsel. We also prepared proposed ESI protocol order and proposed stipulated protective order. We showed that we were fully committed to the case's success and that we were able to fund, organize and litigate the case efficiently and effectively.

8. The Executive Committee Members have jointly litigated this MDL action, cooperating and consulting continually in making decisions and doing substantive work. We have done our best to allocate work appropriately, seeking to put forth the best legal work possible as efficiently as we could, avoiding unnecessary and redundant work. Our Executive Committee works very well - while we have many skills in common, and share numerous similar experience in cases of this magnitude, we also have complementary skills and sought to use those as effectively as possible. Working solely on a contingency basis, none of us had any

incentive to work other than as efficiently as possible. Similarly, we sought to avoid any unnecessary spending, seeking to make sure that every dollar of incurred cost was directly related to prospering our work for the Settlement Class and obtaining for them the best result we could.

9. My work on this case has been from the outset strictly on a contingent compensation basis, for both attorneys' fees and costs.

10. With the other Executive Committee and Plaintiffs' Steering Committee members, I did a number of tasks that advanced the interests of all the Settlement Class Members. I prepared for and participated in many calls with the Executive and Plaintiffs' Steering Committees discussing the Plaintiffs' legal theories, the facts of the case, statutory and case law issues, and strategic considerations. I researched and drafted a great deal of the consolidated Amended Complaint filed on or about December 19, 2012. I participated directly in the initial negotiations with PointRoll, revised and discussed numerous drafts of the Settlement documents, and, ultimately, participated in the final discussions leading to the settlement with PointRoll for which we now seek final approval.

11. With Messrs. Strange and Frickleton, I helped to organize the PSC's work on the Motions to Dismiss, reviewed and edited their drafts of sections of the Plaintiffs' briefs opposing the Defendants' dismissal motions, and was continually involved in scheduling and participating in Executive Committee and PSC conference calls and meetings. We assigned specific work to specific lawyers, seeking the most efficient and best representation of the Settlement Class in every phase of this case.

12. To summarize, through the Executive Committee's and PSC's close coordination we: (1) organized a leadership structure, and obtained substitute local counsel as PSC member

Stewart Law, withdrew from the case; (2) researched, briefed and argued successfully for appointment as Interim Lead Class Counsel under Fed. R. Civ. P. 23(g); (3) responded to PointRoll's combined opposition for appointment of interim class counsel; (4) researched, drafted and revised, and consulted with experts about, the consolidated class action Complaint filed on or about December 19, 2012; (5) researched, drafted, and revised Plaintiffs' opposition to PointRoll's motion to dismiss; (6) worked with opposing counsel concerning coordination of the California state court case, *Carandang*; (7) attended court appearances, including my oral argument on our group's motion for appointment under Fed. R. Civ. P. 23(g), the January 30, 2013 status conference that included discussion about the Eastern District of New York cases and their relationship to this MDL proceeding, and my oral argument on the Motions to Dismiss, which the Court heard on July 25, 2013; and (8) prepared numerous other documents, agendas, legal research memoranda, correspondence and other materials, such as the proposed Case Management Order, concerning the defendants' collectively and PointRoll specifically, including materials specific to the PointRoll settlement.

13. I directly, substantively and substantially worked directly to advance the case and Plaintiffs' claims against PointRoll. This work included, without limitation: (1) factual research; (2) legal research, investigating, analyzing statutory and case-law based causes of action; (3) researching Rule 23 issues, for purposes of understanding and being prepared to argue for both litigation and settlement classes depending on further case developments; (4) staying abreast of legal and factual developments, and possible precedential effects, of other privacy rights cases; (5) specifically investigating PointRoll's business, use of cookies, and advertising practices; (6) working with local counsel to ensure our filings satisfied the Local Rules.

14. Although the Plaintiffs have not yet been able to commence formal discovery, the Executive Committee carefully investigated and developed this case's facts, and diligently developed and framed the legal claims and underlying arguments that the case's facts support. With expert assistance the Executive Committee developed an understanding of the technical intricacies of the Defendants' and PointRoll's cookie placement practices. We focused closely on the Wiretap Act, Stored Communications Act, and Computer Fraud and Abuse Act, and their technical, factually intensive, elements. For example, we researched, read and analyzed hundreds of cases, articles and other sources, just what constitutes "contents," "interception" and "device" for Wiretap Act purposes; how and why text-managed files function as devices; what "storage" - transient, post-receipt, or otherwise - qualifies for SCA protection; how the SCA and Wiretap Act overlap and the implications of that overlap; how to interpret the $5,000 damages requirement in the CFAA; and numerous other issues in this quickly developing area of the law.

**Settlement Negotiations**

15. Cognizant of the Third Circuit's Report on Attorneys' Fees, and other ethical and legal norms, we did not discuss attorneys' fees and cost reimbursement with PointRoll's counsel until we had negotiated and agreed, in many, all arms'-length and good faith sessions, on the benefits PointRoll would provide for the class. These negotiations took place over approximately 8 months.

16. I was involved in each step of the PointRoll settlement. Among other things, and with my Executive Committee colleagues: I reviewed and revised many settlement emails and correspondence to PointRoll's counsel; was in many discussions, telephone calls and e-mails in negotiating the PointRoll settlement; analyzed PointRoll's sequentially proffered settlement terms and proposals, and framed responses and counteroffers; worked on the form and content of

notice, and discussed with an expert about the reach and quality of the appropriate required notice; discussed possible candidates to handle claim administration firms to handle the Settlement notice program; reviewed, analyzed and revised multiple drafts of the PointRoll Settlement Agreement and attendant documents, including documents filed with the Court seeking approval of the settlement.

