# EXHIBIT 1

**USA TODAY**
MONDAY, NOVEMBER 11, 2013

# orite? Deep in heart of Texas

world's most frequent ...elers who volunteer in- ...the news outlet. A total ...ded with their choices ...d least-favorite airports ...d abroad.

...t/Worth finished No. 1 ...airports, and Amster- ...ol airport ranks at the ...airports.

...rite? Chicago's O'Hare ...e Gaulle in Paris. ...Worth was mentioned ...y 45 of the 247 respon- ...'s airport, despite La- ...ences, finished second, ...the Detroit and San ...orts.

...a and Detroit airports ... navigate" and "offer ...ties with diverse shop- ...aurants," says frequent ...eler Kenneth Nugent of ...ho works in the meter-

...irports "are very com- ...e event of long layovers ...d "generally a pleasant ...e says.

...ough, has nothing good ...Chicago's O'Hare, his ...airport.

...congestion makes it dif- ...ke connecting flights ...o much time" is spent ...e tarmac for an open ...hts arrive early or late,



**Dallas/Fort Worth has fans.**
LOUIS DELUCA, AP

### WHICH AIRPORTS MAKE THE LIST?

A USA TODAY survey asked 247 Road Warriors to name their favorite and least-favorite airports. The number following each airport is the number of Road Warriors who mentioned it.

| Favorite domestic airport | | Favorite foreign airport | |
|---|---|---|---|
| Dallas/Fort Worth, | 45 | Amsterdam, | 36 |
| Atlanta, | 33 | Hong Kong, | 34 |
| Detroit, | 29 | Singapore, | 34 |

| Least-favorite domestic airport | | Least-favorite foreign airport | |
|---|---|---|---|
| Chicago O'Hare, | 53 | Paris Charles de Gaulle, | 43 |
| Los Angeles, | 46 | London Heathrow, | 39 |
| Atlanta, | 40 | Frankfurt, | 13 |

Nugent also complains that ground crews for service planes are slow; movement between concourses is "inconvenient"; amenities for travelers are "disappointing and limited"; and restaurants have long lines and insufficient seating.

O'Hare, though, has its defenders, including 24 Road Warriors who say it is their favorite airport.

Bruce Thompson of Frisco, Texas, who works in the consumer packaged-goods industry, says O'Hare has "great restaurants for people-watching" and a new wine and piano bar.

O'Hare spokeswoman Karen Pride says there's good news for fliers complaining about delays. A new runway to "substantially reduce delays" and increase aircraft capacity opened last month, and another runway will open in 2015.

Pride says new restaurants have also opened, including a "critically acclaimed" Japanese seafood and sushi bar.

Like O'Hare, opinions are very mixed about London's Heathrow.

Road Warriors rank Heathrow No. 4 on their favorite foreign airports list but also No. 2 on the least-favorite list.

Steve Tao of Los Angeles, who works in the television industry, criticizes Heathrow for "its exorbitantly high departure fees and stupidly long walking distances."

Donna Erickson of Winter

Springs, Fla., who works in the health care industry, says Heathrow has "the highest security I've seen anywhere," a great American Airlines lounge and "tons of dining and retail shopping."

Road warriors are far less divided about Charles de Gaulle in Paris. Forty-three of 247 road warriors said that it is their least-favorite foreign airport.

Robert Schukai of Marietta, Ga., who works in the mobile technology industry, says, "I simply have quit flying ever into Paris Charles de Gaulle.

"It just doesn't work at all on any level," Schukai says. "It's located way outside the city, it's a long, expensive taxi ride in, the design and layout are confusing, and there is literally nothing to do at that airport."

Aéroports de Paris did not respond to a request for comment.

Few road warriors had anything bad to say about Amsterdam's Schiphol, which finished No. 1 among favorite foreign airports.

Schiphol "is all on one level, and security is distributed," says Rob Strechay of Hopkinton, Mass., who works for a software marketing company. "Changing planes can be a long walk, but I have never had to run or miss a flight," he says. "Weather is generally good, so it limits delays. The airport facilities are fantastic — there's even a museum and a casino past security."

## LEGAL MONDAY

For advertising information: 1.800.872.3433 www.marketplace.usatoday.com

**IMPORTANT: LEGAL NOTICE**
THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT WITH POINTROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.**
PLEASE READ IT CAREFULLY.
This summary notice informs you about the settlement of *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point Roll, Inc. ("PointRoll") Plaintiffs allege that PointRoll set cookies on Plaintiffs' and Plaintiff Class Members' Safari browsers in conflict with the default cookie settings of such browsers in violation of federal statutes, namely the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing and has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation. Under the settlement, PointRoll has agreed to take steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all

# ...er linings from ...nes' playbook

...s to cut costs, ...y really done ...rs a favor?



...ODAY

suitcases. When their planes became pressurized, the liquids oozed all over the place. What a mess!

Now that we're limited to one quart-size, clear, plastic, zip-top bag with no more than 3.4 ounces, air travelers are packing smarter. I haven't experienced a single leak since 2006, the year the gel rule was imposed on us.

You know what? I think it's great. The TSA should keep the rule even

congestion makes it dif-
...ake connecting flights
too much time" is spent
the tarmac for an open
...ights arrive early or late,

| domestic airport | foreign airport |
|---|---|
| Chicago O'Hare, 53 | Paris Charles de Gaulle, 43 |
| Los Angeles, 46 | London Heathrow, 39 |
| Atlanta, 40 | Frankfurt, 13 |

...st also No. 2 on the least-favor-
...st... Tao of Los Angeles, who
works in the television industry, criti-
cizes Heathrow for "its exorbitantly
high departure fees and stupidly long
walking distances."

Donna Erickson of Winter

works for a software marketing com-
... walk, but I have never had to run or
miss a flight," he says. "Weather is
generally good, so it limits delays.
The airport facilities are fantastic —
there's even a museum and a casino
past security."

# ver linings from
# ...lines' playbook

**...ts to cut costs,
...y really done
...ers a favor?**



...TODAY

What annoys you the
most about air travel? Is
it the chaos that awaits
when you pull up to the
curb at the airport ter-
ime of year? How about
...of being screened by the
...aybe just knowing that
...ng more but getting so

...a deep breath and say it
...ank you."

...proach Thanksgiving, I,
...eeling grateful.

...y Jo Baas, a consultant
...kee. She sees the upside
...cuts in services and me-
...ularly in economy class.
...ber being offered free
...ottles of liquor every
...ght attendant passed by,
...n international flights,"
...ever see that anymore."
...u won't hear her

...ikful," she says. "There
...ny drunk, obnoxious pas-
...flights

...also
...cel out
...d on
...ts they
...meals.
...e, a re-
...consult-
...Boise,
...that.
...to bring
...d," she
...lunch I
...ome is
...quality,
...d I just
...I want
...st."

...relent-

suitcases. When their planes became
pressurized, the liquids oozed all over
the place. What a mess!

Now that we're limited to one
quart-size, clear, plastic, zip-top bag
with no more than 3.4 ounces, air
travelers are packing smarter. I
haven't experienced a single leak
since 2006, the year the gel rule was
imposed on us.

You know what? I think it's great.
The TSA should keep the rule even
after they give the "all clear" on our
carry-on liquids, which should have
happened about five years ago. But
hey, who's counting?

If you think being thankful for the
hassles is a sick exercise that only
serves the airline industry, maybe
you should talk to Dean Starovasnik,
a frequent air traveler who is a direc-
tor for an engineering company in
Norcross, Ga. He's thankful for his
home airport, the endlessly confus-
ing Hartsfield–Jackson Atlanta Inter-
national Airport. It's the world's
busiest airport, so of course it's a
labyrinth.

"For an inexperienced traveler, it
can be intimidating," he admits.

"But Atlanta has all the bells and
whistles that many smaller airports
don't. These include TSA Pre-Check,
Delta Sky Club rooms, lots of conve-
nient parking choices and some very
nice, healthy and varied — though
somewhat expensive — dining
options."

I have similar feelings about my
home airport, Orlando International,
except that it's created with the tour-
ist in mind, and ev-
erything is easy.
Unless you're sit-
ting in one of those
legendary lie-flat
seats, airports may
be the best part of
air travel today.
Thanks for that.

Whether they're
lost, short on sun-
block thanks to
TSA restrictions,
or starving, air
travelers can be re-
markably under-
standing and
grateful for the lit-
tle things. But it
doesn't necessarily

2006 AP FILE PHOTO BY CALEB JONES
**Rules limiting liquids on airlines**

## LEGAL MONDAY

For advertising information: 1.800.872.3433  www.marketplace.usatoday.com

**IMPORTANT: LEGAL NOTICE**
THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT
WITH POINTROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.**
PLEASE READ IT CAREFULLY.

This summary notice informs you about the settlement of *In re Google Inc. Cookie
Placement Consumer Privacy Litigation*, United States District Court, District of
Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point
Roll, Inc. ("PointRoll") Plaintiffs allege that PointRoll set cookies on Plaintiffs' and
Plaintiff Class Members' Safari Browsers in conflict with the default cookie settings of
such browsers in violation of federal statutes, namely the Electronic Communications
Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored
Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and
Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing
and has agreed to settle the case to avoid the uncertainties, expenses, and time of
further litigation. Under the settlement, PointRoll has agreed to take steps designed
to expire or delete, by modifying the cookie deletion date contained in each cookie, all
third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers
(other than "opt-out" cookies). PointRoll has also agreed to maintain its current
"Remove All Cookies" feature for two (2) years and to other injunctive and prospective
relief detailed more fully in the Settlement Agreement. If you are a person in the United
States of America who used the Safari Browser with the Safari Browser cookie setting
set, by default or by choice, either to accept cookies from "visited" sites or to block
cookies from "third parties and advertisers," and who visited a website containing an
advertisement served by PointRoll and, as a result of which, PointRoll set cookies,
then you are a Settlement Class Member, and the proposed settlement could affect
your legal rights.

PointRoll has acted on grounds that apply generally to the Settlement Class, so that
final injunctive relief is appropriate respecting the Settlement Class as a whole. You
do not have the right to exclude yourself from the Settlement. You will be bound by the
settlement and will release any and all claims that you may have against PointRoll and
related parties about the conduct at issue in this lawsuit. You have the right to object
to this settlement and/or Class Counsel's application for $115,000 in attorneys' fees
and costs, and $500 incentive awards for each of the four (4) Class Representatives
($2,000 total), and/or to indicate your intent to appear at the final fairness hearing. To
do so, you must follow the instructions in the Notice described below. The deadline
to file a notice of appearance and/or any objections is December 23, 2013. Any
Settlement Class Member may hire an attorney at his or her or its own expense.
Such attorney shall serve a Notice of Appearance on Class Counsel and PointRoll
counsel by December 18, 2013, and file it with the Court on or before December 16,
2013. The Court will hold a final fairness hearing to decide whether to approve the
proposed settlement on January 3, 2014 at 10 a.m., at the U.S. District Court located
at 844 North King Street, Wilmington, Delaware 19801-3570. This date is subject to
continuance by the Court.

This is only a summary notice of the settlement. Additional information regarding
the allegations and claims asserted in this case, this settlement, your rights as a
class member, and Class Counsel's application for an award of attorneys' fees
and costs and incentive awards for each Representative Plaintiff, is available at
http://www.pointroll.com/documentation/legal-notice or from Class Counsel, Brian
R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA
90025, (310) 207-5055,lacounsel@earthlink.net; Stephen G. Grygiel, 88 East Bergen
Place, Red Bank, NJ 07701 (732) 268-7367, sggrygiel@yahoo.com; and/or James
P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Rd.,
Ste. 200, Leawood, KS 66211, (913) 266-2300, jimf@bflawfirm.com.
**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS.**

**TRUSTEE'S NOTICE TO PURCHASERS OF PENNY STOCKS
FROM RYAN REYNOLDS, BELLATALIA LP OR
LUGANO FUNDS LLC TO FILE CLAIMS**

Diane G. Reed, the Chapter 7 trustee (the "Trustee") of the
Ryan M. Reynolds bankruptcy estate in a case pending in the U.S.
Bankruptcy Court for the Northern District of Texas, Dallas Division
(Case No. 10-38773-hdh-7; the "Reynolds Case"), gives the following
notice to certain investors (the "Investor Claimants") who incurred
losses resulting from their purchase from one of the parties named
above during 2004, 2007 and/or 2008 of any of the following stocks:
(i) American Television & Film Company, (ii) Ecogate, Inc., (iii) Media
International Concepts, Inc., (IV) Vanquish Productions, Inc.,

**USA TODAY**

MONDAY, NOVEMBER 18, 2013



MIKE FUENTES, BLOOMBERG NEWS

**Mark Cuban celebrates his win in an insider-trading case Oct. 16.**

...themselves. We send the message that if our entrepreneurs can do it, so can you.

That is something I am proud to be part of. I can't tell you how many times people have told me the show has inspired them to start their own business or push themselves harder to make their business successful.

That is an amazing feeling for me and why I do the show.

**Q: You were active in the '90s with several Internet companies. Twitter went public, and Facebook and Google are on fire again. Are we entering another Internet bubble?**

A: I wouldn't call it a bubble. In a bubble, any company that resembles a high-flier takes off, as well. We aren't seeing Twitter or Facebook wannabes go public. We aren't seeing tiny social-media companies go public and run up.

