| | |
|---|---|
| **IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION** | **Case No. 12-MD-2358 (SLR)** |
| **This Document Relates to:** **All Actions** | |

## <u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; BRIEF IN SUPPORT</u>

**SILVERMAN THOMPSON SLUTKIN WHITE**
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@mdattorney.com*

*Executive Committee Member*

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**STRANGE & BUTLER LLP**
Brian Russell Strange
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*bstrange@strangeandbutler.com*

*Executive Committee Member*

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs") hereby move the Court for an order certifying a settlement class and preliminarily approving a settlement with Defendant Google Inc. ("Google"). Plaintiffs file this motion pursuant to Federal Rule of Civil Procedure 23, on the grounds that the requirements for class certification are met and the proposed settlement is fair, reasonable, and adequate. This motion is based on this motion; the attached brief in support; the Declarations of Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton; the other papers on file with the Court in this action; and all other evidence and argument the Court permits counsel to present regarding this matter.

Dated: August 29, 2016                                Respectfully Submitted,

**STRANGE & BUTLER LLP**

*/s/ Brian Russell Strange* _____
Brian R. Strange
**STRANGE & BUTLER LLP**
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*bstrange@strangeandbutler.com*

*Executive Committee Member*

**SILVERMAN THOMPSON SLUTKIN WHITE**

 */s/ Stephen G. Grygiel* _____
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel:  443-909-7516
sgrygiel@mdattorney.com

*Executive Committee Member*

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertson, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel:  913-266-2300
jimf@bflawfirm.com

*Executive Committee Member*

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.    SUMMARY OF ARGUMENT ...................................................................................... 2

III.   TERMS OF THE PROPOSED SETTLEMENT ............................................................ 4

      A.    The Proposed Settlement Class ..................................................................... 5

      B.    Assurances By Google .................................................................................. 5

      C.    The *Cy Pres* Payments ................................................................................ 5

      D.    Costs of Settlement Administration ............................................................... 6

      E.    Plaintiffs' Litigation Costs and Fees ............................................................ 6

      F.    Incentive Payments to Class Representatives ................................................ 7

      G.    Release By Settlement Class Members ......................................................... 7

      H.    Notice Plan .................................................................................................... 7

      I.     Right to Opt-Out or Object ........................................................................... 8

IV.   ARGUMENT ............................................................................................................. 8

      A.    The Settlement Class Should be Certified Under Rule 23(a) and (b)(2) .................. 8

      B.    The Settlement Should be Preliminarily Approved ................................................ 12

            1.    The Settlement is Presumed Fair .................................................. 13

            2.    Other Factors Also Demonstrate the Fairness of the Settlement ................. 14

                  a.    The Complexity, Expense, and Likely Duration of Litigation ...................................................................................... 15

                  b.    The Stage of the Proceedings and the Amount of Discovery Completed ................................................................. 16

                  c.    The Risks of Establishing Liability and Damages .......................... 16

                  d.    Ability of Defendant to Withstand a Greater Judgment ................. 17

                   e.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks ............................................................................ 17

      C.    The Proposed Notice is Appropriate ...................................................................... 17

V.    CONCLUSION ......................................................................................................... 19

VI.      LOCAL RULE 7.1.1 STATEMENT ............................................................................19

## TABLE OF AUTHORITIES

<u>Cases</u>

*Austin v. Pa. Dep't of Corr.*,
    876 F. Supp. 1437 ........................................................................................ 14

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ............................................................................ 10

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)........................................................................ 11

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974)........................................................................ 15

*First Commodity Corp. of Bos. Customer Accounts Litig.*,
    119 F.R.D. 301 (D. Mass. 1987).................................................................. 13

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)............................................................... 3, 13

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..................................................................... 3, 15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................. 3, 16, 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).......................................................... 3, 12, 13

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................ 3

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) .......................................................... 16

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 278 (E.D. Pa. 2012)............................................................ 13, 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..................................................................... 8, 16

