UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | C.A. No. 12-MD-2358 (SLR) **DECLARATION OF STEPHEN J. CIRAMI REGARDING NOTICE AND SETTLEMENT ADMINISTRATION** |

I, STEPHEN J. CIRAMI, declare and state as follows:

1.     I am an Executive Vice President and the Chief Operating Officer of Garden City Group, LLC ("GCG").  Over the past 12 years at GCG, I have handled a wide range of historic complex legal administrations, including mass tort settlements, human rights administrations, product liability settlements, antitrust matters, Department of Justice disgorgements, securities litigation settlements, SEC Fair Funds, and ERISA litigation, wage and hour, and insurance-related matters. I have particular expertise identifying solutions for cases involving high volume and inaccurate or dated data, and those requiring specialized class member identification demands. I have served as an expert witness in cases involving ascertainability of class members and notice and administration procedures.  Additionally, I have provided testimony regarding GCG's processes in numerous court proceedings.  As part of my duties, I also lead GCG's Notice Team. Attached as Exhibit A is my *curriculum vitae*.

2.     The following statements are based on my personal knowledge, as well as information provided by other experienced GCG employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

3.     GCG was engaged by the Parties to develop and implement a proposed legal notice program (the "Notice Program") to provide Class Members with information of the proposed settlement ("Settlement") with Google Inc. and all of its parent and subsidiary corporations and those acting on their behalf. ("Defendant" or "Google")

4.     GCG is a recognized leader in providing legal administrative services, including the development of complex legal notice programs.  GCG has offices in Lake Success, New York; Seattle, Washington; and Dublin, Ohio.  GCG has a staff of more than 600 employees, including more than 100 attorneys on staff, a team of software engineers, call center professionals, in-house legal advertising specialists, and graphic artists with extensive website design experience.

5.     GCG routinely develops and executes notice programs and manages administrations in a wide variety of class action settlements, with subject matters including, but not limited to, products liability, consumer, securities, mass tort, antitrust, labor and employment, ERISA, civil and human rights, insurance, and healthcare.  Our team has served as administrator for over 3,000 cases over GCG's 30 plus year history.  During that time, GCG has mailed hundreds of millions of notices, disseminated over 400 million emails, handled over 32 million phone calls, processed tens of millions claims, and distributed over $63 billion in settlement benefits.  Additional information about GCG can be found on our website at www.gardencitygroup.com.

6.     GCG's skilled team of advertising and media professions collectively have over 60 years of advertising industry experience, averaging 10 years per person of expertise in media and notice analysis.  GCG's Notice Team has designed and effectuated hundreds of notice programs, including many complex and high-profile matters with national and international reach.  The Notice Team is an integral part of the GCG Operations team and designs well-

**DECLARATION OF STEPHEN J. CIRAMI**
**CASE NO.** 1:12-md-02358-SLR

researched, tailored, cost-sensitive, start-to-finish notice program solutions that ensure that administrations are effectively and efficiently implemented.   The Notice Team is highly experienced utilizing social media, banner advertisements, mobile media, press releases, print media, and television and broadcast media to effectuate a wide variety of settlements.  Attached as Exhibit B are bios for GCG's various Notice Team members.

7.    As more fully described below, the proposed plan will provide reasonable notice of the Settlement to Members of the Class.  This Declaration describes and details the proposed Notice Program and why it is appropriate and practicable under the circumstances.

**PROPOSED NOTICE PROGRAM**

8.    According to the proposed Settlement Agreement and Release ("Settlement Agreement") provided by Counsel to GCG, multiple putative class actions were filed in federal district courts throughout the United States against Google (and other defendants) based generally on allegations that Google's placement of a browser cookie from the doubleclick.net domain on Safari and Internet Explorer browsers circumvented the default browser settings that Plaintiffs believed were designed to block such cookie placement.

9.    Based on the information in the Settlement Agreement, we understand the class definition to be:

> All persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

**STRATEGY AND TARGET AUDIENCE DEFINITION**

10.    GCG adheres to the highest communication and outreach standards, in part, by structuring its notice programs on data provided by standard methodology that is used throughout the advertising industry and which has been embraced by courts in the United States. The design of the proposed Notice Program is consistent with the U.S. Supreme Court's guidance in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co.*

*v. Carmichael*, 526 U.S. 137 (1999), and uses industry-accepted methodology that can be tested by peers. Specifically, GCG designed the Notice Program using a method accepted within the advertising industry to understand the target audience, including Class Members, by examining their demography and media consumption habits. This proposal describes the methodology for understanding the target audience and how the most appropriate media was selected to reach them.

11. In order to design an appropriate and efficient national legal notice program, GCG utilizes the syndicated research bureaus GfK Mediamark Research, Inc. ("GfK MRI") and comScore. GfK MRI is a nationally syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. GfK MRI conducts more than 26,000 personal interviews annually to gather their information, and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns. comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes and intentions.

12. Based on these media research tools, GCG is able to measure and report to the Court what percentage of the target audience is estimated to be reached by the Notice Program and how many times the target audience will have the opportunity to see the notice. In advertising, this is commonly referred to as a reach and frequency analysis. Reach refers to the estimated percentage of the unduplicated audience exposed to the notice. Frequency, in turn, refers to how many times, on average, the target audience had the opportunity to view the notice. Reach and frequency calculations are used by advertising and communication firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class action cases.

DECLARATION OF STEPHEN J. CIRAMI
CASE NO. 1:12-md-02358-SLR

13.     An exact target of "adults who use Apple Safari or Microsoft Internet Explorer web browsers" is not available in the above mentioned research tools. Therefore, taking into account the Class described above GCG believes that the best qualitative target for this case is "Adults 18 years old or older who have used the internet in the last 30 days" (the "Target Audience").

**PLAIN LANGUAGE**

14.     GCG will work with the Parties to finalize the Notice of Proposed Class Action Settlement to be published to ensure that it is written in a plain language style.  Attached as Exhibit C is a sample of the Notice of Proposed Class Action Settlement to be published.  Plain language is simply a more conversational form of communication, which is used, for example, when reporting the news.  The concept, now integrated into legal notice practice, is one that has received approval from various national and international authorities and organizations, including the Federal Judicial Center in the United States.

