**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH GOOGLE INC.**

## TABLE OF CONTENTS

I. **BACKGROUND OF THE LITIGATION** .................................................................1

II. **BACKGROUND OF THE SETTLEMENT AND NOTICE PROGRAM** ...................3

III. **SUMMARY OF THE TERMS OF SETTLEMENT** ...............................................5

IV. **THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES** ..................................6

    A. **The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(2)** ..................................................................................................7

        1. The members of the Settlement Class are so numerous that joinder is impracticable ....................................................................................7

        2. There are common questions of law and fact. ..........................................8

        3. Plaintiffs' claims are typical of the claims of the Settlement Class ............8

        4. Plaintiffs will fairly and adequately protect the interests of the Settlement Class .....................................................................................................9

        5. Injunctive relief ....................................................................................11

    B. **The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved By the Court** ....................................................................................11

        1. Public policy favors settlement of class actions .......................................11

        2. The Settlement is entitled to a presumption of fairness.............................11

        3. The *Girsh* factors strongly support approval of the Settlement ................12

            i. Complexity, expense, and likely duration of the litigation ...........13

            ii. Reaction of the Class to the Settlement .........................................14

            iii. Stage of the proceedings ..............................................................15

            iv. Risks of establishing liability........................................................15

            v. Risks of establishing damages ......................................................16

            vi. Risks of maintaining the class action through trial .......................17

            vii. Ability of Defendant to withstand a greater judgment...................18

            viii. Range of reasonableness of the Settlement Fund in light of the best possible recovery and all the attendant risks of litigation ......18

    C. **Notice Was Proper Under Rule 23 and Constitutional Due Process** ..............19

V. **CONCLUSION** ...............................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................... 7, 10

*Austin v. Pa. Dep't of Corr.*,
    876 F. Supp. 1437 (E.D. Pa. 1995) ......................................................................... 12

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ......................................................................................... 9

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ..................................................................................... 8

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) ................................................................................... 13

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ................................................................................... 12

*In re Bulk (Extruded) Graphite Antitrust Litig.*,
    No. 02-cv-6030, 2006 WL 891362 (D.N.J. Apr. 4, 2006) ........................................ 7

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..................................................................... 15, 16, 18

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................ 14

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) .............................................................................. 9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................. 11, 13

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001) .......................................................................... 8, 14

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .................................................................. 9, 14, 17, 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ............................................................................ 13

*In re Rent-Way Secs. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003).............................................................. 17

*In re Sch. Asbestos Litig.*,
  789 F.2d 996 (3d Cir. 1986)............................................................................. 17

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ................................................................. 11, 17

*Int'l Union, UAW v. Ford Motor Co.*,
  No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................ 16

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997)........................................................... 16, 18

*Marsden v. Select Med. Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007)......................................................................... 7

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ................................................................. 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).............................................................................. 9

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005)....................................................................... 16

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ......................................................................... 19

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009)......................................................................... 9

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001).......................................................................... 7, 8

**COURT FILINGS**

United States' Response to Consumer Watchdog's Amicus Curiae Brief, *United States v. Google Inc.*, No. 3:12-cv-04177-SI (N.D. Cal. Sept. 28, 2012), ECF No. 15......................................... 5

**STATUTES & RULES**

28 U.S.C. § 1407 .................................................................................................. 1

28 U.S.C. § 1711 .................................................................................................. 4

Fed. R. Civ. P. 23(a)(1)........................................................................................ 7

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 9

Fed. R. Civ. P. 23(e) ........................................................................................... 1

**TREATISES**

1 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) ............... 8, 11, 20

5 *Moore's Federal Practice* (3d ed. 1999) ......................................................... 7

David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237 (2009). ......................................... 2

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause (collectively "Plaintiffs" or "Class Representatives") respectfully move the Court for an Order finally approving the Settlement reached with Defendant Google Inc. ("Google").

The proposed Settlement ensures that the Class will be placed in the position they were before Google's alleged conduct began and furthers the important task of the ensuring security and privacy of Internet browsers through its meaningful *cy pres* contributions. For the reasons set forth herein, Plaintiffs respectfully submit that the proposed Settlement with Google is fair, reasonable, and adequate and should receive final approval.

