**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................................1

II.   **FACTUAL AND PROCEDURAL BACKGROUND**....................................3

    **A.** **Plaintiffs' Allegations and History of the Litigation**...........................3

    **B.** **Plaintiffs' Appeal and Supreme Court Petition Provided Meaningful Benefits To the Class and Public At Large**........................................4

    **C.** **The Settlement and Preliminary Approval**......................................6

III.  **THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEE AWARD BECAUSE IT IS REASONABLE**....................................7

    **A.** **The Requested Fee is Reasonable Under the Percentage-of-Recovery Method**................................................................................8

        1. The size of the fund created and the number of beneficiaries.....................8

        2. Because the deadline for objections has not yet passed, analysis of the second factor is premature.........................................................9

        3. Class Counsel have extensive experience in similar litigation and were efficient.....................................................................................10

        4. The litigation was complex and enduring....................................................11

        5. Class Counsel faced a risk of non-payment................................................11

        6. Class Counsel devoted substantial time and resources to this case...........12

        7. Class Counsel's fee request fits squarely within the range of what is regularly approved in similar cases....................................................13

        8. Class Counsel prosecuted the litigation without help from the government or other public agencies...........................................................14

        9. The requested fee is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement...........................14

        10. The factor of any innovative terms is neutral............................................15

    **B.** **A Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee**..15

IV.  **CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES**.........17

V.   **INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS**...........18

VI.  **CONCLUSION**................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Chemi v. Champion Mortg.*,
   No. 2:05-cv-1238 (WHW), 2009 WL 1470429 (D.N.J. May 26, 2009) .................................. 10

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) .................................................................................. 18

*Erie Cty. Retirees Ass'n v. Cty. of Erie, Pa.*,
   192 F. Supp. 2d 369 (W.D. Pa. 2002) ........................................................................ 13

*Foster v. Kraft Foods Grp., Inc.*,
   No. 09-cv-00453, 2013 WL 440992 (W.D. Pa. Jan. 15, 2013) ................................. 18

*Frederick v. Range Resources-Appalachia, LLC*,
   No. 08-cv-288, 2011 WL 1045665 (W.D. Pa. Mar. 17, 2011) ................................. 17

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ...................................................................................... 11

*Hall v. AT&T Mobility LLC*,
   No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ............................... 10

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................................................ 18

*Haught v. Summit Resources, LLC*,
   No. 1:15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 4, 2016).......................... 2, 17

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006)......................................................................... 7, 8, 14, 15

*In re Auto. Refinishing Paint Antitrust Litig.*,
   No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................................. 17

*In re Cendant Corp. Prides Litig.*,
   243 F.3d 722 (3d Cir. 2001)....................................................................................... 11

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997).................................................................... 2, 13

*In re Diet Drugs Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009)......................................................................................... 8

*In re Diet Drugs Prods. Liab. Litig.*,
  553 F. Supp. 2d 442 (E.D. Pa. 2008) ................................................... 14

*In re Gen. Instruments Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................... 11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) ............................................................. 5

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .......................................................... 14

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) .............................................................. 9

*In re Merck & Co. Vytorin ERISA Litig.*,
  No. 08-cv-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................. 15

*In re NTL, Inc. Secs. Litig.*,
  No. 02 Civ. 3013 (LAK)(AJP), 2007 WL 623808 (S.D.N.Y. Mar. 1, 2007) .................... 17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ............................................................. 7

*In re Rent-Way Secs. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................... 18

*In re SmithKline Beckman Corp. Secs. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ................................................. 3, 9, 13

*In re Yahoo Mail Litig.*,
  No. 13-cv-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ........................ 16

*Kirsch v. Delta Dental*,
  534 F. App'x 113 (3d Cir. 2013) ......................................................... 3

*McDonough v. Toys "R" Us, Inc.*,
  834 F. Supp. 2d 329 (E.D. Pa. 2011) .................................................... 14

*Milliron v. T-Mobile USA, Inc.*,
  423 F. App'x 131 (3d Cir. 2011) ........................................................ 17

*Nichols v. SmithKline Beecham Corp.*,
  No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ................................... 12

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................... 6

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
    No. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005)................................. 12

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)...................................................... 7

*Uphoff v. Elegant Bath Ltd.*,
    176 F.3d 399 (7th Cir. 1999) ................................................... 16

*Varacello v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) .................................................. 13

*Wise v. Popoff*,
    835 F. Supp. 977 (E.D. Mich. 1993)............................................. 2, 13

**TREATISES**

David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237 (2009) .......................................... 5

Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs" or "Class Representatives") respectfully move the Court for an Order awarding Class Counsel[1] attorneys' fees and reimbursement of expenses, as well as granting Incentive Awards to the Class Representatives.[2]

## I.   INTRODUCTION

Class Counsel have zealously prosecuted this matter since 2012, investing more than 4843.35 hours of time and $90,929.26 in out-of-pocket expenses, all on a contingent basis.[3]  As a result of Class Counsel's work, and after hard-fought litigation that involved extensive investigation and discovery, oral arguments, multiple rounds of motion practice, and extensive appellate practice, the Parties reached an arm's-length settlement only through the dedicated efforts of Class Counsel working diligently, without compensation,[4] for more than four years to represent the Class.

