## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

## OBJECTION OF THEODORE H. FRANK
## TO SETTLEMENT APPROVAL, CLASS CERTIFICATION, AND TO REQUEST FOR ATTORNEYS' FEES

COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Adam E. Schulman (DC Bar # 1001606)
1310 L Street, NW, 7th Floor
Washington, DC 20005
Tel: 610-457-0856
adam.schulman@cei.org

*Attorney for Objector Theodore H. Frank*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF THE ARGUMENT ........................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT.........................................................................................................................2

I.      Frank is a class member and intends to appear through counsel at the fairness hearing. ....2

II.     The Court has a fiduciary duty to the absent members of the class....................................3

III.    The settlement improperly favors third-party charities over class members through its *cy pres* provision.....................................................................................................................5

    A.      The settlement resorts to *cy pres* prematurely. ...................................................... 8

IV.     The Court must consider the pre-existing relationships between the *cy pres* recipients, class counsel and the defendant. ....................................................................................12

    A.      *Cy pres* beneficiaries should not have a pre-existing relationship with class counsel. ........................................................................................................... 13

    B.      Pre-existing relationships between the defendant and the *cy pres* recipients undermine the theoretical value of the settlement. ................................................ 15

V.      In the alternative, if settlement distributions to individual class members are impracticable, then the putative class cannot be certified..................................................16

    A.      Representatives who propose a zero recovery settlement are not adequately representing the class. ......................................................................................... 16

VI.     If the Court approves the certification and settlement, it should decline to grant the $2.5 million attorneys' award requested...................................................................................17

    A.      An attorney request of 45% of the gross settlement is excessive. ........................ 18

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................. 16-17

*In re Aqua Dots Prods. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ...........................................................................................17

*In re AT&T Corp.,*
    455 F.3d 160 (3d Cir. 2006) ..............................................................................................4

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) .................................................................................... *passim*

*In re BankAmerica Corp. Secs. Litig.,*
    775 F.3d 1060 (8th Cir. 2015) ....................................................................................6, 10

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) .................................................................................5, 18, 19

*Broussard v. Meineke Discount Muffler Shops,*
    155 F.3d 331 (4th Cir. 1998) ...........................................................................................16

*In re Carrier iQ, Inc. Consumer Privacy Litig.,*
    No. 12-md-02330-EMC,
    2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016) ..............................................9

*In re Cendant Corp. Litig,*
    264 F.3d 201 (3d Cir. 2001) ...........................................................................................18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    MDL No. 1361,
    2005 U.S. Dist. LEXIS 11332 (D. Me. Jun. 10, 2005) .....................................................14

*Coulter-Owens v. Rodale, Inc.,*
    2016 U.S. Dist. LEXIS 134243 (E.D. Mich. Sept. 29, 2016) ...........................................19

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
    662 F.3d 913 (7th Cir. 2011) ...........................................................................................16

*Daniels v. Aeropostale West,*
    No. C 12-05755 WHA,
    2014 U.S. Dist. LEXIS 74081 (N.D. Cal. May 29, 2014) ...............................................17

*Dennis v. Kellogg,*
    697 F.3d 858 (9th Cir. 2012) ........................................................................ 6, 12-14, 15, 18

*Dewey v. Volkswagen AG*,
    681 F.3d 170 (3d Cir. 2012) ...................................................................17

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ......................................... 3, 4-5, 12, 17

*Erie County Retirees Ass'n. v. County of Erie*,
    192 F. Supp. 2d 369 (W.D. Pa. 2002) ....................................................18

*Fraley v. Facebook.*,
    No. C 11-1726 RS,
    2012 WL 5835366, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012) ...............7

*Fraley v. Facebook.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ......................................................9

*Gallego v. Northland Group*,
    814 F.3d 123 (2d Cir. 2016) .................................................................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................... 3-4, 5, 12, 17-18

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...................................................................5

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. Jun. 2, 2011) .............................................15

*In re Google Referrer Header Privacy Litig.*,
    87 F. Supp. 3d 1122 (N.D. Cal. 2015) ....................................................15

*Graff v. United Collection Bureau*,
    132 F. Supp. 3d 470 (E.D.N.Y. 2016) .......................................................7

*In re Heartland Payment Sys., Inc.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................19

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
    No. 09-md-2087 BTM (KSC),
    2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) .............................15

*Jackson v. Phillips*,
    96 Mass. 539 (1867) ...............................................................................6

*Karvaly v. eBay Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ..................................................... 10, 18-19

*Klier v. Elf Atochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011) ..................................................................6, 8

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) .................................................................18

*Lagarde v. Support.com, Inc.*,
    No. 12-0609 JSC,
    2013 U.S Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ...................................9

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................16

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261,
    2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008) ....................................14

*In re Livingsocial Mktg. and Sales Practices Litig.*,
    298 F.R.D. 1 (D.D.C. 2013) ................................................................ 9, 19-20

*Marek v. Lane*,
    134 S. Ct. 8 (2013) .......................................................................................6

*McDonough v. Toys "R" Us*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) .....................................................3, 11, 21

*In re Microsoft Corp. Antitrust Litig.*,
    185 F. Supp. 2d 19 (D. Md. 2002) .................................................................13

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) .........................................................................7

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) .......................................................................16

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ................................................................12, 14

*In re NFL Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ...........................................................................4

*In re NFL Players' Concussion Injury Litig.*,
    961 F. Supp. 2d (E.D. Pa. 2014) ....................................................................4

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................................5, 8

*Perry v. FleetBoston Fin. Corp.*,
   229 F.R.D. 105 (E.D. Pa. 2005) ...................................................................................20

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010)......................................................................5, 10, 11, 18

*Piambino v. Bailey*,
   757 F.2d 1112 (11th Cir. 1985)............................................................................. 7-8

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)......................................................................................12

*Radcliffe v. Experian Info Solutions*,
   715 F.3d 1157 (9th Cir. 2013)..................................................................................13

