**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

**THEODORE H. FRANK'S DECLARATION IN SUPPORT OF OBJECTION**

COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Adam E. Schulman (DC Bar # 1001606)
1310 L Street, NW, 7th Floor
Washington, DC 20005
Tel: 610-457-0856
adam.schulman@cei.org

*Attorney for Objector Theodore H. Frank*

I, Theodore H. Frank, declare as follows:

1.  I have personal knowledge of the facts set forth herein and, if called as witness, could and would testify competently thereto.

### Class Membership

2.  My full name is Theodore Harold Frank. My business address is Competitive Enterprise Institute, 1310 L Street NW, 7th Floor, Washington, DC 20005. My telephone number is (202) 331-2263. My email address is ted.frank@cei.org. I am a United States resident, currently domiciled in Washington, D.C.

3.  I purchased my first iPhone in December 2009, and have used iPhones continuously since then. The vast majority of my Internet browsing on my iPhone is through Apple's Safari internet browser, which I have used to visit countless websites. On information and belief, I did not change the Safari default settings to permit more cookies than the default settings did. Using my Safari browser during the class period, I have visited the wikia.com domain (and in particular, the Memory Alpha, Wookieepedia, and Game of Thrones Wikia websites hosted on wikia.com), a website referred to in the complaint as housing Doubleclick.net cookies placed by the means alleged in the complaint. Using my Safari browser during the class period, I have visited the bleacherreport.com domain, a website referred to in the Wall Street Journal's article as displaying ads using the allegedly illicit tracking code. *Comments From Companies Where Ads With Tracking Code Were Displayed*, WALL ST. J. (Feb. 16, 2012). I have also visited pages in the wsj.com, youtube.com, webmd.com, nytimes.com, and urbandictionary.com domains using Safari on my iPhone, which the Wall Street Journal also identified as using the allegedly illicit tracking code. Julia Angwin and Jennifer Valentino-Devries, *Google's iPhone Tracking*, WALL ST. J. (Feb. 17, 2012).

4.  I am not an officer or director of Google, a judge to whom the actions are assigned, nor a family member of such a judge. I have not settled individual claims substantially similar to those alleged in the litigation, nor have I submitted a request for exclusion in this case.

5.     I am thus a member of the proposed settlement class with standing to object. *See* Fed. R. Civ. P. 23(e)(5).

### The Center for Class Action Fairness

6.     I founded the non-profit Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public-interest law firm based out of Washington D.C., in 2009. In 2015, CCAF merged into the 501(c)(3) non-profit Competitive Enterprise Institute ("CEI") in Washington, D.C.

7.     I am represented in bringing this objection by CCAF attorneys Adam Schulman, Anna St. John, Melissa Holyoak, and Frank Bednarz. They are representing me *pro bono* under my direction as part of their employment with CEI. All of our employment contracts were signed before the settlement agreement in this case was executed.

8.     CCAF litigates on behalf of class members against unfair class-action procedures and settlements. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner J.) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification).

9.     CCAF has been successful, winning reversal in thirteen federal appeals decided to date, including two of two in this Circuit. *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th

Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Several of these appeals centered around misuse of *cy pres*. *See BankAmerica*; *Pearson*; *Baby Products*; and *Nachshin*.

10. CCAF has won tens of millions of dollars for class members by driving the settling parties to reach an improved bargain. *See, e.g., McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); Gina Passarella, *Third Circuit Vacates $18.5 Mil. Cy Pres Award in Baby Products Class Action*, L. INTELLIGENCER (Feb. 20, 2013); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million); Allison Frankel, *Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal*, AMERICAN LAWYER LIT. DAILY, November 30, 2010 (discussing case).

11. Because settlement proponents often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are styled "professional objectors." A "professional objector" is a specific term referring to for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. This is not CCAF's *modus operandi*. CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; it has never withdrawn an objection in exchange for payment to CCAF. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. Indeed, tax law would not permit any employees of CEI to personally profit from this objection.

12. I bring this objection in good faith to prevent approval of an unfair settlement and ratification of an improper class certification. To demonstrate such good faith, I would gladly stipulate to an injunction prohibiting myself from accepting compensation in exchange for the settlement of my objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND.

L. REV. 1623 (2009) (suggesting inalienability of objections as best means of eliminating bad-faith objectors without discouraging good-faith ones).

13. CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member involves the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

14. While I am often accused of being an "ideological objector," the ideology of the Center's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, and I have never asked for an end to the class action, just proposed reforms for ending the *abuse* of class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my *certiorari* petition filed in 2015 in *Frank v. Poertner*. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

15. Google has previously donated to CEI, before CCAF merged with CEI last year. No one from Google or any organization affiliated with Google consulted with anyone from CEI on this objection.

**Factual Basis for My Objection**

16. The specific grounds of my objection are identified in my contemporaneously-filed Objection.

17. I am aware that the plaintiffs have argued that "based on the size of the Class in this case, which is estimated to be millions of individuals…distribution of the settlement fund to…*cy pres* recipients…is the most efficient and best use of the settlement proceeds." Motion in Support of Preliminary Approval, D.I. 163 at 6; *see also* Declaration of Brian R. Strange (D.I. 163-1) at ¶9; Declaration of James P. Frickleton, D.I. 163-3 at ¶5.

