### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

### CLASS PLAINTIFFS' RESPONSE TO OBJECTION OF THEODORE H. FRANK TO SETTLEMENT APPROVAL, CLASS CERTIFICATION, AND REQUEST FOR <u>ATTORNEYS' FEES</u>

**SILVERMAN THOMPSON SLUTKIN WHITE**
Stephen G. Grygiel (DE Bar ID 4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@mdattorney.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**
James P. Frickleton
Mary D. Winter
Edward D. Robertson, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*


**STRANGE & BUTLER LLP**
Brian Russell Strange
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*bstrange@strangeandbutler.com*

*Executive Committee Member*

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ARGUMENT .......................................................................................................................3

    I.     THE OBJECTION IS WITHOUT MERIT ...............................................................3

        A.  The Settlement Is Entitled To A Presumption Of Fairness................................3

        B.  The Settlement's *Cy Pres* Contributions Benefit Class Members And The
            Objections Regarding The *Cy Pres* Plan Are Baseless ........................................4

            1. *Cy Pres* settlements benefit Class Members .................................................5

            2. *Cy Pres* allocation is proper where direct distributions are
               administratively impractical or economically irrational .............................5

            3. The Settlement properly employs *ex ante cy pres* allocation .....................7

               i.    *Direct distribution is logistically and economically infeasible* .......7

               ii.   *Lottery and claims made distributions are equally inapplicable
                    to this case*........................................................................................8

            4. Numerous courts have rejected Objector Frank's boilerplate serial
               objections ....................................................................................................10

            5. No conflict of interest undermines the selected *cy pres* recipients...........11

               i.    *No disqualifying relationships undermine the proposed* cy pres
                   *recipients*........................................................................................11

                ii.   *Google's previous* cy pres *payments create no conflict and do not
                    diminish the Settlement's value*......................................................14

        C.  The Putative Class Can And Should Be Certified...............................................15

        D.  The Requested Attorneys' Fees And Expenses Are Reasonable.....................15

    II.    OBJECTOR FRANK HAS IMPROPER MOTIVES ...................................................17

   III.    OBJECTOR FRANK HAS NOT ESTABLISHED STANDING TO OBJECT ........19

CONCLUSION ......................................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*Blessing v. Sirius XM Radio Inc.*,
    507 F. App'x 1 (2d Cir. 2012) ............................................... 18

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)............................................................ 17

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
    No. 07-cv-10329, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013)............................ 18

*Fraley v. Facebook, Inc.*,
    No. 11-1726 RS, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ...................... 6, 9

*Fraley v. Facebook, Inc.*,
    No. 11-1726 RS, 2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) ......................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................ 4, 9

*Haught v. Summit Resources, LLC*,
    No. 1:15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 4, 2016)....................... 3, 16

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)................................................ 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................... 4

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ............................................ 19

*In re EasySaver Rewards Litig.*,
    921 F. Supp. 2d 1040 (S.D. Cal. 2013)...................................... 13

*In re Google Buzz Privacy Litig.*,
    No. 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ..................... 14

*In re Google Referrer Header Privacy Litig.*,
    87 F. Supp. 3d 1122 (N.D. Cal. 2015) ............................................. *passim*

*In re HP Laser Printer Litig.*,
    No. 07-0667 AG (RNBx), 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011)............... 10

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)................................................ 3, 4

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................. 18

*In re Polyurethane Foam Antitrust Litig.*,
   168 F. Supp. 3d 985 (N.D. Ohio 2016)........................................................................ 5

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10-md-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ........................ 20

*In re Subway Footlong Sandwich Marketing & Sales Litig.*,
   316 F.R.D. 240 (E.D. Wis. 2016). .............................................................. 8, 10, 15

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   268 F. Supp. 2d 907 (N.D. Ohio 2003)................................................................... 16

*In re Sw. Airlines Voucher Litig.*,
   799 F.3d 701 (7th Cir. 2015) ................................................................................. 16

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..................................................................................... 3

*Klier v. Elf Atochem N. Am., Inc.*,
   658 F.3d 468 (5th Cir. 2011) ................................................................................... 5

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................... 5, 6, 7

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010).................................................................. 18

*Masters v. Wilhelminia Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007).................................................................................. 17

*Miller v. Ghiradelli Chocolate Co.*,
   No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015)........................ 14

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ............................................................................ 1

*Pecover v. Elec. Arts Inc.*,
   No. 08-cv-02820 CW, 2013 WL 12121865 (N.D. Cal. May 30, 2013) .................. 10

*Poertner v. Gillette Co.*,
   No. 6:12-cv-803, 2014 WL 4162771 (M.D. Fla. Aug. 21, 2014).......................... 10

*Schwartz v. Dall. Cowboys Football Club*,
   362 F. Supp. 2d 574 (E.D. Pa. 2005) ...................................................................... 8

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) ................................................................................ 20

*Trombley v. Nat'l City Bank*,
   826 F. Supp. 2d 179 (D.D.C. 2011) ...................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................... 3

*Weeks v. Kellogg Co.*,
  No. 09-08102 (MMM) (RZx), 2013 WL 6531177 (C.D. Cal. Nov. 23, 2014) ....................... 12

**Rules**

D. Del. LR 7.1.3(4) ................................................................................................... 1

Fed. R. Civ. P. 23(e)(5) ............................................................................................. 19

**Other**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................ 3

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (5th ed. 2011) .......................... 16

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*,
  7 J. Empirical Legal Stud. 811 (2010) .................................................................................. 16

Elizabeth Cabraser, Esq., *Claims-Made Class-Action Settlements*, 99 Judicature, no. 3 (2015) ... 8

