# EXHIBIT 1

Case: 1:12-md-02358-JDW   Document: 172-1   Filed: 01/04/17   Page 2 of 188 PageID #:
Case: 1:11-cv-07972 Document #: 1082 Filed: 08/08/13 Page 1 of 35 PageID #:842
3340



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No. 11-CV-07972<br><br>CLASS ACTION<br><br>Hon. James B. Zagel |
| Plaintiffs, | |
| v. | |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation | |
| Defendants. | |
| THEODORE H. FRANK, | |
| Objector. | |

---

## THEODORE H. FRANK'S OBJECTION TO SETTLEMENT

---

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Objector Theodore H. Frank*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................... I

**TABLE OF AUTHORITIES** ............................................................................................. II

**INTRODUCTION** ............................................................................................................... 1

**PRELIMINARY STATEMENT** ......................................................................................... 2

I.  Objector Frank Is a Member of the Class, and Intends to Appear Through Counsel at the Fairness Hearing. ........................................................................................................ 3

II.  A Court Owes a Fiduciary Duty to Unnamed Class Members. ..................................... 4

III.  The Settlement's Motion Schedule Violates Rule 23(h). ............................................... 5

IV.  The Settlement Contains Numerous Signs of Self-Dealing. .......................................... 6

    A.  Class Counsel's Request for a Disproportionate Award Reflects Self-Dealing. ............ 9

        1.  Class counsel's $4.5 million request will likely consume 70% of the constructive common fund. ................................................................................................... 9

        2.  Notice and administration costs are not a class benefit. ........................................ 12

    B.  The Settlement's "Clear Sailing" Provision Shows Self-Dealing. ................................. 15

    C.  The Segregated Fee Fund Reflects Self-Dealing. ......................................................... 16

    D.  Setting the Claims Deadline Several Months After the Fairness Hearing is Further Evidence of Self-Dealing. ........................................................................................... 17

V.  The Distended Incentive Awards Are Improper. ......................................................... 19

VI.  The Parties Have Artificially Burdened the Right of Objection; No Positive Inference Should Be Drawn from Few Objections. ...................................................................... 20

**CONCLUSION** ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. Van Kampen Funds, Inc.,*
No. 01 C 7538, 2006 WL 163023, 2006 U.S. Dist. LEXIS 2129 (N.D. Ill. Jan. 18, 2006) ................................................................................................................. 9

*Besinga v. United States,*
923 F.2d 133 (9th Cir. 1991) ............................................................................... 13

*Brown v. Stackler,*

612 F.2d 1057 (7th Cir. 1980) ............................................................................. 24

*Burden v. Selectquote Ins. Servs.,*
No C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 5, 2013) ....................... 10

*Childs v. United Life Ins. Co.,*
No 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113 (N.D. Okla. May 21, 2012) ....................... 15

*Clark v. Universal Builders, Inc.,*
501 F.2d 324 (7th Cir. 1974) ............................................................................... 23

*Crawford v. Equifax Payment Servs.,*
201 F.3d 877 (7th Cir. 2000) .................................................................. 8, 11, 20, 23

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
662 F.3d 913 (7th Cir. 2011) ............................................................................ 7, 17

*De Leon v. Bank of Am.,*
No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) ...................... 10

*Dennis v. Kellogg Co.,*
697 F.3d 858 (9th Cir. 2012) ..................................................................... 12, 17, 18

*Devlin v. Scardelletti,*
536 U.S. 1 (2002) ............................................................................................... 22

*Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ................................................................................ 12

Case 1:12-md-02358-JDW Document 172-1 Filed 01/04/17 Page 5 of 188 PageID #:
Case: 1:11-cv-07972 Document #: 1082 Filed: 05/09/19 Page 4 of 36 PageID #:
3343

*Felix v. Northstar Location Servs..*,
    No. 11-CV-00166(JJM),
    2013 U.S. Dist. LEXIS 74717 (W.D.N.Y. May 28, 2013) ........................................................11

*Ferrington v. McAfee, Inc..*,
    No. 10-cv-1455-LHK,
    2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ........................................................18

*Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal.) ........................................................22

*Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA,
    2013 U.S. Dist. LEXIS 97760 (N.D. Cal. Jul. 11, 2013) ........................................................20

*Freebird, Inc. v. Merit Energy Co.*,
    No. 10-1154-KHV,
    2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) ........................................22, 23

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
    2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ........................................10, 21, 23

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
    2013 U.S. Dist. LEXIS 92650 (W.D. Mo. Jul. 12, 2013) ........................................................10

*Hecht v. United Collection Bureau*,
    691 F.3d 218 (2d Cir. 2012) ........................................................13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................6, 9

*In re TD Ameritrade Accountholder Litig.*,
    266 F.R.D. 418 (N.D. Cal. 2009) ........................................................13

*In re Aqua Dots Prods. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ........................................................13, 17

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ........................................1, 9, 11, 12, 14, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................*passim*

Case 1:12-md-02358-JDW   Document 172-1   Filed 01/04/17   Page 6 of 188 PageID #:
Case: 1:11-cv-07972 Document #: 1082 Filed: 08/09/19 Page 5 of 35 PageID #:
3344

*In re Classmates.com Consol. Litig.,*  No. 09-cv-0045-RAJ
  2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ............................................... 2

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,*
  418 F.3d 277 (3d Cir. 2005) ............................................................................................. 8

*In re Continental Illinois Secs. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ...................................................................................... 20-21

*In re GMC Engine Interchange Litig.,*
  594 F.2d 1106 (7th Cir. 1979) ............................................................................... 4, 19, 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ..........................................................................7, 8, 12, 16, 18, 21

*In re Heartland Payment Sys.,*
  851 F. Supp. 2d 1040 (S.D Tex. 2012) ........................................................................... 12

*In re HP Inkjet Printer Litig.,*
  716 F.3d 1173 (9th Cir. 2013) ....................................................................................... 19

*In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.,*
  733 F. Supp. 2d 997, 1014 (E.D. Wis. 2010) ................................................................. 9

*In re LivingSocial Mktg. & Sales Practices Litig.,*
  MDL 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22,
  2013) ........................................................................................................................ 11, 12

*In re Mercury Interactive Corp. Secs. Litig.,*
  618 F.3d 988 (9th Cir. 2010) .......................................................................................1, 5

*In re Motor Fuel Temperature Sales Practices Litig.,*
  No 07-md-01840-KHV-JPO
  Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011)............................................................ 21

*In re Motor Fuel Temperature Sales Practices Litig.,*
  No 07-md-01840-KHV-JPO
  2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012) ..................................... 22

*In re Wells Fargo Secs. Litig.,*
  157 F.R.D. 467 (N.D. Cal. 1994)................................................................................... 14

*Int'l Precious Metals Corp. v. Waters,*
    530 U.S. 1223 (2000) .................................................................................................15

*Johnson v. Comerica.,*
    83 F.3d 241 (8th Cir. 1996) .....................................................................................12

*Kamilewicz v. Bank of Boston,*
    100 F.3d 1348 (7th Cir. 1996) .................................................................................15

*Kaufman v. Am. Express Travel Related Servs.,*
    283 F.R.D. 404 (N.D. Ill. 2012) ..............................................................................18

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) .............................................................................14, 19

*Klier v. Elf Atochem N. Am. Inc.,*
    658 F.3d 468 (5th Cir. 2011) ...................................................................................12

*Lagarde v. Support.com, Inc.,*
    No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ............11

*Lemus v. H&R Block Enters. LLC,* No. C 09-3179-SI, 2012 U.S. Dist. LEXIS 119026, a(N.D.
    Cal. Aug. 22, 2012), *modified on other grounds on reconsideration* 2012 U.S. Dist. LEXIS
    128514 (Sept. 10, 2012) ...........................................................................................18

*Lobatz v. U.S. West Cellular of Cal. Inc.,*
    222 F.3d 1142 (9th Cir. 2000) .................................................................................17

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
    834 F.2d 677 (7th Cir. 1987) ...............................................................................4, 21

*Mayer v. Spanel Int'l Ltd.,*
    51 F.3d 670 (7th Cir. 1995) .......................................................................................6

*McClintic v. Lithia Motors,*
    No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ............23

*Mirfasihi v. Fleet Mortg. Corp.,*
    356 F.3d 781 (7th Cir. 2004) ..........................................................................4, 7, 8, 12

*Mirfasihi v. Fleet Mortg. Corp.,*
    450 F.3d 745 (7th Cir. 2006) .....................................................................................4

Case 1:12-md-02358-JDW Document 172-1 Filed 01/04/17 Page 8 of 188 PageID #:
Case: 1:11-cv-07972 Document #: 1082 Filed: 05/09/19 Page 7 of 35 PageID #:
3346

*Mifasihi v. Fleet Mortg. Corp.*,
 551 F.3d 682 (7th Cir. 2008) ............................................................................... 6

*Montgomery v. Aetna Plywood, Inc.*, 1999 WL 172313, 1999 U.S. Dist. LEXIS 4432,
 (N.D. Ill. March 18, 1999) .................................................................................. 9

*Murray v. GMAC Mortg. Corp.*,
 434 F.3d 948 (7th Cir. 2006) ..................................................................... 8, 11, 19

*Radcliffe v. Experian Info Solutions*,
 715 F.3d 1157 (9th Cir. 2013) .......................................................................... 20

*Reynolds v. Beneficial Nat'l Bank*,
 288 F.3d 277 (7th Cir. 2002) ........................................................................... 4, 5

*Robert F. Booth Trust v. Crowley*,
 687 F.3d 314 (7th Cir. 2012) ............................................................................. 2

*Smith v. Levine Leichtman Capital*,
 No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) .......... 10, 21

*Sobel v. Hertz Corp.*,
 No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984
 (D. Nev. Jun. 27, 2011) ................................................................................... 16

*Spillman v. RPM Pizza, LLC*,
 No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) .................... 11

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ..................................................................... 6, 7, 8

*Strong v. BellSouth Telcoms. Inc.*,
 173 F.R.D. 167 (W.D. La. 1997), *aff'd* 137 F.3d 844 (5th Cir. 1998) ......................... 16

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011) (*en banc*) ............................................................. 11

*Swedish Hosp. Corp v. Shalala*,
 1 F.3d 1261(D.C. Cir. 1993)............................................................................. 14

*Synfuel Technologies v. DHL Express (USA)*,
 463 F.3d 646 (7th Cir. 2006) ...................................................................... 4, 10, 18

Case 1:12-md-02358-JDW   Document 172-1   Filed 01/04/17   Page 9 of 188 PageID #:
Case: 1:11-cv-07972   Document #: 1082   Filed: 05/08/15 Page 8 of 35 PageID #:
3347

*Thorogood v. Sears Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) ............................................................................. 7

*Trombley v. Bank of Am. Corp.*,
    No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D. R.I. May 3, 2012) ................... 18

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d (C.D. Cal. 2010) ..................................................................... 11

*Twigg v. Sears, Roebuck & Co.*,
    153 F.3d 1222 (11th Cir. 1998) ....................................................................... 13

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) .......................................................................... 11

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) ............................... 4, 5, 15, 16, 18, 20, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................. 14

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ........................................................................... 15

## Rules and Statutes

28 U.S.C. § 1713 ......................................................................................... 15

Fed. R. Civ. Proc. 23 .................................................................................... 23

Fed. R. Civ. Proc. 23(a)(4) ........................................................................ 17, 19

Fed. R. Civ. Proc. 23(e) ........................................................................ 5, 6, 7, 13

Fed. R. Civ. Proc. 23(h) ........................................................................... 1, 5-6

Case 1:12-md-02358-JDW Document 173 Filed 01/04/17 Page 10 of 188 PageID #:
3348
Case: 1:11-cv-07972 Document: 103 Filed: 08/08/13 Page 9 of 195 PageID #:880

## Other Authorities

American Law Institute,
   *Principles of the Law of Aggregate Litigation* § 3.05 (2010) .................................................... 8

Brickman, Lester,
   *Lawyer Barons* (2011) ........................................................................................................17

Brunet, Edward,
   *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. L.
   FORUM. 403 (2003) ........................................................................................................ 2-3

Coffee, Jr., John C., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in
   the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ......................................... 6-7

Eisenberg, Theodore & Geoffrey Miller,
   *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal
   Stud. 248, 262 (2010) .......................................................................................................... 9

Eisenberg, Theodore & Geoffrey Miller,
   *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*,
   57 VAND. L. REV. 1529 (2004)..........................................................................................21

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language
   Guide* (2010), *available at*
   http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ...............10

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2008) .................................. 12, 19

Fitzpatrick, Brian T.,
   *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009).......................................3

Henderson, William D.,
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L.
   REV. 813 (2003)..................................................................................................................16

Jones, Ashby,
   *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011) ......................................2

Karlsgodt, Paul & Raj Chohan

    *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA:
    CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ............................................................. 3

Klonoff, Robert H.,

    *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727
    (2008) ......................................................................................................................... 22

Leslie, Christopher R.,

    *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L.
    REV. 71 (2007) ..................................................................................................... 20, 22

    Notes of Advisory Committee to 2003 Amendments to Rule 23 ............................................. 5

Silver Charles., *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000) ................................. 17

Zabcik, Brian, *Conscientious Objector*

    Litigation 11 (Spring 2013), *available at* http://is.gd/alm_frank2013 ........................................... 2

Case: 11-cv-07972    Document #: 1037 Filed: 08/08/13 Page 1 of 55 PageID #: 892

## INTRODUCTION

This class settlement reimburses class members who submit a claim form for their purchase of certain dietary supplements containing glucosamine. The settlement as structured, however, omits key pieces to the puzzle necessary to analyze the fairness of the settlement. *First*, while the objection deadline is set for August 1, 2013, class counsel's fee application has not been filed and is not due until August 14, 2013. This schedule violates Rule 23(h) because "[t]he plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). While the settlement allows class counsel to seek an attorney award of $4.5 million, without the fee application, class members have no information as to the actual amount of the fee request, class counsel's lodestar and the basis for such request. The settlement must be rejected for this reason alone.

*Second*, the class has no information as to the actual amount of class benefit. Class members who submit a claim form will be reimbursed $3 per bottle up to $12 (with no proof of purchase) or $5 per bottle up to $50 (with proof of purchase). But the settling parties have presented no information as to the amount of claims received. And because the claims period deadline (December 3, 2013) is three months after the fairness hearing (September 4, 2013), the settlement as structured deprives class members and this Court of such information. Understanding the actual class benefit, however, is crucial in analyzing the settlement. *See, e.g., In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees."). This is not a trivial concern: even a generous estimate of a 1% claims rate reveals that the class benefit will not likely exceed $2 million. As such, a class counsel award of $4.5 million would consume 70% of the constructive common fund ($6.5M constructive common fund = $4.5M class counsel award + $2M class benefit). Under any circumstances, the disproportion is unfair

A 70% disproportionate class counsel award is just one of the many "warning signs" of self-

dealing that caused the Ninth Circuit to strike down a similarly structured settlement in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Like *Bluetooth*, this settlement contains multiple indicia of self-dealing including a separate fee award combined with a clear-sailing agreement precluding the defendant from challenging the fee. *Id.* For these and other reasons outlined below, the settlement should be rejected.

## PRELIMINARY STATEMENT

Melissa A. Holyoak is an attorney with the public interest law firm Center for Class Action Fairness ("CCAF") and is representing *pro bono* Objector Frank, who is the non-profit's founder and president. CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements, and it is has won millions of dollars for class members. *See, e.g.*, Brian Zabcik, *Conscientious Objector*, LITIGATION 11 (Spring 2013), *available at* http://is.gd/alm_frank2013 (redirect); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011); *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel (and a *cy pres* charity) at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because experience has shown that class action attorneys often employ *ad hominem* attacks in attempt to discredit objections, it is perhaps relevant to distinguish this objector's intentions from the agenda of those who are often styled "professional objectors." While CCAF attorneys have represented multiple objectors (including those who successfully appealed in several federal cases in the past two years, *e.g.*, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012)), CCAF is not a "professional objector." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness*

*Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not the Center's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing the Center from professional objectors). While Frank has brought several objections to unfair class action settlements on behalf of himself and other clients, the majority of which have been successful, he refuses to engage in *quid pro quo* settlements and does not extort attorneys; he has never withdrawn an objection in exchange for payment.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Frank is willing to stipulate to an injunction prohibiting himself and his attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).

## I.    Objector Frank Is a Member of the Class, and Intends to Appear Through Counsel at the Fairness Hearing.

As avowed in his accompanying Declaration ("Frank Decl."), Theodore Harold Frank is a member of the class. Frank Decl. ¶¶ 3-8. Frank's home address is 11307 Bulova Lane, Fairfax, VA, 22030. Frank Decl. ¶ 2. His phone number is (703) 203-3848, and his email address is tedfrank@gmail.com. *Id.*

Frank is a consumer with no proof of purchase (Frank Decl. ¶ 5), but received individual notice from the claims administrator (Frank Decl. ¶ 4), and attests on information and belief that he purchased the Covered Product Kirkland-brand Extra Strength Glucosamine HCl 1500 mg with MSM 1500 mg from the Arlington, VA Costco store in 2011 and/or 2012. Frank Decl. ¶ 8. Frank thus qualifies as a class member, with standing to object to the settlement and fee request.

Objector Frank intends to appear through his attorney Melissa A. Holyoak at the final approval hearing, in the above-captioned matter, scheduled for September 4, 2013 at 11:00 a.m. Ms. Holyoak a member of the bar of this district; her contact information is listed on the cover page of

Case: 1:12-md-02358-JDW   Document #: 132-1   Filed: 01/04/17   Page 15 of 188 PageID #:
3353
Case: 1:11-cv-07972   Document #: 100   Filed: 08/08/13   Page 14 of 85 PageID #: 895

this Objection. Frank wishes to discuss matters raised in this Objection. Frank does not intend to call any witnesses, but reserves the right to make use of all documents entered on to the docket by any settling party or objector. Frank also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval. He joins any objections not inconsistent with the objections he makes below.

## II.    A Court Owes a Fiduciary Duty to Unnamed Class Members.

A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("*Mirfasihi II*") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). As fiduciaries, courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to approval. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

There should be no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

An arm's length negotiation, likewise, is necessary but not itself sufficient for approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). As the Seventh Circuit has described it, "[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members … district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) ("*Mirfasihi I*"). This settlement presents one such instantiation of the conflict because the settlement's structure will inevitably result in a class counsel award that will drastically exceed the actual aggregate class recovery. *Bluetooth*, 654 F.3d at 945; *Vought v. Bank of Am.*, 901 F. Supp. 2d

Case: 1:12-md-02358-JDW    Document #: 132-1    Filed: 01/04/17    Page 16 of 188 PageID #:
Case: 1:11-cv-07972 Document #: 100 Filed: 08/08/13 Page 15 of 35 PageID #:
3354

1071, 1100 (C.D. Ill. Oct. 4, 2012) ("There must be some point at which the recovery to the class is
so outweighed by attorneys' fees that … the allocation is not fair.").

### III.    The Settlement's Motion Schedule Violates Rule 23(h).

Under the plain language of Fed. R. Civ. P. 23(h), notice of a motion for class counsel
attorneys' fees must be "directed to class members in a reasonable manner." Thus, class counsel is
required to submit their basis for attorneys' fees well before objections are due so that the class has a
full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d
988 (9th Cir. 2010). Under the Preliminary Approval Order, objections must be postmarked by
August 1, 2013, but the legal basis and evidence in support of the fee request (i.e., the fee
application) has not yet been filed and is not due until August 14, 2013, two weeks after the
objection deadline. Preliminary Approval Order (Dkt. 89) at 9. The settling parties prompted this
schedule with their proposed order for preliminary approval. *See* Exhibit F to Settlement Agreement
(Dkt. 73-1) at 65, 67 (¶¶ 7(d), 9(a)) (requesting fee application deadline 21 days before fairness
hearing, and objection deadline 45 days after notice).

As a matter of law, this is insufficient notice in violation of Rule 23(h).[1] "The plain text of
the rule requires a district court to set the deadline for objections to counsel's fee request on a date
after the motion and documents supporting it have been filed." *Mercury Interactive*, 618 F.3d at 993.
Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to
the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory
Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court
review of a proposed settlement under Rule 23(e), it would be important to require the filing of at

---

[1] It's worth noting that even before the adoption of 23(h) in 2003, the Seventh Circuit recognized that
objectors should not be deprived of the fee application. *See Reynolds*, 288 F.3d at 284, 286 ("To conceal the
application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an
endemic problem in class action litigation and the fee applications of such attorneys must therefore be given
beady-eyed scrutiny by the district judge.").

least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e).").[2]

This lack of notice was actually prejudicial. "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008) ("*Mirfasihi II*"). The failure to file a timely fee motion deprives class members of a chance to analyze any lodestar data that will be presented for crosscheck purposes. *See, e.g., Bluetooth*, 654 F.3d at 945 (noting that lodestar cross-check can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."). Moreover, the clear sailing clause that class counsel negotiated for themselves, *see* Settlement ¶ 9, means that no one—neither defendants nor objectors—will be able to scrutinize or challenge class counsel's fee request. The breach of Rule 23(h) unfairly shrouds class counsel's fee request from scrutiny and is independent reason to reject the settlement.

## IV.    The Settlement Contains Numerous Signs of Self-Dealing.

The concerns about the potential conflict of interest between class counsel and their clients "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Bluetooth*, 654 F.3d at 947. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d 938, 964 (9th Cir. 2003); *accord Bluetooth*, 654 F.3d at 947; John C. Coffee, Jr., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ("The classic agency

---

[2] Although the Seventh Circuit has not weighed in on the question, a circuit split should not be created "without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 754 (7th Cir. 1995) (Easterbrook, J.), *cert denied*, 516 U.S. 1008 (1995).

cost problem in class actions involves the 'sweetheart' settlement, in which the plaintiff's attorney trades a high fee award for a low recovery.").

It is not enough that the settlement happened to be at "arm's length" without explicit collusion; the settlement must be objectively reasonable as well and avoid self-dealing by the class counsel. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton*, 327 F.3d at 960). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Bluetooth*, 654 F.3d at 949.

The Seventh Circuit also recognizes the concerns of self-dealing. *Mirfasihi I*, 356 F.3d at 785. Indeed, these concerns are yet heightened "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Class counsel must demonstrate that "they would prosecute the case in the interest of the class…rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Id.* (citations omitted).

Class counsel wrongly argue that a negotiated fee is presumptively reasonable (Dkt. 389 at 22). Yet two parties cannot legitimately agree to shortchange absent parties to the negotiation. *See Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008) (observing that the court's 23(e) "responsibility [is] difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the

class."). *Hensley*, cited by plaintiffs, is inapposite: there, plaintiffs had successfully litigated a § 1983 action, and the only remaining dispute was the additional amount of fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 428-29 (1983). Here, every dollar going to the attorneys will be at the expense of the class.[3]

Thus, a settlement can be unfair even when negotiated at arms' length: class counsel can achieve an impermissible self-dealing settlement simply through a defendant's and a mediator's indifference to the allocation. *Staton*, 327 F.3d at 964. The relevant inquiry is whether the attorneys are unfairly attuned to their self-interest at the expense of the class. *Mirfasihi I*, 356 F.3d at 785; *Bluetooth*, 654 F.3d at 947; *cf. also* ALI Principles § 3.05, comment b at 208 (2010). *Bluetooth* suggests a nonexclusive list of three possible signs of self-dealing. *Bluetooth*, 654 F.3d at 947 (listing warning signs to include (1) disproportionate distribution to counsel; (2) clear sailing agreement; and (3) reversion of excess fees to the defendant) (citing, *inter alia*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Mirfasihi I*, 356 F.3d at 785). The same self-dealing warning signs that caused the Ninth Circuit to strike down *Bluetooth* are present here.

---

[3] This is true regardless of whether fees were negotiated or discussed after agreement was reached between the parties on all other terms of the settlement. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 308 (3d Cir. 2005) ("Furthermore, 'even if counsel did not discuss fees until after they reached a settlement agreement, [such a fact] would not allay our concern since the Task Force recommended that fee negotiations be postponed until the settlement was judicially approved, not merely until the date the parties allege to have reached an agreement.'") (quoting *In re GMC Pick-Up Litig.* 55 F.3d at 804.)

More generally, the settling parties are rational economic actors: even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. Because these future fee negotiations are not an unexpected surprise, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. This is invariably at the expense of the class when there is a separate fund for fees, because both class counsel and the defendants have an incentive to leave extra "space" for that future negotiation in a bifurcated settlement that the parties do not need to have when it is simply negotiating for a single pot of money to go into a common fund. *Cf. Bluetooth*, 654 F.3d at 948-49 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair). "In other words, the negotiation of class counsel's attorneys' fees is not exempt from the truism that there is no such things a free lunch." *Staton*, 327 F.3d at 964.

---

### A.   Class Counsel's Request for a Disproportionate Award Reflects Self-Dealing.

The first sign of self-dealing is class counsel's request for a "disproportionate distribution of the settlement." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). Courts in this Circuit have recognized that "25% is the median fee award in cases involving recoveries of $ 5-15 million." *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, 2006 U.S. Dist. LEXIS 2129, at *19 (N.D. Ill. Jan. 18, 2006) (rejecting request for 30% of gross fund); *Montgomery v. Aetna Plywood, Inc.*, 1999 WL 172313, 1999 U.S. Dist. LEXIS 4432, at *16 (N.D. Ill. March 18, 1999), *aff'd in part, rev'd in part on other grounds*, 231 F.3d 399 (7th Cir. 2000); *see also In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1014 (E.D. Wis. 2010) (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248, 262 (2010)) ("[T]he mean fee in 'consumer' cases is 25%."); *cf. Bluetooth*, 654 F.3d at 942 (noting that benchmark for reasonable award in a case alleging economic injury is 25% of the class benefit). In performing the disproportionality analysis, courts should compare the fees and the value of the funds *actually available*, rather than the amount potentially available. "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013).

### 1.   Class counsel's $4.5 million request will likely consume 70% of the constructive common fund.

Here, while class counsel has not yet submitted their fee application, the settlement permits class counsel to request up to $4,500,000 in fees and expenses. *See* Settlement ¶¶ 9(a)-9(b). Because the settling parties set the claims deadline three months after the final fairness hearing, *see* Preliminary Approval Order (Dkt. 89) at 3, 7, class members and this Court are unnecessarily deprived of crucial information for analyzing the actual class benefit compared to a $4.5 million fee request. The absence of the actual class benefit (total amount of claims) is particularly egregious because claims rates in settlements with low value relief are notoriously low.

The settling parties have designed a claims-made[4] settlement which requires the estimated 12 million class member households[5] to submit claim forms in order to receive settlement payments. Those class members without proof of purchase are entitled to $3 per product, up to a maximum of 4 bottles or $12. Settlement Agreement ¶ 17(c). Those class members with proof of purchase are entitled to $5 per product, up to a maximum of 10 bottles or $50. Settlement ¶ 17(b). If claims do not reach $2 million, claims will be doubled (for claimants with no proof of purchase) or tripled (for claimants with proof of purchase). Settlement ¶ 17(d)(i) & (d)(ii). If payments still remain less than $2 million, defendants will remit the difference to the third-party Orthopaedic Research and Education Foundation, bringing total payments to $2 million. Settlement ¶ 17(d)(iii).[6]

---

[4] When a claims-made process is employed—in lieu of direct payment mechanisms—the court should assure itself that there is a valid reason for its use. "In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("FJC Guide"), at 6 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

If it is employed for no ostensible reason other than to depress class recovery, the settlement should be rejected as unreasonable. Courts across the country are beginning to awake to this abuse. *See, e.g., Burden v. Selectquote Ins. Servs.*, No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977, at *3 (N.D. Cal. Feb. 5, 2013) (where defendant can already "ascertain the identity and location of the class member" there is no apparent reason for a claims process); *Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8 (N.D. Cal. Nov. 15, 2012) (questioning use of claims submission process when it was not necessary to identify most absent class members); *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *10 (W.D. Mo. Oct. 12, 2012) (denying preliminary approval of small value claims made settlement), *later renegotiated as a direct payment* s*ettlement*, 2013 U.S. Dist. LEXIS 92650 (W.D. Mo. Jul. 2, 2013); *De Leon v. Bank of Am.*, No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124, at *62 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and rejecting the claims procedure as "not reasonable").

Here, the fact that the parties have properly disseminated direct notice to 4.84 million households—more than one third of the class (*see* Mem. in Support of Preliminary Approval (Dkt. 73) at 20)—means that certain purchases can be accounted for without the need for self-identification. The parties need to justify why they are not remitting relief on those purchases directly, but instead are forcing class members to jump through the taxing hoop of a claim form.

[5] *See* Mem. in Support of Preliminary Approval at 8.

[6] The settlement also provides prospective non-class injunctive relief in the form of temporary labeling changes. Settlement ¶ 8(a)-(e). Seventh Circuit law makes clear that such relief is not a compensable benefit that justifies attorneys' fees: "It is future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes. The class complaint sought [money damages]. The fairness of the settlement

---

Based on the low value relief available, the claims rate will likely be well under 1%. *See Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *Livingsocial*, 2013 U.S. Dist. LEXIS 40059, at *52 (.25% claims rate); *see also Sullivan v. DB Invs., Inc*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."). These rates accord with intuition. *See Murray*, 434 F.3d at 952 ("Given the tiny sum per person, who would bother to mail a claim.").

Even utilizing a generous 1% claims rate, the total class payout would not likely exceed $1.6 million with $400,000 left over for *cy pres*.[7] Class counsel would receive nearly ***three times more*** than the class. Indeed, if the claims rate is closer to the .25% rate in *Spillman*, *Lagarde* or *LivingSocial*, the class would receive only $400,000 and $1.6 million would shift to *cy pres*. The difference in allocation is material. "Class members are not indifferent to whether funds are distributed to them

---

must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654; *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (defendant's injunctive agreement not to use abusive debt collection letter is a "gain" of "nothing" for class members); *accord Vassalle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013) (illusory, temporary and prospective relief is of no benefit); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) ("No changes to future advertising by [the defendant] will benefit those who already were misled by [the defendant]'s representations."). The class is composed of people who have done business with the defendants *in the past*, while the prospective injunctive relief can only benefit those who do business with defendants *in the future. See Felix v. Northstar Location Servs.*,11-CV-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *32-*33 (W.D.N.Y. May 28, 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction).

[7] Utilizing 1% of the eligible 12,000,000 households, claims would total 120,000. The vast majority of those will likely involve no proof of purchase. *See e.g., Baby Prods.*, 708 F.3d at 175 (explaining that "the vast majority of claimants have not submitted documentary proof entitling them to a greater award, casting doubt on [the] assumption [that documentary proof is a low bar]" and suggesting instead that "[o]ther means of preventing fraud could have been explored."). Of the 120,000 claims, estimating 96,000 non-proof of purchase claims ($3 x 4 bottle maximum x 96,000 = $1,152,000) and 24,000 proof of purchase claims ($5 x 4 bottles x 24,000 = $480,000), the total class payout would be just over $1.6 million with $400,000 left over for *cy pres*.

or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178; *id.* at 178-79 (counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class" and fees should reflect that).

Based on either estimate, class counsel's $4.5 million request totals 70% of the $6.5 million constructive common fund[8] ($4.5 million fees + $1.6 million class benefit + $400,000 *cy pres*[9]). By any measure, 70% to counsel and 30% to the class and *cy pres* is grossly disproportionate. *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (noting that a 38.9% fee award would be "clearly excessive" in light of 25% benchmark). This disproportion is beyond the pale and would reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted). This Court should deny final approval until class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179.

### 2. Notice and administration costs are not a class benefit.

It is not clear whether the plaintiffs are attempting to credit notice and administration costs toward their accounting of the class benefit. *Compare* Long-Form Class Notice ¶ 5(c) (appearing to

---

[8] A severable fee structure "is, for practical purposes, a constructive common fund." *In re GMC Trucks*, 55 F.3d at 820; *id.* at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Manual for Complex Litigation* § 21.71 (4th ed. 2008).

