```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE

                            - - -

IN RE: GOOGLE INC. COOKIE   : MDL NO. 12-2358
PLACEMENT CONSUMER          :
PRIVACY LITIGATION          :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
                            :
                            : Philadelphia, Pennsylvania
                            : October 8, 2019
                            : 10:14 a.m.

                            - - -

             TRANSCRIPT OF TELEPHONE CONFERENCE
          BEFORE THE HONORABLE EDUARDO C. ROBRENO
               UNITED STATES DISTRICT JUDGE

                            - - -

APPEARANCES:

For the Plaintiff:    BRIAN STRANGE, ESQUIRE
                      JOHN SEGLIA, ESQUIRE
                      Strange & Butler
                      12100 Wilshire Boulevard
                      Suite 1900
                      Los Angeles, CA 90025

                      JAMES P. FRICKLETON, ESQUIRE
                      Bartimus Frickleton Robertson PC
                      11150 Overbrook Road
                      Suite 200
                      Leawood, KS 66211
```

TK Transcribers
9 Dogwood Avenue
Glassboro, NJ 08028
609-440-2177

```
                                                                  2
 1   APPEARANCES:            (Continued)

 2   For the Defendant:      STEPHEN G. GRYGIEL, ESQUIRE
                             Grygiel Law, LLC
 3                           301 Warren Avenue
                             Suite 405
 4                           Baltimore, MD 21230

 5                           ANTHONY J. WEIBELL, ESQUIRE
                             Wilson Sonsini Goodrich & Rosati
 6                           650 Page Mill Road
                             Palo Alto, CA 94304
 7
                                   - - -
 8
     Audio Operator:         Ron Vance
 9
     Transcribed By:         Michael T. Keating
10
                                   - - -
11
             Proceedings recorded by electronic sound
12   recording; transcript produced by computer-aided
     transcription service.
13
                                   - - -
14

15

16

17

18

19

20

21

22

23

24

25
```

3

1  (The following was heard in open court at
2  10:14 a.m.)
3       THE COURT:  Good morning.  This is Judge
4  Robreno and we are on the record.  I'm going to try
5  to call the roll here and see who is -- who is
6  available.  Let's begin with plaintiff.  Counsel for
7  plaintiff, please enter your appearance.
8       MR. STRANGE:  Good morning, Your Honor.
9  This is Brian Strange and John Seglia from the law
10 firm of Strange & Butler in Los Angeles.
11      THE COURT:  Okay.
12      MR. FRICKLETON:  Judge, this is James
13 Frickleton from Bartimus Frickleton Robertson and
14 Rader in Kansas City.
15      THE COURT:  Okay.
16      MR. GRYGIEL:  Good morning, Your Honor.
17 This is Steve Grygiel of Grygiel Law in Baltimore,
18 Maryland.
19      THE COURT:  Okay.  I don't have you -- I
20 don't have you here.
21      MR. GRYGIEL:  I need to enter my appearance
22 and correct it.
23      THE COURT:  I'm sorry?
24      MR. GRYGIEL:  I haven't filed my entry of
25 appearance.  I just realized this morning.

4

1  THE COURT: Okay. Well, okay. Now, for --
2  anybody else for plaintiffs? Okay. For Defendant
3  Google?
4  MR. WEIBELL: Good morning, Your Honor.
5  This is Anthony Weibell of Wilson Sonsini Goodrich &
6  Rosati for Google.
7  THE COURT: Okay. Now, I had also asked
8  the Attorney General from the State of Arizona to be
9  on the call as a friend of the Court, and I had also
10 permitted counsel for objector, Theodore Frank, to be
11 on the call. They're not parties to these
12 proceedings, but they are friends of the Court and
13 they may be asked by the Court during the course of
14 this telephone conversation to give their input.
15  So let's start with this is a preliminary
16 scheduling conference on a case that was remanded to
17 the district court by the Third Circuit with specific
18 directions as to how to proceed in the case. So the
19 purpose of this call is to get acquainted and to get
20 your thoughts and input as to how we should proceed
21 in the case.
22  So, Mr. Strange, why don't you start off
23 and give me your view of where we are and where you
24 would like to go?
25  MR. STRANGE: Thank you, Your Honor. As

