**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION This Document Relates to All Actions | CASE NO 12-MD-2358 |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH GOOGLE, LLC**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

III.    SUMMARY OF ARGUMENT ....................................................................................... 4

IV.    TERMS OF THE PROPOSED SETTLEMENT ............................................................. 5

    A.   The Proposed Settlement Class ...................................................................................... 5

    B.   Assurances By Google .................................................................................................... 6

    C.   The Cy Pres Payments .................................................................................................... 6

    D.   Costs Of Settlement Administration ............................................................................... 7

    E.   Plaintiffs' Litigation Costs And Fees ............................................................................. 8

    F.   Incentive Payments To Class Representatives ................................................................ 8

    G.   Release By Settlement Class Members ........................................................................... 8

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23(A) AND
(B)(2) AND (B)(3) ................................................................................................................... 8

    A.   Common Issues Predominate ......................................................................................... 9

    B.   A Class Action Is The Superior Method Of Adjudication ............................................ 10

        1.   The Interest Of Members Of The Class In Individually Controlling The Prosecution Of
Separate Actions Is Minimal ........................................................................................ 11

        2.   The Extent And Nature Of Litigation Already Commenced By Members Of The Class
Supports Certification. .................................................................................................. 12

        3.   It Is Desirable To Concentrate The Litigation In This Forum. ...................................... 12

4.    There Are No Unusual Difficulties Likely To Be Encountered In The Management Of The Case ................................................................................................................ 12

C.    Propriety And Sufficiency Of Notice ............................................................... 13

1.    Sufficiency of Notice Was Never Challenged ................................................. 13

2.    This Court Previously Approved The Notice in All Respects ...................................... 13

3.    The Settlement Terms Are Essentially Unchanged ....................................... 15

4.    The Technical Barriers to Individualized Notice Remain ........................................... 16

5.    Targeted Electronic Notice was Used and Satisfies Due Process ............................... 16

D.    The Release Is Proper And Not Overbroad ....................................................... 18

E.    Selection Of Cy Pres Recipients Follows Third Circuit Suggestion ............................... 20

VI.    CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998)......................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997) ....................................... 9, 10, 12

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) ................................................. 9, 10

*Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y.1969)................................................................. 18

*Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976) ................................................................ 10

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014)..................... 9

*Davis v. Wells*, 104 U.S. 159 (1881)............................................................................................. 20

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005)

.................................................................................................................................................. 17

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974).......................................... 4, 15, 17, 18

*Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 652 (C.D.Cal. 1996).................................................. 11

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir.1974)............................... 10

*In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 168 (2d Cir.1987)............... 18

*In re American Coils Co.,* 187 F.2d 384 (3rd Cir. 1951)............................................................... 20

*In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992)..................... 17

*In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) ........................ 11

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2015 WL

5010048, at *12 (D. Kan. Aug. 21, 2015)................................................................................. 11

*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 273–74 (3d Cir. 2016) .............. 3

*In re Northern Dist. Cal., Dalkon Shield*, Etc., 693 F.2d 847, 856 (9th Cir. 1982) .................... 11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir.

    1998) ................................................................................................................ 8, 13

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 530 (3rd Cir. 2004) .................... 3, 13

*In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316, 326 (2019) .. 3,

    passim

*Mace v. Van Ru Credit Cor*p., 109 F.3d 338, 344 (7th Cir. 1997) ............................................... 10

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865

    (1950) ............................................................................................................... 15, 16

*Silber v. Mabon,* 18 F.3d 1449, 1452, 1454 (9th Cir.1994) .......................................................... 17

*Todd & Co., Inc. v. SEC*, 637 F.2d 154, 157 (3d Cir.1980) ...................................................... 3, 9

**Statutes**

California Civil Code § 1542 ........................................................................................................ 8

**Other Authorities**

Litigation Cost Survey of Major Companies, Lawyers for Civil Justice, at 3, submitted May,

    2010 ................................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23(b)(2) .................................................................................................. 1, passim

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 4, passim

Fed. R. Civ. P. 23(c) ................................................................................................... 14, 15

**Treatises**

2 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 4:49, at 195–96 (5th ed.

 2012) ..................................................................................................................................... 9

## I.      INTRODUCTION

This memorandum is the Plaintiffs' second seeking preliminary approval of the settlement with Google, Inc.  This Court issued both a preliminary and final approval of the settlement in 2016 as described in detail in the memorandum, *infra*.  After an appeal, the Third Circuit remanded for further attention to issues concerning the selection of *cy pres* recipients and issues as to the release of claims in a settlement under Fed. R. Civ. P. 23(b)(2).  Plaintiffs and Defendants have cooperated to resolve these issues, and Plaintiffs present the second motion for preliminary approval as set out below.  This memorandum incorporates the points and authorities previously filed, as well as the cites and references in the original declarations filed in support of the motion. (D.I. 163 and attachments).

