UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION<br><br>This Document Relates to:<br>**All Actions** | NO. 1:12-md-02358-ER |

# DEFENDANT GOOGLE LLC'S
# STATEMENT IN SUPPORT OF PLAINTIFFS'
# SECOND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

ANTHONY J WEIBELL, CA Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: aweibell@wsgr.com

*Attorneys for Defendant*
GOOGLE LLC (formerly Google Inc.)

January 21, 2020

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
|  | A. The District Court Previously Dismissed the Action in Its Entirety | 2 |
|  | B. The Third Circuit Sustained Dismissal as to All But One Claim | 3 |
|  | C. The Class Settlement Was Previously Approved by the District Court | 5 |
| III. | A DIRECT DISTRIBUTION TO CLASS MEMBERS IS NOT POSSIBLE | 6 |
| IV. | THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE WITHOUT ANY DIRECT PAYMENTS TO CLASS MEMBERS | 8 |
| V. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Bolger,*
    2 F.3d 1304 (3d Cir. 1993).................................................................................8, 9

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013)....................................................................................8

*Hernandez v. Hillsides, Inc.,*
    211 P.3d 1063 (Cal. 2009) ......................................................................................4

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013).....................................................................................7

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    988 F. Supp. 2d 434 (D. Del. 2013)................................................................2, 3, 8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    806 F.3d 125 (3d Cir. 2015)....................................................................3, 4, 5, 8, 9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    934 F.3d 316 (3d Cir. 2019)....................................................................1, 5, 6, 7, 8

*Kirsch v. Delta Dental of N.J.,*
    534 F. App'x 113 (3d Cir. 2013) ............................................................................8

*Kizer v. Cty. of San Mateo,*
    53 Cal. 3d 139 (1991) ...........................................................................................10

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) ..................................................................................9

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir. 1983) ..................................................................................9

*McDonough v. Horizon Blue Cross Blue Shield of N.J.,*
    641 F. App'x 146 (3d Cir. 2015) .........................................................................8, 9

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) (en banc)....................................................................9

*Zimmerman v. Bell,*
    800 F.2d 386 (4th Cir. 1986) ..................................................................................8

## RULES

Fed. R. Civ. P. 23(b)(2).................................................................................................1

Fed. R. Civ. P. 23(b)(3).................................................................................................1

I.  **INTRODUCTION**

The Court should grant Plaintiffs' motion for preliminary approval of the class settlement because the settlement is fair, reasonable, and adequate, as class members have suffered no damages and cannot be identified individually. As the District Court previously recognized, "this has always been a case in which the facts preclude direct individual compensation" to class members. *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 324 n.7 (3d Cir. 2019). The Third Circuit did not disagree with this conclusion or disapprove of the *cy pres* structure of the settlement—it remanded the action only so the Court could conduct additional "factfinding and legal analysis … []sufficient for [the Third Circuit] to review [the] order certifying the class and approving the fairness, reasonableness, and adequacy of the settlement." *Id.* at 332. Accordingly, the parties have proposed a revised *cy pres* recipient selection process and provided additional evidence and opportunity for the Court to perform the fact-finding and legal analysis needed to satisfy the requests of the Third Circuit. The parties have also invited the Court to certify the class under Rule 23(b)(3) rather than Rule 23(b)(2) because they believe the settlement meets the heightened demands of a Rule 23(b)(3) analysis, even though the settlement can also be approved under Rule 23(b)(2).

In addition to the evidence supplied with Plaintiffs' second motion for preliminary approval of the settlement, defendant Google LLC (formerly Google Inc.) ("Google") submits with this statement the declaration of Lawrence You, the Director of Privacy for Product and Engineering at Google, to provide the Court with further evidence showing that the settlement is a fair, reasonable, and adequate outcome for the class. Specifically, the You declaration explains in detail that: (1) the substantial majority of persons upon whose behalf this action was filed would not have been affected by the conduct alleged in the complaint; (2) it is not possible for Google, Plaintiffs, or members of the class of persons represented by Plaintiffs to identify specific individuals who

were actually affected; and (3) even if individuals had been affected, they would not have suffered any tangible injury—at most, they may have been shown more relevant ads when visiting a website than those they otherwise were shown on that website.

