## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (ER) |
| This Document Relates to: **All Actions** | |

## JOINT SUPPLEMENT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to the Court's order dated March 24, 2021 (ECF No. 201), Plaintiffs and Defendant Google LLC make this joint supplemental submission to answer the following questions:

(1) Whether and how the proposed Rule 23(b)(3) class can meet the Third Circuit's ascertainability requirement;

(2) Whether and how the settlement as proposed meets the Rule 23(e), *Girsh*, and *Prudential* fairness factors; and

(3) Whether an acceptable alternative is a Rule 23(b)(2) injunctive class settlement without broad releases.

### I.    The Third Circuit's Ascertainability Requirement Is Satisfied Here.

While the parties may disagree as to whether a *litigation* class could satisfy the requirements for ascertainability, the parties do agree, based on clear Third Circuit law, that the requirements for a *settlement* class are different. Ascertainability in the litigation context requires (1) a class defined by objective criteria and (2) a feasible way to prove who is in and who is not in the class (administrative feasibility). But this second element falls away in the settlement-only

1

context because the settlement resolves any need for litigation over who is in and who is not in the class. Thus, the Third Circuit's ascertainability requirement for Rule 23(b)(3) classes is no obstacle to certification of the Settlement Class here because the class is defined by objective criteria and because the Settlement removes any need for a feasible method of identifying class members.

### A.  The Administrative Feasibility Requirement of the Ascertainability Test Does Not Apply to Settlement Classes.

In adding an ascertainability requirement to Rule 23(b)(3) *litigation* class certification, the Third Circuit stated that its three objectives were to (i) eliminate "serious administrative burdens" if "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials'"; (ii) "protect[] absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2) in a Rule 23(b)(3) action"; and (iii) "protect[] defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). To achieve these objectives when certifying a *litigation* class, the Third Circuit's ascertainability test has two distinct requirements: "a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

But when certifying a class for *settlement* rather than litigation, the second requirement of administrative feasibility does not apply because that requirement is meant to ensure that a class action can be litigated in a feasible and manageable way, and a settlement means there will be no litigation. *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litigation*, 656 F. App'x at 8 (3d Cir. 2016) (reversing district court's rejection of class settlement because "the District Court erred in denying certification to the proposed Settlement Class on the ground that the class was not ascertainable"). Indeed, in the only case in which the Third Circuit has considered the

applicability of the ascertainability requirement to settlement classes, the Third Circuit held that the class definition need not be "administratively feasible" since "the settlement agreement removes the need for a trial." *Comcast*, 656 F. App'x 8 (citing *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (en banc) (Scirica, J. concurring) ("[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context.")).

The holding in *Comcast* follows the Third Circuit's *en banc* holding in *Sullivan* that "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation [for a settlement class]." 667 F.3d at 302; *see also id.* at 315 ("In the settlement context, however, this concern evaporates, for the proposal is that there will be no trial."). As the Third Circuit has stated elsewhere, "[s]ettlement classes raise different certification issues than litigation classes." *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.4 (3d Cir. 2013) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *accord Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180 (3d Cir. 2014) (citing *Sullivan* for the proposition that settlement classes "do not pose the types of management problems that can arise in a nationwide class action trial").[1]

*Sullivan* defines the rationale for removing the manageability/feasibility requirement for settlement-class certification. It recognized that allowing parties to settle class-action claims before certification of a litigation class, especially where certification of a litigation class may not be

---

[1]    Other Third Circuit opinions have recognized that manageability (which *Sullivan* held did not apply to settlement classes) and administrative feasibility (which *Comcast* held did not apply to settlement classes) address the same practical concerns. *See Carrera*, 727 F.3d at 307-08 ("Administrative feasibility means that identifying class members is a *manageable* process that does not require much, if any, individual factual inquiry.") (emphasis added) (citing William B. Rubenstein & Alba Conte, Newberg on Class Actions § 3:3 (5th ed. 2011)); *see also City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 447 (3d Cir. 2017) (Fuentes, J., concurring) ("[I]mposing a separate manageability requirement within ascertainability renders the manageability criterion of the superiority requirement superfluous."); *Byrd*, 784 F.3d at 174 (Rendell, J., concurring) (observing that heightened ascertainability "does nothing to ensure that the manageability of a class or the 'efficiencies' of the class action mechanism").

