## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | |
| | Case No. 12-MD-2358 (SLR) |
| This Document Relates to: All Actions | |

### Objection of Theodore H. Frank
### to Settlement Approval, Class Certification, and Request for Attorneys' Fees

HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Adam E. Schulman (DC Bar # 1001606)
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: 610-457-0856
adam.schulman@hlli.org

*Attorney for Objector Theodore H. Frank*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.      Frank is a class member and intends to appear through counsel at the fairness hearing. .... 3

II.     The Court has a fiduciary duty to the absent members of the class. .................................. 4

III.    The proposed class cannot be certified under Rule 23(b)(3). ........................................... 5

        A.      The class cannot meet the Third Circuit's ascertainability prerequisite. ................ 5

        B.      The *cy pres*-only settlement, clear-sailing attorneys' fee, and deficient notice combine to indicate inadequate representation. ...................................................... 7

        C.      If distributions to individual class members are impracticable, then a class action is not superior to other available methods of adjudicating the controversy. ........ 10

IV.    The motion for approval must be denied because the parties have not offered a written agreement for the class or Court to review. ....................................................................... 11

V.     *Cy pres*-only settlement unfairly deny compensation to class members. .......................... 13

VI.    Without class members' affirmative election, *cy pres* constitutes compelled speech in violation of the First Amendment. ..................................................................................... 18

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................................................6

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ............................................................................ *passim*

*In re BankAmerica Corp. Secs. Litig.,*
    775 F.3d 1060 (8th Cir. 2015) ........................................................................12, 13, 18

*Briseño v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ...................................................................................5, 17

*Byrd v. Aaron's Inc.,*
    784 F.3d 154 (3d Cir. 2015) .......................................................................................5, 6

*Brown v. Wells Fargo & Co.,*
    2013 WL 6851068 (D. Minn. Dec. 30, 2013) .................................................................11

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ........................................................................................................18

*Cahill v. PSC,*
    556 N.E. 2d 133 (N.Y. 1990) ......................................................................................18

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ........................................................................................6

*In re Carrier iQ, Inc. Consumer Privacy Litig.,*
    No. 12-md-02330-EMC,
    2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)............................................17

*In re Cendant Corp.,*
    260 F.3d 183 (3d Cir. 2001) ........................................................................................12

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.,*
    656 F. App'x 8 (3d Cir. 2016) ......................................................................................7

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
    662 F.3d 913 (7th Cir. 2011).........................................................................................7

*Daniels v. Aeropostale West,*
    No. C 12-05755 WHA,
    2014 WL 2215708 (N.D. Cal. May 29, 2014) ................................................................8

*Dennis v. Kellogg*,
    697 F.3d 858 (9th Cir. 2012).............................................................................9

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) .........................................................................11

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013)....................................................................4-5, 7

*Fraley v. Facebook.*,
    No. C 11-1726 RS, 2012 WL 5835366,
    2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)..................................14, 16, 17

*Fraley v. Facebook.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) .......................................................16-17

*Frank v. Gaos,*
    139 S. Ct. 1041 (2019) ..................................................................... *passim*

*Frederick v. Range Res. - Appalachia, LLC*,
    2022 WL 973588, 2022 U.S. Dist. LEXIS 60710 (W.D. Pa. Mar. 31, 2022) .................12

*Gallego v. Northland Group*,
    814 F.3d 123 (2d Cir. 2016)............................................................................8

*Georgine v. Amchem Prods., Inc.*,
    83 F.3d 610 (3d Cir. 1996) .......................................................................10-11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)......................................................................4-5, 8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) ............................................................... *passim*

*In re Google Inc. Street View Elec. Comm'n Litig.*,
    21 F.4th 1102 (9th Cir. 2021) .....................................................................19

*Graff v. United Collection Bureau*,
    132 F. Supp. 3d 470 (E.D.N.Y. 2016) ...........................................................14

*Greenfield v. Villager Indus., Inc.*
    483 F.2d 824 (3d Cir. 1973) ...........................................................................9

*Gunter v. Ridgewood Energy Corp.*
    223 F.3d 190 (3d Cir. 2000) .........................................................................12

*Harris v. Quinn.*,
    573 U.S. 616 (2014).................................................................................18-19

*Ira Holtzman, C.P.A. & Assocs. v. Turza*,
    728 F.3d 672 (7th Cir. 2013) ..................................................................................15

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    138 S. Ct. 2448 (2008) .....................................................................................18, 19

*Jones v. Monsanto*,
    __F.4th__, 2022 WL 2334708, 2022 U.S. App. LEXIS 17937 (8th Cir. Jun. 29,
    2022) ........................................................................................................................19

*Klier v. Elf Atochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011)......................................................................13, 16, 18

*Knox v. SEIU, Local 1000.*,
    567 U.S. 298 (2012)................................................................................................18

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261,
    2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008)...........................................14

*In re Livingsocial Mktg. and Sales Practices Litig.*,
    298 F.R.D. 1 (D.D.C. 2013) ............................................................................ 9, 19-20

*Ma v. Harmless Harvest, Inc.*,
    2018 WL 1702740 E.D.N.Y. Mar. 31, 2018) ...................................................10

*Marcus v. BMW of N. Am., LLC.*,
    687 F.3d 583 (3d Cir. 2012) .....................................................................................6

*McDonough v. Toys "R" Us*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) ........................................................................3

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)............................................................................ 11-12

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006)....................................................................................7

*NAACP v. Alabama ex rel. Patterson.*,
    357 U.S. 449 (1958)................................................................................................18

*Neale v. Volvo*,
    794 F.3d 353 (3d Cir. 2015) .....................................................................................6

*In re Nissan Motor Corp. Antitrust Litig.*
    552 F.2d 1088 (5th Cir. 1977) ......................................................................... 9-10

iv

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014)................................................................13, 16

