# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (ER) |
| This Document Relates to:<br>**All Actions** | |

**CLASS PLAINTIFFS' RESPONSE TO OBJECTION OF DMITRII MUDRECHENKO**

# TABLE OF CONTENTS

A.  **Objector Mudrechenko Does Not Appear To Be A Class Member** ..............................1

B.  **The Objection is Without Merit** ......................................................................................3

    1. *Cy pres* settlements benefit Class Members and are Entirely Proper .........................3

    2. Claims-made distributions are infeasible in this case .................................................6

C.  **Mudrechenko's Objection To Attorneys' Fees Is Improper** ..........................................7

**CONCLUSION** ............................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Chapman v. Tristar Prods., Inc.*,
940 F.3d 299 (6th Cir. 2019) .................................................................................................. 8

*Fraley v. Facebook, Inc.*,
No. 3:11-cv-01726-RS, 2012 WL 5835366 (N.D. Cal. Aug. 17, 2012) ........................................ 6

*Haught v. Summit Res.,
LLC*, No. 1:15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 4, 2016) ........................................ 8

*In re Baby Prods. Antitrust Litig.*,
708, F.3d 163 (3d Cir. 2013) .................................................................................................. 5

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .................................................................................................. 1

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) .................................................................................................. 4

*In re Google, Inc. Street View Elec. Commc'ns Litig.*,
21 F. 4th 1102 (9th Cir. 2021) ........................................................................................ 3, 4, 5

*In re Lupron Mktg. & Sales Pracs. Litig.*,
677 F.3d 21 (1st Cir. 2012) .................................................................................................... 5

*In re Polyurethane Foam Antitrust Litig.*,
No. 1:10-md-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ....................................... 2, 5

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
268 F. Supp. 2d 907 (N.D. Ohio 2003) ................................................................................... 8

*In re" Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F. 3d 316 (3d Cir. 2019) .......................................................................................... 3, 4, 5

*Klier v. Elf Atochem N. Am., Inc.*,
658 F.3d 468 (5th Cir. 2011) .................................................................................................. 5

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ............................................................................................. 4, 5

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ........................................................................................... 1

*Powell v. Ga.-Pac. Corp.*,
119 F. 3d 703 (8th Cir. 1997) ................................................................................................. 5

*Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
 123 F.3d 111 (3d Cir. 1997) ................................................................................................. 8

*Schwartz v. Dall. Cowboys Football Club*,
 362 F. Supp. 2d 574 (E.D. Pa. 2005) .................................................................................... 7

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
 262 F.3d 559 (6th Cir. 2001) ................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(e)(5) ............................................................................................................... 1

## CLASS PLAINTIFFS' RESPONSE TO OBJECTION OF DMITRII MUDRECHENKO

Class Plaintiffs submit the following Response to the Objection of Dmitrii Mudrechenko ("Objector" or "Objector Mudrechenko"). D.I. 206. With proper notice having twice been provided to millions of Class Members, only two objections were received to the proposed Settlement between Plaintiffs and Defendant Google Inc. ("Google"), demonstrating the Class' nearly universal approval of the Settlement. The Class's overwhelming approval of the Settlement supports final approval. *See, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (fact that "only 79" out of 11,000 class members objected to class settlement "tends to support a finding that the settlement is fair").

As set forth below, Objector Mudrechenko's objection cannot stand because (1) Objector does not appear to be a Class Member with standing to object; (2) even if he is a Class Member, Objector's "belie[f] [that] the settlement does not directly benefit class members" is meritless; and (3) Objector's cursory objection to the amount of attorneys' fees previously approved by the Court is improper. The objection should be overruled.

### A. Objector Mudrechenko Does Not Appear To Be A Class Member

Only Class Members have standing to object to a proposed settlement. *See* Fed. R. Civ. P. 23(e)(5). An objector must demonstrate standing as a Class Member. *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014). Objector Mudrechenko lacks standing to object because he does not allege facts showing that he is a Class Member. This failure renders his entire objection invalid.[1]

---

[1] Objector was well aware of his burden to prove class membership, as the Long Form Notice clearly provides that objections may only be made if they contain "a statement that you are a Settlement Class Member." Long Form Notice ¶ 11.

