**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 |
| This Document Relates to: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH GOOGLE INC.**

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Blvd., Suite 420
Los Angeles, CA 90025
Tel: 310-207-5055
*brian@strangellp.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*


**SILVERMAN THOMPSON SLUTKIN WHITE**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@silvermanthompson.com*

*Executive Committee Member*

## TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................1

    A.  Litigation History ................................................................................1

        1.  Case Filing, Motion to Dismiss, and First Appeal ................................2

        2.  Mediation and Settlement ..................................................................3

        3.  Objection to Settlement and Second Appeal .......................................4

        4.  Renewed Motion for Settlement Approval ..........................................5

    B.  Summary of Settlement Terms ..........................................................6

    C.  Notice to the Class, Objections, and Exclusions ..............................7

    D.  Counsel Recommendations on Distribution of *Cy Pres* Funds ...............8

II. ARGUMENT ...................................................................................................9

    A.  The Settlement Class Meets the Requirements of Rules 23(a) .............................9

        1.  The members of the Settlement Class are so numerous that joinder is
            impracticable .....................................................................................10

        2.  There are common questions of law and fact ....................................10

        3.  Plaintiffs' claims are typical of the claims of the Settlement Class.......................11

        4.  Plaintiffs will fairly and adequately protect the interests of the
            Settlement Class ................................................................................12

    B.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2) ..........13

    C.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ..........14

        1.  Common issues predominate over individual ones ..............................14

        2.  Class treatment is superior to other methods of adjudication ...............15

    D.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
        Approved By the Court ......................................................................16

        1.  Public policy favors settlement of class actions .................................16

        2.  The Settlement is entitled to a presumption of fairness.........................16

        3.  The Settlement is Fair, Reasonable, and Adequate Under Rule 23(e)....................17

            i.   Rule 23(e)(2)(A): Adequacy of representation ..............................18

            ii.  Rule 23(e)(2)(B): Arm's length negotiation ...............................19

            iii. Rule 23(e)(2)(C)(i): Adequacy of relief provided after accounting for the
                 costs, risks, and delay of trial and appeal.......................................19

i

iv.    Rule 23(e)(2)(C)(ii): Adequacy of relief provided after accounting for effectiveness of any proposed distribution method ....................................21

v.    Rule 23(e)(2)(C)(iii): The terms of any proposed award of attorneys' fees, including the timing of payment ..................................................................21

vi.    Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Rule 23(e)(3) ......................................................................................................21

vii.    Rule 23(e)(2)(D): Equitable treatment of class members ..........................22

4.    The *Girsh* factors strongly support approval of the Settlement ............................22

    i.    Complexity, expense, and likely duration of the litigation ...........................23

    ii.    Reaction of the Class to the Settlement ......................................................24

    iii.    Stage of the proceedings ...............................................................................25

    iv.    Risks of establishing liability ........................................................................26

    v.    Risks of establishing damages ......................................................................27

    vi.    Risks of maintaining the class action through trial ......................................28

    vii.    Ability of Defendant to withstand a greater judgment...................................28

    viii.    Range of reasonableness of the Settlement Fund in light of the best possible recovery and all the attendant risks of litigation...........................29

5.    The Applicable *Prudential* Factors Also Favor Settlement .................................30

E.  Notice Was Proper Under Rule 23 and Constitutional Due Process ...................31

III.  CONCLUSION ........................................................................................................33

## **TABLE OF AUTHORITIES**

**CASES**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
   No. 15-cv-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) ...................................... 16

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ................................................................................................ 13, 15

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) .............................................................................................. 5, 13

*Bryan v. Pittsburgh Plate Glass Co.*,
   494 F.2d 799 (3d Cir. 1974) .............................................................................................. 5, 26

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) ................................................................................................ 18

*Frank v. Goas*,
   139 S. Ct. 1041 (2019) ........................................................................................................ 10

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .......................................................................................... 25, 26

*Hall v. Accolade, Inc.*,
   No. 17-3423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ............................................ 20, 22

*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481 (3d Cir. 2017) ................................................................................................ 10

*Hughes v. Kore of Ind. Enter., Inc.*,
   731 F.3d 672 (7th Cir. 2013) ............................................................................................... 34

*In re Bulk (Extruded) Graphite Antitrust Litig.*,
   No. 02-cv-6030, 2006 WL 891362 (D.N.J. Apr. 4, 2006) ..................................................... 11

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010) ........................................................................................... 30

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ................................................................................................ 17

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) .......................................................................................... 28

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ............................................................. 13

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001) ........................................................ 12, 27

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ............................................................ 17

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................. 20

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ............................................................ 34

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ......................................................... passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997) .............................................................. 36

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ........................................................... 26

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................... 31

*In re Sch. Asbestos Litig.*,
    789 F.2d 996 (3d Cir. 1986) ................................................................. 31

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) .............................................................. 5, 10

*Int'l Union, UAW v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................ 30

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994) ............................................................ 16

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) .................................................. 29, 32

*Marsden v. Select Med. Corp.*,
    246 F.R.D. 480 (E.D. Pa. 2007) ............................................................ 11

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp.3d 626 (E.D. Pa. 2015) ....................................................... 32

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001)................................................................. 13

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005)........................................................... 29

*Pichler v. UNITE*,
  542 F.3d 380 (3d Cir. 2008) ................................................................ 27

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................... 30

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................. 33

*Sourovelis v. City of Phila.*,
  515 F. Supp. 3d 321 (E.D. Pa. 2021) ................................................... 36

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156, 168 (E.D. Pa. 2009) ................................................... 13

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)........................................................... 11, 12

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)................................................................. 16

*Todd & Co., Inc. v. SEC*,
  637 F.2d 154 (3d Cir. 1980)................................................................. 10

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  No. 2:06-cv-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020)............ 35

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................. 10

## OTHER AUTHORITIES

United States' Response to Consumer Watchdog's Amicus Curiae Brief, at 10 n.11, *United States v. Google Inc.*, No. 3:12-cv-04177-SI (N.D. Cal. Sept. 28, 2012), ECF No. 15............. 7

## RULES

Fed. R. Civ. P. 23(a) ................................................................ 10, 11, 12
Fed. R. Civ. P. 23(c) ............................................................................ 35

Fed. R. Civ. P. 23(e) ................................................................................................ passim

**TREATISES**

1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992)........................ 12, 36
5 *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999) ........................................................... 11
David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari
  Petition Procedures: The Call for Response and the Call for the Views of the Solicitor
  General*, 16 Geo. Mason L. Rev. 237 (2009). ........................................................................ 3

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Jose M. ("Josh") Bermudez, Nicholas Todd Heinrich, and Lynne Krause (collectively "Plaintiffs" or "Class Representatives") respectfully move the Court for an Order finally approving the Settlement reached with Defendant Google Inc. ("Google") that will resolve more than a decade of litigation.

