## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (ER) |
| This Document Relates to:<br>**All Actions** | |

## CLASS PLAINTIFFS' RESPONSE TO OBJECTION OF THEODORE H. FRANK TO SETTLEMENT APPPROVAL, CLASS CERTIFICATION AND REQUEST FOR <u>ATTORNEYS' FEES</u>

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ARGUMENT.......................................................................................................................4

I.  THE COURT WILL FULFILL ITS FIDUCIARY OBLIGATION TO THE CLASS
    BY GRANTING FINAL SETTLEMENT APPROVAL...........................................4

    A.  Settlement Is Offspring of Compromise; That Mr. Frank Does Not
    Like It Does Not Mean It Is Not Fair, Adequate, and Reasonable...................4

    B.  Mr. Frank Ignores The Rule That The Views Of Experienced
    Counsel Count....................................................................................................5

    C.  Mr. Frank Ignores the Class-Protective Role Played By The Mediator...........6

    D.  Mr. Frank Mis-States Third Circuit Law On the Presumption of Fairness....6

II.  RULE 23(b)(3) CERTIFICATION IS APPROPRIATE.............................................8

    A.  The Court Already Found The Ascertainability Element Satisfied.................8

    B.  Ascertainability Is Manageability Issue Inapplicable to Settlement Class.......8

III.  ADEQUACY OF REPRESENTATION REQUIREMENT IS FULLY
     SATISFIED..............................................................................................................9

    A.  Cy Pres-Only Settlement Does Not Betoken Inadequate Representation........9

    B.  The Releases Do Not Show Inadequacy of Representation............................10

    C.  Notice Program Satisfied Due Process and Rule 23(c)(2) And Does Not Show
    Inadequacy........................................................................................................11

IV.  THIS CY PRES-ONLY SETTLEMENT SATISFIES THE SUPERIORITY
     REQUIREMENT....................................................................................................14

V.  PROVISION OF UPDATED SETTLEMENT AGREEMENT IS NOT
    REQUIRED.............................................................................................................15

VI.  ENTIRELY CY PRES SETTLEMENT DOES NOT "UNFAIRLY DENY
     COMPENSATION TO CLASS MEMBERS"........................................................15

VII.  FRANK'S "COMPELLED SPEECH" ARGUMENT IS LEGALLY AND
      FACTUALLY BASELESS....................................................................................17

CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................. 9

*Bedrosian v. U.S. Dep't of Treasury*,
    No. 21-1583, 2022 WL 2899266 (3d Cir. July 22, 2022)........................................ 8

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015)..................................................................................... 9

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................. 12

*City of Detroit v. Grinnell Corp.*,
    356 F. Supp. 1380 (S.D.N.Y. 1972)........................................................................ 17

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
    No. 07 Civ. 10329(RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ................... 3

*Comm'r v. Sansome*,
    60 F.2d 931 (2d Cir. 1932)..................................................................................... 19

*Demmick v. Cellco P'ship*,
    No. 06-2163 (JLL), 2015 WL 13643682 (D.N.J. May 1, 2015)................................ 6

*Dickerson v. York Int'l Corp.*,
    No. 1:15-cv-1105, 2017 WL 3601948 (M.D. Pa. Aug. 22, 2017)............................. 5

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019)........................................................................................... 10

*Fulton-Green v. Accolade, Inc.*,
    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sep. 24, 2019) ........................................ 5

*Gooch v. Life Invs. Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012) ................................................................................. 13

*Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019)............................................................. 10, 11, 16, 18

*Gray v. BMW of N. Am., LLC*,
    No. 13-cv-3417 (WJM), 2017 WL 3638771 (D.N.J. Aug. 24, 2017)........................ 5

*Harris v. Quinn*,
    573 U.S. 616 (2014)................................................................................................ 18

*Huang v. Spector*,
    142 S. Ct. 431 (2021)................................................................................................ 3

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987)................................................................................... 14

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)................................................................................... 11

*In re Cendant Corp., Deriv. Action Litig.*,
    232 F. Supp. 2d 327 (E.D. Pa. 2007) ..................................................................... 2

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
    656 F. App'x 8 (3d Cir. 2016) ............................................................................... 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)................... 3

*In re Gen. Motors Corp. Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ............................................................................... 2

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).................................................................................. 5, 6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015)................................................................................. 10

*In re Google Referrer Header Privacy Litig.*,
    869 F.3d 737 (9th Cir. 2017) ................................................................... 10, 14, 16

*In re Google, Inc. Street View Elec. Commc'n Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ....................................................................... passim

*In re Integra Realty Res., Inc.*,
    262 F.3d 1089 (10th Cir. 2001) ........................................................................... 13

*In re Nat'l Football League Players' Concussion Injury. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015)............................................................................. 6

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997).............................................................................. 13

*In re Remicade Antitrust Litig.*,
   No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) .................................................. 6

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   No. 3:15-cv-07658-MAS, 2020 WL 3166456 (D.N.J. June 15, 2020)....................................... 6

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)....................................................................................................... 5

*James v. Glob. Tel\*Link Corp.*,
   No. 2:13-cv-04989-WJM, 2020 WL 6197511 (D.N.J. Oct. 22, 2020)....................................... 6

