# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No.: 1:20-cv-23564-MGC

DAVID WILLIAMS and CAROLL
ANGLADE, THOMAS MATTHEWS,
MARTIZA ANGELES, and HOWARD
CLARK, *on behalf of himself and all others
similarly situated*,

  Plaintiffs,

v.

RECKITT BENCKISER LLC and
RB HEALTH (US) LLC,

  Defendants.

Theodore H. Frank,

Objector.

## SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 2 of 49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 3 of 50 PageID #:
4104

I, Theodore H. Frank, declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I executed a prior declaration in this case (Dkt. 75-1) and every word of it remains true, especially my observation that opposing counsel often launches false *ad hominem* attacks at me and the Center for Class Action Fairness ("CCAF"). *Id.* at 24. The first seven pages of this declaration provide supplemental evidence of class membership and my personal usage of Neuriva. Starting on page eight of this declaration, I respond to the best of my recollection, and my colleagues' recollection, regarding the requests the Court made in its August 15 order regarding the Motion to Strike. Dkt. 97.

3.      No fewer than eleven attorneys have signed their names to papers claiming that what I wrote in my prior declaration is false, asserting without a scrap of evidence that I did not purchase Neuriva for personal use and that therefore my objection should be stricken. Dkt. 85 at 3, 15-16; Dkt. 86 at 1, 26-27. As a matter of law, and as set forth in the accompanying opposition to Defendant's Motion to Strike, the parties have no argument that I am not a member of the class, and instead invent novel excuses for this Court to err by striking my objection. As a matter of fact, the parties' breezy accusations of perjury are false: I purchased Neuriva for personal use before any HLLI attorneys or I had seen a single document filed in this litigation.

4.      Except on rare occasions, not including this case, CCAF and HLLI does not monitor pending consumer class-action litigation before a motion for preliminary approval of a proposed settlement is filed. We generally learn about class-action settlements either when class members contact us after receiving a notice; when state attorneys general's offices contact us about pending settlements they think are problematic; or through a FOIA request with state attorneys general offices for copies of Section 1715 notices they have received. Because of limited resources, we object to a very small fraction of these settlements. In addition, many attorneys tell me about many pending settlement negotiations without my soliciting the information from them. (For example, in March 2013, a Perkins Coie partner I had never met emailed me, soliciting CCAF to file an *amicus* brief against an attorney-fee request in a pending class-action settlement involving a Perkins Coie client and

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 3 of 49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 4 of 50 PageID #:
4105

offering to share the fee petition with us early. Perkins Coie attorneys apparently privately think that CCAF would be a credible entity when it's in the interests of their clients, which perhaps shows the bad faith of their current *ad hominem* attacks.) About once or more a year, a disgruntled attorney will send me an anonymous email or letter trying to persuade me to object to a settlement; it's never clear to me whether such attorneys are trying to set me up, set up a plaintiffs' attorney they're mad at, set up a defense attorney they're mad at, or set up a defendant they're mad at. The fact of such conversations or communications will not send me looking through the dockets for details about the settlement unless the objection deadline is imminent or the settlement notice website is readily available. On occasion, I will assign a research project to a CCAF attorney to look into the settlement an attorney tells me about, but the vast majority of such leads do not result in an objection or even looking for a class member who would want to object.

5.      My role in the organization focuses on appellate and Supreme Court litigation; district-court cases in California federal and state court; ensuring appellate issues are preserved in cases where other attorneys have primary responsibility; prioritizing long-term strategic litigation goals; public relations and speaking and writing; and fundraising. I simply do not have time to look at every settlement someone tells me about. Other HLLI attorneys evaluate larger lists of class-action settlements and make recommendations for a short list of cases to consider, and only then do I look at settlement terms in helping the group reach a consensus triaging what cases we will take on.

6.      Before I purchased Neuriva, an attorney had told me in a telephone conversation that he had heard through the grapevine there would be a claims-made settlement involving Neuriva, and offered to find me a client who would object. I asked questions of him, but he did not know more details of the settlement relief, and I told him we couldn't make a decision on whether we would object to the settlement until we reviewed the settlement and its terms in detail, and that it would have to be a particularly bad settlement before we would bring an objection in Florida given CCAF's limited resources and current caseload.

7.      This attorney had previously recommended other settlements to object to that we had decided not to object to; he was not aware of much of the relevant appellate precedent and was not

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 4 of 49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 5 of 50 PageID #:
4106

familiar with the heuristics by which CCAF decided whether to object, so his suggestion of an objection did not by itself carry strong weight, especially when he didn't have any information about the scope of settlement relief. As with many other settlements that attorneys tell me about in conversation, I did nothing to research the case, or even docket number. I did not know what Neuriva litigation was pending or what the nature of the claims against the company was.

8.      I was on a 1600-mile five-state roadtrip vacation with family from August 10 through August 16, the week before the fairness hearing, the first weeklong vacation I had taken in over a decade where I did not do substantive work on my laptop once. I emailed my attorney, Mr. Bednarz, that when I purchased Neuriva for my personal use I was not aware of the terms of the settlement and whether it would be objectionable, and that I had not seen any filings on the docket at the time of my purchase. This was true. I thought we would finalize this declaration where I would spell out what I did and did not know when I purchased Neuriva on August 15 before the fairness hearing, but that day this Court issued an order asking for a response on August 23, and my attorneys decided to delay finalizing my declaration until my vacation was over. Mr. Bednarz apparently understood from my previous communications to him that I was not aware of a *settlement* when I purchased Neuriva for my personal use. This was arguably incorrect because I was aware of rumors of a settlement. Any inaccuracy is legally immaterial, but we understand the importance of precision, and I should have insisted that we nail down precise facts before the fairness hearing during my vacation. We both regret the error.

### Class Membership

9.      As I previously declared (Dkt. 75-1 at ¶¶ 4-6), on February 2, 2021, during the class period, I purchased a 30-count bottle of Neuriva Original from Amazon (sold by Pharmapacks) for personal consumption for delivery in the United States, and therefore I am a member of the class that the settling parties agreed to define.

10.      As the word "consumption" implies, this purchase was for personal and not professional use. I spend hundreds of dollars a year on nootropics—drugs and herbs and supplements thought to improve cognitive function. I make several appointments a year with my doctor for a

prescription nootropic, and I take a "stack" of dozens of pills every morning. The over-the-counter supplements I purchase and take daily or several times a week include alpha lipoic acid; ashwaghanda; d-Limonene; GABA; pycnogenol; megadoses of Vitamins B6, B12, and D3; and Zembrin. I have a friend I've known for over a decade since he was an attorney who has since left the law and started a successful nootropics business, and I use daily one of his custom-stack products that includes, among other ingredients, gingko biloba, l-theanine, l-tyrosine, and saffron extract; I have conversations with him about once a year about possible additions to my stack, or about sourcing difficult-to-find supplements. I was on vacation last week and took five seven-day pill containers with me. I try new nootropics every year, lurk on a Substack blog and on two Reddit subgroups that discuss nootropics, and do A/B testing on my "stack" several times a year (adding or subtracting supplements or changing dosages) to try to optimize it in response to recommendations or medical literature I see online.

11.    My colleague Adam Schulman suggested that I illustrate this with a photo. Attached as Exhibit 1 is a photo I took on August 19 of two containers that I took from a linen cabinet that I use as a medicine cabinet. Two to four times a month, I pull the containers from the cabinet and dole out one or two weeks' worth of pills into several seven-day pill containers I use.

12.    Such personal use is why I was a class member in *Pearson v. NBTY*, 772 F.3d 778, 787 (7th Cir. 2014) (praising me for "flagg[ing] fatal weaknesses in the proposed settlement"). My involvement in the *Pearson* case, which also involved a claims-made settlement with excessive clear sailing attorneys' fees, resulted in reversal of the original settlement followed by parties negotiating an improved settlement that appropriately shifted millions of dollars to class relief.

