UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION <br><br> This Document Relates to: <br> **All Actions** | NO. 1:12-md-02358-ER |

**DEFENDANT GOOGLE LLC'S
STATEMENT IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

ANTHONY J WEIBELL, CA Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: aweibell@wsgr.com

*Attorneys for Defendant*
GOOGLE LLC (formerly Google Inc.)

September 9, 2022

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. The District Court Previously Dismissed the Action in Its Entirety ....................... 2

    B. The Third Circuit Sustained Dismissal as to All But One Claim ........................... 3

    C. If Litigated, Plaintiffs' Remaining Claim Would Have Failed ............................... 4

    D. The Class Settlement Was Previously Approved by the District Court ................. 5

    E. The Additional Evidence and Argument on Remand ............................................ 5

III. A DIRECT DISTRIBUTION TO CLASS MEMBERS IS NOT POSSIBLE .................... 6

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE WITHOUT ANY DIRECT PAYMENTS TO CLASS MEMBERS ...................................................... 8

V. CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ...................................................................................... 9, 10

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ............................................................................................ 8

*First State Orthopaedics v. Concentra, Inc.*,
    534 F. Supp. 2d 500 (E.D. Pa. 2007) ............................................................................. 9

*Hernandez v. Hillsides, Inc.*,
    211 P.3d 1063 (Cal. 2009) .............................................................................................. 4

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ............................................................................................ 7

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) ........................................................................... 3, 4, 5, 9, 10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) ............................................................................... 1, 5, 6, 7, 9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    988 F. Supp. 2d 434 (D. Del. 2013) ............................................................................ 3, 9

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) .......................................................................................... 9

*Kirsch v. Delta Dental of N.J.*,
    534 F. App'x 113 (3d Cir. 2013) ..................................................................................... 9

*Kizer v. Cnty. of San Mateo*,
    806 P.2d 1353 (Cal. 1991) ............................................................................................ 10

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................... 9

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .......................................................................................... 9

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
    641 F. App'x 146 (3d Cir. 2015) ..................................................................................... 9

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)..........................................................................................10

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ..........................................................................................9

**RULES**

Fed. R. Civ. P. 23(b)(2).......................................................................................................1

Fed. R. Civ. P. 23(b)(3).......................................................................................................1

I.    INTRODUCTION

The Court should grant Plaintiffs' motion for final approval of the class settlement because the settlement is fair, reasonable, and adequate, as class members have suffered no damages and cannot be identified individually. As the District Court previously recognized, "this has always been a case in which the facts preclude direct individual compensation" to class members. *In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie III*"), 934 F.3d 316, 324 n.7 (3d Cir. 2019) (quoting Judge Robinson at the original fairness hearing). On appeal, the Third Circuit did not disagree with that conclusion. Nor did it disapprove of the *cy pres* structure of the settlement. *See id.* at 326-28. It remanded the action only so the Court could conduct additional "factfinding and legal analysis . . . []sufficient for [the Third Circuit] to review [the] order certifying the class and approving the fairness, reasonableness, and adequacy of the settlement." *Id.* at 332.

Following remand, the parties worked to address these issues. Specifically, they revised the process for selecting the *cy pres* recipients and provided additional evidence and briefing to establish that the settlement can be approved under Rule 23(b)(3) (in addition to Rule 23(b)(2)). Based on the parties' efforts, this Court granted preliminary approval to the settlement under both Rule 23(b)(2) and Rule 23(b)(3). *See* ECF No. 203 at 1-2.

The Court should now grant final approval. In addition to the reasons set out in Plaintiffs' supporting papers (ECF Nos. 208-211), Defendant Google LLC (formerly Google Inc.) ("Google") refers the Court to the declaration of Lawrence You, the Director of Privacy for Product and Engineering at Google, which accompanied Google's Statement in Support of Plaintiff's Second Motion for Preliminary Approval. *See* Decl. of Lawrence You ("You Decl."), ECF No. 196. Mr. You's declaration explains in detail that: (1) the substantial majority of persons upon whose behalf this action was filed would not have been affected by the conduct

alleged in the complaint; (2) it is not possible for Google, Plaintiffs, or class members to identify specific individuals who were actually affected; and (3) even if individuals could be identified and had been affected, they would not have suffered any tangible injury—at most, they may have been shown more relevant ads when visiting a website than those they otherwise were shown on that website. *See generally id.*

Google thus joins Plaintiffs in respectfully requesting that the Court grant final approval of the settlement agreement.

