```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE

IN RE: GOOGLE, INC. COOKIE      :
PLACEMENT CONSUMER PRIVACY      :   Civ. No. 12-MD-2358
LITIGATION                      :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                               July 10, 2023

Presently before the Court is Plaintiffs' motion for final certification of a settlement class and final approval of the class action settlement. Under the current posture of the case, the salient issue before the Court is whether the feasibility prong of the ascertainability prerequisite for certifying a Rule 23(b)(3) class, in light of the jurisprudence of this Circuit, is irrelevant and need not be satisfied in the context of approving a settlement class. No published opinion in this Circuit directly addresses this issue.

After a fairness hearing, and for the reasons stated in this memorandum, the Court concludes that satisfaction of all parts of the ascertainability prerequisite are necessary when certifying a settlement class under Rule 23(b)(3). Given that class counsel concede that they cannot meet the feasibility prong of the ascertainability prerequisite, the Court will deny final class certification. Without a certifiable class, it is unnecessary to opine on the fairness of a settlement for the proposed class.

**I.   Facts and History**

Plaintiffs filed a class action complaint in 2012 alleging that Google circumvented certain privacy settings on two commonly used web browsers so that it could track users via cookies despite privacy settings that should have prevented the tracking.

After the Honorable Sue Robinson granted a motion to dismiss in full, the Third Circuit reversed in part and remanded, affirming the dismissal of the three federal law claims under the Wiretap Act, 18 U.S.C. § 2510, the Stored Communications Act, 18 U.S.C. § 2701, and the Computer Fraud and Abuse Act, 18 U.S.C. § 103, as well as four California state law claims under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, the California Invasion of Privacy Act, Cal. Penal Code § 630, and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750. In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 153 (3d Cir. 2015) ("Google Cookie I"). The Third Circuit reversed the dismissal of the remaining two state law claims for violation of the privacy protections conferred by the California Constitution and for intrusion upon seclusion under California tort law. Id.

In 2016, and with the help of a mediator, the parties negotiated a $5.5 million cy pres-only settlement in connection

2

with the two remaining claims, with the funds to be awarded to six organizations that would have used the money to promote public awareness, education, and research related to browser security. The settlement included $1,000 service awards for the class representatives, $1,925,000 in attorney's fees, $90,929.26 in costs, and up to $500,000 in administration fees, all to be taken from the settlement fund (leaving roughly half for the cy pres recipients).

Judge Robinson certified the settlement class under Federal Rule of Civil Procedure 23(b)(2), approved the settlement agreement, and approved attorney's fees and costs in a fairly terse order dated February 17, 2017.

On appeal, the Third Circuit vacated and remanded, holding that cy pres-only Rule 23(b)(2) class settlements were not per se unfair, but that the court had concerns over the fairness of two aspects of the settlement: (1) the broad class-wide release of claims for money damages; and (2) the selection of the six cy pres recipients. See In re: Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 328, 329-31 (3d Cir. 2019) ("Google Cookie II").[1] The Third Circuit was also concerned that

---

[1] "The term 'cy pres' is derived from the Norman French expression cy pres comme possible, which means 'as near as possible.'" In re Baby Prod. Antitrust Litig., 708 F.3d 163, 168 (3d Cir. 2013) (quoting Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 84 F.3d 451, 455 n.1 (D.C. Cir. 1996)). The typical purpose of a cy pres award is to provide a method for distributing any residual settlement funds which may

the district court engaged in only a cursory analysis of the Girsh and Prudential fairness factors. Id. at 323-24, 329.

Regarding the releases, the Third Circuit noted that the parties sought to certify an injunctive class under Rule 23(b)(2) rather than a damages class under Rule 23(b)(3), while still seeking to obtain the benefits of a Rule 23(b)(3)-style release of monetary claims. Id. at 329-30. The court questioned, but did not resolve, whether a defendant could ever obtain a class-wide release of monetary claims in a Rule 23(b)(2) class settlement. Id.

Regarding the cy pres recipients, the Third Circuit was concerned over the proposed recipients' prior ties to Google and class counsel. Id. at 330-31. It noted that the district court

---

exist after all known parties are compensated and the fees and costs are paid.

> Money may remain unclaimed if class members cannot be located, decline to file claims, have died, or the parties have overestimated the amount projected for distribution for some other reason. It may also be economically or administratively infeasible to distribute funds to class members if, for example, the cost of distributing individually to all class members exceeds the amount to be distributed.

