## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE:  GOOGLE, INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION** | **Case No. 1:12-md-02358-JDW** |

### MEMORANDUM

In this long-running multidistrict litigation, I didn't author the order that Plaintiffs want me to certify for an appeal. In 28 U.S.C. § 1292, Congress authorizes a "district judge" to certify an interlocutory order if, "in making" an order, he is of the opinion that reasonable minds could disagree, the decision is significant in the context of the case, and an answer might materially advance the case's resolution. Congress empowered district judges to authorize interlocutory appeals, but it limited the power because it prefers that cases go to a final judgment before an appeal. For many lawyers and litigants, that's dissatisfying. They want clarity from the Court of Appeals sooner. But like Tom Petty says, "[t]he waiting is the hardest part."[1] A judge who steps in after the fact didn't make the order and isn't as well situated to decide if an interlocutory order is appropriate. Section 1292(b) doesn't give me the power to authorize an interlocutory appeal, so I conclude that Plaintiffs have to wait for the end of the case, even if it is the hardest part. That said,

---

[1] Tom Petty And The Heartbreakers, The Waiting on Hard Promises (Backstreet 1981).

I recognize that my interpretation of Section 1292 is, in its own right, subject to reasonable disagreement, so I will certify that issue for an interlocutory appeal.

## I.      BACKGROUND[2]

Beginning in 2012, several lawsuits were filed in federal courts around the country alleging that Google circumvented certain privacy settings in the Safari and Internet Explorer web browsers so that it could track users via digital cookies. The Judicial Panel on Multidistrict Litigation consolidated the cases in Delaware and assigned them to Judge Sue Robinson. The Plaintiffs filed a consolidated amended complaint, which Judge Robinson dismissed. The Third Circuit reversed that decision in part. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015).

In 2016, the Parties reached a settlement that would result in a $5.5 million *cy pres*-only settlement. Ted Frank, a member of the class, objected. In 2017, Judge Robinson approved the settlement and certified an injunctive relief settlement class pursuant to Federal Rule of Civil Procedure 23(b)(2). On appeal, the Third Circuit vacated and remanded the approval, in part because it held that it was improper to certify a settlement that released damages claims under Rule 23(b)(2). *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 329-30 (3d Cir. 2019).

---

[2] The procedural history of this case is long and complex. I address only what is necessary to resolve this Motion.

On remand, the case was reassigned to Judge Robreno because Judge Robinson had retired. In 2020, the Parties filed a renewed motion for preliminary approval of the class action, this time as a damages class pursuant to Federal Rule of Civil Procedure 23(b)(3). In 2021, Judge Robreno granted preliminary certification and approval of the settlement. On July 10, 2023, Judge Robreno denied Plaintiffs' motion for final certification of the settlement class. On July 28, 2023, Plaintiffs filed a Notice of Appeal. But they dismissed that appeal voluntarily. By then, Judge Robreno had retired, so the case was reassigned to me.

I held a status hearing with the Parties where Plaintiffs informed me that they anticipated seeking an interlocutory appeal of Judge Robreno's decision denying class certification. I set a briefing schedule and ordered that the Parties address: "a) whether the Plaintiffs filed a petition for permission to appeal the denial of class certification pursuant to Fed. R. Civ. P. 23(f); b) whether the appeal that Plaintiffs filed July 28, 2023 (D.I. 222) constituted a petition for permission to appeal under Fed. R. Civ. P. 23(f); and c) if Plaintiffs did not file a petition for permission to appeal under Fed. R. Civ. P. 23(f), whether that Rule's 14-day time limit for petitions for leave to appeal forecloses an appeal under 28 U.S.C. § 1292(b)." (D.I. 227.)

On October 13, 2023, Plaintiffs filed their Motion for Interlocutory Appeal addressing these issues. Mr. Frank filed an opposition to Plaintiffs' Motion. But, because there's no certified class, it was not clear to me that Mr. Frank had standing to participate.

Nonetheless, because the adversarial process works better when there are adversaries, I considered his submission as an *amicus* brief and gave Plaintiffs leave to respond. Plaintiffs filed their reply on November 6, 2023.

The briefing raised a substantial dispute as to whether 28 U.S.C. § 1292(b) allows me to certify for appeal an order that a different judge entered. Noting that this question was on appeal in the Third Circuit, I stayed this case pending the final resolution of that appeal. On June 11, 2024, Plaintiffs informed me that the appeal had concluded without the Third Circuit resolving this question. So now, Plaintiffs' motion is ripe for review.

## II.    LEGAL STANDARD

Appellate jurisdiction is generally limited to final orders with the goal of preventing piecemeal litigation. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 575 (3d Cir. 2014). Certain exceptions allowing interlocutory appeals are found in 28 U.S.C. § 1292. Pursuant to Section 1292(b), a district judge who makes an order not otherwise appealable under Section 1292 may certify an order for interlocutory appeal when (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

III.    **ANALYSIS**

A.    **Statutory Interpretation**

In interpreting a statute, a judge's task is "to give effect to the intent of Congress[.]" *United States v. Savage*, 970 F.3d 217, 251 (3d Cir. 2020) (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940)). "It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998).

