# UNITED STATES DISTRICT COURT

# DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (JDW) |
| This Document Relates to:<br>**All Actions** | |

# **MOTION TO COMPEL PRODUCTION OF DATA LOGS**

Pursuant to Rule II.C.1 of the Court's Policies and Procedures, Plaintiffs respectfully move for an Order requiring Defendant Google LLC ("Google") to produce certain data sought by Plaintiffs' Third Set of Requests for Production (the "Requests").

## RELEVANT BACKGROUND

In the December 11, 2024 Joint Status Report, Google stated it had "located certain log data preserved for this case," and was "in the process of analyzing the log data to confirm the content of the log data so that a description of certain relevant data fields can be produced." Plaintiffs requested the referenced data field descriptions in January 2025, but Google did not provide them. So Plaintiffs served the Requests on March 14, 2025, which sought both the data field information as well as the underlying data. (Plaintiffs' Requests for Production are attached as **Exhibit A**.) One month later, on April 14, 2025, Google served its responses and objections to the Requests. (Google's Responses and Objections are attached as **Exhibit B**.) Google's responses to Request Nos. 86 and 87 contained voluminous objections and the following non-response: "Subject to and without waiving any of the foregoing objections, Google is willing to meet and confer regarding the scope of this Request." (*See* Ex. B at 11, 13.)

The parties met and conferred on April 29, 2025 and agreed that, as an initial step, Google should produce the requested data headings (and an explanation of each), which Plaintiffs had been requesting since January 2025. The parties' goal was to narrow the scope of Plaintiffs' requests to a smaller number of data fields, of which Plaintiffs would request production. Google provided the data field headers on May 13, 2025. Three days later, on May 16, 2025, Plaintiffs informed Google that, based on the information provided, they would narrow the Requests to data from 40 identified data fields and, even for those 40 data fields, Plaintiffs only requested a sample of 100,000 rows of data from three identified time periods.

1

In the month since Plaintiffs narrowed the scope of the Requests, the parties continued to meet and confer in good faith in trying to find a mutually agreeable solution. On June 12, 2025, Google described a proposed "compromise" to resolve this issue. Essentially, Google proposed to produce a sample of 5 records from each data log. After evaluating the proposal, Plaintiffs' counsel responded on June 16, 2025 that the proposed compromise, while appreciated, was not acceptable and, given the tight deadlines in this action, Plaintiffs would seek the Court's guidance so the issue could be resolved expeditiously. Plaintiffs further explained that the production of only 5 records from each data log was too small a sample, that the requested data is overwhelmingly important for the dispositive ascertainability requirement, and that neither Plaintiffs' counsel nor their experts can "know what they don't know" about the data's contents.

## ARGUMENT

### A. The data log information is relevant.

The requested data is directly relevant to Plaintiffs' ability to demonstrate whether the class certification ascertainability requirement can be met. Google does not appear to be withholding the data solely on relevance grounds. Rather, Google disputes that the requested data will contain the information that Plaintiffs seek. Regardless, Plaintiffs are not obligated to accept Google's "say so" on this important matter and are entitled to discovery to determine, among other things, whether Google maintained data that would allow Plaintiffs to identify members of the proposed class. The data sought is relevant and proportional—indeed central—to the claims in this case, and Plaintiffs ask the Court to order Google to promptly produce it.

For further context, and summarizing in non-technical terms,[1] Google has two "silos" of likely relevant information. One silo contains information for Google account holders (names,

---

[1] Plaintiffs describe these issues generally, as the technical details of this information are designated by Google as confidential under the Protective Order.

user names, email addresses, and other potentially identifying information). The other silo contains pseudonymous browser-generated information, with, Google asserts, no personally-identifying information. Google maintains that information from the two silos was designed to be separate and cannot be merged to identify account holders who used the relevant version of the Safari browser during the Class Period. Obviously, Plaintiffs do not think the discovery rules require them to "take Google's word for it," and the scope, contents, and searchability of Google's data is crucial for Plaintiffs to determine if the ascertainability test can be met.

Relatedly, Plaintiffs are entitled to have a properly robust basis for understanding whether, and to what extent, the "Intermediary Cookie" that Google employed to facilitate its work-around of the Safari cookie blocking setting, and which Google committed to expire or delete as part of its settlements with the State Attorneys General and the Federal Trade Commission, might, if preserved, have permitted Plaintiffs to satisfy the ascertainability test.

