# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION<br><br>This Document Relates to:<br>**All Actions** | Case No. 12-MD-2358 (JDW) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO GOOGLE'S MOTION TO SEAL

**STRANGE LLP**

Brian R. Strange
12100 Wilshire Blvd., Ste. 1550
Los Angeles, CA 90025
310-207-5055
brian@strangellp.com

*Executive Committee Member*

**BARTIMUS, FRICKLETON,
ROBERTSON, RADER, P.C.**

James P. Frickleton
4000 W. 114th St., Suite 310
Leawood, KS 66211
913-266-2300
jimf@bflawfirm.com

*Executive Committee Member*

Dated: November 28, 2025

**GRYGIEL LAW, LLC**

Stephen G. Grygiel (DE Bar ID #4944)
127 Coventry Place
Clinton, NY 13323
407-505-9463
stephengrygiel122@gmail.com

*Executive Committee Member*

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | ARGUMENT | 2 |
| | A. Exhibit 2: Letter with Two Data Log Samples (Feb. 5, 2025) | 2 |
| | B. Exhibit 5: Limited Data Definition Chart (May 13, 2025) | 3 |
| | C. Exhibit 7: Limited Data Sample Records (June 25, 2025) | 4 |
| | D. Exhibit 12: List of Google Logs Preserved for this Litigation | 4 |
| | E. Exhibit 4: Deprey Deposition Transcript (May 8, 2025) | 5 |
| | F. Exhibit 6: Ochotta Deposition Transcript (May 29, 2025) | 6 |
| | G. August Joint Submission Letter | 8 |
| | H. Exhibit 8: Kornacki Declaration (July 11, 2025) | 9 |
| | I. Exhibit 9: E-Mail From Google's Counsel to Plaintiffs' Counsel (July 17, 2025) | 9 |
| | J. Exhibit 10: Letter from Plaintiffs' Counsel to Google's Counsel (July 21, 2025) | 10 |
| | K. October Joint Submission Letter | 10 |
| | L. Exhibit A: Affidavit of Professor Zubair Shafiq (Oct. 21, 2025) | 11 |
| | M. Exhibit B: Internal Correspondence Between Google Employees Regarding Privacy and Cookies (Sept. 2011) | 11 |
| | N. Transcript of Hearing (Oct. 15, 2025) | 12 |
| IV. | CONCLUSION | 13 |

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcraft v. Welk Resort Group,* No. 16-CV-02978-JAD-NJK,
   2017 WL 4038397 (D. Nev. Sept. 13, 2017) ....................................................................... 8, 12

*Breitenbach v. Sagestream, LLC*, No. 2:24-CV-00893,
   2025 WL 1004798 (E.D. Pa. Apr. 3, 2025)......................................................................... 5, 6, 7

*In re Avandia Marketing, Sales Practices and Products Liability Litig.*,
   924 F. 3d 662 (3d Cir. 2019) ................................................................................................ passim

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001). ................................................................................................ passim

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   789 F. Supp. 3d 760, 773 (N.D. Cal. 2025) ............................................................................... 14

*Leucadia, Inc. v. Applied Extrusion Tech., Inc.,*
   998 F.2d 157 (3d Cir.1993) ......................................................................................................... 3

*MED-EL Elektromedizinische Gerate GES, M. B. H. v. Advanced Bionics, L.L.C.*,
   No. 1:18-CV-01530, 2024 WL 774905 (D. Del. Feb. 26, 2024) .................................. 1, 5, 7, 15

*Miller v. Ind. Hosp.,*
   16 F.3d 549 (3d Cir. 1994). ....................................................................................................2, 11

*PACT XPP SCHWEIZ AG v. Intel Corp*., No. 1:19-CV-01006,
   2022 WL 22905010 (D. Del. Aug. 4, 2022)................................................................................ 7

*Publicker Indus., Inc. v. Cohen,*
   733 F.2d 1059 (3d Cir.1984) ....................................................................................................... 4

I.  **INTRODUCTION**

Google's Motion to Seal (D.I. 294) fails to factually and specifically demonstrate the necessity of blocking the public from accessing the documents at issue. Google seeks secrecy for old information, stored on a changed system architecture, concerning Google's long abandoned +1 Social Advertising program.[1] The burden of demonstrating the necessity of sealing is substantial under the requisite standard of scrutiny. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (common law presumes the public has a right of access to judicial records). Concrete facts, specific arguments and developed reasoning are required. *See id.*

In seeking sealing, Google argues the documents at issue are commercially sensitive, dangerously vulnerable to use by competitors and third parties, and must remain sealed, rendering them unavailable to the public. (*See* D.I. 294 at 6-13). Google's broad generalities do not demonstrate that an interest in secrecy outweighs the common law presumption. *See Avandia,* 924 F.3d at 672. Google's Motion to Seal should be denied.

