# UNITED STATES DISTRICT COURT

# DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (JDW) |
| This Document Relates to:<br>**All Actions** | |

**DEFENDANT GOOGLE LLC'S REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO SEAL**

**INTRODUCTION**

Plaintiffs' Opposition ("Opposition") to Google's Motion to Seal ("Motion") (Dkt. No. 294) fails for three independent and fundamental reasons:

*First*, Plaintiffs ask the Court to apply the Third Circuit's strict standard for sealing documents in connection with "pretrial motions of a ***nondiscovery nature***," e.g., dispositive motions. Of course, this Motion was submitted in connection with a discovery motion, not a merits-based motion; indeed, the discovery sought was not even merits-based as it related solely to Plaintiffs' inability to ascertain a class. Plaintiffs simply ignore this critical distinction and ask the Court to apply the wrong sealing standard.

*Second*, the Court did not meaningfully rely on these documents, much less the limited portions Google seeks to seal, in its Order denying Plaintiffs' request for additional discovery ("Discovery Order"). Instead, additional discovery was denied because the requests were untimely and too speculative to warrant imposing additional burden on Google. The policies favoring public access to documents pertinent to a court's decision are not undermined where the sealed documents are not, in fact, pertinent.

*Third*, Plaintiffs make no effort to rebut the Declaration of Benjamin Kornacki submitted in support of the Motion; they simply say that it is not sufficient to support sealing. Plaintiffs are wrong about both the sealing standard and the sufficiency of the Kornacki Declaration. Accordingly, Google respectfully submits that the Motion should be granted.

**ARGUMENT**

I. **Plaintiffs' Opposition Relies on the Wrong Standard**

Plaintiffs' Opposition fails to recognize that Google seeks to seal material *involuntarily* submitted in a connection with a discovery motion, which has a much lower bar than material

1

considered on a merits-based motion. Plaintiffs incorrectly argue that "Google fails to overcome the common law presumption of access" (Opp. at 2) and that "[t]he burden of demonstrating the necessity of sealing is substantial under the requisite standard of scrutiny." Opp. at 1, *citing In re Avandia Mktg., Sales, Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 670 (3d Cir. 2019). Notably absent from Plaintiffs' Opposition is any discussion of what they consider to be the "requisite standard of scrutiny." *See* Opp. at 1-2.

But, as explained in *Avandia*, and Google's Motion (Mot. at 4), courts "apply three distinct standards when considering various challenges to the confidentiality of documents." *Avandia*, 924 F.3d at 670. *Avandia* makes clear that the "presumptive right of public access" relates to "pretrial motions of a **nondiscovery nature**[.]" *Id.* at 672 (emphasis added). The standard for sealing documents in connection with a discovery motion, such as this one, is less stringent and was described by one court as, "[t]he lowest level of scrutiny." *See* Mot. at 4-6 *citing Dobson v. Milton Hershey School*, 434 F. Supp. 3d 224, 232 (M.D. Pa. 2020).

As explained in the Motion (at 5-6), the Third Circuit expressly rejected the notion that discovery motions and materials are subject to this presumptive right of public access: "[W]e hold there is a presumptive right to public access to all material filed in connection with non-discovery pretrial motions, . . . but no such right as to discovery motions and their supporting documents." *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165 (3d. Cir. 1993). Plaintiffs' Opposition is fatally flawed because it relies entirely on an inapplicable legal standard. For that reason alone, Plaintiffs' arguments fail.

**II.     The Court's Discovery Order Did Not Rely on Information Sought to Be Sealed**

Plaintiffs' Opposition also fails to recognize that the specific information that Google seeks to seal was not relied on by the Court in issuing its decision. While the Court reviewed each of the

documents submitted in connection with the dispute, the information that Google seeks to seal was not mentioned in the court's decision or pertinent to resolving the dispute. *See* Dkt. 292, Hr'g Tr. at 4 (Oct. 15, 2025) ("I've read all the attachments. I can't say all of them make a lot of sense to me, some of them are just computer code"); *id*. at 47 ( "I haven't read all the deposition testimony").

As an initial matter, the discovery dispute prompting this Motion did not even relate to the merits of the case. Rather, just prior to the deadline to submit expert reports (June 13, 2025), Plaintiffs unilaterally sought, and were granted, a two-month extension of time because they realized they could not articulate any supportable methodology for ascertaining a class of plaintiffs as required under clear Third Circuit law. On June 16, 2025, Plaintiffs filed their motion to compel additional discovery. Dkt. 280. On June 24, 2025, the Court denied this motion to compel without prejudice and ordered Google to produce five sample values for each requested data field and to provide a sworn statement describing the work Google performed. Dkt. 282. The Court also asked for a joint letter addressing the issues to be raised at a July 30, 2025 telephone discovery conference.

After the July hearing, the Court ordered the parties to submit additional materials, including: (1) a copy of materials Google produced to Plaintiffs on May 13, 2025, listing the logs and data fields Google preserved in this case; (2) the deposition transcript of Google's 30(b)(6) deposition regarding the data in the logs; (3) a copy of the sample data Google produced to Plaintiffs in June 2025; (4) a copy of the latest request Plaintiffs sent to Google regarding the data logs; and (5) a list of the data logs that Google has preserved for this case. Dkt. 288.

