## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (JDW) |
| This Document Relates to: All Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR CLASS CERTIFICATION</u>

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Blvd., Suite 1550
Los Angeles, CA 90025
Tel: 310-207-5055
*brian@strangellp.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON, ROBERTSON, RADER, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
4000 W. 114th Street, Suite 310
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*


**GRYGIEL LAW, LLC**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
127 Coventry Place
Clinton, NY 13323
Tel: 407-505-9463
*stephengrygiel122@gmail.com*

*Executive Committee Member*

**TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................................1

II.    BACKGROUND .................................................................................................2

    A.  Factual Background........................................................................................2

    B.  Litigation History...........................................................................................3

    C.  Google Destroyed Evidence, Preventing Identification of Individual Class
        Members ........................................................................................................4

III.   PROPOSED CLASSES AND RELIEF SOUGHT ...........................................5

IV.   ARGUMENT......................................................................................................6

    A.  The Proposed Class Satisfies the Requirements of Rule 23(a) ...............6

        1.   The proposed Class is numerous.........................................................7

        2.   The Class presents common questions of law and fact........................7

        3.   Plaintiffs' claims are typical of Class Members' claims ...............10

        4.   Plaintiffs and Plaintiffs' counsel will adequately protect the interests of the
            proposed Class ..................................................................................11

    B.  The Proposed Class Satisfies Rule 23(b)(2) .............................................12

        1.   Google has acted on grounds that apply generally to the Class...................13

        2.   Final declaratory and injunctive relief is appropriate as to the Class ..........13

        3.   There are no ascertainability or notice requirements under Rule 23(b)(2)...16

    C.  The Proposed Class Also Satisfies Rule 23(b)(3)....................................17

        1.   Common issues predominate over individual ones ......................................17

        2.   Class treatment is superior to other methods of adjudication.......................18

        3.   The proposed Class satisfies the ascertainability requirement ....................19

V.    CONCLUSION .................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
2017 WL 1806583 (N.D. Cal. May 5, 2017) ........................................................................ 17

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994)................................................................................ 8, 10, 15

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)................................................................................ 10

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015)............................................................................ 16, 19

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) .............................................................................. 19

*CASA, Inc. v. Trump*,
2025 WL 2263001 (D. Md. Aug. 7, 2025) ........................................................... 16

*cf. Halliday v. Bioreference Lab'ys, Inc.*,
2022 WL 3051348 (N.J. Ct. App. Aug. 3, 2022).................................................... 9

*City of L.A. v. Lyons*,
461 U.S. 95, 105 (1983)....................................................................................... 14

*City Select Auto Sales Inc. v. BMW of N. Am. Inc.*,
867 F.3d 434 (3d Cir. 2017)................................................................................. 20

*Cline v. Sunoco, Inc.*,
159 F.4th 1171 (10th Cir. 2025) ...................................................................... 19, 20

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020)................................................................................. 20

*Hart v. Valdez*,
186 F.3d 1280 (10th Cir. 1999) ........................................................................... 17

*Hassine v. Jeffes*,
846 F.2d 169 (3d Cir. 1988)................................................................................. 13

*In re Bulk (Extruded) Graphite Antitrust Litig.*,
2006 WL 891362 (D.N.J. Apr. 4, 2006) ................................................................ 7

ii

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005)...................................................................................... 18

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999) ............................................................................... 11

*In re Google Buzz Privacy Litig.*,
  2010 WL 3590379 (N.D. Cal. July 29, 2010).............................................................. 14

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011) ...................................................................... 14

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008)........................................................................................ 6

*In re Linerboard Antitrust Litig.*,
  203 F.R.D. 197 (E.D. Pa. 2001)................................................................................... 7

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003)...................................................................................... 7

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  2012 WL 1415508 (D. Kan. Apr. 24, 2012) ............................................................... 14

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014)................................................................................. 18

*In re Processed Egg Prods. Antitrust Litig.*,
  312 F.R.D. 155 (E.D. Pa. 2015)................................................................................. 13

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)................................................................................. 11, 17

*In re Takata Airbag Prods. Liab. Litig.*,
  524 F. Supp. 3d 1266 (S.D. Fla. 2021) ........................................................................ 9

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
  2023 WL 1818922 (D.N.J. Feb. 8, 2023) ................................................................... 13

*In re Wawa, Inc. Data Sec. Litig.*,
  141 F.4th 456 (3d Cir. 2025) ..................................................................................... 15

*Jones v. Citigroup, Inc.*,
  38 Cal. Rptr. 3d 461 (Ct. App. Jan. 26, 2006) ............................................................. 9

*Kelly v. RealPage Inc.*,
  47 F.4th 202 (3d Cir. 2022) ...................................................................... 19, 20

