**UNITED STATES DISTRICT COURT**

**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 12-MD-2358 (JDW) |
| This Document Relates to:<br><br>**All Actions** | |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ........................................................................................................ 3

I. THE MOTION MUST BE DENIED BECAUSE IT IS UNSUPPORTED BY ANY EVIDENCE TO PROVE THE REQUIREMENTS OF RULE 23........................................................................................................ 3

II. THE MOTION SHOULD BE DENIED BECAUSE MOST PEOPLE IN THE PROPOSED CLASSES LACK STANDING AND COMMONALITY. ........................................................................................................ 4

III. THE COURT CANNOT CERTIFY A CLASS THAT HAS STANDING BECAUSE PLAINTIFFS ARE NOT IN THAT CLASS AND LACK TYPICALITY. ........................................................................................................ 6

A. Plaintiffs Failed to Submit Any Declaration or Other Evidence to Prove They Are Members of the Proposed Class. .................................... 7

B. The Evidence Shows Plaintiffs Were Not Likely Affected and Lack Standing. ........................................................................................................ 7

C. Plaintiffs' Spoliation of Critical Evidence Precludes Them from Relying on Their Counsel's Say-So that They Are Members of the Putative Class........................................................................................................ 9

IV. THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES. ......................................... 10

A. Plaintiffs Failed to Submit Any Declaration or Other Evidence to Prove They Can Adequately Represent the Class.................................. 10

B. The Evidence Shows Plaintiffs Are Not Adequate Class Representatives. ........................................................................................................ 11

V. THE COURT CANNOT CERTIFY A DAMAGES CLASS UNDER RULE 23(B)(3) BECAUSE PLAINTIFFS HAVE NO EXPERT TO PROVE CLASSWIDE DAMAGES, INDIVIDUAL ISSUES PREDOMINATE, AND THE CLASS IS NOT ASCERTAINABLE. ............... 16

A. Plaintiffs Have No Evidence or Expert Showing that Proof of Damages Is Subject to Classwide Measurement. .................................. 17

B. Individual Issues Predominate in this Litigation. .................................. 18

C. The Proposed Damages Class is Not Ascertainable ............................... 21

VI. THE COURT CANNOT CERTIFY AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2) BECAUSE ANY CLAIM TO INJUNCTIVE RELIEF WAS RESOLVED LONG AGO. ....................................................... 22

**TABLE OF CONTENTS**
(continued)

**Page**


A. An Injunctive Relief Class Is Not Appropriate Because Google Completely Remediated the Issue in 2012 .......... 23

B. An Injunctive Relief Class Is Not Appropriate Because Google is Already Subject to an Ongoing Injunction that Covers These Claims. .......... 24

C. Plaintiffs' Allegations Are Too Speculative to Warrant Injunctive Relief. .......... 25

CONCLUSION .......... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Afzal v. BMW of N. Am., LLC*,
2020 WL 2786926 (D.N.J. May 29, 2020) ....................22

*Akaosugi v. Benihana Nat. Corp.*,
282 F.R.D. 241 (N.D. Cal. 2012) ....................16

*Arandell Corp. v. Xcel Energy Inc.*,
149 F.4th 883 (7th Cir. 2025) ....................4

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ....................11

*Bodner v. Oreck Direct, LLC*,
2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ....................14

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ....................19

*Buck v. Am. Gen. Life Ins. Co.*,
2021 WL 733809 (D.N.J. Feb, 25, 2021) ....................7

*Calhoun v. Google LLC*,
Case No. 4:20-CV-05146, 2025 WL 1637574 (N.D. Cal. June 9, 2025) ....................19

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) ....................21, 22

*Chamberlain v. Angel Salazar Design LLC*,
2026 U.S. Dist. LEXIS 26082 (S.D.N.Y. Feb. 9, 2026) ....................10

*Chudner v. Transunion Interactive, Inc.*,
2010 WL 5662966 (D. Del. Dec. 15, 2010) ....................17

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
867 F.3d 434 (3d Cir. 2017) ....................22

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
795 F.3d 380 (3d Cir. 2015) ....................18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................3, 7, 9, 10, 17

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ....................5

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
321 F.R.D. 193 (E.D. Pa. 2017)....................13

*In re Discovery Zone Sec. Litig.*,
169 F.R.D. 104 (N.D. Ill. 1996)....................14

*Dotson v. Portfolio Recovery Assocs., LLC*,
2009 WL 1559813 (E.D. Pa. June 3, 2009)....................15

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977)....................6

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) ....................24

*O'Gara ex rel. Est. of Portnick v. Countrywide Home Loans, Inc.*,
282 F.R.D. 81 (D. Del. 2012) ....................17

*Falcon v. Philips Elec. N. Am. Corp.*,
304 F. App'x 896 (2d Cir. 2008) ....................11, 16

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019)....................3

*Galicki v. New Jersey*,
2023 WL 2496503 (D.N.J. Mar. 13, 2023)....................22

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)....................6, 16

*In re Goldchip Funding Co.*,
61 F.R.D. 592 (M.D. Pa. 1974)....................14

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)....................20

*Griffith v. TikTok, Inc.*,
No. 5:23-cv-00964-SB-E, 2024 WL 4874556 (C.D. Cal. Oct. 22, 2024) ....................19

*Hamilton v. TBC Corp.*,
No. CV 17-1060 DMG, 2018 U.S. Dist. LEXIS 224998 (C.D. Cal. Oct. 12, 2018) ....................11, 12, 13

*Harnish v. Widener Univ. Sch. of Law*,
2015 WL 4064647 (D.N.J. July 1, 2015)....................17

*Harthman v. Witty*,
480 F.2d 337 (3d Cir. 1973)....................24

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
516 F. Supp. 2d 324 (D. Del. 2007)....................24

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023)....................4

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010)....................14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (E.D. Cal. 2012)....................12

*Jacobs v. Garcetti*,
2024 U.S. Dist. LEXIS 166705 (C.D. Cal. Sept. 4, 2024)....................10

*Johnson v. Evangelical Lutheran Church in Am.*,
2013 WL 1249151 (D. Minn. Mar. 26, 2013)....................18

*Kelly v. RealPage*,
47 F.4th 202 (3d Cir. 2022)....................22

*Kline v. Sec. Guards, Inc.*,
196 F.R.D. 261 (E.D. Pa. 2000)....................18

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009)....................4

*Kremers v. Coca-Cola Co.*,
712 F. Supp. 2d 759 (S.D. Ill. 2010)....................11

