**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

MAYER | BROWN

Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
United States of America

T: +1 650 331 2000

mayerbrown.com

**Anthony J Weibell**
Partner
T: +1 650 331 2030
AWeibell@mayerbrown.com

August 8, 2025

VIA EMAIL

The Honorable Joshua D. Wolson
United States District Court for the Eastern District of Pennsylvania
12613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
WolsonCourtesyCopy@paed.uscourts.gov[1]

***In re Google Inc. Cookie Placement Consumer Privacy Litigation*,**
**Case No. 12-MD-2358**

Your Honor:

Pursuant to the Court's order of July 31, 2025, the parties hereby jointly submit the information requested by the Court, including the attached exhibits, as well as additional information and exhibits as explained in the parties' respective positions detailed below.

Please note that this submission and the exhibits thereto contain information designated by Google LLC as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY under the operative protective order in this case.

Very truly yours,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Lead Counsel for Google LLC

cc: Lead Counsel for Plaintiffs

[1] Per the Court's order, this submission is being made by email to WolsonCourtesyCopy@paed.uscourts.gov

## CONTENTS

GOOGLE'S POSITION ....................................................................................................3

PLAINTIFFS' RESPONSE TO GOOGLE'S POSITION ..................................................9

## EXHIBIT LIST

(Listed in Chronological Order of Creation)

1. 01/21/2020 Declaration of Lawrence You
2. 02/05/2025 Google Production of Information about Data Logs
3. 03/07/2025 Plaintiffs' Amended Notice of Rule 30(b)(6) Deposition to Google
4. 05/08/2025 Deposition Transcript of B. Deprey 30(b)(6)
5. 05/13/2025 Google's List of Logs and Data Field Descriptions
6. 05/29/2025 Deposition Transcript of E. Ochotta 30(b)(6)
7. 06/25/2025 Google's Sample of Log Data
8. 07/11/2025 Declaration of B. Kornacki about Extracting Data from Logs
9. 07/ 17/2025 Email from Elspeth Hansen w/ clarification about Kornacki Decl.
10. 07/21/2025 Plaintiffs' Letter to Google Requesting More Information
11. 07/29/2025 Plaintiffs' 2nd Rule 30(b)(6) Notice to Google
12. 08/08/2025 Google's List of Data Logs Preserved for This Case

## GOOGLE'S POSITION

Google already produced everything Plaintiffs now seek related to the preserved data logs that is both nonprivileged and within the scope of Rule 26(b). Plaintiffs seek a description of all logs, and all fields within those logs, that Google preserved for this case, and the same information about logs and fields that were *not* preserved for this case. But Plaintiffs would *only* be entitled to that information to the extent it is "nonprivileged," "relevant to any party's claim or defense," and also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because Google already produced the discoverable information, Plaintiffs' remaining requests for information fall outside the scope of Google's discovery obligations and should be denied.

### A Description of the Logs at Issue

Google has been compelled to preserve an almost incomprehensible amount of data since the litigation was filed more than *13* years ago. The scope and specifics of what Google's legal counsel has chosen to preserve for litigation is a privileged matter that need not be disclosed during discovery, as explained in more detail below. But as described in the declaration from Google on this topic (Exhibit 8), the data "includes *more than a* [redacted] *pebibytes of data* contained in many different logs," where *just one pebibyte "is equal to 1,125,899,906,842,624 bytes*." (emphasis added). The data is very old, and relates to the 2011-2012 time period. "Because the ways in which data is created and accessed have changed significantly during this time period, the data at issue in this case was difficult to access and work with compared to data that Google typically accesses in the regular course of its business today." Ex. 8 ¶ 4.

