STRANGE

October 29, 2025

**VIA EMAIL**

The Honorable Joshua D. Wolson
United States District Court for the Eastern District of Pennsylvania
12613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
Chambers_of_Judge_Wolson@paed.uscourts.gov

**Re: In re Google Inc. Cookie Placement Consumer Privacy Litig.**
**Case No. 12-MD-2358 (JDW)**

Your Honor:

Pursuant to the Court's order of October 16, 2025, the parties hereby jointly submit their respective statements regarding disputed issues, including the attached exhibits.

Please note that this submission and exhibits thereto contain information designated by Google LLC as CONFIDENTIAL and HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY under the operative protective order in this case.

Very truly yours,

**STRANGE LLP**

*/s/ Brian R. Strange*
Brian R. Strange, Esq.

**GRYGIEL LAW, LLC**

*/s/ Stephen G. Grygiel*
Stephen G. Grygiel, Esq.

**BARTIMUS, FRICKLETON, and ROBERTSON, P.C.**

*/s/ Jim P. Frickleton*
Jim P. Frickleton, Esq.

cc: Counsel for Google LLC

**CONTENTS**

Plaintiffs' Position . . . . . . . . . 3

Google's Position . . . . . . . . . 11

**PLAINTIFFS' EXHIBIT LIST**

A. October 21, 2025 Affidavit of Professor Zubair Shafiq in Support of Ascertainability Discovery

B. GOOG-COOKIE-00014854–00014864 [HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY]

C. GOOG-COOKIE-00000013 [CONFIDENTIAL]

D. GOOG-COOKIE-00000223–00000232 [CONFIDENTIAL]

E. October 15, 2025 Discovery Conference Transcript

F. Excerpts from April 22, 2025 Deposition Transcript of L. You [CONFIDENTIAL]

G. Excerpts from May 29, 2025 Deposition Transcript of E. Ochotta 30(b)(6)

H. Excerpts from May 8, 2025 Deposition Transcript of B. Deprey 30(b)(6)

I. October 24, 2025 Google LLC's Response Letter

J. October 28, 2025 Email from T. Weibell

K. Supplemental Declaration of Professor Zubair Shafiq

L. March 8, 2012 Preservation Notice to Google's Counsel

M. Plaintiffs' Proposed Discovery to Google

**GOOGLE'S EXHIBIT LIST**

1. October 24, 2025 Google LLC's Response Letter

2. Email Thread

## PLAINTIFFS' POSITION

Pursuant to the Court's Order dated October 16, 2025, Plaintiffs provided Google with an Affidavit, under oath, of Dr. Zubair Shafiq, a professor of Computer Science at University of California, Davis, attached hereto as Exhibit A. Professor Shafiq specializes in Internet privacy, security, and safety with a focus on data collection, sharing, and usage in the online advertising ecosystem; he has been awarded various honors for his work on the exact issues present in this case. *See* **Ex. A**, Affidavit of Professor Zubair Shafiq, ¶¶ 4–10. In his affidavit, Professor Shafiq detailed in precise terms what data is needed to identify class members and his proposed methods to do so, confirming the relevancy of the requested information. Professor Shafiq also described in detail that, contrary to Google's assertions that it lacks the information required to permit matching of GAIA data with Biscotti data to identify class members, that such a process is in fact possible and Google has admitted as much in other cases. Exhibit A lays out those examples. *See* **Ex. A**, ¶¶ 39–50.

In response, Google did not address this issue or its prior statements in other cases, but instead states, **for the first time** in this 12-year litigation, that Google is not able to locate the critical GAIA information in its files for the class period of June 1, 2011 through February 15, 2012. While Plaintiffs submitted a sworn expert statement that such information was logged by Google during the relevant time period, Google sent a three-paragraph letter from its lawyers without any supporting evidence in return. Moreover, when Plaintiffs attempted to meet and confer on this issue, Google's counsel did not answer the specific questions posed by Plaintiffs, but merely repeated its statement with no supporting evidence.

As more fully set forth below, Google should be ordered to respond to discovery informing Plaintiffs and the Court of the methodology of the search it conducted, who conducted it, when it was conducted, and the exact status of the requested information. Plaintiffs' proposed discovery (attached as **Ex. O**) consists of three straightforward interrogatories, designed to obtain the limited information Plaintiffs require about Google's statement regarding GAIA logs.

