IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: GOOGLE INC. COOKIE PLACEMENT CONSUMER PRIVACY LITIGATION | Case No. 1:12-md-02358-JDW |

# MEMORANDUM

Sometimes the hardest part of a class action lawsuit is not deciding who wins. It is deciding who belongs in the class in the first place. That question has been the thread running through this litigation for years. Plaintiffs contend that Google bypassed Safari's default privacy settings and placed DoubleClick cookies on users' browsers without their knowledge or consent. Google says it did no such thing. Whatever the merits of those claims, Plaintiffs cannot proceed on behalf of a class unless they have a reliable method of identifying the people who allegedly received those cookies through the challenged conduct.

After years of litigation and extensive discovery, Plaintiffs still don't have such a method. They acknowledge as much but say the fault lies with Google. According to Plaintiffs, Google failed to preserve encryption keys that would have unlocked the information necessary to identify class members. Yet even if I accept Plaintiffs' theory about Google's missing encryption keys, Plaintiffs have not shown that the missing information would identify the members of the class they seek to certify, such that a Rule 23(b)(3) class certification is appropriate. And, in any event, Plaintiffs have not shown that

they satisfy other elements of Rule 23. They cannot identify who belongs in the class, and they have not established that injunctive relief is appropriate under Rule 23(b)(2).

Google also posits that Plaintiffs didn't preserve data that it needs to analyze their claims. But even if I accept Google's theory about Plaintiffs' preservation failures, the missing evidence does not prove Google's case any more than Google's missing evidence proves Plaintiffs' case. Rule 37 cannot fill either gap. I will therefore deny both parties spoliation-related motions and Plaintiffs' class certification motion.

# I. RELEVANT BACKGROUND

## A. Factual History

### 1. Safari, DoubleClick, and Browser Cookies

By 2011, Google had built much of its business around digital advertising. Through its DoubleClick advertising network, Google sold advertisements that advertisers could target to users based, at least in part, on their browsing activity across the internet. To facilitate that process, Google relied on digital cookies. Cookies are small files that websites place on a user's browser for a variety of reasons. Some permit websites to remember users from one visit to the next. Others preserve user preferences or login credentials. According to Plaintiffs, Google's ability to associate browsing activity across different websites made those cookies particularly valuable because it allowed Google to deliver more targeted advertising and command higher advertising prices.

During the relevant period, Apple's Safari browser was the default browser on Apple devices. Sometime around 2011, Apple changed Safari's default settings to block many third-party cookies through a default cookie-blocking setting. As a result, when a Safari user visited a website, the browser ordinarily rejected cookies that advertising networks attempted to place through third party content embedded on the website. Plaintiffs contend that those default settings limited Google's ability to collect browsing information from Safari users and therefore reduced the value of Safari traffic to Google's advertising business.

**2. The Doritos cookie**

The Parties agree that Google developed and deployed the cookie they refer to as the "Doritos" cookie. They sharply disagree, however, about what that cookie was designed to do and how it interacted with Safari's privacy settings.

According to Plaintiffs, Google designed a method to circumvent Safari's default cookie protections. Plaintiffs contend that Google developed code that caused Safari to accept DoubleClick advertising cookies even though Safari otherwise would have blocked them. In Plaintiffs' view, Google implemented that workaround because Safari users generally did not alter their browser's default privacy settings, making those users particularly valuable to Google's advertising business. Plaintiffs allege that Google's conduct permitted it to continue tracking Safari users' browsing activity without their knowledge or consent.

Google offers a different explanation. Google maintains that the Doritos cookie was not an advertising cookie or a tracking cookie at all. Instead, Google contends that the cookie supported certain Google+ social advertising features that allowed users who had opted into those features to interact with advertisements. Google maintains that the Doritos cookie functioned only as an intermediary cookie necessary to support those social advertising functions. According to Google, the cookie was designed to use only limited, encrypted data so that Google could not associate a user's anonymous browsing history with the user's personal Google account information.

Google further contends that certain versions of Safari contained an undisclosed feature that caused the browser to accept additional cookies from a third-party domain after it had accepted another cookie from that same domain. According to Google, once Safari accepted the Doritos cookie, Safari itself accepted additional DoubleClick cookies associated with the same domain. Google therefore maintains that Safari's own behavior, rather than any deliberate effort by Google to circumvent Apple's privacy protections, caused the challenged DoubleClick cookies to appear on some users' browsers.

**3. The scope of the alleged conduct**

The Parties also disagree about the scope of the alleged conduct and the number of users that it affected. Plaintiffs contend that Google's alleged workaround operated broadly across Safari users who maintained the browser's default settings during the class period. Google disputes that characterization and contends that only a relatively small

subset of Safari users could have received DoubleClick cookies through the mechanism challenged in this case.

According to Google, many Safari users already possessed DoubleClick advertising cookies before the events at issue in this litigation occurred, and others received those cookies through means unrelated to the conduct alleged in the Complaint, such as interacting with Google services or clicking on advertisements. Google further contends that its historical records demonstrate that the overwhelming majority of Safari browsers already contained DoubleClick cookies before the Doritos cookie could have affected them. Plaintiffs dispute Google's characterization of the available data and maintain that Google's conduct affected a much broader group of Safari users during the class period.

### 4. Public disclosure and government investigations

On February 17, 2012, the *Wall Street Journal* published an article describing Google's placement of DoubleClick cookies on Safari browsers notwithstanding Safari's default cookie settings. The article relied in part on research of Jonathan Mayer, then a graduate student at Stanford University, who analyzed the interaction between Google's advertising systems and Safari's privacy protections. According to the article, Google had identified a means by which Safari would accept cookies that Safari otherwise would have blocked and had used that mechanism in connection with DoubleClick cookies.