17. The Settlement provides meaningful and varied benefits to the Settlement Class. The value of these benefits is enhanced by the Settlement's avoidance of additional uncertainties, delays, and other risks accompanying continued litigation through trial and likely appeal of any jury verdict or judgment.

18. With my fellow Executive Committee Members, I have received and responded to numerous emails from Settlement Class Members. None of those emails, to my knowledge, have reflected any opposition to the Settlement. To the contrary, many have affirmatively stated support for the settlement proposed. We will continue to respond to such inquiries ever after the Court conducts the final approval hearing.

**Steve Grygiel's Lodestar**

19. I and my firm have spent a total of 165 hours prosecuting the case against Point Roll. My hourly rate of $650 is reasonable in light of my skill and experience, the rates charged by counsel of comparable ability, expertise and experience, and the risk and complexity of this litigation.I have reviewed printouts of my time records for the December 2012 – August 2013 period. Below is a summary of my time using the same categories reflected in the declarations of Messrs. Frickleton and Strange (Category 1 for Investigations, Factual Research; Category 2 for Discovery; Category 3 for Pleadings, Briefs, Pretrial Motions, Legal Research;

7

Category 4 for Court Appearances; Category 5 for Settlement; Category 6 for Litigation Strategy, Analysis and Case Management; and Category 7 for Class Certification):

| **Total Hours** | **Total Lodestar** |
|---|---|
| 164.7 | $113,555 |

**Breakdown by Categories**

| | | |
|---|---|---|
| (1) | 6.2/hrs | $10,530 |
| (2) | .9/hrs | $585 |
| (3) | 84.1/hrs | $54,665 |
| (4) | 2.2/hrs | $1,430 |
| (5) | 2.6/hrs | $1,690 |
| (6) | 67.3/hrs | $43,745 |
| (7) | 1.4/hrs | $910 |

20. Corroborating the authenticity of my time entries, the majority, as expected given the posture of the case, reflect legal research and analysis/case management. Some overlap is inherent in the categories ("Analysis" and "Legal Research," for example), and some unavoidable arbitrariness is required to allocate contemporaneous time entries to particular task categories.

21. I, as did Ms. Tarter, routinely recorded my time on this case, and the PointRoll claims and settlement, contemporaneously with the work I was doing. Because I separated from my former firm, Keefe Bartels effective September 30, 2013 and do not have access to my time and expense records at that firm for the period of September 1, 2013 through the present, I am

8

compelled at this juncture to estimate some components of my time on the case. I have worked a substantial number of hours on the PointRoll settlement and appeal issues since August 2013, the last date for which I have time records from my former firm.

22. My lodestar is based on my ordinary professional billing rate that I charge in all Third Circuit cases. My expenses are separate from the lodestar, and billed separately from, not included in, the lodestar. My pre-December 2012 time, time from September 1, 2013 through the present, and the time I spent on this Declaration and in other PointRoll matters during those periods, are not included in this request.

23. My former firm and I, personally, incurred a total of approximately $3,636.80 in unreimbursed out-of-pocket expenses in prosecuting the case against Point Roll. These expenses were necessary and reasonably incurred in the prosecution of the case against PointRoll. My former firm contemporaneously entered these expenses in the firm's bookkeeping system, based on receipts, check records and other source materials. The following expenses accurately reflect the expenses incurred.

| Amount | Itemized Expense |
|---:|---|
| $2,500 | Contribution/Assessment |
| $2.35 | Photocopies/Scans |
|  | Court Fees, Filing Fees |
| $1,077.35 | Computer Research (Legal, Online, etc.) |
| $16.65 | Telephone/Conference Call Charges |

9

| | |
|---:|---|
| $36.95 | Travel Non-Local |
| $3.50 | Parking |
| **TOTAL:**$3,636.80 | |

**Biographical Information and Qualifications**

25.     As already contained in the Plaintiffs' submissions to the Court in connection with our appointment as Interim Lead Class Counsel under Fed. R. Civ. P. 23(g), I have played a lead role in many successful large and complex class actions, producing excellent results for class members.  I incorporate that information here by reference.  However, I specifically note that I also serve on the Executive Committee in the MDL case, *In Re FacebookTracking Cookie* litigation now pending in the Northern District of California, in which in which I also argued the majority of the Plaintiffs' opposition to the Defendant's Motion to Dismiss.

26.     I have worked very hard from the outset of this case to get the best result possible for the Settlement Class Members, working purely on a contingency fee basis, for approximately nine months.  I ran at all times the substantial risk of never being compensated for the hundreds of hours they devoted to this litigation or their out-of-pocket expenses.

27.     I believe this settlement is fair and reasonable and in the best interest of the Settlement Class Members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 2nd day of December, 2013, at Red Bank, New Jersey.

       /s/   Stephen G. Grygiel  
Stephen G. Grygiel  
88 East Bergen Place

                                                                 Red Bank, NJ 07701
                                                                 407-505-9463
                                                                 sggrygiel@yahoo.com
                                                                 *Executive Committee Member*