What we are seeing instead is momentum investments that are driving stocks to new highs. That is not from being in a bubble; it's from the decline in the number of stocks available to investors. I think there are only 3,700 operating companies in the Wilshire 5000. There are fewer than half the number of public companies trading today than there were 15 years ago.

Which makes the point that more and more money is chasing fewer and fewer stocks. The law of supply and demand says that pushes up pricing until there is a better risk/reward somewhere else, or something else, like a flash crash/Nasdaq freeze, destabilizes market confidence and causes money to be pulled from equities again.

It will happen again. That is probably the only certainty there is in the stock markets.

**Q: Are you an investor in Twitter? What do you think of its prospects?**

A: No. It's a great company. I think they did the right thing by limiting the number of shares they offered to the market. That pushed up the price, which puts them in a great position: to do a secondary and not only raise more capital at a higher price, but also allows insider shares to be placed in the market in an orderly fashion.

All that said, I have not been chasing stocks here. I have no idea how high they will go, Twitter included. I tend to try to be patient, wait on the sidelines, be hedged and when whatever happens that will crush stocks, whenever it happens, I will be in great position to buy.

---

...no idea what she was ...e was looking for a name to ...n. To give you a sense of ...ey announced the charges ...e three weeks before Bernie ...s arrested. Maybe she ...off was coming, and she ...ething to divert attention ...aybe she was just desper...on on the wall. I don't ...at was certain was that ...ed the biggest bang for ...uck. Imagine how I felt to ...e morning of Nov. 18, ...turn on CNBC to find that ...on-stop headline. It wasn't ...ke me feel sick to my

...swer your question, I can ...You have to ask Ms.

*...note: Thomsen didn't ...e-mail seeking comment.)*

---

**SEC**

...u think it's that the SEC ...e the right resources and ...seeing business and the ...dustry, or are they just ...ake examples of high-...?

...they exemplify what ...nization you should ...n you have nothing but ...nd in particular, former ...r, running the show. From ...e and observation I have ...EC, it is obvious that ... e show. There is a ...ying to win, not trying to ...There is a culture of ...b. I ...hat

> "Every now and then, I love to invest in a company that may not set the world on fire, but has the chance to establish itself, create jobs and have a positive impact."
>
> *Cuban on his role in TV's* Shark Tank

...sources it needs, no ...true goals should ...get there ?

---

on lawyers than on the potential fines you would have had to pay. Why was it so important to take this to the mat?

A: Because I hate to be bullied. I love this country. The idea that the people who, over the first six years of my case, ran the SEC could just ignore facts and care only about winning and losing and have no interest in justice turned my stomach. I have the resources to fight. I felt compelled to take up that fight.

**Q: The SEC has been trying to be tougher on wrongdoing to show the world they're not asleep at the wheel after missing things like Bernie Madoff. Are they targeting the wrong people?**

A: It's not about who they target, it's the concept that PR solves the problem. The SEC tries to maximize the amount of press they can get. They have yet to prove, or my guess, even research and evaluate whether or not there is any correla...

---

this for profit or just for fun?

A: It's both. As far as size, it depends on how you value an NBA team. In my case, the team isn't for sale, so the value really doesn't matter. The only value that really matters to me is the value I can bring to our customers. I want them to love every minute of a Mavs game, no matter how they consume it.

**Q: You are also one of the stars of the show** *Shark Tank***, which features financiers analyzing and deciding whether to invest in new products presented by entrepreneurs. What's most important in deciding whether to put money into something?**

A: Sometimes you buy the horse, sometimes you invest in the jockey. It really comes down to the actual business and the upside. The ultimate scenario is a great entrepreneur with a business that is poised to explode. But every now and then, I love to invest in a company that may not set the world on fire but has the chance to establish itself, create jobs and have a positive impact.

*Shark Tank* is so unique in that we send the message every week that the...

that its true goals should get there. They
make markets fairer or
ating capital for business.
how to use the courts
atters. *(The SEC declined*

used to settle and went to
to spend more money

and efficient capital formation. Despite this lack of knowledge, they keep on taking the same approach year after year. You know the definition of insanity.

**Q: You're also the owner of the Dallas Mavericks. How big of a business is owning a basketball team? Is**

American dream is alive and well. We have entrepreneurs from all over the country, from every demographic, each with a company that any of our viewers could have created

Bartiromo is one of CNBC's *Closing Bell* anchor and managing editor of the nationally syndicated *On the Money with Maria Bartiromo.* Follow her on Twitter @mariaartiromo. To see previous columns, go to bartiromo.usatoday.com

# es social niceties



**Marc Benioff, CEO of Salesforce.com. The company is hoping sell more to existing customers, by helping them do the same.**

MIGUEL VILLAGRAN, GETTY IMAGES

ty and hair care giant.
ere some cases where we
than we should have and
l a (marketing) experi-
Barry Gilmore, L'Oreal
nformation officer.

real began using the mar-
analysis tools that Sales-
d out this year. The
lps automate the process
ng the interests of exist-
rs, then deciding which
to send to their social-
nts, via text or video ads.
rand managers used it to
usands of salon owners in
o, in turn, used it to cre-
ds of Facebook pages that
red with social-media ads
s and conditioners.
urn on investment was
," Gilmore says.

investment in the new
s, Benioff is trying to do
the same thing he's ad-
vising his customers to
do: sell more to exist-
ing customers. The
company pioneered
the business of selling
monthly software sub-
scriptions over the In-
ternet, earning Sales-
force steady revenue
growth for more than a
decade. Its shares have
since the company went
04, turning Benioff into a
nd philanthropist.

s main market has slowly
e company has been add-
customers. Now, after acquir-
media marketing tech-
g with start-ups Radian6
Media in 2012, Salesforce
sinesses identify, contact,

"Some people get a 20-times return on their social-media spending, but others don't even get their investment back," says Michael Lazerow, co-founder of Buddy Media, now chief marketing officer for Salesforce's marketing product.

If experienced consumer brands such as L'Oreal can use help with their social-media marketing campaigns, many small and midsize companies probably will need help, too.

Though the opportunity for Salesforce could be huge, it isn't a clear one, as Oracle and SAP, its chief rivals in the market for customer-tracking software, have also acquired social-media marketing start-ups. Google, too, has designs on the market, thanks to its acquisition of Wildfire, Buddy Media's chief start-up rival.

Facebook and Twitter, moreover, have developed their own marketing and ad technologies — while compiling a wealth of data on its users for targeting ads.

Still, Salesforce also has its own database on users, compiled in the past decade. The data can help identify which customers might be receptive to an online promotion.

Ford used the technology to send social-media ads to customers who had bought a vehicle five years earlier, thinking they might be ready for new wheels. That same type of marketing can be applied to any product or service with a predictable purchase pattern. "We're trying to create a new model that blends sales, service and marketing," Lazerow says.

Expect that model to be sold hard by Benioff and his company.

John Shinal has covered tech and financial markets for 15 years at Bloomberg, *Busi-*

## LEGAL MONDAY

For advertising information: 1.800.872.3433 www.marketplace.usatoday.com

**IMPORTANT: LEGAL NOTICE**
THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT WITH POINTROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.** PLEASE READ IT CAREFULLY.

This summary notice informs you about the settlement of *In re Google Inc. Cookie Placement Consumer Privacy Litigation,* United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point Roll, Inc. ("PointRoll") Plaintiffs allege that PointRoll set cookies on Plaintiffs' and Plaintiff Class Members' Safari Browsers in conflict with the default cookie settings of such browsers in violation of federal statutes, namely the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing and has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation. Under the settlement, PointRoll has agreed to take steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers (other than "opt-out" cookies). PointRoll has also agreed to maintain its current "Remove All Cookies" feature for two (2) years and to offer injunctive and prospective relief detailed more fully in the Settlement Agreement. If you are a person in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, then you are a Settlement Class Member, and the proposed settlement could affect your legal rights.

PointRoll has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not have the right to exclude yourself from the Settlement. You will be bound by the settlement and will release any and all claims that you may have against PointRoll and related parties about the conduct at issue in this lawsuit. You have the right to object to this settlement and/or Class Counsel's application for $115,000 in attorneys' fees and costs, and $500 incentive awards for each of the four (4) Class Representatives ($2,000 total), and/or to indicate your intent to appear at the final fairness hearing. To do so, you must follow the instructions in the Notice described below. The deadline to file a notice of appearance and/or any objections is December 23, 2013. Any Settlement Class Member may hire an attorney at his or her or its own expense. Such attorney shall serve a Notice of Appearance on Class Counsel and PointRoll counsel by December 16, 2013, and file it with the Court on or before December 16, 2013. The Court will hold a final fairness hearing to decide whether to approve the proposed settlement on January 3, 2014 at 10 a.m., at the U.S. District Court located at 844 North King Street, Wilmington, Delaware 19801-3570. This date is subject to continuance by the Court.

This is only a summary notice of the settlement. Additional information regarding the allegations and claims asserted in this case, this settlement, your rights as a class member, and Class Counsel's application for an award of attorneys' fees and costs and incentive awards for each Representative Plaintiff, is available at http://www.pointroll.com/documentation/legal-notice or from Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, (310) 207-5055, lacounsel@earthlink.net; Stephen G. Grygiel, 88 East Bergen Place, Red Bank, NJ 07701 (732) 268-7367, sggrygiel@yahoo.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Rd., Ste. 200, Leawood, KS 66211, (913) 266-2300, jimf@bflawfirm.com.

**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS.**

# For more information on how to place your ad in Legal Monday, call
## 1-800-872-3433
**Toll-free in the U.S. only**

markets for 15 years at Bloomberg, *Busi-*

**USA TODAY**

MONDAY, NOVEMBER 25, 2013



VIOR

little
ysfunction
normal,
t holidays
rn up heat

SAM WARD, USA TODAY

TV is rife with dysfunctional families, from Showtime's *Shameless* to *Arrested Development*.

But Renana Brooks, a clinical psychologist in Washington, D.C., says seeing such families on the screen can be troublesome.

"It trivializes it for people in a lot of pain and it overstates it for people who are not," she says.

In decades past, if families weren't perfect, they kept it to themselves. Not so today.

"This is just part of our culture," Lombardo says. "It's like complaining about your mother-in-law. It's a way to bond with other people — misery loves company. It can make us feel a little better: 'It's the family that's dysfunctional, but it isn't me.'"

Movies that have seized on dysfunctional Thanksgiving themes include *Pieces of April* (2003) starring Katie Holmes, about a family trying to create new memories and make peace with the past. Its writer and director, Peter Hedges, says Thanksgiving is his favorite holiday. "It's a perfect holiday about gratitude and being with people you love — and sometimes the people you love are those you don't like all that much, and that's when it gets interesting."

But the Thanksgiving film most cited by pop culture experts as the dysfunctional family classic is *Home for the Holidays* (1995), directed by Jodie Foster.

Starring Holly Hunter, it's based on a short story of the same name by Chris Radant of Martha's Vineyard, Mass. The idea came from her real-life recollections, which she says stemmed from jotting down "secret notes under the Thanksgiving table."

"I thought of it as a dysfunctional family, but on reflection, I think these families are very functional. They're dealing with people who are very unlike — who have distinct personalities and ideas from different decades and like different music and think in a different way. Sometimes they look like you, but you can't figure out why they aren't any closer to you than they are."

"It's difficult, but it functions," she says. "It may not even be fun, but you can walk away with the resolve that at least they're mine. I like that part, because I want to be theirs."

r issues and we deal
gh humor and sar-
hich is a little
."

y family is normal.
s, step-parents and
everybody just kind
r and acts like one
's still some chaos
ut in the end, every-
each other."

lividualism, families
pt their differences,
mpson, director of
for Television &
at Syracuse (N.Y.)

he dysfunctionality
family normalizes
ious thing. It can be
f we didn't love
wouldn't care what

## ADVICE TO HELP DOUSE THE FLAMES

Much of the difficulty we have with family stems from a deep desire to be right, because that makes us feel heard, says psychiatrist Daniela White. When that does not happen, we feel anxiety, resentment, sometimes anger. Her advice:

**1. SET REALISTIC EXPECTATIONS.** The dynamic in any family system has a long history. Do not expect it to change, but be pleasantly surprised if it does.

**2. SET BOUNDARIES.** These can be time, space and people you want or have to be around. Plan to maybe leave the scene when things get too heated, or choose a location where you would feel more resourceful (my house vs. yours.)

**3. PRACTICE A 'CHANGE OF PERSPECTIVE.'** Try to put yourself in the other person's shoes intermittently while interacting. Being stuck in seeing the world from your own perceptual position can bring a lot of unnecessary disappointments.

**4. DO NOT TRY TO CONTROL THE INTERACTION.** Some people feel they always have the right to pass an opinion

and are not flexible enough to see that your opinion is also valid even if it's different. Practice "defensive driving" for the sake of a pleasant evening.

**5. PRACTICE FINDING YOUR OWN SOURCE OF POWER.** Allow yourself to feel the feelings and let them pass over you like the waves in the ocean. If you need to adjourn to the bathroom to avoid a heated exchange, do so. That way you avoid being in a reactive mode.

**6. PRACTICE ACTIVE LISTENING.** Focus on what the other person has to say, show interest, and do not volunteer advice unless asked.

**7. DEFUSE THE HEAT.** Start with "I agree with you" when a red flag signals a possible heated interaction. Then say "... and I also believe X." That diverts the conversation without hurting feelings.