*In re Sch. Asbestos Litig.*,
    789 F.2d 996 (3d Cir. 1986)........................................................................ 17

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ...................................................................... 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F. 3d 516 (3d Cir. 2004)......................................................................... 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001)......................................................................... 10

*Stanford v. Foamex L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009)................................................................... 10

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)........................................................................... 9

*United States v. Google, Inc.*,
No. 12-cv-04177-SI, 2012 WL 5833994 (N.D. Cal. Nov. 16, 2012) ............................ 18

## Miscellaneous

5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999) ..................... 9

1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992).................. 10, 12, 13

<u>**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS**</u>
<u>**ACTION SETTLEMENT**</u>

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs"), on behalf of themselves and the class defined herein, and Defendant Google Inc. ("Google" or "Defendant") have reached a class action settlement ("Settlement") (Exhibit A to the Declaration of Brian R. Strange), of which the parties now seek preliminary approval from the Court.

The background of this litigation is as follows: Plaintiffs in the Consolidated Amended Class Action Complaint and numerous other individuals filed complaints in various federal courts around the country in 2012. These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint against Google and other parties (all Defendants other than Google referred to as "Non-Settling Defendants"). On June 21, 2016, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint").

Plaintiffs centrally allege in the Complaint that Defendant Google circumvented Plaintiffs' Safari and Internet Explorer browsers and defeated the default cookie settings of such browsers in violation of federal and state laws. More particularly, Plaintiffs allege that when Plaintiffs and Class Members visited a website containing an advertisement placed by certain Defendants in this case, tracking cookies were placed on Plaintiffs' computers that circumvented Plaintiffs' and Class Members' browser settings that blocked such cookies. Plaintiffs allege Defendant's secret and unconsented use of those cookies knowingly intercepted and gained access to Plaintiffs' and Class Members' Internet communications and activity in violation of

federal statutes and state laws. Google denies these claims.

Google filed a motion to dismiss all the claims against it on January 22, 2013 (D.I. 56) and, on October 9, 2013, this Court granted the motion to dismiss in its entirety and dismissed this case (D.I. 122). On November 10, 2015, the Third Circuit Court of Appeals affirmed the dismissal of the three federal law claims brought against all Defendants, vacated the District Court's dismissal of Plaintiffs' freestanding privacy claims against Google under the California Constitution and California tort law, and affirmed the dismissal of the remainder of Plaintiffs' state law claims.

On March 10, 2016, Plaintiffs filed a Petition for Writ of Certiorari with the United States Supreme Court, seeking review of the Third Circuit's Opinion.

On May 9, 2016, Lead Counsel for Plaintiffs (Brian R. Strange, James P. Frickleton, and Stephen G. Grygiel (hereinafter, "Class Counsel")) and counsel for Google participated in a private mediation before Retired Federal Judge Layn Phillips. The parties exchanged extensive briefing, participated in pre-mediation phone calls, and engaged in an all-day mediation on May 9, 2016. During the mediation, Plaintiffs and Google agreed to the basic terms of this Settlement, which were later memorialized in a final document executed by all parties and Class Counsel as of June 30, 2016. *See* Strange Decl. ¶ 7; Grygiel Decl. ¶¶ 7–9; Frickleton Decl. ¶ 4.

Plaintiffs now seek preliminary approval of the Settlement.

## II.  SUMMARY OF ARGUMENT

1.  All of the requirements of class certification are met, and the Settlement Class[1]

---

[1] The Settlement Class consists of all persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

should be certified under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure (hereinafter, "Rule 23"). The Settlement Class is so numerous that joinder of all class members is impracticable; there are questions of fact or law common to the Settlement Class; Plaintiffs' claims are typical of the claims of the Settlement Class; Plaintiffs and their counsel will fairly and adequately represent the interests of the Settlement Class; and Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *See* Strange Decl. ¶ 4.