**OVERVIEW OF NOTICE PROGRAM**

15.     In order to reach a significant number of potential people covered by the Settlement, and using the information we understand about the Class, GCG proposes to use a variety of communication methods in the Notice Program.  Using a multifaceted approach, engineered through a combination of internet advertising and print media, this Notice Program is specifically designed to notify persons covered by the settlement.  The elements in this multilayered and comprehensive proposed Notice Program include:

(1) print notice in *People* magazine;

(2) banner notice on the internet targeted to Apple Safari and Microsoft Internet Explorer web browser users in English and Spanish with a link to the Long Form Notice

16.     The notice plan further described below is estimated to reach approximately 70% of the Target Audience with an average frequency of 2.15.  GCG believes this notice plan satisfies due process standards and will provide adequate notice to the settlement class based on the documents provided by Counsel.  The proposed notice plan is consistent with Fed. R. Civ. P.

**DECLARATION OF STEPHEN J. CIRAMI**
**CASE NO.** 1:12-md-02358-SLR

1    23 and provides the best practicable notice to reach class members affected by the Complaint.

2        17.    **Print Notice**: This notice plan proposes inserting a 1/2 page version of the

3    Summary notice in the national edition of *People* magazine to reach the Target Audience.

4        *People* is a national weekly magazine with broad circulation of

5        3.5 million and a readership of over 42 million.  People contains

6        insightful, compassionate and entertaining coverage of the most

7        intriguing people in our culture, from extraordinary people doing

8        the ordinary to ordinary people caught up in extraordinary

9        circumstances.  By revealing the human side to every story,

10       People connects readers to their world.

11       18.    **Paid Banner Advertisements**: Internet advertising has become a standard

12   component in legal notice programs.  The Internet has proven to be an efficient and cost-

13   effective method to target and provide measurable reach of persons covered by a settlement.

14   According to GfK MRI Research, 100% of the Target Audience has used the internet in the last

15   30 days, therefore we propose notifying potential Class Members by running banner ads on

16   select websites where class members visit regularly and utilizing networks based on cost

17   efficiency, timing, and their contribution to the overall reach of the target.    Banner

18   advertisements are image-based graphic displays that are used in legal noticing to notify people

19   of a settlement relevant to them.  The text of the banner advertisement, which the Parties will

20   review in advance of publication, will allow users to identify themselves as potential class

21   members and directly link them to the Long Form Notice for more information.  Attached as

22   Exhibit D is a sample of the Long Form Notice, GCG will continue to work with the Parties to

23   ensure that it is easily readable and finalized in a plain language format.

24       19.    The selected sites were chosen to reach a great number of Class Members

25   effectively.  According to GfK MRI research, our Target Audience is 20% more likely than

26   Adults 18+ to have visited a Spanish language website in the last 30 days and 19% read *People*

27   magazine. ComScore research reveals that over 88% of our Target Audience visit websites that

**DECLARATION OF STEPHEN J. CIRAMI**
**CASE NO.** 1:12-md-02358-SLR

are part of the Audience network, 70% visit Facebook, and 20% visit websites part of the Pulpo Media network.

20.    The banner advertisements will run for six weeks and will target Adults 18+ and users of Safari and Internet Explorer web browsers and will link directly to the Long Form Notice.    Attached as Exhibit E is a sample of the banner advertisement.    A list of the recommended websites included in the Notice Program is shown below.

| INTERNET | | |
|---|---|---|
| Site | URL | Unit Size |
| Audience Network | Various | 728 x 90 & 300 x 250 |
| Facebook | www.facebook.com | Custom |
| Pulpo Media (Spanish Language) | Various | 728 x 90 & 300 x 250 |
| Total Estimated Impressions: | 257,000,000 | |

21.    The Audience Network covers over 84% of the total U.S. internet population including websites from comScore's top 1,000 websites ranked by page views/traffic. Advertising has the opportunity to run on over 3 million websites including AOL.com, ABCFamily.go.com, CafeMom.com, FoodNetwork.com, MSN.com, WSJ.com, Weather.com, People.com, BHG.com, Pandora.com, ABCNews.go.com, AllYou.com, Prevention.com and Shape.com, among others.

22.    Facebook is the number one social networking site on the web with over 1.55 billion monthly active users worldwide and over 1 billion people logging in daily.

23.    Pulpo is a bi-language network including thousands of Spanish language websites. Pulpo is ranked by comScore Media Metrix as #1 in Hispanic Reach based on its Hispanic Ad Focus Hispanic Ad Focus (#1 Spanish Dominant, Bilingual, and English dominant Hispanics respectively). Ads may appear on such sites as Espanol.Weather.com, Hoy.es, and Univision.com, among others.

## CONCLUSION

24.    This method of focused notice dissemination is a reasonable and targeted approach to provide effective notice in this case. This Notice Program is estimated to reach at least 70% of Class Members with an average frequency of 2.15.  This methodology ensures an appropriate standard of individual notice to Class Members and is the best notice practicable under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 29th day of August, 2016 in New York, New York.

Stephen J. Cirami

**DECLARATION OF STEPHEN J. CIRAMI**
**CASE NO.** 1:12-md-02358-SLR

# Exhibit A

# Stephen Cirami

## Executive Vice President and Chief Operating Officer



### EXECUTIVE SUMMARY OF QUALIFICATIONS

- C-suite executive and accomplished operations and performance management professional with over 12 years of experience handling all aspects of hundreds of settlements, including some of the largest and most complex settlements of all time.
- Oversees wide range of administrations, including consumer, product liability, mass tort, human rights administrations, antitrust, DOJ disgorgements, SEC Fair Funds, ERISA, wage and hour and insurance related matters.
- Nationally renowned expert on all aspects of class member identification and notice outreach - currently currently serving as an expert witness in a series of related cases concerning the reasonable identification of class members and notice and administration procedures.
- Successfully defended various high stakes class actions as a class action attorney, and partnered with clients to develop and execute strategies tailored to meet their needs and specific circumstances.

## CONTACT

P. 631-470-6838

1985 Marcus Ave
Lake Success, NY 11042

stephen.cirami
@gardencitygroup.com

**Admissions:**
Florida State Bar
New York State Bar

**Education:**
Duke University, J.D.,
*cum laude*

State University of New
York at Albany, B.A.,
Psychology

## PROFESSIONAL EXPERIENCE

*Executive Vice President & Chief Operating Officer,* GCG, Lake Success, NY 2016-present

- Manages all GCG offices nationwide. Responsible for all ongoing legal administration projects.
- Leadership mission and vision: outstanding customer service and robust financial performance achieved by top-tier talent within an employee-first culture.
- Attends court hearings and conferences, including testifying when requested. Currently serving as an expert witness.

*Senior Vice President, Operations, GCG*, Lake Success, NY 2010 to 2015

- Head of East Coast Operations.
- Managed over 600 separate administrations from beginning to end, including hundreds of securities class action settlements and SEC Fair Funds.