## I.    BACKGROUND OF THE LITIGATION

For over four years, Plaintiffs have actively litigated their claims that Google violated numerous federal and state laws by circumventing Plaintiffs' and Class Members' privacy settings on Apple Safari and Microsoft Internet Explorer web browsers. During this time, Plaintiffs engaged in extensive motion practice and a lengthy and difficult appeal.

In early 2012, numerous individuals, including Plaintiffs, filed complaints in various federal courts around the country after Google's alleged actions were publicized. These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012 (D.I. 1).

On December 19, 2012, Plaintiffs filed a Consolidated Class Action Complaint against Google and other Defendants (D.I. 46), and, on June 21, 2016, Plaintiffs filed a Consolidated Amended Class Action Complaint (D.I. 162). In the Complaint, Plaintiffs alleged, on behalf of a nationwide class of consumers, that Google intentionally set cookies on Plaintiffs' Safari and Internet Explorer web browsers in conflict with the default cookie-blocking settings of such

browsers and in violation of various federal and state laws.  Google denies all allegations of wrongdoing.  The parties also propounded and answered discovery, including initial disclosures (D.I. 155, 156), requests for production of documents (D.I. 155, 158–60), and interrogatories (D.I. 155, 159).

On January 22, 2013, Google filed a motion to dismiss all claims against it (D.I. 56). After extensive briefing, oral argument was held on July 25, 2013, and, on October 9, 2013, this Court granted the motion to dismiss in its entirety (D.I. 122).[1]  Plaintiffs appealed that Order and, on November 10, 2015, the Third Circuit Court of Appeals vacated the dismissal of two of Plaintiffs' state law claims, affirmed the dismissal of Plaintiffs' other claims, and remanded the case to this Court for further consideration.  (D.I. 146.)

Plaintiffs also filed a petition for a writ of certiorari with the United States Supreme Court on March 10, 2016, seeking review of the Third Circuit's affirmed dismissal of some of Plaintiffs' claims.  Google and the other Defendants waived their right to respond to the petition. On May 10, 2016, the Supreme Court requested that Google and the other Defendants respond to the petition.  Such an order requesting a response is rare, as the Supreme Court only requests responses to approximately 2.5–4.7 percent of the petitions before it.[2]  Google notified the Supreme Court of its settlement with Plaintiffs and of its intent not to respond to the petition unless specifically requested to do so despite its settlement.  The other Defendants responded to the petition on August 11, 2016.  Plaintiffs filed a reply to their response on August 31, 2016.

---

[1] In the interim, Plaintiffs reached a settlement with Defendant PointRoll, Inc. ("PointRoll"), which called for injunctive relief in the form of ending the complained of practices on behalf of PointRoll, and payment of $115,000 in attorneys' fees and expenses.  This Court finally approved the settlement and fee award in April 2014.  (D.I. 145.)

[2] *See* David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 268 (2009).

Ultimately, on October 3, 2016, the Supreme Court denied Plaintiffs' petition after the extensive briefing was completed.

On May 9, 2016, Class Counsel and counsel for Google participated in a private all-day mediation before retired federal Judge Layn R. Phillips. In advance of the mediation, the parties exchanged detailed briefing in response to the mediator's numerous questions regarding the strengths and weaknesses of Plaintiffs' case, including with regard to Plaintiffs' damages theories and class certification prospects. The parties then participated in pre-mediation phone calls with Judge Phillips. During the mediation, and with the assistance of Judge Phillips, Plaintiffs and Google agreed to the basic terms of the Settlement Agreement, which were later memorialized in a final document executed by all parties and Class Counsel as of June 30, 2016. *See* Declaration of Brian R. Strange In Support of Motion for Final Approval of Class Action Settlement ("Strange Decl.") ¶¶ 3, 7–8; Declaration of James P. Frickleton In Support of Motion for Final Approval of Class Action Settlement ("Frickleton Decl.") ¶¶ 3–4; Declaration of Stephen G. Grygiel In Support of Motion for Final Approval of Class Action Settlement ("Grygiel Decl.") ¶¶ 3, 10–12.