---

[1] This Motion is brought by Class Counsel on behalf of 12 law firms who each contributed in some manner to the prosecution of this litigation.  Class Counsel includes the three members of the Court-appointed Plaintiffs' Executive Committee—Strange & Butler LLP; Bartimus, Frickleton, and Robertson P.C.; and Silverman Thompson Slutkin White.  Class Counsel are also submitting the unreimbursed time and expenses of various members of the Plaintiffs' Steering Committee and others involved in the prosecution of this case and respectfully request the Court enter the Proposed Order submitted with this Motion permitting Class Counsel to allocate the attorneys' fees and expenses awarded under this Motion among the members of the Plaintiffs' Steering Committee and others in accordance with their assessment of each firm's contribution to the prosecution of the case.

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement and Release (D.I. 163-1).

[3] Class Counsel's lodestar and total hours and expenses include the time and expenses of the various members of the Plaintiffs' Steering Committee as well as counsel for the Representative Plaintiffs.  A summary level chart of the hours, lodestar, and expenses attributable to each firm involved is attached as **Exhibit A**.

[4] In April 2014, this Court approved a small settlement with Defendant PointRoll, Inc., which provided Class Counsel with $115,000 for attorneys' fees and expenses and the Class Representatives with $500 each.  (D.I. 145.)  Class Counsel has deducted that amount from the fees and expenses it seeks to recover here.

The concurrently-filed Memorandum in Support of Plaintiffs' Motion for Final Approval of Settlement with Google Inc. documents why the Settlement is a fair, adequate, and reasonable result for the Class and should be finally approved. This Memorandum addresses Class Counsel's request for: (1) an award of attorneys' fees in the amount of $2,406,070.74, which represents a lodestar multiplier of *negative* 0.73 and 43.7% of the gross Settlement Fund; (2) reimbursement of out-of-pocket litigation expenses of $90,929.26; and (3) approval of a $1000 Incentive Award to each of the three Class Representatives in recognition of their valuable and time-consuming services to the Class, all to be paid from the Settlement Fund. Defendant Google Inc. ("Google") does not contest Class Counsel's Motion. *See* Settlement Agreement ("S.A.") § 11.2.[5]

As detailed below, the record in this case and Third Circuit case law fully supports the requested fees and expenses. Under the circumstances of this case, Class Counsel's fee request, representing a *negative* 0.73 lodestar multiplier and 43.7% of the Settlement Fund, is reasonable and within the range of approval under Third Circuit law. *See, e.g.*, *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) ("A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.'" (internal citation omitted)); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36% of recovery and noting that "50 percent of the fund is the upper limit on a reasonable fee award from a common fund"); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (noting that fee awards typically range "from 20 to 50 percent of the common fund created" and awarding fee equal to 45.3% of settlement fund); *In re SmithKline*

---

[5] The Settlement Agreement is attached as **Exhibit A** to the Declaration of Brian R. Strange in Support of Motion for Final Approval of Class Action Settlement, which was filed contemporaneously with this Motion (ECF No. 167-2).

*Beckman Corp. Secs. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (noting fee awards can go as high as 45% of settlement fund); *see also Kirsch v. Delta Dental*, 534 F. App'x 113, 116 (3d Cir. 2013) (upholding fee of "roughly 36%" of the settlement value).  This Court found Class Counsel's similar attorneys' fees fair and reasonable in the prior settlement with PointRoll, Inc., which provided injunctive relief to the Class.  (D.I. 145.)  Moreover, this fee request represents just 73% of Class Counsel's unreimbursed lodestar through November 15, 2016.[6]  Accordingly, Plaintiffs respectfully request that the Motion be granted.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of the underlying facts and law involved in this litigation, which lends context to the reasonableness of the requested Fee Award and Incentive Awards, is outlined below.