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014)......................................................................................4

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002)....................................................................................12

*Rougvie v. Ascena Retail Group Inc.*,
   No. 15-cv-724, 2016 U.S. Dist. LEXIS 142404 (E.D. Pa. Oct. 14, 2016).........................3

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
   362 F. Supp. 2d 574 (E.D. Pa. 2005) .......................................................................14

*SEC v. Bear, Stearns & Co. Inc.*,
   626 F. Supp. 2d 402 (S.D.N.Y. 2009).......................................................................13

*Seidman v. Am. Mobile Sys.*
   965 F. Supp. 612 (E.D. Pa. 1997) ............................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ...................................................................................................7

*In re Southwest Airlines Drink Vouchers Litig.*,
   799 F.3d 701 (7th Cir. 2015).....................................................................................14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)....................................................................................12

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................................8

*In re Walgreen Co. Stockholder Litig.*,
   832 F.3d 718 (7th Cir. 2016).....................................................................................17

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002)........................................................................18

*Weeks v. Kellogg Co.*,
    No. CV-09-08102 (MMM) (RZx),
    2012 U.S. Dist. LEXIS 113809 (C.D. Cal. Nov. 23, 2011) ........................14, 20

*Wise v. Popoff*,
    835 F. Supp. 977 (E.D. Mich. 1993) ..............................................................19

*Zepeda v. Paypal*,
    No. C 10-2500 SBA,
    2014 U.S. Dist. LEXIS 24388 (N.D. Cal. Feb. 24, 2014)..................................7

*Zepeda v. Paypal*,
    No. C 10-2500 SBA,
    2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015)..................................9

*Zimmerman v. Zwicker & Assocs., P.C.*,
    2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) .............7


## Rules and Statutes

Fed. R. Civ. P. 23(a)(4)........................................................................... 16-17

Fed. R. Civ. P. 23(b)(2)...............................................................................17

Fed. R. Civ. P. 23(b)(3)...............................................................................17

Fed. R. Civ. P. 23(e) ............................................................................... 5-16

Fed. R. Civ. P. 23(g)(4).......................................................................... 14, 16-17

Fed. R. Civ. P. 23(h) ............................................................................ 1, 17-20


## Other Authorities

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010)................................4

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.07 (a) (2010)................................8

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.07 cmt. (b) (2010).....................12

Erichson, Howard,
>    *Aggregation as Disempowerment: Red Flags in Class Action Settlements*,
>    92 NOTRE DAME L. REV. -- (forthcoming 2017)
>    *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2761912.....................14

Fitzpatrick, Brian T.,
>    *An Empirical Study of Class Action Settlements and their Fee Awards*,
>    7 J. EMPIRICAL LEGAL STUD. 811 (2010).........................................................................19

Frank, Theodore H.,
>    Statement before the House Judiciary Committee Subcommittee on the
>    Constitution and Civil Justice,
>    *Examination of Litigation Abuse* (Mar. 13, 2013) ..............................................................6

Levie, Shay,
>    *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims
>    Class Actions*,
>    79 GEO. WASH. L. REV. 1065 (2011) ..............................................................................11

Liptak, Adam,
>    *Doling Out Other People's Money*,
>    N.Y TIMES (Nov. 26, 2007) ...........................................................................................13

Parloff, Roger,
>    *Google and Facebook's new tactic in the tech wars*,
>    FORTUNE (Jul. 30, 2012) ..........................................................................................13, 15

Public Counsel,
>    *About Us*,
>    http://www.publiccounsel.org/about_us?id=0006 .........................................................20

Redish, Martin H., Peter Julian & Samantha Zyontz,
>    *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and
>    Empirical Analysis*,
>    62 FLA. L. REV. 617 (2010).................................................................................... 6-7, 13

Stanford Center for Internet and Society,
>    *About Us*,
>    http://cyberlaw.stanford.edu/about-us.........................................................................20

Tidmarsh, Jay,
>    *Cy Pres and the Optimal Class Action*,
>    821 GEO. WASH. L. REV. 767 (2013)...............................................................................7

Wasserman, Rhonda,
>    *Cy Pres in Class Action Settlements*,
>    88 U.S.C. L. REV. 97 (2014)............................................................................................7

## NATURE AND STAGE OF THE PROCEEDINGS

Frank incorporates by reference the procedural posture of the case as described in Plaintiffs' Motion for Preliminary Approval of Settlement. *See* D.I. 163 at 1-2.

## SUMMARY OF THE ARGUMENT

Plaintiffs filed a complaint alleging billions of dollars in statutory damages on behalf of a class consisting of millions of people, and then settled it for $5.5 million, of which the putative absent class members will see not one penny. Instead, the entire net settlement fund will go third-party "*cy pres*" recipients, even though it would be possible to allow class members to recover through a claims-made process and/or a sampling lottery method. Under Third Circuit law, this arrangement is unacceptable. "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) ("*Baby Prods.*"). *Baby Products* requires district courts to ensure that settlements provide "sufficient direct benefit" to class members. *Id.* at 170, 176, 181. Zero direct benefit is not "sufficient direct benefit"; this settlement cannot satisfy Rule 23(e).

Moreover, several of the proposed *cy pres* recipients have prior relationships with class counsel or Google. Preexisting relationships with the defendant undermine the value of the settlement to the class, because the *cy pres* then is merely a change in accounting entries rather than a change in conduct. Preexisting relationships with class counsel qualify as improper conflicts of interest. These defects render the settlement substantively unfair. *See infra* §§ III-IV.

Beyond the settlement's fairness, class certification may be untenable. If in fact distributions to class members are impossible, then the class's representatives are not adequately representing class members by proceeding as a class action. *See infra* § V. Finally, in the alternative, if the Court overrules all the above objections, the Rule 23(h) request of 45% of the gross settlement is excessive, cannot be justified by the illusory injunctive relief, and should be reduced. *See infra* § VI.