18. In my experience reviewing class-action settlements at CCAF, I have learned that it is economically feasible to distribute $5.5 million to multi-million member classes. I represented myself and another class member in objecting to the second settlement and fee request in *Fraley v. Facebook Inc.*, No. 11-cv-01726 RS (N.D. Cal.), a privacy class action brought on behalf of some 150 million Facebook users. There, class counsel orginially proposed to distribute $10 million to *cy pres* beneficiaries in lieu of any payments to class members on the theory that the class was simply to large to get direct benefit to class members. However, after Judge Seeborg rejected that proposed agreement (*see Fraley v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)), the settling parties returned with a second settlement proposal that would permit class members to make claims against the settlement fund for $10 each. Ultimately, class members submitted only 614,000 claims (a claims rate of 0.4%), thus undersubscribing the fund and allowing the Court room to augment claim values upwards to $15. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) Despite including a direct notice component, adminsitrative costs in *Fraley* only amounted to $900,000. *Fraley*, No. 11-cv-01726, Dkt. 336 at 3. Fraley demonstrates that administrative costs of a class claims process need not cannibalize the $5.5 million fund of this settlement.

19. I am also aware of the cases listed in the following chart, each of which supports the feasibility of actual class member payments in this case. In the chart, "Gross Cash Settlement

Amount" includes payments to class members, fees and expenses to class counsel, and notice and administration costs payments to the administrator.

| Case Name | Size of Class | Gross Cash Settlement Amount | Administrative Costs |
|---|---|---|---|
| *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016) | ~30 million | $9 million | $655,500 |
| *In re LivingSocial Marketing and Sales Practices Litig.* No. 11-mc-00472, 298 F.R.D. 1 (D.D.C. 2013) | ~10.9 million | $7.58 million | ~$130,000 See Dkt. 40. (included direct notice) |
| *Zepeda v. PayPal*, No. 10-cv-02500 (N.D. Cal.), *terms of settlement available at* https://www.accountholdsettlement.com/ | ~10.5 million | $4 million | Capped at $400,000 (included direct notice) |
| *Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) | ~5 million | $5.3 million | Class counsel represented administration costs as $170,000. Settlement established administration fund of $300,000 |
| *Sabol v. Hydroxatone, LLC*, No. 2:11-cv-04586, 2013 U.S. Dist. LEXIS 166520 (D.N.J. Nov. 22, 2013) | ~2.5 million | $3 million | Unknown (included direct notice) |
| *Frohberg v. Cumberland Packing Corp.*, No. 14-cv-00748 (E.D.N.Y.), *terms available at* http://web.archive.org/web/20160528175123/https://www.steviaintherawsettlement.com/ | ~ 2 million | Up to $1.5 million | Capped at $210,000 |
| *Lijana Shestopal v. Follett Higher Education Group Inc.*, Case No. 15-cv-8980 (N.D. Ill), *terms available at* www.follettcpasettlement.com | ~1.9 million | $3.5 million | Capped at $499,000 (included direct notice) |
| *Aguiar v. Merisant Co.,* 14-cv-00670 (C.D. Cal.), *terms available at* http://web.archive.org/web/20160329153716/https://www.pureviasweetenersettlement.com/ | ~1.2-2.4 million | $1.65 million | Unknown (included direct notice to part of class) |

| Case Name | Size of Class | Gross Cash Settlement Amount | Administrative Costs |
|---|---|---|---|
| *Bezdek v. Vibram USA, Inc*, No. 12-cv-10513 (D. Mass.), *terms available at* http://web.archive.org/web/20160503083715/https://www.fivefingerssettlement.com/ | Unknown, millions of products sold during class period | $3.75 million | Unknown, (included direct notice to ~300,000 class members) |
| *Stephenson v. Neutrogena Corp.*, No. C 12-00426 PJH (N.D. Cal.) | Unknown | $1.8 million | Capped at $500,000 |
| *In re LinkedIn User Privacy Litig.*, No. 12-cv-03088, 309 F.R.D. 573 (N.D. Cal.), *terms available at* http://web.archive.org/web/20150801221322/https://www.linkedinclassactionsettlement.com/Home.aspx | ~800,000 | $1.25 million | $140,000 (included direct notice) |
| *Lagarde v. Support.com, Inc*., No. 12-cv-0609, 2013 U.S. Dist. LEXIS 42725 (N.D. Cal. Mar. 25, 2013) | ~759,000 | $8.595 million | Capped at $100,000 (included direct notice) |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2016, in Washington, DC.

                                                       Theodore H. Frank

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case. Additionally, in accordance with the Preliminary Approval Order, I caused to be served true and correct copies upon the following attorneys via U.S. mail at the addresses below:

| | |
|---|---|
| SILVERMAN THOMPSON SLUTKIN WHITE<br>Stephen G. Grygiel<br>201 N. Charles Street, 26th Floor<br>Baltimore, MD 21201 | STRANGE & BUTLER LLP<br>Brian Russell Strange<br>12100 Wilshire Blvd., Suite 1900<br>Los Angeles, CA 90025 |
| BARTIMUS, FRICKLETON, and ROBERTSON, P.C.<br>James P. Frickleton<br>11150 Overbrook Road, Suite 200<br>Leawood, KS 66211 | WILSON SONSINI GOODRICH & ROSATI<br>Michael H. Rubin<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105 |
| WILSON SONSINI GOODRICH & ROSATI<br>Anthony J. Weibell<br>650 Page Mill Road<br>Palo Alto, CA 94304-1052 | |

DATED: December 20, 2016

*(s) Adam Schulman*
Adam Schulman