Serial Objector Index, *Theodore H. Frank*, https://www.serialobjector.com/persons/67 ........... 11

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:
An Empirical Study*, 1 J. Empirical Legal Stud. 27 ................................................................ 16

*Transparency*,    Google    U.S.    Public    Policy,    https://www.google.com/publicpolicy/
  transparency.html ...................................................................................................... 14

Plaintiffs submit the following Response to the Objection of Theodore H. Frank ("Objector Frank") to Settlement Approval, Class Certification, and Request for Attorneys' Fees ("Objection") (D.I. 171).[1]  With proper notice having been provided to millions of Class Members, only one objection was received to the proposed Settlement between Plaintiffs and Defendant Google Inc. ("Google"), demonstrating the Class' nearly universal approval of the Settlement.  Objector Frank filed the sole objection apparently in furtherance of a political, anti-class action agenda rather than out of genuine concern for the Class' interests.  More importantly, his meritless Objection rests on speculation, misstates the relevant law, and displays an indefensible ignorance of the publicly-available facts and circumstances of the Settlement.

The Class' overwhelming approval of the Settlement supports final approval.  *See, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (fact that "only 79" out of 11,000 class members objected to class settlement "tends to support a finding that the settlement is fair").  This is all the more relevant where the only objection was filed by a serial objector who is in the business—and, in fact, makes a sizeable personal income from[2]—objecting to class action settlements.  *Cy pres* settlements are routinely approved by courts and are necessary in cases such as this, as explained below.[3]  As set forth below, the Objection should be overruled.

### INTRODUCTION

The class action mechanism provides the ability to recover substantial damages for a large number of claimants in a single action and has spawned an industry of objectors whose sole

---

[1] The Objection exceeds the page limit permitted by District of Delaware Local Rule 7.1.3(4).

[2] *See infra* Section II and Ex. 8 hereto.

[3] The parties proposed six *cy pres* recipients via the process outlined in the Settlement.  *See* Settlement Agreement ("S.A.") § 5.3.1 (attached as Exhibit A to Declaration of Brian R. Strange in Support of Motion for Final Approval of Class Action Settlement (D.I. 167-2)).  The proposed recipients are: (1) Berkeley Center for Law & Technology ("BCLT"); (2) Berkman Center for Internet & Society at Harvard University ("BCIS"); (3) Center for Democracy & Technology (Privacy & Data Project) ("CDT"); (4) Public Counsel; (5) Privacy Rights Clearinghouse; and (6) Center for Internet & Society at Stanford University ("CIS").  (D.I. 163.)

1

motive is to deprive class members of the substantial benefits achieved. The Competitive

Enterprise Institute's ("CEI") Center for Class Action Fairness ("CCAF") and its

Founder/President/Treasurer Theodore H. Frank, are among the nation's more prolific serial

objectors. Objector Frank is the sole objector to the Settlement out of millions of Class Members

and he repeats the same cookie-cutter arguments against class action settlements that have been

rejected by courts time and again.[4] And while Objector Frank and CCAF claim they are not

serial objectors because they do not seek a payout in exchange for withdrawing their Objection

(because they are funded by millions of dollars in contributions from corporations and others that

oppose class actions), CCAF and Objector Frank have petitioned courts for attorneys' fees as

high as $2865 per hour for their work as serial objectors.[5]

      While abusive class action settlements do of course exist, this case is not one. The

Settlement in this case provides Class Members with a recovery that they could not have

obtained without the class action mechanism and the work of Class Counsel. Moreover, Class

Counsel obtained this result against a difficult and hard fought appeal (which trimmed the Class'

causes of action substantially) and the government's substantial fines to Google for the

complained of conduct, forcing Google to disgorge a sum of money that was many multiples

greater than any estimated profit it may have gained as a result of the alleged conduct. The

Settlement provides the Class with additional and substantial relief—as well as assurances that

Google terminated the complained of conduct—that would not otherwise have been realistically

obtained. And, despite the size of the Class—which comprises potentially millions of Internet

users—***only one serial objector*** has come forward to lodge objections, a fact that itself strongly

---

[4] Objector Frank has been an objector, signer, or objector's attorney in at least 43 other class
action settlements. *See* https://www.serialobjector.com/persons/67 (last visited Dec. 30, 2016).
[5] *See infra* Section I.D. & n.14.

undermines the objections.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (finding only 18 objections out of 5 million class members is "a small number of objections . . . indicative of the adequacy of the settlement" (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 at 108 (4th ed. 2002))).

The attack that Objector Frank makes against Class Counsel's request for attorneys' fees is also meritless.  The percentage of the fund that Class Counsel is seeking would provide a ***negative*** lodestar multiplier of 0.73.  Negative lodestar multipliers strongly suggest a fee request is reasonable.  *See, e.g.*, *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) ("A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.'" (internal citation omitted)).

## ARGUMENT

### I.    THE OBJECTION IS WITHOUT MERIT

#### A.  The Settlement Is Entitled To A Presumption Of Fairness

Third Circuit law—contrary to Objector Frank's assertion that the Court should not "apply any presumption that the settlement is fair and reasonable," Objection at 4 (quotation omitted)—calls for the Court to "apply an initial presumption of fairness in reviewing a class settlement."  *In re Nat'l Football League Players Concussion Injury Litig.* ("*In re NFL*"), 821 F.3d 410, 436–37 (3d Cir. 2016).  This is particularly true where settlement negotiations "occurred at arms['] length," "the proponents of the settlement are experienced in similar litigation," and "only a small fraction of the class objected."  *Id.*  Each of the factors triggering a presumption of fairness are present here and Objector Frank does not argue otherwise.