[9] The calculation also generously presumes that a dollar to *cy pres* should be treated as a dollar to the class. But as Judge Posner explained, "[t]here is no indirect benefit to the class from the defendant's giving the money to someone else." *Mirfasihi*, 356 F.3d at 784. Simply, direct payment matters. A dollar to the *cy pres* is not worth a dollar to the class. *See, e.g., In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (citing *Mirfasihi* and deciding to discount *cy pres* relief by half for purposes of fee award); *Livingsocial*, MDL No. 2254, 2013 U.S. Dist. LEXIS 40059, at *52-*53 (D.D.C. Mar. 22, 2013) (considering the proportion of *cy pres* to direct benefit and cutting fees to 18%). "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Baby Prods.*, 708 F.3d at 174. Even in a claims-made settlement, "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to class members" not to class counsel or third-party *cy pres* beneficiaries. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

---

designate costs as a benefit) *and* Mem. in Support of Prelim. Approval at 16 (noting the $1.5 million notice plan in accounting of benefits) *with* Settlement ¶¶ 7-10 (describing class benefits; omitting notice costs). Either way, the notion that class counsel is entitled to count the costs of claim administration as a benefit to the class is fundamentally mistaken, poor public policy, and contrary to binding law. Awarding fees regardless of whether settlement money is paid to settlement administrators, to the postal service, or to the class members—who are the attorneys' actual clients—creates poor incentives that contradict the purposes behind this Circuit's "percentage of the recovery" fee approach.

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) is informative. It recognizes that items such as notice and class administration expenses are a social cost that present an argument against class certification, rather than a benefit to the class. 654 F.3d 751.[10] Every dollar the settlement administrator receives is a dollar that is not available to the class in settlement. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, it would have no financial incentive to oversee the efforts of the administrator.

---

[10] This is so even where the costs are being footed by the defendant. The defendant has every incentive to fund notice, because constitutionally adequate notice is a prerequisite for the defendant to obtain the only consideration it receives from a settlement: the waiver and release of class members' claims. *See e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action) (citing cases); *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same). Notice enables class members to make claims, but those amounts claimed are already included in the final tabulation of settlement value, there is no need for double-counting by including the costs of the notice in addition to its yield. As such, the expense of class notice should not be counted as a benefit on the class's side of the ledger. Refusing to count notice costs is just one instantiation of the general principle that costs imposed on the defendant—divorced from class benefits—are not the measure of compensable class value. *See Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

These principles are not solely a matter of common-sense economics; Judge Vaughn Walker made precisely this point in a case where he was evaluating competing bids for lead class counsel. "First, an attorney generally has no incentive to minimize litigation expenses unless his fee award is inversely related to such expenses. Second, when an attorney treats a resource devoted to litigation as a reimbursable expense, the attorney has a clear incentive to substitute that resource for those paid out of the attorney fee, even if it increases the overall cost of litigation to the client." *In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 470 (N.D. Cal. 1994). Conversely: "If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses." *Id.* at 471. This echoes the alignment of interests principles that undergirds the "percentage-of-the-fund" approach in calculating fee awards. *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (D.C. Cir. 1993). *See also Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (attorney fee calculations should use methods that align the interests of attorney and client).

Just as class members are not indifferent between receiving money and having a third-party beneficiary receive money, *see Baby Prods.*, *supra*, they are not indifferent between a settlement that spends $19 million in administrative costs to distribute $2 million to the class and a settlement that incurs $1 million in administrative costs to distribute $20 million to the class. The latter settlement is worth ten times as much to the class, but, if administrative costs are counted, the two settlements should be treated as identical victories. This is wrong.

To award class counsel a commission on administrative expenses would produce absurd results that contradict federal law. Imagine a hypothetical settlement under the Class Action Fairness Act. The imaginary class action *Potter v. Bailey Building & Loan* settles: the defendant bank will spend $20 million in administrative expenses to precisely redistribute $1 million to the class of Bailey accountholders. Class counsel for Potter, using plaintiffs' argument here, claim that they have produced a $21 million settlement and are entitled to $7 million in fees, to be deducted from the class members' bank accounts. Such a settlement—where class members pay $7 million to attorneys

but receive $1 million in cash—would transgress the language and intent of 28 U.S.C. § 1713, which prohibits settlements where class members lose money. *Cf. Kamilewicz v. Bank of Boston*, 100 F.3d 1348 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing *en banc*) (discussing similarly abusive settlement). But if this Court permits administrative expenses to be counted as a class benefit, the hypothetical Bailey Building & Loan settlement would pass § 1713 muster at the expense of the class members whom § 1713 is meant to protect.

Even if one accepted the $1.5 million notice costs as a "benefit to the class," a $4.5 million class award would still constitute over 56% of the constructive common fund ($8M fund = $4.5M class award + $2M class/*cy pres* + $1.5M notice costs) and is clearly excessive.

## B. The Settlement's "Clear Sailing" Provision Shows Self-Dealing.

The settlement has a "clear sailing" provision (Settlement ¶¶ 9(a) & 9(b)) providing that Rexall will not oppose class counsel awards of $4.5 million. *Bluetooth*, 654 F.3d at 948. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.*, No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 524; *accord Bluetooth*, 654 F.3d at 948.

"Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought*, 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., *respecting the denial of the petition for a writ of certiorari*);

*accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions."). "[W]hile the present case does not utilize a classic reversionary fund in which attorneys' fees are paid from a common pool that directly reduces the class's recovery, it undoubtedly did not escape either party's attention that every dollar not claimed from the fund was one dollar that [defendant] could use to pay class counsel's fees." *Vought*, 901 F. Supp. 2d at 1101. Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel*, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011). Here, class counsel put its own fees ahead of the interests of the class by negotiating a provision that insulated those fees from challenge by defendants.

### C. The Segregated Fee Fund Reflects Self-Dealing.

Per the settlement agreement, fees, costs and incentive awards will all be paid "separate and apart from" class relief. Settlement ¶¶ 9-10.[11] Thus, the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel— when it does so, the class will benefit from the surplus.

Under the proposed settlement, however, if the Court awards less than the $4.5 million fee that defendants have already agreed to pay to class counsel, the defendant will be the only beneficiary. The settlement is therefore worse for the class than a traditional common fund, yet

---

[11] Despite purportedly not "diminishing or eroding" class relief, in "economic reality" (*In re GMC Trucks,* 55 F.3d at 820; *Strong v. BellSouth Telcoms., Inc.,* 137 F.3d 844, 849 (5th Cir. 1998), the defendant will cut every check and is concerned only with its total liability. The interrelation between fees and class relief cannot be undone with the fiat of a single sentence.

plaintiffs have done nothing to rectify this inferior settlement structure. In effect, they have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" will likely have the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, *Lawyer Barons* 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical).

Moreover, if "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142, 1147 (9th Cir. 2000). When class counsel bring class litigation to benefit themselves, rather than their putative class clients, they cannot meet the adequacy requirements of Rule 23(a)(4), and the class should not be certified. *Aqua Dots*, 654 F.3d 748; *Creative Montessori*, 662 F.3d 913. A $4.5 million class award should be considered part of a constructive common fund, and the fact that it is shielded from the class reflects self-dealing.

**D.    Setting the Claims Deadline Several Months After the Fairness Hearing is Further Evidence of Self-Dealing.**

The settling parties' decision to set the claims deadline well after the fairness hearing can and should be considered another *Bluetooth* warning sign of an unfair settlement, for it is designed to insulate the fee requests from a comparison with the actual amounts paid to class members. Without information regarding the actual value of the settlement, class counsel could more readily disguise how excessive their fee request is. *Cf. Dennis*, 697 F.3d at 869 (rejecting a similar "Just trust us. Uphold the settlement now, and we'll tell you what it is later" argument). Here, the claims deadline (December 3, 2013) is three months after the final fairness hearing (September 4, 2013). *See* Preliminary Approval Order (Dkt. 89) at 9. As explained above, because the claims deadline is after the fairness hearing, the court and class members cannot know the total amount of claims paid or

the actual class benefit. *See* Section IV.A.1.

The amount the class actually receives under the settlement, however, is a critical component in performing the *Bluetooth* disproportionality analysis. *Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *In re GMC Pick-Up*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."); *cf. Dennis*, 697 F.3d at 868 (instructing that settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious"). A consensus of district courts post-*Bluetooth* have applied disproportionality analysis in this manner. *E.g. Lemus v. H&R Block Enters. LLC*, No. C 09-3179-SI, 2012 U.S. Dist. LEXIS 119026, at *21-22 (N.D. Cal. Aug. 22, 2012), *modified on other grounds on reconsideration* 2012 U.S. Dist. LEXIS 128514 (Sept. 10, 2012); *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8-9 (D.R.I. May 3, 2012); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012). Courts in this district are in accord. *Vought v. Bank of Am.*, N.A., 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement); *Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between attorneys' fees and class claims' values to be "troubling and ultimately unacceptable."). The claims process was unnecessarily structured to prevent valuation of the actual class recovery and further reflects self-dealing.

If the Court does not reject the settlement out of hand for its unfairness, Frank formally requests that the Court abstain from ruling on fees or settlement approval until it can make findings on how much the class has actually received. Failing to do so would constitute reversible error. *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *Synfuel*, 463 F.3d at 654 (reversing approval where "the court did not attempt to quantify the value of plaintiffs' case or even the overall value of

the settlement offer to class members"). "If the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information. Making these findings may also require a court to withhold final approval until the actual distribution of funds can be estimated with reasonable accuracy." *Baby Prods.*, 708 F.3d at 174. Likewise, "[i]n evaluating a fee award, [the district court] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process. This may require it 'to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete.'") *Id.* at 179. (quoting Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2008)). To approve the settlement and fee award *ex ante* would improperly shift the burden of proof from proponents of the settlement to opponents. *See GM Engine Interchange*, 594 F.2d at 1126 n.30 ("[P]roponents of any class settlement always bear the burden of proof on the issue of fairness…"). This allows the court to conduct the necessary disproportionality analysis vis-à-vis the actual amounts claimed rather than overinflated estimates of the settling parties.

"This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff*, 786 F.2d at 325. "For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working they get paid for obtaining results." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013). Deferring judgment will ensure the beneficial results have in fact been obtained.

In short, this case has many of the indicia of self-dealing present in *Bluetooth* and more. The improper self-dealing requires rejection of the settlement.

## V.    The Distended Incentive Awards Are Improper.

The incentive awards of $5,000 for each of the six class representatives are excessive and cast doubt on whether 23(a)(4)'s requirement of adequacy of representation is satisfied. In *Murray v. GMAC Mortg. Corp.*, the court found the disproportionate incentive award of $3,000 proof that "the

class device had been used to obtain leverage for one person's benefit." 434 F.3d 948, 952 (7th Cir. 2006). The Seventh Circuit contrasted the negligible monetary relief per absent class member with the $3,000 class representative award. *Id*; *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000) (contrasting $2,000 named plaintiff award with failure to provide absent class members with monetary relief). *Accord Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) ("There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards."); *Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA, 2013 U.S. Dist. LEXIS 97760, at *7-*8 (N.D. Cal. Jul. 11, 2013) (reducing $500 lead plaintiff request to $100 to be proportional with class claim amounts of $17).

This case is no different. The requested $5,000 incentive awards are 1600 times more than the $3 base award available to class members without proof of purchase. The requested incentive awards should be rejected and counsel against the fairness of the settlement.

## VI. The Parties Have Artificially Burdened the Right of Objection; No Positive Inference Should Be Drawn from Few Objections.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 901 F. Supp. 2d at 1093 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is simply *not* consent. *GM Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. *See In re Continental Illinois Secs. Litig.*, 962 F.2d 566, 573

(7th Cir. 1992) ("No class member objected either--but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule"). Here, of course, there would be no gain from fee reduction because they are segregated. Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp.*, 834 F.2d at 680-81.

As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up*, 55 F.3d at 813; Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction."). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 901 F. Supp. 2d. at 1093.

Yet more conducive to apathetic inaction, the parties have elected a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2012. *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations."). Other courts permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission. *See e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically").

Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013), Declaration of Jennifer M. Keough Regarding Settlement Administration (Dkt. 341) at ¶12 (6,884 of 6,946 opt-out requests (99.1%) were submitted electronically via the settlement website when that option was available).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members. It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. PITT. L. REV. 727, 766 n. 251 (2008); Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. at 128-29. Indeed, notice was distributed in large part via internet, yet absent class members' responses cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

Additional, the settling parties have saddled objectors with two further gratuitous burdens by (1) conditioning the right to appeal on attendance at the fairness hearing, *see* Proposed Preliminary Approval Order ¶ 9(c); and (2) making untoward threats of depositions*, see* Proposed Preliminary Approval Order ¶ 9(d).

*First*, as to the requirement of personal physical appearance at the fairness hearing, it is "unnecessarily burdensome and seem[s] to be designed to discourage class members from filing objections." *Freebird, Inc., v. Merit Energy Co.*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *18-*19 (D. Kan. Dec. 6, 2012). In *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the Supreme Court described what class members must do to undergird a right to appeal: file a timely objection, nothing more. *Id.* at 14. Attempting to require fairness hearing attendance is even more outrageous in a

Case: 1:12-md-02358-JDW   Document: 132-1   Filed: 01/04/17   Page 34 of 188   PageID #:
Case: 1:11-cv-07972   Document #: 100   Filed: 03/09/15   Page 33 of 45   PageID #:
3372

nationwide class settlement. Flying into town, or finding an attorney willing to do so, in order to attend the fairness hearing is a "not insignificant" sacrifice. *Vought*, 901 F. Supp. 2d. at 1093. Moreover, legitimate appeals are a good thing for class members; they ought not to be discouraged. *Crawford*, 201 F.3d at 881.

*Second*, the threat of blanketing objecting class members with depositions is likewise improper. *Freebird*, 2012 U.S. Dist. LEXIS 173075, at *18-*19 (striking proposed requirement that objectors list dates when they are available for deposition). "The taking of depositions of absent class members is—as is true of written interrogatories—appropriate in special circumstances. And, not unlike the use of interrogatories, the party seeking the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members." *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974). There can be no showing of general *ex ante* necessity here, since the objection process already requires a sworn declaration attesting that one is a class member.

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent opt-out and objection process and ultimately rejecting settlement). Together, all these hurdles create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

## CONCLUSION

The Court should deny approval. At the very least, it should defer approval and awarding of fees until the actual number and value of claims is known. For at least two reasons it is not enough to just reduce fees to 25% of the actual recovery. First, the settlement's kicker deprives the class of

that overage. Second, "[i]f…the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).


Dated: August 1, 2013.            /s/ Melissa A. Holyoak

                                  Melissa A. Holyoak, (DC Bar No. 487759)
                                  Center for Class Action Fairness
                                  1718 M Street NW, No. 236
                                  Washington, DC 20036
                                  Phone: (573) 823-5377
                                  Email: melissaholyoak@gmail.com

                                  *Attorney for Theodore H. Frank*

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection of Theodore H. Frank via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Objection of Theodore H. Frank upon the following:

| | |
|---|---|
| Peter N. Freiberg<br>Denlea & Carton LLP<br>One North Broadway<br>Suite 509<br>White Plains, NY 10601 | Stewart M. Weltman<br>Stewart M. Weltman, LLC<br>53 W. Jackson<br>Suite 364<br>Chicago, IL 60604 |
| Hon. James B. Zagel<br>United States District Court for the Northern District of Illinois<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2588<br>219 South Dearborn Street<br>Chicago, IL 60604 | Kara L. McCall<br>Sidley Austin LLP<br>One S. Dearborn Street<br>Chicago, IL 60603 |

Dated: August 1, 2013.

/s/ Melissa A. Holyoak

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X
　　　　　　　　　　　　　　　　　　　　　　　　:
BENJAMIN CAREATHERS,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　:
　　　　　　　v.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
RED BULL NORTH AMERICA, INC.,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant. :
-------------------------------------------------X
DAVID WOLF, *et al.*,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　:
　　　　　　　v.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
RED BULL GMBH, *et al.*,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant. :
-------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: May 12, 2015____ |

13 Civ. 0369 (KPF)

CLASS ACTION

13 Civ. 8008 (KPF)

KATHERINE POLK FAILLA, District Judge:

## FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

This matter came before the Court on May 1, 2015, pursuant to the
Court's Preliminary Approval Order filed on September 3, 2014, for a hearing
on the application of the Plaintiffs for final approval of the settlement set forth
in the Stipulation of Settlement dated July 31, 2014, as amended and filed
with the Court on April 30, 2015 (ECF No. 78) (the "Stipulation"). Due and
adequate notice having been given to the Settlement Class as required in said
Preliminary Approval Order, and the Court having considered all papers filed
and proceedings conducted in these Actions and otherwise being fully
informed, and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.    This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.    The Court has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members.

3.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and consistent with the requirements of due process, the Court hereby finally approves the Settlement and finds that the entire Settlement is, in all respects, fair, reasonable and adequate.  The Court further finds that the Settlement was entered into in good faith following arm's-length negotiations and is not collusive.  The Parties are hereby directed to perform the terms of the Stipulation.

4.    Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, for purposes of effectuating the Settlement, the Court hereby certifies the Settlement Class as follows:

All Persons who purchased Red Bull Products in the United States[1] during the Class Period.  Excluded from the Settlement Class are: (a) employees, officers, directors, agents, and representatives of (1) Defendants and each of their subsidiaries and affiliates, and (2) all distributors,

---

[1]    As per § II.A.31 of the Stipulation, "United States" means all fifty States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the other territories and possessions of the United States.

wholesalers, retailers, and licensors of Red Bull Products; (b) those who purchased Red Bull Products for the purpose of re-sale; (c) all federal judges who have presided over either of the Actions; and (d) all person who have been properly excluded from the Settlement Class.

The Court finds the persons identified in Exhibit A attached hereto have timely and properly requested exclusion from the Settlement Class and are not bound by this Judgment ("Excluded Persons").

5.     With respect to the Settlement Class, the Court finds and concludes that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members in the Actions is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over questions affecting only individual Settlement Class Members; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class; (d) the Plaintiffs and Plaintiffs' Lead Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

6.     The Actions are hereby dismissed with prejudice as to Plaintiffs and all Settlement Class Members, except for Excluded Persons identified in Exhibit A.  The Parties will bear their own fees and costs, except as otherwise expressly provided in the Settlement.

7.     As of the Effective Date, Plaintiffs and each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons.  In connection with the Released Claims, each Settlement Class Member shall be deemed as of the Effective Date to have waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code and any statute, rule, and legal doctrine similar, comparable, or equivalent to California Civil Code § 1542, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

8.     The Court finds that the Notice to the Settlement Class was given in accordance with the Court's Order of September 3, 2014, was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

9.     All Settlement Class Members, and all Persons actually or purportedly acting on behalf of any Settlement Class Member, are hereby permanently enjoined from asserting, commencing, maintaining, prosecuting,

or enforcing, directly or indirectly, in any judicial, administrative, arbitral, or other forum, any claim that will be released as part of the Settlement, provided that this injunction shall not apply to Excluded Persons.

10.     Defendants are hereby ordered to make all payments required by and in accordance with the Stipulation and the Court's Order granting Plaintiffs' Motions for Final Approval of Class Settlement and for Approval of Attorneys' Fees, Service Fees, and Reimbursement of Expenses.  Defendants are further enjoined from making any future claims about the functional benefits of Red Bull Products without medical and/or scientific support.

11.     Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim or any facts alleged in the Actions, or of any wrongdoing or liability of Defendants, or of the propriety of maintaining the Actions as class actions; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants in any proceeding in any court, administrative agency, or other tribunal, except that Defendants may file the Stipulation or the Judgment in any action that may be brought against any Released Person in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement and any disputes concerning payment or distribution of the proceeds from the Settlement; (b) enforcement of this Order; and (c) all Parties hereto solely for the purpose of construing, enforcing, and administering the Settlement and this Order.

SO ORDERED.

Dated:     May 12, 2015
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

EXHIBIT A

| BENJAMIN CAREATHERS | DAVID WOLF and MIGUEL ALMARAZ |
|---|---|
| v. | v. |
| RED BULL NORTH AMERICA, INC. | RED BULL GMBH; RED BULL NORTH AMERICA, INC.; and RED BULL DISTRIBUTION COMPANY, INC. |

## Requests for Exclusion Received Timely as of April 22, 2015

| # | Name | GCG ID# |
|---|---|---|
| 1 | Alexander Severson | 0FE8A8D954 |
| 2 | Amber McNeff | 33D94CDA38 |
| 3 | Andrea Bianchi | CC2176578D |
| 4 | Benjamin Fittje | E11F172554 |
| 5 | Brett Anderson | 72681511A6 |
| 6 | Brian Mark South | D4D6B0A640 |
| 7 | Bridget Ehiemenonye | 5997AEBB15 |
| 8 | Casey Franks | 1F8CE1C8BC |
| 9 | Courtney Amber Lemons | 848A2B168C |
| 10 | Cristal Maldonado | 76A0197D40 |
| 11 | Damaris Dolan | 351ECCEB41 |
| 12 | Derrick Onwuachi | A71505EC27 |
| 13 | Dzhamila Keshishian | 19DA618237 |
| 14 | Felicia M Spencer | D4A875F397 |
| 15 | Francisco Ferrer | FC58A5CD27 |
| 16 | Gary Case | CD2C9299EB |
| 17 | Gina Hronek | 3C456109C0 |
| 18 | Issa Beydoun | A362363E33 |
| 19 | Jabbar Nettles | 06EBC3D245 |
| 20 | Jennifer Bronzell | 9CDB7C0FF0 |
| 21 | Laura Immel | B3D6730EA7 |
| 22 | Lordan Stanley | EBFCE2391D |
| 23 | Madison Pearce | 9C92F78EE4 |
| 24 | Michael Griener | BF304C243D |

| # | Name | GCG ID# |
|---|---|---|
| 25 | Michael Grotzke | BBF78560C4 |
| 26 | Mikhail Romanov | B37DFF0C24 |
| 27 | Rachel Lindell | 053617E035 |
| 28 | Ryan Jermaine Hill | 29579CA460 |
| 29 | Tigran Ketsoyan | FD14AEFF58 |
| 30 | Troy Immel | D14134C952 |

# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLAIRE DELACRUZ, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CYTOSPORT, INC., a California Corporation,<br><br>        Defendant. | CASE NO.: 4:11-cv-03532-CW<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION (Docket Nos. 74, 81, 84)** |

1

WHEREAS, following a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the parties made modifications to their original proposed settlement agreement and, thereafter, presented this Court with a proposed First Amended Settlement Agreement and Release in the above-captioned matter (the "Settlement Agreement and Release");

WHEREAS, by Order dated November 18, 2013, this Court granted preliminary approval (the "Preliminary Approval Order") of the Settlement Agreement and Release;

WHEREAS, in connection with preliminary approval of the parties' Settlement Agreement and Release, the Court provisionally certified a nationwide settlement class for settlement purposes only, approved the procedure for giving notice and forms of notice, and set a final fairness hearing on May 15, 2014;

WHEREAS, on May 15, 2014, the Court held the duly noticed final fairness hearing to consider: (1) whether the terms and conditions of the Settlement Agreement and Release are fair, reasonable and adequate, and any objections thereto; (2) whether a judgment should be entered dismissing the named Plaintiff Claire Delacruz's ("Plaintiff") complaint on the merits and with prejudice in favor of Defendant CytoSport, Inc. ("CytoSport") and against all persons or entities who are settlement class members; and (3) whether and in what amount to award attorney's fees and expenses to counsel for the settlement class;

WHEREAS, the Court has considered all written submissions of counsel, all objections timely filed, all record evidence and all oral argument and other matters submitted to it at the hearing and otherwise;

WHEREAS, the Court finds that the Settlement Agreement was the result of extensive and protracted arms-length negotiations occurring over several years and multiple mediation sessions with the Honorable Edward A. Panelli (Ret.) and the Honorable Carl J. West (Ret.), both currently affiliated with JAMS. Counsel for the parties are highly experienced in class action litigation, with full knowledge of the risks inherent in this Action. The extent of written discovery, depositions, document productions, and independent investigations by counsel for the parties, and the factual record compiled,

2

suffices to enable the parties to make an informed decision as to the fairness and adequacy of the settlement;

WHEREAS, the Court has determined that the proposed Settlement Agreement and Release, the significant relief provided to the Settlement Class Members—in the form of CytoSport's agreement to make certain payments to settlement class members as well as its agreement to discontinue the use of certain words and phrases in the labeling and marketing of certain Muscle Milk® products—as described in the Settlement Agreement and Release, and the award of attorneys' fees and expenses requested, are fair, reasonable and adequate; and

WHEREAS, the matter having been submitted, due and adequate notice having been provided to Class Members as required by the Court's Preliminary Approval Order, and otherwise being fully informed, and good cause appearing, the Court hereby Orders as follows:

1.      The Settlement Agreement and Release, and all attachments thereto, is expressly incorporated by reference into this Final Order and made a part hereof for all purposes.  Except where otherwise noted, all capitalized terms used in this Final Order shall have the meanings set forth in the Settlement Agreement and Release.

2.      The Court has personal jurisdiction over the Parties and all Settlement Class Members, and has subject-matter jurisdiction over this Action, including, without limitation, jurisdiction to approve the proposed settlement, to rule on all objections timely filed, to grant final certification of the Settlement Class, to settle and release all claims arising out of the transactions alleged in Plaintiff's complaint in the Action, and to dismiss this Action on the merits and with prejudice.

3.      The Court finds, for settlement purposes only and conditioned upon the entry of this Final Order and upon the occurrence of the Effective Date, that the requirements for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that

Case 1:12-md-02358-JDW   Document 172-1   Filed 01/04/17   Page 51 of 188 PageID #:
Case 4:11-cv-03532-CW   Document 91   Filed 04/01/14   Page 14 of 15
3389

joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class they seek to represent for purposes of settlement; (d) the Plaintiff has fairly and adequately represented the interests of the Settlement Class and will continue to do so, and the Plaintiff has retained experienced counsel to represent her; (e) for purposes of settlement, the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and (f) for purposes of settlement, a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997). The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case. *Id.* at 620.

4.     In making these findings, the Court has considered, among other factors: (i) the interests of Settlement Class Members in individually controlling the prosecution or defense of separate actions; (ii) the impracticability or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum. The Court takes guidance in its consideration of certification and settlement issues from *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).

5.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this Action for settlement purposes as a nationwide class action on behalf of: a class of all persons who purchased one or more Muscle Milk® Ready-to-Drink beverages (the "RTD") and/or Muscle Milk® bars (the "Bar") (the Bar together with the RTD, the "Products") at retail in the United States from July 18, 2007 through December 31, 2012 (the "Settlement Class"). As defined in the Settlement Agreement and Release, "Settlement Class Member(s)" means any member of the Settlement Class who does not elect exclusion

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

or opt out from the Settlement Class pursuant to the terms and conditions for exclusion set out in the Settlement Agreement and Release and the Long Form Notice. Excluded from the Settlement Class are all persons who are employees, directors, officers, and/or agents of CytoSport or its subsidiaries and affiliated companies, as well as the Court and its immediate family and staff.

6.     The Court appoints the law firm of Baron & Budd, P.C. as counsel for the Class ("Class Counsel"). The Court designates named Plaintiff Claire Delacruz as the representative of the Settlement Class. The Court finds that the named Plaintiff and Class Counsel have fully and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement and Release and have satisfied the requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure.

7.     The Court finds that the electronic and publication notice are in accordance with the terms of the Settlement Agreement and Release and this Court's Preliminary Approval Order, and as explained in the declarations filed before the Final Fairness Hearing:

(a)     constituted the best practicable notice to Settlement Class Members under the circumstances of this Action;

(b)     were reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action, (ii) their right to exclude themselves from the Settlement Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the Settlement Class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Settlement Class's representation by Plaintiff or Class Counsel, and/or the award of attorneys' and representative fees), (iv) their right to appear at the Final Fairness Hearing (either on their own or through counsel hired at their own expense), and (v) the binding effect of the orders and Final Order in this Action, whether favorable or unfavorable, on all persons and entities who do not request exclusion from the Settlement Class;

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

(c)     constituted reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

(d)     fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rule 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), and any other applicable law.

8.     The Court finds that CytoSport provided notice of the proposed settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715. Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period (pursuant to 28 U.S.C. § 1715) to comment or object to the proposed settlement before entering its Final Order and no such objections or comments were received.

9.     The terms and provisions of the Settlement Agreement and Release, including any and all amendments and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the Plaintiffs and the Settlement Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law.  The Court finds that the Settlement Agreement and Release is fair, adequate and reasonable based on the following factors, among other things:

(a)     There is no fraud or collusion underlying this settlement, and it was reached after good faith, arms-length negotiations, warranting a presumption in favor of approval.  *Officers for Justice v. Civil Serv. Comm'n.,* 688 F.2d 615, 625 (9th Cir. 1982).

(b)     The complexity, expense and likely duration of the litigation favor settlement on behalf of the Settlement Class, which provides meaningful benefits on a much shorter time frame than otherwise possible.  Based on the stage of the proceedings and the

amount of investigation and informal discovery completed, the Parties have developed a sufficient factual record to evaluate their chances of success at trial and the proposed settlement.

(c)     The support of Class Counsel, who are highly skilled in class action litigation such as this, and the Plaintiff, who has participated in this litigation and evaluated the proposed settlement, also favors final approval. *See Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992).

(d)     The settlement provides meaningful relief to the Settlement Class, including the injunctive and monetary relief described below, and falls within the range of possible recoveries by the Settlement Class.

10.     As described in the Settlement Agreement and Release, CytoSport has agreed to distribute the total sum of $1,000,000 to eligible Settlement Class Members, and, not later than forty-five (45) days following the Effective Date, to provide for the following injunctive relief:

(a)     To cease using the words "Healthy, Sustained Energy" on the Principal Display Panel of all newly-printed packaging of Muscle Milk® RTD and Bars.

(b)     To cease using the words "Healthy Fats" on any newly-printed packaging of Muscle Milk® RTD, provided however, that CytoSport may use the term "Healthy Fats" on the packaging of Muscle Milk® RTD (or related products) so long as such product contains fewer than 0.5 grams of saturated fat per serving, or CytoSport also includes the words "See nutrition information for saturated fat content" in connection with the words "Healthy Fats."

11.     Cytosport shall abide by the requirements of paragraph 10 above for three (3) years after the Effective Date.  Nothing in this Final Order shall prevent CytoSport from implementing changes prior to the Effective Date.  This Final Order does not preclude

[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS; GRANTING OBJECTOR'S ADMINISTRATIVE MOTION
Case No.: 4:11-cv-03532-CW

Case 1:12-md-02358-JDW Document 172-1 Filed 01/04/17 Page 55 of 188 PageID #:
Case 4:11-cv-03532-CW Document 91 Filed 04/01/14 Page 8 of 13
3393

CytoSport from making further changes to any of its product labels or marketing: (i) that CytoSport reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; (ii) that are necessitated by product changes and/or to ensure that CytoSport provides accurate product descriptions; or (iii) that are more detailed than those required by the Settlement Agreement and Release and/or this Final Order.

12. The Court has reviewed the Proposed Product Distribution Plan for the distribution of residual settlement funds that was submitted by CytoSport (Dkt. 83 at p. 6-10) (the "Distribution Plan"). The Court approves the Distribution plan and the contents of the Distribution Plan are incorporated as if set forth fully herein. The Court finds that the terms and conditions of the Distribution Plan and the portions of the Settlement Agreement and Release relating to product distribution (Dkt. 67-1 at p. 12-13) comply with the legal standards governing such distributions. *See Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012), *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011), and *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Based on the Court's review of these materials and all of the evidence before the Court, the Court makes the following findings: (1) the Court finds that the Distribution Plan includes multiple features to facilitate distribution of products to members of the Settlement Class; (2) the Court finds that the Distribution Plan is carefully focused on and tailored to Plaintiff's allegations and the objectives of the underlying statutes; (3) the Court finds that the Distribution Plan ensures that reasonable efforts will be made to target class members; (4) the Court finds that the Distribution Plan does not diminish the cash payments made to class members; and (5) the Court finds that the product distributions were not made in lieu of cash payments to the class. Finally, the Settlement Agreement provides that the value of any products distributed shall be measured according to their retail value, the distribution shall occur over a three-year period, the products distributed shall be in addition to any other charitable donations planned by Cytosport, and Cytosport shall not seek a tax deduction for such product donations.

8

13.     In recognition of Plaintiff's efforts on behalf of the Settlement Class, as set forth in the Declaration of Claire Delacruz in Support of Motion for Final Approval of Class Action Settlement, the Court approves Plaintiff's request for an incentive award of $5,000, and finds such award just and reasonable.  Cytosport shall pay such award in accordance with the terms of the Settlement Agreement and Release.  In approving the incentive award, the Court has considered Plaintiff's commitment of time to the Action which spanned almost three years, the risk of liability for Cytosport's costs, the benefits provided to tens of thousands of class members and the absence of any conflicts of interest between Plaintiff and members of the Settlement Class.