1  you probably have seen from the file, this case was
2  first filed -- our case was first filed in February
3  of 2012.  We then were centered as an MDL in Your
4  Honor's court.  When this case was filed, privacy
5  actions were at their infancy and not very well-
6  favored by the Court.  We actually are -- the motion
7  to dismiss by Google for standing was granted, and we
8  went up to the Third Circuit and had that reversed on
9  specific grounds and actually made a good law for
10 privacy actions going forward about standing that
11 related to data.
12           We then back down to the trial court after
13 some skirmishes, had a mediation before a retired
14 federal judge, and agreed to the settlement, which
15 has been approved and then, as Your Honor has seen,
16 reversed with directions from the court of appeals.
17           As plaintiff's counsel, we have met and
18 conferred with Google a few times and believe that we
19 can come to an agreement to address the court of
20 appeals' concerns, and really we just would request
21 that Your Honor continue the status conference for 30
22 days to allow us to get into more detail about how to
23 address the issues stated by the Third Circuit and
24 present a settlement to the Court.
25           THE COURT:  Okay.  Okay.  Anyone else for

1  plaintiff who wishes to be heard?  Mr. Frickleton?
2  You're in a different firm, right?
3           MR. FRICKLETON:  Yes, Your Honor, but --
4           THE COURT:  Okay.
5           MR. FRICKLETON:  -- Mr. Strange speaks for
6  me also.
7           THE COURT:  Okay.  So that's the
8  plaintiff's position --
9           MR. STRANGE:  Your Honor --
10          THE COURT:  Go ahead.  Who is this?
11          MR. STRANGE:  Sorry, Your Honor.  This is
12 Mr. -- Brian Strange.
13          THE COURT:  Yes.
14          MR. STRANGE:  I wanted to explain to the
15 Court that when the -- when this class action was
16 MDL-ed, there was a leadership panel, and the Court
17 ultimately appointed our firm, Mr. Frickleton's firm,
18 and Mr. Grygiel's firm as co-lead counsel in the
19 case.
20          THE COURT:  Okay.  So you're speaking for
21 the leadership and for all of the plaintiffs who have
22 been designated as lead plaintiffs, is that right?
23          MR. STRANGE:  That is correct, Your Honor.
24          THE COURT:  Okay.  How about the position
25 of the defendant, Google?

1       MR. WEIBELL:  Good morning, Your Honor.  So
2  we may have related the procedural history of
3  (indiscernible), but the ultimate ending point is the
4  same and we are on the same page as plaintiffs in
5  that we have an agreement now as to how we think we
6  should proceed in trying to address the issues
7  presented by the Third Circuit, but we need time to
8  look through those issues.  And so we're in agreement
9  that a continuance of 30 days would be appropriate
10 while we try and do that.
11      THE COURT:  Okay.  Now, let me ask Mr.
12 Skinner, what's your view and what is the role of the
13 Arizona Attorney General in this litigation?
14      MR. SKINNER:  Sure thing.  Thank you, Your
15 Honor, for allowing me to be on the phone.  Our view
16 is there -- in the existing settlement, there was a
17 core problem, which was the fact that the settlement
18 relief was going entirely to third parties cy pres
19 beneficiaries.  When it comes to the fact that the
20 parties are discussing addressing the Third Circuit's
21 concerns, obviously we need to see what that looks
22 like to the extent that if it's still a cy pres-only
23 settlement, it could probably have concerns, but
24 obviously it depends on what the details are.
25      As for our role, we receive notice of class