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause ("Plaintiffs"), on behalf of themselves and the class defined herein, and Defendant Google, LLC (formerly Google Inc.) ("Google" or "Defendant") reached a class action settlement ("Settlement") (Exhibit A to the Declaration of Brian R. Strange, D.I. 163-1), in 2016 which was challenged on appeal by a single objector.  Following remand by the Third Circuit, the parties now seek preliminary approval from the Court for the modified settlement.

The background of this litigation is as follows: Plaintiffs in the Consolidated Amended Class Action Complaint and numerous other individuals filed complaints in various federal courts around the country in 2012. These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012. On December 19, 2012, Plaintiffs filed their Consolidated Class Action Complaint against Google and other parties (all Defendants other than Google referred to as "Non-Settling Defendants"). On

June 21, 2016, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint").

Plaintiffs centrally allege in the Complaint that Defendant Google circumvented Plaintiffs' Safari and Internet Explorer browsers and defeated the default cookie settings of such browsers in violation of federal and state laws. More particularly, Plaintiffs allege that when Plaintiffs and Class Members visited a website containing an advertisement placed by certain Defendants in this case, tracking cookies were placed on Plaintiffs' computers that circumvented Plaintiffs' and Class Members' browser settings that blocked such cookies. Plaintiffs allege Defendant's secret and unconsented use of those cookies knowingly intercepted and gained access to Plaintiffs' and Class Members'[1] internet communications and activity in violation of federal statutes and state laws. Google denies these claims.

Google filed a motion to dismiss all the claims against it on January 22, 2013 (D.I. 56) and, on October 9, 2013, this Court granted the motion to dismiss in its entirety and dismissed this case (D.I. 122). On November 10, 2015, the Third Circuit Court of Appeals affirmed the dismissal of the three federal law claims brought against all Defendants, vacated the District Court's dismissal of Plaintiffs' freestanding privacy claims against Google under the California Constitution and California tort law, and affirmed the dismissal of the remainder of Plaintiffs' state law claims.

On March 10, 2016, Plaintiffs filed a Petition for Writ of Certiorari with the United States Supreme Court, seeking review of the Third Circuit's Opinion.  On May 9, 2016, Lead Counsel for Plaintiffs (Brian R. Strange, James P. Frickleton, and Stephen G. Grygiel (hereinafter, "Class Counsel")) and counsel for Google participated in a private mediation before Retired Federal Judge

---

[1]     The Settlement Class consists of all persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

Layn Phillips. The parties exchanged extensive briefing, participated in pre-mediation phone calls, and engaged in an all-day mediation on May 9, 2016. During the mediation, Plaintiffs and Google agreed to the basic terms of this Settlement, which were later memorialized in a final document executed by all parties and Class Counsel as of June 30, 2016. See Strange Decl. D.I. 163-1,¶ 7; Grygiel Decl.  D.I. 163-2, ¶¶ 7–9; Frickleton Decl. D.I. 163-3, ¶ 4.

The Court, prior to final approval, received fifty requests for exclusion and only one objection. The lone objector challenged this Court's certification of the settlement class and the terms of the approved settlement. This Court overruled the objections and the objector appealed. The Third Circuit, applying *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004), approved the settlement in most respects assuming, without holding, that the presumption of fairness attached.  *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316, 326 (2019), fn. 8.  The objector did not challenge numerosity, typicality, commonality, or adequacy of representation.  The Third Circuit, applying *In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 273–74 (3d Cir. 2016), determined that there was Article III standing in this case.  941 F.3d at 325.  For purposes of this motion, those issues are the settled law of the case.  *Todd & Co., Inc. v. SEC*, 637 F.2d 154, 157 (3d Cir.1980) (doctrine applies "to issues that were actually discussed by the court in the prior appeal [and] to issues decided by necessary implication.").  The Third Circuit remanded this case for consideration of two issues:

- Whether the *cy pres* recipients were chosen on their merits. Id. at 330, and

- Whether the class-wide release of damages was appropriate in a class certified

  under Rule 23(b)(2); *In Re Google*, 934 F.3d. at 329.