Google thus joins Plaintiffs in respectfully requesting that the Court grant preliminary approval of the settlement agreement.

## II. BACKGROUND

### A. The District Court Previously Dismissed the Action in Its Entirety

This action was filed nearly eight years ago on the heels of various media reports speculating that the defendants, including Google, circumvented the default settings of Apple's Safari web browser to place "cookies" on users' browsers to aid in interest-based advertising (e.g., displaying ads for pet supplies in a browser frequently used by a class member to visit pet-related websites).[1] Such cookies may have allowed Google to *anonymously* correlate some class member visits to various websites that displayed Google ads, which in turn might have enabled Google to display ads that were more relevant to these class members than the less-relevant context-based ads they would have otherwise seen. *See* Decl. of Lawrence You (hereinafter, "You Decl.") ¶¶ 17-46, 61-65. The cookie would have had no other effect. You Decl. ¶¶ 3(c), 64.

Although they did not suffer, and do not allege that they suffered any actual injury, Plaintiffs asserted nine causes of action alleging violations of various federal and state laws. Plaintiffs' allegations were factually mistaken as to Google in multiple respects. But the District Court never had to address these factual errors because the Court dismissed the action as a matter of law at the outset for failure to state a claim. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*

---

[1] Google is the only defendant that remains in the action after one defendant settled out and the other defendants were not the subject of the California privacy claim that remained following the Third Circuit's decision that affirmed dismissal of all other claims.

("*Cookie I*"), 988 F. Supp. 2d 434, 451 (D. Del. 2013). Among other legal defects in their alleged claims, the District Court held that Plaintiffs failed to identify any cognizable damages. *Id.* at 448.

B.  **The Third Circuit Sustained Dismissal as to All But One Claim**

On appeal, the Third Circuit affirmed the dismissal of all of Plaintiffs' claims except a California state law invasion of privacy claim. *In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie II*"), 806 F.3d 125 (3d Cir. 2015). Specifically, the Third Circuit affirmed the dismissal of all federal claims and all causes of action that threatened statutory damages. It also recognized that Plaintiffs did not allege any pecuniary harm. *Id.* at 134, 152.

What remained of the case on remand from *Cookie II* was essentially a single privacy claim brought under the California Constitution and California tort law. *Id.* The remaining claim focused on an alleged misstatement by Google that was buried in the Complaint and had received virtually no attention in the parties' prior briefing.[2] It advanced an outlandish theory: that Google intentionally set out to deceive Plaintiffs by failing to update an obsolete statement (made in a seldomly-visited hinterland of Google's Help Center) that users of the Safari browser did not need to take affirmative action to block Google's cookies because Safari would do so by default. CAC ¶¶ 79-81; *Cookie II*, 806 F.3d at 149-53; You Decl. ¶ 70.

If this case had proceeded on the invasion of privacy claim remaining after remand from *Cookie II*, Plaintiffs would have been required to prove that: (1) Plaintiffs personally viewed and relied on the alleged misrepresentation, such that they had a reasonable expectation they would not receive the cookie at issue from Google; (2) Plaintiffs received a cookie on their device by the means alleged in the Complaint rather than by some other means not at issue; (3) the placement of

---

[2] The alleged misrepresentation reads: "Safari is set by default to block all third-party cookies. If you have not changed those settings, this option essentially accomplishes the same thing as setting the opt-out cookie." ECF No. 46, Class Action Complaint ¶ 79.

3

that cookie was highly offensive to a reasonable person; and (4) Google "intentionally" embarked on a scheme to track Plaintiffs' Internet activity through "deceit"—that is, by deliberately misleading users to believe that Google would not place "tracking cookies" on browsers in their default state, and then purposefully "disregard[ing]" this representation by "overriding" Plaintiffs' browser settings. *Cookie II*, 806 F.3d at 149-52 (citing *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009)).