possible, makes for good public policy. That is because settlement obviates costly litigation over uncertain questions—questions like ascertainability:

> [A]chieving global peace is a valid, and valuable, incentive to class action settlements. Settlements avoid future litigation with all potential plaintiffs— meritorious or not. If the dissent's position were adopted, there would be no settlements, collusive or otherwise. First of all, litigating whether a claim is "colorable" and defending who is in and who is not in the class would be an endless process, preventing the parties from seriously getting to, and engaging in, settlement negotiations.

667 F.3d at 311. Requiring settlement classes to meet the same manageability/feasibility requirements as litigation classes would plainly be at odds with this rationale. Rejection of class settlements on the grounds that it is difficult to prove "who is and who is not in the class" contradicts the Third Circuit's established policy of favoring "global peace" through settlement.

For these reasons, as in *Comcast*, when a settlement class is defined by objective criteria, there is no additional requirement that identification of settlement class members be administratively feasible.

### B.  The Settlement Class Here Satisfies the Ascertainability Test

Here, the Settlement Class is defined by objective criteria: "persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint." Agmt. § 2.3. These are objective and not subjective facts. If any person did not have a Doubleclick ID Cookie on their browser until they received one through the means alleged in the Complaint (the placement of the Intermediary Cookie using the Form Submission Method and the absence of a machine-readable P3P policy), they are in the class. Therefore, the first and only requirement for ascertainability of a settlement class is satisfied.

As explained above, the second requirement for ascertainability—administrative feasibility—that would be required if this were a litigation class does not apply in this settlement

context. Unlike certification for litigation, there is no need to worry about whether class members have a feasible method of proving their membership in the Settlement Class at trial because the Settlement means there will be no trial. If any class member even *suspects* they may be in the class, they have the right and the opportunity to opt out of the Settlement without having to prove anything. There is therefore no administrative infeasibility concern that would bar approval of the Settlement.

Notably, approval of the Settlement in a case where it would otherwise be difficult to prove "who is and who is not in the class" is exactly the policy established by the Third Circuit in *Sullivan* to obtain "global peace" through settlement. Google has vigorously argued that it would be impossible for the parties and the Court to feasibly identify who is (and who is not) a member of the litigation class proposed by Plaintiffs' Complaint. *See* You Decl., ¶ 3(a)-(b), ECF No. 196; *see also id.* ¶ 59. Because Plaintiffs dispute this argument, prior to settlement, the parties were preparing for a complex and lengthy legal battle over whether the litigation class proposed by Plaintiffs could be certified for litigation. But the Settlement relieves the parties and the Court of this burden. As the Third Circuit stated in *Comcast*, the class definition need not be "administratively feasible" since "the settlement agreement removes the need for a trial." *Comcast*, 656 F. App'x 8.

Nor would imposition of the administrative-feasibility requirement here be necessary to achieve the Third Circuit's stated objectives for imposing a heightened ascertainability requirement on litigation classes. *First*, the Settlement obviates the need for mini-trials that would otherwise be required to prove whether any class member received a cookie by the means alleged in the Complaint. *Second*, because Google lacks any records sufficient to identify class members, "the best notice practicable" has been provided to absent class members through publication

notice. *See* Decl. Amanda Sternberg re. Settlement Administration, ¶¶ 5, 9, 10 ECF No. 194-4; *see also* Mem. Law ISO Second Mot. Prelim. Approval with Google, LLC, at 13-18, ECF No. 194. And *third*, Google's due process rights are not violated because Google has consented to certification of the Settlement Class. *Carrera*, 727 F.3d at 307 ("A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership."); *Comcast*, 656 F. App'x at 8-9 ("The concern that a defendant be able to test the reliability of the evidence submitted to prove class membership is not implicated by this case, where the defendant has agreed that the evidence regarding class membership is sufficiently reliable.").