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985)....................................................................14

*Picher v. Unite*,
    542 F.3d 380 (3d Cir. 2008)..........................................................................18

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014)..........................................................................5

*Rodriguez v. Nat'l City Bank*
    726 F.3d 372 (3d Cir. 2013) ...........................................................................6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ......................................................................................14

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ..........................................................................15

*Sourovelis v. City of Philadelphia*,
    515 F. Supp. 3d 321 (E.D. Pa. 2021) ........................................................ 15-16

*Sullivan v. DB Investments*
    667 F.3d 273 (3d Cir. 2011) ...........................................................................7

*Supler v. FKAACS, Inc.*,
    2012 WL 5430328 (E.D.N.C. Nov. 6, 2012) ...............................................10

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .............................................................................. 14-15

*United States v. United Foods*,
    533 U.S. 405 (2001) ......................................................................................18

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*
    WL 118104, 2022 (E.D. Pa. Jan. 12, 2022) ................................................5, 6

*In re Walgreen Co. Stockholder Litig.*,
    832 F.3d 718 (7th Cir. 2016)...........................................................................8

*Zepeda v. Paypal*,
    No. C 10-2500 SBA,
    2014 U.S. Dist. LEXIS 24388 (N.D. Cal. Feb. 24, 2014)...........................14

*Zimmerman v. Zwicker & Assocs., P.C.*,
    2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) ............14

<u>Rules and Statutes</u>

18 U.S.C. § 2520(c)(2)(B) ....................................................................................................11

Fed. R. Civ. P. 23(a)(4).........................................................................................................7

Fed. R. Civ. P. 23(b)(2)................................................................................................... 1-2, 15

Fed. R. Civ. P. 23(b)(3)...............................................................................................1, 2, 5, 8, 15

Fed. R. Civ. P. 23(e) .........................................................................................................2, 5

Fed. R. Civ. P. 23(e)(2)(C)(ii)..............................................................................................16

Fed. R. Civ. P. 23(g)(4).......................................................................................................7

<u>Other Authorities</u>

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010) ................................................5

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.07(a) (2010)..............................................16

Frank, Theodore H.,
    Statement before the House Judiciary Committee Subcommittee on the
    Constitution and Civil Justice,
    *Examination of Litigation Abuse* (Mar. 13, 2013) ...................................................... 13-14

Redish, Martin, *et al*,
    *Cy pres Relief and the Pathologies of the Modern Class Action: A Normative and*
    *Empirical Analysis*
    62 FLA. L. REV. 617 (2010) ................................................................................................13, 14

Smith, D. Brooks
    Class Action and Aggregate Litigation: A Comparative International Analysis
    124 PENN ST. L. REV. 303, 337 (2020) ............................................................................1

Tidmarsh, Jay
    *Cy pres and the Optimal Class Action*,
    821 GEO. WASH. L. REV. 767 (2013)..............................................................................14

## NATURE AND STAGE OF THE PROCEEDINGS

Frank, with one exception, incorporates by reference the statement of procedural posture as described in Plaintiffs' Second Motion for Preliminary Approval of Settlement. See D.I. 194 at 7-10. The statement incorrectly states that Frank "did not challenge…adequacy of representation." D.I. 194 at 9. Frank did challenge adequacy of representation, D.I. 171 at 25-26, pursued that contention on appeal, and the Third Circuit left open the question on remand "in light of…further consideration and potential factfinding." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 331 (3d Cir. 2019).

## SUMMARY OF THE ARGUMENT

Plaintiffs filed a complaint alleging billions of dollars in statutory damages on behalf of a class consisting of millions of people, before settling for $5.5 million, of which the putative absent class members would see not one penny. Instead, they earmarked the entire net settlement fund for third-party "*cy pres*" recipients, even though it would be possible to allow class members to recover through a claims-made process or a sampling lottery method. As former Chief Judge Smith puts it, this exact type of *cy pres*-only settlement is an "egregious" example of "*cy pres* gone wrong." D. Brooks Smith, *Class Action and Aggregate Litigation: A Comparative International Analysis*, 124 PENN ST. L. REV. 303, 337 (2020). Yet, over the objection of Theodore H. Frank, former Judge Robinson approved this arrangement. D.I. 173. On appeal, the Third Circuit agreed with Frank that the "vista view of this case is not pretty." *Google Cookie*, 934 F.3d at 331.

Despite being given another opportunity by the Third Circuit, the settling parties have "simply" been "working at the margins." D.I. 200 at 13:2-3. But they can't shortcut their way to a prettier vista view. Their two gestures at addressing the Third Circuit's concerns—(1) reclassifying the putative class as a (b)(3) damages class rather than a (b)(2) injunction class, and (2) proposing to appoint a neutral third party to select *cy pres* recipients—ultimately introduce additional problems and compound the existing infirmities of the initial settlement structure.

First, by seeking to certify the settlement class under Rule 23(b)(3) rather than (b)(2), the

parties must now satisfy Third Circuit's strict ascertainability standards for (b)(3) classes. *Google Cookie*, 934 F.3d at 328. They cannot make this showing because a lack of ascertainability is the parties' purported justification for resorting to an all-*cy pres* settlement structure in the first place. *See infra* § III.A.

Second, a (b)(3) certification demands a demonstration that the class device is a superior means of adjudicating the class members' claims. Certifying a settlement class for the purpose of distributing funds to unrelated third parties, fees to class counsel, and a plenary release of class members' claims to Google does not satisfy superiority. *See infra* § III.C; *Frank v. Gaos*, 139 S. Ct. 1041, 1047 (2019) (Thomas, J., dissenting).