1

While Objector Mudrechenko states that he is "a valid class member" because he is currently "a resident of the State of Minnesota" and used "the Apple Safari web browser and visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed" in 2011 (D.I. 206 at 1), he does not state that he used the Apple Safari browser to visit a website ***while in the United States in 2011***. This fact is crucial as the Class Definition only includes "persons ***in the United States of America*** who used the Apple Safari or Microsoft Internet Explorer web browsers" in the indicated manner between 2011 and 2012. Long Form Notice ¶ 4 (emphasis added). Publicly available information indicates that it is likely Objector Mudrechenko was not living in the United States in 2011. A publicly-available LinkedIn profile that appears to belong to Objector Mudrechenko indicates that he was studying at Altai State University between 2009 and 2013 before moving to Minnesota State University in 2013, after the class period ended. *See* Ex. A, LinkedIn Profile of Dmitrii Mudrechenko at 5. Altai State University is located in Barnaul, Russia, which would make it highly unlikely that Objector Mudrechenko was a Class Member who used an appropriate browser "while in the United States" in 2011. Long Form Notice ¶ 4.

Because Objector Mudrechenko has failed to clearly state that he is a member of the Class—and, in fact, publicly-available information indicates that he is likely not a member of the Class—his objection must be overruled for this reason alone. *See, e.g.*, *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) (refusing to allow non-class member to object because "under Rule 23(e), non-class members have no standing to object"); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-2196, 2015 WL 1639269, at *6 (N.D. Ohio Feb. 26, 2015) (finding "no evidence offered by [objector] or accessible to [Class Counsel that] substantiates his vague claim of class membership" and overruling objection).

### B. The Objection Is Without Merit

Even if Objector Mudrechenko has standing as a Class Member, his sole objection to the proposed Settlement—that it "does not directly benefit class members" (D.I. 206 at 1)—is incorrect. In support of his objection, Objector Mudrechenko argues that "it is a well-known practice to establish a website that allows the class members to file a claim themselves and do it electronically." *Id.* Notably, Objector Mudrechenko does not object to the overall reasonableness of the amount of the Settlement Fund.

#### 1. *Cy pres* settlements benefit Class Members and are Entirely Proper

Objector Mudrechenko's claim that the *cy pres* payments proposed in this case do not benefit Class Members is incorrect.[2] Numerous courts in well-reasoned opinions have determined—often in the face of class member objections—that appropriately tailored and focused all *cy pres* allocations are effective and beneficial, particularly where direct distributions are logistically burdensome, impractical, or economically infeasible. *In re Google, Inc. Street View Elec. Commc'ns Litig.*, 21 F. 4th 1102, 1113 (9th Cir. 2021), is particularly instructive. There the Ninth Circuit ruled: "As a threshold issue, we reject the suggestion that a district court may not approve a class-action settlement that provides monetary relief only in the form of *cy pres* settlements to third parties." *Id.*; *see also id.* at 1111 ("[W]e have repeatedly indicated that" settlements in which "the *only* monetary relief comes in the form of *cy pres* payments to third parties . . . are permissible under appropriate circumstances.").

---

[2] Nor is the settlement here *cy pres*-only. The class also obtained the benefit of injunctive relief requiring Google "to assure it had 'implemented systems configured to' abate or delete all third-party Google cookies that exist in Safari Browsers." *In re" Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F. 3d 316, 321 (3d Cir. 2019) (quoting Settlement Agreement, § 5.1, "Assurance of Remediation).

*Google Street View* noted the correct analysis "does not turn[] on what portion of the settlement funds – some or all – is not distributable" but on "whether the *cy pres* disbursements 'account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" *Id.* (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012)).

*Google Street View* analyzed its previous ruling in *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017). In *Google Referrer* the Court recognized that "[w]hile . . . such '[all *cy pres*] settlements are considered the exception not the rule,'" the Court "held that 'they are appropriate where the settlement fund is non-distributable because the proof of individual claims would be burdensome or distribution of damages costly.'" *Google Street View*, 21 F. 4th at 1112–13 (quoting *Google Referrer*, 869 F.3d at 741 (cleaned up)).

Similarly, *Google Street View* discussed its prior ruling in *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), further demonstrating the propriety of all *cy pres* settlements in proper circumstances: "While we did not explicitly analyze the propriety of so-called '*cy pres*-only' settlements as a general matter, we indicated that such arrangements *can* be appropriate provided they have 'the requisite nexus between the *cy pres* remedy and the interests' of the class members." *Google Street View*, 21 F. 4th at 1112 (quoting *Lane*, 696 F.3d at 822).