After briefing, oral argument, and supplemental briefing at the Court's request, this Court preliminarily approved the proposed Settlement on October 15, 2021.  D.I. 203.  Since then, an expert notice administrator has ensured that the notice materials were presented more than ***429 million*** times to potential Class Members.  Declaration of Michelle M. La Count Regarding Notice Administration ("La Count Decl.") ¶ 18.  As of August 8, 2022, only 34 valid exclusion requests[1] and 2 objections were received.[2]  *Id.* ¶¶ 27–29; D.I. 206, 207.  This response reaffirms the fundamental fairness of the proposed Settlement, which ensures meaningful injunctive relief for the Class and advances the purposes of the suit and the law by providing *cy pres* awards to protect and promote Internet privacy and security.

For the reasons set forth herein, Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate and the Court should grant final approval.

I.      **BACKGROUND**

A.  **Litigation History**

For over ten years, Plaintiffs have litigated their claims that Google violated numerous federal and state laws by circumventing Plaintiffs' and Class Members' privacy settings on

---

[1] An additional 50 exclusion requests were received when notice was first provided to the Class in 2016.  *See* La Count Decl. ¶ 26.  In its preliminary approval order, the Court instructed that those original exclusion requests would stand alongside any additional exclusion requests received after notice was provided to the Class a second time.  *See* D.I. 203 at 2 n.2.
[2] The two objections are addressed in separately-filed responses to be filed with the Court on August 8, 2022.  As explained in those responses, neither objection has merit.

Apple Safari and Microsoft Internet Explorer web browsers.  Plaintiffs engaged in extensive motion practice and two lengthy and difficult appeals.

          1.     <u>Case Filing, Motion to Dismiss, and First Appeal</u>

In early 2012, numerous individuals, including Plaintiffs, filed complaints in various federal courts around the country after Google's alleged actions were publicized.  These actions were centralized and transferred to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012 (D.I. 1).  After several groups submitted applications to be lead counsel, the Court selected Class Counsel to be Interim Co-Lead Counsel on November 16, 2012.  D.I. 44.

On December 19, 2012, Plaintiffs filed a Consolidated Class Action Complaint against Google and other Defendants (D.I. 46), and, on June 21, 2016, Plaintiffs filed a Consolidated Amended Class Action Complaint (D.I. 162).  In the Complaint, Plaintiffs alleged, on behalf of a nationwide class of consumers, that Google intentionally set cookies on Plaintiffs' Safari and Internet Explorer web browsers in conflict with the default cookie-blocking settings of such browsers and in violation of various federal and state laws.  Google denies all allegations of wrongdoing.  The parties also propounded and answered discovery, including initial disclosures (D.I. 155, 156), requests for production of documents (D.I. 155, 158–60), and interrogatories (D.I. 155, 159).

On January 22, 2013, Google filed a motion to dismiss all claims against it (D.I. 56).  After extensive briefing, oral argument was held on July 25, 2013, and, on October 9, 2013, this Court granted the motion to dismiss in its entirety (D.I. 122).[3]  Plaintiffs appealed that Order and,

---

[3] In the interim, Plaintiffs reached a settlement with Defendant PointRoll, Inc. ("PointRoll"), which called for injunctive relief in the form of ending the complained of practices on behalf of

on November 10, 2015, the Third Circuit vacated the dismissal of two of Plaintiffs' state law claims, affirmed the dismissal of Plaintiffs' other claims, and remanded the case to this Court for further consideration.  D.I. 146.

Plaintiffs also filed a petition for a writ of certiorari with the United States Supreme Court on March 10, 2016, seeking review of the Third Circuit's affirmed dismissal of some of Plaintiffs' claims.  Google and the other Defendants waived their right to respond to the petition. On May 10, 2016, the Supreme Court requested that Google and the other Defendants respond to the petition.  Such an order requesting a response is rare, as the Supreme Court only requests responses to approximately 2.5–4.7 percent of the petitions before it.[4]  Google notified the Supreme Court of its settlement with Plaintiffs and of its intent not to respond to the petition unless specifically requested to do so despite the settlement.  The other Defendants responded to the petition on August 11, 2016.  Plaintiffs filed a reply to their response on August 31, 2016. Ultimately, on October 3, 2016, the Supreme Court denied Plaintiffs' petition after the extensive briefing was completed.

2.    Mediation and Settlement

On May 9, 2016, Class Counsel and counsel for Google participated in a private all-day mediation before retired federal Judge Layn R. Phillips.  In advance of the mediation, the parties exchanged detailed briefing in response to the mediator's numerous questions regarding the strengths and weaknesses of Plaintiffs' case, including with regard to Plaintiffs' damages theories and class certification prospects.  The parties then participated in pre-mediation phone

---

PointRoll, and payment of $115,000 in attorneys' fees and expenses.  This Court finally approved the PointRoll settlement and fee award in April 2014.  D.I. 145.

[4] *See* David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 268 (2009).

calls with Judge Phillips.  Following an all-day private mediation before Judge Phillips and many subsequent back-and-forth negotiations and discussions (some of which involved Judge Phillips and/or his staff), the parties agreed upon and executed a formal Settlement Agreement on June 30, 2016.  Declaration of Brian R. Strange ("Strange Decl.") ¶¶ 3, 7–8; Declaration of Jim Frickleton ("Frickleton Decl.") ¶ 3; Declaration of Steve Grygiel ("Grygiel Decl.") ¶¶ 11–13. Thereafter, consistent with the terms of the Settlement, Plaintiffs filed a Motion for Preliminary Approval on August 29, 2016.  D.I. 163.  On August 31, 2016, the Court preliminarily approved the Settlement and directed that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.  D.I. 164.

The proposed Settlement is the result of extensive, arm's-length negotiations between experienced counsel.  Those negotiations came after extensive motion practice, including Google's motion to dismiss, and after the conclusion of Plaintiffs' appeal of this Court's ruling on that motion, including briefing before the United States Supreme Court and the remand of the case to this Court.  Plaintiffs and Google discussed for several months the possibility of settling Plaintiffs' claims against Google.  Strange Decl. ¶ 3; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 11. Throughout the course of settlement negotiations, the parties took into consideration potential liability and damages issues; the risks of dismissal, class certification, summary judgment, and trial; the possibility of further appeals of any judgment and/or rulings of the trial court; and how these factors could add to the cost, delay, and uncertainty of litigation.  Strange Decl. ¶¶ 8, 20; Frickleton Decl. ¶ 8; Grygiel Decl. ¶¶ 9, 13, 16, 18.