*Jones v. Monsanto Co.*,
   38 F.4th 693 (8th Cir. 2022) ........................................................................................ 17, 18, 19

*Kumar v. Salov N. Am. Corp.*,
   No. 14-cv-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017)........................................... 3

*Lake v. First Nationwide Bank*, \
   900 F. Supp. 726 (E.D. Pa. 1995) ............................................................................................. 5

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................................... 10

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010)...................................................................................... 4

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).................................................................................................................. 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................................... 17

*Pub. Interest Research Grp. v. Magnesium Elektron*,
   123 F.3d 111 (3d Cir. 1997)....................................................................................................... 8

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ..................................................................................................... 5

*Remick v. City of Phila.*,
   No. 20-1959, 2022 WL 2703601 (E.D. Pa. July 12, 2022) ........................................................ 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................................... 7

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. May 7, 2010)........................................................ 17

*Stechert v. Travelers Home & Marine Ins. Co.*,
    No. 17-0784, 2022 WL 2304306 (E.D. Pa. June 27, 2022)..................................... 7

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)................................................................................ 7, 9

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
    No. 19-1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022)...................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................. 12

*Watkins v. Spector*,
    142 S. Ct. 765 (2022).......................................................................................... 3

*Williams v. Reckitt Benckiser LLC*,
    No. 20-23564-CIV, 2021 WL 4459454 (S.D. Fla. Sept. 29, 2021)......................... 1

**Other Authorities**

Developments in the Law Class Actions, 89 Harv. L. Rev. 1318, 1552 (1976))........................ 2

**Rules**

Fed. R. Civ. P. 23(e) ....................................................................................... 16

Class Plaintiffs, by and through undersigned counsel, respond to the Objection of Theodore H. Frank to Plaintiff's Motion for Final Settlement Approval, Class Certification, and Attorneys' Fees (the "Objection").[1]  D.I. 207, 207-1, 207-2.

## INTRODUCTION

Mr. Frank's litany of complaints about the settlement fail.  Mr. Frank's contention that *cy pres*-only settlements are improper underpins all of his arguments but for his "insufficient notice" argument.  But the Third Circuit, in what is now the law of the case, has already rejected Mr. Frank's objection to the *cy pres*-only settlement and ruled that, in circumstances like those here, *cy pres*-only settlements are proper.  Mr. Frank's arguments about notice go nowhere. Class Members have received extensive and detailed notice not once, but twice, about all essential terms of the settlement.  That fully satisfies constitutional due process and Fed. R. Civ. P. 23(e).

A few initial points put the Objection into perspective.  First, however nobly Mr. Frank describes his mission—"Per Frank's own words, 'CCAF's [Center for Class Action Fairness's] mission is to litigate on behalf of class members against unfair class action procedures and settlements,'" *Williams v. Reckitt Benckiser LLC*, No. 20-23564-CIV, 2021 WL 4459454, at *4– 6 (S.D. Fla. Sept. 29, 2021)—his entire business is objecting to class action settlements he deems unworthy, which amount to a very large number.[2]  *See Williams*, 2021 WL 4459454, at *4–6 (discussing Mr. Frank's work and noting "Frank has received both praise and criticism" (citing cases)).  When one's business is objecting to class settlements, one will conjure problems where they do not exist, creating a conflict between the objector and the class members—just as is the

---

[1] Class Plaintiffs incorporate by reference all previous filings in support of settlement approval.

[2] "CCAF has represented objectors in more than a hundred settlements . . . ."  D.I. 207 at 10.

case here. *See generally In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 n.25 (7th Cir. 1979) (noting the conflict of interest created not only by counsel seeking large fees after settlement, but also by counsel pursuing "his own ideological goals without regard to the desires of class members" (quoting Developments in the Law Class Actions, 89 Harv. L. Rev. 1318, 1552 (1976))).[3]

Employing his unique ability to allege standing for himself or a proxy, Mr. Frank's initial professional objection factory, the "Center for Class Action Fairness" ("CCAF"), apparently part of the "Competitive Enterprise Institute," appears in some 88 federal cases. Mr. Frank's newest entity, the "Hamilton Lincoln Law Institute,"[4] shows up in at least 35 federal cases.[5] In *Williams*, the court required Mr. Frank to provide detailed disclosures about his objection history. *See* **Exhibit A**. Mr. Frank's 49-page response, while unsurprisingly unsubstantiated in places, shows that Mr. Frank's profession is objecting to class action settlements. *See* **Exhibit B**.

Second, Mr. Frank's is one of just two objections to the settlement in this case. The absence of objections supports the fairness, reasonableness, and adequacy of the settlement. *See In re Cendant Corp., Deriv. Action Litig.*, 232 F. Supp. 2d 327, 333–34 (E.D. Pa. 2007). The paucity of objections is not due to insufficient notice. The settlement has now been publicized extensively through not just one, but two, extensive notice programs blessed by the Court, as described more fully in the Memorandum of Law in Support of Plaintiffs' Motion for Final

---

[3] Mr. Frank's website reveals his ideological predisposition against class actions. *See, e.g.*, Hamilton Lincoln Law Inst., http://hlli.org/category/news (last visited Aug. 8, 2022) (discussing HLLI's comment on the SEC's proposed rule on "climate-related disclosures," saying the rule "will lead to costly and frivolous securities class-action lawsuits that will primarily enrich class-action lawyers. . . .").