13.    When the attorney had told me about the rumors of a Neuriva settlement, I had never heard of the Neuriva product, and looked it up online because of my interest in nootropics. I was intrigued by Neuriva's advertising on its Amazon page. A true and correct copy of the advertising as it existed on August 19, 2021, is attached as Exhibit 2. To the best of my recollection, it is substantially similar and perhaps identical to what I saw on February 2, 2021. I decided to purchase a bottle for my personal use. I chose to purchase the "Original" rather than the "Plus" product, because the Neuriva Plus product contained multiple ingredients that was already in my stack, and Neuriva Original did

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 6 of 49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 7 of 50 PageID #:
4108

not. I chose to purchase the pills instead of the gummies because the gummies contained added sugar. When I made the purchase for my personal use, I did not know the definition of the settlement class or whether my purchase would qualify me as a member of the class. When I made the purchase for my personal use, I did not know whether the payment to the class under the settlement would or would not be proportional to the amount of requested attorneys' fees, which I also did not know. When I made the purchase for my personal use, I did not know who the class counsel or the defense counsel or the judge was, and had only a rumor of the district where the settlement would be filed. When I made the purchase for my personal use, I did not know whether the settlement provided other substantive relief that would make the settlement satisfy Rule 23(e). In short, I did not purchase the product for the primary purpose of objecting to the settlement, because I did not know what the settlement was, whether CCAF would want to object to it, or whether my purchase would even qualify for the settlement's class definition. There are hundreds of products that are subject to class actions at any given moment, and I like trying new products I haven't tried before; thus, there is bound to be overlap.

14.     I added the Neuriva product to my stack for a week or two in February or March, did not notice any improvement in mental acuity or mood, and chose to remove Neuriva from my stack because it was dramatically overpriced compared to other phophatidylserine products.

15.     In short, I did not buy Neuriva for the sole purpose of objecting. I reject the settling parties' accusation—based on their outrageous and lazy assumption of perjury—that I filed my objection in "bad faith." As I explained in my prior declaration (Dkt. 75-1 at 28), CCAF has no interest in unmeritorious or harassing objections. *Id.* Nor does CCAF hope to settle for personal gain. *Id.* at 27-28. In fact, my *Pearson* objection ultimately resulted in strong precedent against bad-faith objectors who cynically sell out their objections for private payment. *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020) (remanding so that CCAF could seek disgorgement from bad-faith objectors for class benefit).

16.     Nor was I even "monitoring" this litigation, as Defendants claim. Dkt. 86 at 6. While I was aware a suit had been filed concerning Neuriva and was told a rumor about a settlement, I had

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 7 of 49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 8 of 50 PageID #:
4109

seen no filings in any of the cases when I made my purchase on February 2; I did not even know how many cases had been filed, which products might be covered, nor any substantive details about the size or fairness of any settlement or the size of the settlement class—assuming that agreements had been reached before my purchase. Dkt. 52-1 at 33 (executing settlement agreement February 4).

17.     CCAF holds firmwide phone meetings regularly to discuss potential cases, comparing the egregiousness of a settlement and the viability of an objection with the availability of attorney time to work on a case. We discussed this case for the first time at an internal meeting on or about February 24, when I asked Frank Bednarz to look at the docket to see if there was a settlement and determine whether we might want to object if there was a preliminary approval order and the supporting filings failed to prove the settlement satisfied Rule 23(e)(2)(C). That date was the first time any CCAF attorney looked at any filings in any of the three Neuriva cases. We did not make the final decision to object until July and only after we had done research in July that showed that the objection to the injunction was meritorious.

18.     Even when CCAF puts in work on analyzing a settlement, we may not object. When clients agree, I have pulled the plug on fully-drafted briefs that attorneys have put substantial time on because I did not think they met the standards we strive for. Here, I worried that this case might not be a good objection candidate because of the presence of an injunction, commitments to other clients, and the need for local counsel; but Mr. Bednarz's excellent work synthesizing research persuaded me that the injunction was worthless as a matter of law and that the settlement was objectionable and a strong candidate for creating benefit to class members and the law. We made the decision to file an objection on my behalf in July, over five months after I purchased the product.

19.     It would have been a trivial exercise to return to the attorney who originally suggested the case to us and asked him to find a client, or to ask one of our friends if they were a class member and wished to exercise their right to object (many of our friends are attorneys or academics or public-policy professionals who admire the work we do and enjoy participating as objectors). If we did so, it would improve our lodestar in any future fee request. But because the class definition included my February purchase, we saw no reason to do that. I am a member of the class, and Rule 23(e)(5) permits

*any* class member to object. The burdensome requirements for objection in the preliminary approval order in this case required arts-and-crafts coordination between the objector and attorney, and it's simply less time-consuming to do that when the objector is a member of our organization. We have had previous experiences where parties to a bad settlement will try to intimidate one of our clients with abusive discovery requests. (In the twelve-year history of our organization, not once has discovery on one of our clients had a material effect on the outcome of a case. Here, both sets of settling parties chose to multiply proceedings by making speculative accusations of perjury without even seeking discovery.) In our experience, such discovery requests are less likely to happen when the objector is a member of our organization, and, again, it's easier and less time-consuming to coordinate on discovery (and prepare for a deposition) if the objector is a member of our organization. (Here, the settling parties simply make speculative and false factual accusations without seeking discovery.) We have also had previous experiences where we have brought a meritorious objection to a bad settlement and a settling party bribes our client to fire us and drop the objection; there is no risk that I will accept such a bribe. Finally, using a member of our organization as the objector makes it easier to decide at the last minute not to file an objection.

### CCAF's Good-Faith Participation in Other Objections

20.     To my knowledge, CCAF has acted as an attorney in more class-action objections and participated in more class actions as an objector than any other non-profit organization; we documented over a hundred such objections in the last ten years. No court has ever struck a CCAF objection for anything resembling the arguments advanced by settling parties. As explained in the accompanying opposition, the parties' arguments are fundamentally confused about Article III jurisdiction and if their arguments were taken seriously, it would require rejection of the settlement because the class would fail to satisfy Rule 23(a). The parties cite no example of a court striking an objection for the grounds they invent because none exists.

21.     The Court asked much broader questions, however, including:

> The disclosures shall include Orders excluding submissions, preventing these organizations or individuals from participating, determining that they lacked

standing to object or to file submissions, denied motions or requests to file an objection or brief, denied a request to speak at a fairness hearing or in any way prevented or limited efforts to convince a court to not approve a proposed class action settlement.

Dkt. 97. We answer these questions, and all others, to the best of our recollection.

22.     No district court in a case where CCAF, HLLI, or I have entered an appearance on behalf of a class member has "determin[ed] that they lacked standing to object or to file submissions" [or] "denied motions or requests to file an objection." On one occasion discussed below, the Fifth Circuit decided that a client CCAF represented for the first time on appeal lacked appellate standing because of a failure to perfect his *pro se* objection in the district court. On another occasion, the Ninth Circuit dismissed an appeal as moot. On two other occasions discussed below, appellate courts have held that CCAF clients had appellate standing for some issues on appeal, but not others. And the D.C. Circuit recently held that an appeal of ours was premature because the judgment we appealed was not "final" under 28 U.S.C. § 1291. All five of these cases are disclosed in my initial declaration.

a.  In *Farber v. Crestwood Midstream Partners, L.P.*, 863 F.3d 410 (5th Cir. 2017), David Duggan, an attorney, filed an unsuccessful belated *pro se* objection to a $0 shareholder settlement, citing my victory in the materially identical case of *In re Walgreen Shareholder Litig.*, 832 F.3d 718 (7th Cir. 2016). Though Duggan's objection was after the objection deadline, the district court did not grant a motion to strike his objection and resolved it on the merits. When we learned of the district court's refusal to follow *Walgreen*, we reached out to Duggan and offered to represent him *pro bono* on appeal. On appeal, the Fifth Circuit held for the first time that *Devlin v. Scardelletti* does not apply to a class member who misses the objection deadline even if the district court does not grant a motion to strike the objection, and thus, Duggan did not have appellate standing because he failed to move to intervene in the district court. We believe this is a misreading of *Devlin*, but did not pursue further litigation. There was no dispute that Duggan was a class

member, or that, had he filed his *pro se* objection on September 23 instead of
October 3, he would have had appellate standing.

b.  In *In re Target Corp. Customer Data Sec. Breach,* 847 F.3d 608 (8th Cir. 2017), CCAF
client Leif Olson challenged the district court's Rule 23(a) certification of a class
and won reversal and remand. On remand, the district court again certified the
class, and Olson renewed his appeal. On the second appeal, the Eighth Circuit
rejected Olson's arguments and affirmed. *Target*, 892 F.3d 968 (8th Cir. 2018). In
the process of doing so, the Eighth Circuit held in a footnote that Olson did not
have appellate standing to raise one particular argument challenging class
certification because, as a Texas citizen, he did not have standing to challenge the
class certification with respect to its effect on citizens of other states. *Id.* at 973 n.4.