## II.   BACKGROUND

### A.   The District Court Previously Dismissed the Action in Its Entirety

This action was filed *more than a decade ago* on the heels of various media reports speculating that the defendants, including Google, circumvented the default settings of Apple's Safari web browser to place "cookies" on users' browsers to aid in interest-based advertising (e.g., displaying ads for pet supplies in a browser frequently used by a class member to visit pet-related websites).[1] Such cookies may have allowed Google to *anonymously* correlate some class member visits to various websites that displayed Google ads, which in turn might have enabled Google to display ads that were more relevant to these class members than the less-relevant context-based ads they would have otherwise seen. *See* You Decl. ¶¶ 17-46, 61-65. The cookie would have had no other effect. *Id.* ¶¶ 3(c), 64.

Although they did not suffer—and did not allege that they suffered—any actual injury, Plaintiffs asserted nine causes of action alleging violations of various federal and state laws. Plaintiffs' allegations were factually mistaken as to Google in multiple respects. But the District Court never had to address these factual errors because the Court dismissed the action as a matter

---

[1]   Google is the only remaining defendant; one defendant settled out, and other defendants were not the subject of the California privacy claims revived by appeal in 2015.

of law at the outset for failure to state a claim. *In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie I*"), 988 F. Supp. 2d 434, 451 (D. Del. 2013). Among other legal defects in their alleged claims, the District Court held that Plaintiffs failed to identify any cognizable damages. *Id.* at 448.

### B. The Third Circuit Sustained Dismissal as to All But One Claim

On appeal, the Third Circuit affirmed the dismissal of all of Plaintiffs' claims except a common law and constitutional privacy claim under California law. *In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie II*"), 806 F.3d 125 (3d Cir. 2015). Notably, the Third Circuit affirmed the dismissal of all federal claims and all causes of action that threatened statutory damages, *see id.* at 153, while recognizing that Plaintiffs did not allege any pecuniary harm, *id.* at 134, 149, 152.

What remained of the case on remand from *Cookie II* was essentially a single privacy claim brought under the California Constitution and California tort law. *Id.* at 151-52. That claim focused on an alleged misstatement by Google that was buried in the Complaint and had received virtually no attention in the parties' prior briefing.[2] It advanced an outlandish theory: that Google intentionally set out to deceive Plaintiffs by failing to update an obsolete statement (made in a seldomly visited hinterland of Google's Help Center) that users of the Safari browser did not need to take affirmative action to block Google's cookies because Safari would do so by default. CAC ¶¶ 79-81; *Cookie II*, 806 F.3d at 149-53; You Decl. ¶ 70.

If this case had proceeded on the invasion-of-privacy claim after remand from *Cookie II*, Plaintiffs would have been required to prove that: (1) Plaintiffs personally viewed and relied on the alleged misrepresentation, such that they had a reasonable expectation they would not receive

---

[2] The alleged misrepresentation reads: "Safari is set by default to block all third-party cookies. If you have not changed those settings, this option essentially accomplishes the same thing as setting the opt-out cookie." Class Action Complaint ("CAC") ¶ 79, ECF No. 46.

3

the cookie at issue from Google; (2) Plaintiffs received a cookie on their device by the means alleged in the Complaint rather than by some other means not at issue; (3) the placement of that cookie was highly offensive to a reasonable person; and (4) Google "intentionally" embarked on a scheme to track Plaintiffs' Internet activity through "deceit"—that is, by deliberately misleading users to believe that Google would not place "tracking cookies" on browsers in their default state, and then purposefully "disregard[ing]" this representation by "overriding" Plaintiffs' browser settings. *Cookie II*, 806 F.3d at 149-52 (quoting *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009)).