Id. at 169. When such a residual fund exists, courts may permit "the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use--a charitable purpose reasonably approximating the interests pursued by the class." Id. In this case, the parties have proffered a cy pres-only settlement after concluding that any monetary distribution to individual class members would be economically and administratively infeasible given that the parties cannot even ascertain who is in the class.

conducted no fact finding nor a hearing to determine the nature of the relationships between the recipients, class counsel, and Google. Id.

On remand, following the retirement of Judge Robinson, the case was reassigned to the undersigned. The parties filed a renewed motion for preliminary approval and attempted to address the Third Circuit's concerns by: (1) requesting class certification under both Rule 23(b)(2) and (b)(3); and (2) including a neutral party to be approved by the Court to choose the cy pres recipients.

The Court held a preliminary fairness hearing on February 25, 2021. The Court then ordered the parties to file an additional joint brief addressing: (1) whether the proposed Rule 23(b)(3) class could meet the Third Circuit's ascertainability requirement; (2) whether the proposed settlement met the Rule 23(e), Girsh, and Prudential fairness factors; and (3) whether a Rule 23(b)(2) injunctive class without the broad claims releases would be an acceptable alternative.

On October 15, 2021, the Court granted the motion to preliminarily certify the class and approve the settlement but expressed concern regarding final approval.[2] The Court also required the parties to re-publish the notice of the settlement.

---

[2]   In its order granting preliminary approval of the settlement, the Court noted that it "retain[ed] concerns about the ultimate fairness of a class settlement which provides a cy

In response to the notice, the parties received two objections and 39 opt-out requests. Class counsel then filed the instant motion for final class certification and approval of the settlement.

**II. Terms of the Revised Settlement Agreement**

The terms of the revised settlement agreement are the same as those in the original agreement with two exceptions: (1) the settlement relief has been modified so that a neutral third party appointed by the Court will choose the cy pres recipients; and (2) Plaintiffs moved for certification under Fed. R. Civ. P. 23(b)(3) as well as Rule 23(b)(2). These changes are attempts to address the concerns of the Third Circuit.

The class consists of:

> All Persons in the United States of America who used the Apple Safari or Microsoft Internet Explorer web browsers and who visited a website from which Doubleclick.net (Google's advertising serving service) cookies were placed by the means alleged in the Complaint.

The basic terms of the agreement as amended are that, in exchange for the release of all monetary claims, Google has stopped the alleged cookie tracking and will pay $5,500,000 to

---

pres-only fund, half of which will go towards counsel and administration fees, in exchange for the release of all monetary claims of a class of unknown and unknowable size." ECF No. 203 at 2 n.1. The Court also preliminarily certified the class, finding, inter alia, that "the portions of the Third Circuit's ascertainability inquiry that are relevant to a settlement class" were met. Id. ¶ 1.c. However, after further consideration and the recent publication of additional Third Circuit law, the Court concludes that this preliminary finding was in error.

up to ten cy pres recipients to be selected by a court-approved neutral administrator. The agreement also continues to provide three $1,000 incentive awards to the class representatives to be paid from the fund.

Google has agreed to pay all reasonable settlement administration expenses up to $550,000 (this includes an additional $50,000 for republishing the second notice), which are to be paid from the settlement fund.

In the order vacated by the Third Circuit, Judge Robinson considered and approved Plaintiffs' motion for attorney's fees and expenses, awarding $1,925,000 in fees and $90,929.26 in expenses to be paid from the settlement fund. Counsel has not sought additional payment for work performed after that order.

Thus, if approved, as with the original settlement, approximately half of the amount of the settlement award would go to the cy pres recipients, with the balance to counsel for fees and expenses.

### III. DISCUSSION

Because this is a class action, the Court must first determine whether the class is certifiable. While the exact process a district court should follow when presented with a settlement class is not prescribed by Federal Rule of Civil Procedure 23, under Third Circuit law, the court must determine that the settlement class meets the requirements for class

7

certification under Rule 23(a) and (b), and, if so, it must determine whether the proposed settlement is fair to that class under Rule 23(e). In re Nat'l Football League Players Concussion Inj. Litig., 775 F.3d 570, 581 (3d Cir. 2014); In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995) (providing that settlement class status "should not be sustained unless the record establishes, by findings of the district judge, that the [ ] requisites of [ ] Rule [23(a) and (b)] are satisfied").