To determine whether statutory language is ambiguous, a judge must "read the statute in its ordinary and natural sense." *Id.* (quotation omitted). Judges often "look to dictionary definitions to determine the ordinary meaning of a word." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 306 (3d Cir. 2020) (quotation omitted). I must read the words of the statute "in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019). "A provision is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" *Phila. Newspapers*, 599 F.3d at 304 (citation omitted).

The dispute before me turns on who can certify an interlocutory appeal: only the judge who issued the order; or the presiding judge at the time that a party seeks

permission for an interlocutory appeal. (Most of the time, it's the same person, so the distinction is irrelevant.) The statute provides, in relevant part,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). The statutory language answers the question. It provides that a district judge can only certify an interlocutory appeal if he is of the view that the order in question satisfies the standard for such an appeal, meaning that it involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation. Most importantly, it says that the district judge must have that view "**in making**" the order in question. *Id.* (emphasis added). Congress's use of the phrase "in making" means that the only person who can authorize an interlocutory appeal is the judge who issued the other because he is the only one who can have an opinion about it in making it. Any other person who takes over the case after an order issues cannot, by definition, have had an opinion about the order "in making it;" he can only form an opinion later, after the fact.

My interpretation of the statute is also consistent with the ordinary meaning of the word "judge." When judges look to dictionary definitions to understand the meaning of a statutory term, they look to dictionaries from around the time that Congress passed the statute in question. *See, e.g., Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560, 568 (2012).

Congress adopted Section 1292(b) in 1958. At that time, Black's Law Dictionary defined a "judge" as "[a]n officer so named in his commission, who presides in some court;" and as "[a]ny officer authorized to function as or for judge in doing specified acts." *Black's Law Dictionary*, Judge, 976 (4th ed. 1951). It also explained that "[t]he term is sometimes held to include all officers appointed to decide litigated questions while acting in that capacity, including … jurors who are judges of the facts. … In ordinary legal use, however, the term is limited to the sense of the first of the definitions here given[.]" *Id.* From that, I take it that the ordinary use of the term "judge" at the time referred to a person, not to the office, even though it had a secondary definition. And if "judge" means the person who holds the office, then the term in Section 1292(b) points to the person who holds the office and issues the order. And, while it's true that there might be other, less favored definitions in *Black's* that lead to a different conclusion, that's not enough to create an ambiguity because the fact that a "definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi*, 566 U.S. at 568 (emphasis in original).

Third Circuit caselaw also suggests (but does not mandate) this conclusion. *See Haas v. Pittsburgh v. Nat'l Bank*, 627 F.2d 677, 679 (3d Cir. 1980). In that case, a district judge issued an order and then recused himself. The question before the Third Circuit was whether the judge who issued the order or the judge who took over the case could certify it for interlocutory appeal. The court held that the judge who issued the order could certify

the appeal, even though he had recused himself, because "statute implies that the appropriate judge to certify an appeal under section 1292(b) is the judge who entered the order from which the appeal is being taken." *Id.* If the statute gives to a judge the power to certify an appeal even after he recuses himself, then the inverse also seems to be true. That is, it denies to the judge who takes over after a recusal (or retirement, or death, or other circumstance requiring the appointment of a new judge) the power to certify an interlocutory appeal. Judge Connolly reached the same conclusion in *In re Sensipar Antitrust Litig.*, No. 19-md-2895-CFC, 2023 WL 2042880, at * 1 (D. Del. Feb. 16, 2023), and I agree with his reasoning.

This interpretation of Section 1292(b) makes sense as a policy matter, too. When a judge issues a decision, he spends considerable time grappling with the issues and understanding the record, so he is uniquely situated to know if reasonable minds can disagree about its conclusion. In addition, as the judge who has been managing the litigation, the judge who issued the order is uniquely situated to know if the resolution of a particular issue will materially advance the litigation. Congress intended for interlocutory appeals under Section 1292(b) "be sparingly applied." *Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) (reviewing the legislative history of the statute). It is conceivable that one guardrail to prevent "open[ing] the floodgates to a vast number of appeals" is limiting the pool of decisionmakers who could permit an appeal. *Id.; see also*

16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3929 (3d ed) (discussing Congress's motivation for adding the district court judge requirement).

Plaintiffs disagree with this conclusion, but they don't make any effort to grapple with the statutory text. That's a problem because "[w]hen the words of a statute are unambiguous … [the] judicial inquiry is complete." *Phila. Newspapers*, 599 F.3d at 304 (internal quotation omitted). But even the arguments that Plaintiffs make don't move the needle. They describe this reading of the statute as "hyper-literal." (D.I. 232 at 5 (citing *Yost v. Carroll*, No. 20 C 5393, 2022 WL 180153, at * 2 (N.D. Ill. Jan. 20, 2022).) But that accusation is not enough to change the plain statutory language.