### B. Plaintiffs narrowed the Requests to address Google's purported burden objection.

The Requests initially called for production of all data from the relevant time period in Google's possession. During the parties' subsequent meet and confer discussions, Plaintiffs made several concessions to address Google's purported burden objections. First, Plaintiffs agreed to delay demanding production of the data so that Google could first provide a list of relevant data fields (and descriptions of those data fields), to enable Plaintiffs to narrow the Requests for the underlying data to a smaller subset of data fields.[2] Second, upon receipt of the relevant data fields, Plaintiffs promptly notified Google that they were seeking the underlying data for a subset of 40 data fields. Third, Plaintiffs further notified Google that, for the subset of

---

[2] Importantly, Google's designated corporate deposition representative on the topic of "data logs" was not sure what some data fields represented or what some of the provided definitions meant. Google's deponent also did not know who had created the list of data fields and definitions.

40 data fields, Plaintiffs only required a limited production of 100,000 rows of data for three periods during the relevant time period and did not require production of the entire database for each of the data fields. To date, however, Google has not produced any of the requested data.

### C. Google's remaining (and voluminous) objections are unsupported.

Google's responses to the Requests contain at least 8 additional objections. (*See* Ex. B at 10 ("seeks production of personal private information"); *id.* ("seeks information subject to legal, contractual, or other confidentiality obligations"); *id.* ("the RELEVANT TIME PERIOD as defined is overbroad, unduly burdensome, and not relevant to any claims or defenses"); *id.* at 10–11 (listing and objecting to 8 phrases as "vague and ambiguous with respect to [the] use of the phrases"); *id.* at 11 (objecting to an alternative proposal to permit direct access to the data rather than its production); *id.* (objecting to 6 phrases within the Requests as "overbroad and seeking irrelevant information"); *id.* (objecting to the Requests as "overbroad and seeking irrelevant information" because they call for information from "all SAFARI browsers"); *id.* (objecting to the Requests as "overly broad and unduly burdensome because the cost and burden of producing this information is not proportional to the needs of the case"); *see also id.* at 12–13 (repeating the same objections).) Google's numerous objections are largely boilerplate and should be rejected.

Google's objections are easily addressed. For example, Google's confidentiality objection can be resolved through Google producing the data subject to the Protective Order (Dkt. 256). Google's objection to the definition of "relevant time period" has already been addressed by Plaintiffs' agreement to limit the production to three specific time periods that the parties do not dispute fall within the relevant time period. Google's objection to providing direct access to the data can be resolved by simply producing the data to Plaintiffs. Google's objection to the definition of "all SAFARI browsers" can be addressed by limiting the production of data

to the specific versions of Safari at issue in this litigation. Finally, Google's unsupported burden objection is unwarranted and, even so, Plaintiffs have attempted to work with Google for many weeks to narrow the Requests. The Court should overrule Google's numerous objections.

### D. Google's proposed "compromise" is insufficient.

Google's proposed June 12, 2025 "compromise" of producing 5 sample records for each data log, rather than producing the actual data extracts that Plaintiffs have requested is insufficient for several reasons. First, allowing Google to cherry-pick 5 "sample" records from each log—with no participation by Plaintiffs, nor explanation about how the "sample" records would be selected—would allow Google to pick and choose what data is visible to Plaintiffs and would deny Plaintiffs an opportunity to meaningfully test Google's assertion that the data does not contain the information that Plaintiffs seek. Second, producing just 5 exemplar pieces of data for each log does not even come close to providing Plaintiffs with a meaningful sample size to determine what possible data could exist for each data field. And, finally, Google's proposed "compromise" fails to take into account that Plaintiffs have already made a number of concessions in an effort to address Google's purported burden objection, including by already limiting the Requests to a set number of data records, limiting the Requests to three specific time periods that both parties agree are during the relevant time frame, and by allowing Google more than five months since Plaintiffs first informally requested the data field information to explore possible "compromises." In the end, however, no data has been produced and Plaintiffs simply cannot wait any longer given the Court's instruction to move this case forward expeditiously.

## CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that the Court enter an Order requiring Google to produce the relevant log data in this action.

Dated: June 16, 2025

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Boulevard, Suite 1550
Los Angeles, CA 90025
Tel: 310-207-5055
brian@strangellp.com

*Executive Committee Member*

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
4000 W. 114th Street, Suite 310
Leawood, KS 66211
Tel: 913-266-2300
jimf@bflawfirm.com

*Executive Committee Member*

**GRYGIEL LAW, LLC**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
127 Coventry Place
Clinton, NY 13323
Tel: 407-505-9463
stephengrygiel22@gmail.com

*Executive Committee Member*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June 2025, I electronically transmitted the foregoing Motion to Compel Production of Data Logs, Certification of Counsel, and [Proposed] Order to the Clerk of the Court using the CM/ECF System, causing the document to be served on all counsel who are registered as electronic filers in the case.

DATED: June 16, 2025                         */s/ Brian R. Strange*
                                                              Brian R. Strange