II.  **LEGAL STANDARD**

"Motions to seal judicial records are a big deal." *MED-EL Elektromedizinische Gerate GES, M.B.H. v. Advanced Bionics, L.L.C.*, No. 1:18-CV-01530, 2024 WL 774905, at *1 (D. Del. Feb. 26, 2024). Such motions seek to keep hidden "from public view information that judges consider when rendering their decisions…depriv[ing] the public of information that it can use to assess a judge's ruling, and...depriv[ing] lawyers and parties information that they can use to distinguish or analogize a case—a fundamental part of the development of the law." *Ibid.* "Given

---

[1] *See* https://em360tech.com/tech-articles/what-happened-google-why-googles-social-circles-failed#, EM360, What Happened to Google+?  Why Google's Social Circles Failed, Dec. 12, 2024 (Google announced official shutdown of Google+ in April 2019) (last visited Nov. 25, 2025).

1

how important sealing motions are, courts require specificity before granting them, not just vague generalities." *Ibid.* "[G]eneralized assertion[s]" of potential harms, no matter how ominously worded, do not suffice for sealing. *See ibid.*

### III.   ARGUMENT

Google fails to overcome the common law presumption of access. In particular, Google fails to articulate with the requisite specificity how Google's proposed redactions and sealings is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to Google. *See Miller v. Ind. Hosp.,* 16 F.3d 549, 551 (3d Cir. 1994). Although Google asserts that trade secrets and other highly sensitive proprietary and commercially valuable information is protectable (D.I. 294 at 10), Google must carry its burden of demonstrating why the materials at issue are of that quality and warrant secrecy. *See Avandia,* 924 F. 3d at 672. This case should not be litigated in secret except where such secrecy is demonstrably warranted.

#### A.   Exhibit 2: Letter with Two Data Log Samples (Feb. 5, 2025)

Google seeks redaction of almost this entire document, reflecting samples from the two data logs Google determined most relevant that Google preserved for the litigation. Ex. 2 at 1. The records for which Google seeks redaction/sealing pertain to "the relevant time period" during which "the DoubleClick ID Cookie (Biscotti) [was] set on the Safari browser, the Intermediary Cookie (Doritos) [was] set on the Safari browser, the removal of cookies from Safari browsers, and revenue related to cookies set on Safari browsers." Ex. 2 at 1. Google argues, *sans* specifics, that Google maintains this data "as strictly confidential," and that the information proposed for redaction/sealing "provide[s] extensive detail regarding all of the kinds of data maintained for the specific logs, including what fields are maintained in which log, how each log is structured, the format of each data field, and the degree of detail maintained in the records." (D.I. 294-1 ¶ 13).

Google admits that "the underlying data is from more than 10 years ago," but asserts – without any accompanying facts – that "disclosure of this information regarding Google's logs and data fields is currently sensitive and could be used to unfairly harm Google." *(id.* ¶ 13). Why this old information from a long-outdated system about a long-abandoned project is "currently sensitive" remains unknown. So, too for Google's claim that "this information could be misused by Google's competitors or bad actors." (*id.* ¶¶ 13-14). Google nowhere shows how, or why, a "competitor" or "bad actor" would or would want to use such old information derived from since-changed data storage system. *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 165 (3d Cir.1993) (burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption).

B.     **Exhibit 5: Limited Data Definition Chart (May 13, 2025)**

Google requests sealing of this entire document, claiming it "contains detailed information concerning sensitive Google data…highly-sensitive information regarding the manner in which Google maintains and stores data." (D.I. 294 at 8). Although Google admits that "the underlying data is from more than 10 years ago," Google claims that disclosure of the "names of data fields, data logs, and definitions for the data fields" is "currently sensitive and could be used to unfairly harm Google" and "could be misused by Google's competitors or bad actors." (D.I. 294-1 ¶ 14). Google admits that "the ways in which data is created and accessed have changed significantly" since the 2011-2012 time period to which the information in Ex. 5 relates. *See* Ex. 8 ¶ 4. Mr. Kornacki stated that because of the changes in the methods of data creation and access, "the data at issue in this case was difficult to access and work with compared to data that Google typically accesses in the regular course of its business today." Ex. 8 ¶ 4. Following Google's own logic,

3

revealing the names and descriptions of old and long-disused logs and their fields does not show clear and specific harm.