Plaintiffs now seek to have the entirety of these documents placed on the public record, arguing that motions to seal "keep hidden 'from public view information that judges consider when

3

rendering their decisions . . . depriv[ing] the public of information that it can use to assess a judge's ruling[.]'" Opp. at 1. As addressed above, Plaintiffs ignore entirely that this Motion relates to a discovery dispute, which is subject to a much lower standard of scrutiny. Moreover, the limited information Google seeks to seal does not appear to form the basis for the Court's Discovery Order denying Plaintiffs' motion to compel additional discovery. Rather, the additional discovery was denied for two primary reasons. First, Plaintiffs failed to pursue this discovery until the end of the litigation. The Court's Discovery Order states: "it is unclear why it took Plaintiffs a year in discovery to make these requests to Google. I have issued several scheduling orders in the case indicating that discovery was ending, and Plaintiffs have known since before discovery began that ascertainability was a principal concern in the case. Yet for most of that year, Plaintiffs did not explain that they need this specific information, why they need it, or how it would advance their ascertainability analysis." Dkt. 293 at ¶ 7. The Discovery Order added that: "Plaintiffs should have provided Google a timely, specific explanation of the information they sought and their intended use much earlier in discovery. They failed to do so, instead waiting until the tail end of discovery to raise broad and ill-defined requests for additional data." Dkt. 293 at ¶ 8. The Court concluded: "Discovery in this case has been ongoing for a year and must now come to an end." Dkt. 293 at ¶ 10.

Second, the Court denied Plaintiffs' request for additional discovery because, at this late stage of the litigation, Plaintiffs still could not articulate a non-speculative means to satisfy the ascertainability requirement. The Court discredited the declaration of Plaintiffs' recently retained replacement expert because the declaration offered nothing more than speculation regarding a hypothetical theory of ascertainability. Dkt. 293 at ¶ 6 ("Dr. Shafiq's rebuttal declaration is not expert analysis; it is either speculation or fact testimony for which he lacks a foundation. I therefore

do not credit it."). As the Court noted, "[e]ven now, Dr. Shafiq does not know if this data would permit him to ascertain who the members of the proposed class are." Dkt. 293 at ¶ 7. The Court also concluded that "Plaintiffs' expert's failure to articulate a definitive methodology for the ascertainability analysis also diminishes the significance of this request and alters the proportionality analysis under Fed. R. Civ. P. 26(b)(1)." Dkt. 293 at ¶ 9.

In short, the Court's denial of Plaintiffs' requests for additional discovery did not turn on the content of any specific document, or portion thereof, submitted in connection with this discovery dispute. Instead, the Court held that: "Reopening depositions or compelling further production at this stage would impose disproportionate burdens on Google and serve no meaningful purpose, particularly considering Plaintiffs' belated and speculative approach." Dkt. 293 at ¶ 8. Since the specific content of the proposed redactions were not pertinent to the Court's resolution of this discovery dispute, there is little to no public interest in the content of these documents and Google's Motion requesting limited redactions should be granted. *See Veikos v. Trs of the Univ. of Pa.*, Case No. 2:20-cv-004408, 2021 WL 4306024, at * 2 (E.D. Pa. Sept. 22, 2021) (this Court explained that the "strongest arguments for access apply to materials used as the basis for a judicial decision of the merits of the case, as by summary judgment."); *Brown v. Caldwell*, No. 20-cv-7907-NLH-AMD, 2024 U.S. Dist. LEXIS 17680, at *4 (D.N.J. Feb. 1, 2024) (granting motion to seal where "there is no public interest in" information "not relied on during the progress of this case or the resolution of any issue before the Court").

### III. Google's Proposed Redactions Are Narrowly Drawn and Justified

Contrary to the conclusory accusations in Plaintiffs' Opposition, Google's proposed redactions were narrowly tailored to redact specific information of concern. Google's Motion was also supported by the Declaration of Benjamin Kornacki, a Google software engineer; a

declaration that is not rebutted or contradicted by anything in Plaintiffs' Opposition. Dkt. 294-1. Mr. Kornacki is "responsible for leading a team of engineers that build pipelines to process historical data and produce analyses in relation to legal and regulatory matters." *Id*. ¶ 1. In connection with his role, Mr. Kornacki is "familiar with Google's interests in protecting confidential and sensitive business information." *Id*. Google's Motion discussed each category of information Google sought to seal, addressed each document individually, and supported the proposed redactions with specific citations to Mr. Kornacki's declaration. *See* Mot. at 6-13.

Despite the Court instructing the parties to meet and confer with respect to which of the documents should be placed on the docket, Plaintiffs insisted, without explanation, that all of the documents should be public, even the irrelevant deposition transcripts and the discredited expert affidavit. As a result, Google was required to spend significant time and expense evaluating each line of each document to make confidentiality determinations for proposed redactions. To be judicious with the proposed redactions, Google and its counsel spent substantial time on this iterative process.