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994) ................................................................. 17, 18

*Logory v. Cnty. of Susquehanna*,
  277 F.R.D. 135 (M.D. Pa. 2011) ..................................................................... 8

*Merkle v. Robinson*,
  737 So.2d 540 (Fla. 1999) ............................................................................... 9

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011) .................................................................. 15

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ........................................................................... 14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ........................................................................... 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ......................................................................... 15

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ......................................................................... 20

*Santiago v. City of Phila.*,
  72 F.R.D. 619 (E.D. Pa. 1980) ......................................................................... 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) .......................................................................................... 6

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015) ........................................................................... 16

*SmileDirectClub, LLC v. Delta Dental Plans Ass'n*,
  2022 WL 17496069 (Ill. Ct. App. Dec. 8, 2022) ........................................... 9

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009) ..................................................................... 10

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ............................................................................. 7

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)................................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................................. 7, 8, 17

*Williams v. City of Phila.*,
   270 F.R.D. 208 (E.D. Pa. 2010)........................................................................................... 7

## OTHER AUTHORITIES

Julia Angwin & Jennifer Valentino-Devries, *Google's iPhone Tracking*, Wall St. J. (Feb. 17,
   2012) ................................................................................................................................. 2

## RULES

Fed. R. Civ. P. 23(a) ........................................................................................................... 7

Fed. R. Civ. P. 23(a)(4)....................................................................................................... 11

Fed. R. Civ. P. 23(b)(2)....................................................................................................... 12

Fed. R. Civ. P. 23(b)(3)....................................................................................................... 18

Rule 23(a)(1)...................................................................................................................... 7

Rule 23(a)(2)...................................................................................................................... 7

Rule 23(a)(3)...................................................................................................................... 10

## I.      INTRODUCTION

This case arises out of Defendant Google LLC's ("Google") intentional and surreptitious circumvention of the default cookie blocking settings on the Safari web browser in order to serve targeted ads to internet users without their knowledge or consent. Second Amended Consolidated Complaint ("SACC") (D.I. 246) ¶¶ 2–4. Apple's Safari browser introduced a new default privacy setting in or around 2011 that prevented Google from secretly tracking Plaintiffs' and Class members' internet use. That default setting blocked the placement of third-party cookies without user consent, so Google exploited an exception in Safari's code to "solve this problem" and continue to allow for the setting of "cookie[s] on relevant Safari browsers" without "requir[ing] the user to change their default settings in order for it to be effective." Declaration of Former Google Employee Lawrence You (D.I. 196) ¶¶ 38, 41. Plaintiffs Jose M. Bermudez and Mitchel Balmayne ("Plaintiffs") brought this action on their own behalf and on behalf of a putative Class of similarly situated individuals seeking relief. SACC at 73–74.

Plaintiffs seek through this action to vindicate the rights of all individuals whose privacy was invaded by Google's surreptitious cookie deployment and therefore seek certification of the proposed Class, which consists of all persons in the United States who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012. Specifically, Plaintiffs seek declaratory relief that Google's actions secretly to override users' browser privacy preferences violated California law and injunctive relief that Google shall not employ any method for the purpose of overriding a browser's third-party cookie-blocking setting to allow Google to place an advertising cookie on such browser without the user's prior notice and consent. In addition, Plaintiffs seek to certify a damages class under Rule 23(b)(3).

## II.    BACKGROUND

### A.  Factual Background

During the Class Period, Google profited primarily from selling targeted internet advertising. SACC ¶¶ 14, 117–18. Google's ability to sell advertising depended on its ability to use cookies to compile users' internet histories and create profiles that it could associate with individual users. *Id.* ¶¶ 44–46. Cookies are small files that companies like Google place on users' computers to track their interactions with and visits to various websites. *Id.* ¶¶ 38–40.

The Safari browser is the default browser provided for use on all Apple devices. *Id.* ¶ 68. In or around 2011, responding to growing privacy concerns, Apple updated Safari's default settings to automatically protect user privacy by blocking tracking cookies by default. *Id.* ¶¶ 69–73. This update posed a problem for Google's business model by blocking Google from placing cookies on users' browsers without their consent. *Id.* ¶¶ 100–05, 117–18. So Google set about designing and deploying a secret code to intentionally deceive the Safari browser into allowing Google to continue to place cookies on users' computers without their knowledge or consent. *Id.*

Google's secret circumvention of the default Safari privacy settings continued unnoticed until, on February 17, 2012, a *Wall Street Journal* report exposed Google's clandestine "tracking [of] the Web-browsing habits of people who intended for that kind of monitoring to be blocked." *Id.* ¶ 74 (quoting Julia Angwin & Jennifer Valentino-Devries, *Google's iPhone Tracking*, Wall St. J. (Feb. 17, 2012)). The *Wall Street Journal* article, based on research by Stanford computer science and law graduate Jonathan Mayer, detailed the exact technical method that Google employed to secretly exploit the Safari browser so that it could continue to profit from placing cookies on users' browsers despite the default privacy settings. *Id.* ¶¶ 75–78.