*Lab'y Corp. of Am. Holdings v. Davis*,
605 U.S. 327 (2025)....................4

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003)....................13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................12

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012)....................20, 21

*McNair v. Synapse Grp. Inc.*,
672 F.3d 213 (3d Cir. 2012)....................................................................................23, 25

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
2009 WL 331426 (D.N.J. Feb. 10, 2009) ..........................................................................15

*Mielo v. Steak 'N Shake Operations, Inc.*,
897 F.3d 467 (3d Cir. 2018)..........................................................................................4

*Mooradian v. FCA US, LLC*,
286 F. Supp. 3d 865 (N.D. Ohio 2017).............................................................................16

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015)......................................................................................4, 6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
259 F.3d 154 (3d Cir. 2001)....................................................................................17, 18

*Nghiem v. Dick's Sporting Goods, Inc.*,
318 F.R.D. 375 (C.D. Cal. 2016) .....................................................................................13

*PBA Loc. No. 38 v. Woodbridge Police Dep't*,
134 F.R.D. 96 (D.N.J. 1991)............................................................................................18

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) .......................................................................................24

*Roberts v. Aviles*
(D.N.J. Feb. 16, 2012)......................................................................................................10

*In re Safeguard Scientifics*,
216 F.R.D. 577 (E.D. Pa. 2003).......................................................................................13

*Schmidt v. United States DAV*,
218 F.R.D. 619 (E.D. Wis. 2003) .....................................................................................18

*Stoba v. Saveology.com, LLC*,
2016 WL 3356796 (S.D. Cal. June 3, 2016).....................................................................18

*Tomassini v. FCA US LLC*,
3:14-CV-1226, 2020 WL 1938834 (N.D.N.Y. April 22, 2020) ........................................16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...........................................................................................................4

*United States v. Google Inc.*,
No. 12-04177 SI, 2012 U.S. Dist. LEXIS 164401 (N.D. Cal. Nov. 16, 2012).................23, 24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................3

*Wexler v. AT&T Corp.*,
No. 15-CV-686 (FB)(PK), 2019 U.S. Dist. LEXIS 131869 (E.D.N.Y. Aug. 5, 2019) ....................13

**Other Authorities**

Fed. R. Civ. P. 23....................1, 3, 4, 17

Fed. R. Civ. P. 23(a) ....................1, 3, 4

Fed. R. Civ. P. 23(a)(3)....................6

Fed. R. Civ. P. 23(a)(4)....................10

Fed. R. Civ. P. 23(b) ....................3

Fed. R. Civ. P. 23(b)(2)....................1, 2, 21, 22, 23, 25

Fed. R. Civ. P. 23(b)(3)....................1, 2, 16, 17, 18, 20, 21

Fed. R. Civ. P. 37(e) ....................10

## INTRODUCTION

Plaintiffs' Motion for Class Certification ("Motion") fails every requirement of Rule 23. The Motion is not supported by a single declaration to show numerosity, commonality, typicality, or adequacy, other than the three declarations of Plaintiffs' Lead Counsel declaring that they will adequately represent the class. The named Plaintiffs themselves submit *no declaration* to show they are members of the class they seek to represent. Plaintiffs do not proffer any expert report to demonstrate a methodology for classwide proof of their claims—nor could they, since they never produced any expert report on those topics (or any topic) during discovery. Beyond the failure to submit *any evidence* to support the Motion, the facts show that certification would be wildly inappropriate. Plaintiffs fail the requirements of Rule 23(a) because there is no commonality, typicality, or adequacy of representation for the proposed classes. Plaintiffs likewise fail the requirements of a damages class under Rule 23(b)(3) because individual issues predominate over class issues, and the requirements of an injunctive relief class under Rule 23(b)(2) because there is no injunctive relief available that has not already been obtained. Plaintiffs further concede that the class is not ascertainable, admitting that they "likely cannot meet the requirements" for ascertainability "under Third Circuit class certification requirements." D.I. 302 at 2. For all these reasons, the Motion should be denied.

## BACKGROUND

This litigation was filed February 17, 2012 on behalf of a putative class of persons who allegedly received "tracking cookies" from Google when they used specific versions of the Safari web browser from late 2011 to February 2012 to browse websites displaying ads from Google's DoubleClick ad network. Plaintiffs claim these browsers were supposed to block all third-party advertising cookies by default, but they contained a feature that allowed the placement of such

cookies if the user submitted a form to the ad domain (the "form submission" method)—a feature allegedly used by Google to place cookies. D.I. 246 ¶¶ 1–2, 94, 191.

After *14 years* of litigation, and the *completion of all discovery* in the case, the evidence proves that Google never set the alleged "tracking" cookies using the form-submission method alleged in the Complaint. Google used this method only to place a *non*-tracking cookie (an intermediary cookie called the "Doritos Cookie") to enable a "+1" button on social ads for users who consented to this feature. *See* D.I. 196, Declaration of Lawrence You ("You Decl.") ¶ 33. Unbeknownst to the Google team that implemented the Doritos Cookie, Apple programmed another, unpublicized exception to the Safari cookie-blocking policy that caused these browsers to accept all cookies from the same domain, including Google's alleged tracking cookie (the "DoubleClick Ad Cookie") once the browser had a Doritos Cookie. *Id.* ¶43. Only a small fraction of Safari users were affected. "[T]he *vast majority* of Safari browsers *already had a DoubleClick Ad Cookie* before the event at issue in this action could have had any effect." *Id.* ¶ 56 (emphasis added). And the only result for the minority of users who received a DoubleClick Ad Cookie *because* they received a Doritos Cookie is that they *may* have seen targeted ads that were more relevant to their interests than the ads they would otherwise have seen. *Id.* ¶¶ 3.c; 64.

Even so, Plaintiffs move to certify two litigation classes that are vastly more broad than the classes alleged in the Complaint and not even limited to those affected by the issue alleged:

> Plaintiffs propose to certify the following Class under Rule 23(b)(2): All persons in the United States who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.
>
> Plaintiffs propose to certify the following Class under Rule 23(b)(3): All persons within the State of California who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.

D.I. 304 at 5.

For the reasons explained below, these classes cannot be certified.