Plaintiffs' ongoing confusion over the logs at issue may result from the term "log" being used to refer to different things in different contexts. The information produced by Google on February 5, 2025, prior to the extensive review of the log data subsequently performed by Google engineers, identified that "Google has preserved approximately 2,431 data logs" for this case. Ex. 2. That number referred to *2,431* directories (similar to a folder on a computer) that contained log data. In total, there were *420,000,000* files in these directories. Although the number of files is vast, they are associated with a relatively small number of unique log sources and log names, often written with a prefix identifying a source for the log, followed by a log name (e.g., [redacted]). In the production made by Google on May 13, 2025, Google listed potentially relevant data fields found in the logs, along with the name of the logs in which each field was found. *See* Exhibit 2. That is why the log names listed in the May 13, 2025 production contain only 24 unique log names, yet they represent nearly the same number of logs as disclosed in the February 5, 2025 production, less two logs in which no relevant, responsive information was found. The total number of data fields in all logs is unknown but more than *650*.

### Google Already Produced the Information Plaintiffs Seek that is Discoverable

Google already produced a list of the log names, data fields, and a description of those data fields to the extent they are relevant to this case. That information was produced on May 13, 2025. *See* Ex. 5. On June 25, 2025, in response to Plaintiffs' complaint that some of the descriptions were not clear, Google produced a data sample showing sample values for the data fields requested by Plaintiffs so that there would be absolute clarity on what each data field contains. *See* Ex. 7. To the extent Plaintiffs have identified any data log listed in the May 13 production for which they

would like a sample that was not included in the June 25 production, Google has offered to provide those additional samples. But Plaintiffs refused this offer, saying that they no longer want sample data and that the only thing they want is a detailed description of every data field that Google has preserved, as well as data Google has not preserved.

In addition to the information described in the preceding paragraph, Google provided still more information to help Plaintiffs understand what is in the log data. The following is a list of what Google has done in a good faith effort—an effort that goes beyond Google's discovery obligations—to provide Plaintiffs with information about the data logs:

- On February 5, 2025, Google provided Plaintiffs with full records from the two primary kinds of logs with data that could be relevant to the case. Ex. 2.

- Google reviewed voluminous data logs to conduct a reasonable search for potentially relevant data fields. *See* Ex. 8, B. Kornacki (Google) Decl., ¶¶ 3-5.

- On May 13, 2025, Google prepared descriptions of each potentially relevant field and produced them to Plaintiffs. *See* Ex. 5.

- On May 13, 2025, Google also produced the names of the log or logs where each potentially relevant field appeared. *Id.*

- On May 16, 2025, Plaintiffs identified a list of data fields that were of interest to them. Despite Plaintiffs' inability to articulate why they needed any underlying data from these fields, Google undertook the laborious task of collecting sample data for these fields.

- On June 25, 2025, Google produced sample data values for each of the fields of interest. Google went above and beyond by including multiple samples from most of the logs listed in the May 13, 2025 production to show whether the data may appear differently in different logs. Ex. 7.

- In April and May 2025, Google produced three witnesses for deposition who were questioned about Google's data logs: Lawrence You, Benigne Deprey, and Emil Ochotta. Each witness confirmed that Google could not use the data logs to identify individuals who received cookies through the alleged conduct. Google's counsel repeatedly offered to discuss any follow up questions, including anything that Mr. Ochotta (the designated witness on the topic of the data logs) could not answer on the spot. Plaintiffs did not take Google up on its offers.

- Google has repeatedly offered to confer with Plaintiffs about any questions they might have after reviewing all of the foregoing information. It also asked if Plaintiffs' expert is seeking specific information in the logs, which might allow Google to conduct a targeted search for that information. Plaintiffs responded only with grossly overbroad demands.

With the above efforts, Google has more than satisfied its obligations under Rule 26 to produce discovery within the scope of that rule.