1. <u>GAIA logs are directly relevant to the ascertainability analysis</u>

GAIA logs are logs that contain information about cookies containing Google Account identification information (such as GAIA IDs), stored by Google-owned domains: google.com and doubleclick.net. *See* **Ex. A**, Affidavit of Professor Zubair Shafiq, ¶ 20(a) & fn.12. Most relevant here, Google stored GAIA IDs (in an encrypted format) in a Doritos cookie (named "drt" or "DSID") on doubleclick.net. *Id.* ¶ 20(a). Such GAIA cookies and Doritos cookies, together with Biscotti cookies, allowed Google to circumvent class members' browser cookie blocking function and to track a particular Google account holder and his/her browser across different non-Google websites where Google's DoubleClick advertising technology was present, *id.* ¶ 21.[1]

---

[1] Google has claimed it circumvented class members' privacy blockers unintentionally. Numerous Google-produced documents in this case contradict this claim. *See, e.g.*, **Ex. B**, GOOG-COOKIE-00014856, Sean Harvey email dated 09/19/2011 ("Whenever companies have tried to use non-cookie mechanisms . . . to get around cookie controls, bad things have happened. . . . Please, do not go any further with this idea. Or, if you do, get a lot of really good lawyers and please don't involve me."); *see also* **Ex. C**, GOOG-COOKIE-00000013 (Google employee Eider Oliveira states the issue of Safari rejecting third-party cookies by default "is really bad for

While the central issue here is the existence of GAIA logs themselves, it should be noted that Google's claim that it cannot link GAIA and Biscotti information is contradicted by Professor Shafiq's knowledge and experience in this and other cases. In *In re Google RTB Consumer Privacy Litigation*, Professor Shafiq prepared a report that noted Google maintains that it can "map the GAIA ID to the Biscotti ID."[2] The report also states that Google "routinely and uniformly stores" the IDs of "Google account holders as well as the corresponding encrypted Biscotti IDs in various data logs. . . . These logs can be programmatically processed to construct a precise event-level timestamped map" that can be used to link different ID types.[3] For example, Google is capable of mapping "the GAIA ID to the Biscotti ID for any Google account holder at any given point in time" from the aforementioned logs.[4]

In *In re Google RTB Consumer Privacy Litigation*, the declaration of Dr. Glenn Bernston was at issue in Shafiq Report II. *See* Shafiq Report II (Exhibit 20 to Shafiq Affidavit [Ex. A]) at 40, ¶ 97. In his declaration, Dr. Bernston asserted that Google did not link the Biscotti ID and GAIA ID as a standard business practice, and that Google had internal systems, controls, and policies to prevent ad data from being linked to individual Google accounts. *Id.* at 40–41, ¶¶ 97, 100. In his opposing report, Professor Shafiq noted that this assertion contradicted Dr. Bernston's own statements from his October 30, 2023 deposition, in which he was deposed in his individual capacity and as Google's corporate representative. *See id.* at 41–43, ¶¶ 102(a) ("Google can link GAIA and Biscotti[.]"), 102(b) ("Google can link GAIA and Biscotti[.]"), 102(e) ("Google can link GAIA (the Google Account ID) and Biscotti (Google User ID)"), 102(h) ("Google creates and maintains a [redacted] that it uses 'to be able to connect events across logs.'").

In addition, according to Google's own expert in *Brown v. Google*, No. 4:20-cv-03664 (N.D. Cal.), Konstantinos Psounis, Google simultaneously stores the GAIA ID and Biscotti ID in the browser's cookie jar.[5] Konstantinos Psounis stated that "[c]onversions are measured through mapping a GAIA ID to a Biscotti ID."[6] In this context, a "conversion" refers to an action a user takes after interacting with an ad, such as making a purchase (i.e., how Google tracks user behavior following ad interaction). By acknowledging that conversions are tracked through the mapping of a GAIA ID to a Biscotti ID, Google's own expert recognized that Google has methods and systems in place to link the GAIA ID to the Biscotti ID. Other examples of such statements are set forth in

---

us" and asks fellow Google employee Jennifer Lin, "Have you found some workaround?"). The Court of Appeals in this very case found Google's conduct as alleged was "[c]haracterized by deceit and disregard." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150 (3d Cir. 2015); *see also* **Ex. D**, GOOG-COOKIE-00000225 ("Since the Gaia cookie is not available in the ad block (DoubleClick domain), we decided to introduce a new cookie to identify Google users on the GDN [Google Display Network]. This new cookie, called Doritos, will be created on the DoubleClick domain and used to target social ads to logged in Google users."). While this issue goes to the merits, it also highlights the extent of Google's alleged conduct in this case.