The article generated substantial public attention and prompted investigations by the Federal Trade Commission and several state attorneys general. Google resolved those

investigations through settlements. Google later removed the challenged cookies from users' browsers.

### B. Procedural History[1]

#### 1. The MDL and the initial appeal

After the *Wall Street Journal* published its article about Google's cookie practices, plaintiffs across the country sued Google, alleging that it circumvented privacy settings in Safari and Internet Explorer to place tracking cookies on users' browsers. The Judicial Panel On Multidistrict Litigation consolidated those cases in the District of Delaware and assigned them to Judge Sue Robinson.

On December 19, 2012, Plaintiffs filed a Consolidated Class Action Complaint asserting claims under several federal statutes and California law. Judge Robinson dismissed the complaint in its entirety. Plaintiffs appealed. The Third Circuit affirmed dismissal of Plaintiffs' claims under the Wiretap Act, the Stored Communications Act, the Computer Fraud and Abuse Act, California's Unfair Competition Law, the California Comprehensive Computer Data Access and Fraud Act, the California Invasion of Privacy Act, and the California Consumers Legal Remedies Act. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 153 (3d Cir. 2015). The Third Circuit revived Plaintiffs'

[1] The procedural history of this case is long and complex. I address only what is necessary to resolve these Motions.

claims for intrusion upon seclusion and violation of the privacy protections of the California Constitution and remanded for further proceedings. *Id.*

### 2. The settlement proceedings

Rather than litigate those remaining claims, the Parties negotiated a nationwide class settlement that would result in a $5.5 million *cy pres*-only settlement. Judge Robinson preliminarily approved the settlement, certified a settlement class under Rule 23(b)(2), and granted final approval.

Ted Frank, a class member, objected and appealed the final settlement approval. The Third Circuit vacated the approval order and remanded the case for further consideration. Although the Third Circuit rejected many of Mr. Frank's arguments, it identified two problems with the settlement. First, it noted that the Parties sought to certify an injunctive class under Rule 23(b)(2) rather than a damages class under Rule 23(b)(3), while still seeking to obtain the benefits of a Rule 23(b)(3)-style release of monetary claims. *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019). The Court questioned whether the settlement could extinguish absent class members' damages claims through certification of a Rule 23(b)(2) injunctive class. *Id.* Second, the Third Circuit expressed concern regarding the selection of the proposed *cy pres* recipients and the district court's limited analysis of the settlement's fairness. *Id.*

On remand, the case was reassigned to Judge Robreno because Judge Robinson had retired. In 2020, the Parties filed a renewed motion for preliminary approval of the class action, this time as a damages class pursuant to Federal Rule of Civil Procedure 23(b)(3). In 2021, Judge Robreno granted preliminary certification and approval of the settlement. On July 10, 2023, Judge Robreno denied Plaintiffs' motion for final certification of the settlement class. Although he concluded that the proposed settlement class satisfied Rule 23(a), he held that he could not certify the class under Rule 23(b)(2) because the settlement sought to extinguish absent class members' monetary claims and therefore was not a true injunctive class settlement. He also concluded that the proposed Rule 23(b)(3) settlement class failed because Plaintiffs had not established the class's ascertainability. Plaintiffs appealed but later dismissed that appeal voluntarily. Judge Robreno retired shortly thereafter, and the case came to me.

Plaintiffs then sought interlocutory review under 28 U.S.C. § 1292(b) of issues arising from Judge Robreno's decision. I concluded that Section 1292(b) did not permit me to certify Judge Robreno's order for appeal but certified that legal question itself for interlocutory review because it presented substantial grounds for disagreement. The Third Circuit declined to hear the appeal. I then entered a new scheduling order so that the Parties could proceed with merits and class certification discovery.

### 3. Discovery following the denial of settlement

Because Judge Robreno's decision identified ascertainability as the principal obstacle to Rule 23(b)(3) certification, the Parties devoted much of discovery to ascertainability and whether Plaintiffs could identify the individuals who allegedly received DoubleClick cookies through the mechanism challenged in this case. Plaintiffs pursued discovery concerning Google's historical logging systems, data retention practices, and internal records relating to the placement of DoubleClick cookies on Safari browsers. They sought production of source code, design documents, internal technical materials, and historical log data that they believed would permit them to determine which Safari users received cookies through the challenged mechanism. Google maintained that it could not identify those users and that no preserved records could answer that question.

Those disagreements led to a series of discovery disputes throughout 2025. In June 2025, Plaintiffs moved to compel additional discovery concerning Google's preserved logs and the data fields contained within those logs. Plaintiffs sought descriptions of Google's historical logging systems, sample values for preserved data fields, and information concerning logs that Google had not preserved. I denied that motion without prejudice and directed Google to produce sample values for the requested data fields and to provide sworn information describing its efforts and methodology in locating those samples.

The Parties continued to dispute whether Google's preserved data could support Plaintiffs' effort to prove ascertainability. Following additional conferences during the summer and fall of 2025, I required the Parties to identify with greater precision what information Plaintiffs sought and why they believed it mattered. At a discovery hearing in October 2025, I directed Plaintiffs to provide a written explanation from their expert identifying the specific information required for their ascertainability analysis and directed Google to respond regarding the availability of that information and the burdens associated with producing it.

Plaintiffs submitted a declaration from Dr. Zubair Shafiq explaining that additional information relating to GAIA (Google's ID management system) identifiers, Biscotti identifiers, and certain historical logs might permit him to determine whether a methodology existed to identify members of the proposed class. Google responded that it had preserved no relevant logs containing GAIA identifiers and disputed Dr. Shafiq's assumptions regarding Google's historical systems. Dr. Shafiq submitted a rebuttal declaration disputing Google's representations regarding the existence of such information.