EMENT NOTICE

re, Inc. provided an electronically printed rom **March 3, 2010 to January 10, 2011** its of the person's credit card or debit card person's credit card or debit card.

oposed class action settlement has been *storation Hardware, Inc.*, Case No. 2:10-cv- *Hardware, Inc.*, Case No. 2:11-cv-00614- of these Lawsuits are pending in the United hio.

ed the Fair and Accurate Credit Transactions *seq.* by issuing receipts at the point of sale e numbers of customers' credit or debit card dware denies all allegations of wrongdoing, it or other determination of any liability.

**dware store in the United States between credit or debit card, your rights may be** he proposed settlement, each member of the member's choice, either a discount certificate are up to $1,000.00 (the "Certificate") or, in 0 (the "Gift Card") (collectively, the "Class

by direct mail or e-mail, to obtain the Class ete, accurate, valid, and timely Claim Form **Faribault, MN 55021-2669**, postmarked **no** lable at **www.rhifactasettlement.com** or by

**ent, you must exclude yourself by sending** be excluded from the proposed Settlement Hardware. I understand that by requesting ot receive any benefits under the settlement." uits (in other words, the Ehlers Lawsuit and nt address, and telephone number; (3) your n" at the top of the document. Your Request Administrator at **P.O. Box 3069, Faribault, ary 1, 2014.**

**o the settlement by January 1, 2014.** The **1, 2014**, to consider whether to approve the ither in person or through an attorney of your

**Settlement Class.** If you received notice by other than the Certificate if you do not submit rs who wish to receive the Class Benefit, you eceive the Class Benefit provided under the nditions of the proposed settlement. You will storation Hardware concerning or relating to

centive awards to Plaintiffs and attorneys' fees the Plaintiffs in this case class representative ntiff for the time and effort they have put into iffs Scott Ehlers and Frank Harmon's counsel l costs up to $1,800,000, which Restoration rdano's counsel have applied to the Court for estoration Hardware has agreed not to object.

ement and your rights, including a copy Release and a Claim Form, please visit ettlement Administrator at **P.O. Box 3069,** ll the Settlement Administrator toll free at

**IMPORTANT: LEGAL NOTICE**

THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT WITH POINTROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.**

PLEASE READ IT CAREFULLY.

This summary notice informs you about the settlement of *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point Roll, Inc. ("PointRoll") Plaintiffs allege that PointRoll set cookies on Plaintiffs' and Plaintiff Class Members' Safari Browsers in conflict with the default cookie settings of such browsers in violation of federal statutes, namely the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing and has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation. Under the settlement, PointRoll has agreed to take steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers (other than "opt-out" cookies). PointRoll has also agreed to maintain its current "Remove All Cookies" feature for two (2) years and to other injunctive and prospective relief detailed more fully in the Settlement Agreement. If you are a person in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, then you are a Settlement Class Member, and the proposed settlement could affect your legal rights.

PointRoll has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not have the right to exclude yourself from the Settlement. You will be bound by the settlement and will release any and all claims that you may have against PointRoll and related parties about the conduct at issue in this lawsuit. You have the right to object to this settlement and/or Class Counsel's application for $115,000 in attorneys' fees and costs, and $500 incentive awards for each of the four (4) Class Representatives ($2,000 total), and/or to indicate your intent to appear at the final fairness hearing. To do so, you must follow the instructions in the Notice described below. The deadline to file a notice of appearance and/or any objections is December 23, 2013. Any Settlement Class Member may hire an attorney at his or her or its own expense. Such attorney shall serve a Notice of Appearance on Class Counsel and PointRoll counsel by December 18, 2013, and file it with the Court on or before December 16, 2013. The Court will hold a final fairness hearing to decide whether to approve the proposed settlement on January 3, 2014 at 10 a.m., at the U.S. District Court located at 844 North King Street, Wilmington, Delaware 19801-3570. This date is subject to continuance by the Court.

This is only a summary notice of the settlement. Additional information regarding the allegations and claims asserted in this case, this settlement, your rights as a class member, and Class Counsel's application for an award of attorneys' fees and costs and incentive awards for each Representative Plaintiff, is available at http://www.pointroll.com/documentation/legal-notice or from Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, (310) 207-5055,lacounsel@earthlink.net; Stephen G. Grygiel, 88 East Bergen Place, Red Bank, NJ 07701 (732) 268-7367, sggrygiel@yahoo.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Rd., Ste. 200, Leawood, KS 66211, (913) 266-2300, jimf@bflawfirm.com.

**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS.**

**For more information on how to place your advertisement in Legal Monday, contact a sales representative at:**

# EXHIBIT 2

# TRAVEL

# Fliers' favorite? Deep in heart of Texas

## Road Warriors name Dallas/Fort Worth airport their top pick

**Gary Stoller**
@garystoler
USA TODAY

Frequent business traveler Kristine Lacoste likes Dallas/Fort Worth airport because it is "well-designed," easy to quickly move between terminals and has plenty of dining options.

The New Orleans resident doesn't feel the same way about Atlanta's airport, and "goes out of her way" to avoid it.

"The airport is too large, too congested, and I missed connections more often than not, even when not stopping for food," says Lacoste, managing editor of a website about pets. "Just going gate to gate is a challenge, and travel shouldn't be that stressful."

Frequent business travelers have favorite and least-favorite airports for many reasons, including ease of access, available services, security-screening efficiency and frequency of flight delays.

To get more airport opinions from seasoned business travelers, USA TODAY sent an informal survey to more than 1,600 Road Warriors —

some of the world's most frequent business travelers who volunteer information to the news outlet. A total of 247 responded with their choices of favorite and least-favorite airports in the USA and abroad.

Dallas/Fort Worth finished No. 1 among U.S. airports, and Amsterdam's Schiphol airport ranks at the top of foreign airports.

Least favorite? Chicago's O'Hare and Charles de Gaulle in Paris.

Dallas/Fort Worth was mentioned as a favorite by 45 of the 247 respondents. Atlanta's airport, despite Lacoste's experiences, finished second, followed by the Detroit and San Francisco airports.

The Atlanta and Detroit airports are "easy to navigate" and "offer modern facilities with diverse shopping and restaurants," says frequent business traveler Kenneth Nugent of Seneca, S.C., who works in the metering industry.

The two airports "are very comfortable in the event of long layovers or delays," and "generally a pleasant experience," he says.

Nugent, though, has nothing good to say about Chicago's O'Hare, his least favorite airport.

Air-traffic congestion makes it difficult to make connecting flights there, and "too much time" is spent waiting on the tarmac for an open gate when flights arrive early or late, he says.


Dallas/Fort Worth has fans.
LOUIS DeLUCA, AP

**WHICH AIRPORTS MAKE THE CUT?**

A USA TODAY survey asked 247 Road Warriors to name their favorite and least-favorite airports. The number following each airport is the number of Road Warriors who mentioned it.

| Favorite domestic airport | Favorite foreign airport |
|---|---|
| Dallas/Fort Worth, 45 | Amsterdam, 36 |
| Atlanta, 33 | Hong Kong, 34 |
| Detroit, 29 | Singapore, 34 |
| **Least-favorite domestic airport** | **Least-favorite foreign airport** |
| Chicago O'Hare, 53 | Paris Charles de Gaulle, 43 |
| Los Angeles, 46 | London Heathrow, 39 |
| Atlanta, 40 | Frankfurt, 13 |

Nugent also complains that ground crews that service planes are slow; movement between concourses is "inconvenient"; amenities for travelers are "disappointing and limited"; and restaurants have long lines and insufficient seating.

O'Hare, though, has its defenders, including 24 Road Warriors who say it is their favorite airport.

Bruce Thompson of Frisco, Texas, who works in the consumer packaged-goods industry, says O'Hare has "great restaurants for people-watching" and a new wine and piano bar.

O'Hare spokeswoman Karen Pride says there's good news for fliers complaining about delays. A new runway to "substantially reduce delays" and increase aircraft capacity opened last month, and another runway will open in 2015.

Pride says new restaurants have also opened, including a "critically acclaimed" Japanese seafood and sushi bar.

Like O'Hare, opinions are very mixed about London's Heathrow.

Road Warriors rank Heathrow No. 4 on their favorite foreign airports list but also No. 2 on the least-favorite list.

Steve Tao of Los Angeles, who works in the television industry, criticizes Heathrow for "its exorbitantly high departure fees and stupidly long walking distances."

Donna Erickson of Winter

Springs, Fla., who works in the health care industry, says Heathrow has "the highest security I've seen anywhere," a great American Airlines lounge and "tons of dining and retail shopping."

Road warriors are far less divided about Charles de Gaulle in Paris. Forty-three of 247 Road warriors said that it is their least-favorite foreign airport.

Robert Schukai of Marietta, Ga., who works in the mobile technology industry, says, "I simply have quit flying over into Paris Charles de Gaulle.

"It just doesn't work at all on any level," Schukai says. "It's located way outside the city, it's a long, expensive taxi ride in, the design and layout are confusing, and there is literally nothing to do at that airport."

Aéroports de Paris did not respond to a request for comment.

Few road warriors had anything bad to say about Amsterdam's Schiphol, which finished No. 1 among favorite foreign airports.

Schiphol "is all on one level, and security is distributed," says Rob Strechay of Hopkinton, Mass., who works for a software marketing company. "Changing planes can be a long walk, but I have never had to run or miss a flight," he says. "Weather is generally good, so it limits delays. The airport facilities are fantastic — there's even a museum and a casino past security."

---

**EXPERIENCE**
TRAVEL MONDAY

A look at highlights from USA TODAY's Experience Travel websites, which offer deep travel planning, research and inspirational content.


NORWEGIAN CRUISE LINE

**Best shows at sea**
Gone are most of the tacky sequins and feathers. Today, you can see real (albeit, slightly abridged) Broadway musical productions at sea. High-tech special effects and LED screens are enhancing new streamlined, 30-minute production shows on Carnival and Princess ships. On select Norwegian Cruise Line ships, you can laugh along with members of The Second City, the renowned Chicago-based improv comedy troupe that launched the careers of John Belushi and Gilda Radner, among others. Dinner theater is on the high seas with Cirque Dreams shows under a real circus big-top on Norwegian Epic and Norwegian Breakaway. The Norwegian Getaway, making its debut in January, adds a first-at-sea dinner theater/magic experience. Royal Caribbean has moved entertainment into new realms with its popular ice shows, featuring professional skaters performing on real rinks on its Voyager- Freedom- and Oasis-class ships; and with dramatic diving shows at the outdoor Aqua Theater on Oasis of the Seas and Allure of the Seas. For information on the top 12 shows at sea, visit www. usatoday.com/experience/ cruise/.

*Fran Golden*

**Cirque Week back in Vegas**
Hard-core fans of Cirque du Soleil should know that this week has their names written all over it. That's when the 4th annual Cirque Week takes place in Las Vegas, celebrating 20 years of groundbreaking performances in the entertainment capital. In 1993, Mystère at Treasure Island was the first Cirque du Soleil resident show, ushering in two decades of breathtaking athleticism and theater. Through Nov. 16, visitors can return to the hotel where it all began as Treasure Island is the host of Cirque Week. In addition to the shows, there will be special behind-the-scenes events from clown and juggling lessons to fire demonstrations and character meet-and-greets. For Las Vegas travel information, visit usatoday.com/ experience/las-vegas/.

*Grace Bascos*

---

# Silver linings from airlines' playbook

### In efforts to cut costs, have they really done passengers a favor?

**Christopher Elliott**
Special for USA TODAY

ON TRAVEL EVERY MONDAY

What annoys you the most about air travel? Is it the chaos that awaits when you pull up to the curb at the airport terminal this time of year? How about the indignity of being screened by the TSA? Or maybe just knowing that you're paying more but getting so much less?

Now take a deep breath and say it with me: "Thank you."

As we approach Thanksgiving, I, for one, am feeling grateful.

So is Mary Jo Baas, a consultant from Milwaukee. She sees the upside in the deep cuts in services and amenities, particularly in economy class.

"I remember being offered free miniature bottles of liquor every time the flight attendant passed by, especially on international flights," she says. "I never see that anymore."

But you won't hear her complaining.

"I'm thankful," she says. "There aren't as many drunk, obnoxious passengers on flights anymore."

Airlines also used to parcel out snacks, and on longer flights they even served meals. Joan Wallace, a retirement consultant in Boise, doesn't miss that.

"I prefer to bring my own food," she says. "The lunch I prepare at home is higher quality, healthier, and I get exactly what I want at a lower cost."

In their relentless efforts to cut costs, have airlines unintentionally done us a favor? We're drinking less and eating healthier, thanks to the accountants who drew lines through the in-flight amenities we used to complain about. That might be difficult to prove, but it's nice to think that a lack of services has inadvertently benefited us.

Thanks, deregulation.

While we're talking silver linings, why not swivel around and look at the other side of the gate? The Transportation Security Administration is famous for its nonsense rules. Among the oddest are the liquid-and-gel restrictions, some of which are mysteriously waived for elite-level frequent fliers who belong to its club-by "Pre-Check" program. The "special" air travelers who belong to Pre-Check are allowed to keep their liquids in their carry-ons.

I'm grateful for the TSA's liquid restrictions. Before the silly 3-1-1 rule went into effect as a knee-jerk reaction to a terrorist threat we've all forgotten about, passengers packed way too many lotions and potions in their


Rules limiting liquids on airlines might have unintended benefits.
2016 AP FILE PHOTO BY CALEB JONES

suitcases. When their planes became pressurized, the liquids oozed all over the place. What a mess!