2. Plaintiffs and their counsel, Brian R. Strange of Strange & Butler LLP, Stephen G. Grygiel of Silverman Thompson Slutkin White, and James P. Frickleton of Bartimus, Frickleton, and Robertson, P.C., should be appointed to represent the Settlement Class.

3. The Settlement is fair, reasonable, and adequate, and should be preliminarily approved. The proposed Settlement meets the standard for preliminary approval. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 445 (E.D. Pa. 2008) (standard is whether settlement is "within range of reasonableness"). As relevant here, the preliminary approval determination asks whether (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785–86 (3d Cir. 1995); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). If these factors are met, there is "an initial presumption of fairness." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing *In re Gen. Motors Corp.*, 55 F.3d at 785). Considering these factors, as well as the final approval factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156–57 (3d Cir. 1975), the Settlement is well within the range of reasonableness and should be preliminarily approved.

4.  The Court should order that the proposed notice plan be implemented.  The proposed notice plan is reasonable, appropriate, and fully satisfies the requirements of Rule 23 and due process.  *See* Declaration of Stephen J. Cirami Regarding Notice and Settlement Administration; *see also* Notice of Proposed Class Action Settlement (long form notice) and Summary Notice, Exhs. C and D, respectively, thereto.

## III.     TERMS OF THE PROPOSED SETTLEMENT

The proposed Settlement with Google was reached following extensive arms-length negotiations between Plaintiffs' counsel (Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton), on the one hand, and Google on the other hand.  Plaintiffs and Google discussed for several months the possibility of settling Plaintiffs' claims against Google.  Following the mediation and many back-and-forth negotiations and discussions, the relevant parties agreed upon and executed a formal settlement agreement.  Throughout the course of settlement negotiations, the parties took into consideration potential liability and damage issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation.  Class Counsel believes the proposed Settlement is fair and reasonable and should be approved by this Court.[2]  *See* Strange Decl. ¶ 8; Grygiel Decl. ¶ 6-9; Frickleton Decl. ¶ 4.

---

[2] At the time of the May 9, 2016 mediation and agreement of settlement, the Petition for Writ of Certiorari was pending with the Supreme Court.  The Supreme Court had not yet ordered any party to respond to the Petition.  On May 10, 2016, one day after the mediation, but before the settlement was formally documented, the Supreme Court ordered Google and Non-Settling Defendants to respond to the Petition.  On June 28, 2016 Google informed the Court that in light of its settlement with Plaintiffs, Google would not be responding to the petition unless thereafter requested to do so by the Court. On August 11, 2016, the Non-Settling Defendants responded to the Petition.  Plaintiffs' reply to the Non-Settling Defendants' Media Innovation Group, LLC's and WPP PLC's response to the Petition is due on August 29, 2016.  Plaintiffs are advised that the Supreme Court is currently scheduled to consider the Petition at conference on September 29, 2016.

## A.     The Proposed Settlement Class

Plaintiffs request that, pursuant to the terms of the Settlement, the Court certify the following proposed Settlement Class:

> All Persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

Settlement Agreement ("S.A."), Strange Decl. ¶ 3, Ex. 1, § 2.3.

## B.     Assurances By Google

The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.  The settlement provides that Google fully remediate the allegedly wrongful conduct.  Specifically, Google will provide Class Counsel with assurances that it has implemented systems configured to instruct Safari browsers to expire any cookie placed from the doubleclick.net domain by Google if those systems encountered such a cookie, with the exception of the DoubleClick opt-out cookie, until the time that all cookies placed from the doubleclick.net domain by Google on Safari browsers through February 15, 2012 should have expired by design.  *Id.* § 5.1.