*Vice President, East Coast Operations, GCG*, Lake Success, NY 2008 to 2010

*Assistant Vice President, East Coast Operations, GCG*, Lake Success, NY 2005 - 2008

*Director, Securities Operations, GCG*, Melville, NY 2003 - 2005

*Class Action Attorney, King & Spalding LLP*, New York, NY 1999 - 2003

*Litigation Attorney, Clifford Chance (formerly Rogers & Wells)*, New York, NY 1998 - 1999

**SELECTED CASES**

Managed all aspects of the following administrations at GCG:

- *Citigroup Bond Securities Litigation; No. 08-cv-9522; S.D.N.Y.*: $730 securities class action million settlement.
- *Gulino v. Board of Education*; *96 Civ. 8414 (KMW); S.D.N.Y.*: Employment discrimination class action settlement.
- *In Re Nortel Securities Litigation I; Case No. 01-cv-1855; and In Re Nortel Securities Litigation II; Case No. 05-MD-1659:* $2.4 billion international securities settlement.
- *In re: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litig.; MDL No. 13-2441(DWF/FLN); D. Minn.*: $1.425 billion mass tort settlement.
- *In re: Tyco International Ltd. Securities Litigation; MDL No. 02-1335-B; D.N.H.:* $3.20 billion securities class action settlement.
- *McDonough v. Toys 'R' Us, et al., No. 2:06-cv-0242-AB and Elliott v. Toys 'R' Us, et al., No. 2:09-cv-06151-AB.; E.D. Pa.*: $35 million retail & sales industry antitrust class action settlment.
- *Plymel, et al. v. Teachers Retirement System of Georgia, et al.; N0. 2004-cv-84312; Superior Court of Fulton County, Georgia*: Consumer & product class action settlement.
- *Royal Ahold N.V. Securities & ERISA Litigation; 03-MD-01539-CCB; D. Md:* $1.10 billion international settlement.
- *San Allen, Inc., et al. v. Stephen Buehrer, Administrator, Ohio Bureau of Workers' Compensation; No. cv-07-644950; Court of Common Pleas, Cuyahogo County, Ohio:* $420 million securities class action settlement.
- *United States v. City of New York (FDNY)*; *07-cv-2067; E.D.N.Y.:* Regulatory discrimination matter involving the City of New York and  the U.S. Department of Justice.
- *United States v. PokerStars, et al., 11 Civ. 2564 (LBS); S.D.N.Y.:* $730 million consumer & product regulatory settlement on behalf of the DOJ and the U.S. Attorney's Office for the Southern District of New York.

**SELECTED TESTIMONY**

Testified and/or submitted reports to discuss the claims process and/or claim determinations of GCG in various matters including:

- *In Re Royal Ahold N.V. Securities & ERISA Ligation*

The Honorable Catherine C. Blake, U.S. District Judge, District of Maryland, stated, "I appreciate the team of … settlement administrators … who have managed this process so well."

- *In Re Initial Public Offering Securities Litigation*

The Honorable Shira A. Scheindlin, U.S. District Judge, Southern District of New York, stated "GCG is complying with its typical procedures for claims administration and is going above and beyond its usual practices due to the size of the class in this action."

**PUBLICATIONS**

- "The Lawdragon Lawyer Limelight: Stephen Cirami" – *Lawdragon*, April 2016
- "Thinking Down the Road: 5 Things to Consider When Negotiating a Class Action Settlement" – *American Lawyer* and *Corporate Counsel* 2014.
- "Potential Pitfalls of Class Action Notice and Claims Administration in the 21st Century" – *Practicing Law Institute: Class Action Litigation Manual*, 2012.

## SPEAKING ENGAGEMENTS

| 2016 | • **The Duke Law Center for Judicial Studies**, San Diego, California, October<br>• **Confex, "Around the World in Eight Cases: The Top Litigation Trends of 2016**," Panel Moderator, London, England, September |
|------|---|
| 2014 | • **National Association of Attorneys General (NAAG) Fall Consumer Protection Seminar**, Providence, Rhode Island<br>• **6th Annual Conference on Global Investor Protection**, Frankfurt, Germany |
| 2013 | • **5th Annual Conference on Global Investor Protection**, Frankfurt, Germany |
| 2011 | • **Hedge Funds Care Investor Conference**, New York, NY |
| 2010 | • **Securities Industry and Financial Markets Association (SIFMA) Securities Conference**, New York, NY |
| 2009 | • **Three separate European Institutional Investor Conferences**<br>   o (Frankfurt, Germany; Paris, France; Zurich, Switzerland |
| 2007 | • **Bank Depository User Group (BDUG) Annual Conference**, San Antonio, Texas |

## CONTINUING LEGAL EDUCATION PRESENTATIONS

**2016**

- *Data Privacy and Protection in Legal Administrations*
  - o Motley Rice, June 8, 2016
  - o Duane Morris, March 29, 2016

**2014**

- *Settlement Administration from the Plaintiffs' Perspective*
  - o Motley Rice, September 24, 2014
  - o Spector Roseman, July 10, 2014
  - o Sussman Godfrey, August 6, 2014

## ORGANIZATIONAL AFFILIATIONS

- *Behind the Book,* Board Member, May 2015 to Present
- *CYO St. Edwards,* Board Member, April 2015 to Present

## PROFESSIONAL MEMBERSHIPS

- International Bar Association
- New York Bar Association
- The Practicing Law Institute Faculty

# Exhibit B

**Stephen Cirami, Executive Vice President & Chief Operating Officer:**  As GCG's Executive Vice President and Chief Operating Officer, Stephen Cirami provides leadership management and vision to ensure GCG's financial strength and operating efficiency while promoting growth of the organization. Mr. Cirami manages all GCG offices nationwide and is responsible for all ongoing legal administration projects across the company, including GCG's class action settlement administrations, restructuring and bankruptcy matters, mass tort settlements, regulatory settlements, legal notice functions through GCG Media, and data breach response programs.

A former class action attorney, Mr. Cirami is a nationally renowned expert on all aspects of class action legal notice and administration. Over the past 12 years at GCG, he has handled a wide range of historic complex legal administrations, including mass tort settlements, human rights administrations, product liability settlements, antitrust matters, DOJ disgorgements, SEC Fair Funds, and ERISA, wage and hour, and insurance-related matters. He has played an integral role in in many of GCG's largest and most high-profile matters, including the $10.3 billion *BP Deepwater Horizon Settlement*, the $1.425 billion *Stryker Modular Hip Settlement*, the $6.15 billion *WorldCom Securities Litigation Settlement*, the $1.1 billion *Royal Ahold Securities and ERISA Settlement*, and *United States v. Pokerstars (Full Tilt Poker)*.