Thereafter, consistent with the terms of the Settlement, Plaintiffs filed a Motion for Preliminary Approval of the Settlement on August 29, 2016. (D.I. 163.) On August 31, 2016, this Court preliminarily approved the Settlement and directed that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement. (D.I. 164.)

## II. BACKGROUND OF THE SETTLEMENT AND NOTICE PROGRAM

The Settlement is the result of extensive, arm's-length negotiations between experienced counsel. Those negotiations came after extensive motion practice, including Google's motion to dismiss, and after the conclusion of Plaintiffs' appeal of this Court's ruling on that motion,

including briefing before the United States Supreme Court and the remand of the case to this Court.

The Court preliminarily approved the Settlement on August 31, 2016. (D.I. 164.) Beginning on September 12, 2016, and continuing until October 24, 2016, Notice of the Proposed Settlement with Google Inc. ("Notice") was disseminated to potential members of the Class via online advertisements on the Audience Network Buy and Pulpo Media networks, as well as through targeted social media advertising on Facebook, designed by the Class Administrator to reach the broadest possible audience of potential Apple Safari and Microsoft Internet Explorer web browsers. *See* Declaration of Stephen J. Cirami Regarding Settlement Administration ("Cirami Decl.") ¶¶ 6–9 & Ex. C. A Summary Notice was also published in the October 17, 2016 issue of *People Magazine*, a nationally distributed and widely read magazine. *Id.* ¶ 10 & Ex. D.[3] A website containing the long-form Notice of the Settlement was also established and, as of November 28, 2016, was visited at least 41,705 times. *Id.* ¶ 11 & Ex. E.[4]

The postmark deadline for all exclusions from the Settlement was November 27, 2016, and the postmark deadline for all objections to the Settlement is December 21, 2016. *See* Notice §§ 10, 11. As of December 4, 2016, the Class Administrator has received 50 timely requests for

---

[3] The Notice and Summary Notice informed potential Class Members that Interim Co-Lead Counsel would be requesting permission to use a portion of the Settlement Fund to pay for attorneys' fees and expenses. *See* Cirami Decl. Exs. D & E. Plaintiffs intend to request, and Google has agreed not to contest, subject to Court approval, that attorneys' fees, expenses, and Class Representative Incentive Awards of up to $2,500,000 be paid from the Settlement Fund, representing a fair and reasonable amount to compensate Class Counsel for their representation of the Class in preparing, filing, and litigating this case. Settlement Agreement ("S.A.") §§ 11.1, 11.2. Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards is filed separately and contemporaneously with this Motion.

[4] In accordance with the Preliminary Approval Order and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711, *et seq.*, the Class Administrator notified the appropriate state and federal officials of the proposed Settlement on September 8, 2016. Cirami Decl. ¶ 5 & Exs. A, B.

exclusion from the Settlement.  *See* Cirami Decl. ¶ 12 & Ex. G.  To date, Class Counsel have received no objections to the Settlement or to the request to use up to $2.5 million of the Settlement Fund for attorneys' fees, expenses, and Class Representative Incentive Awards.  *See id.* ¶ 13.  Class Counsel will respond to any objections by January 4, 2017.  A fairness hearing is scheduled for January 11, 2017.

### III.  SUMMARY OF THE TERMS OF SETTLEMENT

The proposed Settlement with Google was reached following extensive arm's-length negotiations between Class Counsel and Google's counsel.  Plaintiffs and Google discussed for several months the possibility of settling Plaintiffs' claims against Google.  Strange Decl. ¶ 3; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 3.  Following private mediation before former federal Judge Layn Phillips and many subsequent back-and-forth negotiations and discussions (some of which involved Judge Phillips and/or his staff), the parties agreed upon and executed a formal Settlement Agreement.  Strange Decl. ¶ 7; Frickleton Decl. ¶ 4; Grygiel Decl. ¶¶ 10–11. Throughout the course of settlement negotiations, the parties took into consideration potential liability and damages issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation.  Strange Decl. ¶¶ 8, 19; Frickleton Decl. ¶ 8; Grygiel Decl. ¶¶ 10, 12, 23.  Class Counsel believe the proposed Settlement is fair, reasonable, and adequate and should be approved by this Court.