### A.  Plaintiffs' Allegations and History of the Litigation

In 2012, Plaintiffs and numerous other individuals filed complaints in various federal courts around the United States following the revelation of an investigation that exposed Defendant Google's purported circumvention of the privacy settings of Apple Safari and Microsoft Internet Explorer web browsers.  These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012.  (D.I. 1.)  On December 19, 2012 Plaintiffs filed a Consolidated Class Action Complaint against Google and other Defendants (D.I. 46), and, on June 21, 2016, Plaintiffs filed a Consolidated Amended Class Action Complaint (D.I. 162).  In the Complaint, Plaintiffs alleged, on behalf of a nationwide class of consumers, that Google set cookies on Plaintiffs' Safari and Internet Explorer web browsers in conflict with the default cookie settings of such

---

[6] These figures do not include any time that Class Counsel spent preparing and filing the Motion for Final Approval of Settlement with Defendant Google Inc. or this Motion.

browsers and in violation of various federal and state laws.  The parties also propounded and answered discovery on one another, including initial disclosures (D.I. 155, 156), requests for production of documents (D.I. 155, 158–60), and interrogatories (D.I. 155, 159).

On October 9, 2013, this Court granted Google's motion to dismiss all of Plaintiffs' claims.  (D.I. 122.)  Plaintiffs appealed that Order and, on November 10, 2015, the Third Circuit Court of Appeals vacated the dismissal of two of Plaintiffs' state law claims while affirming the dismissal of Plaintiffs' other claims and remanded the case to this Court for further consideration.  (D.I. 146.)

Following the Third Circuit's remand of the case, on May 9, 2016, Class Counsel and counsel for Google participated in a private all-day mediation before retired federal Judge Layn Phillips.  In advance of the mediation, the Parties exchanged extensive briefing in response to numerous challenging questions proposed by Judge Phillips and participated in pre-mediation phone calls.  During the mediation, and with the assistance of Judge Phillips, Plaintiffs and Google agreed to the basic terms of the Settlement Agreement, later memorialized in a final document executed by all Parties and Class Counsel as of June 30, 2016.  *See* Declaration of Brian R. Strange In Support of Motion for Attorneys' Fees, Expenses, and Incentive Awards ("Strange Decl.") ¶ 8.  Further, the negotiations that led to the Parties' agreements with regard to the Fee Award, expenses, and Incentive Awards, were only begun after the other terms of the Settlement were agreed to, avoiding any actual or potential conflict of interest on the part of Class Counsel.  *Id.*

### B.  Plaintiffs' Appeal and Supreme Court Petition Provided Meaningful Benefits To the Class and Public At Large

With their October 2013 appeal of this Court's dismissal of all of their claims to the Third Circuit Court of Appeals, Plaintiffs and Class Counsel achieved a meaningful advance in the area

of privacy rights, significant both for the Class here and for future litigants in privacy class actions.  (*See* D.I. 125.)  In its November 10, 2015 published opinion, the Third Circuit decided the novel and complex question of law that has vexed litigants in the newly-emerging and ever-evolving area of privacy litigation—whether class action plaintiffs have standing (injury in fact) when they did not suffer any monetary loss as a result of a defendant's alleged privacy breach. The Third Circuit's published opinion held in favor of Plaintiffs because Defendants' conduct, in the course of serving advertisements to Plaintiffs' personal web browsers, inflicted the "concrete, particularized, and actual" harm Plaintiffs alleged and therefore "show[s] injury in fact." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134–35 (3d Cir. 2015). The Third Circuit thus decisively concluded an argument routinely made by privacy action defendants.  Plaintiffs' appeal therefore contributed meaningfully to this evolving and ever-important area of the law.

In addition, following the Third Circuit's decision affirming the dismissal of several of Plaintiffs' federal claims for relief, Plaintiffs' and Class Counsel filed a petition for a writ of certiorari to the United States Supreme Court on March 10, 2016.  Google elected not to respond. After distributing Plaintiffs' petition for writ of certiorari to the Supreme Court's members, the Supreme Court requested that Defendants respond to the petition on May 10, 2016.  Such a request is rare as the Supreme Court only requests responses to approximately 2.5–4.7 percent of the petitions before it.[7]  While the Supreme Court ultimately decided on October 3, 2016 not to hear the case, its decision to carefully consider the issue reinforces the fact that Plaintiffs and Class Counsel performed highly complex and novel work on behalf of the Class and materially

---

[7] *See* David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 268 (2009).

benefitted both the Class and the public at large through their positive contributions to this emerging area of the law.