At base, the putative class attorneys have failed in their duty to ensure that class members

are the "foremost beneficiaries" of the settlement. *Baby Prods.*, 708 F.3d at 179. "Class members are not indifferent to whether funds are distributed to them or *cy pres* recipients and class counsel should not be either." *Id.* at 178. It would be error to approve the settlement, class certification, and the fee award. The settling parties may reach an arms-length agreement that Google's total settlement liability will only be about $5.5 million. They may not structure that liability so that third parties, class counsel, and the named representatives collect the entirety of those proceeds.

## STATEMENT OF FACTS

Frank incorporates by reference the terms of the settlement as described in Plaintiffs' Motion for Preliminary Approval of Settlement. *See* D.I. 163 at 4-8. The Settlement Agreement ("Settlement") itself is Exhibit A to D.I. 163-1.

## ARGUMENT

**I.      Frank is a class member and intends to appear through counsel at the fairness hearing.**

Objector Theodore Harold Frank's business address is CEI, 1310 L Street NW, 7th Floor, Washington, DC 20005; his telephone number is 202-331-2263; his email address is ted.frank@cei.org. Declaration of Theodore H. Frank ¶ 2. Since his first iPhone purchase in December 2009, he has regularly used Apple's Safari internet browser to visit countless websites including wikia.com, a website referred to in the complaint as housing Doubleclick.net cookies. *Id.* at ¶ 3; *see also* Amended Complaint, D.I. 162 ¶ 126.  Frank is not any subject to any of the exclusions of Settlement § 2.5, and is therefore a member of the class as defined in the Preliminary Approval Order (D.I. 166) and Settlement §§ 2.3 and 2.5.

Frank is represented by Adam Schulman, an attorney with the non-profit Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"), and intends to appear through Schulman at the Fairness Hearing to discuss the points raised in this Objection and to address any responses that the settling parties may make. He requests fifteen minutes to reply to any responses

to his objection and answer any questions the Court may have; he does not plan to call any witnesses but reserves the right to cross-examine any witnesses who testify in support of the certification or settlement. Frank reserves the right to make use of all documents entered on to the docket. He joins by reference any substantive objections made by other class members not inconsistent with those made here.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner, J.) (observing CCAF demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) ("*Pampers*"); *Rougvie v. Ascena Retail Group, Inc.*, No. 15-cv-724, 2016 U.S. Dist. LEXIS 142404, at *11 (E.D. Pa. Oct. 14, 2016) (finding CCAF counsel "experienced" and its objections "among the strongest"). CCAF has won tens of millions of dollars for class members. *See, e.g., McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015).

## II.     The Court has a fiduciary duty to the absent members of the class.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Baby Prods.*, 708 F.3d at 175 (internal quotation omitted); *accord In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768,

785 (3d Cir. 1995) ("*GM Trucks*"). As such, the Court itself assumes a derivative "fiduciary"[1] role on behalf of absent class members to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *GM Trucks*, 55 F.3d at 785 (internal quotation omitted).

The Court's oversight role does not end at making sure that the settling parties engaged in arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Pampers*, 724 F.3d at 717-18 (quoting *GM Trucks*, *inter alia*).

Although it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient. See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (calling it "naïve" to base confidence in settlement fairness on arm's length negotiations). Due to the defendant's indifference as to the allocation of the settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted). Thus, "the ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court." *In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713 (E.D. Pa. 2014) (internal quotation omitted).

 "In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010). "The burden of proving the fairness of the settlement is on the proponents."

---

[1] *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

*Pampers*, 724 F.3d at 718; *accord GM Trucks*, 55 F.3d at 785. In this case, that burden is yet heightened because this settlement has been proposed before class certification. Delaying certification until settlement poses various problems, *see GM Trucks*, 55 F.3d at 786-800, and calls for heightened judicial scrutiny of the certification and the accompanying settlement. *Id.* at 805; *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) ("*Pet Food*").

In their memorandum in support of final approval ("MFA") (D.I. 167-1), the plaintiffs focus on the nine factors for settlement fairness described in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). MFA at 12-18. It cannot be overemphasized that—like the factor test of other circuits—the *Girsh* test is not exhaustive. "[B]ecause of a 'sea-change in the nature of class actions' since *Girsh* was decided in 1975, district courts should also consider other potentially relevant and appropriate factors." *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Non-*Girsh* factors can be dispositive. For example, in *Baby Products*, the Third Circuit reversed settlement approval even though there was no dispute that the district court correctly applied the *Girsh* factors. Nevertheless, the district court abused its discretion by approving a settlement without ensuring that direct benefit to class members had been prioritized. 708 F.3d at 174-75.

Class members must always remain the "foremost beneficiaries" of the settlement. *Id.* at 179. Settlements that transgress this principle by affording "preferential treatment" to class counsel, class representatives, or third-party charities at the expense of absent class members cannot stand. *See Pampers*, 724 F.3d at 718; *Pearson*, 772 F.3d at 781-84; *Baby Prods.*, 708 F.3d at 169-170; *In re Bluetooth Headset Prods Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

## III. The settlement improperly favors third-party charities over class members through its *cy pres* provision.

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *Pearson*, 772 F.3d at 784. A classic example of *cy pres* comes from a 19th-century case where a court repurposed a trust that had been created to

abolish slavery in the United States to instead provide charity to poor African-Americans. *Jackson v. Phillips*, 96 Mass. 539 (1867). Imported to the class action context, it has become an increasingly popular method of distributing settlement funds to non-class third parties—a "growing feature" that raises "fundamental concerns." *Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J., respecting the denial of certiorari).