Objector Frank's speculation and innuendo regarding the nature of the settlement negotiations in this case are just that, and they should be rejected entirely.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535, 539 (3d Cir. 2004) (rejecting objection "as to whether

3

the proposed [pre-certification] settlement is entitled to a presumption of fairness" and affirming

settlement approval "in light of the presumption of fairness that attaches to the settlement").

Objector Frank offers no evidence regarding the nature of settlement negotiations and ignores

entirely the involvement of an experienced and respected mediator in the negotiations.  *See In re*

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("the mere presence of

a neutral mediator" is "a factor weighing in favor of a finding of non-collusiveness").

In addition, Objector Frank—while arguing that the nine-factor *Girsh* test "is not

exhaustive," Objection at 5—concedes, as he must, that the *Girsh* factors overwhelmingly

support final approval.  Instead, Objector Frank argues the Settlement must also satisfy "other

potentially relevant and appropriate factors," without any description as to what those factors

might be (other than that "Class [M]embers must always remain the 'foremost beneficiaries' of

the settlement," a general principle with which Class Counsel agrees).  *Id.* (citations omitted).  In

any event, and as demonstrated at length in Plaintiffs' Motion for Final Approval, the proposed

Settlement here focuses entirely on Class Members and aims to provide the most realistic and

significant benefits possible to the Class as a whole.  *See also In re NFL*, 821 F.3d at 447–48

(elucidating bedrock rule that a class settlement need not be "perfect" to be "fair").

The proposed Settlement is entitled to a presumption of fairness and the benefits it brings

to the Class more than satisfy the *Girsh* test (and any other "test" Objector Frank may conceive).

### B.  The Settlement's *Cy Pres* Contributions Benefit Class Members And The Objections Regarding The *Cy Pres* Plan Are Baseless

Notably, Objector Frank does not object to the overall reasonableness of the amount of

the Settlement Fund but, rather, only takes issue with its allocation to *cy pres* recipients.  But

Objector Frank ignores entirely the reasoning and rationale for a *cy pres* Settlement Fund in the

first place.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (possibility that

4

"settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate," because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion").

## 1.  *Cy pres* settlements benefit Class Members

Objector Frank's fundamental complaint is that "[c]y *pres* distributions do not compensate class members."  Objection at 6.  Ignoring the fact that *cy pres* distributions do indirectly compensate Class Members, numerous courts have determined—often in the face of objections from CCAF, Objector Frank, and others—that appropriately tailored and focused *cy pres* allocations are effective and beneficial, particularly where direct distributions are logistically burdensome, impractical, or economically infeasible.  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("[C]y *pres* . . . is a settlement structure wherein class members receive an indirect benefit . . . ."); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (where direct distribution is not "logistically feasible" or "economically viable," *cy pres* allocation "puts the funds to their next-best use by providing an indirect benefit to the class"); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1005 (N.D. Ohio 2016) ("A *cy pres* distribution puts the settlement funds to their next best use by providing an indirect benefit to the class."); *see also In re Google Referrer Header Privacy Litig.* ("*Google Referrer*"), 87 F. Supp. 3d 1122, 1128 (N.D. Cal. 2015) (rejecting Objector Frank's objections to *cy pres* settlement and finding settlement consonant with "the primary objective of the class action procedure—to enable litigation where it otherwise would be economically infeasible").

## 2.  *Cy pres* allocation is proper where direct distributions are administratively impractical or economically irrational

Objector Frank misconstrues the relevant standard used to assess the propriety of a *cy*

*pres* award.  Objector Frank claims that "[*c*]*y pres* is improper when it is feasible to make distributions to class members, at least where there is no other compelling reason for preferring non-class members" and cites to *Fraley v. Facebook, Inc.*, No. 11-1726 RS, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012), for the proposition that a settlement distribution to *cy pres* recipients is not proper.[6]  Objector Frank ignores, however, that just one month after the district court's decision in *Fraley*, the Ninth Circuit affirmed final approval of another settlement that provided only prospective relief and *cy pres* awards in *Lane*, 696 F.3d at 816.[7]  This later Ninth Circuit decision trumps the prior district court opinion in *Fraley*.  Under *Lane*, the proper inquiry is whether the *cy pres* awards are "the next best distribution." *Id.* at 820.  A *cy pres* distribution is the "next best" where it "bears a substantial nexus to the interests of the class members" and takes into consideration "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members."  *Id.* at 821 (internal quotations omitted).

Here, the proposed *cy pres* distributions satisfy the standard.  This case is about Google's alleged circumvention of Class Members' Internet browser privacy settings.  Each proposed *cy pres* recipient must agree to "devote the funds to promote public awareness and education,

---

[6] Objector Frank also cites the Third Circuit in *In re Baby Products Antitrust Litigation* ("*Baby Products*"), 708 F.3d 163 (3d Cir. 2013), as purportedly supporting his argument against *cy pres* distributions and for his apparent argument that "[w]here there is a will, there is a way" to structure class settlements without *cy pres* components. Objection at 11.  *Baby Products* vacated a class settlement that *included* direct distributions to class members because the *cy pres* component was more than six times larger than the direct distributions.  *Baby Products*, 708 F.3d at 170.  Objector Frank ignores the fact that *Baby Products* is entirely inapplicable here where direct distributions to Class Members are infeasible and inefficient.  Nor did *Baby Products* counsel against *cy pres* distributions as Objector Frank implies.  Rather, *Baby Products* approved the use of pure *cy pres* allocations in appropriate cases such as this, where direct distributions to Class Members are infeasible.  *Id.* at 173.  The other cases upon which Objector Frank relies for the argument that the Third Circuit provides only a "narrow berth" for *cy pres* allocations are similarly misplaced or distinguishable.  Objection at 11.
[7] While Objector Frank attempts to smear the *Lane* decision as "controversial," Objection at 16 n.3, he makes no attempt to square the fact that *Lane* remains good law with his ideological serial objection in this case.