14.     Class Counsel seek recovery of $855,157.25 in attorneys' fees and $190,839.41 in expenses. This Court is familiar with the work performed by Class Counsel in this matter. The Court finds that the expenses incurred, work performed, time spent, and rates charged by Class Counsel appear to be reasonable. The requested fee and expense award is authorized and appropriate under the Consumer Legal Remedies Act ("CLRA"), California Civil Code Section 1780(e), and the Private Attorney General Statute, California Civil Procedure Section 1021.5. The settlement discussed herein, which resulted in the enforcement of an important right affecting the public interest, is favorable for the Settlement Class, and constitutes a victory for Settlement Class Members.  Additionally, Class Counsel advanced the public interest by enforcing consumer protection laws, and obtained significant benefits for more than 33,300 members of the Settlement Class.  Accordingly, this Court applies the lodestar method to award fees under the CLRA and Private Attorney General Statute.

15.     To assist the Court in evaluating the reasonableness of the time spent on this case, Class Counsel presented a detailed declaration which included a schedule of time records and expenses incurred, and the experience and qualifications of the attorneys who worked on this case.  Such declaration reflects that Class Counsel has devoted a total of 1,453.35 hours to the investigation and litigation of this case and the hourly rates for the lawyers who performed such services ranged from $390 to $825 per hour for attorneys, depending on their experience

9

Case 1:12-md-02358-JDW Document 172-1 Filed 01/04/17 Page 57 of 188 PageID #:
3395
Case 4:11-cv-03532-CW Document 91 Filed 07/01/14 Page 10 of 38

and skill, and $95 per hour for paralegal staff. Class Counsel has computed a total lodestar of $855,157.25 through February 25, 2014. After considering Class Counsel's statements and legal authorities concerning the market rates for plaintiffs' class action attorneys, and the Court's own experience with hourly rates in this District, the Court is satisfied that Class Counsel's fees meet the reasonableness standard. *See Staton v. Boeing Co.*, 327 F.3d 938,972 (9th Cir. 2003).

16. In evaluating Class Counsel's lodestar, the Court has also considered whether Class Counsel used reasonable hourly rates and sound billing practices and assessed the requested lodestar in light of the results obtained for the class. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Additionally, in considering the reasonableness of attorneys' fees, the Court has considered the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases. *See Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

17. Class Counsel have done a considerable amount of work to develop Plaintiff's claims in this case, and have committed significant resources to this matter. This action conferred a significant benefit on a large class of persons by (1) making guaranteed financial relief available to over 30,300 claimants who individually could not be expected to dedicate the financial resources required to litigate the claims asserted in this case, (2) distributing residual settlement funds in the form of re-labeled Muscle Milk Light products, or other products with a similar nutrient profile, targeted to members of the Settlement Class pursuant to Cytosport's Proposed Product Distribution Plan, and (3) obtaining the injunctive relief discussed in paragraph 10 above.

18. This case also presented unique complexities concerning the interplay between the FDA guidelines and the false advertising laws. These issues were contested at the pleading stage, including two motions to dismiss which disposed of certain of Plaintiff's claims, and Class Counsel retained experts in connection with anticipated class certification motions to opine on key issues including whether the subject products were "healthy," and whether the subject representations were material to consumers. Additionally, Class Counsel has submitted a declaration attesting to the significant

10

expenditure of Class Counsel's time on matters such as: (1) extensive pre-litigation investigation; (2) consulting with industry experts; (3) extensive and detailed legal research into the substantive law of the causes of action at issue; (4) developing and executing litigation strategies; (5) researching and preparing for class certification; (6) developing and executing mediation and settlement strategies; and (7) analyzing data and information exchanged between the parties to assure informed decision-making concerning the risks, expenses, and benefits of continuing to litigate the case.

19.    Class Counsel undertook significant financial risk in prosecuting this case. Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery. Class Counsel risked their resources to prosecute this action. There was no assurance that this case would have been certified, that certification would include a nationwide class, or that Plaintiff would have succeeded at trial.

20.    Class Counsel vigorously and competently pursued the Class Members' claims. The arm's-length settlement negotiations that took place demonstrate that Class Counsel adequately represented the Class. Moreover, the Court finds no evidence that Plaintiff and Class Counsel had any conflicts of interests with the Class. Rather, Plaintiff, like each absent Class Member, had a strong interest in proving CytoSport's common course of conduct, establishing its unlawfulness and obtaining redress.

21.    Class Counsel also provided the Court with a declaration attesting to their extensive experience and expertise in prosecuting complex class actions. Class Counsel are active class action practitioners who are experienced in consumer fraud litigation. Their work was performed by a core team of attorneys fully familiar with the complex factual and legal issues presented by this litigation.

22.    The Court has also cross-checked Class Counsel's lodestar fee against the percentage-of-the-recovery method. *See Bluetooth*, *supra*, at 943. To that end, when determining the value of the settlement, courts often consider the non-monetary benefits conferred, as well as any cash attorneys' fee and cost payments to be made pursuant to the settlement terms with the defendants. *See, e.g. Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003). The Ninth Circuit also identified five factors that are relevant in determining whether requested attorneys' fees in a common

11

fund case are reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) awards made in similar cases; and (5) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Applying these factors, the Court finds that the requested fees are reasonable

23. Class Counsel achieved a settlement in this action that altered Cytosport's business practices and provided guaranteed compensation to Class members for alleged misrepresentations. The monetary relief component of the Amended Settlement provides a guaranteed, fixed monetary claim fund of $1,000,000 for payment of claims, with claimants paid at $30.00 each, and the residual, if any, to be paid to Class Members who made claims on a *pro rata* basis, up to a total of $60.00 for each claimant. No proof of purchase is necessary for class members to qualify for monetary relief, and class members may submit claim forms online, in addition to the use of other methods of delivery (including mail).

24. Although the Parties have agreed in the Settlement Agreement that the monetary value of CytoSport's relabeling obligation is $1,000,000, for the purpose of calculating attorneys' fees based on the common fund approach, Class Counsel did not attribute any monetary value to such injunctive relief. Nevertheless, the Court finds that the injunctive relief provided for in the Settlement Agreement, and the notice of such relief provided to Class Members, does constitute a valuable benefit to be considered in determining the reasonableness of Class Counsel's fees. Thus, Class Counsel's requested fee award is within the Ninth Circuit's "benchmark," even without attributing any monetary value to CytoSport's agreement to re-label the Products.

25. Thus, the resolution of this case through settlement provides the Settlement Class with the benefit of significant financial recovery without the delay of continued litigation.

26. For the foregoing reasons, the Court approves Class Counsel's fees in the sum of $855,157.25 and costs in the sum of $190,839.41. Cytosport shall pay such sums in accordance with the Settlement Agreement.

27. The Court has evaluated and overrules the objections filed by Theodore Frank, William Chamberlain, Don Orrell and Craig Smotzer. In ruling on such objections, the Court

12

has evaluated the factors set forth in *Bluetooth, supra,* and finds that the settlement was reached only after contested litigation, including through motion practice, written discovery, depositions, three mediations and months of settlement negotiations. The terms and structure of the Settlement Agreement were the subject of intense, serious, arms-length negotiations, with the assistance of two respected retired judges, and was not the subject of self-dealing or collusion. In that regard, the Settlement Agreement does not provide Class Counsel with a disproportionate distribution of the settlement and Settlement Class Members will receive a guaranteed monetary distribution of $1 million. The Settlement Agreement also does not contain any "kicker" arrangement whereby any reduction in attorneys' fees reverts to Cytosport. To date, over 33,300 class members have applied to receive more than $30.00 each and notice of the settlement has been disseminated to fifty-five federal and state government officials, none of whom have filed objections. The reaction of class members to the settlement has been overwhelmingly positive, and is a significant factor to be weighed in considering its adequacy. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

28. The parties are directed to consummate the Settlement Agreement and Release in accordance with its terms and conditions. The Court hereby declares that the Settlement Agreement and Release is binding on all parties and Settlement Class Members, and it is to be preclusive in all pending and future lawsuits or other proceedings.

29. Upon the Effective Date, the Releasing Parties (as that term is defined in the Settlement Agreement and Release) shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties. Released Claims means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including unknown claims (as described in Paragraph 31 below) as of the Effective Date by Plaintiff and all Settlement Class Members (and Plaintiff's and Settlement Class Members' respective heirs, executors,

administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

(i) were brought or that could have been brought against the Released Parties, or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the Action (including, but not limited to alleged violations of state consumer protection, unfair competition, and/or false or deceptive advertising statutes (including, but not limited to, Cal. Bus. & Prof. Code § 17200 *et seq.,* Cal. Bus. & Prof. Code § 17500 *et seq.,* and Cal. Civ. Code § 1750 *et seq.);* breach of contract; breach of express or implied warranty; fraud; unjust enrichment, restitution, trespass, conversion, declaratory or injunctive relief, and other equitable claims or claims sounding in contract and tort); and

(ii) relate in any way to any claim, advertisement, representation, assertion, promise, or similar statement made by any of the Released Parties in any forum or medium whatsoever about, concerning, regarding, portraying, and/or relating to the healthfulness or nutritional attributes of the Products, including but not limited to all claims that relate in any way to: the use of the words "Healthy Sustained Energy" and/or "Sustained Energy" with respect to the Products; the use of the words "Healthy Fats" with respect to the Products; the use of the words "Good Carbohydrates" with respect to the Products; the calories provided by the Products; the ingredients in the Products, including but not limited to the amounts and/or presence of: (a) fractionated palm kernel oil, partially hydrogenated palm oil, or any variant thereof, (b) *trans* fat, (c) sugars of any type, or (d) artificial sweeteners of any type; the amount and/or presence of fat or saturated fat in the Products; the amount and/or presence of cholesterol in the Products; the amount and/or presence of carbohydrates in the Products; the amount and/or presence of protein in the Products; the marketing of the Products as "premium," "healthy," part of a "healthy lifestyle," as a "healthy alternative beverage" and/or related statements; guidelines concerning when and/or in what quantities

14

to use the Products; and compliance with any federal, state, or local labeling requirements with respect to the healthfulness, nutritional content, and/or the nutritional attributes of the Products. However, Released Claims do not include claims for personal injury.

30. The Released Claims include known and unknown claims relating to the Action, and the Settlement Agreement and Release is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder. Settlement Class Members have expressly, knowingly, and voluntarily waived the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members have expressly waived and relinquished any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members have acknowledged that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the release herein given by the Settlement Class Members to the Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledged that it has been advised by its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties has expressly waived whatever benefits it may have had pursuant to such section. Settlement Class

15

Members are not releasing any claims for personal injury. Plaintiff has acknowledged, and the Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

31.     Members of the Settlement Class who have opted out of or sought exclusion from the settlement by the date set by the Court do not release their claims and will not obtain any benefits of the settlement. The following individuals sought exclusion from the settlement class: Grace Agustin, John Andre, Junar M. Barcena, Rochelle Barker, Rowel Bellezo, Dave Booker, Timothy Falloni, Anthony Ford, Jim Haack, Adam Harper, Chris Konieczny, Nicholas Kostakis, Matt Lahr, Nikos Markellos, Carly Nichols, Jay Puyot, Kyle Robertson, Sean Root, John Sampiere, and Elpedio Solon.

32.     The Court orders that, upon the Effective Date, the Settlement Agreement and Release shall be the exclusive remedy for any and all Released Claims of Settlement Class Members. The Court thus hereby permanently bars and enjoins Plaintiff, all Settlement Class Members, and all persons acting on behalf of, or in concert or participation with such Plaintiff or Settlement Class Members (including but not limited to the Releasing Parties), from: (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; (b) bringing a class action on behalf of Plaintiff or Settlement Class Members, seeking to certify a class that includes Plaintiff or Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims.

33.     Neither the Settlement Agreement and Release, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor any of the documents or statements generated or received pursuant to the claims administration process, shall be:

(a)     offered by any person or received against CytoSport as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by CytoSport of the truth of the facts alleged by the Plaintiff or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of CytoSport;

(b)     offered by any person or received against CytoSport as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by CytoSport or any other wrongdoing by CytoSport;

(c)     offered by any person or received against CytoSport or as evidence of a presumption, concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for any other reason against any of the settling parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained in this paragraph shall prevent the Settlement Agreement and Release (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the settlement (or any agreement or order relating thereto) or the Final Order and Judgment, or in which the reasonableness, fairness, or good faith of the parties in participating in the settlement (or any agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the settlement, the Final Order and Judgment, or the Claim Form as to CytoSport, Plaintiff, or the Settlement Class Members; or

(d)     offered by any person or received against the Plaintiff or any other class representative as evidence or construed as or deemed to be evidence that any of their claims. Notwithstanding the foregoing, CytoSport may file the Settlement Agreement and Release,

this Final Order, and/or any of the documents or statements referred to therein in support of any defense or claim that is binding on and shall have *res judicator, collateral estoppel,* and/or preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and/or any other Settlement Class Members, and each of them, as well as their heirs, executors, administrators, successors, assigns, and/or any other of the Releasing Parties.

34.     The Court has jurisdiction to enter this Final Order.  Without in any way affecting the finality of this Final Order, this Court expressly retains exclusive and continuing jurisdiction over the Parties, including the Settlement Class, and all matters relating to the administration, consummation, validity, enforcement and interpretation of the Settlement Agreement and Release and of this Final Order, including, without limitation, for the purpose of:

(a)     enforcing the terms and conditions of the Settlement Agreement and Release and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement and Release, and/or this Final Order (including, without limitation: whether a person or entity is or is not a Settlement Class Member; whether claims or causes of action allegedly related to this Action are or are not barred or released by this Final Order; and whether persons or entities are enjoined from pursuing any claims against CytoSport);

(b)     entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and the Settlement Agreement and Release (including, without limitation, orders enjoining persons or entities from pursuing any claims against CytoSport), or to ensure the fair and orderly administration of the settlement; and

(c)     entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement and Release, the settling Parties, and the Settlement Class Members.

18

35.     Without further order of the Court, the settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement and Release.

36.     This Action is hereby dismissed with prejudice and without costs as against CytoSport and the Released Parties.

37.     In the event that the Effective Date does not occur, certification shall be automatically vacated and this Final Order, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

38.     Objector Theodore Frank's administrative motion to file a supplemental declaration is GRANTED.  The Court has reviewed the supplemental declaration and considered it along with Mr. Frank's other submissions.

39.     Judgment will enter separately.

IT IS SO ORDERED, this 1st day of July, 2014.


_____
THE HONORABLE CLAUDIA WILKEN
UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ——————————————— | x | |
| MATHEW ERCOLINE, on behalf of himself and on behalf of all others similarly situated, | : | Civil Action No.: 2:10-cv-01747-SRC-MAS |
| Plaintiff, | : | |
| v. | : | |
| UNILEVER UNITED STATES, INC. | : | |
| Defendant. | : | |
| ——————————————— | x | |

## ORDER AND FINAL JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

WHEREAS, Plaintiff, Mathew Ercoline ("Plaintiff"), has moved for an order finally approving the class action settlement ("Settlement") which was preliminarily approved by Order dated October 5, 2010 ("Preliminary Approval Order") and which Motion was not opposed by Defendant, Unilever United States, Inc. ("Defendant"); and

WHEREAS, the Parties appeared by their attorneys of record at a Final Approval Hearing on March 21, 2011 (the "Final Hearing"), after an opportunity having been given to all Class Members to be heard in accordance with the Court's Preliminary Approval Order, and having given due consideration to the Parties' settlement agreement, including its attached exhibits ("Settlement Agreement"), the Motion, all other papers filed in support of the Settlement by the Parties, all objections to the Settlement, the record in this case, the arguments at the Final Hearing, and all other materials relevant to this matter;

NOW, THEREFORE, IT IS ORDERED THAT:

1.     This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used in this Order shall have the same meanings as set forth in the Settlement Agreement.

2.     For purposes of this Litigation, the Court has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members.

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court confirms its previous certification, and for purposes of effectuating the Settlement, the Settlement Class is defined as follows:

> All purchasers in the United States, including the District of Columbia, the territories and possessions of the United States, and/or the Commonwealth of Puerto Rico, of Smooth & Dreamy ice cream products, and other Breyers or Unilever branded ice cream products that were represented as reduced-calorie since April 6, 2004.

4.     The Court has determined, solely for purposes of the Settlement, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members in the Litigation is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff Mathew Ercoline and Class Counsel have and will continue to fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

5.     Nothing in this Order and Final Judgment, the Settlement Agreement, or any other documents or statements related thereto, is or shall be deemed or construed to be an

admission or evidence of any violation of any statute or law or any liability or wrongdoing by Defendant.

6.    Notice of this proposed Settlement has been provided in a manner consistent with the Preliminary Approval Order. Notice was published in the national edition of *USA Today* on October 28, 2010. In addition, the Settlement Administrator established a dedicated website, www.ercolinesettlement.com, which posted the Class Notice, as well as other pertinent case documents. In addition, the Settlement Administrator established a toll-free telephone number that Class Members are able to utilize if they have questions about the Settlement.

7.    The Court has determined that the Class Notice that has been provided pursuant to the Settlement Agreement and the Preliminary Approval Order (a) provided the best practicable notice; (b) was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their right to appear or object to or exclude themselves from the proposed Settlement; (c) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) fully complied with all applicable due process requirements and any other applicable law.

8.    The Court has determined that full opportunity has been given to the Class Members to opt out of the Settlement, object to the terms of the Settlement or to Class Counsel's request for attorneys' fees and expenses, and otherwise participate in the Final Approval Hearing. The Court has considered all of the objections to the Settlement that were submitted by Settlement Class Members and has determined that none warrants disapproval of the Settlement Agreement and/or Plaintiff's request for attorneys' fees and expenses.

9.     The Court has carefully considered the materials before it and has made its independent judgment that Plaintiff and the Settlement Class Members face significant risks in the Litigation and that the Parties have reached the Settlement Agreement after vigorous litigation, significant investigation and discovery, and arm's-length negotiations absent collusion. Accordingly, having considered the foregoing, the number of Settlement Class Members who have asked to be excluded from the Settlement, and the level of opposition to the Settlement Agreement, and balancing the costs, risks, and delay of continued litigation against the benefits provided to the Settlement Class by the Settlement set forth in the Settlement Agreement, and based on the Court's own knowledge of the Litigation, the Court finds and concludes that the Settlement is in the best interests of the Settlement Class and is a fair, reasonable, and adequate compromise of the claims asserted in the Litigation.

10.     The Settlement, and the terms of Settlement as described in the Settlement Agreement are, accordingly, approved and confirmed as fair, reasonable and adequate to all Settlement Class Members.

11.     The Parties are hereby directed to proceed with and implement the Settlement Agreement in accordance with its terms.  Defendant shall take all steps reasonable and appropriate to comply with the terms of the Settlement Agreement.

12.     The Court dismisses, on the merits and with prejudice, all claims currently pending before it that belong to Settlement Class Members not listed on Exhibit "1" (i.e., those Settlement Class Members who did not request exclusion from the Settlement Class in the time and manner provided for in the Settlement Agreement).

13.     As of this date, all Class Members not listed on Exhibit "1" to this Order, which lists the Class Members who requested to opt out of the Settlement, shall be deemed to be

bound by the Order and Final Judgment entered herein, and to have released Defendant from all of the released claims defined in the Settlement Agreement.

14.     The Releases set forth in the Settlement Agreement are incorporated herein by reference.  As of this date, all Class Members shall be deemed to be bound by the Order and Final Judgment entered herein, and to have released the Plaintiff's Released Persons as set forth in the Settlement Agreement.  No Class Member, either directly or representatively, or in any other capacity, shall commence, continue, or prosecute any action or proceeding, against any or all of the Released Parties in any court or tribunal asserting any of the released claims, and are hereby permanently enjoined from so proceeding.

15.     The Court, having considered the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, hereby grants the request and awards Class Counsel attorneys' fees in the amount of __198,751__ ($_____) and expenses in the amount of __1,249__ ($_____), as the Court finds that the fees and expenses were warranted and fair and reasonable under the factors set forth in this Circuit.  The Court also approves the requested Case Contribution Award for Plaintiff, Matthew Ercoline, in the sum of __2,557__ ($_____).

16.     All Parties are bound by this Final Order and Judgment and by the Settlement Agreement.  In the event that the Settlement does not become effective according to the terms of the Settlement Agreement, this Final Order and Judgment shall be rendered null and void as provided by the Settlement Agreement, and shall be vacated.

17.     Without affecting the finality of the Final Order and Judgment in any way, the Court reserves continuing and exclusive jurisdiction over the Parties and their counsel, including all Settlement Class Members, and the execution, consummation, administration,

effectuation and enforcement of the terms of the Settlement Agreement, and the terms of this Order and Final Judgment, including entry of any further orders as may be necessary and appropriate. In accordance with Fed.R.Civ.P. 54(b), there being no just reason to delay, the Clerk is directed to enter this Order and Final Judgment forthwith.

IT IS SO ORDERED

DATED: _Mar 21_, 2011

Hon. Stanley R. Chesler, U.S.D.J.

# EXHIBIT 5

1    Joseph W. Cotchett (36324)
     jcotchett@cpmlegal.com
2    Steven N. Williams (175489)
     swilliams@cpmlegal.com
3    Adam J. Zapala (245748)
     azapala@cpmlegal.com
4    Elizabeth Tran (280502)
     etran@cpmlegal.com
5    **COTCHETT, PITRE & McCARTHY**
     San Francisco Airport Office Center
6    840 Malcolm Road, Suite 200
     Burlingame, CA 94010
7    Telephone: (650) 697-6000
     Facsimile: (650) 697-0577

8

9    Michael P. Lehmann (77152)          Michael D. Hausfeld
     mlehmann@hausfeldllp.com        mhausfeld@hausfeldllp.com
10   Christopher Lebsock (184546)      Seth R. Gassman
     clebsock@hausfeldllp.com         sgassman@hausfeldllp.com
11   **HAUSFELD LLP**                  **HAUSFELD LLP**
     600 Montgomery Street, Suite 3200    1700 K Street, Suite 650
12   San Francisco, CA 94111         Washington, D.C. 20006
     Telephone: (415) 633-1908       Telephone: (202) 540-7200
     Facsimile: (415) 358-4980        Facsimile: (202) 540-7201

13

14   *Interim Co-Lead Counsel for Plaintiffs*

15                **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
16                **SAN FRANCISCO DIVISION**

17

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-CV-05634-CRB, MDL 1913 |
|   | **PLAINTIFFS' OPPOSITION TO OBJECTOR AMY YANG'S MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **This Document Relates To:** | Date:   August 14, 2015 |
| **All Actions** | Time:   10:00 a.m. |
| | Crtrm:   6, 17th Floor |
| | Judge:   Hon. Charles R. Breyer |

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Yang's counsel, the Center for Class Action Fairness (the "CCAF"), claims that it only seek objector's counsel fees when their "role in the improvement [of a settlement] is unambiguous and quantifiable." St. John Decl. ¶ 23, ECF No. 1029-1. Whether that is true or not as a general matter, it is not true here.

The CCAF served up every objection conceivable to the class settlements in this case, and lost on every substantive count. Yet they claim entitlement to a $644,270 fee award, representing *average hourly rates of $2,865 and a 5.97 multiplier on their $107,872 lodestar* (which, as will be shown in Section II. B., *infra*, is a flawed benchmark in its own right). The justification for this egregious award? A mistaken assertion that it prevailed to some extent on the amount awarded to class counsel for fees and costs, when in fact the Court was obligated to closely scrutinize class counsel's request notwithstanding the objection. Indeed, for 18 years the Court has consistently calculated class counsel fees from the net fund, and, not surprisingly, did so here. CCAF also claims success in reducing class counsel's award from 33% to 30% (although she aimed for 25%), but her boilerplate briefing simply recited the 9th Circuit benchmark of 25% and did not address the unique issues in this case that ultimately led the Court to depart from that standard. In short, Yang's counsel contributed nothing of substance to the Court's ultimate determination of the appropriate amount of fees to be awarded in this case.

In such circumstances, where an objector's claimed victory is solely on the issue of fees, courts in this Circuit routinely deny objector's fee awards. To rule otherwise would incentive objectors to race to the courthouse to file their objections anytime class counsel makes an (entirely permissible) request for an upwards departure from the 25% benchmark (which was in fact warranted here) or a calculation of counsel fees from the gross fund, on the hopes that the court, in its sound discretion, awards less than requested, thereby entitling the objector to a piece of the pie.

If something is to be awarded, the percentage-of-the-recovery approach is unwarranted here. Tacitly acknowledging this, CCAF suggests, with no authority, that the lion's share of this

grossly excessive fee request should then revert to the common fund—a request that, in reality, is nothing more than a second attempt to reduce class counsel's fees. Moreover, even the $90,000 the CCAF actually seeks as attorneys' fees for itself is excessive because it improperly includes hours billed on all of Yang's objections, even those that were not successful.

Yang's motion should be denied.

# ARGUMENT

## I. Yang's Objection Brought No Substantial Benefit to the Class, and Awarding Fees to Yang Would Encourage the Filing of Baseless Fees and Costs Objections

As Yang's own authorities make clear, "an objector to a class action settlement is not generally entitled to an award of counsel fees." *McDonough v. Toys 'R' Us, Inc.*, 2015 WL 263562, at * 24, 26 (E.D. Pa. Jan. 21, 2015) ("courts rarely award attorneys' fees to objectors"); *In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *8 (W.D. Wash. June 15, 2012). The law in this Circuit (which Yang ignores or misreads) is in accord. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they are not entitled to fees[.]"); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 2379562, at *2 (N.D. Cal. May 18, 2015) (where the "court's rationale differ[s] from [that presented in the absent class member's] objection" or where the "court did not rely on the Objectors' arguments in issuing its decision," an objector's fee award is unwarranted).[1]

In this case, the CCAF (using Yang, a CCAF attorney's wife, as a conduit) raised every conceivable objection to the Class Settlements; none succeeded save (arguably) one **partial** victory on the issue of attorneys' fees and costs, in which the: (a) Court followed its long-standing practice of calculating attorneys' fees from the net fund, (b) granted class counsel 30% of the net fund, instead of Yang's requested 25%, and (c) declined to award a portion of class counsel's

---

[1] CCAF's reliance on the Seventh Circuit's opinion in *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002), for the proposition that it is entitled to fees even if the Court would have "*sua sponte* made the same finding without the objection" is misplaced, *see* Yang Fee Mot. at 4, as the Seventh Circuit opinion reflects a different approach than that taken in the Ninth Circuit.

costs as untimely. Order at 2-3, ECF No. 1009; H'r Tr. May 22, 2015, at 13:2-8 ("THE COURT: With respect to all of your other objections they are being overruled."). But even this partial victory had **nothing to do with Yang's objection**. The Court's net fund calculation was the result of years-long practice, not Yang's argument. H'r Tr. at 9:6-8 ("THE COURT: So, I'm not actually interested in that discussion because for 18 years I've always deducted the costs and I'm going to deduct it in this case."). And as to CCAF's percentage-of-the-fund argument, its objection fails to even list, let alone address, the governing factors for a departure from the 25% benchmark, analyses that this Court independently addressed in its Order. *Compare* Yang Objection at 6-9, ECF No. 993 (arguing that 25% should be awarded, with no consideration or discussion of the complexity of this litigation) *with* Order at 2-3, ECF No. 1009 (observing that "[c]ourts must not arbitrarily apply a percentage," but must consider, *inter alia*, the "result for the class," and whether "the case was risky for class counsel," and finding that here the relevant factors warrant a departure from the 25% benchmark). CCAF's objection contributed nothing to the Court's conclusions.

For similar (if not identical) reasons Courts throughout the Ninth Circuit routinely reject requests for objector's fees predicated solely on objections to class counsel's fees and costs:

> The critical point in *Rodriguez,* however, is that the district court was not focused on the incentive awards until the objections raised the issue. **That is not the case with attorney's fees requests that seek an upward departure from the 25 percent benchmark fee award because district courts in the Ninth Circuit are obligated to carefully consider such requests.**
> . . .
> Adkins' interpretation of *Rodriguez* would lead to the untenable result that in every class action settlement in which an upward departure from the 25 percent benchmark fee award is requested, objectors would race to file their objections and simply list the factors[2] a district court is required to review in considering such a departure, and a court, after performing its required duty to review those factors, would be obligated to award attorney's fees to the objectors and thereby reduce the common fund and its benefit to the class.

*Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372-SI, 2014 WL 5419125, at *3-5 (D. Or. Oct. 22, 2014) (emphasis added); *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2014 WL 806072, at *2 (N.D. Cal. Feb. 27, 2014) ("Second, [Objector] contends he was the only person who advocated

---

[2] Yang's objection did not even list these factors. Yang Objection at 6-9.

for calculating the fee award from the *net* settlement fund, after deduction of expenses. While it may be that this particular issue had not previously been raised by the Court, and was not addressed by the parties or other objectors, it does not support a fee award."); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 4513608, at *1 (D. Ariz. Oct. 2, 2012) (declining to award objector's fees, even though "there was a reduction in the total amount of costs awarded to Class Counsel").[3] To be sure, because of the Court's preexisting duty to scrutinize class counsel's fee and cost request, it is not clear whether the Court even considered Yang's fee protest to be a true objection:

> THE COURT: With respect to all of your other objections, they are [] overruled. . . . Nevertheless, . . . I am following **your recommendation – or objection, I guess**, with respect to deducting costs, expenses and so forth from the overall settlement, the gross settlement fund in arriving at fees.

H'r Tr at 13: 2-8; Order at 1, ECF No. 1009 ("The Court issues this Order to explain in greater detail its ruling on **two** particular **issues**: first, the amount of **fees**, **and** second, the **objections**.") (emphasis added); *id.* at 2-4 (discussing "Fees"); *id.* at 4-7 (discussing "Objections").

Yang's counsel should not receive a windfall, nor should class counsel or the class members be penalized, because class counsel made permissible requests for an upwards departure from the 25% benchmark and a calculation of fees based on the gross fund, both of which, if granted in the Court's discretion, would have been proper and appropriate under Ninth Circuit precedent.[4] To award Yang's counsel fees in this instance would penalize reasonable requests, "encourage objections for the sole purpose of objecting," *Apollo*, 2012 WL 4513608, at *2, and

---

[3] CCAF's citations to *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448 (D.P.R. 2011) and *Lan v. Ludroff*, No. 1:06CV114-SJM, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008) are unavailing. Yang Fee Mot. at 4. While in those cases, objector's counsels were entitled to fees based on a reduction in class counsel fees, in both the objectors were "instrumental" in advancing complicated legal argument that independently brought about meaningful change. *Cabotage*, 815 F. Supp. 2d at 466 (objector "instrumental" in advocating alternative valuation of non-monetary relief); *Lan*, 2008 WL 763763, at *28 (objector "instrumental" in convincing class counsel to unilaterally withdraw a portion of their fee request without court intervention).

[4] CCAF admits that the Court had discretion to award both. Yang Objection at 7, ECF No. 993 ("the Ninth Circuit gives courts the discretion to calculate the percentage-of-recovery on the gross fund"); *id.* at 8 (admitting upwards departures from 25% are warranted in complex cases).

Case 1:12-md-02358-JDW   Document 172-1   Filed 01/04/17   Page 80 of 188 PageID #:
Case 3:07-cv-05634-CRB   Document 1030   Filed 07/13/15   Page 6 of 33
3418

1  incentivize "objectors [to] race to file their objections" every time "an upward departure from the

2  25 percent benchmark fee award is requested," *Arnett*, 2014 WL 5419125, at *3-5. Objector's

3  counsel should not be rewarded where, as here, the Court was already "obligated to carefully

4  consider" the matter.  *Id.* Because Yang's counsel has contributed nothing of substance to these

5  proceedings, it should take nothing from the class members or their counsel.[5]

6  **II.      Yang's Fee Request is Grossly Excessive and Procedurally Deficient**

7

8        **A.      Yang's Requested Fees of $644,270—Which Results in a Multiplier of 5.97
                and an Average Hourly Rate of $2,865—Are Grossly Excessive**

9

10        Even if CCAF is entitled to some fees (and it is not), its request is patently excessive.

11 While a "district court has discretion in common fund cases to choose either the percentage-of-

12 the-fund or the lodestar method[,]" *Vizcaino*, 290 F.3d at 1047, "[w]hen the percentage recovery

13 for objectors' counsel would be either too small or too large in light of the hours devoted to the

14 case, the benchmark percentage should be adjusted or replaced by the lodestar calculation," *In re

15 Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF HRL, 2011 WL 1877988, at *5 (N.D. Cal. May 17,

16 2011) (internal citation omitted); *accord In re Riverstone Networks, Inc.*, 256 Fed. App'x 168,

17 170 (9th Cir. 2007) ("Where an attorney's investment in a case is minimal, the lodestar

18 calculation may convince a court that a lower award is justified."); *Sobel*, 53 F. Supp. 3d at 1333

19 (applying lodestar method where objector's attorney's investment was minimal).