1 action settlements in federal court pursuant to the
2 Class Action Fairness Act. We have a team that looks
3 at those and works very hard to find the few during
4 the year that we believe don't serve the interest of
5 consumers, and we have a history of filing in both
6 the district courts, the courts of appeal, and the
7 U.S. Supreme Court both in individual cases where
8 we're hoping to improve (indiscernible) for
9 consumers, and also in cases at the higher levels
10 where we're concerned about precedent. And we've
11 taken a very strong interest in these cy pres-only
12 settlements. We've filed briefs with the U.S.
13 Supreme Court, we've taken position in this Third
14 Circuit argument, and so our main concern here is to
15 ensure that the settlement complies with Rule 23 and
16 serves the interest of consumers given that to date
17 at least, the settlement has always been a 50-state
18 settlement and it covers Arizona consumers.
19       THE COURT: Now, you were an objector to
20 the settlement, is that right?
21       MR. SKINNER: Not exactly, Your Honor.
22       THE COURT: Okay.
23       MR. SKINNER: We did not take part in the
24 district court proceedings. We first entered this
25 case merely as an amicus at the Third Circuit and

1  then --
2          THE COURT:  Okay.
3          MR. SKINNER:  -- presented argument to the
4  Court as an amicus.
5          THE COURT:  Oh, okay.
6          MR. SKINNER:  If we were to file anything
7  here, Your Honor, we would not be purporting to be an
8  objector within the meaning of the settlement
9  documents because, normally, we would not be a class
10 member, but we would historically file an amicus
11 brief stating our position, much as we did in the
12 court of appeals.  I will say that in at least one
13 case where the settlement in the district court was
14 harming the interest of consumers and had a likely
15 effect on the State of Arizona's claim -- this was in
16 Ohio and in the Sixth Circuit -- we did move to
17 intervene.  But, traditionally, we have filed an
18 amicus brief to provide the Court with our thoughts
19 pursuant to what we believe is the primary role under
20 the Class Action Fairness Act.
21         THE COURT:  Now, are there any other states
22 involved?
23         MR. SKINNER:  At the Third Circuit, Your
24 Honor, we had a bipartisan coalition of states.  And
25 I'm forgetting the number.  I don't have the notes in

1  front of me, but I'd say it was more than ten, less
2  than 20.  Normally, once it gets down to an actual
3  settlement agreement and the terms are concrete and
4  known, many states come together, but at this early
5  stage, I'm -- we're the only state who's here to see
6  what happens next.
7        THE COURT:  So you're here to monitor --
8        MR. SKINNER:  (Indiscernible) --
9        THE COURT:  -- to monitor the litigation?
10       MR. SKINNER:  Yes, Your Honor, and in large
11 part, to figure out whether, in light of the Third
12 Circuit's guidance, there is going to be a modified
13 settlement, no settlement, entirely different
14 settlement.  Given that we took part at the Third
15 Circuit, given the instructions that the Third
16 Circuit provides and the centrality of those issues
17 to what we see as a problem in the consumer class
18 action (indiscernible), it was really important to
19 our office to make sure that we watch and comment on
20 the implementation of the Third Circuit's order on
21 remand.
22       THE COURT:  Okay, thank you.  Let's see,
23 Mr. Schulman, you were an objector both below and in
24 the Third Circuit.  So what's your role?
25       MR. SCHULMAN:  Well, I -- we see it sort of

1  a similar observatory role that the AG sees until
2  there's some concrete terms that are laid out that we
3  could review.  But we don't intend to intervene in
4  the litigation currently.
5          THE COURT:  Okay.
6          MR. SCHULMAN:  And then if there was
7  another proposed settlement that was cy pres-only, we
8  would assess at that time.
9          THE COURT:  Okay.  Now, I'm looking at the
10 opinion of the Third Circuit, and no one has so far
11 mentioned the Third Circuit's conclusion that the
12 district court's order certifying the class involved
13 a "cursory certification and fairness analysis,"
14 which are insufficient for us to review its order
15 certifying the class and approving the settlement.
16 So I get the point about a potential settlement in
17 this case, but I haven't heard anything about the
18 issue of whether this is an appropriate class that
19 meets the requirements of 23(b)(2).  So what's your
20 position there, Mr. Strange?
21         MR. STRANGE:  Well, Your Honor, I think
22 that this is part of the discussions we're having
23 with Google, but we anticipate -- at least plaintiffs
24 do -- reviewing whether this settlement should be
25 presented to the Court as a 23(b)(3) class on damages