Plaintiffs on remand, in order to address the Circuit Court's concerns regarding the propriety of the release, now request certification of the class under both Fed. R. Civ. P. 23(b)(2)

and (3).  In accordance with the terms of the settlement agreement that requires the parties to cooperate on administrative and procedural matters in order to consummate the purpose and spirit of the agreement, the settlement relief has been modified so that a neutral third party appointed by the Court will choose the *cy pres* recipients, thereby obviating any concerns regarding their selection.  Plaintiffs now show the settlement's release of damages claims is appropriate under Fed. R. Civ. P. 23(b)(3) and meets all the requirements of the rule.  Plaintiffs request factual findings from this Court at the final approval hearing.  Having modified the *cy pres* process as stated, the parties have satisfied the Third Circuit's concerns and now seek preliminary approval of the modified Settlement.

## III.    SUMMARY OF ARGUMENT

All of the requirements of class certification are met, and the Settlement Class should be certified under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure (hereinafter, "Rule 23").  As noted *supra* this Court's prior determinations with regard to numerosity, commonality, typicality and adequacy of representation went unchallenged and remain the law of the case.

Because the notice given when this class was originally certified meets the requirements both of Rule 23(b)(2) and 23(b)(3), Plaintiff need only demonstrate that this notice was and continues to be the best notice practicable under the circumstances. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Thus, this Court need not enter an order for additional notice if it finds, as the evidence supports, that the notice already given meets the requirements of the rule, and class members have been advised of their rights under the settlement.

The key issues before the Court now that Plaintiffs are moving for certification under Rule 23(b)(3) are those two set out by the Third Circuit, above, and the issues of predominance and

superiority required by Rule 23(b)(3).  This memorandum sets forth the key terms of the settlement agreement and the one minor change since the original notice and approval[2], as well as the issues of predominance and superiority under Rule 23(b)(3).  The memorandum then sets out the settling class member's response to the issues raised by the Third Circuit.

## IV.     TERMS OF THE PROPOSED SETTLEMENT

The proposed Settlement with Google was reached following extensive arms-length negotiations between Plaintiffs' counsel (Brian R. Strange, Stephen G. Grygiel, and James P. Frickleton), on the one hand, and Google on the other hand. Plaintiffs and Google discussed for several months the possibility of settling Plaintiffs' claims against Google. Following the mediation and back-and-forth negotiations and discussions, the parties agreed upon and executed a formal settlement agreement. Throughout the course of settlement negotiations, the parties took into consideration potential liability and damage issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation. Class Counsel believes the proposed Settlement is fair and reasonable and should be approved by this Court. See Strange Decl. D.I. 163-1, ¶ 8; Grygiel Decl. D.I. 163-2, ¶ 6-9; Frickleton Decl. D.I. 163-3, ¶ 4. *See also* additional Declarations filed by class counsel contemporaneously with this motion.

### A.     THE PROPOSED SETTLEMENT CLASS

Plaintiffs request that, pursuant to the terms of the Settlement, the Court certify the following proposed Settlement Class:

---

[2]         § 15.5 of the Settlement Agreement required the parties "to cooperate fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement." To that end the parties conferred and revamped the selection of the *cy pres* recipients in order to meet the Third Circuit's objections expressed in that Court's opinion.

> All Persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

Settlement Agreement ("S.A."), Strange Decl., D.I. 163-1, ¶ 3, Ex. 1, § 2.3.

B.    ASSURANCES BY GOOGLE

The Settlement confers substantial benefits upon the Settlement Class, particularly in light of the potential recovery provable at trial and given the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal. The settlement provides that Google fully remediate the allegedly wrongful conduct. Specifically, Google will provide Class Counsel with assurances that it has implemented systems configured to instruct Safari browsers to expire any cookie placed from the doubleclick.net domain by Google if those systems encountered such a cookie, with the exception of the DoubleClick opt-out cookie, until the time that all cookies placed from the doubleclick.net domain by Google on Safari browsers through February 15, 2012 should have expired by design. *Id.* § 5.1.