This theory was doomed to fail for several reasons. *First*, the alleged misrepresentation was an "out-of-date statement ... posted to a rarely-visited Help Center page at a time when the statement was objectively true—long before the alleged conduct began and a year before Apple even implemented the exceptions to Safari's third-party cookie-blocking defaults that caused the placement of the DoubleClick Ad Cookie in the manner alleged by Plaintiffs." You Decl. ¶ 70. Consequently, any effect the alleged misstatement may have had was purely the result of inadvertence, rather than any intent by Google to invade Plaintiffs' privacy. *Second*, Plaintiffs do not allege to have personally viewed the alleged misrepresentation or relied on it, and thus they could have had no reasonable expectation that Google would not place any cookies on their browser when visiting websites that displayed Google ads. *See* Compl. ¶¶ 79-81. *Third*, as explained in the You Declaration, Plaintiffs are not able to identify whether they actually received a cookie by the means alleged in the Complaint because "[i]t is technically impossible to distinguish between Safari users who were affected by the issue at the heart of this action and those who were not." You Decl. ¶ 59; *see also* ¶¶ 3(b), 48-60. And *fourth*, the alleged circumvention of Plaintiffs' default browser settings was in connection with the placement of a different cookie than the alleged tracking cookie complained of by Plaintiffs. You Decl. ¶¶ 30-46. This again shows the lack of any intentional invasion of privacy by Google.

4

### C. The Class Settlement Was Previously Approved by the District Court

Because of the grim outlook for the little that remained of Plaintiffs' case following remand from *Cookie II*, the parties soon after reached a modest class settlement that provided injunctive relief and monetary payments to organizations dedicated to improving Internet safety and privacy. The settlement agreement limited the settlement class to only those persons who Plaintiffs could plausibly allege to have been injured: those who received a Google cookie "by the means alleged in the Complaint." Settlement Agreement (hereinafter, "S.A."), Strange Decl., ECF No. 163-1, ¶ 3, Ex. A, § 2.3. Because class members did not suffer individual damages and because it was technically impossible for the parties or class members to identify any specific member of the settlement class, the parties agreed that direct monetary payments to class members was neither a feasible nor necessary component of the settlement.

The settlement was readily approved by the United States District Judge who presided over the matter for years and who recognized the futility of further litigation. Mem. and Order, ECF No. 173. A single objector appealed the District Court's approval. *See In re: Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie III*"), 934 F.3d 316, 320 (3d Cir. 2019). Without disagreeing with the District Court's approval of the settlement, the Third Circuit remanded the case only so the Court could make additional "factfinding and legal analysis … []sufficient for [the Third Circuit] to review [the] order certifying the class and approving the fairness, reasonableness, and adequacy of the settlement." *Id.* at 332.

The parties have conferred extensively regarding these issues following the case's remand and reassignment to this Court. On January 3, 2020, Plaintiffs filed a second motion for preliminary approval of the settlement agreement. Mem. Law Supp. Pls.' Second Mot. Prelim. Approval (hereinafter, "Pls.' Mot."), ECF No. 194. Plaintiffs' motion fully addresses the concerns the Third Circuit articulated in *Cookie III*. Google's separate statement further addresses why the settlement

5

structure is appropriate in light of the facts, including the facts explained in detail in the Declaration of Lawrence You submitted herewith.