For these reasons, the Settlement Class satisfies the applicable ascertainability requirements.

## II.  Whether and how the settlement as proposed meets the Rule 23(e), *Girsh*, and *Prudential* fairness factors, or how the settlement can be modified to do so.

The proposed settlement satisfies the Rule 23(e), <u>Girsh</u>, and <u>Prudential</u> fairness factors as drafted and no modification is necessary in order to satisfy any factor.

### A.  The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)

Rule 23(e)(2), as amended and effective December 1, 2018, requires the Court to consider the following factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[2]  Each factor is discussed in order below.

### 1. Rule 23(e)(2)(A): Adequacy of representation

This factor focuses "on the actual performance of counsel acting on behalf of the class." *Hall*, 2019 WL 3996621, at *4; *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims") ("*NFL Players*").

Here, this factor is satisfied. To date, Plaintiffs' counsel has dedicated thousands of attorney hours to this litigation. *See* ECF No. 168-2, Strange Decl., ¶ 12. Moreover, prior to reaching settlement, Plaintiffs' counsel conducted an extensive investigation of the facts underlying the case, engaged in years of briefing and appeals on issues important to this case—many of which remain areas of substantial disagreement across the reported decisions—and prepared extensively for the mediation that led to the settlement in this case. *See id.* ¶¶ 2–7.

The case was first filed over eight years ago in 2012 and Class Counsel has been litigating this case since that time without any payment.  When this case was first filed, the state of the law on whether a consumer was "injured" by a company taking their data was unclear. Google's initial response to this case in their motion to dismiss—which was a common argument at the time in litigation throughout the country—was that Plaintiffs suffered no "injury" and had no claim due to allegedly misappropriated customer data. The district court agreed with Google, and it granted Google's motion to dismiss in its entirety. Class Counsel appealed that decision, and through substantial briefing and argument (all of which was performed on a contingency basis), the Third

---

[2] The Rule 23(e) factors are like the *Girsh* factors previously applied to decide whether a class action settlement is fair and reasonable in the Third Circuit. *See Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *2 n.1 (E.D. Pa. Aug. 23, 2019) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements and the discussion in *Girsh* substantially overlaps with the factors identified in Rule 23.").

Circuit issued a published decision finding that there was injury as a matter of law and remanded the case to the district court. Class Counsel began fighting the case anew and, with the assistance of a respected former federal judge, a settlement was reached between the parties. After briefing and hearings, the district court approved the settlement and an appeal was then taken by a sole professional objector. In sum, Class Counsel and the class representatives have adequately represented the class for many years in a complicated and ever-changing technological environment. This factor is thus satisfied.[3]

### 2. Rule 23(e)(2)(B): Arm's length negotiation

The second factor requires that the settlement proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The parties here only agreed to settle the case after extensive and detailed pre-mediation submissions, a day-long mediation, and several subsequent conferences before retired federal Judge Layn Phillips. *See* ECF No. 163-1, Strange Decl., ¶ 7 ("Strange Decl."). "[T]he participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Hall*, 2019 WL 3996621, at *4 (citation and punctuation omitted). As such, this factor weighs in favor of approving the settlement agreement.

### 3. Rule 23(e)(2)(C)(i): Adequacy of relief provided after accounting for the costs, risks, and delay of trial and appeal

This factor recognizes that while the "relief that the settlement is expected to provide to the class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment.

---

[3] This case also included another defendant (Pointroll, Inc.), which settled with the class in 2014. ECF No. 144.

Here, this factor is likely satisfied. First, absent settlement, the cost and delays associated with this litigation would be significant. The Court would be required to resolve extensive and contested motions, including discovery-related motions, a class-certification motion, and likely summary-judgment motion(s). Moreover, if a class-certification motion were granted, Class Counsel and defense counsel would likely retain experts for purposes of presenting the case to the jury. In sum, continued adversarial litigation would be a long, complicated, and expensive process for the parties and the Court.