Third, the proposed (b)(3) certification reopens Frank's initial objection under Fed. R. Civ. P. 23(e) to an all-*cy pres* settlement. In a (b)(3) class, unlike in a (b)(2) class, the settlement proceeds "belong[] to individual class members as monetary compensation for their injuries." *Google Cookie*, 934 F.3d at 327. In a (b)(3) class, the Third Circuit requires district courts to ensure that settlements provide "sufficient direct benefit" to class members. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170, 176, 181 (3d Cir. 2013) ("*Baby Prods*"); *accord* Fed. R. Civ. P. 23(e)(2)(C)(ii). Zero benefit cannot be sufficient benefit for the release of the class's monetary claims; this settlement cannot satisfy Rule 23(e). *See infra* § V.

Fourth, putative class counsel and the named plaintiffs' continuing disregard for the monetary recovery of absent class members and for the preservation of their monetary claims, reveals the inadequacy of their representation. *See infra* § III.B. Worse yet, under the amended *cy pres* selection process, there is no mechanism to even provide the class with adequate notice of the identity of the proposed *cy pres* recipients, let alone an opportunity to exclude themselves from any donations or to lodge an objection. That further reflects the inadequacy of class representation, but it also asks the Court to compel class member speech in violation of the First Amendment. *See infra* § VI.

Last, and perhaps most emblematic of the attempted shortcutting on remand, the settling parties have decided not to even submit a written instrument codifying their amended settlement

proposal. That is not compatible with Rule 23, which contemplates that class members and the court be given an opportunity to review a definite and non-moving proposal. *See infra* § IV.

At base, the putative class's attorneys have failed in their duty to ensure that class members are the "foremost beneficiaries" of the settlement. *Baby Prods*., 708 F.3d at 179. "Class members are not indifferent to whether funds are distributed to them or *cy pres* recipients and class counsel should not be either." *Id.* at 178. It would be error to approve the settlement, class certification, and the fee award. The settling parties may reach an arms'-length agreement that Google's total settlement liability will be only about $5.5 million. They may not structure that liability so that third parties, class counsel, and the named representatives collect the entirety of those proceeds.

## ARGUMENT

### I.   Frank is a class member and intends to appear through counsel at the fairness hearing.

Objector Theodore Harold Frank's business address is Hamilton Lincoln Law Institute, 1629 K St. NW, Suite 300, Washington, DC 20006; his email address is ted.frank@hlli.org. Since his first iPhone purchase in December 2009, he has regularly used Apple's Safari internet browser in its default settings, visiting countless sites including Wikia.com, a website referred to in the complaint as housing Doubleclick.net cookies. Declaration of Theodore H. Frank, D.I. 171-1 at ¶3; *see also* Amended Complaint, D.I. 162 ¶126. Frank is not subject to any of the exclusions of Settlement § 2.5 and therefore is a member of the class as defined in the Preliminary Approval Order (D.I. 203) and Settlement Agreement (Ex. A. to D.I. 163-1) §§ 2.3 and 2.5. Despite previous objections, Frank's and the named plaintiffs' standing is established as law of the case. *See Google Cookie*, 941 F.3d at 324-25; D.I. 194 at 9.

Frank is represented by Adam Schulman, an attorney with the non-profit Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF"). Frank intends to appear through Schulman at any future fairness hearing to discuss the points raised in this Objection and to address any responses that the settling parties may make. He does not plan to call any witnesses but

reserves the right to cross-examine any witnesses who testify in support of the certification or settlement, including the representatives of the *cy pres* recipients that the plaintiffs have stated will be available at the hearing. Frank reserves the right to make use of all documents entered on to the docket. He joins by reference any substantive objections made by other class members not inconsistent with those made here.

CCAF, established in 2009, represents class members pro bono in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. Frank Decl. ¶¶8-9. CCAF has won tens of millions of dollars for class members. *See, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015).

## II.    The Court has a fiduciary duty to the absent members of the class.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"). As such, the Court itself assumes a derivative fiduciary role on behalf of absent class members "to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Baby Prods.*, 708 F.3d at 175 (internal quotation omitted). Courts must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*") (internal quotation omitted). When confronted with an all-*cy pres* settlement, a court's obligation even more exacting because of the "still greater misalignment of interests." *Google Cookie*, 934 F.3d at 327.

The Court's oversight role extends beyond making sure that the settling parties engaged in

arm's length settlement negotiations. *Pampers*, 724 F.3d at 717-18 (quoting *GM Trucks*, *inter alia*). Defendants' indifference to the allocation of the settlement means that while it is necessary that a settlement is at arm's length without express collusion between the settling parties, it is not sufficient. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (calling it "naïve" to base confidence in settlement fairness on arm's length negotiations). Due to the defendant's indifference as to the allocation of the settlement funds requires, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted). Reflecting this concern over lawyer-driven settlement, Rule 23(e) was amended in 2018 to explicitly require consideration of "the effectiveness of any proposed method of distributing relief to the class" and assurance the class's recovery is commensurate with "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(c)(ii)-(iii); *see also Briseño v. Henderson*, 998 F.3d 1014, 1023-27 (9th Cir. 2021).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010). "Where, as here, the parties seek simultaneous class certification and settlement approval, courts should be even more scrupulous than usual when the examine the fairness of the proposed settlement." *Google Cookie*, 934 F.3d at 322 (internal quotation omitted)

## III.     The proposed class cannot be certified under Rule 23(b)(3).

### A.     The class cannot meet the Third Circuit's ascertainability prerequisite.

When evaluating a settlement class certification under Rule 23(b)(3), a court must determine the "ascertainability" of the class. *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, 2022 U.S. Dist. LEXIS 5841, at *15 (E.D. Pa. Jan. 12, 2022) (Robreno, J.). That inquiry is "two-fold": "requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (quoting *Byrd v.*

*Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015)). Here, the settling parties have continuously maintained that there is no reliable and administratively feasible mechanism for determining class members. *See, e.g.*, D.I. 195 at 9-11; D.I. 194 at 21; D.I. 200 at 7:22-8-2. Indeed, unascertainability is the parties' justification for an all-*cy pres* arrangement.[1]

Consequently, the settling parties jointly argue instead that rigorous ascertainability is not required of settlement classes. D.I. 202 at 1-6. Not so; the standards for certification "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620; *Google Cookie*, 934 F.3d at 326 (quoting *Amchem*). "Rule 23's rigors are not relaxed as to a settlement class." *Neale v. Volvo*, 794 F.3d 353, 362 n.4 (3d Cir. 2015).