*Google Street View* cited the Third Circuit's ruling in this very case as support for its conclusion that *cy pres*-only settlements are proper in cases like this one. *See Google Street View*, 21 F. 4th at 1114 (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) ("rejecting the argument that '*cy pres*-only settlements are unfair per se under Rule 23(e)(2)' and recognizing that '[i]n some cases a *cy pres*-only settlement may be proper'"). Indeed, the Third Circuit's opinion stated, that on the facts of this settlement, "[w]e know no ruling

4

that requires district courts to approve only settlements that provide for direct class distributions." *Google Cookie Placement*, 934 F.3d at 328. The Third Circuit soundly rooted its rationale that a *cy-pres* only settlement can be proper in the ALI's <u>Principles of the Law of Aggregate Litigation</u> § 3.07(b) (2010), the Court's earlier ruling in *In re Baby Prods. Antitrust Litig.*, 708, F.3d 163, 173 (3d Cir. 2013), and ultimately in the "practical inquiry" mandated by the Third Circuit's established settlement fairness test that focuses on court-determined settlement-specific fairness, adequacy and reasonableness factors, not whether an objector, lobbing shots from the sidelines, thinks the settlement might have been better. *See Google Cookie Placement*, 934 F.3d at 327–28.

Still further, the *Google Street View* court cited *In re Lupron Mktg. & Sales Pracs. Litig.*, 677 F.3d 21, 31–34 (1st Cir. 2012),[3] and *Powell v. Ga.-Pac. Corp.*, 119 F. 3d 703, 706-07 (8th Cir. 1997),[4] as "hav[ing] generally taken a similar approach to ours, approving *cy pres* settlements when they satisfy the appropriate standards for fairness." *Google Street View*, 21 F. 4th at 1114.

All of these cases demonstrate that class members *do* benefit from all *cy pres* settlements. *See, e.g.*, *Lane*, 696 F.3d at 819 ("[C]*y pres* . . . is a settlement structure wherein class members receive an indirect benefit . . . ."). Other cases involving partial *cy pres* distributions make the same point. *See, e.g.*, *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (where direct distribution is not "logically feasible" or "economically viable," *cy pres* allocation "puts the funds to their next-best use by providing an indirect benefit to the class"); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1005 (N.D. Ohio 2016) ("A *cy pres* distribution puts the settlement funds to their next best use by providing an indirect benefit to the class.").

---

[3] Partial *cy pres* distribution.
[4] Partial *cy pres* distribution.

2. <u>Claims-made distributions are infeasible in this case</u>

Objector Mudrechenko's objection proffers that a claims-made process would render direct distributions to Class Members feasible in this case. Objector provides no evidence or argument to support this claim, which is contrary to the well-established facts of this case. This case involves potentially millions or tens of millions of potential Class Members, who are not easily identified. Assuming even a small fraction of those potential Class Members participated in a claims-made process, they would likely receive pennies from the total Settlement Fund, which would be exhausted even further by potentially astronomical class administration costs to implement Objector Mudrechenko's proposed claims-made process (which would also require another class notice to be issued at significant expense). Put simply, Objector Mudrechenko's complaints about the method of allocation for the Settlement Fund (not its size or reasonableness), ignore the plain facts of this case which make clear that a claims-made process would be infeasible. *See Fraley v. Facebook, Inc.*, No. 3:11-cv-01726-RS, 2012 WL 5835366, at *1 (N.D. Cal. Aug. 17, 2012) ("[T]here is no dispute that it would be impractical to the point of meaninglessness to attempt to distribute the proposed $10 million in monetary relief among the members of a class that may include upwards of 70 million individuals." (internal quotation omitted)).

Moreover, Objector Mudrechenko's objection makes unrealistic assumptions about—or, does not consider at all—the significantly increased administration costs that would be incurred in connection with his proposed claims-made distribution method. Basic economic principles inherent in a class action involving potentially millions of class members and a relatively low settlement fund require the parties and the Court to consider the costs of class administration in fashioning a settlement distribution method. For example, if one considers the cost of simply mailing a check to one million class members (which would be but a fraction of the total potential

6

class), it would cost $600,000.00 (over 10% of the Settlement Fund) in postage alone. While Objector Mudrechenko's claims-made proposal is no doubt made in good faith, it is unrealistic and ignores the economic realities inherent in class action settlements and should be overruled. *See Schwartz v. Dall. Cowboys Football Club*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005) (finding direct distribution of $3.50 per class member to be "impractical").