### 3.    Objection to Settlement and Second Appeal

Following the notice program, Plaintiffs filed a Motion for Final Approval and a Motion for Attorney Fees, Expenses, and Incentive Awards on December 7, 2016.  D.I. 167, 168.  Prior

to the hearing on final approval, the Court received fifty requests for exclusion and only one objection.  The lone objector challenged this Court's certification of the settlement class and the terms of the approved settlement.  D.I. 171.  This Court overruled the objection and the objector appealed.  D.I. 173.  The Third Circuit, applying *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), approved the settlement in most respects assuming, without holding, that the presumption of fairness attached.  *In re: Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Google II*"), 934 F.3d 316, 326 n.8 (3d Cir. 2019).  The objector did not challenge numerosity, typicality, or commonality or challenge the Court's ruling on Class Counsel's Motion for Attorney Fees, Expenses, and Incentive Awards.  The Third Circuit determined that there was Article III standing in this case but remanded the case to this Court for further consideration of two issues: (1) whether the *cy pres* recipients were chosen on their merits; and (2) whether the class-wide release of damages was appropriate in a class certified under Rule 23(b)(2).  *Id.* at 329–30.

4.    Renewed Motion for Settlement Approval

On remand, and in order to address the Third Circuit's concerns regarding the propriety of the release, Plaintiffs now request certification of the Class under both Fed. R. Civ. P. 23(b)(2) and (3).  In accordance with the terms of the Settlement Agreement that requires the parties to cooperate on administrative and procedural matters in order to consummate the purpose and spirit of the agreement, the settlement relief was modified so that a neutral third party appointed by the Court will choose the *cy pres* recipients, thereby obviating any concerns regarding their selection.

Having addressed the issues raised by the Third Circuit's opinion, Plaintiffs filed a renewed Motion for Preliminary Approval on January 3, 2020.  D.I. 193, 194.  After a hearing

and supplemental briefing, the Court granted Plaintiffs' Motion for Preliminary Approval on

October 15, 2021 and ordered that Plaintiffs commence a renewed notice program to the Class

prior to filing for final approval.  D.I. 203.

### B.  Summary of Settlement Terms

The Settlement Agreement provides for a single Settlement Class, defined as follows:

> All Persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

Strange Decl. ¶ 4, Ex. A, ("S.A.") § 2.3.[5]

Under the Settlement Agreement, Google will pay $5.5 million into a Settlement Fund

which will (after payment of approved attorney's fees, reimbursement of approved expenses,

approved Plaintiff incentive awards, and the costs of class notice and settlement administration)

be used to fund Court-approved *cy pres* awards to "independent organizations" who will use the

awards to "promote public awareness and education, and/or to support research, development,

and initiatives, related to the security and/or privacy of Internet browsers."  S.A. § 5.3.2.  None

of the Settlement Fund will revert to Google.  S.A. § 5.3.4.

In addition to the *cy pres* payments, the Settlement also confers substantial additional

benefits upon Class Members, particularly in light of the potential recovery provable at trial and

given the costs, uncertainties, delays, and other risks associated with continued litigation, trial,

and/or appeal.  The estimated monetary amount Google obtained from its actions was about $4

---

[5] Excluded from the Settlement Class are "(i) Google, its parent, subsidiaries, successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions are assigned and any member of the judge's or judges' immediate family; (iii) Persons who have settled with and released Google from individual claims substantially similar to those alleged in the Litigation; and (iv) Persons who submit a valid and timely Request for Exclusion."  S.A. § 2.5.

million [6] and Google paid much more than that amount in fines when settling the FTC investigation into its actions.  Thus, because Google had already disgorged any alleged unjust enrichment, and because Class Members had minimal damages that had not already been repaid by Google, Class Counsel, experienced in this type of case, reasonably concluded that obtaining a further $5.5 million from Google for *cy pres* contributions and for the benefit of the Class was the best path forward.  The Settlement also provides for remedial and prospective relief for Class Members, including Google's assurances that it took actions to expire or delete, by modifying the cookie deletion date contained in each cookie, all third-party Google cookies that exist in the browser files for Safari browsers.  S.A. § 5.1.  Class Counsel believes that this action by Google is a practical, reasonable, and effective means of removing the cookies from Safari browsers.

In exchange for the relief described, upon final approval, Plaintiffs and Class Members will release all claims arising from the alleged cookie placement during the Relevant Time Period.  S.A. §§ 2.2, 2.25, 10.1.

### C.  Notice to the Class, Objections, and Exclusions

The Court preliminarily approved the Settlement on October 15, 2021.  D.I. 203. Beginning on March 24, 2022, and continuing for six weeks until May 4, 2022, Notice of the Proposed Settlement with Google Inc. ("Notice") was disseminated to potential members of the Class in English and Spanish via online advertisements on the Verizon (Yahoo) Audience network, as well as through targeted social media advertising on Facebook, Instagram, and Reddit designed by the Class Administrator to reach the broadest possible audience of potential Apple Safari and Microsoft Internet Explorer web browsers.  *See* La Count Decl. ¶¶ 9–10, 14–16 & Ex. 2.  A Summary Notice was also published in the April 15, 2022 issue of *People Magazine*,

---

[6] *See* United States' Response to Consumer Watchdog's Amicus Curiae Brief, at 10 n.11, *United States v. Google Inc.*, No. 3:12-cv-04177-SI (N.D. Cal. Sept. 28, 2012, ECF No. 15.

a nationally distributed and widely read magazine.  *Id.* ¶ 11 & Ex. 1.[7]  A website containing the long-form Notice of the Settlement, as well as other Court documents and answers to frequently asked questions, was also established and, as of August 3, 2022, it was visited at least 92,607 times, resulting in at least 75,295 unique sessions.  *Id.* ¶ 24.  This campaign was appropriately targeted to reach as many members as practicable of a proposed Class whose members are not readily identifiable, but who may have been harmed by the conduct alleged in the Complaint.

The advertising program delivered more than 429 million ad impressions to potential Class Members.  *Id.* ¶ 18.  The Settlement Website will remain active after final approval, but to date it has received at least 92,607 visits.  *Id.* ¶ 24.  The administrator has received 6 letters or other correspondence regarding the Settlement and has responded to each.  *Id.* ¶¶ 20–21.

The postmark deadline for exclusion requests from or objections to the Settlement was July 7, 2022.  *Id.* ¶ 27.  As of August 3, 2022, the Class Administrator has received 38 valid and timely requests for exclusion from the Settlement and one invalid request for exclusion.  *See id.* ¶¶ 27–28 & Ex. 4.  To date, Class Counsel have received 2 objections to the Settlement.  D.I. 206, 207.  Class Counsel will separately respond to the objections by August 8, 2022.  The Court will hold a fairness hearing at a date and time to be determined.  D.I. 205.