[4] *See* hlli.org (last visited Aug. 8, 2022) ("As of January 2019, the Center for Class Action Fairness is now part of the Hamilton Lincoln Law Institute, a new non-profit public interest law firm.").

[5] Appearances (not necessarily all objections), based on Westlaw search as of July 28, 2022.

Approval of Settlement with Google ("Plaintiffs' Memo").

Third, Mr. Frank is not reliably on the side of the fiduciary angels. His inveterate

suspicion of class settlements has led him into error before, as it does now:

> Theodore Frank, a lawyer and director of the Hamilton Lincoln Law Institute, is in the business of objecting to class action settlements and has previously and unsuccessfully made some of the same or similar objections that he has made here. *See Target*, 2017 WL 2178306, at *6 (rejecting objection that an allegedly fundamental intra-class conflict existed in a data breach case because class members could assert claims under various state statutes); *Poertner*, 618 F. App'x at 628–29 (rejecting objection that the proposed fee was unfair, finding Frank had improperly limited the monetary benefits to the class and excluded the substantial non-monetary benefits of the settlement). The Court also finds that Frank disseminated false and misleading information about this settlement in an effort to encourage others to object in this case and directed class members to object using the "chat-bot" created by Class Action Inc., notwithstanding that it contained false and misleading information about the settlement. These actions are improper and further support a finding that Frank's objection is not motivated to serve the interests of the class. *See Manual* § 21.33 ("Objectors to a class settlement or their attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out.").

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL

256132, at *42 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part, rev'd in part on other grounds*

*and remanded*, 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S.

Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *see also*

*Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411-YGR, 2017 WL 2902898, at *4–6 & n.4 (N.D.

Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (dismantling all of Mr. Frank's

objections and noting "[t]he arguments he makes here are similar to those rejected by other

courts"; *id.* (citing *City of Livonia Emps.' Ret. Sys. v. Wyeth*, No. 07 Civ. 10329(RJS), 2013 WL

4399015, at *5 (S.D.N.Y. Aug. 7, 2013) ("Petri's objection on this count does not seem

grounded in the facts of this case, but in her and her attorney's [Ted Frank's] objection to class

actions generally."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (criticizing CEI's objections as "long on ideology and short on law" (citation omitted)).

Fourth, although the Objection begins with a negative spin on the settlement amount—"Plaintiffs filed a complaint alleging billions of dollars in statutory damages . . . before settling for $5.5 million" (D.I. 207 at 1)—Mr. Frank nowhere argues that the $5.5 million settlement is monetarily inadequate. In fact, he concedes otherwise. *See id.* at 18 n.3 ("None of this is to say that the case should have settled for $55m instead of $5.5m.").

Fifth, Mr. Frank's aspersions on attorneys' fees (*see id.* at 7 ("hefty payday"); *id.* at 8 ("sizeable clear-sailing attorneys' fee")) provide no support for his Objection. The Court has already approved the attorneys' fees, to which no Class Member, even Mr. Frank timely objected and which, in any event, do not come close to covering Class Counsel's lodestar.

## ARGUMENT[6]

I.  **THE COURT WILL FULFILL ITS FIDUCIARY OBLIGATION TO THE CLASS BY GRANTING FINAL SETTLEMENT APPROVAL**

Class Counsel agree with Mr. Frank that the Court has a fiduciary duty to absent Class Members, and that judicial scrutiny is particularly close where, as here, class certification and settlement approval are contemporaneously sought. D.I. 207 at 4–5, 12. Exercise of that fiduciary duty and close scrutiny shows final settlement approval is fully warranted.

A.  **Settlement Is Offspring of Compromise; That Mr. Frank Does Not Like It Does Not Mean It Is Not Fair Adequate And Reasonable**

Mr. Frank's inherent suspicion of class action settlements, reflected in his citation to

---

[6] Frank's first "Argument," that he "is a class member and intends to appear through counsel at the fairness hearing" (D.I. 207 at 3–4) requires no response other than to note that Class Counsel reserve the right to question Mr. Shulman about the bases for Mr. Frank's claimed standing and the grounds for his objections.

*Redman v. RadioShack Corp.*, 768 F.3d 622, 688 (7th Cir. 2014) (D.I. 207 at 5),[7] overlooks the reality that "settlements are by definition the product of compromise, and the possibility 'that a settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate.'" *Gray v. BMW of N. Am., LLC*, No. 13-cv-3417 (WJM), 2017 WL 3638771, at *3 (D.N.J. Aug. 24, 2017) (overruling objection); *see also Dickerson v. York Int'l Corp.*, No. 1:15-cv-1105, 2017 WL 3601948, at *9 (M.D. Pa. Aug. 22, 2017) (overruling objections and stating: "Settlements necessarily require 'yielding of the highest hopes in exchange for certainty and resolution.'" (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995))).