c.  In *Blessing v. Sirius XM Radio, Inc.*, 507 Fed. Appx. 1 (2d Cir. 2012), CCAF appealed
a class-action settlement approval on behalf of a client. The Second Circuit
affirmed. In the course of doing so, the court held that our client did not have
appellate standing to raise one of the several arguments he made for reversal; there
was no question of his class membership or his appellate standing on other issues.
We sought further review in the Supreme Court, which denied *certiorari*. *Martin v.
Blessing*, 134 S. Ct. 402 (2013). Justice Alito wrote separately respecting the denial
of *certiorari* to state that the "uniqueness" of the challenged "practice weighs against
review by this Court, but the meaning of the Court's denial of the petition should
not be misunderstood," and proceeded to criticize the Second Circuit's decision
both on the merits and for confusing Article III standing of a plaintiff filing a
complaint with that of a class member objecting under Rule 23(e)(5). *Id.* at 402,
404-05.

d.  In *In re Volkswagen "Clean Diesel" Litig.*, No. 17-15835 Docket No. 19, 2019 U.S.
App. LEXIS 2520 (9th Cir. Jan. 24, 2019), the Ninth Circuit dismissed a CCAF
client's appeal for lack of appellate jurisdiction as moot in a conclusory order that

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 11 of
49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 12 of 50 PageID #:
4113

did not address any of the arguments (including binding Ninth Circuit precedent) for why the appeal was not moot. The appeal challenged only the attorneys' fee award, not the underlying class-action settlement, so is arguably outside the scope of the Court's order, and in any event has nothing to do with the arguments the settling parties are making in this case, but we include it out of an abundance of caution.

e.  *In re Domestic Airline Travel Antitrust Litig.*, No. 19-7058 (D.C. Cir. Jul. 9, 2021). In a consolidated class action complaint, the district court approved class-action settlements with two out of four defendants over my objection. We filed a protective appeal so that there would be no argument that we failed to comply with FRAP 4's jurisdictional requirement. The district court then refused to issue a Rule 54(b) final judgment. We agreed with appellees' motion to dismiss that the D.C. Circuit lacked appellate jurisdiction as a result, and asked the court to issue a formal ruling to that respect dismissing our appeal so that there would be no jurisdictional argument later that we failed to comply with FRAP 4 if we voluntarily dismissed our appeal and appealed at a later date. Instead, a panel of the D.C. Circuit ordered full merits briefing and oral argument, and appointed *amicus* to argue that it had jurisdiction. An entirely different panel of the D.C. Circuit heard argument and agreed with us that there was no appellate jurisdiction, but its opinion failed to reflect why the case was being argued at all. There was no dispute that the HLLI objectors were class members with standing to object to the settlement.

23.     In the last ten years, no district court has prohibited CCAF, HLLI, or me from participating *on behalf of an class member objecting* to a class-action settlement or making a Rule 23(h) objection. On a few occasions, however, district courts and appellate courts have denied leave by CCAF or HLLI to submit *amicus* briefs.

---

a. In *Tennille v. Western Union*, No. 13-1310 (10th Cir. June 12, 2015), the Tenth Circuit denied without explanation CCAF's motion for leave to file an *amicus* brief in support of an objector-appellant's unsuccessful petition for rehearing challenging an affirmance of a class-action settlement approval.

b. There was no class-action settlement before the federal district court in *Adams v. United Serv. Auto. Assoc.*, No. 2:14-cv-02013-PKH (W.D. Ark.), but in an abundance of caution we note that the district court denied CCAF's motion for leave to file *amicus* in an order-to-show-cause proceeding. The unnumbered docket entry reads in full "TEXT ONLY ORDER denying [53] Motion to File Amicus Brief. The proposed brief was neither solicited nor offered to the Court in a reasonably timely manner. Signed by Honorable P. K. Holmes, III on February 19, 2016. (rab)." The district court then, agreeing with CCAF's position, issued sanctions against the parties in the case for forum-shopping by litigating a case in federal court, and then dismissing it to settle the identical case in a more favorable state-court forum that would disregard objections to an unfair settlement.[1] The sanctioned parties then made an *ex parte* appeal to the Eighth Circuit. The Eighth Circuit appointed CCAF as *amicus* to defend the district court's sanctions order

---

[1] This Court may wish to inquire whether such forum-shopping occurred here: did the settling parties file the motion for preliminary approval in this Court—the second-filed jurisdiction—to avoid precedents protecting class members in the Second and Ninth Circuits? The complaint filed in the Eastern District of California predates this action by more than two months. *Matthews v. Reckitt Benckiser LLC et al.*, No. 20-cv-0854, Dkt. 1 (Jun. 19, 2020). But Ninth Circuit precedent clearly forbids district courts from crediting imaginary funds "made available" as the plaintiffs urge this Court to do. Objection, Dkt. 75 at 25; *e.g., Allen v. Bedolla*, 787 F.3d 1218, 1224 & n.4 (9th Cir. 2015) (courts should look at "economic reality" and use the value of actual claims made rather than the amount made available); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (crediting $800,000 actually claimed, not the amount hypothetically made available to class members, and reversing final approval).

The Court might also want to ask class counsel if they have a pattern and practice of obtaining class-action settlements in the last ten years where the attorneys' fees are greater than the amount the class actually receives.

---

(and appointed me to make oral argument in favor of affirmance), but ultimately reversed on the grounds that Rule 41 permitted dismissal of a class action without consequence regardless of the motive for doing so. *Adams*, 863 F.3d 1069, 1071 (8th Cir. 2017).

c.  A class-action settlement had already been approved and the approval affirmed by the Third Circuit when HLLI and CCAF sought leave in 2020 to "file a brief as *amicus curiae* in opposition to plaintiffs' motion to authorize *cy pres* distribution of remaining settlement fund and in support of plaintiffs' request in the alternative for a second distribution of the settlement fund" in *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 3:12-cv-1893-MAS-TJB (D.N.J.), so this case is not within the scope of the Court's request, but we include this denial in an abundance of caution. The district court denied HLLI and CCAF's motion as moot. Dkt. 528.

d.  The E.D.N.Y. denied CCAF leave to file an *amicus* brief in opposition to a motion for a punitive appeal bond against another objector. *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2013 U.S. Dist. LEXIS 125555, at *9 n.1 (E.D.N.Y. Sep. 3, 2013). The district court in *Bayer* awarded a $55,000 bond, but several appellate courts subsequently agreed with CCAF's position that appeal bonds can only be imposed to cover costs recoverable under Fed. R. App. P. 39. *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614-15 (8th Cir. 2017) (CCAF case vacating bond of $49,156); *Tennille v. W. Union Co.*, 774 F.3d 1249, 1254-55 (10th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. Apr. 24, 2014) (CCAF case vacating bond of $15,000); *Allen v. J.P. Morgan Chase Bank, NA*, 2015 U.S. App. LEXIS 23165, at *1-2 (7th Cir. Dec. 4, 2015).

e.  Similarly, the S.D.N.Y. denied leave that CCAF sought orally to file an *amicus* brief in opposition to a motions for sanctions and appeal bond against other objectors.

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 14 of
49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 15 of 50 PageID #:
4116

*In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), Dkt. 867 (S.D.N.Y. Aug. 20, 2018) (citing *Bayer* order immediately above).

24.     HLLI's *amicus* briefs have been accepted by many other courts, including contested briefs in the *Adams* appeal discussed above, and the *State Street* and *Akorn* proceedings described below, and in other proceedings, including work in cases entirely unrelated to class actions. *E.g.*, *Amici Curiae* Brief of the Cato Institute *et al.*, *Americans for Prosperity Foundation v. Bonta,* Nos. 19-251 and 19-255 (S. Ct. Mar. 1, 2021). The Court did not request a list of such *amicus* briefs, and it would take significant effort to compile such a list, so suffice to say that HLLI *amicus* briefs have usually been accepted and considered. (Relatedly, it is entirely false that my work and HLLI's work is solely about objections to class-action settlements. *See, e.g.*, *CEI v. FCC*, 970 F.3d 372 (D.C. Cir. 2020) (HLLI victory on question of administrative law); *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020) (HLLI First Amendment victory); Brent Hamachek, *Bride-to-Be Files Lawsuit to End D.C. Ban on Wedding Dancing*, Human Events (May 10, 2021) (covering First Amendment suit mooted by change in law); Ellen Gilmer, *Environmental Settlement Tool's Reboot Leaves a Target on Its Back*, Bloomberg Law (Mar. 2, 2021) (interview with me indicating HLLI's interest in challenging any change in DOJ policy that would violate separation of powers); Erik Wemple, *Opinion: Bloomberg Law retracts story on Labor Department appointee Leif Olson*, Washington Post (Oct. 4, 2019) (publicizing successful HLLI FOIA request that uncovered journalist wrongdoing).)