### C. If Litigated, Plaintiffs' Remaining Claim Would Have Failed

Plaintiffs' last remaining theory was doomed to fail for several reasons. *First*, the alleged misrepresentation was an "out-of-date statement . . . posted to a rarely-visited Help Center page at a time when the statement was objectively true—long before the alleged conduct began, and a year before Apple even implemented the exceptions to Safari's third-party cookie-blocking defaults that caused the placement of the DoubleClick Ad Cookie in the manner alleged by Plaintiffs." You Decl. ¶ 70. Consequently, any effect the alleged misstatement may have had was inadvertent and resulted from unforeseen third-party conduct, rather than from any intent by Google to invade Plaintiffs' privacy. *See id.* ¶¶ 38-46, 48. *Second*, Plaintiffs do not allege to have personally viewed the alleged misrepresentation or relied on it, and thus, they could have had no reasonable expectation that Google would not place any cookies on their browser when visiting websites that displayed Google ads. *See* CAC ¶¶ 79-81. *Third*, as explained in the You Declaration, Plaintiffs are not able to identify whether they actually received a cookie by the means alleged in the Complaint because "[i]t is technically impossible to distinguish between Safari users who were affected by the issue at the heart of this action and those who were not." You Decl. ¶ 59; *see also id.* ¶¶ 3(b), 48-60. And *fourth*, the alleged circumvention of Plaintiffs'

4

default browser settings was in connection with the placement of a different cookie than the alleged tracking cookie complained of by Plaintiffs. *Id.* ¶¶ 30-46. This again shows the lack of any intentional invasion of privacy by Google.

### D. The Class Settlement Was Previously Approved by the District Court

Because of the grim outlook for the little that remained of Plaintiffs' case following remand from *Cookie II*, the parties soon after reached a modest class settlement that provided injunctive relief and monetary payments to organizations dedicated to improving Internet safety and privacy. The settlement agreement limited the settlement class to only those persons who Plaintiffs could plausibly allege to have been injured: those who received a Google cookie "by the means alleged in the Complaint." Strange Decl., Ex. A (Settlement Agreement) § 2.3, ECF No. 210-2. Because class members did not suffer individual damages and because it was technically impossible for the parties or class members to identify any specific member of the settlement class, the parties agreed that direct monetary payments to class members was neither a feasible nor necessary component of the settlement.

The settlement was readily approved by the United States District Judge who presided over the matter for years and who recognized the futility of further litigation. Mem. & Order, ECF No. 173. A single objector appealed the District Court's approval. *See Cookie III*, 934 F.3d at 320. Without disagreeing with the District Court's approval of the settlement, the Third Circuit remanded the case only so the Court could make additional "factfinding and legal analysis . . . []sufficient for [the Third Circuit] to review [the] order certifying the class and approving the fairness, reasonableness, and adequacy of the settlement." *Id.* at 332.

### E. The Additional Evidence and Argument on Remand

The parties have conferred extensively regarding the issues identified in *Cookie III* following the case's remand and reassignment to this Court. On January 3, 2020, Plaintiffs filed

5

a second motion for preliminary approval of the settlement agreement, ECF No. 194, which Google supported with a separate filing to explain the facts underlying this dispute, ECF Nos. 195, 196. After this Court held a preliminary-approval hearing on February 25, 2021, it ordered the parties to submit supplemental briefing on three issues that were discussed at the hearing. ECF No. 201. Thereafter, the parties provided extensive briefing on those issues. ECF No. 202. On October 15, 2021, the Court granted preliminary approval to the settlement, after which the parties undertook a second notice-and-opt-out period. *See* ECF No. 203. Over a decade since this case was filed, the settlement should be finally approved for the reasons set out in Plaintiffs' second motion for final approval. ECF No. 210.

Google submits this separate statement in support of final approval, which relies on Mr. You's declaration, to focus on why the *cy pres* settlement structure is appropriate given the highly technical facts underlying Plaintiffs' sole remaining claim.