### A. Overview of Class Certification

At the final approval stage, the court must undertake a "rigorous analysis" as to whether class certification is appropriate. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 (3d Cir. 2008). Under Rule 23(a), the plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Plaintiffs seek to have the class certified under both Rule 23(b)(2) and (3). Rule 23(b)(2) applies when the class is seeking injunctive or declaratory relief and requires that "the

8

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Shelton v. Bledsoe, 775 F.3d 554, 561 (3d Cir. 2015) (internal quotation marks omitted) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011)).

A Rule 23(b)(3) class is appropriate where the class seeks monetary damages and requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under Third Circuit law, as part of the rigorous review of a request for Rule 23(b)(3) class certification, the court must preliminarily determine that the class is "readily ascertainable based on objective criteria" which is an "essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012); In re Niaspan Antitrust Litig., 67 F.4th 118,

129-30 (3d Cir. 2023). To satisfy this ascertainability prerequisite, "[p]laintiffs must show that '(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" Hargrove v. Sleepy's LLC, 974 F.3d 467, 469-70 (3d Cir. 2020) (quoting Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)).[3] The Third Circuit recently reiterated the objectives served by the ascertainability prerequisite:

> First, it eliminates "serious administrative burdens that are incongruous with the efficiencies expected in a class action" by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the "best notice practicable" under Rule 23(c)(2) in a Rule 23(b)(3) action. Third, it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.

In re Niaspan, 67 F.4th at 132 (quoting Marcus, 687 F.3d at 593).

**B.   Class Certification under Rule 23(a)**

The Court concludes that the proposed settlement class meets the requirements of Rule 23(a). First, class counsel estimate that millions of users of Safari and Internet Explorer

---

[3]   Although the Third Circuit's ascertainability prerequisite has been criticized in other circuits, it remains part and parcel of the class certification process in the Third Circuit. See In re Niaspan, 67 F.4th at 133-34 (citing negative cases but noting that other circuits perform a similar analysis and describe it differently).

web browsers have been affected by Google's alleged conduct during the relevant time and that those users are geographically dispersed throughout the United States. Indeed, the parties have stated numerous times that it is impossible to identify every affected individual. Thus, the class is so numerous that joinder of all members is impracticable.

Similarly, there are questions of law and fact common to the proposed class including: (1) whether Google's alleged practice of circumventing the class members' browser security and privacy settings violated California law; (2) how Google carried out the browser circumvention; and (3) whether the class members are entitled to damages or other relief.

Third, the claims of the representative parties are the same as the claims of the rest of the class and all class members share similar injuries (alleged violations of privacy rights) all flowing from the same alleged conduct by Google.

Fourth, the class representatives can fairly and adequately protect the interests of the class. This inquiry (1) "tests the qualifications of the counsel to represent the class" and (2) "serves to uncover conflicts of interest between named parties and the class they seek to represent." In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998) (quoting In re Gen. Motors, 55 F.3d at 800 and then Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). The Court

concludes that class counsel has the necessary experience and qualifications to represent the class and there are no serious conflicts between the class representatives and the other class members because they all suffered the same injury and assert the same claims based on the same alleged conduct by Google.[4]

### C. Certification under Rule 23(b)(2)

Were this a true Rule 23(b)(2) injunctive class case, the Court concludes that the requirements of Rule 23(b)(2) would be met: Google acted on grounds that applied generally to the class such that any injunctive relief would have the same effect for all class members. Fed. R. Civ. P. 23(b)(2). The reality, however, is that the parties truly seek only Rule 23(b)(3) certification.

The parties previously attempted to certify their class under Rule 23(b)(2), but it was rejected by the Third Circuit in Google Cookie II. See 934 F.3d at 329-30. On remand, the parties renewed their request for certification under Rule 23(b)(2) (as well as Rule 23(b)(3) as discussed below), and attempted to

---

[4] Objector Theodore Frank argues that the class is inadequately represented by class counsel. He contends that class counsel's insistence on a cy pres-only settlement combined with the sizeable attorney's fee, and a global release of class members' claims indicates inadequate representation. Frank notes, correctly, that class members would be better off opting out of the settlement since they would retain their claims while, at the same time, obtain any benefits of the cy pres award. The Court concludes that Frank's arguments go more to the fairness of the settlement rather than the qualifications of counsel.

address the Third Circuit's criticism by providing Rule 23(b)(3) compliant notice to the class and the ability to opt-out like in a Rule 23(b)(3) class. They argue that, in exchange for these Rule 23(b)(3) due process safeguards, they should be entitled to a Rule 23(b)(3) style release of claims, but that the class should nevertheless be certified under Rule 23(b)(2).