Plaintiffs also complain that the result that I reach is "absurd." Although they throw that word around, they don't take the time to think about what it means in this context. An absurd result is not just one that someone might find surprising; it is "an outcome so contrary to perceived social values that [Congress] could not have intended it." *New Jersey Bankers Ass'n v. Att'y Gen. New Jersey*, 49 F.4th 849, 858 (3d Cir. 2022) (internal quotation omitted). "As long as the legislature 'could have any conceivable justification for a result—even if the result carries negative consequences—that result cannot be absurd.'" *Id.* (quoting *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588-89 (3d Cir. 2020)). For the reasons I've already outlined, there are reasons why Congress would confine the power to authorize an interlocutory appeal to the judge who issued the order—that's the judge who knows best whether the order justifies such a remedy. And given that interlocutory

appeals are an exception to the general rule that only final orders justify appeals, it makes sense that Congress would adopt a statutory structure that limits, rather than expands, the universe of people who can authorize them.

In addition, "for purposes of consistency, finality, and judicial economy," Congress may have wanted to codify a form of "the law of the case" doctrine. *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710 (7th Cir.), *opinion modified on reh'g*, 832 F.3d 699 (7th Cir. 2016). Though only discretionary in nature, that doctrine "expresses the practice of courts generally to refuse to reopen what has [already] been decided." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 802 (1988). "Litigants have a right to expect that a change in judges will not mean going back to square one." *Williams v. Comm'r*, 1 F.3d 502, 503 (7th Cir. 1993). The interests underlying this doctrine are "at their zenith" when a judge, prior to reassignment, makes a discretionary call. *Applegate v. United States*, 52 Fed. Cl. 751, 765 (2002), *aff'd*, 70 F. App'x 582 (Fed. Cir. 2003) (citing *Williams*, 1 F.3d at 503-04). Congress crafted certification of an order for interlocutory appeal as one such discretionary choice. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008). It is therefore possible that Congress, concerned about the expectation of litigations, sought to limit the consequences of a reassigned judge's doubt as to the wisdom of the prior judge's decision.

Finally, it's important to remember that denying a party an interlocutory appeal isn't the same as denying him any appeal. It just means that he must wait until the end

of the case. And while that's often an unappetizing proposition, it's still the default rule

in our legal system. In this case, for example, Plaintiffs might have to litigate a summary

judgment motion. If that motion gets granted, then they can appeal the denial of class

certification. It's a burden, but not an unreasonable one.

### B.    Interlocutory Appeal

My interpretation of Section 1292(b) poses a question that warrants an

interlocutory appeal: Does 28 U.S.C. § 1292(b) authorize a district court judge to certify

for interlocutory appeal an order issued in the same case by a predecessor district court

judge? There are substantial grounds for difference of opinion when "there is genuine

doubt or conflicting precedent as to the correct legal standard." *Knipe v. SmithKline*

*Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (citation omitted). Plaintiffs and Mr.

Frank cite conflicting and contradictory opinions. There's no binding appellate decision

on this issue, and very few decisions about it at all. The decisions that have issued reach

different conclusions. *Compare In re Sensipar*, 2023 WL 2042880, at *2, *with Yost*, 2022

WL 180153, at *2–3. And at least two circuit courts have "accepted without comment

certification of an interlocutory appeal by a district judge who inherited the case after

another district judge had issued the order that was the subject of the interlocutory

appeal." *In re Sensipar*, 2023 WL 2042880, at *2 n.1 (noting cases). Judge Connolly held

that this same question presented substantial room for disagreement. *See In re Sensipar*

*(Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No. 19-MD-2895-CFC, 2023 WL

2810061, at *2 (D. Del. Apr. 6, 2023), *appeal dismissed*, No. 23-2213, 2024 WL 3371115 (3d Cir. May 23, 2024). I agree.

In addition, the legal question is "serious to the conduct of the litigation … practically." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). The Parties have demonstrated a willingness to settle the action. There's a broad public policy in favor of settlements, but as things stand now, the Parties don't know if there's a way to resolve the case on a class-wide basis. And resolution on a class-wide basis is, practically, the only way it's going to get done.

Finally, the resolution of this question would materially advance the termination of the litigation. The case is not ready for trial or even summary judgment. And if there is a path for Plaintiffs to challenge Judge Robreno's class certification order, then they can get clarity on the possibility of the settlement they have negotiated.

## IV.    CONCLUSION

Section 1292(b) doesn't give me the power to authorize an interlocutory appeal because I didn't issue the order at issue. Although Plaintiffs claim that that's an absurd interpretation, I disagree. Instead, it's just a result that they don't like, and that's the way the cookie crumbles. But I recognize there's room for substantial disagreement, so I'll certify this decision for interlocutory appeal. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*

July 18, 2024                          JOSHUA D. WOLSON, J.