Google fails to explain the specific harm necessary for sealing. *See Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984) (party seeking closure must provide specificity when delineating the injury to be prevented). Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. *In re Cendant Corp.*, 260 F.3d at 194.

### C. Exhibit 7: Limited Data Sample Records (June 25, 2025)

As with Exhibits 2 and 5, discussed above, Google argues that the "specific fields within the logs, the format of the fields, and the detail of the fields is highly confidential and sensitive." (D.I. 294-1 ¶ 15). Google acknowledges "the underlying data is from more than 10 years ago" but disclosure, nonetheless, "is currently sensitive and could be used to unfairly harm Google" through "misuse[ ] by Google's competitors and bad actors." (D.I. 294-1 ¶ 15). Google leaves the crucial showing of "how" and "why" to the Court's conjecture. But as this Court has said more than once, that is not the Court's job. *See, e.g., MED-EL Elektromedizinische*, 2024 WL 774905, at *2) ("not my job to guess" how disclosure would create competitive harm); *Breitenbach*, 2025 WL 1004798, at *1) ("It's not my job…to make a party's arguments for it.").

### D. Exhibit 12: List of Google Logs Preserved for this Litigation

Google seeks to seal the entirety of Ex. 12, "a list of the data logs preserved for this case." (D.I. 294-1 ¶ 16). Google says only that "the names of the data logs are themselves sensitive and disclosing them would unfairly harm Google, as they are descriptive and reflect how Google maintains and organizes data." Google no longer uses the same methods for data creation and access (*see* Ex. 8 ¶ 4). Beyond a general claim of harm befalling Google, it does not articulate a clearly defined and serious injury that would arise from the disclosure. Google makes no specific

4

showing that the sealing of the names of outdated logs outweighs the common law presumption of access. *See Avandia,* 924 F.3d at 672. *See also Breitenbach v. Sagestream, LLC*, 2025 WL 1004798, at *4 (E.D. Pa. Apr. 3, 2025) ) (not judge's "job to try to ferret…out" basis for sealing; defendant's say-so was insufficient).

    E.    **Exhibit 4: Deprey Deposition Transcript (May 8, 2025)**

Google seeks redaction of a substantial portion of the transcript of Benigne Deprey, including large sections concerning data logs and the creation and use of the Doritos cookie. Offering no page/line references, specific arguments and examples showing why the information should be sealed, nor how concrete harm would result from its disclosure, Google makes boilerplate assertions about "sensitive technical details…technical analysis…Google's analytical capabilities and tools…detailed information regarding how Google serves advertising; and sensitive business practices." (D.I. 294-1 ¶ 20). Although Google acknowledges that "some of the discussion relates to how things worked in 2011-2012," Google claims "the specific portions of the transcript that Google seeks to seal remain sensitive." (*Ibid.*). Google fails to explain how and why such old information "remains sensitive." For example, Google demonstrates nothing sensitive requiring redaction in Mr. DePrey's testimony about Google engineers discussing the mechanism by which the "One In All In" exception occurred (*see* D.I. 24 at 10; DePrey Dep. Tr. 44:1-25), which Mr. You's publicly filed Declaration has already addressed (D.I. 196, ¶¶ 42-44). Nor does Google justify its redactions of testimony about Google's testing in 2011 concerning the Doritos cookie leading to the setting of the DoubleClick cookie (Deprey Dep. Tr. at 47:7-19) nor about what a Google engineer was doing in December 2011 concerning browser behavior (*id.* at 49:2-5).

5

This Court has previously rejected such general assertions for sealing/redaction. *See, e.g., MED-EL Electromedizinische Gerate Ges. M.B.H. v. Advanced Bionics, LLC*, 2024 WL 774905, at * 1) (judicial records case; sealing requests require "specifics about why I should seal the information," not just "generalized assertions"); *Breitenbach v. Sagestream, LLC*, No. 2:24-CV-00893, 2025 WL 1004798 at *1 (E.D. Pa. Apr. 3, 2025) (judicial records case; "not judge's job to make a party's arguments for it" to conjure up required "concrete harm" required for sealing); *PACT*, 2022 WL 22905010, at *2 (D. Del. Aug. 4, 2022) (rejecting sealing of outdated documents where no good reason was given).