Notwithstanding these efforts, Plaintiffs' Opposition still challenges the proposed redactions for each document. Plaintiffs' challenges are based on their mischaracterizations of Google's positions. For instance, with respect to Exhibit 2, which contained two very specific data log samples, Plaintiffs argue that they do not understand the need to preserve the confidentiality of these documents because the data is old and the databases have changed. *See*, *e.g.*, Opp. at 3 ("Why this old information from a long-outdated system about a long-abandoned project is 'currently sensitive' remains unknown."). Plaintiffs' argument misses the mark.

While certain aspects of Google's databases have changed over the years, which can present challenges for searching/organizing older data, there was no wholesale replacement of

6

Google's internal systems. The changes are akin to remodeling a house; despite notable changes/improvements, original components of the home remain. Further, Exhibit 2 was created earlier this year – not ten years ago – using Google's **current** databases to respond to Plaintiffs' fishing expedition regarding the data logs.

As explained in the Kornacki Declaration, "although the samples of data produced are from events over a decade old, many of the logs and data fields are still used today in some form. As such, disclosing technical details regarding these confidential logs and data fields would provide insight into Google's operations today that could still be misused by competitors, publishers, advertisers, and external bad actors." Dkt. 294-1 at ¶ 12. Further detail was also provided: "These samples provide extensive detail regarding all of the kinds of data maintained for specific logs, including what fields are maintained in which log, how each log is structured, the format of each data field, and the degree of detail maintained in the record." *Id*. at ¶ 13.

In other words, Google's request to seal this information has **nothing** to do with a "long-outdated system" or the "long-abandoned project" and **everything** to do with Google's current internal systems and data management. Plaintiffs' bald assertion, lacking any citation to evidence, that the data is irrelevant to Google's current business is simply wrong. This Court has held that sealing is appropriate for these types of documents. *See*, *e.g.*, *PACT XPP SCHWEIZ AG v. Intel Corp.*, Case No. 1:19-cv-01006, 2022 WL 22905010, at *3 (E.D. Pa. Aug. 10, 2022) (sealing documents containing "descriptions and references to source code, technical specifications, internal component descriptions, and architectural diagrams. This highly technical, non-public information is the type of confidential business information that courts will protect from disclosure.").

Plaintiffs also argue that "Google nowhere shows how, or why, a 'competitor' or 'bad actor' would nor would [not] want to use such old information derived from since-changed data storage system." Opp. at 3. Again, Plaintiffs' argument is based on the faulty premise that the data and databases are old and, therefore, in their minds, this confidential data is unimportant. In addition, during the October 15, 2025 hearing, when the Court said, "I can't say all of them make a lot of sense to me, some of them are just computer code," Exhibit 2 is one of the exhibits the Court was referencing. This document did not help the Court, would not help the public understand the issues decided by the Discovery Order, and would only be useful to someone attempting to use the information for an improper purpose. While Plaintiffs complain that Google did not state ***how*** the data would be used improperly, Google should not be required to draw a public roadmap explaining exactly how the data could be misused, particularly on a discovery motion.

The risks are obvious. For example, the information at issue could be used to educate malicious actors on how to intercept or extract data from Google's systems as part of a cyberattack. Knowledge of a company's data processing/storage ability can also be used to extrapolate key business metrics from the company. And perhaps most concerning here, there is a risk that the data disclosed in Exhibits 2 and 7 could be combined with other data known to a bad actor to unmask the specific individuals associated with the browsing history found in this data. Indeed, Plaintiffs' own expert affidavit demonstrates this risk as Dr. Shafiq explained how he hoped to use browser "fingerprinting" and similar techniques to de-anonymize this data and unmask the individuals associated with this internet browsing activity. There is no way for Google to know what information malicious actors potentially have from other sources that could be correlated with the data Google seeks to protect. These are not hypothetical risks but rather common occurrences with drastic consequences.

8

Plaintiffs repeat these same flawed arguments for Exhibit 5, claiming that the data is old and Google's systems have changed. *See* Opp. at 3-4. These arguments fail for the reasons just described. In addition, as set forth in Mr. Kornacki's Declaration, "Exhibit 5 consists entirely of the names of data fields, data logs, and definitions for the data fields. Both the field names and definitions provide direct and detailed insight into what information Google maintains, how it uses and organizes it, and how its advertising systems work." Dkt. 294-1 at ¶ 14. Plaintiffs make no effort to rebut Mr. Kornacki's Declaration other than to say they disagree because they misunderstand the nature of the data and databases.

Plaintiffs repeat these generic and inaccurate arguments about the age of the data and the systems throughout their Opposition. In each instance, Plaintiffs fail to rebut Google's arguments and evidence in support of sealing portions of these documents. Google will not rehash these points for each document as it believes the Motion and Mr. Kornacki's Declaration provide ample support for the limited sealing requested.

## CONCLUSION

For the reasons set forth above, the Court should grant the Motion.

Dated: December 5, 2025   **MAYER BROWN LLP**

By: _/s/ Anthony J Weibell_

Anthony J Weibell
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Attorney for Defendant Google LLC*

9