Following disclosure of Google's intentional and surreptitious actions, the Federal Trade Commission and various state attorneys general investigated and filed lawsuits against Google,

2

and Google eventually settled those actions. *Id.* ¶¶ 164–70. Numerous civil lawsuits were also filed against Google, which were ultimately consolidated by the Judicial Panel on Multi-District Litigation before this Court under 28 U.S.C. § 1407.

## B. Litigation History

In early 2012, numerous individuals, including Plaintiffs,[1] filed complaints in various federal courts around the country after Google's actions were publicized. These actions were centralized before this Court for pretrial proceedings pursuant to 28 U.S.C. § 1407 on June 12, 2012. D.I. 1. After reviewing several applications to be appointed as lead counsel, the Court selected the undersigned to be Interim Co-Lead Counsel on November 16, 2012. D.I. 44. On December 19, 2012, Plaintiffs filed a Consolidated Class Action Complaint. D.I. 46.

Following remand from appeal of the district court's order on Google's motion to dismiss, the Parties reached a settlement and submitted it for approval. This Court preliminarily approved the settlement on August 31, 2016 and directed that notice be disseminated to the settlement class. D.I. 164. Following completion of the Rule 23(b)(3)-quality notice program, this Court finally approved the settlement on December 7, 2016. D.I. 167. Subsequently, a single objector appealed the final settlement approval and, after review, the Third Circuit, although rejecting the objector's arguments, remanded the case for further consideration. *See In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019).

To address the Third Circuit's concerns regarding the settlement release, the Parties submitted a renewed motion for preliminary settlement approval on January 3, 2020 (D.I. 193), which this Court granted on October 15, 2021. D.I. 203. Following a second round of Rule 23(b)(3)-quality notice to the Class, Plaintiffs moved for final settlement approval on August 8,

---

[1] Mitchel Balmayne was added as a Plaintiff on October 3, 2024, when Plaintiffs filed the SACC.

3

2022 (D.I. 210), which the Court denied on July 10, 2023. D.I. 220. The Court's Order held that the proposed settlement class met all the requirements for under Rule 23(a) and Rule 23(b)(2), but ultimately denied final settlement approval on the ground that it would extinguish the Class' monetary claims, and therefore certification under Rule 23(b)(3), rather than under Rule 23(b)(2), was required. As to Rule 23(b)(3), the Court determined that Plaintiffs could not ascertain individual Class members as required and therefore denied final settlement approval. Because there was no final judgment on this issue, should this case not settle, the denial of the motion for final settlement approval will be left to an appeal at the conclusion of this case.

The Parties subsequently engaged in extensive liability and class certification discovery for the first time in this lengthy case.

### C. Google Destroyed Evidence, Preventing Identification of Individual Class Members

Plaintiffs propounded thorough discovery requests and took the depositions of two high-level Rule 30(b)(6) deponents, as well as the deposition of former Google employee Lawrence You. Plaintiffs' discovery focused on what data logs Google preserved from the Class Period, which Plaintiffs believe would document how and where Google installed its tracking cookies that are the subject of this action. Throughout discovery Google maintained that there was no available data that would allow Plaintiffs to ascertain who received the Google tracking cookies during the Class Period. *See, e.g.*, D.I. 195 at 1 ("[I]t is not possible for Google . . . to identify specific individuals who were actually affected" by the privacy invasion at issue in this case).

After months of discovery and the completion of depositions, in late October 2025, Plaintiffs discovered that Google did in fact possess data associated with the tracking cookies at issue in this case, which Plaintiffs' expert believes could have been used to identify Class members. However, Google informed Plaintiffs that it had deleted the encryption keys needed to

4

unlock that data, which is now inaccessible. Plaintiffs have filed, concurrently with this motion for class certification, a motion for sanctions seeking redress for the prejudice caused by Google's destruction of relevant evidence, which more fully addresses and describes this issue.[2]

Plaintiffs believe, based on their expert's analysis, that this destroyed evidence would have permitted them to feasibly ascertain Class members and to therefore successfully submit a motion for class certification under Rule 23(b)(3). Plaintiffs respectfully suggest that the Court should first resolve Plaintiffs' Motion for Finding of Spoliation and for Sanctions, because if the Court grants Plaintiffs the relief sought in that motion, it will likely materially influence the Court's analysis of the issues in this motion, including whether Plaintiffs are entitled to a curative remedy that would affect the class certification analysis under Rule 23(b)(3).