## ARGUMENT

### I. THE MOTION MUST BE DENIED BECAUSE IT IS UNSUPPORTED BY ANY EVIDENCE TO PROVE THE REQUIREMENTS OF RULE 23.

In moving for class certification, Plaintiffs must "satisfy through evidentiary proof" that they are members of the proposed class and prove "sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)" to certify an injunctive relief or damages class. *Id.* "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. The Court cannot certify a class "based on 'allegations and initial evidence'" alone. *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 183–84 (3d Cir. 2019) (reversing order certifying class). The Court must deny a motion for class certification that fails to demonstrate "by a preponderance of the evidence" that the requirements have been met after a "rigorous analysis." *Id.*

Contrary to *Comcast*, *Wal-Mart*, and *Ferreras*, Plaintiffs' Motion relies *entirely* on the allegations of their Complaint. They submitted *no declaration and no evidence at all* with their Motion (other than the three declarations of Plaintiffs' Lead Counsel declaring their own accolades). Nor have they produced during discovery or proffered any expert opinion on the issues of numerosity, commonality, typicality, cohesiveness, or predominance. Under *Comcast*, *Wal-Mart*, and *Ferreras*, the Court must deny the motion on this basis alone.

## II. THE MOTION SHOULD BE DENIED BECAUSE *MOST* PEOPLE IN THE PROPOSED CLASSES LACK STANDING AND COMMONALITY.

As a separate ground for denying the Motion, the Court cannot certify the classes proposed by Plaintiffs because *most* people in those classes were not affected by the cookie placement events alleged. Most of the proposed class received the cookie at issue by other means or not at all. Such a class could never satisfy the commonality requirement of Rule 23(a).

"[A] properly formulated Rule 23 class should not raise standing issues." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 368 (3d Cir. 2015). To obtain relief, "every class member" must have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). A "class consisting of both injured and uninjured members does not meet that requirement." *Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327, 332 (2025) (J. Kavanaugh, dissenting to denial of petition for certiorari). At the class certification stage, "the possibility that some unnamed class members lack standing may prevent certification under Federal Rule of Civil Procedure 23" due to lack of commonality, typicality, or predominance of classwide issues. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155–57 (3d Cir. 2023) (reversing class certification order due to "the lack of evidence in the record indicating how many members of [the proposed] class are likely to have standing and how burdensome that showing will be for both the District Court and the parties"). And "mere promises to interpret a class definition in a limited fashion will not save an otherwise overly-broad class definition from failing to satisfy Rule 23." *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 490 n.22 (3d Cir. 2018).

For that reason, while a plaintiff need not prove that every class member has standing at the class certification stage, "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 898 (7th Cir. 2025) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571

F.3d 672, 677 (7th Cir. 2009)). "[T]here is a meaningful difference between a class with a few members who might not have suffered an injury traceable to the defendants and a class with potentially many more." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

The classes proposed by Plaintiffs' Motion cannot be certified because they include *all* those who used the Apple Safari browser in its default state to visit a website displaying Google ads, even though *most* of those people did not experience the issue alleged in the Complaint (the receipt of a DoubleClick Ad Cookie only because Google used the form-submission method to place a Doritos cookie). *Most* of those people in the proposed classes either already had a DoubleClick Ad Cookie prior to the events at issue, received the DoubleClick Ad Cookie through other means not at issue, or consented to receive the cookie in the manner alleged. In other words, those users received the DoubleClick Ad Cookie for reasons unrelated to the Doritos Cookie and have no claim or injury to assert in this case.

As the *uncontroverted* declaration of Lawrence You explains: "the *vast majority* of Safari browsers *already had a DoubleClick Ad Cookie* before the event at issue in this action could have had any effect." *See* D.I. 196, (You Decl.) ¶ 56 (emphasis added). In addition, interacting with some Google websites or clicking on an advertisement would also set a DoubleClick Ad Cookie during the class period regardless of the events at issue in the Complaint. *Id.* ¶ 29. And further, a class member might still have been unaffected if they had changed their default cookie-blocking settings to block all cookies or to accept all cookies (as users are often prompted to do by their favorite websites to improve functionality). *Id.* ¶ 56. Thus "*[t]he substantial majority of persons upon whose behalf this action was filed were not affected* by the placement of the cookies in the manner alleged by Plaintiffs." *Id.* ¶ 3.a (emphasis added).

That is precisely why the parties previously negotiated a settlement class definition that was limited to those who received cookies "placed by the means alleged in the Complaint" rather than by some other means. D.I. 219 at 6. That is also why Plaintiffs defined the putative class in the operative complaint as being limited to those who received a cookie by the means alleged in the complaint: "all persons in the United States of America who used the Apple Safari … web browsers and who visited a website from which doubleclick.net . . . cookies were deployed *as part of a scheme to circumvent the users' browsers' settings* to block such cookies and which *were thereby used to enable tracking* of the class members Internet communications *without consent*." D.I. 246 ¶ 191 (emphasis added).

Presumably because discovery has revealed that the two named Plaintiffs were probably *not affected* by the events alleged in the Complaint (*see* Section III.B. below), Plaintiffs have now expanded their definition of the class to include *mostly* unaffected people. But that is improper. The Court cannot certify such a class.

## III. THE COURT CANNOT CERTIFY A CLASS THAT HAS STANDING BECAUSE PLAINTIFFS ARE NOT IN THAT CLASS AND LACK TYPICALITY.

Even if the Court were to redefine the class to include only those individuals who could prove they have standing to seek relief, it would not include the two named Plaintiffs, which is fatal to Plaintiffs' Motion.

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Neale*, 794 F.3d at 368 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Pursuant to Rule 23(a)(3), class certification is only appropriate if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Plaintiffs cannot satisfy their burden here because: (A) they failed to submit any proof of their class membership with their Motion; (B) their deposition testimony and documents show they were most likely not affected by the issue alleged in the Complaint; and (C) they spoliated the key evidence that would have exposed the fact that they were not affected.

### A. Plaintiffs Failed to Submit Any Declaration or Other Evidence to Prove They Are Members of the Proposed Class.

As discussed above, the Court should deny the Motion because Plaintiffs failed to submit any "evidentiary proof" that they are members of the proposed class, let alone that they have standing to even assert the claims alleged. *Comcast*, 569 U.S. at 33; *see also Buck v. Am. Gen. Life Ins. Co.*, 2021 WL 733809, at *9 (D.N.J. Feb, 25, 2021) (denying class certification when "[p]laintiffs have failed to demonstrate by a preponderance of the evidence that [proposed class representative] is a member of the classes they seek to have certified and an adequate representative of those classes."). Plaintiffs submitted no declaration and no evidence of any kind with their Motion to prove their class membership, let alone evidence sufficient to meet their burden to prove they were affected by the alleged events at issue.