**Rule 26 Does Not Permit Plaintiffs to Discover Information About Irrelevant Data Fields**

Plaintiffs make sweeping and unduly burdensome demands for detailed information about irrelevant data. Their requests for extensive information regarding *all fields in a wide swath of logs*, or even for all fields in preserved logs, is grossly overbroad because it is not limited in any way to the scope of Rule 26(b). It is not enough that Plaintiffs hope that something useful will be there. Google has no obligation under Rule 26 to provide information to demonstrate *why* data is not relevant to the case. *E.g.*, *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *1-2 (D. Del. June 12, 2020) (denying motion to compel where moving party failed to show relevance, where relevance arguments were based on speculation). The burden is on Plaintiffs to articulate what data is relevant to the case, and only then does the burden shift to Google to show lack of relevance or search for and produce that relevant data if it is reasonably accessible and can be found after a reasonable search. *Id.*; *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Cooperative*, 2020 WL 3498161, at *2 (E.D. Pa. June 29, 2020) (burden on party moving to compel to show relevant documents were withheld or party did not conduct a reasonable search); Fed. R. Civ. Proc. 26(d)(2)(B) (party need not produce ESI from sources not reasonably accessible due to undue burden or cost). Google has already done this and produced descriptions of the relevant data fields, along with samples of those fields.

Even if the additional information sought by Plaintiffs were somehow relevant to the case, attempting to produce it would be tremendously burdensome, on top of the more than 700 engineering hours spent on this case since remand and [redacted] on data preservation alone. For example, drafting even hundreds of additional field descriptions for a subset of logs would likely require engineers to spend weeks analyzing the available information, including reviewing data to attempt to confirm descriptions or determine whether the field existed and was implemented at the relevant time. Although Plaintiffs suggest that Google's prior burdensome review of logs means that much of the work has been done, this is far from true. Researching and drafting a detailed description of hundreds of data fields requires a great deal more time and labor than simply looking at data and excluding data fields that are not relevant to the case. And even if engineers reviewed this information in the past and determined its irrelevance to this case, they cannot be expected to remember the details of their review performed months ago.

In their response, Plaintiffs suggest that their "alternative" six questions are modest and reasonable. Not so. The six questions demand a "complete description" of *all* data logs (both preserved and *un*preserved) and *all* data fields within those logs if the log contains any "PII," a term Plaintiffs define expansively. Ex. 10. These demands would require a highly burdensome review just to identify any such logs, much less catalog every single one of their fields.

**Rule 26 Does Not Permit Plaintiffs to Discover Information About Google's Privileged Preservation Decisions**

Plaintiffs are not entitled to discover information about what data Google's attorneys chose to preserve and what not to preserve. *Sight Scis., Inc. v. Ivantis, Inc.*, 2023 WL 7458354, *3 (D. Del. July 3, 2023) ("Discovery regarding document preservation efforts in anticipation of litigation is barred under ¶ 1(d)(iii) of the court's Default Standard for Discovery of ESI and Rule

26(b)(3)(A) and (B).”). Indeed, the stipulated ESI order in this case, reflecting the Default Standard for discovery in the District of Delaware, expressly confirms that “*[a]ctivities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery* under Fed. R. Civ. P. 26(b)(3)(A) and (B).” Dkt. 258 at § 2(c) (emphasis added). Google therefore has no obligation to respond to Plaintiffs' demand for a detailed description of all data logs that have been or have not been preserved for this litigation. Such intrusion into privileged decision-making is plainly prohibited. Moreover, it is unfounded and improper “discovery on discovery.” *E.g.*, *Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, 2018 WL 806341, at *2 (E.D. Pa. Feb. 9, 2018) (“Federal courts ‘will not compel a party to disclose its discovery process as a result of the opponent's mere suspicion that the party's process has not produced adequate documents.’”) (internal citations omitted); *see also Br. Telecomms. PLC v. IAC/Interactivecorp.*, 2020 WL 1043974, at *7 (D. Del. Mar. 4, 2020) (granting protective order with respect to 30(b)(6) deposition topics regarding efforts to locate and produce documents).