[2] Shafiq Report I (Exhibit 19 to Shafiq Affidavit [**Ex. A**]) at 44, ¶ 97(d).

[3] *Id.* at 44, ¶¶ 97(d), (f).

[4] *Id.* at 44, ¶ 97(f)(ii).

[5] *See* Psounis Rep. (Exhibit 18 to the Shafiq Affidavit [**Ex. A**]) at 21, ¶¶ 39–40.

[6] *Id.* at 43, ¶ 88.

Exhibit A, which also includes a discussion of the Declaration of Lawrence You, submitted by Google in this case. *See* Ex. A, Affidavit of Professor Shafiq, at 13–14, ¶¶ 39–42.

GAIA logs are particularly relevant in this case because identifying which Google logs contain "both GAIA and Biscotti identifiers," will likely allow Plaintiffs' expert "to directly identify affected class members who received a DoubleClick cookie through the means alleged in the Complaint." **Ex. A**, Affidavit of Professor Zubair Shafiq, ¶ 53.

2. Google has repeatedly indicated that GAIA logs exist

Google has repeatedly indicated—in this litigation and elsewhere—that GAIA logs exist, and Google has not previously stated or indicated that such logs were not preserved for this litigation. Instead, Google has stated that GAIA logs do not also contain advertising-related information, and it has therefore insisted that GAIA logs cannot be connected with non-GAIA logs.

For example, at the October 15, 2025 conference with the Court, Google's counsel stated the following: "If you are talking about logs that contain the GAIA ID right, those are the logs that Google didn't want to intermix with the others. In other words, there is data that's received on the Google side that knows who I am, right, because it knows I'm a Google user, it has my e-mail address in those logs and it knows who I am, and it doesn't want to mix the information with the stuff on the other side, the advertising stuff. That's what's anonymous. That's what is at issue in this case." **Ex. E**, Transcript of Oct. 15, 2025 Conference at 39:9–18; *see also id.* at 43:5–9 ("If what [Plaintiffs] are talking about is when you go to Gmail to access your Gmail, you know, that's browser-generated information that Google receives there and your GAIA ID, but it has nothing to do with the advertising systems.").

Additionally, Google's witnesses in this case have likewise confirmed that Google maintained GAIA logs during the relevant time period in this case. *See* **Ex. F**, You Deposition Excerpts at 182:12–15 ("[Google] would record information in their logs related to activities on Google properties, but those were independent of activities logged by servers on different non-Google properties . . . activity on a site that Google owned and operated would have been handled separately from information on . . . DoubleClick.net despite both being owned and operated by Google."); *id.* at 193:1–3 (referencing Google had [redacted]); **Ex. G**, Ochotta Deposition Excerpts at 325:12–20 ("I think I maybe looked at some [data fields] that mentioned Gaia ID, those were on the different part of the ad system on the Google.com search ads. So you had Google.com search ads or other Google Ads not related to DoubleClick or DoubleClick advertising, then you would be able to connect those together."); *id.* at 325:22–326:3 ("[Q.] Would you only be able to connect Gaia ID's to items in the Google ad logs? . . . A. Yes[.]"); **Ex. H**, Deprey Deposition Excerpts at 9:11–17 (describing what kind of PII was stored "in the Google account logs with the GAIA . . . cookie," and stating "[i]t captures some of the information that may be identifiable."). Moreover, an expert report in another Google-related privacy action noted that "Google maintains that it can 'map the GAIA ID to the Biscotti ID'" and that Google "routinely and uniformly stores" the IDs of "Google account holders as well as the corresponding encrypted Biscotti IDs in various data logs . . . ." **Ex. A**, Shafiq Affidavit, ¶ 46 & Ex. 19.

3. Google now claims no GAIA logs are available from the relevant time period

For the first time in this lengthy litigation, in its October 24, 2025 response to Plaintiffs' requests for discrete data information, Google stated, without any further explanation or elaboration, that "Google has conducted a reasonable search and found no preserved data logs from the relevant time period in 2011 and 2012 with GAIA identifiers." **Ex. I**, Google's October 24, 2025 Response Letter. This directly contradicts Google's many previous statements, like those described above. In a meet and confer email with Google's counsel, asking for specific information about how Google determined it had no GAIA logs, Google's counsel merely stated that "[redacted]" **Ex. J**, 10/28/2025 email from T. Weibell.