I declined to compel further discovery. I concluded that Dr. Shafiq's declarations rested largely on speculation regarding Google's systems rather than expert analysis grounded in the record before me. I also noted that Plaintiffs had known from the outset of discovery that ascertainability represented a central obstacle to certification but waited

until the end of discovery to identify the information they believed was necessary and to explain how that information would assist their analysis. Even then, Plaintiffs could not say whether the requested information would actually permit identification of class members. Under those circumstances, additional discovery and reopened depositions would have imposed disproportionate burdens while offering little prospect of resolving the underlying problem.

Google also sought discovery concerning Plaintiffs' computers, browser usage, and Safari settings during the class period. The resulting discovery established that Plaintiffs had continued using their computers after this litigation began and that browser software and related files from the relevant period no longer existed on those devices.

### 4. The Motions at issue

The Parties' disputes concerning historical data and missing evidence has produced cross-motions for sanctions associated with ESI. Plaintiffs contend that Google failed to preserve encryption keys associated with certain historical log data and seek sanctions under Rule 37(e). Google, in turn, contends that Plaintiffs failed to preserve information on their personal devices relating to browser usage and settings during the class period and seeks sanctions of its own. The Parties dispute both the significance of the missing information and whether either side suffered prejudice from its loss.

Plaintiffs have also renewed their motion for class certification under Rules 23(b)(2) and 23(b)(3). They seek certification of two litigation classes. First, under Rule 23(b)(2), Plaintiffs seek to certify a nationwide injunctive class consisting of:

> All persons in the United States who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.

Plaintiffs also seek certification under Rule 23(b)(3) of a California damages class consisting of:

> All persons within the State of California who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012.

Plaintiffs also ask that I appoint the named Plaintiffs as class representatives and appoint Interim Co-Lead Counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g). The Parties' cross-motions for sanctions and Plaintiffs' motion for class certification are ripe for disposition.

## II. DISCUSSION

### A. Rule 37(e) Sanctions

#### 1. Legal standard

ESI spoliation occurs when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps

to preserve it, and it cannot be replaced through additional discovery." Fed. R. Civ. P. 37(e). To impose sanctions pursuant to this rule, a judge must find that (a) the spoliating party had a duty to preserve information when the loss occurred; (b) the lost ESI was within the scope of that duty to preserve; (c) the spoliating party's failure to take reasonable steps to preserve the information led to its loss; and (d) the information is truly lost, *i.e.*, it cannot be otherwise recovered. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The evaluation of the duty to preserve evidence and the scope of that duty occur from the perspective of a reasonable person at the time, not with hindsight. *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 77-78 (3d Cir. 2012)

The Federal Rules contemplate two remedies for ESI spoliation. When the loss of information prejudices a party, a judge may order "measures no greater than necessary to cure the prejudice." Fed R. Civ. P. 37(e)(1). Appropriate sanctions include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

When a party destroys electronically stored information "with the intent to deprive another party of the information's use in the litigation," a judge may presume the information was unfavorable to the infracting party, instruct the jury that it may or must

presume the information was unfavorable, or dismiss the action. Fed. R. Civ. P. 37(e)(2). Because bad faith is rarely evident on its face and judges cannot directly observe a party's motivation for spoliating, judges may consider circumstantial evidence to determine intent. *See, e.g., Bistrian v. Levi*, 448 F. Supp.3d 454, 475 (E.D. Pa. 2020). Judges in this district have considered (a) the timing of the destruction; (b) the method of destruction; (c) whether destruction was selective or indiscriminate; and (d) the spoliating party's policies for retention and destruction. *See id.* I agree that these factors are instructive, though not exhaustive.

**2. Plaintiffs' Motion**

Plaintiffs contend that Google failed to preserve the encryption keys needed to decrypt portions of its historical logs that contain encrypted cookie data, including encrypted GAIA identifiers. Without those keys, no one can decrypt the preserved data, and Plaintiffs cannot use the data in the manner they propose. However, they have not shown that the destruction of those keys constitutes spoliation, that sanctions are appropriate, or that they seek an appropriate sanction.

*First*, Plaintiffs have not shown that Google spoliated evidence. Google does not dispute that it anticipated litigation concerning the Safari issue by early 2012. By then, the *Wall Street Journal* had published its article, government investigations had begun, and private litigation had followed. Google therefore had a duty to preserve information relevant to the claims that ultimately became part of this MDL. Google doesn't argue

otherwise. Google also concedes that it did not try to stop the destruction of the encryption keys in the ordinary course of business and that they are truly lost.

However, Plaintiffs have not shown that the encryption keys were within the scope of Google's preservation duty at the time that Google destroyed them. Nothing in the record supports Plaintiffs' assertion that a reasonable person in 2012 would have understood the preservation duty to extend to the encryption keys. Plaintiffs have shown, at most, that an expert who they retained in 2025 thinks that the encryption keys **might** help him figure out whether he can ascertain the members of the class. But that sheds no light on what a reasonable person would have thought about the scope of the duty in 2012. On that score, I note that the Third Circuit decided the cases that form the foundation of the ascertainability doctrine beginning in August 2012, months **after** Google's preservation duty arose. *See Marcus v. BMW of North America, Inc.*, 687 F.3d 583 (3d Cir. 2012). And even then, the doctrine evolved over the next several years following several more decisions from the Circuit. *See, e.g., Hayes v. Walmart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013); *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013); *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015). Without the benefit of at least some of these decisions, it is not clear that any reasonable person would have hypothesized the need for encryption keys to ascertain the members of the class, as Plaintiffs now suggest. Because the encryption keys were not within the scope of Google's duty of preservation, it did not spoliate evidence by destroying them.