Now that we're limited to one quart-size, clear, plastic, zip-top bag with no more than 3.4 ounces, air travelers are packing smarter. I haven't experienced a single leak since 2006, the year the gel rule was imposed on us.

You know what? I think it's great. The TSA should keep the rule even after they give the "all clear" on our carry-on liquids, which should have happened about five years ago. But hey, who's counting?

If you think being thankful for the hassles is a sick exercise that only serves the airline industry, maybe you should talk to Dean Starovasnik, a frequent air traveler who is a director for an engineering company in Norcross, Ga. He's thankful for his home airport, the endlessly confusing Hartsfield-Jackson Atlanta International Airport. It's the world's busiest airport, so of course it's a labyrinth.

"For an inexperienced traveler, it can be intimidating," he admits.

"But Atlanta has all the bells and whistles that many smaller airports don't. These include TSA Pre-Check, Delta Sky Club rooms, lots of convenient parking choices and some very nice, healthy and varied — though somewhat expensive — dining options."

I have similar feelings about my home airport, Orlando International, except that it's created with the tourist in mind, and everything is easy. Unless you're sitting in one of those legendary lie-flat seats, airports may be the best part of air travel today. Thanks for that.

Whether they're lost, short on sunblock thanks to TSA restrictions, or starving, air travelers can be remarkably understanding and grateful for the little things. But it doesn't necessarily go both ways.

My friends in the executive offices of American Airlines and US Airways are in a collective state of panic as their trial date approaches. The U.S. Department of Justice is trying to block their proposed merger, claiming that the combination would be bad for air travelers.

But maybe the airlines should be grateful for this little setback.

If Judge Colleen Kollar-Kotelly stops the merger, which she almost certainly will, then both companies will have a clear mandate to go out and compete separately. I know that's what the employees of both airlines really want because I've been getting their e-mails, and I read them loud and clear.

Here's hoping the judge will do the right thing and give American air travelers an early Christmas present. Is it too early to thank her?

*Christopher Elliott is a consumer advocate and editor at large for National Geographic Traveler. He's the author of the upcoming book, How to Be the World's Smartest Traveler (and Save Time, Money, and Hassle). Visit his website at elliott.org.*

---

**LEGAL MONDAY**

For advertising information: 1.800.872.3433    www.marketplace.usatoday.com

**IMPORTANT: LEGAL NOTICE**

THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT WITH POINTROLL, INC. **THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS.**
PLEASE READ IT CAREFULLY.

This summary notice informs you about the settlement of In re Google Inc. Cookie Placement Consumer Privacy Litigation, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR), with respect to one of the defendants, Point Roll, Inc. ("PointRoll"). Plaintiffs allege that PointRoll set cookies on Plaintiffs' and Plaintiff Class Members' Safari Browsers in conflict with the default cookie settings of such browsers in violation of federal statutes, namely the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. § 2510, et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq.; and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. PointRoll denies all allegations of wrongdoing and has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation. Under the settlement, PointRoll has agreed to take steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers (other than "opt-out" cookies). PointRoll has also agreed to maintain its current "Remove All Cookies" feature for two (2) years and to other injunctive and prospective relief detailed more fully in the Settlement Agreement. If you are a person in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and who visited a website containing an advertisement served by PointRoll and, as a result of which, PointRoll set cookies, then you are a Settlement Class Member, and the proposed settlement could affect your legal rights.

PointRoll has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not have the right to exclude yourself from the Settlement. You will be bound by the settlement and will release any and all claims that you may have against PointRoll and related parties about the conduct at issue in this lawsuit. You have the right to object to this settlement and/or Class Counsel's application for $115,000 in attorneys' fees and costs, and $500 incentive awards for each of the four (4) Class Representatives ($2,000 total), and/or to indicate your intent to appear at the final fairness hearing. To do so, you must follow the instructions in the Notice described below. The deadline to file a notice of appearance and/or any objections is December 23, 2013. Any Settlement Class Member may hire an attorney at his or her or its own expense. Such attorney shall serve a Notice of Appearance on Class Counsel and PointRoll counsel by December 18, 2013, and file it with the Court on or before December 16, 2013. The Court will hold a final fairness hearing to decide whether to approve the proposed settlement on January 3, 2014 at 10 a.m., at the U.S. District Court located at 844 North King Street, Wilmington, Delaware 19801-3570. This date is subject to continuance by the Court.

This is only a summary notice of the settlement. Additional information regarding the allegations and claims asserted in this case, this settlement, your rights as a class member, and Class Counsel's application for an award of attorneys' fees and costs and incentive awards for each Representative Plaintiff, is available at http://www.pointroll.com/documentation/legal-notice or from Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, (310) 207-5055, lacounsel@earthlink.net; Stephen G. Grygiel, 88 East Bergen Place, Red Bank, NJ 07701 (732) 268-7367, sgrygiel@yahoo.com; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Rd., Ste. 200, Leawood, KS 66211, (913) 266-2300, jimf@bflawfirm.com.
**PLEASE DO NOT CONTACT THE COURT WITH ANY QUESTIONS.**

---

**TRUSTEE'S NOTICE TO PURCHASERS OF PENNY STOCKS FROM RYAN REYNOLDS, BELLATALIA LP OR LUGANO FUNDS LLC TO FILE CLAIMS**

Diane G. Reed, the Chapter 7 trustee (the "Trustee") of the Ryan M. Reynolds bankruptcy estate in a case pending in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (Case No. 10-38773-hdh-7; the "Reynolds Case"), gives the following notice to certain investors (the "Investor Claimants") who incurred losses resulting from their purchase from one of the parties named above during 2004, 2007 and/or 2008 of any of the following stocks: (i) American Television & Film Company, (ii) Ecoquis, Inc., (iii) Media International Concepts, Inc., (iv) Vanquish Productions, Inc., (v) Auction Mills, Inc., (vi) Custom Designed Compressor Systems, Inc., (vii) Beverage Creations, Inc., (viii) Connect-A-Jet.com, Inc., (ix) My Vintage Baby, Inc., and/or (x) Alchemy Creative, Inc. (collectively, the "Stocks").

The Trustee has recovered funds from which the Investor Claimants may recoup some or all of their losses resulting from their purchase of any of the Stocks. In order to obtain a recovery, an Investor Claimant must file a claim with the Bankruptcy Court on or before **January 27, 2014**. A claim can be filed online at the Bankruptcy Court's website: (http://www.txnb.uscourts.gov), or a proof of claim that conforms substantially to the Bankruptcy Court's Official Form B10 can be completed and mailed to the Bankruptcy Court at the following address: 1100 Commerce Street, Room 1254, Dallas, Texas 75242.

Dated: October 28, 2013.

---

**For more information on how to place your ad in Legal Monday, call**
**1-800-872-3433**
Toll-free in the U.S. only

# EXHIBIT 3

If you used a Safari browser from December 2011 through February 2012, you may be covered by a class action settlement by Point Roll, Inc., one of the defendants in the case In re Google Inc. Cookie Placement Consumer Privacy Litigation, No. 12-MD-2358 (SLR) (D. Del). For more information click here.

If you used a Safari browser from December 2011 through February 2012, you may be covered by a class action settlement by Point Roll, Inc., one of the defendants in the case In re Google Inc. Cookie Placement Consumer Privacy Litigation, No. 12-MD-2358 (SLR) (D. Del). For more information click here.

# EXHIBIT 4

**The link below is http://www.pointroll.com/documentation/legal-notice/**

### NOTICE OF CLASS ACTION SETTLEMENT

*In re Google Inc. Cookie Placement Consumer Privacy Litigation, 12-MD-2358 (SLR)*
*United States District Court, District of Delaware*

IMPORTANT:

**THIS NOTICE IS BEING PROVIDED BY COURT ORDER. PLEASE READ THIS ENTIRE NOTICE CAREFULLY. A SETTLEMENT REACHED WITH DEFENDANT, POINT ROLL, INC., IN PENDING CLASS ACTION LITIGATION MAY AFFECT YOUR RIGHTS.**

This Notice answers the following questions:

1. Why should I read this Notice?[1]

2. What is the lawsuit about?[2]

3. Who are the members of the Settlement Class?[3]

4. What are the terms of the proposed settlement?[4]

5. What are the important dates?[5]

6. Who represents the Settlement Class and what are the associated attorneys' fees and expenses?[6]

7. What are the reasons for the settlement?[7]

8. What claims are being released?[8]

9. Can I exclude myself from the settlement and release?[9]

10. What is the settlement approval procedure and how can I make my views known?[10]

11. Where can I get additional information?[11]

## 1. WHY SHOULD I READ THIS NOTICE?

Your rights may be affected by a class action lawsuit filed by the plaintiffs in In re Google Inc. Cookie Placement Consumer Privacy Litigation, United States District Court for the District of Delaware, Case No. 12-MD-2358 (SLR). The purpose of this Notice is to provide important information to persons in the United States of America who used the Safari Browser with the Safari Browser cookie setting set, by default or by choice, either to accept cookies from â€œvisitedâ€ sites or to block cookies from â€œthird parties and advertisers,â€ and who visited a website containing an advertisement served by Point Roll, Inc. (â€œPointRollâ€ or â€œDefendantâ€) and, as a result of which, PointRoll set cookies, that: (1) a settlement of the Class Action (the â€œSettlementâ€ with PointRoll â€‘ but no other defendants â€‘ has been preliminarily approved by the court in Delaware; and (2) a hearing has been scheduled at 10:00 a.m. on January 3, 2014 in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware, located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568, to consider the fairness, adequacy, and reasonableness of the Settlement and Class Counselâ€™s request for attorneysâ€™ fees and expenses and incentive awards for the Representative Plaintiffs.

This settlement, if finally approved at the fairness hearing, will resolve the litigation with respect to Defendant PointRoll only, subject to any appeals. The litigation will continue with respect to the Non-Settling Defendants.

## 2. WHAT IS THE LAWSUIT ABOUT?

Named Plaintiffs in the Consolidated Amended Complaint and numerous other individuals filed complaints in various
federal courts around the country in 2012. These actions were centralized and transferred to the United States District
Court for the District of Delaware for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. Â§ 1407
on June 12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint (the â
€œComplaintâ€) against PointRoll and other parties (â€œNon-Settling Defendantsâ€). Among other allegations,
Plaintiffs allege in the Complaint, on behalf of a nationwide class of consumers, and continue to believe, that
Defendant set cookies on Plaintiffsâ€™ Safari Browsers in conflict with the default cookie settings of such browsers in
violation of the Electronic Communications Privacy Act (â€œECPAâ€or the â€œWiretap Actâ€), 18 U.S.C. Â§ 2510,
et seq.; the Stored Communications Act (â€œSCAâ€), 18 U.S.C. Â§ 2701, et seq.; and the Computer Fraud and Abuse
Act (â€œCFAAâ€), 18 U.S.C. Â§ 1030. Plaintiffs allege that PointRoll deployed third-party tracking cookies when
Plaintiffs and Class Members visited a website containing an advertisement placed by PointRoll by circumventing
Plaintiffsâ€™ and Class Membersâ€™ Safari Browser settings that blocked such cookies. Plaintiffs allege Defendants
used those cookies to knowingly intercept and gain access to Plaintiffsâ€™ and Class Membersâ€™ Internet
communications and activity in violation of federal statutes.

PointRoll denies all allegations of wrongdoing but has agreed to settle the case to avoid the uncertainties, expenses,
and time of further litigation relating to what PointRoll believes were permissible activities concerning advertising
effectiveness and frequency capping cookies, in an advertising campaign that generated little revenue for PointRoll and
no profits, and that were deployed for only a two-month period between December 13, 2011 and February 15, 2012.
PointRoll filed a motion to dismiss all the claims against it on January 22, 2013.

Counsel for the Plaintiffs believe Plaintiffs have a strong case on the merits and that a class will be certified for
litigation purposes. Plaintiffs are prepared to seek class certification and present evidence that PointRoll engaged in
improper conduct, and that the Settlement Class was harmed as a result. PointRoll is likewise prepared to mount a
vigorous defense on numerous important questions, including whether the claims are legally viable; whether the case is
properly subject to class certification for litigation purposes; and whether the Plaintiffs or members of the Settlement
Class suffered any harm even assuming the truth of the allegations as pled.

The Settlement was reached only after many detailed arms-length negotiations conducted in good faith. On October 7,
2013, the Court granted preliminary approval of the settlement, certified the Settlement Class for the purposes of
settlement only, appointed Plaintiffs William Gourley, Jose M. (â€œJoshâ€) Bermudez, Nicholas Todd Heinrich, and
Lynne Krause (â€œPlaintiffsâ€), as representatives of the Settlement Class and Strange & Carpenter, Stephen Grygiel,
and Bartimus, Frickleton, Robertson & Gorny, P.C., as Settlement Class Counsel, and ordered that this Notice be
disseminated.

THE COURT HAS NOT RULED ON THE CLAIMS OR DEFENSES OF THE PARTIES, AND THIS NOTICE IS
NOT AN EXPRESSION OF ANY OPINION BY THE COURT REGARDING THE MERITS OR LACK THEREOF
OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY PLAINTIFFS OR DEFENDANT.