## C.     The *Cy Pres* Payments

Google shall deposit $500,000 in an interest-bearing Settlement Account within 21 days of the entry of the Preliminary Approval Order.  *Id.* § 5.2.2.  Google shall deposit an additional sum of $5,000,000 in the Settlement Account within 10 days of the Effective Date of the Settlement, as defined in the Settlement Agreement.  *Id.*  These monies, including any accrued interest and less any expenses for the Settlement Administrator, the Notice Plan, the Fee Award, the Incentive Awards, and any other notice fees or costs, shall be paid to *cy pres* recipients

determined by Class Counsel and Google and approved by the Court. *Id.* § 5.3.3. The proposed recipients are recognized leaders in the fields of online privacy, safety, and/or advocacy and must agree to devote the funds to promote public awareness and education and/or to support research, development, and initiatives related to the security and/or privacy of Internet browsers. *Id.* § 5.3.1. The list of proposed recipients, agreed to by Class Counsel and Google, of the *cy pres* funds are:

1. Berkeley Center for Law & Technology;

2. Berkman Center for Internet & Society at Harvard University;

3. Center for Democracy & Technology (Privacy and Data Project);

4. Public Counsel;

5. Privacy Rights Clearinghouse; and

6. Center for Internet & Society at Stanford University (Consumer Privacy Project).

Based on the size of the Class in this case, which is estimated to be millions of individuals, distribution of the settlement fund to the six *cy pres* recipients above, who must agree to use the funds to promote public awareness, education, and/or support research, development, and initiatives related to the security and privacy of Internet browsers, is the most efficient and best use of the settlement proceeds. Frickleton Decl. ¶ 5.

**D.     Costs of Settlement Administration**

Google has agreed to pay all reasonable Settlement Administrator expenses up to $500,000, which are to be paid from the Settlement Fund. S.A. § 7.1.

**E.     Plaintiffs' Litigation Costs and Fees**

Subject to the Court's approval, Class Counsel may move the Court for, and Google will

not contest, an award of reasonable attorneys' fees and costs not to exceed $2,500,000, to be paid from the Settlement Fund.  *Id.* § 11.

F.    **Incentive Payments to Class Representatives**

Subject to the Court's approval, Class Counsel may move the Court for, and Google will not contest, incentive payments in a total amount not to exceed $3,000 ($1,000 per Class Representative), to be paid from the Settlement Fund.  *Id.* § 11.2.

G.    **Release By Settlement Class Members**

Following entry of the Final Order and Judgment, as defined in the Settlement Agreement, the Class will have released the "Released Parties" from the "Released Claims," all as defined in the Settlement Agreement, including a waiver of California Civil Code § 1542.  *Id.* § 10.  The Released Claims, as defined, will include all claims raised or which could have been raised in the Complaint based on the factual allegations.

H.    **Notice Plan**

After entry of the Preliminary Approval Order, the Settlement Administrator will begin publishing notice of this Settlement via the online and print media outlined in the Notice Plan. The Notice Plan provides for notice to the Settlement Class via ads served for a six week period on the Audience Network Buy network (covering over 84% of the total U.S. Internet population and running on over 3 million websites) and Pulpo Media network (bi-language network including thousands of Spanish language websites).  In addition, the Notice Plan provides for targeted advertisements for a six week period on the Facebook social networking site, as well as a notice of the Settlement published in the widely-circulated *People* magazine.  The Class Administrator estimates that this Notice Plan will reach at least 70% of adults over the age of 18 within the United States with any Internet usage in the last 30 days on Safari or Internet Explorer

browsers.

## I.     Right to Opt-Out or Object

A Class Member may request exclusion from the Class up until the Opt-Out Deadline. To request exclusion, the Class Member must complete, sign, and mail to the Settlement Administrator a Request for Exclusion form.  Cirami Decl. Exh. D.  The Request for Exclusion must be signed by the Class Member seeking exclusion under penalty of perjury.

Any Class Member who does not submit a valid and timely Request for Exclusion may object to the fairness, reasonableness, or adequacy of the Agreement.  A Class Member who wishes to object must send to the Settlement Administrator, Class Counsel, and Google's counsel, and file with the Court, a written statement of the objection(s).  Class Members or their attorneys intending to make an appearance at the Final Approval Hearing must file with the Court and deliver a copy of the notice of appearance on Class Counsel and Google's counsel no later than 21 days before the Final Approval Hearing.