Mr. Cirami consults frequently with plaintiff and defense counsel, as well as government agencies, to design programs that meet their specific needs and circumstances, which he and his team of highly skilled operations specialists implement and manage. He has particular expertise identifying solutions for cases involving high volume and inaccurate or dated data, and those requiring specialized class member identification demands. In fact, Mr. Cirami is currently serving as an expert witness in a series of related cases concerning the reasonable identification of class members and notice and administration procedures.

Mr. Cirami has handled more securities programs than any other legal administrator, and under his leadership, GCG has administered some of the most complex securities programs involving multiple parties, multiple related settlements, multiple classes of securities, and securities such as mortgage-backed instruments. He has even provided testimony regarding GCG's claims processes and claim determinations for these cases in numerous court proceedings.



**Shandarese  Garr, Senior Vice President, Diversity & Inclusion:** As Senior Vice President of Diversity & Inclusion, Shandy Garr is responsible for executing GCG's diversity and inclusion vision by working with GCG's Executive, Legal, Human Resources, Marketing, Business Development and Vendor Management teams to create and launch company-wide programs and initiatives that focus on inclusion to drive innovation, performance, and business growth. In this role, Ms. Garr designs and implements company-wide diversity and inclusion programs that emphasize the importance of sensitivity, cultural awareness, mentorship, and community involvement in order to promote a workplace environment in which every individual's unique strengths and abilities are developed and valued.

Ms. Garr has served as a member of GCG's Senior Management Team for more than 10 years. Ms. Garr began her career at GCG in 1994 as a class action claims administrator. In

1998, she was promoted to Director of the Securities Division, where she was responsible for all aspects of GCG's securities class action administrations. She became the Assistant Vice President of Securities Operations in 2000 and was promoted to Vice President of Securities Operations in April 2004. In July 2007, Ms. Garr became Vice President of East Coast Operations, where she led hundreds of legal administrations and worked on some of the largest and most complex settlements of all time, including the *Deepwater Horizon Economic Settlement Program, WorldCom Securities Litigation Settlement, Royal Ahold Securities Litigation Settlement, Nortel Networks Corp. Securities Litigation Settlement* and many others. In August 2007, Ms. Garr was promoted to Vice President/Managing Director of Strategic Initiatives. She was tasked with addressing some of the most important issues facing GCG, including optimization of operating capacity, and enhanced productivity growth. She was then tapped to manage GCG's Mail, Call and Processing Center in Dublin, Ohio, and later managed its Hammond, Louisiana, Operations Facility during the *Deepwater Horizon Economic Settlement Program.*



**Jose Fraga, Senior Director, Operations:** As a Senior Director of Operations, Jose Fraga oversees all broker and nominee outreach and class member identification efforts in all of GCG's securities class action shareholder administrations. Over the past decade, he has managed over 500 separate matters, including some of the most complex securities class member identification and outreach campaigns of all time (e.g., *IPO Securities Litigation, Royal Ahold N.V. Securities & ERISA Litigation,* and *Converium Holding AG International Settlement*). He has significantly contributed to the development of GCG's proprietary nominee database by maintaining extensive relationships with banks, brokers, clearing firms, indenture trustees, and transfer agents in an era characterized by the fall out of the 2008 financial crisis, high turnover, and extensive outsourcing of back office functions by banks and brokers. These relationships are key drivers to the success of many securities class action administrations at the noticing stage, ensuring that GCG's database is always up-to-date. This experience, combined with his outreach and class member identification expertise, has played an integral role in effectuating notice dissemination campaigns in hundreds of class action administrations

Mr. Fraga also handles disclosure-only settlements. Last year, he completed a large notice program for a settlement involving the $6 billion acquisition of LSI Corporation and, more recently, completed notice programs for the *CareFusion* and *International Game Technology* litigations. In New York State, Mr. Fraga led GCG's implementation of ground-breaking multinational notification programs involving multibillion dollar mortgage-backed securities settlements. Mr. Fraga is frequently consulted in the early stages of settlement in terms of identifying class members in unique cases involving sophisticated securities such as foreign exchange swaps and index linked notes. After an administration is underway, his knowledge of the markets and brokers enables him to assist individual class members.

Prior to joining GCG, Mr. Fraga practiced corporate finance law at both Skadden Arps Slate Meagher & Flom, and Morgan Lewis & Bockius, where he worked on stock offerings, SEC registered exchange offers, private offerings

**Lori Castaneda, Vice President of Operations:** Lori Castaneda manages Operations in GCG's West Coast Headquarters in Seattle, where she oversees a team of over 45 attorneys and 70 other professionals working on the hundreds of cases handled in that office. To date, Ms. Castaneda has handled over 125 class action settlement administrations personally with a total settlement value exceeding $20 billion, and she has testified in court regarding the success of GCG's administrations. Her work includes several precedent setting complex class action administrations involving innovative claimant outreach and notice solutions. Based on her experience, she is frequently called upon to consult with prospective clients on the ascertainability of the class, and as needed Ms. Castaneda and her team adjust notice programs throughout the course of an administration to ensure anticipated results are received.

Ms. Castaneda has been particularly instrumental in overseeing legal notice and claimant outreach in over 80 large consumer class actions, over 10 significant antitrust litigation settlements, and more than 30 wage & hour settlements. In particular, she has played a key role in the historic $3.4 billion administration of the *Cobell v. Salazar Indian Trust Settlement*, in which she worked closely with both plaintiffs' counsel and the Department of Justice. Ms. Castaneda managed the extensive class member outreach program which included notice dissemination to more than 700,000 individuals, as well as in-depth demographic research to map locations of class members to strategically execute community outreach. She also manages several of GCG's larger antitrust administrations, including *In re Air Cargo Shipping Services Antitrust Litigation* where GCG worked with U.S. and Canadian counsel to develop one of the largest international reach-based notice programs conducted to date in which published notice appeared in 36 languages available in nearly 140 countries. GCG was also responsible for the printing and mailing of the direct mail notice.

In recent years Ms. Castaneda has been involved in several other administrations involving large-scale notice, including the Classmates.com administration for which GCG sent more than 57 million notices and Time Warner Cable for which GCG sent 7 million notices. She was also involved in the *Careathers v. Red Bull North America* consumer class action for which GCG conducted a massive notice campaign that included a sophisticated mix of media outreach, including popular consumer magazines, internet banner advertising, mobile advertising, and sponsored search listings, including to 900 Spanish language outlets.