The Settlement confers substantial benefits upon Class Members, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.  The estimated monetary amount

Google obtained from its actions was about $4 million[5] and Google paid much more than that amount in fines to the government in settling the FTC investigation into its actions. Thus, because Google had already disgorged any alleged unjust enrichment, and because the Class Members had minimal damages that had not already been repaid by Google, Class Counsel felt that obtaining a further $5.5 million from Google to be used for *cy pres* contributions and for the benefit of the Class was the best path forward. The Settlement also provides for remedial and prospective relief for Class Members, including Google's assurances that it took actions to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party Google cookies that exist in the browser files for Safari browsers. S.A. § 5.1. Class Counsel believes that this action by Google is a practical, reasonable, and effective means of removing the cookies from Safari browsers.

## IV. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Plaintiffs seek to certify the Settlement Class for settlement purposes only. The Settlement Class is defined as:

> [A]ll persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

*Id.* § 2.3. Excluded from the Settlement Class are "(i) Google, its parent, subsidiaries, successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions are assigned and any member of the judge's or judges' immediate family; (iii) Persons who have settled with and released Google from individual claims substantially similar to

---

[5] *See* United States' Response to Consumer Watchdog's Amicus Curiae Brief, at 10 n.11, *United States v. Google Inc.*, No. 3:12-cv-04177-SI (N.D. Cal. Sept. 28, 2012), ECF No. 15.

those alleged in the Litigation; and (iv) Persons who submit a valid and timely Request for Exclusion." *Id.* § 2.5.

In certifying a settlement class, the Court must conclude that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and at least one of the separate provisions of Rule 23(b) are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). However, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620. The proposed Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) for settlement purposes.

**A.  The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(2)**

   *1.  The members of the Settlement Class are so numerous that joinder is impracticable*

The numerosity requirement of Rule 23(a)(1) is satisfied where the traditional joinder of parties would be "unworkable." *In re Bulk (Extruded) Graphite Antitrust Litig.*, No. 02-cv-6030, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006). There is no "minimum number of plaintiffs required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (citing 5 *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *See Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007). Class Counsel estimates that millions of users of Safari and Internet Explorer web browsers have been affected by Google's alleged conduct during the relevant time and that those users are geographically dispersed throughout the United States. The numerosity requirement is readily met.

7

                    2.          *There are common questions of law and fact*

Rule 23(a)(2) requires that there be "questions of law or fact common to the members of the class."  The commonality requirement is construed permissively and "is easily met because it may be fulfilled by a single common issue."  *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also Stewart*, 275 F.3d at 226–27 ("The commonality requirement will be satisfied if the named plaintiffs share at least ***one*** question of fact or law with the grievances of the prospective class." (emphasis added; citation omitted)); 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) [hereinafter *Newberg*] (the commonality standard is "easily met" for most settlement classes).

Here, for settlement purposes, numerous questions of law or fact are common to the Class, including: (1) whether Google's alleged business practice of circumventing Plaintiffs' and Class Members' Safari and Internet Explorer browsers' security and privacy settings to place third-party cookies constituted a violation of intrusion upon seclusion under California common law or a violation of the California Constitution's right to privacy; (2) how Google carried out the browser circumvention; and (3) whether Plaintiffs and the Class are entitled to damages or other relief.  Because there exist common factual and legal questions related to liability, the commonality requirement of Rule 23(a)(2) is met.

                    3.          *Plaintiffs' claims are typical of the claims of the Settlement Class*

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class."  The typicality factor examines "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006).  A named plaintiff's claim is typical if it arises from the same alleged wrongful conduct by the defendant that gives rise to the claims of the putative class.  *See Baby Neal v.*

                                          8

*Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168

(E.D. Pa. 2009) (Rule 23(a)(3) "does not demand identical claims, only that they be reasonably

coextensive with those of the absent class members" (citation omitted)).  This requirement "does

not mandate that all putative class members share identical claims, because even relatively

pronounced factual differences will generally not preclude a finding of typicality where there is a

strong similarity of legal theories or where the claim arises from the same practice or course of

conduct."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184–85 (3d Cir.