### C.  The Settlement and Preliminary Approval

The Settlement Agreement creates a $5.5 million Settlement Fund for the benefit of the Class, which includes all persons in the United States who used an Apple Safari or Microsoft Internet Explorer web browser and visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.  S.A. § 2.3.  The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal.  While Class Members will not receive a monetary payment because of the difficulty of determining the identity of each Class Member and the costs of distributing the funds, the Settlement provides that Google will confirm it has fully remediated the allegedly wrongful conduct that will, in effect, place the Class back in the position they were before Google began the complained of conduct.  *Id.* § 5.1.  Google will also provide a $5.5 million Settlement Fund to fund various *cy pres* recipients that agree to promote public awareness, education, and/or research initiatives related to the security and privacy of Internet browsers, attorneys' fees and expenses, Incentive Awards, and class administration costs.  *Id.* § 5.3.3; *see also Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("[F]ederal courts have frequently approved [*cy pres*] remed[ies] in the settlement of class actions where proof of individual claims would be burdensome or distribution of damages costly." (citation omitted)).  In exchange for the relief to the Class, Google will be released from all claims and causes of action related to the complained of conduct.  S.A. § 10.1.

6

On August 29, 2016, Plaintiffs moved for preliminary approval of the Parties' Settlement

Agreement.  (D.I. 163.)  On August 31, 2016, this Court preliminarily approved the Settlement

and directed that Notice be disseminated to the Settlement Class in accordance with the

Settlement.  (D.I. 164.)

## III.  THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEE AWARD BECAUSE IT IS REASONABLE

As of November 15, 2016, Class Counsel and other Plaintiffs' law firms have devoted

more than 4843 hours to this case, reporting a lodestar of approximately $3,296,169.75 at their

regular hourly rates and $90,929.26 in out-of-pocket litigation expenses.[8]

Courts in the Third Circuit apply the percentage-of-recovery or lodestar method to

determine the reasonableness of an attorneys' fee request.  *Sullivan v. DB Invs., Inc.*, 667 F.3d

273, 330 (3d Cir. 2011) (en banc).  "The percentage-of-recovery method applies a certain

percentage to the settlement fund," while "[t]he lodestar method multiplies the number of hours

class counsel worked on a case by a reasonable hourly billing rate for such services."  *In re*

*AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).  However, the percentage-of-recovery method

has long been preferred in this Circuit in common-fund cases like this one.  *In re Prudential Ins.*

*Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333–34 (3d Cir. 1998) ("The

percentage-of-recovery method is generally favored in cases involving a common fund, and is

---

[8] *See* Strange Decl.; Declaration of James P. Frickleton in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Frickleton Decl."); Declaration of Stephen G. Grygiel in Support of Motion for Attorneys' Fees, Expenses, and Incentive Awards ("Grygiel Decl."); Declaration of Jason "Jay" Barnes in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Barnes Decl."); Declaration of Andrew S. Lyskowski in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Lyskowski Decl."); Declaration of Brian S. Cohen in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Cohen Decl."); Declaration of Tammy M. Stokes in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Stokes Decl."); Declaration of Roseann E. Weisblatt in Support of Class Counsel's Application for Attorneys' Fees, Expenses, and Incentive Awards ("Weisblatt Decl.").

designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (internal quotations and citations omitted)).  Nevertheless, the Third Circuit has "recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award" while at the same time not displacing its primary reliance on the percentage method.  *In re AT&T Corp.*, 455 F.3d at 164.

Here, application of the percentage-of-recovery method and a lodestar cross-check demonstrate that Plaintiffs' request for a Fee Award amounting to 43.7% of the Settlement Fund is reasonable and should be approved.

**A.  The Requested Fee is Reasonable Under the Percentage-of-Recovery Method**

Because the Settlement created a common fund of $5.5 million for the benefit of the Class, to determine "what constitutes a reasonable percentage fee award, [the Court] must consider the [following] ten factors": (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by Class Members to the Settlement and/or fees requested; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Class Counsel; (7) awards in similar cases; (8) the value of the benefits attributable to other groups, such as government agencies; (9) the percentage that would have been negotiated in a private contingent fee agreement; and (10) any innovative terms of the settlement.  *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

*1.    The size of the fund created and the number of beneficiaries*

The Settlement creates a common fund of $5.5 million for the benefit of the Class.  S.A. § 5.2.1.  The requested fee award is a reasonable amount that falls within the range of amounts approved by the Third Circuit.  Indeed, attorneys' fees awards in class cases can, and often do,

go as high as 45% of the Settlement Fund's value.  *See In re SmithKline Beckman Corp. Secs. Litig.*, 751 F. Supp. at 533.  Potentially millions of Class Members will benefit from the remedial relief obtained via the Settlement.  Still others will benefit from the education, research, and outreach initiatives promoting Internet privacy and browser security that the *cy pres* recipients will be able to accomplish with the Settlement Fund contributions.  Especially when viewed in light of the risks faced by the Class going forward against Google in this case, the magnitude of the recovery achieved through the Settlement is substantial.  *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012) (settlement reasonable in part because of the "substantial risks" plaintiffs faced in continuing litigation and the "immediate benefits" provided by the settlement).