*Cy pres* distributions do not compensate class members, despite the fact that the funds belong to them, and thus such distributions are disfavored by courts and remain an inferior avenue of last resort. *See e.g., In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015) ("*BankAmerica*") (many courts have "criticized and severely restricted" *cy pres*); *Pearson*, 772 F.3d at 784 ("A cy pres award is supposed to be limited to money that can't feasibly be awarded to…the class members"); *Klier v. Elf Atochem N. Am., Inc*., 658 F.3d 468, 475 (5th Cir. 2011) ("[The cy pres] option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly."); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Baby Prods*., 708 F.3d at 173 (cy pres affords "an indirect benefit that is at best attenuated and at wors[t] illusory"). "Cy pres distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a cy pres distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class." *Baby Prods*., 708 F.3d at 173. Commentators have observed these same defects. *See e.g.*, Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010); Theodore H. Frank, Statement before the House Judiciary Committee Subcommittee on the Constitution and Civil Justice, *Examination of Litigation Abuse* (Mar. 13, 2013), *available at* https://cei.org/sites/default/files/Testimony%20-%20Cy%20Pres.pdf.

*Ex ante cy pres* is defined as an award "that was designated as part of a settlement agreement…where: (1) an amount *and* at least one charity was named as a recipient of part of the fund from the outset and the charity's receipt of the award was not contingent on there being remaining/unclaimed funds in the settlement fund, or (2) the entire award was given to at least one

charity with no attempt to compensate the absent class members." Redish et al., 62 FLA. L. REV. at 657 n.171. The relief here is a clear example of (2). Settlement § 5.3 provides that the entire net settlement fund will be disbursed to non-class member charities, with no payments to the vast majority of class members who are not stakeholders in the proposed charities.[2]

As compared with *ex post cy pres*—third-party awards made only after class members fail to cash checks that are distributed—*ex ante cy pres* stands on even shakier footing. *See Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) (rejecting all-*cy pres* settlement); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 485-486 (E.D.N.Y. 2016) (same); *Zepeda v. Paypal*, No. C 10-2500 SBA, 2014 U.S. Dist LEXIS 24388, at *21 (N.D. Cal. Feb. 24, 2014) (same); *Fraley v. Facebook*, No. C 11-1726 RS, 2012 WL 5835366, 2012 U.S. Dist. LEXIS 116526, at *4-*7 (N.D. Cal. Aug. 17, 2012) ("*Fraley I*") (same); *Zimmerman v. Zwicker & Assocs., P.C.*, 2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) (same). "This form of *cy pres* stands on the weakest ground because *cy pres* is no longer a last-resort solution for a problem of claims administration. The concern for compensating victims is ignored (at least unless the indirect benefits of the *cy pres* award flow primarily to the victims)." Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 767, 770-71 (2013).

Preferring non-compensatory *cy pres* might be acceptable if the class were a free-floating entity, existing only to permit class counsel to operate as a private attorney general. But that is not how Rule 23 operates; Rule 23 is a complex joinder device that aggregates real individuals with real claims into a class if certain prerequisites are satisfied. *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (class action is a "species" of joinder). Thus, "[t]he plaintiff-class, as an entity, [is] not Lead Counsel's client in this case. Rather, Lead Counsel

---

[2] Although it is perhaps the case that some stakeholders of the *cy pres* recipients are class members, there is no legitimate reason to favor those recipients in an uncertified subclass over other class members. *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012).

continue[s] to have responsibilities to each individual member of the class even when negotiating." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985) (internal quotation omitted). Counsel's duty to their client works hand in glove with the proper role of the judiciary—namely, "provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, J., concurring) (internal quotation omitted). By proposing an *ex ante cy pres* settlement, the settling parties have lost sight of the very underpinnings of Article III.

### A.      The settlement resorts to *cy pres* prematurely.

*Cy pres* is improper when it is feasible to make distributions to class members, at least where there is no other compelling reason for preferring non-class members. This "last-resort rule" is a well-recognized principle of law. *See Pearson*, 772 F.3d at 784 (*cy pres* permissible "only if it's infeasible to provide that compensation to the victims"). § 3.07(a) of the *ALI Principles* succinctly states the limitation: "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members." The last-resort rule follows from the precept that "[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474  (citing *ALI Principles* §3.07 cmt. (b)).

The relevant question then is whether it would be practicable to distribute the available $8.5 million settlement fund to class members through a lottery or claims-made process. And the answer is yes. In *Fraley v. Facebook, Inc.*, the class of Facebook users numbered over one hundred million, and the parties initially proposed a *cy pres*-only settlement to the court alleging that class distributions "[are] simply not practicable in this case, given the size of the class." *Fraley I.*, 2012 U.S. Dist. LEXIS 116526, at *6. Judge Seeborg refused to accept the proposal because "[m]erely pointing to the infeasibility of dividing up the agreed-to $10 million recovery…is insufficient…to justify resort to purely cy pres payments." 2012 U.S. Dist. LEXIS 116526, at *5. After the court

denied approval, the agreement was then restructured as a claims-made settlement disbursing cash directly to class members. 966 F. Supp. 2d. 939 (N.D. Cal. 2013) ("*Fraley II*"). Claimants under the amended agreement were so few in fact that the court would have been able to double the baseline $10 awards and did actually augment the awards by 50%. *Id*. at 944.

Similarly, in *Zepeda v. Paypal*, after Judge Armstrong rejected a proposed *cy pres*-only settlement as unfair, the settling parties returned to the court with an approvable common fund structure that distributed no less than $1.8 million directly to class members. *Compare Zepeda*, 2014 U.S. Dist LEXIS 24388, at *21 (N.D. Cal. Feb. 24, 2014), *with Zepeda*, 2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015) (granting preliminary approval of amended settlement). Frank's declaration documents myriad settlements that demonstrate the feasibility of a claims process with $5.5 million available and millions of class members. Frank Decl. ¶19.