and/or to support research, development, and initiatives, related to the security and/or privacy of Internet browsers." S.A. § 5.3.2. If any proposed *cy pres* recipient does not agree to that condition, "then its portion will be distributed pro rata to the other identified recipients." *Id.* The proposed *cy pres* recipients are among the preeminent institutions for researching and advocating for online privacy. Nowhere in the Objection does Objector Frank take issue with the goals of the proposed *cy pres* recipients. In light of the fact that the cost of sending out what would be very small payments to millions of Class Members would exceed the total monetary benefit obtained by the Class, the proposed *cy pres* awards are the next best distribution. *See Lane*, 696 F.3d at 821 (*cy pres* awards bore a "direct and substantial nexus to the interests of absent class members" where *cy pres* money promoted causes of online privacy and security).

### 3.   The Settlement properly employs *ex ante cy pres* allocation

Objector Frank recognizes, as he must, that *cy pres* allocations are proper where direct distribution to Class Members would involve unduly burdensome logistics and *de minimus* payments. Instead, he argues that the Settlement Fund here is, in fact, feasibly distributable and in meaningful amounts. Objection at 9–12. Objector Frank offers up three alternative distribution plans, which he argues would all be preferable to *cy pres* distributions—(1) direct distributions; (2) a "lottery" distribution; or (3) a "claims made" distribution process. All three of Objector Frank's distribution theories fail to account for the specifics of the instant case and rather espouse generalities that do not come close to meeting the needs of Class Members here.

> i.    *Direct distribution is logistically and economically infeasible*

Objector Frank offers no valid basis (or any at all) for a fundamental assumption upon which his direct distribution hypothesis rests—that direct payments "would be sufficiently large" to make "individual distributions economically viable." *Id.* at 8. Other cases in which Objector

Frank has objected indicate he proffers no valid basis for his assumptions because none exist.

In *In re Subway Footlong Sandwich Marketing & Sales Practices Litigation* ("*In re Subway*"), Objector Frank objected—as he does in almost all of his objections—to a *cy pres* settlement and argued that direct distribution was preferable and possible.  316 F.R.D. 240, 247–48 (E.D. Wis. 2016).  The court explained the basic economic principles inherent in a class action involving potentially millions of class members and a relatively low settlement fund and overruled Objector Frank's objection.  *Id.*  In doing so, the court explained that Objector Frank's objection made "extremely unrealistic" assumptions regarding estimated administration costs in connection with his proposed direct distribution method.  *Id.* at 248.  The court also accounted for, as Objector Frank did not (and does not here), the value of the claimant's time in processing the claim papers.  *Id.*  The result in *In re Subway* is the same as the result in this case: "[A]dministering this settlement under Rule 23(b)(3) would result in class members receiving nothing of value."  *Id.*; *see also Schwartz v. Dall. Cowboys Football Club*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005) (finding direct distribution of $3.50 per class member to be "impractical").

   ii.  *Lottery and claims made distributions are equally inapplicable to this case*

Objector Frank also contends that "a lottery or claims-made process" would work in this case and would be preferable to *cy pres* distributions.[8]  Objection at 8.  As to his "lottery" proposal, Objector Frank offers only a single law review article in support and does not even hint at how one would identify class members for "random sampling," let alone what criteria would

---

[8] Objector Frank's citations purporting to demonstrate the feasibility of a "claims made" distributions are flawed.  Objection at 10.  Meaningful data resulting in statistically valid conclusions regarding claims made distributions is extremely difficult to find.  *See, e.g.*, Elizabeth Cabraser, Esq., *Claims-Made Class-Action Settlements*, 99 Judicature, no. 3 (2015) ("There is no reliable, comprehensive data on claims rates and claims numbers in class-action settlements . . . .  This data is simply unknown, except to those directly involved in the action . . . .  It has been my experience that claims rates vary widely and are difficult to predict.").

be used to select a statistically valid sample. *Id.* at 11. Far from resolving the case, this proposal would likely produce more litigation and competing arguments over sample size, survey questions used to select class members, the proper characteristics of a valid sample, and so on.

Nor would Objector Frank's "claims-made process" work for this case. In support of his "claims made" distribution suggestion, Objector Frank returns to *Fraley*, wherein the court rejected a *cy pres* distribution absent proof of the feasibility of direct distributions. But *Fraley* acknowledged that "*cy pres* payments may be appropriate where 'the proof of individual claims would be burdensome or distribution of damages costly.'" *Fraley*, 2012 WL 5835366, at *1 ("[T]here is no dispute that it would be impractical to the point of meaninglessness to attempt to distribute the proposed $10 million in monetary relief among the members of a class that may include upwards of 70 million individuals." (internal quotation omitted)). And it appears likely that Objector Frank himself would object to the use of a claims made process. Some of Objector Frank's many serial objections to class action settlements have Objector Frank himself objecting to the use of a "claims made" process. *See, e.g.*, Theodore H. Frank's Objection to Settlement at 9 & n.4, *Pearson v. NBTY, Inc.*, No. 11-cv-07972 (N.D. Ill. Aug. 8, 2013), ECF No. 103 (objecting to use of claims made process for "certain" class members), Ex. 1 hereto.