20

21

22        [5] CCAF's suggestion that class counsel somehow opened the door to the direct payment of
23 objector's fees through an "excessive" fee request is disconnected from reality; CCAF's cases in
   support of this argument are entirely inapposite and contradicted by the authorities discussed
24 above. Yang Fee Mot. at 6 (citing *Brown v. Stackler*, 612 F.2d 1057, 1058-59 (7th Cir. 1980)
   ("intolerably inflated" and "outrageously excessive" counsel fee award denied in its entirety, no
25 objections or objector's counsel fees at issue); *Commonwealth Elec. Co. v. Woods Hole*, 754 F.2d
   46, 49 (1st Cir. 1985) (appellate attorney's fees awarded where an "appeal [was] totally
26 frivolous," no objections or objector's counsel fees at issue). The fact that the Court in its sound
   discretion declined to award the totality of the requested fees does not *ipso facto* render the
27 request "excessive" when under Ninth Circuit precedent the Court would have been equally
28 within its discretion to award them in full.

The CCAF requests a $644,270 award on $107,872 worth of time, Yang Fee Mot. at 8, representing 224.8 hours of work, St. John Decl. ¶ 20. This translates to a multiplier of 5.97 and an average hourly rate for all CCAF attorneys of $2,865; this is a manifestly excessive multiplier for objector's counsel, especially in a case where class counsel (who took on years of risk, and were indisputably more instrumental in achieving success for the class) obtained a negative (or a sub-1.0) multiplier. *See, e.g.*, *Apple Inc.*, 2011 WL 1877988, at *5 (questioning how a few simple filings and court appearances would justify 104 hours of objector attorney billing, rejecting objector's request for multiplier that would result in $2,800 average rates as "an excessive hourly rate"). As a result of the egregious size of the request, should any fees be awarded, the percentage-of-the-fund approach should be rejected in favor of the lodestar approach.[6]

Ignoring its excessiveness, the unusual percentage-of-the-fund approach suggested by Yang (to revert any excess over $90,000 to the common fund) should be rejected for more fundamental reasons. Yang Fee Mot. at 7-9. First, this unprecedented approach is entirely unsupported by any legal authority. *See, e.g.*, *Rose*, 2015 WL 2379562, at *3 (denying objector's request unsupported by "legal authority that would allow for such [relief], coupled with the complete lack of an explanation as to why such [relief] would be justified"); *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, No. C 06-5125 SBA, 2009 WL 2982847, at *1 (N.D. Cal. Sept. 14, 2009) (rejecting "argument unsupported by any legal authority"). Second, because the relief sought (above $90,000) is not actually remuneration for the CCAF attorneys, but is in fact an effort to divert class counsel's fees back to the common fund, the CCAF's request is little more than a thinly-veiled request for reconsideration of the Court's ruling on class counsel's fee request. *See* Order 2-3, ECF No. 1009. Thus the ceiling for any fees awarded should be the $90,000 actually requested as attorney remuneration, adjusted downwards as appropriate

---

[6] Even if the percentage-of-the-fund approach were adopted (and it should not be), it would be improper to credit Yang's counsel with the "success" it claims because the lion's share (if not the totality) of that "success" was the result of this Court's standing practice, H'r Tr. at 9:6-8 ("for 18 years I've always deducted the costs and I'm going to deduct it in this case"), and its preexisting obligation to scrutinize class counsel's fee request, *Arnett*, 2014 WL 5419125, at *3-5.

1   for billing that was either unreasonable or unrelated to the (purported) benefits bestowed upon the

2   class members.

3       **B.      Yang's $90,000 Request is Excessive and Unwarranted**

4       Even applying the lodestar approach, Yang's request for $90,000 of the time actually

5   billed by her counsel is excessive in light of any contribution she purportedly bestowed on the

6   class. To the extent CCAF is entitled to anything, she it is entitled only to recover hours billed for

7   **successful** objections. *Rodriguez v. W. Pub'g Corp.*, 602 F. App'x 385, 387 (9th Cir. 2015)

8   (affirming district court's decision to "eliminate hours [from objector's fee application] for work

9   which in its judgment did not benefit the class"); *Santos v. Camacho*, No. CIV 04-00006, 2008

10  WL 8602098, at *47 (D. Guam Apr. 23, 2008) (considering only objector's "hours reasonably

11  spent on the issue" on which the objection was successful). Here, all of CCAF's substantive

12  objections were overruled. *See* Order at 4-7, ECF No. 1009.

13      The only issue CCAF even claims to have succeeded on is class counsel's request for

14  reimbursement of fees and costs expended over 7 years of litigation.  *See* Yang Objection at 6-9.

15  CCAF's brief dedicated less than two pages to  (1) capping attorneys' fees at 25% (an issue Yang

16  largely lost on, and in any event, on which Yang ignored all of the governing factors that the

17  Court ultimately addressed in its Order—thereby contributing nothing to the Court's analyses,

18  *compare* Yang Objection at 6-7 *with* Order at 2-3, ECF No. 1009), and (2) calculating fees as a

19  percentage of the net fund instead of the gross fund (a boilerplate objection, and one that the

20  Court decided without any input from Yang, *compare* Yang Objection at 7-8 *with* H'r Tr. 9:6-8

21  ("for 18 years I've always deducted the costs and I'm going to deduct it in this case."). CCAF

22  should be entitled to no fees for these (ostensible) contributions to the settlements. *Fraley*, 2014

23  WL 806072, at *2 n.2 (considering only objector's billing that benefitted the class, and ultimately

24  declining to award any fees because "the associated reasonable fee for preparing what amounted

25  to [the] one [successful] paragraph of [the] objection would be *de minimus*"). But even if some

26  fees are awarded, they should be a fraction of the $90,000 requested by the CCAF.

27

28

### C. Even if Yang is Entitled to Some Fees, Under Ninth Circuit Law They Would Come from the Common Fund, Not Class Counsel's Fees

While CCAF submits that "countless courts from around the country have held [that] objector's attorneys' fees should be paid out of class counsel's award," it fails to cite a single decision from within the Ninth Circuit so holding. Yang Fee Mot. at 5 (collecting cases). Contrary to its argument, the Ninth Circuit awards objector's fees from the common fund, not class counsel's. *See, e.g.*, *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1333-34 (D. Nev. 2014) (rejecting objector's request to award objector's fees from class counsel's fees, noting that "[c]ourts commonly award objectors fees and expenses from the common fund," not class counsel's fees); *Riverstone*, 256 Fed. App'x at 169 (granting reduced objector attorney's fees from the common fund).

CCAF's plea to the equities that its "expenditure of time and effort should not have been necessary to compel class counsel to make a reasonable fee request" is equally divorced from the facts and law. Yang Fee Mot. at 5. As the Ninth Circuit recently held, awarding fees on either a gross or net basis is a matter committed to the sound discretion of the trial court. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (no error in "calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. We have repeatedly held that the reasonableness of attorneys' fees is not measured by the choice of the denominator") (internal citation and quotation marks omitted). Nor is there anything unreasonable about seeking reimbursement of costs or seeking an upwards departure from the benchmark for years-long, hard-fought, complex litigation. *See* Order at 3, ECF No. 1009 (noting class counsel's efforts concerning multiple motions to dismiss, "grueling discovery," and success on summary judgment and numerous substantial settlements, justified an upwards departure from the 25% benchmark). Yang cites no cases supporting her untenable position that, by virtue of being awarded less fees and costs than were requested, class counsel is by necessity exposed to **further** reductions to the reimbursement of their fees and costs. Any

objector's fee award should thus come from the common fund, and not class counsel's fee award.[7]

## III. Objectors Are Rarely Entitled to Incentive Awards, and the Award Sought is Excessive Given the Lack of Substantive Contribution from Yang

As a general matter, objectors are rarely entitled to incentive awards because their expenditure of time tends to be immaterial, even if some of their objections are sustained. *See Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 399 (D.N.J. 2012) ("Among those cases that have entertained requests for objector's incentive awards, the Court is aware of only two finding that the circumstances warranted such an award.") (Collecting cases awarding $1,000 and $500 incentive awards to objectors). That an objector sat for a deposition does not meaningfully change that calculus. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *17 (N.D. Cal. Apr. 3, 2013) (awarding incentive awards to class representatives, but "declin[ing] to grant incentive awards [even] for objectors who appeared for depositions"). Here, Yang's request for an incentive award should be denied for the simple fact that her objection did not result in a substantial benefit to the class members. *See* Section I, *supra*.

But even if it had, the requested incentive award is patently excessive, as it seeks an amount equal to that granted to the class representatives, who have stayed current with this litigation for almost eight years. It defies credulity to suggest that Yang's contribution is on par with that of the class representatives, and she provides the Court with no authority justifying such an award.

---

[7] CCAF's authorities on this point bear no resemblance to the facts at hand. *See* Yang Fee Mot. at 5-6 (citing *McDonough*, 2015 WL 263562, at *1-3, 17 (awarding objector's fees from class counsel's fee award only after Third Circuit vacated settlement in light of objection that the settlement administration plan had been so plainly insufficient that only $3 million of a $21.5 net fund had been claimed, and $15.5 million would revert to *cy pres* recipients); *Classmates.com*, 2012 WL 3854501, at *1 (awarding objector's fees from class counsel's fee award only where they advanced an "underwhelming" settlement that was "difficult to muster much enthusiasm for," yet was still a "dramatic improvement over the 2010 version; and the credit for the improvement belong[ed] primarily to the hundreds of class members who objected")). Here there is no reversion and only one objection—by Yang.

Case 1:12-md-02358-JDW-3 Document 172-1 10-Filed 01/04/17/3 Page 85 of 188 PageID #:
Case 3:07-cv-05634-CRB Document 1058 Filed 07/13/15 Page 11 of 15
3423

1  In addition, Yang apparently wants the Court to bestow upon her with an incentive award

2  to be paid by class counsel, and not out of the common fund.  She then asks the Court to place the

3  money into the common fund as some sort of donation to the class.  This odd request is designed

4  solely as an end run around the Court's prior order reimbursing class counsel for the time and cost

5  spent litigating this matter.  Yang has offered no authority supporting her unprecedented request

6  to reduce class counsel's fees for the benefit of the class members, but in the guise of an

7  objector's incentive award; her request should thus be summarily denied. *See, e.g.*, *Rose*, 2015

8  WL 2379562, at *3 (denying request for objector's incentive award unsupported by "legal

9  authority that would allow for such an award to an objector, coupled with the complete lack of an

10  explanation as to why such an award would be justified").

11  **IV.  CONCLUSION**

12  In light of the foregoing, Yang and the CCAF bestowed no substantial benefit on the class

13  members, and should therefore take nothing. To the extent Yang or the CCAF are awarded

14  anything, it should be a fraction of the $90,000 in attorney's fees and $7500 incentive award

15  requested, and should come from the common fund, not class counsel's fee and cost award.

16  Dated:  July 13, 2015                                      Respectfully submitted,

17

18  /s/*Steven N. Williams*_____          /s/*Christopher L. Lebsock*_____
    Joseph W. Cotchett (36324)                              Michael D. Hausfeld
19  jcotchett@cpmlegal.com                                   mhausfeld@hausfeldllp.com
    Steven N. Williams (175489)                              Seth R. Gassman
20  swilliams@cpmlegal.com                                   sgassman@hausfeldllp.com
    Adam J. Zapala (245748)                                  **HAUSFELD LLP**
21  azapala@cpmlegal.com                                     1700 K Street, Suite 650
    Elizabeth Tran (280502)                                  Washington, D.C. 20006
22  etran@cpmlegal.com                                       Telephone: (202) 540-7200
    **COTCHETT, PITRE & McCARTHY**                 Facsimile: (202) 540-7201
23  San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
24  Burlingame, CA 94010                                     Michael P. Lehmann (77152)
    Telephone: (650) 697-6000                                mlehmann@hausfeldllp.com
25  Facsimile: (650) 697-0577                                Christopher Lebsock (184546)
                                                             clebsock@hausfeldllp.com
26                                                           **HAUSFELD LLP**
                                                             600 Montgomery Street, Suite 3200
27                                                           San Francisco, CA 94111
                                                             Telephone: (415) 633-1908
28                                                           Facsimile: (415) 358-4980

*Interim Co-Lead Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Christopher Lebsock, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner at the law firm of HAUSFELD LLP, and my office is located at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

On July 13, 2015, I caused to be served a true and correct copy of the following:

**PLAINTIFFS' OPPOSITION TO OBJECTOR AMY YANG'S MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

with the Clerk of the Court using the Official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on July 13, 2015, at San Francisco, California.

                     */s/ Christopher Lebsock*
                     Christopher Lebsock

# EXHIBIT 6

Case 1:21-mc-00035-JGW Document 171-1 Filed 01/04/17 Page 88 of 187 Page ID#

Form **990**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

► Do not enter social security numbers on this form as it may be made public

► Information about Form 990 and its instructions is at www.IRS.gov/form990

OMB No 1545-0047

**2014**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

**A For the 2014 calendar year, or tax year beginning** 10-01-2014 **, and ending** 09-30-2015

| B Check if applicable | C Name of organization COMPETITIVE ENTERPRISE INSTITUTE | D Employer identification number |
|---|---|---|
| ☐ Address change | | 52-1351785 |
| ☐ Name change | Doing business as | |
| ☐ Initial return | | |
| ☐ Final return/terminated | Number and street (or P O box if mail is not delivered to street address) Room/suite 1899 L STREET NW NO 1200 | E Telephone number (202) 331-1010 |
| ☐ Amended return | City or town, state or province, country, and ZIP or foreign postal code WASHINGTON, DC 20036 | |
| ☐ Application pending | | G Gross receipts $ 7,837,312 |

| F Name and address of principal officer GREGORY CONKO 1899 L STREET NW NO 1200 WASHINGTON,DC 20036 | H(a) Is this a group return for subordinates? ☐ Yes ☑ No |
|---|---|
| | H(b) Are all subordinates included? ☐ Yes ☐ No If "No," attach a list (see instructions) |
| **I** Tax-exempt status ☑ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no ) ☐ 4947(a)(1) or ☐ 527 | |
| **J** Website: ► WWW CEI ORG | H(c) Group exemption number ► |
| **K** Form of organization ☑ Corporation ☐ Trust ☐ Association ☐ Other ► | **L** Year of formation 1984 **M** State of legal domicile DC |

## Part I Summary

| | | | | |
|---|---|---|---|---|
| Activities & Governance | 1 Briefly describe the organization's mission or most significant activities PUBLIC POLICY RESEARCH/EDUCATION DEDICATED TO PRINCIPLES OF FREE ENTERPRISE & LIMITED GOV'T | | | |
| | 2 Check this box ►☐ if the organization discontinued its operations or disposed of more than 25% of its net assets | | | |
| | 3 Number of voting members of the governing body (Part VI, line 1a) . . . . . . | 3 | 10 | |
| | 4 Number of independent voting members of the governing body (Part VI, line 1b) . . . . . | 4 | 8 | |
| | 5 Total number of individuals employed in calendar year 2014 (Part V, line 2a) . . . . . | 5 | 33 | |
| | 6 Total number of volunteers (estimate if necessary) . . . . . . . . . | 6 | 8 | |
| | 7a Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . . | 7a | 0 | |
| | b Net unrelated business taxable income from Form 990-T, line 34 . . . . . . . . | 7b | 0 | |

| | | Prior Year | Current Year |
|---|---|---|---|
| Revenue | 8 Contributions and grants (Part VIII, line 1h) . . . . . . . . | 7,105,791 | 7,605,353 |
| | 9 Program service revenue (Part VIII, line 2g) . . . . . . . . | 10,500 | 10,400 |
| | 10 Investment income (Part VIII, column (A), lines 3, 4, and 7d ) . . . . | 9,481 | 8,864 |
| | 11 Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | -115,926 | -179,800 |
| | 12 Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . | 7,009,846 | 7,444,817 |
| Expenses | 13 Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) . . . | 0 | 0 |
| | 14 Benefits paid to or for members (Part IX, column (A), line 4) . . . . | 0 | 0 |
| | 15 Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 3,074,495 | 3,273,515 |
| | 16a Professional fundraising fees (Part IX, column (A), line 11e) . . . . | 40,991 | 408,190 |
| | b Total fundraising expenses (Part IX, column (D), line 25) ►1,244,695 | | |
| | 17 Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . . | 3,311,566 | 3,675,205 |
| | 18 Total expenses Add lines 13–17 (must equal Part IX, column (A), line 25) | 6,427,052 | 7,356,910 |
| | 19 Revenue less expenses Subtract line 18 from line 12 . . . . . . | 582,794 | 87,907 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| Net Assets or Fund Balances | 20 Total assets (Part X, line 16) . . . . . . . . . . . | 2,913,637 | 2,854,282 |
| | 21 Total liabilities (Part X, line 26) . . . . . . . . . . . | 651,433 | 504,171 |
| | 22 Net assets or fund balances Subtract line 21 from line 20 . . . . | 2,262,204 | 2,350,111 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge

| Sign Here | ****** Signature of officer | 2016-02-19 Date |
|---|---|---|
| | GREGORY CONKO EXECUTIVE DIRECTOR Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name FRANK H SMITH | Preparer's signature FRANK H SMITH | Date 2016-02-16 | Check ☐ if self-employed | PTIN P00639053 |
|---|---|---|---|---|---|
| | Firm's name ► RAFFA PC | | | Firm's EIN ► 52-1511275 | |
| | Firm's address ► 1899 L STREET NW SUITE 850 WASHINGTON, DC 20036 | | | Phone no (202) 882-5000 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions. Cat No 11282Y Form **990** (2014)

Form 990 (2014)

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission

COMPETITIVE ENTERPRISE INSTITUTE (CEI) IS A NON-PROFIT PUBLIC POLICY ORGANIZATION DEDICATED TO THE PRINCIPLES OF FREE ENTERPRISE AND LIMITED GOVERNMENT  WE BELIEVE THAT CONSUMERS ARE BEST HELPED NOT BY GOVERNMENT REGULATION BUT BY BEING ALLOWED TO MAKE THEIR OWN CHOICES IN A FREE MARKETPLACE

**2** Did the organization undertake any significant program services during the year which were not listed on
the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses  Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported

**4a** (Code          ) (Expenses $      1,627,102   including grants of $          ) (Revenue $      10,400 )

CENTER FOR LITIGATIONCEI'S CENTER FOR LAW AND LITIGATION FOCUSES ON DEVELOPING NEW APPROACHES TO FIGHT OVERREGULATION THROUGH LITIGATION  IN AREAS RANGING FROM OUR SUCCESSFUL CONSTITUTIONAL CHALLENGE TO THE SARBANES-OXLEY FINANCIAL REGULATION LAW, TO OVERTURNING FEDERAL FUEL ECONOMY STANDARDS, THE CENTER HAS ALREADY ESTABLISHED MAJOR NEW PRECEDENTS FOR COMBATING REGULATIONS THAT RESTRICT CONSUMER CHOICE, STIFLE INNOVATION, AND LIMIT COMPETITION

**4b** (Code          ) (Expenses $      720,314   including grants of $          ) (Revenue $           )

COMMUNICATIONS AND OUTREACHCEI'S COMMUNICATIONS AND OUTREACH DEPARTMENT ASSISTS THE CEI POLICY CENTERS WITH THEIR EFFORTS TO DISSEMINATE RESEARCH FINDINGS AND ANALYSIS TO VARIOUS AUDIENCES INCLUDING POLICYMAKERS, NEWS MEDIA, ALLIED ORGANIZATIONS, AND THE GENERAL PUBLIC  IT ALSO HELPS THE POLICY CENTERS BUILD COALITIONS OF LIKE MINDED SCHOLARS, ACTIVISTS, AND OTHER STAKEHOLDERS TO ADVANCE THE ORGANIZATION'S MISSION OF PROMOTING THE INSTITUTIONS OF LIBERTY AND REMOVING GOVERNMENT-CREATED BARRIERS TO ECONOMIC FREEDOM, INNOVATION, AND PROSPERITY

**4c** (Code          ) (Expenses $      711,827   including grants of $          ) (Revenue $           )

CENTER FOR ECONOMIC FREEDOMCEI'S CENTER FOR ECONOMIC FREEDOM WORKS TO ENSURE THAT VOLUNTARY ECONOMIC TRANSACTIONS REMAIN FREE FROM GOVERNMENT COERCION AND CONTROL  THE CENTER DEFENDS AGAINST ATTACKS ON THESE FREEDOMS FROM BUREAUCRATS AND NANNY-STATE BUSYBODIES, WORKING TO EXPAND THE ORBIT OF VOLUNTARY ARRANGEMENTS IN THE ECONOMY - INCLUDING BANKING AND FINANCE, LABOR AND EMPLOYMENT, INSURANCE, THE FREEDOM TO TAKE RISKS AS AN ENTREPRENEUR OR CONSUMER, INTERNATIONAL TRADE AND DEVELOPMENT, AND MANY OTHERS  THE CENTER AIMS FOR A WORLD WHERE THE RIGHTS AND BENEFITS OF FREE TRANSACTIONS ARE RECOGNIZED, RESPECTED, AND PROTECTED

See Additional Data

**4d** Other program services (Describe in Schedule O )

(Expenses $      2,575,729   including grants of $          ) (Revenue $           )

**4e** Total program service expenses ▶          5,634,972

**Part IV**  **Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . | **4** | Yes | |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X, or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . . . . . . . . . . . . . . . . . | **11f** | Yes | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . | **12a** | Yes | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . | **13** | | |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . | **14b** | Yes | |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) . . . . | **17** | Yes | |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . | **18** | Yes | |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |

| Part IV | Checklist of Required Schedules *(continued)* | | | |
|---|---|---|---|---|
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . | **21** | | No |
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . | **22** | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . 🖾 | **23** | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . . . | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . | **25a** | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . . . . . . . . . . | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| **a** | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **28a** | | No |
| **b** | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . | **28b** | | No |
| **c** | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . 🖾 | **29** | Yes | |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . 🖾 | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | No |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O . . . . . . . . . . . . . | **38** | Yes | |

| Part V | Statements Regarding Other IRS Filings and Tax Compliance | | | | |
|---|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . . . . . . ☐ | | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable . . | **1a** | 47 | | |
| **b** | Enter the number of Forms W-2G included in line 1a Enter -0- if not applicable | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . | | | **1c** | Yes | |
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . | **2a** | 33 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year? If "No" to line 3b, provide an explanation in Schedule O . . . | | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . | | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) | | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . | | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . | | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . | | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . | | | **7a** | Yes | |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | | | **7b** | Yes | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . | | | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . | **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . . . . . . . . . . . . . . . . . . . | | | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | | | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . . . . | | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . . . . . | | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . . . . . | | | **8** | | |
| **9a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . | | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter | | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . | **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | | |
| **11** | **Section 501(c)(12) organizations.** Enter | | | | | |
| **a** | Gross income from members or shareholders . . . . . . . . | **11a** | | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them ) . . . . . . . | **11b** | | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . . . . . . . . . . . . . . | **12b** | | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O | | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . | **13c** | | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . | | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O . . | | | **14b** | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 94 of 188 PageID #:
3437

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . ☑

## Section A. Governing Body and Management

| | | | Yes | No |
|---|---|---|---|---|
| **1a** Enter the number of voting members of the governing body at the end of the tax year . . . . . . . . . . . . . . . . . . | **1a** | 10 | | |
| If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O | | | | |
| **b** Enter the number of voting members included in line 1a, above, who are independent . . . . . . . . . . . . . . . . . . | **1b** | 8 | | |
| **2** Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . | **2** | | | No |
| **3** Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | **3** | | | No |
| **4** Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . . . . . . . . . . . . . . . . . . . . | **4** | | | No |
| **5** Did the organization become aware during the year of a significant diversion of the organization's assets? . | **5** | | | No |
| **6** Did the organization have members or stockholders? . . . . . . . . . . . . | **6** | | | No |
| **7a** Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . | **7a** | | | No |
| **b** Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . | **7b** | | | No |
| **8** Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following | | | | |
| **a** The governing body? . . . . . . . . . . . . . . . . . . . . | **8a** | | Yes | |
| **b** Each committee with authority to act on behalf of the governing body? . . . . . . . . | **8b** | | Yes | |
| **9** Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . . | **9** | | | No |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | Yes | No |
|---|---|---|---|
| **10a** Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . | **10a** | | No |
| **b** If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . . . . | **11a** | Yes | |
| **b** Describe in Schedule O the process, if any, used by the organization to review this Form 990 | | | |
| **12a** Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . | **12a** | Yes | |
| **b** Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . | **12b** | Yes | |
| **c** Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . . | **12c** | Yes | |
| **13** Did the organization have a written whistleblower policy? . . . . . . . . . . . | **13** | Yes | |
| **14** Did the organization have a written document retention and destruction policy? . . . . . . | **14** | Yes | |
| **15** Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** The organization's CEO, Executive Director, or top management official . . . . . . . | **15a** | Yes | |
| **b** Other officers or key employees of the organization . . . . . . . . . . . . | **15b** | Yes | |
| If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) | | | |
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . | **16a** | | No |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . | **16b** | | |

## Section C. Disclosure

**17** List the States with which a copy of this Form 990 is required to be filed▶AL , AK , AR , CA , CO , CT , FL , GA , HI , IL , KS , KY , ME , MA , MI , MN , MS , NH , NJ , NM , NY , NC , ND , OH , OK , OR , PA , RI , SC , TN , UT , WA , WV , WI

**18** Section 6104 requires an organization to make its Form 1023 (or 1024 if applicable), 990, and 990-T (501(c) (3)s only) available for public inspection Indicate how you made these available Check all that apply
☑ Own website   ☐ Another's website   ☑ Upon request   ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, address, and telephone number of the person who possesses the organization's books and records
▶MEGAN MCLAUGHLIN

1899 L STREET NW NO 1200
WASHINGTON,DC  20036  (202) 331-1010

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . ☐

### Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**1a** Complete this table for all persons required to be listed  Report compensation for the calendar year ending with or within the organization's tax year

♦ List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation  Enter -0- in columns (D), (E), and (F) if no compensation was paid

♦ List all of the organization's **current** key employees, if any  See instructions for definition of "key employee "

♦ List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations

♦ List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations

♦ List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order  individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) TODD J ZYWICKI .......................... CHAIRMAN (AS OF 10/2014) | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (2) FRED L SMITH JR - FOUNDER .......................... DIRECTOR, DIR  FOR CTR  FOR ADV  CAP | 40 00 .......................... | X | | | | | | 170,586 | 0 | 13,264 |
| (3) LAWSON BADER .......................... PRESIDENT | 40 00 .......................... | X | | X | | | | 172,681 | 0 | 17,028 |
| (4) JAMES R CURLEY .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (5) MICHAEL W GLEBA .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (6) MICHAEL S GREVE .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (7) JEAN-CLAUDE GRUFFAT .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (8) KERRY HALFERTY HARDY .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (9) W THOMAS HAYNES .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (10) JAMES R VON EHR .......................... DIRECTOR | 1 00 .......................... | X | | | | | | 0 | 0 | 0 |
| (11) MEGAN MCLAUGHLIN .......................... TREASURER, SEN  DIR  FIN | 40 00 .......................... | | | X | | | | 95,173 | 0 | 5,712 |
| (12) AMANDA FRANCE .......................... SECRETARY, EXECUTIVE ASSISTANT | 40 00 .......................... | | | X | | | | 55,617 | 0 | 5,571 |
| (13) GREGORY CONKO .......................... EXECUTIVE DIRECTOR, VICE PRESIDENT | 40 00 .......................... | | | X | | | | 125,897 | 0 | 5,764 |
| (14) WAYNE CREWS .......................... VP FOR POLICY | 40 00 .......................... | | | | | X | | 146,583 | 0 | 16,861 |

| **Part VII** | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W- 2/1099- MISC) | (E) Reportable compensation from related organizations (W- 2/1099- MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (15) SAM KAZMAN .............................. GENERAL COUNSEL | 40 00 ...................... | | | | | X | | 122,017 | 0 | 13,286 |
| (16) MYRON EBELL .............................. DIRECTOR FOR CTR FOR ENERGY | 40 00 ...................... | | | | | X | | 113,189 | 0 | 1,985 |
| (17) COLEY JACKSON .............................. VP OF EXTERNAL AFFAIRS | 40 00 ...................... | | | | | X | | 110,155 | 0 | 498 |
| (18) MARLO LEWIS .............................. SENIOR FELLOW | 40 00 ...................... | | | | | X | | 101,356 | 0 | 16,475 |

| | | | | | |
|---|---|---|---|---|---|
| **1b** | **Sub-Total** . . . . . . . . . . . . | ▶ | | | |
| **c** | **Total from continuation sheets to Part VII, Section A** . . . . . | ▶ | | | |
| **d** | **Total (add lines 1b and 1c)** . . . . . . . . . . . . | ▶ | 1,213,254 | 0 | 96,444 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization▶10

| | | | Yes | No |
|---|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . | **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . | **4** | Yes | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . | **5** | | No |

## Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization  Report compensation for the calendar year ending with or within the organization's tax year

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| JONES DAY 51 LOUISIANA AVENUE NW WASHINGTON, DC  20001 | LEGAL SERVICES | 850,000 |
| MORGAN MEREDITH & ASSOCIATES 22780 INDIAN CREEK DRIVE STE 100 DULLES, VA  20166 | PRINTING SERVICES | 327,395 |
| O'MELVENY & MYERS LLP 1625 I STREET NW WASHINGTON, DC  20006 | LEGAL SERVICES | 300,000 |
| BOYDEN GRAY & ASSOCIATES PLLC 1627 I STREET NW WASHINGTON, DC  20006 | LEGAL SERVICES | 130,000 |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶4

**Part VIII**  **Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . ⬜

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** | Federated campaigns . . | **1a** | | | | |
| | **b** | Membership dues . . | **1b** | | | | |
| | **c** | Fundraising events . . . . | **1c** | 899,066 | | | |
| | **d** | Related organizations . . . | **1d** | | | | |
| | **e** | Government grants (contributions) | **1e** | | | | |
| | **f** | All other contributions, gifts, grants, and similar amounts not included above | **1f** | 6,706,287 | | | |
| | **g** | Noncash contributions included in lines 1a-1f $ | | 338,696 | | | |
| | **h** | **Total.** Add lines 1a-1f . . . . . . . . . ▶ | | 7,605,353 | | | |
| **Program Service Revenue** | | | Business Code | | | | |
| | **2a** | LITIGATION FEES | 900099 | 10,400 | 10,400 | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | | | | | | |
| | **e** | | | | | | |
| | **f** | All other program service revenue | | | | | |
| | **g** | **Total.** Add lines 2a–2f . . . . . . . . ▶ | | 10,400 | | | |
| **Other Revenue** | **3** | Investment income (including dividends, interest, and other similar amounts) . . . . . . . ▶ | | 9,779 | | | 9,779 |
| | **4** | Income from investment of tax-exempt bond proceeds . ▶ | | | | | |
| | **5** | Royalties . . . . . . . . . . . ▶ | | | | | |
| | | | (i) Real / (ii) Personal | | | | |
| | **6a** | Gross rents | | | | | |
| | **b** | Less rental expenses | | | | | |
| | **c** | Rental income or (loss) | | | | | |
| | **d** | Net rental income or (loss) . . . . . . . ▶ | | | | | |
| | **7a** | Gross amount from sales of assets other than inventory | (i) Securities 9,884 / (ii) Other | | | | |
| | **b** | Less cost or other basis and sales expenses | 10,799 | | | | |
| | **c** | Gain or (loss) | -915 | | | | |
| | **d** | Net gain or (loss) . . . . . . . . . ▶ | | -915 | | | -915 |
| | **8a** | Gross income from fundraising events (not including $ 899,066 of contributions reported on line 1c) See Part IV, line 18 . . a | | 199,542 | | | |
| | **b** | Less direct expenses . . . b | | 381,696 | | | |
| | **c** | Net income or (loss) from fundraising events . . ▶ | | -182,154 | | | -182,154 |
| | **9a** | Gross income from gaming activities See Part IV, line 19 . . . a | | | | | |
| | **b** | Less direct expenses . . . b | | | | | |
| | **c** | Net income or (loss) from gaming activities . . . ▶ | | | | | |
| | **10a** | Gross sales of inventory, less returns and allowances . a | | | | | |
| | **b** | Less cost of goods sold . . b | | | | | |
| | **c** | Net income or (loss) from sales of inventory . . ▶ | | | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | **11a** | REIMBURSEMENTS/REBATES | 900099 | 2,354 | | | 2,354 |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | All other revenue . . . . | | | | | |
| | **e** | **Total.** Add lines 11a–11d . . . . . . . ▶ | | 2,354 | | | |
| | **12** | **Total revenue.** See Instructions . . . . . ▶ | | 7,444,817 | 10,400 | 0 | -170,936 |

| **Part IX** | **Statement of Functional Expenses** |
|---|---|

Section 501(c)(3) and 501(c)(4) organizations must complete all columns All other organizations must complete column (A)