1  and addressing that issue there.  I think that
2  ultimately the settlement agreement didn't provide --
3  the one that was overturned by the court of appeals
4  didn't provide whether it was (b)(2) or (b)(3), so
5  that is an issue that we intend to address in the
6  next settlement and certainly to present enough
7  evidence to the Court that you could conduct a
8  fairness evaluation of the settlement.
9        THE COURT:  Okay.  So you would anticipate
10 at some point a fairness hearing on certification
11 together with, if that comes about, approval of a
12 potential settlement?
13       MR. STRANGE:  Yes, Your Honor, what I would
14 anticipate is to the extent that the plaintiff class
15 and Google can agree on the terms of the settlement,
16 that settlement would be presented to Your Honor
17 along with sufficient evidence for the Court to
18 determine whether the settlement is a fair settlement
19 for the class, and that would also allow anybody --
20 claiming class members, such as Mr. Frank or the AG
21 from Arizona, to review the evidence to see what
22 position they have on the settlement.  So that's how
23 we intend on addressing the Court's concern, is
24 considering those when we try to put together a
25 settlement and how we present it to the Court so that

13

1   we can address the issues raised by the Third
2   Circuit, including what you just mentioned.
3           THE COURT:  Okay.  Well, I see no issue in
4   deferring for 30 days and see what happens at that
5   point.  I think that what probably you should do is
6   to -- within 30 days, to update me by way of a letter
7   to chambers from the parties, and we will at that
8   point then, depending upon what the letter says, set
9   up a conference maybe in person at that point.  But
10  let me -- let me at least take a preliminary look at
11  what your -- what you have in mind.  So why don't I
12  enter an order continuing the preliminary hearing and
13  asking that there be a joint, written submission to
14  the Court within 30 days?  Okay?  Anybody --
15          MR. STRANGE:  Yes, Your Honor.
16          THE COURT:  -- has anything else they would
17  like to bring up?  Okay.
18          MR. WEIBELL:  Hi, Your Honor, this is
19  Anthony Weibell for Google.
20          THE COURT:  Yes?
21          MR. WEIBELL:  Just one housekeeping type of
22  issue, which is given that many of us are based on
23  the west coast and this action has been MDL-ed there
24  on the east coast, for any future status conference,
25  it would be greatly appreciate, if possible, if we

14

1  could have the conference take place in the afternoon
2  in east coast time, so that it's in the morning west
3  coast time, rather than -- rather than too early in
4  the morning for some of us.
5          THE COURT:  Okay.  What is it 7:00 there
6  now?
7          MR. WEIBELL:  Yes, Your Honor.
8          THE COURT:  Okay.  Okay, we'll keep that in
9  mind.  Anything else?  Okay, very well.  So we'll --
10         MR. SKINNER:  Your Honor, this is Mr.
11 Skinner in Arizona.
12         THE COURT:  Yes?
13         MR. SKINNER:  I would just -- is it
14 something the Court might consider doing to post the
15 joint letter to the docket?
16         THE COURT:  Yes, I think that may be --
17 that may be.  But let me get the letter first.  And
18 unless there is a reason why that shouldn't be done,
19 I have no problem with that.
20         MR. SKINNER:  Okay.  Thank you, Your Honor.
21         THE COURT:  Okay.  Anything else from
22 anyone?  So -- okay.  Well, thank you.  And thank you
23 those of you who had to get up early to participate
24 in the conference, and look forward to working with
25 you and bringing -- landing this case in a

```
 1  satisfactory fashion for everyone.  Okay, very good.
 2  Thank you.
 3          ALL:  Thank you, Your Honor.
 4          (Proceedings adjourned, 10:32 a.m.)
 5
 6                       *  *  *
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATION

I, Michael Keating, do hereby certify that the foregoing is a true and correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.

10/31/19

Date

Michael Keating