C.    THE *CY PRES* PAYMENTS

Google shall deposit $500,000 in an interest-bearing Settlement Account within 21 days of the entry of the Preliminary Approval Order. *Id.* § 5.2.2. Google shall deposit an additional sum of $5,000,000 in the Settlement Account within 10 days of the Effective Date of the Settlement, as defined in the Settlement Agreement. Id. These monies, including any accrued interest and less any expenses for the Settlement Administrator, the Notice Plan, the Fee Award, the Incentive Awards, and any other notice fees or costs, shall be paid to *cy pres* recipients determined in the following manner:

- Up to ten (10) *cy pres* recipients will be selected by a third-party neutral and not by the parties;

- This Court, in the preliminary approval order, will appoint a third-party neutral to select the proposed *cy pres* recipients;

- Recipients have to satisfy eligibility criteria identified in the agreement establishing a sufficient nexus between their work and the injuries claimed by the class members or the principles the litigation sought to vindicate (William B. Rubinstein, *et al.*, Newberg on Class Actions §12.33 (4th ed. 2002), specifically, be recognized leaders in the fields of online privacy, safety, and/or advocacy and agree to devote the funds to promote public awareness and education and/or to support research, development, and initiatives related to the security and/or privacy of Internet browsers;

- Recipients must agree to use funds for purpose identified in the agreement;

- Recipients must agree to submit a sworn declaration that (1) confirms their eligibility; (2) confirms their promise to use funds in accordance with the agreement; and (3) discloses any existing or prior relationship to the court, parties, and counsel, including prior donations or *cy pres* distributions from the parties; and

- Recipients must agree to send a witness to the final approval hearing to respond to the Court's questions regarding their use of funds.

Based on the size of the Class in this case, estimated to be millions of individuals, distribution of the settlement fund to the *cy pres* recipients above, is the most efficient and best use of the settlement proceeds. Frickleton Decl., D.I., 163-3, ¶ 5.

D.   COSTS OF SETTLEMENT ADMINISTRATION

Google has agreed to pay all reasonable Settlement Administrator expenses up to $500,000, which are to be paid from the Settlement Fund. S.A. § 7.1.

E.     PLAINTIFFS' LITIGATION COSTS AND FEES

As part of the prior settlement approval process, the court considered and approved Plaintiffs motion for attorney fees and expenses, awarding $1,925,000 in fees and $90,929.26 in expenses. D.I. 173. Although attorneys for the consolidated action have expended significant additional time representing the class in the various appeals of this case, counsel do not intend to seek additional fees for such work.  Counsel therefore believes that if this court approves the settlement that the prior fee award, having not been challenged on appeal is the settled law of the case.

F.     INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES

Subject to the Court's approval, Class Counsel may move the Court for, and Google will not contest, incentive payments in a total amount not to exceed $3,000 ($1,000 per Class Representative), to be paid from the Settlement Fund. *Id.* § 11.2.

G.     RELEASE BY SETTLEMENT CLASS MEMBERS

Following entry of the Final Order and Judgment, as defined in the Settlement Agreement, the Class will have released the "Released Parties" from the "Released Claims," all as defined in the Settlement Agreement, including a waiver of California Civil Code § 1542. *Id.* § 10. The Released Claims, as defined, will include all claims raised or which could have been raised in the Complaint based on the factual allegations.

**V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER RULE 23(A) AND (B)(2) AND (B)(3)**

When a class settlement occurs before class certification has taken place, a court may conditionally certify the case for settlement purposes. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998). The court uses the same Rule 23 requirements whether it certifies the class for trial or settlement. *Id*. When certification is sought

under Rules 23(a) and (b)(2), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the requirement of Rule 23(b)(2) that the Defendant acted on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the class as a whole.

This Court has already undertaken that analysis and it is law of the case. *Todd*, 637 F.2d 154. In addition to the requirements of Rule 23(b)(2), Rule 23(b)(3) requires an analysis of predominance and superiority in order to certify a class action.

A.    COMMON ISSUES PREDOMINATE

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007) (internal citations and quotations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Put differently, the predominance prong 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id*., quoting 2 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 4:49, at 195–96 (5th ed. 2012). That a particular defense "may arise and may affect different class members differently

does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564.

Here, on the two remaining counts, the single predominant issue is whether Defendants violated consumers' privacy rights by using cookies to knowingly intercept internet communications of the putative class; and this issue is common to all class members. If no cookies were used, the class would lose on these counts. The common operative facts are the significant central issue in the case and can be best resolved in a single adjudication. Thus, the first requirement of Rule 23(b)(3) is satisfied.

B.     A Class Action Is The Superior Method Of Adjudication.

Rule 23(b)(3) further requires a class action be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "In balancing the relative merits of a class action versus alternative available methods of adjudicating the controversy, the trial court may consider: 'the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually.'" *Haynes v. Logan Furniture Mart, Inc*., 503 F.2d 1161, 1165 (7th Cir.1974). As explained by the United States Supreme Court:

> The policy at the very core of a class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

*Amchem*, 521 U.S. at 617 (citing *Mace v. Van Ru Credit Cor*p., 109 F.3d 338, 344 (7th Cir. 1997)). "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc*., 72 F.R.D. 22, 28 (S.D.N.Y. 1976). The class action is especially

preferred when a large number of small or medium sized claimants may be involved because "[i]n light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied." *In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).