### III. A DIRECT DISTRIBUTION TO CLASS MEMBERS IS NOT POSSIBLE

*Cookie III* counseled that this Court's "settlement approval should be a practical inquiry rooted in the particular case's facts." 934 F.3d at 328. The practical reality here is that no one—not Plaintiffs, not Google, and not putative class members, including the lone objector[3]—can determine who received a cookie in 2011 by the means alleged in the Complaint. As the declaration from Lawrence You, Google's Director of Privacy for Product and Engineering, explains:

> The substantial majority of persons upon whose behalf this action was filed were not affected by the placement of the cookies in the manner alleged by Plaintiff because they already had the cookie at issue on their browser for reasons unconnected with the events alleged by Plaintiffs.
>
> Because the cookie itself gives no indication of how it was placed, it is not possible for Google, Plaintiffs, or members of the class of persons represented by Plaintiffs to identify whether a browser received a cookie by means alleged by Plaintiffs or by some other means not at issue. Google did not collect and does not have information sufficient to identify the class of persons whose browsers received a cookie by the means alleged by Plaintiffs.

You Decl. 3(a)-(b); *see also id.* ¶ 59 ("It is technically impossible to distinguish between Safari users who were affected by the issue at the heart of this action and those who were not.").

Because there is no practical way for anyone to identify who is, and who is not, a class member, a settlement that provides for direct monetary payments to class members was and remains an impossibility. You Decl. ¶¶ 3(b), 48-60. In this case, a *cy pres*-only distribution is the

---

[3] Even the lone objector's counsel conceded the impossibility of identifying class members at an approval hearing before the District Court. Tr. Proceedings (Jan. 11, 2017), 16:4-9 (acknowledging that "nobody even knows the status today of the cookies on their browser. They know what websites they visited but they don't know the status of their cookies[,] let alone from a period of time five years ago").

6

only reasonable mechanism for disposing of the settlement fund. Third Circuit law allows for such a distribution where, as here, it is "economically or administratively infeasible to distribute funds to class members." *In re Baby Products Antitrust Litig.,* 708 F.3d 163, 169 (3d Cir. 2013); *accord Cookie III*, 934 F.3d at 321, 328 ("We know no ruling that requires district courts to approve only settlements that provide for direct class distributions on these facts. Indeed, *Baby Products* suggested the opposite.").

Even if a limited few class members might have preserved sufficient technical data and have the technical resources and ability to be able to determine that they are members of the class,[4] it would be unjust to overcompensate those few individuals with the entire settlement fund. *See Baby Products*, 708 F.3d at 176 (*cy pres* distributions are preferred over limited direct distributions that would "overcompensate claimant class members at the expense of absent class members"). Those individuals' expenditures out of the fund would almost certainly confer no benefit to the class at large. It would confer greater, and more relevant, benefits on absent class members to direct the settlement funds to Internet privacy organizations who are prepared to provide benefits to the class by helping protect their privacy interests. And, although it appears impossible, if any class member does possess the technical resources and data required to demonstrate that they received a cookie by the means alleged in the complaint, such a rare class member had the right to opt out of the settlement to seek a personal monetary recovery in an individual civil action.

Just as providing funds to too few claimants would harm the class at large, so too would a settlement that provided payments to too many claimants. It would be detrimental to absent class

---

[4] A review of the Complaint shows that a Stanford University researcher had to conduct advanced technical experiments in real time in 2011-2012 to detect the existence of a cookie placed by the means alleged in the Complaint. Am. Class Action Complaint ¶¶ 68-126, ECF No. 162. Such real-time experiments are not possible now that the cookie placement has ceased.

members to increase the number of claimants by eliminating the need to confirm that claimants are in fact class members. Doing so in this case, where the events at issue took place nearly a decade ago and where nearly everyone who uses the Internet might believe themselves to be potential class members, would completely dilute the recovery for valid class members. *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3d Cir. 2013) ("It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims."), *reh'g en banc denied*, No. 12-2621, 2014 WL 3887938 (3d Cir. May 2, 2014). Again, *cy pres* recipients who are required to spend the funds on improving Internet security and privacy make the best recipients of settlement funds on the facts of this case.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE WITHOUT ANY DIRECT PAYMENTS TO CLASS MEMBERS

Under the facts of this case, the settlement is fair, reasonable, and adequate without any direct monetary payments to class members because class members have suffered no pecuniary or emotional damages that require monetary compensation. Nor do they even allege any such damages. As the District Court previously recognized, "this has always been a case in which the facts preclude direct individual compensation" to class members. *Cookie III*, 934 F.3d at 324 n.7; *see also Cookie I*, 988 F. Supp. 2d at 448 (Plaintiffs failed to identify any cognizable damages or loss); *Cookie II*, 806 F.3d at 134, 152 (Plaintiffs did not allege any pecuniary harm).