Moreover, numerous litigation risks are present absent settlement. For instance, there is a risk that the Court would not grant Plaintiffs' class-certification motion, especially because—at the time the settlement was reached—only two claims under California law remained following the dismissal of Plaintiffs' statutory-damage claims. This uncertainty is highlighted by Google's adamant position throughout the litigation that (i) the deployment of cookies did not involve the collection, retention, or resale of any specific personal information, (ii) Google never possessed the requisite intent to invade Plaintiffs' privacy, (iii) the alleged cookie placement was inadvertent and unknown to Google at the time, and (iv) the class suffered no legally cognizable injuries as a result of the alleged conduct. ECF No. 163-2, Grygiel Decl. ¶ 13 ("Grygiel Decl."). While Class Counsel disagrees with Google's analysis, there is clearly no guarantee that Plaintiffs will prevail.

Even if Plaintiffs succeed at class certification, the merits of the case will also be hard fought. The method that Google used to collect information is complicated, and it is anticipated that Google will vigorously dispute requested discovery. Because of the complicated nature of this case involving the use of "cookies" and collection of data on the Internet by a sophisticated and well-funded tech giant, and given that the events at issue happened a decade ago, the nature of the litigation without settlement would very likely be protracted and drawn out, with the possibility of

yet a third appeal by whichever party is unsuccessful on the merits before the district court. This factor weighs in favor of approving the settlement agreement.

### 4.  <u>Rule 23(e)(2)(C)(ii): Adequacy of relief provided after accounting for effectiveness of any proposed distribution method</u>

Under this factor the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment. This factor is not applicable here because the proposed settlement does not seek to establish a claims-processing mechanism.

### 5.  <u>Rule 23(e)(2)(C)(iii): The terms of any proposed award of attorney's fees, including the timing of payment</u>

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including the timing of payment." The district court previously analyzed Class Counsel's request for attorney's fees and expenses and granted Class Counsel a fee equal to 35% of the settlement fund. ECF No. 173 at 11–12. That fee award represented a negative multiplier measured against Class Counsel's hours devoted to the case. Counsel will be paid once the settlement is finally approved by the Court. In addition, no class member—including objector Mr. Frank—objected to the Court's fee order, and it was not at issue during the appeal before the Third Circuit. This factor therefore weighs in favor of approving the settlement.

### 6.  <u>Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Rule 23(e)(3)</u>

Rule 23(e)(3) requires the settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, the previously provided Settlement Agreement is the only agreement connected to this settlement.

## 7.  **Rule 23(e)(2)(D): Equitable treatment of class members**

Finally, Rule 23(e)(2)(D) requires the Court to determine that class members are treated equitably and to prevent the "inequitable treatment of some class members vis-à-vis others." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment. All class members are treated equally by the proposed settlement in that each will benefit equally from the work that the *cy pres* recipients will perform to educate, monitor, and analyze Internet privacy issues similar to the issues that were litigated in this action. In addition, each class member will equally benefit from Google's pledge not to re-engage in the type of cookie placement that was at issue in this litigation. Thus, this factor supports approval of the proposed settlement. In addition, the low number of objections and opt-outs from the proposed settlement strongly suggests it is fair and reasonable. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001) (finding that a low number of objectors and opt-outs strongly favors approval of the settlement). Moreover, the alternative to this proposed *cy pres* settlement—a distribution of a minute amount (likely pennies) to millions of class members—is less "equitable" than a *cy pres* settlement that would result in several Internet-protection entities monitoring the conduct of Google and other tech giants in order to prevent similar conduct from occurring again in the future.

### B.  The Settlement Satisfies the **Girsh** Factors

Like the factors enumerated in Rule 23(e), the Third Circuit's *Girsh* factors also assist the Court in determining a settlement's fairness.  The *Girsh* factors are:

(1)     the complexity, expense and likely duration of the litigation;
(2)     the reaction of the class to the settlement;
(3)     the stage of the proceedings and the amount of discovery completed;
(4)     the risks of establishing liability;
(5)     the risks of establishing damages;
(6)     the risks of maintaining the class action through the trial;
(7)     the ability of the defendants to withstand a greater judgment;
(8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156–57 (3d Cir. 1975). These factors are not dispositive—courts must look at the totality of circumstances (*see In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997)) in light of the "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F. 3d 590, 595 (3d Cir. 2010); *see also Sullivan*, 667 at 311 (presumption favoring settlements is especially strong in class actions). Each factor is discussed in order below.