As with the other specifications of Rule 23, ascertainability serves "to protect absent class members" by facilitating the best notice practicable that is owed to them as a matter of Due Process and Rule 23. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Ascertainability also enables "potential class members to identify themselves for purposes of opting out of the class." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). More than that, ascertainability safeguards absent class members' "recovery" against "dilut[ion] by fraudulent or inaccurate claims." *Id.* at 310. Each of these purposes applies equally in the settlement class certification context, and shows why a "focus" on the defendant alone "is misplaced." *Id.* Certification requirements "are not the defendant's to waive[.]" Alexandra D. Lahav, *Symmetry and Class Action Litigation*, 60 UCLA L. REV. 1494, 1506 (2013).

Lessening the standards for ascertainability in the settlement context would create an unacceptable scenario where defendants can use the promise of attorneys' fees to leverage a release of classwide claims in exchange a relatively worthless settlement. The settling parties ignore the

---

[1] Frank has maintained, and continues to maintain, that class distributions are feasible through a claims process wherein class members self-identify and aver the objective historical facts regarding their browser usage that would bring them within the class definition. *See infra* § V. This type of self-identification, however, may not be enough to satisfy the Third Circuit's ascertainability requirement. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 309 (3d Cir. 2013).

effect lessened standards might have on unnamed plaintiffs, instead relying on *Sullivan* and *Comcast Set-Top Box* to suggest that lessened requirements on settlements furthers policy objectives by reducing costly litigation. *See* D.I. 202 at 2-4. But *Sullivan v. DB Investments* had nothing to say about ascertainability at all. 667 F.3d 273 (3d Cir. 2011) (*en banc*). And in any event, the parties use it to paint an inaccurate picture of Third Circuit law and priorities. *Rodriguez v. Nat'l City Bank* expressly rejected a similar overreading of *Sullivan*, noting that the policy favoring settlement, while strong, "cannot alter the structure of Rule 23." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013). *Comcast Set-Top Box*, the one case which supports the parties' reading, is a non-binding unpublished decision case, unpersuasive in its own right, and should be viewed even more skeptically since it was decided without adversarial presentation. *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 656 F. App'x 8 (3d Cir. 2016).

This Court has already recognized that ascertainability applies with full force to settlement-class certifications. *Utah Ret. Sys.* And at the preliminary approval hearing here, it correctly suggested that the proposed class cannot satisfy these standards. *See* D.I. 200, at 4:15-17; 10:24-11:21. A rigorous ascertainability inquiry at settlement is precisely for situations like this: an unascertainable class is being used to provide defendant with a global release and class counsel with a hefty payday, all without the trouble of giving class members even a penny.

**B.    The *cy pres*-only settlement, clear-sailing attorneys' fee, and deficient notice combine to indicate inadequate representation.**

Rule 23(a)(4) conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(g)(4) imparts an equivalent duty on class counsel, made especially weighty "when the class members are consumers." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Class counsel must "prosecute the case in the interest of the class … rather than just in their interests as lawyers." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). Crucially, the named representatives may not "leverage… the class device" for their own monetary

benefit. *Id.* at 952.

Here, plaintiffs' stubborn insistence on a *cy pres*-only settlement combined with a sizeable clear-sailing attorneys' fee, and a global release of class members' claims indicates inadequate representation. *See, e.g., Frank*, 139 S. Ct. at 1047 (Thomas, J., dissenting); *Pampers*, 724 F.3d at 721; *Gallego v. Northland Group*, 814 F.3d 123, 129-30 (2d Cir. 2016); *GM Trucks*, 55 F.3d at 801-803. "No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Daniels v. Aeropostale West*, 2014 WL 2215708, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014). The settlement, which leverages the class device to release claims and award fees to class counsel without benefit to the class, is a "racket" and "a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Walgreen Co. Stockholder Litig*., 832 F.3d 718, 724 (7th Cir. 2016). Class members would be unequivocally better off opting out; yet their fiduciaries intend to bind them to a general release in exchange for no meaningful relief.

But it gets worse. Plaintiffs are not proposing this in a vacuum; they are persisting in allowing Google to extract a plenary release from the class members without providing them any compensatory benefit even after the Third Circuit's admonishment that *cy pres*-only settlements pose a "misalignment" of interests. Judge Ambro detailed at length how the class's global release "raise[d] a red flag," and how the parties had "sidestepped" the class protections of rule 23(b)(3), all while obtaining "for themselves" the benefits of a (b)(3) settlement. *Google Cookie*, 934 F.3d at 329. Notwithstanding the fact that the "Third Circuit was too polite to call it what it was, a sham," *Google Cookie*'s message should have been clear. D.I. 200 at 13. The message went unreceived.