### C. Mudrechenko's Objection To Attorneys' Fees Is Improper

Finally, Objector Mudrechenko objects to the amount of attorneys' fees that were previously approved by the district court because he believes the fees to be "excessive." D.I. 206 at 2. Objector's attempt to re-litigate the issue of attorneys' fees is improper. As part of the prior settlement approval process, the Court considered and approved Class Counsel's motion for attorneys' fees and expenses. D.I. 173. Although Class Counsel has since then expended significant additional time and effort in representing the Class in the appeal of this case, in renegotiating the settlement agreement to address the Third Circuit's concerns, in filing their Second Motion for Preliminary Settlement Approval and in preparing their papers seeking Final Settlement Approval (including responding to the two Objections), Class Counsel has not sought one cent in additional fees for all this work. Beyond that, Class Counsel's already-approved award of fees and expenses represents a *negative* multiplier – Class Counsel did not even recover their lodestar.

Because the Court's prior order approving attorneys' fees was not challenged on appeal, it is the settled law of the case and Objector Mudrechenko cannot now relitigate the issue. *See, e.g.*, *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir.

7

1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.").[5]

In arguing against the already-decided attorneys' fees, Objector Mudrechenko cites to only one case, *Chapman v. Tristar Products, Inc.*, in which the Arizona Attorney General attempted to object to a class action settlement because the it felt the attorneys' fees awarded were "lopsided and [the settlement] should be rejected." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 302 (6th Cir. 2019).[6] Objector Mudrechenko fails to note that the district court overruled the Arizona Attorney General's purported objection because Arizona lacked standing as a class member—much like Mr. Mudrechenko likely lacks standing here—which the Sixth Circuit affirmed. *Id.* Just like the Court in *Chapman* overruled the objection to attorneys' fees, this Court should likewise overrule Objector Mudrechenko's untimely and incorrect objection here.

## CONCLUSION

Objector Mudrechenko has not proffered any valid argument or evidence to suggest that the proposed Settlement is unfair or inadequate or that the Court should revisit its prior order regarding attorneys' fees. Nor has Objector Mudrechenko established that he has standing to object to the Settlement in the first place. The Court should overrule Objector Mudrechenko's objection.

---

[5] Even if it were an issue currently before the Court (which it is not), the attorneys' fees awarded by the Court were reasonable under either a percentage of the fund or lodestar-multiplier analysis. *See generally In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 937 (N.D. Ohio 2003) ("[A]ttorneys' fees in class actions have ranged from 20%–50% [of the Settlement Fund]."); *Haught v. Summit Res., LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) ("A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.'" (internal citation omitted)).

[6] It is also notable that, while the Arizona Attorney General objected to the settlement in this case during the first notice period, after the parties addressed the Third Circuit's concerns with the settlement, the Arizona Attorney General did not object to the settlement again.

| | |
|---|---|
| Dated: August 8, 2022 | Respectfully submitted, |
| **SILVERMAN THOMPSON SLUTKIN WHITE** | **STRANGE LLP** |
| */s/ Stephen G. Grygiel* <br> Stephen G. Grygiel (DE Bar ID #4944) | */s/ Brian Russell Strange* <br> Brian Russell Strange <br> 12100 Wilshire Boulevard, Suite 420 <br> Los Angeles, CA 90025 |
| Tel: 443-909-7516 | Tel: 310-207-5055 <br> *brian@strangellp.com* |
| *Executive Committee Member* | *Executive Committee Member* |

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF System, causing the document to be served on all counsel who are registered as electronic filers in the case.

I further certify that on this 8th day of August, 2022, I caused a true and correct copy of the foregoing document to be served by First Class Mail of the United States Postal Service on Dmitrii Mudrechenko, *pro se* objector, 3155 Bluestem Drive, Unit 134, West Fargo, North Dakota 58078.

DATED: August 8, 2022 */s/ Brian R. Strange*
Brian Strange