### D.  Counsel Recommendations on Distribution of *Cy Pres* Funds

In the Motion for Preliminary Approval, and in order to satisfy the concerns raised by the Third Circuit's opinion, Plaintiffs proposed that the Court select a third-party neutral to select up to ten *cy pres* recipients to receive the settlement funds.  D.I. 194 at 6–7.  Recipients selected by the neutral third-party will be required to satisfy eligibility criteria identified in the Settlement Agreement, including establishing a sufficient nexus between their work and the injuries claimed

---

[7] The number of potential Class Members reached by this notice program stands in addition to the potential Class Members reached by the initial notice provided in 2016.

by the Class Members, be recognized leaders in the fields of online privacy, safety, and/or advocacy, and agree to devote the funds to promote public awareness and education and/or to support research, development, and initiatives related to the security and/or privacy of the Internet.  The Court, in its discretion, may allow for the entities selected by the neutral third-party to submit their proposals for the funds and for those proposals to be placed on the settlement website for review and comment by the Class Members before approving any payments.  The Court may also require recipients to submit a sworn declaration prior to final approval that (1) confirms their eligibility; (2) confirms their promise to use the funds in accordance with the agreement; and (3) discloses any existing or prior relationship to the Court, parties, and/or counsel, including prior donations or *cy pres* distributions from the parties.  And finally, the Court may require the recipients to produce a witness at the final approval hearing to respond to the Court's questions regqrding their application to receive a *cy pres* distribution.

## II.   ARGUMENT

To determine whether to approve a class action settlement, the Court must first assure itself that the proposed settlement class may be certified under Rule 23(a) and (b); next the Court must assess whether the proposed settlement is "fair, reasonable, and adequate." [8]  *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017).

### A.  The Settlement Class Meets the Requirements of Rules 23(a)

Under Rule 23(a), the proponent of class certification must "demonstrate, first, that (1)

---

[8] The Court must also assure itself "of litigants' standing under Article III" before certifying a settlement class.  *Frank v. Goas*, 139 S. Ct. 1041, 1046 (2019).  In this case, the Third Circuit determined that the Named Plaintiffs have Article III standing.  *Google II*, 934 F.3d at 324 ("More than precedent supports our conclusion.  History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").  No objector challenges whether any Named Plaintiff has Article III standing and the Third Circuit's finding is the law of the case. *See Todd & Co., Inc. v. SEC*, 637 F.2d 154, 157 (3d Cir. 1980).

the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting Fed. R. Civ. P. 23(a)).  Those requirements are met here.

1.  <u>The members of the Settlement Class are so numerous that joinder is impracticable</u>

The numerosity requirement of Rule 23(a)(1) is satisfied where the traditional joinder of parties would be "unworkable."  *In re Bulk (Extruded) Graphite Antitrust Litig.*, No. 02-cv-6030, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006).  There is no "minimum number of plaintiffs required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (citing 5 *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)); *see also In re Abbot Labs. Norvir Antitrust Litig.*, No. C 04-1511 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (holding that numerosity may be satisfied where class membership is unknown but common sense indicates that it is large).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members.  *See Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).  Class Counsel estimates that millions of users of Safari and Internet Explorer web browsers have been affected by Google's alleged conduct during the relevant time period and that those users are geographically dispersed throughout the United States.  The numerosity requirement is met.

2.  <u>There are common questions of law and fact</u>

Rule 23(a)(2) requires there be "questions of law or fact common to the members of the

class."  The commonality requirement is construed permissively and "is easily met because it may be fulfilled by a single common issue."  *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also Stewart*, 275 F.3d at 226–27 ("The commonality requirement will be satisfied if the named plaintiffs share at least *one* question of fact or law with the grievances of the prospective class." (emphasis added; citation omitted)); 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) [hereinafter *Newberg*] (the commonality standard is "easily met" for most settlement classes).

Here, for settlement purposes, numerous questions of law or fact are common to the Class, including: (1) whether Google's alleged practice of circumventing Plaintiffs' and Class Members' Safari and Internet Explorer browsers' security and privacy settings to place third-party cookies constituted a violation of intrusion upon seclusion under California common law or a violation of the California Constitution's right to privacy; (2) how Google carried out the browser circumvention; and (3) whether Plaintiffs and the Class are entitled to damages or other relief.  Because there exist common factual and legal questions related to liability, the commonality requirement of Rule 23(a)(2) is met.

3.     <u>Plaintiffs' claims are typical of the claims of the Settlement Class</u>

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class."  The typicality factor examines "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006).  A named plaintiff's claim is typical if it arises from the same alleged wrongful conduct by the defendant that gives rise to the claims of the putative class.  *See Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009) (Rule 23(a)(3) "does not demand identical claims, only that they be reasonably

11

coextensive with those of the absent class members" (citation omitted)).  This requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184–85 (3d Cir. 2001) (citations and internal quotation marks omitted).  Instead, in examining typicality, the Court must ensure that the Class Representatives do not have interests antagonistic to those of the Class.  *See In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 481 (W.D. Pa. 1999).  Here, the Class Representatives and the Class press the same claims and share similar injuries—violations of privacy rights—all flowing from the same alleged conduct by Google.

4.   <u>Plaintiffs will fairly and adequately protect the interests of the Settlement Class</u>

Finally, the Class Representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This inquiry asks (1) whether Class Counsel has "the qualifications . . . to represent the class," and (2) whether any "conflicts of interest [exist] between named parties and the class they seek to represent."  *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions* ("*Prudential*"), 148 F.3d 283, 312 (3d Cir. 1998) (quotation omitted).  Both requirements are met here.

First, Plaintiffs have retained qualified and experienced counsel to pursue this action. Settlement Class Counsel—Strange LLP, Bartimus, Frickleton & Robertson, P.C., and Silverman, Thompson, Slutkin, White—have extensive experience and expertise in class action litigation, privacy and Internet actions, and other complex proceedings and are qualified and able

to conduct this litigation.[9]  Strange Decl. ¶¶ 15–18; Frickleton Decl. ¶¶ 9–10; Grygiel Decl. ¶¶ 18–20.  Class Counsel have already demonstrated their full commitment to the continued prosecution of this litigation over the last decade and they possess the experience, skill, and resources to continue to do so.  *Id.*

Second, to be adequate, the Class Representatives must be part of the Class, have suffered the same injury, and have the same interests as the rest of the Class Members.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).  Here, no antagonism exists between Plaintiffs and the rest of the Class Members—all of them assert the same underlying claims based on the same alleged conduct by Google.  Plaintiffs and the rest of the Class Members allege they visited sites on their Safari and/or Internet Explorer web browsers that were served Google ads, thereby receiving the same Google code that allegedly caused cookies to be set in an identical manner on each web browser.  Plaintiffs' interests are thus aligned with those of the other members of the Class.

### B.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2)

Rule 23(b)(2) requires that Google acted on grounds that apply generally to the Class such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  This element is easily met here as Google served the same code in the same manner that circumvented users' Safari and/or Internet Explorer web browsers' security and privacy settings to all Plaintiffs and Class Members.  Therefore, Rule 23(b)(2)'s requirements are

---

[9] Rule 23(g) requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class.  The Court previously appointed Class Counsel as Interim Co-Lead Counsel.  D.I. 44.  For the same reasons that the Court appointed Class Counsel as Interim Co-Lead Counsel, their appointment as Settlement Class Counsel is also appropriate.