### B.    Mr. Frank Ignores The Rule That The Views Of Experienced Counsel Count

Frank's distrust of class settlements, in which his entire Objection is grounded, also ignores the legal rule that, in evaluating a settlement, "courts have given considerable weight to the views of experienced counsel as to the merits of a settlement." *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *9 (E.D. Pa. Sep. 24, 2019) ("'Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.'" (citing *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995))).  As Class Counsel's declarations demonstrate, Class Counsel are highly experienced, including in privacy rights cases.  They also have a great deal of actual trial experience, giving them the necessary perspective to judge that the settlement they achieved was the best they could get and was a superior alternative for the class than continued litigation, contested class certification,

---

[7] *Redman*'s discounting of the significance of arm's-length negotiations differs from the Third Circuit's approach in which the presence of such negotiations is one factor supporting a presumption of fairness.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

summary judgment, trial, and the inevitable appeal. If courts do not "second-guess" settlement

decisions made by experienced counsel intimately familiar with their case (*James v. Glob.*

*Tel\*Link Corp.*, No. 2:13-cv-04989-WJM, 2020 WL 6197511, at \*8 (D.N.J. Oct. 22, 2020)),

objectors similarly have no basis to do so.

### C.    Mr. Frank Ignores the Class-Protective Role Played By The Mediator

Frank also ignores the role of the highly regarded mediator, Layn Phillips, a retired

federal judge, in bringing about this settlement, as described in Plaintiffs' Memo. *See, e.g.*, *In re*

*Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS, 2020 WL 3166456, at \*7–8

(D.N.J. June 15, 2020); *Demmick v. Cellco P'ship*, No. 06-2163 (JLL), 2015 WL 13643682, at

\*6 (D.N.J. May 1, 2015) ("[U]se of a mediator [Judge Layn Phillips] with respect to the present

settlement is persuasive evidence that the negotiations were hard-fought, arms-length affairs.").

No one can gainsay Judge Phillips's experience and expertise. *See, e.g.*, *In re Nat'l Football*

*League Players' Concussion Injury. Litig.*, 307 F.R.D. 351, 363 (E.D. Pa. 2015), *as amended*,

2015 WL 12827803 (appointing Judge Phillips mediator in massive, complex case case).

### D.    Mr. Frank Mis-States Third Circuit Law On The Presumption Of Fairness

Citing the Am. Law Institute's Principles of the Law of Aggregate Litig. § 3.05(c)

(2010), Mr. Frank asserts that no presumption of fairness applies to a class settlement. D.I. 207

at 5. But very recent class certification decisions in the Third Circuit say otherwise. *See, e.g.*, *In*

*re Remicade Antitrust Litig.*, No. 17-cv-04326, 2022 WL 3042766, at \*10 (E.D. Pa. Aug. 2,

2022) (preliminary approval; "The settlement is entitled to 'an initial presumption of fairness' if

'the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient

discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only

a small fraction of the class objected." (quoting *In re Gen Motors Corp.*, 55 F.3d at 785));

*Remick v. City of Phila.*, No. 20-1959, 2022 WL 2703601, at *3 (E.D. Pa. July 12, 2022) ("At the outset, the Court will afford the Settlement Agreement a presumption of fairness."); *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784, 2022 WL 2304306, at *8–9 (E.D. Pa. June 27, 2022) (finding "the Settlement is entitled to an initial presumption of fairness" because bargained at arm's-length, sufficient discovery was done, settlement's proponents were experienced in similar cases, and only "small fraction" of class objected).  All four factors supporting the initial presumption of fairness exist here.  Mr. Frank shows nothing to the contrary.

Mr. Frank's citation to the Third Circuit's opinion in this case, that judicial settlement scrutiny "should be even more scrupulous than usual" when class certification and settlement approval are contemporaneous (D.I. 207 at 5) does *not* support his argument that no presumption of fairness applies.  That closer judicial scrutiny simply also applies to the determination of the initial presumption of fairness.  *See Stechert*, 2022 WL 2304306, at *8 (applying initial presumption of fairness in conjunction with the "more scrupulous" examination).

The initial presumption of fairness is fully consistent with the Third Circuit's view that the Court's "'intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'"  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 325 n.58 (3d Cir. 2011) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Mr. Frank can point to no fraud or overreaching.  Class Counsel did not even recover their lodestar and the Court long ago approved Class Counsel's attorneys' fees.  Mr. Frank just does not like the structure of the settlement.  But that is no basis whatsoever for not approving it.

## II.    RULE 23(b)(3) CERTIFICATION IS APPROPRIATE

### A.    The Court Already Found The Ascertainability Element Satisfied

Mr. Frank's ascertainability argument against Rule 23(b)(3) certification (D.I. 207 at 5–7) boils down to the proposition that ascertainability is a free-standing approval requirement in the settlement class certification context.  It is not, as explained in detail in the answer to the Court's question of "Whether and how the proposed Rule 23(b)(3) class can meet the Third Circuit's ascertainability requirement" provided in the Joint Supplement in Support of Motion for Preliminary Approval of Class Action Settlement (D.I. 202 at 1–6) ("Joint Supplement").