25.     On multiple occasions, CCAF or HLLI or Frank have moved to intervene in class-action settlement-related proceedings on the basis of novel theories of injury to the class. These motions are not in opposition to a class-action settlement, and are arguably outside the scope of the Court's order, but we include them for the sake of completeness.

      a.     *Pearson v. Target Corp.*, No. 1:11-cv-07972, Dkt. No. 340 (N.D. Ill. Dec. 15, 2016), Frank, represented by CCAF, moved to intervene to disgorge extortionate side-payments made to bad-faith objectors after final judgment issued on approval of a class-action settlement. The court struck the motion on the grounds that the case had already been dismissed with prejudice and that it lacked jurisdiction. Frank,

represented by CCAF, moved to reopen judgment under Rule 60(b). Dkt. 348. The court denied this motion. Dkt. 350 (May 19, 2017). Frank, represented by CCAF, appealed and won reversal of the denial of the Rule 60(b) motion. 893 F.3d 980 (7th Cir. 2018). After further proceedings, we won disgorgement in a later Seventh Circuit appeal. 968 F.3d 827 (7th Cir. 2020).

b.  *Rougvie v. Ascena Retail Group, Inc.*, No. 2:15-cv-00724-MAK, Dkt. No. 299 (E.D. Pa. Jun. 16, 2017). The court denied CCAF's clients' motion to intervene to seek disgorgement of extortionate payments made to bad-faith objectors. We chose not to appeal because the *Pearson* appeal was pending and we believed that was a better vehicle for establishing the novel theory of law.

26.    Final judgment had already issued in the class-action settlement *Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co.*, No. C.A. 11-10230-MLW (D. Mass.) when CCAF (and later HLLI) made its first appearance, so it is outside of the scope of this Court's order, but we include this case in an abundance of caution. In December 2016, the *Boston Globe*, in a front-page story that quoted me heavily, uncovered substantial overbilling in a granted request for $75 million in attorneys' fees. 232 F.Supp.3d 189, 200-08 (D. Mass. 2017). After the district court issued a *sua sponte* order proposing a special master to investigate that story (*id.* at 195), CCAF made a novel motion to file an *amicus* brief and to be appointed guardian *ad litem* for the class in proceedings before the special master. Dkt. 126. At the March 7, 2017, hearing on the opposed motion, class counsel conceded several issues in the hopes of avoiding an appointment: they agreed (a) to the appointment of a special master; (b) to pay $2 million so that the special master could hire investigatory counsel to ensure an adversary proceeding; and (c) to file a Rule 60 motion to vacate the fee award. Dkt. 176. The district court granted CCAF's motion to file *amicus* and took the motion to appoint guardian *ad litem* under advisement. Dkt. 172; Dkt. 445. The district court granted several other opposed CCAF (and then HLLI) motions to file *amicus* briefs as the investigation proceeded and uncovered additional wrongdoing beyond the original *Globe* story; it also on several occasions invited CCAF (sometimes under the umbrella of its predecessor organization from 2015-19, the Competitive Enterprise

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 16 of
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 17 of 50 PageID #:
4118

Institute) to make filings. *E.g.*, Dkt. 187, Dkt. 410, Dkt. 494. The court ultimately denied CCAF's motion to be appointed guardian *ad litem* without prejudice, and awarded CCAF $60,690 in attorneys' fees for the work done where the court made an unsolicited request for CCAF's participation. "CCAF's work was not only helpful to the court, it also contributed to a decision by the court that provided an additional almost $15,000,000 for the benefit of the class." *Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.*, No. 11-10230-MLW, Dkt. 662, 2021 U.S. Dist. LEXIS 9826, at *18-19 (D. Mass. Jan. 19, 2021). The Lieff Cabraser firm appealed this and other orders to the First Circuit. Appeal No. 21-1069. Because Lieff appealed the order awarding CCAF fees, CCAF moved the First Circuit to be formally named an appellee; Lieff represented that it was not challenging CCAF's fee award but other aspects of that order, and on March 12, 2021, the First Circuit ruled "The motion of the Hamilton Lincoln Law Institute to Amend the Caption is denied with the caveat that HLLI may refile its motion should any party challenge on appeal the award of fees to HLLI." When it became clear that Lieff's appeal would proceed *ex parte*, HLLI moved in June 2021 to file an overlength *amicus* as appellee in support of the judgment and to participate in any oral argument. On August 13, the First Circuit ruled "HLLI's request to file an amicus brief in support of affirmance of the district court's order is granted. Should argument be scheduled, HLLI may file a motion for leave to appear at that time" and permitting Lieff a reply brief to be filed by August 27.

27.      *House v. Akorn*, No. 1:17-cv-05018 (N.D. Ill.) and five related cases that were never consolidated did not involve class action settlements, and are thus not within the scope of this Court's order, but CCAF includes it here in an abundance of caution. House and other plaintiffs brought *Walgreen*-style "strike suit" putative class actions purporting to challenge a merger. The cases settled with a payout—but not as a Rule 23 class action settlement. CCAF (and later HLLI), representing me as an Akorn shareholder, moved to intervene under a novel theory of breach of fiduciary duty. In a ruling of first impression, the district court denied the motion to intervene, but invited Frank to file a motion to reconsider. *Berg v. Akorn*, No. 17-cv-5016 Dkt. 81, 2017 WL 5593349 (N.D. Ill. Nov. 21, 2017). The court denied the motion to reconsider in several orders as moot with respect to three plaintiffs who agreed to foreswear their alleged entitlement to "mootness fees." *Berg v. Akorn*, No. 17-

cv-5016 Dkt. 103 (N.D. Ill. May 2, 2018); *Alvarez v. Akorn*, No. 17-cv-5017 Dkt. 55 (N.D. Ill. May 2, 2018); *Harris v. Akorn*, No. 17-cv-5021 Dkt. 56 (N.D. Ill. May 2, 2018). In *House v. Akorn*, No. 17-cv-5018, Dkt. 53 (N.D. Ill. Sept. 25, 2018), the court denied intervention, but the court stated that it would exercise its inherent authority to apply the *Walgreen* standard to counsel's conduct, and invited Frank to participate as *amicus*, and Frank did so. The court ultimately ordered the disgorgement of improperly obtained "mootness fees" as Frank's complaint in intervention sought. *House* Dkt. 81. Plaintiffs appealed the disgorgement order. These cases, including the denials of CCAF's motions to intervene, remain pending on appeal before the Seventh Circuit. In Appeal Nos. 19-2401 and 19-2408, Frank moved for the Seventh Circuit to appoint him as *amicus curiae* to defend the district court's judgment in Case Nos. 19-2401 and 19-2408, with the same briefing schedule, requirements, and opportunity for oral argument as an appellee. On November 6, 2019, the court denied the motion in part but permitted Frank to participate as *amicus* with a brief of up to 10,000 words. These appeals are pending as of August 22.

28.    The Court's order asks for a list of "denied a request to speak at a fairness hearing or in any way prevented or limited efforts to convince a court to not approve a proposed class action settlement." There have been several occasions in the last ten years where, in fairness hearings, including in the August 17 fairness hearing in this case, CCAF or HLLI attorneys have requested an opportunity to speak at a particular time, and the court "prevented or limited" that speech through normal ministerial discretion, for example, by imposing a time limit on speaking; or requiring speaking to occur in a particular order; or being permitted to speak once or several times, but not speak again in surreply. There have been occasions where CCAF or HLLI attorneys have asked a district court or appellate court to require disclosure of facts within the settling parties' possession, and the court has refused, thus "preventing or limiting" efforts to convince a court. *E.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 718-19 (6th Cir. 2012) (noting district court's refusal to examine data CCAF's client requested defendant produce, and reversing settlement approval); *St. Lucie County Fire Dist. Firefighters' Pension Trust Fund v. Stericyvle, Inc.*, No. 1:16-cv-07145 Dkt. No. 149 (N.D. Ill. May 19, 2020) (denying discovery in support of a Rule 23(h) objection to fees), *appeal pending*, No. 20-2055 (7th Cir.). It is

possible that, when a CCAF attorney cross-examined a witness in a fairness hearing in the last ten years, the district court "prevented or limited" the scope of questions in response to an objection. We believe there have been occasions where a court has denied a motion to unseal information. *Cf. State Street* Dkt. 414 (granting a motion to unseal in part in proceeding that was not an objection to a class-action settlement). There has been at least one occasion where CCAF or HLLI asked for extended time at appellate oral argument and the motion was only granted in part. We simply have not tracked every such instance of these motions and discovery requests and do not keep records in such granular detail; to save money, CCAF does not always request or maintain transcripts of fairness hearings when there is no appellate requirement to do so. It would be extraordinarily burdensome to attempt to reconstruct this data for over forty attorney-years of work for over a hundred cases, some of which lasted years. For example, it took over an hour of senior-attorney time to compose each of the two paragraphs above relating to the *State Street* and *Akorn* cases, though the denials of CCAF motions in those cases are of extraordinarily marginal relevance to the fairness of this settlement, and the denials to intervene or for appointment were accompanied by granted alternative motions to participate as *amicus*, and CCAF later prevailed in substantive arguments over strong opposition. We thus cannot respond to the Court's request to the extent the Court intended to seek such granular detail, and interpret the request as not seeking this sort of information.