### III. A DIRECT DISTRIBUTION TO CLASS MEMBERS IS NOT POSSIBLE

*Cookie III* counseled that this Court's "settlement approval should be a practical inquiry rooted in the particular case's facts." 934 F.3d at 328. The practical reality here is that no one— not Plaintiffs, not Google, and not putative class members, including the objectors[3]—can determine who received a cookie in 2011 by the means alleged in the Complaint. As the declaration from Lawrence You, Google's Director of Privacy for Product and Engineering, explained:

> The substantial majority of persons upon whose behalf this action was filed were not affected by the placement of the cookies in the manner alleged by Plaintiffs because they already had the cookie at

---

[3] Even Objector Frank's counsel conceded the impossibility of identifying class members at an approval hearing before the District Court. Tr. Proceedings at 16:4-9, Jan. 11, 2017 (acknowledging that "nobody even knows the status today of the cookies on their browser. They know what websites they visited but they don't know the status of their cookies[,] let alone from a period of time five years ago").

6

> issue on their browser for reasons unconnected with the events alleged by Plaintiffs.
>
> Because the cookie itself gives no indication of how it was placed, it is not possible for Google, Plaintiffs, or members of the class of persons represented by Plaintiffs to identify whether a browser received a cookie by means alleged by Plaintiffs or by some other means not at issue. Google did not collect and does not have information sufficient to identify the class of persons whose browsers received a cookie by the means alleged by Plaintiffs.

You Decl. ¶ 3(a)-(b); *see also id.* ¶ 59 ("It is technically impossible to distinguish between Safari users who were affected by the issue at the heart of this action and those who were not.").

Because there is no practical way for anyone to identify who is—and who is not—a class member, a settlement that provides for direct monetary payments to class members was and remains an impossibility. You Decl. ¶¶ 3(b), 48-60. In this case, a *cy pres*-only distribution is the only reasonable mechanism for disposing of the settlement fund. Third Circuit law allows for such a distribution where, as here, it is "economically or administratively infeasible to distribute funds to class members." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013); *accord Cookie III*, 934 F.3d at 321, 328 ("We know no ruling that requires district courts to approve only settlements that provide for direct class distributions on these facts. Indeed, *Baby Products* suggested the opposite.").

Although inconceivable, even if some class member had preserved their technical data for the past 11 years and possessed the rare technical resources and ability to be able to determine that they are members of the class,[4] it would be unjust to overcompensate that individual with the entire settlement fund. *See Baby Products*, 708 F.3d at 176 (*cy pres* distributions are preferred over limited direct distributions that would "overcompensat[e]

---

[4] A review of the Complaint shows that a Stanford University researcher had to conduct advanced technical experiments in real time in 2011-2012 to detect the existence of a cookie placed by the means alleged in the Complaint. Am. Class Action Complaint ¶¶ 68-126, ECF No. 162. Such real-time experiments are not possible now that cookie placement has ceased.

claimant class members at the expense of absent class members"). Such a lopsided distribution of the fund would almost certainly confer no benefit to the class at large. In contrast, it would confer greater and more relevant benefits to absent class members to direct the settlement funds to Internet privacy organizations who are prepared to provide benefits to the class at large by helping protect their privacy interests. And, although it appears impossible, if any class member does possess the technical resources and data required to demonstrate that they received a cookie by the means alleged in the complaint, such a rare class member has *twice* had the right to opt out of the settlement to seek a personal monetary recovery in an individual civil action.

Just as providing funds to too few claimants would harm the class at large, so too would a settlement that provided payments to too many claimants. It would be detrimental to absent class members to increase the number of claimants by eliminating the need to confirm that claimants are in fact class members. Doing so in this case, where the events at issue took place over a decade ago and where nearly everyone who uses the Internet might believe themselves to be potential class members, would completely dilute the recovery for valid class members. *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3d Cir. 2013) ("It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims."), *reh'g en banc denied*, No. 12-2621, 2014 WL 3887938 (3d Cir. May 2, 2014). Again, *cy pres* recipients who are required to spend the funds on improving Internet security and privacy make the best recipients of settlement funds on the facts of this case.