If it walks like a duck, swims like a duck, and quacks like a duck, this Court must consider if it is, in fact, a duck. The parties seek to provide all the trappings of a Rule 23(b)(3) class, but still call it a Rule 23(b)(2) injunctive class.[5] Thus, the parties essentially seek Rule 23(b)(3) certification under the guise of Rule 23(b)(2). "This [still] raises a red flag." Google Cookie II, 934 F.3d at 329. As in the first settlement agreement, the parties continue to attempt to "sidestep[ ]" the requirements for releasing monetary claims under Rule 23(b)(3), including the ascertainability prerequisite, and "nonetheless obtain[ ]--for themselves anyway--the precise benefits that a Rule 23(b)(3) class gives to the defendant and class counsel:

---

5 During the fairness hearing, class counsel recognized the two-prong ascertainability prerequisite was the law in this circuit, but contended that no other circuit required a reliable and feasible mechanism for determining the class members. Counsel continued that he believed the Third Circuit would loosen the ascertainability requirement in the future. The Court is not as confident of this prediction given recent case law such as In re Niaspan, but in any event, the two-prong ascertainability prerequisite is currently the law of the circuit and this Court is required to follow it.

13

namely, a broad class-wide release of claims for money damages for the defendant, and a percentage-of-fund calculation of attorneys' fees for class counsel." Id.

It is true that the Third Circuit did not decide "whether a defendant can ever obtain a class-wide release of claims for money damages in a Rule 23(b)(2) settlement." Id. This Court likewise need not reach this grand issue. Under the facts of this particular case, the Court holds that the parties are truly seeking Rule 23(b)(3) class certification, along with the release of millions of damages claims, without meeting all of the heightened requirements of Rule 23(b)(3), including the ascertainability prerequisite.

Thus, the Court holds that the class cannot be certified under Rule 23(b)(2). If this class is to be certified, it must be certified under Rule 23(b)(3).

**D.  Certification under Rule 23(b)(3)**

Under Rule 23(b)(3), as part of the rigorous certification analysis into whether (1) legal issues common to all class members predominate over issues unique to individual class members and (2) the class action is superior to other methods of adjudication, the Third Circuit has repeatedly concluded that the class must be ascertainable. See, e.g., In re Niaspan, 67 F.4th at 129-34. As stated above, this means that (1) the class must be defined with reference to objective criteria and (2)

14

there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Hargrove, 974 F.3d at 469-70. The Third Circuit first articulated the ascertainability prerequisite in Marcus in 2012. 687 F.3d at 592-94. Since then, it has revisited the issue at least six times with the most recent being In re Niaspan earlier this year. 67 F.4th at 129-34 (recounting the history of the prerequisite).[6]

The parties do not argue that this settlement class is ascertainable. Indeed, they concede that it is not. Instead, they maintain that the second ascertainability prong, i.e., that there be a reliable and administratively feasible mechanism for determining who is in the class (the "feasibility requirement"), is unnecessary and irrelevant in connection with the certification of a Rule 23(b)(3) settlement class. The Court disagrees. As provided above, the ascertainability prerequisite furthers at least three objectives: (1) it eliminates serious administrative burdens by insisting on the easy identification of class members; (2) it protects absent class members by facilitating the "best notice practicable" under Rule 23(c)(2);

---

[6] The other five cases discussed in detail in In re Niaspan include, in chronological order, Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349 (3d Cir. 2013), Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013), Byrd v. Aaron's Inc., 784 F.3d 154 (3d Cir. 2015), City Select Auto Sales Inc. v. BMW Bank of North America, Inc., 867 F.3d 434 (3d Cir. 2017), and Hargrove v. Sleepy's LLC, 974 F.3d 467 (3d Cir. 2020).

and (3) it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable. Marcus, 687 F.3d at 593. Bypassing the feasibility prong in connection with a settlement class undermines at least the last of these goals.

The cases cited by counsel in support focus on the court's concern for trial manageability, which is admittedly non-existent in a settlement class. However, class counsel overlook the other reasons for requiring a feasible mechanism for determining class members. Since the proposed settlement agreement extinguishes the rights of the class members, in order to protect their interests, the parties and the court must be able to identify them.