### F. Exhibit 6: Ochotta Deposition Transcript (May 29, 2025)

Google seeks to redact vast swaths of Mr. Emil Ochotta's deposition transcript while again failing to satisfy its burden. Without any reference to particular pages/lines of testimony, Google summarily states that the deposition "discloses highly sensitive and confidential details regarding data that Google logs and maintains, including how it processes and uses its data and how data can be accessed today; Google's analytical capabilities and tools; technical information regarding how Google serves advertising; details regarding how Google implements code changes; and sensitive business practices," including details regarding product testing methods. (D.I. 294-1 at 13).

Mr. Ochotta's deposition focused centrally on Google's practices and data from 2011-2012, Google's cookie placements, server logs, data fields, and data collection, storage and use as it relates to the facts at issue in this case. Practices, that Google says, have greatly changed. *See* Ex. 8 ¶ 4. Yet, Google seeks redaction of references to such outdated, changed information such as the acronymic name of a log (Ochotta Dep. Tr. 92:5), "a log created by the click event server" (*id.* 93:9-21), the name of a log concerning an advertising product (*id.* 96:1-9), and the data values for non-logged in users and users who had opted out of social ads (*id.*108:11-17) – the same

information described in the L. You Declaration (D.I. 196 ¶ 34), on January 21, 2020). Further, many details of Google's behavior underlying this case has long been in the public domain, diminishing Google's privacy interest. *See Ashcraft v. Welk Resort Group,* No. 16-CV-02978-JAD-NJK, 2017 WL 4038397, at *2 (D. Nev. Sept. 13, 2017) (noting that "basic, threshold problem with [d]efendant's request to seal" was that defendant previously disclosed information sought to be sealed on public docket). For example:

- The widely publicized research and news articles that first revealed Google's circumvention of Safari's third-party cookie blocking. *See, e.g.,* Jonathan Mayer, *Safari Trackers*, STANFORD CENTER FOR INTERNET & SOCIETY (Feb. 17, 2012), https://cyberlaw.stanford.edu/blog/2012/02/safari-trackers/; Peter Eckersley, et al., *Google Circumvents Safari Privacy Protections – This is Why We Need Do Not Track*, ELECTRONIC FRONTIER FOUNDATION (Feb. 16, 2012), https://www.eff.org/deeplinks/2012/02/time-make-amends-google-circumvents-privacy-settings-safari-users; Julia Angwin & Jennifer Valentino-DeVries, *Google's iPhone Tracking – Web Giants, Others Bypassed Apple Browser Settings for Guarding Privacy*, WALL STREET J. (February 17, 2012).

- Google's January 21, 2020 filing on the public docket of the Declaration of Lawrence You (D.I. 196), which described, among other things, how cookies were "set by advertising networks such as Google's Doubleclick" in 2011 (*id.* ¶¶ 21-25); how "opting-out of interest-based advertising" worked using Google's "Ads Preference Manager (*id.* ¶ 26); the development of "Google + and Social Ads" (*id.*, at ¶¶ 30-32); Google's design, testing and implementation of "the Intermediary [Doritos] Cookie" (*id.*, ¶¶ 33-37); how Google got around the "Apple Safari Browser's" third-party cookie blocking, including the resulting "One In All In" exception that permitted the setting of third-party cookies (*id.*, ¶¶ 38-46);

7

Google's retention of "relevant server log information" for this case, the storage of data "across multiple servers" requiring "very significant storage and computing power," and the searching of that data by "custom query scripts;" (*id.*, at ¶¶ 53-54); and the lack of logs on the server that handled requests to the URL '/page/drt [Doritos]/si' (from which the intermediary cookie was set" (*id.* ¶ 58).

- Google's numerous submissions to the Federal Trade Commission and State Attorneys General about the circumvention of Safari. *See, e.g.,* GOOG-COOKIE-00020211-217, Feb. 21, 2012 submission to FTC; GOOG-COOKIE-00020108-124, Google White Paper provided to State AGs; GOOG-COOKIE-00020847-57, Mar. 19, 2012 submission to FTC; GOOG-COOKIE-00020172, June 1, 2012 Google White Paper submitted to FTC[2]). While Google designated those submissions "confidential," their initial dissemination further erodes Google's privacy interest in redacting/sealing the information now at issue.