## III.    PROPOSED CLASSES AND RELIEF SOUGHT

Plaintiffs propose to certify the following Class under Rule 23(b)(2):

All persons in the United States who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.

Plaintiffs propose to certify the following Class under Rule 23(b)(3):

All persons within the State of California who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.

Plaintiffs also move to be appointed representatives of the Class and for the appointment of Interim Co-Lead Counsel to serve as Class counsel pursuant to Fed. R. Civ. P. 23(g).

---

[2] Plaintiffs' concurrently-filed Motion for Finding of Spoliation and for Sanctions describes this issue in substantially further detail. Because much of the information regarding this issue is subject to a claim of confidentiality by Google, Plaintiffs only generally describe the issue here.

Plaintiffs seek declaratory relief that Google's actions to override users' browser privacy preferences were contrary to California law. Plaintiffs further seek injunctive relief prohibiting Google from employing any method for the purpose of overriding a browser's third-party cookie-blocking setting to allow Google to place an advertising cookie on such browser without the user's prior notice and consent and a damages class under Rule 23(b)(3).

## IV.   ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.* In determining whether to certify a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008). Plaintiffs' proposed Class satisfies the requirements of both Rule 23(a) and Rule 23(b).[3]

### A.  The Proposed Class Satisfies the Requirements of Rule 23(a)

Under Rule 23(a), the proponent of class certification must "demonstrate, first, that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345

---

[3] This Court previously found, in the context of evaluating a proposed settlement of this action, that Rule 23(a) and Rule 23(b)(2) were satisfied in this case, but found, despite the Class twice having received Rule 23(b)(3)-quality notice, that the settlement release's waiver of money damages precluded certification under Rule 23(b)(2). *See* D.I. 219 at 10–12.

(2011) (quoting Fed. R. Civ. P. 23(a)). Those requirements are met here.

### 1.    The Proposed Class Is Numerous

The numerosity requirement of Rule 23(a)(1) is satisfied where the traditional joinder of parties would be "unworkable." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 184 (D.N.J. 2003). No "minimum number of plaintiffs" is "required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *see also Williams v. City of Phila.*, 270 F.R.D. 208, 214–15 (E.D. Pa. 2010) ("[C]ourts in this circuit have generally found that a class of 40 or more plaintiffs satisfies the numerosity requirement."); *Santiago v. City of Phila.*, 72 F.R.D. 619, 624 (E.D. Pa. 1980) ("The numerosity prerequisite is satisfied as long as the class representatives can show impracticability of joinder, even if the exact size of the class is unknown.").

The numerosity requirement is easily satisfied here. Class Counsel estimates that millions of Safari browser users have been affected by Google's alleged conduct during the relevant time period. *See* D.I. 219 at 11 (this Court finding in this case that "the class is so numerous that joinder of all members is impracticable"). The numerosity requirement is met.

### 2.    The Class Presents Common Questions of Law and Fact

Rule 23(a)(2) requires there be "questions of law or fact common to the members of the class." The commonality requirement is construed permissively and "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001); *see also Stewart*, 275 F.3d at 227 ("The commonality requirement will be satisfied if the named plaintiffs share *at least one* question of fact or law with the grievances of the prospective class." (emphasis added; quotation omitted)). "[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all

class members are *subject* to the same harm will suffice." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (emphasis in original); *see also Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135, 141 (M.D. Pa. 2011) (commonality is to be determined by the "potential for a 'classwide resolution'" (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350)).

The relief Plaintiffs seek implicates questions of law and fact common to the proposed Class, which predominate over all other questions affecting individual Class members. All Class members were subject to the same intrusion of privacy, inflicted by the same company (Google), using the same circumvention technique on the same browser (Safari). Questions of fact common to the Class include, but are not limited to: How and why Google carried out the alleged browser privacy setting circumvention. Questions of law common to all Class members include, but are not limited to: (1) Whether Google's alleged practice of circumventing Plaintiffs' and Class members' Safari browsers' security and privacy settings to place third-party cookies constituted an intrusion upon seclusion under California common law or a violation of the California Constitution's right to privacy; and (2) whether Plaintiffs and the Class are entitled to damages, declaratory, injunctive, and/or other relief.

Choice-of-law issues are also absent here. An MDL Court must decide which state's—or states'—law applies to common law claims.[4] Here, the question is whether California constitutional and common law privacy rights can apply to the claims of non-Californian Class members. The Court must first look to the substantive and choice-of-law rules of the transferor court(s). *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 524 F. Supp. 3d 1266, 1292 (S.D. Fla.

---

[4] Neither the Court nor the Parties have, thus far, challenged the applicability of California law to all Class members.