### B. The Evidence Shows Plaintiffs Were Not Likely Affected and Lack Standing.

Not only is there no evidence that Plaintiffs were affected by the issues alleged in the Complaint, Plaintiffs' own testimony and documents show they were likely not affected.

To be a member of a class of affected persons here, at a minimum, Plaintiffs must have: (1) used a specific version of the Safari browser during 2011-2012 that was supposed to block all third-party cookies by default but actually had a secret "one-in-all-in" exception to this policy; (2) never clicked on anything that changed their default cookie-blocking settings (such as following a website notification telling them how to enable third-party cookies for the website to function properly, or a prompt to allow all cookies); (3) browsed multiple websites that displayed Google

ads (otherwise there would be no browsing history to "track"); and (4) never clicked on a Google ad on any website (because then they would have received the cookie anyway). *See* D.I. 196 (You Decl.) at ¶¶ 43, 56-57, 60.

The data produced from Plaintiffs' two devices shows they fail these requirements. The browser software on the devices produced by Plaintiffs was not one of the affected browser software versions. Weibell Decl. ¶ 4; D.I. 196 (You Decl.) ¶ 43 ("One In, All In" Safari exception "was only implemented for certain versions of Safari (5.0 and above) and only certain versions of Apple's iPhone operating systems (iOS version 4.1.2 and above")). Neither device contained any browsing history from the relevant period showing Plaintiffs ever visited a website that displayed Google ads during the relevant period. Weibell Decl. ¶ 4. And both devices showed evidence that other users besides Plaintiffs used those devices to browse the internet and click on ads, meaning Plaintiffs cannot rely on their own say-so that they never took actions that would lead to cookie placement. *Id*. Nor could they have had any expectation that they would not receive cookies from Google because they allowed others to use their browser to take actions without their knowledge that would lead to cookie placement and tracking.

At deposition, Plaintiff Balmayne testified that he had no idea what version of the Safari browser he was using during the relevant time, whether he visited multiple websites that displayed Google ads, or whether he (or someone else using his device) clicked on a Google ad on any website. *See* Weibell Decl., Ex. A (Balmayne Tr.) at 58:25-59:4 ("Q. What version of the Apple Safari browser did you use in the years 2010, 2011, and 2012? A. Whatever was on my computer, I don't know. I mean, I don't. How would I know?"), 69:12-70:2 ("Q. … are you saying, you know, absolutely for a fact under oath that you visited those websites in 2011, and 2012? A. No, I have no way of knowing that for sure."), 74:8-22 ("Q. It's possible that [your wife] clicked on

things on the Internet that you didn't see her click on? [objection] THE WITNESS: Yes."), 80:6-82:15 ("If something was, you know, interesting I might have clicked on it just to see what it was."), 86:16-87:7 ("Q. … did you know which version of the Safari browser was on the computer? A. No."). When asked why he thinks he was one of the few Safari users who received a cookie by the means alleged in the Complaint, Plaintiff Balmayne's answer was honest and telling: "there is no way to know." *Id*. at 108:20-109:6.

Similarly, Plaintiff Bermudez conceded multiple times during his deposition that he has no way of knowing the facts necessary to show if he could have received a cookie by the means alleged in the Complaint. *See*, *e.g.*, Weibell Decl., Ex. B (Bermudez Tr.) at 103:11-18; 104:18-105:7 ("There's no way for me to know that."). He also testified that he did not know whether he clicked on an advertisement during 2011 and 2012. *Id*. at 61:10-23 ("Q: So it's possible; you just don't recall one way or the other? A: Yes."). In addition, Plaintiff Bermudez testified that his wife used his computer extensively before and after the litigation was filed (*id*. at 138:3-11) and that he does not know if she changed the browser settings or clicked on Google ads. *Id*. at 51:1-7 ("There's really no way of me knowing what it is she did or didn't do."). Indeed, the browsing history for his computer reflects that a user clicked on several advertisements, including for a Happy Meal, Hotwire, and United Airlines, which he could not explain. *Id*. at 132:18-24.

This evidence is fatal to Plaintiffs' claims and to their Motion to certify a class.

### C. Plaintiffs' Spoliation of Critical Evidence Precludes Them from Relying on Their Counsel's Say-So that They Are Members of the Putative Class.

The key evidence that would have clearly shown Plaintiffs were not affected by the issues alleged in the Complaint was contained on their electronic devices when this litigation was filed in 2012. Yet, Plaintiffs and their counsel took no steps to preserve and collect the data from their devices until 2024 – *twelve years after* the Complaint was filed and many years too late. Weibell

Decl., Ex. A at 89:25-90:12; Ex. B, at 138:14-18. Plaintiffs' spoliation of their electronic devices and the prejudice caused by it is set forth in more detail in Google's Motion for Rule 37(e) Sanctions. D.I. 298. As explained below (Section IV.B.3), Plaintiffs' spoliation is also an independent ground to deny their Motion because it renders them atypical and inadequate.

## IV. THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES.

The Court should deny certification because Plaintiffs have not and cannot demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs submit no evidence showing that they personally are adequate representatives, and they are subject to unique defenses that will preclude them from serving as adequate representatives.

### A. Plaintiffs Failed to Submit Any Declaration or Other Evidence to Prove They Can Adequately Represent the Class.

As discussed above, the Court should deny the Motion because Plaintiffs have failed to submit any "evidentiary proof" that they will adequately represent the class. *Comcast*, 569 U.S. at 33; *see also Roberts v. Aviles*, (D.N.J. Feb. 16, 2012) (finding that plaintiffs "have failed to assert facts establishing that certification of a class is appropriate or that they would function as adequate class representatives"); *Jacobs v. Garcetti*, 2024 U.S. Dist. LEXIS 166705, at *16 (C.D. Cal. Sept. 4, 2024) (it is "[p]laintiff's duty to prove his qualifications [as class representative] with evidence" and finding plaintiff inadequate when "[p]laintiff's briefing does not point to any evidence demonstrating that Plaintiff can adequately perform such duties."); *Chamberlain v. Angel Salazar Design LLC*, 2026 U.S. Dist. LEXIS 26082, at *8, 13–14 (S.D.N.Y. Feb. 9, 2026) (finding class representative inadequate due to lack of any "sworn declarations from [plaintiffs] ... addressing their adequacy to represent the purported class").

**B. The Evidence Shows Plaintiffs Are Not Adequate Class Representatives.**

Plaintiffs are both subject to unique defenses that make them inadequate class representatives. "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (vacating certification of class). There is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Falcon v. Philips Elec. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008) (affirming disqualification of plaintiff as class representative).