While Plaintiffs argue they only seek to know “whether any logs containing relevant information are no longer available or were not preserved,” the answer is Google preserved all relevant information in its control at the time it anticipated litigation of this matter to the extent any such information could be identified after a reasonable search. Any data outside this scope is irrelevant if it does not exist today. Any further discovery regarding what Google did and did not preserve goes to the heart of Google's preservation efforts and is privileged.

**Plaintiffs Should Not Be Given a Second Bite at the Deposition Apple**

In violation of Rule 30(a)(2)(A)(ii)'s prohibition on noticing second depositions of the same deponent, Plaintiffs served a second Rule 30(b)(6) notice on July 29, 2025 without first seeking leave of court to do so. Contrary to Plaintiffs' argument that they are not trying to depose “an already-deposed witness,” the prohibition on second depositions applies to *corporations* as well as individuals. *Sight Scis., Inc.*, 2023 WL 7458354, at *4 (granting protective order against second 30(b)(6) deposition); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-35 (E.D. Pa. Nov. 25, 2008) (“The policy against permitting a second deposition of an already-deposed deponent is equally applicable to depositions of individuals and organizations.”). Should Plaintiffs belatedly seek leave, leave should be denied.

Critically, Plaintiffs have already deposed Google on the very topic it for which they seek a second deposition of Google: “The data logs and/or records maintained by Google related to the setting, removal, and/or revenue related to cookies set on Safari browsers during the Class Period ….” Ex. 3 (Mar. 7, 2025 30(b)(6) notice) at 7. While Plaintiffs selectively quote from the deposition to suggest Google's witness was unprepared to address every possible question on an extraordinarily broad and vague topic, a 30(b)(6) deposition is not a memory test. *Pres. Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965163, at *2 (C.D. Cal. Oct. 19, 2020) (“It is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything.”). The full transcript reflects that the witness spent many hours over many days preparing and reviewing information, including examples of data fields. *E.g.*, Ex. 6 at 16-19; *see also* Ex. 3 at 5-7 (additional broad topics). Even so, Google has *repeatedly* offered to provide a follow-up answer to any question its witness could not answer. Plaintiffs have not taken Google up on this offer.

Plaintiffs chose to take the deposition of Google in May 2025. Plaintiffs had over a decade to retain an expert and prepare for that deposition. Plaintiffs in fact retained an expert in January 2025, months before the deposition. For some reason known only to them, Plaintiffs chose to retain a new expert a month *after* it took Google's deposition. Plaintiffs' seeming displeasure with their first expert and decision to retain a second expert late in the case is not Google's fault. Nor can Google be forced to prepare for a second deposition because Plaintiffs hired a new expert who wants to ask Google additional questions. Not after more than 13 years of litigation. *See State Farm*, 254 F.R.D. at 235-236 (rejecting request for second 30(b)(6) deposition where party gave no good reason for "conduct[ing] depositions seriatim, thereby shifting costs to the opposing side"). The burden would be great here, as Plaintiffs demand a witness on topics that could be interpreted to call for information about many logs and fields at Google, as well extensive detail on deletion of data.

**Plaintiffs' Demands Are Futile and Could Result in a Privacy Violation Far Greater than What They Have Alleged in the Complaint**

The tremendous burden of complying with Plaintiffs' current demands could never be proportional to the needs of the case because it will not change the outcome. Even if Plaintiffs could find a way to de-anonymize Google's log data to connect the browsing history of hundreds of millions of users with their personal identities, as they seem to wish to do, the log data does not contain information sufficient to show whether a browser received a cookie at issue by the means alleged in the Complaint, or some other means not at issue. As stated in the Lawrence You Declaration: "it is not possible for Google, Plaintiffs, or members of the class of persons represented by Plaintiffs to identify whether a browser received a cookie by the means alleged by Plaintiffs or by some other means not at issue." Dkt. 196 ¶3(b); *see also id.* ¶¶48-60.