In response to the lack of evidence provided by Google in the meet and confer email (and in its 10/24/2025 response letter), Plaintiffs' expert Professor Shafiq has stated in a supplemental declaration (**Ex. K**) that such GAIA logs did in fact exist during the 2011–2012 time period. "Based on my expertise, education, training, and experience, Google maintained logs containing GAIA identifiers during the relevant time period (June 1, 2011 through February 15, 2012)." **Ex. K**, Shafiq Suppl. Decl. ¶ 3. Professor Shafiq further noted that, based on Google's business model, it would as a matter of practice maintain logs with GAIA identifiers. *Id.*

In addition, in sworn testimony by Google employee Benigne Deprey, taken in this case on May 8, 2025, he testified:

> Q: Can you tell me what you mean by the retention of logs?
> A: As related to, you know, what type of logs have been preserved as part of the remediation and what was being held for the purpose of the case in the litigation.
> Q: And can you describe those logs that were retained for me?
> A: I don't have a list of specific logs, but ***everything that we had, that Google had back then, have been preserved***.
> Q: Can you tell me approximately how many such logs there are?
> A: I do not know the number of files. There are lots and lots and lots of files. It's, like, terabytes of data, but ***everything that was available back then have been preserved***.

**Ex. H**, Deprey Depo. at 24:25–25:17 (emphasis added). Thus, the only admissible evidence so far is that such GAIA logs did exist during the relevant time period and that Google stated it had preserved everything it had. Google should be required to answer the written discovery on this critical issue as set forth below.

Plaintiffs can, at least at present, identify three potential reasons for Google's statement that it can find "no preserved data logs from the relevant time period in 2011 and 2012 with GAIA identifiers," (*id.*):

(1) Google failed to preserve such logs, despite their obvious relevance to this litigation;
(2) Google is defining the term "GAIA identifier" in a manner inconsistent with a reasonable reading of that term; or
(3) Google did preserve such logs, but is implying that "no preserved logs . . . with GAIA identifiers" are available because such information is encrypted.

Plaintiffs require additional information about Google's statement in order to reach a conclusion on this crucial class certification issue. In particular, Plaintiffs request that the Court require Google to answer written discovery and/or grant Plaintiffs leave to take a limited, supplemental Rule 30(b)(6) deposition regarding the following limited topics:

(1) The methodology by which Google determined that it "found no preserved data logs from the relevant time period in 2011 and 2012 with GAIA identifiers," including but not limited to which tools and query parameters were used in its search, where it searched for such logs, which employee(s) conducted the search, the date of the search, and how it defined and/or limited the term "GAIA identifier," if at all;
(2) Whether data logs from the relevant time period in 2011 and 2012 containing GAIA identifiers were within the scope of Google's litigation hold for legal or regulatory actions related to the conduct at issue in this litigation and, if so, when such hold was instituted; and
(3) If data logs from the relevant time period in 2011 and 2012 containing GAIA identifiers were initially preserved for legal or regulatory actions related to the conduct at issue in this litigation, when and how they came to be lost, destroyed, or otherwise unavailable.

a. *Failure to Preserve Relevant Evidence*

The first potential explanation for Google's statement that it found "no preserved data logs from the relevant time period in 2011 and 2012 with GAIA identifiers," *id.*, is that Google did not preserve such GAIA logs in the first place. "A litigant is under a duty to preserve evidence which it ***knows or reasonably should know*** is relevant to the action." *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) (emphasis added). "In certain contexts, courts have found that a party reasonably should have anticipated litigation from the time it learned of the events giving rise to the litigation, not merely from the time a lawsuit was filed, threatened, or planned." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 469 (E.D. Pa. 2020). "Google is a well-known and 'really big' company that is 'in the public eye.' It is frequently a party to government proceedings and private litigation . . . . Google employees are no strangers to document production and discovery obligations. At any given time, Google has thousands of employees who are under a litigation hold for document preservation." *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 982–83 (N.D. Cal. 2023).