*Second*, even if Google's duty had encompassed the encryption keys, Plaintiffs have not shown that they have suffered prejudice to warrant a sanction. According to Plaintiffs, the loss of the encryption keys deprived them of the evidence necessary to identify class members and establish ascertainability. Yet even after extensive discovery into Google's historical log data, Plaintiffs have not established that the information they seek, if available, would distinguish between users who the challenged workaround affected and users who received DoubleClick cookies through other means. As I explained in my Order dated November 10, 2025, Dr. Shafiq has not been able to say whether the additional information Plaintiffs sought would accomplish that task. Instead, all Plaintiffs have established is that the missing information **<u>might</u>** have allowed them to determine if they could answer that question. Google, however, disputes Plaintiffs' premise that decrypting the preserved data would have distinguished users affected by the challenged workaround from users who received DoubleClick cookies through other means.

On this record, Plaintiffs have not established that preservation of the encryption keys would have produced an objectively reliable means of identifying class members or otherwise materially altered their ability to prove the elements of their claims. "Sanctions must be based on more than mere speculation." *Melk v. Congreso De Latinos Unidos*, Civ. A. No. 08-3515, 2010 WL 11558001, at *4 (E.D. Pa. Mar. 3, 2010). I cannot presume that the missing evidence would have favored the party seeking sanctions. *See Bistrian*, 448 F. Supp.3d at 476. Plaintiffs bear the burden of proving prejudice, and speculation about

what the decrypted information might have revealed cannot satisfy that burden. *See Accurso v. Infra-Red Servs.*, 169 F. Supp.3d 612, 622 (E.D. Pa. 2016).

Without more certainty from either side, the best I can do is to assume that the dispute about what the encryption keys would show is a 50/50 question—and that's being somewhat generous to Plaintiffs. Under that assumption, it's equally possible that the encryption keys would have (a) permitted Plaintiffs to sort out the question of who received a cookie by improper means and who received it otherwise and (b) not permitted Plaintiffs to have answered that question. But Plaintiffs bear the burden of providing spoliation, including prejudice, by a preponderance of the evidence, and showing a 50/50 possibility does not satisfy that burden.

Plaintiffs respond that Dr. Shafiq could not answer that question precisely because Google failed to preserve the encryption keys. But that simply restates the premise of their motion. Rule 37(e)(1) does not permit me to presume that the missing evidence would have established what Plaintiffs hope it might have established. Plaintiffs still bear the burden of demonstrating that preservation of the encryption keys would have produced information capable of identifying class members in the manner they propose. They have not done so, and I cannot assume that it would have without some evidence beyond Dr. Shafiq's naked speculation.

*Third*, Plaintiffs have not established that the sanction they seek—a holding that the class is ascertainable—is proper or even legally permissible. Ascertainability is an

independent requirement that a plaintiff must prove with *evidentiary* support. *See Byrd*, 784 F.3d at 163-64. That requirement serves practical purposes: (1) "it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members;" (2) "it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action;" and (3) "it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Marcus*, 687 F.3d at 593.

Even accepting Plaintiffs' premise that Google's alleged spoliation deprived them of evidence that might have assisted that inquiry, the practical problem remains. The record still contains no objectively reliable and administratively feasible method of determining which users received DoubleClick cookies through the challenged Safari workaround rather than through one of the other undisputed mechanisms reflected in the record. A sanction that deems ascertainability satisfied would not identify a single additional class member or provide a workable means of determining who belongs in the proposed class. It would simply excuse Plaintiffs from proving an independent prerequisite to class certification without supplying the evidence necessary to do so. Rule 37 does not permit me to dispense with an independent requirement for class certification, particularly in this case.

Beyond that problem, though, Plaintiffs have not demonstrated that Google's state of mind justifies such a sanction. A conclusive evidentiary presumption like the one that

Plaintiffs seek would arise under Rule 37(e)(2), not (e)(1). Before imposing such a sanction, I'd have to find that Google acted in bad faith when it destroyed the encryption keys. Plaintiffs have come nowhere close to such a showing. Plaintiffs identify no evidence that Google singled out the encryption keys for deletion because of this litigation, selectively preserved favorable information while allowing unfavorable information to disappear, altered its retention practices to obtain a litigation advantage, or otherwise acted to prevent Plaintiffs from using the information in this case. Instead, the record reflects Google's continued application of its ordinary retention practices, which Plaintiffs contend should have been suspended once litigation became reasonably foreseeable. Even assuming Plaintiffs are correct on that point, a failure to depart from ordinary retention practices is not the same as an intent to deprive. *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82-84 (3d Cir. 2019); *Bull*, 665 F.3d at 77. Rule 37(e)(2) requires evidence of purposeful conduct, and this record does not provide it.

At most, Plaintiffs have shown that Google foresaw litigation and did not suspend its litigation practices. Even if the encryption keys were within the scope of Google's preservation duty, Google's failure to preserve them on this record would be negligent, not intentional. And, if foreseeability of litigation and a failure to suspend ordinary retention practices were enough, every negligent preservation failure would become intentional spoliation. *See Bull*, 665 F.3d at 73 (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). The Rule draws a sharper distinction than that. Because

Plaintiffs have not established that Google acted with the purpose of depriving them of evidence, I will deny their request for sanctions.

### 3. Google's Motion

Google has shown that information missing from Plaintiffs' computers is of some significance because it could have provided contemporaneous, objective evidence bearing on Plaintiffs' allegations. Had Plaintiffs preserved it, Google could have tested Plaintiffs' testimony, evaluated their browser settings, determined which versions of Safari they used, and investigated whether other users accessed the same computers. The loss of that evidence therefore deprives Google of one means of testing Plaintiffs' account of events. But prejudice is different from deciding what the missing evidence would have shown, while Google's requested sanction requires the latter.