## 3. WHO ARE THE MEMBERS OF THE SETTLEMENT CLASS?

The Settlement Class consists of all persons in the United States of America who used the Safari Browser with the
Safari Browser cookie setting set, by default or by choice, either to accept cookies from â€œvisitedâ€sites or to block
cookies from â€œthird parties and advertisers,â€and who visited a website containing an advertisement served by
PointRoll and, as a result of which, PointRoll set cookies, and includes all persons described in Paragraphs 191 and
192 of the Consolidated Complaint filed December 19, 2012.

Paragraphs 191 and 192 of the Consolidated Complaint read as follows:

191. This is a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on
behalf of a Class of all persons in the United States of America who used the Apple Safari or Microsoft
Internet Explorer web browsers and who visited a website from which doubleclick.net (Googleâ€™s
advertising serving service), PointRoll, Vibrant Media, Media Innovation Group, or WPP cookies were
deployed as part of a scheme to circumvent the usersâ€™ browsersâ€™ settings to block such cookies and

which were thereby used to enable tracking of the class members Internet communications without consent. The Class Period runs from the date Defendants began implementing these circumvention practices until the present (the â€œClass Periodâ€).

192. Excluded from the Class are Google, PointRoll, Vibrant, Media, WPP, and their officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case and their immediate families.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOU WILL BE BOUND BY THIS SETTLEMENT. YOU MAY, BUT ARE NOT REQUIRED TO, APPEAR IN PERSON AT THE SETTLEMENT FAIRNESS HEARING AND/OR SUBMIT COMMENTS REGARDING THE FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT.

IF THE SETTLEMENT IS FINALLY APPROVED BY THE COURT, THE JUDGMENT WILL BIND ALL PERSONS IN THE SETTLEMENT CLASS, AND THEIR CLAIMS AGAINST POINTROLL AND POINTROLL RELATED PARTIES SHALL FOREVER BE RELEASED AND DISMISSED.

## 4. WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In exchange for the release of claims of the Settlement Class Members, the Settlement Agreement provides for substantial injunctive and prospective relief for Settlement Class Members, including PointRoll taking steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers[1] and PointRollâ€™s maintenance in substance of recent changes to its cookie practices and privacy policy.

PointRoll will carry out its steps to expire or delete of all third-party PointRoll cookies that exist in the Safari Browser files for Safari Browsers through an expiration code designed to expire the cookies and through ordinary operation of the userâ€™s browser will result in the userâ€™s browser deleting existing PointRoll cookies when a user directs his or her Safari Browser to a webpage containing a PointRoll advertisement. This expiration code will be operational on PointRollâ€™s servers for a period of twelve (12) weeks following entry of the Final Approval Order by this Court. The parties agree that this action by PointRoll is a practical, reasonable, and effective means of removing the cookies from Safari Browsers.

In addition, the Settlement Agreement calls for prospective relief limiting PointRollâ€™s future cookie setting. Plaintiffs and Class Counsel have agreed not to object to, and release all future claims predicated upon, any prospective efforts by PointRoll to set new third-party cookies on any Safari Browser to the extent, but only to the extent, that PointRollâ€™s setting of any such new cookies is done in a manner that complies with such browserâ€™s cookie settings. PointRoll agrees to maintain for two (2) years following entry of the Final Approval Order, with substantially similar functionality, the â€œRemove All Cookiesâ€ feature that Defendant currently maintains and displays on its home page and on its privacy notice.

PointRoll has also agreed to make available to its advertiser clients the option to include within their PointRoll advertisements an â€œAdChoices Icon,â€[2] or an icon of a similar nature and purpose, for two (2) years following entry of the Final Approval Order.

PointRoll also agrees to maintain the material privacy protections set out in its current privacy notice (reflecting revisions as of December 2012, after these actions were filed) substantially in their current form. The parties agreed that PointRoll will amend its website privacy notice to state expressly and conspicuously that: â€œPointRoll will not set cookies on user devices in contravention of a userâ€™s browserâ€™s cookie settings.â€ PointRoll agrees to maintain this amendment to its privacy notice for two (2) years following entry of the Final Approval Order, subject to exceptions if law, precedent or regulatory guidance changes. PointRoll also agrees to remain a member of the Network Advertising Initiative (â€œNAIâ€) or any successor organization to NAI for two (2) years following the entry of the Final Approval Order.

For two (2) years following entry of the Final Approval Order, PointRoll will include within its website privacy notice language that generally describes the categories of cookies that PointRoll uses, including first-party and third-party cookies, flash cookies, and web beacons; cookie durations; and cookie purposes (e.g., frequency capping, sequencing, effectiveness metrics, and behavioral advertising). For two (2) years following entry of the Final Approval Order, PointRoll further agrees that prior to entering into a new contract or agreement with an advertisement publisher, PointRoll will provide PointRoll's online privacy notice to such advertisement publisher or its representative, and PointRoll will not, through any contract with any advertisement publisher, negligently, knowingly, or intentionally violate its online privacy notice or agree to violate such policy.

Importantly, PointRoll has also agreed to provide Plaintiffs and Class Counsel the opportunity to interview, in person, PointRoll employees knowledgeable about the conception, design, implementation, administration, purposes, uses, and termination of the Safari Cookie Technique, including, without limitation, the technological methods the Safari Cookie Technique involved and the business purposes for which the Safari Cookie Technique was used. Plaintiffs believe these interviews will be very helpful for continued pursuit of this case against the Non-Settling Defendants.

The above measures will supplement the proactive steps PointRoll has taken since February 2012 to improve its privacy posture. Since the underlying complaints in this consolidated action were filed, PointRoll has taken voluntary compliance steps, explained on its website, to move toward implementing industry best practices. For instance, PointRoll has enhanced its privacy policy and practices. PointRoll has applied for and been accepted into the Network Advertising Initiative ("NAI"). And PointRoll has adopted and implemented not only the NAI cookie opt-out procedures, but has also designed and implemented easy-to-use buttons that allow consumers to delete PointRoll cookies while preserving any other cookies.

The parties have also agreed to publish a brief joint written public statement to be published for three (3) months on PointRoll's website and in the notice described below. PointRoll will state that its use of the Safari Cookie Technique for a period of two months was not consistent with best industry practices, and that PointRoll is pleased to take a leadership role by deploying new practices and commitments as stated in its revised privacy notice. Plaintiffs and Class Counsel will state that PointRoll's new privacy practices and commitments demonstrate online responsibility and reflect an important step towards enhanced online privacy practices.

## 5. WHAT ARE THE IMPORTANT DATES?

Separate Attorney Appearance Deadline: December 16, 2013.
Objection Deadline: December 23, 2013.
Fairness Hearing : January 3, 2014, at 10:00 a.m.

## 6. WHO REPRESENTS THE SETTLEMENT CLASS AND WHAT ARE THE ASSOCIATED ATTORNEYS' FEES AND EXPENSES?

The Court has appointed William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause as the Settlement Class Representatives and Strange & Carpenter, Stephen Grygiel, and Bartimus, Frickleton, Robertson & Gorny, P.C. as Class Counsel for the Settlement Class. Class Counsel have been prosecuting this litigation on a contingency fee basis (that is, without compensation) while advancing litigation expenses. In advance of the Fairness Hearing, Class Counsel will apply to the Court for attorneys' fees and litigation costs/expenses in the amount of up to $115,000 from PointRoll, which PointRoll has agreed not to oppose. Class Counsel will also apply to the Court for incentive awards for the Plaintiffs in the amount of $500 each, which PointRoll has also agreed not to oppose. All such reimbursements will be subject to approval by the Court, and Settlement Class Members are not personally responsible for any attorneys' fees, expenses, or incentive awards. Class counsel's attorney's fees and expenses are to be paid by PointRoll in an amount authorized by the Court. Settlement Class Members are not personally responsible for payment of any attorney's fees, unless they hire their own attorney to represent them in this case.

## 7. WHAT ARE THE REASONS FOR THE SETTLEMENT?

Class Counsel have thoroughly investigated the facts and circumstances relevant to the claims at issue in the litigation. Class Counsel have also considered the expense and length of time necessary to prosecute the litigation through trial and any appeals, the uncertainties associated with the outcome of any litigation including this one, and the benefits provided by the proposed Settlement. Based upon their investigation and evaluation of the claims and defenses, Class Counsel have concluded that it is in the best interests of the Settlement Class to resolve the claims against PointRoll on the terms outlined herein, as reached after arms€™-length negotiations.

## 8. WHAT CLAIMS ARE BEING RELEASED?

If the Settlement Agreement is approved by the Court, each Settlement Class Member will release and dismiss PointRoll, and its past, present, and future parents, divisions, subsidiaries, partnerships, affiliates, and other related entities (whether or not they are wholly owned), together with the directors, officers, employees, agents, insurers, reinsurers and attorneys of any of them (but not including any of the other Defendants named in the Consolidated Complaint, or any of their past, present and future parents, divisions, subsidiaries, partnerships, affiliates and other related entities (whether or not wholly owned), together with their directors, officers, employees, agents, insurers, reinsurers and attorneys), from any and all potential or actual matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, which any Class Member has or might have, known or unknown, including Unknown Claims, defined below, of any kind whatsoever prior to the Effective Date and that Plaintiffs alleged or could have alleged in the Complaint against PointRoll or that otherwise are based on or relate to, wholly or partially, the facts and circumstances Plaintiffs alleged in the Complaint€™s claims against PointRoll.

Without limiting the generality of the foregoing description of Released Claims, the Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the facts, circumstances and import of Plaintiffs€™ Complaint€™s claims against PointRoll. However, the Class Members fully, finally, and forever settle and release any and all claims set forth in this Paragraph, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Members acknowledge that the inclusion of such €œUnknown Claims€ in the Agreement was separately bargained for and was a key element of the Agreement.

By the definition of Released Claims set forth above, the Class Members hereby intend expressly to waive the provisions, rights, and benefits of any state law or rule that seeks to or does preserve known or unknown claims that would otherwise be released by this Settlement Agreement, including California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and Class Members expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or of any other nation that is similar, comparable, or equivalent to California Civil Code § 1542.

## 9. CAN I EXCLUDE MYSELF FROM THE SETTLEMENT AND RELEASE?

Because PointRoll has acted on grounds that apply generally to the Settlement Class, the Court has determined that final injunctive relief is appropriate respecting the Settlement Class as a whole. You do not have the right to exclude yourself from the settlement. You will be bound by the settlement and will release any and all claims as set forth in Paragraph 8, above.

## 10. WHAT IS THE SETTLEMENT APPROVAL PROCEDURE AND HOW CAN I MAKE MY VIEWS

**KNOWN?**

The Court has scheduled a hearing at 10:00 a.m. onÂ January 3, 2014 in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware, located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568.

At this hearing, the Court will consider, among other matters, whether the Settlement should be granted final approval as fair, adequate and reasonable, and in the best interests of Settlement Class Members as well as Class Counselâ€™s application for attorneysâ€™ fees and expenses and incentive awards for the Representative Plaintiffs. Although you may attend the hearing in person or through your own attorney at your own expense, you are not required to do so. If you wish to comment in writing in support of or in opposition to any aspect of the proposed Settlement or to Class Counselâ€™s request for attorneysâ€™ fees and expenses or incentive awards for the Representative Plaintiffs, you may do so by filing your written comments or objections with the Court and sending them by U.S. Mail or email (including ECF service) to (1) Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, lacounsel@earthlink.net ; Stephen G. Grygiel, 88 East Bergen Place, Red Bank, NJ 07701 (732) 268-7367, sggrygiel@yahoo.com ; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211, jimf@bflawfirm.com , and (2) Alan Charles Raul, Sidley Austin LLP, 1501 K Street, NW, Washington, D.C. 20005, Facsimile: (202) 736-8711, araul@sidley.com , postmarked, faxed or emailed (or served by ECF) on or before December 23, 2013. The Court, however, will not be able to give much consideration to general comments lacking detail. Thus, for example, a submission simply stating, â€œI objectâ€or â€œI support the Settlementâ€will not be informative to the Court or the Parties. Your submission must also include your name and current address, a statement that you are a Settlement Class Member, and the case caption.

You or your attorney (at your own expense) may appear at the hearing in support of your comments, but you are not required to do so. If any Settlement Class Member hires an attorney at his or her or its own expense, such attorney shall serve a Notice of Appearance on the above Counsel by December 18, 2013, and file it with the Court on or before December 16, 2013.

**11. WHERE CAN I GET ADDITIONAL INFORMATION?**

This notice only contains a summary of the proposed Settlement. You may appear in person during regular business hours at the Clerkâ€™s office of the United States District Court, District of Delaware, located at 844 North King St Unit 18, Wilmington, DE 19801-3570, and review online the entire Settlement Agreement, as well as the pleadings, records and other papers on file with the Court.

If you need further information, please contact Class Counsel, Brian R. Strange, Strange & Carpenter, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, lacounsel@earthlink.net ; Stephen G. Grygiel, 88 E. Bergen Place, Red Bank, NJ 07701, sggrygiel@yahoo.com ; and/or James P. Frickleton, Bartimus, Frickleton, Robertson & Gorny, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211, jimf@bflawfirm.com

**OTHER THAN AS SET FORTH HEREIN, PLEASE DO NOT TELEPHONE OR ADDRESS INQUIRIES TO THE COURT.**

Â

â€’â€’â€’â€’â€’â€’â€’â€’â€’â€’â€’

*Footnotes:*

[1] This will not apply to PointRoll â€œopt-outâ€cookies, which are cookies users can choose to accept that allow them to â€œopt-outâ€of PointRollâ€™s third-party cookies themselves. Therefore, those users would not want the â€œopt-outâ€cookies to be expired or deleted.