## IV.    ARGUMENT

## A.     The Settlement Class Should Be Certified Under Rule 23(a) and (b)(2)

When a class settlement occurs before class certification has taken place, a court may conditionally certify the case for settlement purposes.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998).  The court uses the same Rule 23 requirements whether it certifies the class for trial or settlement.  *Id.*  When certification is sought under Rules 23(a) and (b)(2), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the requirement of Rule 23(b)(2) that the Defendant acted on grounds generally applicable to the class, thereby making final injunctive relief

appropriate with respect to the class as a whole.

A class certification motion had not been filed in this action at the time of settlement. Nevertheless, this is exactly the type of case that is particularly appropriate for settlement class certification. Significantly, Defendant has agreed not to contest conditional certification of the Settlement Class for settlement purposes. This Court previously certified a similar class in this case when it approved both preliminary and finally the settlement between former Defendant PointRoll and the Plaintiff Class herein. *See* Strange Decl. ¶ 11.

Plaintiffs seek certification of the following class for settlement purposes only: all persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.[3]

All of the class certification elements are met here.

**Numerosity** under Rule 23(a)(1) is met because Google has served ads to millions of users on Safari and Internet Explorer browsers during the relevant time period. This is more than sufficient to meet the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citing 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999))).

**Commonality** under Rule 23(a)(2), which requires that there be common questions of law or fact, is also present here for settlement purposes. This requirement is construed

---

[3] Excluded from the Class are Google, PointRoll, Vibrant Media, WPP, Media Innovation Group, and their officers, directors, employees, affiliates, legal representatives, predecessors, successors, and assigns, and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case and their immediate families.

permissively, and there does not have to be "complete congruence" of common issues; even one common issue is sufficient. *Id.* ("The commonality requirement will be satisfied if the named plaintiffs share *at least one* question of fact or law with the grievances of the prospective class." (emphasis added) (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994))); 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) [hereinafter *Newberg*] (the commonality standard is "easily met" for most settlement classes).

Here, for settlement purposes, many questions of law and fact are common to the class, as required under Rule 23(a)(2): whether Google's alleged business practice of circumventing Plaintiffs' and Class Members' Safari and Internet Explorer browsers security settings to transmit, access, collect, monitor, and remotely store users' data constituted a violation of intrusion upon seclusion under California common law or a claim for violation of the California Constitution's right to privacy; how Google carried out the browser circumvention; and whether Plaintiffs are entitled to damages or other relief. These common questions related to Google's alleged actions in sending the exact same computer code to many users supports settlement certification under Rule 23(a)(2).

**Typicality** under Rule 23(a)(3) "does not demand identical claims, only that they be reasonably coextensive with those of the absent class members." *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009) (citing *Baby Neal*, 43 F.3d at 57–58). This requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184–85 (3d Cir. 2001) (citations and internal quotation marks omitted). The Named Plaintiffs have alleged that

they visited websites on their Safari and Internet Explorer browsers during the relevant time period, those websites were served ads by Google, and therefore were subjected to Google's alleged cookie circumvention technique. Therefore, the Plaintiffs' experiences were not only typical of the proposed class—they were <u>identical</u> to the claims of the Settlement Class Members, as defined.

**Adequacy** under Rule 23(a)(4) concerns whether the class representatives and their counsel will "fairly and adequately protect the interests of the class." This "requirement encompasses two distinct inquiries designed to protect the interests of absentee class members. First, it tests the qualifications of the counsel to represent the class. Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citations and internal quotation marks omitted). Both requirements are met here. There is no antagonism between Plaintiffs and Class Members, all of whom assert the same underlying claims based upon the same conduct by Google. Plaintiffs and the Class Members allege to have visited sites on their Safari and Internet Explorer browsers that were served by Google ads, and the same Google code allegedly caused cookies to be set in the same manner on each browser. Plaintiffs' adequacy is also shown by their agreement to serve as representative plaintiffs and their retention of experienced, competent counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class. Strange Decl. ¶¶ 17–18; Grygiel Decl. ¶¶ 16–17; Frickleton Decl. ¶¶ 8–9.