Before joining GCG in 2010, Ms. Castaneda spent over 20 years handling the administration of corporate expansion efforts and mergers and acquisitions. She also handled secured transactions for Fortune 500 companies and has extensive experience with the finance industry, handling transactional matters for some of the world's largest banking institutions.



**Tammy Ollivier, Senior Project Manager:** With more than 17 years providing legal notice solutions for class action and bankruptcy matters, Tammy Ollivier has managed a portfolio of complex media campaigns with more than $10 million in combined total gross media billings. Ms. Ollivier develops and implements GCG's complex and high-profile legal notice advertising campaigns, including for mega-sized class action settlements such as the *Deepwater Horizon Settlement* and *In re Air Cargo Shipping Services Antitrust Litigation*, as well as bankruptcy notice programs for *AMR Corporation, et al. (American Airlines)* and *Motors Liquidation*

*Company, et al. (fka General Motors Corp., et al.).* Her responsibilities include researching target audiences, designing notice plans, formatting advertising copy, negotiating media rates, placing notices, and training internal media team members.

For the *Deepwater Horizon Settlement*, Ms. Ollivier managed a massive outreach effort after analyzing nationally syndicated media research to determine the demographics, psychographics and geographical distribution of the target population. The notice campaign included advertisements in 275 newspapers throughout the affected region, with more than 500 insertions, internet notice via more than 40 local newspaper, television and radio websites, media relations, and distribution of notice posters to approximately 5,000 local establishments in the affected area. For *Air Cargo Shipping Services Antitrust Litigation,* she directed an international notice program with publication in local newspapers in 68 countries, global newspapers and industry trade publications with more than 350 insertions, including notice translation in 36 languages, internet notice, third-party outreach to trade organizations and dissemination of a global press release.



**Maggie Ivey, Media Supervisor:** Maggie Ivey designs and implements some of the largest and highest profile regional, national and international consumer legal notification programs. Over more than 12 years with GCG, she has used her extensive knowledge of syndicated research touted by the industry to develop defensible opinion- based notice plans effective at reaching class members both nationwide and around the globe. Her experience includes consumer fraud, antitrust, telecommunication, media, securities, banking, insurance, and bankruptcies. Examples of notice programs that Ms. Ivey has worked on include *Stefanyshyn v. Consolidated Industries, Blue Rhino In re: Pre-Filled Propane Tank and Benjamin Careathers v. Red Bull Class Action.* Ms. Ivey has been instrumental in incorporating new media and social media into court-approved notice programs. Specifically, she was one of the first media planners to incorporate mobile advertising into legal notice programs. Prior to joining GCG, Ms. Ivey was a media planner with a large advertising agency outside of Washington, D.C. There, she planned and implemented traditional and online media buys for national and regional clients such as Choice Hotels International, PNC Bank, Sallie Mae, CORT Furniture, Children's National Medical Center and Colonial Williamsburg, among others. She assisted in allocating budgets for billing of over $25 million in advertising.



**Onaje Lombard, Media Coordinator:** Onaje Lombard joined GCG's Media Team in Seattle in late 2015. He is responsible for assisting in the development of notice solutions with a focus on media outreach, research, and rate negotiation. Most recently, Mr. Lombard played a role on the *In re Ductile Iron Pipe Fittings Direct* and *Indirect Purchaser Antitrust Litigation* cases where he drafted and edited notice summaries, negotiated the purchase of advertising space, and distributed digital media monitoring reports, ensuring ad placement and billing accuracy.  Prior to joining GCG Media, Mr. Lombard worked in GCG's Louisiana facility

handling claims and quality assurance aspects of the *Deepwater Horizon Settlement*. Earlier in his career Mr. Lombard gained extensive experience as an advertising and public relations account executive at GMC + Company Advertising, where he coordinated the development of marketing initiatives to create brand awareness, and managed the production of creative materials for multiple platform national media campaigns covering radio, television, digital and print, including placements in *USA Today, Uptown Magazine*, and *Time Inc.* publications.

**Brandon Schwartz, Media Buyer and Planner:** With more than 15 years of marketing, advertising, and media experience, Brandon Schwartz develops noticing solutions for all aspects of class action settlements. Mr. Schwartz joined GCG in February 2015, bringing his hands-on experience in the design of local, regional, national and global notice plans. He has in-depth knowledge of generating media, conducting demographic research, designing media plans, developing and buying media, and creating commercial/video productions, and keeps GCG up to date on current developments and best practices to consider for social media outreach through platforms such as Twitter and Facebook. He also has particular antitrust case experience which includes the *In re Ductile Iron Pipe Fittings Direct and Indirect Purchaser Antitrust litigations,* and *In re Pool Products Distribution Market Antitrust Litigation.*

Over the course of his career he has designed and implemented ad campaigns for more than 100 high-profile cases and has implemented hundreds of cases. Prior to joining GCG, Mr. Schwartz spent over four years as the Media Manager for a large claims administrator where he designed a multi-million dollar media campaign for *In re: Oil Spill by the Rig Deepwater Horizon in the Gulf of Mexico*. He also gained significant experience developing international notice campaigns for *In re Parmalat Securities Litigation*, the *Indian Residential Schools Settlement*, and the *Royal Dutch Shell Non-United States Residents Securities Class Action Settlement*. For the *Countrywide Data Security Breach Litigation*, he created a how-to video about claims filing that was translated into Spanish and deemed "ground breaking" by the judge handling the case. Earlier in his career he spent almost two years consulting with clients on the West Coast developing solutions for all aspects of class action settlements, from legal noticing to disbursement.



**Katie Sparks, Media Buyer:** With over seven years of experience in creating legal notice media plans, Katie Sparks designs and implements effective notice campaigns tailored to the audience, language requirements and geographical needs of each case. She takes into account effective noticing criteria and draws upon her background in editing and publishing. Ms. Sparks has particular expertise developing noticing solutions for securities and bankruptcy administrations, and has worked on many of GCG's large mortgage-backed securities cases, as well as the *In re re Air Cargo Shipping Services Antitrust Litigation, and the AMR Corporation, et al. (American Airlines)* and *Motors Liquidation Company, et al. (fka General Motors Corp., et al.)* bankruptcies. She also helped design and implement the notice plan for the Gulf Coast Claims Facility. When working on consumer cases, she uses reach and frequency analysis to determine the most effective media outreach strategy.