2001) (citations and internal quotation marks omitted).  Instead, in examining typicality, the

Court must ensure that the Class Representatives do not have interests antagonistic to those of

the Class.  *See In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 481 (W.D. Pa. 1999).

Here, the Class Representatives have alleged that they visited websites on their Safari

and/or Internet Explorer web browsers during the relevant time period and were served ads by

Google, thereby subjecting themselves to Google's alleged cookie circumvention technique.

Thus, the Class Representatives' experiences were not only typical of those of the proposed

Class, they were *identical* to the claims of the Settlement Class, as defined.  The typicality

requirement of Rule 23(a)(3) is met.

> 4.    *Plaintiffs will fairly and adequately protect the interests of the Settlement Class*

The adequacy requirement of Rule 23(a)(4) seeks first to "test[] the qualifications of the

counsel to represent the class," and second "to uncover conflicts of interest between named

parties and the class they seek to represent."  *In re Prudential Ins. Co. Am. Sales Practices Litig.*

*Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (quotation omitted).  Both requirements are met

here.

First, Plaintiffs have retained qualified and experienced counsel to pursue this action. Settlement Class Counsel—Strange & Butler LLP, Bartimus, Frickleton & Robertson, P.C., and Silverman, Thompson, Slutkin, White—have extensive experience and expertise in class action litigation, privacy and Internet actions, and other complex proceedings and are qualified and able to conduct this litigation.[6]  Strange Decl. ¶¶ 16–18; Frickleton Decl. ¶¶ 9–10; Grygiel Decl. ¶¶ 19–22.  Class Counsel have already demonstrated their full commitment to the continued prosecution of this litigation and they possess the experience, skill, and resources to continue to do so.  *Id.*

Second, to be adequate, the Class Representatives must be part of the Class, have suffered the same injury, and have the same interests as the rest of the Class Members.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).  Here, no antagonism exists between Plaintiffs and the rest of the Class Members—all of them assert the same underlying claims based on the same alleged conduct by Google.  Plaintiffs and the rest of the Class Members allege they visited sites on their Safari and/or Internet Explorer web browsers that were served Google ads, thereby receiving the same Google code that allegedly caused cookies to be set in an identical manner on each web browser.  Plaintiffs' interests are thus aligned with those of the other members of the Settlement Class.

The adequacy requirement under Rule 23(a)(4) is satisfied.

---

[6] Rule 23(g) requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class.  The Court previously appointed Class Counsel as Interim Co-Lead Counsel.  (D.I. 44.)  For the same reasons that the Court appointed Class Counsel as Interim Co-Lead Counsel, their appointment as Settlement Class Counsel is also appropriate.

10

5.        *Injunctive relief*

Rule 23(b)(2) requires that Google acted on grounds that apply generally to the Class such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  This element is easily met as Google served the same code in the same manner that circumvented users' Safari and/or Internet Explorer web browsers' security and privacy settings to all Plaintiffs and Class Members.  Therefore, injunctive relief is appropriate for Google to take the actions described above.

**B. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved By the Court**

A proposed class action settlement should be approved under Federal Rule of Civil Procedure 23(e) if it is "fair, adequate and reasonable."  The Settlement here satisfies that standard and should therefore be approved.

1.        *Public policy favors settlement of class actions*

Courts routinely recognize that the "law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing 2 *Newberg* § 11.41 (citing cases)).  "The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *Id.* (citation omitted).  "These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself."  *Id.*

2.        *The Settlement is entitled to a presumption of fairness*

Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re*

11

*Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); 4 *Newberg* § 11.24.  By preliminarily approving this Settlement (D.I. 164), the Court has already found these factors to be present.

Class Counsel and counsel for Google—each experienced class action and defense attorneys—have, individually and with the mediator's pointed observations, fully evaluated the strengths, weaknesses, and equities of the parties' respective positions and engaged in arm's-length negotiations in order to reach the proposed Settlement.  Strange Decl. ¶ 3; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 3.  Their view that the proposed Settlement is a fair resolution of their dispute is entitled to considerable weight.  *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("great weight" normally given to opinion of counsel regarding class settlement).