Absent the Settlement, the Class would be forced to prevail on a motion for class certification and to win a favorable jury verdict against Google in the face of numerous defenses, and the "immediate benefits" provided by the Settlement support this factor.  *Id.*  And, even assuming a win at trial, an appeal (and a petition for certiorari thereafter) would inevitably follow as to both class certification and liability, presenting additional risk and guaranteeing additional delay in a case already four-years-old.  In comparison, through the Settlement, Class Members are assured of immediate and substantial benefit free of the risks and delays of a jury trial against Google and subsequent appeals.

Accordingly, this factor weighs in favor of the requested fee award.

2. *Because the deadline for objections has not yet passed, analysis of the second factor is premature*

The Notice of Settlement advised prospective Class Members that Class Counsel would apply for the fee award described herein and specifically stated that any Class Member could object to either the Settlement or the fee application.  Declaration of Stephen J. Cirami

Regarding Settlement Administration ("Cirami Decl.") ¶ 10.[9]  As of December 4, 2016, there

have been no objections to the fees requested by counsel.  *Id.* ¶ 13.  However, the deadline for

objections is December 21, 2016, so it is premature to fully analyze this factor.

> 3.    *Class Counsel have extensive experience in similar litigation and were efficient*

Class Counsel are highly experienced in litigating complex class actions and privacy

cases with decades of experience prosecuting and trying complex actions.  *See* Strange Decl. ¶

15; Frickleton Decl. ¶¶ 7–8; Grygiel Decl. ¶ 13.  Class Counsel have particular expertise in

litigating privacy class actions.  *Id.*  This experience enabled each law firm involved to quickly

and efficiently coordinate, organize, and implement litigation strategies.  As a result, Class

Counsel was successful in winning reversal of the dismissal of two claims before the Third

Circuit and were preparing to move this case forward toward trial at the time of settlement.

"The skill and efficiency of the attorneys involved is measured by the quality of the result

achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience

and expertise of counsel, the skill and professionalism with which counsel prosecuted the case

and the performance and quality of opposing counsel."  *Chemi v. Champion Mortg.*, No. 2:05-

cv-1238 (WHW), 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal citation and

quotations omitted).  Class Counsel's experience and skill is evidenced by their effective

prosecution of this case, including the favorable Settlement achieved.

Additionally, the Court should consider the quality of defense counsel when evaluating

Class Counsel's work.  *See, e.g.*, *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL

4053547, at *19 (D.N.J. Oct. 13, 2010).  Throughout this case, Google has been represented by

one of the country's leading law firms—Wilson Sonsini Goodrich & Rosati—which has

---

[9] The Cirami Declaration was submitted with the contemporaneously-filed Motion for Final
Approval of Class Action Settlement (ECF No. 167-5).

vigorously defended this lawsuit.  Achieving such a successful result for the Class when opposed by such capable defense counsel further demonstrates Class Counsel's skill.

This factor weighs in favor of the requested fee award.

### 4. *The litigation was complex and enduring*

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are "factors which increase the complexity of class litigation."  *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 741 (3d Cir. 2001).  This electronic privacy case has involved numerous complex and evolving areas of the law necessitating intensive legal research and application of established legal rules to a cyberspace reality that those rules did not, in many respects, contemplate at their inception.  As evidenced by the contested issues before the Third Circuit, and that court's decision to affirm the dismissal of some claims but reverse others, the issues involved and the time that Class Counsel spent litigating them before this Court and the Third Circuit were legally complex, factually difficult, and hard fought.  *See In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001) ("[T]his litigation involved multiple complex issues and has been a hard fought battle for many years.").

This factor weighs in favor of the requested fee award.

### 5. *Class Counsel faced a risk of non-payment*

Although there is a risk of non-payment associated with any action involving contingency fees, this factor relates both to whether the Defendant is in a precarious financial position and whether the risk Class Counsel undertook in prosecuting the case was likely to result in non-payment.  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir. 2000).  As to the former, Google's ability to pay is not in question.  Nevertheless, as to the latter, the risk of

securing ultimate victory at trial or summary judgment is considerable, in addition to the

challenges posed by class certification.  Even if Plaintiffs succeeded in overcoming these

obstacles, further risks exist in the likely appeal from any decision against Google, adding to the

uncertainty of the recovery.  *See, e.g.*, *Stop & Shop Supermarket Co. v. SmithKline Beecham*

*Corp.*, No. 03-4578, 2005 WL 1213926, at *10 (E.D. Pa. May 19, 2005) (risk of overcoming

numerous defenses "favors approval of the percentage of recovery requested as a fee in this

case"); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *13–14 (E.D.