Because the percentage class members that will submit claims in these types of settlements is invariably low, a claims-made settlement would not be impracticable. Recently, a well-respected settlement administration company conducted a wide-ranging survey that concluded "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." *Poertner v. The Gillette Co*., No. 6:12-v-00803-GAP-DAB, Declaration of Deborah McComb re Settlement Claims (D.I. 156) ¶5. Recent data points reveal that this is true in low-stakes internet consumer settlements with or without direct notice. *In re Carrier iQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235, at *28 (N.D. Cal. Aug. 25, 2016) (0.14% claims rate with direct notice component); *In re Livingsocial Mktg. and Sales Practices Litig*., 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate with direct email notice); *Lagarde v. Support.com, Inc*., No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) (0.18% of class claiming $10). *Fraley* is the best proof; even where a class numbers over one-hundred million, a claims-made device is feasible.

Notably, class counsel does not contest the premise that class distributions would be feasible. Rather, class counsel merely suggests that a *cy pres* distribution "is the most efficient and best use of the settlement proceeds." Declaration of Brian R. Strange (D.I. 163-1) at ¶9; *accord*

Declaration of James P. Frickleton (D.I. 163-3) at ¶5. But the nature of representational litigation under Rule 23 and the Due Process Clause of the Constitution necessitates prioritizing class relief even in situations where it is not the "most efficient" or "best" use of settlement funds. It would always be more efficient to distribute settlement proceeds to a select group of charities for then the settling parties can eliminate the bulk of the administrative overhead costs. Maximizing efficiency cannot be the "sufficient justification" for a *cy pres* heavy settlement required by *Baby Products*. In their final approval memorandum, plaintiffs assert that a class distribution would "likely cost more than it's worth." MFA 19. Frank's declaration demonstrates that that need not be the case. But even if it was, just last year, the Eighth Circuit held that a finding that class distributions would be "costly and difficult" is insufficient to justify *cy pres* where class distributions ultimately remain feasible. *BankAmerica*, 775 F.3d at 1065.

Nor does Rule 23 allow counsel the discretion to deem class distributions anything other than the "best" use of settlement funds. *Id.* ("flatly reject[ing]" the idea that *cy pres* recipients could ever be more "worthy" than class members). That would "endorse[] judicially impermissible misappropriation of monies gathered to settle complex disputes among private parties" and is a reason that class action *cy pres* is "inherently dubious." *Id* (internal quotation omitted). By definition, *cy pres* can never surpass what is "next best"; "[c]ertainly, this law suit is not charitable." *Pet Food*, 629 F.3d at 363 (Weis, J., concurring and dissenting). The fact that Google has previously paid $22.5 million and $17 million respectively to the FTC and various state attorneys general offers no support for the propriety of *cy pres* here. These civil penalties were paid to governmental entities in settlement of enforcement actions; "[t]he private causes of action aggregated in this class action—as in many others—were created by Congress to allow plaintiffs to recover compensatory damages for their injuries." *Baby Prods.*, 708 F.3d at 173. Class attorneys should not behave as a clientless private attorney general in any case, let alone where actually public attorneys general are already involved.

Even if it were not possible to distribute $5.5 million through a claims-made process, there is no legitimate reason why the parties should not randomly sample the class and/or accept claims

submission, and then make payouts on a lottery basis. *See* Shay Levie, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 GEO. WASH. L. REV. 1065 (2011). Which alternate method the parties elect is not crucial; what matters is that non-compensatory *cy pres* remains the last resort. As discussed thoroughly in *Baby Products*, for individual class members, direct payment matters. "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." 708 F.3d at 178; *id.* at 178-79 (counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class" and fees should reflect that fact). "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Id*. at 174. If *cy pres* is an excessive share of the total relative to direct class recovery, a district court should "urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards." *Id.*

Where there is a will, there is a way. When courts demand more of settling parties on behalf of class members, they get more. For example, after *Baby Products* rejected a settlement that would pay class counsel $14 million, charities $18 million and class members under $3 million, class counsel on remand, appropriately incentivized to avoid a fee reduction, restructured the settlement to eliminate superfluous *cy pres* in favor of direct class distributions. This constituted a class improvement of nearly $15 million. *McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626 (E.D. Pa. 2015).

But here class counsel did not negotiate for using the fund to compensate class members, either on a claims-made, lottery, or some combination thereof basis. Rather, in dereliction of their fiduciary obligations, class counsel proposes to give that money away to non-class entities. The bare legitimacy of *cy pres* in the class action context is controvertible with good reason. *See, e.g., Pet Food*, 629 F.3d at 358 (Weis, J., concurring and dissenting). While *cy pres* has been given a narrow berth in the Third Circuit, settled law requires that this application of *cy pres* be rejected.

The settling parties may respond by pointing to the class's supposed injunctive benefit from Google's "assurance of remediation." Settlement § 5.1. This "relief" is illusion; as plaintiffs

acknowledge, the "remedial actions agreed to by Google [under the FTC settlement] 'sufficiently protect consumers from ongoing harm without exposing them to additional risks.'" Motion in Support of Preliminary Approval (D.I. 163) at 18 (quoting *United States v. Google Inc.*, No. 3:12-cv-04177-SI, 2012 WL 5833994, at *5 (N.D. Cal. Nov. 16, 2012)); *see also* Declaration of Adam E. Schulman Exs. E-F. Likewise, Google's settlement with the state AGs enjoins Google from circumventing Safari users' browser settings. Schulman Decl. Ex. G. Settlement relief that duplicates the preexisting status quo ante is not valuable consideration for the waiver of class members' claims. *Pampers*, 724 F.3d at 719; *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (It is "the *incremental* benefits" that matter, "not the total benefits." (emphasis in original)). "Allowing private counsel to receive fees based on the benefits created by public agencies would undermine the equitable principles which underlie the concept of the common fund…" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 337 (3d Cir. 1998) (internal quotation omitted). Any reliance of these duplicative "assurances" to justify the settlement and fee award would only demonstrate why the Third Circuit has said "non-cash relief…is recognized as a prime indicator of suspect settlements." *GM Trucks*, 55 F.3d at 803.