At bottom, Objector Frank's complaints about the method of allocation for the Settlement Fund (not its size or reasonableness) amount to his politically-inspired opinion that he knows what is best for the Class. Objector Frank ignores that, other than his Objection, ***not one*** member of the Class objected to the proposed Settlement. And Objector Frank's opinion that "[w]here there is a will, there is a way" to a better settlement attempts to replace the experience and work of Class Counsel with his own. *See Hanlon*, 150 F.3d at 1027 (possibility "that the settlement could have been better . . . does not mean the settlement presented was not fair,

reasonable or adequate").  Objector Frank's Objection should be overruled.

       4.   <u>Numerous courts have rejected Objector Frank's boilerplate serial objections</u>

     Numerous courts have overruled Objector Frank's boilerplate objections, including his objections that direct distribution of a settlement fund is always preferable over *cy pres* distributions.  At least nine courts have recently overruled objections from Objector Frank.  *See, e.g.*, *In re Subway*, 316 F.R.D. at 240 (overruling objection of Objector Frank arguing that direct distribution of settlement fund was preferable and representative plaintiffs were not adequate); *Google Referrer*, 87 F. Supp. 3d at 1128 (rejecting Objector Frank's objections to *cy pres* settlement); Final Judgment and Order of Dismissal with Prejudice, *Wolf v. Red Bull GMBH*, No. 13-cv-8008-KPF (S.D.N.Y. May 12, 2015), ECF No. 81 (granting final approval to class settlement over Objector Frank's objections), Ex. 2 hereto; *Poertner v. Gillette Co.*, No. 6:12-cv-803, 2014 WL 4162771, at *3 (M.D. Fla. Aug. 21, 2014) (granting final approval to class settlement over Objector Frank's objection to *cy pres* distribution and finding direct distribution infeasible); Order Granting Final Approval of Class Action Settlement and Granting Application for Attorneys' Fees, Costs and Incentive Awards, *Delacruz v. Cytosport, Inc.*, No. 4:11-cv-03532-CW (N.D. Cal. July 1, 2014), ECF No. 91 (overruling Objector Frank's objection to *cy pres* distributions), Ex. 3 hereto; *Fraley v. Facebook, Inc.*, No. 11-1726 RS, 2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) (finally approving settlement involving *cy pres* distribution over Objector Frank's objections); *Pecover v. Elec. Arts Inc.*, No. 08-cv-02820 CW, 2013 WL 12121865, at *5–7 (N.D. Cal. May 30, 2013) (overruling objection of Objector Frank); *In re HP Laser Printer Litig.*, No. 07-0667 AG (RNBx), 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31, 2011) (overruling Objector Frank's objection as "unconvincing" and "not sufficiently meritorious"); Order and Final Judgment Granting Final Approval of Class Action Settlement,

10

*Ercoline v. Unilever U.S., Inc.*, No. 2:10-cv-01747-SRC-MAS (D.N.J. Mar. 21, 2011), ECF No. 35 (granting final approval to class settlement over Objector Frank's objection that settlement failed to provide class members with monetary compensation), Ex. 4 hereto. Objector Frank has also served as counsel for other serial objectors, often proffering the same boilerplate arguments against class settlements that he puts forth here. *See* Serial Objector Index, *Theodore H. Frank*, https://www.serialobjector.com/ persons/67 (last visited Dec. 30, 2016) (listing Objector Frank as counsel for objectors in at least 22 separate cases). Just as dozens of courts have rejected Objector Frank's boilerplate and baseless objections, so too should this Court.

5.    No conflict of interest undermines the selected *cy pres* recipients

Objector Frank next argues that any relationship between a party (or its counsel) and a proposed *cy pres* recipient automatically disqualifies that proposed *cy pres* recipient. Objection at 12. Objector Frank's misplaced argument takes two forms: (1) that a proposed *cy pres* recipient "should not have a pre-existing relationship with class counsel"; and (2) that a "pre-existing relationship[] between the defendant and the *cy pres* recipients undermine[s] the theoretical value of the settlement."[9] *Id.* at 13–15. Notably, Objector Frank takes no issue with the identity or mission of any proposed *cy pres* recipient. Nor does Objector Frank argue that any proposed *cy pres* recipient would fail to further the important goals of the Class. Rather, Objector Frank's arguments are merely attempts to distract and are entirely meritless.

i.    *No disqualifying relationships undermine the proposed* cy pres *recipients*

Objector Frank argues that because one member of the Plaintiffs' Executive Committee serves on the Board of Directors of Public Counsel, one of the six proposed *cy pres* recipients,

---

[9] Objector Frank's arguments in this regard are nearly identical to his arguments in *Google Referrer*, which the court squarely rejected. *Google Referrer*, 87 F. Supp. 3d at 1137–38.

11

distributing *cy pres* money to this organization is de facto improper.  *Id.* at 13–14.  Public

Counsel is one of the nation's largest *pro bono* law firms employing about 70 full-time public

interest lawyers.  Declaration of Brian R. Strange in Support of Class Plaintiffs' Response to

Objection of Theodore H. Frank ("Strange Decl.") ¶ 4.  Public Counsel is administered,

managed, and run by its staff under the direction of its President and Chief Executive Officer,

former federal district court judge Margaret Morrow.  *Id.*  Mr. Strange volunteers *pro bono* his

time in service on the Board of Public Counsel, as do the rest of the approximately 70 Board

members (who are each private lawyers, mostly from large defense firms).  *Id.* ¶ 5.  Mr. Strange

has volunteered his time as part of his commitment to *pro bono* work, this year as Chairman of

the Board.  *Id.* ¶¶ 5–6.  Mr. Strange has no responsibility for the day-to-day operation of Public

Counsel, no control over any of its funds, and no financial interest in the organization.  *Id.* ¶ 5.