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . ☐

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments See Part IV, line 21 . . . . . | | | | |
| **2** Grants and other assistance to domestic individuals See Part IV, line 22 . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals See Part IV, lines 15 and 16 . . . . . . . . . . . | | | | |
| **4** Benefits paid to or for members . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . | 748,362 | 641,778 | 106,584 | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . | | | | |
| **7** Other salaries and wages . . . . | 2,121,499 | 1,585,597 | 143,981 | 391,921 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . | | | | |
| **9** Other employee benefits . . . . . . . | 203,119 | 165,342 | 15,322 | 22,455 |
| **10** Payroll taxes . . . . . . . . . | 200,535 | 152,119 | 18,551 | 29,865 |
| **11** Fees for services (non-employees) | | | | |
| **a** Management . . . . . . . | | | | |
| **b** Legal . . . . . . . . . | 1,282,560 | 1,267,182 | 4,993 | 10,385 |
| **c** Accounting . . . . . . . . . | 83,038 | | 83,038 | |
| **d** Lobbying . . . . . . . . | | | | |
| **e** Professional fundraising services See Part IV, line 17 | 408,190 | | | 408,190 |
| **f** Investment management fees . . . . . . | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) . . . . | 463,764 | 455,474 | 8,290 | |
| **12** Advertising and promotion . . . . . | 15,132 | 11,132 | | 4,000 |
| **13** Office expenses . . . . . . . . | 248,314 | 63,184 | 97,058 | 88,072 |
| **14** Information technology . . . . . . | 323,816 | 2,311 | 316,619 | 4,886 |
| **15** Royalties . . | | | | |
| **16** Occupancy . . . . . . . . . . | 543,812 | 280 | 543,532 | |
| **17** Travel . . . . . . . . . . . | 222,990 | 169,557 | 4,156 | 49,277 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . . . . . . | | | | |
| **19** Conferences, conventions, and meetings . . . . | 242,668 | 152,236 | 36,971 | 53,461 |
| **20** Interest . . . . . . . . . . . | 4,422 | | 4,422 | |
| **21** Payments to affiliates . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . . . . | 45,057 | | 45,057 | |
| **23** Insurance . . . . . . . . . . . | 21,163 | 462 | 20,701 | |
| **24** Other expenses Itemize expenses not covered above (List miscellaneous expenses in line 24e If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O) | | | | |
| **a** PLEDGE WRITE-OFFS | 114,305 | | 114,305 | |
| **b** BOOKS & SUBSCRIPTIONS | 63,631 | 51,058 | 6,244 | 6,329 |
| **c** MISCELLANEOUS | 533 | 386 | 132 | 15 |
| **d** ALLOCATIONS | 0 | 916,874 | -1,092,713 | 175,839 |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 7,356,910 | 5,634,972 | 477,243 | 1,244,695 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation Check here ▶ ☑ if following SOP 98-2 (ASC 958-720) | 399,315 | 254,232 | 75,746 | 69,337 |

| **Part X** | **Balance Sheet** | | | | |

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . .

| | | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|
| **1** | Cash–non-interest-bearing . . . . . . . . . | | 719,243 | **1** | 371,271 |
| **2** | Savings and temporary cash investments . . . . . . . . . | | 439,227 | **2** | 489,810 |
| **3** | Pledges and grants receivable, net . . . . . . . . . | | 960,525 | **3** | 1,182,073 |
| **4** | Accounts receivable, net . . . . . . . . . | | | **4** | |
| **5** | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees Complete Part II of Schedule L . . . . . . . . . | | | **5** | |
| **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L | | | **6** | |
| **7** | Notes and loans receivable, net . . . . . . . . . | | | **7** | |
| **8** | Inventories for sale or use . . . . . . . . . | | | **8** | |
| **9** | Prepaid expenses and deferred charges . . . . . . . . . | | 114,690 | **9** | 142,020 |
| **10a** | Land, buildings, and equipment cost or other basis Complete Part VI of Schedule D    **10a** 302,017 | | | | |
| **b** | Less accumulated depreciation . . . . .    **10b** 202,460 | | 115,252 | **10c** | 99,557 |
| **11** | Investments—publicly traded securities . . . . . . . . . | | 556,245 | **11** | 555,716 |
| **12** | Investments—other securities See Part IV, line 11 . . . . . | | | **12** | |
| **13** | Investments—program-related See Part IV, line 11 . . . . | | | **13** | |
| **14** | Intangible assets . . . . . . . . . | | | **14** | |
| **15** | Other assets See Part IV, line 11 . . . . . . . . . | | 8,455 | **15** | 13,835 |
| **16** | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . . . . . | | 2,913,637 | **16** | 2,854,282 |
| **17** | Accounts payable and accrued expenses . . . . . . . . . | | 417,119 | **17** | 302,036 |
| **18** | Grants payable . . . . . . . . . | | | **18** | |
| **19** | Deferred revenue . . . . . . . . . | | | **19** | |
| **20** | Tax-exempt bond liabilities . . . . . . . . . | | | **20** | |
| **21** | Escrow or custodial account liability Complete Part IV of Schedule D . . | | | **21** | |
| **22** | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons Complete Part II of Schedule L . . . . . . . . . | | | **22** | |
| **23** | Secured mortgages and notes payable to unrelated third parties . . | | | **23** | |
| **24** | Unsecured notes and loans payable to unrelated third parties . . | | | **24** | |
| **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24) Complete Part X of Schedule D . . . . . . . . . | | 234,314 | **25** | 202,135 |
| **26** | **Total liabilities.** Add lines 17 through 25 . . . . . . . . . | | 651,433 | **26** | 504,171 |
| | Organizations that follow SFAS 117 (ASC 958), check here ▶ ☑ and complete lines 27 through 29, and lines 33 and 34. | | | | |
| **27** | Unrestricted net assets . . . . . . . . . | | 1,657,966 | **27** | 2,325,739 |
| **28** | Temporarily restricted net assets . . . . . . . . . | | 604,238 | **28** | 24,372 |
| **29** | Permanently restricted net assets . . . . . . . . . | | | **29** | |
| | Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 30 through 34. | | | | |
| **30** | Capital stock or trust principal, or current funds . . . . . . . . . | | | **30** | |
| **31** | Paid-in or capital surplus, or land, building or equipment fund . . | | | **31** | |
| **32** | Retained earnings, endowment, accumulated income, or other funds | | | **32** | |
| **33** | Total net assets or fund balances . . . . . . . . . | | 2,262,204 | **33** | 2,350,111 |
| **34** | Total liabilities and net assets/fund balances . . . . . . . . . | | 2,913,637 | **34** | 2,854,282 |

Assets / Liabilities / Net Assets or Fund Balances

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 100 of 188 PageID #: 3438

**Part XI**    **Reconciliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . ⌐

| | | | |
|---|---|---|---:|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . | **1** | 7,444,817 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . | **2** | 7,356,910 |
| **3** | Revenue less expenses  Subtract line 2 from line 1 . . . . . . . . . . | **3** | 87,907 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A))  . . | **4** | 2,262,204 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . . | **5** | |
| **6** | Donated services and use of facilities . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . | **8** | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . | **9** | 0 |
| **10** | Net assets or fund balances at end of year  Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | 2,350,111 |

**Part XII**    **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . ⌐

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Accounting method used to prepare the Form 990    ⌐ Cash  ☑ Accrual  ⌐ Other _____<br>If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both<br>⌐ Separate basis    ⌐ Consolidated basis    ⌐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both<br>☑ Separate basis    ⌐ Consolidated basis    ⌐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

**Additional Data**

**Software ID:**

**Software Version:**

**EIN:** 52-1351785

**Name:** COMPETITIVE ENTERPRISE INSTITUTE

## Form 990, Part III - Line 4c: Program Service Accomplishments (See the Instructions)

| (Code | ) (Expenses $ | 640,513 | including grants of $ | ) (Revenue $ | ) |
|---|---|---|---|---|---|
| CENTER FOR ENERGY AND ENVIRONMENT | | | | | |
| (Code | ) (Expenses $ | 541,457 | including grants of $ | ) (Revenue $ | ) |
| OFFICE OF THE PRESIDENT | | | | | |

**Form 990, Part III – Line 4c: Program Service Accomplishments (See the Instructions)**

| (Code | ) (Expenses $ | 493,989 | including grants of $ | ) (Revenue $ | ) |
|---|---|---|---|---|---|
| CENTER FOR TECHNOLOGY AND INNOVATION | | | | | |

| (Code | ) (Expenses $ | 354,003 | including grants of $ | ) (Revenue $ | ) |
|---|---|---|---|---|---|
| CENTER FOR ADVANCING CAPITALISM | | | | | |

**Form 990, Part III – Line 4c: Program Service Accomplishments (See the Instructions)**

| (Code | ) (Expenses $ | 314,912 | including grants of $ | ) (Revenue $ | ) |
|-------|---------------|---------|-----------------------|--------------|---|

CENTER FOR RISK AND CONSUMER FREEDOM

| (Code | ) (Expenses $ | 230,855 | including grants of $ | ) (Revenue $ | ) |
|-------|---------------|---------|-----------------------|--------------|---|

REALCLEAR RADIO HOUR

| SCHEDULE A | Public Charity Status and Public Support | OMB No 1545-0047 |
|---|---|---|
| (Form 990 or 990EZ) | Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust. | **2014** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or Form 990-EZ. ▶ Information about Schedule A (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **Open to Public Inspection** |

| Name of the organization COMPETITIVE ENTERPRISE INSTITUTE | Employer identification number 52-1351785 |
|---|---|

## Part I  Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is  (For lines 1 through 11, check only one box )

1  ☐  A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2  ☐  A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E )

3  ☐  A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4  ☐  A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state _____

5  ☐  An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II )

6  ☐  A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7  ☑  An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II )

8  ☐  A community trust described in **section 170(b)(1)(A)(vi)** (Complete Part II )

9  ☐  An organization that normally receives  (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975  See **section 509(a)(2).** (Complete Part III )

10  ☐  An organization organized and operated exclusively to test for public safety  See **section 509(a)(4).**

11  ☐  An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2)  See **section 509(a)(3).** Check the box in lines 11a through 11d that describes the type of supporting organization and complete lines 11e, 11f, and 11g

a  ☐  **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization  **You must complete Part IV, Sections A and B.**

b  ☐  **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s)  **You must complete Part IV, Sections A and C.**

c  ☐  **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions)  **You must complete Part IV, Sections A, D, and E.**

d  ☐  **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated  The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions)  **You must complete Part IV, Sections A and D, and Part V.**

e  ☐  Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization

f  Enter the number of supported organizations  . . . . . . . . . . . . . . . . . . . . . . . . . _____

g  Provide the following information about the supported organization(s)

| (i)Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 9 above or IRC section (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990EZ.    Cat No 11285F    Schedule A (Form 990 or 990-EZ) 2014

Case 1:17-md-02359-JDW    Document 172-1    Filed 01/04/17    Page 105 of 188 PageID # 3243

**Part II**   Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2010 | **(b)** 2011 | **(c)** 2012 | **(d)** 2013 | **(e)** 2014 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | 5,224,185 | 6,291,729 | 6,470,211 | 7,105,791 | 7,605,353 | 32,697,269 |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **4** **Total.** Add lines 1 through 3 | 5,224,185 | 6,291,729 | 6,470,211 | 7,105,791 | 7,605,353 | 32,697,269 |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 2,596,448 |
| **6** **Public support.** Subtract line 5 from line 4 | | | | | | 30,100,821 |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2010 | **(b)** 2011 | **(c)** 2012 | **(d)** 2013 | **(e)** 2014 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4 | 5,224,185 | 6,291,729 | 6,470,211 | 7,105,791 | 7,605,353 | 32,697,269 |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | 19,710 | 21,841 | 10,824 | 10,120 | 9,779 | 72,274 |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on | | | 109 | | | 109 |
| **10** Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | 38,029 | 19,624 | 52,543 | 8,282 | | 118,478 |
| **11** **Total support** Add lines 7 through 10 | | | | | | 32,888,130 |

| **12** Gross receipts from related activities, etc (see instructions) | | **12** | 495,915 |
|---|---|---|---|

**13** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶☐

## Section C. Computation of Public Support Percentage

| **14** Public support percentage for 2014 (line 6, column (f) divided by line 11, column (f)) | **14** | 91 520 % |
|---|---|---|
| **15** Public support percentage for 2013 Schedule A, Part II, line 14 | **15** | 88 440 % |

**16a** **33 1/3% support test—2014.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶☑

**b** **33 1/3% support test—2013.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶☐

**17a** **10%-facts-and-circumstances test—2014.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization   ▶☐

**b** **10%-facts-and-circumstances test—2013.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization   ▶☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions   ▶☐

**Part III** **Support Schedule for Organizations Described In Section 509(a)(2)**
(Complete only if you checked the box on line 9 of Part II or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2010 | **(b)** 2011 | **(c)** 2012 | **(d)** 2013 | **(e)** 2014 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8** **Public support** (Subtract line 7c from line 6 ) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2010 | **(b)** 2011 | **(c)** 2012 | **(d)** 2013 | **(e)** 2014 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12 ) | | | | | | |

**14** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ▶ ☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for 2014 (line 8, column (f) divided by line 13, column (f)) | **15** | |
| **16** Public support percentage from 2013 Schedule A, Part III, line 15 | **16** | |

## Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2014** (line 10c, column (f) divided by line 13, column (f)) | **17** | |
| **18** Investment income percentage from **2013** Schedule A, Part III, line 17 | **18** | |

**19a** **33 1/3% support tests—2014.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**b** **33 1/3% support tests—2013.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

**Part IV** **Supporting Organizations** (Complete only if you checked a box on line 11 of Part I  If you checked 11a of Part I, complete Sections A and B  If you checked 11b of Part I, complete Sections A and C  If you checked 11c of Part I, complete Sections A, D, and E  If you checked 11d of Part I, complete Sections A and D, and complete Part V )

## Section A. All Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 11a or 11b in Part I, answer (b) and (c) below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in Part VI how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.  .   .   .* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in Part VI what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in Part VI, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (a) its supported organizations, (b) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (c) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in IRC 4958(c)(3)(C)), a family member of a substantial contributor, or a 35-percent controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part II of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509 (a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9(a)) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined in line 9(a)) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of IRC 4943 because of IRC 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described in (a) above? | **11b** | | |
| **c** | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in Part VI.* | **11c** | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 108 of 188 PageID #: 3446

**Part IV**   **Supporting Organizations** (continued)

## Section B. Type I Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

## Section C. Type II Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

## Section D. All Type III Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (1) a written notice describing the type and amount of support provided during the prior tax year, (2) a copy of the Form 990 that was most recently filed as of the date of notification, and (3) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | **3** | | |

## Section E. Type III Functionally-Integrated Supporting Organizations

**1**   Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**

**a**   ☐   The organization satisfied the Activities Test Complete **line 2** below

**b**   ☐   The organization is the parent of each of its supported organizations Complete **line 3** below

**c**   ☐   The organization supported a governmental entity Describe in Part VI how you supported a government entity (see instructions)

| | | Yes | No |
|---|---|---|---|
| **2** | <u>Activities Test</u>   **Answer (a) and (b) below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI** identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | <u>Parent of Supported Organizations</u>   **Answer (a) and (b) below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in Part VI.* | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in Part VI the role played by the organization in this regard.* | **3b** | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 109 of 188 PageID #: 3447

**Part V – Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov 20, 1970 **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E

| | Section A – Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | Section B – Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year) | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (explain in detail in Part VI) _____ | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use Enter 1-1/2% of line 3 (for greater amount, see instructions) | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | Section C – Distributable Amount | | Current Year |
|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | |
| 2 | Enter 85% of line 1 | 2 | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | |
| 4 | Enter greater of line 2 or line 3 | 4 | |
| 5 | Income tax imposed in prior year | 5 | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | |
| 7 | ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions) | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 110 of 188 PageID #: 3448

## Section D – Distributions

| | | Current Year |
|---|---|---|
| **1** | Amounts paid to supported organizations to accomplish exempt purposes | |
| **2** | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| **3** | Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| **4** | Amounts paid to acquire exempt-use assets | |
| **5** | Qualified set-aside amounts (prior IRS approval required) | |
| **6** | Other distributions (describe in Part VI) See instructions | |
| **7** | **Total annual distributions.** Add lines 1 through 6 | |
| **8** | Distributions to attentive supported organizations to which the organization is responsive (provide details in Part VI) See instructions | |
| **9** | Distributable amount for 2014 from Section C, line 6 | |
| **10** | Line 8 amount divided by Line 9 amount | |

| **Section E – Distribution Allocations (see instructions)** | (i)<br>**Excess Distributions** | (ii)<br>**Underdistributions Pre-2014** | (iii)<br>**Distributable Amount for 2014** |
|---|---|---|---|
| **1** Distributable amount for 2014 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2014 (reasonable cause required--see instructions) | | | |
| **3** Excess distributions carryover, if any, to 2014 | | | |
| **a** From 2009. . . . . . . | | | |
| **b** From 2010. . . . . . . | | | |
| **c** From 2011. . . . . . . | | | |
| **d** From 2012. . . . . . . | | | |
| **e** From 2013. . . . . . . | | | |
| **f Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2014 distributable amount | | | |
| **i** Carryover from 2009 not applied (see instructions) | | | |
| **j** Remainder Subtract lines 3g, 3h, and 3i from 3f | | | |
| **4** Distributions for 2014 from Section D, line 7 $ _____ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2014 distributable amount | | | |
| **c** Remainder Subtract lines 4a and 4b from 4 | | | |
| **5** Remaining underdistributions for years prior to 2014, if any Subtract lines 3g and 4a from line 2 (if amount greater than zero, see instructions) | | | |
| **6** Remaining underdistributions for 2014 Subtract lines 3h and 4b from line 1 (if amount greater than zero, see instructions) | | | |
| **7** **Excess distributions carryover to 2015.** Add lines 3j and 4c | | | |
| **8** Breakdown of line 7 | | | |
| **a** From 2010. . . . . . . | | | |
| **b** From 2011. . . . . . . | | | |
| **c** From 2012. . . . . . . | | | |
| **d** From 2013. . . . . . . | | | |
| **e** From 2014. . . . . . . | | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 111 of 188 PageID #: 3449

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10, Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

| Facts And Circumstances Test |
| --- |
|  |

| Return Reference | Explanation |
| --- | --- |
| SCHEDULE A, PART II, LINE 10, EXPLANATION OF OTHER INCOME | MISCELLANEOUS INCOME - 2010 AMOUNT $38,029 2011 AMOUNT $19,624 2012 AMOUNT $7,285 2013 AMOUNT $8,282 2014 AMOUNT $0 PUBLICATIONS - 2012 AMOUNT $258 2013 AMOUNT $0 2014 AMOUNT $0 EPA LITIGATION INCOME - 2012 AMOUNT $45,000 2014 AMOUNT $0 |

# SCHEDULE C
## (Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Political Campaign and Lobbying Activities

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

▶ Complete if the organization is described below. ▶ Attach to Form 990 or Form 990-EZ.
▶ Information about Schedule C (Form 990 or 990-EZ) and its instructions is at
www.irs.gov/form990.

OMB No 1545-0047

# 2014

Open to Public
Inspection

**If the organization answered "Yes" to Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**
- Section 501(c)(3) organizations  Complete Parts I-A and B  Do not complete Part I-C
- Section 501(c) (other than section 501(c)(3)) organizations  Complete Parts I-A and C below  Do not complete Part I-B
- Section 527 organizations  Complete Part I-A only

**If the organization answered "Yes" to Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**
- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h))  Complete Part II-A  Do not complete Part II-B
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h))  Complete Part II-B  Do not complete Part II-A

**If the organization answered "Yes" to Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**
- Section 501(c)(4), (5), or (6) organizations  Complete Part III

| Name of the organization<br>COMPETITIVE ENTERPRISE INSTITUTE | Employer identification number<br>52-1351785 |
| --- | --- |

## Part I-A    Complete if the organization is exempt under section 501(c) or is a section 527 organization.

**1**  Provide a description of the organization's direct and indirect political campaign activities in Part IV

**2**  Political expenditures ▶ $ _____

**3**  Volunteer hours _____

## Part I-B    Complete if the organization is exempt under section 501(c)(3).

**1**  Enter the amount of any excise tax incurred by the organization under section 4955 ▶ $ _____

**2**  Enter the amount of any excise tax incurred by organization managers under section 4955 ▶ $ _____

**3**  If the organization incurred a section 4955 tax, did it file Form 4720 for this year?     ☐ Yes    ☐ No

**4a**  Was a correction made?     ☐ Yes    ☐ No

**b**  If "Yes," describe in Part IV

## Part I-C    Complete if the organization is exempt under section 501(c), except section 501(c)(3).

**1**  Enter the amount directly expended by the filing organization for section 527 exempt function activities ▶ $ _____

**2**  Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ▶ $ _____

**3**  Total exempt function expenditures  Add lines 1 and 2  Enter here and on Form 1120-POL, line 17b ▶ $ _____

**4**  Did the filing organization file **Form 1120-POL** for this year?     ☐ Yes    ☐ No

**5**  Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments  For each organization listed, enter the amount paid from the filing organization's funds  Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC)  If additional space is needed, provide information in Part IV

| (a) Name | (b) Address | (c) EIN | (d) Amount paid from filing organization's funds  If none, enter -0- | (e) Amount of political contributions received and promptly and directly delivered to a separate political organization  If none, enter -0- |
| --- | --- | --- | --- | --- |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II-A**   **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

**A**   Check   ▶ ☐   if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures)

**B**   Check   ▶ ☐   if the filing organization checked box A and "limited control" provisions apply

| | **Limits on Lobbying Expenditures**<br>(The term "expenditures" means amounts paid or incurred.) | **(a)** Filing organization's totals | **(b)** Affiliated group totals |
|---|---|---|---|
| **1a** | Total lobbying expenditures to influence public opinion (grass roots lobbying) | 139 | |
| **b** | Total lobbying expenditures to influence a legislative body (direct lobbying) | 27,201 | |
| **c** | Total lobbying expenditures (add lines 1a and 1b) | 27,340 | |
| **d** | Other exempt purpose expenditures | 6,921,380 | |
| **e** | Total exempt purpose expenditures (add lines 1c and 1d) | 6,948,720 | |
| **f** | Lobbying nontaxable amount  Enter the amount from the following table in both columns | 497,436 | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 |
| Over $17,000,000 | $1,000,000 |

| | | **(a)** | **(b)** |
|---|---|---|---|
| **g** | Grassroots nontaxable amount (enter 25% of line 1f) | 124,359 | |
| **h** | Subtract line 1g from line 1a  If zero or less, enter -0- | 0 | |
| **i** | Subtract line 1f from line 1c  If zero or less, enter -0- | 0 | |

**j**   If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year?    ☐ **Yes**   ☐ **No**

### 4-Year Averaging Period Under section 501(h)
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

### Lobbying Expenditures During 4-Year Averaging Period

| | Calendar year (or fiscal year beginning in) | **(a)** 2011 | **(b)** 2012 | **(c)** 2013 | **(d)** 2014 | **(e)** Total |
|---|---|---|---|---|---|---|
| **2a** | Lobbying nontaxable amount | 441,790 | 536,685 | 467,891 | 497,436 | 1,943,802 |
| **b** | Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | 2,915,703 |
| **c** | Total lobbying expenditures | 16,144 | 20,333 | 23,145 | 27,340 | 86,962 |
| **d** | Grassroots nontaxable amount | 110,448 | 134,171 | 116,973 | 124,359 | 485,951 |
| **e** | Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | 728,927 |
| **f** | Grassroots lobbying expenditures | 970 | 1,138 | 84 | 139 | 2,331 |

| **Part II-B** | **Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).** | | | | |
|---|---|---|---|---|---|

| For each "Yes" response to lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity. | | **(a)** | | **(b)** | |
|---|---|---|---|---|---|
| | | **Yes** | **No** | **Amount** | |
| **1** | During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of | | | | |
| **a** | Volunteers? | | | | |
| **b** | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? | | | | |
| **c** | Media advertisements? | | | | |
| **d** | Mailings to members, legislators, or the public? | | | | |
| **e** | Publications, or published or broadcast statements? | | | | |
| **f** | Grants to other organizations for lobbying purposes? | | | | |
| **g** | Direct contact with legislators, their staffs, government officials, or a legislative body? | | | | |
| **h** | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? | | | | |
| **i** | Other activities? | | | | |
| **j** | Total  Add lines 1c through 1i | | | | |
| **2a** | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? | | | | |
| **b** | If "Yes," enter the amount of any tax incurred under section 4912 | | | | |
| **c** | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 | | | | |
| **d** | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? | | | | |

| **Part III-A** | **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).** | | | | |
|---|---|---|---|---|---|

| | | | | **Yes** | **No** |
|---|---|---|---|---|---|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? | | **1** | | |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? | | **2** | | |
| **3** | Did the organization agree to carry over lobbying and political expenditures from the prior year? | | **3** | | |

| **Part III-B** | **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."** | | |
|---|---|---|---|

| **1** | Dues, assessments and similar amounts from members | **1** | |
|---|---|---|---|
| **2** | Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| **a** | Current year | **2a** | |
| **b** | Carryover from last year | **2b** | |
| **c** | Total | **2c** | |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues | **3** | |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? | **4** | |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) | **5** | |

| **Part IV** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part I-A, line 1, Part I-B, line 4, Part I-C, line 5, Part II-A (affiliated group list), Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1  Also, complete this part for any additional information

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 115 of 188 PageID #: 3453

| Part IV | Supplemental Information *(continued)* |
|---|---|
| Return Reference | Explanation |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

## Supplemental Financial Statements

▶ Complete if the organization answered "Yes," to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
Information about Schedule D (Form 990) and its instructions is at *www.irs.gov/form990*.

OMB No 1545-0047

# 2014

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | 52-1351785 |

**Part I** **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control?     ☐ Yes  ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit?     ☐ Yes  ☐ No

**Part II** **Conservation Easements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply)
☐ Preservation of land for public use (e g , recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶_____

4 Number of states where property subject to conservation easement is located ▶_____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds?     ☐ Yes  ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
▶_____

7 Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
▶ $_____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)?     ☐ Yes  ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

(i) Revenue included in Form 990, Part VIII, line 1   ▶ $_____

(ii) Assets included in Form 990, Part X   ▶ $_____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a Revenue included in Form 990, Part VIII, line 1   ▶ $_____

b Assets included in Form 990, Part X   ▶ $_____

**Part III**    **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3**    Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

**a** ☐ Public exhibition

**b** ☐ Scholarly research

**c** ☐ Preservation for future generations

**d** ☐ Loan or exchange programs

**e** ☐ Other

**4**    Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII

**5**    During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?    ☐ **Yes** ☐ **No**

**Part IV**    **Escrow and Custodial Arrangements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a**    Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?    ☐ **Yes** ☐ **No**

**b**    If "Yes," explain the arrangement in Part XIII and complete the following table

|  |  | Amount |
|---|---|---|
| **c** Beginning balance | **1c** |  |
| **d** Additions during the year | **1d** |  |
| **e** Distributions during the year | **1e** |  |
| **f** Ending balance | **1f** |  |

**2a**    Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability?    ☐ **Yes** ☐ **No**

**b**    If "Yes," explain the arrangement in Part XIII  Check here if the explanation has been provided in Part XIII . . . . . . .    ☐

**Part V**    **Endowment Funds.** Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

|  | **(a)**Current year | **(b)**Prior year | **b (c)**Two years back | **(d)**Three years back | **(e)**Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . |  |  |  |  |  |
| **b** Contributions . . . . . . . . . |  |  |  |  |  |
| **c** Net investment earnings, gains, and losses |  |  |  |  |  |
| **d** Grants or scholarships . . . . . |  |  |  |  |  |
| **e** Other expenditures for facilities and programs . . . . . . . . |  |  |  |  |  |
| **f** Administrative expenses . . . . |  |  |  |  |  |
| **g** End of year balance . . . . . . |  |  |  |  |  |

**2**    Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

**a**    Board designated or quasi-endowment ▶

**b**    Permanent endowment ▶

**c**    Temporarily restricted endowment ▶
The percentages in lines 2a, 2b, and 2c should equal 100%

**3a**    Are there endowment funds not in the possession of the organization that are held and administered for the organization by

|  |  | Yes | No |
|---|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . . . . . . . . . | **3a(i)** |  |  |
| **(ii)** related organizations . . . . . . . . . . . . . . . . . . | **3a(ii)** |  |  |
| **b** If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . | **3b** |  |  |

**4**    Describe in Part XIII the intended uses of the organization's endowment funds

**Part VI**    **Land, Buildings, and Equipment.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)**Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . . . . . . . |  |  |  |  |
| **b** Buildings . . . . . . . . . . . . . |  |  |  |  |
| **c** Leasehold improvements . . . . . . . . . . . |  | 119,688 | 77,367 | 42,321 |
| **d** Equipment . . . . . . . . . . . . . . . | | 158,770 | 102,978 | 55,792 |
| **e** Other . . . . . . . . . . . . . . . . | | 23,559 | 22,115 | 1,444 |
| **Total.** Add lines 1a through 1e  *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . . . . ▶ | | | | 99,557 |

**Part VII** **Investments—Other Securities.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11b.
See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| Other | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 12 )* ▶ | | |

**Part VIII** **Investments—Program Related.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11c.
See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 13 )* ▶ | | |

**Part IX** **Other Assets.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11d See Form 990, Part X, line 15

| (a) Description | (b) Book value |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* . . . . . . . . . . . . ▶ | |

**Part X** **Other Liabilities.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1 (a) Description of liability | (b) Book value |
|---|---|
| Federal income taxes | |
| DEFERRED RENT | 178,997 |
| CAPITAL LEASE OBLIGATION | 23,138 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 25 )* ▶ | 202,135 |

**2.** Liability for uncertain tax positions In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740) Check here if the text of the footnote has been provided in Part XIII ☑

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return** Complete if the organization answered 'Yes' to Form 990, Part IV, line 12a. | | | | |
|---|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . . | | | **1** | 7,826,513 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | | | |
| **a** | Net unrealized gains (losses) on investments . . . . | **2a** | | | |
| **b** | Donated services and use of facilities . . . . . . . . . | **2b** | | | |
| **c** | Recoveries of prior year grants . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII ) . . . . . . . . . . . | **2d** | 381,696 | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . | | | **2e** | 381,696 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . | | | **3** | 7,444,817 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1** | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | | | |
| **b** | Other (Describe in Part XIII ) . . . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total revenue  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12 ) . . . . . . . | | | **5** | 7,444,817 |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 12a. | | | | |
|---|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . . . . | | | **1** | 7,738,606 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | | | |
| **a** | Donated services and use of facilities . . . . . . . . | **2a** | | | |
| **b** | Prior year adjustments . . . . . . . . . . . | **2b** | | | |
| **c** | Other losses . . . . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII ) . . . . . . . . . . . | **2d** | 381,696 | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . | | | **2e** | 381,696 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . | | | **3** | 7,356,910 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | | | |
| **b** | Other (Describe in Part XIII ) . . . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total expenses  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18 ) . . . . . . . | | | **5** | 7,356,910 |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b,
Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b  Also complete this part to provide any additional
information

| Return Reference | Explanation |
|---|---|
| PART X, LINE 2 | CEI PERFORMED AN EVALUATION OF UNCERTAIN TAX POSITIONS FOR THE YEARS ENDED SEPTEMBER 30, 2015 AND 2014, RESPECTIVELY, AND DETERMINED THAT THERE WERE NO MATTERS THAT WOULD REQUIRE RECOGNITION IN THE FINANCIAL STATEMENTS OR THAT MAY HAVE ANY EFFECT ON ITS TAX-EXEMPT STATUS |
| PART XI, LINE 2D - OTHER ADJUSTMENTS | SPECIAL EVENT EXPENSES 381,696 |
| PART XII, LINE 2D - OTHER ADJUSTMENTS | SPECIAL EVENT EXPENSES 381,696 |
|  |  |
|  |  |
|  |  |
|  |  |

| Part XIII | Supplemental Information *(continued)* |
|---|---|

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Schedule D (Form 990) 2014**

| SCHEDULE F (Form 990) | Statement of Activities Outside the United States | OMB No 1545-0047 |
|---|---|---|

**Statement of Activities Outside the United States**

► Complete if the organization answered "Yes" to Form 990,
Part IV, line 14b, 15, or 16.