1. The Interest of Members of The Class in Individually Controlling the Prosecution of Separate Actions is Minimal.

Damages to a party's privacy rights are inherently difficult to quantify.  Expert testimony would be required, as would expert testimony on the operation of computer-based cookies. Litigation costs for an individual class member would be virtually certain to exceed the maximum possible recovery, making litigation of individual cases highly impractical and any victory pyrrhic at best.  Given the extensive discovery needed in this case, including multiple depositions, litigation costs for an individual class member would likely exceed the maximum possible recovery, making litigation of individual cases cost prohibitive for all but the wealthiest class members.  *See In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2015 WL 5010048, at *12 (D. Kan. Aug. 21, 2015) ("[I]n light of the limited size of any potential financial recovery for any particular class member and the possibility of inconsistent results, a class action is a far superior method of resolving the claims compared to individual suits.").

The "most compelling rationale for finding superiority in a class action" is the case of a "negative value suit" where the stakes to each member are too slight to repay the cost of the suit. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998).  "This factor is most relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation . . . where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."  *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 652 (C.D.Cal. 1996) (citing *In re Northern Dist. Cal., Dalkon Shield*, Etc., 693 F.2d 847, 856 (9th Cir. 1982)).

11

This case does not present a situation where each class member has suffered sizeable damages or has an emotional stake in the litigation, such as in a personal injury case. Accordingly, the interest of class members in individually controlling their own litigation is minimal. Moreover, the litigation having settled makes predominance less of an issue given that no proof on the contested issues – class wide or individual – will be necessary if the Court approves this settlement.

2. The Extent and Nature of Litigation Already Commenced by Members of the Class Supports Certification.

Only fifty individuals requested exclusion from the original class action settlement, and Plaintiff is unaware of any sizeable number of lawsuits concerning Google's alleged conduct in this matter. While Google is battling its share of lawsuits nationally, its December 2018 10K report with the SEC makes no mention of similar privacy lawsuits. Accordingly, there is not significant litigation already underway by class members against Defendants based on the cookies at issue and this factor weighs in favor of certification as a class action at the settlement stage.

3.  It is Desirable to Concentrate the Litigation in this Forum.

Concentrating the claims of the class in this forum is desirable. Google is a Delaware corporation. There is an adequate Plaintiff and competent counsel willing to pursue the claims of the class within this forum, and there is no other pending action pursing the claims of the proposed class.

4. There are no Unusual Difficulties Likely to be Encountered in the Management of the Case

There are no unusual difficulties likely to be encountered in the management of this case as a class action at the settlement stage. *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231 (in a settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial"). Courts have

managed scores of class actions at settlement with no unusual difficulty. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 530 (3rd Cir. 2004); *In re Prudential Ins.,* 148 F.3d at 307.

Any difficulty encountered in the management of this as a class action is far outweighed by the difficulties that would be encountered by the joinder of hundreds of thousands of separate suits.  This case presents no more difficulty to manage than other class actions, including securities litigation and consumer fraud cases.  Accordingly, this factor weighs in favor of class certification.

Thus, because common questions of law and fact predominate in this action and a class action is the superior method of adjudicating the claims alleged in this case, the Rule 23(b)(3) requirements are satisfied.

C.    PROPRIETY AND SUFFICIENCY OF NOTICE

1.   Sufficiency of Notice was Never Challenged

Although the Objector argued against a *cy pres* settlement and against certain *cy pres* recipients, no objector complained that notice was insufficient or did not reach a sufficient number of computer users. See declaration of Brian Strange at ¶ 24.

2.   This Court Previously Approved the Notice in all Respects

The Court preliminarily approved the Settlement on August 31, 2016. (D.I. 164.) Beginning on September 12, 2016, and continuing until October 24, 2016, Notice of the Proposed Settlement with Google ("Notice") was disseminated to potential members of the Class via online advertisements on the Audience Network Buy and Pulpo Media networks, as well as through targeted social media advertising on Facebook, designed by the Class Administrator to reach the broadest possible audience of potential Apple Safari and Microsoft Internet Explorer web browsers. See Declaration of Stephen J. Cirami Regarding Settlement Administration ("Cirami Decl.") D.I. 163-4, ¶¶ 6–9 & Ex. C and also Declaration of Amanda Sternberg ¶¶ 5-9. A Summary

Notice was also published in the October 17, 2016 issue of People Magazine, a nationally distributed and widely read magazine. D.I. 163-4 ¶ 10 & Ex. D.[3] A website containing the long-form Notice of the Settlement was also established and, as of December 30-2019, was visited at least 568,891 times. See Sternberg Declaration ¶ 10.[4]

The deadline for exclusions from the Settlement was November 27, 2016, and the deadline for objections was December 21, 2016.  See Notice §§ 10, 11.  The Class Administrator received 50 timely requests for exclusion from the Settlement. See Cirami Decl. ¶ 12 & Ex. G. Class Counsel received only one objection to the Settlement which this court summarily overruled in initially approving the settlement. *See* Strange Decl. at ¶ 3.