The Third Circuit has a history of recognizing that a settlement need not provide direct monetary benefits to the class to be fair, reasonable, and adequate. *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1311 (3d Cir. 1993) (rejecting objections to settlement that provided no monetary relief to the class); *McDonough v. Horizon Blue Cross Blue Shield of N.J.,* 641 F. App'x 146, 151 (3d Cir. 2015) (same; "a [class] settlement can be fair without involving pecuniary relief"); *Kirsch v. Delta Dental of N.J.,* 534 F. App'x 113, 116-17 (3d Cir. 2013) (approving class settlement that "resulted

8

in no monetary award"); *accord Zimmerman v. Bell,* 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary settlement relief adequate); *Maher v. Zapata Corp.,* 714 F.2d 436, 466 (5th Cir. 1983) (nonmonetary relief adequate settlement relief); *Lane v. Facebook, Inc.,* 696 F.3d 811, 819, 826 (9th Cir. 2012) (approving purely *cy pres* class settlement in a consumer privacy class action), *reh'g en banc denied,* 709 F.3d 791 (9th Cir. 2013).

This is especially true where "the likelihood of the plaintiffs actually recovering any portion of [their alleged damages] was dubious." *McDonough*, 641 F. App'x at 151 (nonmonetary settlement was fair where plaintiffs' $10 billion damages calculation was calculated using a model that the court had rejected in a similar case). In *Bolger*, the Third Circuit approved a class settlement despite objections that the settlement provided no monetary benefit to the class. 2 F.3d at 1311. In rejecting these objections, *Bolger* recognized that a fair settlement does not require a monetary benefit in a case where the plaintiffs' claim to damages is weak. *Id.* at 1313 (emphasizing that "[e]ven if plaintiffs hoped to secure a large damage award, this would have to be drastically discounted by the improbability of their success on the merits"). Thus, the Third Circuit reasoned that "even if we attach a small figure to the value of the [the nonmonetary relief provided by the settlement], this small value may be fair consideration for and accurately reflect the expected payout at trial net of the costs of trial." [5] *Id.*

It has been years since the Third Circuit affirmed the dismissal of nearly all of Plaintiffs' claims, including all claims that carried even the theoretical potential for statutory damages. *Cookie II*, 806 F.3d at 125. The Third Circuit further recognized that Plaintiffs did not allege any

---

[5] Likewise, the Third Circuit sitting en banc has held that when "comparing the value of settlement versus trial, [the Court] must be careful to judge the fairness factors 'against the realistic, rather than theoretical, potential for recovery after trial.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc) (quoting In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 461 (S.D.N.Y. 2004)).

9

pecuniary harm. *Id.* at 152 ("[T]he complaint fails to show damage or actual loss."). Because there were no actual damages, Plaintiffs would not have been able to recover any nominal or punitive damages either: "In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages. Even nominal damages, which can be used to support … punitive damages, require actual injury." *Kizer v. Cty. of San Mateo*, 53 Cal. 3d 139, 147 (1991).

The present settlement may thus be readily approved as fair, reasonable, and adequate without any direct monetary payments to class members because they would have received no such damages award even had they been able to otherwise demonstrate liability at trial.

## V. CONCLUSION

Based on the foregoing, Google respectfully requests that the Court grant preliminary approval to the parties' heavily-negotiated and long-delayed class settlement.

Respectfully submitted,

Dated: January 21, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Anthony J Weibell*
      Anthony J Weibell

*Attorneys for Defendant*
GOOGLE LLC (formerly Google Inc.)