### 1.  The complexity, expense, and likely duration of litigation

The first *Girsh* factor, considering the complexity, expense, and likely duration of ongoing litigation, favors approval. This factor is "intended to capture the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quotation omitted).

Continued litigation of the remaining state law privacy claims would entail significant time and expense. Proceeding with litigation would necessarily require discovery—likely both written and deposition discovery—which is also likely to require judicial intervention should disputes arise. It would also require additional briefing and hearings on motions for class certification and summary judgment, as well as a likely trial. *See, e.g.*, *Benjamin v. Dep't of Pub. Welfare of Pa.*, No. 1:09-CV-1182, 2014 WL 4793736, at *5 (M.D. Pa. Sept. 25, 2014) ("As settlement has eliminated potential delay, mitigated expenses, and will provide immediate benefit to the class, this factor weighs in favor of approval.").

Moreover, continued litigation would risk forgoing the relief achieved by the proposed settlement. *See, e.g.*, *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009). Accordingly, the first *Girsh* factor favors approving the settlement.

## 2.    The reaction of the class to the settlement

The second *Girsh* factor considers class members' reaction to a proposed settlement. "In relation to the second *Girsh* factor, when the objectors are few and the class members many, there is a strong presumption in favor of approving the settlement." *Sourovelis v. City of Phila.*, No. 14-4687, 2021 WL 298703, at *10 (E.D. Pa. Jan. 27, 2021) (Robreno, J.) (citation omitted).

Here, though the parties widely distributed the Class Notice to potential class members, only one filed a timely objection. *See* ECF No. 167-5, Cirami Decl., ¶¶ 6, 11 ("Cirami Decl.") (online notice received 275,361,445 impressions and settlement website received 44,415 visits). The district court overruled the objection, and the Third Circuit agreed the objection was unfounded. *See* ECF No. 173. No objection has been lodged to the current proposed settlement as of the date of this filing. Moreover, only 50 individuals timely opted out of the class. *See* Cirami Decl. ¶ 12. None of them has filed or sought to file a separate case. Because no objection has yet been lodged to the current settlement and the prior exclusions do not pose serious concerns, the second *Girsh* factor supports settlement approval.

## 3.    The stage of the proceedings and the amount of discovery completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at 235. As described in Section II.A.1 above, Class Counsel have made a thorough investigation into the facts and circumstances relevant to the claims at issue in the litigation. *See* Strange Decl. ¶ 13; Grygiel Decl. ¶ 12.

Moreover, extensive motion practice in a case can adequately inform counsel of a case's merits. *See, e.g.*, *Gates v. Rohm & Haas Co.*, No. 06-1743, 2008 WL 4078456, at *5 (E.D. Pa. Aug. 22, 2008) (finding the third *Girsh* factor favored settlement approval—even though

13

"[p]rocedurally, the case [wa]s still at an early stage"—given "significant motion practice");

*McAlarnen v. Swift Transp. Co.*, No. 09-1737, 2010 WL 254712, at *7–8 (E.D. Pa. Jan. 29, 2010)

(approving settlement in case where "little discovery ha[d] occurred" but "[s]ubstantial briefing

and research on the issues ha[d] taken place"). Here, the parties have engaged in substantial and

legally intricate motion practice over the course of nearly 8 years of litigation, including on

motions to dismiss and through two appeals to the Third Circuit. Thus, the third *Girsh* factor favors

approval. *See Sourovelis*, 2021 WL 298703, at *10 ("Here, counsel have engaged in significant

motion practice and the attendant investigation and research over the last six years. There is no

question that they are well versed in the merits of the case. Therefore, this factor weighs in favor

of the [settlement's approval].").

### 4.  The risks of establishing liability and damages

The *Girsh* factors concerning the risks of establishing liability and damages require the

Court to "balance the likelihood of success and the potential damage award if the case were taken

to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.*, 296 F.