On remand, the settling parties propose settlement modifications that they claim cure the defects of the initial proposal. Yet one of the first things that the plaintiffs did was ask this Court to dispense with any additional notice to the class of the new settlement terms. D.I. 194 at 10, 21; D.I. 202 at 5, 19-20; *contra Google Cookies*, 934 F.3d at 329 (discussing heightened notice requirements of a (b)(3) settlement); *Baby Prods*., 708 F.3d at 182 (noting the "supplemental notice

should be provided to the class if the settlement is materially altered on remand). Although this Court wisely forced the parties to provide new notice, the notice provided is deficient, (1) failing to mention that the Third Circuit vacated approval of the first settlement; (2) misleadingly implying that it is the same settlement that "was originally announced in 2016"; and (3) incorrectly implying that the Court has already "approved a revised process for selecting the institutions that will receive Settlement funds." Notice at 2.[2]

Compounding the notice issue, the plaintiffs no propose to employ an unknown third-party neutral to select to-be-determined *cy pres* recipients. This proposed process does not allow for any notice or opportunity for absent class members to object to or opt out in light of the neutral or the designated recipients. While this structure can potentially avoid a direct conflict of interest, it prevents class members from making informed decisions about whether to opt out of the suit, further removing them from the benefits of the suit. "Just trust us" cannot be the basis of settlement decision-making. *Dennis v. Kellogg Co*., 697 F.3d 858, 869 (9th Cir. 2012). Although the Third Circuit allows the parties to defer picking a recipient until after claims administration, it still requires that "the parties make their proposals publicly available and… allow class members the opportunity to object before it makes a selection." *Baby Prods*., 708 F.3d at 180. The notice and settlement terms provide no opportunity for doing that. Moreover, since, unlike in *Baby Products*, the *cy pres* fund is a set quantity, there is no reason for why the neutral has not been chosen or announced yet in order to provide sufficient notice to the class.

The putative class representatives' and class counsel's complete apathy toward providing the class with sufficient notice not only violates Rule 23's notice requirements, it is a breach of their fiduciary duties. *Greenfield v. Villager Indus., Inc*., 483 F.2d 824, 832 (3d Cir. 1973); *cf. also In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1102 (5th Cir. 1977) (discussing

---

[2] *See* Exhibit A to Supplemental Declaration of Adam E. Schulman, *also available at* http://googlecookieplacementprivacysettlement.com/Content/Documents/Notice.pdf (last visited Jun. 28, 2022).

9

representatives' "responsibility" to identify and provide notice to absentees).

Still more disturbingly, there is no written instrument at all codifying any of the changes to the settlement. This is both improper and prejudicial to class members, *see infra* § IV, and again reflects inadequate representation. CCAF has represented objectors in more than a hundred settlements, and not once have we seen the parties try to push through an amended settlement without a definitive written instrument. At best, plaintiffs are taking an unprofessional shortcut to reinstitute their preferred agreement. At worst, proceeding in such a non-transparent manner indicates a "willingness to avoid scrutiny, possibly at the expense of the interests of the class." *Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740, 2018 U.S. Dist. LEXIS 123322 (E.D.N.Y. Mar. 31, 2018). Regardless, not formalizing the settlement in writing, nor following up on their request to have the Court appoint a neutral in its preliminary approval order (D.I. 194 at 12-13) indicates that class counsel is not adequately representing the interests of class members. What stands before us today is an unwritten settlement, featuring little material changes to the most troubling aspects of the original, without any available notice of what changes were made or what the material benefit of the new settlement will look like.

### C.    If distributions to individual class members are impracticable, then a class action is not superior to other available methods of adjudicating the controversy.

Another prerequisite of (b)(3) class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." If a settlement class certification "serves only as a vehicle through which to extinguish the absent class members' claims without providing them any relief" because it would be too impractical to distribute the settlement funds to class members, then a class action is not a superior means of adjudicating this controversy. *Frank*, 139 S. Ct. at 1047 (Thomas, J., dissenting); *see also Supler v. FKAACS, Inc.*, 2012 WL 5430328, 2012 U.S. Dist. LEXIS 159210, at *10-*11 (E.D.N.C. Nov. 6, 2012) (because "benefits to putative class members" from *cy pres* payments "are attenuated and insignificant, class certification does not promote judicial efficiency"). The Third Circuit came to a similar conclusion

in *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), *aff'd sub. nom* 521 U.S. 591 (1997). There, the parties tried to certify an effectively unascertainable settlement class of persons exposed to the defendants' asbestos-containing products. *Id.* at 619 n.3. Without a feasible way to provide notice, the certification could not meet (b)(3)'s superiority requirement. *Id.* at 633-34.

If there is no possibility of class member compensation in this settlement, because there is no effective way for class members to "ascertain" themselves, then these claims should proceed as individual actions. In individual actions, class members can seek statutory damages of up to $10,000. 18 U.S.C. § 2520(c)(2)(B) (authorizing statutory damages for violations of the Electronic Communications Privacy Act). 18 U.S.C. § 2520(c)(2)(B). Regardless of how slim the possibility of attaining such damages, that possibility is superior to releasing those claims for no compensation. *See, e.g., Brown v. Wells Fargo & Co.*, 2013 WL 6851068, 2013 U.S. Dist. LEXIS 181262, at *16-*17 (D. Minn. Dec. 30, 2013) (concluding that superiority was not satisfied where individuals would be "entitled to between $100 and $1,000 dollars in statutory damages" in successful individual litigation, but only $55 as a class member).

Superiority must be contemplated from the perspective of putative absent class members. *Frank*, 139 S. Ct. at 1047 (Thomas, J., dissenting). This settlement intends to release their rights in exchange for no compensatory relief. For absent class members, this cannot be a superior method of adjudication. *Cf. Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) (indicating that courts should not certify classes after a defendant prevails against named plaintiffs on the merits). A *cy pres*-only settlement is not superior to other methods of adjudication.

## IV. The motion for approval must be denied because the parties have not offered a written agreement for the class or Court to review.