13

satisfied.  *See Baby Neal*, 43 F.3d at 58 (explaining that a Rule 23(b)(2) class is "almost

automatically satisfied in actions primarily seeking injunctive relief").

### C.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), the Court may certify a class when it finds that "the questions of

law or fact common to class members predominate over any questions affecting only individual

members and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."

### 1.  Common issues predominate over individual ones

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  Issues

common to the class must "predominate" over individual issues. *Prudential*, 148 F.3d at 313–

14.  Because the Court's analysis of the "commonality" requirement under Rule 23(a)(2)

overlaps with the "predominance" requirement of Rule 23(b)(3), courts often examine

"commonality under Rule 23(a) together with predominance under Rule 23(b)(3)." *Abante*

*Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *6

(N.D. Cal. May 5, 2017).

In the Third Circuit, the predominance inquiry focuses on "whether the defendant's

conduct was common as to all of the class members, and whether all of the class members were

harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir.

2011).  This criterion is normally satisfied when there is an essential common factual link

between all class members and the defendant for which the law provides a remedy. *Lake v. First*

*Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).  The legal and factual questions

identified above as "common" pursuant to Rule 23(a) will clearly predominate over any other

questions that might arise. *See supra* Section II.A.2.

14

2.   Class treatment is superior to other methods of adjudication

Rule 23(b)(3) requires that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The superiority element requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'"  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).  Factors for the Court to consider in evaluating the superiority requirement include:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  The superiority inquiry is simplified in the settlement context, because when certifying a settlement-only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial.  *Amchem Prods., Inc.*, 521 U.S. at 620.

In this case, a class action is the superior method of resolving the Class Members' claims. All of the Class Members' claims are based upon the same operative facts and legal standards.  It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 202 (E.D. Pa. 2014) ("If the cases filed by Plaintiffs against the NFL Parties were litigated individually, the parties could face decades of litigation and significant expense in many different state and federal courts, potentially resulting in conflicting rulings.").  By contrast, individualized litigation would carry great uncertainty, risk, and costs, and provide no guarantee that Class Members would obtain any greater relief than they are to receive under the Settlement Agreement.  In addition, because this case involves potentially millions of Class Members, who

15

have all been injured in a relatively small amount, individual litigation is even more unlikely to be feasible, making class adjudication superior. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). Therefore, settlement of this case as a class action is superior to any alternative.

### D. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved By the Court

A proposed class action settlement should be approved under Federal Rule of Civil Procedure 23(e) if it is "fair, adequate and reasonable." The Settlement here satisfies that standard, as well as the *Girsh* and *Prudential* fairness factors, and should therefore be approved.

#### 1. Public policy favors settlement of class actions

Courts routinely recognize that the "law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing 2 *Newberg* § 11.41 (citing cases)). "The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.* (citation omitted). "These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation within itself." *Id.*

#### 2. The Settlement is entitled to a presumption of fairness

Class settlements are presumed fair "if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); 4 *Newberg* § 11.24. By

preliminarily approving this Settlement, the Court has already found these factors to be present. D.I. 203 at 2.

Class Counsel and counsel for Google—each experienced class action and defense attorneys—have, individually and with the mediator's pointed observations, fully evaluated the strengths, weaknesses, and equities of the parties' respective positions and engaged in arm's-length negotiations in order to reach the proposed Settlement. Strange Decl. ¶ 3; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 13. Their view that the proposed Settlement is a fair resolution of their dispute is entitled to considerable weight. *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("great weight" normally given to opinion of counsel regarding class settlement).

3.    The Settlement is fair, reasonable, and adequate under Rule 23(e)

Rule 23(e)(2), as amended and effective December 1, 2018, requires the Court to consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[10] Each factor is discussed in order below.

---

[10] The Rule 23(e) factors are like the *Girsh* factors previously applied to decide whether a class action settlement is fair and reasonable in the Third Circuit. *See Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *2 n.1 (E.D. Pa. Aug. 23, 2019) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements and the discussion in *Girsh* substantially overlaps with the factors identified in Rule 23.").

i.   Rule 23(e)(2)(A): Adequacy of representation

This factor focuses "on the actual performance of counsel acting on behalf of the class." *Hall*, 2019 WL 3996621, at *4; *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

Here, this factor is satisfied. To date, Plaintiffs' counsel has dedicated thousands of attorney hours to this litigation. *See* D.I. 168-2, Strange Decl., ¶ 12. Moreover, prior to reaching settlement, Plaintiffs' counsel conducted an extensive investigation of the facts underlying the case, engaged in years of briefing and appeals on issues important to this case—many of which remain areas of substantial disagreement across the reported decisions—and prepared extensively for the mediation that led to the settlement in this case. *See id.* ¶¶ 2–7.

The case was first filed over ten years ago in 2012 and Class Counsel has been litigating this case since that time without any payment.[11] When this case was first filed, the state of the law on whether a consumer was "injured" by a company taking their data was unclear. Google's initial response to this case in their motion to dismiss—which was a common argument at the time in litigation throughout the country—was that Plaintiffs suffered no "injury" and had no claim due to allegedly misappropriated customer data. The district court agreed with Google, and it granted Google's motion to dismiss in its entirety. Class Counsel appealed that decision, and through substantial briefing and argument (all of which was performed on a contingency basis), the Third Circuit issued a published decision finding that there was injury as a matter of law and remanded the case to the district court. This decision was one of the first of its kind in

---

[11] Except for the small payment received from the settlement with Defendant PointRoll, Inc. in 2014. D.I. 144.

the privacy-related cases and has paved the way as the data issues have become much more common and important for consumers. Class Counsel began fighting the case anew and, with the assistance of a respected former federal judge, a settlement was reached between the parties. After briefing and hearings, the district court approved the settlement and an appeal was then taken by a sole professional objector. In sum, Class Counsel and the class representatives have adequately represented the class for many years in a complicated and ever-changing technological environment. This factor is thus satisfied.

### ii.    Rule 23(e)(2)(B): Arm's length negotiation

The second factor requires that the settlement proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The parties here only agreed to settle the case after extensive and detailed pre-mediation submissions, a day-long mediation, and several subsequent conferences before retired federal Judge Layn Phillips. *See* Strange Decl. ¶¶ 7–8. "[T]he participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Hall*, 2019 WL 3996621, at *4 (citation and punctuation omitted). This factor weighs in favor of approving the settlement.

### iii.    Rule 23(e)(2)(C)(i): Adequacy of relief provided after accounting for the costs, risks, and delay of trial and appeal

This factor recognizes that while the "relief that the settlement is expected to provide to the class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment.