After receiving the Joint Supplement, the Court issued its Order granting preliminary settlement approval.  That Order stated: "[T]he portions of the Third Circuit's ascertainability inquiry that are relevant to a settlement class" "have been met."  D.I. 203 at 1–2.  That is now the law of the case.  *See Bedrosian v. U.S. Dep't of Treasury*, No. 21-1583, 2022 WL 2899266, at *4 (3d Cir. July 22, 2022) ("[L]aw-of-the-case doctrine . . . prevents reconsideration of legal issues already decided in earlier stages of a case." (citing *Pub. Interest Research Grp. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997)).  Although an exception to the law-of-the-case doctrine exists where the previous ruling was "clearly erroneous," *id.*, Mr. Frank makes no showing that the Court's previous ascertainability ruling was incorrect, let alone "clearly erroneous."

### B.    Ascertainability Is Manageability Issue Inapplicable To Settlement Class

Leaving aside that the ascertainability issue is already decided, Mr. Frank admits, as he must, that *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.* ("*Comcast*"), 656 F. App'x 8 (3d Cir. 2016), "supports the parties' reading" that the ascertainability requirement is a manageability concern, and manageability issues have no role in settlement classes.  D.I. 207 at

7.  But Mr. Frank's personal view that this unpublished opinion is "unpersuasive" counts for nothing.  *Comcast* reflects long-established Supreme Court and Third Circuit case law that manageability issues, such as ascertainability, present no obstacle to settlement class certification.  *See* D.I. 202 at 2–3 (discussing Third Circuit cases following *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("settlement-only class certification" obviates manageability inquiry "for the proposal is that there be no trial")).

Mr. Frank incorrectly asserts that *Sullivan v. DB Investments, Inc.* "had nothing to say about ascertainability at all."  D.I. 207 at 7.  *Sullivan*, on which *Comcast* relied, addressed manageability concerns, of which ascertainability is decidedly one, that are not at issue in settlement class certification.  *See Sullivan*, 667 F.3d at 302–04 & n.28, 306, 322; *see also id.* at 334–35 (Scirica, J., concurring).

Mr. Frank's reliance on *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, No. 19-1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022), is inapposite.  D.I. 207 at 5.  That case did not discuss the law that ascertainability is a manageability concern and immaterial to settlement class certification.  Nor would the issue have come up.  *Utah Retirement Systems* involved readily identifiable class members through "shareholder records."  *Id.* at *6.  *Utah Retirement Systems* cited *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), for the two-tiered ascertainability test Mr. Frank urges here.  But *Byrd* involved a litigation, not a settlement, class.

## III.    ADEQUACY OF REPRESENTATION REQUIREMENT IS FULLY SATISFIED

### A.  <u>*Cy Pres*-Only Settlement Does Not Betoken Inadequate Representation</u>

Mr. Frank's contention that the *cy pres*-only settlement signifies inadequate representation (D.I. 207 at 7–9) ignores the reality that settlement is a compromise, the rule that the views of informed and experienced counsel, who know the merits, strengths, and weaknesses

9

of the case and who negotiated the settlement, count for settlement approval, that the role of an

expert mediator powerfully signifies settlement validity, and that this settlement is entitled to the

presumption of fairness under valid Third Circuit's law.

      Mr. Frank's citations to cases criticizing settlements involving releases in exchange for *cy

pres*-only settlements provide no support for his inadequacy argument while eliding the legal

truth: in circumstances like this one, where the settlement fund is small and distributing funds to

Class Members would be economically irrational if it could be done at all, an entirely *cy pres*

settlement is proper.  The Third Circuit already said so in this case.  *See Google Inc. Cookie

Placement Consumer Privacy Litig.* ("*Google II*"), 934 F.3d 316, 328–29 (3d Cir. 2019); *see also

In re Google, Inc. Street View Elec. Commc'n Litig.*, 21 F.4th 1102, 1111, 1113 (9th Cir. 2021),

*petition for cert. docketed* (June 7, 2022); *Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir.

2012); *In re Google Referrer Header Privacy Litig.* ("*Google Referrer*"), 869 F.3d 737, 741 (9th

Cir. 2017), *vacated and remanded on diff. grounds*, *Frank v. Gaos*, 139 S. Ct. 1041 (2019).

### B.  <u>The Releases Do Not Show Inadequacy Of Representation</u>

      Complaining the settlement imposes "a plenary release" on Class Members who are not

receiving direct monetary payments (D.I. 207 at 8), Mr. Frank misses important points.  First, the

district court dismissed all of the Plaintiffs' claims.  On appeal, the Third Circuit upheld the

dismissals as to all but two claims, those alleging "California constitutional and tort claims."

*Google II*, 934 F.3d at 321 (citing *In re Google Inc. Cookie Placement Consumer Privacy Litig.*,

806 F.3d 125, 153 (3d Cir. 2015)).  Class Members are releasing claims that had already been

determined by a trial court and an appellate court to have no value.  Any Class Member who did

not want to release her claims needed only to opt-out, and was given two chances to do so.

Precious few did.  The lack of individual claims against Google for the conduct at issue in this case also demonstrates that Class Members are not inclined to bring any such claims anyway.

It is wrong to say the parties "'sidestepped' the class protections of Rule 23(b)(3)."  D.I. 207 at 8.  Those protections include due process compliant notice—which the Class Members got, twice; the right to opt-out and the right to object—again, both of which the Class Members got, twice; and proper judicial scrutiny of the settlement, which this settlement received in the district court, then in the Third Circuit, again in the district court on the renewed Motion for Preliminary Settlement Approval, and now on the Motion for Final Settlement Approval.  The class has been abundantly protected here.