29.     Instead, I confidently state there has never been an occasion where a district court has entirely forbidden CCAF or HLLI to represent an objector or speak at a fairness hearing.

### CCAF and HLLI and Frank have never been sanctioned

30.     The court's order requires "The disclosures shall also advise whether any court has sanctioned Mr. Frank, the Center for Class Action Fairness, the Hamilton Lincoln Law Institute, … or any person or attorney involved with these persons or organizations in their efforts to oppose proposed class action settlements."

31.     HLLI began existence in 2019. CCAF began existence in 2009. Frank, CCAF, and HLLI and their attorneys have never been sanctioned in the last ten years or otherwise.

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 19 of
49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 20 of 50 PageID #:
4121

32.     A handful of district courts have issued opinions with language critical of Frank or
CCAF. One court issued an order to show cause to HLLI attorney Melissa Holyoak, but discharged
the order without sanctions, finding that she "did not engage in bad faith conduct and did not
knowingly or intentionally make a false statement or misrepresentation to the Court." *Exum v. National
Tire and Battery*, No. 9:19-cv-80121 (S.D. Fla.) Dkt. Nos. 109 and 114. (Ms. Holyoak left HLLI after
she was appointed Solicitor General for the State of Utah.) I discuss these opinions in my initial
declaration. Dkt. 75-1 ¶¶ 18-20, ¶¶ 23-24.

33.     On three occasions in the last ten years, district courts have issued punitive appeal
bonds of $15,000 or more against CCAF on the grounds that CCAF appeals were "frivolous" or
unlikely to succeed. These are not formal sanctions (indeed, punitive appeal bonds are violations of
Fed. R. App. Proc. 7), and are thus outside of the scope of the Court's order, but we include them for
the sake of completeness as they are arguably either a *de facto* sanction or an attempt by a district court
to limit our ability to challenge a settlement. Each time, CCAF paid the appeal bond in full and won
reversal on appeal of the settlement approval order and sometimes also expressly reversal of the appeal
bond.

a.   *In re Magsafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 U.S. Dist. LEXIS
196382, at *7 (N.D. Cal. July 6, 2012) ($15,000 appeal bond), reversed by *In re
MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563   (9th Cir. Apr. 24,
2014).

b.   *In re Easysaver Rewards Litig.*, No. 09cv2094 AJB (WVG), Dkt. 291, 2013 U.S. Dist.
LEXIS 194722, at *5 (S.D. Cal. May 6, 2013) ($15,000 appeal bond), vacated and
remanded by *In re EasySaver Rewards Litig.*, 599 F. App'x 274 (9th Cir. 2015). CCAF
won a second appeal later in the case, followed by winning a Rule 23(h) objection
to a renewed fee request on remand, and ultimately won attorneys' fees for its role
in increasing the size of the common fund.

c.   *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), Dkt. 701,
2016 U.S. Dist. LEXIS 7070 (D. Minn. Jan. 20, 2016) ($49,156 appeal bond), bond

Case 1:20-cv-23564-MGC Document 108-2 Entered on FLSD Docket 08/23/2021 Page 20 of
Case 1:12-md-02358-JDW Document 211-9 Filed 08/08/22 Page 21 of 50 PageID #:
4122

order and settlement approval vacated by *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017), amended by *In re Target Corp. Customer Data Sec. Breach Litig.*, 855 F.3d 913 (8th Cir. 2017).

d.  In addition, on October 25, 2010, outside of the ten-year range requested by this Court, the D.N.J. held in an oral opinion that a punitive $25,000 appeal bond against CCAF's clients was warranted and that "the Court cannot but help note that it is confident that the Court of Appeals will affirm the decisions to approve the settlement." CCAF paid the appeal bond and won the appeal in 2012, resulting in an improved settlement and an award of attorneys' fees. *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012).

### Courts have repeatedly praised CCAF

34.  The court also asked "On the other hand, if a judge or court, including an appellate court, has commended the efforts of these persons and entities in the past ten years, then the disclosure should mention that, as well, using the same format."

35.  I would rather have a case like *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 Civ 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), where the court unfairly criticizes me and my client's objection but then does what my client's objection asks and reduces an unfair fee by millions of dollars for the benefit of the shareholder class, than a case like *Ercoline v. Unilever*, Case No. 10-cv-1747 (D.N.J. March 2011), where the district court judge warmly praises my *pro se* objection and comes down from the bench to shake my hand but then rubber-stamps an awful $0 class-action settlement that only pays the attorneys. Because of this, we have not systematically tracked court and judicial comments praising our work or our attorneys. Thus our disclosure in response to this question will necessarily be incomplete. Much of the praise has come in oral comments at fairness hearings; and in many cases where there is no appeal, we do not even order transcripts of the fairness hearings. Minor praise in oral and even written opinions is so common that we don't think much of it. It would be extraordinarily burdensome to recreate a list of every time a court has said a nice thing about us.

Case 1:20-cv-23564-MGC  Document 108-2  Entered on FLSD Docket 08/23/2021  Page 21 of
49
Case 1:12-md-02358-JDW  Document 211-2  Filed 08/08/22  Page 22 of 50 PageID #:
4123

36.     From the collective memory of CCAF attorneys, we can identify the following
instances of explicit praise, but this list is incomplete.

    a.  *Pearson v. Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018), in discussing an appeal
brought by CCAF on behalf of Frank, mentioned four cases that Frank argued
and won in the Seventh Circuit as background in the opening paragraph of the
opinion. "Inequitable settlements are an unfortunate recurring bug in our system
of class litigation. Federal Rule of Civil Procedure 23(e) is designed to minimize
such problems, but appeals by class members who object to a settlement indicate
that the system still needs improvement. All too often, class counsel negotiate a
settlement with substantial attorneys' fees but meager benefits for the class. *See,
e.g., Redman v. RadioShack Corp.*, 768 F.3d 622, 638-39 (7th Cir. 2014). Named
plaintiffs fail to live up to their ethical obligations as fiduciaries to the class. *See,
e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014). The objector-
appellant before us, Theodore Frank, has brought problems like these to our
attention before, including in an earlier appeal in this case. *See, e.g., Pearson v. NBTY,
Inc.*, 772 F.3d 778 (7th Cir. 2014); *In re Subway Footlong Sandwich Mktg. & Sales
Practices Litig.*, 869 F.3d 551 (7th Cir. 2017)."

    b.  *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) (Frank's
objection and successful appeal of the settlement approval denying his objection
demonstrated why "objectors play an essential role in judicial review of proposed
settlements of class actions and why judges must be both vigilant and realistic in
that review").

    c.  *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("objectors play an essential
role in judicial review of proposed settlements of class actions and why judges
must be both vigilant and realistic in that review. Theodore Frank and the other
objectors flagged fatal weaknesses in the proposed settlement.").

d. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013), described CCAF's client's objections as "numerous, detailed and substantive."

e. *Arkansas Teacher Ret. Sys. v. State Street Bank & Trust Co.,* No. 11-cv-10230, Dkt. 549 at 2 (D. Mass. Jun. 13, 2019) (describing CCAF's participation as "very helpful")*; Id.,* 2020 WL 949885, 2020 U.S. Dist. LEXIS 33552, \*17 (D. Mass. Feb. 27, 2020) ("CCAF brought expertise to the proceedings, which was often very helpful to the court.").

f. *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 21 (E.D.N.Y. 2019) (CCAF's objection "addressed several aspects of the proposed settlement and brought significant legal precedent to the Court's attention") (decision overruling objection and approving settlement reversed on appeal, *Berni v. Barilla SpA*, 964 F.3d 141 (2d Cir. 2020)).

g. *In re Petrobras Secs. Litig.,* 320 F. Supp. 3d 597, 600 (S.D.N.Y. 2018), *rev'd in part on other grounds by* 786 Fed. Appx. 274 (2d Cir. 2019) (CCAF's client's objection "significantly contributed to one aspect of the class's recovery").

h. *Ma v. Harmless Harvest, Inc.*, No. 16-cv-07102 (JMA) (SIL), 2018 WL 1702740, at \*5 (E.D.N.Y. Mar. 31, 2018) (crediting CCAF's client's "lengthy and substantive objections").