IV. **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE WITHOUT ANY DIRECT PAYMENTS TO CLASS MEMBERS**

Under the facts of this case, the settlement is fair, reasonable, and adequate without any direct monetary payments to class members because class members have suffered no pecuniary or emotional damages that require monetary compensation. Nor do they even allege any such

damages. As the District Court previously recognized, "this has always been a case in which the facts preclude direct individual compensation" to class members. *Cookie III*, 934 F.3d at 324 n.7; *see also Cookie I*, 988 F. Supp. 2d at 448 (Plaintiffs failed to identify any cognizable damages or loss); *Cookie II*, 806 F.3d at 134, 149, 152 (Plaintiffs did not allege any pecuniary harm).

The Third Circuit has a history of recognizing that a settlement need not provide direct monetary benefits to the class to be fair, reasonable, and adequate. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (rejecting objections to settlement that provided no monetary relief to the class); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 151 (3d Cir. 2015) (same; "a [class] settlement can be fair without involving pecuniary relief"); *Kirsch v. Delta Dental of N.J.*, 534 F. App'x 113, 116-17 (3d Cir. 2013) (approving class settlement that "resulted in no monetary award"); *accord In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1113 (9th Cir. 2021) (affirming settlement approval "that provides monetary relief only in the form of *cy pres* payments to third parties"); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary settlement relief adequate); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (same); *cf. Lane v. Facebook, Inc.*, 696 F.3d 811, 819, 826 (9th Cir. 2012) (approving purely *cy pres* class settlement in a consumer privacy class action), *reh'g en banc denied*, 709 F.3d 791 (9th Cir. 2013).

This is especially true where "the likelihood of the plaintiffs actually recovering any portion of [their alleged damages] was dubious." *McDonough*, 641 F. App'x at 151 (nonmonetary settlement was fair where plaintiffs' $10 billion damages calculation was calculated using a model that the court had rejected in a similar case); *see also First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 521-22 (E.D. Pa. 2007) (approving nonmonetary settlement where "[t]he plaintiff class face[d] substantial obstacles to establishing

9

liability for money damages"). In *Bolger*, the Third Circuit approved a class settlement despite objections that the settlement provided no monetary benefit to the class. 2 F.3d at 1311. In rejecting these objections, *Bolger* recognized that a fair settlement does not require a monetary benefit in a case where the plaintiffs' claim to damages is weak. *Id.* at 1313 (emphasizing that "[e]ven if plaintiffs hoped to secure a large damage award, this would have to be drastically discounted by the improbability of their success on the merits"). Thus, the Third Circuit reasoned that "even if we attach a small figure to the value of the [the nonmonetary relief provided by the settlement], this small value may be fair consideration for and accurately reflect the expected payout at trial net of the costs of trial."[5] *Id.*

It has been years since the Third Circuit affirmed the dismissal of nearly all of Plaintiffs' claims, including all claims that carried even the theoretical potential for statutory damages. *Cookie II*, 806 F.3d at 153. The Third Circuit further recognized that Plaintiffs did not allege any pecuniary harm. *Id.* at 152 ("[T]he complaint fails to show damage or actual loss."). Without actual damages, Plaintiffs would not have been able to recover any nominal or punitive damages either: "In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages. Even nominal damages, which can be used to support . . . punitive damages, require actual injury." *Kizer v. Cnty. of San Mateo*, 806 P.2d 1353, 1357 (Cal. 1991) (internal citations omitted).

The present settlement may thus be readily approved as fair, reasonable, and adequate without any direct monetary payments to class members because they would have received no such damages award even had they been able to otherwise demonstrate liability at trial.

---

[5] Likewise, the Third Circuit sitting en banc has held that when "comparing the value of settlement versus trial, [the Court] must be careful to judge the fairness factors 'against the realistic, rather than theoretical, potential for recovery after trial.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004)).

## V. CONCLUSION

Based on the foregoing, Google respectfully requests that the Court grant final approval to the parties' heavily negotiated and long-delayed class settlement.

Dated: September 9, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Anthony J Weibell*
　　　Anthony J Weibell

*Attorneys for Defendant*
GOOGLE LLC (formerly Google Inc.)