Class counsel rely heavily on two cases to support their argument that the feasibility prong is unnecessary in a class action settlement because there is no need for trial management. The first case is a three-sentence-long non-precedential order by the Third Circuit in which it was undisputed that the district court erred in denying certification based on a lack of ascertainability (and, thus, it was decided without competing viewpoints or rationale). In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig., 656 F. App'x 8 (3d Cir. 2016). In In re Comcast, the court, without discussion, concluded that "the concern that '[t]he method of determining whether someone

16

is in the class . . . be administratively feasible,' is not implicated by this case, because the settlement agreement removes the need for a trial." Id. at 9 (quoting Carrera, 727 F.3d at 307 and citing Sullivan v. DB Invs., Inc., 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J. concurring)). While a non-precedential order is not binding, it is entitled to due deference based on the reasoning it provides. In this case, In re Comcast provides no supporting reasoning for this statement in the order. Therefore, any persuasive value must be discounted.

The second case is Sullivan, 667 F.3d 273. Class counsel contend that In re Comcast follows Sullivan's holding that "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation [for a settlement class]." 667 F.3d at 302. Sullivan, however, does not address the ascertainability requirement. Instead, Sullivan addresses whether differences in state law that apply to the class's claims can prevent predominance (finding that it did not). Id. at 302-03. Class counsel argue that rejection of class settlements on the grounds that it is difficult to prove "who is and who is not in the class" contradicts the Third Circuit's established policy of favoring "global peace" through settlement. Id. at 311 (providing that "achieving global peace is a valid, and valuable, incentive to class action Settlements"

17

and that "litigating whether a claim is 'colorable' and defending who is in and who is not in the class would be an endless process, preventing the parties from seriously getting to, and engaging in, settlement negotiations").

While that is part of the story, it is not the full story. The standards for certification (other than those regarding trial management) "demand undiluted, even heightened, attention in the settlement context." Amchem Prod., Inc, 521 U.S. at 620; Google Cookie II, 934 F.3d at 326. "Rule 23's rigors are not relaxed as to a settlement class; we simply do not weigh issues of trial management as they are irrelevant in such a situation." Neale v. Volvo, 794 F.3d 353, 362 n.4 (3d Cir. 2015); see also Rodriguez v. Nat'l City Bank, 726 F.3d 372, 378-79 (3d Cir. 2013) (distinguishing Sullivan, and noting that the policy favoring settlement, while "indeed strong, [] cannot alter the strictures of Rule 23"). In the class action settlement context, it is evident that there is some tension between fostering "global peace" through settlement and rigorously applying Rule 23. In other words, while private parties are ordinarily free to settle their disputes and seek "global peace," in the context of approving a settlement class, the court must continue to act with the diligence of a fiduciary in order to ensure that the settlement is administered fairly and properly for the benefit of the class.

While the Court agrees that trial management issues are, of course, not relevant in a settlement class, it disagrees that this eliminates all need for a feasible mechanism to determine who is in the class. This is especially so where, as here, it is proposed that all class members be stripped of their claims without ever being able to identify the owners of those claims. Without satisfying the feasibility prong of ascertainability, "potential class members [could not] identify themselves for purposes of opting out of the class," nor could the court "ensure[] that a defendant's rights are protected by the class action mechanism." Carrera, 727 F.3d at 307.[7]

The law is clear that, while trial management issues are obviated by a settlement class, the balance of the Rule 23 class certification requirements remain more necessary than ever in a class action settlement. Amchem Prod., Inc., 521 U.S. at 620; Google Cookie II, 934 F.3d at 326; Neale, 794 F.3d at 362 n.4. Because the purported class is not ascertainable, the Court

---

[7] The Third Circuit's unique development of the ascertainability prerequisite is also what distinguishes this case from extra-circuit cases like In re Google Inc. Street View Electronic Communications Litigation, in which the Ninth Circuit affirmed Rule 23(b)(3) class certification and approval of a settlement providing solely injunctive and cy pres relief. 21 F.4th 1102 (9th Cir. 2021), cert. denied sub nom. Lowery v. Joffe, 214 L. Ed. 2d 25, 143 S. Ct. 107 (2022). In such cases, the courts have not discussed whether there is a reliable and feasible mechanism for determining who is a member of the class.

concludes that the parties cannot maintain a Rule 23(b)(3) settlement class under the current settlement agreement.

Because the class cannot be certified under Rule 23(b)(2) nor (3), there is no need to address the fairness of the proposed settlement to the proposed class.

## IV. CONCLUSION

While the Court finds that the proposed settlement class meets the requirements of Rule 23(a), the settlement class cannot be certified under Rule 23(b)(2) because it is not an injunctive class and instead seeks to extinguish the monetary claims of all class members. Likewise, the settlement class cannot be certified under Rule 23(b)(3) because the class is not ascertainable. Thus, the Court will deny Plaintiff's motion for final class certification and approval of the class action settlement.

An appropriate order follows.