Google describes no proprietary or trade secret-caliber information in the Ochotta deposition transcript that might merit redaction/sealing and fails to articulate any specific injury. *See Avandia*, 924 F.3d at 671.

### G. August Joint Submission Letter

Google seeks redaction of "(1) the names of Google's internal data fields and a description of what is contained in one such data field; and (2) limited information regarding the size of the data and costs incurred in connection with preserving data in this litigation." (D.I. 294 at 11). Google's Declaration does not provide the requisite specific examples or articulated reasoning to block the public from accessing this general information. *See Avandia,* 924 F.3d at 672. Instead,

---

[2] Requests for confidential treatment by the FTC expire after ten (10) years, absent renewal. *See* 17 C.F.R. § 200.83(c)(7).

8

Google generally claims it "has a strong interest in maintaining the confidentiality of its internal data and preventing specific disclosures regarding the burden associated with maintaining and searching this data that reflects Google's engineering capabilities." (D.I. 294-1 ¶ 24). The Third Circuit requires more than broad descriptions of potential general harm; Google has not satisfied this burden. *See In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). ("In delineating the injury to be prevented, specificity is essential").

### H.     Exhibit 8: Kornacki Declaration (July 11, 2025)

Google proposes redactions of the names of data fields and the volume, structure, and content of Google's data. (D.I. 294 at 11). In supporting these redactions, Mr. Kornacki states that Exhibit 8 is his declaration which "describes the process for extracting data from the logs" and includes information about "what data Google stores and how Google's data is maintained and organized." Again, Google describes what it would like to redact, but does not provide the requisite reasoning to obtain such redactions. Google does not show the injury that would arise from disclosure of an outdated 14-year-old data log and field system. *In re Cendant Corp.,* 260 F.3d at 194 (3d Cir. 2001) ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."). In fact, as Mr. Kornacki's Declaration pointed out, "the ways in which data is created and accessed have changed significantly" since 2011-2012. Ex. 8 ¶ 4.

### I.     Exhibit 9: E-Mail From Google's Counsel to Plaintiffs' Counsel (July 17, 2025)

Google asks for redaction of the names of a data field, the dates when that field was populated, potential field values, and a discussion of the testing and ultimate disuse of cookie-setting for one of those values. The information dates back to 2012 and concerns a long-dead program. While age in itself does not dictate whether data is relevant or not, Google has failed to

9

explain why its requested redactions would result in a harm that outweighs the public's common law right of access. *Miller,* 16 F.3d at 551 (3d Cir.1994). ).

J.  **Exhibit 10: Letter from Plaintiffs' Counsel to Google's Counsel (July 21, 2025)**

Google proposes redactions to certain footnotes in Exhibit 10 to remove the names of the two logs Google described as the most relevant and what those logs recorded (fn. 3) and to remove the reference to Ex. 2 to the Lawrence You Deposition (fn. 4). As noted above, such data is from old logs using a defunct method of "creat[ing] and access[ing] data" (Ex. 8 ¶ 4). Google's justification falls short of demonstrating the requisite specific examples and articulated reasoning and instead generally states the "proposed redactions preserve confidentiality over information Google provided to plaintiffs relating to the confidential log data." (D.I. 294-1 ¶ 27).

K.  **October Joint Submission Letter**

Google seeks redaction of references to descriptors of the types of logs that Google maintained and of a reference to certain identifiers within the logs. Google's contention that broad categorical descriptions of certain log types from over a decade ago should be sealed fails. Google says only that disclosure would reveal "what data Google stores and how Google's data is maintained and organized." (D.I. 294 at 12). Google does not explain how disclosure of old data from an old storage system is likely to cause harm that outweighs the public's interest. *In re Cendant Corp.,* 260 F.3d at 194. Google's request for redaction of a line concerning logging of certain identifiers is equally unsupported. and further belied by Google's own February 2011 presentation to an external third-party privacy group, which includes detailed information about the cookies and identifiers at issue. *See* L. You Dep. Ex. 2. *See also Ashcraft,* 2017 WL 4038397

10

at *2. As Google's presentation to the third-party privacy group demonstrates, Google was not keeping secret the general nature of the contents of its cookie spaces.