2021). The transferor courts here are: N.D. Cal., S.D. Fla., N.D. Ill., D. Kan., N.D. Miss., W.D. Mo., and D.N.J.

Examination of the substantive common law right of privacy and choice-of-law principles of each of those transferor courts shows no material differences with California law. *See* Exhibit A. Exhibit A demonstrates the fundamental similarity of the substantive elements of common law privacy invasion claims, not only across the seven transferor courts but across every state but for New York and Virginia. The vast majority of states follow Restatement (Second) of Torts § 652B on this issue.

As for choice-of-law principles, each of the transferor courts' principles would support application of California law. A common threshold determination is whether application of another state's law would produce a different outcome, with a choice-of-law determination required only if California privacy law materially conflicts—here, it does not—with the privacy law of the transferor states. *See, e.g.*, *SmileDirectClub, LLC v. Delta Dental Plans Ass'n*, No. 1-22-0208, 2022 WL 17496069, at *4 n.3 (Ill. Ct. App. Dec. 8, 2022); *Jones v. Citigroup, Inc.*, 38 Cal. Rptr. 3d 461, 466 (Ct. App. Jan. 26, 2006) (no choice of law analysis required without showing that different state's law would produce different outcome); *cf. Halliday v. Bioreference Lab'ys, Inc.*, No. A-3219-19, 2022 WL 3051348, at *11 (N.J. Ct. App. Aug. 3, 2022) (choice-of-law analysis required when "a conflict between the States' laws exists").

California undoubtedly has a strong interest in application of its privacy laws governing massive companies headquartered in California. *See, e.g.*, *Merkle v. Robinson*, 737 So.2d 540, 542 (Fla. 1999) (in tort cases involving more than one state, all substantive issues should be determined under law of state with most significant relationship to occurrence and parties). Google planned, tested, and executed its circumvention from California. Google surely

9

anticipated application of California law; Google specified the applicability of California law in its Terms of Service. All but perhaps two states (New York and Virginia) afford their citizens virtually the same privacy rights that California offers its citizens. California law properly applies to a nationwide class.

As this Court has already recognized, because there exist common factual and legal questions related to liability, the commonality requirement of Rule 23(a)(2) is met. *See* D.I. 219 at 11 ("[T]here are questions of law and fact common to the proposed class including: (1) whether Google's alleged practice of circumventing the class members' browser security and privacy settings violated California law; (2) how Google carried out the browser circumvention; and (3) whether the class members are entitled to damages or other relief.").

### 3. Plaintiffs' Claims Are Typical of Class Members' Claims

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." The typicality factor examines "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (quotation omitted). A named plaintiff's claim is typical if it arises from the same wrongful conduct that gives rise to the claims of the putative class. *See Baby Neal*, 43 F.3d at 57–58; *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009) (Rule 23(a)(3) "does not demand identical claims, only that they be reasonably coextensive with those of the absent class members"). This requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184 (3d Cir. 2001) (citations omitted). Instead, in examining typicality, the

Court must ensure that the class representatives do not have interests antagonistic to those of the Class. *See In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 481 (W.D. Pa. 1999).

Here, the Class Representatives and the Class press the same claims and share similar injuries—violations of privacy rights—all flowing from the same alleged conduct by Google. *See* D.I. 219 at 11 ("[T]he claims of the representative parties are the same as the claims of the rest of the class and all class members share similar injuries (alleged violations of privacy rights) all flowing from the same alleged conduct by Google."). Plaintiffs' requests for damages, declaratory, and injunctive relief would benefit all Class members, and there is no danger that the named Plaintiffs would seek or be afforded relief prejudicial to the unnamed Class members. The typicality requirement of Rule 23(a)(3) is therefore satisfied.

4.    Plaintiffs and Plaintiffs' Counsel Will Adequately Protect the Interests of the Proposed Class

Finally, the Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry asks (1) whether Class Counsel has "the qualifications . . . to represent the class," and (2) whether any "conflicts of interest [exist] between named parties and the class they seek to represent." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions* ("*Prudential*"), 148 F.3d 283, 312 (3d Cir. 1998) (quotation omitted). Both requirements are met here. *See* D.I. 219 at 11–12 ("The Court concludes that class counsel has the necessary experience and qualifications to represent the class and there are no serious conflicts between the class representatives and the other class members because they all suffered the same injury and assert the same claims based on the same alleged conduct by Google.").

First, Plaintiffs have retained qualified and experienced counsel to pursue this action. Interim Class Counsel have extensive experience and expertise in class action, privacy, and

11

internet actions, and are qualified and able to conduct this litigation.[5] *See* Strange Decl. ¶¶ 3–6; Frickleton Decl. ¶¶ 3–6; Grygiel Decl. ¶¶ 4–10. Class Counsel has already demonstrated their full commitment to the continued prosecution of this litigation over the last thirteen years and they possess the experience, skill, and resources to continue to do so.