**1. Plaintiff Bermudez Is Not an Adequate Class Representative.**

Plaintiff Bermudez is subject to unique defenses that render him an inadequate class representative. As an initial matter, he admitted he never read the allegedly misleading privacy statements made by Google that form the basis of the only remaining privacy claims in this action. Weibell Decl., Ex. B at 18:2-13; Compl. ¶¶ 79–81. This admission precludes class certification. A plaintiff cannot represent a class asserting they were misled by Google's privacy statements when he never saw the statement. *See Hamilton v. TBC Corp.*, No. CV 17-1060 DMG (JEMx), 2018 U.S. Dist. LEXIS 224998, at *49-50 (C.D. Cal. Oct. 12, 2018) ("the proposed California class representative, would not be typical of the proposed California class, given that she never saw [the misleading statements]"); *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 769 (S.D. Ill. 2010) (class representative had no claim because "he never saw, and thus never was deceived by" allegedly misleading statement).

Another defense unique to Plaintiff Bermudez is that he allowed another person, his wife, to use his computer extensively, and he admits that he has no idea what she did while using his computer. Weibell Decl., Ex. B at 51:1–7 ("There's really no way of me knowing what it is she did or didn't do, yeah."). He would be subject to the unique defense that his alleged privacy

concerns associated with cookies are belied by his failure to take adequate steps to guard against cookies being set, e.g., maintaining control over the use of his computer. For example, if his wife clicked on an advertisement, a DoubleClick Ad Cookie would have been set independent of a Doritos Cookie. Indeed, there is evidence on his computer that someone using his computer clicked on advertisements for a Happy Meal, Hotwire, and United Airlines sometime around 2016 (earlier evidence was destroyed by his failure to preserve). He even conceded that *he* clicked on such an advertisement. *Id.* at 60:20–22 (Q: "have you ever clicked on an ad using your computer? A: Yes."). Similar use of the computer during the class period would have resulted in a first-party setting of a DoubleClick Ad Cookie.

Plaintiff Bermudez is also an inadequate class representative because he cannot demonstrate any injury in connection with his alleged Privacy Claims. He only recalls visiting two websites during the class period: craigslist.com and actorsaccess.com. *Id.* at 65:2–8. Even if that browsing history could be connected to his identity, the correlation of that data falls well-short of the highly offensive conduct necessary to support the Privacy Claim. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (E.D. Cal. 2012); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Indeed, Plaintiff Bermudez testified that there is nothing offensive about his data. *Id.* at 16:18–17:1 ("There's nothing about the data that I would classify in any way, shape or form either offensive or not offensive.").

**2. Plaintiff Balmayne Is Not an Adequate Class Representative.**

Plaintiff Balmayne, a late-comer to this litigation, is also an inadequate class representative for several reasons. First, he testified that he signed up for Google+ and, therefore, consented to

Google's social ads and the cookies at issue. Weibell Decl., Ex. A at 114:4-11, 116:1–4 (admitting he was a Google+ user: "I signed up for it pretty much right away"). Further, he testified that he actually *prefers* targeted advertising. *Id*. at 82:22–25. His consent to social ads subjects him to a unique defense rendering him an inadequate class representative. *In re Safeguard Scientifics,* 216 F.R.D. 577, 582–83 (E.D. Pa. 2003) ("unique defenses against Lead Plaintiff [] preclude him from serving as a class representative."); *see also Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 382–83 (C.D. Cal. 2016) (finding a class representative inadequate because whether plaintiff "opted in and out of [defendant's] mobile alerts program in good faith and if he suffered any invasion of privacy whatsoever" would be a "major focus of this litigation" and present "defenses unique" to plaintiff).

Second, Plaintiff Balmayne has a conflict with the class due to his relationship with Plaintiffs' counsel. He is the dog walker for Plaintiffs' counsel, Brianna Strange (Weibell Decl., Ex. A. at 8:9–13), and she solicited him to be a plaintiff. *Id*. at 32:2–14. When asked how the solicitation occurred, he said Ms. Strange "asked if I had a computer that I used during this time period during 2011, 2012." *Id*. Plaintiff Balmayne's relationship with Ms. Strange creates a conflict between him and the class. A "friendship" or "business relationship between the class representative and counsel may make a plaintiff more interested in maximizing counsel's recovery in fees than presenting the class' case vigorously." *Wexler v. AT&T Corp.*, No. 15-CV-686 (FB)(PK), 2019 U.S. Dist. LEXIS 131869, at *9 (E.D.N.Y. Aug. 5, 2019). Accordingly, courts typically reject such class representatives. *See, e.g.*, *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 208 (E.D. Pa. 2017) (rejecting class representative who was friends with class counsel); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) ("The long-standing personal friendship of [class counsel] and [class rep] casts doubt on [class rep's] ability

to place the interests of the class above that of class counsel."); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 156 (S.D.N.Y. 2010) (proposed class representative was not acceptable because he was class counsel's neighbor and managed an investment for class counsel); *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996) (class counsel's stockbroker could not serve as class representative).

Third, Plaintiff Balmayne knows very little about this litigation. Prior to being solicited by Plaintiffs' counsel in 2024, *12 years after the litigation was filed*, he was unaware the litigation even existed. Weibell Decl., Ex. A at 32:15–18. While class representatives are allowed to rely on counsel, the role requires more involvement than exists here. *See*, *e.g.*, *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007). As noted above, he does not even know what version of the Safari browser he was using during the class period, which subjects him to a unique defense. Weibell Decl., Ex. A at 58:19–59:10. Nor did he read Google's privacy policy because he was not "going to sit and read a gigantic user agreement or whatever-have-you." *Id*. at 87:1–7; 94:6–8 ("that's just too much to read"). He also does not know the class of people he seeks to represent. *Id*. at 50:5–21. He stumbled when he speculated (incorrectly) about the class he seeks to represent: "I mean, it would be everybody. . . . anybody with Safari that uses Safari as their browser is going to be affected by it or was affected by it or maybe in the future. I don't know." *Id*.