All three of Google's witnesses have confirmed this fact. As one witness testified:

> Q. What I'm saying is, did Google then have the technological capacity to match up account information with particular browsers so that we can know by name or name given which Google users got the DoubleClick cookie as a result of the setting of the Doritos cookie?
>
> [objection]
>
> **A. Short answer is no, Google didn't have the technical means to answer that question.**
>
> Q. You're saying it was impossible?
>
> **A. It was impossible.**

*See* Ex. 4, B. Deprey Dep. Tr. at 117:2-14.

Plaintiffs have no argument to the contrary. There is no justification to force Google to waste vast resources simply to *further show* that the logs cannot reveal whether a browser received a cookie by the means alleged in the complaint instead of some other manner. Nor is there any

justification for forcing Google to waste vast resources to attempt to unmask users when Plaintiffs still will be unable to show whether those users actually are class members.

Moreover, and perhaps more shocking, Plaintiffs are trying to force Google to find a way to de-anonymize Google's log data to connect the internet browsing history of *hundreds of millions* of users—nearly all of whom are *not* members of the putative class—with their *personal* identities. Google specifically designed its systems to anonymize this information in such a way as to prevent even Google from being able to unmask the identities of these users. *See, e.g.*, Ex.4, B. Deprey Dep. Tr. at 117:2-14 (quoted above); Ex. 6, E. Ochotta Dep. Tr. at 275:17-20 ("Google went to great lengths to ensure that the … DoubleClick systems were separate and not connectable to the Gaia or Google ID systems"); Ex. 1, Decl. of Lawrence You (Dkt. 196), ¶¶ 33, 37, 48-60 (explaining that the system was designed to protect privacy and keep personal identifiers from being linked to DoubleClick server data). Plaintiffs' argument that "the Protective Order in this action is intended to address the very harms Google is concerned about" completely misses the picture. *No one* should try to de-anonymize this vast collection of old internet browsing history, not even Google.

If Plaintiffs could find a way to succeed in this endeavor—and they have provided no evidence that they can—and create a way to de-anonymize the browsing data of *hundreds of millions* of users, the existence of that capability alone would be a violation of privacy far greater than what Plaintiffs alleged in the Complaint (the *anonymous* collection of data from at most an estimated *8 million* users). The Court should not allow such an endeavor to continue. As one recent article[2] written by a prominent plaintiff-side privacy class action attorney described it:

> *This is more than a discovery dispute. It's a mass privacy violation dressed up as routine litigation. And its implications are staggering. If courts accept that any plaintiff can freeze millions of uninvolved users' data, where does it end? … Could Google [be required to] save a log of every American's searches over a single business dispute?*

Ultimately, even if you could de-anonymize the data at issue, the class is not ascertainable because, as stated above, there is no way to definitely determine whether a cookie was placed by the means alleged in the Complaint rather than by one of several other means not at issue. Google has said this from the beginning. As the Court noted in rejecting class certification back in July 2023, Plaintiffs already conceded that issue: "The parties do not argue that this settlement class is ascertainable. Indeed, they concede that it is not." Dkt. 219 at 15.

Plaintiffs are now on a fishing expedition, hoping they can develop a theory of ascertainability that has thus far eluded them. But Plaintiffs' mere hope that they may stumble into a theory of ascertainability if Google continues to provide ever more information cannot justify the enormous violation of privacy that would result or the burden imposed on Google. Rule 26 does not allow it. Nor should this Court.

---

[2] Jay Edelson, *The New York Times wants your private CHATGPT history - even the parts you've deleted*, The Hill (2025), https://thehill.com/opinion/technology/5383530-chatgpt-users-privacy-collateral-damage/ (last visited Aug 6, 2025).