Here, at the very latest, Google was under an obligation to preserve all relevant evidence from the date that it was served with the first complaint in this litigation on or about February 2012. Google also likely had an obligation to preserve evidence even earlier than that, when the Federal Trade Commission and numerous state attorneys general announced their investigation into this issue in or about February 2012 and when the Mayer Research became known to Google on or about February 14, 2012. Additionally, on March 8, 2012, Plaintiffs in this action sent Google a preservation notice that notified Google of its "affirmative obligation not to destroy, conceal, or alter any paper or electronic files or tangible documents that may be relevant to" this litigation. **Ex. L**, Mar. 8, 2012 Preservation Notice at 1. Plaintiffs' Preservation Notice specifically required that Google should retain "[e]lectronic data and storage media," including "[a]ll databases" with relevant information and electronic "Internet and Web-browser-generated history files, caches and 'cookies' . . . ." *Id.* at 2–3. The notice also requested that Google "immediately modify or suspend features of its information systems and devices that, in routine operation, operate to cause the loss of potentially relevant data or documents," including through

"[m]aintain[ing] all other pertinent information and tools needed to access, review, and reconstruct necessary to access, view, and/or reconstruct all electronic data that may be potentially relevant to the Litigation." *Id.* at 3–4.

In other cases, Google has argued that it was not required to preserve certain types of electronic evidence, such as older versions of documents or electronic chats between employees, for various reasons including that its systems were set to automatically delete certain information after set time periods or that certain documents were not saved as separate versions when they were updated. For example, in *Dunbar v. Google*, No. C 12-3305 LHK, 2013 WL 1346597, at *2 (N.D. Cal. Apr. 2, 2013), the court stated: "the court is concerned that Google appears to have failed to take steps to preserve documents that could have been discoverable in this case even after litigation commenced," where Google asserted it had no obligation to retain past versions of certain documents. In *In re Google Play Store Antitrust Litigation*, 664 F. Supp. 3d at 992–93, the court found Google fell "strikingly short" of its document preservation obligations, in an apparent effort to "hide the ball," by failing to preserve Google Chat messages exchanged between employees.

GAIA logs undoubtedly existed at Google during the 2011 and 2012 time period, and GAIA logs are undoubtedly relevant to this litigation. How and why such logs are apparently unavailable for this case is a serious matter that requires further factual development and, if it is revealed that an evidence preservation issue is responsible for this lack of discoverable evidence, it may be necessary to require further briefing or for the Court to hold a hearing about the appropriate sanction as it pertains to class certification.

b. *Unreasonably Limiting the Search*

A second potential explanation for Google's statement that no logs containing GAIA identifiers are available is that Google may be interpreting the term "GAIA identifiers" in a manner inconsistent with the term's ordinary definition so as to unnecessarily limit Google's search. Google's October 24, 2025 letter does not describe how Google interpreted the term "GAIA identifiers" and so Plaintiffs assume that Google interpreted it as it has been commonly understood during this litigation: as information related to Google account information, such as "data that's received on the Google side that knows who I am . . . ."[7] **Ex. E**, Transcript of Oct. 15, 2025 Conference at 39:13.

However, it is entirely possible that, in determining that no logs from the relevant time period "with GAIA identifiers" exist (or are available), Google is interpreting that term in some other manner. The Court should require a declaration from Google under oath on whether and, if so, to what extent, Google limited the term "GAIA identifiers" in conducting its search.

c. *GAIA Information is Encrypted or Otherwise Transformed or Obfuscated*

Finally, the third potential reason of which Plaintiffs can currently conceive for Google's statement that no logs containing GAIA identifiers are available is that Google may be interpreting logs containing only encrypted (or otherwise transformed or obfuscated) GAIA identifiers as either

[7] Plaintiffs also provided Google with their definition of "GAIA identifiers" in footnote 12 of the Shafiq Affadavit: "'GAIA identifiers' refers to Google Account identification information, such as the GAIA ID, in plaintext, encrypted, hashed, or other similar transformed or obfuscated formats." Ex. A, Shafiq Affadavit at 7 fn.12.

unavailable or as not containing GAIA identifiers. If Google maintained logs with GAIA information in them, it may have encrypted such information in order to protect GAIA information from unauthorized access or internal misuse. Encrypted information is that which is not useable or readable unless it is decrypted using what is commonly known as a "decryption key." Some companies destroy decryption keys after a set period of time and, if Google did preserve data logs containing encrypted GAIA information, but it no longer has (or failed to preserve) the decryption keys, Google may be interpreting those logs as containing no GAIA identifiers.