Google's proposed sanction depends on two inferential steps. *First*, it requires me to assume that the missing browser artifacts would have resolved disputed factual questions concerning Plaintiffs' Safari versions, browser settings, receipt of the challenged cookies, and other users' access to the devices. *Second*, it asks me to prohibit Plaintiffs from offering contrary evidence on those same issues. Rule 37(e)(1) authorizes neither step. Even assuming a party establishes that electronically stored information should have been preserved, that it was lost because another party failed to take reasonable steps to preserve it, that it cannot be restored or replaced through additional discovery, and that its loss caused prejudice, the Rule authorizes only measures "no

greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Google's requested sanction exceeds that limit. Google's requested sanction would not only offset an evidentiary disadvantage resulting from the loss of information, but it would also resolve disputed factual questions concerning Plaintiffs' browser settings, Safari versions, receipt of the challenged cookies, and ultimately their standing, membership in the proposed class, and the merits of their claims. Rule 37(e)(1) allows me to address prejudice caused by missing evidence; it does not permit me to decide disputed facts by assuming what that missing evidence would have shown.

Google argues that these factual issues go not only to the merits of Plaintiffs' claims but also to standing and class membership. That may be so. But regardless of how Google characterizes those issues, the requested sanction would decide them by presuming the contents of missing evidence. Rule 37(e)(1) permits courts to address prejudice caused by lost electronically stored information; it does not permit courts to resolve disputed factual questions by assuming what that information would have established.

Nor does denying Google's Motion leave it without any means to challenge Plaintiffs' allegations. Google obtained forensic images of Plaintiffs' computers, deposed both Plaintiffs extensively regarding their browser usage and preservation efforts, retained experts to analyze the available evidence, and remains free to argue that Plaintiffs have not carried their burden of proving they used susceptible versions of

Safari, maintained default browser settings, or received the challenged cookies. Google may highlight the gaps in the record, challenge Plaintiffs' credibility, rely on the available forensic evidence, and argue that Plaintiffs have failed to satisfy their burden of proof. What Rule 37(e)(1) does not permit is converting the absence of evidence into affirmative proof that disputed facts should be resolved in Google's favor.

Plaintiffs raise several additional arguments in opposition to Google's Motion. They contend they had no duty to preserve the browser artifacts Google identifies, took reasonable preservation steps by retaining their computers and producing forensic images, and that much of the allegedly missing information can still be reconstructed through forensic analysis, Google's own records, and other discovery. They also argue that Google delayed seeking sanctions after obtaining the forensic images and completing Plaintiffs' depositions. Those arguments raise questions about whether Google satisfies Rule 37(e)'s threshold requirements. I need not resolve them all because, even assuming Google could satisfy those requirements, Rule 37(e)(1) does not authorize the relief it seeks. Google has shown that the loss of evidence complicates its defense. It has not shown that the appropriate remedy is to resolve disputed factual issues in its favor. I will therefore deny Google's Motion.

### B. Class Action Certification

#### 1. Legal standard

Federal Rule of Civil Procedure 23(a) requires a plaintiff to establish (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). If a claim satisfies those four requirements, then a plaintiff must then satisfy one subsection of Rule 23(b).

In this case, Plaintiffs seek certification pursuant to Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) applies when a class is seeking injunctive or declaratory relief and requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). On the other hand, certification under Rule 23(b)(3) is appropriate where (1) common questions of law or fact predominate (predominance), and (2) the class action is

the superior method for adjudication (superiority). *See Marcus*, 687 F.3d at 591. That class must also be "currently and readily ascertainable based on objective criteria." *Id.* at 593.

When conducting this analysis, a court must be careful not to certify a class "casually." *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 132 (E.D. Pa. 2015). Instead, class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that the moving party has fulfilled the necessary requirements. *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (citing *Wal-Mart Stores, Inc.*, 564 U.S. 338 at 350-51). This inquiry will at times require a court to examine issues that overlap, to some extent, with the final merits determination. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008). However, the court should only engage in this overlapping analysis to the extent necessary to resolve the class certification motion, and no more. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

The party seeking class action status "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591. That party must have the evidence to do so at the time it seeks class certification. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 318.

**2. Rule 23(a) factors**

**a. Numerosity**

While there is no minimum number of plaintiffs necessary to sustain a class action, courts generally find that if the number of potential plaintiffs exceeds 40 then numerosity

is met. Marcus, 687 F.3d at 595. The plaintiff "must … be prepared to prove that there are *in fact* sufficiently numerous parties." *Dukes*, 564 U.S. at 350 (emphasis in original). Although "mere speculation" can't meet the plaintiff's burden, the plaintiff doesn't need to "offer direct evidence of the exact number and identities of the class members." *Marcus*, 687 F.3d at 596. If the plaintiff proffers "sufficient circumstantial evidences specific to the … problems [and] parties … actually covered by the class definition[,]" then I can rely on "common sense" to make a factual finding regarding the size of the class. *Id.*

Numerosity presents little difficulty here. Plaintiffs allege that Google's conduct affected millions of Safari users during the proposed class period, and Google does not meaningfully dispute that, if an otherwise certifiable class exists, joinder would be impracticable. Plaintiffs have therefore satisfied Rule 23(a)(1).