[2] Defined in the Settlement Agreement at paragraph 1.4 as â€œthe icon displayed in online advertisements signifying the advertiserâ€™s adherence to the Self-Regulatory Program for Online Behavioral Advertising, managed at the time

of the Agreement by Evidon, Inc. and the Digital Advertising Alliance (â€DAAâ€™). The Self-Regulatory Program for Online Behavioral Advertising currently permits online consumers to (i) opt-out of browser-enabled, interest-based advertising; (ii) ascertain which companies have enabled customized advertisements for the consumerâ€™s browser; (iii) determine which opt-out settings the consumer has already created.â€

Â

# References

1. ^ 1. Why should I read this Notice? (www.pointroll.com)
2. ^ 2. What is the lawsuit about? (www.pointroll.com)
3. ^ 3. Who are the members of the Settlement Class? (www.pointroll.com)
4. ^ 4. What are the terms of the proposed settlement? (www.pointroll.com)
5. ^ 5. What are the important dates? (www.pointroll.com)
6. ^ 6. Who represents the Settlement Class and what are the associated attorneysâ€™ fees and expenses? (www.pointroll.com)
7. ^ 7. What are the reasons for the settlement? (www.pointroll.com)
8. ^ 8. What claims are being released? (www.pointroll.com)
9. ^ 9. Can I exclude myself from the settlement and release? (www.pointroll.com)
10. ^ 10. What is the settlement approval procedure and how can I make my views known? (www.pointroll.com)
11. ^ 11. Where can I get additional information? (www.pointroll.com)

# EXHIBIT 5



| | |
|---|---|
| SIDLEY AUSTIN LLP | BEIJING    LOS ANGELES |
| 1501 K STREET, N.W. | BRUSSELS    NEW YORK |
| WASHINGTON, D.C. 20005 | CHICAGO    PALO ALTO |
| (202) 736 8000 | DALLAS    SAN FRANCISCO |
| (202) 736 8711 FAX | FRANKFURT    SHANGHAI |
| | GENEVA    SINGAPORE |
| | HONG KONG    SYDNEY |
| | HOUSTON    TOKYO |
| | LONDON    WASHINGTON, D.C. |
| araul@sidley.com | |
| (202) 736 8477 | FOUNDED 1866 |

October 2, 2013

**VIA FEDERAL EXPRESS**

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

Re:    Notice of proposed settlement pursuant to 28 U.S.C. § 1715:
         *In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
         12-MD-2358 (SLR) (D. Del.)

Dear General Holder:

        We are writing on behalf of our client, PointRoll Inc. ("PointRoll"), to advise your office of a proposed class action settlement in the above-referenced case. Under the Class Action Fairness Act of 2005 ("CAFA"), any defendant participating in a proposed class action settlement is required to serve a notice on the appropriate federal official. *See* 28 U.S.C. § 1715(b). Because PointRoll is not a Federal depository institution, a State depository institution, a depository institution holding company, a foreign bank, or a nondepository institution subsidiary of the foregoing, we are providing you this notice in compliance with 28 U.S.C. § 1715(a)(1).

## BACKGROUND

        Commencing in February 2012, various putative class action suits were filed throughout the United States alleging violations of federal and state statutes, including the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by PointRoll and other online advertising firms, including Google, Inc., Vibrant Media, Inc., Media Innovation Group, LLC, and WPP, plc (the "MDL Defendants").  On June 12, 2012 the United States Judicial Panel on Multidistrict Litigation transferred seven of these cases to the United States District Court for the District of Delaware for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. 1407, with the proceedings now captioned *In re Google Inc. Cookie Placement Consumer Privacy Litigation* (the "Litigation").  On December 19, 2012 Plaintiffs William Gourley, Jose M.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

DC1 4209707v.1

SIDLEY AUSTIN LLP
**SIDLEY**

10/8/2013
Page 2

("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause filed a Consolidated Class Action Complaint (the "Complaint").

The parties engaged in settlement negotiations, and they have now entered into an agreement to resolve the Litigation. The Settlement Agreement was filed with the Court on September 23, 2013, as Exhibit A to the Declaration of Brian R. Strange, attached to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## COMPLIANCE WITH 28 U.S.C. § 1715

Section 1715(b) lists eight items that must be provided to appropriate state and federal officials in connection with a proposed class action settlement. Each of these items is addressed below.

1.      Complaint and Related Materials (28 U.S.C. § 1715(b)(1))

*Exhibit 1* is a copy of the Docket in the Litigation as of October 1, 2013. *Exhibit 2* is the Consolidated Amended Complaint, filed on December 19, 2012.

2.      Notice of Any Scheduled Judicial Hearing (28 U.S.C. § 1715(b)(2))

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and all attached materials, including a copy of the Settlement Agreement, are enclosed as *Exhibit 3*.

3.      Proposed Notification to Class Members (28 U.S.C. § 1715(b)(3))

The proposed notice to be provided to class members by publication online and in the USA Today newspaper is included in *Exhibit 3*.

4.      Proposed Class Action Settlement Agreement (28 U.S.C. § 1715(b)(4))

A copy of the Settlement Agreement is attached to the Declaration of Brian R. Strange in Support of the Motion for Preliminary Approval. *See Exhibit 3*. The Settlement Agreement includes the following exhibits:

- Proposed Order Granting Motion For Preliminary Approval
- Notice of Proposed Class Action Settlement
- Proposed Final Judgment and Order
- Declaration of Brian R. Strange in Support of Motion for Preliminary Approval
- Declaration of Stephen G. Grygiel in Support of Motion for Preliminary Approval
- Declaration of James P. Frickleton in Support of Motion for Preliminary Approval



10/8/2013
Page 3

      5.      Any Settlement or Other Agreement (28 U.S.C. § 1715(b)(5))

Other than the Settlement Agreement referenced above, there are no other agreements between the parties.

      6.      Final Judgment (28 U.S.C. § 1715(b)(6))

There has been no final judgment or notice of dismissal.

      7.      Estimate of Class Members in Each State (28 U.S.C. § 1715(b)(7)(B))

Defendants served approximately 60 million advertisements in connection with the marketing campaign where a cookie may have been placed on Safari browsers in a manner covered by the settlement.  Defendant is not aware of the geographical distribution of the potential class members; it does not know their location.

      8.      Judicial Opinions Related to the Settlement (28 U.S.C. § 1715(b)(8))

There are currently no judicial opinions related to this settlement.

<div align="center">

**TIMELINESS OF THIS NOTICE**

</div>

Section 1715 provides two deadlines for service of the CAFA notice, and PointRoll has complied with both. First, § 1715(b) provides that defendants must serve this notice "not later than 10 days after a proposed settlement of a class action is filed in court." PointRoll has complied with this deadline because the settlement was filed in court on September 23, 2013, and this notice is being sent on October 2, 2013. Second, § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after" service of the notice on the appropriate officials. This notice complies with that deadline as well, because the Court will set the final approval hearing for an appropriate date following entry of an order granting preliminary approval of the settlement, and the order granting preliminary approval has not yet been granted.

      Very truly yours,

      *Alan Raul*

      Alan Charles Raul

Enclosure



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

araul@sidley.com
(202) 736 8477

| BEIJING | LOS ANGELES |
|---|---|
| BRUSSELS | NEW YORK |
| CHICAGO | PALO ALTO |
| DALLAS | SAN FRANCISCO |
| FRANKFURT | SHANGHAI |
| GENEVA | SINGAPORE |
| HONG KONG | SYDNEY |
| HOUSTON | TOKYO |
| LONDON | WASHINGTON, D.C. |

FOUNDED 1866

October 2, 2013

**VIA FEDERAL EXPRESS**

<<ADDRESS>>

Re:     Notice of proposed settlement pursuant to 28 U.S.C. § 1715:
        *In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
        12-MD-2358 (SLR) (D. Del.)

Dear Attorney General <<ADDRESSEE>>:

        We are writing on behalf of our client, PointRoll Inc. ("PointRoll"), to advise your office of a proposed class action settlement in the above-referenced case. Under the Class Action Fairness Act of 2005 ("CAFA"), any defendant participating in a proposed class action settlement is required to serve a notice on the appropriate state official of each state in which a settlement class member resides. *See* 28 U.S.C. § 1715(b). Because settlement class members reside in your state, we are providing you this notice in compliance with 28 U.S.C. § 1715(a)(2).

## BACKGROUND

        Commencing in February 2012, various putative class action suits were filed throughout the United States alleging violations of federal and state statutes, including the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by PointRoll and other online advertising firms, including Google, Inc., Vibrant Media, Inc., Media Innovation Group, LLC, and WPP, plc (the "MDL Defendants"). On June 12, 2012 the United States Judicial Panel on Multidistrict Litigation transferred seven of these cases to the United States District Court for the District of Delaware for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. 1407, with the proceedings now captioned *In re Google Inc. Cookie Placement Consumer Privacy Litigation* (the "Litigation"). On December 19, 2012 Plaintiffs William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause filed a Consolidated Class Action Complaint (the "Complaint").

        The parties engaged in settlement negotiations, and they have now entered into an agreement to resolve the Litigation. The Settlement Agreement was filed with the Court on September 23, 2013, as Exhibit A to the Declaration of Brian R. Strange, attached to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

DC1 4334000v.2



10/8/2013
Page 2

## COMPLIANCE WITH 28 U.S.C. § 1715

Section 1715(b) lists eight items that must be provided to appropriate state and federal officials in connection with a proposed class action settlement. Each of these items is addressed below.

1.      Complaint and Related Materials (28 U.S.C. § 1715(b)(1))

*Exhibit 1* is a copy of the Docket in the Litigation as of October 1, 2013. *Exhibit 2* is the Consolidated Amended Complaint, filed on December 19, 2012.

2.      Notice of Any Scheduled Judicial Hearing (28 U.S.C. § 1715(b)(2))

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and all attached materials, including a copy of the Settlement Agreement, are enclosed as *Exhibit 3*.

3.      Proposed Notification to Class Members (28 U.S.C. § 1715(b)(3))

The proposed notice to be provided to class members by publication online and in the USA Today newspaper is included in *Exhibit 3*.

4.      Proposed Class Action Settlement Agreement (28 U.S.C. § 1715(b)(4))

A copy of the Settlement Agreement is attached to the Declaration of Brian R. Strange in Support of the Motion for Preliminary Approval. *See Exhibit 3*. The Settlement Agreement includes the following exhibits:

- Proposed Order Granting Motion For Preliminary Approval
- Notice of Proposed Class Action Settlement
- Proposed Final Judgment and Order
- Declaration of Brian R. Strange in Support of Motion for Preliminary Approval
- Declaration of Stephen G. Grygiel in Support of Motion for Preliminary Approval
- Declaration of James P. Frickleton in Support of Motion for Preliminary Approval

5.      Any Settlement or Other Agreement (28 U.S.C. § 1715(b)(5))

Other than the Settlement Agreement referenced above, there are no other agreements between the parties.

6.      Final Judgment (28 U.S.C. § 1715(b)(6))



10/8/2013
Page 3

There has been no final judgment or notice of dismissal.

7.    Estimate of Class Members in Each State (28 U.S.C. § 1715(b)(7)(B))

Defendants served approximately 60 million advertisements in connection with the marketing campaign where a cookie may have been placed on Safari browsers in a manner covered by the settlement.  Defendant is not aware of the geographical distribution of the potential class members; it does not know their location.

8.    Judicial Opinions Related to the Settlement (28 U.S.C. § 1715(b)(8))

There are currently no judicial opinions related to this settlement.

<div align="center">**TIMELINESS OF THIS NOTICE**</div>

Section 1715 provides two deadlines for service of the CAFA notice, and PointRoll has complied with both. First, § 1715(b) provides that defendants must serve this notice "not later than 10 days after a proposed settlement of a class action is filed in court." PointRoll has complied with this deadline because the settlement was filed in court on September 23, 2013, and this notice is being sent on October 2, 2013. Second, § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after" service of the notice on the appropriate officials. This notice complies with that deadline as well, because the Court will set the final approval hearing for an appropriate date following entry of an order granting preliminary approval of the settlement, and the order granting preliminary approval has not yet been granted.