In fact, Plaintiffs' counsel, who have already been appointed as interim class counsel in this matter, have extensive experience with complex class actions, including cases similar to this, having served and still serving as class counsel in numerous federal and state court consumer

fraud and privacy actions which have resulted in tens of millions of dollars being returned to consumers. Class Counsel have also published several articles on Internet privacy issues. Strange Decl. ¶ 12; Grygiel Decl. ¶¶ 16–17; Frickleton Decl. ¶¶ 8–9. Additionally, federal and state courts around the country have repeatedly found Class Counsel to be adequate class and MDL counsel. *Id.*; *see also* 1 *Newberg* § 3.24 (the competence and experience of class counsel should be presumed in the absence of proof to the contrary). Class counsel therefore respectfully request that, pursuant to Rule 23(g),[4] they be appointed Class Counsel for purposes of this settlement.

**Rule 23(b)(2)** requires that Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. This element is easily met, as Google served the same code that circumvented users' Safari and Internet Explorer browser cookie settings to all Plaintiffs and Class Members. Therefore, injunctive relief is appropriate here.

## B.      The Settlement Should be Preliminarily Approved

Rule 23(e) requires Court approval of a class settlement. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See In re Gen. Motors Corp.*, 55 F.3d at 784 (citing 2

---

[4] Rule 23(g)(1) provides in relevant part as follows:
   **(1)** ***Appointing Class Counsel.*** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
   **(A)** must consider:
   **(i)** the work counsel has done in identifying or investigating potential claims in the action;
   **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
   **(iii)** counsel's knowledge of the applicable law; and
   **(iv)** the resources that counsel will commit to representing the class;
   **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . .

*Newberg* § 11.41 (citing cases)). "The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.* (citing *First Commodity Corp. of Bos. Customer Accounts Litig.*, 119 F.R.D. 301, 306–07 (D. Mass. 1987)). "These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself." *Id.*

At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *In re Gen. Motors Corp.*, 55 F.3d at 785; *see also Gates*, 248 F.R.D. at 444–45.

### 1. The Settlement is Presumed Fair

Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); 4 *Newberg* § 11.24.

The parties in this class action negotiated the proposed Settlement in good faith and at arms-length. The proposed Settlement was reached only after months of back-and-forth negotiations, which further confirms the arms-length nature of the Settlement. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 297 (E.D. Pa. 2012) (standard met where the "proposed class settlement was negotiated at arm's length over the course of four months by Plaintiffs' Interim Co-Lead Counsel and [settling defendant's] counsel"); *see also* Strange Decl. ¶ 8; Grygiel Decl. ¶ 7; Frickleton Decl. ¶ 4. Moreover, Plaintiffs have performed thorough investigation of the technical and factual issues in the case. *See, e.g.*, *In re Processed Egg Prods.*

*Antitrust Litig.*, 284 F.R.D. at 297 ("[A]lthough no formal discovery was conducted in this case during the time of the [Settlement] negotiations or agreement, Plaintiffs' Interim Co-Lead Counsel conducted informal discovery, including, *inter alia*, independently investigating the merits prior to filing the complaint, which enabled counsel to have sufficient background in the facts of the case, including [defendant's] alleged role in it."). Moreover, by and through Google's pleadings, motions, and settlement communications, Google's counsel made additional information available to Class Counsel that assisted Class Counsel in making the decision to agree to the Settlement. *See also* Strange Decl. ¶ 13; Grygiel Decl. ¶ 12–13.