In a case such as the *JP Morgan RMBS Settlement – Article 77,* Ms. Sparks' excellent project management skills have proven essential to her ability to manage the many moving parts

related to noticing, including publication occurring in 12 countries and 20 languages. Ms. Sparks sees the project through from start to finish, analyzing the target demographic, researching media vehicles, and putting together the proposal and timeline. She designs ads and works with translators, media representatives, and other vendors. Ms. Sparks also handles earned media in the form of public relations and monitoring the press related to GCG's media plans.

# Exhibit C

# If You Used Apple Safari Or Internet Explorer Browsers, You Could Be Affected By A Class Action Settlement.

### What Is This Lawsuit About?

A class action settlement has been reached *In Re: Google Inc. Cookie Placement Consumer Privacy Litigation*, Case No. 12-MD-2358 (SLR). It is alleged that Google deployed third-party tPracking cookies when visiting a website containing an advertisement placed by Google, by circumventing browser settings that were set to block such cookies. Plaintiffs allege Google used those cookies to knowingly intercept and gain access to Internet communications and activity in violation of federal and state laws. Google denies all allegations of wrongdoing.

The Settlement Agreement provides for substantial injunctive relief for Settlement Class Members including Google maintaining recent changes to its cookie practices and privacy policy. Google has also agreed to pay $5.5 million to be distributed to various non-profit or educational institutions that agree to devote the funds to promote public awareness, research, and initiatives related to the security or privacy of Internet browsers.

### Are You Affected?

If you used the Safari or Internet Explorer Browsers with the browser cookie settings set, by default or by choice, either to accept cookies from "visited" sites or to block cookies from "third parties and advertisers," and you visited a website from which doubleclick.net (Google's advertising serving service) cookies were deployed without consent, you may be a Class Member.

### What Are Your Rights And Options

A Class Member may request exclusion by sending a completed "Request for Exclusion" form to the Administrator postmarked by **Month DD, 20YY**. If you submit a timely Request for Exclusion you shall not be affected by the settlement. Class Members that do not exclude themselves from the settlement will be bound by its terms and will release any and all claims.

If you wish to comment or object in writing to any aspect of the proposed Settlement or to Class Counsel's request for attorneys' fees and expenses or incentive awards, you may do so by filing your comments or objections with the Court and sending them by U.S. Mail or email to the Parties no later than **Month DD, 20YY**.

### When Is The Fairness Hearing?

The Court has scheduled a hearing at _____ on _____ in the Courtroom of the Honorable Sue L. Robinson, Judge of the U. S. D. C., District of Delaware, at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568. At this hearing, the Court will consider if the Settlement should be granted final approval and Class Counsel's application for attorneys' fees and expenses and incentive awards should be approved. Although you may attend the hearing or send your own attorney at your own expense, you are not required to do so.

### Where Can I Get More Information?

This notice is a summary only. If you need further information, please view the Long Form Notice at www.SettlementPDF.com or please contact Class Counsel, Brian R. Strange, Strange & Butler, LLP, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025; Stephen G. Grygiel, Silverman Thompson Slutkin White, 201 N. Charles Street, 26th Floor, Baltimore, MD 21201; and/or James P. Frickleton, Bartimus, Frickleton, and Robertson, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211.

**PLEASE DO NOT CONTACT THE COURT.**

# Exhibit D

<u>NOTICE OF CLASS ACTION SETTLEMENT</u>

***In re Google Inc. Cookie Placement Consumer Privacy Litigation,***
12-MD-2358 (SLR)
United States District Court, District of Delaware

**<u>IMPORTANT</u>:  THIS NOTICE IS BEING PROVIDED BY COURT ORDER.  PLEASE READ THIS ENTIRE NOTICE CAREFULLY.  A SETTLEMENT REACHED WITH DEFENDANT GOOGLE INC. ("GOOGLE") IN A PENDING CLASS ACTION LITIGATION MAY AFFECT YOUR RIGHTS.**

This Notice answers the following questions:

1. <u>Why should I read this Notice?</u>

2. <u>What is a class action and who is involved</u>**?**

3. <u>What is the lawsuit about?</u>

4. <u>Who are the members of the Settlement Class?</u>

5. <u>What are the terms of the proposed settlement?</u>

6. <u>What are the important dates?</u>

7. <u>Who represents the Settlement Class and what are the associated attorneys' fees and expenses?</u>

8. <u>What are the reasons for the settlement?</u>

9. <u>What claims are being released?</u>

10. <u>Can I exclude myself from the settlement and release?</u>

11. <u>What is the settlement approval procedure and how can I make my views known?</u>

12. <u>Where can I get additional information?</u>

**1.    WHY SHOULD I READ THIS NOTICE?**

Your rights may be affected by a class action lawsuit filed by the plaintiffs in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court for the District of Delaware, Case No. 12-MD-2358 (SLR).

The purpose of this Notice is to provide important information to people in the United States who may be a Class Member.  You may be a Class Member if you used the Apple Safari or Microsoft Internet Explorer web browsers set, by default or by choice, either to accept cookies only from "visited" sites or to block cookies from "third parties and advertisers," and a cookie from doubleclick.net (Google's advertising serving service) was placed on your browser when you visited a website not owned by Google.

This notice is also to provide you with information that:  (1) a settlement of the Class Action (the "Settlement") with Google  has been preliminarily approved by the court in Delaware; and (2) a hearing has

been scheduled at _____ on _____ in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware. The Court is located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568. The hearing is to consider the fairness and adequacy of the Settlement and Class Counsel's request for attorneys' fees and expenses and incentive awards for the Representative Plaintiffs.

This settlement, if finally approved, will decide the litigation with respect to Defendant Google only and will be subject to any appeals. The litigation will continue with respect to the Non-Settling Defendants.

## 2.    WHAT IS A CLASS ACTION AND WHO IS INVOLVED?

In a class action lawsuit, one or more people, called "Representative Plaintiffs" or "Named Plaintiffs" sue on behalf of people who have similar claims. The people together are called the "Class" or "Class Members." The Representative Plaintiffs, through Class Counsel, have reached the proposed Settlement with Google. The Court has allowed, or "certified," this to proceed as a class action solely for purposes of the Settlement, and all decisions that the Court makes concerning the Settlement will affect all of the Class Members.

## 3.    WHAT IS THE LAWSUIT ABOUT?

Named Plaintiffs ("Plaintiffs") and numerous other individuals filed complaints claiming that Defendant set cookies on Plaintiffs' Apple Safari or Microsoft Internet Explorer web browsers in conflict with the default cookie settings of such browsers and in violation of federal and state laws. These complaints were consolidated and transferred to the United States District Court for the District of Delaware. On June 21, 2016, Plaintiffs filed their Amended Class Action Complaint (the "Complaint") against Google and other parties ("Non-Settling Defendants").