### 3.    *The* Girsh *factors strongly support approval of the Settlement*

In addition to being consistent with public policy and presumptively valid, the proposed Settlement also satisfies nearly all of the so-called *Girsh* factors—factors established by the Third Circuit for determining whether a proposed settlement is "fair, adequate and reasonable." *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  The *Girsh* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of Defendant to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund in light of all the attendant risks of litigation.[7]

---

[7] "The Third Circuit has observed that in assessing the fairness of a proposed settlement, the Court should be careful not to substitute its image of an ideal settlement for the compromising

*Id.* at 156–57.  The majority of these factors are satisfied here (and the remaining factors are neutral), demonstrating that the Settlement is fair, reasonable, and adequate, and that final approval of the Settlement should be granted.

### i.  Complexity, expense, and likely duration of the litigation

The first *Girsh* factor captures "the probable costs, in both time and money, of continued litigation," weighing the potential risks and rewards of proceeding with litigation against the likelihood of success and the benefits of an immediate settlement.  *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974).  This factor weighs strongly in favor of approval of the Settlement here.

When the Settlement was reached, only two claims remained after the Third Circuit's decision—a claim for intrusion upon seclusion under California common law and a claim for violation of the California Constitution's right to privacy.  The Third Circuit affirmed dismissal of Plaintiffs' statutory claims that provide statutory damages and would, therefore, have been easier to certify as class actions.  While Plaintiffs are confident in their position and believe their remaining claims are strong, Class Counsel are experienced and realistic and know that the guaranteed relief and certainty achieved through settlement—as opposed to the uncertainty inherent in the trial and appellate process—weighs in favor of settlement.  Strange Decl. ¶ 11; Frickleton Decl. ¶ 8; Grygiel Decl. ¶ 19.

---

parties' views: 'The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'"  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 806); *see also id.* ("Thus, the issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement.").

This uncertainty is highlighted by Google's adamant position throughout the litigation that it never deliberately intended to invade Plaintiffs' or Class Members' privacy and that the alleged cookie placement on web browsers was an inadvertent error caused by an unadvertised feature of the web browser that was unknown to Google. In sum, Google is represented by able counsel who have mounted a vigorous defense, and no doubt would continue to do so. Moreover, the damages issues in this case are untested, particularly with respect to theories of general damages in cases alleging constitutionally-based state privacy claims. Whether class plaintiffs are entitled to nominal damages per class member and the amount of such damages under these circumstances is allegedly uncertain. And while Class Counsel may disagree with Google's positions and have confidence in the strength of the case, the Settlement guarantees significant recovery to the Class that is uncertain if the litigation continues. The complexity, expense, and duration of the litigation favor approval of the Settlement.

ii.    Reaction of the Class to the Settlement

This *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential*, 148 F.3d at 318. A lack of significant objections by Class Members weighs in favor of approving the Settlement. *See Linerboard*, 296 F. Supp. 2d at 577–78. And while it is common for some Class Members to object to a proposed settlement, class settlements are often approved over the objections of many class members. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (approving class action settlement notwithstanding a large number of objectors).

The Notice Plan disseminated notice to Safari and Internet Explorer users for a six-week period via online advertisements, targeted social media engagement, and via *People* magazine. Cirami Decl. ¶¶ 6–10. As of December 4, 2016, Class Counsel have received no objections and

50 requests for exclusion from the Settlement.  *Id.* ¶¶ 12–13.  The postmark deadline for submitting requests for exclusion was November 27, 2016 and the postmark deadline for objections to the Settlement is December 21, 2016.  *See* Notice §§ 10, 11.  Class Counsel will respond to any objections by January 4, 2017.

To date, the reaction of the Settlement Class Members has been favorable, which strongly supports final approval of the Settlement.

### iii.    Stage of the proceedings

This factor captures "the degree of case development that class counsel have accomplished prior to settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quotation omitted).