Pa. Apr. 22, 2005) (risk of nonpayment was high where class counsel litigated complex legal and

factual issues for more than four years in the face of strong defenses and the possibility that class

would not be certified).

Class Counsel vigorously prosecuted this case despite facing the very real risk that they

would receive zero compensation for their hard work and long hours, and no reimbursement for

the significant monetary outlays they expended in litigating this case.  Nevertheless, Class

Counsel represented Plaintiffs and the Class purely on a contingency fee basis, with no up-front

fees or allowance for expenses, nor any compensation during the course of this litigation.[10]

Accordingly, the risk of failing to secure even a similar outcome as provided under the

Settlement clearly weighs in favor of approval of the requested Fee Award.

6.      *Class Counsel devoted substantial time and resources to this case*

Class Counsel devoted over 4843 hours of uncompensated attorney and staff time and

$90,929.26 in out-of-pocket expenses investigating, litigating, and attempting to resolve this

case.  *See* Exhibit A; *see also* Strange Decl. ¶¶ 11–13; Frickleton Decl. ¶¶ 4–7; Grygiel Decl. ¶¶

10–12.  "Over the course of years, it is reasonable that so much time would have been spent on

---

[10] Except for the limited compensation discussed in footnote 4, *supra*.

these complex cases, particularly given the excellent counsel of Defendants and their contested nature." *Varacello v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005).  The time expended on this case represents a substantial commitment to this litigation, especially in light of the risks associated with the litigation (described above) and the fact that, apart from the nominal settlement with former Defendant PointRoll, they have not been paid for any of their efforts thus far.  And Class Counsel will be spending a significant number of additional hours in connection with administering the Settlement without compensation.  *See id.* (fee award is sole compensation for Class Counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries").

    Accordingly, this factor also weighs in favor of approval.

    7.    *Class Counsel's fee request fits squarely within the range of what is regularly approved in similar cases*

    As set forth above, a fee award of 43% of the Settlement Fund is within the range of well-accepted awards in this Circuit.  In class action settlements where the common settlement fund ranges from $400,000 to $6.5 million, as is the case here, fee awards are typically between 30% and 43% of the common fund, and are routinely determined reasonable.  *See, e.g.*, *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pa.*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002); *see also In re Combustion, Inc.*, 968 F. Supp. at 1142 (awarding fee of 36% of recovery and noting that "50 percent of the fund is the upper limit on a reasonable fee award from a common fund"); *Wise*, 835 F. Supp. at 980 (noting that fee awards typically range "from 20 to 50 percent of the common fund created" and awarding fee equal to 45.3% of settlement fund); *In re SmithKline Beckman Corp. Secs. Litig.*, 751 F. Supp. at 533 (noting fee awards can go as high as 45% of settlement fund).

13

Here, Class Counsel's request for 43.7% of the $5.5 million Settlement Fund falls

squarely within what numerous courts have found to be reasonable for a settlement of this size

and, therefore, this factor supports Class Counsel's request.

        8.      *Class Counsel prosecuted the litigation without help from the government or other public agencies*

Courts in this Circuit next consider whether Class Counsel benefitted from "the efforts of

other groups, such as government agencies conducting investigations." *AT&T Corp.*, 455 F.3d at

165 (citation omitted).  Here, although the government did investigate Google's actions and

reached a settlement with Google wherein Google denied any wrongdoing, "this case is quite

different from the typical antitrust or securities litigation" in which this factor is considered most

important because, in those cases, "government prosecutions frequently lay the groundwork for

private litigation." *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 481 (E.D. Pa.

2008).  Here, Class Counsel did not rely on the "Government or other public agencies to do their

work for them as has occurred in some cases." *Id.* at 481–82.  Thus, this factor weighs in favor

of Class Counsel's requested fee award.

        9.      *The requested fee is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement*

This factor is often found to be neutral in light of the "extreme[] difficult[y in]

determin[ing] what fee would have been negotiated at the outset of the litigation." *McDonough*

*v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329, 345 (E.D. Pa. 2011).  But other courts find that if the

Fee Award's percentage is similar to a reasonable fee that would have been negotiated in a

private contingent fee arrangement, the factor supports the fee award.  *See, e.g.*, *In re Ikon Office*

*Sols., Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases . . .

plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent

of any recovery.").  And contingency fee agreements typically include provisions increasing any

contingency fee for work done on appeal (like the substantial and successful appellate work performed by Class Counsel in this case). Thus, the requested Fee Award in this case is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement and this factor supports Class Counsel's requested Fee Award.