## IV. The Court must consider the pre-existing relationships between the *cy pres* recipients, class counsel and the defendant.

"A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* §3.07 cmt. (b). "[A] growing number of scholars and courts have observed, the cy pres doctrine…poses many nascent dangers to the fairness of the distribution process." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (citing authorities).

For example, a defendant could steer distributions to a favored charity with which it already does business, or use the *cy pres* distribution to achieve business ends. *Dennis*, 697 F.3d at 867-68

(ruminating on these issues); *SEC v. Bear, Stearns & Co. Inc.,* 626 F. Supp. 2d 402, 415 (S.D.N.Y. 2009); Roger Parloff, *Google and Facebook's new tactic in the tech wars*, FORTUNE (Jul. 30, 2012) (noting criticism of *Google Buzz* settlement that steered *cy pres* to organizations that are currently paid by Google to lobby for or to consult for the company). In one infamous example, Microsoft sought to donate numerous licenses for Windows software to schools as part of an antitrust class action settlement, essentially using the *cy pres* as a marketing tool that would have frozen out its competitors. *In re Microsoft Corp. Antitrust Litig.*, 185 F. Supp. 2d 519 (D. Md. 2002).

Conversely, if the *cy pres* recipient is related to plaintiffs' counsel, class counsel would be double-compensated: the attorney indirectly benefits both from the *cy pres* distribution, and then makes a claim for attorneys' fees based upon the size of the *cy pres*. *Bear, Stearns,* 626 F. Supp. 2d at 415; Redish, 62 FLA. L. REV. at 661 (*cy pres* awards "can also increase the likelihood and absolute amount of attorneys' fees awarded without directly, or even indirectly, benefitting the plaintiff"); Adam Liptak, *Doling Out Other People's Money*, N.Y. TIMES (Nov. 26, 2007).

Here, the parties have proposed the Berkeley Center for Law & Technology; Berkman Center for Internet and Society at Harvard University; Center for Democracy and Technology; Public Counsel; Privacy Rights Clearinghouse and Stanford Center for Internet and Society as the *cy pres* recipients. D.I. 163 at 6. Where, as here, lead class counsel sits on the board of a *cy pres* recipient, there is the unacceptable appearance of divided loyalties of class counsel. And where defendant is already an established donor to several of the *cy pres* recipients, the value of the settlement will be less beneficial to the class than it would appear.

### A.    *Cy pres* beneficiaries should not have a pre-existing relationship with class counsel.

"The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) (internal quotation omitted). "Cy pres distributions present a particular danger" that "incentives favoring pursuit of self-interest

rather than the class's interests in fact influenced the outcome of negotiations." *Dennis*, 858 F.3d at 867. Yet undisclosed to the class is the fact that co-lead counsel Brian Strange sits as chairperson on the board of Public Counsel, one of the designated *cy pres* recipients. *See* Ex. H to Schulman Decl. Such a recipient is not independent and free from conflict. One forthcoming law review article classifies "the ugliest *cy pres* settlements" as "those that direct funds to organizations with which class counsel or the judge is affiliated." Howard Erichson, *Aggregation as Disempowerment: Red Flags in Class Action Settlements*, 92 NOTRE DAME L. REV. --, -- (forthcoming 2017), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2761912; *see also Nachshin*, 663 F.3d at 1039 (criticizing *cy pres* where "the selection process may answer to the whims and self interests of the parties [or] their counsel").

"Courts are wary of distributing cy pres funds to organizations that have a close relationship with class counsel given the appearance of a conflict of interest." *Weeks v. Kellogg Co.*, No. CV-09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *69 n.102 (C.D. Cal. Nov. 23, 2011); *see also Schwartz v. Dallas Cowboys Football Club, Ltd.,* 362 F. Supp. 2d 574, 577 n.2 (E.D. Pa. 2005) (noting appearance of impropriety in selecting beneficiary with long established ties to the Eastern District bench); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. LEXIS 77739, at *14-*15 (E.D. Pa. Oct. 3, 2008) (rebuffing proposed *cy pres* awards to institutions with preexisting relationships to class counsel).

Compounding the conflict itself is the failure to disclose it anywhere to the class or the Court. *In re Southwest Airlines Drink Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015). This objection may have only scratched the surface; who knows what conflicts lurk deeper? Before the Court approves any *cy pres*, it should require the parties to certify that the beneficiaries have no ties to the parties or the lawyers. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2005 U.S. Dist. LEXIS 11332, at *4 (D. Me. Jun. 10, 2005). This Court should not approve any settlement afflicted by such a conflict of interest; it weighs heavily against a finding that counsel is adequately representing the class under 23(g)(4). *See infra* § V.B.

### B.    Pre-existing relationships between the defendant and the *cy pres* recipients undermine the theoretical value of the settlement.

As the Ninth Circuit has warned, "[t]he issue of the valuation of [the *cy pres*] aspect of a settlement must be examined with great care to eliminate the possibility that it serves only the "self-interests" of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis*, 697 F.3d at 868. Google is already a donor to Berkman Center for Internet and Society at Harvard University; Stanford Center for Internet and Society; Berkeley Center for Law and Technology; and Center for Democracy and Technology. *See* Schulman Decl. Exs. A-D. In some years for example, the majority of the Stanford Center's funding has come from Google. Roger Parloff, *Google and Facebook's new tactic in the tech wars*, FORTUNE (Jul. 30, 2012).

Google routinely settles class action cases with *cy pres* donations to these entities. *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015), *appeal pending* No. 15-15858 (9th Cir.); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *3 (N.D. Cal. Jun. 2, 2011). Google sponsors summer fellowships at Center for Democracy and Technology. Schulman Decl. Ex. D.