Numerous federal courts have selected Public Counsel as a *cy pres* recipient.  Public Counsel has

the experience and expertise in the area of Internet privacy that forms the basis of the Class'

claims and to which the funds are to be directed.  And while Objector Frank irresponsibly

questions "what [other] conflicts lurk deeper?," he cannot claim that Class Counsel (or Mr.

Strange) have any relationship with the proposed *cy pres* recipients beyond having donated time

and energy in service to the underserved.[10]  Objection at 14.

Having an association with a proposed *cy pres* recipient, without more, does not create an

appearance of impropriety.  In *In re EasySaver Rewards Litigation*, objectors to a class action

---

[10] As support Objector Frank cites *Weeks v. Kellogg Co.*, No. 09-08102 (MMM) (RZx), 2013 WL 6531177, at *19 n.102 (C.D. Cal. Nov. 23, 2014), for the proposition that "[c]ourts are wary of distributing *cy pres* funds to organizations that have a close relationship with class counsel given the appearance of a conflict of interest."  Objection at 14.  But the "prior relation" must be "significant" and one "that would raise substantial questions about whether the selection of the recipients was made on the merits."  *Weeks*, 2013 WL 6531177, at *19 n.102.  No such substantial questions have been or can be raised here.

settlement alleged that there was an appearance of impropriety where class counsel proposed giving *cy pres* money to USD Law School, a school three of the attorneys involved in the settlement attended. 921 F. Supp. 2d 1040, 1050–51 (S.D. Cal. 2013), *rev'd on other grounds*, 599 F. App'x 274 (9th Cir. 2015). The court held that where the law school was not entitled to any greater award than the other *cy pres* recipients and where there was a "rational connection between the chosen recipients and the nature of the settlement," it was not improper to grant *cy pres* money to a recipient with an association with Class Counsel. *Id.* Similarly, here, Public Counsel will not be entitled to any greater share of the *cy pres* funds than any other recipient and there is a rational connection between Public Counsel's mission and the nature of the Settlement. Strange Decl. ¶ 7. The *cy pres* distribution is proper.[11]

In response to Objector Frank's nearly identical objection in *Google Referrer*, the court stated that "while the potential for a conflict of interest is noted, there is no indication that counsel's allegiance to a particular [*cy pres* recipient] factored into the selection process. Indeed, the identity of potential *cy pres* recipients was a negotiated term included in the Settlement Agreement and therefore not chosen solely by [Class Counsel]." *Google Referrer*, 87 F. Supp. 3d at 1138. Similarly, here, the proposed *cy pres* recipients were a negotiated term of the parties' Settlement, with a specified mechanism for ensuring that one single party does not have control over the selection of the proposed *cy pres* recipients, and Google agreed that the six proposed *cy pres* recipients were reasonable and appropriate after having rejected several other proposed recipients suggested by Plaintiffs. *See* S.A. § 5.3.1; Strange Decl. ¶ 7. As such, there can be no conflict of interest with respect to the proposed *cy pres* recipients.

---

[11] In any event, even if there is a valid conflict of interest objection to a particular recipient (and there is not), the appropriate result is to substitute a different *cy pres* recipient or eliminate the objectionable recipient, not disapprove the Settlement.

       ii.       *Google's previous* cy pres *payments create no conflict and do not diminish the Settlement's value*

Objector Frank also takes issue with the proposed *cy pres* donations to BCIS, CIS, BCLT, and CDT because he claims that "Google is already a donor" to these organizations. Objection at 15.  While Google may have donated to these institutions previously, that is entirely irrelevant to whether the ***additional*** *cy pres* contributions that Google will make under the Settlement are fair and reasonable.  *See Miller v. Ghiradelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *11 (N.D. Cal. Feb. 20, 2015) ("[T]his court is unaware of any authority that suggests that a defendant's preexisting charitable contributions should be a factor in analyzing a *cy pres* portion of a common-fund settlement.").  Indeed, pursuant to the Settlement, Plaintiffs first suggested the initial list of *cy pres* recipients to Google, making any suggestion that Google is seeking to replace its traditional charitable giving even further misplaced.  *See* S.A. § 5.3.1; Strange Decl. ¶ 7.

Objector Frank's argument in this regard appears to be entirely disingenuous in light of the fact that Google "provides support to a number of independent third-party organizations whose work intersects in some way with technology and Internet policy."  *Transparency*, Google U.S. Public Policy, https://www.google.com/publicpolicy/transparency.html (last visited Dec. 30, 2016).  The list of organizations that Google supports includes CEI, of which CCAF is a part. *Id.*  Thus, Objector Frank's unsupported conjecture that "Google is agreeing to do something that it was in all likelihood going to do anyway" is incorrect and misplaced.[12]  Objection at 15.

---

[12] At least two courts have approved *cy pres* donations to BCIS and at least one court has approved a *cy pres* donation to CIS in class actions against Google.  *See In re Google Buzz Privacy Litig.*, No. 10-00672 JW, 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving *cy pres* donations by Google to BCIS and CIS); *Google Referrer*, 87 F. Supp. 3d at 1138 (approving *cy pres* donation by Google to BCIS).

### C.  The Putative Class Can And Should Be Certified

Objector Frank next argues that "if settlement distributions to individual class members are impracticable, then the putative class cannot be certified" because, Objector Frank reasons, the representative Plaintiffs will not be adequate representatives.  *Id.* at 16–17.  As it boils down, Objector Frank's argument is essentially that, because the Settlement includes *cy pres* payments, taken together with his other frivolous complaints, they "combine to indicate inadequate representation."  *Id.* at 17.  Objector Frank's argument is not rooted in law or reality.