► Attach to Form 990.

► Information about Schedule F (Form 990) and its instructions is at *www.irs.gov/form990*.

**2014**

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

Name of the organization
COMPETITIVE ENTERPRISE INSTITUTE

Employer identification number
52-1351785

**Part I** General Information on Activities Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 14b.

1    **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**   ☐ **No**

2    **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

3    Activites per Region (The following Part I, line 3 table can be duplicated if additional space is needed )

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in region | (d) Activities conducted in region (by type) (e g , fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for and investments in region |
|---|---|---|---|---|---|
| ( 1 ) EUROPE | 0 | 0 | PROGRAM SERVICES | CONFERENCE | 15,816 |
| ( 2 ) EAST ASIA AND THE PACIFIC | 0 | 0 | PROGRAM SERVICES | EDUCATIONAL EVENT | 67,505 |
| ( 3 ) | | | | | |
| ( 4 ) | | | | | |
| ( 5 ) | | | | | |
| **3a** Sub-total | 0 | 0 | | | 83,321 |
| **b** Total from continuation sheets to Part I | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 83,321 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.    Cat No 50082W    **Schedule F (Form 990) 2014**

**Part II**  **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" to Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| **1** | **(a)** Name of organization | **(b)** IRS code section and EIN (if applicable) | **(c)** Region | **(d)** Purpose of grant | **(e)** Amount of cash grant | **(f)** Manner of cash disbursement | **(g)** Amount of non-cash assistance | **(h)** Description of non-cash assistance | **(i)** Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| **( 1)** | | | | | | | | | |
| **( 2)** | | | | | | | | | |
| **( 3)** | | | | | | | | | |
| **( 4)** | | | | | | | | | |

**2**  Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter  .  .  .  .  . ▶ _____

**3**  Enter total number of other organizations or entities  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . ▶

Case 1:12-md-02358-JDW     Document 172-1     Filed 01/04/17     Page 123 of 188 PageID #: 3461

**Part III** **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" to Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of non-cash assistance | (g) Description of non-cash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| ( 1) | | | | | | | |
| ( 2) | | | | | | | |
| ( 3) | | | | | | | |
| ( 4) | | | | | | | |
| ( 5) | | | | | | | |
| ( 6) | | | | | | | |
| ( 7) | | | | | | | |
| ( 8) | | | | | | | |
| ( 9) | | | | | | | |
| ( 10) | | | | | | | |
| ( 11) | | | | | | | |
| ( 12) | | | | | | | |
| ( 13) | | | | | | | |
| ( 14) | | | | | | | |
| ( 15) | | | | | | | |
| ( 16) | | | | | | | |
| ( 17) | | | | | | | |
| ( 18) | | | | | | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 124 of 188 PageID #: 3462

| **Part IV** | **Foreign Forms** |
|---|---|

1  Was the organization a U S  transferor of property to a foreign corporation during the tax year? *If "Yes,"the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* ☐ Yes  ☑ No

2  Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; do not file with Form 990)* ☐ Yes  ☑ No

3  Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* ☐ Yes  ☑ No

4  Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* ☐ Yes  ☑ No

5  Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships. (see Instructions for Form 8865)* ☐ Yes  ☑ No

6  Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to file Form 5713, International Boycott Report (see Instructions for Form 5713; do not file with Form 990)* ☐ Yes  ☑ No

**Schedule F (Form 990) 2014**

**Software ID:**
**Software Version:**
**EIN:** 52-1351785
**Name:** COMPETITIVE ENTERPRISE INSTITUTE

Schedule F (Form 990) 2014                                                                                                                Page **5**

| Part V | Supplemental Information |
| --- | --- |

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information (see instructions).

| SCHEDULE G (Form 990 or 990-EZ) | Supplemental Information Regarding Fundraising or Gaming Activities | OMB No 1545-0047 |
|---|---|---|

**Complete if the organization answered "Yes" to Form 990, Part IV, lines 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.**

2014

Department of the Treasury
Internal Revenue Service

► **Attach to Form 990 or Form 990-EZ.**
►**Information about Schedule G (Form 990 or 990-EZ) and its instructions is at** *www.irs.gov/form990.*

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | 52-1351785 |

**Part I** **Fundraising Activities.** Complete if the organization answered "Yes" to Form 990, Part IV, line 17. Form 990-EZ filers are not required to complete this part.

1   Indicate whether the organization raised funds through any of the following activities  Check all that apply

a  ☑ Mail solicitations
b  ☑ Internet and email solicitations
c  ☑ Phone solicitations
d  ☐ In-person solicitations

e  ☑ Solicitation of non-government grants
f  ☐ Solicitation of government grants
g  ☐ Special fundraising events

2a   Did the organization have a written or oral agreement with any individual (including officers, directors, trustees or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   ☑ Yes  ☐ No

b   If "Yes," list the ten highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| 1   CLEARWORD COMMUNICATIONS GROUP 12841 BRAEMAR VILLAGE PLAZA 51 BRISTOW, VA 20136 | FUNDRAISING CONSULTING | | No | 453,881 | 45,437 | 408,444 |
| 2   MORGAN MEREDITH AND ASSOCIATES 22780 INDIAN CREEK DRIVE 1100 DULLES, VA 20166 | FUNDRAISING CONSULTING | | No | 0 | 327,395 | -327,395 |
| 3   DIRECT MAIL PROCESSORS INC 1150 CONRAD COURT HAGERSTOWN, MD 21740 | FUNDRAISING CONSULTING | | No | 0 | 12,579 | -12,579 |
| 4   PRECISION LIST CO 5653 COLUMBIA PIKE FALLS CHURCH, VA 22041 | FUNDRAISING CONSULTING | | No | 0 | 12,011 | -12,011 |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| Total  .  .  .  .  .  .  .  .  .  .  .  .  . ► | | | | 453,881 | 397,422 | 56,459 |

3   List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing

AL, AK, AR, CA, CO, CT, DC, FL, GA, HI, IL, KS, KY, ME, MD, MA, MI, MN, MS, NH, NJ, NM, NY, NC, ND, OH, OK, OR, PA, RI, SC, TN, UT, VA, WA, WV, WI

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**   Cat No 50083H   **Schedule G (Form 990 or 990-EZ) 2014**

Case 1:13-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 127 of 188 PageID #: 3465

**Part II**   **Fundraising Events.** Complete if the organization answered "Yes" to Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a) Event #1<br><br>**ANNUAL DINNER**<br>(event type) | (b) Event #2<br><br>_____<br>(event type) | (c) Other events<br><br>_____<br>(total number) | (d) Total events<br>(add col (a) through<br>col (c)) |
|---|---|---|---|---|---|
| **Revenue** | **1** Gross receipts    .   .   . | 1,098,608 | | | 1,098,608 |
| | **2** Less Contributions   .   . | 899,066 | | | 899,066 |
| | **3** Gross income (line 1<br>minus line 2)   .   .   . | 199,542 | | | 199,542 |
| **Direct Expenses** | **4** Cash prizes    .   .   . | 1,000 | | | 1,000 |
| | **5** Noncash prizes   .   . | | | | |
| | **6** Rent/facility costs   .   . | | | | |
| | **7** Food and beverages   . | 170,150 | | | 170,150 |
| | **8** Entertainment   .   . | 15,448 | | | 15,448 |
| | **9** Other direct expenses   . | 195,098 | | | 195,098 |
| | **10** Direct expense summary Add lines 4 through 9 in column (d)   .   .   .   .   .   .   ▶ | | | | (381,696) |
| | **11** Net income summary Subtract line 10 from line 3, column (d)   .   .   .   .   ▶ | | | | -182,154 |

**Part III**   **Gaming.** Complete if the organization answered "Yes" to Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/Instant<br>bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add<br>col (a) through col<br>(c)) |
|---|---|---|---|---|---|
| **Revenue** | **1** Gross revenue   .   .   .   . | | | | |
| **Direct Expenses** | **2** Cash prizes   .   .   .   . | | | | |
| | **3** Non-cash prizes   .   .   . | | | | |
| | **4** Rent/facility costs   .   .   . | | | | |
| | **5** Other direct expenses   .   . | | | | |
| | **6** Volunteer labor   .   .   . | ☐ **Yes** _____% <br> ☐ **No** | ☐ **Yes** _____% <br> ☐ **No** | ☐ **Yes** _____% <br> ☐ **No** | |
| | **7** Direct expense summary Add lines 2 through 5 in column (d)   .   .   .   .   .   ▶ | | | | |
| | **8** Net gaming income summary Subtract line 7 from line 1, column (d)   .   .   .   .   ▶ | | | | |

**9**   Enter the state(s) in which the organization conducts gaming activities _____

**a**   Is the organization licensed to conduct gaming activities in each of these states?   .   .   .   .   .   .   .   .   ☐ **Yes** ☐ **No**

**b**   If "No," explain _____

................................................................................................................................

**10a**   Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year?   .   .   .   ☐ **Yes** ☐ **No**

**b**   If "Yes," explain _____

................................................................................................................................

Case 1.12-md-02358-JDW   Document 172-1   Filed 01/04/17   Page 128 of 188 PageID #: 3466

**11**  Does the organization conduct gaming activities with nonmembers? · · · · · · · · · · · ☐ **Yes** ☐ **No**

**12**  Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity

formed to administer charitable gaming? · · · · · · · · · · · · · · ☐ **Yes** ☐ **No**

**13**  Indicate the percentage of gaming activities conducted in

**a**  The organization's facility · · · · · · · · · · · · · · · · · · | **13a** | % |

**b**  An outside facility · · · · · · · · · · · · · · · · · · · · | **13b** | % |

**14**  Enter the name and address of the person who prepares the organization's gaming/special events books and records

Name ▶ ----------------------------------------------------------------------------------

Address ▶ ----------------------------------------------------------------------------------

**15a**  Does the organization have a contract with a third party from whom the organization receives gaming

revenue? · · · · · · · · · · · · · · · · · · · · · · · ☐ **Yes** ☐ **No**

**b**  If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the

amount of gaming revenue retained by the third party ▶ $ _____

**c**  If "Yes," enter name and address of the third party

Name ▶ ----------------------------------------------------------------------------------

Address ▶ ----------------------------------------------------------------------------------

**16**  Gaming manager information

Name ▶ ----------------------------------------------------------------------------------

Gaming manager compensation ▶ $ ----------------------------------------

Description of services provided ▶ ----------------------------------------------------------------------------------

☐ Director/officer     ☐ Employee          ☐ Independent contractor

**17**  Mandatory distributions

**a**  Is the organization required under state law to make charitable distributions from the gaming proceeds to

retain the state gaming license? · · · · · · · · · · · · · · · · · · · ☐ Yes ☐ No

**b**  Enter the amount of distributions required under state law distributed to other exempt organizations or spent

in the organization's own exempt activities during the tax year ▶  $

| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v), and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information (see instructions). |

| Return Reference | Explanation |
| --- | --- |

# Schedule J
**(Form 990)**

**Compensation Information**

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

▶ Complete if the organization answered "Yes" to Form 990, Part IV, line 23.

▶ Attach to Form 990.

▶ Information about Schedule J (Form 990) and its instructions is at *www.irs.gov/form990*.

OMB No 1545-0047

# 2014

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

| Name of the organization | Employer identification number |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | 52-1351785 |

## Part I  Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a  Complete Part III to provide any relevant information regarding these items | | | |

☐ First-class or charter travel

☐ Travel for companions

☐ Tax idemnification and gross-up payments

☐ Discretionary spending account

☐ Housing allowance or residence for personal use

☐ Payments for business use of personal residence

☐ Health or social club dues or initiation fees

☐ Personal services (e g , maid, chauffeur, chef)

| | | | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes in line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked in line 1a? | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director  Check all that apply  Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III | | | |

☐ Compensation committee

☐ Independent compensation consultant

☑ Form 990 of other organizations

☐ Written employment contract

☑ Compensation survey or study

☑ Approval by the board or compensation committee

| | | | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a with respect to the filing organization or a related organization | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of | | | |
| **a** | The organization? | **5a** | | No |
| **b** | Any related organization? | **5b** | | No |
| | If "Yes," to line 5a or 5b, describe in Part III | | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of | | | |
| **a** | The organization? | **6a** | | No |
| **b** | Any related organization? | **6b** | | No |
| | If "Yes," to line 6a or 6b, describe in Part III | | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III | **7** | Yes | |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53 4958-4(a)(3)? If "Yes," describe in Part III | **8** | | No |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53 4958-6(c)? | **9** | | |

**Part II**    **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii) Do not list any individuals that are not listed on Form 990, Part VII

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column(B) reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| **1** FRED L SMITH JR - FOUNDER, DIRECTOR, DIR FOR CTR FOR ADV CAP | (i) | 170,586 | 0 | 0 | 0 | 13,264 | 183,850 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2** LAWSON BADER, PRESIDENT | (i) | 152,681 | 20,000 | 0 | 0 | 17,028 | 189,709 | 0 |
| | (ii) | | 0 | 0 | 0 | 0 | 0 | 0 |
| **3** WAYNE CREWS, VP FOR POLICY | (i) | 146,583 | 0 | 0 | 0 | 16,861 | 163,444 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Schedule J (Form 990) 2014

## Part III    Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II

Also complete this part for any additional information

| Return Reference | Explanation |
|---|---|
| PART I, LINE 7 | THE BOARD OF DIRECTORS DETERMINES THE BONUS FOR THE PRESIDENT  THE PRESIDENT AND EXECUTIVE DIRECTOR DETERMINE THE BONUSES FOR ALL OTHER STAFF |

**Schedule J (Form 990) 2014**

**SCHEDULE M**
**(Form 990)**

# Noncash Contributions

OMB No 1545-0047

# 2014

▶Complete if the organizations answered "Yes" on Form 990, Part IV, lines 29 or 30.
▶ Attach to Form 990.
▶Information about Schedule M (Form 990) and its instructions is at *www.irs.gov/form990*.

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

Name of the organization
COMPETITIVE ENTERPRISE INSTITUTE

Employer identification number

52-1351785

| | (a) Check if applicable | (b) Number of contributions or items contributed | (c) Noncash contribution amounts reported on Form 990, Part VIII, line 1g | (d) Method of determining noncash contribution amounts |
|---|---|---|---|---|
| 1 Art—Works of art . . . . | | | | |
| 2 Art—Historical treasures . | | | | |
| 3 Art—Fractional interests . . | | | | |
| 4 Books and publications . . | | | | |
| 5 Clothing and household goods . . . . . . . | | | | |
| 6 Cars and other vehicles . . | | | | |
| 7 Boats and planes . . . . | | | | |
| 8 Intellectual property . . . | | | | |
| 9 Securities—Publicly traded . | X | 39 | 64,956 | FMV |
| 10 Securities—Closely held stock . | | | | |
| 11 Securities—Partnership, LLC, or trust interests . . . . . | | | | |
| 12 Securities—Miscellaneous . . | | | | |
| 13 Qualified conservation contribution—Historic structures . . . . . . | | | | |
| 14 Qualified conservation contribution—Other . . . | | | | |
| 15 Real estate—Residential . | | | | |
| 16 Real estate—Commercial . . | | | | |
| 17 Real estate—Other . . . | | | | |
| 18 Collectibles . . . . . | | | | |
| 19 Food inventory . . . | X | 1 | 4,198 | FMV |
| 20 Drugs and medical supplies . | | | | |
| 21 Taxidermy . . . . . . | | | | |
| 22 Historical artifacts . . . . | | | | |
| 23 Scientific specimens . . . | | | | |
| 24 Archeological artifacts . . . | | | | |
| 25 Other ▶ ( SOFTWARE ) | X | 1 | 263,042 | |
| 26 Other ▶ ( CIGARS ) | X | 1 | 6,500 | FMV |
| 27 Other ▶ (_____) | | | | |
| 28 Other ▶ (_____) | | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| 29 Number of Forms 8283 received by the organization during the tax year for contributions for which the organization completed Form 8283, Part IV, Donee Acknowledgement . . . | **29** | | | | |
| 30a During the year, did the organization receive by contribution any property reported in Part I, lines 1 through 28, that it must hold for at least three years from the date of the initial contribution, and which is not required to be used for exempt purposes for the entire holding period? . . . . . . . . . . . . . . . . | | | **30a** | | No |
| b If "Yes," describe the arrangement in Part II | | | | | |
| 31 Does the organization have a gift acceptance policy that requires the review of any non-standard contributions? | | | **31** | | No |
| 32a Does the organization hire or use third parties or related organizations to solicit, process, or sell noncash contributions? . . . . . . . . . . . . . . . . . . . . . | | | **32a** | | No |
| b If "Yes," describe in Part II | | | | | |
| 33 If the organization did not report an amount in column (c) for a type of property for which column (a) is checked, describe in Part II | | | | | |

Case 1:12-md-02358-JDW    Document 172-1    Filed 01/04/17    Page 133 of 188 PageID #: 3471

| **Part II** | **Supplemental Information.** Provide the information required by Part I, lines 30b, 32b, and 33, and whether the organization is reporting in Part I, column (b), the number of contributions, the number of items received, or a combination of both. Also complete this part for any additional information. |
|---|---|
| Return Reference | Explanation |

OMB No 1545-0047

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

## Supplemental Information to Form 990 or 990-EZ

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
► Attach to Form 990 or 990-EZ.
► Information about Schedule O (Form 990 or 990-EZ) and its instructions is at
www.irs.gov/form990.

**2014**

**Open to Public
Inspection**

Name of the organization
COMPETITIVE ENTERPRISE INSTITUTE

Employer identification number

52-1351785

## 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11 | |
| FORM 990, PART VI, SECTION B, LINE 12C | EMPLOYEES CONSULT WITH THEIR DIRECT SUPERVISOR OVER ANY AREAS THAT COULD BE CONFLICTS OF I NTEREST IF THE SUPERVISOR BELIEVES THE ISSUE NEEDS TO BE ADDRESSED AT A HIGHER LEVEL THE DIRECTOR CAN THEN MOVE THE DISCUSSION UP THE CHAIN OF COMMAND WITHIN CEI UNDER CEI'S CONF LICT OF INTEREST POLICY, BOARD MEMBERS ARE REQUIRED TO SIGN A CONFLICT OF INTEREST DISCLOS URE STATEMENT |
| FORM 990, PART VI, SECTION B, LINE 15 | THE PRESIDENT'S COMPENSATION IS DETERMINED BY THE BOARD OF DIRECTORS BASED ON COMPARABILIT Y DATA COMPENSATION OF OFFICERS AND KEY EMPLOYEES IS HANDLED BY THE PRESIDENT AND GROUP O F INDEPENDENT SENIOR STAFF THE COMPENSATION IS EVALUATED BASED ON PERFORMANCE AND COMPARA BILITY DATA WITH OTHER SIMILAR ORGANIZATIONS IN THE WASHINGTON, DC AREA |
| FORM 990, PART VI, SECTION C, LINE 19 | CEI DOES NOT MAKE ITS GOVERNING DOCUMENTS OR CONFLICT OF INTEREST POLICY AVAILABLE TO THE PUBLIC THE MOST RECENT AUDITED FINANCIAL STATEMENTS AND FEDERAL FORM 990 ARE AVAILABLE ON THE WEBSITE |

# EXHIBIT 7

CEI

Competitive Enterprise Institute
1001 Connecticut Avenue, NW
Suite 1250
Washington, DC 20036
(202) 331-1010
FAX (202) 331-0640

2046558088

Source: http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124





Competitive Enterprise Institute
1001 Connecticut Avenue, NW
Suite 1250
Washington, DC  20036
(202) 331-1010

## *THE INSTITUTE*

$F$ounded in March of 1984, the Competitive Enterprise Institute is committed to advancing the principles of free enterprise and limited government. The Institute is founded on the belief that free markets and individual liberty best serve the public interest by providing freedom of choice and equal opportunity. The Institute's programs embrace a five-fold approach to implementing pro-market ideas:

- MEDIA AND INTEREST GROUP EDUCATION
- COALITION BUILDING    • ADVOCACY
- POLICY ANALYSIS       • LITIGATION

By combining policy research with advocacy, CEI is able to promote market-based policy options to key opinion leaders in the public policy arena:

**The Courts** - Our Free Market Legal program challenges state and national infringement of such basic individual rights as private property, free speech, and consumer choice. Previous lawsuits have involved constitutional challenges to New York City's rent control laws and to federal regulation of computer information systems.

**The Media** - The Institute's articles on key policy issues appear regularly in major media publications such as *The Wall Street Journal, The Washington Post,* and *USA Today.* The Institute's analysts also appear on international and national television programs such as *The MacNeil Lehrer News Hour, Good Morning America,* CNN's *Crossfire* and *Larry King Live.* CEI analysts can also be heard on numerous national and local radio shows across the country.

**Congress** - On request, CEI provides testimony on its policy research before congressional committees, briefs individual members of Congress and their staff, and provides research materials to legislative staffs. On an annual basis, the Institute evaluates the voting records of members of Congress through its *Competitive Enterprise Index.*

**The Public** - The Institute produces a variety of educational materials including the *Free Market Environmental Bibliography,* the *Competitive Enterprise Index* (congressional ratings), and a series of monographs and policy studies which are available at cost.

2046558090

Source:  http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

   *Yes, I want to support CEI with a tax deductible gift of:*

_____ **$5,000 - Free Enterprise Leader** - to join with CEI in taking an active role in promoting freedom and opportunity.  I will receive CEI books, monographs, and policy studies; a periodic letter from CEI President Fred Smith to keep me up to date on CEI's work; and the monthly newsletter, *CEI UpDate.*

_____ **$1,000 - Friend of Free Enterprise** - to join with CEI in promoting the time-honored principles of free enterprise and limited government.  I will receive a periodic letter from CEI President Fred Smith updating me on CEI's work; CEI monographs and policy studies; and CEI's monthly newsletter, *CEI UpDate.*

_____ **$100 - Despairing Optimist Club** - in addition to the monthly newsletter, *CEI UpDate,* I will receive a periodic letter from CEI President Fred Smith updating me on CEI's work.

_____ **$25** contribution to support CEI's ongoing work.  Each month I will receive *CEI UpDate* to keep me updated on the Institute's work

_____ I'm not sure.  Please send me information about CEI.

*Please make your check payable to the Competitive Enterprise Institute.  All contributions are tax-deductible.  CEI is a 501(c)(3) organization incorporated in the District of Columbia.*  2646558091

Source:  http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

2646558092

Name _____

Organization _____

Address _____

_____

City _____ Sate _____ Zip Code _____

Phone __(_____)_____

Competitive Enterprise Institute     1001 Connecticut Ave., NW, Washington, DC  20036     (202) 331-1010

Source:  http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

## THE PRESIDENT

*F*red L. Smith, Jr. is CEI's founder and president. Called a "resourceful and imaginative coalition-builder" by the National Journal, Fred Smith brings together leading scientists, business people, and free-market advocates to promote market-oriented public policy. An honors graduate of Tulane University, he received his graduate training in economics and operations research at the University of Pennsylvania. He is the co-editor of *Environmental Politics: Public Costs, Private Rewards* and has contributed to a number of books including *Market Liberalism: A Paradigm for the 21st Century* and *Assessing the Reagan Years.*

## INSTITUTE STAFF

**Jonathan Adler** - *Associate Director of Environmental Studies*
**Ronald Bailey** - *Warren T. Brookes Fellow in Environmental Journalism*
**Robyn Bardy** - *Assistant to the President*
**James Bovard** - *Adjunct Analyst*
**Greg Conko** - *Development Associate*
**Patrick Cox** - *Director, Arts Research Center*
**Christopher Culp** - *Adjunct Analyst*
**Michael Fumento** - *Warren T. Brookes Fellow in Environmental Journalism*
**Kelly Glenn** - *Research Director*
**James Heetderks** - *Director of Administration*
**Matthew Hoffman** - *Associate Policy Analyst*
**Sam Kazman** - *General Counsel*
**Urs Kreuter** - *Adjunct Analyst*
**Marlo Lewis** - *Executive Director*
**Ben Lieberman** - *Environmental Policy Analysts*
**Thomas Miller** - *Senior Policy Analyst*
**Cassandra Chrones Moore** - *Adjunct Analyst*
**James Sheehan** - *Research Associate*
**Greg Smith** - *Publications Director*
**R.J. Smith** - *Adjunct Analyst*
**Ike Sugg** - *Alex C. Walker Fellow in Environmental Studies*
**Jason Taylor** - *Director of Development*
**Jonathan Tolman** - *Environmental Policy Analyst*

2046550093

*"In today's political climate of higher taxes and the expansion of govern- ment, the need for free market voices like CEI is critical to the survival of America's free enterprise system."*
**- The Honorable Dick Armey**
U.S. House of Representatives

*"I believe CEI is a unique educational organization filling a need.  If CEI did not exist, it would need to be created."*
**-Luther Avery**
Avery and Associates

*"CEI is one of the most exciting of a growing number of organizations that seek private solutions to the vast array of economic and environ- mental issues facing America."*
**-Harry Teasley**
President and CEO
Coca-Cola/Nestle Refreshments

2046558094

Source:  http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

## *ISSUE MANAGEMENT*

*T*he Institute's policy analysts concentrate on the following issue areas:

**Economic Regulation** - Analyzes the human and economic costs of government tax and regulatory policies.

**Environmental Studies** - The Institute's work emphasizes the reinstatement of private incentive and accountability centering on enforcement of property rights and targeted liability for pollution. Special projects:

> *Environmental Education Project -* Production and distribution of materials that examine environmental issues based on the latest scientific and economic research.

> *Warren T. Brookes Fellowships in Environmental Journalism -* Yearly appointments granted to journalists to enable them to research, study, and write about private and public approaches to environmental protection. During their Fellowship, appointees are also expected to contribute to the environmental public policy debate through speaking engagements, media interviews and other activities.

**Free Market Legal Program** - Launched in 1986, this program seeks to carry the battle for economic rights into the legal arena. Issues and cases are selected on the basis of their importance as policy and precedent and on the likelihood that the Institute can make a significant contribution. Some recent activities have addressed FDA reform, rent control, and Corporate Average Fuel Economy standards (CAFE).

> *"Death by Regulation" project -* Aimed at shifting the policy debate toward market-based approaches to risk management. It attempts to do so not through conventional policy analysis, but by focusing on previously unrecognized victims of regulatory failure. In particular, the project demonstrates that risk management by government can often have lethal effects.

2046558095

Source:  http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

## *CEI CONTRIBUTORS*

The following foundations, corporations, and individuals support the Institute's work. These supporters may, of course, differ with specific policy initiatives, however, their support indicates their recognition of the value of CEI's candid and innovative public policy research examining market-based solutions based on individual liberty.

### Competitive Allies
*(annual contributions of $10,000 or more)*

Aequus Institute
Amoco Foundation, Inc.
The Lynde and Harry Bradley Foundation
The Carthage Foundation
Anonymous
The Coca-Cola Company
E.L. Craig Foundation
CSX Corporation
Earhart Foundation
Fieldstead and Co.
FMC Foundation
Ford Motor Company Fund
Anonymous
The Charles G. Koch Charitable Foundation
David H. Koch Charitable Foundation
Anonymous
The Claude R. Lambe Charitable Foundation
Phillip M. McKenna Foundation, Inc.
Anonymous
The Curtis and Edith Munson Foundation
Philip Morris Companies Inc.
Pfizer Inc.
Precision Valve Corporation
Prince Foundation
Anonymous
Anonymous
The Rodney Fund
Mr. Sheldon Rose
Sarah Scaife Foundation
Anonymous
Anonymous
Anonymous
Texaco Inc.
Texaco Foundation
Alex C. Walker Educational and Charitable Foundation

2046558066

CEI
CEI
CEI
CEI
CEI
CEI
CEI
CEI
CEI
CEI
CEI
CEI

# Competitive Enterprise Institute

## Programs and Projects

The *Death by Regulation* Project — aimed at shifting the policy debate toward market-based approaches to risk management. It attempts to do so not through conventional policy analysis, but by focusing on previously unrecognized victims of regulatory failure. In particular, the project demonstrates that risk management by government can often have lethal effects.

*Environmental Education Project* — production and distribution of materials that examine environmental issues based on the latest scientific and economic research.

*Environmental Studies Program* — promotes free market environmentalism as an alternative strategy to government-mandated regulation for protecting the environment. It emphasizes working with human nature rather than against it, using human diversity to protect natural diversity, and acting on the universally recognized fact that private property tends to be better cared for than common property.

The *Free Market Legal Program* — was launched in 1986 to carry the battle for economic rights into the legal arena. Some recent activities have addressed FDA reform, rent control, and Corporate Average Fuel Economy Standards (CAFE). Issues and cases are selected on the basis of their importance as policy and precedent and on the likelihood that the Institute can make a significant contribution.

The *Risk and Insurance Program* — promotes private alternatives to political management of risk with particular emphasis on reform of federal deposit insurance and the private health insurance market. CEI's work promotes the interconnected objectives of financial services deregulation and reducing the distortions caused by an out-of-control deposit insurance system. CEI also seeks to restore the right of private insurers to offer a wide variety of enforceable, contractual options to health care consumers, while neutralizing the distortions caused by tax subsidies and regulatory restrictions in medical care access.

*Warren T. Brookes Fellowships in Environmental Journalism* — Yearly appointments granted to journalists to enable them to research, study, and write about private and public approaches to environmental protection. During their Fellowship, appointees are also expected to contribute to the environmental public policy debate through speaking engagements, media interviews and other activities.

Source: http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

# CEI CEI CEI CEI CEI CEI CEI CEI CEI CEI CEI

# Competitive Enterprise Institute

## MISSION

Founded in 1984 by current President Fred L. Smith, Jr., the Competitive Enterprise Institute (CEI) is a non-partisan public interest group committed to advancing the principles of free enterprise and limited government. CEI emphasizes the marketing and implementation of classical liberal ideals believing that limited government and competition best serve the public interest.

## STRATEGY

CEI uses an activist approach to advance the free-market agenda: policy analysis, media and interest group education, coalition building, direct advocacy, and litigation. In this manner, CEI seeks to bridge the gap between free market policy research and policy implementation.

## MEDIA

Articles by CEI policy experts appear regularly in national newspapers such as *The Washington Times, Wall Street Journal, Christian Science Monitor, USA Today, Investor's Business Daily*, and *The Washington Post*. In 1992, the Institute reached a potential audience of over 15 million people through its opinion editorials in the nation's newspapers and public policy journals. Despite modest promotion efforts, CEI has appeared on national television programs such as *Good Morning America, Today, Crossfire, The MacNeil/Lehrer News Hour, CBS Evening News, C-Span, Larry King Live, Adam Smith's Money World, Entertainment Tonight*, and *TechnoPolitics* as well as numerous national and local radio stations across the country.

## OUTREACH

*The Jefferson Group* — a group of individuals representing the public interest, research, trade, and industry groups, as well as the media, the Executive Branch, and Congress, who meet to exchange information and strategic insights on current public policy issues.

## ORGANIZATION

With a fifteen-person staff and five adjunct policy analysts, CEI annually publishes a series of policy studies and monographs; maintains an aggressive editorial writing program; testifies before congressional committees; submits comments to federal agencies reviewing proposed rulemakings; speaks before audiences around the world; and seeks out precedent-setting legal cases that establish individual rights.