In initially approving the settlement as a Rule 23(b)(2) class this Court found the settlement's notice accurately described the litigation and the settlement met the requirements of Rule 23, comported with Due Process, and as a result, it approved the notice.  That was the correct analysis.  While the objector did not specifically take aim at the notice in this case, the Third Circuit said:

> We also question, and leave to the District Court on remand, whether a defendant can ever obtain a class-wide release of claims for money damages in a Rule 23(b)(2) settlement, and if so, whether a release of that kind requires a heightened form of notice either under Rule 23(c)(2)(B) or due process tenets.

934 F.3d at 329-30.  Plaintiffs have now moved to certify the class under both Rule 23(b)(2) and (b)(3) to address this issue.

---

[3]      The Notice and Summary Notice informed potential Class Members that Interim Co-Lead Counsel would be requesting permission to use a portion of the Settlement Fund to pay for attorneys' fees and expenses. See Cirami Decl. Exs. D & E. The fees and expenses granted by this court during the previous approval process, as described above, to be paid from the Settlement Fund, represents a fair and reasonable amount to compensate Class Counsel for their representation of the Class in preparing, filing, and litigating this case through two complex appeals. Settlement Agreement ("S.A.") §§ 11.1, 11.2.

[4]      In accordance with the Preliminary Approval Order and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711, et seq., the Class Administrator notified the appropriate state and federal officials of the proposed Settlement on September 8, 2016. Cirami Decl. ¶ 5 & Exs. A, B.

Fed. R. Civ. P. 23(c) requires the best notice practicable under the circumstances.  Fed. R. Civ. P. 23(c). *Eisen*, 417 U.S. at 173. If this Court grants approval under Rule 23(b)(3), it moots the need to decide the "enhanced notice" issue with regard to Rule 23(b)(2).   The record demonstrates the notice that has already been given meets the notice requirements of Rule 23(b)(3) and that no other or further notice need be given.  This is because there has only been one non-substantive change in the way *cy pres* recipients are determined while the rest of the settlement remains the same.  Likewise, technical obstacles to identifying class members, and set out below, exist as before.   Individualized notice is required to those who can be identified "through reasonable effort." *Eisen*, 417 U.S. at 173. Because neither Microsoft Explorer nor Apple's Safari were individually registered, individualized notice to specific users is impossible through reasonable effort, and the targeted electronic notice already given satisfies both the rule and due process. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

3.   The Settlement Terms Are Essentially Unchanged

The structure, timing, and disposition of funds set out in the settlement have not changed. While the appointment of a third party neutral to choose *cy pres* recipients has been substituted for the six named entities, the remainder of the settlement has not changed.  The only substantive change is with Plaintiffs requesting certification under Rule 23(b)(3) in addition to (b)(2).

Defendant is not gaining additional concessions, and Plaintiffs are not gaining any additional benefits.  The payments from Google will continue to benefit only the *cy pres* recipients in what the Third Circuit described as a settlement that "would be used for a purpose directly and substantially related to the class's interests,"  934 F.3d at 329-30, and that belongs to the class as a whole rather than any individual.   *Id.* at 328. Additional notice delineating an additional

subparagraph of the rule under which the case is certified would add nothing to the understanding of the individual consumer and might create confusion.

4.   The Technical Barriers to Individualized Notice Remain

Unlike specialized software for word processing, tax preparation, or accounting, internet browsers normally are supplied as a part of the operating system of a computer and are not separately registered.  Not all personal computers users search with Google[5].  Not all personal computers users deploy Microsoft's Explorer or Apple's Safari browsers.  Apple Computer supplies Safari with its operating system.  Microsoft supplies Internet Explorer (now Edge).  Yet, not every user employs these standard browsers[6].  For those reasons a list of all Apple users would not be a list of class members any more than a list of all Microsoft Windows users would be. These technical issues limit the ability to provide individualized notice.