Supp. 2d 568, 579 (E.D. Pa. 2003). As discussed in Section II.A.3 above, although Class Counsel

are prepared to present evidence that Google's cookie circumvention technique violated California

common law, that the case should be certified as a class, and that the Settlement Class is entitled

to damages under these laws as a result, Google is also prepared to mount a vigorous defense.

Given these risks, Plaintiffs and Class Counsel believe that the settlement with Google provides

meaningful benefits to the Class. *See* Strange Decl. ¶ 15; Grygiel Decl. ¶ 15; ECF No. 163-3,

Frickleton Decl. ¶ 7 ("Frickleton Decl."); *see also Harris v. Reeves*, 761 F. Supp. 382, 401 (E.D.

Pa. 1991) (approving a settlement where "there [wa]s no assurance that the relief [after trial] would

[have] be[en] greater or different than the relief provided" in the proposed settlement).

Only two claims remain in this case—a claim for intrusion upon seclusion under California common law and a claim for violation of the California Constitution's right to privacy. To assert a claim for a violation of intrusion upon seclusion under California common law, Plaintiffs must prove (1) that Google "intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion must occur in a manner highly offensive to a reasonable person." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 149 (3d Cir. 2015) (citations omitted). "The right to privacy in the California Constitution sets standards similar to the common law tort of intrusion." *Id.* Under either cause of action, Plaintiffs must prove that they had a "reasonable expectation of privacy" and that Google's invasion of such privacy interest occurred "in a manner highly offensive to a reasonable person." *Id.* While Plaintiffs believe that they can establish such elements on a class-wide basis, Google will dispute that such elements can be proved in a class-action context, which presents a significant risk to establishing both liability and damages if Google's arguments are successful.

### 5.  <u>The risks of maintaining the class action through trial</u>

Because "the prospects for obtaining [class] certification have a great impact on the range of recovery one can expect to reap from the action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986). While Plaintiffs believe they could certify a class for litigation, the risk of maintaining a class through trial is a consideration that Plaintiffs and Class Counsel believe supports this settlement. *See* Strange Decl. ¶ 16.

### 6.  **Ability of Defendant to withstand a greater judgment**

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240. This *Girsh* factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *NFL Players*, 821 F.3d at 440. The "inability to pay" factor should not be focused on one settlement alone, but should also consider the aggregate ripple effect of this settlement on the defendant's other similar settlements. Paying a higher settlement in one case typically raises the price a defendant must pay to settle related or similar cases. Here, Google negotiated a settlement price based on its other comparable similar settlements and based on what it could afford to pay in aggregate to settle its current and future similar cases, as Google is a regular target of similar class actions. In that regard, this factor weighs in favor of approval, or is at the least neutral in this case.

### 7.  **The range of reasonableness of the settlement in light of the best possible recovery and in light of litigation risks**

The final two *Girsh* factors examine "whether the settlement represents a good value for a weak case or a poor value for a strong case" by examining the reasonableness of the settlement fund in "light of the best possible recovery . . . and the risks the parties would face if the case went to trial." *NFL Players*, 821 F.3d at 440 (quotation omitted).

As discussed in Section II.A.3 above, absent amendment of the Complaint, only two of Plaintiffs' California state law claims remain and the quantum of damages potentially recoverable by Plaintiffs on those claims is not certain. Under the proposed settlement, Google has agreed to pay $5,500,000 to *cy pres* recipients, after payment of fees and expenses of the settlement. In Google's view, this is a significant sum, given Google's position—with which Plaintiffs vehemently disagree and would be subject to significant litigation were the settlement not to be

16

approved—that there are no actual damages here and, absent that, Plaintiffs cannot recover either nominal or punitive damages under California law. *Kizer v. Cty. of San Mateo*, 53 Cal. 3d 139, 147 (1991). In addition, Google will provide Class Counsel with assurances that it implemented systems configured to instruct Safari browsers to expire any cookie placed from the doubleclick.net domain by Google if those systems encountered such a cookie. These remedies, coupled with the injunctive and monetary penalties already obtained by the government against Google on behalf of consumers, renders the current settlement reasonable for class members. *See* Strange Decl. ¶¶ 6,10; Frickleton Decl. ¶ 6.