Written settlement instruments are necessary to give both class members and the Court a definite, non-moving target to evaluate. A written instrument requirement "is particularly appropriate in class action litigation because a member of the class who was not present at any negotiations would be at a disadvantage in presenting extrinsic evidence of the meaning of the

consent decree particularly appropriate in class action litigation." *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc*. 603 F.3d 571 (9th Cir. 2010) (*en banc*). While an oral settlement may be an permissible way of settling a bi-lateral dispute, class actions demand a "particular[ly] strict[]" policy of transparency and openness. *In re Cendant Corp.*, 260 F.3d 183, 193, 194 (3d Cir. 2001). If oral settlements were permitted, class members would lack a sufficient basis to decide whether to submit to the settlement, opt out from it, object to it, or even later move to enforce it. The district court would lack a sufficient basis to analyze the agreement under Rule 23(e). And the appeals court, "as a reviewing court," would lack "a sufficient basis to review for abuse of discretion." *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 196 (2000).

Indeed, the settling parties' initial settlement itself requires any amendments be "in writing signed by Class Counsel and Google's Counsel." Settlement ¶ 15.2. Yet despite the standard and intuitive practice of putting class action agreements in writing, and the parties' earlier agreement to do so, the updated agreement is not in writing. *Contrast Frederick v. Range Res. - Appalachia, LLC,* 2022 WL 973588, 2022 U.S. Dist. LEXIS 60710, *42 (W.D. Pa. Mar. 31, 2022) ("The requirements of Rule 23(e)(3) have been satisfied as well, since the proposed Supplemental Settlement Agreement has been filed of record at ECF No. 135-1"). The parties have declared under Rule 23(e)(3) that "the previously provided Settlement Agreement is the only agreement connected to this settlement." D.I. 202 at 10. That concession presents a problem: it means, by the prior agreement's own terms, that that agreement is "terminated" and "null and void" because the parties did not agree in writing to proceed with a modified version within thirty days of the Third Circuit vacating the final approval order. *Compare* Settlement ¶ 12.2-12.3, *with Google Cookie*, 934 F.3d at 321, 326, 332.

This is not merely a technical problem. The class has already suffered prejudice from the lack of a firm written instrument. While the new class notice states that the "settlement requires the Court to appoint a third-party neutral with no affiliation to either party to evaluate and select up to 10 *cy pres* recipients to receive a share of the settlement funds," the actual settlement posted

on the documents section of the website is identical to the original, and requires no such thing. It relies on the old methodology to pick the same defective conflicted recipients that vacated the original settlement. Settlement ¶ 5.3.

Moreover, in their preliminary approval motion, the plaintiffs stated that under the amended agreement, the Court "in the preliminary approval order, will appoint a third-party neutral to select the proposed *cy pres* recipients." D.I. 194 at 13. That did not occur, and thus the class received no notice of the neutral's identity. Without a neutral who is selecting recipients? When will this happen? And how will *cy pres* recipients "send a witness to the final approval hearing" as the plaintiffs promised? Currently, this settlement is adrift without an anchor. It cannot be approved.

## V.    *Cy pres*-only settlement unfairly deny compensation to class members.

*Cy pres* distributions are never the "best use of settlement proceeds." *Contra* D.I. 194-1 at 4. They always remain an avenue of last resort because they do not compensate class members, despite class funds belonging to class members. *See e.g., In re BankAmerica Corp. Secs. Litig*., 775 F.3d 1060 (8th Cir. 2015) ("*BankAmerica*") (many courts have "criticized and severely restricted" *cy pres*); *Pearson*, 772 F.3d at 784 ("A *cy pres* award is supposed to be limited to money that can't feasibly be awarded to…the class members"); *Klier v. Elf Atochem N. Am., Inc*., 658 F.3d 468, 475 (5th Cir. 2011) ("[The *cy pres*] option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly."); *Baby Prods*., 708 F.3d at 173 (*cy pres* affords "an indirect benefit that is at best attenuated and at wors[t] illusory"). "*Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class." *Baby Prods*., 708 F.3d at 173. Commentators have observed these same defects. *See e.g*., Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010); Theodore H. Frank, Statement before the

House Judiciary Committee Subcommittee on the Constitution and Civil Justice, Examination of Litigation Abuse (Mar. 13, 2013), *available at* https://cei.org/sites/default/files/Testimony%20-%20Cy%20Pres.pdf. Put simply, "*cy pres* payments are not a form of relief to the absent class members and should not be treated as such." *Frank*, 139 S. Ct. at 1047 (Thomas J., dissenting).

*Ex ante cy pres* is defined as an award as a part of a settlement agreement where: (1) an amount and at least one charity was named as a recipient of part of the fund from the outset, not contingent on their being remaining unclaimed funds, or (2) the entire award was given to at least one charity with no attempt to compensate absent class members. Redish, *supra* at 657 n.171. The relief here, which provides that the entire net settlement fund be distributed to non-class member charities, with no payouts to absent class members, is a clear example of (2). As compared with true *cy pres* rewards of last resort, *ex ante cy pres* stands on even shakier footing. *See, e.g., Frank*, 139 S. Ct. at 1047 (rejecting *cy pres*-only arrangement); *Graff v. United Collection Bureau, Inc*., 132 F. Supp. 3d 470, 485-486 (E.D.N.Y. 2016) (same); *Zepeda v. Paypal*, 2014 WL 1653246, 2014 U.S. Dist LEXIS 24388, at *21 (N.D. Cal. Feb. 24, 2014) (same); *Fraley v. Facebook*, 2012 WL 5835366 (N.D. Cal. Aug. 17, 2012) ("*Fraley I*") (same); *Zimmerman v. Zwicker & Assocs., P.C.*, 2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) (same). "This form of *cy pres* stands on the weakest ground because *cy pres* is no longer a last-resort solution for a problem of claims administration. The concern for compensating victims is ignored (at least unless the indirect benefits of the *cy pres* award flow primarily to the victims)." Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 767, 770-71 (2013).