Here, this factor is satisfied. First, absent settlement, the cost and delays associated with this litigation would be significant. The Court would be required to resolve extensive and contested motions, including discovery-related motions, a class certification motion, and likely

19

summary judgment motion(s).  Class Counsel and defense counsel would likely retain experts on privacy, technology, and damages issues for purposes of presenting the case to the jury.  In sum, continued adversarial litigation would be a long, complicated, and expensive process for the parties and the Court.

Moreover, numerous litigation risks are present absent settlement.  For instance, there is a risk that the Court would not grant Plaintiffs' class certification motion, especially because—at the time the settlement was reached—only two claims under California law remained following the dismissal of Plaintiffs' statutory-damage claims.  This uncertainty is highlighted by Google's adamant position throughout the litigation that (i) the deployment of cookies did not involve the collection, retention, or resale of any specific personal information, (ii) Google never possessed the requisite intent to invade Plaintiffs' privacy, (iii) the alleged cookie placement was inadvertent and unknown to Google at the time, and (iv) the class suffered no legally cognizable injuries as a result of the alleged conduct.  *See* Grygiel Decl. ¶ 13.  While Class Counsel disagrees with Google's analysis, there is clearly no guarantee that Plaintiffs will prevail.

Even if Plaintiffs succeed at class certification, the merits of the case will also be hard fought.  The method that Google used to collect information is complicated, and it is anticipated that Google will vigorously dispute requested discovery.  Because of the complicated nature of this case involving the use of "cookies" and collection of data on the Internet by a sophisticated and well-funded tech giant, and given that the events at issue happened more than a decade ago, the nature of the litigation without settlement would very likely be protracted and drawn out, with the possibility of yet a third appeal by whichever party is unsuccessful on the merits before the district court.  This factor weighs in favor of approving the settlement.

iv.  <u>Rule 23(e)(2)(C)(ii): Adequacy of relief provided after accounting for effectiveness of any proposed distribution method</u>

Under this factor the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment.  This factor is not applicable here because the proposed settlement does not seek to establish a claims-processing mechanism.

v.  <u>Rule 23(e)(2)(C)(iii): The terms of any proposed award of attorney's fees, including the timing of payment</u>

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including the timing of payment."  The district court previously analyzed Class Counsel's request for attorney's fees and expenses and granted Class Counsel a fee equal to 35% of the settlement fund.  D.I. 173 at 11–12.  That fee award represented a negative multiplier measured against Class Counsel's hours devoted to the case.[12]  Counsel will be paid once the settlement is finally approved by the Court.  In addition, no Class Member—including objector Mr. Frank—timely objected to the Court's fee order, and it was not at issue during the appeal before the Third Circuit.[13]  This factor therefore weighs in favor of approving the Settlement.

vi.  <u>Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Rule 23(e)(3)</u>

Rule 23(e)(3) requires the settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the previously-provided Settlement Agreement is

---

[12] It should also be noted that Class Counsel is not requesting any additional attorneys' fees or reimbursement of any additional expenses incurred since the Court approved Class Counsel's request for attorneys' fees and expenses in 2017, despite the fact that Class Counsel has devoted significant additional time and incurred additional expenses since that time.

[13] Objector Mudrechenko does purport to object to the amount of attorneys' fees (D.I. 206) but, for the reasons explained in Class Counsel's separately-filed response to that objection, his objection is untimely and without merit.

the only agreement connected to this Settlement and it is available on the Court's docket, *see* D.I.

163-1, Ex. A, and on the Settlement website.  *See* La Count Decl. ¶ 23.

vii.   Rule 23(e)(2)(D): Equitable treatment of Class Members

Finally, Rule 23(e)(2)(D) requires the Court to determine that class members are treated

equitably and to prevent the "inequitable treatment of some class members vis-à-vis others."

Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.  All Class

Members—even those who opt-out and the two that have objected—are treated equally by the

proposed settlement in that each will benefit equally from the work that the *cy pres* recipients

will perform to educate, monitor, and analyze Internet privacy issues similar to the issues that

were litigated in this action.  In addition, each Class Member will equally benefit from Google's

pledge not to re-engage in the type of cookie placement that was at issue in this litigation.  Thus,

this factor supports approval of the proposed settlement.  In addition, the low number of

objections and opt-outs from the proposed settlement strongly suggests it is fair and reasonable.

*See In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001) (finding that a low number

of objectors and opt-outs strongly favors approval of the settlement).  Moreover, the alternative

to this proposed *cy pres* settlement—a distribution of a minute amount (likely pennies) to

potentially millions of Class Members—is less "equitable" than a *cy pres* settlement that would

result in several Internet-protection entities monitoring the conduct of Google and other tech

giants in order to prevent similar conduct from occurring again in the future.

4.   The *Girsh* factors strongly support approval of the Settlement

In addition to being consistent with public policy and presumptively valid, the proposed

Settlement also satisfies the relevant *Girsh* factors—factors established by the Third Circuit for

determining whether a proposed settlement is "fair, adequate and reasonable."  *See Girsh v.*

*Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  The *Girsh* factors are: (1) the complexity, expense,

and likely duration of the litigation; (2) the reaction of the Class to the Settlement; (3) the stage

of the proceedings and the amount of discovery completed; (4) the risks of establishing liability;

(5) the risks of establishing damages; (6) the risks of maintaining the class action through trial;

(7) the ability of Defendant to withstand a greater judgment; (8) the range of reasonableness of

the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of

the Settlement Fund in light of all the attendant risks of litigation.[14]  *Id.* at 156–57.  Satisfaction

of the *Girsh* factors demonstrates that the Settlement is fair, reasonable, and adequate, and that

final approval of the Settlement should be granted.

i.   <u>Complexity, expense, and likely duration of the litigation</u>

The first *Girsh* factor captures "the probable costs, in both time and money, of continued

litigation," weighing the potential risks and rewards of proceeding with litigation against the

likelihood of success and the benefits of an immediate settlement.  *Bryan v. Pittsburgh Plate

Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974).  This factor weighs strongly in favor of approval of

the Settlement here.

When the Settlement was reached, only two claims remained after the Third Circuit's

decision—a claim for intrusion upon seclusion under California common law and a claim for

violation of the California Constitution's right to privacy.  The Third Circuit affirmed dismissal

of Plaintiffs' statutory claims that would have provided statutory damages and would, therefore,

have been easier to certify as class actions.  Further, while privacy cases permit awards of

---

[14] "The Third Circuit has observed that in assessing the fairness of a proposed settlement, the
Court should be careful not to substitute its image of an ideal settlement for the compromising
parties' views: "'The evaluating court must, of course, guard against demanding too large a
settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a
yielding of the highest hopes in exchange for certainty and resolution.'"  *In re Prudential Ins.
Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997) (quoting *In re Gen.
Motors Corp.*, 55 F.3d at 806); *see also id.* ("Thus, the issue is whether the settlement is adequate
and reasonable, not whether one could conceive of a better settlement.").