### C.  Notice Program Satisfied Due Process And Rule 23(c)(2) And Does Not Show Inadequacy

Mr. Frank's assertion that the notice program shows inadequacy (D.I. 207 at 8–10) is easily disproven.  The class received a second round of notice, supplementing the first, and a plainly well-developed notice program.  The Court approved both the initial and the second notice.  D.I. 164, 205.  Notice need only "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).  Here, that requirement has been met twice, as the description of the notice program in Plaintiffs' Memo shows.  Both notice programs included, among other forms of notice, a settlement website with links to "Important Documents," including the Notice and Plaintiffs' Memorandum of Law in Support of Second Motion for Preliminary Approval of Settlement.  D.I. 194.  Both the Notice and the Memorandum of Law described Plaintiffs' hewing to the Third Circuit's directives concerning *cy pres* selection (*see Google II*, 934 F.3d at 330–31) and specified exactly how the process would

11

work.  Mr. Frank disliked the first *cy pres* selection process.  Now that the *cy pres* selection process has been put in the Court's hands, Mr. Frank still does not like it.

Mr. Frank speculates without support that Class Members might decide to opt-out if they knew the precise identities of the neutral tasked with choosing the *cy pres* recipients and of the *cy pres* recipients themselves.  Mr. Frank's is the only objection that makes this argument—and only one other objection was received.

As for Mr. Frank's argument that "there is no reason for why the neutral has not been chosen or announced yet in order to provide sufficient notice to the class," D.I. 207 at 9, the omission of the identification of the third-party neutral in the Preliminary Settlement Approval Order and the identities of the ultimate *cy pres* recipients are not material terms.  The Class was informed with clear notice, twice, that the settlement was entirely *cy pres*.  Three mouse clicks (first to the settlement website, second to the Important Documents link, and third to the Memorandum of Law for Preliminary Settlement Approval or to the Notice) told the Class all they needed to know about how *cy pres* recipients would be selected and what the criteria would be.  The criteria for eligible *cy pres* recipients were expressly described.  Class Members knew everything they needed to know about the *cy pres* selection process.

Notice need not, to pass muster, encompass the identities of the neutral or the *cy pres* recipients.  "Reasonableness" in describing the general terms of a settlement, not granular detail, is the touchstone for measuring the sufficiency of notice.  *See, e.g.*, *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice satisfactory "if it generally describes the terms of the settlement in sufficient detail"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005) (adequacy of settlement notice is reasonableness).

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (same). Both notice programs "fairly apprise[d] the class members of the terms of the proposed settlement and of their options." *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001). Both notices "inform[ed] the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012).

Further, Fed. R. Civ. P. 23(c)(2)(B) emphasizes the need for notice to be simple, clear, and brief, requiring that "notice must clearly and concisely state in plain, easily understood language" only seven things: (i) nature of the action; (ii) definition of certified class; (iii) the class's claims, issues, or defenses; (iv) class member's ability to enter an appearance through a lawyer; (v) the right to be excluded from the class upon request; (vi) the process for requesting exclusion; and (vii) the "binding effect of a class judgment." Both notice programs satisfied all these requisites.

Specifics such as the identity of a neutral charged with identifying *cy pres* recipients, and the identities of those *cy pres* recipients, exceed the scope of information required under Fed. R. Civ. P. 23(c)(2)(B). *See In re Prudential*, 177 F.R.D. at 231 (discussing "broad reasonableness standards imposed by due process" on notice (quotation omitted)); *id.* (stating "notice is designed to be only a summary of the litigation and the settlement" and "notice need not be unduly specific" or "include the entire settlement agreement" (citations omitted)). If omission of a

13

distribution plan from a settlement notice does not make notice inadequate (*see id.* (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987))), omission of details concerning how the well-described *cy pres* plan would work does not, either.

## IV.    THIS *CY PRES*-ONLY SETTLEMENT SATISFIES THE SUPERIORITY REQUIREMENT

Mr. Frank's argument that Rule 23(b)(3)'s superiority requirement precludes a *cy pres*-only settlement (D.I. 207 at 10–11) simply recycles the Objection's incorrect throughline that *cy pres*-only settlements are impermissible.  In rejecting the same "no superiority" argument by Mr. Frank, the Ninth Circuit in *Google Referrer* stated: "[W]e easily reject Objector's argument that if the settlement fund *was* non-distributable, then a class action cannot be the superior means of adjudicating this controversy under Rule 23(b)(3)."  *Google Referrer*, 869 F.3d at 742. Discussing the efficiency predicate of the superiority requirement, the *Google Referrer* court concluded: "The district court did not abuse its discretion in finding the superiority requirement as met because the litigation would otherwise be economically infeasible.  This finding dovetails with the rationale for the *cy pres*-only settlement."  *Id.* at 742–43; *see also Google Street View*, 21 F.4th at 1115 (rejecting same argument by Mr. Frank: "Thus, in the guise of a Rule 23(b)(3) 'superiority' argument, Lowery [Mr. Frank's client] essentially repackages his argument that *cy pres* provisions . . . are always improper.  We have already rejected this argument . . . .").