i. *Edwards v. National Milk Producers Federation*, No. 11-cv-04766-JSW, Dkt. 519, 2017 U.S. Dist. LEXIS 220571, at \*7-\*8 (N.D. Cal. Sept. 13, 2017) (CCAF's client's objection "stood out among the other objections received by providing an adversarial presentation of the issues supported by helpful citations to relevant authority"); *id.* at \*5 (praising "skillful work" of CCAF attorneys). This was not an objection to a settlement, but a Rule 23(h) objection to fees in a class-action settlement.

j.   *In re Citigroup Inc. Secs. Litig.*, 2017 U.S. Dist. LEXIS 141719, *11, 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) (concluding that Frank's objection to *cy pres* was a "substantial cause of the benefit obtained" by the class).

k.   *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D. Ohio 2016) (finding CCAF's client's objection "lucid and filed in good faith.").

l.   *Rougvie v. Ascena Retail Group, Inc.*, No. 15-cv-724, 2016 WL 6069968, at *4 (E.D. Pa. Oct. 14, 2016) (lauding CCAF's clients' objections as "among the strongest" after sustaining objections to an exaggerated fee request in a coupon settlement).

m.   *McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members").

n.   *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1334 (D. Nev. 2014) (CCAF's clients' objections "did contribute to the value of the resulting settlement").

o.   *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated").

p.   *In re Citigroup Inc. Secs. Litig.*, No. 07-cv-9901 (SHS), Dkt. 286 (S.D.N.Y. Sept. 10, 2013) (objectors play "valuable and important role" in "policing class action settlements." "Frank's objections enhanced the adversarial process and played a not insignificant role in focusing the Court on instances of overbilling by plaintiffs' counsel, resulting in a reduction of the attorneys' fees awarded to lead counsel and therefore providing a tangible economic benefit to the class.").

q.   *In re Classmates.com Consolidated Litig.*, No. 2:09-cv-00104-RAJ, Docket No. 36 (Master Case No. C09-45RAJ Docket No. 211) (W.D. Wash. June 15, 2012) ("Attorneys at the Center for Class Action Fairness ('CCAF'), an entity that has been active in objecting to class action settlements across the nation, represented Mr. Krauss. His objection provided new insight into the myriad defects in the first settlement, particularly with respect to class counsel's conflicts of interest and the

inadequacy of the proposed *cy pres* payment. Mr. Krauss provided substantial legal authority for his positions, much of which was helpful to the court.") ("Mr. Krauss and his counsel did more to secure compensation for class members than class counsel did. Class counsel performed the bulk of the labor necessary to reach the settlement, but Mr. Krauss's counsel did a substantially better job of attending to class members' interests.") (sanctioning counsel for "a litigation offensive designed to burden an entity that had the temerity to object to class counsel's settlement" and "bullying") ("The court awards sanctions in the amount of $100,000 against class counsel. The court reasons that it likely would have awarded Mr. Krauss's counsel at least that much, had he requested attorney fees.") ("While Mr. Krauss's counsel did not perform as much labor as class counsel, it achieved manifestly better results. If anything, a $100,000 award would have undercompensated CCAF.").

r.  At December 7, 2020, oral argument in *Briseno v. ConAgra Foods, Inc.*, Ninth Circuit Judge Owens praised Frank, arguing on behalf of HLLI client law professor Todd Henderson, and his opposing counsel for an "outstanding argument. I tell my law clerks, sometimes in the Ninth we don't have the best oral argument, but today we have had good argument on behalf of everyone." Judge Ezra, sitting by designation, added "At my level, in the district court, we don't frequently see… such polished argument by such highly competent counsel as we saw today." The Zoom video of the oral argument is available at https://www.youtube.com/watch?v=o7qGuCRW2wE, and the exchange begins at timestamp 37:22. Frank's and HLLI's client prevailed on appeal. 998 F.3d 1014 (9th Cir. 2021).

s.  One day later, at the December 8, 2020, oral argument in the pending *St. Lucie County Fire Dist. Firefighters' Pension Trust Fund v. Stericycle, Inc.*, No. 20-2055, Seventh Circuit Judge Hamilton asked appellee class counsel about whether there should

be sanctions issued because of their *ad hominem* attack on Frank and HLLI, noting "Mr. Frank's rather extraordinary track record of success in this Court in objections to class counsel fee arrangements that are far too cozy." The oral argument is available online at http://media.ca7.uscourts.gov/sound/2020/ds.20-2055.20-2055_12_08_2020.mp3 and the exchange takes place at the timestamp from 19:40-20:07 (in the context of the sequence at 18:00-21:10). This was an appeal relating to a Rule 23(h) objection to attorneys' fees, rather than a Rule 23(e) objection to a class-action settlement, but Frank's success in the Seventh Circuit has largely come in Rule 23(e) objections.

t.  In a case where we did not appear, a court gratuitously referred to us as "legitimate." *Shah v. Zimmer Biomet Holdings*, 2020 WL 5627171, 2020 U.S. Dist. LEXIS 171925 (N.D. Ind. Sept. 18, 2020) ("if the requested award of 33.3% was way out of line, I would also expect some legitimate opposition or objections to the proposed settlement, either from large institutional investors or a group like the Center for Class Action Fairness who pay attention to such things.").

u.  In this case, the Court's August 5, 2021 Order mentioned the "comprehensive and detailed submissions" Mr. Frank filed. *Williams v. Reckitt Benckiser LLC*, 1:20-cv-23564-MGC Dkt. 84 (S.D. Fla.).

37.  On several occasions in the last ten years, courts have awarded fees to CCAF or HLLI for creating benefit to the class, implicitly or explicitly commending us in the process by recognizing the value CCAF's or HLLI's objections have created. It is important to note that CCAF and HLLI do not seek fees every time they create a benefit to the class, and until 2019, substantially throttled their fee requests, often only seeking token awards or, as in the case of *Classmates*, an award that would be then donated to the class. This list may overlap with the list in the previous paragraph.

a.  *In re Southwest Air. Voucher Litig.*, 898 F.3d 740 (7th Cir. 2018) ("this is not a case where an objector ran up a tab with minimal value added"). The Seventh Circuit reversed a district court's denial of a fiercely opposed $80,000 fee award for a

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 26 of
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 27 of 50 PageID #:
4128
49

CCAF client who tripled class recovery through his objection prosecuted through two previous appeals.

b.  *In re Wells Fargo & Co. Shareholder Deriv. Litig.*, No. 4:16-cv-05541-JST, Dkt. No. 355 (N.D. Cal. March 4, 2021). The court found that HLLI's client John Cashman's objection and filings resulted in an increase in the common fund and substantially benefited the class members. "The objections were in aid of the Court's order, and they did provide some assistance in properly valuing the common fund and calculating the appropriate lodestar." The court awarded $98,473 in fees over opposition by class counsel who argued that HLLI should receive nothing. (In contrast, the other objector, Kevin Fisher, negotiated a $1.75 million payout from Wells Fargo for withdrawing his objection to a state-court settlement. Being a good-faith objector that refuses to engage in *quid pro quo* settlements can be expensive.) Note: this was not an objection to a class-action settlement, but an objection to fees in a Rule 23.1 derivative settlement.

c.  *In re EasySaver Rewards Litig.*, No. 3:09-cv-02094-BAS-WVG, Dkt. No. 372 (S.D. Cal. Jan. 22, 2021). The court found that CCAF/HLLI's client's objection created a $3.23 million increase in the common fund and an indirect benefit for the class, and awarded $805,000 in fees.

d.  *Ark. Teachers Ret. Sys. v. State Street Bank,* 2021 WL 185304, 2021 U.S. Dist. LEXIS 9826 (D. Mass. Jan. 19, 2021). Awarded $60,690 in fees for certain work done as *amicus* that was requested at the court's own initiative over opposition by class counsel who argued that HLLI should receive nothing. (CCAF did not seek fees for work it did voluntarily before and after the court-requested filings, which was substantial.) "CCAF brought expertise to the proceedings, which was often very helpful to the court." CCAF's "work was worth to the class many multiples of the $60,690 it is seeking." This was not an objection to a class-action settlement, but

participation in post-judgment proceedings relating to Rule 23(h) attorneys' fees for a class-action settlement.

e. *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-2420-YGR, Dkt. No. 2682 (N.D. Cal. Dec. 10, 2020). The court found that CCAF/HLLI, representing objector Frank Bednarz (my attorney in this case), conferred a "substantial benefit on the class": "a material benefit to a portion of the class by challenging the original pro rata equal distribution as between repealer and non-repealer state members of the class. This resulted in a reallocation of approximately $10 million to the repealer-state portion of the $44.95 million common settlement fund for the Round 2 settlements. Thus, Bednarz helped create a direct benefit for thousands of class members in repealer states, who will now receive increased payments." The court awarded $220,000 to HLLI and $30,000 to our co-counsel over opposition by class counsel who argued HLLI should receive nothing. The fee award is the subject of cross-appeals in the Ninth Circuit.

f. *In re Petrobras Secs. Litig.,* 320 F. Supp. 3d 597, 600 (S.D.N.Y. 2018), *rev'd in part on other grounds by* 786 Fed. Appx. 274 (2d Cir. 2019) (CCAF's client's objection "significantly contributed to one aspect of the class's recovery"). The court awarded about $11 thousand, and on remand after a Second Circuit reversal, awarded $33,741.65 for improving class recovery by tens of millions of dollars over fervent opposition by class counsel who argued that CCAF should receive nothing.

g. *Rougvie v. Ascena Retail Group, Inc.*, No. 2:15-cv-00724-MAK, 2019 U.S. Dist. LEXIS 28229, at *41 (E.D. Pa. Feb. 21, 2019)("His efforts, seeking payment at less than lodestar, benefitted the Class and increased the value of the Settlement Fund for the Class."). The court awarded $78,000 in attorneys' fees for the work of Adam Schulman in representing two CCAF clients, over the objection of plaintiffs' counsel.