L.  **Exhibit A: Affidavit of Professor Zubair Shafiq (Oct. 21, 2025)**

Google has sought over 40 redactions in the Affidavit of Professor Zubair Shafiq—some of only a single number, data log or field name, and others of entire sentences. Dr. Shafiq's analysis is based on old data from Google's former storage system. For example, Google seeks redaction of common naming conventions (Ex. A ¶ 28), widely used data field names (*id.* ¶ 56) and the number of pebibytes of preserved data (*id.* ¶36). In supporting these redactions, Google simply states they are "necessary to preserve the confidentiality of sensitive details" regarding the foregoing information. Google does not explain how or why redaction of this innocuous outdated information is required, thus failing to demonstrate a specific showing "that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F. 3d at 672..

M.  **Exhibit B: Internal Correspondence Between Google Employees Regarding Privacy and Cookies (Sept. 2011)**

Google seeks redaction of lines reflecting proposed Dremel queries (the text of the query itself) and the setting of "sentinel cookies," because these lines relate to Google's "internal structure, storage and processing of data." (D.I. 294 at 12). Google also proposes redactions of lines discussing cookie blocking versus cookie deletion, the expiration date of the DoubleClick cookie, the revenue generated from cookie history, the percentage of cookies disappearing within one day and cookies grouped by cookie age.  All of this information is from email correspondence from the period between September 13, 2011 and September 19, 2011.  Such antiquated information rarely merits sealing.  What a business was doing 14 years ago is highly unlikely to be what that business is doing now.  *See, e.g., In re Xyrem (Sodium Oxybate) Antitrust Litig.,* 789

11

F. Supp. 3d 760, 773 (N.D. Cal. 2025) (declining sealing of "financial projections…[that] are at this point nearly seven years old"). Google itself explains why such old information does not deserve sealing in stating "the ways in which data is created and accessed have changed significantly since" 2011. Ex. 8 ¶ 4. Google's justification for sealing consists of a label – it is "sensitive Google confidential information" - and a conclusion – it "relate[s] to Google's internal structure, storage and processing of data." (D.I. 294-1 ¶ 30). These broad allegations fail to meet Google's burden in denying the public access to this information. *See In re Cendant Corp.*, 260 F.3d at 194.

### N.    Transcript of Hearing (Oct. 15, 2025)

Google seeks redaction of the number of logs relevant to the sampling process, the name of a particular log, a data field name, and the entire word index to the transcript. Google's explanation for "redact[ing] the number and names of the data logs discussed" is the assertion that disclosure "would provide insight into what information Google maintains and how Google uses, processes and stores data." (D.I. 294-1 ¶ 31). Google failed to identify the type of "insights," by whom they might be made, and how those "insights" about old data from a no longer used system architecture, could be used to Google's serious disadvantage. As this Court said in *MED-EL Elektromedizinische*, 2024 WL 774905, at *2, faced with a similar "conclusory statement of competitive harm," where the sealing proponent "doesn't explain how a competitor would use this information" to harm the proponent, "it is not [the Court's] job to guess."

As for the index, for which Google seeks complete sealing, Google claims that disclosure "would disclose the contents of redactions, and it must also be sealed." (D.I. 294-1 ¶ 31). As explained above, the text redactions themselves are unwarranted, so the index should remain unsealed.

12

## IV. CONCLUSION

The information and documents at issue deal with 14-year-old data, contained in a long-disused system architecture, concerning a long-abandoned project. Google has not demonstrated the required showing on why its proposed redactions/sealing regarding this outdated data outweighs the presumption of access. Google has provided broad allegations of harm, bereft of specific examples and articulate reasoning. As such, the Court should deny Google's Motion to Seal.

Dated: November 28, 2025

| | |
|---|---|
| **STRANGE LLP** | **GRYGIEL LAW, LLC** |
| */s/ Brian R. Strange* | */s/ Stephen G. Grygiel* |
| Brian R. Strange | Stephen G. Grygiel (DE Bar ID #4944) |
| 12100 Wilshire Blvd., Ste. 1550 | 127 Coventry Place |
| Los Angeles, CA 90025 | Clinton, NY 13323 |
| 310-207-5055 | 407-505-9463 |
| brian@strangellp.com | stephengrygiel122@gmail.com |
| *Executive Committee Member* | *Executive Committee Member* |

**BARTIMUS, FRICKLETON, ROBERTSON, RADER, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
4000 W. 114th St., Suite 310
Leawood, KS 66211
913-266-2300
jimf@bflawfirm.com

*Executive Committee Member*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of November 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF System, causing the document to be served on all counsel who are registered as electronic filers in the case.

DATED: November 28, 2025                              */s/ Brian R. Strange*
                                                      Brian Strange