Second, to be adequate, the Class Representatives must be part of the Class, have suffered the same injury, and have the same interests as the rest of the Class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). Here, no antagonism exists between Plaintiffs and the rest of the Class—all share the same underlying claims based on the same alleged conduct by Google. Plaintiffs and the rest of the Class allege they visited sites on their Safari browsers that were served Google ads during the relevant time period, thereby receiving the same Google code that caused cookies to be set in an identical manner on each browser and override their default privacy protections. Plaintiffs' interests are fully aligned with those of the other Class members.

### B.  The Proposed Class Satisfies Rule 23(b)(2)

Class certification under Rule 23(b)(2) is appropriate when (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and (2) such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These requirements have been interpreted by the Third Circuit to mean that "the interests of class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent

---

[5] Rule 23(g) requires the Court to examine the capabilities and resources of Class Counsel to determine whether they will provide adequate representation to the Class. The Court previously appointed Class Counsel as Interim Co-Lead Counsel. D.I. 44. For the same reasons that the Court appointed Class Counsel as Interim Co-Lead Counsel, their appointment as Settlement Class Counsel is also appropriate.

application of principles of *res judicata*." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). Both elements of Rule 23(b)(2) are easily met here.

1.    <u>Google has acted on grounds that apply generally to the Class</u>

Google acted on grounds that apply generally to the Class because Google served to all Plaintiffs and Class members the same code in the same manner, which similarly circumvented all Class members' default Safari privacy settings. Class members' claims are also "cohesive" insofar as "adjudication of the case will not devolve into consideration of myriad individual issues," *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 155, 169 (E.D. Pa. 2015), because certification of the Class will not require a "different injunction or declaratory judgment against the defendant" on behalf of individual Class members. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875, 2023 WL 1818922, at *32 (D.N.J. Feb. 8, 2023). To the contrary, Plaintiffs seek the same declaratory relief that Google's surreptitious circumvention of their default browser settings was unlawful under California law. And Plaintiffs seek the same injunctive relief, on behalf of all Class members, prohibiting Google from using any method to override a browser's third-party cookie-blocking setting without a user's prior notice and express consent. *See* D.I. 219 at 12 (this Court noting that "Google acted on grounds that applied generally to the class" in this case).

2.    <u>Final declaratory and injunctive relief is appropriate as to the Class</u>

Final injunctive relief or corresponding declaratory relief respecting the Class as a whole is particularly appropriate here. Plaintiffs seek declaratory relief that Google's actions to override users' browser privacy settings were contrary to California law and injunctive relief that Google shall not again employ any method for the purpose of overriding a browser's third-party cookie-

13

blocking setting to allow Google to place an advertising cookie on such browser without the user's prior notice and consent.

In the class action context, final injunctive relief is warranted if Plaintiffs can "make a reasonable showing that" they are "likely to suffer future injury" if an injunction is not imposed. *City of L.A. v. Lyons*, 461 U.S. 95, 105, 109 (1983). A future injury is likely, even if a defendant claims to no longer engage in the complained of behavior, if the defendant does not disclose its actions or if the plaintiff has no way of confirming if the defendant is again engaging in the complained of behavior. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-md-1840-KHV, 2012 WL 1415508, at *16 n.32 (D. Kan. Apr. 24, 2012) (finding prospective injunctive relief proper "even though plaintiffs know that [defendant] Costco does not disclose or adjust for temperature" because plaintiffs "have no way to protect against injury in future motor fuel transactions because they have no way of knowing the temperature of the motor fuel that they buy."); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015) ("For a Rule 23(b)(2) class, 'certification is appropriate even if the defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."'").

Here, while Google has claimed to have ended its surreptitious bypassing of the default Safari browser settings, due to the secret nature of Google's alleged conduct—indeed, but for the *Wall Street Journal* article exposing it, Plaintiffs may have never discovered Google's conduct—and Google's well-known history of evading and violating users' online privacy,[6] Plaintiffs have no way of knowing when or if Google has re-started its circumvention of their Safari default

---

[6] *See, e.g.*, *In re Google Buzz Privacy Litig.*, No. 5:10-cv-00672, 2010 WL 3590379 (N.D. Cal. July 29, 2010); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067 (N.D. Cal. 2011).