Plaintiff Balmayne's only qualification for being added as a named plaintiff appears to be that he had a computer in 2011 and that, for whatever reason, he was willing to subject himself to discovery to help out Plaintiffs' counsel who employed him. *Id*. at 32:2–14. Courts require more of class representatives than blind acquiescence to Plaintiffs' counsel decisions, particularly when the proposed class representative is an employee of counsel. *Bodner*, 2007 WL 1223777, at *3; *In*

*re Goldchip Funding Co.*, 61 F.R.D. 592, 594 (M.D. Pa. 1974) ("The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives."); *see also Dotson v. Portfolio Recovery Assocs., LLC*, 2009 WL 1559813, at *5 (E.D. Pa. June 3, 2009) (disqualifying class representative when "[p]laintiff's deposition testimony demonstrates a lack of involvement or understanding of the claims asserted"); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 331426, at *9 (D.N.J. Feb. 10, 2009) (same when class representative exhibited "substantial confusion and ignorance about basic facts of the case and his claims").

Fourth, Plaintiff Balmayne does not know whether he was harmed by the alleged conduct. Weibell Decl., Ex. A at 22:24–25 ("Well, there's no way to know that for sure, is there?"); 23:23–25 ("Q: And how did that cause you injury? A: Well, that's still to be seen. I mean, I don't know."); 24:1–4 ("Q: you don't know whether it's caused you injury or not; is that correct? A: That's correct."). Indeed, if he has to see advertisements, he would prefer to see targeted advertisements. *Id*. at 82:22–25. His concessions that he might not have been harmed subject him to unique defenses making him an inadequate class representative.

Fifth, Plaintiff Balmayne also allowed his wife to use his computer and, just like Plaintiff Bermudez, he has no way of knowing what his wife did while using the computer. *Id*. at 74:18–22 ("Q: It's possible that she clicked on things on the Internet that you didn't see her click on? A: Yes."). He did not expect Safari to block all cookies and even testified he has no problem with companies placing cookies on the browser if the user interacts with the website. *Id*. at 60:12–16. He understands that if his wife interacted with websites or clicked on advertisements, a cookie would be placed in a first-party context. In fact, he admitted he may have done so himself. *Id*. at 80:9–84:19. These issues render him an inadequate class representative.

#### 3. Plaintiffs' Spoliation Makes Them Inadequate Class Representatives.

Plaintiffs are inadequate class representatives due to their spoliation of the data on their electronic devices. *See supra* at III.C; D.I. 298. Spoliation of evidence warrants disqualification as class representative because the plaintiff "will likely have much more difficulty showing [the alleged conduct] than would someone who could produce the product for examination." *Falcon*, 304 F. App'x at 897; *see also Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012) (plaintiff was inadequate lead plaintiff due to spoliation); *Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865 (N.D. Ohio 2017) (disqualifying lead plaintiff for spoliation); *Tomassini v. FCA US LLC*, 3:14-CV-1226, 2020 WL 1938834 (N.D.N.Y. April 22, 2020) (same).

In *Falcon* the court held the plaintiff "could not serve as an adequate class representative" due to the spoliation of the television set because of the individualized difficulty she would have "both with respect to (1) proving a design defect and (2) defending against a charge of spoliation of evidence" at trial. *Id*. Indeed, the Second Circuit held that "the disposal of the television set, standing alone, was sufficient to support the District Court's exercise of discretion." *Id*.

As in *Falcon*, Plaintiffs here should be disqualified because of their spoliation of the only evidence that could prove whether they were class members or not.

## V. THE COURT CANNOT CERTIFY A DAMAGES CLASS UNDER RULE 23(B)(3) BECAUSE PLAINTIFFS HAVE NO EXPERT TO PROVE CLASSWIDE DAMAGES, INDIVIDUAL ISSUES PREDOMINATE, AND THE CLASS IS NOT ASCERTAINABLE.

Plaintiffs cannot certify a damages class under Rule 23(b)(3) because they fail to present any evidence to show (A) damages are capable of measurement on a classwide basis; (B) common issues predominate over individual issues; or (C) the proposed class is ascertainable.

### A. Plaintiffs Have No Evidence or Expert Showing that Proof of Damages Is Subject to Classwide Measurement.

A class is not properly certified under Rule 23(b)(3) if the plaintiffs' proposed model "falls far short of establishing that damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34.

Courts in this circuit routinely deny certification under Rule 23(b)(3) for the failure to show claims can be proven by common classwide proof. *See*, *e.g.*, *O'Gara ex rel. Est. of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90, n.17 (D. Del. 2012) ("Plaintiff has failed to present any evidence regarding how damages can be proven on a class-wide basis" as "Plaintiff failed to produce an expert on damages or put forth a formula for determining damages on a class-wide basis."); *Chudner v. Transunion Interactive, Inc.*, 2010 WL 5662966, at *1 n. 1 (D. Del. Dec. 15, 2010) (to pass the "rigorous analysis examination" of Rule 23, a plaintiff "must do more than state a formula that could be used to calculate class-wide damages"); *Harnish v. Widener Univ. Sch. of Law*, 2015 WL 4064647, at *8 (D.N.J. July 1, 2015).

Here, Plaintiffs paper over that requirement. They argue that common evidence is satisfied because "there is an essential common factual link between all class members and the defendant for which the law provides a remedy." D.I. 304 at 17. But courts reject this kind of conclusory statement. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 259 F.3d 154, 187-88 (3d Cir. 2001) (rejecting plaintiffs' efforts to "to gloss over" the common evidence requirement by suggesting "their expert could calculate the amount of damages each class member sustained" without a "model formula.").

That problem is exacerbated here because Plaintiffs have no damages expert, nor any expert at all who submitted an expert report during discovery. Without an expert, they have no way to prove any element of their claim—let alone *emotional* damages arising from an alleged

invasion of their privacy. *See Stoba v. Saveology.com, LLC*, 2016 WL 3356796, at *3 (S.D. Cal. June 3, 2016) ("fundamental fairness requires that if Plaintiffs intended to rely on experts for their class certification motion, they should have disclosed those experts."); *Johnson v. Evangelical Lutheran Church in Am.*, 2013 WL 1249151, at *6 (D. Minn. Mar. 26, 2013) (failure to submit expert opinion with motion for class certification bars reliance on any expert testimony). Plaintiffs' failure to submit an expert report is also particularly egregious here because they requested (and received) additional time to submit expert reports. D.I. 278.