## PLAINTIFFS' RESPONSE TO GOOGLE'S POSITION

### The Court Did Not Request Letter Briefs

The Court did not request briefing during the July 30, 2025 teleconference. Nor did the Court's subsequent July 31, 2025 order. (*See* ECF No. 288 (requesting only the joint submission of five identified document categories).) On August 6, 2025, Plaintiffs informed Google that they were not planning to submit an unsolicited letter brief. However, because Google intends to submit a lengthy (more than five pages single spaced) letter brief on these issues, Plaintiffs, having to reserve all rights, submit the following response to several of the issues raised by Google's unsolicited briefing.[3]

Plaintiffs understood from our last conference with the Court, and from the Court's Order following that conference, that the Court was asking only for certain relevant documents informing the "ascertainability discovery" dispute and, after reviewing those documents, the Court would determine what, if any, further briefing, argument, or testimony might be required to resolve what the Court correctly identified as the crucial issue of ascertainability discovery.

### Plaintiffs' July 21, 2025 Letter Requested Only Data Field Information *or* Confirmation Regarding Six Discrete Questions

Google's briefing attempts to paint Plaintiffs' July 21, 2025 request for data information as relating to only irrelevant information, imposing a significant and undue burden, and seeking privileged litigation strategy information. In reality, Plaintiffs have made a limited request for information and have scrupulously tried to avoid unduly burdening Google or seeking privileged information.

A. Plaintiffs Seek Only Relevant Data Field Information

Plaintiffs' July 21, 2025 letter does *not* seek the production of any data or data logs. Rather, Plaintiffs seek clear and complete descriptions of the data logs and data fields that are relevant to this litigation. Moreover, Plaintiffs' requests for information on the data logs and data fields is further limited to those data related to "Google's 'Two Cookie Spaces,' the 'GAIA' space and the 'DoubleClick' space," as described by Google's deponent, Mr. You. (Ex. 10 at 2.)

Plaintiffs have attempted to obtain this information previously, without success. For example, Google's Rule 30(b)(6) deponent on data issues was not able to answer several questions about the data when asked at deposition, despite being a designated corporate deponent on this specific issue and the mandate of Rule 30(b)(6) that the designated deponent be prepared to answer questions on the specified topics. As an example:

> Q. Is that [previously discussed data field] the only data log fields related to Doritos [cookies] you're aware of?

---

[3] Google has also included documents that were not requested by the Court nor necessary for the resolution of this issue, namely Exhibits 1 (Declaration of Lawrence You), 3 (March 2025 deposition notice), and 4 (B. Deprey deposition transcript).

[objection]

**A. That's correct.**

Q. Did you attempt to verify before this deposition whether there were any other data fields related to Doritos cookie available?

[objection]

**A. No.**

Q. What was the purpose of the [redacted], what is it intended to indicate to Google?

[objection]

**A. I actually don't know.**

*See* Ex. 6, E. Ochotta Dep. Tr. at 53:16–54:9.

Q. What is the purpose of this data value, what purpose to Google does this serve?

[objection]

**A. I don't know in this particular case.**

*See* Ex. 6, E. Ochotta Dep. Tr. at 144:14–20.

Q. Let's turn to the next data field, it is [redacted]; do you see that?

**A. I do.**

Q. What was your understanding of what this data field represents?

**A. [redacted] I don't actually know what forwarding that would be, there is a lot so maybe we'll leave that. There are a lot of internal products [that] are involved over time, one would forward from an older version to a newer version of a product. So beyond that I'm not sure I know what that is.**

Q. Not including conversations you had with your lawyer did you ask anyone at Google in preparation for this deposition what this data field means?

**A. No.**

. . . .

Q. Do you know if the values associated with this data field is a list of IP addresses or is it something else?

**A. I don't know.**

. . . .

Q. Other than your lawyers is there anyone at Google who you know that [would] know what the meaning of this data field is?

[objection]

**A. I don't know.**

Q. If you were trying to determine what this data field was, without speaking to your lawyers what would you do within the company?

[objection]

**A. That's hypothetical, not sure.**

Q. Are there any documents within the company you're aware of that would help you to decipher what this data field is used for?