If this is indeed the case, Plaintiffs would contend, with legal justification, that the failure to preserve or retain the decryption keys for the GAIA information within the logs was improper. Google was on notice of these claims or potential claims at an early juncture and, from that point forward, had an obligation to preserve relevant or potentially relevant evidence, including decryption keys for GAIA logs. *See UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11 CIV. 8407, 2014 WL 5089743, at *9–12 (S.D.N.Y. Sept. 29, 2014) (finding defendants had an obligation to preserve relevant evidence, which included method of encryption for user numbers in report); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*., 341 F.R.D. 474, 512 (S.D.N.Y. 2022) (finding plaintiffs were prejudiced by defendant's failure to preserve a valid encryption key, preventing access to crucial documents); *see also Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) ("It was also reasonably foreseeable that technical e-mails would later be sought in discovery. Samsung's argument that MOSAID did not specifically request e-mails in its discovery requests is inapt. The duty to preserve exists as of the time the party knows or reasonably should know litigation is foreseeable. . . . Samsung had notice that this litigation had begun and therefore had an affirmative obligation to preserve potentially relevant evidence, including technical e-mails."). Plaintiffs' March 2012 preservation notice in this action also notified Google of the need to "[p]reserve and not destroy passwords, ***decryption procedures (and accompanying software)*** . . . [and] all other pertinent information and tools needed to access, review, and reconstruct . . . all electronic data that may be potentially relevant to the Litigation." **Ex. L**, Mar. 8, 2012 Preservation Notice at 4 (emphasis added).

Google should be ordered to respond to the attached discovery (**Ex. M**).

4. <u>Google should be ordered to provide the requested Biscotti data information and sample</u>

Separate from the GAIA issue, Google does not dispute the relevancy of the request for one day of information on the Biscotti cookies but merely states, without any supporting evidence, that the "request is irrelevant" and "was already produced" via the May 15, 2025 log list. *See* **Ex. I**, Google's 10/24/2025 Response Letter. The request is undoubtedly relevant and Google makes no attempt to respond to Professor Shafiq's reasoning for the request—that the data samples Google has provided thus far "do not provide a comprehensive list of data logs with relevant Biscotti identifier information because there are relevant Biscotti identifier fields that are missing." **Ex. A**, Shafiq Affidavit, ¶ 27. As Prof. Shafiq explained, the limited data produced by Google thus far "is insufficient because it is limited to a narrow subset that is overlooking other relevant fields that apply to Biscotti identifiers," and "limiting Plaintiffs to the present production would mean barring Plaintiffs from accessing information that exists, and that is crucial for identification purposes." *Id.*

Google also states that it would be "futile" and a "burden" to provide the requested data sample. *See* **Ex. I**, Google's 10/24/2025 Response Letter. Google provides no argument or

evidence in support of its purported burden. In response Plaintiffs submit the attached supplemental declaration of Professor Shafiq (**Ex. K**) outlining that the mechanics of a search for such data would likely require minimal effort for a company like Google, the most sophisticated data company in the world.

Google should be ordered to produce the one-day sample as requested by Plaintiffs.

**Position of Defendant Google LLC ("Google")**

On October 16, 2025, the Court ordered Plaintiffs to "provide Google with a written statement identifying with specificity the information their expert(s) require to conduct their ascertainability analysis." Plaintiffs did so. As required by the Court, Google timely responded to that identification by stating that the information identified by Plaintiffs required by their expert does not exist. That response is contained in Exhibit 1 hereto.

The Court further ordered that "[o]n or before 5:00 p.m. ET on October 29, 2025, the Parties shall submit a joint letter to the Court … addressing their respective positions and any issues they intend to raise at the following discovery hearing." Accordingly, after providing Plaintiffs with the response in Exhibit 1, Google's counsel repeatedly followed up with Plaintiffs asking to see a draft of the joint letter so that they could review it with Google and prepare a response. Plaintiffs responded by asking for additional information not asked for in their October 21, 2025 identification. Even on such short notice, Google responded the same day within hours with full and complete responses to those additional requests. That email exchange, including Google's responses to the follow-up requests is contained in Exhibit 2 hereto.

As can be seen from Exhibit 1 and Exhibit 2, the information required by Plaintiffs' expert does not exist. That should put an end to this inquiry and an end to discovery in this action.