**b. Commonality**

Commonality requires a showing that "there are questions of law or fact common the class." Fed. R. Civ. P. 23(a)(2). The bar for commonality is "not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quotation omitted). When the "defendant's conduct is common as to all of the class members[,]" the standard is met. *Id.* (quotation omitted). The proposed class's claim "must depend on a common contention" whereby "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

The common question in this case is whether Google employed a mechanism to circumvent Safari's default cookie-blocking settings and place DoubleClick cookies on users' browsers. Plaintiffs allege that Google used the same mechanism for every proposed class member. If Plaintiffs prove that allegation, whether Google's conduct violated the law presents a common question that applies equally to every class member. The "determination of its truth or falsity" therefore "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Google argues that differences in browser settings, Safari versions, cookie placement, and other user-specific circumstances defeat commonality. Those arguments are better suited for the predominance inquiry. As the Third Circuit has explained, "the existence of individualized issues in a proposed class action does not per se defeat commonality." *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 101 (E.D. Pa. 2002) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 191 (3d Cir. 2001)). Indeed, the commonality requirement "may be satisfied by a single common issue …." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Plaintiffs therefore satisfy Rule 23(a)(2).

**c. Typicality**

For class certification, a plaintiff's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). That requirement "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus*,

687 F.3d at 598. "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id.*; *see also Baby Neal*, 43 F.3d at 58. In short, the typicality requirement does not "mandate[] that all putative class members share identical claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), as amended (Oct. 16, 2001) (quotation omitted).

Plaintiffs' claims are typical of the claims that any class would assert. Both Plaintiffs and the class seek to assert claims for intrusion upon seclusion and violation of the California Constitution based on Google's placement of DoubeClick cookies on their machines. The elements of the claims are the same for all class members, the conduct at issue is the same in the Plaintiffs' claims as they are for class members, and the Plaintiffs seek the same relief as the class would seek. Plaintiffs have therefore satisfied the typicality prong.

Google argues that Plaintiffs' claims are not typical because Plaintiffs have not offered evidence to show that they are members of the class, which raises a standing problem. That argument fails for two reasons. *First*, it confuses the standing inquiry with the merits. A standing analysis focuses on the injury that a plaintiff alleges, not that he can prove. *See Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017). Lots of plaintiffs assert harms but are proven wrong. That means they lose, not that they lacked standing

from the start. Plaintiffs in this case assert that Google's placement of cookies on their computers injured that, and that claim gives them standing. *Second*, Google's argument again conflates the typicality analysis with the predominance analysis. The named Plaintiffs, and each member of the class, will have to show that Google's improper conduct impacted him or her. That raises predominance concerns, as I discuss below. But it's not enough to defeat the typicality inquiry because it doesn't change the fact that the claims assert the same legal claims, arising from the same conduct. To hold otherwise would import a requirement from Rule 23(b)(3) into analysis of a factor that arises under Rule 23(a), and that's not proper.

**d. Adequacy**

The final 23(a) factor—adequacy—considers both the plaintiff's and counsel's adequacy to represent the class. "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *McDonough v. Toys R Us, Inc.*, 638 F. Supp.2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "The second factor 'seeks to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)).

Plaintiffs satisfy Rule 23(a)(4). Google does not challenge the adequacy of Plaintiffs' counsel, and nothing in the record suggests counsel lacks the experience or ability to prosecute this case. Nor does the record reveal any conflict between the named Plaintiffs and the absent class members that would prevent Plaintiffs from fairly and adequately representing the proposed class. Plaintiffs have actively participated in this litigation for many years and possess the minimal understanding of the case that Rule 23(a)(4) requires.

Google resists that conclusion for several reasons, but none persuades me otherwise. It argues that Plaintiffs are inadequate because they are subject to individualized defenses concerning their browser usage, consent, and preservation of evidence, because others used their devices during the class period, because Plaintiff Balmayne has a personal relationship with one of Plaintiffs' attorneys, and because Plaintiffs lack sufficient knowledge about the litigation. Those arguments largely miss the mark. Rule 23(a)(4) asks whether the named Plaintiffs' interests are aligned with those of the absent class members—not whether Google has identified individualized defenses or factual disputes. To the extent Google contends Plaintiffs are vulnerable to unique defenses, that argument goes to typicality, not adequacy. Likewise, neither Plaintiff Balmayne's relationship with counsel nor the record concerning Plaintiffs' knowledge of the case demonstrates the type of fundamental conflict of interest that Rule 23(a)(4) is designed to uncover.

### 3. Rule 23(b)(3) factors

#### a. Ascertainability/Class Definition

To establish that the proposed class is ascertainable, a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citation omitted). When class members "are impossible to identify without extensive and individualized fact-finding[,] … then a class action is inappropriate." *Marcus*, 687 F.3d at 592-93. But "[t]he ascertainability inquiry is narrow." *Byrd*, 784 F.3d at 165. It does not require that "a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members can be identified.'" *Id.* at 163 (quotation omitted) (original emphasis). This process can include matching records across multiple computer databases or even cross-referencing a defendant's voluminous records with affidavits from putative class members. *See Kelly v. RealPage, Inc.*, 47 F.4th 202, 223 (3d Cir. 2022) (citations omitted).

Plaintiffs define the proposed damages class as "[a]ll persons within the State of California who used the Apple Safari web browser, who visited a website from which Google's doubleclick.net cookies were deployed, and whose default Safari browser settings were enabled from June 1, 2011 through February 15, 2012." Those criteria appear to be objective on their face. But objective criteria alone do not satisfy Rule 23. Plaintiffs

also must demonstrate a reliable and administratively feasible means of determining whether an individual satisfies that definition. They have not done so.

Plaintiffs concede that they cannot satisfy the ascertainability requirement on the present record. (D.I. 302 at 6.) They do not argue that the evidence obtained during discovery permits me, the Parties, or a claims administrator to determine which Safari users received DoubleClick cookies through the challenged workaround. Instead, Plaintiffs' response is that Google's alleged destruction of the Doritos encryption keys deprived them of the evidence necessary to make that showing. Their argument therefore is not that they have established ascertainability, but that I should excuse them from doing so. But I've already decided that Google did not spoliate evidence, so Plaintiffs' concession about the state of the record defeats certification. Rule 23 places the burden squarely on Plaintiffs to prove every prerequisite to class certification by a preponderance of the evidence. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320. Plaintiffs cannot satisfy that burden by acknowledging that the necessary evidence is unavailable and asking me to overlook the deficiency.