Very truly yours,

*Alan Raul*

Alan Charles Raul

Enclosure

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

IN RE GOOGLE INC. COOKIE )
PLACEMENT CONSUMER PRIVACY )       Case No. 12-MD-2358 (SLR)
LITIGATION )
)
_____ )
)
**This Document Relates to:** )
**ALL ACTIONS** )
_____ )

## [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**KEEFE BARTELS, LLC**
Stephen G. Grygiel (DE Bar ID # 4944)
John E. Keefe, Jr.
Jennifer L. Harwood
170 Monmouth St.
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefbartels.com*

*Executive Committee Member*

**BARTIMUS, FRICKLETON,
ROBERTSON & GORNY, P.C.**
James P. Frickleton
Mary D. Winter
Stephen M. Gorny
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*


*Additional Counsel on Signature Page*

**STRANGE & CARPENTER**
Brian Russell Strange
Keith Butler
David Holop
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

*Executive Committee Member*

**FINGER & SLANINA, LLC**
Charles Slanina (DE Bar ID #2011)
David L. Finger (DE Bar ID #2556)
One Commerce Center
1201 N. Orange St., 7th Fl.
Wilmington, DE 19801
(302) 573-2525
*dfinger@delawgroup.com*

*Liaison Counsel*

1

WHEREAS, this matter has come before the Court pursuant to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendant Point Roll, Inc. (the "Motion");

WHEREAS, the Court finds that it has jurisdiction over this action and each of the Parties for purposes of settlement; and

WHEREAS, this Court has considered all of the submissions related to the Motion, and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

## I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.    The terms of the Settlement Agreement between Plaintiffs and Defendant Point Roll, Inc. ("Defendant" or "PointRoll"), dated July 19, 2013 (the "Agreement"), attached as Exhibit A to the Declaration of Brian R. Strange filed in support of the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Final Approval Hearing provided for below.  This Order incorporates herein, and makes a part hereof, the Agreement.  Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings herein.  The Agreement was entered into only after extensive arm's-length negotiation by experienced counsel.  The Court finds that the class settlement embodied in the Agreement (the "Class Settlement") is fair, adequate and reasonable so that Notice of the Class Settlement should be given as provided in Paragraph 7 of this Order.  In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation.

## II.    THE CLASS, REPRESENTATIVES, AND CLASS COUNSEL

2.    The Settlement Class is defined as follows:

2

all persons in the United States of America who used the Safari Browser
with the Safari Browser cookie setting set, by default or by choice, either
to accept cookies from "visited" sites or to block cookies from "third
parties and advertisers," and who visited a website containing an
advertisement served by PointRoll and, as a result of which, PointRoll set
cookies, and includes all persons described in Paragraphs 191 and 192 of
the Consolidated Complaint filed December 19, 2012.[1]

3. The Court preliminarily finds that the proposed nationwide Settlement

Class meets all the applicable requirements of Federal Rules of Civil Procedure, Rule

23(a) and (b)(2), and hereby certifies the Settlement Class for settlement purposes only.

The Court hereby preliminarily finds, in the specific context of the Class Settlement, that

    a. Numerosity

    The Settlement Class consists of millions of members located throughout the
    United States, and satisfies the numerosity requirement of Fed. R. Civ. P.
    23(a). Joinder of these widely dispersed, numerous Settlement Class Members
    into one suit would be impracticable.

    b. Commonality

    Common questions of law and fact, with regard to the alleged activities of
    PointRoll, exist for each of the Settlement Class Members. These issues are
    central to this case and are sufficient to establish commonality.

---

[1] Paragraphs 191 and 192 read as follows:

    191.    This is a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of
Civil Procedure on behalf of a Class of all persons in the United States of America who used the
Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which
doubleclick.net (Google's advertising serving service), PointRoll, Vibrant Media, Media
Innovation Group, or WPP cookies were deployed as part of a scheme to circumvent the users'
browsers' settings to block such cookies and which were thereby used to enable tracking of the
class members Internet communications without consent. The Class Period runs from the date
Defendants began implementing these circumvention practices until the present (the "Class
Period").

    192.    Excluded from the Class are Google, PointRoll, Vibrant, Media, WPP, and their
officers, directors, employees, affiliates, legal representatives, predecessors, successors and
assigns, and any entity in which any of them have a controlling interest, as well as all judicial
officers assigned to this case and their immediate families.

c.  Typicality

Plaintiffs' claims in this litigation are typical of the claims of the Settlement Class Members.  Therefore, in the context of this settlement, the element of typicality is satisfied.

d.  Adequate Representation

Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent Settlement Class Members.  Additionally, this Court recognizes the experience of Class Counsel, Strange & Carpenter, Keefe Bartels, LLC, and Bartimus, Frickleton, Robertson & Gorny, P.C., and finds under Fed. R. Civ. P. 23(g), that the requirement of adequate representation of the Settlement Class Members has been fully met.

e.  Rule 23(b)(2)

As to the injunctive relief provided by the Settlement Agreement, PointRoll has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole.

4.  The Class Representatives are William Gourley, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause.  Based upon the Court's familiarity with the claims and parties, the Court preliminarily finds that these designated representatives are appropriate representatives for settlement purposes.

5.  The Court further preliminarily finds that the following firms fairly and adequately represent the interests of the Settlement Class and hereby confirms them as Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g):

Counsel for the Class

**KEEFE BARTELS, LLC**
Stephen G. Grygiel
170 Monmouth St.
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefbartels.com*

**STRANGE & CARPENTER**
Brian Russell Strange
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

4

**BARTIMUS, FRICKLETON,**
**ROBERTSON & GORNY, P.C.**
James P. Frickleton
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

      6. If the Agreement is not terminated or is not consummated for any reason

whatsoever, the certification of the Settlement Class shall be void, and Plaintiffs and PointRoll

shall be deemed to have reserved all of their rights as set forth in the Agreement, including but

not limited to the issues related to all claims, defenses, and issues under Fed. R. Civ. P. 23.

### III.   NOTICE TO SETTLEMENT CLASS MEMBERS

      7. The Court has considered the proposed notices attached to the Declaration of

Brian R. Strange in support of the Motion, and finds that the forms, content, and manner of

notice proposed by the Parties and approved herein meet the requirements of due process and

Fed. R. Civ. P. 23(c) and (e), constitute reasonable, sufficient, and appropriate notice under the

circumstances, and satisfy the Constitutional requirements of notice. The Court approves the

notices in all respects and orders that notice be given in substantial conformity therewith. The

costs of disseminating the notice shall be paid by PointRoll in accordance with the Agreement.

### IV.   NO EXCLUSIONS FROM THE CLASS

      8. Because this is an injunctive relief Settlement Class certified under Fed. R. Civ. P.

23(a) and (b)(2), Settlement Class Members shall not have the right to be excluded from the

Settlement Class. If this Settlement is finally approved, all Settlement Class Members shall be

automatically included in the Settlement Class and shall be bound by all the terms and provisions

of the Agreement, the Class Settlement, and the Final Approval Order and Judgment, whether or

<div align="center">5</div>

not such Settlement Class Member received actual notice or shall have objected to the Class Settlement.

## V.  FINAL APPROVAL HEARING

9.  A hearing on final settlement approval (the "Final Approval Hearing") will be held on _December 2, 2013_, at _4:30 p.m._ before this Court, at the United States District Court *SLR* for the District of Delaware, 844 North King Street, Wilmington, Delaware 19801, to consider, *inter alia*, the following:  (a) the adequacy of the Class Representatives and whether the Settlement Class should be finally certified; (b) the fairness, reasonableness, and adequacy of the Class Settlement; (c) the dismissal with prejudice of the Action as to PointRoll; (d) whether Class Counsel's application for attorneys' fees, expenses, and compensation for the Class Representatives (the "Fee Petition") should be granted; and (e) whether to finally approve the Agreement.

10. On or before _November 1, 2013_, Class Counsel shall file with the Court:  (i) any *SLR* memoranda or other materials in support of final approval of the Agreement and Class Settlement; and (ii) any Fee Petition.

11. Any Settlement Class Member may appear at the Final Approval Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Class Settlement, the dismissal with prejudice of PointRoll, the entry of final judgment as to PointRoll, and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Class Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless filed with the Court and served upon counsel listed below in Paragraph 12 on or before _November 22, 2013._ *SLR*

6

Such person must (a) file with the Clerk of Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition on or before _11/22/13_, and (b) serve copies of such notice, *sia* statement, and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon all counsel listed below in Paragraph 12 on or before *sia* _11/22/13_. Settlement Class Members who object in the manner and by the dates provided herein shall be subject to the jurisdiction of this Court. Settlement Class Members who fail to object in the manner and by the dates provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

12. Any Settlement Class Member may hire an attorney at his or her or its own expense to appear in the action. Such attorney shall serve a Notice of Appearance on the Counsel listed in Paragraph 12 above by _11/15/13_, and file it with the Court on or *sia* before _11/15/13_.

13. Counsel for the Parties who must be served with all documentation described above in Paragraph 11 are as follows:

Counsel for the Class:

**KEEFE BARTELS, LLC**
Stephen G. Grygiel
170 Monmouth St.
Red Bank, NJ 07701
Tel: 732-224-9400
*sgrygiel@keefbartels.com*

**STRANGE & CARPENTER**
Brian Russell Strange
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*lacounsel@earthlink.net*

**BARTIMUS, FRICKLETON, ROBERTSON & GORNY, P.C.**
James P. Frickleton
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

7

Counsel for PointRoll:

**SIDLEY AUSTIN LLP**
Alan Charles Raul
Edward R. McNicholas
1501 K Street, NW
Washington, D.C. 20005
Tel: 202-736-8477
*araul@sidley.com*

14. The date and time of the Final Approval Hearing shall be set forth in the Notice, but shall be subject to adjournment by the Court without further notice to the Settlement Class Members other than that which may be posted at the Court, on the Court's website, and/or the website to be established pursuant to the Agreement.

15. All proceedings in this Action with respect to PointRoll are hereby stayed and suspended, pending the Final Approval of the Class Settlement ("Final Approval"), except such proceedings as are provided for in the Agreement, or which may be necessary to implement the terms of the Agreement, the Class Settlement, or this Order.

16. Pending Final Approval, PointRoll may seek an injunction that no Settlement Class Member, either directly, representatively, or in any other capacity, shall commence, continue or prosecute against any Released Party any action or proceeding in any court or tribunal asserting any of the matters, claims, or causes of action that are to be released upon Final Approval pursuant to the Agreement, and Class Counsel and Class Representatives are directed to cooperate, but are not required participate, in PointRoll's efforts to obtain said injunction or injunctions. Upon Final Approval, all Settlement Class Members shall be forever enjoined and barred from asserting any of the matters, claims, or causes of action released pursuant to the Agreement and any such Settlement Class Member shall be deemed to have forever released any

and all such matters, claims, and causes of action as provided for in the Agreement.

## VI.    OTHER PROVISIONS

17. In the event the Class Settlement is terminated in accordance with the provisions of the Agreement, the Class Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the status quo ante rights of Plaintiffs and PointRoll.

18. Neither this Order nor the Agreement, nor any documents or statements related thereto, shall constitute any evidence or admission of liability by PointRoll or any Released Party, nor shall any such document or statement be offered in evidence in this or any other proceeding except to consummate or enforce the Agreement or the terms of this Order.

Date: _____10|2|13_____              _____Sue L. Robinson_____
                                     Hon. Sue L. Robinson
                                     United States District Judge

## DISTRIBUTION LIST PER 28 U.S.C. § 1715:

The Hon. Luther Strange
Office of the Attorney General
501 Washington Ave. P.O. Box 300152
Montgomery, AL 36130-0152

The Hon. Michael Geraghty
Office of the Attorney General
P.O. Box 110300
Juneau, AK 99811-0300

The Hon. Afoa Leulumoega Lutu
Office of the Attorney General
American Samoa Gov't, Exec. Ofc. Bldg
Utulei, Territory of American Samoa, Pago Pago, AS 96799

The Hon. Tom Horne
Office of the Attorney General
1275 W. Washington St.
Phoenix, AZ 85007

The Hon. Dustin McDaniel
Office of the Attorney General
323 Center St., Suite 200
Little Rock, AR 72201-2610

The Hon. Kamala Harris
Office of the Attorney General
1300 I St., Ste. 1740
Sacramento, CA 95814

The Hon. John Suthers
Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

The Hon. George Jepsen
Office of the Attorney General
55 Elm St.
Hartford, CT 06106

The Hon. Joseph R. Biden, III
Office of the Attorney General
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE 19801

The Hon. Irvin Nathan
Office of the Attorney General
441 4th Street, NW, Suite 1100S
Washington, DC 20001

The Hon. Pam Bondi
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050

The Hon. Sam Olens
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

The Hon. Lenny Rapadas
Office of the Attorney General
ITC Building, 590 S. Marine Corps Dr, Ste. 706
Tamuning, Guam 96913

The Hon. David Louie
Office of the Attorney General
425 Queen St.
Honolulu, HI 96813

The Hon. Lawrence Wasden
Office of the Attorney General
Statehouse
Boise, ID 83720-1000

The Hon. Lisa Madigan
Office of the Attorney General
James R. Thompson Ctr.
100 W. Randolph St.
Chicago, IL 60601

The Hon. Greg Zoeller
Office of the Attorney General
Indiana Government Center South - 5th Floor
302 West Washington Street
Indianapolis, IN 46204

The Hon. Tom Miller
Office of the Attorney General
Hoover State Office Bldg.
1305 E. Walnut
Des Moines, IA 50319

The Hon. Derek Schmidt
Office of the Attorney General
120 S.W. 10th Ave., 2nd Fl.
 Topeka, KS 66612-1597

The Hon. Jack Conway
Office of the Attorney General
700 Capitol Avenue
Capitol Building, Suite 118
Frankfort, KY 40601

The Hon. James D. Caldwell
Office of the Attorney General
P.O. Box 94095
Baton Rouge, LA 70804-4095

The Hon. Janet T. Mills
Office of the Attorney General
State House Station 6
Augusta, ME 04333

The Hon. Douglas F. Gansler
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202-2202

The Hon. Martha Coakley
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108-1698

The Hon. Bill Schuette
Office of the Attorney General
P.O.Box 30212
525 W. Ottawa St.
Lansing, MI 48909-0212

The Hon. Lori Swanson
Office of the Attorney General
State Capitol, Ste. 102
St. Paul, MN 55155