Furthermore, counsel for each side—who are experienced plaintiffs' class action and defense attorneys with substantial experience in Internet privacy litigation—have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions. Their view that the proposed Settlement is a fair resolution of their dispute is entitled to considerable weight. *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 ("great weight" normally given to opinion of counsel regarding class settlement).[5]

### 2. Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria considered by courts in evaluating class action settlements under Rule 23(e), even in the context of final approval. The standard factors relevant to a determination of a settlement's fairness in the Third Circuit are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

---

[5] Plaintiffs do not discuss the fourth factor regarding number of class objections, since Class Members have not yet been given notice of the Settlement, and this factor is therefore inapplicable to this preliminary analysis.

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 156–57. The currently relevant final settlement approval criteria are discussed below.[6]

### a. The Complexity, Expense, and Likely Duration of Litigation

This factor captures "the probable costs, in both time and money, of continued litigation," *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974), weighing the potential risks and rewards of proceeding with litigation in order to weigh the likelihood of success against the benefits of an immediate settlement. At the time the Settlement was reached, only two claims remained after the Third Circuit's decision, a violation of intrusion upon seclusion under California common law and a claim for violation of the California Constitution's right to privacy. The Third Circuit affirmed dismissal of the statutory claims which had statutory damages and would have been easier to certify.

This uncertainty is highlighted by Google's adamant position throughout the litigation that (i) the deployment did not involve the collection, retention, or resale of any specific personal information, (ii) Google never possessed the requisite intent to invade Plaintiffs' privacy, (iii) the alleged cookie placement on Safari browsers was inadvertently caused by an unadvertised feature of the browser that was unknown to the Google team that created the cookies at issue, and (iv) the Settlement Class suffered no legally cognizable injuries as a result of the alleged conduct. Grygiel Decl. ¶ 13.

---

[6] Plaintiffs do not discuss the Class Members' reactions to the proposed Settlement, since Class Members have not yet been given notice of the Settlement, and this factor is therefore inapplicable to the preliminary fairness analysis.

While Class Counsel strongly disagree with Google's analysis, and believe that both the law and facts support Plaintiffs' position regarding Google's use of these cookies that violated federal and state statutes, there is clearly no guarantee that Plaintiffs will prevail. *See also* Strange Decl. ¶ 14; Grygiel Decl. ¶ 15.

### b.  The Stage of the Proceedings and the Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at 235. Class Counsel have made a thorough investigation into the facts and circumstances relevant to the claims at issue in the litigation. *See* Strange Decl. ¶ 13; Grygiel Decl. ¶ 12.

### c.  The Risks of Establishing Liability and Damages

The *Girsh* factors concerning the risks of establishing liability and damages require a court to "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d at 579 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319). As discussed under element a of the analysis, *supra*, although Class Counsel are prepared to present strong evidence that Google's cookie circumvention technique violated California common law, that the case should be certified as a class, and that the Settlement Class is entitled to damages under these laws as a result, Google is also prepared to mount a vigorous defense. Given these risks, Plaintiffs and Class Counsel believe the settlement with Google provides meaningful benefits to the Class. *See* Strange Decl. ¶ 15; Grygiel Decl. ¶ 15; Frickleton Decl. ¶ 7.

Because "the prospects for obtaining certification have a great impact on the range of

recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986). While Plaintiffs strongly believe they could certify a class for litigation, the risk of maintaining a class through trial is a consideration that Plaintiffs and Class Counsel believe supports this early settlement. *See* Strange Decl. ¶ 16.

### d. Ability of Defendant to Withstand a Greater Judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240. While Plaintiffs believe Google has the ability to withstand a greater judgment, based on the other risks, Plaintiffs and Class Counsel believe that this settlement is beneficial to the Class.

### e. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks

Under the proposed Settlement, Google has agreed to pay $5,500,000, to be distributed to designated *cy pres* recipients, after payment of costs and expenses of the Settlement Administrator, Notice, the Fee Award, and any other administrative Fees and expenses. S.A. § 5.2. In addition, Google will provide Class Counsel with assurances that it implemented systems configured to instruct Safari browsers to expire any cookie placed from the doubleclick.net domain by Google if those systems encountered such a cookie, with the exception of the DoubleClick opt-out cookie, until the time that all cookies placed from the doubleclick.net domain by Google on Safari browsers through February 15, 2012 should have expired by design. These remedies, coupled with the injunctive and monetary penalties already obtained by the government against Google on behalf of consumers, renders the current settlement reasonable for

class members.  *See*  Strange Decl. ¶¶ 6, 10; Frickleton Decl. ¶ 6.