Plaintiffs allege that Google installed third-party tracking cookies when Plaintiffs and Class Members visited a website containing an advertisement placed by Google by circumventing Plaintiffs' and Class Members' Apple Safari or Microsoft Internet Explorer web browser settings that blocked such cookies. Plaintiffs allege Defendants used those cookies to knowingly intercept and gain access to Plaintiffs' and Class Members' Internet communications and activity.

Google denies all allegations of wrongdoing but has agreed to settle the case to avoid the uncertainties, expenses, and time of further litigation relating to what Google believes were permissible activities concerning advertising effectiveness and frequency capping cookies.

Counsel for the Plaintiffs believe Plaintiffs have a strong case on the merits and that a class will be certified for litigation purposes. Plaintiffs are prepared to seek class certification and present evidence that Google engaged in improper conduct, and that the Settlement Class was harmed as a result. Google is likewise prepared to mount a vigorous defense on numerous important questions, including whether the claims are legally viable; whether the case is properly subject to class certification for litigation purposes; and whether the Plaintiffs or members of the Settlement Class suffered any harm even assuming the truth of the allegations as pled.

The Settlement was reached only after many detailed arms-length negotiations conducted in good faith. On _____, the Court granted preliminary approval of the settlement, certified the Settlement

Class for the purposes of settlement only, appointed Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs"), as representatives of the Settlement Class and Strange & Butler, LLP, Silverman Thompson Slutkin White, and Bartimus, Frickleton and Robertson, P.C., as Settlement Class Counsel, and ordered that this Notice be disseminated.

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT REGARDING THE MERITS OR LACK THEREOF OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY PLAINTIFFS OR DEFENDANT.

**4.    WHO ARE THE MEMBERS OF THE SETTLEMENT CLASS?**

The Settlement Class consists of all persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint. The Complaint alleges that in 2011-2012, users of the Apple Safari or Microsoft Internet Explorer web browsers that were set to accept cookies only from "visited" sites or to block all cookies from "third parties and advertisers" who visited a non-Google website containing an advertisement served by Doubleclick.net (Google's advertising serving service) and who did not already have a cookie from the Doubleclick.net domain would have received one solely as a result of this visit because of means employed by Google to set cookies under these circumstances.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOU WILL BE BOUND BY THIS SETTLEMENT. YOU MAY, BUT ARE NOT REQUIRED TO, APPEAR IN PERSON AT THE SETTLEMENT FAIRNESS HEARING, OR HAVE AN ATTORNEY APPEAR ON YOUR BEHALF, AND/OR SUBMIT COMMENTS REGARDING THE FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT.

IF THE SETTLEMENT IS FINALLY APPROVED BY THE COURT, THE JUDGMENT WILL BIND ALL PERSONS IN THE SETTLEMENT CLASS, AND THEIR CLAIMS AGAINST GOOGLE AND GOOGLE RELATED PARTIES SHALL FOREVER BE RELEASED AND DISMISSED.

**5.    WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?**

In exchange for the release of claims of the Settlement Class Members, the Settlement Agreement provides for substantial injunctive and prospective relief for Settlement Class Members, including Google taking steps designed to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party Google cookies that exist in the Safari Browser files for Safari Browsers[1] and Google's maintenance in substance of recent changes to its cookie practices and privacy policy. The parties agree that this action by Google is a practical, reasonable, and effective means of removing the cookies at issue. Google has also agreed to pay $5.5 million into a settlement fund to be distributed to various non-profit and/or educational institutions that must agree to devote the funds to promote public awareness and education, and/or to support research, development, and initiatives, related to the security and/or privacy of Internet browsers.

---

[1] This will not apply to Google "opt-out" cookies, which are cookies users can choose to accept that allow them to "opt-out" of Google's third-party cookies themselves. Therefore, those users would not want the "opt-out" cookies to be expired or deleted.

**6.    WHAT ARE THE IMPORTANT DATES AND DEADLINES TO ACT?**

Opt-Out Deadline:        _____
Objection Deadline:      _____
Fairness Hearing:        _____ at_____

**7.    WHO REPRESENTS THE SETTLEMENT CLASS AND WHAT ARE THE ASSOCIATED ATTORNEYS' FEES AND EXPENSES?**

The Court has appointed, Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause as the Settlement Class Representatives and Strange & Butler, LLP, Silverman Thompson Slutkin White, and Bartimus, Frickleton, and Robertson, P.C. as Class Counsel for the Settlement Class.

Class Counsel have been prosecuting this litigation on a contingency fee basis (that is, without compensation) while advancing litigation expenses. In advance of the Fairness Hearing, Class Counsel will apply to the Court for attorneys' fees and litigation costs/expenses in the amount of up to $2,500,000 to be paid from the Settlement Fund, which Google has agreed not to oppose. Class Counsel will also apply to the Court for incentive awards for the Settlement Class Representatives in the amount of up to $1000 each, to be paid from the Settlement Fund, which Google has also agreed not to oppose. All such reimbursements will be subject to approval by the Court, and Settlement Class Members are not personally responsible for any attorneys' fees, expenses, or incentive awards. Class counsel's attorney's fees and expenses and Settlement Class Representative's incentive awards are to be paid from the Settlement Fund in an amount authorized by the Court. Settlement Class Members are not personally responsible for payment of any attorney's fees, unless they hire their own attorney to represent them in this case.

**8.    WHAT ARE THE REASONS FOR THE SETTLEMENT?**

Class Counsel have thoroughly investigated the facts and circumstances relevant to the claims at issue in the litigation. Class Counsel have also considered the expense and length of time necessary to prosecute the litigation through trial and any appeals, the uncertainties associated with the outcome of any litigation including this one, and the benefits provided by the proposed Settlement. Based upon their investigation and evaluation of the claims and defenses, Class Counsel have concluded that it is in the best interests of the Settlement Class to resolve the claims against Google on the terms outlined herein, as reached after arms-length negotiations.