Prior to the Settlement, Class Counsel made a thorough investigation into the facts and circumstances relevant to the claims at issue in this litigation, as reflected in the detailed Complaints filed in this action.  *See* Strange Decl. ¶ 7; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 4.  In addition, the parties have engaged in exhaustive motion and appellate practice in this case and Class Counsel have developed a thorough understanding of the strengths and weaknesses of the case, putting them in a position to make an informed judgment as to the merits of the litigation and the likelihood of its success.

Thus, this factor supports final approval of the Settlement.

### iv.    Risks of establishing liability

The fourth factor seeks to determine "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them."  *Cendant Corp.*, 264 F.3d at 237 (quotation omitted).  "In examining this factor, the Court

15

need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quotation omitted).

As discussed above, while Class Counsel believe their case against Google is strong, are prepared to present clear evidence that Google's cookie circumvention technique violated California common and constitutional law, and that the case should be certified as a class action, Google is equally prepared to mount a vigorous defense. Strange Decl. ¶ 11; Frickleton Decl. ¶ 8; Grygiel Decl. ¶ 19. Class Counsel are experienced in this type of litigation and recognize the inherent risks in proceeding to trial. *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("Here, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict the way in which a jury will resolve disputed issues."). "As is true in any case, the proposed Settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006).

Given the risks of establishing liability, Class Counsel believe that the proposed Settlement with Google provides meaningful and certain benefits to the Class and this factor supports final approval of the proposed Settlement.

v.    Risks of establishing damages

This *Girsh* factor looks to the "expected value of litigating the action rather than settling it at the current time." *Cendant Corp.*, 264 F.3d at 238 (quotation omitted). As discussed above, this case has already been dismissed by this Court, through an appeal to the Third Circuit, and

16

returned to this Court for consideration of two causes of action that do not provide statutory damages.  Even if Plaintiffs overcame the obstacles of establishing liability and certifying the case as a class action, establishing a right to and an amount of damages would present further difficulties and uncertainties.  Google would likely present expert testimony to refute Plaintiffs' expected damages theories and the jury may award lower damages than Plaintiffs seek or no damages at all.  In such cases, courts regularly recognize that this factor favors approval of a proposed settlement.  *See, e.g.*, *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003) (competing expert opinions add uncertainty as to how much money, if any, the class might recover at trial).

The fifth *Girsh* factor favors final approval of the proposed Settlement.

### vi.  Risks of maintaining the class action through trial

Because "the prospects for obtaining [class] certification have a great impact on the range of recovery one can expect to reap from the action, this [*Girsh*] factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537.  Under Federal Rule of Civil Procedure 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1101 (3d Cir. 1986).  Accordingly, obtaining and maintaining class certification is not without risks.  Because there "will always be a 'risk' or possibility of decertification," "the court can always claim this factor weighs in favor of settlement." *Prudential Agent Actions*, 148 F.3d at 321.

Thus, while Class Counsel believe they could certify a class in this case, the risk of maintaining a class through trial is a consideration that makes this *Girsh* factor weigh in favor of approving the proposed Settlement.

vii.   Ability of Defendant to withstand a greater judgment

The seventh *Girsh* factor weighs "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant Corp.*, 264 F.3d at 240.  While Class Counsel believe Google may have the ability to withstand a greater judgment, based on the numerous risks and uncertainties noted above, Class Counsel believe the proposed Settlement is beneficial to the Class.  Moreover, courts accord this factor little weight in assessing the fairness, reasonableness, and adequacy of a proposed settlement.  *See, e.g.*, *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 645 (E.D. Pa. 2015) (Third Circuit courts "regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts"); *Lazy Oil*, 95 F. Supp. 2d at 318 (finding defendant's ability to pay a greater judgment did not weigh against approving settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial").

Therefore, this factor does not weigh against approving the proposed Settlement and is, at worst, neutral.

viii.   Range of reasonableness of the Settlement Fund in light of the best possible recovery and all the attendant risks of litigation

Finally, the last two *Girsh* factors seek to determine the reasonableness of the Settlement Fund in light of the best possible recovery and in light of all the attendant risks of litigation.