### 10. *The factor of any innovative terms is neutral*

Finally, and as noted above, this Settlement provides substantial relief to the Class in the form of remedial relief prohibiting the complained-of practices and *cy pres* contributions to organizations that perform publicly valuable, innovative pro-privacy research, education, and outreach. While the terms of the Settlement may not necessarily be "innovative," they are certainly strong and will support the *cy pres* recipients' innovative privacy work in the future. Thus, this factor is neutral. *See In re Merck & Co. Vytorin ERISA Litig.*, No. 08-cv-285 (DMC), 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010) (finding factor neutral when no innovative terms are highlighted).

In sum, eight of the ten *Prudential*/*Gunter* factors support Class Counsel's Fee Award request, the other two factors remain neutral, and none of the factors counsels against the request.

### B. A Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee

The requested Fee Award is equally reasonable under the lodestar method. The lodestar is calculated by multiplying the number of hours Class Counsel worked on a case by a reasonable hourly billing rate for such services. *In re AT&T Corp.*, 455 F.3d at 164. The resulting base lodestar may then be enhanced by application of a reasonable risk-multiplier to account for the contingent nature of the action and/or other factors—namely, the risk of non-payment and the quality of Class Counsel's work. *Id.* ("The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier.").

Here, Class Counsel's adjusted base lodestar as of November 15, 2016 is $3,296,169.75.

*See* Exhibit A; *see also* Strange Decl. ¶¶ 11–13; Frickleton Decl. ¶¶ 4–7; Grygiel Decl. ¶¶ 10–12;

Barnes Decl. ¶¶ 2–4; Lyskowski Decl. ¶¶ 2–4; Cohen Decl. ¶¶ 2–4; Stokes Decl. ¶¶ 2–4;

Weisblatt Decl. ¶¶ 2–4.  This attorney time was reasonably spent and necessary for the

successful prosecution of this case.  *Id.*  The attorney and staff rates used to calculate Class

Counsel's base lodestar are also comparable to those charged by attorneys with equivalent

experience, skill, and reputation for similar services in their respective legal markets as well as

nationwide.  *Id.*  These rates have been previously approved by numerous courts, including this

Court.[11]  *See In re Yahoo Mail Litig.*, No. 13-cv-4980-LHK, 2016 WL 4474612, at *9 (N.D. Cal.

Aug. 25, 2016) (approving hourly attorney rates of between $600 and $875 per hour for senior

associates and partners in class settlement achieving only injunctive relief and no monetary

and/or *cy pres* relief).  Additionally, the hourly rates used to calculate Class Counsel's lodestar

are the same as those charged to Class Counsel's hourly-paying clients, which supports a finding

that their fee request is reasonable.  Strange Decl. ¶ 12; Frickleton Decl. ¶ 5; Grygiel Decl. ¶ 11;

*see also Uphoff v. Elegant Bath Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (where base lodestar is

reflective of the rates charged to hourly-paying clients, there is a presumption of reasonableness).

Given the contingent nature of the Fee Award, Class Counsel had no incentive to and did not

"overbill" or expend unnecessary time or resources.  Accordingly, there should be no question

that Class Counsel's base lodestar is both fair and reasonable.

The lodestar calculation does not end with calculation of the base amount but, rather, is

often enhanced with a reasonable risk-multiplier.  Although the multiplier need not fall within

---

[11] They are also the same or similar to the hourly rates that this Court previously approved when it granted approval to Class Counsel's fee petition regarding the prior settlement with PointRoll. (D.I. 145.)

any pre-defined range, courts in the Third Circuit have approved multipliers of up to 2.99, even in relatively simple cases. *See Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011); *Frederick v. Range Resources-Appalachia, LLC*, No. 08-cv-288, 2011 WL 1045665, at *13 (W.D. Pa. Mar. 17, 2011) ("Federal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4."). Here, a multiplier of <u>*negative*</u> 0.73 must be applied to Class Counsel's base lodestar in order to yield the requested Fee Award. Such a multiplier has been found to be reasonable in similar cases and is equally reasonable in this case. *See Haught*, 2016 WL 1301011, at *12 ("A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.'" (internal citation omitted)); *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *6 (E.D. Pa. Jan. 3, 2008) ("Since the multiplier is less than 1 (a 'negative lodestar') and the requested fee is less than the amount that would be awarded using the lodestar method, we are satisfied that a lodestar cross-check confirms that the requested fee percent is fair and reasonable." (citation omitted)); *In re NTL, Inc. Secs. Litig.*, No. 02 Civ. 3013 (LAK)(AJP), 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007) (noting that fee awards based on negative lodestars are fair and reasonable). Class Counsel's requested Fee Award is reasonable and should be approved.

## IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES

Class Counsel also request reimbursement for the reasonable and necessary expenses advanced to prosecute this litigation since its inception in 2012 and through November 15, 2016.[12]  These expenses, totaling $90,929.26, are detailed in Class Counsel's Declarations accompanying this motion.  "There is no doubt that an attorney who has created a common fund

---

[12] Class Counsel reimbursed certain expenses related to its prosecution of the case against former Defendant PointRoll, Inc. out of the prior fee award.  Class Counsel is not seeking to be reimbursed for those expenses here and all figures exclude such expenses.

for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003).

In determining whether Class Counsel's expenses are compensable in a class settlement situation, courts look to whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that 'would normally be charged to a fee paying client'" (internal citation omitted)). For example, expenses Class Counsel paid can be divided into specific categories, each of which are typically charged to hourly clients: (1) photocopies/scans; (2) court and filing fees; (3) legal research; (4) telephone/conference call/facsimile costs; (5) postage; (6) service of process fees; (7) travel, parking, and meal costs; and (8) expense fund contributions, mediation-related expenses, and other costs. *See* Exhibit A; *see also* Strange Decl. ¶ 13; Frickleton Decl. ¶ 6; Grygiel Decl. ¶ 12. Because each of Class Counsel's expenses are of the type routinely charged to hourly clients, the full requested amount of $90,929.26 should be reimbursed.

## V.   INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS

Finally, subject to the Court's approval, the Settlement provides that each of the three Class Representatives will receive an Incentive Award of $1000 to be paid out of the Settlement Fund for their efforts as Class Representatives. S.A. § 11.2. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citations omitted); *see also Foster v. Kraft Foods Grp., Inc.*, No. 09-cv-00453, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approving incentive awards between $5000 and $15,000 for each class representative).

Each of the three Class Representatives were central to the resolution of this litigation and assisted Class Counsel by helping in the investigation, providing valuable information about their Internet browsers and settings, and willingness to make the time commitment to undertake the responsibilities and risks involved in bringing a representative action of this nature.  Each of their efforts resulted in a benefit to the Class as a whole and the requested Incentive Awards are reasonable and should be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order approving the requested attorneys' fee and expense award of $2,497,000, modest Incentive Awards of $1000 to each of the three Class Representatives, and such other and further relief as the Court deems reasonable and just.

Dated: December 7, 2016                                 Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN**                          **STRANGE & BUTLER LLP**
**WHITE**

*/s/ Stephen G. Grygiel*                                */s/ Brian Russell Strange*
Stephen G. Grygiel (DE Bar ID #4944)                    Brian Russell Strange
201 N. Charles Street, 26th Floor                       12100 Wilshire Boulevard, Suite 1900
Baltimore, MD 21201                                     Los Angeles, CA 90025
Tel: 443-909-7516                                       Tel: 310-207-5055
*sgrygiel@mdattorney.com*                               *bstrange@strangeandbutler.com*

*Executive Committee Member*                            *Executive Committee Member*

**BARTIMUS, FRICKLETON,**
**and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

# EXHIBIT A

**EXHIBIT A**

| Firm | Total Hours | Lodestar | Total Expenses |
|---|---|---|---|
| Strange & Butler LLP | 2019.20 | $1,252,181.50 | $19,585.55 |
| Bartimus, Frickleton, and Robertson, P.C. | 596.00 | $498,082.50 | $27,724.96 |
| Silverman Thompson Slutkin White | 994.70 | $848,285.00 | $28,088.69 |
| Barnes & Associates | 565.70 | $339,420.00 | $598.28 |
| Bergmanis Law Firm | 118.35 | $59,175.00 | $1,147.27 |
| Other PSC Firms | 496.70 | $270,826.75 | $13,350.86 |
| Cohen Law Group, P.C. | 31.80 | $19,875.00 | $350.00 |
| Guin Stokes & Evans LLC | 5.80 | $3,794.00 | $56.15 |
| Law Office of Roseann E. Weisblatt | 15.10 | $4,530.00 | $27.50 |
| **TOTALS** | **4843.35** | **$3,296,169.75** | **$90,929.26** |