When the defendant is already a regular contributor to the proposed *cy pres* recipients, there is no demonstrable value added by the defendant's agreement to give money to that institution. *See Dennis*, 697 F.3d at 867-68. Google is agreeing to do something that it was in all likelihood going to do anyway; the settlement does not even attempt to overcome the fungibility problem of Google satisfying its settlement obligation with money that was already destined for the recipients. Such an agreement is of no incremental value to the class. *See Reynolds*, 288 F.3d at 286; *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) (rejecting *cy pres* that provided not additional benefit to class members beyond the status quo). This Court should require additional disclosures from Google, as they may have preexisting relationships with the other two *cy pres*

recipients that are not readily publicly available. [3]

## V.    In the alternative, if settlement distributions to individual class members are impracticable, then the putative class cannot be certified.

### A.    Representatives who propose a zero recovery settlement are not adequately representing the class.

Rule 23(a)(4) conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." 23(g)(4) imparts an equivalent duty on class counsel, especially weighty "when the class members are consumers." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Together these provisions demand that the representatives manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). Class counsel must "prosecute the case in the interest of the class … rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts"[4] and the named representatives may not "leverage" "the class device" for their own benefit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006).

As a bedrock principle, the specifications of (a)(4) "demand undiluted, even heightened,

---

[3] A few years ago, a controversial Ninth Circuit decision affirmed a *cy pres* distribution over an objector's challenge to the fact that the beneficiary was closely affiliated with the defendant. *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), *rehearing en banc den'd*, 709 F.3d 791 (2013), *cert den'd sub nom*, *Marek v. Lane* 134 S. Ct. 8 (2013). In that case, the objectors argued that there was a per se conflict of interest when the defendant had a pre-existing relationship with a *cy pres* recipient. The rationale by which the Lane court sanctioned the cy pres award—that the terms of the settlement are "the offspring of compromise" that "necessarily reflect the interest of both parties"—has no application to this objection, where the assertion is that the duplicative *cy pres* simply is not worth the release of individual class members' claims, nor commensurate with the attorneys' fees request. 696 F.3d at 821. *Lane* also has no application to a distribution that unjustifiably favors non-party class counsel. *See supra* § IV.A. Settlement concessions should reflect the interest of "both parties"—the class members themselves and the defendant—but not the interest of class counsel.

[4] *Creative Montessori*, 662 F.3d at 917.

16

attention in the settlement context." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997). Here, the *cy pres*-only settlement combined with a sizable clear-sailing attorneys' fee, a sizable incentive award and a donation to a charity directed by class counsel, combine to indicate inadequate representation. *See, e.g., Pampers*, 724 F.3d at 721; *Gallego v. Northland Group*, 814 F.3d 123, 129-30 (2d Cir. 2016); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011); *GM Trucks*, 55 F.3d at 801-803. "No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014). "The type of class action illustrated by this case—the class action that yields fees for class counsel and nothing for the class—is no better than a racket. It must end. No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016). Class members would be unequivocally better off opting out; yet their fiduciaries intend to bind them to a general release in exchange for no meaningful relief.

Plaintiffs fail to demonstrate that the class representation satisfies either (a)(4) or (g)(4).[5]

## VI.    If the Court approves the certification and settlement, it should decline to grant the $2.5 million attorneys' award requested.

For several reasons, the settlement is substantively unfair (*see supra* §§ III-IV), and possibly premised on an untenable class certification (*see supra* § V). Nevertheless, if this Court disagrees with each of those propositions, it should still deem unreasonable the $2.5 million fee requested by plaintiffs. *See* Motion for Approval of Fees and Costs ("Fee Motion") (D.I. 168).

As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings, especially fee awards. *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough

---

[5] Customarily, opt-out classes are certified under (b)(3) rather than (b)(2). The settling parties here attempt to avoid the "superiority" requirement of (b)(3), but they cannot avoid the adequacy requirements of (a)(4) and (g)(4).

judicial review of fee applications . . . in all class action settlements"). Judicial involvement is singularly important since it is to be expected that class members with small individual stakes in the outcome will not file objections. *Id.* at 812.

### A.      An attorney request of 45% of the gross settlement is excessive.

There are two basic flaws with the substance of class counsel's fee request: 1) 45% exceeds the bounds of a reasonable percentage award in any case; 2) as a matter of law, class members are simply "not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178.

First, to minimize the likelihood of unreasonable fee awards, this Circuit recognizes that the percentage-of-recovery ("PoR") fee methodology is the generally superior method to use. *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) (citing *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237, 256 (1985)); *GM Trucks*, 55 F.3d at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant."); *Baby Prods.*, 708 F.3d at 180 n.14 (lodestar considerations are not "outcome determinative" even where ultimate award is only 37% of lodestar). In the ordinary common fund case, a proportionate attorney award adheres to the 25% of the fund benchmark established in the Ninth Circuit and followed by courts of this Circuit.[6] Class counsel seek nearly $2.5 million of the $5.5 million gross settlement (i.e. 45%). This exceeds the 38.9% that the Ninth Circuit calls "clearly excessive." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *see also Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 n.29 (E.D.N.Y. 2007) (declaring that 43% of the

---

[6] *See e.g., Bluetooth*, 654 F.3d at 942; *Pet Food*, 629 F.3d at 361 (Weis, J., concurring and dissenting) (25% benchmark is "a beginning point for determining whether a particular fee is reasonable" although "[t]oo often that is the end of the discussion"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002) (Robinson, C.J.); *Erie County Retirees Ass'n. v. County of Erie,* 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) ("the 25% benchmark is often appropriate … to prevent a windfall to counsel."); *Seidman v. Am. Mobile Sys.,* 965 F. Supp. 612, 622 (E.D. Pa. 1997); *Lachance v. Harrington*, 965 F. Supp. 630, 648 (E.D. Pa. 1997).

common fund as a fee "would clearly be excessive"); *Coulter-Owens v. Rodale, Inc*., 2016 U.S. Dist. LEXIS 134243, at \*13 (E.D. Mich. Sept. 29, 2016) (40% negotiated fee is "eyebrow-raising"; awarding 25% of the common fund); *see generally* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 833 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a median of 25.4% for the award of attorneys' fees "with almost no awards more than 35 percent").