Objector Frank made an identical argument against the settlement in *In re Subway*, which provided no direct distributions to class members.  The court there summarily rejected Objector Frank's argument because "the settlement in the present case does not make any class member worse off."  *In re Subway*, 316 F.R.D. at 249.  Indeed the *In re Subway* court concluded:

> The defendant, rather than the class, has paid for the injunction, notice, and attorneys' fees.  It is true that the class members will indirectly pay for these items by releasing their claims for injunctive relief.  But that is a reasonable exchange: the plaintiffs are giving up no more than the value of the injunctive relief they will receive.  Thus, even if it were the case that the injunctive relief does no more than formalize the practice changes that [defendant] already agreed to make, it would not follow that the named plaintiffs or class counsel have failed to adequately represent the class, or that the settlement is unfair.

*Id.*  Objector Frank makes the same argument here—that the representative Plaintiffs and Class Counsel are binding him and the Class "to a general release in exchange for no meaningful relief."  Objection at 17.  As demonstrated herein, Objector Frank is wrong.  For the same reasons that the *In re Subway* court rejected Objector Frank's argument, so too should this Court.

### D.  The Requested Attorneys' Fees And Expenses Are Reasonable

Finally, in the event that the Court finds his objections to the Settlement to be meritless (which they are), Objector Frank asks the Court to "decline to grant" the requested attorneys' fees.  *Id.*  Objector Frank claims that the fee request is unreasonable and, because the Settlement

15

Fund will be distributed to *cy pres* recipients, the fee request should be reduced by an unannounced amount.  *Id.* at 17–20.  On both accounts, Objector Frank is wrong.[13]

As set forth in detail in Plaintiffs' Motion for Attorneys' Fees (D.I. 168-1), the requested fee award is within the range of fees awarded in similar cases, comports with Third Circuit precedent, and is reasonable under either a percentage of the fund or lodestar-multiplier analysis.  *See generally In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 937 (N.D. Ohio 2003) ("[A]ttorneys' fees in class actions have ranged from 20%–50%.");  *Haught*, 2016 WL 1301011, at *12 ("A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.'" (internal citation omitted)).

First, Objector Frank's focus on treatises analyzing the mean and median amounts of fees awarded in other cases ignores the Court's duty to analyze the facts and circumstances of the particular case at hand when awarding fees.  Rather than focus on the percentage in a vacuum, these treatises and cases identify specific factors—which are all present in this case—that warrant an above average fee award.  *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. Empirical Legal Stud. 811, 833 (2010) (noting courts have awarded fees of 47% of the settlement fund); *Newberg on Class Actions* § 15:83 (5th ed. 2011) (reporting reasonable fee awards of 50% of the common fund).  The fee percentage should increase in cases that are complex and have higher risks, as was the case here.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27, 64–66 ("complexity is correlated with higher fees . . . .  the presence of an appellate opinion was significant and positive"; "fees as a

---

[13] Objector Frank also takes issue with (albeit in passing and not in any coherent manner) the so-called "clear-sailing" clause within the Settlement Agreement.  Objection at 17.  Again, Objector Frank's complaint is at odds with the law.  *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712–13 (7th Cir. 2015) (clear-sailing clause in settlement agreement is not per se unreasonable).

percentage of recovery tend to be higher in high-risk cases").  Here, the litigation was hard

fought, including at the appellate level, and involved novel and evolving areas of Internet and

privacy law.  The requested fee award here is particularly reasonable when using the lodestar

cross-check.  A 43.7% fee award would provide Class Counsel with a *negative* lodestar

multiplier of 0.73.  Such a multiplier is at the low end of what is typically considered reasonable

and appropriate in lengthy, complex actions such as this.

Second, Objector Frank's argument that the *cy pres* nature of the Settlement should

somehow reduce the amount of attorneys' fees is also inapposite and at odds with applicable law.

*See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the Supreme Court "has

recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of

persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as

a whole"); *Masters v. Wilhelminia Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The

entire Fund, and not some portion thereof, is created through the efforts of counsel at the

instigation of the entire class.  An allocation of fees by percentage should therefore be awarded

on the basis of the total funds made available, whether claimed or not.").[14]

## II.    OBJECTOR FRANK HAS IMPROPER MOTIVES

Objector Frank is the Founder, President, and Treasurer of CCAF, which presents itself

as a white knight in comparison to notorious extortionist objectors by asserting that CCAF brings

its objections "in good faith to prevent approval of an unfair settlement and ratification of an

improper class certification."  Declaration of Theodore H. Frank In Support of Objection ("Frank

Decl.") ¶ 12 (D.I. 171-1).  However, CCAF's and Objector Frank's interests are actually part of a

---

[14] Objector Frank's argument is particularly hypocritical in light of his and CCAF's previous
requests for hourly rates of up to $2865 and a 5.97 lodestar multiplier.  *See* Plaintiffs' Opposition
to Objector Amy Yang's Motion for Attorneys' Fees at 5, *In re Transpac. Passenger Air Transp.
Antitrust Litig.*, No. 3:07-cv-05634 (N.D. Cal. 2007), ECF No. 1033, Ex. 5 hereto.  Here, Class
Counsel seeks a *negative* lodestar multiplier of 0.73 with hourly rates far lower than CCAF's.

well-known political agenda and are far from the best interests of the Class.