2046558098

Source: http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

## PUBLICATIONS

*CEI UpDate* — a monthly newsletter to CEI friends and supporters.

Annual *Competitive Enterprise Index* — an analysis of congressional votes by each member of Congress to determine their impact on competition, freedom, and opportunity in the U.S. economy.

*Environmental Politics: Public Costs, Private Rewards,* published by Praeger.

*The Free Market Environmental Bibliography* — a useful listing of books and journals that have been written from a free market prospective on topics such as environmental risk, pollution, land management, water policy, and wildlife management.

*Readings in Free Market Environmentalism* — discusses the basic concepts of free market environmentalism and theories and applications of property rights issues.

Monographs and policy studies on regulatory reform in issues ranging from the banking crisis to environmental mandates.



1001 Connecticut Avenue, NW  •  Suite 1250  •  Washington, D.C.  20036  •  Telephone: (202) 331-1010  •  Fax: (202) 331-0640

Source:   http://industrydocuments.library.ucsf.edu/tobacco/docs/lnvh0124

# EXHIBIT 8

Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ **Do not enter social security numbers on this form as it may be made public.**
▶ Information about Form 990 and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open to Public Inspection

**A** For the 2014 calendar year, or tax year beginning **07/01/14**, and ending **06/30/15**

| B Check if applicable: | C Name of organization | | D Employer identification number |
|---|---|---|---|
| ☐ Address change | **CENTER FOR CLASS ACTION FAIRNESS** | | **45-5119142** |
| ☐ Name change | Doing business as | | |
| ☐ Initial return | Number and street (or P O box if mail is not delivered to street address) Room/suite | | E Telephone number |
| ☐ Final return/terminated | **14001-C ST. GERMAIN DRIVE** | **253** | **703-203-3848** |
| ☐ Amended return | City or town, state or province, country, and ZIP or foreign postal code | | |
| ☐ Application pending | **CENTREVILLE                VA  20121** | | G Gross receipts $ **762,069** |

| F Name and address of principal officer | | H(a) Is this a group return for subordinates? | ☐ Yes ☒ No |
|---|---|---|---|
| **Theodore H. Frank** | | H(b) Are all subordinates included? | ☐ Yes ☐ No |
| **1302 Waugh Drive #830** | | If "No," attach a list (see instructions) | |
| **Houston                      TX  77019** | | | |

**I** Tax-exempt status: ☒ 501(c)(3)  ☐ 501(c) (    ) ◀ (insert no )  ☐ 4947(a)(1) or  ☐ 527

**J** Website: ▶ **www.classactionfairness.com**

H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation  ☐ Trust  ☐ Association  ☐ Other ▶   **L** Year of formation: **2012**   **M** State of legal domicile: **VA**

### Part I   Summary

| | | |
|---|---|---|
| Activities & Governance | **1** Briefly describe the organization's mission or most significant activities   **See Schedule O** | |

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) | | **3** | **3** |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) | | **4** | **3** |
| **5** Total number of individuals employed in calendar year 2014 (Part V, line 2a) | | **5** | **7** |
| **6** Total number of volunteers (estimate if necessary) | | **6** | **0** |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 | | **7a** | **0** |
| **b** Net unrelated business taxable income from Form 990-T, line 34 | | **7b** | **0** |

| | | Prior Year | Current Year |
|---|---|---|---|
| Revenue | **8** Contributions and grants (Part VIII, line 1h) | 625,545 | 674,673 |
| | **9** Program service revenue (Part VIII, line 2g) | 75,080 | 87,007 |
| | **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) | | 389 |
| | **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | | 0 |
| | **12** Total revenue – add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 700,625 | 762,069 |
| Expenses | **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3) | | 0 |
| | **14** Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| | **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 448,466 | 493,148 |
| | **16a** Professional fundraising fees (Part IX, column (A), line 11e) | | 0 |
| | **b** Total fundraising expenses (Part IX, column (D), line 25) ▶ **39,441** | | |
| | **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 92,907 | 106,719 |
| | **18** Total expenses  Add lines 13–17 (must equal Part IX, column (A), line 25) | 541,373 | 599,867 |
| | **19** Revenue less expenses  Subtract line 18 from line 12 | 159,252 | 162,202 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| Net Assets or Fund Balances | **20** Total assets (Part X, line 16) | 334,712 | 493,515 |
| | **21** Total liabilities (Part X, line 26) | 7,199 | 3,800 |
| | **22** Net assets or fund balances  Subtract line 21 from line 20 | 327,513 | 489,715 |

### Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete  Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge

| Sign Here | Signature of officer | Date **2/10** |
|---|---|---|
| | **Theodore H Frank                    President/Treasurer** | |
| | Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | **Donna Bestebreurtje, EA** | Donna Bestebreurtje,EA | 02/03/16 | | **P00657930** |
| | Firm's name ▶ **Smart Business Services of Nova** | | | Firm's EIN ▶ | **54-1892773** |
| | Firm's address ▶ **13922 Springstone Dr** | | | | |
| | **Clifton, VA   20124-2341** | | Phone no | **866-541-5111** |

May the IRS discuss this return with the preparer shown above? (see instructions)    ☒ Yes  ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.

DAA

Form **990** (2014)

CCAF 990 02/03/2016 2:35 PM

Form 990 (2014)    **CENTER FOR CLASS ACTION FAIRNESS**        45-5119142                    Page **2**

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III ............................................. **☒**

**1** Briefly describe the organization's mission

**See Schedule O**

---

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? ........................................................................... ☐ Yes **☒** No

If "Yes," describe these new services on Schedule O

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? ........................................................................................................ ☐ Yes **☒** No

If "Yes," describe these changes on Schedule O

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses  Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported

**4a** (Code          ) (Expenses $      **513,961**  including grants of $                  ) (Revenue $                  )

**To protect the public interest by working to correct abuses in class action and shareholder-derivative lawsuits and to improve the law in these areas. See Schedule O for a list of all the cases in litigation or that have been litigated during the year.**

**4b** (Code          ) (Expenses $                  including grants of $                  ) (Revenue $                  )

**4c** (Code          ) (Expenses $                  including grants of $                  ) (Revenue $                  )

**4d** Other program services (Describe in Schedule O )

(Expenses $                  including grants of $                  ) (Revenue $                  )

**4e** Total program service expenses ▶        **513,961**

DAA                                                                                            Form **990** (2014)

Form 990 (2014)    CENTER FOR CLASS ACTION FAIRNESS    45-5119142    Page 3

| Part IV | Checklist of Required Schedules | | | |
|---|---|---|---|---|
| | | | Yes | No |
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? If "Yes," complete Schedule A | 1 | X | |
| 2 | Is the organization required to complete Schedule B, Schedule of Contributors (see instructions)? | 2 | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? If "Yes," complete Schedule C, Part I | 3 | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? If "Yes," complete Schedule C, Part II | 4 | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? If "Yes," complete Schedule C, Part III | 5 | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? If "Yes," complete Schedule D, Part I | 6 | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? If "Yes," complete Schedule D, Part II | 7 | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? If "Yes," complete Schedule D, Part III | 8 | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X, or provide credit counseling, debt management, credit repair, or debt negotiation services? If "Yes," complete Schedule D, Part IV | 9 | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? If "Yes,' complete Schedule D, Part V | 10 | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? If "Yes," complete Schedule D, Part VI | 11a | | X |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part VII | 11b | | X |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part VIII | 11c | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? If "Yes," complete Schedule D, Part IX | 11d | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? If "Yes," complete Schedule D, Part X | 11e | X | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? If "Yes," complete Schedule D, Part X | 11f | | X |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? If "Yes," complete Schedule D, Parts XI and XII | 12a | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional | 12b | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? If "Yes," complete Schedule E | 13 | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? If "Yes," complete Schedule F, Parts I and IV | 14b | | X |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? If "Yes," complete Schedule F, Parts II and IV | 15 | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? If "Yes," complete Schedule F, Parts III and IV | 16 | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? If "Yes," complete Schedule G, Part I (see instructions) | 17 | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? If "Yes," complete Schedule G, Part II | 18 | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? If "Yes," complete Schedule G, Part III | 19 | | X |
| 20a | Did the organization operate one or more hospital facilities? If "Yes," complete Schedule H | 20a | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |

Form **990** (2014)

DAA

Form 990 (2014)  **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **4**

| Part IV | Checklist of Required Schedules (continued) | | | |
|---|---|---|---|---|
| | | | Yes | No |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? If "Yes," complete Schedule I, Parts I and II | 21 | | X |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? If "Yes," complete Schedule I, Parts I and III | 22 | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? If "Yes," complete Schedule J | 23 | X | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? If "Yes," answer lines 24b through 24d and complete Schedule K  If "No," go to line 25a | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? If "Yes," complete Schedule L, Part I | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? If "Yes," complete Schedule L, Part I | 25b | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? If "Yes," complete Schedule L, Part II | 26 | | X |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? If "Yes," complete Schedule L, Part III | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| a | A current or former officer, director, trustee, or key employee? If "Yes," complete Schedule L, Part IV | 28a | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? If "Yes," complete Schedule L, Part IV | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? If "Yes," complete Schedule L, Part IV | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? If "Yes," complete Schedule M | 29 | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? If "Yes," complete Schedule M | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? If "Yes," complete Schedule N, Part I | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? If "Yes," complete Schedule N, Part II | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? If "Yes," complete Schedule R, Part I | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? If "Yes," complete Schedule R, Parts II, III, or IV, and Part V, line 1 | 34 | | X |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? If "Yes," complete Schedule R, Part V, line 2 | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? If "Yes," complete Schedule R, Part V, line 2 | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? If "Yes," complete Schedule R, Part VI | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? Note. All Form 990 filers are required to complete Schedule O | 38 | X | |

Form **990** (2014)

DAA

Form 990 (2014)    CENTER FOR CLASS ACTION FAIRNESS        45-5119142                    Page 5

## Part V    Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response or note to any line in this Part V ☐

|   |   |   |   | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable | 1a | 6 |   |   |
| b | Enter the number of Forms W-2G included in line 1a Enter -0- if not applicable | 1b | 0 |   |   |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | 1c | | |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 7 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | 2b | X | |
|  | **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | 3a | | X |
| b | If "Yes," has it filed a Form 990-T for this year? If "No" to line 3b, provide an explanation in Schedule O | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | 4a | | X |
| b | If "Yes," enter the name of the foreign country ▶ | | | | |
|  | See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | 5a | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | 5b | | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | 6a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | 7a | | |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | 7c | | |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | 7e | | |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | 7f | | |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | |
| 11 | **Section 501(c)(12) organizations.** Enter | | | | |
| a | Gross income from members or shareholders | 11a | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year | 12b | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? | | 13a | | |
|  | **Note.** See the instructions for additional information the organization must report on Schedule O | | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O | | 14b | | |

DAA                                                            Form **990** (2014)

Form 990 (2014)  **CENTER FOR CLASS ACTION FAIRNESS**      **45-5119142**                    Page **6**

**Part VI**     **Governance, Management, and Disclosure** For each "Yes" response to lines 2 through 7b below, and for a "No"
response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions

Check if Schedule O contains a response or note to any line in this Part VI ........................................ ☒

**Section A. Governing Body and Management**

|   |   |   | Yes | No |
|---|---|---|-----|-----|
| **1a** Enter the number of voting members of the governing body at the end of the tax year | 1a | 3 | | |
| If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O | | | | |
| **b** Enter the number of voting members included in line 1a, above, who are independent | 1b | 3 | | |
| **2** Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | 2 | | X |
| **3** Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? | | 3 | | X |
| **4** Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | 4 | | X |
| **5** Did the organization become aware during the year of a significant diversion of the organization's assets? | | 5 | | X |
| **6** Did the organization have members or stockholders? | | 6 | | X |
| **7a** Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | 7a | | X |
| **b** Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | 7b | | X |
| **8** Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following | | | | |
| **a** The governing body? | | 8a | X | |
| **b** Each committee with authority to act on behalf of the governing body? | | 8b | X | |
| **9** Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O | | 9 | | X |

**Section B. Policies** (This Section B requests information about policies not required by the Internal Revenue Code.)

|   |   | Yes | No |
|---|---|-----|-----|
| **10a** Did the organization have local chapters, branches, or affiliates? | 10a | | X |
| **b** If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| **11a** Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | X | |
| **b** Describe in Schedule O the process, if any, used by the organization to review this Form 990 | | | |
| **12a** Did the organization have a written conflict of interest policy? If "No," go to line 13 | 12a | X | |
| **b** Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | X | |
| **c** Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done | 12c | X | |
| **13** Did the organization have a written whistleblower policy? | 13 | | X |
| **14** Did the organization have a written document retention and destruction policy? | 14 | | X |
| **15** Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** The organization's CEO, Executive Director, or top management official | 15a | X | |
| **b** Other officers or key employees of the organization | 15b | | X |
| If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) | | | |
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | X |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶   **AL,AR,CA,CT,CO,DC,FL,IL,KY,MA,MD,MO,NC**

**18** Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection  Indicate how you made these available  Check all that apply

☐ Own website    ☐ Another's website    ☒ Upon request    ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, address, and telephone number of the person who possesses the organization's books and records ▶

**Smart Business Services of No. Va    13922 Springstone Drive**
**Clifton                              VA 20124            866-541-5111**

DAA                                                              Form **990** (2014)

Form 990 (2014)  **CENTER FOR CLASS ACTION FAIRNESS**      45-5119142      Page **7**

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII ☐

| Section A. | Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees |
|---|---|

**1a** Complete this table for all persons required to be listed  Report compensation for the calendar year ending with or within the organization's tax year

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation  Enter -0- in columns (D), (E), and (F) if no compensation was paid
- List all of the organization's **current** key employees, if any  See instructions for definition of "key employee "
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations
- List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order  individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| **(1) Michael Greve** | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| **(2) Lester Brickman** | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| **(3) Michael Rosman** | 1.00 0.00 | X | | | | | | 0 | 0 | 0 |
| **(4) Theodore H. Frank** President/Treasurer | 40.00 0.00 | | | X | | | | 206,400 | 0 | 0 |
| **(5) Melissa A. Holyoak** Secretary | 20.00 0.00 | | | X | | | | 40,131 | 0 | 0 |
| (6) | | | | | | | | | | |
| (7) | | | | | | | | | | |
| (8) | | | | | | | | | | |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |

DAA

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees (continued)

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| **(12)** | | | | | | | | | | |
| **(13)** | | | | | | | | | | |
| **(14)** | | | | | | | | | | |
| **(15)** | | | | | | | | | | |
| **(16)** | | | | | | | | | | |
| **(17)** | | | | | | | | | | |
| **(18)** | | | | | | | | | | |
| **(19)** | | | | | | | | | | |

**1b Sub-total** ▶ | | | | | | | | 246,531 | |
**c** Total from continuation sheets to Part VII, Section A ▶ | | | | | | | | 0 | |
**d** Total (add lines 1b and 1c) ▶ | | | | | | | | 246,531 | |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of
reportable compensation from the organization ▶ **1**

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director, or trustee, key employee, or highest compensated employee on line 1a? If "Yes," complete Schedule J for such individual | **3** | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? If "Yes," complete Schedule J for such individual | **4** | X | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? If "Yes," complete Schedule J for such person | **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization  Report compensation for the calendar year ending with or within the organization's tax year

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ | 0 |

DAA

Form **990** (2014)

Form 990 (2014)   CENTER FOR CLASS ACTION FAIRNESS    45-5119142    Page **9**

| Part VIII | Statement of Revenue |
| --- | --- |

Check if Schedule O contains a response or note to any line in this Part VIII  ☐

| | | | | (A)<br>Total revenue | (B)<br>Related or exempt function revenue | (C)<br>Unrelated business revenue | (D)<br>Revenue excluded from tax under sections 512-514 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** | Federated campaigns | 1a | | | | |
| | **b** | Membership dues | 1b | | | | |
| | **c** | Fundraising events | 1c | | | | |
| | **d** | Related organizations | 1d | | | | |
| | **e** | Government grants (contributions) | 1e | | | | |
| | **f** | All other contributions, gifts, grants, and similar amounts not included above | 1f | 674,673 | | | |
| | **g** | Noncash contributions included in lines 1a-1f  $ | | | | | |
| | **h** | **Total. Add lines 1a–1f** ▶ | | 674,673 | | | |
| **Program Service Revenue** | **2a** | Court Awarded Fees | Busn Code 541100 | 87,007 | 87,007 | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | | | | | | |
| | **e** | | | | | | |
| | **f** | All other program service revenue | | | | | |
| | **g** | **Total. Add lines 2a–2f** ▶ | | 87,007 | | | |
| **Other Revenue** | **3** | Investment income (including dividends, interest, and other similar amounts) ▶ | | 389 | | | 389 |
| | **4** | Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | **5** | Royalties ▶ | | | | | |
| | | | (i) Real \| (ii) Personal | | | | |
| | **6a** | Gross rents | | | | | |
| | **b** | Less rental exps | | | | | |
| | **c** | Rental inc or (loss) | | | | | |
| | **d** | Net rental income or (loss) ▶ | | | | | |
| | **7a** | Gross amount from sales of assets other than inventory | (i) Securities \| (ii) Other | | | | |
| | **b** | Less cost or other basis & sales exps | | | | | |
| | **c** | Gain or (loss) | | | | | |
| | **d** | Net gain or (loss) ▶ | | | | | |
| | **8a** | Gross income from fundraising events (not including $ of contributions reported on line 1c) See Part IV, line 18 | a | | | | |
| | **b** | Less direct expenses | b | | | | |
| | **c** | Net income or (loss) from fundraising events ▶ | | | | | |
| | **9a** | Gross income from gaming activities See Part IV, line 19 | a | | | | |
| | **b** | Less direct expenses | b | | | | |
| | **c** | Net income or (loss) from gaming activities ▶ | | | | | |
| | **10a** | Gross sales of inventory, less returns and allowances | a | | | | |
| | **b** | Less cost of goods sold | b | | | | |
| | **c** | Net income or (loss) from sales of inventory ▶ | | | | | |
| | | Miscellaneous Revenue | Busn Code | | | | |
| | **11a** | | | | | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | All other revenue | | | | | |
| | **e** | **Total. Add lines 11a–11d** ▶ | | | | | |
| | **12** | **Total revenue. See instructions** ▶ | | 762,069 | 87,396 | 0 | 0 |

Form **990** (2014)

DAA

Form 990 (2014)    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **10**

| Part IX | Statement of Functional Expenses |
| --- | --- |

Section 501(c)(3) and 501(c)(4) organizations must complete all columns  All other organizations must complete column (A)

Check if Schedule O contains a response or note to any line in this Part IX

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
| --- | --- | --- | --- | --- |
| **1** Grants and other assistance to domestic organizations and domestic governments  See Part IV, line 21 | | | | |
| **2** Grants and other assistance to domestic individuals  See Part IV, line 22 | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals  See Part IV, lines 15 and 16 | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | 251,299 | 241,246 | 9,146 | 907 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages | 211,791 | 174,313 | 6,268 | 31,210 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| **9** Other employee benefits | | | | |
| **10** Payroll taxes | 30,058 | 27,052 | 902 | 2,104 |
| **11** Fees for services (non-employees) | | | | |
| **a** Management | | | | |
| **b** Legal | | | | |
| **c** Accounting | 11,326 | | 11,326 | |
| **d** Lobbying | | | | |
| **e** Professional fundraising services  See Part IV, line 17 | | | | |
| **f** Investment management fees | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O ) | 40,450 | 37,093 | 3,357 | |
| **12** Advertising and promotion | | | | |
| **13** Office expenses | 21,673 | 18,568 | 2,978 | 127 |
| **14** Information technology | 1,369 | | 1,369 | |
| **15** Royalties | | | | |
| **16** Occupancy | | | | |
| **17** Travel | 27,400 | 15,689 | 6,618 | 5,093 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings | | | | |
| **20** Interest | | | | |
| **21** Payments to affiliates | | | | |
| **22** Depreciation, depletion, and amortization | | | | |
| **23** Insurance | 4,501 | | 4,501 | |
| **24** Other expenses  Itemize expenses not covered above (List miscellaneous expenses in line 24e  If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O ) | | | | |
| **a** | | | | |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 599,867 | 513,961 | 46,465 | 39,441 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation  Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

DAA    Form **990** (2014)

Form 990 (2014)    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X ☐

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 1 | Cash—non-interest bearing | | 304,712 | 1 | 476,267 |
| | 2 | Savings and temporary cash investments | | | 2 | |
| | 3 | Pledges and grants receivable, net | | | 3 | |
| | 4 | Accounts receivable, net | | | 4 | 1,640 |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees Complete Part II of Schedule L | | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L | | | 6 | |
| | 7 | Notes and loans receivable, net | | | 7 | |
| | 8 | Inventories for sale or use | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | | 9 | |
| | 10a | Land, buildings, and equipment  cost or other basis  Complete Part VI of Schedule D | 10a | | | |
| | b | Less  accumulated depreciation | 10b | | 10c | |
| | 11 | Investments—publicly traded securities | | | 11 | |
| | 12 | Investments—other securities  See Part IV, line 11 | | | 12 | |
| | 13 | Investments—program-related  See Part IV, line 11 | | | 13 | |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets  See Part IV, line 11 | | 30,000 | 15 | 15,608 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) | | 334,712 | 16 | 493,515 |
| Liabilities | 17 | Accounts payable and accrued expenses | | 6,800 | 17 | 1,182 |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability  Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons  Complete Part II of Schedule L | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24)  Complete Part X of Schedule D | | 399 | 25 | 2,618 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 7,199 | 26 | 3,800 |
| Net Assets or Fund Balances | | **Organizations that follow SFAS 117 (ASC 958), check here ▶ ☒ and complete lines 27 through 29, and lines 33 and 34.** | | | | |
| | 27 | Unrestricted net assets | | 327,513 | 27 | 489,715 |
| | 28 | Temporarily restricted net assets | | | 28 | |
| | 29 | Permanently restricted net assets | | | 29 | |
| | | **Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 30 through 34.** | | | | |
| | 30 | Capital stock or trust principal, or current funds | | | 30 | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund | | | 31 | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds | | | 32 | |
| | 33 | Total net assets or fund balances | | 327,513 | 33 | 489,715 |
| | 34 | Total liabilities and net assets/fund balances | | 334,712 | 34 | 493,515 |

Form **990** (2014)

DAA

Form 990 (2014)  **CENTER FOR CLASS ACTION FAIRNESS    45-5119142**                     Page **12**

| Part XI | Reconciliation of Net Assets | | | |
|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part XI | | | ☐ |
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | **1** | | 762,069 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | **2** | | 599,867 |
| 3 | Revenue less expenses  Subtract line 2 from line 1 | **3** | | 162,202 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) | **4** | | 327,513 |
| 5 | Net unrealized gains (losses) on investments | **5** | | |
| 6 | Donated services and use of facilities | **6** | | |
| 7 | Investment expenses | **7** | | |
| 8 | Prior period adjustments | **8** | | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | **9** | | |
| 10 | Net assets or fund balances at end of year  Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | | 489,715 |

| Part XII | Financial Statements and Reporting | | | |
|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part XII | | | ☐ |

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990      ☐ Cash    ☒ Accrual    ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both | | | |
| | ☐ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | **2b** | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both | | | |
| | ☒ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

Form **990** (2014)

**SCHEDULE A**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.

▶ **Attach to Form 990 or Form 990-EZ.**
▶ **Information about Schedule A (Form 990 or 990-EZ) and its instructions is at www.irs.gov/form990.**

OMB No. 1545-0047

# 2014

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

| Part I | Reason for Public Charity Status (All organizations must complete this part ) See instructions |
|---|---|

The organization is not a private foundation because it is  (For lines 1 through 11, check only one box )

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E )

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II )

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II )

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II )

9 ☐ An organization that normally receives  (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975  See **section 509(a)(2).** (Complete Part III )

10 ☐ An organization organized and operated exclusively to test for public safety  See **section 509(a)(4).**

11 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 11a through 11d that describes the type of supporting organization and complete lines 11e, 11f, and 11g

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization  **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s)  **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions)  **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated  The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions)  **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization

f  Enter the number of supported organizations

g  Provide the following information about the supported organization(s)

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1–9 above or IRC section (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| **(A)** | | | | | | |
| **(B)** | | | | | | |
| **(C)** | | | | | | |
| **(D)** | | | | | | |
| **(E)** | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.

DAA

Schedule A (Form 990 or 990-EZ) 2014

CCAF990 02/03/2016 3:25 PM

Schedule A (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    **45-5119142**    Page **2**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III If the organization fails to qualify under the tests listed below, please complete Part III )

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | | | 470,435 | 625,545 | 674,673 | 1,770,653 |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | 470,435 | 625,545 | 674,673 | 1,770,653 |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4 | | | | | | 1,770,653 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4 | | | 470,435 | 625,545 | 674,673 | 1,770,653 |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| **10** Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | 1,770,653 |

| | | |
|---|---|---|
| **12** Gross receipts from related activities, etc (see instructions) | **12** | 87,396 |

**13** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ▶ ☒

### Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **14** Public support percentage for 2014 (line 6, column (f) divided by line 11, column (f)) | **14** | | % |
| **15** Public support percentage from 2013 Schedule A, Part II, line 14 | **15** | | % |

**16a** **33 1/3% support test—2014.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**b** **33 1/3% support test—2013.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**17a** **10%-facts-and-circumstances test—2014.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization ▶ ☐

**b** **10%-facts-and-circumstances test—2013.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ▶ ☐

Schedule A (Form 990 or 990-EZ) 2014

DAA

CCAF990 02/03/20 2:31 PM

Schedule A (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **3**

## Part III    Support Schedule for Organizations Described in Section 509(a)(2)

(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II.
If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8** **Public support** (Subtract line 7c from line 6 ) | | | | | | |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income  Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12 ) | | | | | | |

**14** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for 2014 (line 8, column (f) divided by line 13, column (f)) | **15** | % |
| **16** Public support percentage from 2013 Schedule A, Part III, line 15 | **16** | % |

### Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2014** (line 10c, column (f) divided by line 13, column (f)) | **17** | % |
| **18** Investment income percentage from **2013** Schedule A, Part III, line 17 | **18** | % |

**19a** **33 1/3% support tests—2014.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**b** **33 1/3% support tests—2013.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

Schedule A (Form 990 or 990-EZ) 2014

DAA

Schedule A (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **4**

**Part IV**    **Supporting Organizations**
(Complete only if you checked a box on line 11 of Part I If you checked 11a of Part I, complete Sections A and B If you checked 11b of Part I, complete Sections A and C. If you checked 11c of Part I, complete Sections A, D, and E If you checked 11d of Part I, complete Sections A and D, and complete Part V )

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? If "No," describe in **Part VI** how the supported organizations are designated If designated by class or purpose, describe the designation If historic and continuing relationship, explain | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2) | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? If "Yes," answer (b) and (c) below | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? If "Yes," describe in **Part VI** when and how the organization made the determination | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? If "Yes" and if you checked 11a or 11b in Part I, answer (b) and (c) below | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? If "Yes," answer (b) and (c) below (if applicable) Also, provide detail in **Part VI**, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document) | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (a) its supported organizations, (b) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (c) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? If "Yes," provide detail in **Part VI.** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in IRC 4958(c)(3)(C)), a family member of a substantial contributor, or a 35-percent controlled entity with regard to a substantial contributor? If "Yes," complete Part I of Schedule L (Form 990) | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? If "Yes," complete Part I of Schedule L (Form 990) | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? If "Yes," provide detail in **Part VI.** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9(a)) hold a controlling interest in any entity in which the supporting organization had an interest? If "Yes," provide detail in **Part VI.** | **9b** | | |
| **c** | Did a disqualified person (as defined in line 9(a)) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? If "Yes," provide detail in **Part VI.** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of IRC 4943 because of IRC 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? If "Yes," answer (b) below | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? (Use Schedule C, Form 4720, to determine whether the organization had excess business holdings ) | **10b** | | |

Schedule A (Form 990 or 990-EZ) 2014

DAA

Schedule A (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page 5

| Part IV | Supporting Organizations (continued) | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| a | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | 11a | | |
| b | A family member of a person described in (a) above? | 11b | | |
| c | A 35% controlled entity of a person described in (a) or (b) above? If "Yes" to a, b, or c, provide detail in **Part VI.** | 11c | | |

## Section B. Type I Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year | 1 | | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? If "Yes," explain in **Part VI** providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization | 2 | | |

## Section C. Type II Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s) | 1 | | |

## Section D. All Type III Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (1) a written notice describing the type and amount of support provided during the prior tax year, (2) a copy of the Form 990 that was most recently filed as of the date of notification, and (3) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s) | 2 | | |
| 3 | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard | 3 | | |

## Section E. Type III Functionally-Integrated Supporting Organizations

| 1 | Check the box next to the method that the organization used to satisfy the Integral Part Test during the year (**see instructions**) | | | |
|---|---|---|---|---|
| a | ☐ The organization satisfied the Activities Test Complete **line 2** below | | | |
| b | ☐ The organization is the parent of each of its supported organizations Complete **line 3** below | | | |
| c | ☐ The organization supported a governmental entity Describe in Part VI how you supported a government entity (see instructions) | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 2 | Activities Test **Answer (a) and (b) below.** | | | |
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities | 2a | | |
| b | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement | 2b | | |
| 3 | Parent of Supported Organizations **Answer (a) and (b) below.** | | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? Provide details in **Part VI.** | 3a | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? If "Yes," describe in **Part VI** the role played by the organization in this regard | 3b | | |

**Schedule A (Form 990 or 990-EZ) 2014**

DAA

Schedule A (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **6**

| **Part V** | **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** | | | |
|---|---|---|---|---|

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov 20, 1970 **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E

| **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Net short-term capital gain | 1 | | |
| **2** Recoveries of prior-year distributions | 2 | | |
| **3** Other gross income (see instructions) | 3 | | |
| **4** Add lines 1 through 3 | 4 | | |
| **5** Depreciation and depletion | 5 | | |
| **6** Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| **7** Other expenses (see instructions) | 7 | | |
| **8** **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year) | | | |
| **a** Average monthly value of securities | 1a | | |
| **b** Average monthly cash balances | 1b | | |
| **c** Fair market value of other non-exempt-use assets | 1c | | |
| **d** **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| **e** **Discount** claimed for blockage or other factors (explain in detail in **Part VI**) | | | |
| **2** Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| **3** Subtract line 2 from line 1d | 3 | | |
| **4** Cash deemed held for exempt use Enter 1-1/2% of line 3 (for greater amount, see instructions) | 4 | | |
| **5** Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| **6** Multiply line 5 by 035 | 6 | | |
| **7** Recoveries of prior-year distributions | 7 | | |
| **8** **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|
| **1** Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| **2** Enter 85% of line 1 | 2 | | |
| **3** Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| **4** Enter greater of line 2 or line 3 | 4 | | |
| **5** Income tax imposed in prior year | 5 | | |
| **6** **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990 or 990-EZ) 2014**

Schedule A (Form 990 or 990-EZ) 2014 **CENTER FOR CLASS ACTION FAIRNESS**      **45-5119142**      Page 7

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations (continued) | |
|---|---|---|
| **Section D - Distributions** | | **Current Year** |
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| 4 | Amounts paid to acquire exempt-use assets | |
| 5 | Qualified set-aside amounts (prior IRS approval required) | |
| 6 | Other distributions (describe in **Part VI**) See instructions | |
| 7 | **Total annual distributions.** Add lines 1 through 6 | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**) See instructions | |
| 9 | Distributable amount for 2014 from Section C, line 6 | |
| 10 | Line 8 amount divided by Line 9 amount | |

| Section E - Distribution Allocations (see instructions) | (i)<br>Excess Distributions | (ii)<br>Underdistributions<br>Pre-2014 | (iii)<br>Distributable<br>Amount for 2014 |
|---|---|---|---|
| 1 | Distributable amount for 2014 from Section C, line 6 | | | |
| 2 | Underdistributions, if any, for years prior to 2014 (reasonable cause required-see instructions) | | | |
| 3 | Excess distributions carryover, if any, to 2014 | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | | | | |
| e | From 2013 | | | |
| f | **Total** of lines 3a through e | | | |
| g | Applied to underdistributions of prior years | | | |
| h | Applied to 2014 distributable amount | | | |
| i | Carryover from 2009 not applied (see instructions) | | | |
| j | Remainder Subtract lines 3g, 3h, and 3i from 3f | | | |
| 4 | Distributions for 2014 from Section D, line 7:          $ | | | |
| a | Applied to underdistributions of prior years | | | |
| b | Applied to 2014 distributable amount | | | |
| c | Remainder Subtract lines 4a and 4b from 4 | | | |
| 5 | Remaining underdistributions for years prior to 2014, if any Subtract lines 3g and 4a from line 2 (if amount greater than zero, see instructions) | | | |
| 6 | Remaining underdistributions for 2014 Subtract lines 3h and 4b from line 1 (if amount greater than zero, see instructions) | | | |
| 7 | **Excess distributions carryover to 2015.** Add lines 3j and 4c | | | |
| 8 | Breakdown of line 7 | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | Excess from 2013 | | | |
| e | Excess from 2014 | | | |

Schedule λ (Form 990 or 990-EZ) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    **45-5119142**    Page 8

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10, Part II, line 17a or 17b; and Part III, line 12  Also complete this part for any additional information. (See instructions ) |
|---|---|

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

## Supplemental Financial Statements

▶ Complete if the organization answered "Yes" to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Information about Schedule D (Form 990) and its instructions is at www.irs.gov/form990.