5.   Targeted Electronic Notice was Used and Satisfies Due Process

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950) set the due process standard for notice.  It said notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314, 70 S.Ct. 652.  It went on to comment that:

> The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected....

*Id.*

---

[5]      Search engines like Yahoo, Bing, Dogpile, DuckDuckGo and Start Page all exist as alternatives to Google, and thus a comprehensive list of all users of operating systems would not reflect class membership.

[6]      Firefox, Opera and Chrome have wide support in both PC and Apple user groups.

Rule 23 and *Eisen*, 417 U.S. 156, require identification through "reasonable effort."  Case law provides useful comparisons of notice that meets the standard.  *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005) involved a class action where notice was challenged post-judgment.  In that case the parties challenging were class members who did not receive actual notice.  The Circuit court held that lack of timely, actual notice of settlement to some class plaintiffs did not render the overall notice scheme violative of due process or otherwise unfair.  Shares of the stocks at issue were held by brokerage firms as nominees for the actual class members.  Notice to the holders in the "street name" did not uniformly get passed to the actual owners.  There 70% of the class members got their notices less than 32 days before the opt-out deadline.  However, only the parties before the Court claimed they received them after the deadline.  The Court there noted that in *Silber v. Mabon,* 18 F.3d 1449, 1452, 1454 (9th Cir.1994) over 1000 notices were mailed after the deadline, and the notice scheme still met the requirements of due process. *DeJulius*, 429 F.3d at 947.

*In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992) also provides guidance.  The class members in that case were purchasers of airfares (as opposed to travelers on the defendant's airlines) who could not be identified by reasonable methods.  The defendants had all readily attested to the fact these purchasers could not be identified and that they had no records to do so.  *Id.* at 539, 540.  Only when class certification loomed did defendants change tactics and insist that a list of 9,300,000 names compiled from TRW was a list of class members.  The Court rejected this analysis and found as a fact that class members could not be identified by reasonable methods.  After carefully analyzing the plaintiffs' class notice plan consisting of multiple published notices in multiple newspapers as well as news weeklies (Time, Newsweek), the Court approved the notice plan saying:

> There is no question that where the name and last known address of a class member or individual party is known or is capable of being readily identified from available business or public records, individual notice must be given. *Eisen*, 417 U.S. at 175, 94 S.Ct. at 2151… However, where the names and addresses of the entire class are not readily available from existing records, individual notice is only required under Rule 23 where identification is possible through reasonable efforts.

*Id.* at 539. *See also In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 168 (2d Cir.1987), cert. denied, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647, 648 (1988) ("Rule 23, of course, accords considerable discretion to a district court in fashioning notice to a class." ); *Berland v. Mack*, 48 F.R.D. 121, 129 (S.D.N.Y.1969) ("Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case.").

Here the class members had their privacy invaded while using an internet browser.  Given the carefully and specifically crafted mechanism for notice here, specifically online advertisements on multiple networks (viewed through internet browsers), as well as targeted social media advertising on Facebook, designed by the Class Administrator to reach the broadest possible audience of potential Apple Safari and Microsoft Internet Explorer web browsers (D.I. 163-4 ¶ 8-23), it is quite likely that anyone who had been affected by the invasion of their privacy was informed by the notice.

As set out above, the evidence before the Court in the earlier motion for approval presented the Court with the best possible notice under the circumstances, and the Court found notice acceptable.  Neither Due Process nor Rule 23 require the impossible, and thus the best notice reasonably practicable here is the notice that has already been provided.

D.    THE RELEASE IS PROPER AND NOT OVERBROAD

The Third Circuit questioned, and left "to the District Court on remand, whether a defendant can ever obtain a class-wide release of claims for money damages in a Rule 23(b)(2) settlement…" *Google*, 934 F.3d at 329.  With the addition of certification under rule 23(b)(3), that

issue need not be decided.  However, Plaintiffs and Google believe such a release is proper in this circumstance for the reasons set out in this motion and memorandum.

First, a damage claim for a loss of privacy essentially comes down to what a jury would do in a given case where proving monetary loss might be difficult, but where an intentionally-inflicted invasion of privacy, however defined, associated with a loss of control over private information might well compel a jury to provide money damages.  While there were only fifty persons opting out of the class, thereby demonstrating a tepid degree of interest in damages, even if only ten lawsuits were filed Google would be required to defend them and would necessarily have the costs and expenses associated therewith. While those claims would be difficult for the reasons expressed herein, they would nonetheless be viable based on the Third Circuit's prior ruling in this case. According to one source, the average outside litigation cost for companies responding to a Duke University Law School survey was nearly $115 million in 2008, up 73 percent from $66 million in 2000[7].  The ratio of pages discovered to pages entered as exhibits is as high as 1000/1. In 2008, on average, 4,980,441 pages of documents were produced in discovery in major cases that went to trial – but only 4,772 exhibit pages actually were marked[8].  Google has serious economic risk should even one of the privacy lawsuits reach a jury but would have costs even if one did not. Before paying out millions of dollars to settle a claim, it needed to ensure that it was capping that risk.