Indeed, as Google has repeatedly emphasized, Google has already paid $22.5 million to settle related claims brought by the Federal Trade Commission and an additional $17 million for related claims asserted by various state attorneys general. The FTC acknowledged that the penalty it imposed on Google was "many times the upper-bound of what the FTC independently estimated the company earned from the alleged violation." *United States v. Google Inc.*, No. 3:12-cv-04177-SI, ECF No. 15 at 9–10 & n.12 (N.D. Cal. Sept. 28, 2012). And the district court approving the FTC settlement recognized that the alleged events did not result in "large amounts of consumer loss or Google profit." *United States v. Google Inc.*, No. 3:12-cv-04177-SI, 2012 WL 5833994, at *5 (N.D. Cal. Nov. 16, 2012). The FTC and the district court also determined that the remedial actions agreed by Google "sufficiently protect[] consumers from ongoing harm without exposing them to additional risks." *Id.* at *4–5; Frickleton Decl. ¶ 7; Grygiel Decl. ¶ 10.

Accordingly, the proposed settlement represents "a good value" for Plaintiffs and the final two *Girsh* factors favor approval. The benefits of having third-party organizations use the funds from this settlement to protect consumers should not be underestimated. After all, Google's alleged use of the cookies that form the basis of this case was discovered by an individual researcher at

17

such an organization. Having independent organizations use funds to monitor Google and others would, in the opinion of Class Counsel, be much more beneficial overall to the class than a few cents sent to millions of class members.

### C.  The Applicable <u>Prudential</u> Factors Also Favor Settlement

In addition to the Rule 23(e) and *Girsh* factors, the Third Circuit has also identified a series of non-exclusive factors to consider for a "thoroughgoing analysis of settlement terms." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 268 (E.D. Pa. 2012). The factors are:

(1) The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2) The existence and probable outcome of claims by other classes and subclasses;

(3) The comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved— for other claimants;

(4) Whether class or subclass members are accorded the right to opt out of the settlement;

(5) Whether any provisions for attorneys' fees are reasonable; and

(6) Whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

Each factor is addressed in turn below.

The first *Prudential* factor is an amalgam of the *Girsh* and Rule 23(e) factors.  As discussed above, the probable outcome of a trial on liability and damages, as well as Class Counsel's investigation and extensive work on the case for more than 8 years, all support approval.  *See supra*, Sections II.A.1, II.A.3, II.B.1, II.B.4, II.B.5, II.B.7.

The second and third *Prudential* factors "look at the outcomes of claims by other classes and other claimants."  *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2020 WL 1922902, at *23 (E.D. Pa. Apr. 21, 2020). In this case, all civil class actions filed against Google

for the alleged conduct were consolidated in this MDL proceeding, so there are no other classes or claimants to compare the settlement against. Thus, these factors are inapplicable here.

The fourth *Prudential* factor supports approval because potential class members had the right to exclude themselves from the settlement and not be bound by its terms. *See* Cirami Decl. ¶ 12.

The fifth *Prudential* factor—concerning the reasonableness of attorneys' fees—also favors approval. As discussed in Section II.A.5 above, the district court has already determined and ordered a reasonable award of attorneys' fees to Class Counsel and the district court's ruling was not challenged by the objector on appeal. *See* ECF No. 173; *see also Sourovelis*, 2021 WL 298703, at *11 ("The fifth [*Prudential*] factor also favors approval.  As discussed in a separate order granting counsel's unopposed fee petition, the Court has concluded that counsel's fees are reasonable.").

Finally, the sixth *Prudential* factor is inapplicable in this case, as the proposed settlement does not contemplate instituting a claims process.

## III. Whether an acceptable alternative is a Rule 23(b)(2) injunctive settlement without broad releases.

The parties met and conferred to determine whether a Rule 23(b)(2) injunctive-only settlement without a release of monetary claims would be an acceptable alternative here, but no agreement could be reached on this alternative.