Preferring non-compensatory *cy pres* might be acceptable if the class were a free-floating entity, existing only to permit class counsel to operate as a private attorney general. But that is not how Rule 23 operates; Rule 23 is a complex joinder device that aggregates real individuals with real claims into a class if certain prerequisites are satisfied. *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (class action is a "species" of joinder). Thus, "Lead Counsel continue[s] to have responsibilities to each individual member of the class even when negotiating." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985) (internal quotation

omitted). Counsel's duty to their clients works hand in glove with the proper role of the judiciary—namely, "provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, J., concurring) (internal quotation omitted). By proposing an *ex ante cy pres* settlement which provides no relief to claimants, the settling parties have lost sight of the very underpinnings of Article III.

*Google Cookie* denied Frank's per se objection to all-*cy pres* distributions. 934 F.3d at 328. This ruling, however, came only in the narrow context of 23(b)(2) settlements, leaving the question open about whether a *cy pres*-only settlement can ever be proper under 23(b)(3). *See id.* at 328. The answer to that question is "no"; *cy pres*-only (b)(3) settlements are inherently unfair because they trade class members' monetary damages claims for payments to other people. 23(b)(3) classes stand apart from (b)(2) classes "because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action." *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015). In (b)(2) cases, the settlement fund belongs to the class "as a whole"; in (b)(3) cases, it belongs to the class as individual class members. *Google Cookie*, 934 F.3d at 328; *Ira Holtzman, C.P.A. & Assocs. v. Turza*, 728 F.3d 672, 688 (7th Cir.2013).

At the very least, *cy pres*-only settlements are unfair when they impose a blanket release of individual claims on absentees. "Regardless of the importance and value to plaintiffs of the injunctive relief, it cannot serve as meaningful consideration for a release of class members' claims for damages, statutory or actual." *Fraley*, 2012 WL 5835366 at *3. Indeed, this facet appeared to deeply trouble the Court at the preliminary approval hearing: "the release is really something…in the absence of some benefit, tangible benefit to the class, I don't think it's appropriate." D.I. 200 at 14:8-11; *see also* D.I. 200 at 12:17-23. Even when parties *ex post* propose to distribute a one-quarter share of the settlement fund to *cy pres*, they must provide "sufficient justification." *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 321, 342 (E.D. Pa. 2021) (Robreno, J.) (quoting

*Baby Prods.*, 708 F.3d at 174). And that justification must be rooted in the interest of class members and what benefits them directly as opposed to societal interests or indirect benefits; "a *cy pres* award is not a vehicle by which the court, the parties, or counsel may use monies from the class settlement to propagate their own brand of social justice." *Id.*

This "last-resort rule" is a long-standing principle of law. *See Pearson*, 772 F.3d at 784 (*cy pres* permissible "only if it's infeasible to provide that compensation to the victims"). § 3.07(a) of the ALI Principles succinctly states the limitation: "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members." The last resort rule follows from the precept that "[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474 (citing ALI Principles §3.07 cmt. (b)). The 2018 Amendments to Rule 23, which did not govern the first settlement approval, fortify the last resort rule and provide another strike against *cy pres*. Amongst other things, they require the Court to consider the "effectiveness of any proposed method of distributing relief to the class." Rule 23(e)(2)(C)(ii). By vitiating class relief entirely, a *cy pres*-only settlement is the pinnacle of ineffectiveness.

The relevant question then is whether it would be practicable to distribute the available $5.5 million settlement fund to class members through a lottery or claims-made process. And the answer is yes. In *Fraley v. Facebook, Inc.*, the class of Facebook users numbered over one hundred million, and the parties initially proposed a *cy pres*-only settlement to the court alleging that class distributions "[are] simply not practicable in this case, given the size of the class." *Fraley I.*, 2012 WL 5835366, at *6. Judge Seeborg refused to accept the proposal because "[m]erely pointing to the infeasibility of dividing up the agreed-to $10 million recovery…is insufficient…to justify resort to purely *cy pres* payments." 2012 WL 5835366, at *5. After the court denied approval, the agreement was then restructured as a claims-made settlement disbursing cash directly to class members. 966 F. Supp. 2d. 939 (N.D. Cal. 2013) ("*Fraley II*"). Claimants under the amended agreement were so few in fact that the court would have been able to double the baseline $10

16

awards and did augment the awards by 50%. *Id.* at 944.

Frank's declaration documents a dozen settlements that demonstrate the feasibility of a claims process with $5.5 million available and millions of class members. Frank Decl. ¶19. Because the percentage class members that will submit claims in these types of settlements is invariably low, a claims-made settlement would not be impracticable. Low single-digit and even sub-1% claims rates are endemic to class actions, particularly without any direct notice to the class. *Briseño*, 998 F.3d at 1026 n.3; *see also, e.g., In re Carrier iQ, Inc. Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice); *Pearson*, 772 F.3d at 782 ("the percentage of class members who file claims [in consumer class actions] is often quite low"). *Fraley* is the best proof; even where a class numbers over one-hundred million, a claims-made device is feasible.