23

damages, privacy injuries can be "very difficult to prove."  *Pichler v. UNITE*, 542 F.3d 380, 399

(3d Cir. 2008) (quotation omitted).  While Plaintiffs are confident in their position and believe

their remaining claims are strong, Class Counsel are experienced and realistic and know that the

guaranteed relief and certainty achieved through settlement—as opposed to the uncertainty

inherent in the trial and appellate process—weighs in favor of settlement.  Strange Decl. ¶ 11;

Frickleton Decl. ¶ 8; Grygiel Decl. ¶ 18.

This uncertainty is highlighted by Google's adamant position throughout the litigation

that it never deliberately intended to invade Plaintiffs' or Class Members' privacy and that the

alleged cookie placement on web browsers was an inadvertent error caused by an unadvertised

feature of the web browser that was unknown to Google.  In sum, Google is represented by able

counsel who have mounted a vigorous defense, and no doubt would continue to do so.

Moreover, the damages issues in this case are untested, particularly with respect to theories of

general damages in cases alleging constitutionally-based state privacy claims.  Whether Class

Plaintiffs are entitled to general or nominal damages per Class Member and the amount of such

damages under these circumstances would be hotly contested.  And while Class Counsel may

disagree with Google's positions and have confidence in the strength of the case, the Settlement

guarantees significant recovery to the Class that is uncertain if the litigation continues.  The

complexity, expense, and duration of the litigation favor approval of the Settlement.

ii.   Reaction of the Class to the Settlement

This *Girsh* factor "attempts to gauge whether members of the class support the

settlement."  *Prudential*, 148 F.3d at 318.  A lack of significant objections by Class Members

weighs in favor of approving the Settlement.  *See Linerboard*, 296 F. Supp. 2d at 577–78.  And

while it is common for some Class Members to object to a proposed settlement, class settlements

are often approved over the objections of many class members.  *See, e.g.*, *In re Domestic Air*

24

*Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (approving class action settlement notwithstanding a large number of objectors).

The Notice Plan disseminated notice to Safari and Internet Explorer users for a six-week period via online advertisements, targeted social media engagement, and via *People* magazine. La Count Decl. ¶¶ 9–19.  As of August 3, 2022, Class Counsel have received just two objections and 38 valid requests for exclusion from the Settlement.  *Id.* ¶¶ 27–29 & Ex. 4.  Class Counsel will respond to the objections in separate filings, but one of the objections was posed by an individual who is likely not a Class Member (due to being located outside of the United States during the Class Period) and the other objection is raised by a professional objector who is opposed to many forms of class action settlements as a philosophical matter.

To date, the reaction of the Settlement Class Members has been favorable, which strongly supports final approval of the Settlement.

### iii.   Stage of the proceedings

This factor captures "the degree of case development that class counsel have accomplished prior to settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d at 235 (quotation omitted).

Prior to the Settlement, Class Counsel made a thorough investigation into the facts and circumstances relevant to the claims at issue in this litigation, as reflected in the detailed Complaints filed in this action.  *See* Strange Decl. ¶ 5; Frickleton Decl. ¶ 3; Grygiel Decl. ¶ 9.  In addition, the parties have engaged in exhaustive motion and appellate practice in this case and Class Counsel have developed a thorough understanding of the strengths and weaknesses of the case, putting them in a position to make an informed judgment as to the merits of the litigation and the likelihood of its success.  This factor supports final approval of the Settlement.

25

iv.    Risks of establishing liability

The fourth factor seeks to determine "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant Corp. Litig.*, 264 F.3d at 237 (quotation omitted). "In examining this factor, the Court need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quotation omitted).

As discussed above, while Class Counsel believe their case against Google is strong, are prepared to present evidence that Google's cookie circumvention technique violated California common and constitutional law, and that the case should be certified as a class action, Google is equally prepared to mount a vigorous defense. Strange Decl. ¶ 13; Frickleton Decl. ¶ 8; Grygiel Decl. ¶ 18. Class Counsel are experienced in this type of litigation and recognize the inherent risks in proceeding to trial. *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("Here, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict the way in which a jury will resolve disputed issues."). "As is true in any case, the proposed Settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006).

In addition, the passage of time has created another risk that supports the adequacy of the proposed Settlement. The Class Period encompasses Google's alleged placement of cookies on users' Internet browsers between 2011 and 2012. By the time of trial, memories of key witnesses may well have faded. And the privacy rights invaded by Google's alleged conduct

26

will be further removed from current time. This presents challenges to putting forth the case and supports approving the Settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that an "anticipated motion for summary judgment, and . . . [i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," which militated in favor of approval of the settlement).

Given the risks of establishing liability, Class Counsel believe that the proposed Settlement with Google provides meaningful and certain benefits to the Class and this factor supports final approval of the proposed Settlement. *See In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 487 (E.D. Pa. 2010) ("If it would be difficult for a plaintiff to establish liability, this factor favors settlement.").

v.   <u>Risks of establishing damages</u>

This *Girsh* factor looks to the "expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d at 238 (quotation omitted). As discussed above, this case has already been dismissed by this Court, been through two appeals to the Third Circuit, and returned to this Court for consideration of two causes of action that do not provide statutory damages. Even if Plaintiffs overcame the obstacles of establishing liability and certifying the case as a class action, establishing a right to and an amount of damages would present further difficulties and uncertainties. Google would likely present expert testimony to refute Plaintiffs' expected damages theories and the jury may award lower damages than Plaintiffs seek or no damages at all. In such cases, courts regularly recognize that this factor favors approval of a proposed settlement. *See, e.g.*, *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003) (competing expert opinions add uncertainty as to how much money, if any, the class might recover at trial). The fifth *Girsh* factor favors final approval.

27

### vi.   Risks of maintaining the class action through trial

Because "the prospects for obtaining [class] certification have a great impact on the range of recovery one can expect to reap from the action, this [*Girsh*] factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537.   Under Federal Rule of Civil Procedure 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1101 (3d Cir. 1986).   Accordingly, obtaining and maintaining class certification is not without risks.   Because there "will always be a 'risk' or possibility of decertification," "the court can always claim this factor weighs in favor of settlement." *Prudential Agent Actions*, 148 F.3d at 321.   Thus, while Class Counsel believe they could certify a class in this case, the risk of maintaining a class through trial is a consideration that makes this *Girsh* factor weigh in favor of approving the proposed Settlement.