Mr. Frank pays no mind to the actual superiority requirements of Rule 23(b)(3)(A)–(D), all of which show class resolution is superior.  The absence of demonstrated interest by individuals in prosecuting separate actions, the absence of other litigation by Class Members based on Google's alleged conduct, the desirability of concentrating the claims in this forum where the case has been pending since the MDL assignment more than ten years ago, and the absence of manageability problems in a settlement-only class all demonstrate superiority.

14

## V.    PROVISION OF UPDATED SETTLEMENT AGREEMENT IS NOT REQUIRED

Mr. Frank's argument that the class has been impermissibly deprived of "a written agreement for the class or court to review," D.I. 207 at 11–13, is a variation on the theme of his erroneous "insufficient notice" argument, discussed above. As described above, the two notice programs provided all the information that due process and Rule 23(c)(2) require.

Specifically concerning the *cy pres* recipient selection process, the settlement website home page expressly states that a second notice is being provided because the Court had approved a "revised process" for selection of *cy pres* recipients. That sentence contains a link to "Frequently Asked Questions," number 11 of which specifically describes the new process. The "Important Documents" link contains the revised Notice, which, Mr. Frank admits, describes the process of the Court to appoint a third-party neutral to examine and choose the *cy pres* recipients. The "Important Documents" link also includes the Memorandum of Law in Support of Plaintiffs' Second Motion for Preliminary Approval of Settlement, which also describes the modified *cy pres* provision. These documents clearly modified the original Settlement Agreement, and the lack of formal modification to the original Settlement Agreement itself to reflect the new provisions is immaterial. If any Class Members were confused, they had the contact information for all three Class Counsel firms.

## VI.    ENTIRELY *CY PRES* SETTLEMENT DOES NOT "UNFAIRLY DENY COMPENSATION TO CLASS MEMBERS"

Mr. Frank devotes nearly five pages to a frontal attack on *cy pres*-only settlements, D.I. 207 at 13–17, expanding in law review style on the same basic anti-*cy pres* arguments underlying each of his separate criticisms. The Third Circuit has already thoroughly rejected these arguments in this very case as a matter of precedent, doctrine, and settlement logic. *See Google*

15

*II*, 934 F.3d at 326–28 (citing ALI's <u>Principles of the Law of Aggregate Litigation</u> § 3.07(b) (2010)).  Zero basis exists for rearguing what is the law of this case.

The Third Circuit also gave short shrift to Mr. Frank's policy-based preference for a "lottery process."  *See id.* at 328 ("[N]ot an inherent abuse of discretion for a district court to allow a *cy pres*-only settlement rather than random compensation, and possibly even overcompensation through a lottery.").  *Google Referrer* also rejected Mr. Frank's "lottery" notion.  For one thing, it is rooted in a policy preference that would provide "a miniscule portion of the class" with a bit of money while depriving the broader class of the meaningful "privacy and data protection" work of *cy pres* recipients.  *Google Referrer*, 869 F.3d at 742.  For another, Mr. Frank's lottery proposal runs afoul of the bedrock settlement rule that settlement approval turns on whether the settlement is fair, adequate, and reasonable, and non-collusive, not "simply on whether there may be 'possible' alternatives."  *Id.*

*Google Street View* also rejected Mr. Frank's argument that a *cy pres*-only settlement is improper because of the theoretical feasibility that funds might be distributable.  *Google Street View*, 21 F.4th at 1114 (disagreeing with argument that focus should be on ability of some class members to make claims, particularly given lack of "viable way" for claims administrator to verify any claimant's eligibility for payment).

Mr. Frank offers no explanation how his "lottery or claims-made" distributive proposals, in which some class members would be paid and others not, would satisfy Rule 23(e)(2)(D)'s requirement that a settlement "treats class members equitably relative to each other."  Nor does he acknowledge that a *cy pres*-only settlement, in which qualified organizations work to protect the privacy of all class members, clearly satisfies the requirement of intra-class equity.

16

Mr. Frank's arguments against *cy pres*-only settlements ignore two fundamental truths. One is that some settlement funds cannot be feasibly or cost-effectively distributed. The other is that a settlement must be evaluated on its own terms for fairness, adequacy, and reasonableness. That is because settlement is the result of compromise, the yielding of highest hopes in light of a carefully evaluated balancing of a case's strengths and weaknesses performed by experienced counsel. *See, e.g.*, *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. May 7, 2010) (discussing trial court's "broad discretion" in settlement approval in light of reality "that '[the] evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice'" (quoting *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972))); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (same).

## VII.    FRANK'S "COMPELLED SPEECH" ARGUMENT IS LEGALLY AND FACTUALLY BASELESS

Mr. Frank's latest objection, unmade in his earlier objection, is that the *cy pres* settlement here "constitutes compelled speech in violation of the First Amendment." D.I. 207 at 18–20. Mr. Frank's objection is, in a word, "wrong." *Jones v. Monsanto Co.*, 38 F.4th 693 (8th Cir. 2022), rejected this same argument by Mr. Frank. *Jones* involved a residual *cy pres* allocation, unlike our case's *cy pres*-only allocation. But proper analysis shows that makes no real difference. In the end, "'[a] *cy pres* distribution . . . involves funds that, regardless of the *cy pres* provisions, could not feasibly be paid to class members' . . . and so cannot be money 'taken' from any member of the class.'" *Id.* at 699–700.