Case 1:20-cv-23564-MGC Document 108-21 Entered on FLSD Docket 03/23/2021 Page 29 of
Case 1:12-md-02358-JDW Document 211-1 Filed 08/08/22 Page 29 of 50 PageID #:
4130

h. *Cowen v. Lenny & Larry's, Inc.*, No. 1:17-CV-01530, Dkt. 122 (N.D. Ill. Aug. 21, 2019). The district court approved $20,000 in attorneys' fees where an objection filed on my behalf resulted in amended settlement that shifted over $530,000 from attorneys' fees to provide a *pro rata* class benefit.

i. *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, Dkt. 519, 2017 U.S. Dist. LEXIS 220571, at *5 (N.D. Cal. Sep. 13, 2017) (finding multiplier "fair given Holyoak's contributions to the Court's analysis and the skillful work performed by his attorneys"). The district court awarded $70,000 for the work performed on behalf of the objector, the spouse of then-CCAF attorney Melissa A. Holyoak, who helped persuade the court to reduce an excessive fee request by $4.33 million. This was not an objection to a settlement, but a Rule 23(h) objection to fees in a class-action settlement.

j. *In re Citigroup Inc. Secs. Litig.*, No. 07cv9901, Dkt. 416, 2017 U.S. Dist. LEXIS 141719, *11, 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) (finding my objection, represented by CCAF attorneys, to be a "substantial cause of the benefit obtained" by the class). I flagged the existence of an SEC fund where residual class recovery could be deposited for class benefit rather than a third-party *cy pres* beneficiary. The district court credited my filing with causing the settling parties to amend their plan of distribution and awarded $33,412.40 for this work (which was 8.25% of the class benefit provided), over opposition of class counsel. This was not an objection to a settlement, but a Rule 23(h) objection to fees in a class-action settlement.

k. *Pearson v. NBTY, Inc.*, No. 11-cv-7972, Dkt. 288, 2015 U.S. Dist. LEXIS 133706, at *2 (N.D. Ill. Aug. 25, 2016). The district court granted CCAF $180,000 in attorneys' fees for an objection on my behalf concerning my purchase of allegedly falsely marketed glucosamine nutritional supplements. The case resembles this objection in several other ways: as originally formulated, the settlement would have provided only $865,284 in claimed benefits to class members, diverting another

$1.13 million to a third party and providing clear sailing attorneys' fees disproportionate set at $4.5 million. The district court awarded only $1.93 million to class counsel, but the Seventh Circuit reversed approval finding the district court erred by crediting the hypothetical maximum amount "made available" by the settlement *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (finding that class counsel had earmarked "84 percent" for themselves). Following reversal of the settlement approval, the parties renegotiated a settlement that provided a $7.5 million common fund—essentially shifting *cy pres* and attorneys' fees to class benefit, where class counsel could seen no more than $2.08 million in attorneys' fees. These changes increased class recovery by nearly $2.5 million, justifying CCAF's intentionally modest fee request.

l. *McDonough v. Toys "R" Us, Inc.*, No. 2:06-cv-0242-A, Dkt. 898, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) ("CCAF's time was 'judiciously spent to increase the value of the settlement' to class members."). The district court awarded $742,500 where a CCAF objection, appeal, and reversal of final approval resulted in an improved settlement that provided $15 million more to class members. The fee award was nearly seven times higher than class counsel argued warranted, although it was just 4.9% of the increased value of the settlement.

m. *In re PEPCO Holdings, Inc. Stockholder Litigation*, C.A. No. 9600-VCMR (Del. Ch. Oct. 26, 2016) (approving $34,000 in fees where CCAF benefited the class by preserving their rights and causing plaintiffs' withdrawal of application for attorneys' fees and expenses of $405,000).

n. *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-cv-5634, 2015 U.S. Dist. LEXIS 106943, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015) (CCAF's client "substantially benefited the class by increasing the amount in the Settlement Fund") (awarding $90,000 in fees).

o. *Pecover v. Elec. Arts, Inc.*, No. 08-cv-02820 CW, Dkt. 467 (N.D. Cal. Jun. 19, 2013). The district court granted CCAF's request for attorneys' fees of $33,975 where an objection brought on my behalf resulted in a revised settlement that paid $11.5 million more to class member instead of third party recipients.

p. *In re : Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), Dkt. 254, 2013 U.S. Dist. LEXIS 206255, at *14 (E.D.N.Y. Nov. 8, 2013). The district court awarded CCAF $18,067.70 in attorneys' fees for an objection brought on my behalf where, following my objection, the settling parties modified their settlement to reduce attorneys' fees by 47% and thereby provide $5.84 million more to class members.

q. *Dewey v. Volkswagen of Am.,* 909 F. Supp. 2d 373, 396 (D.N.J. 2012) ($782,283.87 "reflects the value added as a result of the Objectors' efforts to ensure that the former residual group need not rely only on the Defendants' good will to obtain reimbursement."). Objectors represented by CCAF successfully objected to a settlement structure that might have frozen out benefits to a subclass, which the settling parties corrected when they renegotiated the settlement after the Third Circuit vacated the settlement approval as a result of CCAF's appeal.

r. *New Motor Vehicles Canadian Export Antitrust Litig.*, No. 2:03-md-01532-DBH Dkt. 1219, 842 F. Supp. 2d 346 (D. Me. 2012). The district court awarded CCAF, who filed an objection on my behalf, $10,000 in attorneys' fees.

s. *Fogel v. Farmers Ins. Co.*, No. BC300142 (Super. Ct. Cal. L.A. County Dec. 21, 2011). The California trial court awarded CCAF $47,577.88 in fees and expenses for an objection that "provided input to the court on the settlement" and contributed to reducing attorneys' fees by $18 million. "The Court does not believe the efforts of any other objectors are worthy of recompense." The judgment does not have a docket number.

t. *Weeks v. Kellogg Co.*, 2:09-cv-08102-MMM-RZ, Dkt. 157 (C.D. Cal. Nov. 23, 2011). CCAF sought $34,000 in attorneys' fees for its role in improving class benefit, and in response to potential opposition from class counsel, stipulated to a lower award of $21,700. The district court awarded CCAF and its co-counsel and client $21,700, though it did not make explicit findings of class benefit as it was required to do.

38.     In addition, as I mentioned in my initial declaration, from about 2012 to 2015, I had a private practice doing appellate work and consulting for for-profit attorneys who did objections to class-action settlements, winning both of the appellate arguments that resulted in decision. One of those successful appeals, *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), reversed an approval of a bad class-action settlement and disqualified class counsel and the class representative. New class counsel negotiated a substantially better settlement, and I retained MoloLamken to make a motion for attorneys' fees on my behalf. In *Eubank v. Pella Corp.*, No. 1:06-cv-04481 Dkt. 770 (N.D. Ill. Mar. 15, 2019), the court awarded me $966,250 in fees. The court called me "a well-known and well-respected class action lawyer." This was not an HLLI or CCAF case.

39.     On several occasions, courts of appeals in the last ten years have ruled in HLLI/CCAF's clients or my clients or my favor on novel questions of law relating to class action settlements, creating precedents that benefit class members in future cases. *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Berni v. Barilla S.P.A*, 964 F.3d 141 (2d Cir. 2020); *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (non-CCAF appeal I briefed and argued on behalf of a private client); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir.