14

settings. *See In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456, 475 (3d Cir. 2025) (in the class settlement context, finding a "court order binding a party to continue to perform pursuant to injunctive relief has real value" especially given the "fickle assurances of large corporations in damage-control mode immediately following a large-scale security breach are pale shadows of an order by the Court," where the injunctive relief committed defendant to continue to take actions it had already agreed to take). And Google's assurances to the FTC and state attorneys general that it would not engage in similar conduct expired in February 2014,[7] making a permanent injunction all the more necessary. Because the proposed injunctive relief here seeks "to define the relationship between the defendant and the 'world at large,'" with respect to preserving and respecting users' default browser privacy settings, such injunctive relief "will usually satisfy" Rule 23(b)(2).[8] *Baby Neal*, 43 F.3d at 59.

Therefore, Rule 23(b)(2)'s requirements are satisfied here. *See id.* at 58 (explaining that a Rule 23(b)(2) class is "almost automatically satisfied in actions primarily seeking injunctive relief"); *see also* D.I. 219 at 12 (in denying approval to a prior proposed class action settlement in this case under Rule 23(b)(3), this Court noted that "the requirements of Rule 23(b)(2) would

---

[7] *See* Order Approving Stipulated Order for Permanent Injunction and Civil Penalty Judgment at 2, *U.S. v. Google Inc.*, No. 12-04177 (N.D. Cal. Nov. 16, 2012), ECF No. 30.

[8] While Plaintiffs propose the terms of the injunctive relief they seek, the "precise terms of the injunction need not be decided at [the class certification] stage, only that the allegations are such that injunctive and declaratory relief are appropriate and that the class is sufficiently cohesive that an injunction can be crafted that meets the specificity requirements of Rule 65(d)." *Morrow v. Washington*, 277 F.R.D. 172, 198 (E.D. Tex. 2011); *see also Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014) (finding Rule 23(b)(2) satisfied "when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony.").

be met [in this case]: Google acted on grounds that applied generally to the class such that any injunctive relief would have the same effect for all class members.").

> 3.  There are no ascertainability or notice requirements under Rule 23(b)(2)

Unlike a Rule 23(b)(3) class, "ascertainability is not a requisite of a Rule 23(b)(2) class" under Third Circuit law. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 n.7 (3d Cir. 2015); *see also Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of other federal courts [*sic*] all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . ."). This is so because, if granted, Plaintiffs' proposed declaratory and injunctive relief "would provide complete relief to all class members" regardless of any disputes about which members of the Class would benefit from such an order. *CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 2263001, at *6 (D. Md. Aug. 7, 2025). Indeed, in reviewing Plaintiffs' prior motion for final approval of a class settlement in this case, this Court held that, had the settlement involved "a true Rule 23(b)(2) injunctive class case, the Court concludes that the requirements of Rule 23(b)(2) would be met" in this case notwithstanding any ascertainability analysis because "Google acted on grounds that applied generally to the class such that any injunctive relief would have the same effect for all class members." D.I. 219 at 12.[9]

In connection with the Parties' prior motions for approval of a settlement class, Rule 23(b)(3)-quality notice was twice issued to the Class. However, no personal notice is required to

---

[9] As noted above, Plaintiffs contend Google destroyed data that would have allowed them to sufficiently identify Class members and satisfy the ascertainability requirement under Rule 23(b)(3). *See* Section II.C, *supra*. Plaintiffs have moved for sanctions to cure the prejudice from Google's destruction of evidence and Plaintiffs respectfully request that, should the Court grant Plaintiffs' motion for sanctions, the Court award relief as requested in Section IV.C.3, *infra*.

be given to Class members under Rule 23(b)(2). *See Wal-Mart Stores, Inc.*, 564 U.S. at 363

("Similarly, (b)(2) does not require that class members be given notice and opt out rights . . . .").

### C.  The Proposed Class Also Satisfies Rule 23(b)(3)

Under Rule 23(b)(3), the Court may certify a class when it finds that "questions of law or

fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." "Rule 23(b)(3) is a broad catch-all provision allowing the district

court to certify a class in its discretion when to do so would conserve the resources of the

judiciary and the parties by resolving the dispute via a class action rather than numerous

individual suits." *Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999).

#### 1.      Common issues predominate over individual ones

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 594. Issues

common to the Class must "predominate" over individual issues. *Prudential*, 148 F.3d at 313.

Because the analysis of the "commonality" requirement under Rule 23(a)(2) overlaps with the

"predominance" requirement of Rule 23(b)(3), courts often examine "commonality under Rule

23(a) together with predominance under Rule 23(b)(3)." *Abante Rooter & Plumbing, Inc. v.

Alarm.com Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017).

In the Third Circuit, the predominance inquiry focuses on "whether the defendant's

conduct was common as to all of the class members, and whether all of the class members were

harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

This criterion is normally satisfied when there is an essential common factual link between all

class members and the defendant for which the law provides a remedy. *See Lake v. First*

*Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994). The legal and factual questions identified above as "common" pursuant to Rule 23(a) will clearly predominate over any other questions that might arise. *See supra*, Section IV.A.2.