**B. Individual Issues Predominate in this Litigation.**

Separately, the Court cannot certify a Rule 23(b)(3) class because Plaintiffs failed to prove with evidence that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

"If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 399 (3d Cir. 2015) (quoting *Newton*, 259 F.3d at 172). The essential elements of a privacy claim are fundamentally personal and require individualized proof. "[I]nquiries regarding reasonable expectations of privacy are highly fact-specific in nature, and are inherently linked to a myriad of subtleties regarding individual behavior." *PBA Loc. No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 104 (D.N.J. 1991) (denying class certification under Rule 23(b)(3) on the ground that common questions of law and fact could not predominate in a case alleging intrusion upon seclusion and other privacy-related claims).[1]

[1] *See also Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261, 268 (E.D. Pa. 2000) ("[I]ndividual factors impact an objective expectation of privacy. . . . [W]e would need to determine for each class member whether he or she had exhibited an expectation of privacy; and, in addition, whether this expectation was objectively reasonable. These factors are likely to be markedly different for members of the putative class."); *Schmidt v. United States DAV*, 218 F.R.D. 619, 638 (E.D. Wis. 2003) (denying class certification for lack of common questions predominating, reasoning that the

For this reason, class certification is routinely denied in privacy class actions when plaintiffs fail to prove with evidence and expert testimony that common issues will predominate over individual issues of privacy expectations, notice, and consent. *See*, *e.g.*, *Calhoun v. Google LLC*, Case No. 4:20-CV-05146, 2025 WL 1637574, at *5 (N.D. Cal. June 9, 2025) (denying class certification where privacy class action involved "individualized inquiries as to each user's subjective understanding of [Google's] data collection practices."); *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2024 WL 4874556, at *1-2 (C.D. Cal. Oct. 22, 2024) (denying class certification in data privacy action where plaintiffs' reliance on "a deeply flawed analysis by Dr. Shafiq" "failed to show that the named plaintiffs were typical of the classes or that common issues would predominate"); *Brown v. Google*, *LLC*, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022) (denying class certification in privacy class action where "individual issues of implied consent are likely to predominate over any common issues").

Here, each class member will have to individually prove they (1) used specific versions of the Safari browser during 2011-2012; (2) never clicked on anything that changed their default cookie-blocking settings (such as following a website notification telling them how to enable third-party cookies for the website to function properly, or a prompt to block all cookies); (3) browsed multiple websites that displayed Google ads (otherwise there would be no browsing history to "track"); (4) never clicked on a Google ad on any website (because then they would have received the cookie anyway); (5) never let anyone else use their device who may have clicked on ads or

---

individual questions of fact are whether the defendant actually interfered with the individual class members' privacy and whether any of the individual class members suffered an adverse effect as a result of the interference) (citing George B. Trubow, Privacy Law and Practice P 2.09 (1991) ("Because of the individualized nature of Privacy Act violations and the adverse effects and damages that must be demonstrated in order to recover under the Act . . . class actions have usually been viewed as unsuitable.")).

changed browser settings; and (6) saw and relied on the allegedly misleading statement made by Google about how it would not track their browsing history if they were using the relevant versions of the Safari browser. *See supra* at III.B; Compl. ¶¶ 79–81.

Class members will also be required to individually prove they suffered *emotional* damages from the alleged invasion of their privacy (since no actual damages were alleged). They will not be able to do so on a classwide basis, if they can do so at all. As Judge Robinson stated back in 2017 in this case, and as repeated by the Third Circuit: "this has always been a case in which the facts preclude direct individual compensation." *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 324 n.7 (3d Cir. 2019).

Such "individual inquiries are incompatible with Rule 23(b)(3)'s predominance requirement." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012). In *Marcus*, a case about defective tires, the Third Circuit explained that "*any* tire can 'go flat' for myriad reasons. Even 'defective' tires can go flat for reasons completely unrelated to their defects." *Id.* Those individual issues defeated class certification.

Likewise, here, Safari users could have received a DoubleClick Ad Cookie for "myriad reasons" completely unrelated to the Doritos Cookie. Indeed, the vast majority of Safari users already had a DoubleClick Ad Cookie before the Doritos Cookie was ever implemented. D.I. 196 (You Decl.) at ¶ 3.a. Many other Safari users would have received a DoubleClick Ad Cookie during the class period by clicking on an advertisement or interacting with a website. *Id.* Determining whether a plaintiff received a DoubleClick Ad Cookie by the means alleged in the Complaint would have required a contemporaneous forensic analysis during the class period of each user's individual browser version and settings as well as the web-browsing activity. Such a class could never satisfy the predominance requirement.

The issues common to the class are not in dispute, such as how Google placed cookies on Safari browsers. The issues that *are in dispute* all center on individual issues: whether putative class members expressly or impliedly consented to receiving the cookies, whether they had an actual and objectively reasonable expectation that Google would not place cookies on their browsers, whether they received a cookie as a result of the alleged conduct (or via some other means), and whether the class members were harmed in any way. As in *Marcus*, such "individual inquiries are incompatible with Rule 23(b)(3)'s predominance requirement."

### C. The Proposed Damages Class is Not Ascertainable

To be certified under Rule 23(b)(3), a class must be "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593–94. "A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). Rather, a plaintiff must demonstrate ascertainability "by a preponderance of the evidence." *Id*.

Here, there is no evidence of ascertainability; a fact conceded by Plaintiffs in their separately filed Motion for Sanctions: "Plaintiffs are likely now limited to a Rule 23(b)(2) class and likely cannot meet the requirements for establishing a Rule 23(b)(3) class under Third Circuit class certification requirements." D.I. 302 at 2. This concession alone suffices to deny class certification. *Marcus*, 687 F.3d at 593; *Carrera*, 727 F.3d at 306. Plaintiffs blame Google for their inability to show ascertainability and ask the Court to excuse them from this class action requirement via an adverse inference sanction. D.I. 304 at 19–20. As explained in Google's concurrently submitted Opposition to Plaintiffs' Motion for Sanctions, this argument is baseless because, among other reasons, the data allegedly lost would not have enabled Plaintiffs to ascertain the class, and Plaintiffs cite no authority for the proposition that the Court may set aside the ascertainability requirement as a discovery sanction.

Plaintiffs' request to rely on class members' affidavits (which Plaintiffs themselves did not even submit with their Motion) to satisfy the ascertainability requirement should be rejected. "Affidavits from potential class members, standing alone, without 'records to identify class members or a method to weed out unreliable affidavits,' is not a reliable means of determining class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (citation omitted); *Carrera*, 727 F.3d at 311–12 (vacating an order certifying a consumer class after plaintiffs proposed using affidavits from customers to self-certify).[2] Such affidavits "cannot be corroborated through objective sources," and, therefore, would "require the type of individualized fact-finding that defeats ascertainability." *McMahon*, 2025 WL 1604501, at *3 (citing *Kelly v. RealPage*, 47 F.4th 202, 223–24 (3d Cir. 2022)). Plaintiffs' submission of affidavits is entirely speculative and not a reliable or feasible method to ascertain a class.