[objection]

**A. Not that I'm aware of.**

*See* Ex. 6, E. Ochotta Dep. Tr. at 192:9–195:17.

B. Google Ignores Plaintiffs' Alternative Request in the July 21, 2025 Letter

Plaintiffs' July 21, 2025 letter requested ***either*** a description of the relevant data fields and data logs or, in the alternative, "a written representation answering" six specific questions about the data logs. Those six questions are all related to whether the data logs contain personally-identifying information ("PII") and/or other identified types of information. (*See* Ex. 10 at 3.) Google has never responded to Plaintiffs' alternative proposal, which was specifically intended to address any purported burden arguments Google might proffer. Nor does Google's current submission to the Court address why these six questions are not answerable.

Further, Google's statement represents that it "reviewed voluminous data logs to conduct a reasonable search for potentially relevant data fields" and "prepared descriptions of each potentially relevant field . . . ." Having already reviewed each of the data logs and data fields for relevance and responsiveness, Google can surely use that same knowledge to provide a written response to Plaintiffs' six queries about whether any of the data logs or data fields contain PII information or other, limited and specified information without substantial additional burden.

C. Plaintiffs do not seek information about Google's "privileged preservation decisions"

Because Plaintiffs' July 21, 2025 letter asks whether any unpreserved data logs contained PII or other specific information, Google accuses Plaintiffs of seeking to discover information about "what data Google's attorneys chose to preserve and what not to preserve." This simply mischaracterizes Plaintiffs' request.

Plaintiffs' request simply asks whether any logs containing relevant information are no longer available or were not preserved. Plaintiffs do not seek to delve into the decision making of Google's counsel.

**Plaintiffs' 30(b)(6) Deposition Notice is not Seeking to Re-Depose Any Witness**

On July 28, 2025, Plaintiffs issued a Rule 30(b)(6) deposition notice, which was narrowly tailored to the same limited questions that are presented to Google in Plaintiffs' July 21, 2025 letter. (*See* Ex. 11.) Plaintiffs issued this deposition notice for two reasons. First, as shown above, Google's first corporate representative (Mr. Ochotta) was not prepared to discuss certain data-related questions and had not adequately prepared for his deposition. Second, despite Google's statement that "Google has *repeatedly* offered to provide a follow-up answer to any question its [30(b)(6)] witness [on data questions] could not answer," Plaintiffs had not received (and have not received) a response to the six questions posed by the July 21, 2025 letter. Plaintiffs are not seeking a wide-ranging second deposition of an already-deposed witness; rather, Plaintiffs are seeking answers to the six questions they have posed about what data does and does not exist relevant to the ascertainability issue that is central to this case.

**Google's Purported Privacy Objections Misstate Plaintiffs' Request**

Google theorizes that providing Plaintiffs with information about what data fields exist within its data logs would somehow amount to "trying to force Google to find a way to de-anonymize Google's log data . . . ." Plaintiffs are not even asking Google to produce the log data itself (just the data field names/descriptions or, in response to Plaintiffs' six questions, confirmation of what information is and is not present within the data fields). By responding to Plaintiffs' queries, Google will provide Plaintiffs with absolutely no information that would violate a user's privacy and, if Google's privacy concern does have some basis, the Protective Order in this action is intended to address the very harms Google is concerned about.

Google's privacy arguments are simply a preview of its opposition to Plaintiffs' not-yet-filed motion for class certification and have no bearing on the discovery request at issue now.

**Google's Undue Burden Objections Fail**

Finally, Google objects generally on the basis of expense and undue burden. But every single factor in the proportionality calculus under Fed. R. Civ. P. 26(b)(1) supports Plaintiffs' modest request. Plaintiffs should not be required to take Google's "say so" about relevance in this matter in which experts on highly sophisticated technology can, and do, differ. Plaintiffs' expert is prepared to testify before the Court if the Court deems it appropriate.