Even putting Plaintiffs' position regarding spoliation aside, the record confirms that no workable methodology exists. The Parties agree that Safari users could receive DoubleClick cookies through multiple mechanisms during the class period. Plaintiffs' claims concern only one of those mechanisms—the alleged workaround that caused Safari to accept DoubleClick cookies despite its default privacy settings. Yet Plaintiffs

identify no objective means of distinguishing users who received a DoubleClick cookie through the challenged workaround from users who either never received such a cookie or received one through another, undisputed mechanism. Without a methodology capable of making that distinction, determining class membership would require individualized factual inquiries into each user's browsing history and receipt of cookies. That is precisely the type of inquiry that the ascertainability requirement is designed to avoid. *See Marcus*, 687 F.3d at 592-93.

Plaintiffs' proposed methodology does not solve that problem. They contend that affidavits from putative class members, coupled with GAIA information and Apple device records, provide a sufficiently reliable method of identifying class members. I disagree. At most, that evidence could establish that an individual used Safari during the relevant period, maintained Safari's default settings, owned an Apple device, or maintained a Google account. None of those facts establishes the dispositive question of whether that individual's browser received a DoubleClick cookie through the challenged workaround rather than through one of the other undisputed means reflected in the record. Plaintiffs therefore ask me to infer class membership from evidence that is merely consistent with membership, rather than evidence that objectively establishes it. Rule 23 requires more.

Nor do the cases on which Plaintiffs rely compel a different conclusion. I agree that affidavits may supplement objective records when those records already provide a reliable basis for distinguishing class members from non-class members. That is what *City Select*

*Auto Sales Inc. v. BMW Bank of North America Inc.*, 867 F.3d 434, 441-42 (3d Cir. 2017), *Kelly v. RealPage, Inc.*, 47 F.4th 202, 223-24 (3d Cir. 2022), and *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 480-81 (3d Cir. 2020), contemplate. In each of those cases, however, the affidavits supplemented records that already identified the relevant class. In this case, by contrast, Plaintiffs have identified no comparable records capable of distinguishing class members from non-class members. Nor does Dr. Shafiq's opinion fill that gap. After reviewing Google's records, he concluded only that additional Google data ***might*** permit further analysis. Rule 23 requires Plaintiffs to demonstrate that a workable methodology exists, not that one might exist if additional evidence were available. Because Plaintiffs have failed to demonstrate a reliable and administratively feasible means of determining who belongs in the proposed class, they have not established ascertainability.

**b. Predominance**

Predominance requires "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Rule 23(b)(3) requires that "the common, aggregation-enabling, issues in the case [be] more prevalent or important than the non-

common, aggregation-defeating, individual issues." *Id.* (citation omitted). In sum, the inquiry "tests whether [the] proposed class[ ] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623 (citation omitted).

"In practice, this means that a district court must look first to the elements of the [plaintiff's] underlying claims and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of the available evidence and the method or methods by which the plaintiff[ ] propose[s] to use the evidence to prove' those elements." *Reinig v. RBS Citizens*, N.A., 912 F.3d 115 (3d Cir. 2018) (quoting *Marcus*, 687 F.3d at 600).

Plaintiffs have not shown that they can establish the central elements of liability through common proof. Whether Google developed and implemented the challenged workaround presents a common question. But answering that question would establish only what Google did, not whether Google is liable to any particular class member. Liability also depends on whether Google's conduct reached the individual asserting the claim. That inquiry requires determining whether a particular user employed one of the relevant versions of Safari during the class period, maintained Safari's default cookie settings, visited websites capable of deploying the challenged cookies, and received a DoubleClick cookie through the alleged workaround rather than through one of the other undisputed means by which a DoubleClick cookie could appear on the browser. Those are not collateral issues because they are necessary in determining whether Google committed the alleged intrusion as to that individual at all.

Plaintiffs contend that common issues nevertheless predominate because Google's alleged workaround was uniform and a factfinder can determine its legality on a classwide basis. I agree that those issues are common. But Rule 23(b)(3) asks whether Plaintiffs can establish the essential elements of liability through evidence common to the class. The present record contains an evidentiary deficiency that prevents Plaintiffs from establishing which users, if any, received DoubleClick cookies through the challenged workaround. That same evidentiary deficiency bears directly on predominance because, without evidence identifying the users who the challenged conduct affected, Plaintiffs cannot prove liability through common evidence.[2] Thus, even if Plaintiffs prevailed on every common issue concerning Google's conduct, the factfinder still would have to determine, user by user, whether Google's conduct affected that individual at all. Because the available evidence does not permit resolution of that question through common proof, the individualized issues overwhelm the common ones. *See Marcus*, 687 F.3d at 604.

Google also identifies individualized issues concerning consent, reasonable expectations of privacy, reliance, injury, and damages. Those issues might present additional obstacles to certification, but I need not decide whether any one of them independently defeats predominance. Plaintiffs have not shown that they can establish

---

[2] Plaintiffs' Motion for Sanctions (D.I. 302) sought Rule 37 relief based on Google's alleged spoliation of the evidence they contend was necessary to establish ascertainability under Rule 23(b)(3). Although the same evidentiary issues also bear on predominance, Plaintiffs did not seek Rule 37 relief directed to that issue. I therefore do not consider whether such a remedy would affect the predominance analysis.

liability itself through common evidence. Because the threshold question of whether Google's conduct affected a particular user cannot be resolved on a classwide basis, the individualized issues predominate over the common ones, and Rule 23(b)(3) is not satisfied.