The Hon. Jim Hood
Department of Justice, P.O. Box 220
Jackson, MS 39205

The Hon. Chris Koster
Supreme Ct. Bldg.
207 W. High St.
Jefferson City, MO 65101

The Hon. Tim Fox
Justice Bldg.
215 N. Sanders
Helena, MT 59620-1401

The Hon. Jon Bruning
Office of the Attorney General
State Capitol, P.O. Box 98920
Lincoln, NE 68509-8920

The Hon. Catherine Cortez Masto
Office of the Attorney General
Old Supreme Ct. Bldg.
100 N. Carson St.
Carson City, NV 89701

The Hon. Joseph A. Foster
Office of the Attorney General
33 Capitol St.
Concord, NH 03301

The Hon. John Jay Hoffman
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 080
Trenton, NJ 08625

The Hon. Gary King
Office of the Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

The Hon. Eric Schneiderman
Office of the Attorney General
Dept. of Law - The Capitol, 2nd fl.
Albany, NY 12224

The Hon. Roy Cooper
Office of the Attorney General
Dept. of Justice, P.O. Box 629
Raleigh, NC 27602-0629

The Hon. Wayne Stenehjem
Office of the Attorney General
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505-0040

The Hon. Joey Patrick San Nicolas
Office of the Attorney General
Administration Building
P.O. Box 10007
Saipan MP 96950-8907

The Hon. Mike DeWine
Office of the Attorney General
State Office Tower
30 E. Broad St.
Columbus, OH 43266-0410

The Hon. Scott Pruitt
Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

The Hon. Ellen F. Rosenblum
Office of the Attorney General, Justice Bldg.
1162 Court St., NE
Salem, OR 97301

The Hon. Kathleen Kane
Office of the Attorney General
1600 Strawberry Square
Harrisburg, PA 17120

The Hon. Luis Sánchez Betances
Office of the Attorney General
PO Box 902192
San Juan, PR 00902-0192

The Hon. Peter Kilmartin
Office of the Attorney General
150 S. Main St.
Providence, RI 02903

The Hon. Alan Wilson
Office of the Attorney General
Rembert C. Dennis Office Bldg.
P.O.Box 11549
Columbia, SC 29211-1549

The Hon. Marty J. Jackley
Office of the Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501

The Hon. Robert E. Cooper, Jr.
Office of the Attorney General
425 5th Avenue North
Nashville, TN 37243

The Hon. Greg Abbott
Office of the Attorney General
Capitol Station, P.O. Box 12548
Austin, TX 78711-2548

The Hon. John Swallow
Office of the Attorney General
State Capitol, Rm. 236
Salt Lake City, UT 84114-0810

The Hon. William H. Sorrell
Office of the Attorney General
109 State St.
Montpelier, VT 05609-1001

The Hon. Vincent Frazer
Dept. of Justice, G.E.R.S. Complex 488-50C
Kronprinsdens Gade, St. Thomas, VI 00802

The Hon. Ken Cuccinelli
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

The Hon. Bob Ferguson
Office of the Attorney General
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504-0100

The Hon. Patrick Morrisey
Office of the Attorney General
State Capitol
1900 Kanawha Blvd., E.
Charleston, WV 25305

The Hon. J.B. Van Hollen
Wisconsin Department of Justice
State Capitol, Room 114 East
P. O. Box 7857
Madison, WI 53707-7857

The Hon. Peter K. Michael
Office of the Attorney General
State Capitol Bldg.
Cheyenne, WY 82002

The Hon. Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

# EXHIBIT 6



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| 1501 K STREET, N.W. | BRUSSELS | NEW YORK |
| WASHINGTON, D.C. 20005 | CHICAGO | PALO ALTO |
| (202) 736 8000 | DALLAS | SAN FRANCISCO |
| (202) 736 8711 FAX | FRANKFURT | SHANGHAI |
| | GENEVA | SINGAPORE |
| | HONG KONG | SYDNEY |
| | HOUSTON | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| araul@sidley.com | | |
| (202) 736 8477 | FOUNDED 1866 | |

October 8, 2013

**VIA FEDERAL EXPRESS**

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

Re:    Notice of proposed settlement pursuant to 28 U.S.C. § 1715:

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
12-MD-2358 (SLR) (D. Del.)

Dear General Holder:

We are writing on behalf of our client, PointRoll Inc. ("PointRoll"), to supplement our notification of October 2, 2013, regarding a proposed class action settlement in the above-referenced case pending in the United States District Court for the District of Delaware (the "Court"). A copy of the October 2, 2013 notification, without exhibits, is attached hereto as Exhibit 1.

On October 7, 2013, the Court entered an Order Granting the Motion for Preliminary Approval of Class Action Settlement (the "Order").  A copy of the Order is attached hereto as Exhibit 2.  The Order sets a hearing before the Court on the final approval of the settlement on December 2, 2013 at 4:30 p.m. The Order further sets a deadline of November 22, 2013 for the filing of papers or briefs in opposition with the Court and upon the counsel listed in Paragraph 12 of the Order, and for the filing of a notice of intention to appear before the hearing with the Clerk of Court.

Best regards,

*Alan Charles Raul*

Alan Charles Raul

Enclosure

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| 1501 K STREET, N.W. | BRUSSELS | NEW YORK |
| WASHINGTON, D.C. 20005 | CHICAGO | PALO ALTO |
| (202) 736 8000 | DALLAS | SAN FRANCISCO |
| (202) 736 8711 FAX | FRANKFURT | SHANGHAI |
| | GENEVA | SINGAPORE |
| | HONG KONG | SYDNEY |
| | HOUSTON | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| araul@sidley.com | | |
| (202) 736 8477 | FOUNDED 1866 | |

October 8, 2013

**VIA FEDERAL EXPRESS**

To:     All Appropriate State Officials Per 28 U.S.C. § 1715
        (see attached distribution list)

Re:     **Supplement to the Notice of proposed settlement pursuant to 28 U.S.C. § 1715:** *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, **12-MD-2358 (SLR) (D. Del.)**

Dear Attorneys General:

We are writing on behalf of our client, PointRoll Inc. ("PointRoll"), to supplement our notification of October 2, 2013, regarding a proposed class action settlement in the above-referenced case pending in the United States District Court for the District of Delaware (the "Court"). A copy of the October 2, 2013 notification, without exhibits, is attached hereto as Exhibit 1.

On October 7, 2013, the Court entered an Order Granting the Motion for Preliminary Approval of Class Action Settlement (the "Order"). A copy of the Order is attached hereto as Exhibit 2. The Order sets a hearing before the Court on the final approval of the settlement on December 2, 2013 at 4:30 p.m. The Order further sets a deadline of November 22, 2013 for the filing of papers or briefs in opposition with the Court and upon the counsel listed in Paragraph 12 of the Order, and for the filing of a notice of intention to appear before the hearing with the Clerk of Court.

Best regards,

*Alan Charles Raul*

Alan Charles Raul

Enclosure



## DISTRIBUTION LIST PER 28 U.S.C. § 1715:

The Hon. Luther Strange
Office of the Attorney General
501 Washington Ave. P.O. Box 300152
Montgomery, AL 36130-0152

The Hon. Michael Geraghty
Office of the Attorney General
P.O. Box 110300
Juneau, AK 99811-0300

The Hon. Afoa Leulumoega Lutu
Office of the Attorney General
American Samoa Gov't, Exec. Ofc. Bldg
Utulei, Territory of American Samoa, Pago Pago, AS 96799

The Hon. Tom Horne
Office of the Attorney General
1275 W. Washington St.
Phoenix, AZ 85007

The Hon. Dustin McDaniel
Office of the Attorney General
323 Center St., Suite 200
Little Rock, AR 72201-2610

The Hon. Kamala Harris
Office of the Attorney General
1300 I St., Ste. 1740
Sacramento, CA 95814

The Hon. John Suthers
Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

The Hon. George Jepsen
Office of the Attorney General
55 Elm St.
Hartford, CT 06106



The Hon. Joseph R. Biden, III
Office of the Attorney General
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE 19801

The Hon. Irvin Nathan
Office of the Attorney General
441 4th Street, NW, Suite 1100S
Washington, DC 20001

The Hon. Pam Bondi
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050

The Hon. Sam Olens
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

The Hon. Lenny Rapadas
Office of the Attorney General
ITC Building, 590 S. Marine Corps Dr, Ste. 706
Tamuning, Guam 96913

The Hon. David Louie
Office of the Attorney General
425 Queen St.
Honolulu, HI 96813

The Hon. Lawrence Wasden
Office of the Attorney General
Statehouse
Boise, ID 83720-1000

The Hon. Lisa Madigan
Office of the Attorney General
James R. Thompson Ctr.
100 W. Randolph St.
Chicago, IL 60601

SIDLEY AUSTIN LLP
# SIDLEY

The Hon. Greg Zoeller
Office of the Attorney General
Indiana Government Center South - 5th Floor
302 West Washington Street
Indianapolis, IN 46204

The Hon. Tom Miller
Office of the Attorney General
Hoover State Office Bldg.
1305 E. Walnut
Des Moines, IA 50319

The Hon. Derek Schmidt
Office of the Attorney General
120 S.W. 10th Ave., 2nd Fl.
 Topeka, KS 66612-1597

The Hon. Jack Conway
Office of the Attorney General
700 Capitol Avenue
Capitol Building, Suite 118
Frankfort, KY 40601

The Hon. James D. Caldwell
Office of the Attorney General
P.O. Box 94095
Baton Rouge, LA 70804-4095

The Hon. Janet T. Mills
Office of the Attorney General
State House Station 6
Augusta, ME 04333

The Hon. Douglas F. Gansler
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202-2202

The Hon. Martha Coakley
Office of the Attorney General
1 Ashburton Place
Boston, MA 02108-1698



The Hon. Bill Schuette
Office of the Attorney General
P.O.Box 30212
525 W. Ottawa St.
Lansing, MI 48909-0212

The Hon. Lori Swanson
Office of the Attorney General
State Capitol, Ste. 102
St. Paul, MN 55155

The Hon. Jim Hood
Department of Justice, P.O. Box 220
Jackson, MS 39205

The Hon. Chris Koster
Supreme Ct. Bldg.
207 W. High St.
Jefferson City, MO 65101

The Hon. Tim Fox
Justice Bldg.
215 N. Sanders
Helena, MT 59620-1401

The Hon. Jon Bruning
Office of the Attorney General
State Capitol, P.O. Box 98920
Lincoln, NE 68509-8920

The Hon. Catherine Cortez Masto
Office of the Attorney General
Old Supreme Ct. Bldg.
100 N. Carson St.
Carson City, NV 89701

The Hon. Joseph A. Foster
Office of the Attorney General
33 Capitol St.
Concord, NH 03301



The Hon. John Jay Hoffman
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 080
Trenton, NJ 08625

The Hon. Gary King
Office of the Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

The Hon. Eric Schneiderman
Office of the Attorney General
Dept. of Law - The Capitol, 2nd fl.
Albany, NY 12224

The Hon. Roy Cooper
Office of the Attorney General
Dept. of Justice, P.O. Box 629
Raleigh, NC 27602-0629

The Hon. Wayne Stenehjem
Office of the Attorney General
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505-0040

The Hon. Joey Patrick San Nicolas
Office of the Attorney General
Administration Building
P.O. Box 10007
Saipan MP 96950-8907

The Hon. Mike DeWine
Office of the Attorney General
State Office Tower
30 E. Broad St.
Columbus, OH 43266-0410



The Hon. Scott Pruitt
Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

The Hon. Ellen F. Rosenblum
Office of the Attorney General, Justice Bldg.
1162 Court St., NE
Salem, OR 97301

The Hon. Kathleen Kane
Office of the Attorney General
1600 Strawberry Square
Harrisburg, PA 17120

The Hon. Luis Sánchez Betances
Office of the Attorney General
PO Box 902192
San Juan, PR 00902-0192

The Hon. Peter Kilmartin
Office of the Attorney General
150 S. Main St.
Providence, RI 02903

The Hon. Alan Wilson
Office of the Attorney General
Rembert C. Dennis Office Bldg.
P.O.Box 11549
Columbia, SC 29211-1549

The Hon. Marty J. Jackley
Office of the Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501

The Hon. Robert E. Cooper, Jr.
Office of the Attorney General
425 5th Avenue North
Nashville, TN 37243



The Hon. Greg Abbott
Office of the Attorney General
Capitol Station, P.O. Box 12548
Austin, TX 78711-2548

The Hon. John Swallow
Office of the Attorney General
State Capitol, Rm. 236
Salt Lake City, UT 84114-0810

The Hon. William H. Sorrell
Office of the Attorney General
109 State St.
Montpelier, VT 05609-1001

The Hon. Vincent Frazer
Dept. of Justice, G.E.R.S. Complex 488-50C
Kronprinsdens Gade, St. Thomas, VI 00802

The Hon. Ken Cuccinelli
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

The Hon. Bob Ferguson
Office of the Attorney General
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504-0100

The Hon. Patrick Morrisey
Office of the Attorney General
State Capitol
1900 Kanawha Blvd., E.
Charleston, WV 25305

The Hon. J.B. Van Hollen
Wisconsin Department of Justice
State Capitol, Room 114 East
P. O. Box 7857
Madison, WI 53707-7857



The Hon. Peter K. Michael
Office of the Attorney General
State Capitol Bldg.
Cheyenne, WY 82002