Indeed, as Google has repeatedly emphasized, Google has already paid $22.5 million to settle related claims brought by the Federal Trade Commission and an additional $17 million for related claims asserted by various state attorneys general.  The FTC acknowledged that the penalty it imposed on Google was "many times the upper-bound of what the FTC independently estimated the company earned from the alleged violation."  *United States v. Google Inc.*, No. 3:12-cv-04177-SI, ECF No. 15 at 9–10 & n.12 (N.D. Cal. Sept. 28, 2012).  And the district court approving the FTC settlement recognized that the alleged events did not result in "large amounts of consumer loss or Google profit."  *United States v. Google Inc.*, No. 3:12-cv-04177-SI, 2012 WL 5833994, at *5 (N.D. Cal. Nov. 16, 2012).  The FTC and the district court also determined that the remedial actions agreed to by Google "sufficiently protect[] consumers from ongoing harm without exposing them to additional risks." *Id.* at *4–5; Frickleton Decl. ¶ 7; Grygiel Decl. ¶ 10.

## C.      The Proposed Notice is Appropriate

The proposed Notice Plan should be approved by the Court.  Rule 23(e)(1) requires notice of a class action settlement to be provided "in a reasonable manner to all class members who would be bound by the proposal."  The proposed Notice Plan here provides for notice to the Settlement Class via ads served for a six week period on the Audience Network Buy network (covering over 84% of the total U.S. Internet population and running on over 3 million websites) and Pulpo Media network (bi-language network including thousands of Spanish language websites).  In addition, the Notice Plan provides for targeted advertisements for a six week period on the Facebook social networking site, as well as a notice of the Settlement published in the widely-circulated *People* magazine.  The Class Administrator estimates that this Notice Plan

would reach at least 70% of adults over the age of 18 with any Internet usage in the last 30 days, and is more than sufficient to meet due process considerations.

## V.     <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs request that the Court enter the proposed Preliminary Approval Order lodged concurrently herewith; certify the Settlement Class; appoint Plaintiffs Josh Bermudez, Nicholas Todd Heinrich, and Lynne Krause as Class Representatives; appoint Strange & Butler LLP, Silverman Thompson Slutkin White, and Bartimus, Frickleton, and Robertson, P.C. as Class Counsel; order that the proposed Notice be disseminated; and schedule a final fairness hearing.

## VI.     <u>LOCAL RULE 7.1.1 STATEMENT</u>

No party to this proposed settlement opposes the relief sought in this motion. The non-settling Defendants have not been consulted due to the provision in the Agreement that the terms of the settlement remain confidential until submitted to the Court for its preliminary approval.


Dated: August 29, 2016                         Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN**          **STRANGE & BUTLER LLP**
**WHITE**

*/s/ Stephen G. Grygiel*                 */s/ Brian Russell Strange*
Stephen G. Grygiel (DE Bar ID #4944)      Brian Russell Strange
201 N. Charles Street, 26th Floor          12100 Wilshire Boulevard, Suite 1900
Baltimore, MD 21201                  Los Angeles, CA 90025
Tel: 443-909-7516                     Tel: 310-207-5055
*sgrygiel@mdattorney.com*              *bstrange@strangeandbutler.com*

*Executive Committee Member*             *Executive Committee Member*

**BARTIMUS, FRICKLETON,**
**and ROBERTSON, P.C.**

*/s/ James P. Frickleton*  
James P. Frickleton  
Mary D. Winter  
Edward D. Robertston, Jr.  
11150 Overbrook Road, Suite 200  
Leawood, KS 66211  
Tel: 913-266-2300  
*jimf@bflawfirm.com*

*Executive Committee Member*