**9.    WHAT CLAIMS ARE BEING RELEASED?**

If the Settlement Agreement is approved by the Court, each Settlement Class Member will release and dismiss Google, and its past, present, and future parents, divisions, subsidiaries, partnerships, affiliates, and other related entities (whether or not they are wholly owned), together with the directors, officers, employees, agents, insurers, reinsurers and attorneys of any of them (but not including any of the other Defendants named in the Consolidated Amended Complaint, or any of their past, present and future parents, divisions, subsidiaries, partnerships, affiliates and other related entities (whether or not wholly owned), together with their directors, officers, employees, agents, insurers, reinsurers and attorneys), from any and all potential or actual matters, claims, demands, rights, liabilities, losses, obligations, duties, actions, potential actions, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, which any Class Member has or might have, known or

unknown, including Unknown Claims, defined below, of any kind whatsoever prior to the Effective Date and that Plaintiffs alleged or could have alleged in the Complaint against Google or that otherwise are based on or relate to, wholly or partially, the facts and circumstances Plaintiffs alleged in the Complaint's claims against Google.

Without limiting the generality of the foregoing description of Released Claims, the Class Members may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the facts, circumstances and import of Plaintiffs' Complaint's claims against Google. However, the Class Members fully, finally, and forever settle and release any and all claims set forth in this Paragraph, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Members acknowledge that the inclusion of such "Unknown Claims" in the Agreement was separately bargained for and was a key element of the Agreement.

By the definition of Released Claims set forth above, the Class Members hereby intend expressly to waive the provisions, rights, and benefits of any state law or rule that seeks to or does preserve known or unknown claims that would otherwise be released by this Settlement Agreement, including California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and Class Members expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or of any other nation that is similar, comparable, or equivalent to California Civil Code § 1542.

**10.      CAN I EXCLUDE MYSELF FROM THE SETTLEMENT AND RELEASE?**

A Class Member may request exclusion from the Class up until the Opt-Out Deadline (see Paragraph 6 above). To request exclusion, the Class Member must complete, sign, and mail the "Request for Exclusion" form attached to this notice to the Settlement Administrator. The Request for Exclusion must be signed by the Class Member seeking exclusion under penalty of perjury. The Request for Exclusion must be postmarked on or before the Opt-Out Deadline. Any Person who submits a valid and timely Request for Exclusion shall not be entitled to relief under, and shall not be affected by, the settlement or any relief provided by the settlement. The parties to the settlement will have the right to challenge the timeliness and validity of any Request for Exclusion, in which case the Court will determine whether any contested exclusion request is valid. Class Members that do not follow the steps to be excluded from the settlement will be bound by the settlement and will release any and all claims as set forth in Paragraph 9, above.

**11.      WHAT IS THE SETTLEMENT APPROVAL PROCEDURE AND HOW CAN I MAKE MY VIEWS KNOWN?**

The Court has scheduled a hearing at _____ on _____ in the Courtroom of the Honorable Sue L. Robinson, Judge of the United States District Court, District of Delaware, located at J. Caleb Boggs Federal Building, 844 N. King Street, Room 4124, Unit 31, Wilmington, DE 19801-3568.

At this hearing, the Court will consider, among other matters, whether the Settlement should be granted final approval as fair, adequate and reasonable, and in the best interests of Settlement Class Members as well as Class Counsel's application for attorneys' fees and expenses and incentive awards for the Representative Plaintiffs. Although you may attend the hearing in person or through your own attorney at your own expense, you are not required to do so. If you wish to comment in writing in support of or in opposition to any aspect of the proposed Settlement or to Class Counsel's request for attorneys' fees and expenses or incentive awards for the Representative Plaintiffs, you may do so by filing your written comments or objections with the Court and sending them by U.S. Mail or email (including ECF service) to (1) Stephen G. Grygiel, Silverman Thompson Slutkin White, 201 N. Charles Street, 26th Floor, Baltimore, MD 21201; James P. Frickleton, Bartimus, Frickleton, and Robertson, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211; and/or Brian R. Strange, Strange & Butler, LLP, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025, and (2) Michael Rubin, Wilson Sonsini Goodrich & Rosati, One Market Plaza, Spear Tower, Suite 3300, San Francisco, CA 94105, postmarked, faxed, or delivered (or served by ECF) on or before _____. The Court, however, will not be able to give much consideration to general comments lacking detail. Thus, for example, a submission simply stating, "I object" or "I support the Settlement" will not be informative to the Court or the Parties. Your submission must also include your name and current address, a statement that you are a Settlement Class Member, and the case caption.

You or your attorney (at your own expense) may appear at the hearing in support of your comments, but you are not required to do so.

## 12. WHERE CAN I GET ADDITIONAL INFORMATION?

This notice only contains a summary of the proposed Settlement. You may appear in person during regular business hours at the Clerk's office of the United States District Court, District of Delaware, located at 844 North King St Unit 18, Wilmington, DE 19801-3570, and/or review online the entire Settlement Agreement, as well as the pleadings, records and other papers on file with the Court.

If you need further information, please contact Class Counsel, Stephen G. Grygiel, Silverman Thompson Slutkin White, 201 N. Charles Street, 26th Floor, Baltimore, MD 21201; James P. Frickleton, Bartimus, Frickleton, and Robertson, P.C., 11150 Overbrook Road, Suite 200, Leawood, KS 66211; and/or Brian R. Strange, Strange & Butler, LLP, 12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025.

## PLEASE DO NOT CONTACT THE COURT WITH QUESTIONS.

## REQUEST FOR EXCLUSION FORM

### THIS REQUEST MAY AFFECT YOUR LEGAL RIGHTS.

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR)

If you do not want to participate in the settlement and wish to exclude yourself from the Class, that is, to "OPT-OUT" of this settlement, then you must complete this Request for Exclusion, sign under penalty of perjury, date and mail the Form to the address below. You must submit this Form, postmarked no later than _____, 2016.

By electing to "OPT-OUT" of the settlement (i) you will <u>not</u> share in any benefits from the settlement, (ii) you will <u>not</u> be bound by any further orders or judgment entered for or against the Class, and (iii) you will remain able to independently pursue any claims alleged in this action, against Google Inc., by filing your own lawsuit at your own expense.

**"I hereby opt-out of the Class and request to be excluded from the settlement in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, United States District Court, District of Delaware, Case No. 12-MD-2358 (SLR)."**

Name:

Address:

City:                                                                                State:        ZIP:

I declare under penalty of perjury under the laws of the State of _____ that the foregoing is true and correct.

Signature of the Claimant:                                              Date:         /         /

**Mail completed and signed Request for Exclusion to:**
**In re Google Inc. Cookie Placement Settlement Administrator**
**c/o GCG**
**PO Box 10320**
**Dublin, OH 43017-5920**

# Exhibit E

 **If You Used Apple Safari Or Internet Explorer Browsers, You Could Be Affected By A Class Action Settlement**

prepared by GCG