Class Counsel estimates that millions of users of Safari and Internet Explorer web browsers have been affected by Google's alleged conduct during the relevant time period and that those users are geographically dispersed throughout the United States.  However, determining the exact identity of each Class Member may never be possible given the difficulties in knowing all the users of a particular web browser during a defined time.  And, even if the exact number and identity of each Class Member could be determined, any recovery (however

18

large) would result in a distribution that likely costs more to distribute than it's worth.  In such situations, courts recognize the benefits of and regularly approve *cy pres* settlements for the benefit of the Class as a whole.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("[W]hen a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible . . . *cy pres* distribution avoids these difficulties . . . [and] federal courts have frequently approved this remedy in the settlement of class actions where proof of individual claims would be burdensome or distribution of damages costly." (citations omitted)).

Here, the proposed Settlement will place Class Members in the position they were before Google's alleged conduct started, and Google will provide Class Counsel with assurances that it implemented systems configured to stop the offending conduct.  S.A. § 5.1.  The Settlement will also provide a benefit to Class Members and the greater public through *cy pres* contributions to organizations dedicated to promoting and researching Internet and web browser security and privacy.  *Id.* § 5.3.2.  These remedies, coupled with the injunctive and monetary penalties already obtained by the government against Google on behalf of consumers, renders the proposed Settlement reasonable for Class Members and this *Girsh* factor weighs in favor of approval.

### C.  Notice Was Proper Under Rule 23 and Constitutional Due Process

The Court must also determine that the proposed Settlement's Notice Plan was appropriate.  Under Federal Rule of Civil Procedure 23(e), the Court must direct notice in a reasonable manner to Class Members who would be bound by a proposed class settlement.  To satisfy the requirements of Rule 23 and constitutional due process, notice of a proposed class settlement must be "designed to summarize the litigation and the settlement and 'to apprise class

members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" *Prudential Agent Actions*, 148 F.3d at 326–27 (quoting 2 *Newberg* § 8.32). But the "notice need not be unduly specific." *Prudential*, 177 F.R.D. at 231.

Here, the Notice and Summary Notice provided all of the requisite information and material terms of the Settlement to potential Class Members, including the relief provided under the Settlement, the date, time, and place of the fairness hearing, the procedures and deadlines for opting-out of or submitting objections to the Settlement, and that Class Members would be bound by any final judgement in this case if they did not opt-out of the Settlement. *See* Cirami Decl. ¶ 11 & Exs. E, F.

The method of notice also complied with Rule 23 and constitutional due process. Notice was provided to Internet users—the same method of interaction that would have caused an individual to become a potential Class Member in the first instance—using the Safari and Internet Explorer web browsers through electronic advertisements on websites determined by the Class Administrator to be heavily trafficked. *Id.* ¶¶ 6–8. This notice period extended for six weeks. *Id.* ¶ 6. In addition, notice was provided through targeted Facebook social media advertisements and through a *People* magazine advertisement. *Id.* ¶¶ 9–10.

As this Court has already determined when it preliminarily approved the Settlement, "the form, content, and manner of notice proposed by the parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), constitute reasonable, sufficient, and appropriate notice under the circumstances, and satisfy the constitutional requirements of notice." (D.I. 166 at 3–4.) Thus, the Notice Plan satisfied Rule 23 and constitutional due process and the proposed Settlement should be finally approved.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order lodged concurrently herewith, find that the proposed Settlement is fair, reasonable, and adequate, and grant final approval.

Dated: December 7, 2016                        Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN WHITE**                            **STRANGE & BUTLER LLP**

*/s/ Stephen G. Grygiel*                        */s/ Brian Russell Strange*
Stephen G. Grygiel (DE Bar ID #4944)           Brian Russell Strange
201 N. Charles Street, 26th Floor              12100 Wilshire Boulevard, Suite 1900
Baltimore, MD 21201                            Los Angeles, CA 90025
Tel: 443-909-7516                              Tel: 310-207-5055
*sgrygiel@mdattorney.com*                      *bstrange@strangeandbutler.com*

*Executive Committee Member*                    *Executive Committee Member*

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*