In contrast to the weight of authority, class counsel rely on a handful of cases more than a decade old. *See* Memorandum in Support of Motion for Fees (D.I. 168-1) at 13. None of these cases distributed their funds via *ex ante cy pres*. Plaintiffs' citation to *Wise v. Popoff* is particularly misleading because there the court awarded only 45% of the amounts actually claimed by class members, refusing to consider amounts that were made available but were not actually distributed to class members. 835 F. Supp. 977, 982 (E.D. Mich. 1993). Under *Wise*'s methodology class counsel is entitled to $0 here because class members will recover no money.

But even 25% of the settlement here would be far excessive because "class counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *Baby Prods.*, 708 F.3d at 178. Thus, it is "appropriate for the court to decrease the award." *Id*. at 178; *accord* Rhonda Wasserman, *Cy Pres in Class Action Settlements*, 88 U.S.C. L. REV. 97, 135-46 (2014) (advocating for "presumptive reduction of attorneys' fees" where settlement includes significant *cy pres* component). Although obligating Google to donate to third parties may impose a cost on Google (to the extent those donations are not merely a change in accounting entries), that compensable value "is not how much money a company spends on purported benefits, but the value of those benefits to the class." *Bluetooth*, 654 F.3d at 944 (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

A dollar that goes to *cy pres* is less valuable than a dollar that goes directly to a class member. District courts awarding fees often recognize this reality. *E.g., In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (discounting *cy pres* by 50% for purposes of awarding fees); *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 19, 22 (D.D.C.

2013) (cutting fees to 18% in consideration of "proportion of the award that is going to *cy pres*."); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *111 (C.D. Cal. Nov. 23, 2011) (reducing to 16.2%); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 123 n.9 (E.D. Pa. 2005) (excluding *cy pres* and non-economic injunctive relief benefits entirely).

The percentage of recovery approach is the prevailing Third Circuit fee methodology because it aligns the interests of counsel and its client class much better than does the competing lodestar method. If this Court endorses a rule that makes class counsel financially indifferent between a settlement that awards cash directly to class members and a *cy pres*-only settlement, the parties will always agree to the *cy pres* arrangement and unnamed class members will be permanently left out in the cold. Defendants will prefer to make payments to third parties to whom they are already donating money rather than payments to absent class members. Donations may engender corporate good will, and often merely replace or supplement donations that are already in the pipeline: in the latter case, the "relief" merely reflects a shift in accounting entries. Coupled with the class counsel's financial indifference, the defendant's preference *for* charitable donations means that the easy way of reaching settlement will be agreeing to *cy pres*-only settlements.[7]

Put simply, "courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees." *Baby Prods.*, 708 F.3d at 170. If the court it inclined to approve the settlement and certification, to comply with Rule 23(h), it should reduce the fee award to no more than 10% of the $5.5 million *cy pres* fund.

---

[7] Class counsel will themselves often prefer a feel-good ceremony with an oversized check and prominent members of the community to anonymous small-dollar payments to relatively ungrateful involuntary clients. *See, e.g.,* Stanford Center for Internet and Society, *About Us,* http://cyberlaw.stanford.edu/about-us (thanking several plaintiffs' law firms for their *cy pres* without any acknowledgment to class members who waived rights to create those *cy pres* funds); Public Counsel, *About Us,* http://www.publiccounsel.org/about_us?id=0006 (thanking Strange & Carpenter for its designation as a *cy pres* beneficiary) (last visited Dec. 11, 2016).

## CONCLUSION

If given another chance, Class Counsel may well be able to reach a better settlement. *See McDonough*, 80 F. Supp. 3d 626 ($15 million more for class than settlement rejected in *Baby Products*). But, in light of the lack of adequate representation to date, and the fact that rival class counsel appeared poised to fill the void (*See* D.I. 44), the superior course of action is to refuse to certify the class under the current leadership and to appoint new counsel.

Dated: December 20, 2016          Respectfully submitted,

                                 */s/ Adam E. Schulman*
                                 Adam E. Schulman (DC Bar # 1001606)
                                 COMPETITIVE ENTERPRISE INSTITUTE
                                 CENTER FOR CLASS ACTION FAIRNESS
                                 1310 L Street, NW, 7th Floor
                                 Washington, DC 20005
                                 Tel: 610-457-0856
                                 adam.schulman@cei.org

                                 *Attorney for Objectors Theodore H. Frank*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case. Additionally, in accordance with the Preliminary Approval Order, I caused to be served true and correct copies upon the following attorneys via U.S. mail at the addresses below:

| | |
|---|---|
| SILVERMAN THOMPSON SLUTKIN WHITE<br>Stephen G. Grygiel<br>201 N. Charles Street, 26th Floor<br>Baltimore, MD 21201 | STRANGE & BUTLER LLP<br>Brian Russell Strange<br>12100 Wilshire Blvd., Suite 1900<br>Los Angeles, CA 90025 |
| BARTIMUS, FRICKLETON,<br>and ROBERTSON, P.C.<br>James P. Frickleton<br>11150 Overbrook Road, Suite 200<br>Leawood, KS 66211 | WILSON SONSINI GOODRICH & ROSATI<br>Michael H. Rubin<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105 |
| WILSON SONSINI GOODRICH & ROSATI<br>Anthony J. Weibell<br>650 Page Mill Road<br>Palo Alto, CA 94304-1052 | |

DATED: December 20, 2016

*(s) Adam Schulman*
Adam Schulman