CCAF and Objector Frank are engaged in a public crusade against class actions. In fiscal year 2014 alone, CCAF's parent organization, CEI, received over $7.5 million in contributions and grants to finance its mission. CEI 2014 Form 990 at 1, Ex. 6 hereto. CCAF's past contributors include: Amoco Foundation, Inc., Earhart Foundation, Exxon Mobil Corporation, the Koch family foundations, Philip Morris Companies, Inc., Pfizer Inc., and Texaco, Inc. CEI Pamphlet at 9, Ex. 7 hereto. Indeed, it appears that Objector Frank is personally rewarded handsomely for his crusade against class action settlements. *See* CCAF 2014 Form 990 at 8, Ex. 2 hereto (reporting 2014 compensation of $206,400 for Objector Frank). These entities hardly represent the interests of class members in class action litigation. Rather, the goal of CCAF and Objector Frank is to do what they are attempting to do here, which is to disincentive counsel from bringing meritorious class actions by fighting to prevent counsel from recovering a reasonable return on the investment of their time and money.

Courts are beginning to catch on to CCAF and Objector Frank's political mission. In overruling CCAF's objections in *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010), the court characterized the objections as "long on ideology and short on law" and noted that CCAF was objecting despite admitting that "this Settlement could be approved under current Sixth Circuit law." Other courts have come to the same conclusion. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[W]e reject [CCAF's] arguments that the attorneys' fees in this case are unreasonable or over-inflated."); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (finding CCAF's arguments were "without merit"); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, No. 07-cv-10329, 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) (concluding CCAF's objection "does not seem

18

grounded in the facts of this case, but in her attorney's objection to class actions generally");

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 206 (D.D.C. 2011) (overruling CCAF's

objection "to the amount of attorneys' fees and the method by which the fees are calculated").

While abusive class actions do exist (and perhaps CCAF has properly objected to some of

them), CCAF's and Objector Frank's attempt to categorically label the instant case as one is

completely unfounded.  Objector Frank's Objection should be overruled.

### III.    OBJECTOR FRANK HAS NOT ESTABLISHED STANDING TO OBJECT

Even if Objector Frank's objections had merit (which they do not), only a Class Member

has the right to object.  *See* Fed. R. Civ. P. 23(e)(5).  An objector must demonstrate standing as a

Class Member.  *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014).   Objector

Frank lacks standing to object because he does not allege facts showing that he is a Class

Member.  Objection at 2; Frank Decl. ¶ 2.  This failure renders his entire Objection invalid.[15]

Specifically, Objector Frank alleges absolutely no facts that cookies were placed on his

Internet browser in the manner alleged in the Complaint.  The Class Definition only includes:

> [P]ersons in the United States of America who used the Apple Safari or Microsoft
> Internet Explorer web browsers and who visited a website from which
> Doubleclick.net (Google's advertising serving service) cookies were placed by the
> means alleged in the Complaint.  The Complaint alleges that in 2011–2012, users
> of Apple Safari or Microsoft Internet Explorer web browsers that were set to
> accept cookies only from "visited" sites or to block all cookies from "third parties
> and advertisers" who visited a non-Google website containing an advertisement
> served by Doubleclick.net (Google's advertising serving service) and who did not
> already have a cookie from the Doubleclick.net domain would have received one
> as a result of this visit because of means employed by Google to set cookies under
> these circumstances.

Long Form Notice ¶ 4, Exhibit E to Declaration of Stephen J. Cirami Regarding Settlement

Administration (D.I. 167-5).  Objector Frank says only that he "visit[ed] countless websites,"

---

[15] Objector Frank was well aware of his burden to prove class membership, as the Long Form
Notice clearly provides that objections may only be made if they contain "a statement that you
are a Settlement Class Member."  Long Form Notice ¶ 11.

including the "wikia.com domain . . . referred to in the complaint as housing Doubleclick.net cookies placed by the means alleged in the complaint."  Frank Decl. ¶ 3.  Objector Frank also declares that he "first purchased his iPhone in December 2009, and ha[s] used iPhones continuously through then."  *Id.*  Given these facts, which Objector Frank testified to be true, it is almost certain that Objector Frank began visiting websites from which he obtained a cookie from the Doubleclick.net domain in or around December 2009, when he began using his iPhone.  *Id.*  Because Objector Frank has not testified that his device "did not already have a cookie from the Doubleclick.net domain" when he visited the websites he testified he visited, it is extraordinarily likely that he already had a DoubleClick ID cookie on his device before the alleged conduct that is the subject of this litigation.  Because Objector Frank has failed to clearly state that he is a member of the Class, his Objection must be overruled for this reason alone.  *See, e.g.*, *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) (refusing to allow non-class members to object because "under Rule 23(e), non-class members have no standing to object"); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-2196, 2015 WL 1639269, at *6 (N.D. Ohio Feb. 26, 2015) (finding "no evidence offered by [objector] or accessible to [Class Counsel which] substantiates his vague claim of class membership" and overruling objection).

## CONCLUSION

Objector Frank has not asserted any valid argument or evidence to suggest that the proposed Settlement is unfair, inadequate, or that the requested attorneys' fees are unreasonable or unfair.  Nor has Objector Frank established that he has standing to object to the Settlement in the first place.  Accordingly, the Court should overrule Objector Frank's Objection in total, find the proposed Settlement to be fair, reasonable, and adequate, enter the proposed Final Approval Order, and grant Class Counsel's request for attorneys' fees, expenses, and incentive awards. Class Counsel also requests any further and other relief as the Court deems just and appropriate.

Dated: January 4, 2017

Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN WHITE**

**STRANGE & BUTLER LLP**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@mdattorney.com*

*/s/ Brian Russell Strange*
Brian Russell Strange
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Tel: 310-207-5055
*bstrange@strangeandbutler.com*

*Executive Committee Member*

*Executive Committee Member*

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*