OMB No 1545-0047

**2014**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

### Part I    Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" to Form 990, Part IV, line 6

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

### Part II    Conservation Easements.
Complete if the organization answered "Yes" to Form 990, Part IV, line 7

1 Purpose(s) of conservation easements held by the organization (check all that apply)
☐ Preservation of land for public use (e g , recreation or education) ☐ Preservation of a historically important land area
☐ Protection of natural habitat ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements | 2a |
| b | Total acreage restricted by conservation easements | 2b |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register | 2d |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶

4 Number of states where property subject to conservation easement is located ▶

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year ▶

7 Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year ▶ $

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

### Part III    Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" to Form 990, Part IV, line 8

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

   (i) Revenues included in Form 990, Part VIII, line 1 ▶ $
   (ii) Assets included in Form 990, Part X ▶ $

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a Revenue included in Form 990, Part VIII, line 1 ▶ $
b Assets included in Form 990, Part X ▶ $

Schedule D (Form 990) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets (continued) |
| --- | --- |

**3**    Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its
     collection items (check all that apply)

**a** ☐ Public exhibition            **d** ☐ Loan or exchange programs

**b** ☐ Scholarly research           **e** ☐ Other

**c** ☐ Preservation for future generations

**4**    Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part
     XIII

**5**    During the year, did the organization solicit or receive donations of art, historical treasures, or other similar
     assets to be sold to raise funds rather than to be maintained as part of the organization's collection?       ☐ Yes    ☐ No

| Part IV | Escrow and Custodial Arrangements. |
| --- | --- |

         Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form
         990, Part X, line 21

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not
     included on Form 990, Part X?                                                        ☐ Yes    ☐ No

   **b** If "Yes," explain the arrangement in Part XIII and complete the following table

|  |  | Amount |
| --- | --- | --- |
| **c** Beginning balance | 1c | |
| **d** Additions during the year | 1d | |
| **e** Distributions during the year | 1e | |
| **f** Ending balance | 1f | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability?      ☐ Yes    ☐ No

   **b** If "Yes," explain the arrangement in Part XIII Check here if the explanation has been provided in Part XIII ☐

| Part V | Endowment Funds. |
| --- | --- |

         Complete if the organization answered "Yes" to Form 990, Part IV, line 10

|  | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
| --- | --- | --- | --- | --- | --- |
| **1a** Beginning of year balance | | | | | |
| **b** Contributions | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships | | | | | |
| **e** Other expenditures for facilities and programs | | | | | |
| **f** Administrative expenses | | | | | |
| **g** End of year balance | | | | | |

**2**    Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

**a** Board designated or quasi-endowment ▶          %

**b** Permanent endowment ▶        %

**c** Temporarily restricted endowment ▶       %

     The percentages in lines 2a, 2b, and 2c should equal 100%

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the
     organization by

| | | Yes | No |
| --- | --- | --- | --- |
|    **(i)**    unrelated organizations | 3a(i) | | |
|    **(ii)**   related organizations | 3a(ii) | | |
|   **b** If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

**4**    Describe in Part XIII the intended uses of the organization's endowment funds

| Part VI | Land, Buildings, and Equipment. |
| --- | --- |

         Complete if the organization answered "Yes" to Form 990, Part IV, line 11a See Form 990, Part X, line 10

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
| --- | --- | --- | --- | --- |
| **1a** Land | | | | |
| **b** Buildings | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment | | | | |
| **e** Other | | | | |

**Total.** Add lines 1a through 1e   (Column (d) must equal Form 990, Part X, column (B), line 10c )                ▶ | |

Schedule D (Form 990) 2014   **CENTER FOR CLASS ACTION FAIRNESS**   45-5119142   Page **3**

| Part VII | Investments—Other Securities. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11b  See Form 990, Part X, line 12

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 12 ) ▶ | | |

| Part VIII | Investments—Program Related. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11c  See Form 990, Part X, line 13

| (a) Description of investment | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 13 ) ▶ | | |

| Part IX | Other Assets. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11d. See Form 990, Part X, line 15

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 15 ) ▶ | |

| Part X | Other Liabilities. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11e or 11f  See Form 990, Part X, line 25

| **1.** (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (2) **Payroll Liabilities** | **2,618** |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 25 ) ▶ | **2,618** |

**2.** Liability for uncertain tax positions  In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740)  Check here if the text of the footnote has been provided in Part XIII ☐

DAA

Schedule D (Form 990) 2014

Schedule D (Form 990) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **4**

| Part XI | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return. |
|---------|------|

Complete if the organization answered "Yes" to Form 990, Part IV, line 12a

| | | | | | |
|---|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements | | | **1** | 762,069 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | | | |
| **a** | Net unrealized gains (losses) on investments | **2a** | | | |
| **b** | Donated services and use of facilities | **2b** | | | |
| **c** | Recoveries of prior year grants | **2c** | | | |
| **d** | Other (Describe in Part XIII ) | **2d** | | | |
| **e** | Add lines **2a** through **2d** | | | **2e** | |
| **3** | Subtract line **2e** from line **1** | | | **3** | 762,069 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line 1 | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | | |
| **b** | Other (Describe in Part XIII ) | **4b** | | | |
| **c** | Add lines **4a** and **4b** | | | **4c** | |
| **5** | Total revenue Add lines **3** and **4c**. (This must equal Form 990, Part I, line 12 ) | | | **5** | 762,069 |

| Part XII | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return. |
|----------|------|

Complete if the organization answered "Yes" to Form 990, Part IV, line 12a

| | | | | | |
|---|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements | | | **1** | 599,867 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | | | |
| **a** | Donated services and use of facilities | **2a** | | | |
| **b** | Prior year adjustments | **2b** | | | |
| **c** | Other losses | **2c** | | | |
| **d** | Other (Describe in Part XIII ) | **2d** | | | |
| **e** | Add lines **2a** through **2d** | | | **2e** | |
| **3** | Subtract line **2e** from line **1** | | | **3** | 599,867 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line 1 | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | | |
| **b** | Other (Describe in Part XIII ) | **4b** | | | |
| **c** | Add lines **4a** and **4b** | | | **4c** | |
| **5** | Total expenses Add lines **3** and **4c**. (This must equal Form 990, Part I, line 18.) | | | **5** | 599,867 |

| Part XIII | Supplemental Information. |
|-----------|------|

Provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b Also complete this part to provide any additional information

Schedule D (Form 990) 2014    CENTER FOR CLASS ACTION FAIRNESS    45-5119142    Page **5**

**Part XIII**    **Supplemental Information** (continued)

DAA

**SCHEDULE J**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

▶ **Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
▶ **Attach to Form 990.**
▶ **Information about Schedule J (Form 990) and its instructions is at www.irs.gov/form990.**

OMB No 1545-0047

# 2014

**Open to Public Inspection**

Name of the organization
**CENTER FOR CLASS ACTION FAIRNESS**

Employer Identification number
**45-5119142**

## Part I    Questions Regarding Compensation

|  |  | Yes | No |
|---|---|---|---|
| **1a** Check the appropriate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a  Complete Part III to provide any relevant information regarding these items |  |  |  |

☐ First-class or charter travel               ☐ Housing allowance or residence for personal use
☐ Travel for companions                           ☐ Payments for business use of personal residence
☐ Tax indemnification and gross-up payments     ☐ Health or social club dues or initiation fees
☐ Discretionary spending account             ☐ Personal services (e g , maid, chauffeur, chef)

|  |  |  | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** |  |  |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked in line 1a? | **2** |  |  |

**3** Indicate which, if any, of the following the filing organization uses to establish the compensation of the organization's CEO/Executive Director  Check all that apply  Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III

☐ Compensation committee                ☐ Written employment contract
☐ Independent compensation consultant      ☐ Compensation survey or study
☐ Form 990 of other organizations           ☐ Approval by the board or compensation committee

|  |  |  | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization |  |  |  |
| **a** | Receive a severance payment or change-of-control payment? | **4a** |  | **X** |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** |  | **X** |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** |  | **X** |
|  | If "Yes" to any of lines 4a–c, list the persons and provide the applicable amounts for each item in Part III |  |  |  |
|  | **Only section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5–9.** |  |  |  |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of |  |  |  |
| **a** | The organization? | **5a** |  | **X** |
| **b** | Any related organization? | **5b** |  | **X** |
|  | If "Yes" to line 5a or 5b, describe in Part III |  |  |  |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of |  |  |  |
| **a** | The organization? | **6a** |  | **X** |
| **b** | Any related organization? | **6b** |  | **X** |
|  | If "Yes" to line 6a or 6b, describe in Part III |  |  |  |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III | **7** |  | **X** |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53 4958-4(a)(3)? If "Yes," describe in Part III | **8** |  | **X** |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53 4958-6(c)? | **9** |  |  |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

Schedule J (Form 990) 2014

DAA

CCAF990 02/04/2016 6 24 PM

Schedule J (Form 990) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **2**

**Part II**    **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii) Do not list any individuals that are not listed on Form 990, Part VII

Note. The sum of columns (B)(i)–(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)–(D) | (F) Compensation in column (B) reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| **Theodore H. Frank** **1 President/Treasurer** | (i) | **206,400** | **0** | **0** | **0** | **0** | **206,400** | **0** |
| | (ii) | **0** | **0** | **0** | **0** | **0** | **0** | **0** |
| 2 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 3 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 4 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 5 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 6 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 7 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 8 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 9 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 10 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 11 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 12 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 13 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 14 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 15 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 16 | (i) | | | | | | | |
| | (ii) | | | | | | | |

Schedule J (Form 990) 2014

DAA

CCAF990 02/03/2016 7 12 PM

Schedule J (Form 990) 2014    **CENTER FOR CLASS ACTION FAIRNESS**    45-5119142    Page **3**

**Part III    Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II  Also complete this part for any additional information

DAA

| SCHEDULE O | Supplemental Information to Form 990 or 990-EZ | OMB No 1545-0047 |
|---|---|---|
| **(Form 990 or 990-EZ)** | Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | **2014** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or 990-EZ. ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at www.irs.gov/form990. | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

**Form 990 - Organization's Mission**

To provide pro bono representation to class-member consumers and class-member shareholders by objecting to settlements of class actions and shareholder lawsuits that serve to benefit the private interest of plaintiffs' counsel and other third parties at the expense of the public and, where appropriate, moving for the decertification of a class or dismissal of a shareholder derivative action when the representatives fail to adequately represent the class and the public interest.

| SCHEDULE O<br>(Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ. | OMB No 1545-0047 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **2014**<br>**Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| **CENTER FOR CLASS ACTION FAIRNESS** | **45-5119142** |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

1. *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11-CV-00754-JRS (E.D. Va.), *appeal pending*, No. 14-2006 (4th Cir.). The Center objected in August 2013 to a class settlement involving claims that defendants had prepared and sold consumer reports that did not comply with the Fair Credit Reporting Act. The litigation benefits the public generally because the settlement grants class counsel $5.5 million and absent class members nothing other than a meaningless change in LexisNexis' data practices. The district court granted final approval on September 5, 2014. The Center has appealed which remains pending; the Center has not requested attorneys' fees.

2. *Careathers v. Red Bull N. Am., Inc.*, No. 1:13-cv-0369 (KPF) (S.D.N.Y.). In 2015, the Center objected and the litigation benefits the public generally because the valuation of the in-kind relief was exaggerated and the class should not be certified because many class members were not deceived by Red Bull's alleged misrepresentations. The district court approved the settlement, but reduced the fee request by $1.2 million. The Center did not appeal. The Center has not requested attorneys' fees.

3. *Delacruz v. Cytosport*, No. 11-cv-03532 (N.D. Cal.). The Center objected and the litigation benefits the public generally because, *inter alia*, the settlement awarded over $1 million to plaintiffs' lawyers' yet no more than $1 million to class members. The district court approved the settlement on July 1, 2014. The Center did not appeal or request attorneys' fees.

4. *Dewey v. Volkswagen AG*, 728 F. Supp. 2d 546 (D.N.J. 2010), *reversed*, 681 F.3d 170 (3d Cir. 2012), *on remand* 909 F. Supp. 2d 373 (D.N.J. 2012), *aff'd Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191 (3d Cir. 2014). In a class action over leaky sunroofs in Volkswagens and Audis, the parties settled for an $8 million settlement fund and a service action that will prevent $24 million in water damage; a million class members, however, will receive nothing but a letter recommending additional maintenance, even if they have suffered damage from a leaky roof. Plaintiffs' attorneys requested over $23 million in fees and costs. The Center filed an objection on behalf of four class members. After a fairness hearing held on July 26, 2010, the court, on August 3, 2010, approved the settlement, but reduced the fee request to $9.2 million. The Center, along with another objector group, appealed. The litigation benefits the public generally because on May 31, 2012, the Third Circuit reversed, agreeing with the Center that the settlement unfairly froze out the subgroup of a million class members without separate representation. On remand, the parties agreed to restructure the settlement to provide equal recovery to all class members. The Center requested $88,500 and was awarded $86,000 in fees and expenses, 50% to be paid by class counsel and 50% paid by defendant. The Center received those fees on November 5, 2014.

| SCHEDULE O<br>(Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ. | OMB No 1545-0047 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | 2014<br>**Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

**Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year**

5. *Fraley v. Facebook*, No. 11-CV-01726 (N.D. Cal.), *appeal pending*, No. 13-16919 (9th Cir.). Relying on the Center's victory in *Bluetooth*, the judge rejected the settlement that would have paid the class attorneys $10.45 million and likely would have paid the class $0. If it were to have paid anything, it would only have been a result of freezing out tens of millions of class members. The settlement was resubmitted with a lower fee request of $7.5 million, plus the possibility of cash to the class. The Center filed an objection on May 2, 2013 and attended a fairness hearing on June 28, 2013. The litigation benefits the public generally because as a result of the Center's objection, on August 26, 2013, the district court rejected the $7.5 million fee request and instead awarded $4.36 million, resulting in a $5.8 million increase in benefit to the class. The Center requested $50,000 in attorneys' fees on September 9, 2013, which the court denied. The Center appealed the district court's denial of the Center's fee request; the appeal remains pending.

6. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436 (S.D. Ohio), *appeal pending*, No. 14-3761 (6th Cir.). The Center objected and the litigation benefits the public generally because, *inter alia*, the requested attorneys' fees were 65% of the settlement proceeds and because the settlement utilized an unnecessary claims-made process. The Magistrate Judge overruled the objections and was affirmed by the district court. The Center has appealed to the Sixth Circuit which remains pending. The Center has not requested attorneys' fees.

7. *In re American Express Anti-Steering Rules Antitrust Litigation*, No. 11-md-2221 (E.D.N.Y.). The Center objected and the litigation benefits the public generally because, *inter alia*, the settling parties were improperly trying to certify the settlement class as a non-opt-out (b)(2) class, as well as waive future claims of currently undetermined individuals. The Center attended the September 17, 2014 fairness hearing. While the district court questioned the substantive fairness of the settlement as raised by the objectors, it rejected the proposed settlement on August 5, 2015 based on the inadequacy of class counsel. The case remains pending. The Center has not requested attorneys' fees.

| SCHEDULE O (Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | OMB No. 1545-0047 |
| Department of the Treasury<br>Internal Revenue Service | ▶ **Attach to Form 990 or 990-EZ.**<br>▶ **Information about Schedule O (Form 990 or 990-EZ) and its instructions is at** *www.irs.gov/form990.* | 20**14**<br>**Open to Public Inspection** |

| Name of the organization | Employer identification number |
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

**Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year**

8. *In re Baby Products Antitrust Lit.*, 708 F.3d 163 (3d Cir. 2013), *on remand, McDonough v. Toys "R" Us, Inc.*, No. 2:06-cv-0242-AB (E.D. Pa.). This case involved a settlement of consolidated antitrust class actions brought by several named plaintiffs on behalf of consumers against retailers Toys "R" Us, Inc. and Babies "R" Us, Inc. along with several baby product manufacturers. Class attorneys asked for approximately 40% of a $35 million common fund, and provided for the diversion of the money to *cy pres* recipients even if some class members went uncompensated. The Center objected to the fee request and the settlement distribution on behalf of a class member in 2011. After a decision unfavorable to the Center in 2011, the Center appealed in 2012 seeking clarification on the law of *cy pres* and whether $14 million in attorney payments is appropriate when the class is getting less than half of that. At oral argument September 21, the settling parties admitted for the first time that the class would receive less than $3 million. On February 19, 2013, the Third Circuit reversed. The litigation benefits the public generally because the Third Circuit held that the disproportionate ratio requires scrutiny from a district court, and that courts and class counsel should not be indifferent to whether recovery goes to class members or *cy pres*. The parties negotiated a new settlement that eliminated the *cy pres* through direct distribution to the class. The Center objected to class counsel's fee and

expense request, and moved for $1.485 million in attorneys' fees based on the $15 million improvement to the class. The district court awarded the Center $742,500 in fees and reduced class counsel's fees by the same amount. The Center appealed, but voluntarily dismissed the appeal without receiving any payment beyond what was ordered by the court. Other objectors have appealed and the case remains pending. The Center does not anticipate receipt of the awarded attorneys' fees until 2017.

9. *In re BankAmerica Corp. Secs. Litig*, 775 F.3d 1060 (8th Cir. 2015). The litigation benefits the public generally because the Center is appealing a Missouri federal district court order that—without notice to a national securities litigation class—gave away $2.7 million of settlement fund money to a local legal-aid charity as *cy pres*. The Center represented the class representative objecting to this distribution on appeal. The Eighth Circuit sustained the Center's appeal, holding that the charitable donation of class monies was inappropriate, returning an extra $2.6 to $2.7 million to the class. The Center has not requested attorneys' fees.

| SCHEDULE O | Supplemental Information to Form 990 or 990-EZ | OMB No. 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | **2014** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or 990-EZ. ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990*. | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| **CENTER FOR CLASS ACTION FAIRNESS** | **45-5119142** |

**Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year**

10. *In re Capital One Telephone Consumer Protection Act Litigation*, 12-cv-10064 (N.D. Ill.), *on appeal*, No 15-1546 (7th Cir). The Center objected and the litigation benefits the public generally because it involved a $22 million fee request that is 10 times class counsel's lodestar in a low-risk TCPA case. The Center attended the fairness hearing on January 15, 2015. The objection was only to class counsel's fee request, and the district court agreed to a reduction of $7 million in fees. The Center requested an award of attorneys' fees of $160,619. The Center appealed, but plaintiffs offered to pay the Center's client $25,000 to dismiss his appeal and to dismiss the request for the Center's attorneys' fees; the Center's client accepted the offer against the Center's recommendation. The Center received neither attorneys' fees nor any pecuniary compensation in connection with the Center's client's settlement or this case.

11. *In re EasySaver Rewards Litigation*, 2015 U.S. App. LEXIS 4494 (9th Cir. March 19, 2015), *on remand*, No. 09-cv-2094 (S.D. Cal.). The Center objected to and appealed the approval of a settlement of a nationwide class action that paid $8.85 million to the attorneys, a few million of *cy pres* to local charities, and compensation of a few hundred thousand dollars of cash plus coupons to the class. The litigation benefits the public generally because the appeal argues that the district court's order violates the Class Action Fairness Act by valuing the coupons at face value despite obvious restrictions on their use, and that the *cy pres* distribution violates Ninth Circuit precedent. On appeal, the Ninth Circuit vacated the settlement approval and remanded for further consideration. We have renewed our objection, which is pending. The Center has not requested attorneys' fees.

12. *In re Google Referrer Header Privacy Litigation*, No. 10-cv-04809-EJD (N.D. Cal.), *pending appeal*, No. 15-15858 (9th Cir.). The Center objected and the litigation benefits the public generally because, *inter alia*, the entirety of the settlement funds was diverted to non-party *cy pres* recipients. The fairness hearing was held on August 29, 2014 and the district court approved the settlement and fee award. The Center has appealed to the Ninth Circuit which remains pending. The Center has not requested attorneys' fees.

| SCHEDULE O<br>(Form 990 or 990-EZ)<br><br>Department of the Treasury<br>Internal Revenue Service | Supplemental Information to Form 990 or 990-EZ<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ.<br>▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | OMB No 1545-0047<br><br>20**14**<br><br>Open to Public<br>Inspection |
|---|---|---|
| Name of the organization<br><br>CENTER FOR CLASS ACTION FAIRNESS | | Employer Identification number<br><br>45-5119142 |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

13. *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013), *on remand*, No. 5:05-cv-3580 (N.D. Cal.). The Center objected on behalf of two class members to this $1.5 million coupon settlement between Hewlett-Packard Company and a nationwide class of consumers who purchased certain HP inkjet printers where the attorneys requested $2.9 million in fees and expenses. After a February 2011 fairness hearing, the court approved the settlement, but reduced the fee/expense request to $2.1 million on March 29, 2011, crediting the Center's objections to the plaintiffs' attorneys' overvaluing of the injunctive relief. The Center appealed the settlement approval, given the reversion of $800,000 of settlement money to the defendants and the still-excessive ratio of attorney recovery to class recovery. The litigation benefits the public generally because the Ninth Circuit in May 2013 agreed with the Center that the district court incorrectly applied the coupon-valuation provision of the Class Action Fairness Act. The parties unsuccessfully petitioned the Ninth Circuit to rehear the case en banc. The parties resubmitted an identical settlement on remand, and the Center renewed the objection and attended a fairness hearing. The district court approved the resubmitted settlement on September 30, 2014, but decreased the requested fee award by $150,000. The Center has not requested attorneys' fees.

14. *In re MagSafe Apple Power Adapter Litigation*, No. 12-15757, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 24, 2014), *on remand*, Case No. C09-01911-JW (N.D. Cal.). This litigation involves a claims-made settlement regarding defective power adapters for Apple computers. The litigation benefits the public generally because the Center objected to the settlement that would provide more than $3 million to the attorneys while the class claimed significantly less than $1 million worth of relief. The Center objected to ensure that class benefits are proportional to class recovery. The Center's objection was overruled, and the Center appealed. In April 2014, the Ninth Circuit ruled in our favor in an unpublished opinion, and remanded for further proceedings. The Center renewed the objection and attended a new fairness hearing on November 6, 2014. The district court approved the settlement but reduced fees from $3 million to $1.76 million. The Center did not appeal and did not request attorneys' fees.

| SCHEDULE O<br>(Form 990 or 990-EZ)<br><br>Department of the Treasury<br>Internal Revenue Service | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ.<br>▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | OMB No 1545-0047<br>**2014**<br>**Open to Public Inspection** |

| Name of the organization | Employer Identification number |
|---|---|
| **CENTER FOR CLASS ACTION FAIRNESS** | 45-5119142 |

**Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year**

15. *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840 (D. Kan.). Plaintiffs sued multiple defendants over the failure to account for fuel expansion and contraction in sales price, alleging consumer fraud for failure to disclose the laws of physics. One of the defendants, Costco, has settled for zero dollars to the class, injunctive relief changing sales practices in states where such changes are legal, and $10 million in attorneys' fees. The Center objected and made argument in the April 1, 2010, fairness hearing on behalf of two class members. On August 13, 2010, the district court rejected the settlement on technical grounds. In February 2011, the parties submitted a modified settlement that addressed the technical grounds, but did not address the Center's objections. The litigation benefits the public generally because the Center retained two economic experts, and renewed its objection, submitting the testimony of one of the experts about the valuelessness of the prospective injunctive relief. After the fairness hearing of March 22, 2012, the district court approved the settlement, but has not yet ruled on the fee request. In 2015, the Center objected to several substantively similar settlements with other defendants and the district court has also approved those settlements. The court has not yet resolved any fee requests, and our objections to those are also pending. The Center has not requested attorneys' fees.

16. *In re: Online DVD Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015). The Center objected to a settlement where class members (Netflix customers) received coupons of nominal value good only at walmart.com, while the attorneys asked for a disproportionate $8.6M – compensation that cannot be reconciled with the Class Action Fairness Act. The district court held that the coupons were not "coupons" because the parties called them "gift cards," and approved the settlement over the Center's objection. The litigation benefits the public generally because the appeal sought to vindicate the Class Action Fairness Act. The Ninth Circuit affirmed. The Center did not request attorneys' fees.

17. *In re Riverbed Securities Litigation*, Consolidated C.A. No. 10484-VCG (Del. Ch.). The Center is assisting *pro se* objector Sam Kazman in this action. The litigation benefits the public generally because the settlement relief provides meaningless disclosures. The objection is pending. The Center has not requested attorneys' fees.

| SCHEDULE O<br>(Form 990 or 990-EZ)<br><br>Department of the Treasury<br>Internal Revenue Service | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ.<br>▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990*. | OMB No. 1545-0047<br><br>20**14**<br><br>**Open to Public Inspection** |
|---|---|---|

| Name of the organization | Employer Identification number |
|---|---|
| **CENTER FOR CLASS ACTION FAIRNESS** | 45-5119142 |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

18. *In re Southwest Airlines Voucher Litigation*, 2015 U.S. App. LEXIS 14601 (7th Cir. Aug. 20, 2015). After giving out 11 million or so "premium drink" coupons without an expiration date worth $5 to customers, Southwest changed its policy so that the premium drink vouchers were only good on the day of the flight for which they were sold; this action ensued. Under the settlement, Southwest Airlines would give away new coupons to those class members that submit a claim. Plaintiffs' ascribe a value of $29 million to the settlement and the attorneys asked for $3 million. The litigation benefits the public generally because the Center objected that the true value of the settlement is grossly exaggerated and the $3 million fee request violates the Class Action Fairness Act (CAFA), which requires attorney awards to be tied to the value of redeemed coupons. The court approved the settlement and awarded fees of $1.3 million based on lodestar in contravention of CAFA. On reconsideration, the court increased the award to $1.6 million. The Center appealed and the Seventh Circuit affirmed. The Center is petitioning for rehearing en banc. The Center has not requested attorneys' fees.

19. *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CRB (N.D. Cal.). The Center brought objections to excessive fee requests of over $16 million and improper settlement class certification in a group of settlements. The district court approved the settlements, but reduced the Rule 23(h) request for fees and expenses by over $5.1 million, for the benefit of the class. The district court awarded the Center $90,000 in attorneys' fees. The Center has appealed the settlement approval which remains pending. Based on the appeal, the Center does not anticipate receipt of the awarded fees until 2018.

20. *Jackson v. Wells Fargo*, No. 12-cv-01262 (W.D. Pa.). In 2015, the Center objected to the settlement and the litigation benefits the public generally because the requested attorneys' fees are excessive and the parties utilized an unnecessarily burdensome claims made process. The objection is pending. The Center has not requested attorneys' fees.

| For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ. | Cat No. 51056K | Schedule O (Form 990 or 990-EZ) (2014) |
|---|---|---|

| SCHEDULE O | **Supplemental Information to Form 990 or 990-EZ** | OMB No. 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | **2014** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or 990-EZ. ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

21. *Lee v. Enterprise Leasing Company-West, LLC*, No. 3:10-cv-00326 (D. Nev.). In 2015, the Center objected and the litigation benefits the public generally because the proposed fee award of $2.6 million was disproportionate to the class relief. The district court approved the settlement and fee award. The Center did not appeal. The Center has not requested attorneys' fees.

22. *Pearson v. NBTY*, 772 F.3d 778 (7th Cir. 2014), *on remand*, No. 11-cv-07972 (N.D. Ill). This action arose out of claims that Glucosamine is not as effective at building cartilage as advertised. The Center objected on August 1, 2013 and the litigation benefits the public generally because the settlement, class counsel receives $4.5 million payment to class counsel, an amount likely four times more than what the class will receive. The Seventh Circuit reversed settlement approval writing that the attorneys' share of the settlement was excessive because it had been predicted on an artificially swelled class benefit, and that the *cy pres* award and the reversion clause were improper. The Center has not requested attorneys' fees.

23. *Poertner v. The Gillette Co.*, 2015 U.S. App. LEXIS 12318 (11th Cir. July 16, 2015). The Center objected and the litigation benefits the public generally because, *inter alia*, attorneys sought $5.68 million, charities were given $6 million worth of batteries and class members were left with a miniscule claims process. The settlement was approved and the Center appealed. The Eleventh Circuit affirmed in an unpublished order. The Center plans to petition the Supreme Court for certiorari. The Center has not requested attorneys' fees.

24. *Redman v. RadioShack*, 768 F.3d 622 (7th Cir. 2013), *on remand*, No. 11-cv-06741 (N.D. Ill.). In August 2013, the Center objected to a settlement involving statutory claims for RadioShack's practice of printing expiration dates on credit card receipts. The litigation benefits the public generally because the settlement provides $10 coupons to class member claimants and seeks $1 million in attorneys' fees without regard for the number of coupons redeemed in contravention of the Class Action Fairness Act. The Seventh Circuit reversed the settlement on September 19, 2014, holding that class counsel's fees must be proportionate to the benefit realized for the class. The Center has not requested attorneys' fees.

| SCHEDULE O<br>(Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information. | OMB No 1545-0047 |
|---|---|---|
| | ▶ Attach to Form 990 or 990-EZ. | **2014** |
| Department of the Treasury<br>Internal Revenue Service | ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

25. *Sobel v. Hertz,* No. 06-cv-545 (D. Nev.). In 2011, the Center objected and the litigation benefits the public generally because the settlement provided attorneys' fees of $1.5 million while the class was to receive coupons. The court sustained the objection and rejected the settlement. On March 21, 2013 the district court granted partial summary judgment to the plaintiffs in the amount of $45 million. The Center requested attorneys' fees of $90,000 and the court awarded the Center attorneys' fees of $90,000 on October 9, 2014. Based on the appeal of another party, the Center does not anticipate receipt of those fees until 2017.

| SCHEDULE O (Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ** Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | OMB No. 1545-0047 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or 990-EZ. ▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **2014** Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

Form 990, Part II, Line 4a-List of all cases in litigation or that have been litigated during the year

Form 990, Part VI, Line 11b - Organization's Process to Review Form 990

The officer's of the organization review and approve the Form 990 prior to filing.


Form 990, Part VI, Line 12c - Enforcement of Conflicts Policy

The conflict of interest policy is monitored by officers Ted Frank and Melissa Holyoak who analyze any and all business transactions that may benefit the private interest of a director, officer, trustee or key employee.  The conflict of interest policy is further monitored and enforced by Officer Melissa Holyoak who distributes the written policy and collects annual disclosure statements from directors, officers, trustees and key employees.


Form 990, Part VI, Line 15a - Compensation Process for Top Official

Compensation Process for Top OfficialCompensation is reviewed and approved by the Board of Directors.

CCAF990 02/05/2015 9:56 AM

Schedule O (Form 990 or 990-EZ) (2014)

| Name of the organization | Employer identification number |
|---|---|
| CENTER FOR CLASS ACTION FAIRNESS | 45-5119142 |

**Form 990, Part VI, Line 17 - Other States Where Copy of Return is Filed**
New Jersey, New Mexico, New York, Oklahoma, Oregon, Pennsylvania,
South Carolina, Tennessee, Virginia, Wisconsin

**Form 990, Part VI, Line 19 - Governing Documents Disclosure Explanation**
Governing documents are made available upon request by contacting the
organization.

Schedule O (Form 990 or 990-EZ) (2014)

DAA