And, while the settlement provides injunctive relief similar to that obtained by the FTC in its litigation, the FTC settlement is not privately enforceable.  The Google settlement can be

---

[7]        Litigation Cost Survey of Major Companies, Lawyers for Civil Justice, at 3, submitted May, 2010, and found on the US Courts website at
https://www.uscourts.gov/sites/default/files/litigation_cost_survey_of_major_companies_0.pdf
[8]        Id.

enforced against Google, creating a strong incentive for the company to operate within the settlement's restrictions.

To put this in contract terms, Google's commitment to do things it was not required to do (stop using the offending cookies, grant an enforceable right to privacy relief and pay *cy pres* damages of $5,500,000.00) is good and sufficient consideration for the release of inchoate damages claims that are difficult to value. *Davis v. Wells*, 104 U.S. 159 (1881) ("It is not material that the expressed consideration is nominal. … A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid."); *In re American Coils Co.,* 187 F.2d 384 (3rd Cir. 1951)("A very slight advantage to one party or a trifling inconvenience to the other is a sufficient consideration to support a contract ….").

Certification of this class action settlement under both Rule 23(b)(2) and (b)(3) satisfies the concerns of the Third Circuit in this case, and provides the benefit of the bargain to the class as a whole under the *cy pres* doctrine, and Google as defendant.  It is fair, reasonable, and adequate under the circumstances.  The release is not overbroad given the equities at issue here.

E.    SELECTION OF CY PRES RECIPIENTS FOLLOWS THIRD CIRCUIT SUGGESTION

The Third Circuit directed this Court to "consider whether these *cy pres* recipients have significant prior affiliations with Google, class counsel, or the Court, and, if so, whether the selection process failed to satisfy Rule 23(e)(2) by raising substantial questions whether the recipients were chosen on the merits." *Google*, 934 F.3d at 331.  It then noted that the "parties may also want to involve class members or a neutral participant in the selection of recipients to ward off any appearance of impropriety." *Id*.  The parties have implemented the Circuit Court's direction and have requested that this Court appoint a third-party neutral with no affiliation to either party to choose the *cy pres* recipients.  Should the Court do so, all of the Third Circuit's

objections to the settlement will have been properly dealt with.  As noted *supra*, this is now incorporated into the modified settlement agreement as the only procedural change.

## VI.    CONCLUSION

The Third Circuit approved the settlement in most respects but remanded for two significant issues.  Those issues have been fully addressed by the parties through arms-length negotiations conducted in good faith.  The issue with cy pres recipients has been remedied through appointment of a neutral as suggested by the Third Circuit, and the issue with notice has been addressed by requesting certification under Rule 23(b)(3).  For all these reasons the Plaintiff requests that this Court issue an order preliminarily approving the settlement and setting a final approval hearing.

Dated:  January 3, 2020

**Respectfully submitted,**

**STRANGE & BUTLER LLP**

**BY:**   */s/ Brian Russell Strange*
**BRIAN RUSSELL STRANGE**
**12100 Wilshire Boulevard, Ste. 1900**
**LOS ANGELES, CA 90025**
**(310) 207-5055 TEL**
bstrange@strangeandbutler.com

**BARTIMUS FRICKLETON ROBERTSON RADER, P.C.**

**BY:**   */s/ James P. Frickleton*
**JAMES P. FRICKLETON          MO #31178**
**EDWARD D. ROBERTSON III     MO #58801**
**11150 OVERBROOK ROAD, SUITE 200**
**LEAWOOD, KS 66211-2298**
**(913) 266-2300/ (913) 266-2366          FAX**
jimf@bflawfirm.com
krobertson@bflawfirm.com

**GRYGIEL LAW, LLC**

BY:   */s/ Stephen G. Grygiel*
      **STEPHEN G. GRYGIEL     DE BAR ID #4944**
      **301 WARREN AVENUE, #405**
      **BALTIMORE, MD 21230**
      **(407) 505-9463**
      Stephengrygiel22@gmail.com

**EXECUTIVE COMMITTEE MEMBERS**