However, the release of money damages in this Rule 23(b)(3) settlement is not an impediment to settlement approval because the due process concerns of notice and the right to opt-out have been fulfilled.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) ("[T]o bind an absent plaintiff concerning a claim for money damages or similar relief at law, [the court]

must provide minimal due process protection…. [D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class.")

In this case, involving millions of potential class members, on-line notifications of the settlement, notice by print publication, and a user-friendly settlement website surely satisfy the requirement that the notice be the "best practicable." *Shutts*, 472 U.S. at 812. The settlement's notice program satisfied the mandatory requirement of the "best notice practicable under the circumstances" under Rule 23(c)(2), and, therefore, fulfilled the less stringent discretionary notice requirement of Rule 23(d)(2) "that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action…." *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," "must be of such nature as reasonably to convey the required information…afford a reasonable time for those interested to make their appearance").

Far from "a mere gesture," the notice program here was "reasonably certain to inform those affected." *Id.* at 315. Six weeks of on-line advertisements generating "275,361,445 impressions" (Cirami Dec. ¶ 6), reaching "over 84% of the total U.S. internet population" and including the "top 1,000 websites ranked by page views/traffic" (Cirami Dec. ¶ 7), including "thousands of Spanish language websites (Cirami Dec. ¶ 8), "targeted social media advertising on Facebook" (Cirami Dec. ¶ 6), which has "over 1.55 billion monthly active users and over 1 billion people logging in daily" (Cirami Dec. ¶ 9), *plus* print publication in *People* magazine, which has "broad circulation

of 3.5 million and a readership of over 42 million" (Cirami Dec. ¶ 10), *plus* a settlement website with the Long-Form Notice and other information (*see* Cirami Dec. ¶ 11), fully satisfies due process because this notice was "reasonably certain to inform those effected."  *Mullane*, 339 U.S. at 315.  *See also In re Briscoe*, 448 F. 3d 201, 207 (3d Cir. 2006) (approving notice plan using "broad spectrum of media," including "banner advertisements on the Internet directing class members to the official settlement website" where class included all persons in United States who had ingested a particular drug).

Because all of the Due Process protections required for a Rule 23(b)(3) class have been satisfied here, there is no concern with approving a settlement that releases monetary claims. Indeed, the Third Circuit has a history of approving class settlements that release monetary claims without any direct monetary benefit to class members. *Littlejohn v. Copland*, 819 F. App'x 491, 494-95 (9th Cir. 2020) (rejecting objections to settlement that provided no monetary relief to the class); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (same); *McDonough v. Horizon Blue Cross Blue Shield of N.J.,* 641 F. App'x 146, 151 (3d Cir. 2015) (same; "a [class] settlement can be fair without involving pecuniary relief"); *Kirsch v. Delta Dental of N.J.,* 534 F. App'x 113, 116-17 (3d Cir. 2013) (approving fee award with respect to class settlement that "resulted in no monetary award"); *accord Zimmerman v. Bell,* 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary settlement relief adequate); *Maher v. Zapata Corp.,* 714 F.2d 436, 466 (5th Cir. 1983) (same); *Lane v. Facebook, Inc.,* 696 F.3d 811, 819, 826 (9th Cir. 2012) (approving purely *cy pres* class settlement in a consumer privacy class action), *reh'g en banc denied,* 709 F.3d 791 (9th Cir. 2013).

The present settlement may thus be readily approved as fair, reasonable, and adequate without any direct monetary payments to class members.

DATED: April 23, 2021

/s/ Brian R. Strange

Brian R. Strange
STRANGE LLP
12100 Wilshire Blvd., Ste. 1900
Los Angeles, CA 90025
Tel: (310) 207-5055
brian@strangellp.com

*Lead Counsel for Plaintiffs*

/s/ Anthony Weibell

Anthony Weibell
WILSON    SONSINI    GOODRICH    &
ROSATI
One Market Street
Spear Tower, Ste. 3300
San Francisco, CA 94105
Tel: (415) 947-2000
aweibell@wsgr.com

*Counsel for Defendant Google, Inc.*