Nor is there an insuperable impediment to class members self-identifying before filing a claim. Class members need not undergo the same forensic process described in the complaint to know that they received the DoubleClick cookies at issue here. *Contra* D.I. 195 at 10 & n.4. According to the original theory of this suit, Class members only have to know four objective historical facts to know that such a cookie was placed in this way. (1) Using their regularly updated Safari browser and regularly updated iOS operating system, they visited one of several particular web domains that served DoubleClick advertising (2) during the particular period in late 2011/early 2012 when the circumvention code was operative with (3) the default privacy setting on their browsers, and (4) did not clickthrough on the site's advertising. And even this is more than the named plaintiffs have averred to obtain their $1000 incentive payments. If it's good enough for the class representatives, it's good enough for the rest of the class. In short, there is no legitimate justification for bypassing class relief and resorting to a *cy pres*-only settlement.[3]

---

[3] The parties have hinted on remand that they will assert that ANY direct distributions would be a windfall in light of the Third Circuit's earlier dismissal of statutory damages claims.

## VI.    Without class members' affirmative election, *cy pres* constitutes compelled speech in violation of the First Amendment.

"[E]xcept perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris v. Quinn*, 573 U.S. 616, 656 (2014). Making a charitable contribution is First Amendment-protected expressive and associational activity. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Reciprocally, individuals have a right to refrain from making such a donation, a right to not be compelled to engage in expressive and associational activity. *See, e.g., Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018); *Knox v. Service Employees Int'l Union, Local 1000*, 567 U.S. 298, 309 (2012). "First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that it favors." *United States v. United Foods, Inc*., 533 U.S. 405, 411 (2001). In articulating this right, the Supreme Court has acknowledged Thomas Jefferson's view that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves[] is sinful and tyrannical." *Janus*, 138 S. Ct. at 2464 (quoting A Bill for Establishing Religious Freedom, in 2 PAPERS OF THOMAS JEFFERSON 545 (J. Boyd ed., 1950)).

Three premises render unconsented-to class action *cy pres* awards unconstitutional. First, settlement funds "belong solely to the class members." *Klier*, 658 F.3d at 474; *accord BankAmerica*, 775 F.3d at 1064. Though each class members' share of the settlement fund is

---

D.I. 195 at 3. But those claims were re-pled after that decision and remain in the operative complaint. D.I. 162. And they will be released as part of the settlement. Settlement ¶ 2.25 (defining released claims). Moreover, "unlike common law negligence actions, the common law provided privacy tort victims with a monetary award calculated without proving actual damages. Courts permit recovery in privacy cases without proving actual damages because it is difficult to prove damages in such cases." *Pichler v. Unite*, 542 F.3d 380, 399 (3d Cir. 2008) (internal citations omitted). None of this is to say that the case should have settled for $55m instead of $5.5m. Frank only claims that in relation to the allegations of the complaint and the scope of the settlement's release, a compromise that results in some amount of class payment would not be a windfall—and certainly not more of a windfall to class members than *cy pres* would be to third parties unrelated to the class's injuries.

"small in amount, because it is spread across the entire [class]," the monetary support to the third parties is "direct." *Cahill v. PSC*, 556 N.E.2d 133, 136 (N.Y. 1990). Second, a third-party donation is an expression of support, association, and endorsement of the third party's agenda and activities. *See, e.g., Buckley v. Valeo*, 424 U.S. 1 (1976). "[C]ompelled funding of the speech of other private speakers or groups presents the same dangers as compelled speech." *Harris*, 573 U.S. at 647 (internal quotation omitted). Third, absent class members are being compelled into participating in the donations under the Court's order disbursing the funds to the *cy pres* recipients.

The Ninth Circuit recently held that an opt out resolves any compelled speech concerns. *In re Google Inc. Street View Elec. Comm'n Litig.*, 21 F.4th 1102, 1118 (9th Cir. 2021), *cert. pending* No. 21-1535.  That is likely incorrect: silence is not consent and a waiver of First Amendment rights "cannot be presumed." *Janus*, 138 S. Ct. at 2486. "Unless [individuals] clearly and affirmatively consent before any money is taken from them, this standard cannot be met." *Id.* But regardless, the opt out cannot be a meaningful escape hatch, when, as here, class members receive no notice of the identity of the recipients. Effectively, class members are being compelled to speak before knowing what they are speaking. This is particularly troubling because though computer science departments may purport to be apolitical, they preside over contentious academic debate about the future of data privacy, individual data rights, and use of the blockchain among others. Consequently, a donation to a specific department may prove to be compelled speech for a view of the internet and privacy rights antithetical to individual class members' beliefs.

The Eighth Circuit also recently rejected a compelled speech argument because the *cy pres* was only distributed *ex post* after all class members had an opportunity to claim their share of the class fund. *Jones v. Monsanto*, __F.4th__, 2022 WL 2334708, 2022 U.S. App. LEXIS 17937 (8th Cir. Jun. 29, 2022). According to *Jones*, those residual funds did not belong to any individual class members, either those who submitted a claim or those who did not. *Jones* has no bearing on the *ex ante cy pres* in this settlement.

 "In simple terms, the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the

interests of the person who does not want to pay." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2467 (2018). Approving the settlement's *cy pres* provision would violate the First Amendment.

## CONCLUSION

. Despite being given another chance, plaintiffs have been unable to reach a better settlement. In fact, the named plaintiffs and class counsel have only confirmed that they are inadequate stewards of the class's interest. The Court should deny class certification and settlement approval.

Dated: July 6, 2022                Respectfully submitted,

                                   */s/ Adam E. Schulman*
                                   Adam E. Schulman (DC Bar # 1001606)
                                   HAMILTON LINCOLN LAW INSTITUTE
                                   CENTER FOR CLASS ACTION FAIRNESS
                                   1629 K Street, NW, Suite 300
                                   Washington, DC 20006
                                   Tel: 610-457-0856
                                   adam.schulman@hlli.org

                                   *Attorney for Objectors Theodore H. Frank*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.


DATED: July 6, 2022


                                                    *(s) Adam E. Schulman*
                                                    Adam E. Schulman