### vii.   Ability of Defendant to withstand a greater judgment

The seventh *Girsh* factor weighs "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240.   While Class Counsel believes Google has the ability to withstand a greater judgment, based on the numerous risks and uncertainties noted above, Class Counsel believe the proposed Settlement is beneficial to the Class.   Moreover, courts accord this factor little weight in assessing the fairness, reasonableness, and adequacy of a proposed settlement—that a defendant is enormously wealthy cannot alter the judgment of experienced counsel, fully knowledgeable of the law and facts of the case, that rejecting a settlement and continuing litigation creates a substantial risk that class members will receive no benefit at all. *See, e.g.*, *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 645 (E.D. Pa. 2015) (Third Circuit courts "regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts");

*Lazy Oil*, 95 F. Supp. 2d at 318 (finding defendant's ability to pay a greater judgment did not weigh against approving settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial").  Therefore, this factor does not weigh against approving the proposed Settlement and is, at worst, neutral.

> viii.  Range of reasonableness of the Settlement Fund in light of the best possible recovery and all the attendant risks of litigation

Finally, the last two *Girsh* factors seek to determine the reasonableness of the Settlement Fund in light of the best possible recovery and in light of all the attendant risks of litigation.

Class Counsel estimates that millions of users of Safari and Internet Explorer web browsers have been affected by Google's alleged conduct during the relevant time period and that those users are geographically dispersed throughout the United States.  However, determining the exact identity of each Class Member may never be possible given the difficulties in knowing all the users of a particular web browser during a defined time.  And, even if the exact number and identity of each Class Member could be determined, any recovery (however large) would result in a distribution that likely costs more to distribute than it's worth.  In such situations, courts recognize the benefits of and regularly approve *cy pres* settlements for the benefit of the Class as a whole.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("[W]hen a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible . . . *cy pres* distribution avoids these difficulties . . . [and] federal courts have frequently approved this remedy in the settlement of class actions where proof of individual claims would be burdensome or distribution of damages costly." (citations omitted)).

Here, the proposed Settlement will place Class Members in the position they were before Google's alleged conduct started, and Google will provide Class Counsel with assurances that it implemented systems configured to stop the offending conduct.  S.A. § 5.1.  The Settlement will also provide a benefit to Class Members and the greater public through *cy pres* contributions to organizations dedicated to promoting and researching Internet and web browser security and privacy.  *Id.* § 5.3.2; *see also Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013) ("A foundation that receives $10,000 can use the money to do something to minimize violations of the [relevant law]; as a practical matter, class members each given $3.57 cannot.").  These remedies, coupled with the injunctive and monetary penalties already obtained by the government against Google on behalf of consumers, renders the proposed Settlement reasonable for Class Members and these *Girsh* factors weigh in favor of approval.

5.    The Applicable *Prudential* Factors Also Favor Settlement

In addition to the Rule 23(e) and *Girsh* factors, the Third Circuit has also identified a series of non-exclusive factors to consider for a "thoroughgoing analysis of settlement terms." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 268 (E.D. Pa. 2012). The factors are:

(1) The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2) The existence and probable outcome of claims by other classes and subclasses;

(3) The comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved— for other claimants;

(4) Whether class or subclass members are accorded the right to opt out of the settlement;

(5) Whether any provisions for attorneys' fees are reasonable; and

(6) Whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323. Each factor is addressed in turn below.

30

The first *Prudential* factor is an amalgam of the *Girsh* and Rule 23(e) factors. As discussed above, the probable outcome of a trial on liability and damages, as well as Class Counsel's investigation and extensive work on the case for more than 10 years, all support approval. *See supra*, Sections II.C.2, II.D.4.i, II.D.4.iii–vi, II.D.4.viii.

The second and third *Prudential* factors "look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2020 WL 1922902, at *23 (E.D. Pa. Apr. 21, 2020). In this case, all civil class actions filed against Google for the alleged conduct were consolidated in this MDL proceeding, so there are no other classes or claimants to compare the settlement against. Thus, these factors are inapplicable here.

The fourth *Prudential* factor supports approval because potential class members had the right to exclude themselves from the settlement and not be bound by its terms. *See* La Count Decl. ¶ 25.

The fifth *Prudential* factor—concerning the reasonableness of attorneys' fees—also favors approval. As discussed in Section II.D.3.v above, the district court has already determined and ordered a reasonable award of attorneys' fees to Class Counsel and the district court's ruling was not challenged by the objector on appeal. *See* D.I. 173; *see also Sourovelis v. City of Phila.*, 515 F. Supp. 3d 321, 339 (E.D. Pa. 2021) ("The fifth [*Prudential*] factor also favors approval. As discussed in a separate order granting counsel's unopposed fee petition, the Court has concluded that counsel's fees are reasonable.").

Finally, the sixth *Prudential* factor is inapplicable in this case, as the proposed settlement does not contemplate instituting a claims process.

### E.  Notice Was Proper Under Rule 23 and Constitutional Due Process

The Court must also determine that the proposed Settlement's Notice Plan was appropriate. Under Federal Rule of Civil Procedure 23, the Court must direct "the best notice

31

that is practicable under the circumstances" to Class Members who would be bound by a proposed class settlement.  Recent amendments emphasize that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).

To satisfy the requirements of Rule 23 and constitutional due process, notice of a proposed class settlement must be "designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'"  *Prudential Agent Actions*, 148 F.3d at 326–27 (quoting 2 *Newberg* § 8.32).  But the "notice need not be unduly specific."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

Here, the Notice and Summary Notice provided all of the requisite information and material terms of the Settlement to potential Class Members, including the relief provided under the Settlement, the location of the fairness hearing to be held at a future date set by the Court, the procedures and deadlines for opting-out of or submitting objections to the Settlement, and that Class Members would be bound by any final judgement in this case if they did not opt-out of the Settlement.  *See* La Count Decl. ¶ 23.

The method of notice also complied with Rule 23 and constitutional due process.  Notice was provided to Internet users—the same method of interaction that would have caused an individual to become a potential Class Member in the first instance—using the Safari and Internet Explorer web browsers through electronic advertisements on websites determined by the Class Administrator to be heavily trafficked.  *Id.* ¶¶ 14–19.  This notice period extended for six weeks.  *Id.* ¶ 10.  In addition, notice was provided through targeted Facebook, Instagram, and Reddit social media advertisements and through a *People* magazine advertisement.  *Id.* ¶¶ 11, 16.

32

Finally, this Court already "re-approve[d] the form and method of notice originally provided by counsel" during the original notice period in its order preliminarily approving the Settlement.  D.I. 203 at 2.  Thus, the Notice Plan satisfied Rule 23 and constitutional due process and the proposed Settlement should be finally approved.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order lodged concurrently herewith, find that the proposed Settlement is fair, reasonable, and adequate, and grant final approval.

Dated:  August 8, 2022

Respectfully submitted,

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Blvd., Suite 420
Los Angeles, CA 90025
Tel: 310-207-5055
*brian@strangellp.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON,
and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**SILVERMAN THOMPSON SLUTKIN WHITE**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@silvermanthompson.com*

*Executive Committee Member*