Mr. Frank might argue that class members in a residual *cy pres* have already received monetary distributions and been fully compensated as far as the particular settlement agreement permits. So, Mr. Frank's argument might run, those class members have no stake in the residual

*cy pres* corpus and, so, cannot be thought of as being compelled to support the "speech" of the *cy pres* recipients. But whether a *cy pres* is residual or total, individual class members cannot be thought of as having a personal stake in the fund because it cannot be distributed. *See Google II*, 934 F.3d at 328 ("[N]o reason why a *cy pres*-only (b)(2) settlement . . . could not belong to the class *as a whole*, and not to individual class members as monetary compensation." (emphasis in original)).

*Jones* cited *Google Street View* in rejecting Mr. Frank's "compelled speech argument." Importantly, *Google Street View* involved an entirely *cy pres* settlement, just like this one. *Google Street View* made the dispositive point, equally apposite here: "[W]e hold that the settlement agreement does not compel class members to subsidize third-party speech because any class member who does not wish to 'subsidize speech by a third party that he or she does not wish to support . . . can simply opt out of the class." *Google Street View*, 21 F.4th at 1118 (quoting *Harris v. Quinn*, 573 U.S. 616, 656 (2014)). Rejecting Mr. Frank's "compelled speech" argument, the district court in *Google Street View*, No. 10-md-02184, 2020 WL 1288377, at *14 n.10 (N.D. Cal. Mar. 18, 2020), not only noted class members' "opportunity to exclude themselves from the settlement," but also pointed out that "[t]he settlement agreement between the parties is not state action.'"

Mr. Frank relies on *Janus v. American Federation of State, County, & Municipal Employees*, 138 S. Ct. 2448 (2018), for this "compelled speech" argument. D.I. 207 at 19–20. But, as the Eighth Circuit in *Jones* and the Ninth Circuit in *Google Street View* found, *Janus* was easily distinguishable, and indeed entirely different. *See Jones*, 38 F.4th at 700 ("The compelled speech in *Janus* involved automatic deductions taken from employees' paychecks. A *cy pres* distribution, in contrast, 'involves funds that, regardless of the *cy pres* provisions, could not

18

feasibly be paid to class members'. . . and so cannot be money 'taken' from any member of the class." (quoting *Google Street View*, 21 F.4th at 1118–19)).

Faced with these rulings that eviscerate his "compelled speech" argument, Mr. Frank has no serious argument. His conjecture that *Google Street View* "is likely incorrect" (D.I. 207 at 19), carries no weight. Mr. Frank's attempt to avoid the import of *Jones* is equally unavailing, a similar "anodyne for the pains of reasoning." *Comm'r v. Sansome*, 60 F.2d 931, 933 (2d Cir. 1932) (Hand, J.), *cert. denied*, 287 U.S. 667. Mr. Frank contents himself with the observation that because *Jones* involved an *ex post* residual *cy pres*, that meant "the residual funds did not belong to any individual class members," so "*Jones* has no bearing on the *ex ante cy pres* in this settlement." D.I. 207 at 19. Mr. Frank skips right past the point that whether the *cy pres* fund is *ex ante* or *ex post*, the funds are not feasibly distributable or they would not be *cy pres* funds. Under *Jones*'s logic and language, *cy pres* funds, whether *ex ante* or *ex post*, cannot be "taken" from class members in the way funds were "taken" in *Janus*. Whether *ex post* or *ex ante* then, such funds are not tantamount to "compelled speech." And Mr. Frank ignores that in rejecting the "compelled speech" argument, *Jones*, 28 F.4th at 700, relied on *Google Street View*, which involved an *ex ante cy pres*. To the extent Mr. Frank's argument assumes that the *cy pres* funds at issue here are feasibly distributable, the Third Circuit said no such thing.

## <u>CONCLUSION</u>

Mr. Frank wishes this settlement, like many others he has criticized, were different. But settlements are the offspring of contested compromise, and the test is not whether the settlement might have been differently made, or even improved. Rather, the test is whether, taken as a whole, the settlement is fair, adequate, and reasonable. This settlement satisfies all three requirements and should be finally approved.

Dated:  August 8, 2022

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Blvd., Suite 420
Los Angeles, CA 90025
Tel: 310-207-5055
*brian@strangellp.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON,
and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
Mary D. Winter
Edward D. Robertston, Jr.
11150 Overbrook Road, Suite 200
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN
WHITE**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
201 N. Charles Street, 26th Floor
Baltimore, MD 21201
Tel: 443-909-7516
*sgrygiel@silvermanthompson.com*

*Executive Committee Member*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of August, 2022, I electronically transmitted the

foregoing document to the Clerk of the Court using the CM/ECF System, causing the document

to be served on all counsel who are registered as electronic filers in the case.

DATED: August 8, 2022                                    */s/ Brian R. Strange*
                                                                    Brian Strange