Case 1:20-cv-23564-MGC   Document 108-1   Entered on FLSD Docket 08/23/2021   Page 32 of
49
Case 1:12-md-02358-JDW   Document 211-5   Filed 06/06/22   Page 33 of 50 PageID #:
4134

2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). (This list does not include many other appeals CCAF and I have won that did not establish precedents on novel questions of law.) Because of these precedents, the settlements we see in 2021 are, on average, substantially superior for class members than the settlements I saw in 2009 when I started CCAF. I view this as far more important a "commendation" than any passing mentions of praise or even the millions of dollars of fees courts have awarded CCAF and me for creating hundreds of millions of dollars of class benefit. The vast majority of appellants in courts of appeals fail; the success rate for appeals in the Ninth Circuit is about 10%. That CCAF and I have won the majority of our appeals against far-better-funded opposition (and usually two sets of appellees' briefs), even though most of our cases raise novel issues and seek to create new law, is, I submit, extraordinary evidence of the good faith of our project. In recent years, though there are still weeks where I argue two appeals on consecutive days, I have doled out a substantial percentage of appellate oral arguments to other CCAF attorneys, and I am proud that four other CCAF attorneys besides me have won federal appellate oral arguments, and that one went on to become Utah Solicitor General.

40.     On several occasions, judges have praised CCAF's work or me when I have appeared on panels with the judges at legal conventions or programs; or when I have seen the judge or Supreme Court justice or retired judge in a social situation. This includes judges whom CCAF or I have never appeared before (and in some cases had never previously met), but are simply aware of my work. The relevant subcommittee of the Federal Rules Committee, on which several judges sit, invited me to speak at one of the meetings considering possible amendments to Fed. R. Civ. Proc. 23. I have also had several hearsay reports from attorneys and legal academics that several judges and at least one retired appellate judge have praised my work in conversation with them. In advance of my Supreme Court argument and briefing in *Frank v. Gaos* (another case where my participation as objector was unremarkable), I consulted with two retired federal appellate judges who were eager to assist me; I also asked the advice of a federal appellate judge who was a former attorney in the Solicitor General's office when I was deciding whether to do my own argument in the case, and that judge's

encouragement was what convinced me to not delegate the argument. It is ambiguous whether the Court's requests are meant to reach such extrajudicial praise by a "judge." These sort of interactions are again so common that I do not track them at the granular level the Court requests if its request is interpreted so, and it would be impossible to fully reconstruct every instance where this has happened in the last ten years. Moreover, for example, the liberal Supreme Court justice who saw me at a mutual friend's wedding reception in Washington, D.C., in the summer of 2013, and exclaimed "It's Mr. Class Action!" did not expect to have that interaction (even if before third-party witnesses) disclosed in a declaration relating to HLLI's opposition to a motion to strike my objection. It would be potentially unfair to that justice, of marginal relevance to the case at hand, and might risk disqualifying that justice if I asked this Court to rely upon it and it issued an opinion doing so. We interpret the Court's order as intending only to reach statements made in court hearings or opinions, and don't include extrajudicial instances in this disclosure.

41.  I have heard from both plaintiffs' and defense attorneys that they use in settlement negotiations the specter of a CCAF objection to deflect abusive proposals made by the other side. I am an elected member of the American Law Institute. I have testified before both Senate and House subcommittees. The American Bar Association, the Federalist Society, and the American Constitution Society have each asked me to speak at national conventions. As I document in my initial declaration, the *New York Times* and *Wall Street Journal* have praised my work. None of this information was requested by the Court, or makes the settlement more fair or unfair, but is of some relevance to my credibility and the credibility of CCAF.

42.  To express CCAF's success numerically, I refer to my list of CCAF class-action objections from my previous declaration. Dkt. 75-1 at 4-20. This list *excludes* successful non-objection participation like our work in *State Street* and *Akorn*, and objections I personally litigated outside of CCAF on behalf of private clients.

43.  Including objections to Rule 23(h) fee requests, there were CCAF objections in 108 cases, sometimes to multiple settlements in the same case. *Id.* Of them, seventy-one resulted in either reduced attorneys fees and/or modification or court rejection of the objected-to settlement and/or

an appellate precedent protecting class members in future cases. Just thirty-one of the objections were entirely unsuccessful, and six objections remain undetermined with litigation ongoing. *Id.* Of the seventy-one cases with at least partially successful objections, in the nineteen of them listed above (excluding *State Street*) CCAF attorneys: (1) provided a clear monetary benefit to class members, (2) sought, and (3) received attorneys' fees for their beneficial work. In five of these nineteen cases, I was the objector myself. As recounted above, Courts expressly praised CCAF's work or work product in at least seventeen of its cases (not counting *State Street* and the present case, and counting the praise from two different *Pearson* panels as a single case), and implicitly endorsed it in the numerous other cases where an appeals court ruled in our favor and established new precedent without explicitly praising us or where a district court awarded us fees upon a finding of benefit to the class. In the cases where CCAF has objected, direct class recovery has increased by hundreds of millions of dollars, and that understates the benefit we have created for class members by creating a precedential legal framework that discourages many unfair settlements *ex ante*.

44. Zero district courts struck CCAF objections. Zero courts sanctioned CCAF attorneys. In zero objections did a court entirely bar a CCAF attorney from speaking at the fairness hearing. Only a handful of appellate objections ultimately resulted in determinations limiting our clients' standing to advance particular arguments, all of which involved idiosyncratic issues that simply do not exist here. I have never been sanctioned since I graduated law school in 1994, which is fewer sanctions than Perkins Coie attorneys have incurred in the last six months. *Texas Alliance for Retired Americans v. Hughs*, No. 20-40643 (5th Cir. Jun. 30, 2021). I am deeply offended by Perkins Coie's legally and factually baseless accusations of bad faith that have vexatiously multiplied proceedings, and their use of overruled precedent to support it.

45. No court has done anything like what defendants move this court to do, and multiple appeals courts have rejected the argument. I reserve my right to seek attorneys' fees caused by defendants' vexatious multiplication of the proceedings.

Case 1:20-cv-23564-MGC  Document 108-2  Entered on FLSD Docket 08/23/2021  Page 35 of
49
Case 1:12-md-02358-JDW  Document 211-2  Filed 08/08/22  Page 36 of 50 PageID #:
4137

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Executed on August 23, 2021, in North Bethesda, Maryland.

Theodore H. Frank

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 36 of
Case 1:12-md-02358-JDW   Document 211-2   Filed 06/06/22   Page 37 of 50 PageID #:
4138

# Frank Decl.

# EXHIBIT 1

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 37 of
49
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 38 of 50 PageID #:
4139



Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 38 of
Case 1:12-md-02358-JDW   Document 211-2   Filed 08/08/22   Page 39 of 50 PageID #:
4140

# Frank Decl.

# EXHIBIT 2

Case 1:20-cv-23564-MGC   Document 108-2   Entered on FLSD Docket 08/23/2021   Page 39 of 49

# We're your brain's biggest fan

Neuriva is a brain support supplement and comprehensive brain health regimen. We're on a mission to help brains be the best they can be.



**CLINICALLY PROVEN NATURAL INGREDIENTS**

*Schiff*

NEW

# neuriva
**BRAIN PERFORMANCE**

Original



FUELS 5 INDICATORS OF
**5**
BRAIN PERFORMANCE

✓ Focus ✓ Memory ✓ Learning
✓ Accuracy ✓ Concentration

# Supports*:

1. Focus

2. Accuracy

3. Memory

4. Learning

5. Concentration

**See more**



**CLINICALLY PROVEN NATURAL INGREDIENTS**

Schiff

**NEW**

# neuriva

**BRAIN PERFORMANCE**



**Plus**

+Vitamins B6, B12 & Folic Acid

✓ Focus ✓ Memory ✓ Learning
✓ Concentration ✓ Accuracy
✓ Reasoning

# Supports*:

1. Focus

2. Accuracy

3. Memory

4. Learning

5. Concentration

6. Reasoning

See more

★ THIS STATEMENT HAS NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTEND

# Your brain's secret weapon

Neuriva helps fuel multiple indicators of brain performance.* It won't make you a genius, but others might think you're one.

**Learn more**



# Clinically-proven natural ingredients

Neuriva is made from decaffeinated coffee cherries and plant-sourced sharp PS. Both are natural, GMO-free, and clinically-proven to enhance brain performance.*

**See details**





## Neurofactor
(Coffee Cherry)



## Plant-sourced
## sharp PS
(Phosphatidylserine)

## Clinically proven natural ingredients

# Download the Neuriva Brain Gym App

Train your brain with brain-bending exercises, tips, and tools. You can even track your progress.

**See details**









# Share

Share this page with your friends.