> 2.    Class treatment is superior to other methods of adjudication

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority element requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005). Factors to consider in evaluating the superiority requirement include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. All Class members' claims are based on the same operative facts and legal standards. It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 202 (E.D. Pa. 2014) ("If the cases filed by Plaintiffs against the NFL Parties were litigated individually, the parties could face decades of litigation and significant expense in many different state and federal courts, potentially resulting in conflicting rulings."). By contrast, individualized litigation would carry great uncertainty, risk, and cost. In addition, because this case involves potentially millions of Class members, who have all been injured in a relatively small amount, individual litigation is even more unlikely to be feasible, making class adjudication superior. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656,

18

661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). The litigation concerning this controversy is already well-developed in this forum and Plaintiffs are not aware of any other litigation proceeding elsewhere relating to these same claims. Accordingly, class treatment is superior to other available methods for the fair and efficient adjudication of this controversy.

   3.  The proposed Class satisfies the ascertainability requirement

The Third Circuit requires, in considering a class under Rule 23(b)(3), that (1) the class definition be defined "with reference to objective criteria," and (2) the class is capable of identification via a "reliable and administratively feasible mechanism." *Byrd*, 784 F.3d at 163. "[A]scertainability requires only that the court be able to identify class members at some stage of the proceeding." *Cline v. Sunoco, Inc.*, 159 F.4th 1171, 1194 (10th Cir. 2025).

Here, Google destroyed the encryption keys that would have permitted Plaintiffs to access the records maintained by Google about which users received the tracking cookies at issue in this case. Plaintiffs submitted a motion for sanctions regarding that spoliation, which Plaintiffs respectfully submit should be decided before the Court rules on this motion for class certification. Because the Third Circuit has instructed that "where [a defendant's] lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the [individuals] who make up that class should not bear the cost of the [defendant's] faulty record keeping," *Kelly v. RealPage Inc.*, 47 F.4th 202, 223 (3d Cir. 2022), Plaintiffs respectfully suggest that an appropriate sanction would be to allow Class members to certify their membership in the Class by affidavit,[10] coupled with an issue sanction that that Google's data logs would have

---

[10] Class members could attest, under penalty of perjury, that (1) they used the Apple Safari web browser; (2) with their default Safari browser settings enabled; (3) to visit a website from which Google's doubleclick.net cookies were deployed during the Class Period.

permitted Plaintiffs to match the sworn affidavits with Google's records had they been accessible. *See City Select Auto Sales Inc. v. BMW of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (holding "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet" the Third Circuit's ascertainability standard); *see also Kelly*, 47 F.4th at 223 ("[W]e will not allow defendants to defeat ascertainability with a strategic decision to house records across multiple sources or databases."); *Cline*, 159 F.4th at 1194 ("[G]aps in the records kept and produced by a defendant cannot be used to hinder class certification.").

Class member affidavits could also require the submission of Google IDs (which can be verified against Google's records to ensure that the Google ID is valid and existed during the Class Period) and/or Apple device serial or model numbers (which could be compared against publicly available information to ensure the device existed during the Class Period). This would provide an even greater level of assurance, combined with an adverse inference sanction, that each Class member affidavit in fact belongs to a member of the Class that is capable of identification by an administratively feasible mechanism. *See Kelly*, 47 F.4th at 223 ("[M]atching of records is precisely the sort of exercise we have found sufficiently administrable to satisfy ascertainability in other cases."); *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 480 (3d Cir. 2020) (ascertainability satisfied by cross-referencing defendant's voluminous records with affidavits from class members); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525–26 (6th Cir. 2015) (ascertainability requires only "reasonable accuracy" and class certification is proper even if that "process may require additional, *even substantial*, review of files").

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification.

20

Dated:  January 16, 2026

Respectfully submitted,

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian Russell Strange
12100 Wilshire Blvd., Suite 1550
Los Angeles, CA 90025
Tel: 310-207-5055
*brian@strangellp.com*

*Executive Committee Member*


**BARTIMUS, FRICKLETON,
ROBERTSON, RADER, P.C.**

*/s/ James P. Frickleton*
James P. Frickleton
4000 W. 114th Street, Suite 310
Leawood, KS 66211
Tel: 913-266-2300
*jimf@bflawfirm.com*

*Executive Committee Member*

**GRYGIEL LAW, LLC**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel (DE Bar ID #4944)
127 Coventry Place
Clinton, NY 13323
Tel: 407-505-9463
*Stephengrygiel122@gmail.com*

*Executive Committee Member*

21