## VI. THE COURT CANNOT CERTIFY AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2) BECAUSE ANY CLAIM TO INJUNCTIVE RELIEF WAS RESOLVED LONG AGO.

The Federal Trade Commission ("FTC") and numerous state attorneys general already obtained all the injunctive relief that would ever be appropriate relating to the events alleged in the Complaint more than a decade ago. Google remediated the situation by expiring all cookies from Safari browsers, regardless of whether a user had been affected by those events or not. And a federal district court already resolved whether any further injunctive relief was warranted to protect class members. In short, an injunctive relief class is not appropriate.

---

[2] Applying these decisions, district courts repeatedly find non-ascertainable classes when the only evidence submitted are affidavits. *See*, *e.g.*, *Afzal v. BMW of N. Am., LLC*, 2020 WL 2786926, at *10 (D.N.J. May 29, 2020) (plaintiffs "have not satisfied the ascertainability requirement" because they "have not demonstrated that a reliable and administratively feasible means exists by which they could ascertain … [the class] … beyond bare affidavits."); *Galicki v. New Jersey*, 2023 WL 2496503, at *6 (D.N.J. Mar. 13, 2023) (denying class certification when "[p]laintiffs will likely be entirely dependent on affidavits to identify all class members.").

Rule 23(b)(2) only allows for certification of an injunctive relief class if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As Plaintiffs acknowledge, injunctive relief is only available if Plaintiffs can show that they are "likely to suffer future injury" absent an injunction. D.I. 304 at 14. Courts do not issue injunctive relief casually simply because a harm existed in the past or could theoretically occur in the future. Rather, "[t]he threat of injury must be 'sufficiently real and immediate[.]'" *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).

Plaintiffs cannot satisfy this standard because: (A) Google already remediated the issue by deleting all of the DoubleClick Ad Cookies during the class period; (B) Google is already subject to an ongoing injunction that covers the alleged conduct; and (C) Plaintiffs cannot demonstrate they are likely to suffer future injury absent an injunction.

### A. An Injunctive Relief Class Is Not Appropriate Because Google Completely Remediated the Issue in 2012.

In 2012, the FTC investigated the events at issue in the Complaint and reached a settlement with Google, followed by a consent order that included complete injunctive relief. *United States v. Google Inc.*, No. 12-04177 SI, 2012 U.S. Dist. LEXIS 164401 (N.D. Cal. Nov. 16, 2012). Pursuant to that consent order, Google was required to delete all Google cookies from Safari browsers and confirm that this had been done. An *amicus curiae*, Consumer Watchdog, challenged the sufficiency of this injunction, arguing that it was "inadequate" for the same reasons Plaintiffs here seek further injunctive relief. But the court rejected that challenge, holding that "the injunction is fair, adequate and reasonable" because it "need only address the specific harm from the Safari cookies," and "the injunction specifically requires Google to maintain systems to expire Safari cookies and creates a compliance reporting mechanism." *Id.* at *12. Because Google has already remediated the issue, no injunctive relief class is necessary.

**B. An Injunctive Relief Class Is Not Appropriate Because Google is Already Subject to an Ongoing Injunction that Covers These Claims.**

Further injunctive relief is not appropriate because, as noted by the district court that considered Consumer Watchdog's objection to the FTC settlement in 2012, Google is already subject to another federal injunction that covers the claims at issue. In denying the challenge from Consumer Watchdog, the court reasoned that Google was already subject to the "Google Buzz" consent order "that prohibited Google from future misrepresentations regarding: (1) its collection and use of private information and its customers' control over that information; and (2) its membership and compliance with privacy or security programs." *Id.* at *8. The Buzz consent order does not expire until 2031. Thus, any further injunction "is unnecessary and duplicative" because "[t]he Buzz consent order already prohibits Google future misrepresentations regarding its customers' private information." *Id.* at *10.

Courts routinely reject injunctions that are duplicative of existing injunctions. *Harthman v. Witty*, 480 F.2d 337, 339–40 (3d Cir. 1973) ("a second injunction was unnecessary and it would have been the duty of the court to refuse to grant it" where a first, permanent injunction of broad terms was in place); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324 (D. Del. 2007) (injunction unnecessary where federal government had already obtained injunction); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 475–76 (6th Cir. 2004) (district court committed reversible error in concluding irreparable harm had been shown, and awarding injunctive relief, after a consent decree had already been obtained by the federal government).

Because Google is bound to comply with the preexisting injunction, "[t]here is no point in ordering an action that has already taken place." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1112 (10th Cir. 2010). If further injunctive relief was not warranted back in 2012 when the issue was hot, it certainly would not be warranted now—*14 years later*.

### C. Plaintiffs' Allegations Are Too Speculative to Warrant Injunctive Relief.

Even if there were no preexisting injunction, Plaintiffs' concerns about future injury are unfounded and too conjectural to justify maintaining a Rule 23(b)(2) injunctive relief class.

A "conjectural future injury … does not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm." *McNair,* 672 F.3d at 225. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 225–26.

Plaintiffs' request to certify a class for injunctive relief fails because it rests entirely on the conclusory assertion that: "while Google has claimed to have ended its surreptitious bypassing of the default Safari browser settings, due to the secretive nature of Google's alleged conduct . . . and Google's well-known history of evading and violating users' online privacy, Plaintiffs have no way of knowing when or if Google has re-started its circumvention of their Safari default settings." D.I. 304 at 14–15. *Plaintiffs' Motion is devoid of any evidence supporting their request for certification of an injunctive relief class.*

As explained above, Google already remediated the issue by deleting all cookies regardless of the manner in which those cookies were set. *See supra* at VI. Moreover, the alleged conduct at issue occurred in 2011-2012 in connection with a product (Google+) that no longer exists. Plaintiffs fail to demonstrate any "real and immediate," non-conjectural need for an injunctive relief class when: (1) the alleged harm occurred over a decade ago; (2) the issue was remediated over a decade ago; and (3) the product at issue no longer exists.

## CONCLUSION

For the foregoing reasons, Plaintiffs Motion for Class Certification should be denied.

Dated: February 27, 2026

**MAYER BROWN LLP**

By: */s/ Anthony J Weibell*________

Anthony J Weibell
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Attorney for Defendant Google LLC*