**c. Superiority**

Plaintiffs must show that class litigation is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this determination, I must consider four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). The superiority requirement requires me to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004). On the whole, I find that the balance does not tip in favor of adjudicating these claims on a class-wide basis.

The first three factors favor certification to some degree. The individual claims are relatively modest, so many putative class members would have little practical incentive to litigate them separately. Nothing in the record suggests that parallel litigation concerning

these claims is pending elsewhere, and concentrating the litigation in this forum promotes efficiency because this multidistrict litigation has been pending here for more than a decade. If the common issues could resolve the central questions in the case, a class action would likely be the superior means of adjudicating these claims.

They cannot. Unlike a case in which liability may be established through common evidence, this litigation would require individualized determinations before I could decide whether Google is liable to any particular class member. I could not simply decide whether Google implemented the challenged workaround and then apply that answer across the class. Instead, I would have to determine, for each putative class member, whether that individual received a DoubleClick cookie through the alleged workaround rather than through one of the other undisputed means reflected in the record. Those individualized determinations also bear on who belongs in the class in the first place. A class action therefore would not streamline this litigation. It would simply relocate the individualized inquiries into a single proceeding. Rule 23(b)(3) exists to promote the fair and efficient resolution of disputes. Requiring individualized determinations of both class membership and liability before any class member could recover would not accomplish either objective. Considering all four factors together, Plaintiffs have not established that class treatment is superior to other available methods of adjudicating this controversy.

#### 4. Rule 23(b)(2)

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is intended for cases in which "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Rule 23(b)(2) classes need not meet the additional predominance and superiority requirements of Rule 23(b)(3). *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998). But because absent class members in a Rule 23(b)(2) class receive neither notice nor an opportunity to opt out, the rule applies only when the proposed class is sufficiently cohesive and the requested equitable relief operates indivisibly across the class. *Id.* Plaintiffs have not carried their burden of demonstrating that certification under Rule 23(b)(2) is appropriate.

The conduct challenged in this litigation occurred during 2011 and early 2012. Following investigations by the FTC and numerous state attorneys general, Google expired the DoubleClick cookies that form the basis of Plaintiffs' claims and represented that it had discontinued the challenged workaround. Plaintiffs do not dispute that Google removed the challenged cookies. Instead, they contend only that they have no way of knowing whether Google has resumed similar conduct. Nor do Plaintiffs identify evidence that Google currently employs the Safari cookie circumvention technique alleged in the

Complaint or that the browser functionality and products at issue continue to exist in the form challenged here. The case concerns conduct that ended more than a decade before Plaintiffs moved for class certification. Rule 23(b)(2) authorizes prospective equitable relief. It does not authorize certification to address conduct that has ceased. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 318-19 (3d Cir. 2011); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996).

Plaintiffs' contention that Google might someday resume similar conduct does not change that result. A plaintiff seeking prospective equitable relief must demonstrate a "real and immediate" threat of future injury, not merely conjectural or hypothetical harm. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223-26 (3d Cir. 2012); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983). Past exposure to allegedly unlawful conduct, standing alone, does not establish entitlement to injunctive relief. *McNair*, 672 F.3d at 225-26. Plaintiffs rely on the secretive nature of Google's past conduct and Google's history of alleged privacy violations to argue that they cannot know whether Google has resumed the challenged practice. But speculation that a defendant might someday engage in similar conduct does not establish a sufficiently immediate threat of future injury. Nor does it satisfy Rule 23(b)(2)'s requirement that final injunctive relief remain appropriate for the class as a whole.

The nature of the injunction Plaintiffs seek further demonstrates that Rule 23(b)(2) certification is inappropriate. Plaintiffs ask me to prohibit Google from "using any method

to override a browser's third-party cookie-blocking setting without a user's prior notice and express consent." (D.I. 304 at 20.) But Plaintiffs identify no ongoing conduct for an injunction to prohibit. Instead, their proposed injunction amounts to a directive that Google comply with privacy law whenever it designs future products. Rule 65 requires an injunction to describe in reasonable detail the specific acts restrained or required. Fed. R. Civ. P. 65(d)(1). An injunction requiring a defendant to obey the law, a requirement with which they must comply regardless of the injunction, does not satisfy Rule 65(d). *Belitskus v. Pizzingrilli*, 343 F.3d 632, 650 (3d Cir. 2003).

Plaintiffs also rely on Judge Robreno's observation, made during the Parties' proposed settlement proceedings, that Rule 23(b)(2)'s requirements appeared to be satisfied because Google allegedly acted on grounds generally applicable to the proposed class. That observation arose in a different procedural posture. At that stage, Judge Robreno was evaluating a proposed settlement, not deciding whether Plaintiffs had established entitlement to certification of a litigation class after the completion of discovery. The present record demonstrates that the equitable relief Plaintiffs seek is no longer appropriate. Plaintiffs therefore have not established that certification under Rule 23(b)(2) is warranted.

## III. CONCLUSION

Plaintiffs have not established that Google spoliated electronically stored information within the meaning of Rule 37(e), and Google has not shown that Plaintiffs failed to preserve evidence in a manner that warrants sanctions. I will therefore deny both motions for sanctions. Plaintiffs also have not met their burden of proving that the proposed classes satisfy Rule 23. They have not established the prerequisites of Rule 23(a), nor have they shown that the proposed damages class is ascertainable or otherwise satisfies Rule 23(b)(3), or that the proposed injunctive class satisfies Rule 23(b)(2). I will therefore deny Plaintiffs' Motion for Class Certification. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

JOSHUA D. WOLSON, J.

August 27, 2026